PAUL J. CAMBRIA, JR. (NY 15873, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com

James C. Grant (WA 14358, *pro hac vice* application pending)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Telephone:  (206)622-3150
Facsimile:  (206)757-7700
Email:  jamesgrant@dwt.com

Robert Corn-Revere (DC 375415, *pro hac vice* application pending)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, D.C. 20006
Telephone:  (202)973-4200
Facsimile:  (202)973-4499
Email:  bobcornrevere@dwt.com

Attorneys for Defendant
MICHAEL LACEY

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>MICHAEL LACEY, *et al.*,<br><br>Defendants. | CASE NO.   CR-18-00422-PHX-SPL (BSB)<br><br>**DEFENDANT MICHAEL LACEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**<br><br>*FILED UNDER SEAL* |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 2

II.  FACTS ................................................................................................................. 6

    A.   Mr. Lacey's Background. ............................................................................ 6

    B.   The Charged Offenses. ................................................................................ 7

    C.   Mr. Lacey's Criminal History. .................................................................... 8

    D.   Pretrial Services Recommends Release on Recognizance……..………………9

III. ARGUMENTS………………………………………………………………………..9

    A.   Under the governing constitutional and statutory framework, pre-trial release is the norm and not the exception…………………………………………9

    B.   This Court should deny the government's motion for detention……………10

        1. Pretrial Services has recommended release on recognizance…………...10

        2. It is unlikely that this prosecution will proceed to trial, much less, result in any convictions………………………………………………….....……..…11

        3. Mr. Lacey presents no risk of flight………………………………….……12

        4. Mr. Lacey's release would pose no danger to the public………………..13

IV.  PROPOSED CONDITIONS FOR PRETRIAL RELEASE ..................................... 15

V.   CONCLUSION ................................................................................................... 15

ii

# **TABLE OF AUTHORITIES**

Page

Cases

*Adult Video Ass'n v. Reno*,
    41 F.3d 503 (9th Cir. 1994) ............................................................................................. 3

*Backpage.com, LLC v. Cooper*,
    939 F. Supp. 2d 805 (M.D. Tenn. 2013) ..................................................................... 4, 11

*Backpage.com, LLC v. Dart*,
    807 F. 3d 229 (7th Cir. 2015) ..................................................................................... 4, 11

*Backpage.com, LLC v. Hoffman*,
    2013 WL 4502097 (D.N.J. Aug. 20, 2013) ................................................................. 4, 11

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012) .................................................................. 4, 11

*Cohen v. Bd. Of Supervisors,*
    707 P. 2d 840 (Cal 1985) ................................................................................................ 11

*Ctr. For Democracy & Tech v. Pappert*,
    337 F. Supp. 2d 606 (E.D. Pa. 2004) ............................................................................... 3

*Dart v. Craigslist, Inc.,*
    665 F. Supp. 2d 961 (N.D. Ill. 2009) ........................................................................... 4, 11

*Doe v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) .............................................................................................. 3

*Doe ex rel. Roe v. Backpage.com LLC*,
    104 F.Supp.3d 139 (D. Mass. 2015) ............................................................................... 11

*Doe v. GTE Corp*,
    347 F.3d 655 (7th Cir. 2003) .......................................................................................... 11

*Fort Wayne Books, Inc. v. Indiana*
    489 U.S. 46 (1989) ........................................................................................................... 3

*Grand Jury Subpoenas to Backpage.com, LLC and Village Voice Media Holdings, LLC*
    No. GJ12-172RAJ (W.D. Wash. Jan 17, 2013) ............................................................. 11

*Jane Doe No. 1 v. Backpage.com LLC*,
    817 F.32d 12 (1st Cir. 2016) ........................................................................................... 11

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) ........................................................................................ 2, 8

*M.A. v. Willage Voice Media Holdings, LLC*,
    809 F. Supp. 2d 961 (N.D. Ill. 2009) ........................................................................... 4, 11

*People v. Ferrer*,
    No. 16FE024013 (Cal. Super. Ct. Aug 23, 2017) .......................................................... 11

*United States v. Bobrow*,
    468 F.2d 124 (D.C. Cir. 1951) .................................................................................. 10

*United States v. Gentry*,
    455 F. Supp. 2d 1018, 1020 (D. Ariz. 2006) ............................................................... 9

*United States v. Hir*,
    517 F.3d 1081 (9th Cir. 2008) .................................................................................... 9

*United States v. Hoover,*
    2014 U.S. Dist. LEXIS 69735 (D. Ariz. May 20, 2014) ..................................... 10, 13

*United States v. Motamedi*,
    767 F.2d 1403 (9th Cir. 1985) ............................................................................. 9, 10

*United States v. Peeples*,
    630 F.3d 1136 (9th Cir. 2010) .................................................................................. 14

*United States v Rueb*,
    612 F. Supp. 2d 1068 (D. Neb. 2009) ....................................................................... 13

*United States v. Salerno,*
    481 U.S. 739 (1987) .................................................................................................... 9

*United States v. Townsend*,
    897 F.2d 989 (9th Cir. 1990) ...................................................................................... 9

Codes

18 U.S.C.
    § 371, 1952(a)(3)(A) .................................................................................................... 7

    § 371, 1956(h) .............................................................................................................. 7

    § 1956(a)(1)(B)(i) ........................................................................................................ 7

    § 1956(a)(2)(A) ............................................................................................................ 7

    § 1957(a) ...................................................................................................................... 7

    § 3141 ........................................................................................................................... 9

    § 3142(e)(1) ................................................................................................................. 9

    § 3142(f)(2)(B) ........................................................................................................... 10

    § 3142(g) .................................................................................................................... 10

    § 3142(g)(3)(A) .......................................................................................................... 12

    § 3142(g)(3)(B) .......................................................................................................... 14

## I.    INTRODUCTION

Michael Lacey is an honored journalist who has been a socially and politically engaged citizen of Arizona for 48 years. As the editor-in-chief of a chain of alternative weekly newspapers, Mr. Lacey won numerous national awards for his investigative journalism and reporting about social issues, while reporters at the papers won hundreds of awards, including the Pulitzer Prize. In this capacity, and because of his willingness to fight tough First Amendment battles, Mr. Lacey has been no stranger to government overreach and utter disregard of constitutional limits. *See Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (retaliatory arrest for coverage of sheriff's activities is unconstitutional). The arrest for which the United States now seeks Mr. Lacey's detention likewise flies in the face of numerous First Amendment rulings, none of which were mentioned in the government's pleadings to this Court.

The government's failure to apprise this Court of the precarious constitutional basis for its detention request begins with its principal rationale for seeking detention: ***It claims Mr. Lacey represents a danger to the community because of his connection to a website which he sold in 2015 and which the government closed on April 6, 2018.*** The government argues that Mr. Lacey was "one of the masterminds behind Backpage.com, the internet's most notorious destination for prostitution advertisements," and that despite the fact that he sold his ownership in the company in 2015, it believes Mr. Lacey "appears to have retained some vestiges of operational control over the company." (Gov't's Mot. for Detention at 2, 8.) This is the sum total of the government's claim that Mr. Lacey's release would pose some danger to the community, despite the fact that, at the same time it was arresting Mr. Lacey (and others), it was in the process of seizing domains and closing down the Backpage.com website, the second-largest classified advertising site after Craigslist. Immediately after the arrests, the government completed its seizure of the website, and notice of the government's seizure was displayed on the website. (*See* Seizure Notice, attached as Ex. A.)

The fact the government removed its own main reason for requesting detention is remarkable, as is its failure to mention it to the Court.  But even more remarkable is its disregard of basic First Amendment principles in pursuing this course.   For more than five decades it has been the law that the government cannot seize or bar distribution of expressive materials until after an adversary hearing and judicial finding that the materials can be suppressed.  *See, e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 62-65 (1989); *accord Adult Video Ass'n. v. Reno*, 41 F.3d 503 (9th Cir. 1994) (authorization of pretrial forfeitures of constitutionally-protected materials in the federal RICO statute "is unconstitutional on its face").  Such constitutional concerns are even more pronounced in the context of Internet communications, where the speech of millions of users is subjected to prior restraint.  *Ctr. for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 655-68 (E.D. Pa. 2004) (probable cause is not a sufficient basis for blocking a website).  But concern for constitutional limits has not been apparent in the government's pursuit of Mr. Lacey.[1]

The entire thrust of the prosecution, and the asserted basis for Mr. Lacey's detention, is the claim that operators of the Backpage.com website facilitated prostitution by permitting third parties to post ads in sections "synonymous with prostitution," including "adult" and "escorts" categories.  As the Indictment sets forth, such claims have been made against Backpage.com (and other sites, like Craigslist) for the past decade.  What it does not mention, however, is that the government's underlying assumptions have

---

[1] Mr. Lacey was arrested on a sealed indictment and to date has been provided a redacted copy that fails to provide full details of the basis for his arrest. Yet, at the same time, the government's representatives have been holding press briefings and selectively releasing details to the public. *See*, *e.g*., http://www.fox10phoenix.com/news/arizona-news/backpagecom-shut-down-by-federal-agents (last visited Apr. 9, 2018).

3

been repeatedly litigated, and in each case, rejected on First Amendment grounds.[2] Case in point: The Indictment alleges that in 2015 "major credit card companies stopped processing payments for Backpage" (Indict. ¶ 14), but neglects to mention that the card companies had acted in response to a coercive campaign by Sheriff Thomas Dart of Cook County, Illinois that the Seventh Circuit later described as an effort to "crush Backpage" that it enjoined as a "quintessential first-amendment violation." *Backpage.com, LLC v. Dart*, 807 F.3d 229-30, 235 (7th Cir. 2015) (citation omitted).

Mr. Lacey is confident the current indictment will meet the same fate, and his detention in the meantime cannot be justified. This would be true even if the government's actions had not been tainted by unconstitutional actions. Pretrial Services recommended that Mr. Lacey be released on personal recognizance subject to certain conditions. The government has said nothing that supports the continued pretrial detention of Mr. Lacey, and has sought conditions of release that are more restrictive than necessary to assure his

---

[2] *See, e.g., Doe v. Backpage.com LLC*, 104 S Supp. 3d 149, 156-157 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016) ("The existence of an escorts section in a classified ad service, whatever its social merits, is not illegal."); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1282 (W.D. Wash. 2012) (escort ads have long been permitted and escort services are licensed and regulated in many states); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 833-34 (M.D. Tenn. 2013) (ads on Backpage.com are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 *9-11 (D.N.J. Aug. 20, 2013) (rejecting that argument escort ads on the website are unprotected speech); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011). *See also Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("We disagree . . . that the 'adult services' section is a special case. The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content."); *Cohen v. Bd. of Supervisors*, 707 P.2d 840, 852 (Cal. 1985) ("An escort service may very well involve lawful activities relating to sex.") (internal quotation marks omitted).

appearance and the safety of the community.  Indeed, contrary to the position taken at Mr. Lacey's initial appearance before this Court, the government has admitted in its motion that conditions exist for Mr. Lacey's release, which could – and should – have been resolved immediately.

Mr. Lacey poses no flight risk or danger to the public with respect to the Indictment.  He has been aware of the investigation in this case for some time and he not only has not fled, but offered, through counsel, to surrender himself at such time and place as directed by the United States Attorney's Office.  The government rejected that offer, choosing instead to proceed with a wholly unnecessary public arrest.  At age 69, Mr. Lacey has no significant criminal history, has never lived abroad, owns considerable real estate in the greater Phoenix area, and has close relationships with his two adult sons who were raised in Arizona.  He has performed successfully on bond in all prior (and ultimately dismissed) cases against him, and is currently in full compliance with his bond conditions in a California state case based on analogous facts to those charged in the instant indictment.  In relation to that case, he surrendered his passport to the Superior Court in Sacramento as part of his bond package.

With due consideration to the requirements of the Bail Reform Act, Mr. Lacey suggests that he be released as recommended on his recognizance on the conditions recommended by Pretrial Services as those conditions are sufficient, but not more restrictive than necessary to assure his appearance and the safety of the community.

## II. FACTS

### A. Mr. Lacey's Background.

In 1967, Mr. Lacey moved to Phoenix, Arizona to attend Arizona State University ("ASU"). In 1970, Mr. Lacey and fellow ASU alumni started the *Phoenix New Times*, a weekly newspaper addressing local and national issues, as an alternative to the coverage offered by the mainstream media. By 2005, the *New Times* was the largest chain of alt-weekly papers in the country – 17 papers with 1.8 million readers operating under the banner of Village Voice Media Holdings, LLC ("VVM"). Mr. Lacey served as the editor-in-chief of the VVM papers until 2012, receiving numerous awards for his journalistic contributions.[3]

In 2004, VVM launched a free classified ad website, Backpage.com ("Backpage"), to counter Craigslist.org, which had largely destroyed newspaper classified advertising. The Backpage website included ad categories typically found in newspapers (*e.g.*, real estate, jobs, buy/sell/trade, rentals), as well as categories for the types of ads displayed in the classified ads of alt-weekly publications, such as personals and "adult" ads (*e.g.*, ads for dating, massage, escorts).[4] Until the government's seizure of the website, third-party users posted millions of ads to Backpage each month. Users provided all of the content for their ads through an automated interface. Backpage did not dictate or require any content,

---

[3] For example, Mr. Lacey won the 2011 Clarion Award from the Association for Women in Communications for his story about a diabetic woman who died in jail custody ("What's Mom Worth?," Phoenix New Times Dec. 9, 2010), and he led a VVM series on immigration called "Amongst Us," which won the 2011 James Aronson Award for Social Justice Journalism. In 2010, Mr. Lacey was awarded first place in the Best of the West competition's Immigration and Minority Affairs reporting category for his collaborative work on the series "Are Your Papers in Order?" In 2008, Mr. Lacey was honored with the Valley of the Sun Society of Professional Journalists' President's Award for "remarkable efforts in defense of the First Amendment and all Arizona media."

[4] Craigslist offered similar categories in its "Erotic Services" section, until it shuttered the section in 2010 in response to attacks of government officials.

although it did block and remove content that violated the website's rules or that may be improper. In January 2017, Backpage terminated all of its "adult" advertisement categories.

Mr. Lacey served as editor-in-chief of VVM until 2012, when VVM sold its interests in the papers to a group of longtime company executives. In May 2015, VVM sold its remaining interests (including all interests in Backpage) to a company headed by Backpage's CEO, Carl Ferrer. Mr. Lacey has held no ownership interests in Backpage since then.

Mr. Lacey has been an active member of the Phoenix community and has engaged in numerous philanthropic endeavors, as recognized by various community leaders.

**B.     The Charged Offenses.**

Mr. Lacey and other unidentified defendants, are charged with one count of conspiracy to facilitate Travel Act – prostitution in violation of 18 U.S.C. §§ 371, 1952(a)(3)(A), separate counts of Travel Act – facilitation of prostitution in violation of 18 U.S.C. § 1952(a)(3)(A), conspiracy to commit money laundering in violation of 18 U.S.C. §§ 371, 1956(h), separate counts of concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), international promotional money laundering in violation of 18 U.S.C. § 1956(a)(2)(A), and transactional money laundering in violation of 18 U.S.C. § 1957(a).

The common foundation to each of these charges is that Mr. Lacey, who previously had a partial ownership interest in the website operated by Backpage, should be held criminally liable for the content of advertisements posted to the website by third-party users. Critically, it is not alleged that Mr. Lacey or his codefendants had any contact, of any type, with any of the individuals who posted ads by third-party users to the website. More importantly, the indictment's description of Mr. Lacey's conduct reveals that Mr. Lacey was not personally involved in reviewing, posting, or taking payment for any of the alleged advertisements at issue in this case. Consequently, Mr. Lacey had no contact with

any of the people who placed the advertisements, much less the individuals who allegedly provided the advertised services.

### C. Mr. Lacey's Criminal History.

Mr. Lacey is 69 years old and has never been charged with a crime of violence. With the exception of one conviction for driving while under the influence, the Pretrial Services Report indicates that Mr. Lacey has no other criminal convictions, federal or state.

Mr. Lacey has, however, been the target of baseless prosecutions by state and federal law enforcement offices. For example, in 2007, Mr. Lacey and Mr. Larkin were charged in the Maricopa County Court with several felonies related to their publication of unlawful grand jury subpoenas from the Maricopa County Sheriff's investigation of the *New Times*. The charges stemmed from unfavorable coverage of the Sheriff's Department by the *New Times*. Within days of Mr. Lacey's arrest, the prosecution dropped all charges. Mr. Lacey and Mr. Larkin then sued Maricopa County and the Sheriff for false arrest and violation of their constitutional rights, which resulted in Mr. Lacey and Mr. Larkin receiving a $3.75 million settlement from the County. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). Mr. Lacey and Mr. Larkin used the entire settlement to create the Frontera Fund, a nonprofit that distributes grants to groups that advocate for civil, human, and migrant rights throughout Arizona.

In September 2016, Mr. Lacey, Mr. Larkin, and current Backpage Chief Executive Officer, Carl Ferrer, were charged in the California Superior Court for Sacramento County with ten felony counts of pimping, based on classified advertisements posted on the Backpage website.[5] The defendants demurred and the California court dismissed all charges on December 9, 2016. (*See* Initial Decision on Demurrer, attached as Ex. B.) Apparently undeterred, the State filed an amended criminal complaint, charging the same

---

[5] The charges were not filed by the Sacramento County District Attorney, which would have been the usual procedure in California. Instead, the criminal complaint was filed by then-California Attorney General and U.S. Senate candidate, Kamala Harris.

8

defendants with money laundering, bank fraud, and pimping, on the theory that those charges could be supported by the ads posted by third-party users to the website operated by Backpage. The defendants again demurred. The Court granted the demurrer as to the prostitution charges. (*See* Second Decision on Demurrer, attached as Ex. C.)

Notably, in connection with that prosecution, on April 28, 2017, the Sacramento court re-admitted Mr. Lacey to bail on a $250,000 bond. Mr. Lacey immediately surrendered himself when the California charges were first filed, has appeared at numerous court dates in Sacramento, and has fully and consistently complied with all other conditions of his bond, despite facing a significant potential term of imprisonment.

### D. Pretrial Services recommends release on recognizance.

In connection with the instant indictment, Pretrial Services conducted an investigation into Mr. Lacey's background, familial and community ties, and assets, and issued a report recommending that this Court release Mr. Lacey on personal recognizance with certain specified conditions. (*See* Pretrial Services Report, attached as Ex. D.)

## III. ARGUMENT

### A. Under the governing constitutional and statutory framework, pre-trial release is the norm and not the exception.

The Bail Reform Act of 1984 (the "Act"), 18 U.S.C. § 3141 *et seq.*, provides courts with the standards and procedures governing the determination to release or detain a defendant pending trial. Detention is allowed *only* "[i]f, after a hearing pursuant to subsection (f) of [Section 3142], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). As the Supreme Court has recognized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Consequently, '[o]nly in rare circumstances should release be denied," and any "[d]oubts regarding the

propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) ("Doubts regarding the propriety of release are to be resolved in favor of defendants.").

Courts are to engage in a two-step inquiry to determine whether to release or detain a defendant prior to trial. *See United States v. Gentry*, 455 F. Supp. 2d 1018, 1020 (D. Ariz. 2006). First, the court must make a finding as to whether there exists "serious risk that [the defendant] will flee" if released from custody. *Id.* "Second, if the defendant is likely to flee, the district court must determine whether some set of conditions would sufficiently vitiate that risk." *United States v. Hoover*, 2014 U.S. Dist. LEXIS 69735, *6 (D. Ariz. May 20, 2014). The government, *at all times*, bears the burden of establishing the need for pretrial detention. The government must prove risk of flight by a preponderance of the evidence, and must demonstrate that the defendant is a danger to another person or the community by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *Motamedi*, 767 F.2d at 1406.

To determine whether pretrial detention is warranted, the Court must consider the statutory factors set forth in 18 U.S.C. § 3142(g). In considering these factors, courts must "not [be] unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons." *Motamedi*, 767 F.2d at 1407. Moreover, the Act mandates release of a defendant under the "least restrictive" condition or combination of conditions that will reasonably assure the appearance of defendant as required. 18 U.S.C. § 3142(c)(1)(B); *see United States v. Bobrow*, 468 F.2d 124, 126-27 & n.16 (D.C. Cir. 1951) (per curiam) (ruling that setting bail "higher than an amount reasonably calculated to adequately assure that the accused will appear" is excessive under the Eighth Amendment).

**B.      This Court should deny the government's motion for detention.**

The government failed to carry its burden on pretrial detention of Mr. Lacey. There is no evidence that Mr. Lacey is a risk of flight or a danger to the community. Any further pretrial detention would be punitive, which is barred under the Eighth Amendment.

1.      **Pretrial Services has recommended release on recognizance.**

In connection with the instant indictment, Pretrial Services conducted an extensive investigation into Mr. Lacey's personal history, familial and community ties, and finances. Based on its thorough assessment of Mr. Lacey, as well as the crimes charged, Pretrial Services recommended immediate release on recognizance, with certain specified conditions. Mr. Lacey is able to satisfy each of those conditions and should be released in accordance with Pretrial Services' investigation and recommendation.

2.      **It is unlikely that this prosecution will proceed to trial, much less, result in any convictions.**

The government's case is so weak that it provides no incentive for Mr. Lacey to flee. The government seeks to hold Mr. Lacey criminally liable for ads posted to the Backpage website by third-party users; however, this theory has been rejected by *every court* that has considered it. Courts have uniformly held that Backpage's publishing and receiving payments for online ads is legal, such ads are constitutionally-protected speech, and the government cannot pursue criminal charges against a website operator based on accusations of generalized knowledge, *i.e.*, that it knew or should have known that some individuals misused the site for unlawful purposes. *See, e.g., M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC,* 809 F.Supp.2d 1041 (E.D. Mo. 2011); *Backpage.com, LLC v. McKenna*, 881 F.Supp.2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F.Supp.2d 805, 830 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013); *Backpage.com, LLC v. Dart*, 807 F.2d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016); *Doe ex rel. Roe v. Backpage.com, LLC*, 104

F.Supp.3d 139 (D. Mass. 2015), *aff'd sub. nom. Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.32d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017); ; *In re Grand Jury Subpoenas to Backpage.com, LLC and Village Voice Media Holdings, LLC*, No. GJ12-172RAJ (W.D. Wash. Jan. 17, 2013); *People v. Ferrer*, No. 16FE019224, 2016 WL 7237305, at *9 (Cal. Super. Ct. Dec. 9, 2016); *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017); *see also Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003), *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967 (N.D. Ill. 2009).

Mr. Lacey is confident the instant prosecution will end with a similar ruling and intends to meet the government's charges in court rather than flee, as he has done *without exception in every civil or criminal action in the past*. If released pending trial, he will appear and forcefully contest the government's attack on the First Amendment at each stage of the proceedings. Because the government's flawed theory of criminal liability underscores every charge in the indictment, money laundering included, it is unlikely that this prosecution will survive pretrial motion practice, let alone result in any convictions. For this reason, alone, the government has failed to satisfy its burden.

3. **Mr. Lacey presents no risk of flight.**

Mr. Lacey presents no risk of flight. The single most important factor that would prevent Mr. Lacey from leaving the jurisdiction is his marriage and close relationship with his two sons, both of whom are well established in their own lives in the San Francisco Bay Area. It is unthinkable that, after vigorously defending a series of cases, brought over a number of years, Mr. Lacey would choose to become a fugitive at age 69 and forfeit his relationship with his children.

Additionally, Mr. Lacey has close personal and philanthropic ties to the Phoenix community. Among his many other charitable pursuits, he helps operate the Frontera Fund, a 501(c)(3) nonprofit that supports educational, health, human rights, civil liberties,

and arts organizations that benefit the Hispanic community in Arizona.[6] Through his professional and philanthropic endeavors, he has developed a reputation for being a person of integrity and principle. (*See* Character References, attached as Ex. E.)

Mr. Lacey's substantial real estate investments in this District and in San Francisco, too, provide a further economic deterrent to flight.

More importantly, Mr. Lacey has a perfect record of pretrial release in the criminal action pending in the State of California, in which he faces charges of similar severity. That factor, alone, negates any risk of flight in this matter. *See* 18 U.S.C. § 3142(g)(3)(A) (requiring courts to consider a defendant's "record concerning appearance at court proceedings"). Indeed, the government has acknowledged that Mr. Lacey has sought and obtained permission to travel internationally while under indictment in that case, and that he has returned and surrendered his passport after each such trip. (*See* Gov't's Mot. at 5-6.) As part of the procedures for his court-authorized international travel in that case, Mr. Lacey is in possession of his passport. Mr. Lacey has no objection to surrendering his passport to Pretrial Services as a condition of pretrial release in this case.

Mr. Lacey does have substantial financial resources and there is little doubt the government will assert this provides the opportunity to flee. However, as recognized in another prosecution in this District, "the mere opportunity to flee is not enough to justify detention as the Act does not require ironclad guarantees against flight." *Hoover* at *32. Instead, there must be some indicia of an intent to flee, of which there is none in this case. In light of Mr. Lacey's close familial and community ties, his prior performance on bond, and other relevant factors, his financial means, alone, do not provide a sufficient basis for his pretrial detention. To the extent that the government suggests that the $16.5 million held in a trust account in a Hungarian bank reflects Mr. Lacey's intent to flee, the

---

[6] *See* Frontera Fund website, available at http://www.laceyandlarkinfronterafund.org/ (last visited on Apr. 7, 2018).

government is mistaken. The trust was formed for the benefit of Mr. Lacey's sons to be held at a bank subject to the rules and regulations of the European Union. Mr. Lacey made no efforts to hide the trust from federal authorities, as it is subject to annual taxation and reporting under the Foreign Bank and Financial Accounts Reporting Form.

### 4. **Mr. Lacey's Release Would Pose No Danger to the Public.**

Mr. Lacey is a 69-year-old retiree who, through philanthropic efforts, has sought to improve the Arizona community. As noted above, no court, state or federal, has accepted the government's asserted theory of criminality in this case. It is undisputed that Mr. Lacey had no contact with any accuser or with any person engaged in sex trafficking. If he is released, there is no reason to believe he would engage in conduct that poses a danger to any person or to the community. *See United States v Rueb*, 612 F. Supp. 2d 1068, 1069-70 (D. Neb. 2009) (after considering fact that defendant was not accused of having personal contact with minor and that government did not present any evidence showing defendant posed risk of offending against minor, magistrate judge removed restrictive release conditions imposing curfew and electronic monitoring from pretrial release order).

Prior to his arrest, Mr. Lacey had been retired for several years. More importantly, the government has seized and shut down the website operated by Backpage. *A fortiori*, if he is released, he could not engage in the offense conduct for which he is accused. There is simply no reason to believe that Mr. Lacey poses any danger to the community if released pending trial. *See United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the clear and convincing standard is not met by proof that defendant is dangerous "in theory," but only by proof that defendant poses an *actual significant danger* that cannot be overcome by appropriate conditions).

Finally, the Court should not consider the pendency of the Sacramento case as a factor weighing against Mr. Lacey's release. *See* 18 U.S.C. § 3142(g)(3)(B) (courts must consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence

14

for an offense under Federal, State, or local law"). The Sacramento court has dismissed the prostitution-based charges twice. With respect to the remaining charges (involving allegations of money laundering and bank fraud), the fact that two prosecutors in different jurisdictions have chosen to bring cases at the same time does not tend logically to establish that Mr. Lacey is a greater danger to the community or poses a more serious risk of flight than a defendant who has only been charged in one jurisdiction.

## IV. PROPOSED CONDITIONS FOR PRETRIAL RELEASE

Mr. Lacey respectfully urges this Court to release him on recognizance with the conditions set forth in the report prepared by Pretrial Services (*see* Ex. D.), because those conditions are sufficient, but not more restrictive than necessary to assure his appearances and the safety of the community. These conditions are akin to those set by the Sacramento court, with which Mr. Lacey has a perfect record of compliance.

The remainder of the conditions the government seeks are more restrictive than necessary to assure Mr. Lacey's appearances and the safety of the public. In particular, electronic monitoring, which was not recommended by Pretrial Services, is unduly harsh. Mr. Lacey respectfully requests that the Court exercise its discretion to minimize the extent of any special conditions imposed. In light of Pretrial Services recommended conditions, which omit imposition of the condition of electronic monitoring, Mr. Lacey respectfully urges this Court to decline to grant the government's request for electronic monitoring.

## V. CONCLUSION

For all of the foregoing reasons, this Court should release Mr. Lacey pending trial on recognizance with the conditions recommended by Pretrial Services.

DATED:   April 9, 2018          Respectfully submitted,

LIPSITZ GREEN SCIME CAMBRIA LLP

*/s/   Paul J. Cambria, Jr.*
     PAUL J. CAMBRIA, JR.
     Attorneys for Defendant MICHAEL LACEY

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2018, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to counsel of record, including the following CM/ECF registrants:

Kevin Rapp
Assistant United States Attorney
District of Arizona
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408
Kevin.rapp@usdoj.gov

Dominc Lanza
Dominic.lanza@usjoj.gov

MARGARET PERLMETER
margaret.perlmeter@usdoj.gov)


Reginald E. Jones
Trial Attorney
United States Department of Justice
Child Exploitation and Obscenity Section
1400 New York Avenue, NW
Washington, DC 20530
Reginald.jones4@usdoj.gov

By: Clair H. Wendt

119103-0007/139355604.1