# **<u>Exhibit K</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION** RECEIVED

| | |
|---|---|
| [REDACTED] | ) |
| | ) 2017 MAY -5 P 2: 00 |
| Plaintiff, | ) |
| | ) DEBRA P. HACKETT, CLK |
| v. | ) U.S. DISTRICT COURT |
| | ) MIDDLE DISTRICT ALA |
| BACKPAGE.COM, LLC, et al.; | ) |
| | ) CIVIL ACTION NO. 1:17-cv-299-WKW |
| Defendants. | ) |
| | ) (removed from Houston County |
| | ) Circuit Court, No. 38-CV-2017- |
| | ) 900041.00) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## NOTICE OF REMOVAL

COMES NOW Medalist Holdings, Inc., joined by Leeward Holdings, LLC; Camarillo

Holdings, LLC; Michael Lacey; James Larkin; Backpage.com, LLC; IC Holdings, LLC;

Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; and Carl Ferrer (collectively, "the

Backpage.com Defendants"); to give notice of removal of the above-captioned civil action

pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, from the Circuit Court of Houston County,

Alabama to the United States District Court for the Middle District of Alabama. In accordance

with Local Rule 81.1, clear, legible copies of the Complaint as well as all records and

proceedings in this matter from the state court are attached together to this Notice as **Appendix**

**A**. In support of this Notice of Removal, the Backpage.com Defendants state as follows:

## A. Introduction

1.     Plaintiff filed an Alabama state court action on January 25, 2017, alleging Alabama state-law claims against the Backpage.com Defendants,[1] as well as Choice Hotels, International, Inc., Veda LLC, and Nirav Joshi, who are the corporate owners and operator of a Houston County hotel (collectively, the "Hotel Defendants"), and Santiago Alonso, who is incarcerated at the Bibb County Correction Facility.

2.     Plaintiff has served copies of the Complaint on all of the defendants. The last defendant served was Medalist Holdings, Inc., which waived service on April 7, 2017. This Notice of Removal is timely because Medalist Holdings, Inc., joined by the other Backpage.com Defendants, is filing it within 30 days after the Complaint was served on it. 28 U.S.C. § 1446 (b)(1), (2).

3.     Removal is proper based on diversity jurisdiction under 28 U.S.C. § 1332, and the doctrine of fraudulent misjoinder.

4.     Plaintiff is a citizen of Mississippi. The Backpage.com Defendants are citizens of Delaware, Arizona, and Texas. Accordingly, there is complete diversity between Plaintiff and the Backpage.com Defendants. The Hotel Defendants are citizens of Maryland and Alabama, and Defendant Santiago Alonso is a citizen of Alabama, where he is currently incarcerated. However, the citizenship of Alonso and the Hotel Defendants should be disregarded, and they need not join in seeking removal of this action, because Plaintiff has fraudulently misjoined the claims against them with the claims against the Backpage.com Defendants in violation of Rules 20 and 21 of the Federal Rules of Civil Procedure. Plaintiff's claims against Alonso for his trafficking, exploitation, and abuse of her, and against the Hotel Defendants for their alleged roles in facilitating her trafficking and exploitation, have no connection to her claims against the Backpage.com Defendants for, in essence, providing an

---

[1] On April 7, 2017, Plaintiff substituted Medalist Holdings, Inc. for the erroneously named defendant Medalist Holdings, LLC. Declaration of Robert D. Segall ("Segall Decl."), Exh. Q.

online forum for third-party advertising – which claims are absolutely barred in any event under the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230").

5.     The Plaintiff's Complaint does not pray for a specific amount of damages. However, pursuant to 28 U.S.C. §§ 1332(a) and 1446(c)(2)(A), it is clear from the nature of Plaintiff's claims and alleged harm, as well as evidence proffered by the plaintiffs in a nearly identical lawsuit filed by Plaintiff's counsel, that the amount in controversy in this action substantially exceeds the requisite minimum of $75,000.

6.     Accordingly, this Court has diversity jurisdiction of all claims between Plaintiff and the Backpage.com Defendants, and should sever and remand to the Houston County Circuit Court the claims against the Hotel Defendants and Alonso.

### B. This Notice Is Timely.

7.     On January 25, 2017, an individual alleged to have been a minor at the time of the events at issue, and identified as "K.R.," filed a complaint in the Circuit Court of Houston County, Alabama, Case No. 38-CV-2017-900041.00, against the Backpage.com Defendants and others ("the Complaint"). The Complaint is captioned *[Redacted] v. Backpage.com, LLC; Camarillo Holdings, LLC; Medalist Holdings, LLC; Leeward Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC; Atlantische Bedrijven C.V.; Carl Ferrer; James Larkin; Michael Lacey; Choice Hotels International, Inc.; Veda LLC; Nirav Joshi; Santiago Alonso; FICTITIOUS DEFENDANTS A, B, and C are those entities or persons that owned managed, and/or operated the motel located at 3011 Ross Clark Circle, Dothan, Alabama in July 2013 and August 2013; FICTITIOUS DEFENDANTS D, E, and F are those entities or persons that financially benefitted from the human trafficking of the Plaintiff; FICTITIOUS DEFENDANTS G, H, and I are those persons or entities responsible for training the employees of the motel located at 3011 Ross Clark Circle, Dothan, AL; FICTITIOUS DEFENDANTS J, K, and L are those persons or entities that were involved in the human trafficking of the Plaintiff; FICTITIOUS DEFENDANTS M, N, and O are those persons or entities who owned, operated, and controlled www.backpage.com, including its content, during and after the time that the*

'adult' advertisements involving Plaintiff were published on www.backpage.com; FICTITIOUS DEFENDANTS P, Q, and R, whether singular or plural, that entity which, concerning the occasion made the basis of this suit, that was the principal of any of the named or above-described fictitious party defendants; FICTITIOUS DEFENDANTS S, T, and U, whether singular or plural, that entity which is the successor-in-interest of the named or above-described fictitious party defendants. Plaintiff avers that the identity of the fictitious party defendants herein is otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identity as proper party defendants is not known to Plaintiff at this time, and their true names will be substituted by amendment when ascertained. See Segall Decl. at ¶ 4, Exhibit A.

8.     On January 27, 2017, Plaintiff served the Complaint on Choice Hotels International, Inc. See Segall Decl. at ¶ 5, Exhibit B.

9.     On January 28, 2017, Plaintiff served the Complaint on Veda LLC and Nirav Joshi. See Segall Decl. at ¶ 6, Exhibits C-D.

10.    On January 30, 2017, Plaintiff served the Complaint on Santiago Alonso. See Segall Decl. at ¶ 7, Exhibit E.

11.    On January 30, 2017, Plaintiff served the Complaint on Camarillo Holdings, LLC; Leeward Holdings, LLC; Backpage.com, LLC; and IC Holdings, LLC. See Segall Decl. at ¶ 8-11, Exhibits F-I. On the same day, Plaintiff served the Complaint on Dartmoor Holdings, LLC, though a "Notice of No Service" was erroneously filed by the Clerk of the Houston Circuit Court instead of a return of service. See id. at ¶ 12, Exhibit J.

12.    On January 31, 2017, Plaintiff served the Complaint on Atlantische Bedrijven C.V. See Segall Decl. at ¶ 13, Exhibit K.

13.    On March 6, 2017, Carl Ferrer signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h). See Segall Decl. at ¶ 15, Exhibit M.

14.    On March 8, 2017, James Larkin signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h). See Segall Decl. at ¶ 16, Exhibit N.

15. On March 9, 2017, Michael Lacey signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h). *See* Segall Decl. at ¶ 17, Exhibit O.

16. On April 3, 2017, service was attempted but not completed on erroneously named defendant Medalist Holdings LLC. *See* Segall Decl. at ¶ 18, Exhibit P.

17. On April 7, 2017, Plaintiff filed a Notice of Substitution and Plaintiff's First Amended and/or Restated Complaint, which substituted the name Medalist Holdings, Inc. in lieu of and in place of Medalist Holdings LLC. *See* Segall Decl. at ¶ 19, Exhibit Q. This is the operative complaint in this action.

18. On April 7, 2017, Medalist Holdings, Inc., through its counsel, signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h). *See* Segall Decl. at ¶ 20, Exhibit R.

19. Plaintiff's Complaint alleges four causes of action: Violation of Alabama's Anti-Human Trafficking Statute, Ala. § 13A-6-150 *et seq.* (Count I); Outrage (Count II); Negligent and/or Wanton Conduct (Count III); and Unjust Enrichment (Count IV). *See* Compl. ¶¶ 61-73.

20. The Backpage.com Defendants are named in all four Counts.

21. Counts I and IV are alleged against all Defendants. Count II is alleged against the Backpage.com Defendants, Veda LLC, Joshi, and Alonso. Count III is alleged against the Backpage.com Defendants and the Hotel Defendants.

22. Plaintiff seeks damages against all Defendants "separately and severally." *See* Compl., Prayer for Relief.

23. The Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), because the Backpage.com Defendants have filed it within 30 days after defendant Medalist Holdings, Inc. signed a waiver of service of a copy of the Complaint.

**C. There Is Complete Diversity Between Plaintiff and the Backpage.com Defendants.**

24. Pursuant to 28 U.S.C. § 1441(a), defendants may remove any civil action brought in a state court of which the district courts of the United States have original jurisdiction.

25. Federal district courts have original jurisdiction of all civil actions between citizens of different states, and between a citizen of a state and a citizen or subject of a foreign state, where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1), (2).

26. A natural person is a citizen of the state where the person is domiciled, *i.e.*, where the person resides with the intention to remain or return for more than a temporary period. *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002).

27. LLCs are treated like limited partnerships for purposes of determining diversity jurisdiction, and are deemed to be citizens of every state of which a member is a citizen. *Rolling Greens MHP v. Comcast SCH Holdings*, 374 F.3d 1020, 1022 (11th Cir. 2004).

28. For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is determined by the "nerve center" test, *i.e.*, "the place where a corporation's officers direct, control, and coordinate the corporations' activities," which ordinarily is the "place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

29. At the time the Complaint was filed, and as of the date of the filing of this Notice, Plaintiff was and is a resident and citizen of Lauderdale County, Mississippi (which is also the location of her childhood home). Compl. ¶¶ 5, 49.

30. Plaintiff's Complaint correctly alleges that Backpage.com, LLC; Camarillo Holdings, LLC; Medalist Holdings, Inc.; Leeward Holdings, LLC; Dartmoor Holdings, LLC; and IC Holdings, LLC all are Delaware Limited Liability Companies ("LLCs"). Compl. ¶ 6-11.

31.    At the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings, Inc. was and is a Delaware corporation, with its principal place of business in Arizona. It has always been privately held, and no publicly held corporation has ever owned an interest in it.

32.    At the time the Complaint was filed, and as of the date of the filing of this Notice, Leeward Holdings, LLC was and is a Delaware limited liability company, wholly owned by Medalist Holdings, Inc. Leeward Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

33.    At the time the Complaint was filed, and as of the date of the filing of this Notice, Camarillo Holdings, LLC was and is a Delaware limited liability company, wholly owned by Leeward Holdings LLC. Camarillo Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

34.    Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings Inc., Leeward Holdings, LLC, and Camarillo Holdings, LLC were and are all citizens of Delaware and Arizona.

35.    At the time the Complaint was filed, and as of the date of the filing of this Notice, James Larkin was and is a resident and citizen of Arizona.

36.    James Larkin owns a residence near Phoenix in the State of Arizona and has owned a residence in or near Phoenix since 1982. He has lived near Phoenix since 1952. His current residence near Phoenix is his primary residence and has been so since 2007.

37.    James Larkin considers his residence in Arizona to be his permanent home and, when he departs the State of Arizona, he does so with the intent to return to his residence in Arizona.

38.    James Larkin has been employed in or near Phoenix, Arizona since 1970.

39.    James Larkin files his state income taxes in Arizona as a resident of Arizona and has done so since 1968. He also pays and has always paid real and personal property taxes in Arizona.

40.     James Larkin is registered to vote in the State of Arizona and has been registered to vote in Arizona since about 2000.

41.     James Larkin has an Arizona driver's license and has had an Arizona driver's license since 1966.

42.     James Larkin has automobiles in Arizona, which are registered in Arizona. He has owned or leased automobiles that have been registered in Arizona since 1968.

43.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Michael Lacey was and is a resident and citizen of Arizona.

44.     Michael Lacey owns a residence near Phoenix in the State of Arizona and has owned a residence in or near Phoenix since the mid-1990s. He has lived in Phoenix since 1966. His current residence near Phoenix is his primary residence and has been so since the late 1990's.

45.     Michael Lacey considers his residence in Arizona to be his permanent home and, when he departs the State of Arizona, he does so with the intent to return to his residence in Arizona.

46.     Michael Lacey has been employed in or near Phoenix, Arizona since 1970.

47.     Michael Lacey files his state income taxes in Arizona as a resident of Arizona and has done so since 1970. He also pays, and for many years has paid, real and personal property taxes in Arizona.

48.     Michael Lacey is registered to vote in the State of Arizona and has been registered to vote in Arizona since the mid-1990s.

49.     Michael Lacey has an Arizona driver's license and has had an Arizona driver's license since the 1990s.

50.     Michael Lacey has automobiles in Arizona, which are registered in Arizona. He has owned or leased automobiles that have been registered in Arizona since 1990.

51.    At the time the Complaint was filed, and as of the date of the filing of this
Notice, the ownership structure of the remaining Backpage.com Defendants was and is as
follows:

      a.  Backpage.com, LLC was and is a Delaware limited liability company,
         wholly owned by IC Holdings, LLC.

      b.  IC Holdings, LLC was and is a Delaware limited liability company, wholly
         owned by Dartmoor Holdings, LLC.

      c.  Dartmoor Holdings, LLC was and is a Delaware limited liability company,
         wholly owned by Atlantische Bedrijven C.V.

      d.  Atlantische Bedrijven C.V. was and is a Dutch limited partnership, wholly
         owned by Kickapoo River Investments, LLC and Lupine Investments LLC.

      e.  Kickapoo River Investments, LLC and Lupine Investments LLC are each
         Delaware limited liability companies, each wholly owned by Amstel River
         Holdings, LLC.

      f.  Amstel River Holdings, LLC is a Delaware limited liability company,
         wholly owned by the Vicky Ferrer Family Trust.

      g.  Backpage.com, LLC, IC Holdings, LLC, Dartmoor Holdings, LLC,
         Atlantische Bedrijven C.V., Kickapoo River Investments, LLC, Lupine
         Investments LLC, and Amstel River Holdings, LLC have always been
         privately held, and no publicly held corporation has ever owned an interest
         in any of them.

52.    Thus, tracing up the ownership chain, at all relevant times, the citizenship of
Backpage.com, LLC, IC Holdings, LLC, Dartmoor Holdings, LLC, Atlantische Bedrijven
C.V., Kickapoo River Investments, LLC, Lupine Investments LLC, and Amstel River
Holdings, LLC, for diversity purposes, are based on the citizenship of their ultimate owner, the
Vicky Ferrer Family Trust.

53.    The Trustee of the Vicky Ferrer Family Trust is Carl Ferrer.  The current beneficiaries of the Trust are Carl Ferrer and his wife, April E. Ferrer.

54.    Any potential future beneficiaries of the trust who currently are identifiable are citizens of either Texas or Oklahoma.  No current beneficiary of the trust, or potential future beneficiary of the trust who is currently identifiable, is or has been a citizen of Alabama.

55.    At the time the Complaint was filed, and as of the date of the filing of this Notice, Carl Ferrer and April Ferrer were and are residents and citizens of Texas.

56.    Carl and April Ferrer have owned a residence near Dallas in the State of Texas since August 2005.  The residence is their primary residence and has been so since August, 2005.

57.    Carl and April Ferrer consider their residence in Texas to be their permanent home and, when they depart the State of Texas, they do so with the intent to return to their residence in Texas.

58.    Carl Ferrer has been employed in or near Dallas since August 2005.

59.    Carl and April Ferrer file their income taxes in Texas as residents of Texas and have done so since 2005.  They also pay real and personal property taxes in Texas.

60.    Carl Ferrer is registered to vote in the State of Texas and has been registered to vote in Texas since 2008.  April Ferrer is registered to vote in the State of Texas and has been registered to vote in Texas since approximately 2005.

61.    Carl and April Ferrer have Texas driver's licenses and have had Texas driver's licenses since 2006.

62.    Carl and April Ferrer have automobiles in Texas, which are registered in Texas. They have owned automobiles that have been registered in Texas since 2006.

63.    Carl Ferrer has had the same physician for over 16 years; the physician's office is in Dallas, Texas.

64.    Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, the Vicky Ferrer Family Trust was and is a citizen of Texas, given that its trustee

and all its current beneficiaries are citizens of Texas. Accordingly, the LLCs and limited partnership owned, directly and indirectly, by the Trust were and are all citizens of Texas for diversity purposes, including Backpage.com, LLC; IC Holdings, LLC; Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; Kickapoo River Investments, LLC; Lupine Investments LLC; and Amstel River Holdings, LLC.

65.     None of the Backpage.com Defendants, either individually or through corporate ownership or membership, are or ever have been citizens of the State of Alabama.

66.     Accordingly, at the time the Complaint was filed, and as of the date of the filing of this Notice, complete diversity of citizenship existed and exists between Plaintiff (who is a Mississippi citizen) and all of the Backpage.com Defendants (which are citizens of Delaware, Arizona, and Texas).

67.     When a plaintiff improperly joins claims in a state court action, a federal district court to which the case is removed should disregard the citizenship of non-diverse parties that are not properly joined under Fed. R. Civ. P. 20, sever and remand claims involving such non-diverse parties under Fed. R. Civ. P. 21, and recognize federal diversity jurisdiction for the remaining claims. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-73 (11th Cir. 2000). This doctrine is commonly referred to as "fraudulent" misjoinder; courts find misjoinder is "fraudulent"[2] when a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability, and the claims against the two defendants have no real connection. *Triggs*, 154 F.3d at 1287; *Callen v. Daimler Trucks North America*, 2016 U.S. Dist. Lexis 84112, at *5 (M.D. Al. June 29, 2016).

---

[2] Notwithstanding the use of the word "fraudulent," the application of the doctrine does not depend on showing actual fraud, culpable mental state, or bad faith on the part of Plaintiff or counsel. *See AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1291 (11th Cir. 1998).

### D. The Non-Diverse Defendants Are "Fraudulently" Misjoined.

68.    Under Fed. R. Civ. P. 20, joinder of defendants in a single action requires a claim for relief against all defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and a common question of law or fact. Fed. R. Civ. P. 20(a)(2). At any time, and by motion or on its own, a federal court may add or drop any party that has been improperly or fraudulently misjoined. Fed. R. Civ. P. 21.

69.    A defendant's right of removal cannot be defeated by a fraudulent misjoinder of claims or parties that have no real connection with one another. *Tapscott*, 77 F.3d at 1360; *Callen*, 2016 U.S. Dist. Lexis 84112, at *5-10; *Atkins v. Smalbach*, 2015 U.S. Dist. Lexis 31185, at *8 (M.D. Fla. Feb. 6, 2015) ("Fraudulently joining Mick to the claims against Smalbach would unfairly deprive Mick of its constitutionally and statutorily protected right to adjudicate the claims against it in a federal forum.")

70.    Plaintiff has fraudulently misjoined Santiago Alonso and the Hotel Defendants in this action under Fed. R. Civ. P. 20 and 21 and applicable case law.

71.    Courts find that defendants are fraudulently misjoined when the claims against them are "factually distinct" and there is "no real connection between the[m.]" *Baums v. General Insurance Co.*, 2006 U.S. Dist. Lexis 77820, at *7 (M.D. Ala. Oct. 23, 2006). Fraudulent joinder is found when, among other things, the claims against one defendant involve markedly different facts and evidence from the claims against another defendant. *See, e.g., M.W. v. Ford Motor Co.*, 2015 U.S. Dist. Lexis 36895, at *11-21 (M.D. Fla. March 24, 2015) (finding fraudulent joinder where facts needed to support medical malpractice claim concerning treatment of Plaintiff's injuries were wholly distinct from facts that would support product liability and negligence claims about vehicle in which injuries occurred); *Atkins*, 2015 U.S. Dist. Lexis 31185, at *15-16 (M.D. Fla. Feb. 6, 2015) (finding fraudulent misjoinder where claim seeking approval of arbitration award against non-diverse defendant over fraudulent sales of securities shared no common questions of law or fact with claim alleging that diverse

defendant was an agent that participated in the sale of the securities); *Lopez v. Sturdivant*, 2010 WL 3121750, at \*3 (S.D. Miss. Aug. 6, 2010) (finding fraudulent misjoinder of plaintiffs' claims against in-state contractor for defective construction of a house with claims against out-of-state insurer for improper denial of coverage); *Willingham v. State Farm Ins. Co.,* 2009 WL 2767679 at \*3-4 (N.D. Miss. Aug. 27, 2009) (finding fraudulent joinder of claims against insurance company arising from house fire, with claims against non-diverse construction company for defective work in rebuilding the house after the fire); *Nsight Technologies, LLC v. Fed. Ins. Co.*, 2009 WL 1106868, at \*4 (S.D. Miss. Apr. 23, 2009) (claims against employee for conversion and against insurer concerning coverage for alleged conversion were fraudulently misjoined because "[w]hile the claims against [both defendants] arise out of the alleged embezzlement, the claims 'involve different factual issues and different legal issues.'").

### E. Defendant Alonso and the Hotel Defendants Are Fraudulently Misjoined.

72. The Complaint alleges that Alonso is a prisoner incarcerated in Bibb County, Alabama. Compl. ¶ 19. It further alleges that Alonso was a pimp who posted photographs of K.R. on Backpage.com, solicited and arranged for adults to have sex with K.R., and received money for prostituting her. *Id.* ¶ 54.

73. On May 15, 2014, Alonso was convicted after a jury trial on one count of first-degree human trafficking and one count of felony distribution of drugs to a minor. *Alonso v. State*, No. CR-13-1546, 2016 WL 661274, at \*1 (Ala. Crim. App. Feb. 12, 2016). Plaintiff K.R. was the victim of both crimes. *Id.* On June 18, 2014, Alonso was sentenced to forty years in prison for the human-trafficking charge and ten years in prison for distribution of drugs to a minor, to be served concurrently with a 12-month sentence for misdemeanor marijuana possession. *Id.*

74. K.R.'s claims against Alonso are based on his rape, physical assault, trafficking, exploitation and abuse of her. *See* Compl. ¶¶ 49-55.

75. The Complaint alleges that the Hotel Defendants owed a duty to Plaintiff in owning and operating the Quality Inn in Dothan, Alabama, where Alonso's trafficking,

exploitation, and abuse allegedly occurred, and that they breached that duty by variously permitting Alonso to commit his crimes there, or not intervening to stop him and others from doing so. *See* Compl. at ¶¶ 57, 69-70.

76.     K.R.'s claims against the Hotel Defendants are based on principles of physical premises liability, in particular, the Hotel Defendants' alleged indifference to the fact that Alonso's actions occurred in a hotel they owned and operated.

77.     K.R.'s claims against the Backpage.com Defendants, on the other hand, are based on the allegations that the Backpage.com website was at least one Internet site where Alonso posted advertisements about her, Backpage.com received fees for the ads, and that it "made no effort at any time to stop his criminal activity." Compl. at ¶¶ 68.

78.     Markedly different evidence and questions of law are involved in K.R.'s claims against Alonso and the Hotel Defendants, on the one hand, and Plaintiffs' claims against the Backpage.com Defendants, on the other.

79.     Specifically, the evidence with regard to K.R.'s claims against Alonso would concern his trafficking, exploitation, and abuse of her. The evidence for claims against the Hotel Defendants apparently would concern the extent to which they were privy to Alonso's trafficking and exploitation of K.R., and, in particular: how the Hotel Defendants operated the hotel; hotel policies with respect to training employees and monitoring hotel activities; how the Hotel Defendants' employees interacted with Alonso and K.R., what they knew, and whether and how they reported it; and other factual questions grounded in the operation of these particular hotels and hotel brands. *See* Compl. at ¶¶ 57, 69-70. What's more, the case against the Hotel Defendants is further complicated by issues related to the franchise relationship among the Hotel Defendants; Choice Hotels' liability may turn on whether it is found to have exercised sufficient supervisory control over, or had an agency relationship with, the franchisee that operated the hotel where K.R. allegedly was exploited and abused. *See* Defendant Choice Hotels International, Inc.'s Motion to Dismiss and Memorandum in Support, attached as Exhibit L to the Segall Decl.

80. The evidence to establish Alonso's illegal conduct, and to resolve factual questions concerning hotel policy, training and operations; employee conduct; and legal and factual questions concerning franchisor liability is wholly unrelated to the operation of the Backpage.com website or the circumstances of the ads about the Plaintiff posted on the website.

81. Moreover, a central issue with respect to the Backpage.com is the immunity from suit prescribed by the CDA. Section 230 of the CDA states that "[n]o provider ... of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It expressly preempts state laws: "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). Because the Backpage.com Defendants are being sued based entirely on third-party speech posted online, the claims against them raise issues of law entirely distinct from the claims concerning Mr. Alonso's physical conduct, or the Hotel Defendants' operation of their physical premises.

82. In short, the Backpage.com Defendants' operation of a Web site in which third parties allegedly posted online advertisements is markedly different from the alleged commission or facilitation of the physical and sexual abuse by the misjoined defendants. As Alabama courts repeatedly have held, defendants are "not deemed to be 'joint tortfeasors where the acts of the two defendants 'did not combine to cause any one injury.'" *Nicholson v. Pickett*, 2016 WL 854370, at *18 (M.D. Ala. Mar. 4, 2016) (quoting *Lowry v. Garrett*, 792 So. 2d 1119, 1123 (Ala. Civ. App. 2001) and *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 325 (Ala. 1999)). Here, the Complaint alleges, at most, successive torts, rather than conduct by tortfeasors acting jointly. Alonso's liability for trafficking, exploiting, and abusing K.R. is independent from any acts or omissions by the Backpage.com Defendants. Even assuming the Backpage.com Defendants could be liable for running a website where K.R.'s picture was posted by a third party, the manner in which the Backpage.com Defendants operated this website is utterly unnecessary to establish Alonso's liability for coercing K.R. into sexual

servitude and abusing her. *See* Compl. at ¶¶ 50-57; Al. Crim. C. § 13A-6-152(a). Likewise, the alleged liability of the Hotel Defendants in connection with hotel premises does not depend on any acts or omissions by the Backpage.com Defendants in running a website. *See* Compl. at ¶¶ 54, 47. Rather, the allegations are analogous to numerous decisions finding claims based on separate or successive torts were fraudulently misjoined. *E.g., Stone v. Zimmer, Inc.*, 2009 U.S. Dist. Lexis 59125, at *10-11 (S.D. Fla. June 25, 2009) (claims against manufacturer of hip implant were fraudulently misjoined with malpractice claims against doctor for failing to diagnose that implant had fractured); *Sturdivant*, 2010 WL 3121750 at *3; *Willingham*, 2009 WL 2767679 at *3-4.

### F. A Misjoined Defendant Need Not Consent to Removal.

83. Although ordinarily all defendants in a state court action must join in the petition for removal, 28 U.S.C. § 1446(b)(2)(A), the rule of unanimity does not apply to fraudulently joined parties, who need not consent to removal. *Callen*, 2016 U.S. Dist. Lexis 84112, at *9.

84. Because Alonso and the Hotel Defendants are fraudulently misjoined as defendants in Plaintiff's Complaint, this action may be removed without their joinder or consent.

85. All other defendants join in this Notice of Removal.

### G. The Amount-in-Controversy Requirement Is Satisfied.

86. In the Eleventh Circuit, when a complaint does not specify a dollar amount for damages, the court may determine that the amount in controversy is facially apparent from the complaint on the basis of evidence submitted by the defendant combined with "reasonable deductions, reasonable inferences, or other reasonable extrapolations" and the court's "judicial experience and common sense." *Abner v. U.S. Pipe & Foundry*, 2017 U.S. Dist. Lexis 19058, at *16-17 (N.D. Ala. Feb. 10, 2017) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) and *Roe v. Michelin N. America*, 613 F.3d 1058, 1062 (11th Cir. 2010)); *see also Johnson v. Blackburn*, 2016 U.S. Dist. Lexis 138108 (N.D. Ala. Oct. 5, 2016)

(requirement satisfied where plaintiff demanded compensatory and punitive damages and alleged she suffered "serious injuries to her head and neck, causing 'great physical pain and mental anguish,' and to her lower back, knees, and shoulders, resulting in necessary medical expenses"); *Case v. Cincinnati Insurance Co.*, 2016 U.S. Dist. Lexis 124483, at *1-2 (M.D. Fla. Sept. 14, 2016) (requirement met where plaintiff's alleged damages included permanent injuries to body and mind, physical and mental pain and suffering and disability, medical, nursing, hospitalization treatment/expenses; travel expenses; loss wages; permanent impairment and loss of ability to work and earn money; and impairment in capacity to lead and enjoy a normal life). When the amount of a plaintiff's claim for damages is unspecified, "a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Tapscott*, 77 F.3d at 1356–57.

87.     Here, the Complaint seeks compensatory damages, punitive damages, treble damages, and attorneys' fees. Compl. ¶ 63. Plaintiff alleges that she has "suffered and continues to suffer damages, including, but not limited to personal injury, mental anguish, loss of quality of life, and emotional pain and suffering," and that she has incurred or will incur medical or therapy expenses. *Id.* ¶¶ 65, 70.

88.     Although Plaintiff's Complaint does not pray for a specific amount of damages, the amount in controversy here is demonstrated by a nearly identical action filed July 30, 2012, in the Western District of Washington alleging sex trafficking of a minor against Backpage.com, LLC and others. *See* Second Amended Complaint at ¶ 1.1 - 1.2, 4.1 - 6.7, *J.S. v. Village Voice Media Holdings, LLC, d/b/a Backpage.com*, Case No. 12-2-11362-4 ("Washington Action."), attached as Exhibit S to the Declaration of Ambika Kumar Doran ("Doran Decl."). In the Washington Action, Backpage.com requested a statement of damages, as permitted by Washington law, and the plaintiffs responded that they each sought damages of at least $250,000, and ranging up to $1,500,000. Doran Decl. at ¶ 3, Exhibit T. The complaint in the Washington Action mirrored many of the claims asserted here, including negligence, outrage, violation of the state's Sexual Exploitation of Children Act, and unjust enrichment.

Doran Decl., Exhibit S at ¶ 7.1 - 7.11, 7.16 - 7.18. As K.R. alleges here, the Washington Action alleged that each plaintiff had suffered "severe emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy life, past and future medical expenses" and was owed "general and special damages[.]" *See* Doran Decl., Exhibit S at ¶¶ 4.4, 5.5, 6.7.

89.      The amount in controversy in the instant action easily exceeds the requisite minimum $75,000. The Plaintiff asserts nearly identical claims against Backpage.com, LLC, and seeks similar relief. *See* Compl. at ¶¶ 65, 68, 70 (alleging Plaintiff "has suffered and continues to suffer damages, including, but not limited to personal injury, mental anguish, loss of quality of life, and emotional pain and suffering," that she either has or expects to "incur medical and/or therapy expenses[,]" and that she seeks "compensatory damages, punitive damages, and treble damages[.]") *See, e.g., Brown v. State Farm Fire & Casualty Co.*, 2017 U.S. Dist. Lexis 16898, at *8 (N.D. Ala. Feb. 7, 2017) (where plaintiff did not contest amount in controversy, court found requirement met on basis of, among other things, punitive damages sought). The Court can reasonably infer that the same or a  substantially similar level of damages are at issue here as in the Washington Action.

**H.      The Remaining Procedural Requirements for Removal Are Satisfied.**

90.      The Backpage.com Defendants will promptly give written notice of the filing of the Notice of Removal to Plaintiffs, and will file a copy of the Notice of Removal with the Clerk of the Circuit Court of Alabama for Houston County, pursuant to 28 U.S.C. § 1446(d).

///

///

///

///

///

///

///

91.     Pursuant to 28 U.S.C. § 1446(a) and Middle District of Alabama Local Rule
81.1, the Backpage.com Defendants have attached as **Appendix A** a true and correct "copy of
all process, pleadings, and orders served upon [the Backpage.com Defendants]" in the state
court action, together with clear and legible copies of all additional records and proceedings in
the state court file as of May 5, 2017.


DATED this 5th day of May, 2017.


DAVIS WRIGHT TREMAINE LLP
JAMES C. GRANT (*pro hac vice pending*)
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150
Facsimile: (206)757-7700
jimgrant@dwt.com

DAVIS WRIGHT TREMAINE LLP
BOB CORN-REVERE (*pro hac vice
pending*)
RONALD LONDON (*pro hac vice pending*)
PETER KARANJIA (*pro hac vice pending*)
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
bobcornrevere@dwt.com
ronnielondon@dwt.com
peterkaranjia@dwt.com

DAVIS WRIGHT TREMAINE LLP
SCOTT COMMERSON (*pro hac vice
pending*)
BRENDAN N. CHARNEY (*pro hac vice
pending*)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-6800
Facsilike: (213) 633-6899
scottcommerson@dwt.com
brendancharney@dwt.com

Robert D. Segall ASB-7354-E68R
Attorneys for Defendants
BACKPAGE.COM, LLC; CAMARILLO
HOLDINGS, LLC; MEDALIST
HOLDINGS, INC.; LEEWARD
HOLDINGS, LLC; BACKPAGE.COM,
LLC; DARTMOOR HOLDINGS, LLC; IC
HOLDINGS, LLC; ATLANTISCHE
BEDRIJVEN C.V.; CARL FERRER;
JAMES LARKIN; and MICHAEL LACEY

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2017, I filed the foregoing with the Clerk of the Court and will serve the following counsel of record with a copy of such filing by U.S. Mail and/or, at their election, electronic mail:

Gregory M. Zarzaur, Esq.
Zarzaur Mujumdar & Debrosse
2332 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 983-7985
gregory@zarzaur.com
Counsel for Plaintiff

Pamela S. Hallford, Esq.
Carr Allison
256 Honeysuckle Rd
Brightleaf Court, Suite 6
Dothan, AL 36305
Phone: (334) 712-6459
Email: pshallford@carrallison.com

Vincent A. Noletto, Jr., Esq.
Carr Allison
6251 Monroe St.
Suite 200
Daphne, AL 36526
Phone: (251) 626-9340
vnoletto@carrallison.com

Sara M. Turner, Esq.
Austin K. Smith, Esq.
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
420 North 20th Street
Wells Fargo Tower, Suite 1400
Birmingham, AL 35203
Phone: (205) 328-0480
smturner@bakerdonelson.com
aksmith@bakersdonelson.com
***Counsel for Defendant Choice Hotels International, Inc.***

***Counsel for Veda LLC***

and that I served a copy of same via U.S. Mail, postage prepaid and properly addressed to the following:

Santiago Alonso
AIS # 00295466
Bibb Correctional Facility
565 Bibb Lane
Brent, AL 35034

Nirav Joshi
3011 Ross Clark Circle
Dothan, AL 36301

_____
Of Counsel