**EXHIBIT B**

## PROFFER/INTERVIEW AGREEMENT

The ground rules and conditions for any proffer/interview are set forth in this document, which is 3 pages.

The parties to this Agreement are the First Assistant United States Attorney through her Assistant U.S. Attorneys, Kevin M. Rapp, Dominic Lanza, Margret Perlmeter and Reginald Jones, Trial Attorney, Department of Justice, Kirsta Leeburg Melton, Assistant Attorney General, State of Texas, Randy Mailman, Deputy Attorney General, Office of the Attorney General, State of California, ("the Prosecution") and Carl Ferrer and Mr. Ferrer's counsel, Nanci Clarence and Jonathan Baum.

This Agreement binds the U.S. Department of Justice, and the Attorney Generals' Offices for the States of California and Texas.

   1. The purpose of any proffer/interview is to evaluate oral and written statements and proffered information given by Mr. Ferrer and his agents (including but not limited to his attorneys) concerning his involvement with Backpage.com and related entities. Mr. Ferrer agrees to proffer information or participate in any interview on an entirely voluntary basis. Mr. Ferrer also understands and agrees that he is not compelled in any way to participate in this interview.

   2. Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC as to communications with any attorney or law firm that represented Backpage.com, or any related entity, where such communications concerned or related to Backpage.com or any related entity. This waiver does not apply to Mr. Ferrer's current attorneys, Nanci Clarence, Jonathan Baum and anyone working on their behalf. Mr. Ferrer voluntarily agrees to provide all documents and other material that may be relevant to the investigation and that are in his possession or control. However, Mr. Ferrer shall not disclose any documents or information protected by the Joint Defense Agreement in this matter. Mr. Ferrer understands that his proffer/interview and any benefit he may receive from information he provides to the prosecution does not depend on his waiver of the attorney-client privilege.

   3. The agreement is explicitly contingent upon Mr. Ferrer providing truthful statements and truthful information.  In any interview or proffer, Mr. Ferrer and his agents will completely and truthfully answer all questions, will provide complete and truthful information relating to any and all matters, and will make no material misstatements or omissions of facts.  Mr. Ferrer further understands that he will neither attempt to protect any person or entity nor falsely implicate any person or entity, through false information or omission. Nevertheless, no truthful statements made by or truthful information provided by Mr. Ferrer or his agents during the interview, or otherwise proffered, will be used directly against Mr. Ferrer during any litigation or proceeding instituted by the Prosecution.  The Prosecution will be the ultimate arbiter of the truthfulness of any statement or information.

4. Nothing in paragraph 4 above, however, prevents the Prosecution from making derivative use of and pursuing any investigative leads (i.e. fruits) suggested by any statements made by or other information proffered or provided by Mr. Ferrer or his agents. In other words, except as expressly stated above, Mr. Ferrer understands and agrees that there are no limitations whatsoever on the use the Prosecution can make of the testimony and information provided in any interview or otherwise proffered by Mr. Ferrer or his agents, either orally or in writing, both before and after any interview of Mr. Ferrer. Mr. Ferrer expressly waives any right to challenge the derivative use of any statements or information provided during the interview or otherwise proffered by Mr. Ferrer or his agents. It is the intent of this agreement that such derivative use is proper and the Prosecution and Mr. Ferrer hereby agree that Federal Rule of Criminal Procedure 11(f), and Federal Rules of Evidence 408 and 410 and, do not govern such derivative use in any litigation or other proceedings. This provision is necessary to eliminate any need or argument for a *Kastigar* hearing at which the Prosecution would have to prove that the evidence it would introduce at trial, or any other proceedings, is not associated with or tainted by any statements made by or other information provided by Mr. Ferrer during any interview, or was otherwise proffered to the Prosecution by Mr. Ferrer or his agents.

5. If Mr. Ferrer is a witness at any trial or other proceeding relating to the information he provides to investigating agents, and offers testimony materially different from any statements or other information provided during the interview or otherwise proffered by Mr. Ferrer or his agents, the Prosecution may cross-examine witnesses (including Mr. Ferrer) and introduce rebuttal evidence concerning any statements or other information provided during any interview or otherwise proffered by Mr. Ferrer or his agents. In addition, the Prosecution reserves the right to prosecute Mr. Ferrer for perjury, false official statement or obstruction of justice to the fullest extent provided by law. If such a prosecution occurs, the Prosecution can use directly, and derivatively, in their case-in-chief, in cross-examination and in rebuttal, any statements and information provided by Mr. Ferrer, whether directly or indirectly through his agents, or derivatively linked to the statements and other information Mr. Ferrer or his agents supplied in any interview or other proffer by Mr. Ferrer or his agents. This provision is needed to ensure that Mr. Ferrer does not abuse the opportunity for an interview or proffer of information, does not make materially false statements to a government agency either orally or in writing (directly or indirectly), and does not commit perjury when testifying at trial or in any other legal proceeding

6. Mr. Ferrer understands that the law (specifically, *Brady v. Maryland*) requires that the Prosecution provide any person against whom charges are brought, all information which tends to mitigate or negate the person's guilt as to the offenses charged. Therefore, Mr. Ferrer understands that if *Brady* material is developed or produced from the interview or in any proffer, then the Prosecution would be required to disclose this information to the appropriate defendants and/or their attorneys at the time the obligation is imposed on the Prosecution. This provision is included to permit the Prosecution to comply with its discovery obligations and is not intended to discourage Mr. Ferrer from providing information to the Prosecution.

7. With the exception of providing required notice under the Joint Defense Agreement in this case, Mr. Ferrer will not, personally or through any other person (including but not limited to his attorneys), disclose the existence of this agreement or any interview or proffer, or anything otherwise said during the interview or proffered to the Prosecution, or any information relating to

Mr. Ferrer's cooperation with the Prosecution (except that if an attorney for another putative or actual defendant asks Mr. Ferrer's counsel or successors whether Mr. Ferrer is cooperating with the United States, counsel or successors may confirm the fact that Mr. Ferrer is cooperating, but will not disclose any other information about Mr. Ferrer's cooperation).

8. This document is the full and complete Agreement of the parties with regard to any interview or proffered information. No other promises, representations or agreements have been made by or between the parties with regard to any proffer/interview or the underlying matters referenced in this written agreement. The parties shall at all times act in good faith to accomplish their intent in entering into this Agreement. Any dispute between the parties as to whether either party has failed to fulfill any of its obligations under this Agreement shall be submitted to and decided by the United States District Court for the District of Arizona.

AGREED:

ELIZABETH A. STRANGE
First Assistant United States Attorney

4/5/18
DATE

KEVIN M. RAPP
DOMINIC LANZA
MARGRET PERLMETER
Assistant U.S. Attorneys

DATE

REGINALD E. JONES, Trial Attorney
U.S. Department of Justice
Child Exploitation and Obscenity Section

4/5/18
DATE

KIRSTA LEEBURG MELTON
Assistant Attorney General,
Office of the Attorney General, State of Texas

4/5/18
DATE

RANDY MAILMAN,
Deputy Attorney General,
Office of the Attorney General, State of California

4/5/18
DATE

CARL FERRER

4/5/18
DATE

NANCI CLARENCE, ESQ.
JONATHAN BAUM, ESQ.

## WAIVER OF ATTORNEY CLIENT PRIVILEGE

I, Carl Ferrer, state the following in my capacity as sole owner and manager of Dartmoor Holdings LLC, which wholly owns and operates Backpage.com LLC (of which I am Chief Executive Officer), Website Technologies LLC, IC Holdings LLC, Posting Solutions LLC, and Postfaster LLC, hereafter referred to as "the Companies." I am authorized to waive each of the Companies' attorney-client privilege and am doing so because I believe executing such waiver is in each of the Companies' best interest.

I further state that, being represented by counsel and being fully advised as to this matter, I hereby voluntarily waive all aspects of the attorney-client privilege on behalf of the Companies, which otherwise may have applied to communications, documents and information that I, or the Companies have provided to law enforcement or which law enforcement may already have in its possession from other sources, as follows:

a. All communications related to the "adult," "escort," "dating," and "services" sections of the Companies' websites, including but not limited to company policies, moderation practices, age verification practices, legality, content, and compliance with law enforcement.

b. All communications related to the Companies' financial activity, including but not limited to the sale of Backpage.com in 2015, all loans and financing agreements related to the sale of that company in 2015, monetization of the Companies' websites, payment processing, credit card processing, banking, and payment of loans.

c. All communications regarding the relationship between the Companies (including their current owner and employees) and their former owners and officers, including but not limited to, James Larkin, Michael Lacey, John ("Jed") Brunst and Scott Spear, as well as communications between the Companies (including their current owner and employees) and Don Bennett Moon.

I further state that, in addition to the foregoing waiver, I hereby voluntarily waive on behalf of the Companies, all aspects of the attorney-client privilege which otherwise may have applied to the Companies' relationship with any attorney ("previous attorneys") who was retained to represent the Companies in connection with various matters related to the subjects listed above. This attorney-client privilege waiver is meant to apply to all communications between the Companies and any attorney representing them at any time; all acts undertaken by others acting on the Companies' attorneys' behalf taken in connection with representing the

Companies related to the subjects listed above, and any and all documents generated through their representation of the Companies that belong to the Companies.

I further state that this waiver does not apply in any respect to any aspect of the Companies' representation by David Botsford of Botsford & Roark LLP, or to any aspect of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me in an individual capacity, including, but not limited to, Nanci Clarence, Jonathan Baum and Shaneeda Jaffer of Clarence, Dyer & Cohen; and the Law Offices of E.G. Morris.

4/5/2018
DATED

_____
Carl Ferrer