Lee Stein (#12368)
lee@mscclaw.com
Anne M. Chapman (#025965)
anne@mscclaw.com
Anna H. Finn (#026738)
afinn@mscclaw.com
MITCHELL | STEIN | CAREY | CHAPMAN, PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone:  (602) 358-0292
Facsimile:   (602) 358-0291
Attorneys for Henze Cook Murphy, PLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) CR-18-00422-PHX-SPL (BSB) |
| Plaintiff, | ) |
| v. | ) **HENZE COOK MURPHY'S RESPONSE TO THE UNITED STATES' MOTION TO DISQUALIFY COUNSEL** |
| 1. Michael Lacey, and<br>2. James Larkin, | ) |
| Defendants. | ) [Oral Argument Requested] |

**Preliminary Statement**

Entirely disqualifying Henze Cook Murphy ("HCM") would deprive Defendant Michael Lacey of his Sixth Amendment right to be represented by the counsel of his choice, namely lawyers who have a long and complex history of representing Mr. Lacey and his former company.  Mr. Lacey has been charged with very serious crimes and now more than ever, he needs the assistance of lawyers he trusts.  Depriving him of that assistance at the most critical time would deprive him of his Sixth Amendment rights.  The courts have made clear that interfering with an accused's choice of counsel should

only be done as a last resort and that the courts should endeavor to reach a solution that is least burdensome upon the client or clients.[1] While it is true that HCM's former client Carl Ferrer has not consented to HCM's limited representation of Mr. Lacey, the role HCM proposes to play addresses all of the concerns embodied in ER 1.9, the ethical rule applying to former clients. Accordingly, the Government's Motion to Disqualify should be denied, and HCM should be permitted to continue to represent Mr. Lacey in the limited fashion described below.

## Background

### 1. Historical Representation of Mr. Lacey and His Companies

Tom Henze and Janey Henze Cook are highly respected Arizona criminal defense lawyers and founding members of HCM. Before starting HCM, they were both shareholders at the law firm of Gallagher & Kennedy, P.A. While at Gallagher & Kennedy, Mr. Henze and Ms. Henze Cook represented Mr. Lacey, his former companies The New Times, Village Voice Media, and Backpage.com, as well as Mr. Ferrer, the former CEO of Backpage.com. Mr. Henze and Ms. Henze Cook represented Village Voice Media, the Phoenix New Times, Jim Larkin and Michael Lacey in matters wholly unrelated to Backpage.com. In addition, Mr. Henze and Mr. Lacey have been personal friends for 35 years, a relationship grounded in mutual respect and trust. Ms. Henze Cook was an intern at New Times as a teenager, and, together with her father, has represented Mr. Lacey and his companies in one capacity or another since she began practicing law in 2006.[2]

---

[1] *See United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986); *Alexander v. Super. Ct.*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984) (internal citations omitted). Disqualification motions should be subjected to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal citations omitted).

[2] Ms. Henze Cook was admitted to practice law in 2003. From 2003-2004, she clerked for the Honorable Stephen M. McNamee in this district. From 2004-2006 she clerked for the Honorable William Q. Hayes in the Southern District of California. She joined Gallagher & Kennedy in October of 2006, and her first representation of Michael Lacey was in December of 2006.

Beginning in 2006, Mr. Henze and Ms. Henze Cook represented Mr. Lacey and the New Times, in connection with myriad matters. The most notable representation started with a constitutional challenge to a state statute prohibiting the online publication of a law enforcement officer's address, under the vagueness doctrine and the First Amendment. Amid litigation of that case, Messrs. Lacey and Larkin were arrested, which received widespread media attention and led to further litigation.[3] The Henzes, and specifically Tom Henze, went on to play a major role in the settlement negotiations in the civil lawsuit against Maricopa County and Sheriff Arpaio arising out of the arrests. Later, Tom Henze represented Lacey and Larkin in a formal interview by the Department of Justice relating to the Sheriff's actions in the above described case. The defense of that case, which involved the extraordinary abuse of power by the then-sitting Maricopa County Attorney and Maricopa County Sheriff, fundamentally changed the relationship between Mr. Lacey and his counsel, Mr. Henze and Ms. Henze Cook. After they saved Mr. Lacey from being jailed for exercising his First Amendment rights, Mr. Lacey developed a deep trust and confidence in Mr. Henze and Ms. Henze Cook that animates his desire to have them by his side as he once again faces great risk.

The Henzes' early representation of Mr. Lacey was not limited to issues pertaining to his newspaper. On several occasions, the Henzes were retained to represent Mr. Lacey and his family members in various personal matters. In some instances, the Henzes helped to retain and guide specialized counsel for Mr. Lacey and his family. In other matters, the Henzes assumed total responsibility for the representations. Through the Henzes' representation of the New Times and the personal representations, Mr. Lacey developed immense trust in the Henzes. It was because of that trust that Village Voice Media asked the Henzes to represent Backpage.com.

---

[3] *See, e.g.*, Michelle Ye Hee Lee and Michael Kiefer, *Maricopa County supervisors settle lawsuits filed by 'New Times' founders, Stapley*, Ariz. Republic, Dec. 18, 2013 (available at http://archive.azcentral.com/news/politics/articles/20131218maricopa-county-supervisors-settle-lawsuit-new-times-founders.html), attached hereto as Ex. 1.

As part of that representation, in 2011, Mr. Lacey and Mr. Larkin, then owners of Backpage.com, hired the Henzes and other lawyers at Gallagher & Kennedy to advise them as to certain matters regarding Backpage.com. That representation was not limited to a particular case; rather, it involved providing legal advice on a broad range of issues, including First Amendment law, criminal law, forfeiture, and the Communications Decency Act, 47 U.S.C. § 230. The Henzes interacted with other Backpage counsel throughout the United States and worked on many projects in both the civil and criminal context.

In 2012, a grand jury sitting in the Western District of Washington issued a series of subpoenas related to Backpage.com. Village Voice Media Holdings, which then owned Backpage.com, hired the Henzes to represent Mr. Ferrer in his corporate capacity as Chief Operating Officer of Backpage. The parties entered into a joint defense agreement, and the Henzes worked closely with other counsel in challenging the subpoenas. Notably, during the course of the proceedings, the court quashed all the subpoenas. It was during this representation that the Henzes first met and represented Carl Ferrer. After the conclusion of this representation, the Henzes continued to provide advice to Messrs. Lacey, Larkin, and Ferrer, Village Voice Media Holdings, and Backpage.com.

**2. Recent Representation of Mr. Lacey, Backpage.com, and Mr. Ferrer**

By June of 2015, Mr. Lacey and Mr. Larkin no longer owned Backpage.com; however, the Henzes continued to represent Backpage.com on numerous matters. During the Henzes' representation of Backpage.com, they gave legal advice to Carl Ferrer, who had purchased Backpage.com and had become its CEO. During this period, Mr. Henze and Ms. Henze Cook functioned principally as attorneys for Backpage.com, interacting primarily with the company's general counsel and sometimes providing advice to Mr. Ferrer in his role as CEO of the company. HCM attorneys provided legal advice on all aspects of the company, from human resources issues to First Amendment research and advice.

Their representation of Backpage.com occurred in courts all over the country and regularly involved Mr. Henze and Ms. Henze Cook coordinating a team of lawyers, locating appropriate specialized and local counsel and overseeing complex and rapidly-evolving work. When the company was involved in litigation, as it often was, Mr. Henze and Ms. Henze Cook assumed roles ranging from document management to coordination of other counsel to direct involvement in preparing for and defending depositions. The Henzes worked very closely with the General Counsel and other Backpage.com personnel as necessary.

During this time period, the Henzes, and specifically Ms. Henze Cook, provided counsel to Mr. Lacey on a number of personal matters. She essentially became Mr. Lacey's personal lawyer, assuming responsibility for a wide range of legal issues. Ms. Henze Cook has advised Mr. Lacey on HOA matters, neighborhood disputes, insurance work, personal taxes, registration of vehicles and other MVD matters, as well as administrative matters pertaining to his assets and residences. From time to time, Ms. Henze Cook was assisted by Mr. Henze and other counsel at HCM in these endeavors, and in some matters, Ms. Henze Cook retained specialized counsel for Mr. Lacey. Ms. Henze Cook assisted with the acquisition of real estate, and obtained insurance coverage for his vehicles, homes, art collection, and family members. In addition, Ms. Henze has advised Mr. Lacey with regard to banking issues. She has also occasionally arranged for private investigator services for a wide-ranging set of questions.

Mr. Lacey relies on Ms. Henze Cook for legal and quasi-legal advice for virtually all aspects of his life, separate and apart from his prior ownership of Backpage.com. Ms. Henze Cook is Mr. Lacey's "first phone call" on all matters legal and quasi-legal. Through her representation of Mr. Lacey on administrative matters, including banking and insurance work, Ms. Henze Cook has gained a wealth of knowledge of Mr. Lacey's affairs. More importantly, Ms. Henze Cook has gained Mr. Lacey's trust when it comes to the most personal aspects of his life.

*a. The California Case*

In October of 2016, Mr. Ferrer, Mr. Lacey and Mr. Larkin were arrested in California in connection with an investigation into Backpage.com. Mr. Henze helped arrange for retention of separate counsel for each defendant. HCM worked with other attorneys on the representation of the defendants. In the division of clients and labor, HCM took on primary responsibility for Mr. Ferrer, and it entered an appearance on his behalf in that case. With the assistance of the Henzes, Mr. Ferrer retained Nanci Clarence and Jonathan Baum of Clarence Dyer & Cohen as his lead counsel in that case. HCM assisted Ms. Clarence and gave advice to Mr. Ferrer personally, as well as in his capacity as CEO and owner of Backpage.com.

In addition to the representation of Mr. Ferrer, the defendants entered into a joint defense agreement, and HCM regularly performed tasks for each of the defendants in that case. For example, HCM coordinated the posting of bond for Mr. Ferrer, Mr. Lacey and Mr. Larkin. HCM performed other tasks for Mr. Lacey, including arranging for self-surrender, communicating with Mr. Lacey's family regarding his incarceration, and meeting with Mr. Lacey in jail in Sacramento. They were also involved in Mr. Lacey's representation in that case by Lyn Agre, Mr. Lacey's California criminal counsel. The Henzes provided Ms. Agre with background information and documents, gathered documents for tracing purposes, and generally assisted with client-related issues. At all times during HCM's representation of Mr. Ferrer, a joint defense agreement was in place.

*b. The Arizona Case*

On October 17, 2016, a grand jury sitting in this District issued a subpoena to Carl Ferrer and Backpage.com. Along with other counsel, HCM represented both Backpage.com and Mr. Ferrer in challenging the subpoena. Again, this representation was pursuant to a written joint defense agreement.[4] While Messrs. Lacey, Larkin, and Ferrer

---

[4] At the Court's request, HCM will provide the joint defense/common interest and confidentiality document for review *in camera*.

had their own defense counsel, the defense of the case was very much a group effort. Each of the parties were aligned with one another at that stage, and collaborative representation benefitted everyone. HCM worked closely with other counsel and performed many tasks for the benefit of Backpage.com and Messrs. Lacey, Larkin, Ferrer. On October 17, 2017, HCM withdrew from its representation of Backpage.com and Carl Ferrer.[5] As of that date, Mr. Ferrer and Backpage.com became former clients of the firm.

On April 5, 2018, Mr. Ferrer pled guilty in the instant prosecution. Critical to this Motion, Mr. Ferrer waived the attorney-client privilege personally and in his capacity as CEO of Backpage.com as to all lawyers who had worked on the Backpage.com matter, other than Nanci Clarence and Jonathan Baum of Clarence Dyer & Cohen in a written proffer agreement. Mr. Lacey was arrested on April 6, 2018, along with several other defendants. Mr. Ferrer was not arrested, and instead entered into a cooperation agreement with the Government. Mr. Ferrer is not a party to the instant prosecution.

The Henzes have provided assistance to Mr. Lacey in the Arizona case, including arranging for bail, providing background documents to Mr. Lacey's lead attorney, meeting with Mr. Lacey while he was incarcerated in Florence, Arizona, appearing on Mr. Lacey's behalf at the detention hearing, gathering data for Pretrial Services regarding assets, navigating banking and personal financial issues, and assisting with securing the return of specific property in the parallel forfeiture matter.

On April 5, 2018, Mr. Ferrer wrote to Mr. Henze stating that he had withdrawn from the joint defense agreement and returned a number of defense materials, as required by the terms of the JDA. Mr. Ferrer also wrote to HCM, asking that it comply with its ethical obligation under ethical Rule 1.9. To date, Mr. Henze and Ms. Henze Cook have not shared any confidential information about or from their former client Carl Ferrer with the other lawyers in this matter.

---

[5] HCM informed the Government of its withdrawal via email on October 24, 2017. On January 30, 2018, Ms. Henze Cook filed a Notice of Change in Counsel in California Case 16FE024013. On May 9, 2018, the Judge in *Backpage.com, LLC v. Dart* granted HCM's Motion to Withdraw.

In the Arizona case, Mr. Lacey is primarily represented by Paul Cambria of Lipsitz Green Scime Cambria.  Mr. Cambria's office is in Buffalo, New York.  Mr. Cambria will conduct all of the cross examination, including the cross examination of Mr. Ferrer, in this matter.  The lawyers at HCM have not shared any of Mr. Ferrer's confidences with Mr. Cambria and will not do so.  HCM has established a screen between itself and all other counsel on this matter.  In his role as lead counsel, Mr. Cambria's defense of Mr. Lacey will be made much more difficult if he is not assisted in at least a limited fashion by Mr. Henze and Ms. Henze Cook, given their long history with his client.

        c.  *The Government's Motion to Disqualify HCM*

On April 25, 2018, the Government filed a Motion to Disqualify HCM and the law firm Davis Wright Tremaine.  Mr. Ferrer declined to join in the Government's Motion to Disqualify.  *See* Ex. 2, May 14, 2018 Letter from Kevin Rapp to Mike Piccarreta, at page 4 ("Mr. Ferrer's counsel stated that Mr. Ferrer did not wish to be a party to the motion.").  HCM retained counsel to represent the firm[6] and on May 2, 2018, their counsel, Lee Stein, met with counsel from the Government, to explore a negotiated resolution of the disqualification of HCM that protected Mr. Lacey's Sixth Amendment rights as well as honored the firm's obligations to its former client, Mr. Ferrer.  During that meeting, the Government was willing to entertain HCM performing a limited role as counsel for Mr. Lacey, which was not adverse to Mr. Ferrer.  That discussion focused primarily on forfeiture and Mr. Lacey's compliance with release conditions.  Mr. Stein offered to provide the Government with more details as to the areas they believed were not adverse to Mr. Ferrer, which they did in a letter dated May 14, 2018.

After sending its letter regarding the role HCM hoped to play going forward, HCM became aware that Mr. Ferrer had waived his and Backpage.com's attorney-client privilege.  The waiver is contained in Mr. Ferrer's Proffer/Interview Agreement dated April 5, 2018. It reads:

---

[6] Mr. Henze and Ms. Henze Cook have also consulted with independent ethics counsel, Edward Novak of Polsinelli, P.C.

> Mr. Ferrer voluntarily **waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC** as to communications with any attorney or law firm that represented Backpage.com, or any related entity, where such communications concerned or related to Backpage.com or any related entity. This waiver does not apply to Mr. Ferrer's current attorneys, Nanci Clarence, Jonathan Baum and anyone working on their behalf.[7]

*See* Ex. 2, May 14, 2018 Letter from Kevin Rapp to Mike Piccarreta, Exhibit A at page 1 (emphasis added). On May 16, 2018, the Government notified Mr. Stein that, notwithstanding Mr. Lacey's Sixth Amendment right to counsel of his choice, the Government was no longer willing to agree to any role for HCM in the Arizona case.

## Argument

HCM recognizes that Mr. Ferrer is a former client and that he has not consented in writing to HCM's representation of Mr. Lacey in this matter. Nevertheless, by narrowly crafting HCM's representation of Mr. Lacey, HCM has ensured that its former client, Mr. Ferrer, will receive the benefit of ER 1.9. In deciding whether to disqualify HCM from participating in the case in any capacity, the Court should consider the limited proposed role, Mr. Ferrer's waiver of the attorney-client privilege, the fact that Mr. Ferrer chose not to join the Government's Motion to Disqualify, HCM's long history of representing Mr. Lacey, and most importantly, Mr. Lacey's Sixth Amendment constitutional right to the counsel of his choice. *See Research Corp. Tech., Inc. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 703 (D. Ariz. 1996) (outlining factors to consider in ruling on a motion to disqualify).[8]

---

[7] By specifically excepting Mr. Ferrer's current counsel, who only ever represented him personally, from the waiver, it is clear that the waiver applies to communications with HCM, which represented Backpage.com as well as him personally. Had Mr. Ferrer intended to exempt communications with HCM as well, HCM would have been identified like Nanci Clarence and Jonathan Baum were.

[8] Arizona law governs this Court's consideration of the disqualification motion. *See Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011).

The Court should "endeavor to reach a solution that is least burdensome" on Mr. Lacey and permit Mr. Henze and Ms. Henze Cook to continue in the closely circumscribed manner outlined herein. *See Alexander*, 141 Ariz. at 161, 685 P.2d at 1313. Namely, HCM proposes to represent Mr. Lacey in the following closely circumscribed ways: (1) representation in the parallel forfeiture matter; and (2) assistance with compliance with his conditions of release. In those narrow roles, HCM will not be acting in a manner that is materially adverse to Mr. Ferrer's interests, and the ethical screen put in place by the firm with respect to communications with the defense team will ensure that Mr. Ferrer's confidential communications with HCM are protected.

Mr. Lacey has a Sixth Amendment right to the counsel of his choice, and he wants HCM to continue in the limited role outlined above. Mr. Lacey relies heavily on HCM to help him navigate this complicated and treacherous legal terrain. He is 69 years old and is fighting for his life – a conviction in this case will likely result in a significant prison term and a forfeiture would likely leave him penniless. He very much needs and wants to surround himself with counsel in whom he has confidence, who know him and who he is confident have his best interests at heart. A core component of that team is the lawyers from HCM. If there is a way to allow Mr. Lacey to receive the counsel of his choice without offending the principles underlying ER 1.9, the Court should do so. *See id.*

The Sixth Amendment guarantees the right to the assistance of counsel in a trial for any serious crime. *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). An element of that right is "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Although the right to counsel of one's choice is not unlimited because conflicts of interest may circumscribe that right, courts recognize "a presumption in favor of petitioner's counsel of choice," overcome only by an actual conflict of interest or a serious potential for conflict. *Wheat v. United States*, 486 U.S. 153, 159, 164 (1988). Moreover, as noted in *United States v. Locascio*, 357 F. Supp. 2d 536, 553 (E.D.N.Y.

2004), motions to disqualify opposing counsel are viewed with disfavor because they impinge on a defendant's rights to choose his own counsel and because of the strong potential for abuse. Because of this, motions to disqualify "are subjected to particularly strict judicial scrutiny." *Optyl Eyewear*, 760 F.2d at 1050 (internal quotation and citation omitted); *see also Alexander*, 141 Ariz. at 161, 685 P.2d at 1313 ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent.").

Cases examining the interplay between ER 1.9 (and analogues) and the Sixth Amendment focus on the purposes of the rule: (1) the risk of improperly using privileged or confidential client communications against a former client; (2) the risk associated with an attorney cross-examining a former client (either to the benefit or detriment of the non-witness client); and (3) the public interest in preserving trust that attorneys will maintain client confidences and not turn them against clients in the future. *See, e.g.*, *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994) (outlining goals of ethical rule); Ariz. Ethics Op. 91-05 (explaining that the former client is "entitled to freedom from apprehension that confidences will be revealed in a succeeding representation" and that there is a public interest in assuring all clients that lawyers can be trusted to preserve confidences).

HCM's proposed limited role achieves each of these goals. *See* Ex. 3, Novak Declaration at ¶ ("the interests of their former client as articulated in ER 1.9 are well protected"). Mr. Ferrer has waived the attorney-client privilege with respect to all attorneys except his current counsel. Although Mr. Henze and Ms. Henze Cook have maintained Mr. Ferrer's confidences and will continue to do so, Mr. Ferrer's waiver lessens the import of this factor. Crucially, Mr. Henze and Ms. Henze Cook will have no role in cross-examination or preparation for cross-examination. In fact, Mr. Henze and Ms. Henze Cook will not be trial counsel. They propose to work exclusively on forfeiture and assisting Mr. Lacey with complying with his terms of release.

By way of comparison, in *United States v. Cheshire*, 707 F. Supp. 235, 240 (M.D. La. 1989), which the Government's Motion discusses at length, the court noted its

concern that the attorney would be constrained in his ability to analyze and repudiate the testimony of his former client when making a closing argument. Since Mr. Henze and Ms. Henze Cook propose a role in which they would not be trial counsel, this concern is not present here. Furthermore, HCM has established an ethical screen between itself and the other members of the defense team and has sought outside ethics counsel, who has approved this proposal. *See* Ex. C, Decl. of Edward Novak. Courts considering disqualification motions have observed that it is appropriate to "rely upon the good faith and judgment of counsel" in these instances and to trust that they will comply with their ethical obligations. *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 137 (D.D.C. 2015); *see also United States v. Caramadre*, 892 F. Supp. 2d 397, 405 (D.R.I. 2012) ("Without evidence to the contrary, this Court will rely upon the good faith and judgment of counsel.").

The narrowness of the proposed role and the fact that Mr. Ferrer waived the attorney-client privilege in his proffer distinguish this case in important ways from those cited by the Government. *See United States v. Alfonzo-Reyes*, 592 F.3d 280, 294 (1st Cir. 2010); *United States v Henke*, 222 F.3d 633, 637-38 (9th Cir. 2000); *United States v. Williams*, 81 F.3d 1321, 1324-25 (4th Cir. 1996); *Ross*, 33 F.3d at 1523; *United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991); *United States v Iorizzo*, 786 F.2d 52, 57-58 (2d Cir. 1986). In addition to the distinctions listed above, it is important to note that Mr. Ferrer did not join the Government's Motion. *Cf. United States v. Falzone*, 766 F. Supp. 1265, 1273 (W.D.N.Y. 1991) (court considered it significant that the witness joined the government's disqualification motion). Mr. Ferrer's interests are protected by the proposed arrangement, and the proposal also preserves the public trust in attorneys by dramatically limiting HCM's role while permitting Mr. Lacey to have the counsel of his choice, attorneys whom he relies upon greatly and who have represented him for many years in all aspects of his life.

The Ninth Circuit has not adopted a rule of automatic disqualification. *See Research Corp.*, 936 F. Supp. at 703. Courts deciding disqualification motions consider a variety of factors, including:

> "(1) the nature of the [potential] ethical violation, (2) the prejudice to the parties, including the extent of actual or potential delay in the proceedings, (3) the effectiveness of counsel in light of the violations, . . . (4) the public's perception of the profession' and "whether or not a motion to disqualify has been used as a tactical device or a means of harassment."

*Plotts v. Chester Cycles LLC*, No. CV-14-00428-PHX-GMS, 2016 WL 614023, at *6 (D. Ariz. Feb. 16, 2016) (quoting *Research Corp.*, 936 F. Supp at 703). Here, the risk of prejudice to Mr. Ferrer is ameliorated through the proposed narrow role for HCM and the ethical screen in place already. The Henzes are not lead counsel in this prosecution, and their effectiveness on Mr. Lacey's behalf in the forfeiture case or assisting him with complying with his release conditions will not be impacted by their prior representation of Mr. Ferrer. The nature of Mr. Henze and Ms. Henze Cook's relationship with Mr. Lacey, and his constitutional right to the counsel of his choice, weigh heavily in favor of permitting HCM to participate in the limited scope representation proposed herein.

**Relief Requested**

Mr. Lacey has expressed his desire for Mr. Henze and Ms. Henze Cook to continue to serve as his lawyers, the way they have for many years. They have his confidence, and they are his friends. He is faced with threats at both the state and federal level, and he chooses them (in the strongest terms possible) to speak on his behalf and advise him, where appropriate. This is a complicated, multi-defendant case involving more than 9 million documents and important constitutional issues with great risk to the defendants, and Mr. Lacey wants to have the assistance of lawyers with a deep understanding of his personal and professional history.

Mr. Henze and Ms. Henze Cook are profoundly aware of their obligations under the ethical rules governing attorneys, and they have no desire to cause any harm whatsoever to their former client, Mr. Ferrer. With these obligations in mind, they have

consulted with ethics counsel and formulated a proposed role for themselves in which they can honor Mr. Lacey's wish that they continue to represent him while still satisfying their obligations to Mr. Ferrer. Mr. Henze and Ms. Henze Cook of course will abide scrupulously by any order of this Court, and they respectfully request that they be permitted to serve as counsel for Mr. Lacey in the narrow fashion described here.

RESPECTFULLY SUBMITTED on June 6, 2018.

MITCHELL | STEIN | CAREY | CHAPMAN, PC

By: */s/ Anna H. Finn*
    Lee Stein
    Anne M. Chapman
    Anna H. Finn
    Attorneys for Henze Cook Murphy, PLC

### **CERTIFICATE OF SERVICE**

I certify that on this 6th day of June, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the attorneys of record.

*/s/ Julie Greenwood*