ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-422-PHX-SPL (BSB) |
|---|---|
| Plaintiff, | **UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL (HCM FIRM)** |
| v. | |
| Michael Lacey, et al., | **[Reply to CRs 174 and 176]** |
| Defendants. | |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

From 2012-17, the law firm of Henze Cook Murphy ("HCM") has served as Carl Ferrer's personal criminal counsel and represented Ferrer in an array of lawsuits. Over this span, the HCM firm has prepared Ferrer to be deposed, obtained confidences from Ferrer,

and otherwise shaped Ferrer's legal strategy. The crux of that strategy was to deny that Backpage had engaged in any wrongdoing with respect to the publication of advertisements for child and adult prostitution.

Recently, Ferrer chose to obtain new counsel, terminate his relationship with the HCM firm, plead guilty to Backpage-related charges, and cooperate in the pursuit of criminal charges against other Backpage principals, including Michael Lacey. Remarkably, the HCM firm responded by filing a notice of appearance on behalf of Lacey. This prompted the United States to file a motion to disqualify. In response, Lacey (CR 174) and the HCM firm (CR 176) have filed opposition briefs.

Notably, both of the HCM-related briefs concede the HCM firm cannot ethically serve as trial counsel in this case due to the firm's prior representation of Mr. Ferrer. For example, Lacey acknowledges "that HCM cannot participate in his defense at trial because HCM could not cross-examine Mr. Ferrer." *See* CR 174 at 3. Similarly, the HCM firm acknowledges that its role must be "closely circumscribed" and "dramatically limit[ed]" and that it cannot participate in any way "in cross-examination or preparation for cross-examination." *See* CR 176 at 10-12. Despite these important concessions, however, Lacey and the HCM firm urge the Court to deny the disqualification motion because (1) the HCM firm will agree to limit its representation to a handful of discrete issues that are purportedly not adverse to Mr. Ferrer, (2) Ferrer purportedly waived his attorney-client privilege with respect to HCM, and (3) Ferrer did not explicitly join in the disqualification motion.

As explained below, these arguments are unavailing. *First*, this Court's rules do not permit the sort of "limited representation" arrangement being proposed by the defense. An attorney who enters an appearance in a criminal case is responsible for all issues in the case and cannot seek to carve out a preferred subset of issues to litigate while disclaiming responsibility for everything else. The law of the Ninth Circuit, the applicable ethical rules, and common sense all make clear that, once the sort of stark ethical conflict at issue here (*i.e.,* defense counsel served for five years as the cooperator's personal attorneys) arises, the only remedy is disqualification. Furthermore, it is simply not true that, by limiting its

role to litigating forfeiture-related issues on Lacey's behalf, the HCM firm can avoid any adversity with Ferrer. The forfeiture proceedings are virtually certain to involve a sustained attack by the defense on Ferrer's credibility and an attempt to impeach Ferrer with prior statements he made while being represented by the HCM firm.

*Second*, the claim that Ferrer waived the privilege as to the HCM firm is both inaccurate and irrelevant. Ferrer's waiver only applied to Backpage's corporate attorney-client privilege, not his personal privilege with current or former counsel. Moreover, even if there were a personal waiver, disqualification is mandated because the HCM firm owes a duty of loyalty to Ferrer—a duty that is more expansive than the duty to maintain the confidentiality of privileged information.

*Third*, and finally, the fact Ferrer did not formally "join" in the disqualification motion is a red herring. Multiple courts have recognized that such a joinder is unnecessary—the United States and the Court have an independent interest in ensuring the integrity of judicial proceedings. In any event, Ferrer's conduct should not be viewed as some tacit acknowledgement that the HCM's continued participation in this case is acceptable to him. Ferrer previously wrote a letter to the HCM firm objecting to its representation of Lacey and has further explained, in a declaration filed concurrently with this reply, that he didn't join in the government's motion simply because he didn't think it was necessary to do so.

**ARGUMENT**

A.   The Proposed "Limited Representation" Arrangement Is Improper And Would Not Cure The Conflict

The primary argument developed in the two HCM-related briefs is that the HCM firm shouldn't be disqualified because it will agree to provide "limited representation . . . on compliance with conditions of release, forfeiture, and unrelated personal matters" and will agree not to "act[] as trial counsel or shar[e] any confidential information with Mr. Lacey's trial counsel in this prosecution." *See* CR 174 at 3-4. The defense contends that, once the scope of the HCM firm's representation is limited in this fashion, its participation

will "present[] no actual or potential conflict with its prior representation of Mr. Ferrer under Rule 1.9." *See* CR 174 at 8-9. *See also* CR 176 at 9 ("By narrowly crafting HCM's representation of Mr. Lacey, HCM has insured that its former client, Mr. Lacey, will receive the benefit of ER 1.9.").

These arguments lack merit. As an initial matter, this Court's rules do not permit a law firm to make a limited appearance on behalf of a criminal defendant, designate the subset of issues it wishes to be responsible for handling, and disclaim any responsibility for the remaining issues in the case. To the contrary, when an attorney or law firm enters a notice of appearance, it "*shall be deemed responsible as attorney of record in all matters* before and after judgment until the time for appeal expires or until there has been a formal withdrawal from or substitution in the case." *See* Ariz. L.R. Civ. P. 83.3(a) (emphasis added). *See also* Ariz. L.R. Crim. P. 57.14 (adopting same rule in criminal cases).[1]

The defense's unusual proposal would also create practical difficulties. Put simply, there would be no way for the United States, Ferrer, or the Court to verify whether the HCM firm was actually limiting its representation to the three topics identified in the opposition brief (*i.e.,* forfeiture, release conditions, and "personal matters"). During the parties' meet-and-confer process, the HCM firm's proposed areas of representation were not limited to those three topics but also encompassed other areas, such as managing the defense team's document database and "developing legal arguments," that are amorphous and could easily be adverse to Ferrer. *See* Exhibit A (letter from defense counsel). The defense's recent change in position only underscores the intractable monitoring problems that would arise if its proposal were accepted.

It is also notable that, despite providing 29 pages' worth of briefing and argument,

---

[1] Furthermore, although some other Districts authorize limited scope representation in certain circumstances, such representation is particularly disfavored in criminal cases. *See* District of Colorado's website ("Limited Scope Representation (LSR). . . is permitted in the U.S. District Court for the District of Colorado in all civil cases . . . but NOT criminal cases . . . .").

the two HCM-related briefs barely acknowledge—let alone attempt to distinguish—Arizona Ethics Opinion 91-05, which was discussed in extensive detail in the United States' motion. This opinion forbids exactly what the defense is attempting to do here (*i.e.*, attempt to cure a conflict of interest by limiting the scope of the conflicted attorney's representation). *See* Az. Ethics Op. 91-05 ("[The former client] will thus be confronted with the uncomfortable fact that her former lawyers are cooperating closely with a lawyer who will cross examine her at trial. ER 1.9(a) is designed to prevent precisely such discomfort from arising."). *See also Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 929, 950-57 (D. Ariz. 2011) (analyzing interplay between Arizona Ethical Rules 1.9 and 1.10, expressing "grave concerns" about efficacy of screening, and emphasizing that a screened attorney must, in any event, have no role in the new case posing the conflict).

The defense's proposal also fails under Ninth Circuit law, which, like Arizona law, recognizes that the remedy for a conflict under ER 1.9(a) is disqualification, not using ethical screens or having conflicted counsel promise to limit its work to some subset of issues. *See, e.g., United States v. Stites*, 56 F.3d 1020, 1025 (9th Cir. 1995) (affirming disqualification order in criminal case and emphasizing that the district court was correct to "treat . . . skeptically" the defense's proposal to set up an internal screen because such "an unusual arrangement [would be] almost impossible to monitor. The Chinese wall might have crumbled. It was within the discretion of the district court to reject it."); *United States v. Vargas-Martinez*, 569 F.2d 1102, 1104 (9th Cir. 1978) (affirming disqualification of defense attorney due to prior representation of cooperating witness in state-court proceeding: "While a defendant's choice of counsel should not be subject to unnecessary interference, this right is not unlimited. . . . *[T]he only possible method of adequately resolving the problem was to order substitution of counsel . . . .*") (emphasis added). *Cf. United States v. Stepney*, 246 F. Supp. 2d 1069, 1085 (N.D. Cal. 2003) (recognizing "the general principle that where an attorney has actually obtained confidential information relevant to her representation of a client, the law presumes that she cannot avoid relying on

the information—however indirectly or unintentionally—in forming legal advice and trial strategy").[2]

Finally, the HCM firm's "limited representation" proposal also should be rejected because one of the issues the HCM firm wishes to continue litigating—forfeiture—would create a significant risk of adversity with Ferrer. One of the key disputed issues in the forfeiture proceedings will be whether the Backpage-derived money that was routed through Lacey's bank accounts was tainted. Ferrer's guilty plea, and the guilty plea that Ferrer entered on behalf of Backpage, provide strong support for the government's view that the money is tainted. As a result, it is a virtual certainty that Lacey will seek to attack Ferrer's credibility (and the admissions contained in his plea agreements) as part of the forfeiture proceedings.

Indeed, it is anticipated that such forfeiture-related impeachment efforts will include impeaching Ferrer with prior testimony he provided *while being represented by the HCM firm*. In August 2015, Ferrer was deposed as part of the *Backpage v. Dart* case. The attorneys representing Ferrer during that deposition were Tom Henze and Janey Henze Cook, and Mr. Henze explained at the outset that, in an effort to prepare Ferrer to be deposed, he had spent "four to six hours . . . where we had Mr. Ferrer in the room." *See* Exhibit B at 12:1-10 (deposition excepts). Moreover, during recent proceedings in the *Dart* case, the law firm of Davis Wright Tremaine ("DWT") announced that it intends to use this deposition testimony to impeach Ferrer's guilty plea. *See* Exhibit C at 13 ("Mr.

---

[2] Although the defense has identified two decisions from outside the Ninth Circuit that approved the use of internal screens within the defense team to cure ethical conflicts, *see United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129 (D.D.C. 2015), *and United States v. Caramadre,* 892 F. Supp. 2d 397 (D.R.I. 2012), these non-binding decisions obviously cannot override Arizona and Ninth Circuit law. Moreover, those decisions are distinguishable because the former client in each case consented to the representation arrangement. *Lorenzana-Cordon*, 125 F. Supp. 3d at 138-39 ("[M]ost of the cases . . . in which courts rejected similar 'Chinese Wall' arrangements were complicated by the fact that either the defendant or the witness or both did not provide voluntary and knowing consent to . . . the 'Chinese Wall' arrangement. [Here], the witness consented to conflicted representation . . . and to the arrangement with Mr. Katzoff as second counsel."); *Caramadre*, 892 F. Supp. 2d at 401 (same).

Ferrer's statements in connection with his negotiated plea agreements are inconsistent with his prior sworn testimony in certain respects, and he will have to answer for the contradictions on his own.").[3]

It is difficult to imagine a scenario where the conflicts of interest could be more stark. HCM wishes to represent Lacey in a forfeiture proceeding in which Lacey will seek to use Ferrer's previous deposition testimony—testimony the HCM firm helped develop and defend while serving as Ferrer's criminal counsel—to undermine Ferrer's credibility. Disqualification is required to avoid this unseemly spectacle.

B.   The Privilege Waiver Arguments Are Inaccurate And Irrelevant

Lacey argues—in a section of his brief conspicuously devoid of any supporting case law—that the disqualification motion must be denied because Ferrer has waived his attorney-client privilege with the HCM firm. *See* CR 174 at 7-8. *See also* CR 176 at 7 (same).

This argument is easily rejected. As a threshold matter, it is not true that Ferrer has waived his personal attorney-client privilege with the HCM firm. On April 5, 2018, Ferrer executed a two-page document entitled "Waiver of Attorney Client Privilege." It is enclosed as part of Exhibit B to Lacey's motion. In the last paragraph of this document, Ferrer made clear that he was only waiving Backpage's corporate attorney-client privilege and was not waiving his personal attorney-client privilege, either with his current attorneys (from the Clarence Dyer law firm) or with any attorneys who previously represented him on an individual basis: "*I further state that this waiver does not apply to any aspect . . . of*

---

[3]   During a recent hearing in *R.O. v. Medalist Holdings* (a tort lawsuit brought by a trafficking victim against Ferrer, Lacey, and Larkin), the DWT firm made similar statements. *See* Exhibit D at 53:24 – 54:1 ("Mr. Ferrer may be subject to cross-examination or discovery about his prior inconsistent statements."). Notably, at the conclusion of the *R.O.* hearing, the trial judge disqualified DWT from representing Larkin and Lacey, finding that the case posed such "intertwined" conflicts of interest that DWT's continued participation would "create an injustice on the administration of justice." *See* Exhibit D at 61:12-19.

*my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me . . . ."* *Id.* (emphasis added). The United States explained this distinction in a letter to defense counsel. *See* Exhibit E.

Ignoring this document, Lacey points to a separate document—a "proffer agreement" that Ferrer executed on April 5, 2018—as the basis for his claim that Ferrer has waived his personal attorney-client privilege with the HCM firm. In particular, Lacey points to the proffer agreement's second paragraph, which states:

> Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC ***as to communications with any attorney or law firm that represented Backpage.com, or any related entity***, where such communications concerned or related to Backpage.com or any related entity.

*See* CR 174, Exhibit B, at 2 ¶ B (emphasis added). Although this language is not a model of clarity, it was the parties' intention that it would simply track the approach set forth in the formal "Waiver of Attorney Client Privilege" document—that is, it would only waive Backpage's corporate attorney-client privilege but not Ferrer's personal privilege. *See* Exhibit F, ¶ 45 (Ferrer declaration). This is why the waiver only applied to "communications with any attorney or law firm that represented Backpage.com, or any related entity." It was not meant to apply to attorneys and law firms that represented Ferrer in a personal capacity (such as the HCM firm). The prefatory language at the beginning of the paragraph, discussing Ferrer's "personal or official capacity," was simply meant to demonstrate that Ferrer had a basis for effectuating the corporate privilege waiver.

Furthermore, even if the language in the proffer agreement could be construed as encompassing Ferrer's personal attorney-client privilege with the HCM firm, the waiver was not an irrevocable or permanent one—it was simply a conditional agreement that, during Ferrer's proffer sessions with the government, he would agree to discuss matters related to the HCM firm *if asked to do so*. This topic, however, has never been broached during Ferrer's proffer sessions. Accordingly, nothing has been waived.

Finally, the defense's waiver arguments also fail for a more fundamental reason.

Disqualification is required in this circumstance because the HCM firm owes a duty of loyalty to Ferrer, which is broader than the duty to maintain confidences. As the Ninth Circuit has explained: "Disqualification does not depend upon proof of the abuse of confidential information. Because of the sensitivity of client confidence and the profession's institutional need to avoid even the appearance of a breach of confidence, disqualification is required when lawyers change sides in factually related cases." *Trone v. Smith*, 621 F.2d 994, 1001 (9th Cir. 1980). For this reason, courts have ordered disqualification under Rule 1.9 even where the former client's communications with counsel have lost their confidentiality. *See, e.g., United States v. Fawell*, 2002 WL 1284388 (N.D. Ill. 2002) ("[T]he court does not agree that the [loss of confidentiality] eliminates the conflict resulting from Altheimer's prior representation . . . . That suggestion assumes that the purpose of Rule 1.9(a) is limited to protecting the former client's secrets. Other courts and commentators do not view the purpose so narrowly; they conclude instead that the prohibition against representation of another person in a same or substantially related matter relates both to the lawyer's duty of confidentiality and his or her duty of loyalty to that former client.").[4] Put simply, under Rule 1.9, and absent informed consent,[5] "[a] lawyer who has formerly represented a client in a matter *shall not* thereafter represent

---

[4]  *See also Touchcom, Inc. v. Bereskin & Parr*, 299 Fed. App'x 953, 955 (Fed. Cir. 2008) (granting disqualification motion and emphasizing that Rule 1.9 "safeguards not only confidentiality, but also the client's expectation of the attorney's loyalty and public confidence in the integrity of the bar"); *Sec. Investor Protection Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 589 (N.D. Ill. Bkr. Ct. 2000) ("Rule 1.9 is not limited to situations where a former client would be harmed by the divulgence of confidential information. . . . [T]he loyalty principle is an independent and sufficient basis for precluding a lawyer from accepting an adverse subsequent representation."); *Selby v. Revlon Consumer Prods. Corp.*, 6 F. Supp. 2d 577, 582 (N.D. Tex. 1997) ("[T]he ethical obligations embodied in ABA Rule 1.9 go far beyond the preservation of client confidences. The rule also concerns the duty of loyalty to a former client.").

[5]  Lacey suggests the proffer agreement is tantamount to an "informed consent" authorizing the HCM firm to represent Lacey. *See* CR 174 at 7. This claim requires little discussion. A privilege waiver is not the same thing as a conflict waiver.

another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." *See generally Foulke v. Knuck*, 794 P.2d 723, 728 (Ariz. Ct. App. 1989) ("ER 1.9(a) . . . does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper. Regardless of what was communicated during the representation of the former client, the rule prohibits subsequent representation of an individual whose interests are substantially adverse to those of the former client."); Ariz. R. Prof. Conduct 1.9, comment 2 ("The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.").

C. <u>The Absence Of A Formal "Joinder" Is A Red Herring</u>

The defense's final argument is that the Court should refrain from ordering disqualification "because Mr. Ferrer . . . declined to participate in the Government's motion." *See* CR 174 at 2. *See also* CR 176 at 12 (same). Lacey contends that the "failure to join the Government's Motion strongly suggests the government is seeking disqualification for its own tactical reasons." *See* CR 174 at 8.

This argument misses the mark. Time and again, the courts have rejected the notion that a cooperator must formally "join" in the government's disqualification motion. *See, e.g., United States v. Kight*, 2017 WL 4619024, *13 n.19 (N.D. Ga. 2017) ("[T]he Court rejects Kight's argument that the Government, without Lankford's permission, is precluded from seeking Armstrong's disqualification or that Lankford was required to join in the Government's Motion."). As one court has explained, this argument "gives short shrift to the respective interests of the Government and the Court in ensuring that judgments remain intact on appeal" and "betray[s] a conception of the interests at stake . . . which is both unduly narrow and overly simplistic." *United States v. Culp*, 934 F. Supp. 394, 399 (M.D. Fla. 1996). Indeed, even if the government hadn't filed a motion, the Court would possess the independent authority to inquire into the potential conflicts posed by the representation arrangements in this case and, if necessary, order disqualification. *Stepney*, 246 F. Supp. 2d at 1077 ("These supervisory powers unquestionably allow courts to require disclosure

of the precise nature of a criminal defendant's representation to ensure that no conflict of interest exists . . . . Courts have routinely intervened—prior to any controversy arising—where the circumstances of a criminal defendant's representation raises the potential for conflict of interest during the course of the proceedings, even before intervention is required by statutory or constitutional rule.").

Finally, the defense should know better than to suggest that Ferrer is somehow agnostic to the issues presented here. On April 13, 2018, Ferrer wrote a letter to the HCM firm in which he practically begged Mr. Henze and Ms. Henze Cook to comply with their ethical duties under ER 1.9, emphasized that there was "a direct, incurable conflict between me and Mr. Lacey and Mr. Larkin," and made clear that he was not consenting to their continued participation in this case. That letter was enclosed as Exhibit B to the United States' disqualification motion. It is disingenuous for the defense to ascribe some nefarious motive to the government under these circumstances. Furthermore, Ferrer has now explained, in paragraphs 3-8 of the declaration enclosed as Exhibit F, that he strongly opposes the HCM firm's efforts to represent Lacey and simply didn't think it was necessary to join in the government's motion.

Respectfully submitted this 13th day of June, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division

Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss.

*s/ Sally Hawley*
U.S. Attorney's Office