# **Exhibit K**

12-2-11362-4    49730435    ORCD    08-11-17



HONORABLE KATHRYN J. NELSON
Hearing date: August 4, 2017, at 9:00 a.m.
With oral argument

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

J.S., et al.,

        Plaintiffs,

    v.

VILLAGE VOICE MEDIA HOLDINGS,
L.L.C., d/b/a Backpage.com;
BACKPAGE.COM, L.L.C.; NEW TIMES
MEDIA, L.L.C., d/b/a Backpage.com; and,
BARUTI HOPSON,

        Defendants.

NO.  12-2-11362-4

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION TO COMPEL
DISCOVERY RE: WAIVER OF
ATTORNEY-CLIENT PRIVILEGE AND
ABSENCE OF WORK-PRODUCT
PROTECTION

THIS MATTER came before the Court on Plaintiffs' Motion to Compel Discovery re Waiver of Attorney-Client Privilege and Absence of Work Product Protection.  The Court has considered the oral argument of the parties, the existing record, and the materials submitted by the parties, including:

1.    Plaintiffs' Motion to Compel Discovery re Waiver of Attorney-Client Privilege and Absence of Work Product Protection, including the Declaration of Jason P. Amala submitted in support thereof;

2.    The opposition of Defendants Village Voice Media Holdings, LLC, Backpage.com, LLC, and New Times Media, LLC's (collectively "Defendants") to Plaintiffs' Motion to Compel Discovery re Waiver of Attorney-Client Privilege and Absence of Work Product Protection, if any, and the evidence submitted in support thereof, if any; and,

PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Ave., Ste. 200
Seattle, Washington 98402
Phone: (253) 777-0799  Fax: (253) 627-0654

3.      Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Discovery re Waiver of Attorney-Client Privilege and Absence of Work Product Protection, including the evidence submitted in support thereof;

4.      _____

5.      _____

6.      _____

7.      _____

Based on the foregoing, it is hereby **ORDERED** that Plaintiffs' Motion to Compel Discovery re: Waiver of Attorney-Client Privilege and Absence of Work Product Protection is **GRANTED** for the reasons outlined in Plaintiffs' briefing.  The Court further **FINDS** and **CONCLUDES** as follows:

1.      The assertion of attorney-client privilege and work-product protection presently at issue is the result of Defendants' affirmative reliance on Backpage.com general counsel, Elizabeth McDougall, as a factual declarant in support of their summary judgment motion, designating her as their CR 30(b)(6) corporate representative, and allowing her to make factual assertions and representations in her personal deposition and in her CR 30(b)(6) deposition. The assertions and representations made by Ms. McDougall were submitted in support of Plaintiffs' motion and are attached hereto as Appendix C.

2.      Defendants have put the assertions and representations made by Ms. McDougall at issue in this litigation by relying on her declaration in support of their summary judgment motion, by designating her as their CR 30(b)(6) corporate representative, and by allowing her to make factual assertions and representations in her personal deposition and in the CR 30(b)(6) deposition.

3.      Plaintiffs' inability to obtain testimony and discovery regarding the assertions and representations made by Ms. McDougall on the Defendants' behalf denies Plaintiffs access

PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Ave., Ste. 200
Seattle, Washington 98402
Phone: (253) 777-0799  Fax: (253) 627-0654

to information vital to effectively litigating their claims, particularly where Backpage designated Ms. McDougall as its CR 30(b)(6) representative.

4.      Based on the foregoing, as well as the arguments in Plaintiffs' motion and reply brief, the Court concludes that Defendants have waived the attorney-client privilege and work-product protection with respect to (1) the assertions and representations made by Ms. McDougall in her declaration submitted in support of the Defendants' summary judgment motion, in her personal deposition dated April 25, 2017, and in the CR 30(b)(6) deposition dated April 26, 2017; and (2) the topics identified in Plaintiffs' CR 30(b)(6) deposition notice.

5.      The Court orders that Plaintiffs are entitled to full and complete discovery regarding the topics in the CR 30(b)(6) notice and the assertions and representations made by Ms. McDougall in her declaration and deposition testimony, including:

a.      Any and all topics or representations attested to in the Declaration of Elizabeth McDougall Submitted in Support of the Backpage Defendants' Motion for Summary Judgement, dated March 23, 2017, and attached to this Order as Appendix A.

b.      Any and all matters designated in the Second Amended Notice of CR 30(b)(6) Video Deposition of Defendant Village Voice Media Holdings, LLC, d/b/a Backpage.com; Backpage.com, LLC; and New Times Media, LLC, dated April 5, 2017, and attached to this Order as Appendix B.

c.      The topics, assertions, and representations outlined in Appendix C, which tabulates numerous material assertions and representations made by Ms. McDougall in her declaration, in her personal deposition, and in her CR 30(b)(6) deposition.

d.      Defendants' waiver of the attorney-client privilege and work-product protection as to the matters set forth above is limited in scope As stated above. to include only that privilege or protection that would have existed because of Ms. McDougall's status as general counsel of Backpage.com or with prior general counsel for Defendants. This waiver does not extend to privileged and/or

[PROPOSED] ORDER GRANTING PLAINTIFFS'
MOTION TO COMPEL DISCOVERY
Page 3

PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Ave., Ste. 200
Seattle, Washington 98402
Phone: (253) 777-0799  Fax: (253) 627-0654

protected communications, information, and documents that currently exists between Defendants and their counsel in this litigation or with other outside counsel.

e. _____

_____

_____

_____

_____

6.      Plaintiffs are entitled to test Ms. McDougall's answers regarding the foregoing topics and the assertions and representations in her declaration, her personal deposition testimony, and her CR 30(b)(6) testimony, including the purported foundation for those answers and representations.

7.      The Court **ORDERS** Ms. McDougall to appear for a continuation of her personal deposition and for a continuation of the CR 30(b)(6) deposition and to provide answers that are consistent with this Order.

8.      The Court **ORDERS** Defendants to adequately prepare Ms. McDougall to testify regarding the matters designated in the Second Amended Notice of CR 30(b)(6) Video Deposition.  Such preparation shall include good-faith, reasonable efforts to account for the institutional knowledge of the Defendants that is known or reasonably available to Defendants.

9.      The Court **ORDERS** that the continuation of Ms. McDougall's individual and CR 30(b)(6) depositions shall occur within 30 days from the date of this Order at mutually agreeable days/times at the below listed location:

☐      In chambers, before the Court.

☐      Before a discovery master, as assigned by the Court.

☐      _____

_____

[PROPOSED] ORDER GRANTING PLAINTIFFS'
MOTION TO COMPEL DISCOVERY
Page 4

PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Ave., Ste. 200
Seattle, Washington 98402
Phone: (253) 777-0799  Fax: (253) 627-0654

10.   Given the Court's order that the attorney/client privilege and work product doctrine have been waived as to certain topics, assertions, and representations, as more fully detailed herein, the Court **ORDERS** Defendants to supplement their prior discovery responses and to provide any additional information or records that have been withheld based on an assertion of privilege or work product that would be inconsistent with this Order.

11.

DONE IN OPEN COURT this 8th day of August 2017. *

THE HONORABLE KATHRYN J. NELSON

**FILED**
DEPT. 13
IN OPEN COURT
AUG 0 8 2017
By _____
DEPUTY

PRESENTED BY:
PFAU COCHRAN VERTETIS AMALA PLLC

By: /s/ Jason P. Amala
    Michael T. Pfau, WSBA # 24649
    michael@pcvalaw.com
    Jason P. Amala, WSBA # 37054
    jason@pcvalaw.com
    Vincent T. Nappo, WSBA # 44191
    vincent@pcvalaw.com
    Attorneys for Plaintiffs

* Court received defendants proposed revisions on 8/8/17. Court received response by Plaintiffs and Request for Defendant to delay until noon Court's preparation of the order. Court did not insert factual as plaintiffs ~~revisions as defendant~~ requested. Court did make other changes as those were agreed.

PFAU COCHRAN VERTETIS AMALA PLLC
911 Pacific Ave , Ste. 200
Seattle, Washington 98402
Phone: (253) 777-0799  Fax:  (253) 627-0654

0101   1654   8/11/2017

# Appendix A

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

March 23 2017 4:14 PM

KEVIN STOCK
COUNTY CLERK
NO: 12-2-11362-4

THE HONORABLE KATHRYN J. NELSON

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

| | |
|---|---|
| J.S., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE VOICE MEDIA HOLDINGS<br>LLC, d/b/a Backpage.com, et al.<br><br>Defendants. | No. 12-2-11362-4<br><br>**DECLARATION OF ELIZABETH<br>MCDOUGALL SUBMITTED IN<br>SUPPORT OF THE BACKPAGE<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

I, Elizabeth McDougall, declare as follows:

1.      I am General Counsel for Defendant Backpage.com, LLC ("Backpage.com").

I am over 18 years of age and competent to provide testimony under oath.

2.      As part of my role as General Counsel for Backpage.com, I have reviewed

documents sufficient to testify regarding the below.  If called as a witness, I could and

would testify thereto.

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 1

134656896.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

3.       Except where otherwise noted, the policies and practices described below apply to the relevant period in this case, between June 2010 and September 2010 (the "Relevant Period").

4.       Backpage.com operates an online classified advertising service, located at the web address www.backpage.com.

5.       The Backpage.com website is available in all 50 states and the District of Columbia. Backpage.com is organized geographically by states and municipalities. For example, users interested in Washington State may post and view ads specific to Bellingham, Everett, Moses Lake, Mount Vernon, Olympia, Pullman, Seattle, Spokane, Tacoma, Tri-Cities, Wenatchee, and Yakima. Attached as **Exhibit A** is a true and correct copy of the homepage for the Washington edition of the website (washington.backpage.com), as it appeared in August 2010.

6.       Backpage.com is the second largest classified advertising website in the country, after Craigslist. Users post millions of classified ads on the Backpage.com website. By way of example, in the month of September 2010, users posted more than 3.4 million ads on Backpage.com. Users could post ads in numerous categories, including local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, dating, adult, and services (and various subcategories within these categories). The adult category included several sub-categories, including the escorts category.

7.       Advertisements on Backpage.com were (and are) created entirely by users. Backpage.com did not require any specific content in escort ads (although the site did require age certification and compliance with posting rules, as discussed below). Rather, to post an advertisement in the adult category, after the age certification described in paragraph 11 below and agreeing to the Posting Rules described in paragraph 12 below,

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 2

134656896.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

users created all content of ads they posted. The interface allowed users to compose a title for the advertisement, compose the text of the advertisement, and required input of an age and email address. All of these items were entered in blank fields, into which the user typed the information he or she wants to appear in the advertisement. The user could also upload photographs to be included in the advertisement. After the user created the content for the advertisement, he or she could view a "preview" of the advertisement before he or she submitted it for posting to the website.

8.      I understand that the Plaintiffs allege that pimps placed advertisements on Backpage.com allegedly offering Plaintiffs for prostitution. Backpage.com has searched its records and has located advertisements that may relate to Plaintiffs that were placed between June 27, 2010 and September 22, 2010. Backpage.com did not draft the text of the advertisements or post any of the photographs used in the ads. Nor is there any evidence that Backpage removed any text or photographs from any of the ads. All decisions as to the contents of the ads and regarding whether to post were made by the users who posted them and not Backpage.com personnel. Backpage.com had no role in and did not participate in the creation of the ads relating to Plaintiffs in any way. Backpage.com personnel also did not solicit or encourage in any way the users who posted ads about Plaintiffs, and had no contacts or dealings with these individuals—the individuals merely used the automated systems to upload ads. Backpage.com personnel did not collude or conspire with the users who posted the ads. Backpage.com had no knowledge, or any way of knowing, at the time the ads were posted, who the Plaintiffs were, whether they were minors or whether they were being exploited.

9.      Backpage.com expressly prohibits illegal content and activity on its site.

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

134656896.4

10.     Backpage.com's Terms of Use prohibit ads for illegal services or posting "any material . . . that exploits minors in any way." The Terms of Use in place during the Relevant Period stated in part:

> **User Conduct:**
>
> Without limitation, you agree to refrain from the following actions while using the Site: . . .
>
> 2. Transmitting any information, data, text, files, links, software, chats, communication or other materials that is unlawful, false, misleading, harmful, threatening, abusive, invasive of another's privacy, harassing, defamatory, vulgar, obscene, hateful or racially or otherwise objectionable, including without limitation material of any kind or nature that encourages conduct that could constitute a criminal offense, give rise to civil liability or otherwise violate any applicable local, state, provincial, national, or international law or regulation, or encourage the use of controlled substances; . . .
>
> 4. (a) Posting adult content or explicit adult material unless: (i) such material is specifically permitted in designated adult categories and permitted under applicable federal, state, and local law; and (ii) you are at least 18 years of age or older and not considered to be a minor in your state of residence; (b) Posting, anywhere on the Site, obscene or lewd and lascivious graphics or photographs which depict genitalia or actual or simulated sexual acts, as determined in the sole discretion of backpage.com; (c) Posting any solicitation directly or in "coded" fashion for any illegal service exchanging sexual favors for money or other valuable consideration; (d) Posting any material on the Site that exploits minors in any way; (e) Posting any material on the Site that in any way constitutes or assists in human trafficking.
>
> 5. Posting any ad for products or services, use or sale of which is prohibited by any law or regulation;

Attached as **Exhibit B** is a true and correct copy of the complete Terms of Use effective from May 18, 2010 to January 8, 2014.

MCDOUGALL DECLARATION
NO. 12-2-11362-4 - 4

134656896.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

11.     Backpage.com required users seeking access to the adult category to first affirm they are at least 18 years old and agree to the Terms of Use.  If a user clicked on the category, a page appeared explaining and requiring this age certification.  This page required users to agree to report any posting that may relate to suspected exploitation of minors or human trafficking, and provided a link to the website of the National Center for Missing and Exploited Children ("NCMEC"), www.cybertipline.com.  Attached as **Exhibit C** is a true and correct copy of the age certification page from July 2010.  Attached as **Exhibit D** is a true and correct copy of the page that appeared through this link.

12.     In addition, Backpage.com had specific "Posting Rules" for the adult category.  These Posting Rules were added to the Backpage.com website in September 2010.  Before a user could post an ad in the adult category on Backpage.com, he or she was required to review and agree to the Posting Rules, which emphasized that postings for commercial sex acts are prohibited; that all forms of human trafficking or exploitation are prohibited and would not be tolerated; and that any potential child exploitation would be reported for law enforcement investigation.  The Posting Rules in place in September 2010 stated:

**Posting Rules**

You agree to the following when posting in this category:

- I will not post obscene or lewd and lascivious graphics or photographs which depict genitalia or actual or simulated sexual acts;

- I will not post any solicitation directly or in "coded" fashion for any illegal service exchanging sexual favors for money or other valuable consideration;

- I will not post any material on the Site that exploits minors in any way;

MCDOUGALL DECLARATION
NO. 12-2-11362-4 − 5

134656896.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

- I will not post any material on the Site that in any way constitutes or assists in human trafficking;

- I am at least 18 years of age or older and not considered to be a minor in my state of residence.

A post exploiting a minor in any way is subject to criminal prosecution and may be reported to the Cybertipline {links to www.cybertipline.com}. The poster will be caught and the police will prosecute the poster to the full extent of the law.

Any post with terms or misspelled versions of terms implying an illegal service will be rejected. Examples of such terms include without limitation: 'greek', "gr33k", bbbj', 'blow', 'trips to greece', etc.

Postings violating these rules and our Terms of Use are subject to removal without refund.

I will abide by these rules and the Site's Terms of Use.

Attached as **Exhibit E** is a true and correct copy of a screenshot of the Posting Rules as of September 2, 2010.

13.     In addition, the posting flow to the escorts category of Backpage.com included a notice that repeated some of the prohibitions from the Backpage.com Terms of Use and, after they were implemented, the Posting Rules.  That notice stated:

### POST LEGAL ESCORT AND MASSAGE ADS HERE

Do not suggest an exchange of sex acts for money.

Do not use code words such as 'greek', 'bbbj', 'blow', 'trips to greece', etc.

Do not post obscene images.

Do not post content which advertises an illegal service.

Postings not complying with the **terms of use** are subject to removal.

Attached as **Exhibit F** is a true and correct copy of a screenshot of this message as of September 2, 2010.

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 6

134656896.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

14.    Before a user placed an ad on the escort section of Backpage.com, the user was required to agree to the following:

> By placing this ad I agree to the terms of use. I confirm and represent that I am at least 18 years of age or older (and am not considered to be a minor in my state of residence) and that I am not located in a community or local jurisdiction where nude pictures or explicit adult materials are prohibited by any law. I further represent and warrant that this posting does not contain any obscene or lewd and lascivious graphics or photographs or graphics or photographs with depict or simulate sexual acts.

Attached as **Exhibit G** is a true and correct copy of a screenshot of the portion of the Backpage.com website containing this message as of September 2, 2010.

15.    Backpage.com also employed extensive, voluntary monitoring to prevent and remove improper user postings, practices that evolved throughout 2010. First, Backpage.com used (and regularly updated) an automated filtering system that scanned millions of potential posts each month, before they appeared on Backpage.com's website, for "red-flag" terms, phrases, codes, email addresses, URLs and IP addresses. Some advertisements containing prohibited terms and phrases were rejected from publication to the website. In other instances, rather than reject the entire ad, Backpage.com removed the prohibited terms or phrases from the ad, either via an automated system or manually.

16.    Second, users could report potential violations of the Backpage.com Terms of Use or Posting Rules, or any other concerns, by sending an email directly to abuse@backpage.com. Backpage.com personnel reviewed emails sent to the address abuse@backpage.com to determine whether ads should be removed or reported to appropriate authorities. Attached as **Exhibit H** is a true and correct copy of a screenshot of this feature as of September 2, 2010.

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 7

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

134656896.4

17.     Third, Backpage.com also operated a two-tiered manual (human) review system (called "moderation") of ads submitted for posting to the adult category.  During the first-level manual review, Backpage.com personnel assessed proposed posts to the adult category before they were allowed to appear on Backpage.com and endeavored to prevent postings that concerned illegal conduct and other activity prohibited by the Terms of Use or Posting Rules.  During the second-level manual review, Backpage.com personnel examined nearly every posting in the adult category that appeared on the website as a double check for potential illegal or prohibited activity.

18.     Moderators were never authorized to add content to ads.  Moderators were instructed to reject (or delete) ads that directly suggested an exchange of sex for money or that included images depicting sexual acts.  Moderators were instructed to remove images or photographs that violated Backpage.com's Posting Rules prohibiting the posting of any nude photographs.  Finally, moderators were also instructed to remove certain obscene or sexual terms or phrases from ads.

19.     If, during the manual review discussed above, Backpage.com personnel believed that an advertisement might relate to the exploitation of a minor, Backpage.com reported the posting to NCMEC. Attached as **Exhibit I** is a true and correct copy of a June 8, 2010 internal Backpage.com email communication setting out the procedures for reporting advertisements to NCMEC (referred to in the email as Cybertipline), produced at BACKPAGE00006284-85.

20.     Backpage.com's policies, rules and restrictions for the website were not designed or intended to induce sex trafficking or exploitation of any sort.  Backpage.com imposed and enforced rules, screened and blocked ads, and took other actions (as described above) to prevent and preclude such misuse of the website.  Attached are the following

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

134656896.4

documents, which relate to Backpage.com's efforts to prevent misuse of the website and help law enforcement.

     a.  Attached as **Exhibit J** is a true and correct copy of a May 25, 2011 email communication between Backpage.com and an officer from the Texas Office of the Attorney General, produced at BACKPAGE00017104-05.

     b.  Attached as **Exhibit K** is a true and correct copy of a June 8, 2011 email between Backpage.com and an FBI agent from Chicago, produced at BACKPAGE00017085.

     c.  Attached as **Exhibit L** is a true and correct copy of an August 29, 2011 email communication between Backpage.com and law enforcement from Longview, Texas, produced at BACKPAGE00009081-82.

     d.  Attached as **Exhibit M** is a true and correct copy of a May 19, 2011 presentation given by Backpage.com to the U.S. Department of Justice, produced at BACKPAGE00027616-52.

     e.  Attached as **Exhibit N** is a true and correct copy of Backpage.com's Law Enforcement Guide, produced at BACKPAGE00012427-28.

21.    I know of no other website in the country that has instituted and applied such extensive measures to prevent and block improper content (especially concerning sex trafficking or exploitation of minors) or to cooperate with law enforcement.

//

//

//

//

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 9

134656896.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

I declare that the foregoing is true and correct to the best of my knowledge and subject to the penalty of perjury under the laws of the state of Washington.

Dated this 23rd day of March, 2017, at Los Angeles, California.

Elizabeth McDougall

MCDOUGALL DECLARATION
NO. 12-2-11362-4 – 10

134656896.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# CERTIFICATE OF SERVICE

On March 23, 2017, I caused to be served upon counsel of record, at the address

stated below, via the method of service indicated, a true and correct copy of the following

documents: **DECLARATION OF ELIZABETH MCDOUGALL SUBMITTED IN**

**SUPPORT OF THE BACKPAGE DEFENDANTS' MOTION FOR SUMMARY**

**JUDGMENT**

| | | |
|---|---|---|
| Erik L. Bauer | ☐ | Via hand delivery |
| The Law Office of Erik L. Bauer | ☐ | Via U.S. Mail, 1st Class, Postage Prepaid |
| 215 Tacoma Avenue South | | |
| Tacoma, WA 98402 | ☐ | Via Overnight Delivery |
| Email: erik@erikbauer.com | ☐ | Via Facsimile |
| **Attorney for Plaintiffs** | ☒ | Via E-Mail |
| Michael T. Pfau | ☐ | Via hand delivery |
| Darrell L. Cochran | ☐ | Via U.S. Mail, 1st Class, Postage Prepaid |
| Jason P. Amala | | |
| Vincent T. Nappo | ☐ | Via Overnight Delivery |
| Pfau Cochran Vertetis Amala PLLC | ☐ | Via Facsimile |
| 911 Pacific Avenue, Suite 200 | ☒ | Via E-Mail |
| Tacoma, WA 98402 | | |
| Email: Michael@pcvalaw.com | | |
| Darrell@pcvalaw.com | | |
| jason@pcvalaw.com | | |
| Vincent@pcvalaw.com | | |
| **Attorneys for Plaintiffs** | | |
| James Condon Grant | ☐ | Via hand delivery |
| Davis Wright Tremaine LLP | ☐ | Via U.S. Mail, 1st Class, Postage Prepaid |
| Email: jamesgrant@dwt.com | | |
| **Attorney for Defendants,** | ☐ | Via Overnight Delivery |
| Village Voice Media Holdings, LLC, | ☐ | Via Facsimile |
| Backpage.com LLC, New Times Media, LLC | ☒ | Via E-Mail |

CERTIFICATE OF SERVICE
NO. 12-2-11362-4  − 1

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

134656896.4

**I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.**

EXECUTED at Seattle, Washington, on March 23, 2017.

_s/ Erin J. Weinkauf_
Erin J. Weinkauf
Legal Secretary

CERTIFICATE OF SERVICE
NO. 12-2-11362-4 – 2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

134656896.4

0114

1654

8/11/2017

# Appendix B

Court reporter and videographer requested 4/6/17 (bh)
(Byers & Anderson)

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

J.S., et al.,

      Plaintiffs,

  v.

VILLAGE VOICE MEDIA HOLDINGS,
L.L.C., d/b/a Backpage.com, et al.,

      Defendants.

NO. 12-2-11362-4

SECOND AMENDED NOTICE OF CR
30(b)(6) VIDEO DEPOSITION OF
DEFENDANT VILLAGE VOICE MEDIA
HOLDINGS, L.L.C., d/b/a
BACKPAGE.COM; BACKPAGE.COM,
LLC; AND, NEW TIMES MEDIA, LLC

TO:   DEFENDANTS VILLAGE VOICE MEDIA HOLDINGS, L.L.C., d/b/a
     BACKPAGE.COM; BACKPAGE.COM, LLC; and, NEW TIMES MEDIA,
     LLC

AND TO:  ALL ATTORNEYS OF RECORD

   YOU AND EACH OF YOU will please take notice that a videotaped deposition of the

following individual will be taken on behalf of Plaintiffs before a Notary Public as follows:

   NAME:   PERSON(S) MOST KNOWLEDGEABLE OF DEFENDANTS
        VILLAGE VOICE MEDIA HOLDINGS, L.L.C., d/b/a
        BACKPAGE.COM; BACKPAGE.COM, LLC, and NEW TIMES
        MEDIA, LLC.

   DATE:   April 26, 2017

   TIME:   9:00 A.M.

   PLACE:  PERKINS COIE LLP
        1201 Third Ave., Ste. 4900

NOTICE OF 30(b)(6) DEPOSITION - 1 of 10

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 - FACSIMILE (206) 623-3624
http://www.pcvalaw.com

Seattle, WA 98101

The Washington Supreme Court concluded in this case that "[i]t is important to ascertain whether in fact Backpage designed its posting rules to induce sex trafficking to determine whether Backpage is subject to suit under the CDA because 'a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.'" *J.S. v. Vill. Voice Media Holdings, L.L.C.*, 184 Wn.2d 95, 103 (2015) (citing *Fair Hous. Council*, 521 F.3d at 1168).

Further, the Court highlighted the following factual allegations from Plaintiffs' First Amended Complaint as warranting further fact-finding and discovery:

(1) "Backpage.com ... has intentionally developed its website to require information that allows and encourages ... illegal trade to occur through its website, including the illegal trafficking of underage girls,"

(2) "Backpage.com has developed content requirements that it knows will allow pimps and prostitutes to evade law enforcement,"

(3) "Backpage.com knows that the foregoing content requirements are a fraud and a ruse that is aimed at helping pimps, prostitutes, and Backpage.com evade law enforcement by giving the [false] appearance that Backpage.com does not allow sex trafficking on its website,

(4) "the content requirements are nothing more than a method developed by Backpage.com to allow pimps, prostitutes, and Backpage.com to evade law enforcement for illegal sex trafficking, including the trafficking of minors for sex,"

(5) Backpage's "content requirements are specifically designed to control the nature and context of those advertisements so that pimps can continue to use Backpage.com to traffic in sex, including the trafficking of children, and so Backpage.com can continue to profit from those advertisements," and

(6) Backpage has a "substantial role in creating the content and context of the advertisements on its website." CP at 6, 8, 10, 12, 13. According to J.S., Backpage's advertisement posting rules were not simply neutral policies prohibiting or limiting certain content but were instead "specifically designed ... so that pimps can continue to use Backpage.com to traffic in sex."

NOTICE OF 30(b)(6) DEPOSITION - 2 of 10

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 - FACSIMILE (206) 623-3624
http://www.pcvalaw.com

Additionally, the defendants have previously claimed that they led the industry in efforts to prevent sex trafficking on the www.backpage.com website through a process referred to as "moderation" practices, which entails screening and reviewing escort advertisements that are submitted for publication by users of www.backpage.com.

In light of the foregoing, Plaintiffs ask that the CR 30(b)(6) representative(s) with the most knowledge from DEFENDANTS VILLAGE VOICE MEDIA HOLDINGS, L.L.C., d/b/a BACKPAGE.COM; BACKPAGE.COM, LLC, and NEW TIMES MEDIA, LLC be prepared to testify regarding:

1) The "moderation" practices that have been used for advertisements on www.backpage.com since such practices were first implemented until present. You should be prepared to discuss the following subjects for each version of such "moderation practices," including the version(s) that existed when each Plaintiff alleges she was sexually abused and exploited on www.backpage.com.

a.      How, when, and why each version of the "moderation practices" were implemented.

b.      Whether any version of the "moderation practices" was implemented to help prevent sex trafficking of women and children on www.backpage.com, and if so, how each version was intended to help accomplish that goal.

c.      Each person who was involved with creating or implementing each version of the "moderation practices," including the role of each person in creating or implementing the "moderation practices" and their last known contact information.

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 - FACSIMILE (206) 623-3624
http://www.pcvalaw.com

d.       Whether any third parties assisted in creating, implementing, or modifying the "moderation practices," and if so, the identity of each third party and their role in creating, implementing, or modifying the "moderation practices."

e.       What control, if any, you had over how each version of the "moderation practices" was implemented, including any control you had over the day-to-day implementation of the "moderation practices" and individual advertisements that were "moderated."

f.       How and why the "moderation practices" have been modified over time, including each person who was involved with modifying the "moderation practices" and their role in modifying the "moderation practices," and the reason for each modification.

g.       A detailed explanation of the step-by-step process that has been used for "moderating" advertisements on www.backpage.com since the "moderation practices" were first implemented.  For each version of the "moderation practices," you should be prepared to discuss the step-by-step process from the point that a user first visited www.backpage.com until the user's advertisement was visible to other users of www.backpage.com.

h.       A detailed explanation of how each version of the "moderation practices" were implemented in conjunction with the process for posting an advertisement on www.backpage.com, including a detailed explanation of the step-by-step process for posting an advertisement on www.backpage.com and how the "moderation practices" integrated with that process.

i.       A detailed explanation of how each version of the "moderation practices" allowed an advertisement to be viewed, modified, edited, and/or published, including the ability to keep track of changes or edits to an individual advertisement.

NOTICE OF 30(b)(6) DEPOSITION - 4 of 10

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 • FACSIMILE (206) 623-3624
http://www.pcvalaw.com

**j.**     A detailed explanation of how each version of the "moderation practices" allowed you to view a user's history on www.backpage.com, including prior advertisements posted by the same user and any edits to the user's prior advertisements.

**k.**     Your document retention policies for records regarding your "moderation practices," including who was responsible for carrying out your document retention policies and any written documentation you have regarding such policies.

**l.**     Your document retention policies for records regarding individual advertisements that have been posted on www.backpage.com, including who was responsible for carrying out your document retention policies and any written documentation you have regarding such policies.

2) Your policies, practices, and procedures for reviewing, screening, moderating, and/or editing an advertisement on www.backpage.com, including ads in the section that became known as the "escorts" section, from when advertisements were first allowed on the website until present.  You should be prepared to discuss the following subject for each version of such policies, practices, and procedures, including whatever policies, practices, and procedures were in place when each Plaintiff alleges she was sexually abused and exploited on www.backpage.com.

a.     Your policies, practices, and procedures relating to reviewing an advertisement before publication and after publication.

b.     Your policies, practices, and procedures relating to screening an advertisement before publication and after publication.

c.     Your policies, practices, and procedures relating to moderating an advertisement before publication and after publication.

NOTICE OF 30(b)(6) DEPOSITION - 5 of 10

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 - FACSIMILE (206) 623-3624
http://www.pcvalaw.com

d.    Your policies, practices, and procedures relating to editing the content of an advertisement before publication and after publication.

e.    Your policies, practices, and procedures relating to removing the content from an advertisement before publication and after publication.

f.    Your policies, practices, and procedures relating to editing an advertisement's written or photographic content before publication and after publication.

g.    Your policies, practices, and procedures relating to deleting or "failing" an advertisement before publication and after publication.

h.    A detailed explanation of any third party that you have used for implementing the policies, practices, and procedures for reviewing, screening, moderating, and/or editing an advertisement on www.backpage.com, including ads in the section that became known as the "escorts" section. For each third party, please be prepared to provide the identity of each third party, the last known contact information for each third party, the date(s) they helped to implement your policies, practices, and procedures, their role in implementing your policies, practices, and procedures, and any oversight or control you had over how they implemented your policies, practices, and procedures.

i.    Your document retention policies for records regarding your policies, practices, and procedures, including who was responsible for carrying out your document retention policies and any written documentation you have regarding such policies.

3)    Your involvement with each of the ads that were posted of each Plaintiff on www.backpage.com, including whether you or someone on your behalf:

a.    Reviewed each ad, and if so, how each ad was reviewed; and,

b.    Edited each ad, and if so, how each ad was edited.

NOTICE OF 30(b)(6) DEPOSITION - 6 of 10

4)    Whether anyone was responsible for moderating the "escort section" of www.backpage.com where each Plaintiff's ads were posted, and if so, the name of the person(s) responsible for moderating that section at the time each Plaintiff's ads were posted.

5)  A detailed explanation of all information that has been available to you regarding each Plaintiff's ad that was posted on www.backpage.com, including the information that is visible on the documents you have produced in discovery regarding each Plaintiff's ad.

6)  A detailed explanation of all information that has been available to you regarding each user who posted ads of each Plaintiff on www.backpage.com, including the information that is visible on the documents you have produced in discovery regarding each Plaintiff's ad.

7)  To the extent you assert that you no longer have information regarding each Plaintiff's ad, or each user who posted ads of each Plaintiff, when that information was destroyed, why it was destroyed, and who destroyed it.

8) Any consideration or material benefit you received for each of the ads that were posted of each Plaintiff on www.backpage.com, including whether you profited from each ad, and if so, how much you profited and how you earned those profits.

9)  Each version of the "posting rules" that were implemented for advertisements posted in the "escort" section of www.backpage.com, including when each version was created, why each version was created, and who was involved with creating each version.

10)    Each version of the "content requirements" that were implemented for advertisements posted in the "escort" section of www.backpage.com, including when each version was created, why each version was created, and who was involved with creating each version.

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 • FACSIMILE (206) 623-3624
http://www.pcvalaw.com

11)     Before and during the time that each Plaintiff was advertised on www.backpage.com, your knowledge that children were being trafficked for sex in the "escort" section of www.backpage.com; whether you required photo identification or proof of age for an ad posted in the "escort" section of www.backpage.com, and if not, why not; whether you required photo identification or proof of age for an adult ad posted in the Seattle Weekly during the time that each Plaintiff was advertised on www.backpage.com, and if so, why; whether you required photo identification or proof of age for an adult ad posted in print media owned or managed by you during the time that each Plaintiff was advertised on www.backpage.com, and if so, why; and, what steps you took, if any, to prevent children from being advertised for sex in the "escort" section of www.backpage.com.

12)     Before and during the time that each Plaintiff was advertised on www.backpage.com, whether you knew that your moderation practices were helping to promote sex trafficking on www.backpage.com by effectively sanitizing ads for sex, and whether you knew that your moderation practices were helping sex traffickers evade law enforcement by effectively sanitizing ads for sex.

A stenographic and videotaped record of the deposition shall be made at the expense of the noting party. This oral examination will be subject to continuance or adjournment from time to time or place to place until completed.

DATED this 5th day of April 2017.

PFAU COCHRAN VERTETIS AMALA PLLC

By: _____
    Michael T. Pfau, WSBA No. 24649
    mike@pcvalaw.com
    Jason P. Amala, WSBA No. 37054
    jason@pcvalaw.com

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334  -  FACSIMILE (206) 623-3624
http://www.pcvalaw.com

Vincent T. Nappo, WSBA No. 44191
vnappo@pcvalaw.com
Attorneys for Plaintiffs

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 - FACSIMILE (206) 623-3624
http://www.pcvalaw.com

## Certificate of Service

I, Vincent Nappo, hereby declare under penalty of perjury under the laws of the State of Washington that that I am employed at Pfau Cochran Vertetis Amala PLLC and that on this 5th day of April 2017, I served the foregoing document via e-mail, first class mail, ABC Legal Messenger, and/or facsimile by directing delivery addressed to:

*Counsel for the above-captioned Defendants:*

Breena Roos
Harry Schneider
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101

_____
Vincent Nappo

4850-3606-4813, v. 2

NOTICE OF 30(b)(6) DEPOSITION - 10 of 10

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Ste. 500
Seattle, Washington 98104
(206) 462-4334 - FACSIMILE (206) 623-3624
http://www.pcvalaw.com

## APPENDIX C
## Material Assertions and Representations by Elizabeth McDougall

### Backpage's Removal of Terms From Ads Indicative of Sex Trafficking

Backpage.com also employed extensive, voluntary monitoring to prevent and remove improper user postings, practices that evolved throughout 2010. First, Backpage.com used (and regularly updated) an automated filtering system that scanned millions of potential posts each month, before they appeared on Backpage.com's website, for "red-flag" terms, phrases, codes, email addresses, URLs and IP addresses. Some advertisements containing prohibited terms and phrases were rejected from publication to the website. In other instances, rather than reject the entire ad, Backpage.com removed the prohibited terms or phrases from the ad, either via an automated system or manually. (McDougall Decl. ¶ 15)

Backpage.com also operated a two-tiered manual (human) review system (called "moderation") of ads submitted for posting to the adult category. During the first-level manual review, Backpage.com personnel assessed proposed posts to the adult category before they were allowed to appear on Backpage.com and endeavored to prevent postings that concerned illegal conduct and other activity prohibited by the Terms of Use or Posting Rules. During the second-level manual review, Backpage.com personnel examined nearly every posting in the adult category that appeared on the website as a double check for potential illegal or prohibited activity. (McDougall Decl. ¶ 17)

If, during the manual review discussed above, Backpage.com personnel believed that an advertisement might relate to the exploitation of a minor, Backpage.com reported the posting to NCMEC." (McDougall Decl. ¶ 19)

Q: Was there a period of time where Backpage had a practice of removing certain terms from ads before they were posted on the website?
A: There was a period of time when Backpage did remove certain terms from ads before they were posted on the website.
(McDougall Dep. 59:1-6)

Q: You are aware that Backpage had an automatic filter in place to remove certain terms that the company defined as being terms reflecting sex for money, correct?
A: The company had a filter in place for removing terms, phrases, URLs, phone numbers, IP addresses, e-mail addresses, things like that, for many purposes, including primarily spam, fraud, scams, that kind of thing. At a point in time terms related to adult content were added to that filter.
(McDougall Dep. 60:8-18)

Q: So do you agree with me that Backpage.com included hundreds of words in its automatic filter because the company had concluded that those terms reflected sex for money?
A: No.
Q: You don't agree with that?
A: No.
(McDougall Dep. 61:18-24)

Q: You also understand that in addition to its automatic filter, there was a period of time where Backpage also had moderators who would review ads after they had been filtered by the automatic filter who would then manually remove terms that the company identified as reflecting sex for money? . . .

A: [T]here was a period of time where Backpage also had moderators who would review ads after they had been filtered by the automatic filter--there was a period of time where Backpage also had moderators who would review ads after they had been filtered by the automatic filter who would then manually remove terms that the company identified as potentially reflecting sex for money or other content that violated the terms of use or was objectionable to the company.

(McDougall Dep. 62:1-17)

Q: The moderator also could have seen language suggesting that this was an ad for sex for money and edited the content that suggested it was an ad for sex for money, correct, and then posted the remainder, correct? . . .

A: A moderator had a technical ability to edit the content of the ad for any reason that the moderator deemed appropriate and pursuant to the rules that they were required to follow.

Q: And one of those rules that they were required to follow allowed them to remove text that was suggestive of sex for money and then post the remainder, correct?

A: No.

Q: What's the basis for that testimony?

A: There was a brief period of time when moderators were permitted to remove terms that were deemed inappropriate or objectionable by the company, beginning in, I believe, 22 July 2009, although I'm not certain about that date, that included-- you know, I'm not sure about that date. I would have to check that. That included adult-related terms, so they could remove a term that referred to a sex act, but the inclusion of a term that reflects a sex act does not necessarily mean that it is a request for sex for money.

(30(b)(6) Dep. 46:9-47:3)

### The Purpose of Backpage's Automatic Filters and Manual Moderation Practices

Backpage.com's policies, rules and restrictions for the website were not designed or intended to induce sex trafficking or exploitation of any sort. Backpage.com imposed and enforced rules, screened and blocked ads, and took other actions (as described above) to prevent and preclude such misuse of the website. . . . I know of no other website in the country that has instituted and applied such extensive measures to prevent and block improper content (especially concerning sex trafficking or exploitation of minors) or to cooperate with law enforcement.  (McDougall Decl. ¶¶ 20–21)

Q: Am I correct that it's the company's position that the automatic filter was intended, in part, to prevent sex trafficking?

A: Yes.

Q: Then if the automatic filter was at least in part supposed to prevent sex trafficking, were any of the terms that were being removed by the automatic filter terms that prevented sex trafficking? . . .

A: I'm unaware of any specific term that reflects sex trafficking.

Q: So tell me, how did the automatic filter help to prevent sex trafficking if you are not aware of any terms that the automatic filter used to address sex trafficking?

A: There is no certainty with any particular term. We used the automated filter as an efficient method to try to remove content that could potentially involve sex for money or sex trafficking or, in particular, the sex trafficking of minors.

Q: Was that also true with regard to the manual moderating that was done on these ads?

A: Yes.

Q: How does it help to prevent sex trafficking if a website has an automatic filter that removes terms that may reflect an ad is for sex trafficking?

A: The way the filter operated, the ad would be posted. After about five minutes, the objectionable term would be removed. The presumption was the user would think they had made some kind of mistake, they would go back, add the term again. After five minutes, the term would be removed again, and the intention was to--to frustrate the user so that they would stop posting. Also, with the term removed from the text, the goal was to-- one of the goals was to render the ad meaningless, essentially, something that a user reading it would not respond to because they had no understanding of what it was trying to advertise.

(30(b)(6) Dep. 49:15-51:5)


Q: Do you think it's misleading to represent to the public that that triple-tiered policing system was an effort to prevent sex trafficking when in reality that system removed content that indicated an ad was sex for money and then posted the sanitized ad? . . .

A: I do not think it's at all misleading to represent to the public that Backpage's triple-tiered policing system was an effort to prevent trafficking.

. . . .

Q: How does it help to prevent sex trafficking if Backpage.com is removing terms that suggest an ad is for sex and then posting the rest of the ad? . . .

A: Unfortunately I can't answer that question without divulging attorney-client privileged information.

(McDougall Dep. 94:4-95:14)

### Backpage's Treatment of Plaintiffs' Ads

Backpage.com did not draft the text of the advertisements or post any of the photographs used in the ads. Nor is there any evidence that Backpage removed any text or photographs from any of the ads. All decisions as to the contents of the ads and regarding whether to post were made by the users who posted them and not Backpage.com personnel. Backpage.com had no role in and did not participate in the creation of the ads relating to Plaintiffs in any way. Backpage.com personnel also did not solicit or encourage in any way the users who posted ads about Plaintiffs, and had no contacts or dealings with these individuals—the individuals merely used the automated systems to upload ads. Backpage.com personnel did not collude or conspire with the users who posted the ads. Backpage.com had no knowledge, or any way of knowing, at the time the ads were posted, who the Plaintiffs were, whether they were minors or whether they were being exploited." (McDougall Decl. ¶ 8)

Q: In the second to last sentence in Paragraph No. 8 of your declaration, that is Exhibit No. 6, you state, "Backpage.com personnel did not collude or conspire with the users who posted the ads." Do you see that?

A: I do.

Q: Did you ask anyone at Backpage.com whether or not, during the period of June 27th, 2010 through September 22nd, 2010, they had implemented any policies or procedures to help pimps post sex trafficking ads on Backpage.com?

A: I can't answer that question without divulging attorney-client communication, but I can refer you to the documents produced in this case that address that issue.

(McDougall Dep. 122:25-123:14)

Q: The representation in your declaration that you submitted in support of Backpage's motion for summary judgment is that there's no evidence that Backpage removed any text or photographs from any of the ads, correct?

A: I believe that's correct.

(McDougall Dep. 122:11-13)

Q: What is the basis for your representation that there is no evidence that Backpage removed any text or photographs from any of the ads of the plaintiffs?

A: The basis is the ads that I reviewed myself, but other members of the legal team reviewed all of the ads, and it's based-- it's also based largely on the evidence from the testimony of the former employees and the testimony and defense interviews provided in the criminal cases regarding Hopson and Shabazz and Shadina Rice. That's the best of my recollection right now. There may have been other things at the time. . . .

Q: Backpage did not store copies of what ads looked like before and after they were edited by either the automatic filtering system or the manual moderation system, correct?

A: Yes, that's my understanding.

(McDougall Dep. 119:22-120:14)

Q: Did you ask anyone at Backpage.com whether or not there was any evidence in its possession regarding whether any of these ads were edited before they were posted on the website?

A: I don't think I can answer--I don't think I can answer that question without divulging attorney-client communications.

Q: So are you declining to answer that question?

A: I am.

Q: Based on Privilege?

A: Yes.

(McDougall Dep. 122:14-24)

Q: Did you ever ask any of the management of Backpage.com whether there ever existed evidence as to whether or not Backpage removed any text or photographs from any of the ads of the plaintiffs? . . .

A: I don't believe I can answer that question without divulging attorney-client communications.

(McDougall Dep. 133:24-134:6)

Q: Did you ask anyone at Backpage.com whether there was something the company could do to try to determine whether or not the ads of any of these Plaintiffs had been manually or automatically edited by Backpage.com? . . .

A: I cannot answer that question without divulging privileged communications.

(McDougall Dep. 142:7-15)

Backpage Did Not Collude or Conspire with Pimps

Q:  In the second to last sentence in Paragraph No. 8 of your declaration, that is Exhibit No. 6, you state, "Backpage.com personnel did not collude or conspire with the users who posted the ads." Do you see that?
A:  I do.
Q:  Did you ask anyone at Backpage.com whether or not, during the period of June 27th, 2010 through September 22nd, 2010, they had implemented any policies or procedures to help pimps post sex trafficking ads on Backpage.com?
A:  I can't answer that question without divulging attorney-client communication, but I can refer you to the documents produced in this case that address that issue.
(McDougall Dep. 122:25-123:14)