UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America, Plaintiff,

vs.

James Larkin (2), Defendant.

No. CR 18-0422-PHX-SPL

Phoenix, Arizona
April 16, 2018
2:07 p.m.

BEFORE: THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE

TRANSCRIPT OF PROCEEDINGS-AMENDED

(*Detention Hearing*)

APPEARANCES:

For the Plaintiff:
U.S. ATTORNEY'S OFFICE
By: Kevin M. Rapp, Esq.
By: Dominic W. Lanza, Esq.
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

For the Defendant:
ARGUEDAS CASSMAN & HEADLEY LLP
By: Ted W. Cassman, Esq.
803 Hearst Avenue
Berkeley, California 94710

Transcriptionist:
Laurie A. Adams
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC-43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

P R O C E E D I N G S

THE MAGISTRATE CLERK: Case Number CR 18-422, United States of America versus James Larkin, on for detention hearing.

MR. RAPP: Good afternoon. Kevin Rapp and Dominic Lanza on behalf of the United States. 03:37PM

THE COURT: Good afternoon.

MR. CASSMAN: Good afternoon, Your Honor. Ted Cassman appearing on behalf of Mr. Larkin. He's present and in custody. 03:37PM

THE COURT: Good afternoon. Good afternoon, Mr. Larkin.

Sir, we're here for your detention hearing. Let me hear from the government first. What's the government's position regarding detention? 03:37PM

MR. RAPP: Judge, the parties have reached an accommodation on some terms and, therefore, we would be withdrawing our motion to have the defendant detained.

THE COURT: All right. I have reviewed it. I have a copy that's even been signed by Mr. Larkin of the release 03:37PM conditions. Let me review those with you, and I will turn to Mr. Larkin.

The request that is added to this case is that he not travel outside of Maricopa County and that he be subject to electronic monitoring. That electronic monitoring would not 03:38PM

have the standard curfew, home detention, or home incarceration but it would monitor his whereabouts in Maricopa County. Any requests regarding electronic monitoring other than that?

MR. RAPP: No.

THE COURT: Regarding the surety and the properties that have been placed before the Court, have you reviewed that documentation? 03:38PM

MR. RAPP: We have, Your Honor. We're satisfied with the documentation.

THE COURT: And both of the properties that are listed you have information about those as well? 03:38PM

MR. RAPP: We do.

THE COURT: Okay. Mr. Cassman, anything you would like to say regarding detention? I'm inclined to release Mr. Larkin on the terms that have been agreed upon. They seem sufficient to secure your attendance, Mr. Larkin. 03:38PM

But anything you would like to add?

MR. CASSMAN: I just wanted to put on -- first of all, thank you to your staff very much and to Pretrial Services for their facilitating this and getting it on earlier today. We very much appreciate that. 03:40PM

Second, with regard to Maricopa County, the original agreement between the parties was Arizona, and it's understood that my office is in California and his daughter is in high school in California. So we anticipate that there -- oh, and 03:41PM

his son is graduating from Brown University in May. So we anticipate there will be requests to travel outside Maricopa. But I have discussed it with Pretrial Services and they assured us if we give appropriate advance notice and an explanation and appropriate location information it shouldn't be a problem. 03:41PM

THE COURT: All right. Good.

Anything else to add?

MR. CASSMAN: No.

THE COURT: Let me ask you regarding your involvement in the surety first, were you involved in this process? 03:41PM

MR. CASSMAN: Obtaining signatures and filling it out? Yes, I was, Your Honor.

THE COURT: And the amount of the bond as well, I just want to know if you had -- if you understand what this is, the appearance bond. 03:41PM

MR. CASSMAN: Yes.

THE COURT: And you reviewed it with Mr. Larkin?

MR. CASSMAN: Yes.

THE COURT: Okay. Mr. Larkin, I'm going to review it with you as well. I wanted to make sure that you have talked 03:42PM to your attorney about it and you know its implications.

Anything you wish to place on the record regarding either the property or the surety bond.

MR. CASSMAN: No, Your Honor.

THE COURT: From Pretrial Services, anything to add 03:42PM

today?

THE PRETRIAL SERVICES OFFICER: No, Your Honor. The only concern I do have is with the possible length of travel. We certainly can approve, however, it would be something where it's for a few days at a time, not extended stays in California, et cetera, just because of the location of the monitoring equipment and the need to be able to access it to make sure it's functioning properly. 03:42PM

THE COURT: Okay. Well, I will allow you to work with Mr. Larkin and his counsel if need be. If it becomes a problem you can contact the Court or U.S. Attorney's Office. These things are usually worked out well between the parties. But if there are concerns, raise it with the Court. 03:42PM

THE PROBATION OFFICER: I just wanted to go on record with that. Thank you, Your Honor. 03:42PM

THE COURT: Thank you.

Mr. Larkin, before we continue, do you have any questions for me?

THE DEFENDANT: No.

THE COURT: Okay. Let me tell you the simple terms of your release conditions, and then I will review them in detail. You are going to be released on court-ordered conditions. I will review it all with you. As part of that process I have received a copy of the appearance bond and also information relating to two properties. In very simple terms, if you do 03:43PM 03:43PM

not appear for your court proceedings, if you are convicted of an offense and you fail to surrender for service of a sentence or you fail to comply with the conditions of your release, you could be back before the Court.

Importantly, if you fail to appear and you don't abide by court orders, you are posting this amount of money and the properties, and that means they are collateral. If you do not abide by court orders or if you fail to appear, a hearing can issue. You could lose these items, the money and the property. Do you understand?

THE DEFENDANT: Yes. I understand.

THE COURT: You are going to hear me repeat that a few times. I'm going to go through the details as well. This is a substantial amount of money and the properties have significant value, so I'm sure you are aware of that as well.

MR. CASSMAN: Your Honor, could I get a cup of water, please?

THE COURT: Of course.

All right. Mr. Larkin, let me review with you your release conditions. For the record, I have reviewed your case. I have reviewed the two Pretrial Service reports and the information submitted to the Court by the government and also that's been placed before the Court in these documents. I find that your release is appropriate. The bond and its surety and the property are sufficient to secure your attendance, and I

03:44PM 03:44PM 03:44PM 03:44PM 03:45PM

don't find that you are a danger.

So you are to appear at all proceedings as required, surrender for service if a sentence is imposed. You will maintain contact with your attorney by Friday noon of each week. You can do that by telephone. 03:45PM

Do you understand those conditions?

THE DEFENDANT: Yes, I do.

THE COURT: It's always your responsibility to appear, not your attorney's. If you fail to appear, of course, the burden is on you at all times. 03:45PM

Do not commit any federal, state, local, or tribal crime on release. Cooperate in the collection of a DNA sample if authorized by law. Immediately advise the Court, your attorney, and U.S. Attorney in writing if you change your address or telephone number. 03:46PM If you wish to change your address or telephone number, you must request permission to do so and obtain that permission from Pretrial Services or the Court.

Do you understand that?

THE DEFENDANT: Yes, I do. 03:46PM

THE COURT: Would you state for me, and for the record, the residence that you will be residing at?

THE DEFENDANT: 5555 North Casa Blanca Drive, Paradise Valley, Arizona, 85253.

THE COURT: Okay. The electronic monitoring I will 03:46PM

review in just a moment, but that is the residence that will show you will be at.

You are to report as directed to Pretrial Services. You will meet with them after this hearing today. Does he have clothing here today? 03:46PM

MR. CASSMAN: Yes.

THE COURT: Surrender all travel documents to Pretrial Services by the 17th at 5 p.m.

Do you have travel documents?

THE DEFENDANT: No, the government has them. 03:47PM

MR. CASSMAN: And I'm informed the FBI, is it, is going to be turning them over to Pretrial Services.

THE COURT: Okay. I want to be clear, though, sir, that you don't have any travel documents, which means any passports from the United States or elsewhere or any passport 03:47PM cards. Is that correct?

THE DEFENDANT: That's correct.

THE COURT: From Pretrial Services? You have them?

THE PRETRIAL SERVICES OFFICER: Your Honor, we have them. 03:47PM

THE COURT: Fair enough.

All right. Let's talk about the ability of you to make purchases. There's been a recommendation that you not make major purchases exceeding $1,000 without Pretrial Services' approval. That excludes current recurring expenses. 03:48PM

So I imagine those would be property-related expenses.

MR. CASSMAN: We anticipate also payments on cars, possibly, and tuition for his children.

THE COURT: Okay. So tuition, cars, property. Any business expenses, or is he completely out of the business? 03:48PM

MR. CASSMAN: There are no business expenses at this time.

THE COURT: From the government then, properties, tuition, vehicle payments. Any others known to the government?

MR. RAPP: No. 03:48PM

THE COURT: Okay. Mr. Larkin, those are the three areas now that we have established them. I won't put them in writing on your form, but we understand what they are. Those are your recurring expenses. And if you have another one contact Pretrial Services and notify them. 03:49PM

The importance of all of this is just to use common sense and act in good faith. If you have a question, talk to your attorney. Talk to Pretrial Services. We have described three of those now, but if you think of another one that comes up you are always better off notifying Pretrial Services in 03:49PM advance. If you freelance and decide, oh, this is something I think is covered, and it's not, you can be brought back before the Court.

Pretrial Services will work with you, but you have to meet them more than halfway. It's your responsibility. Does 03:49PM

that make sense?

THE DEFENDANT: Yes.

THE COURT: Okay. You are not to assert any control over Backpage.com. Is there anything we need to clarify? Because right now that's an absolute prohibition. 03:49PM

MR. CASSMAN: There's nothing that needs to be clarified, Your Honor.

THE COURT: That's an absolute prohibition over any control over Backpage.com. Do you understand?

THE DEFENDANT: Yes, I do. I haven't been in control for three years. 03:49PM

THE COURT: That's fine. I don't know anything about your involvement in that company. I just asked in case you have a question. Seems you don't have any control over it so that should not be an issue. United States Attorney's Office will be monitoring that as well. 03:50PM

Finally, you are to abide and take steps within three days to transfer the balance of the Banque Wormser account. Let me first have, I guess, Mr. Cassman, can you describe what this condition means. 03:50PM

MR. CASSMAN: Your Honor, there's a bank account in France that we have agreed to repatriate the funds. But there was a little interdelineation in the previous bond that we meant to include there, which is within 72 hours of release of his computer to Mr. Larkin, because he's doesn't have the 03:50PM

information at this time.

THE COURT: So upon release of the computer he has three days to transfer?

MR. CASSMAN: Three business days, right?

THE COURT: Who has the computer? 03:50PM

MR. CASSMAN: The government's got the computer.

THE COURT: Is the government releasing the computer to Mr. Larkin?

MR. RAPP: Yes, under certain conditions.

THE COURT: Okay. 03:51PM

MR. RAPP: So we're not exactly sure when that's going to take place. As the Court knows, we have to image the computer before we can make it available to him. And we are negotiating whether that's going to be done by search warrant or consent. 03:51PM

THE COURT: Thank you. One other question then.

It states that the amount of the account will retain $20,000 in U.S. currency but the remainder, as I read this correctly, is to be transferred?

MR. RAPP: That's correct. 03:51PM

THE COURT: You are not required to, but do you wish to place on the record then what you believe would be transferred from that account? It's enough that you know what it is, but I want to be clear that if there's a dispute about how much might be transferred, I don't want parties coming back 03:51PM

before the Court saying, oh, we thought there was X amount and he thought there was Y amount. If you have an understanding between the two of you and it's something you want to put on the record, we'll let you do that.

MR. CASSMAN: I don't think it's necessary. It's in Euros, but we have a very good idea of how much is in the account. 03:52PM

THE COURT: Fair enough. All right. Thank you.

So the government, at some point, is going to work to have you either use or have access to this computer. And when you have that access, you have three business days to transfer the balance of that Banque Wormser account minus $20,000. And that will be repatriated to the United States and specifically that means that goes to, I presume, the government in relation to this prosecution. 03:52PM 03:53PM

MR. CASSMAN: No. Actually, it's going to go to our trust account, Your Honor.

THE COURT: Your trust account. Is that correct, Mr. Rapp?

MR. RAPP: Yes. That's acceptable. 03:53PM

THE COURT: All right. That's fine.

THE PRETRIAL SERVICES OFFICER: Your Honor, is that condition going to be monitored by the U.S. Attorney's Office that they are going to be put on the release conditions that will be monitored by the U.S. Attorney's Office? 03:53PM

THE COURT: It will be monitored by them. Pretrial Services will not need to be involved.

THE PRETRIAL SERVICES OFFICER: I'm just asking if that can be stated in the conditions.

THE COURT: We will. So the U.S. Attorney's Office will monitor that. And if there's some kind of non-compliance they can bring it before the Court. 03:53PM

All right. Finally, you are not to take any steps to access those funds during the pendency of the case. So between now and the time that that's transferred, you are not to access the funds. And even after they are accessed who has control over this trust account? 03:54PM

MR. CASSMAN: I do.

THE COURT: All right. Okay. Anything else about that trust account from the government? 03:54PM

MR. RAPP: No, Your Honor.

THE COURT: All right. Thank you.

Those are the conditions before the Court. Any additions or corrections from the government?

MR. RAPP: None, Your Honor. 03:56PM

THE COURT: Mr. Cassman, any additions or corrections?

MR. CASSMAN: No, Your Honor.

THE COURT: Mr. Larkin, let me tell you as well that you are to submit to location monitoring indicated and that will be location monitoring technology at the discretion of 03:56PM

Pretrial Services. So you have to abide by the electronic monitoring. Essentially it's to track your whereabouts here in Maricopa County because you have no other restrictions. You can travel within Maricopa County. If you wish to travel outside of Maricopa County, you need permission from Pretrial Services. But you do have to abide by electronic monitoring. 03:57PM

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have any questions at all?

THE DEFENDANT: No. 03:57PM

THE COURT: Finally now, let me return now to the purpose of the appearance bond. There's a secured bond of $1 million. I have reviewed the paperwork as well. Let me be clear to you, I'm just going to read for you right out of this appearance bond, it states that the bond may be forfeited if 03:57PM you do not comply with the above agreement which requires you to appear, surrender for a sentence, or comply with all conditions of release.

Do you understand that?

THE DEFENDANT: Yes, I do. 03:57PM

THE COURT: The Court may immediately order the bond of the amount surrendered forfeited to the United States. If you do not comply with the agreement the Court may order a judgment, a forfeiture against you in each surety in the amount of the bond including interest and costs. 03:57PM

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: This is a two-page form. I'm showing you the second page. Is that your signature?

THE DEFENDANT: Yes, it is. 03:58PM

THE COURT: Below it is Margaret G. Larkin. Your wife's name is Molly?

THE DEFENDANT: Yes.

THE COURT: Is this different?

THE DEFENDANT: No. Margaret is Molly. 03:58PM

THE COURT: Is Ms. Larkin here in court today?

MR. CASSMAN: She is, Your Honor.

THE COURT: Ma'am, would you please approach the Court?

And thank you for stepping forward. Are you Margaret G. Larkin? 03:58PM

Is that yes?

MS. LARKIN: Yes.

THE COURT: Thank you. On the second page of this appearance bond form, there's a signature in blue ink. Is that your signature? 03:58PM

MS. LARKIN: Yes, it is.

THE COURT: You were here while I just read the conditions regarding the appearance bond. Did you hear them?

MS. LARKIN: I did. 03:58PM

THE COURT: Do you understand then that if Mr. Larkin fails to appear this $1 million bond is gone. It's forfeited. The Court can enter a judgment. If he doesn't comply with release conditions or if he doesn't surrender for a service of sentence, those can also result in the loss of the $1 million. 03:59PM

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions for me?

All right. Thank you.

Let me tell you as well, then, on the two properties, 03:59PM Mr. Cassman, is she listed on these as well?

MR. CASSMAN: Yes, she is the surety, Your Honor.

THE COURT: Ma'am, do you understand there are two properties here this also applies to?

MS. LARKIN: Yes. 03:59PM

THE COURT: All right. The first one is what's being described as the Zinfandel Properties. Let me show you this form. It has two pages and it also has Attachments A, B, and then additional attachments. Let me show the second page to you. Do you see that signature? 03:59PM

MS. LARKIN: Yes.

THE COURT: It's dated April 11, 2018. It's captioned, "Agreement to Forfeit Real Property to Obtain a Defendant's Release."

Did you review this entire document before you signed 03:59PM

it?

MS. LARKIN: Yes.

THE COURT: Finally, let me review with you the Casa Blanca agreement. Again, it has several pages. The first two pages are pursuant to the Agreement to Forfeit Real Property to Obtain a Defendant's Release. It contains exhibits. Let me show you the second page as well. Do you see this page?

04:00PM

MS. LARKIN: Yes.

THE COURT: Did you review this entire document before you signed it?

04:00PM

MS. LARKIN: Yes.

THE COURT: There's a waiver of a homestead exemption as well. Do you understand that?

MS. LARKIN: Yes.

THE COURT: These are being placed up, in simple terms, as collateral for Mr. Larkin's appearance. If he does not appear, does not follow court orders, or fails to surrender for a service of sentence these properties may also be forfeited, taken away, lost. You and he would have no interest in them. Do you understand?

04:00PM

04:01PM

MS. LARKIN: Yes.

THE COURT: Do you have any questions?

MS. LARKIN: No.

THE COURT: Finally, did you talk with an attorney before you signed these?

04:01PM

MS. LARKIN: Yes.

THE COURT: Was it Mr. Cassman or someone else?

MS. LARKIN: Mr. Cassman.

THE COURT: Mr. Cassman, anything else for the record?

MR. CASSMAN: No, Your Honor. 04:01PM

THE COURT: That's all, ma'am. Thank you very much, sir.

Mr. Larkin, you understand as well that these items are being placed as collateral for your appearance and the requirement to follow court orders? 04:01PM

THE DEFENDANT: Yes.

THE COURT: Okay. Regarding those properties, anything else from the government?

MR. RAPP: No, Your Honor.

THE COURT: Mr. Cassman? 04:01PM

MR. CASSMAN: No, Your Honor.

THE COURT: I will sign the documents relating to these as well. This will place these two properties in the $1 million secured bond up as a requirement of your release in this case. I will sign for your release conditions. 04:01PM

I will tell you again, Mr. Larkin, if you have any questions about your release, if there's an issue, work with Pretrial Services or your attorney. The worst thing you can do is make decisions on your own and ask for forgiveness later. It's always best to ask permission in this context. You are 04:02PM

required to do that.

Do you understand all that?

THE DEFENDANT: Yes, I do.

THE COURT: You paid close attention, so thank you.

I will sign for your release. You are required to report to Pretrial Services and I think the marshals will take you there because you have to be fit for electronic monitoring. 04:02PM

All right. Regarding the conclusion of the hearing, anything else from the government?

MR. RAPP: No, Your Honor. Thank you. 04:02PM

THE COURT: Mr. Cassman.

MR. CASSMAN: No, Your Honor. We do have the bond in court. Do we take that downstairs to submit it?

THE COURT: Yes.

MR. CASSMAN: The secured bond, the actual million dollar secured bond? 04:02PM

THE COURT: I thought we already had it here. You are required to give that to us before you depart.

MR. CASSMAN: Okay.

THE COURT: Thank you all. We're adjourned. 04:02PM

(Proceeding concluded at 2:26 p.m.)

C E R T I F I C A T E

I, LAURIE A. ADAMS, court-approved transcriber, certify that the foregoing is a correct transcript from the official sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 3rd day of May, 2018.

s/Laurie A. Adams

Laurie A. Adams