Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com

Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
emccampbell@lglaw.com

*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　　Defendants. | NO. CR-18-00422-PHX-SPL (BSB)<br><br>DEFENDANT LACEY'S MOTION FOR DISCLOSURE OF DOCUMENTS RELATED TO CARL FERRER'S WAIVER OF PRIVILEGE AS MATERIAL TO DISQUALIFICATION<br><br>(Oral argument requested) |

Defendant Michael Lacey, by and through his undersigned attorney, hereby moves under Rule 16 of the Federal Rules of Criminal Procedure for an order compelling the government to produce all documents pertaining to Carl Ferrer's waiver of the attorney-client and work-product privileges as material to resolution of the Government's Motion to Disqualify (Doc. 118), which is pending before this Court. The record on disqualification is incomplete because defendants and this Court lack material information to determine whether disqualification is necessary;

namely, the extent to which Mr. Ferrer has waived privilege. The government's disclosures thus far indicate that Mr. Ferrer has waived privilege as to all communications for which he, alone, can unilaterally waive by virtue of being the sole privilege holder. Further, the government has indicated that it possesses additional documents material to a determination on the scope and extent of Mr. Ferrer's waiver, which should be disclosed as vital to protection of Mr. Lacey's Sixth Amendment right to counsel of choice. Because a combination of the government's disclosures and statements makes it unclear whether any of Mr. Ferrer's communications remain subject to privilege at this time, discovery on this issue is essential to Mr. Lacey's ability to exercise his Sixth Amendment right to counsel of choice.

It is expected that excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or an order based thereon, as explained more fully below.

RESPECTFULLY SUBMITTED this 28th day of June, 2018,

/s/   Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Michael Lacey respectfully moves this Court for an order compelling the government to disclose all documents pertaining to Carl Ferrer's waiver of attorney-client privilege in his personal capacity and in his official capacity as Chief Executive Officer of Backpage.com, LLC ("Backpage") with respect to all of his former counsel, as well as all documents evidencing waiver of attorney-work product privilege. As set forth in greater detail below, this discovery is material to this Court's determination of the Government's Motion to Disqualify Davis Wright Tremaine LLP ("DWT") and Henze Cook Murphy PLLC ("HCM") (Doc. 118), in which the government has sought to interfere with Mr. Lacey's Sixth Amendment right to counsel of choice. Because disqualification is subject to potential abuse, and must be reviewed under "particularly strict judicial scrutiny," *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985), a determination of disqualification without a complete record runs the risk of violating Mr. Lacey's constitutional right to counsel of choice for this prosecution.

**I.   The record on disqualification is incomplete because defendants and this Court lack material information to determine whether disqualification is necessary.**

Shortly after the government indicted Mr. Lacey and his co-defendants, the government informed defense counsel that it intended to move to disqualify DWT and HCM from any further representation of Mr. Lacey in this prosecution. According to the government, Mr. Ferrer was a former client of those firms and because he pleaded guilty, entered a guilty plea on behalf of Backpage.com, LLC ("Backpage"), and intended to testify as a government witness at trial, DWT and HCM could not continue their representation of Mr. Lacey because there was the potential that they would use privileged information to Mr. Ferrer's detriment in violation of Rule 1.9.

A primary question, pivotal to resolution of the government's theory of disqualification, is whether any of the communications between Mr. Ferrer and his former counsel remained protected

3

under the attorney-client or work-product privileges.[1] Defense counsel knew that Mr. Ferrer and his counsel had communicated with the government about his plea, and believed that Mr. Ferrer on his own, or though counsel, might have waived privilege through communications with the government. Consequently, on May 1, 2018, Michael L. Piccarreta requested that the government produce several categories of documents relevant to the potential waiver of privilege by Mr. Ferrer. (A true and correct copy of the May 1, 2018 Piccarreta Letter is attached hereto as Ex. A.)

On May 14, 2018, the government responded to defense counsel's discovery request, declining to produce the requested documents because the relevance of those documents to disqualification was "unclear" to the government. (A true and correct copy of the Government's May 14, 2018 Response is attached hereto as Ex. B.) However, the government provided defense counsel with one document attached to its response—a copy of Mr. Ferrer's Proffer/Interview Agreement. (A true and correct copy of the Proffer/Interview Agreement is attached hereto as Ex. C.) Notably, the Proffer/Interview Agreement stated that Mr. Ferrer "voluntarily waive[d] all claims of attorney-client privilege, whether in his personal or official capacity as Chief Executive Officer of Backpage.com, LLC as to communications with any attorney or law firm that represented Backpage.com, or any related entity, where such communications concerned or related to Backpage.com or any related entity" except with respect to his current counsel, "Nanci Clarence, Jonathan Baum and anyone working on their behalf." (*Id.* ¶ 2.) Further, Mr. Ferrer "voluntarily agree[d] to provide all documents and other material that may be relevant to the investigation." (*Id.*)

Further, in response to a different letter from defense counsel, the government disclosed a Waiver of Attorney Client Privilege signed by Mr. Ferrer on April 5, 2018, in which he purported to waive "all aspects of attorney-client privilege" on behalf of Backpage (and related entities) and with respect to "communications,; documents and information that" Mr. Ferrer or Backpage (and related entities) "have provided to law enforcement or which law enforcement may already have in its

---

[1] Arizona E.R. 1.9 is solely "for the protection of clients." Ariz. Ethics Op. 91-05. In particular, the Arizona State Bar has opined that "[t]he duty of confidentiality is the *only* duty owed by an attorney to a former client." Ariz. Ethics Op. 92-03 (emphasis added). Consequently, disqualification is unnecessary when "confidential information . . . is not in jeopardy." *Id.*

4

possession from other sources." (A true and correct copy of the Waiver of Attorney Client Privilege is attached hereto as Ex. D.)[2]  He purported to waive privilege with respect to communications related to the "adult" advertisement sections of the Backpage website, communications concerning Backpage's finances, and communications concerning the relationships between Backpage and its related entities and the owners and former owners of those companies. (*See id.*) The waiver further stated that it applied to "all communications" between counsel and Backpage (and related entities) "at any time" and "all documents generated through their representation." (*See id.*) It also indicated that it did not extend to "any aspect of [his] personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me in an individual capacity."[3]

Finally, defense counsel obtained copies of the plea agreements Mr. Ferrer executed in criminal prosecutions pending in courts in the States of California and Texas. In the California Plea Agreement, Mr. Ferrer agreed "to cooperate with the investigation . . . by making himself available to the Attorney General's Office to assist in the investigation and prosecution, truthfully recalling and relating information regarding the case [and] providing truthful testimony." (A true and correct copy of the California Plea Agreement is attached hereto as Ex. E.) In the Texas Plea Bargain Agreement, Mr. Ferrer promised to "give full, complete, and truthful evidence concerning my knowledge of any and all offenses committed by any and all co-defendants" and was granted "'use immunity' as to any statements made by him . . . to Texas authorities." (A true and correct copy of the Texas Plea Bargain Agreement is attached hereto as Ex. F.) Moreover, he promised to "additionally give sworn written or recorded statement(s) detailing any additional facts if that is

---

[2]  Critically, Mr. Lacey does not concede that Mr. Ferrer's waivers entitle the government to access all communications with Backpage's counsel, as those communications are the subject of joint privileges to which Mr. Lacey and Mr. Larkin (and the entities in which they hold ownership interests) are parties. Mr. Lacey and Mr. Larkin have notified the government about this concern.

[3]  This disclaimer stands in contrast with the waiver he effected in the Proffer/Interview Agreement, in which he waived privilege "in his *personal* or official capacity." (Ex. C (emphasis added).) This confusion on the extent of his personal waiver underscores the need for review of the statements he has actually made to the government because statements, alone, can constitute a waiver, notwithstanding a former reservation in a written waiver.

5

requested by an attorney for Texas or California or federal Assistant U.S. Atttorney." (*See id.*) These documents, too, indicate that Mr. Ferrer may have revealed privileged information through statements made to prosecutors or law enforcement officers in California or Texas.

In light of these disclosures, defense counsel continued to press the government for disclosure of all documents related to Mr. Ferrer's waiver of the attorney-client and attorney-work-product privileges because, if none of the communications between Mr. Ferrer and his former counsel were subject to those privileges any longer, the government's proposed motion to disqualify would be baseless. However, the government refused to provide any further discovery into Mr. Ferrer's waiver of those privileges.

On May 25, 2018, the government moved for disqualification of DWT and HCM on the basis that DWT and HCM's continued representation of Mr. Lacey constituted a violation of Mr. Ferrer's rights under E.R. Rule 1.9 because there was a risk that the firms would use privileged information obtained from Mr. Ferrer to his detriment, particularly during cross-examination of him at trial. (*See* Doc. 118.) Although the parties have submitted legal memoranda to the Court on this issue, the record before this Court is incomplete. The government's motion to disqualify is founded on the alleged harm to Mr. Ferrer's interests if his former counsel were to use privileged information to his detriment in this prosecution as part of their representation of Mr. Lacey in this prosecution. (*See id.*) Before this Court can make that determination, a more primary determination must be made, namely, whether there remains *any* information subject to the attorney-client and work-product privileges at this time or whether Mr. Ferrer has waived all such privileges through his disclosures to the government and non-attorney third parties.

Additionally, discovery on this issue is relevant and material to this Court's resolution of the Government's Motion to Resolve Attorney-Client Privilege Issues (Doc. 195). In that motion, the government contends that it should have access to documents withheld by the filter team as protected from government review on the basis of privilege because Mr. Ferrer "executed a written waiver of the corporate attorney-client privilege possessed by Backpage and related entities" which "obviates the need for the continued segregation of the withheld communications." (*See id.* at 2.) Critically,

as will be set forth in greater detail in defendants' opposition to this motion, Mr. Ferrer was not the sole privilege holder for Backpage and he lacked the authority to unilaterally waive privilege on behalf of Backpage and related entities. Any documents indicative of the extent to which Mr. Ferrer purported to waive privilege on behalf of Backpage and related entities is essential to resolution of this motion (in addition to resolution of the Government's Motion to Disqualify).

**II.     The government must disclose all documents relevant to Mr. Ferrer's waivers to allow defendants (and this Court) to determine whether any of Mr. Ferrer's communications remain subject to privilege, without which, disqualification under E.R. 1.9 is unnecessary.**

Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"), "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). The government must disclose "documents . . . within the government's possession . . . [that are] material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). A defendant establishes materiality when the defendant presents "facts which would tend to show that the Government is in possession of information helpful to the defense." *Stever*, 603 F.3d at 752; *Strickler v. Greene*, 527 U.S. 263, 280 ("[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (quotations omitted)). In addition to Rule 16, courts have the inherent authority to order discovery that is necessary for an effective defense. *See United States v. W.R. Grace*, 526 F.3d 499, 509-511 (9th Cir. 2008) (affirming order compelling the government to produce its witness list one-year in advance of trial in a complex matter because district courts "have inherent power to control their dockets").

Here, a determination on the extent to which Mr. Ferrer has waived privilege is not just material to the defense, but is pivotal to this Court's analysis of the Government's Motion to Disqualify. Documents necessary to protect Mr. Lacey's Sixth Amendment right to counsel of choice are obviously material to preparing his defense. *See United States v. Soto-Zuniga*, 837 F.3d 992, 1000-02 (9th Cir. 2016) (recognizing that evidence necessary to support a suppression motion

to protect Fourth Amendment rights is discoverable under Rule 16(a)(1)(E) and places the district court "in a superior position to assess and decide the motion to suppress"). The discovery sought by this motion will enable Mr. Lacey (and this Court) to determine whether the government can establish the "extreme circumstances" requisite for disqualification of DWT and HCM, *see Alexander v. Sup. Ct.*, 141 Ariz. 157, 161 (1984), which the government will fail to establish if none of Mr. Ferrer's communications remain subject to privilege at this time.

**A.   The government's disclosures suggest that Mr. Ferrer has waived privilege as to all communications for which he, alone, can unilaterally waive by virtue of being the sole privilege holder.**

The government's disclosures thus far undermine the government's claim that privileged information is at risk for potential misuse. To claim that privileged communications exist, the party invoking the privilege, here, the government purportedly on behalf of Mr. Ferrer, must demonstrate that information subject to protection under the attorney-client privilege exists. *See In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986) ("The burden is on the party asserting the attorney-client privilege to demonstrate how the information sought fits within it."). "One of the elements that the asserting party must prove is that *it has not waived* the privilege." *Weil v. Investment/Indicators, Research & Mgmt., Inc.* 647 F.2d 18, 25 (9th Cir. 1981) (emphasis added). The Proffer/Interview Agreement and the Waiver of Attorney Client Privilege suggest that Mr. Ferrer has waived privilege as to all communications with any legal counsel for which he was the sole privilege holder.[4]

Further, clients cannot disclose privileged communications or documents to the government or third parties and then continue to assert that those communications or documents are privileged as to other parties. The Ninth Circuit has resoundingly rejected the theory of "selective waiver" of

---

[4] The government contends that none of the communications between Backpage and its former counsel remain subject to privilege at this time, because Mr. Ferrer has waived privilege with respect to all such communications. (*See* Gov't's Mot. to Resolve Attorney-Client Privilege Issues, Doc. 195.) The government is wrong and fails to understand that Mr. Ferrer lacked the authority to unilaterally waive privilege on behalf of Backpage, as will be set forth in greater detail in Defendants opposition.

the attorney-client privilege. Instead, when a client discloses privileged communications or documents to the Federal government, the client has waived the privilege as to those disclosed communications or documents "as to the world at large." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127-30 (9th Cir. 2012) ("Given that Congress has declined broadly to adopt a new privilege to protect disclosures of attorney-client privileged materials to the government, we will not do so here."); *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (recognizing that "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert"); *Ringelberb v. Vanguard Integrity Professionals-Nevada, Inc.*, 2018 WL 555694, at *5 (D. Nev. Jan. 24, 2018) ("[A] party may not selectively waive the attorney-client privilege. . . . [V]oluntary disclosure to one waives the attorney-client privilege as to the world at large."). Indeed, as one court explained, "[h]aving lowered the shield to foster an amicable relationship with the government, [the privilege holder]'s attorneys may not then raise it against parties injured by their disclosures." *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) (rejecting "selective waiver" claim).

Moreover, "[e]ven when a party does not explicitly disclose the content of an attorney-client communication, he may waive the privilege implicitly." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997). Indeed, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which *in fairness* requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)) (emphasis in original).

Finally, the "attorney work-product privilege is not absolute and may be waived, for example, when an attorney . . . reveals it to an adversary." *Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (recognizing that the attorney-work product privilege is waivable and finding that disclosure of protected work product to a third-party constituted waiver of the privilege as to that disclosure).

Thus, the disclosures the government has provided to defendants suggest that Mr. Ferrer has waived privilege to the extent he had the authority to waive privilege. His waivers suggest that there is no opportunity for misuse of privileged information because none exists.

### B. The government has indicated that it possesses additional documents material to a determination on the scope and extent of Mr. Ferrer's waiver, which should be disclosed as vital to protection of Mr. Lacey's Sixth Amendment rights.

Central to this motion, the government has indicated that its disclosure of discovery on the scope of Mr. Ferrer's waivers is incomplete. For example, the government alluded to a "cooperation addendum to Mr. Ferrer's plea agreement," which it has declined to provide the defense on the ground that it is subject to a sealing order. (*See* Ex. B. at 2.) This document would assist this Court to reach a fair and correct resolution on the Government's Motion to Disqualify because it indicates the extent of Mr. Ferrer's waivers of privilege.

Additionally, disclosure of any documents summarizing statements Mr. Ferrer made to the government or third parties is material to determining the extent to which Mr. Ferrer has waived communications in his personal capacity during proffer sessions with the government. Mr. Ferrer's statements are material because the privilege can be waived through statements, alone. "It makes no difference whether a privilege-holder copies a written text, reads from a written text, or describes a written text to an outside party. The purpose and effect is the same in all cases; the transmission of privilege information is what matters, not the medium through which it is conveyed." *Reyes*, 239 F.R.D. at 604 (concluding that attorney-client and work-product privileges were waived by voluntary disclosures to the government).

The terms of the California Plea Agreement and the Texas Plea Bargain Agreement suggest that Mr. Ferrer has made statements to law enforcement officers and prosecutors in those states (*see* Exs. E, F), which may have involved revelation of privileged information.

Defendants have asserted that the language of the Proffer/Interview Agreement on Mr. Ferrer's waiver is clear. Mr. Ferrer agreed to waive privilege as to all communications "in his personal or official capacity" as C.E.O. of Backpage. (Ex. C. ¶ 2.) However, the government insists

that this waiver was limited to Mr. Ferrer's official capacity as C.E.O. of Backpage (*see* Gov't's Repl. Mem. on Mot. to Disq. HCM, Doc. 192 at 8), and that, even if the Proffer/Interview Agreement could be interpreted as effecting a waiver of communications made in his personal capacity, "[t]his topic has never been broached during Ferrer's proffer sessions [and] [a]ccordingly, nothing has been waived" (*see id.*). Neither Mr. Lacey nor this Court is required to accept the government's description of the scope of the waiver that has been effected. "Our system of criminal justice relies on an adversary system to help ensure that justice will be done." *Soto-Zuniga*, 837 F.3d at 1000 (reversing conviction because district court denied discovery on a suppression motion thereby making its decision on suppression while "blindfolded, considering only one version of the evidence"). As a matter of fundamental fairness, Mr. Lacey should be given discovery on all statements Mr. Ferrer made to the government and documents provided to determine whether any of his communications remain subject privilege such that DWT and HCM, counsel of choice for Mr. Lacey, must be disqualified under E.R. 1.9. Discovery should not be withheld when a defendant's constitutional rights are implicated.

Further, the government provided this Court with a declaration from Mr. Ferrer in connection with its Reply on its Motion to Disqualify which underscores the need for discovery on Mr. Ferrer's statements to the government. (*See* Ferrer Decl., Doc. 193-9.) In that declaration, Mr. Ferrer asserted that both DWT and HCM represented him in his *personal* capacity in addition to his official capacity as a representative of Backpage. (*See id.*)[5] Mr. Lacey has disputed the claim that DWT represented Mr. Ferrer personally (*see* Defs.' Opp'n to Gov't's Mot. to Disq., Doc. 180 at 3-8), and intends to oppose the government's contention that Mr. Ferrer had the authority to unilaterally waive privilege on behalf of Backpage and related entities for all time. However, regardless of whether DWT represented Mr. Ferrer solely in his official capacity as a representative of Backpage or additionally, in his personal capacity as Mr. Ferrer claims, there can be no objective resolution of the extent of

---

[5]  As Mr. Lacey has explained, DWT represented Mr. Ferrer nominally, as a named representative of Backpage, and as part of a combined representation of multiple parties pursuant to a joint defense agreement, with each party having his own personal counsel distinct from DWT. (*See* Defs.' Opp'n to the Gov't's Mot. to Disq., Doc. 180 at 3-8.)

Mr. Ferrer's waiver without review of the documents which memorialize his statements to the government. The government has indicated that Mr. Ferrer made statements that impact the determination of the extent of his waiver, and Mr. Lacey should have access to them to thoroughly and effectively protect his Sixth Amendment right to counsel of choice.

Based on the foregoing, the extent of Mr. Ferrer's waivers needs to be determined. Certain documents suggest that he waived privilege as to all attorney-client communications (*see* Exs. C, D) and has made statements to law enforcement officers or prosecutors (*see* Exs. E, F); however, the government claims that the waiver is much more limited, and does not involve any information conveyed by Mr. Ferrer in his personal capacity, and that Mr. Lacey and his co-defendants should take the government's word for it that nothing further has been disclosed during Mr. Ferrer's proffer sessions. To the contrary, the discovery sought in this motion is material to whether the government has met its heavy burden in seeking disqualification and the defense is not bound by the prosecution's claims as to the scope of Mr. Ferrer's waivers.

For all these reasons, Mr. Lacey respectfully requests an order from this Court compelling the government to produce the following categories of documents to defendants:

- All documents evidencing communications with the U.S. Attorney's Office for the District of Arizona ("USAO") or any government authorities or third parties concerning legal representation of Backpage and its related entities disclosed by Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer, including but not limited to FD-302 Forms;

- All documents including engagement letters, common interest or joint defense agreements or related communications among counsel, parties or others related to joint representation or defense of Backpage and its related entities that Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer provided to, disclosed or referenced in communications with the government;

- All notes or reports or transcripts of Mr. Ferrer's discussions with any third party, including all government agents.

- All documents evidencing communications with the government about letters or other communications sent to counsel, courts or any other parties about representation or putative

conflicts of counsel, including all correspondence Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer has sent the government any exchanges of drafts or other communications about such correspondence; and

- All documents evidencing the date when Mr. Ferrer, his counsel, or any representative of Mr. Ferrer first had communications with the government related to a possible cooperation or with the intention of exploring possible cooperation.

## CONCLUSION

Because a combination of the government's disclosures and statements makes it unclear whether any of Mr. Ferrer's communications remain subject to privilege at this time, discovery on this issue is material and vital to Mr. Lacey's ability to exercise his Sixth Amendment right to counsel of choice. Mr. Lacey respectfully requests that this Court order the government to disclose documents that are essential for resolution of the Government's Motion to Disqualify.

RESPECTFULLY SUBMITTED this 28th day of June, 2018,

/s/   *Paul J. Cambria, Jr.*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

1  On June 28, 2018, a PDF version
2  of this document was filed with
3  Clerk of the Court using the CM/ECF
   System for filing and for Transmittal
4  Of a Notice of Electronic Filing to the
5  Following CM/ECF registrants:

6
   Dominic Lanza, dominic.lanza@usdoj.gov
7  Kevin Rapp, kevin.rapp@usdoj.gov

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28