CR-18-00422-PHX-SPL(BSB), July 20, 2018

1          **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF ARIZONA**

3          _____

4

**United States of America**,            )
5                                          )
                    Plaintiff,        )   CR-18-00422-PHX-SPL(BSB)
6                                          )
           vs.                         )   Phoenix, Arizona
7                                          )   July 20, 2018
**James Larkin**,                         )   1:29 p.m.
8                                          )
                    Defendant.        )
9    _____)

10

11

12   **BEFORE:  THE HONORABLE BRIDGET S. BADE, MAGISTRATE JUDGE**

13               <u>**TRANSCRIPT OF PROCEEDINGS**</u>

14                    <u>**MOTION HEARING**</u>

15

16

17

18

19

20

21   Transcriptionist:
     **Elaine Cropper**
22   Sandra Day O'Connor U.S. Courthouse
     401 West Washington Street, SPC 35
23   Phoenix, Arizona  85003-2150
     602.322.7245/(fax) 602.322.7253
24
     Proceedings Recorded by Electronic Sound Recording
25   Transcript Produced by Transcriptionist

               United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

**APPEARANCES**

For the Government:
        **KEVIN M. RAPP, ESQ.**
        **MARGARET PERLMETER,ESQ.**
        **PETER KOZINETS, ESQ.**
        U.S. Attorney's Office (Phoenix)
        40 N. Central, Ste. 1800
        Phoenix, AZ 85004-4408
        602.514.7500/(fax) 602.514.7650

For the Defendant:
        **THOMAS H. BIENERT, JR., ESQ.**
        Bienert, Miller & Katzman, P.L.C.
        903 Calle Amanecer, Ste. 350
        San Clemente, CA  92673
        949.369.3700/(fax) 949.369.3701

Also Present:
        **JUSTIN LAUBY, PRETRIAL SERVICES OFFICER**

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

**P R O C E E D I N G S**

1

2    (Court was called to order by the courtroom deputy.)

3    (Proceedings begin at 1:29 p.m.)

4    (Defendant is present and released.)

5    THE COURT:  Good afternoon.  You may be seated.

6    COURTROOM DEPUTY:  Criminal docket 18-0422, *United*

7 *States of America v. James Larkin*, on for a motion hearing

8 regarding motion to modify conditions of release.

9    MR. RAPP:  Good afternoon.  Kevin Rapp, Peter

10 Kozinets, and Peg Perlmeter on behalf of the United States.

11    THE COURT:  Good afternoon.

12    MR. BIENERT:  Good afternoon, Your Honor.  Thomas

13 Bienert on behalf of James Larkin who is present.

14    THE COURT:  Good afternoon.

15    And good afternoon Mr. Larkin.

16    THE DEFENDANT:  Good afternoon.

17    THE COURT:  The Court has received Mr. Larkin's

18 motion to modify conditions of pretrial release, Government's

19 response and Mr. Larkin's reply and has reviewed all of those

20 filings, and has also reviewed the docket and the order setting

21 the conditions of release.  As you know, the order was entered

22 by Judge Boyle but the motion to modify was referred to me by

23 Judge Logan.  Typically, the motion to modify an order would be

24 directed to the judge who entered the order and so I did review

25 the order to make sure I was familiar with its terms.  I do

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    have to tell you I did not have time to go back and listen to

2    the recording of that hearing, although I believe because the

3    conditions were stipulated, that it's unlikely that there would

4    have been tremendous amount of helpful information in that

5    hearing.

6             So I think I understand the basic premise of the

7    motion, the Government's opposition, and where the parties

8    stand now unless things have changed since the time this was

9    fully briefed.

10            Have there been any changes in position since the

11   time the parties briefed the motion?

12            MR. RAPP:  No, Your Honor.

13            MR. BIENERT:  No, Your Honor.

14            THE COURT:  Okay.  So there was an initial dispute as

15   to whether there was statutory authority for the Court to

16   modify or revisit the conditions of release.  And looking at

17   the statute and the cases the parties cited and just

18   considering, as a practical matter, how the Court addresses

19   release conditions, it seems to me that under the statute under

20   Section -- 18 USC, Section 3142(c)(1)(B) that the Court can

21   modify and amend conditions of release.  The statute clearly

22   provides that authority.

23            As a practical matter, there's no reason why that

24   would happen without some change in circumstances.  Otherwise,

25   we would have serial motions or serial hearings addressing the

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    same issue repeatedly.  Of course that would not promote

2    efficiency or preserve the Court's resources, so I will tell

3    you from my experience as a magistrate judge who was tasked

4    with detention issues on a regular basis that the way that

5    these matters are presented to the Court is really in three

6    ways.

7            One, there could be a petition to revoke.  In those

8    circumstances, the person has been ordered detained and there's

9    an allegation that they violated their conditions or they

10   committed another criminal offense.  And so a petition to

11   revoke conditions is filed under 18 USC, Section 3148 and then

12   of course the Government has to show by a preponderance of the

13   evidence that there has been a new criminal offense or by clear

14   and convincing evidence that there has been a violation of

15   conditions.  Of course if there's been a violation of

16   conditions during a criminal offense, that is change in

17   circumstance that the Court can consider in deciding whether to

18   revoke pretrial release.

19           Another circumstance in which the Court might be

20   reconsidering the detention issue is if a defendant filed a

21   motion to reopen the detention hearing.  And that is the

22   statute that the Government relies on which is 3142 -- I'm

23   sorry, I've cited them -- I'm sorry.  3142(c)(3).  And that is

24   the statute with respect to new material circumstances.  So, in

25   other words, a person has been detained but there are

United States District Court

1    circumstances that have come to light that were not known by

2    the movant at the time of the detention hearing.  So it's not

3    just a matter of failing to bring something to the Court's

4    attention when that information was available but of new

5    material information being available, again, you have a changed

6    circumstance that would give the Court a reason to revisit the

7    detention issue.

8          And then the third way is when the parties reach an

9    agreement for modification or the Pretrial Services officer

10   approaches the Court with a recommendation to modify

11   conditions, and then the Court will consider, possibly amend

12   conditions at that point.

13         So I think it's acceptable for the defendant to file

14   a motion and seek that the Court reconsider conditions of

15   release.  We're doing that now.  It has been filed.  We're

16   having a hearing; but I think as a practical matter in

17   addressing this, there really needs to be a reason why the

18   Court would be changing what had occurred before.  And as I

19   understand the reason, it is that Mr. Larkin didn't fully

20   appreciate how having an electronic monitor and travel

21   restrictions would impact his ability to support his teenage

22   daughter and his wife.

23         So he's found that those conditions are more

24   difficult or more cumbersome than he believed they would be and

25   he wishes to have the Court remove those restrictions.  So that

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1     was what I gleaned from the motion and the reply as to the

2     basis for changed circumstances.

3            And the reason I'm running through this is I want to

4     give counsel an opportunity to respond to it so you know how

5     I've reacted and what I'm thinking now, which doesn't mean I've

6     made a decision, but I want you to be informed as to how what

7     you have presented to me has been received.

8            So my reaction to that argument is that those are not

9     changed circumstances because he clearly knew that his daughter

10    was attending high school in San Francisco at the time he

11    stipulated to the release conditions.  So on April 16, 2018,

12    when the order was entered with those conditions of release, he

13    knew all of that information.  He knew those facts.  So what

14    you've described or what it appears to me that you've described

15    is that he's having second thoughts, that he, after having

16    entered into this agreement, realizes that he doesn't like it.

17    That to me is not a changed circumstance.  I'll be glad to hear

18    your argument as to why that is and why that would justify

19    changing the release conditions.

20           The other thing I think you should know that the

21    Court views is problematic is that this was done by

22    stipulation.  And so there wasn't a full detention hearing

23    before the Court.  That is important and I think that's

24    reflected in the way the parties have briefed this motion in

25    that they both dedicated numerous pages to the merits of the

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    underlying charges which happened in other cases, the weight of

2    the evidence, and whether Mr. Larkin is a flight risk or a

3    danger.   That would have been addressed at a detention hearing.

4            And by entering a stipulation to orders of

5    conditions -- with conditions of release, the stipulation

6    presents this issue in such a fashion that that information

7    wasn't presented to the Court.   In other words, the Government

8    did not make a fulsome presentation about why they believe

9    there's danger or flight risk.   The parties just didn't present

10   that to the Court.   Instead they reached an agreement to

11   resolve those issues so now we're sort of backtracking and

12   looking at that possible issue again.

13           And here's another wrinkle for you to consider as

14   you're responding.   The condition in the order actually says

15   that location monitoring is imposed at the discretion of the

16   Pretrial Services Officer.   Now, the Government says in their

17   response that for them, the condition would be by GPS and that

18   that was something they insisted upon, the defendant agreed

19   upon, but that's not the actual condition that was entered.

20   And I have always interpreted these conditions and understood

21   this to mean when I was ordering location monitoring at the

22   discretion of the Pretrial Services officer that the officer

23   could use GPS or they could use RF or they could even use no

24   location monitoring at all if they decided it wasn't necessary.

25           So that makes me wonder unless I'm completely

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    misunderstanding what transpired here what the officer told the

2    parties why we have to change the conditions if this is a

3    situation that is in the officer's discretion, why Mr. Larkin

4    can't present to the officer why he needs to be relieved from

5    location monitoring or not have location monitoring imposed so

6    that he could travel and see his wife and daughter or even why

7    those conditions could not be lifted temporarily so he could

8    travel and then reinstated when he returns to Phoenix.

9           Okay.  So I've given you an earful of how I've

10   reacted to the issues presented and I'm glad to hear what you

11   have to say about it.  Please go ahead.

12          MR. BIENERT:  Can I speak from here or would you like

13   me at the podium?

14          THE COURT:  Wherever you're comfortable.  Seems as if

15   the microphone is picking you up there.  If you would like to

16   stay there, you can stay there.

17          MR. BIENERT:  Thank you, Your Honor.

18          First of all, I'll take the top -- the two issues

19   you've raised, two of the three, in reverse order.  Number one,

20   it is our view that because the evidence was never presented to

21   the original Magistrate Judge, and I understand we have been

22   now sent to Your Honor, I don't think there really was a

23   detention hearing, so I think that it puts us in sort of a

24   quirky procedural issue as it relates to whether or not we have

25   met or have to meet, even if there is a requirement about there

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    being a basis to reconsider.  But I'm just saying that for the

2    record.  We think there is a basis to reconsider.

3          THE COURT:  Let me stop for a moment because I think

4    I agree with you to the extent that we are here.  We're having

5    the discussion.  The Court just didn't deny the motion out of

6    hand and say that you can't reopen detention.  I don't think

7    that this is a circumstance under 3142 in which a person has

8    been detained is and seeking to reopen based on new

9    information.  I know you're seeking to reopen or amend an order

10    on the provision that the Court can amend its prior order.  I

11    think the Court can amend its prior order; but my point is, why

12    would it do so?  And how does that make sense for the Court to

13    just have serial hearings to reconsider circumstances that have

14    not changed?

15          So as a practical matter, there needs to be a reason

16    to change the conditions.

17          MR. BIENERT:  Absolutely.  So moving to what was your

18    first issue, the reality is there was a practical change and

19    that is it is the relationship with his wife but primarily his

20    daughter and there are several things that at the time that the

21    stipulation was reached, my client didn't know and would not

22    have been able to appreciate.  Number one, remember -- and, by

23    the way, Your Honor and I are in somewhat similar positions in

24    that we're learning all of this anecdotally.  I was not counsel

25    at the time and I've only come in since then and reading a

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

 1    transcript and have read pleadings.

 2           So but my understanding of things is that at the time

 3    that stipulation was reached, my client has been arrested here

 4    in Phoenix at the airport.  He had been in custody -- he wound

 5    up being in custody 10 or 11 days.  I forget when they reached

 6    the stipulation in that time period.  So he would not have been

 7    aware, number one, that his daughter was traumatized by the

 8    fact that when the law enforcement knew he was out of the

 9    country and was waiting for him at the airport, they also did a

10    search of his house; and, you know, in a typical safety

11    precaution entry but with guns out and the only person there

12    was the 17-year-old daughter who wound up staring down the

13    barrel of guns.  She was traumatized by that which adds in to

14    other things that he learned later

15           Number two -- and, by the way, I would -- as I'm

16    relating to certain aspects of the proffer and I would

17    reference to the Government, I would want to just seal a small

18    portion of the proffer.  And I think everyone here is

19    Government but I noticed someone walked in since then.  I don't

20    know if we're all Government here or lawyers for parties or

21    not.  What I would want to do is speak from here and seal it

22           THE COURT:  Well, here's the difficulty.  Because in

23    a magistrate judge courtroom we use a recording system rather

24    than a court reporter, we cannot just easily switch between

25    sealed and unsealed proceedings.  If we go into a sealed

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    proceeding, we need to adjourn this proceeding, go back on the

2    record, place it under seal and then the recording is then

3    under seal so it's not publicly available.  Otherwise, we would

4    have a recording that the Court would not have any ability to

5    seal sections of it in the middle of other discussions.

6        So if you want to make that proffer, I think perhaps

7    the way we would have to do that is to save that for the end

8    and then perhaps have you address that separately if it's a

9    proceeding that needs to be sealed.

10       MR. BIENERT:  Fair enough Your Honor.

11       So the point is, we'll bookmark that and then the

12   third fact that he would not have been aware of -- obviously

13   this is a many-defendant case.  We have a trial schedule that

14   was all arrived at after these bond hearings and the trial

15   schedule now sets trial for I think it is January of 2020 so a

16   year and a half away.  So at the time the stipulation was

17   reached, he would not have realized that he was facing a trial

18   a year and a half away which I think significantly is fully

19   after the time that his remaining teenage daughter is gone from

20   the house, presumably she'll move out and go to college, that

21   sort of thing.

22       So I would submit to Your Honor that based on,

23   through no fault of anyone, just the circumstances, there are

24   things that are different in the practical reality of trying to

25   be a husband and father when he is limited or confined to

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1   Phoenix with a wife and daughter who are in the Bay area.   And
2   so I would submit to Your Honor that those are certainly
3   appropriate bases to re-raise with the Court whether or not the
4   bond conditions that are in place are the minimal that is
5   necessary as is the standard to assure his appearance or not.

6           As to the third issue, just so I'm addressing it and
7   Your Honor knows, frankly, I never thought of it.   I think it's
8   a very astute point you raised.   I will tell you, and I believe
9   Mr. Lauby is here and assuming it's all right with Your Honor's
10  practices, I certainly welcome him to state his comments or
11  views on that.   In my one or maybe two -- I think it was only
12  one discussion with Mr. Lauby, who was very professional and
13  polite, what I took from it was that he just viewed it as he
14  didn't really take a position on whether or not he should -- my
15  client should or shouldn't have the electronic monitoring but
16  as long as that was in the order, he felt like that's what he
17  was supposed to do.   I don't want to speak for him and if I'm
18  wrong, I want to be stood corrected.

19          But I can tell you I never addressed it as, "Hey
20  Probation Office, are you comfortable making the decision and
21  would you be comfortable with him being able to travel to San
22  Francisco without electronic monitoring?"   Obviously, if
23  Probation would be comfortable with that, so would we.   And I
24  think that all the reasons why we have pointed out in our
25  various briefing and that I, of course, can high point here,

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1   they would all apply to why I would think the Probation

2   Department should feel comfortable that he can be properly

3   monitored through phone calls or check-ins when he's in the Bay

4   area than here.

5          And I think, finally, while I think my client

6   understood that there would need to be permission given to get

7   the anklet situation addressed to be able to go to San

8   Francisco, I don't believe he realized or appreciated that it's

9   a full week's notice, which is what we are led to understand is

10  because of the case load and all the different things that have

11  to be done because of the anklet, it's a week's notice.  So as

12  a practical matter, what that means is not only can he not just

13  on his own choose to go to San Francisco and be with his wife

14  and daughter when he would like; but if something comes up that

15  would be unexpected, a need, an issue that a normal patient

16  should be able to address, he's not able to do that because we

17  have a week lead time.

18         So I would submit to Your Honor that at least for

19  sake of, in essence, a jurisdictional issue or can Your Honor

20  consider this, I would submit that those are valid bases to

21  consider it.  The simple reality is, there is a practical issue

22  that bears on my client's appropriate right as a father and a

23  husband to address his family and with the -- at least with the

24  imposition of the anklet, limited to Maricopa County that is

25  very, very difficult to accomplish.  And, obviously, I can talk

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    more on the merits.  I'm not sure if Your Honor wants me to or

2    just confine it to these topics for now.

3          THE COURT:  Well,I don't want to go off into a

4    discussion on the strength of the evidence.  That was what

5    quite a bit of the briefing was devoted to.  I do recall that

6    the parties referenced the transcript of the hearing at which

7    Judge Boyle imposed the conditions; and so as I said, I didn't

8    listen to the recording so what I would like to know from

9    counsel having read the transcript is, what Judge Boyle said

10   when he was imposing the conditions.  Because there are times

11   when the wrong box gets checked on the form; but I assumed when

12   I read the order and it said location monitoring at the

13   discretion of the officer, that when he reviewed the conditions

14   with Mr. Larkin, that is what he would have explained rather

15   than active GPS.  Now of course there could have been confusion

16   if he actually said "active GPS" but inadvertently "at the

17   discretion of the officer" was checked.

18         And the other thing counsel is what I always tell

19   people, and this is the reason why really one of these issues

20   should go back to the judge who handled the previous order, I

21   always advise defendants that Pretrial Services needs two

22   weeks' notice and I tell them that at the time when I'm

23   explaining the travel restrictions to them because that's what

24   I've understood from Pretrial Services is necessary for them to

25   be able to sufficiently process a request for travel.

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1          So a week would be quick from my experience.  I would

2    have expected Judge Boyle to say that but maybe not.  His

3    practice may not be the same as mine but in any event, did you

4    find in the transcript --

5          MR. BIENERT:  I have the transcript and if Mr. Rapp

6    has it, he can recite the portions.

7          MR. RAPP:  Sure.

8          The Court:  Mr. Larkin, let me tell you as well that

9          you are to submit to location monitoring indicated

10         and that you will be location monitoring technology

11         at the discretion of Pretrial Services, so you have

12         to abide by electronic monitoring.  Essentially, it's

13         to track your whereabouts here in Maricopa County

14         because you have no other restrictions.  You can

15         travel within Maricopa County.  If you wish to travel

16         outside of Maricopa County, you have need permission

17         from Pretrial Services, but you do not have to abide

18         by electronic monitoring.

19         Do you understand that?

20         The Defendant:  Yes, I do.

21         Do you have any questions at all?

22         No.

23         THE COURT:  Okay.  So it sounds like what Judge Boyle

24    referenced was location monitoring at the discretion of the

25    officer rather than active GPS.  And he didn't make any

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    statement with how much lead time was required to seek

2    permission for travel.  All right.  So you're really proffering

3    the circumstances under which he entered the stipulation and

4    although he knew his daughter was residing in San Francisco and

5    attending school there, he didn't know how traumatized she

6    would be by a search of their home and then his absence.  When

7    did the search occur?  Did the search occur before April 16,

8    2018?

9              MR. BIENERT:  It did.  I believe the search -- I

10   believe it occurred the same day as the arrest, which I think

11   was in around April 6, and then my client was in custody here

12   until he was released on bond which I think was around the 20th

13   or 22nd.  16th.

14             THE COURT:  So he was arrested I believe on the

15   ninth.

16             MR. BIENERT:  I thought it was the sixth at the

17   airport.

18             THE COURT:  Arrested on the sixth.  There's a search

19   on the sixth.  Approximately ten days later the stipulation is

20   entered and the Court enters the order with the conditions of

21   release.

22             In that period of time he never spoke with his wife

23   or his family about what had occurred or how his daughter was

24   reacting to the search?

25             MR. BIENERT:  Well,I believe he spoke to his wife and

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

```
 1   I think there was a lot of emotion and chaos about what
 2   occurred but it is not about what happened, the specifics.
 3   There's a whole lot of specifics about the search that he's
 4   learned since.
 5            THE COURT:  All right.
 6            Mr. Lauby, Pretrial Services' position on electronic
 7   monitoring?  Perhaps I'm mistaken and if I am, it's a good
 8   thing I'm finding it out now; but I've always assumed if I put
 9   that in, the discretion of the officer, the officer could not
10   impose electronic monitoring.
11            PRETRIAL OFFICER:  No, Your Honor, because the whole
12   discussion was about him -- originally, the Government's
13   position was going to be that he be on home detention.  I
14   actually talked to them about making it Maricopa County but
15   being on GPS because otherwise we have no way to track that he
16   is staying within Maricopa County.
17            THE COURT:  But that's not what the order says.  It
18   says Maricopa County but it doesn't say GPS.  So I understand
19   if I enter an order that orders radio frequency monitoring or
20   passive GPS or active GPS and Pretrial Services is going to
21   administer that but I issue an order that says location
22   monitoring at the discretion of the officer, it could be any of
23   those types of monitoring.
24            PRETRIAL OFFICER:  The only way that we can monitor
25   that he stays within Maricopa County is GPS.  RF does not do
```

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    anything other than track him in and out of the house so he

2    could leave the house and drive to New York and we would not

3    know that.

4              THE COURT:  Well, but that's a separate condition

5    which is the not travel outside of Maricopa County.  We often

6    have travel restrictions without location monitoring.

7              PRETRIAL OFFICER:  Correct, but it's --

8              THE COURT:  We find out not because we're monitoring

9    them but perhaps they are arrested somewhere else or they note

10   that they have gone somewhere else.  I see the two as a little

11   different.  Perhaps it was discussed as joint but it's not what

12   the order says.

13             PRETRIAL OFFICER:  It was, Your Honor.  We all met,

14   defense agreed at the time that he would be on GPS and tracked

15   in Maricopa County.  I was being nice and not having him on

16   home detention and I think I burned myself now.

17             THE COURT:  Well, I think -- I don't think that

18   anybody did anything inappropriate.  I think maybe it was just

19   sort of lesson learned that if the discussion and the agreement

20   was that it would be GPS and the ideas was so that we could

21   enforce a travel restriction, then the proposed conditions

22   should have said GPS and a box for GPS should have been

23   checked.

24             Mr. Rapp?

25             MR. RAPP:  The only thing I wanted to add is there's

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1   another portion of this transcript that is from the start of

2   it.

3              The Court says:  I reviewed it.  I've copied it.

4              That's even been signed by Mr. Larkin of the release

5              conditions.  Let me review those with you.

6              And I'll return to Mr. Larkin.  The request that is

7              added to this case is that he not travel outside of

8              Maricopa County and that he be subject to electronic

9              monitoring.  The electronic monitoring would not have

10             the standard curfew home detention or home

11             incarceration, but would it monitor his whereabouts

12             in Maricopa County.

13             Any requests regarding electronic monitoring other

14             than that, Mr. Rapp?

15             No.

16             So there was from the outset discussion about

17   electronic monitoring within Maricopa County and the reason for

18   it.  I think -- I don't want to jump to something else here but

19   I think part of it was the location of the house.  Maybe GPS

20   was not viable.  There or --

21             PRETRIAL OFFICER:  No.  And just as Judge Boyle

22   stated, he wanted him to be monitored in Maricopa County and

23   not leave and GPS is the only way we can do that, so I was

24   doing what Judge Boyle asked Pretrial to do.

25             THE COURT:  All right.  And sounds as if defense

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

 1    counsel viewed this as GPS as well.   Nobody raised this except

 2    for me and that is I think one of the maybe advantages or

 3    disadvantages to having a new set of eyes come along and look

 4    at an order, that I saw it differently than the parties

 5    understood it and so I'm just going to proceed as the parties

 6    have described, that the understanding and the agreement and

 7    the order was intended to require active GPS and so that is the

 8    restriction that Mr. Larkin is asking me that the Court remove

 9    and also remove the restriction that he may not travel outside

10    of Maricopa County so that he can travel to California.

11            I'm not saying what I'm going to do but with change

12    that you're requesting, are you have requesting that his

13    restriction be travel to Arizona and California and nowhere

14    else, or are you saying no travel restrictions?

15            MR. BIENERT:   No.   We're limiting this to his ability

16    to travel -- we would like in Arizona but right now it's

17    Maricopa, that's the lesser of the issues, but in the State of

18    California.   And here's why we're saying the state:   His wife

19    and his daughter are in the Northern District of California,

20    the Bay area.   My office as counsel, I'm in the Central

21    District of California; and his other case, Your Honor, which

22    we reference is in Sacramento which is the Eastern District of

23    California.   So there is no doubt that the priority is his wife

24    and daughter in the Northern District of California.   But given

25    how much is going on in that is case, certainly there will

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    be -- I come here a lot, Your Honor, but I could see times

2    where we would like to get him there.  We can clearly plan that

3    in advance as a general matter.  But our position would be to

4    be practical, he should be able to travel throughout California

5    and either Maricopa County or the State of Arizona.  We're not

6    asking for the rest of the country without permission from

7    Probation.

8              THE COURT:  All right.  Another thing that's

9    interesting about the travel restriction here is I don't want

10   to say usually because usually is what I do, not what other

11   people do, but usually when I impose a travel restriction, it's

12   except for court purposes, meeting with lawyers, that sort of

13   thing.  So what you've described is his case is pending in

14   three different districts in California.  I would not have

15   restricted travel for that purpose; but Judge Boyle's order, by

16   it's plain language, does.  So that is an issue with respect to

17   the travel.

18             Let me hear from Mr. Rapp and then we can try to

19   figure this out.

20             MR. RAPP:  Well, I talked to Mr. Bienert about this

21   and he is at a little bit of disadvantage because we negotiated

22   this over a fairly lengthy time period and we, as you know, we

23   filed a detention motion and it was extensive and they replied.

24   But this was an important condition for us and we conceded some

25   conditions that I don't think we had to and one was that the

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    property that was posted to secure his attendance was property

2    that we viewed as being purchased with or being maintained with

3    tainted funds and they had no other assets seemingly to post as

4    a property bond, so we sort of conceded that.

5          Basically, what I'm hearing is he doesn't like the

6    deal they cut and they want to revisit it.  The fact that he,

7    his attorneys were in California was known to the Court.

8    Mr. Bienert is in southern California.  His other attorney is

9    in northern California.  It was presented to Judge Boyle by

10   Mr. Cassman, his original attorney, that he had a daughter in

11   California, that she was attending high school.  His Larkin can

12   go -- can still go and see them.  He just has to get

13   permission.

14         So we thought we had a deal and so we're sort of

15   surprised when they came back and said, "Oh, now we want this

16   taken off."  There really isn't any changed circumstances that

17   were discussed certainly with the United States and presented

18   to the Court at the time of the original terms that were

19   imposed.

20         The only changed circumstances from the United

21   States' standpoint is -- and I know the Court has read the

22   pleadings is the case is -- frankly, has gotten quite a bit

23   better on Mr. Larkin and the level of evidence against him has

24   increased thereby giving him more of an incentive to flee.  So

25   we really think these conditions are fair.  He gets to see his

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    daughter.  In this day and age of electronic communication,

2    there is Facetime and so many other ways in which to

3    communicate with people.  We just don't see the basis for this

4    changed circumstance, for this change of the conditions.

5              THE COURT:  Mr. Bienert?

6              MR. BIENERT:  Couple of things.  First of all, while

7    I don't have the full history, I'm a little surprised that

8    Mr. Rapp says he's surprised because one thing that I did

9    directly discuss with Mr. Rapp before filing this motion was

10   this issue and Mr. Rapp confirmed to me what prior counsel,

11   Mr. Cassman, had told me which was when they were negotiating

12   the stipulation, they specifically talked about lifting the

13   anklet at some point.  Mr. Rapp told me that he thought that he

14   should reconsider that more at the six-month mark and he felt

15   like I was raising it earlier than he would have envisioned and

16   I just said, "Well, these are the reasons why I want to raise

17   it now."

18             So I don't believe -- and he can certainly correct me

19   if I'm saying is inaccurate -- but I believe that it was part

20   of the discussions while my client was in custody that the

21   anklet issue would be revisited at some point.  I am doing it

22   now and, frankly, a month ago because of the issues that have

23   arisen, that my client did not know about during the ten days

24   that he was in incarceration and that is just a different

25   scenario.  So that's just addressing that point.

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1          In terms of, you know -- I'll just say this about the

2   case which, as I think Your Honor would hopefully recognize

3   from the case law of the factors you consider on the merits of

4   flight risk, the strength of the case, the charges are

5   considered one of the lesser ones but here's the bottom line on

6   that:  The Government filed I think a 16-page opposition and

7   they devote 10 pages to trying to rebut our statement that of

8   the nine courts that have addressed this issue about whether or

9   not a publisher can be held responsible for the actions of

10  clients, all nine of them that have addressed the contested

11  issues have ruled they can't.  And so the bottom line on all of

12  this is, unlike most cases where Your Honor would preside

13  where, frankly, whether the client did the crime or not is an

14  issue, but whether or not what's alleged is a crime is not an

15  issue.  This is one of those rare cases where whether or not

16  this is even a crime is a huge issue.  The pending case in

17  Sacramento where my client has appeared at every single

18  appearance, most of which he had zero bond conditions, and now

19  he has a $250,000 bond and he appears, he's traveled

20  internationally and gone back to that Court.  That Court

21  dismissed the prostitution charges.

22          The bottom line is, Your Honor will be seeing a lot

23  of motion practice that, you know, depending on your bent about

24  constitutional law and things like that, will at least be

25  interesting.  So all I'll say about the merits of the case is

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    this case is a novel new approach by the Government where they

2    are for the first time going to have to see if they can get a

3    tried verdict or finding in a contested case, whether this can

4    even be a crime.  So that certainly is not a reason why Your

5    Honor should say that he is a flight risk.

6           Now we get to the more traditional reasons, which I'm

7    hard-pressed to think of a case where there is a stronger basis

8    to say that somebody is not a flight risk.

9           THE COURT:  Okay.  Let me stop you, Mr. Bienert.  So

10   here's what I was trying to outline at the outset of the

11   hearing.  And perhaps the cynical view but everything you're

12   arguing is what I would have expected counsel to argue at a

13   detention hearing:  The weight of the evidence, whether the

14   person has been placed on supervision in another Court or has

15   appeared or whether they have failures to appear in their

16   history, whether they have ties to the community, whether they

17   have ties in another country, whether they have other

18   incentives or flight, whether they have the resources to fly,

19   all of those sorts of things would have been presented at a

20   detention hearing and all were fully within counsel's knowledge

21   at the time this happened.

22          Your predecessor knew all of these things, knew

23   everything you've argued to me, everything, everything about

24   what you're going to argue about whether there was a crime, and

25   what's happened in other courts.  None of this is new, nothing

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    is that different.

2           With all of that information, and based on their

3    negotiations with the Government and the position I'm sure the

4    Government told them they were going to take with respect to

5    detention, Mr. Larkin decided that he would negotiate and enter

6    a stipulation and have the Court enter conditions of release

7    and the Government in that agreement did not present what they

8    would have presented with respect to detention.

9           So the cynical view of what has occurred from what

10   you've described to me is that defense counsel told Mr. Rapp

11   and the other AUSAs that he wants to revisit this issue sooner

12   rather than later and he said I think it would be appropriate

13   in six months.  You entered the deal, then after the order is

14   entered, five, six weeks later, file a motion seeking to

15   revisit it.

16          So it seems as if the circumstances are that nothing

17   that has happened was not known at the time the parties entered

18   their agreement and advised the Court of how they wished to

19   proceed.  Instead, Mr. Larkin and counsel do not like the

20   circumstances and so made the agreement to forego any risk of

21   actually being detained and then now want the Court to change

22   it.  I can't see anything that's changed.

23          As you've told me, the search occurred at the time of

24   the arrest.  He spoke to his wife about it.  Everything you

25   relayed about how traumatized his daughter may have been from

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    that search would have been known to him.  He was in

2    communication with his family.  Now, he can speak with them on

3    the phone or through Skype.  He can travel to see them if he

4    gets permission and they can travel here to see him.  So I

5    don't see a reason why the Court should change that condition

6    that the parties agreed upon within weeks after entering the

7    agreement.

8            I think what -- what I understand the Government's

9    position to have been, based on what you have relayed and in

10   fairness the Government hasn't explained third position, but

11   what you've described is fairly typical in circumstances where

12   a person is under supervision for a pretty significant period

13   of time, six months or so, and they are subject to the color

14   line, to random drug testing, and they never have a positive

15   test and they always show up for the test and they always

16   report in and the parties agree we don't need the substance

17   abuse testing.  We don't need random testing any more then come

18   to the Court and ask the Court to change it.

19           So it sounds to me what Mr. Rapp was describing is

20   let's see how it goes and if he's in compliance for a

21   reasonable amount of time and a sufficient period of time that

22   gives us assurance that he's not going to flee, then we'll be

23   open to going before the Court and asking to change the

24   conditions.

25           That is how I understand what he was saying to you

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    and that Mr. Larkin's reaction or counsel's reaction was, well,

2    the Government is taking a position now.  I don't know that

3    they, at that time, consciously thought, "Okay, we'll go with

4    this but we'll seek to change it later," but that's exactly

5    what they did, whether they decided or had second thoughts

6    within a few weeks of the agreement and they didn't want to

7    wait, as the Government had said would be their position.  That

8    is what happened.

9          I mean, if defense counsel had responded to the

10   Government and said, "No, we want to have this revisited in one

11   month," probably the Government would have taken a different

12   position.  They probably would have said based on what they

13   have represented in their response that this was important to

14   them, well, let's have a detention hearing.  They had already

15   briefed that.  They had filed a very significant brief, which

16   is unusual, so they were serious about it.

17         So that's not what transpired, so I don't see a basis

18   to change that condition.  There may be in some period of time,

19   maybe that the Government is satisfied and that the parties can

20   agree or that it's not necessary because Mr. Larkin has been in

21   compliance with these conditions.  In meantime, he can still

22   travel to see his family and they can travel to see him.  He

23   just needs permission for that travel is the way the conditions

24   are now imposed.

25         So one way to address this might be to -- well, I

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1   think we need to address the issue of the Court appearances and

2   meeting with his attorneys and how frequently he needs to do

3   that and how much notice he needs to be able to do that.  And I

4   haven't heard the Government address the issue of California

5   travel with respect to court appearances and what, if anything,

6   could be done to facilitate that so that he could appear in

7   court as required in those three districts.

8            Mr. Rapp?

9            MR. RAPP:  Well, Mr. Bienert can correct me if I'm

10  wrong but I sort of understood that his appearance is waived

11  for most of the Court appearances in California.  And my

12  discussions with the prosecutor in California is there's very

13  limited Court appearances.  Just so that the Court understands

14  the posture of the case in California, it is not post-charging.

15  They proceed by a complaint.  There has to be a preliminary

16  hearing.  We harken back to the OJ Simpson case where they had

17  a preliminary hearing in the State of California.  That hasn't

18  even taken place there yet.

19           So in terms -- I don't even think Mr. Bienert is

20  going to suggest to the Court that Mr. Larkin has numerous

21  court appearances in California.  I think most of those he can

22  waive his appearance.

23           So I really don't think that the Court in Sacramento

24  is an issue.  I just think he wants to go see his family most

25  and Mr. Bienert is in California and to the extent he has to go

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1   meet with him there, you know, certainly he can get permission.

2   Our real issue here is, as the Court identified, it's not

3   uncommon that you enter these conditions and you see how it --

4   we'll see what happens and that was my discussion with

5   Mr. Cassman.  We'll see what goes on here.

6           The problem for Mr. Larkin is we have -- it's known

7   that on April 5, the CEO of the company pled guilty, began

8   cooperating with the Government and the case has gotten

9   substantially stronger on Mr. Larkin.  There are seven people

10  indicted in this indictment.  And in the Government's view, the

11  strength of the evidence on Mr. Larkin is the greatest.  He's

12  all over these emails.  He was managing this company post-sale

13  in 2015 and was at every meeting and directed a lot of the

14  content of the conversation, to the extent their argument is

15  relevant in a federal criminal prosecution, what Mr. Larkin was

16  doing clearly as detailed in our pleadings undermines that

17  argument.

18          And so I'm not sure we would agree to take the --

19  agree to the removal of the electronic monitoring because

20  Mr. Larkin has an enormous incentive to flee the country given

21  the level of evidence against him.

22          So that's our position.

23          THE COURT:  Mr. Bienert?

24          MR. BIENERT:  Several things.  First of all, as to

25  Your Honor's comments, I see it and I think this is the

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    framework you started with.  I think there are two separate

2    issues, Your Honor.  Number one is whether or not we can

3    address this with Your Honor for whatever basis you conclude we

4    can or can't, whether we need to show changed circumstances or

5    don't, but that --

6            THE COURT:  That's sort of water under the bridge

7    because I've set the hearing and I'm considering it.  So I

8    didn't just deny your motion out of hand.

9            The second issue is, now that we're here, what

10   standard should the Court employ and on what basis should the

11   Court decide to modify the conditions?

12           MR. BIENERT:  Well, I think that's right and I think

13   that's where I see it a little differently than at least I

14   think I understood you to be saying, and that is once we're

15   here and we're arguing why the change that we are seeking, in

16   this case removal of the electronic monitoring and the ability

17   to travel not just within Maricopa but within certainly the

18   Northern District of California, we need justify why that meets

19   the standard and is the least restrictive accommodations

20   involved.

21           And so in order to meet that proof, we have to cite

22   the reasons why he's not a flight risk, he's not a danger,

23   because otherwise we're, in essence, not able to say anything

24   and then Your Honor has no basis to even consider it.  So to

25   the degree that you're saying what we're doing is we're arguing

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    things that could have been argued earlier, that's right.  They

2    weren't argued earlier.  They were fully briefed.  Not only did

3    the Government file its position --

4            THE COURT:  So Mr. Bienert, what you're arguing for

5    are serial detention hearings.  Same circumstances, let's just

6    present them over and over again and see what the Court will do

7    this time.  Let's judge shop.  Let's get a different judge.

8    Let's appeal to the district judge.  Now, you didn't

9    intentionally do that but that's what happened, is you now have

10   a different judge looking at this issue.  But, nonetheless, I

11   don't -- you want to go back and revisit all the issues of

12   flight and danger and the things that would be decided at a

13   detention hearing.

14           Well, I understood your agreement.  The stipulation

15   would be that Mr. Larkin was acknowledging that he posed a

16   flight risk and that is why he was agreeing to conditions.

17           MR. BIENERT:  I don't think that's what somebody does

18   at all when they stipulate to conditions.  He was stipulating

19   that he would meet those conditions.  I don't think that's an

20   assertion that somebody is saying, "I'm a flight risk."

21           THE COURT:  So he was stipulating to waive his right

22   to have a detention hearing and present argument and evidence

23   and proffers, but he did not pose any risk of flight or danger

24   and he shouldn't be on any conditions.  He should be released

25   on his own recognizance, so he stipulated to waive that, came

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1  to the Court and waived that detention hearing and didn't

2  present that issue.

3      MR. BIENERT:  Based on those conditions, absolutely.

4      THE COURT:  And the Court would not enter an order

5  placing somebody under conditions if they posed no risk of

6  flight or danger.  So going into that process, the assumption

7  is there's an acknowledged risk of flight and danger and these

8  are the conditions that the parties have agreed upon are

9  sufficient to address those risks and the Court is willing to

10  accept them as well.

11      Because clearly at that point, if Judge Boyle had not

12  thought the conditions were sufficient and he could have added

13  a condition, he could have changed a condition, but you're

14  coming before the Court and Court has a two-level decision, the

15  first being, is there risk of flight or danger?  If so, are

16  there any conditions that can address it?  If you get to the

17  first point and you say there's no risk, you don't go to

18  conditions.  Before you even reach conditions, there has to be

19  a risk of flight or danger.

20      We don't put ankle bracelets on people who pose no

21  risk of flight or danger to the community.  We don't send

22  people to random drug testing if they pose no risk of flight or

23  danger.  This is not the circumstance where there is no risk

24  presented and there's no presumption from what has occurred to

25  the parties' stipulation that Mr. Larkin is at least a flight

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

 1   risk.

 2           And this condition seems to be directed at flight

 3   because clearly on electronic monitoring bracelet on your ankle

 4   wouldn't prevent person from committing a violent act.  I'm not

 5   talking about Mr. Larkin.  I'm just speaking in general terms

 6   here.  So electronic monitoring is not usually imposed for

 7   danger unless it's the type of monitoring where you have

 8   restrictive fields and places where a person couldn't go, you

 9   make sure they don't go to, say, the alleged victim's residence

10   or workplace but that wasn't what was imposed here.  What we

11   have is pretty classic GPS monitoring to deal with flight risk

12   and that's the risk that the Government has articulated.

13           So just to cut to the bottom line here, what has

14   happened is the parties stipulated to release conditions and to

15   resolve the motion that was pending before the Court and waived

16   a detention hearing, entered the conditions that address

17   everything that has been said to the Court today, everything

18   was known at that time, and then within weeks, not months,

19   weeks, Mr. Larkin is back before the Court asking the Court to

20   change that.  Let's just redo it.  Let's reopen.  And as I said

21   before, the cynical view is that presents this issue to the

22   Court without the Government having made its presentation that

23   it would have made on flight and danger.

24           I don't know of a provision that is complete do-over.

25   I don't know of a statutory provision that says let's just

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

 1  wheel it back.  We're going back to April 16.  We withdraw the

 2  stipulation in its entirety and let's start over and do a

 3  detention hearing.

 4          I think that's what you're asking me to do is just

 5  decide that either he's not a flight risk and if you're not

 6  saying that, that you're saying that this condition isn't

 7  necessary to address any flight risk, you know, location

 8  monitoring is not reasonable, it's not necessary in these

 9  circumstances to address any risk of flight.  But nothing has

10  changed since April 16 that would make the Court reach that

11  conclusion.  If it were April 16 next year, if it were maybe

12  December 16 this year, there could be some changed

13  circumstances or some reason for the Court to think that maybe

14  that condition is no longer necessary.

15          So I am not going to modify the conditions.  I am

16  denying the motion.  I think it's reasonable for him to have a

17  travel restriction that allows him to travel with prior

18  permission.  One week's notice is reasonable.

19          It sounds as if he doesn't have unexpected and

20  immediate needs to be in California.  Court dates, that that's

21  all scheduled sometime in advance.  There aren't a lot of

22  hearings, his appearance is waived and he can communicate with

23  his attorneys and his family in many ways if he needs to on

24  short notice, short of getting on an airplane or in a car and

25  going to California with one week's notice.  So I don't see any

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1      reason to change those conditions at this point.

2              I am concerned, just for clarity, that the order says

3      location monitoring and the officer's discretion rather than

4      GPS active monitoring.

5              So what I am inclined to do is enter an order that

6      modifies the order only to that extent.  Because what has been

7      presented to me by you, Mr. Bienert and by Mr. Rapp and

8      Mr. Lauby is that that was the agreement, that it would be GPS

9      active monitoring and so the order should say that.

10             Mr. Bienert, you wanted to present -- well, you

11     wanted to present an issue under seal; correct?

12             MR. BIENERT:  Yes, Your Honor.

13             THE COURT:  All right.

14             So what I propose we do is adjourn this portion of

15     the proceedings and then convene again under seal.

16             So we would need everyone to leave the courtroom

17     other than the defendant, his counsel, Government's attorneys

18     as the case agent.

19             MR. RAPP:  The people on this side are with the

20     Government, with the office.

21             THE COURT:  All right.  So they can remain and of

22     course the Pretrial Services officer can remain.

23             (Recessed at 2:16; resumed at 2:16.)

24             THE COURT:  We are not under seal at this point.

25             PRETRIAL OFFICER:  Are we on the record, Your Honor?

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1          THE COURT:  We are.  Okay.

2          PRETRIAL OFFICER:  Justin Lauby with Pretrial

3   Services.  I don't know if this is something that

4   defense/defendant may want to consider but to file a motion

5   allowing for the conditions that Pretrial can transfer his

6   supervision to California.  Because at this point, it seems he

7   wants to spend more time in California than Arizona.  If he

8   wants to reside in California and come back to Arizona for

9   court matters, we can transfer his supervision to California,

10  although he's going to be expected to reside there because at

11  this point, he's wanting to go to California for two, three

12  weeks, come back to Arizona for a few days and back with which

13  with the standards that we have for contacts, which come from

14  the Administrative Office out of Washington D.C., we are not

15  able to meet those and it's going to become an issue.  So if he

16  would rather live in California, defense could file a motion

17  asking for the travel conditions to be changed, that Pretrial

18  can transfer his supervision to the District -- Northern

19  District of California.

20          THE COURT:  All right.  So that is an option.  We do

21  place people under courtesy supervision in other districts but

22  nobody has asked the Court to do that, so I'm not going to just

23  do that unless that were requested.  And I don't think other

24  defense counsel or the Government has really had an opportunity

25  to fully think through that and how they would want to proceed,

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1    so that may not be something to try to deal with today but

2    certainly something to think about today.  So thank you,

3    Mr. Lauby.

4              All right.  So now we'll go off the record and then

5    we're going to seal the proceeding.

6                   (Proceedings concluded at 2:17 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States District Court

CR-18-00422-PHX-SPL(BSB), July 20, 2018

1

2

3

4                      C E R T I F I C A T E

5

6           I, ELAINE M. CROPPER, court-approved transcriber,

7   certify that the foregoing is a correct transcript, to the

8   best of my skill and ability, from the official electronic

9   sound recording of the proceedings in the above-entitled

10  matter.

11

12          DATED at Phoenix, Arizona, this 24th day of July,

13  2018.

14

15

16

17                                      s/Elaine M. Cropper

18                          _____

19                                      Elaine M. Cropper

20

21

22

23

24

25

                    United States District Court