```
             FILED          LODGED
             RECEIVED       COPY

                AUG 1 7 2018

          CLERK U S DISTRICT COURT
            DISTRICT OF ARIZONA
          BY_____ DEPUTY
```

1  ELIZABETH A. STRANGE
   First Assistant United States Attorney
2  District of Arizona

3  KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
   MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
4  PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
   ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
5  JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
   Assistant U.S. Attorneys
6  40 N. Central Avenue, Suite 1800
   Phoenix, Arizona 85004-4408
7  Telephone (602) 514-7500

8  BRIAN A. BENCZKOWSKI
   Assistant Attorney General
9  Criminal Division, U.S. Department of Justice

10 REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
   Senior Trial Attorney, U.S. Department of Justice
11 Child Exploitation and Obscenity Section
   950 Pennsylvania Ave N.W., Room 2116
12 Washington, D.C. 20530
   Telephone (202) 616-2807
13 Attorneys for Plaintiff

14
              IN THE UNITED STATES DISTRICT COURT
15
                FOR THE DISTRICT OF ARIZONA
16

17 United States of America,

18                         Plaintiff,            CR-18-422-5-PHX-SPL (BSB)

19          vs.                                  **PLEA AGREEMENT**

20
   5. Daniel Hyer,
21
                         Defendant.
22

23         Plaintiff, United States of America, and the defendant, Daniel Hyer, hereby agree

24 to dispose of this matter on the following terms and conditions:

25 1.    **PLEA**

26         The defendant will plead guilty to Count 1 of the Superseding Indictment charging

27 the defendant with a violation of 18 United States Code (U.S.C.) § 371, Conspiracy, a Class

28 D felony offense.

2.    **MAXIMUM PENALTIES**

      a.    A violation of 18 U.S.C. § 371 is punishable by a maximum fine of $250,000 (or, if any person derived pecuniary gain from the offense, or if the offense resulted in pecuniary loss to a person other than the defendant, not more than the greater of twice the gross gain or twice the gross loss), a maximum term of imprisonment of 5 years, or both, and a term of supervised release of 3 years.  A maximum term of probation is five years.

      b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

      (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

      (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

      (3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

      (4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

      c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3.    **AGREEMENTS REGARDING SENTENCING**

      a.    <u>Ability To Request Downward Departure/Variance</u>:  The defendant reserves the right to request a downward departure or a downward variance based on the factors set forth in 18 U.S.C. § 3553(a).  The defendant understands that the government is free to oppose any such request.

1         b.     <u>Restitution</u>.   Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant

2   specifically agrees to pay full restitution, regardless of the resulting loss amount but in no

3   event more than $500 million, to all victims directly or proximately harmed by the

4   defendant's "relevant conduct," including conduct pertaining to any dismissed counts or

5   uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct

6   constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A.   The defendant

7   understands that such restitution will be included in the Court's Order of Judgment and that

8   an unanticipated restitution amount will not serve as grounds to withdraw the defendant's

9   guilty plea or to withdraw from this plea agreement.

10        c.     <u>Assets and Financial Responsibility</u>.   The defendant shall make a full

11   accounting of all assets in which the defendant has any legal or equitable interest.   The

12   defendant also expressly authorizes the United States Attorney's Office to immediately

13   obtain a credit report as to the defendant in order to evaluate the defendant's ability to

14   satisfy any financial obligation imposed by the Court.   The defendant also shall make full

15   disclosure of all current and projected assets to the U.S. Probation Office immediately and

16   prior to the termination of the defendant's supervised release or probation, such disclosures

17   to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for

18   any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility

19   Program to fulfill all financial obligations due and owing under this agreement and the law.

20        d.     <u>Acceptance of Responsibility</u>.   If the defendant makes full and complete

21   disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's

22   commission of the offense, and if the defendant demonstrates an acceptance of

23   responsibility for this offense up to and including the time of sentencing, the United States

24   will recommend a two-level reduction in the applicable Sentencing Guidelines offense

25   level pursuant to U.S.S.G. § 3E1.1(a).   If the defendant has an offense level of 16 or more,

26   the United States will move the Court for an additional one-level reduction in the applicable

27   Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

28   **4.**      <u>**AGREEMENT TO DISMISS OR NOT TO PROSECUTE**</u>

1    a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of

2    sentencing, shall dismiss the following charges against the defendant: Counts 2-68 of the

3    Superseding Indictment.

4    b.    This office shall not prosecute the defendant for any additional offenses

5    committed by the defendant, and known by the United States, in connection with the

6    subject matter described in the factual basis of this agreement.

7    c.    This agreement does not, in any manner, restrict the actions of the United

8    States in any other district or bind any other United States Attorney's Office.

9    **5.    COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

10    a.    If the Court, after reviewing this plea agreement, concludes that any

11    provision contained herein is inappropriate, it may reject the plea agreement and give the

12    defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P.

13    11(c)(5).

14    b.    If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed at

15    any time, this plea agreement shall be null and void, the United States shall be free to

16    prosecute the defendant for all crimes of which it then has knowledge and any charges that

17    have been dismissed because of this plea agreement shall automatically be reinstated. In

18    such event, the defendant waives any and all objections, motions, and defenses based upon

19    the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing

20    later charges or proceedings, and any statements made by the defendant at the time of his

21    change of plea or sentencing in this case may not be used against him in any subsequent

22    hearing, trial, or proceeding.

23    **6.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

24    The defendant waives (1) any and all motions, defenses, probable cause

25    determinations, and objections that the defendant could assert to the indictment or

26    information; and (2) any right to file an appeal, any collateral attack, and any other writ or

27    motion that challenges the conviction, an order of restitution or forfeiture, the entry of

28    judgment against the defendant, or any aspect of the defendant's sentence, including the

1    manner in which the sentence is determined, including but not limited to any appeals under

2    18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255

3    (habeas petitions), and any right to file a motion for modification of sentence, including

4    under 18 U.S.C. § 3582(c).   This waiver shall result in the dismissal of any appeal,

5    collateral attack, or other motion the defendant might file challenging the conviction, order

6    of restitution or forfeiture, or sentence in this case.   This waiver shall not be construed to

7    bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial

8    misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

9    **7.**    **DISCLOSURE OF INFORMATION**

10       a.    The United States retains the unrestricted right to provide information and

11   make any and all statements it deems appropriate to the U.S. Probation Office and to the

12   Court in connection with the case.

13       b.    Any information, statements, documents, and evidence that the defendant

14   provides to the United States pursuant to this agreement may be used against the defendant

15   at any time.

16       c.    The defendant shall cooperate fully with the U.S. Probation Office.   Such

17   cooperation shall include providing complete and truthful responses to questions posed by

18   the U.S. Probation Office including, but not limited to, questions relating to:

19          (1)    criminal convictions, history of drug abuse, and mental illness; and

20          (2)    financial information, including present financial assets or liabilities

21   that relate to the ability of the defendant to pay a fine or restitution.

22   **8.**    **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

23       a.    Pursuant to 18 U.S.C. § 981(a)(1)(C), the defendant agrees to forfeit, and

24   hereby forfeits, all interest in any property, real or personal, which constitutes or is derived

25   from proceeds traceable to the offense.   Defendant specifically admits and agrees that the

26   following property, without limitation, constitutes and is derived from proceeds traceable

27   to one or more violations of Conspiracy (under 18 U.S.C. § 371) to violate the Travel Act—

28   Facilitate Prostitution (18 U.S.C. § 1952(a)(3)(A)): (1) Bank of America account number

1   x9342, (2) Bank of America account number x0071, and (3) a sum of money equal to

2   $74,644.85, which represents any mortgage and other payments made by the defendant to

3   the real property located at XXXX San Mateo Blvd, Apt. XXX, Dallas, TX 75223, after

4   November 2012.

5        b.    The defendant further agrees that nothing in this agreement shall be

6   construed to protect him from administrative or civil forfeiture proceedings or to prohibit

7   the United States from proceeding with and/or initiating an action for civil forfeiture (either

8   with respect to the property identified above or with respect to additional property that is

9   not subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) but may be subject to forfeiture

10   under other provisions).

11        c.    The defendant further agrees to waive all interest in all property subject to

12   forfeiture under this agreement in any administrative or judicial forfeiture proceeding,

13   whether criminal or civil, state or federal.  The defendant agrees to consent to the entry of

14   orders of forfeiture for such property and waives the requirements of Federal Rules of

15   Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging

16   instrument, announcement of the forfeiture at sentencing, and incorporation of the

17   forfeiture in the judgment.  The defendant further understands and agrees that forfeiture of

18   the property is appropriate and in accordance with the applicable forfeiture statutes, which

19   may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title

20   21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

21        d.    Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution

22   imposed by the Court, shall be due immediately upon judgment, shall be subject to

23   immediate enforcement by the United States, and shall be submitted to the Treasury Offset

24   Program so that any federal payment or transfer of returned property the defendant receives

25   may be offset and applied to federal debts (which offset will not affect the periodic payment

26   schedule).  If the Court imposes a schedule of payments, the schedule of payments shall be

27   merely a schedule of minimum payments and shall not be a limitation on the methods

28   available to the United States to enforce the judgment.

1        e.      Forfeiture of the defendant's assets shall not be treated as satisfaction of any

2   fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the

3   defendant in addition to forfeiture.  This agreement does not preclude the United States

4   from instituting any civil or administrative forfeiture proceedings as may be appropriate

5   now or in the future.

6        f.      The defendant agrees to waive all constitutional and statutory challenges in

7   any manner (including direct appeal, habeas corpus, double jeopardy or any other means)

8   to any forfeiture imposed as a result of this guilty plea or any pending or completed

9   administrative or civil forfeiture actions, including that the forfeiture constitutes an

10   excessive fine or punishment.  The defendant agrees to take all steps as requested by the

11   United States to pass clear title to forfeitable assets to the United States, and to testify

12   truthfully in any judicial forfeiture proceeding (including any proceeding to adjudicate the

13   claim of any third party to the forfeited assets).  The defendant acknowledges that all

14   property covered by this agreement is subject to forfeiture and that no other person or entity

15   has a legitimate claim to these items listed, other than any community property interest that

16   his wife may have in the forfeited assets under state law.

17        g.      The defendant agrees not to file a claim to any of the listed property subject

18   to forfeiture under paragraph 8(a) of this agreement in any civil proceeding, administrative

19   or judicial, which may be initiated.  The defendant further agrees that he will not contest

20   civil, administrative, or judicial forfeiture of that property.  The defendant agrees to waive

21   his right to notice of any forfeiture proceeding involving this property, and agrees not to

22   file a claim or assist others in filing a claim in that forfeiture proceeding.

23        h.      The government reserves its right to proceed against any remaining assets

24   not identified either in this agreement or in any civil actions which are being resolved along

25   with this plea of guilty, including any property in which the defendant has any interest or

26   control, if said assets, real or personal, tangible or intangible were involved in the

27   offense(s).

28        i.      The defendant hereby waives, and agrees to hold the government and its

1   agents and employees harmless from any and all claims whatsoever in connection with the

2   seizure, forfeiture, and disposal of the property described above.  Without limitation, the

3   defendant understands and agrees that by virtue of this plea of guilty, the defendant will

4   waive any rights or cause of action that the defendant might otherwise have had to claim

5   that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and

6   other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. §

7   2465(b)(1).

8   **9.**     **ELEMENTS**

9                              **Conspiracy**

10         Beginning no later than 2004, and continuing through in or around April 2018, in

11   the District of Arizona and elsewhere:

12         1.     There was an agreement between two or more persons to commit one or more

13         of the crimes of Travel Act—Facilitate Prostitution (18 U.S.C. § 1952(a)(3)(A)).

14         2.     The defendant became a member of the conspiracy knowing of at least one

15         of its objects and intending to help accomplish it; and

16         3.     One of the members of the conspiracy performed at least one overt act for

17         the purpose of carrying out the conspiracy.

18   **10.**    **FACTUAL BASIS**

19         a.     The defendant admits that the following facts are true and that if this matter

20   were to proceed to trial the United States could prove the following facts beyond a

21   reasonable doubt:

22         In 1998, I started working at the *Dallas Observer*, an alternative newspaper that

23         later became part of the Village Voice Media Holdings ("VVMH") chain.  During

24         my early years at the *Dallas Observer*, I was an account executive responsible for

25         selling print ads.

26

27         In 2006 or 2007, I was asked to help grow Backpage.com ("Backpage"), which was

28         VVMH's attempt to create a classified advertising website to compete with

Craigslist. During my first few years in this position, my primary responsibility was to increase the number of ads being posted on Backpage. To do so, I helped develop a process called "preboarding" or "aggregation." In general, this process consisted of identifying so-called "escort" and "adult" ads on other websites and creating ads on Backpage for the individuals depicted in those ads in the hope of securing their future business. These aggregation efforts, which I discussed with my bosses Carl Ferrer and Scott Spear, resulted in large revenue and traffic growth for Backpage. As a result, Ferrer and Spear authorized the expansion of the aggregation team I was supervising and authorized me to repeat the aggregation process (which was initially concentrated in Dallas) in other major U.S. markets.

I knew that the majority of the ads that I and others at Backpage were creating through the aggregation process were actually offering illegal prostitution services. Among other things, the true nature of the ads was obvious and we sometimes used ads containing links to *The Erotic Review* (a website where customers would post "reviews" of their encounters with prostitutes, including descriptions of prices charged for particular sex acts) as the source of the content for the new Backpage ads we were creating. In addition, I and other Backpage employees were deluged with near-constant reminders—in the form of news articles discussing prostitution busts on Backpage, warning letters from Attorneys General, and other sources—of the reality of what was being offered. For a period of time, I even received daily "Google alerts" that summarized the new prostitution-related stories about Backpage that kept appearing in the news. Nevertheless, I kept working for Backpage, and kept facilitating these prostitution offenses, because I was afraid of losing my job and because VVMH and Backpage operated in a culture of denial. I also participated in later efforts to expand Backpage's aggregation efforts to overseas markets, where we often did not even bother with taking out code words to conceal the fact that prostitution services were being offered.

Over time, I also became involved (along with Ferrer, Andrew Padilla, and Joye Vaught) in Backpage's efforts to "moderate" the content of the website's escort and adult ads. Once again, I knew that the majority of the ads being "moderated" were actually offering illegal prostitution services—our removal of explicit words and pictures did nothing to change the underlying nature of the services being offered. In fact, Padilla and I agreed that I and other Backpage sales and marketing employees use the term "models" in intra-company emails when referring to persons in Backpage ads who appeared to be underage. The use of this term was to avoid looking bad in a lawsuit.

b.     The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

### APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

8/12/18

_____
Date

DANIEL HYER
Defendant

### **APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible.  I have further discussed the concept of the advisory Sentencing Guidelines with the defendant.  No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client.  I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

8/13/2018

_____
Date

K.C. MAXWELL
Attorney for Defendant

- 12 -

1    **APPROVAL OF THE UNITED STATES**

2         I have reviewed this matter and the plea agreement.  I agree on behalf of the United

3    States that the terms and conditions set forth herein are appropriate and are in the best

4    interests of justice.

5                                          ELIZABETH A. STRANGE
                                           First Assistant United States Attorney
6                                          District of Arizona

7                                          BRIAN A. BENCZKOWSKI
                                           Assistant Attorney General
8                                          Criminal Division, U.S. Department of Justice

9

10   Date  8/13/18                          KEVIN RAPP

11                                          MARGARET PERLMETER
                                           PETER KOZINETS
12                                         ANDREW STONE
                                           JOHN J. KUCERA
13                                         Assistant U.S. Attorneys

14                                         REGINALD E. JONES
                                           Senior Trial Attorney
15

16            **ACCEPTANCE BY THE COURT**

17

18   Date                                   United States District Judge

19

20

21

22

23

24

25

26

27

28

- 13 -