# EXHIBIT B

**Barbara Polowetz**

| | |
|---|---|
| **From:** | Barbara Polowetz |
| **Sent:** | Friday, July 13, 2018 2:16 PM |
| **To:** | kevin.rapp@usdoj.gov |
| **Cc:** | Michael Piccarreta |
| **Subject:** | BP: agreements and understandings regarding disclosure |

Kevin:

As you know, I have been preparing motions relating to the initial document disclosure. However, I do appreciate our discussions and agreements that we have entered into to assist in processing this case. I wanted to make sure that I have not misunderstood anything or mischaracterized our understanding. Here is my understanding of our discussions:

    1.    The government does not agree to disclose the grand jury transcripts except insofar as they may be *Jencks* materials and those would be disclosed as agreed in our case management order.

    2.    The government does not agree to early disclosure of the investigative agencies' reports or witness summaries relative to this case except as indicated above.

    3.    The government does agree in the next few weeks to provide a disclosure of the documents it believes support the allegations set forth in the indictment and what it views as the "hot documents." This disclosure is without prejudice and will be supplemented throughout the case as per the case management order.

    4.    The government will provide the ads that were placed on Backpage that relate to the victims set forth in the indictment.

    5.    The government is unable to permit the defense to access the documents to the government's Relativity program nor can it provide the documents to the defense in a format that is searchable similar to Relativity.

    6.    In regards to the approximate 5 million CoStar documents, the government will provide the defense copies of the individual documents within this database that it views as relevant to the indictment.

    7.    The government has indicated that this initial document disclosure of millions of documents was its belief that it should disclose all of the documents it has obtained through subpoenas, etc. rather than fail to disclose them.

It is recognized that these disclosures which will occur in the next few weeks will be supplemented over the course of the litigation as documents are discovered and analyzed and that these additional supplemental limited disclosures are without prejudice to later additional disclosures.

I am sending this email as I don't want to assume anything and nor do I want to request items in a disclosure motion that have been resolved between us. If there are any changes to this understanding, just get back to me with whatever they are so both of us are on the same page.

Mike Piccarreta


Barbara Polowetz, Legal Assistant
PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Ste 1000, Tucson, AZ 85701
t 520.622.6900, ext. 137 | f 520-622-0521 | www.pd-law.com

## Barbara Polowetz

| | |
|---|---|
| **From:** | Barbara Polowetz |
| **Sent:** | Friday, July 13, 2018 2:55 PM |
| **To:** | Jefferson Keenan |
| **Subject:** | FW: Brady/Giglio materials |

**From:** Barbara Polowetz
**Sent:** Friday, July 13, 2018 2:22 PM
**To:** kevin.rapp@usdoj.gov
**Cc:** Michael Piccarreta <mlp@pd-law.com>
**Subject:** BP: Brady/Giglio materials

Kevin:

One area we have not discussed is *Brady/Giglio* materials. I have assumed, but have not verified, that investigators when reviewing emails, documents, etc., have also pulled ones that may be inconsistent with the government's theory, exculpatory, or raise questions. I view these materials as Brady materials and would request that these items be produced with the next supplemental disclosure of the hot documents.

Secondly, I would hope that when the investigators gather documents, emails, etc. that he or she believed supported the government's theory, that they also pulled the email string or documents that must be reviewed in conjunction with any incriminating emails. I would hope that these are also produced in the supplemental disclosure so that all emails, documents, etc. are placed in the proper context. Best wishes.

Mike Piccarreta

Barbara Polowetz, Legal Assistant
PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Ste 1000, Tucson, AZ 85701
t 520.622.6900, ext. 137 | f 520-622-0521 | www.pd-law.com

## Barbara Polowetz

| | |
|---|---|
| **From:** | Michael Piccarreta |
| **Sent:** | Wednesday, July 18, 2018 4:32 PM |
| **To:** | Jefferson Keenan |
| **Cc:** | Barbara Polowetz |
| **Subject:** | Fwd: agreements and understandings regarding disclosure |

Sent from my iPad

Begin forwarded message:

> **From:** "Rapp, Kevin (USAAZ)" <Kevin.Rapp@usdoj.gov>
> **Date:** July 18, 2018 at 4:23:51 PM PDT
> **To:** Barbara Polowetz <BPolowetz@pd-law.com>
> **Cc:** Michael Piccarreta <mlp@pd-law.com>, "Jones, Reginald (CRM)" <Reginald.Jones4@usdoj.gov>, "Kozinets, Peter (USAAZ)" <Peter.Kozinets@usdoj.gov>, "Stone, Andrew (USAAZ)" <Andrew.Stone@usdoj.gov>, "Perlmeter, Margaret (USAAZ)" <Margaret.Perlmeter@usdoj.gov>
> **Subject: RE: agreements and understandings regarding disclosure**
>
> Mike:
>
> Hope all is well. Below is our response to your emails of July 13th:
>
> 1. **The government does not agree to disclose the grand jury transcripts except insofar as they may be Jencks materials and those would be disclosed as agreed in our case management order.**
>
> First, it is black-letter law that grand jury transcripts are not subject to disclosure as a matter of course in criminal cases. Instead, a defendant seeking disclosure must articulate a specific, non-speculative basis for its demand. See, e.g., *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) ("Appellant was not entitled to disclosure. Mere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy. . . . In this case, there was no indication that such an inspection would have been fruitful; Ferreboeuf was simply on a fishing expedition."); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (emphasizing that "trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a 'particularized need exists ... which outweighs the policy of secrecy'" and holding that "the district court was correct in denying Walczak's motion to discover the grand jury transcripts" because "Walczak gave two reasons why he sought discovery of the transcripts" but "[n]either reason constitutes 'particularized need'"). Here, you haven't articulated a particularized need.
>
> Second, we are surprised you are asking for disclosure immediately since we were very accommodating on the dates in the scheduling order for early disclosure particularly the date for Jencks disclosure. Indeed, the court allowed for an extension of the trial date without changing any of the government's deadlines for disclosure.

1

Third, we have agreed to provide you the discrete evidence (*e.g.*, postings, advertisements, etc.) that support certain paragraphs in the indictment in advance of when we are obligated to disclose it. I think you will agree that this effort on our part undermines any particularized need to have the GJ transcript disclosed now.

**2. The government does not agree to early disclosure of the investigative agencies' reports or witness summaries relative to this case except as indicated above.**

Like the GJ transcript, ordinarily, witnesses statements aren't subject to disclosure until the time of trial. But again, the parties engaged in an extensive post-indictment negotiation process that led to the entry of a stipulated scheduling order. Under that order, the government agreed to disclose all witness statements by February 2019 – nearly a year before trial. Nevertheless, almost immediately after that order was entered, the defense began demanding immediate disclosure of the witness statements (without even acknowledging, let alone trying to square their position with, the stipulated scheduling order). This approach is difficult to understand. Lastly, any agent summary or reports would be at a minimum Jencks and, in most cases, have yet to be adopted. Thus, they would not be subject to disclosure at this juncture without even considering the date that was negotiated for when they would be disclosed.

**3/4.   The government does agree in the next few weeks to provide a disclosure of the documents it believes support the allegations set forth in the indictment and what it views as the "hot documents." This disclosure is without prejudice and will be supplemented throughout the case as per the case management order. The government will provide the ads that were placed on Backpage that relate to the victims set forth in the indictment.**

It's true that the government has agreed to identify and disclose its hot documents and the victim ads discussed in the indictment. Merely mentioning those two agreements, however, gives short shrift to the efforts made by the government in this case to meet and exceed its discovery obligations. We'd hope that the defense mentions all of these efforts in any motion filed with the Court. To recap, several months pre-indictment, we met with you for several hours to discuss our theory of the case and identify some of our key documents. We even emailed some of those documents to you following the pre-indictment meeting – this was months before the indictment issued. In addition, with respect to your client Mr. Padilla, the PSI Report (Backpage.com's Knowing Facilitation of Online Sex Trafficking)  is a very comprehensive explanation of his role within Backpage. It also provides a 843 page index of emails and postings --many are relevant to Mr. Padilla. Immediately after indictment, we carefully explained to the defense what volume of discovery to expect, informed the defense and the Court (with the assent of the defense) that we'd producing everything in a state-of-the-art Relativity format, and agreed to make our disclosures pursuant to a defense-friendly scheduling order. After the first wave of discovery was distributed, and the defense had some technical questions about how to search it, we patiently met-and-conferred with them over the scope of several lengthy conference calls and even arranged for a DOJ discovery specialist from Washington D.C. to participate in the calls and address their concerns. And after all of that was complete, we agreed to create a care package of the hot documents identified in the indictment and personally deliver it to the defense attorneys.

**5.   The government is unable to permit the defense to access the documents to the government's Relativity program nor can it provide the documents to the defense in a format that is searchable similar to Relativity.**

As noted, during the negotiation of the scheduling order, we informed the defense and the Court that we'd be producing the discovery in a state-of-the-art format that would render it easily searchable using the Relativity database. The defense agreed to this proposal. Nevertheless, now that the defense has received the discovery in the previously-agreed-to format, it has raised various complaints. Notably, the defense hasn't identified any alternative production format that it would prefer—it has simply complained about the cost of Relativity. The government cannot, in any event, "permit the defense to access" the government's Relativity program—it's our understanding that Relativity is a commercial program that customers must pay to use, and it would likely violate the copyright laws and DOJ contracts for us to attempt to allow the defense to use our copy of this software.

**6.   In regards to the approximate 5 million CoStar documents, the government will provide the defense copies of the individual documents within this database that it views as relevant to the indictment.**

We agree that we'll identify the subset of these documents that we view as relevant to the indictment. This is yet another example of the government exceeding its legal discovery obligations that should be noted in any motion filed with the Court. As you know, the Costar documents received some national publicity (i.e. the CEO was featured on Dateline detailing the contents of the troubling "Costar" material, etc.) In short , the Costar material is relevant because it is an example of Backpage engaging in systematic  content creation (referred to within Backpage as ("aggregation") albeit in an international market. However, we have now discovered that Backpage engaged in similar activities in the domestic markets known as the "Dallas plan." But again, we will provide you those documents and our theory for admission in a timely fashion.

**7. The government has indicated that this initial document disclosure of millions of documents was its belief that it should disclose all of the documents it has obtained through subpoenas, etc. rather than fail to disclose them.**

The defense seems to be criticizing the government's view that it should disclose to the defense the documents that it obtained via subpoena during the investigation in this case.  Such criticism is surprising—this is the normal approach to criminal discovery, and it seems odd that the defense would be critical of the government for being too generous in its disclosure decisions.

**8. Brady/Giglio**

We intend to fully comply with our ongoing Brady/Giglio obligations, and we are providing the emails in the manner in which they were found on the servers and other digital devices.  We would not provide portions of the emails nor would we attempt to substitute our judgement for yours  as to what is exculpatory or not. Multiple courts have recognized that the prosecution is not required to sift through the discovery in a case and identify, for the defense, the subset of discovery material that might be considered exculpatory. See, e.g., *Rhodes v.*

*Henry*, 638 F.3d 1027, 1039 & n.12 (9th Cir. 2011); *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010); *United States v. Skilling*, 554 F.3d 529, 576-77 (5th Cir. 2009). *See also United States v. AU Optronics Corp.*, 2011 WL 6778520 (N.D. Cal. 2011) ("Typically, the government has no obligation to 'single out' particular pieces of exculpatory evidence. . . . Further, the defendants here are well-resourced, have interests that are largely aligned, and perhaps most importantly, have the benefit of years of participation in the civil cases. Accordingly, the Court rejects defendants' contention that the government must affirmatively identify the location of Brady material within its production.").

As you know, for an array of reasons we are not persuaded by your primary defense that as a content neutral platform BP has First Amendment protection. However, your client and his co-defendants are in the best position to identify emails, ads, witnesses etc. that would support that defense. If you have something you believe may change our mind please do not hesitate to identify it.

Lastly, I believe the explanation above (with authority) addresses your concerns. If you do choose to file a discovery motion we would request that you make this email an exhibit so that the Court is aware of our efforts to be responsive to the issues you have raised.


Best,


Kevin M. Rapp| Assistant U.S. Attorney
Senior Litigation Counsel
Financial Crimes and Public Integrity Section U.S. Department of Justice | Office of the United States Attorney
40 N. Central Ave., Ste. 1800, Phoenix, AZ 85004 602.514.7609, kevin.rapp@usdoj.gov