UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

United States of America,  )
                           )
          Plaintiff,       )    CR-18-00422-05-PHX-SPL
                           )
     vs.                   )    Phoenix, Arizona
                           )    August 17, 2018
Dan Hyer,                  )
                           )
          Defendant.       )
                           )
_____)

BEFORE:  THE HONORABLE STEVEN P. LOGAN, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

CHANGE OF PLEA HEARING

Official Court Reporter:
Elva Cruz-Lauer, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona  85003
(602) 322-7261

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**


For the Government:

        U.S. Attorney's Office
        By:  KEVIN M. RAPP,, ESQ.
            MARGARET WU PERLMETER, ESQ.
            PETER SHAWN KOZINETS, ESQ.
        40 North Central Avenue, Suite 1200
        Phoenix, AZ  85004


For the Defendant Dan Hyer:

        Maxwell Law PC
        By:  KC MAXWELL, ESQ.
        899 Ellis Street
        San Francisco, CA 94109

### P R O C E E D I N G S

THE CLERK:  Criminal case 18-422, United States of America versus Dan Hyer.

This is the time set for a change of plea hearing.

MR. RAPP:  Good morning.  Kevin Rapp, Peter Kozinets, and Peg Perlmeter on behalf of the United States.

THE COURT:  Good morning to all of you.

MS. MAXWELL:  Good morning, Your Honor.  KC Maxwell on behalf of Mr. Hyer, who is present.

THE COURT:  I'm sorry, Ms. Maxwell.  If you could move the microphone and speak into it, please?

MS. MAXWELL:  Good morning, Your Honor.  KC Maxwell on behalf of Mr. Dan Hyer, who is present and out of custody.

THE COURT:  Good morning to both of you as well.

Mr. Hyer, this is the time set for your change of plea hearing.  If you and your lawyer would please approach the lectern.

Please administer the oath.

THE CLERK:  Please raise your right hand.

(The defendant is placed under oath by the courtroom deputy.)

THE COURT:  Mr. Hyer, it is very important this morning that you answer all of my questions truthfully.  If you don't, the U.S. Attorney's Office, they can prosecute you for the crime of perjury or false statement, and both of those crimes carry prison sentences.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, what is your full name?

THE DEFENDANT:  Daniel John Hyer.

THE COURT:  Sir, is your name spelled correctly on the plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Ms. Maxwell, if you could please lay the foundation as to how the plea agreement was explained to your client.

MS. MAXWELL:  Your Honor, I went over every line of the plea agreement with Mr. Hyer.  I explained the sentencing guidelines.  I explained what he -- his obligations under the plea agreement and what he was giving up, as well as the government's obligations.

THE COURT:  Thank you.  Mr. Hyer, how old are you?

THE DEFENDANT:  I am 49, Your Honor.

THE COURT:  Sir, how much education do you have?

THE DEFENDANT:  I graduated with a bachelor of arts in liberal arts from Kirksville Missouri School.  That's now called Truman University.  At the time of graduation it was Northeast Missouri State.

THE COURT:  Sir, in the last 48 hours, have you used any drugs, prescription medication, alcohol, or anything that would make it difficult for you to understand what's being said this morning?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Sir, have you ever been treated for a mental or an emotional disorder?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Does either counsel have reason to believe that the defendant is not competent to enter a plea?

MR. RAPP:  The United States does not.

MS. MAXWELL:  No, Your Honor.

THE COURT:  Sir, I have your original plea agreement here, which is a 13-page document, but before we get there, Mr. Rapp, I was looking at the forfeiture section here, and you have the Bank of America bank account, a second one, and then there's a piece of property, but there's also a section in your plea agreement on page number 3 that talks about 500 million in restitution.  Where does that figure come from?

MR. RAPP:  Judge, that is the United States' assessment as to what we believe the restitution is owed to --

THE COURT:  Sorry, Mr. Hyer, can you move over to your left so I can see Mr. Rapp.

THE COURT:  Go ahead.

MR. RAPP:  Yes.  In consultation with the defense, we have -- it is our assessment that that is the restitution that would be owed to a class of victims that were trafficked on Backpage.

THE COURT:  Thank you very much, Mr. Rapp.

Sir, as I indicated before, I have your original plea agreement which is a 13-page document.  And on page number 13, I recognize the signature of Mr. Rapp.  Sir, on page number 12, I see some additional signatures.  Your lawyer is from out of town.

Ms. Maxwell, is that your signature above your typewritten name?

MS. MAXWELL:  Yes, Your Honor, it is.

THE COURT:  And, Mr. Hyer, above your type-written name I also see a signature.  Did you sign off on the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, you speak the English language really well.  Do you read it and write it just as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you personally have an opportunity to sit down with your lawyers, you have three of them, and go through each and every section of this 13-page contract?

THE DEFENDANT:  Yes, Your Honor, however, I have -- do I have three lawyers?  I have two.

THE COURT:  I have three lawyers.  You have an Erin McCampbell, a KC Maxwell, who is here, and it appears you have local counsel, Anne Michelle Chapman.

MS. MAXWELL:  No, Your Honor, those are not -- those lawyers are not part of --

THE COURT:  So your only lawyer is KC Maxwell?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Thank you for that clarification.

Sir, when you had a chance to sit down with Ms. Maxwell, did she answer any and all questions that you had about your plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand the entire plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has anyone forced, threatened, or coerced you into entering into this plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made you any promises to get you to enter into this plea agreement, other than the promises that are contained in your plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Sir, are you pleading guilty voluntarily because you believe you are guilty of this crime?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Hyer, your plea agreement, it contemplates that you will plead guilty to count number 1 of the superceding indictment in case number CR-18-422, and you are the fifth defendant in this case.  And the crime is conspiracy, which is a class D felony offense under 18 United

States Code Section 371.

    Sir, is that the crime you wish to plead guilty to?

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  Mr. Hyer, this crime is punishable by a fine of $250,000, and a maximum term of imprisonment of five years or both and a term of supervised release of three years and the maximum term for probation is five years.

    Sir, do you understand the potential maximum punishment in your case.

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  Mr. Hyer, in addition to that, at the time of sentencing, you will be required to pay $100 special assessment for the count of conviction.

    Do you understand that, sir?

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  Mr. Hyer, I have this document right here, it's called the Federal Sentencing Table.  There should be a copy of the Federal Sentencing Table on the lectern there in front of you.  Have you had a chance to review the Federal Sentencing Table with your lawyer, Ms. Maxwell?

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  Do you understand the Federal Sentencing Table?

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  Sir, your plea agreement, it contains

certain promises you have made to the United States and they have made to you.  If you would like to follow along, I am on page 2, line number 25 of your plea agreement.

The first item under section 3A is that you reserve the right to request a downward departure or downward variance based on the factors set forth under 18 United States Code Section 3553(a), and you also understand that the government is free to oppose any such request.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you agree with that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, we touched on this issue moments ago. Restitution on page number 3, Mr. Rapp just explained what that $500 million was all about.  The 500 million is what the United States Government believes the victims in this case, that were directly or proximately harmed, should receive, an amount not more than the $500 million, and that's based on relevant conduct in the entire case.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You understand that you're jointly liable for the actions of the other actors that are -- if they get convicted.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you've read that entire restitution section with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, the second thing there on page number 3, line Number 10, it talks about your assets, and it indicates that you'll make a full accounting of all of your assets and you agree not to hide or waste any of those assets and you'll notify the U.S. Attorney's Office of this.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you agree to make a full accounting of those assets that you have legal or equitable interest?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, the last promise is under section number 3D.  It's called Acceptance of Responsibility. Basically, if you sit down with the probation officer and if you provide that officer with truthful information about how you violated the law, the U.S. Attorney's Office, they will recommend a two-level reduction and an additional one-level reduction if you have an offense level of a 16 or more.

Do you understand that, Mr. Hyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, section number 4A indicates that at the time of sentencing, the United States Government, they'll

make an oral or written motion to dismiss counts 2 through 68
of the superseding indictment.

      Do you understand that?

      THE DEFENDANT:  Yes, Your Honor.

      THE COURT:  In subpart 4B, it goes on to indicate that
the U.S. Attorney's Office in the District of Arizona shall not
prosecute you for any additional offenses committed by you, and
known by the United States in connection with the subject
matter described in the factual basis of this agreement.

      Do you understand that?

      THE DEFENDANT:  Yes, Your Honor.

      THE COURT:  The last item, subpart 4C, indicates that
this matter only deals with the District of Arizona.  It
doesn't tie the hands of any other district.  It only applies
to the District of Arizona.

      Do you understand that?

      THE DEFENDANT:  Yes, Your Honor.

      THE COURT:  Sir, after I review this entire plea
agreement, this 13-page contract, if I conclude that any
provision is inappropriate, I can reject your plea agreement
and give you an opportunity to withdraw your guilty plea.

      Do you understand that, sir?

      THE DEFENDANT:  Yes, Your Honor.

      THE COURT:  Sir, if this plea is accepted and if I
impose a sentence permitted by the terms of your plea

agreement, you will not be permitted to withdraw from your plea or challenge your judgment and sentence on appeal with the exception of an appeal based on ineffective assistance of counsel based on your lawyer's performance or prosecutorial misconduct based on the government's conduct in the case.

        Do you understand that?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  Sir, I am not required to go along with any recommendations that you have in your plea agreement.  And if I reject a recommendation in your plea agreement, you cannot withdraw from this plea agreement or your plea.  However, if there's a stipulation in here, which I don't believe you have a stipulation in here, it would be a promise, and if the promise is not kept, that means you can get out of this plea agreement.

        Do you understand that, sir?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  Mr. Hyer, if you are required to do so, after you serve your prison sentence, you will then be placed on supervised release, and you will be required to follow certain conditions imposed by me.  And if you violate any of those conditions, you could receive more time in prison in this case.

        Do you understand that?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  Ms. Maxwell, is your client currently on

probation, parole, or any other punishment?

      MS. MAXWELL:  No, Your Honor.

      THE COURT:  Sir, are you a U.S. citizen?

      THE DEFENDANT:  Yes, Your Honor.

      THE COURT:  Sir, if you commit another crime against the United States after this one, your conviction in this case could be used to make whatever sentence you receive for the new offense even longer or harsher than it otherwise would be.

      Do you understand that?

      THE DEFENDANT:  Yes, Your Honor.

      THE COURT:  Mr. Hyer, as a person accused of a crime here in the United States, you have certain rights that are guaranteed to you by the U.S. Constitution.

      You have a right to remain silent and to maintain your innocence through each phase of your case, as well as to have Ms. Maxwell represent you through each phase of your case.

      You have a right to confront and cross-examine all of the government witnesses.

      You can present your own evidence and compel witnesses to come to court and testify on your behalf.

      Sir, the burden of proof is always on the U.S. government to prove you are guilty.  It never shifts for you to prove that you are innocent, and the United States Government must prove each and every element of the crime beyond a reasonable doubt.

Sir, proof of guilt beyond a reasonable doubt means that Mr. Rapp behind you, and his team, must come into this federal courtroom and present the jury members with sufficient evidence that would leave each and every jury member firmly convinced of your guilt before any of those jury members can vote in finding you guilty.

Mr. Hyer, do you understand your constitutional rights that you have here in the United States?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Rapp, can the United States Government avow that if this matter were to proceed to trial, you could prove each and every element beyond a reasonable doubt?

MR. RAPP:  The United States would be able to do that, yes.

THE COURT:  Mr. Rapp, I need you to place the elements on the record.

MR. RAPP:  The elements for conspiracy under Title 18 United States Code Section 371, beginning no later than 2004 and continuing through in or around April of 2018, in the District of Arizona and elsewhere, number 1, there was an agreement between two or more persons to commit one or more of the crimes of the Travel Act, which was the Facilitation of Prostitution, in violation of 18 U.S.C. Section 1952 (a)(3)(A);

Number 2, the defendant became a member of the conspiracy knowing of at least one of its objects and intending

to help accomplish it.

And three, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

THE COURT:  Mr. Rapp, thank you for that.

Mr. Hyer, did you just hear Mr. Rapp place the elements of the crime on the record?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand those elements?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has your lawyer explained those elements to you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, in your own words, tell me exactly why you believe you're guilty of this crime.  In other words, what did you do?

THE DEFENDANT:  Around 2006 or 2007, I was working for the Dallas Observer.  At that time, I was asked to help grow Backpage.com, which was owned by Village Voice Media to have a competitor to their website Craigslist.

We grew the site by taking content that was in the -- on the Craigslist website in the adult section, copied those ads and posted those on our site.  And the term that we used for that type of practice was called "agregation."

Eventually we started doing what was called

"preboarding," which was contacting the users that were on Craigslist and other prostitution sites offering them a free ad on our website, and then they would end up getting a link and verify the ad on our website.

The reason that we -- and I know that those ads were sometimes illegal is because they contained links to sites like The Erotic Review, which -- and other prostitution review websites.

The rationale or the purpose of doing this practice was to try to gain as many users as we could, participants on our website, to in turn draw in as many consumers to look at the content, respond to the content, and ultimately to grow revenues.

THE COURT:  Well, sir, I want to focus on count number 1.  You heard Mr. Rapp earlier.  An agreement between two or more individuals.  Who do you believe those individuals are that you had an agreement with?

THE DEFENDANT:  Carl Ferrer was my immediate supervisor.  We strategized this approach, this tactic often.  It was one that we had employed at the Dallas Observer where we would contact people who are -- at that time it was a newspaper.  They were posting ads -- or they had ads in the newspaper, like The Dallas Morning News.  And we would contact them to post their ads that were in the Dallas Morning News in the Dallas Observer.  So we utilized that same approach.  I was

hired in '98 and worked for Carl at that time, and we used that tactic to grow Backpage as well.

THE COURT:  And, sir, do you -- after having a chance to sit down with your lawyer, do you understand 18 United States Code Section 1952, which is the -- a crime pursuant to the Travel Act to facilitate prostitution; do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that your conduct with this other individual would fall under that crime, that federal crime?

THE DEFENDANT:  Yes, Your Honor.  I also --

THE COURT:  Go ahead.

THE DEFENDANT:  I also worked in those -- 2006, 2007 with Scott Spear, who is Carl's boss, but we also talked at times about how to grow the site.

THE COURT:  And, sir, when you became a member of this conspiracy, you knew that one of the objects was to basically use that print form to facilitate prostitution?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you agree that by helping to grow the paper, that you were helping with this -- you were helping to carry out this conspiracy?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Rapp, the factual basis contained on

pages 8 through 9 actually, actually 8 through 10, I need you to fill in any blanks for the record that you need to.  You can even question the defendant if you need to.

MR. RAPP:  Thank you, Your Honor.  Just for the record, this plea agreement was negotiated over the last 30 or so days and -- with both defense and the prosecution going back and forth about the details of this factual basis, and so I think the record should reflect that this defendant ultimately agreed to the facts contained therein as evidenced by signature on the plea.

The only additions I would add are halfway down on page 9, in addition, Mr. Hyer and other Backpage employees were deluged with near-constant reminders in the form of news articles --

THE COURT:  What line are you on?

MR. RAPP:  I am on line 18 of page 9.  They were deluged with near-constant reminders in the form of news articles discussing prostitution busts on Backpage, warning letters from the attorney generals and other sources of the reality of what was being offered.  All of these went to their knowledge.

For a period of time, Mr. Hyer often received Google alerts that summarized the new prostitution-related stories about Backpage, that kept appearing in the news.  He kept working at Backpage and kept facilitating these prostitution

offenses because he was afraid of losing his job, among other things.  And because the Village Voice Media and Backpage operated in a culture of denial, he also participated in later efforts to expand Backpage's agregation efforts to the overseas markets where they often did not even bother talking about prostitution-related activities in codes to conceal that those type of services were being offered.

I would also point out that Mr. Hyer became involved not only with Carl Ferrer, but moderators Andrew Padilla and Joye Vaught, who are defendants in this case, in Backpage's efforts to moderate the content of the website's escort and adult ads.  They knew that the majority of these ads being moderated were actually offering illegal prostitution services. Their removal of explicit words and pictures did nothing to change the underlying nature of the services being offered.

In fact, Mr. Padilla and Mr. Hyer agreed that Mr. Hyer and other Backpage sales and marketing employees used the term "models" quote, unquote, in intra-company emails when referring to persons in Backpage ads who appeared to be underage.  The use of this term was to avoid looking bad in a lawsuit or subsequent lawsuits.

THE COURT:  Thank you, Mr. Rapp.

Mr. Hyer, you told me earlier that you had a chance to read through the entire plea agreement.  I just want to focus on the factual basis, which starts on page number 8, line

number 18, through page Number 10, line Number 10.  Again, have
you had a chance to read through the entire factual basis?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  Sir, is there anything in there that you
would like -- is there anything in there that you would like to
change?

        THE DEFENDANT:  No, Your Honor.

        THE COURT:  Is it all accurate?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  Sir, are you pleased with the assistance
that your lawyer has provided to you in this case?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  Would you like to give up your rights to
go to trial so you can enter a plea of guilty to this crime.

        THE DEFENDANT:  I'm sorry, I don't understand that?

        THE COURT:  It's a very confusing question.  My
apologies to you.

        You have a constitutional right to maintain your
innocence, and the United States Government, they're
responsible for proving each and every element of the crime
beyond a reasonable doubt.

        What I believe you are here to do this morning is to
enter a plea of guilty to try to resolve these charges against
you.

        Sir, there's some tissues on the lectern.

THE DEFENDANT:  I'm cool.  I'm all right, Your Honor,
I'm sorry.

THE COURT:  Is there a box of tissues up there or on
the defense counsel table?  We usually have tissues on the
lectern.  I don't know what happened to them.  Just grab some
tissues.  I know it's very emotional.

Ms. Maxwell, get your client some water.  There's
water back there also.

Sir, you have -- as I stated before, you have a right
to have a jury decide your case, but it appears that you want
to resolve the issues by way of a change of plea hearing.

For me to go forward with you by accepting guilt by a
change of plea, you have to waive your right to go to trial.
Is it your intent to waive your rights to go to trial so you
can enter this plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sir, as to count 1 of the superceding
indictment charging you with a conspiracy, which is a class D.
felony offense under 18 United States Code Section 371, Mr.
Hyer, how do you with to plead, guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  Sir, this Court accepts your plea of
guilty.  This Court also finds that you have knowingly,
intelligently, and voluntarily entered a plea of guilty.

That you understand the charge and that there's a

factual basis for your plea, and also that you're competent to enter a plea of guilty.

It's ordered that a presentence report be prepared in your case, and, Mr. Hyer, your sentencing is set for November the 19th, 2018, at 11:00 in the morning.  Again, 19 November, 2018, at 11:00 in the morning.

Mr. Hyer, do you have any questions about anything that's happened in your case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Sir, I have your release status report here, and it appears that you have adjusted well under supervision.  You've been on supervision for about four months, and you -- it appears that you've been in full compliance. There was a home visit in July of 2018 and there were no issues to report.  You've also surrendered your passport.  You have no new arrests or warrants or convictions.

Sir, you're doing everything you need to do to present your most favorable argument during the sentencing phase.  Ms. Maxwell, I am sure, will continue to tell you that you need to continue to just go to work, whatever you're doing right now, stay out of trouble, and just make sure that you provide her with positive things that she can tell me about when I do sentence you so I'll have a full picture of you.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Maxwell, was there anything else from the defense?

MS. MAXWELL:  No, Your Honor.

THE COURT:  Mr. Rapp, is there anything else from the United States Government?

MR. RAPP:  No, Your Honor.  Thank you.

THE COURT:  You're welcome.  The hearing is adjourned.

    *        *        *        *

# C E R T I F I C A T E

I, ELVA CRUZ-LAUER, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 28th day of August, 2018.


s/Elva Cruz-Lauer
Elva Cruz-Lauer, RMR, CRR