Paul J. Cambria, Jr. (Cal. Bar No. 177957)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite #120
Buffalo, New York 14202
Telephone:   (716) 849-1333
Facsimile:   (716) 855-1580
Email:       pcambria@lglaw.com
             emccampbell@lglaw.com

*Counsel for Defendant Michael Lacey*

Thomas H. Bienert, Jr. (Cal. Bar No. 135311)
Kenneth M. Miller (Cal. Bar No. 151874)
Anthony R. Bisconti (Cal. Bar No. 269230)
Whitney Z. Bernstein (Cal. Bar No. 304917)
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone:   (949) 369-3700
Facsimile:   (949) 369-3701
Email:       tbienert@bmkattorneys.com
             kmiller@bmkattorneys.com
             tbisconti@bmkattorneys.com
             wbernstein@bmkattorneys.com

*Counsel for Defendant James Larkin*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>   v.<br><br>Michael Lacey, James Larkin, Scott Spear, John Brunst, Dan Hyer, Andrew Padilla, and Joye Vaught,<br><br>                    Defendants. | No. CR-18-00422-PHX-SPL (BSB)<br><br>**SUPPLEMENT OF DEFENDANTS LACEY AND LARKIN TO THE OPPOSITION TO THE UNITED STATES' MOTION TO DISQUALIFY COUNSEL**<br><br>**Oral argument scheduled October 5, 2018** |

## I.   INTRODUCTION

Attempting to bolster its motion to disqualify Defendants' longtime counsel (Doc. 118; "DQ Mot."), the government provided several "factual supplements," after Defendants responded to the motion.[1] Raising new fact allegations and arguments in this fashion is improper. Defendants should at least have an opportunity to respond.

Defendants thus submit this supplement and ask the Court to consider it in connection with the disqualification motion to be heard on October 5, 2018. The Court should decide that motion on an accurate record. This is especially important because Defendants' Sixth Amendment rights are at stake, and a wrongful denial of their rights to chosen counsel requires automatic reversal. *See United States v. Gonzales-Lopez*, 548 U.S. 140, 148 (2006).

The government's belated "factual supplements" misstate the facts. At the same time, the government has taken many other actions to prejudice Defendants' rights and their ability to defend this action. *These* are supplemental facts the Court should understand, as they bear on the government's tactics and relief Defendants have sought in other pending motions before the Court.

## II.   BACKGROUND

In support of its Disqualification Motion, as originally filed, the only factual support the government offered was: (1) pleadings in other cases showing that DWT entered appearances on behalf of Mr. Ferrer (along with numerous other parties), *see* DQ Mot. at 3-5 & Exs. C-U (Docs. 118-03 through 118-19); and (2) two identical letters from Ferrer (written a week after his pleas and apparently as part of his agreed cooperation with the government) purporting to withdraw his prior informed consent to counsel's joint representation, *see id.* Exs. A, B (Docs. 118-01, 118-02).

---

[1] "Defendants" refers to Michael Lacey and James Larkin, whose counsel the government is attempting to disqualify, as well as Scott Spear, John Brunst, Andrew Padilla, and Joye Vaught, who joined in the opposition to the government's motion to disqualify (*see* Doc. 180, "Opp."; Docs. 160, 161, 163, 181, 184, 191 (joinders)).

1

Defendants' response showed that, in addition to misunderstanding the law, the government disregarded the parties' actual relationships with counsel and their joint representation agreements.  Defendants noted, for example, that DWT did not represent Ferrer personally, but rather represented Backpage.com entities and parties jointly.  *See* Opp. at 4-6.  This was pursuant to the parties' joint representation agreements, in which Ferrer requested and agreed to joint representation by DWT and other counsel, agreed that counsel could continue to represent Messrs. Larkin and Lacey and their companies (the "Medalist parties") if he were to withdraw from joint representation, and agreed *not* to seek disqualification.  *See* Opp. at 6-8; Grant Decl. ¶¶ 9-20 & Exs. A, B (filed *in camera*).

In reply, the government raised at least six new factual arguments, providing an extensive "Factual Supplement," *see* Doc. 193 ("Reply") at 3-6, and a seven-page declaration from Ferrer ("Ferrer Decl."; Doc. 192-6).  Then, three weeks later, the government provided another "Supplement," supplying and misstating a ruling by a Washington State trial court (Doc. 207, "Supp.").  The government's new fact arguments are discussed below.

### III.   ARGUMENT

**A.   The Government Cannot Inject Arguments or Fact Issues for the First Time on Reply.**

"It is well established that issues cannot be raised for the first time in a reply brief."  *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007); *accord Bazuaye v. INS,* 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply brief are waived."); *see also Sogeti USA LLC v. Scariano*, 606 F. Supp. 2d 1080, 1086 (D. Ariz. 2009) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers" (internal quotations omitted)).  As the Ninth Circuit has noted, the prejudice of permitting such a tactic is "obvious."  *Sophanthavong v. Palmateer,* 365 F.3d 726, 737 (9th Cir. 2004) (allowing litigants to raise arguments for the first time in reply deprives

2

opposing parties of "the opportunity to point to the record to show that the new theory lacks legal or factual support").

More specifically, it is improper for a party to attempt to assert new facts on reply. *McCoy v. U.S. Collections W., Inc.*, 2014 WL 3898088, at *4 (D. Ariz. Aug. 11, 2014). Accordingly, "the Court will not consider affidavits submitted for the first time with [a] reply memorandum." *Rodrigues v. Ryan*, 2017 WL 5068468, at *4 (D. Ariz. Nov. 3, 2017), *aff'd*, 718 F. App'x 577 (9th Cir. 2018); *see also Delgadillo v. Woodford*, 527 F.3d 919, 930 n. 4 (9th Cir. 2008); *Taser Int'l., Inc. v. Stinger Sys, Inc.*, 705 F. Supp. 2d 1115, 1127-28 (D. Ariz. 2010).

Here, the government's reply to Defendants' Opposition to the Disqualification Motion was based almost entirely on new fact arguments, and the Court properly could (and should) strike the government's Reply and Supplement as a result. Alternatively, Defendants urge the Court to accept and consider this supplement to have an accurate record—not just the government's mischaracterizations—to assess whether the government has shown "extreme circumstances" necessary to justify disqualification. *Alexander v. Sup. Ct.*, 141 Ariz. 157, 161, 685 P.2d 1309 (1984).

**B.     The Government's New Factual Assertions on Reply (and Afterward) Are Misstatements.**

Almost without exception, the government's "Factual Supplements" are misstatements or simply wrong.

***1. Washington State Court Ruling.*** The government points to a ruling of a Pierce County (Washington) superior court that "recently disqualified the DWT firm from representing Lacey and Larkin in a Backpage-related civil case." Reply at 2; *see id.* at 3-4. The government failed to note that the trial court's order was entirely *sua sponte*. No party sought disqualification. There was no motion. The court permitted no briefing, hearing, argument, or any opportunity for Defendants to contest the ruling, except by lodging an objection afterwards. *See* Reply Ex. A at 71:18-72:11 (Doc. 193-1); Declaration of James C. Grant ("Second Grant Decl.") ¶ 2. The court did not

3

consider the parties' joint representation agreements or Ferrer's express waivers of conflicts. Also notable, in that case Backpage.com and Ferrer acknowledged that they did not—and *could not*—seek or support disqualification of DWT from further representation of Larkin and Lacey and the other Medalist Parties. *Id.* ¶ 3 & Ex. A at 72:17-72:20 (transcript of 6/28/18 hearing).[2] But the court ignored this too in finding on its own that there was a "high possibility" of some future conflict.

The Medalist parties filed motions in the Washington Court of Appeals for review and a stay of the trial court's order, noting, among other things, that disqualifying counsel without notice or hearing violates Washington law. *See id.* ¶ 4; *see also In re Estate of Barovic*, 88 Wash. App. 823, 827, 946 P.2d 1202 (1997). The court of appeals immediately entered a preliminary stay of all proceedings in the trial court, Second Grant Decl. ¶ 4 & Ex. B, then, after considering briefing from plaintiffs, affirmed the stay in an order three weeks later, *id.* & Ex. C.

   **2. *Scope and Timing of DWT's Joint Representation Under the Parties' Agreements.*** Although the government's motion did not address the parties' joint representation agreements at all, on reply the government injected a new argument about the "timing" of the agreements. Reply at 4. The government asserted that "the DWT firm individually represented Ferrer in several matters [that] predated the execution of the first joint representation agreement … on December 12, 2016." Reply at 5. First, in the cases the government mentions, DWT represented Ferrer only as part of the firm's *joint representation* of numerous Backpage-related parties. *See, e.g.*, DQ Mot. Exs. E-U (pleadings submitted by USAO showing that DWT actually entered appearances for and represented 12 defendants in the cases). Second, the joint representation agreements

---

[2] With its Supplement, the government provided the Pierce County court's written order (drafted by plaintiffs' counsel) and claimed the court ordered disqualification "after reviewing *in camera* 'supporting materials' submitted by DWT" and concluding there was a "high possibility" of future conflict. Supp. at 2-3. This is disingenuous. The order on its face states that the court considered the supporting materials DWT presented only in connection with DWT's request to withdraw from representation of Ferrer and the Backpage.com parties, which the court granted. Supp. Ex. 1 at 12 (Doc. 207-1).

4

expressly provide that they memorialized the parties' understandings and commitments *already in place* since April 2015, when Ferrer purchased Backpage.com. *See* Grant Decl. Exs. A, B. The government's mischaracterized "chronology" cannot override the terms of the agreements—or the law. *See United States v. Gonzales*, 669 F.3d 974, 979 (9th Cir. 2012) (joint representation and joint defense arrangements "may be implied from conduct and situation," and "it is clear that no written agreement is required").

   3. ***Government's Belated Attorney-Witness Argument.*** In its reply the government also argued for the first time that DWT could be a "potential fact witness" about Ferrer's declarations in prior cases. Reply at 5. In six declarations in cases dating back to 2012, Ferrer averred that Backpage.com enforced rules and screened ads to prevent improper content and regularly worked with law enforcement to identify and pursue persons who misused the website. *See* Second Grant Decl. ¶ 5 & Ex. D (example of Ferrer's declaration from *Backpage.com, LLC v. Dart*, No. 1:15-cv-06340 (N.D. Ill.)).

   In this new argument, the government asserted that DWT had "made clear … its strategy … to impeach Ferrer by pointing to" his prior statements under oath directly contradicting the statements in his guilty pleas. Reply at 5. This, the government says, presents the possibility that "defense counsel could become a fact witness midway through trial" because DWT worked with Ferrer in preparing and submitting the prior declarations. *Id.* at 6. This argument is also wrong on the facts and the law.

   First, the pleadings from other cases the government cites do not state or suggest any "DWT strategy" to testify against Ferrer.[3] They instead state the obvious point that

---

[3] The pleadings the government cites come from two cases in which parties in civil cases have brought motions for sanctions against the Medalist parties and DWT on the premise that Ferrer's assertions in his plea agreements should be charged to Larkin, Lacey, the other Medalist parties, and DWT. These motions are improper for several reasons, not the least of which being that courts have long recognized that guilty pleas such as Ferrer's, in which a party seeks to curry favor or leniency, are "inherently unreliable," *United States v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018), and are not even admissible against other parties, *United States v. Werme*, 939 F.2d 108, 113 (3d Cir. 1991). Also, as discussed below (*see* Section III.C), it appears that the government

5

"Ferrer's statements in … his negotiated plea agreements are inconsistent with his prior sworn testimony … and he will have to answer for the contradictions …." Reply Ex. D at 13.  That Ferrer will face challenges and cross-examination about his contradictions can hardly be a surprise to the government.

Also, the government cannot create an attorney-witness issue by asserting that Ferrer might try to avoid his sworn testimony by attacking DWT, as Ferrer's Declaration belatedly provided by the government seeks to do.  Ferrer Decl. ¶ 18 (asserting Ferrer had "a few hours" to review one or more of his prior declarations but not asserting that the declarations were in any way inaccurate).  The government could not even call DWT attorneys to testify on this premise—doing so would violate every provision of RPC 3.8(e).[4]  As the Arizona Supreme Court has explained, the advocate-witness rule cannot be used to disqualify opposing counsel for "tactical reasons" and efforts such as the government's new argument "will not be tolerated." *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 105, 624 P.2d 296 (1981).[5]

---

has coordinated with counsel in these cases to pursue and prejudice Defendants and their representation by DWT.

[4] RPC 3.8(e) provides that a prosecutor may not subpoena a lawyer to testify in a criminal proceeding unless "(1) the information sought is not protected from disclosure by any applicable privilege; (2) the evidence sought is essential to the successful completion of [the] prosecution; and (3) there is no other feasible alternative to obtain the information."  Ferrer's dealings with DWT about his many prior declarations are privileged communications, which the government has now invaded by obtaining and providing the belated Ferrer Declaration.  Also, the government can make no showing that testimony of DWT is "essential" to the government's prosecution and unobtainable except by calling attorneys to testify.  Rather, the government's tack apparently is that if Ferrer were to testify that he felt rushed in executing some prior declaration, that would induce DWT attorneys to testify that any such assertion is baseless.  This is a far cry from showing that counsel would be necessary—much less essential—witnesses.

[5] The Arizona Supreme Court similarly held that a disqualification motion based on a party's attempt to call opposing counsel as a witness "must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client."  128 Ariz. at 105; *accord Gen. Life Ins. Co. v. Sup. Court*, 149 Ariz. 332, 335, 718 P.2d 985, 988 (1986).

6

***4. Government's Attempts to Mischaracterize the Joint Representation Agreements.*** As noted, the government all but completely ignored the joint representation agreements in its Disqualification Motion. For the first time in its reply, the government offered a host of arguments to mischaracterize and try to avoid the joint representation agreements. The government quoted Ferrer's characterization of one sentence of one of the agreements to claim that DWT supposedly was required to withdraw from representing Messrs. Larkin and Lacey if Ferrer objected. *See* Reply at 7 (citing Doc. 118, Ex. A at 1 n.3 (letter from Ferrer). In fact, this flatly contradicts the joint representation agreements and their express provisions, by which Ferrer waived conflicts and any basis to seek to disqualify DWT from representing Larkin and Lacey if he should withdraw from the joint representation. *Compare id. with* Grant Decl. ¶¶ 12, 16-20. More generally, throughout his declaration (sponsored and belatedly submitted by the government), Ferrer purports to offer his "understandings" about DWT's joint representation under the parties' agreements, in each case contradicting the actual terms of the agreements. *See, e.g.*, Ferrer Decl. ¶¶ 26, 40, 41, 42, 43; *see also id.* ¶¶ 20, 22, 35 (offering Ferrer's beliefs and purported intent, also contrary to the agreements' terms).

The government next tried to suggest it is somehow significant that DWT was not a signatory to the Common Interest/Litigation Management Agreement ("CI/LM Agreement") that Ferrer executed. Reply at 7. But that is irrelevant, because the agreement was between (and bound) Ferrer, Larkin, Lacey and all their respective companies, specifically with regard to retaining and managing counsel, waiving conflicts, and precluding any effort to seek disqualification of joint counsel. *See* Ferrer Decl. ¶ 33 (Ferrer's admission that the CI/LM Agreement provided that the Medalist parties would manage counsel and litigation).

***5. Ferrer's Dissembling About Accepting the Joint Representation Agreements.*** The government further contended in its new reply arguments that there are "serious questions whether Ferrer's decision[s] to agree" to the joint representation agreements "can be characterized as '"informed consent."'" Reply at 8. In this regard, the

7

1  government offered Mr. Ferrer's declaration in which he admitted that he executed the
2  CI/LM Agreement but says that this was in connection with other agreements (to
3  restructure and ease debt obligations for his purchase of the website), and this was
4  "stressful" and he felt "rushed."[6]  Ferrer Decl. ¶¶ 28-32.  Inasmuch as Ferrer has
5  acknowledged that he does not seek to disqualify DWT—and admits he cannot do so—
6  the government cannot make some hinted allusion of duress regarding the agreements he
7  does not deny or contest, so the government can pursue disqualification instead.

In a similar vein, the government also asserted for the first time on reply that Ferrer says he did not consult other counsel in entering into the joint representation agreements and he was not advised to do so.  Reply at 8; *see* Ferrer Decl. ¶¶ 26, 36-37.  However, the agreements expressly stated that Ferrer and all parties were separately represented and had full opportunity to consult with their own counsel about entering into the agreements.  *See* Grant Decl. ¶¶ 10, 20, 22, 23 & Exs. A, B, C.  Ferrer had his own personal counsel, including Ms. Clarence, who represented him from September 2016 onward and signed the JDA.  *Id.* ¶¶ 21-23 & Ex. C; *see also Welch v. Paicos*, 26 F. Supp. 2d 244, 248-49 (D. Mass. 1998) ("With one distinguishable exception, we find no cases where consent of a former client, represented at the time by independent counsel, was held insufficient [to waive conflicts] under Rule 1.9.").

**6.  *Ferrer's Privilege Waivers.*** The government's Disqualification Motion made no mention of the fact that, in the proffer agreements Ferrer previously executed, he purported to waive all privileges for himself and Backpage.com (to the extent he could waive such privileges).  *See* Opp. at 9-10; Grant Decl. ¶¶ 34-36 & Exs. J, K.  Defendants pointed to this as showing there was no basis for Ferrer to claim that his confidences would be improperly disclosed if DWT continued to represent Larkin and Lacey.  Opp. at 18-20.  The government acknowledged that Ferrer's second proffer agreement—in which he "waive[d] all claims of attorney-client privilege, whether in his personal or

---

[6] DWT did not draft the CI/LM Agreement and had no role in the negotiation or execution of the agreement among the parties.

8

official capacity as the [CEO] of Backpage.com, LLC"—was not "a model of clarity." Doc. 192, at 8.  But the government insisted that, although the proffer's terms indicated Ferrer waived all privilege claims in his "personal capacity," it was "not meant to apply to attorneys and law firms that represented Ferrer in a personal capacity." *Id.*  Implicitly recognizing this oxymoron, the government added another new fact argument on reply, asserting that Ferrer agreed to disclose his communications with personal counsel only "*if asked to do so*," and, the government says, "[t]his topic … has never been broached during Ferrer's proffer sessions." *Id.* (emphasis in original).  Defendants asked for disclosure of what Ferrer actually said and the information he has provided, but the government has refused to respond.  Defendants have further requested this information in two motions pending before the Court.  *See* Docs. 202, 235, 324.

      **C.**      **The Government Has Taken Numerous Other Actions to Prejudice Defendants and Their Ability to Defend this Case.**

In the months since the government brought charges against Defendants, it has pursued a number of other actions, here and elsewhere, aimed at inhibiting or precluding Defendants' ability to defend.  The following summary is provided to give the Court an understanding of the context for motions pending before the Court and how the government's actions pertain to the motions.

*1. The Government's Seizures of Defendants' Assets.*  The government has obtained scores of civil seizure warrants in the Central District of California for bank and financial accounts of Defendants and their families, instituted overlapping administrative forfeiture proceedings, and encumbered Defendants' homes and other real property by filing *lis pendens*.  Second Grant Decl. ¶ 6.  Defendants have filed a motion in the U.S. District Court for the Central District of California challenging the seizures and seeking to vacate them on the grounds that they violate the First, Fourth, and Fifth Amendments.  *In re Seizure of Funds Held in Republic Bank of Arizona Account(s) xxxx1889, etc.*, No. CV18-6742-RGK.  That motion is fully briefed, and Defendants anticipate a decision from the court shortly.  Second Grant Decl. ¶ 6.

9

***2. The Government's Seizure of Retainer Funds.*** Although contrary to DOJ policy, the government also seized a retainer held by DWT, thus depriving Messrs. Larkin and Lacey and the other Medalist parties of funds expressly intended to cover defense costs in this action and for more than a dozen pending civil cases. *Id.* ¶ 7. The government has also threatened to seize retainer funds held by other Defendants' counsel. *Id.*

At the same time, the government has allowed counsel for Ferrer, Backpage.com and his other companies to continue to hold retainers they have and to use the funds for representation in this case and the civil cases. *See* Preliminary Order of Forfeiture, *United States v. Ferrer*, No. CR-18-00464-001-PHX-DJH, ¶ D, at 12-13; ¶ A.(1) at 13 (Doc. 23); Preliminary Order of Forfeiture, *United States v. Backpage.com LLC, et al.*, No. CR-18-00465-PHX-DJH, ¶ D.10-D.13, at 17; ¶ A.(1) at 23 (Doc. 22).[7] In short, the government is allowing Ferrer and Backpage.com funds to pay their attorneys for asserting challenges to Defendants here and in the civil cases, while taking steps to foreclose Defendants from funding their defenses.

***3. The Government's Apparent Coordination with Backpage.com and Ferrer.*** By all appearances, the government has been coordinating with Ferrer (and Backpage.com) to attack Defendants and their counsel not only here but in the pending civil cases. For example, shortly after DWT indicated it would withdraw from representing Backpage.com and related parties in the civil cases, Ferrer's counsel (Ms. Clarence) sent unsolicited letters to fifteen courts handling the cases, vaguely objecting to DWT's continued representation of the Medalist parties. Second Grant Decl. ¶ 8. However, Backpage.com and Ferrer did not object to DWT's withdrawal in these cases

---

[7] The preliminary forfeiture orders state: "With respect to the accounts listed in Section D [the retainers], the accounts shall not be seized at this time. Rather, the funds currently on deposit in the listed accounts shall remain under the control of counsel and may be withdrawn by counsel in such amounts as may be necessary to defray the cost of any legal services provided in connection with the instant case or any related civil or criminal proceeding." *Ferrer* Order at 13 (Doc. 23).

10

and did not move to disqualify DWT.  The courts largely ignored the unsolicited letters, permitting DWT's withdrawal from representation of the Backpage.com parties.  *Id.* One exception was the Washington State trial court that *sua sponte* disqualified DWT and whose order was stayed by the court of appeals (as discussed above).  In another case in the U.S. District Court for the District of Massachusetts, the court considered the putative conflict issues and, after reviewing the joint representation agreements, permitted DWT's continued representation of the Medalist parties.  *Jane Doe No. 1 v. Backpage.com, LLC*, No. 17-11069-LTS (Doc. 80).  *See* Second Grant Decl. ¶ 9 & Ex. E.

Additionally, before the government's seizure of DWT's retainer account, the Backpage.com parties pressed DWT to return all retainer funds (notwithstanding that the funds were meant for the use of all parties to the joint representation agreements).  *Id.* ¶ 10.  Backpage.com's counsel also raised this issue in the civil cases, but courts recognized it had no place in the cases involving individual plaintiffs' claims against Backpage.com.  *Id.*  More important for present purposes, the Backpage.com parties acknowledged they were pursuing DWT for the retainer *in coordination with the government*.  *See id.* & Ex. F (Backpage.com parties' pleading in the *R.O.* case in Washington, asserting that they sought return of the DWT retainer funds "[a]s part of their agreement to cooperate in the federal and state criminal cases").

This raises serious concerns about the government's misuse of separate ancillary proceedings to prejudice Defendants' ability to defend the criminal charges.  *See United States v. Stein*, 541 F.3d 130 (2d Cir. 2008) (affirming dismissal of indictment where government interfered with attorneys' fee advancement to corporate employees, effectively empowering prosecutors to determine which employees would be entitled to paid counsel and which would be cut off).

***4. The Government's Apparent Coordination with Plaintiffs' Counsel.***
Defendants also have strong reason to believe the government has been working with counsel representing plaintiffs in civil cases to assert challenges against the Medalist

11

parties. Plaintiffs' counsel have met with government counsel, they have obviously supplied information to the government about the *R.O.* case and rulings, and they previously worked with the government to provide confidential documents from a prior civil case. Second Grant Decl. ¶ 11.

The government's apparent use of the civil cases to affect the criminal case in this Court would violate 18 U.S.C. 3509(k). Section 3509(k) provides that any civil action for child exploitation or injury arising out of the same occurrences as a pending criminal action "shall be stayed until the end of all phases of the criminal action and *any mention of the civil action during the criminal proceeding is prohibited.*" *Id.* (emphasis added).[8] Here, it appears the government has worked with Backpage.com and plaintiffs' counsel in the civil cases to manufacture rulings prejudicial to Defendants, and then has not merely mentioned the civil proceedings, but has used them to attempt to influence rulings in this court. *See* Reply at 2-3 (referencing *R.O.* court's *sua sponte* disqualification ruling).

This is a central reason for Defendants' request that the Court compel disclosures from the government about its communications and dealings with Ferrer, Backpage.com, their counsel, and plaintiffs' counsel. *See* Doc. 235, 324. Such communications obviously are not privileged. If the government has directly or indirectly used the civil cases as a platform to attack or prejudice Defendants, that is relevant and important information for this case.

**5.    *The Government's Effort to Eliminate All Privilege Protections.*** The government filed a motion to "resolve privilege issues," asserting it should be entitled to review any and all seized documents and talk with Ferrer about any and all attorney-client communications. Defendants showed in response that this directly contradicted

---

[8] Notably, Backpage.com recently invoked section 3509(k) to seek stays in civil cases in Florida and Texas, in motions rather obviously written by the government. Second Grant Decl. ¶ 11.

the privilege protections held and retained by the parties, which Ferrer could not waive. *See* Doc. 235.

**6.  The Government's Production of Voluminous Documents with No Identification of Brady/Giglio Materials.**  The government has produced some 10 million pages of documents to Defendants (vast portions of which have no apparent relevance to this case) with no meaningful indexing and without identifying any exculpatory materials.  Defendants have moved the Court to require the government to specify *Brady/Giglio* materials, rather than forcing Defendants to search through the enormous haystack.  The government's seizures of defendants' assets undermines their ability to host, access, search, and catalogue this massive database of documents.  *See* Doc. 273, 310.

## IV.   CONCLUSION

Defendants respectfully request that the Court consider this Supplement in Connection with the Government's Disqualification Motion and other motions pending before the Court.

DATED this 3d day of October, 2018.

*s/*_____
Counsel for Michael Lacey and James Larkin

**CERTIFICATE OF SERVICE**

Kevin Rapp
United States Attorney's Office
District of Arizona
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408

Reginald E. Jones
Trial Attorney
United States Department of Justice
Child Exploitation and Obscenity Section
1400 New York Avenue, NW
Washington, DC 20530

By:_____/