**WO**

1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF ARIZONA

8

United States of America,                    )        No.  CV-18-00422-PHX-SPL

9                                             )
                                              )
10                          Plaintiff,         )        **ORDER**
        vs.                                   )
11                                             )
                                              )
12      Michael Lacey, et al.,                 )
                                              )
13                          Defendants.        )
                                              )
14      _____   )

15          Before the Court is Defendant Andrew Padilla's ("Padilla") Motion for Itemization

16   of *Brady/Giglio* Material (the "Motion").[1]  (Doc. 273)  The Motion was fully briefed on

17   September 18, 2018, and the Court heard oral argument at a hearing on October 5, 2018.

18   For the reasons set forth below, the Motion is denied.

19   **I.      Background**

20          On March 28, 2018, a federal grand jury returned a ninety-three count indictment

21   against several Defendants, including Padilla, alleging that the Defendants engaged in

22   various crimes related to the operation of the website Backpage.com, including conspiracy,

23   facilitating prostitution, and money laundering.   (Doc. 3)   The charges against the

24   Defendants were based on their work at Backpage.com ("Backpage").  (Doc. 273 at 2)

25
26

27          [1] The Court notes that the following Defendants have filed a joinder to the Motion:
     Joye Vaught (Doc. 275), Scott Spear (Doc. 276), James Larkin (Doc. 277), Michael Lacey
28   (Doc. 278), and John Brunst (Doc. 279).   The Court also notes that Joye Vaugt filed a
     joinder to Andrew Padilla's reply. (Doc. 318)

Padilla alleges that the Government began its investigation into Backpage approximately 5 years ago. (Doc. 273 at 2)  On May 29, 2018, the Government disclosed to defense counsel two external hard drives of information, which the Government acknowledges contains approximately 10.4 million documents. (Doc. 273 at 2; Doc. 294 at 5)  The Court held a status conference on April 30, 2018, at which all parties present agreed to this form of discovery disclosure. (Doc. 294 at 4)

On August 20, 2018, Padilla filed the Motion seeking an order from the Court requiring the Government to produce an itemized list of the exculpatory documents present in the discovery provided to the Defendants. (Doc. 273 at 5)  The Government has declined to provide the Defendants a list of the *Brady* material present in the discovery, arguing that the discovery at issue was produced in an industry-standard, searchable format within the time required by the Court. (Doc. 273 at 2, 4; Doc. 294 at 4–6)  The Government argues that *Brady* does not require it to parcel through discovery materials in order to separate and identify anything favorable or helpful to the defense. (Doc. 294 at 7)  In reply, Padilla argues that without itemization, the Defendants will not have equal access to discovery. (Doc. 310 at 6–7, 2, 8)  On October 5, 2018, the Court heard argument on the pleadings, and the arguments made by each party were taken under advisement.

**II.    Discussion**

The Government has limited discovery obligations.  Rule 16 of the Federal Rules of Criminal Procedure requires the Government to, upon a defendant's request, provide or allow the defendant access to documents and objects in the Government's possession. Under Rule 16, the Government must disclose any oral or written statements made by a defendant, the defendant's prior record, any items that are material to preparing the defense, items that the Government intends to use in its case-in-chief, and items that were obtained from or belong to the defendant. Fed. R.Crim. Pro. 16.

The due process clauses of the Fifth and Fourteenth Amendments to the Constitution, as interpreted by the United States Supreme Court in *Brady v. Maryland*, require the prosecution to learn of and disclose to the defense any exculpatory or

impeachment evidence favorable to the accused that is in the prosecution's possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  *Brady* places an affirmative duty on the prosecutor to seek out information in the government's possession that is favorable to the defendant; here, the Government has the duty to affirmatively review its discovery materials in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching materials. *United States v. W. R. Grace*, 401 F. Supp. 2d 1069, 1075–76 (D. Mont. 2005); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Price*, 566 F.3d 900, 908–909 (9th Cir. 2009).  *Giglio* requires the Government to disclose impeachment evidence, including all promises, inducements, or threats made to a witness in order to gain the cooperation of that witness in the investigation or prosecution of the defendant. *Giglio v. United States*, 405 U.S. 150, 154 (1972). However, the Government has no obligation to "single out" particular pieces of exculpatory evidence that are beneficial to the Defendants. *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011).

It is well settled that courts have the discretion to order the Government to identify *Brady* material for the defense as a matter of case management and fairness. *United States v. Salyer*, 2010 WL 3036444, at *2 (E.D. Cal. Aug. 2, 2010) (*citing W R Grace*, 526 F.3d at 509–510).  This is so even though there is no direct obligation for the Government to identify or itemize Brady material for the defense. *Rhoades v. Henry*, 638 F.3d at 1039 (stating that there is no authority for the proposition that the government's Brady obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over).  When deciding whether itemization of Brady material is required in circumstances of voluminous discovery, courts have held that the Government meets its *Brady* obligations when it provides discovery materials in a searchable electronic format with indices describing the documents contained therein. *W. R. Grace*, 401 F. Supp. 2d at 1080; *United States v. Weaver*, 992 F. Supp. 2d 152, 156 (E.D.N.Y. 2014). Courts have also considered the relative position of the defendant requesting identification of *Brady* material, such as (i) a defendant's access to counsel, (ii)

whether the defendant is incarcerated, (iii) a defendant's access to resources, (iv) a defendant's ability to participate in the preparation of his own defense, and (v) whether the interests of multiple defendants are aligned.  *United States v. AU Optronics Corp.*, 2011 WL 6778520, at 2 (N.D. Cal. Dec. 23, 2011); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 456 (S.D.N.Y. 2011).

Neither Padilla nor the Government points the Court to controlling precedent on the issue of whether the Court should require the Government to identify Brady material for the Defendants.  However, based on the aforementioned factors considered by other courts, the Court finds that the Government has met its burden of disclosure and should not have to take the additional step of itemizing *Brady* materials for the Defendants.  The Government states that it has provided defense counsel with two hard drives of discovery, amounting to approximately 10.4 million pages of documents, in searchable electronic format.  (Doc. 294 at 5)  The Government also (i) provided the Defendants with indices with descriptions and bates numbers for the documents, (ii) provided the Defendants with a subset of "hot" documents related to the allegations in the indictment, (iii) directed the Defendants to the specific Backpage.com ads referenced in the indictment, and (iv) provided access to a Department of Justice discovery specialist to assist the Defendants with any technical questions. (Doc. 294 at 1–2)  The Court finds that the method by which discovery was produced and the additional amenities provided to the Defendants, along with the fact that trial is at least 12 months away, weighs against the Court requiring the Government to take the additional step of itemizing *Brady* and *Giglio* material for the Defendants.

Padilla relies heavily on the *Salyer* case to argue that voluminous discovery requires itemization of *Brady* material from the Government. *United States v. Salyer,* 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010).  In *Salyer*, the Government submitted multiple gigabytes of electronic information, consisting of millions of pages of documentary information, to the defendant without identifying any *Brady* materials. *Id.* at 3.  In an unreported opinion, the U.S. District Court for the Eastern District of California upheld its

order requiring the Government to identify *Brady* and *Giglio* material for the defense. *Id.* at 8.  However, the Court finds that this case is distinguishable from *Salyer* because the defendant in *Salyer* was incarcerated and without meaningful access to counsel or the voluminous discovery provided by the Government. *Id.* at 7 (identifying the defendant as "a singular, individual defendant, who is detained in jail pending trial, and who is represented by a relatively small defense team," without "access to voluntary corporate assistance in attempting to find the documents needed by the defense," and "little practical ability in the jail setting to be of much assistance in the search as he can do no document review, either hard copy or electronically, absent the physical presence of counsel in the jail.")  The circumstances present in *Salyer* are vastly different from this case, as none of the Defendants are incarcerated and each of them is zealously represented by counsel with seemingly unlimited access to legal resources.

Padilla's reliance on the *U.S. v. Hsia* precedent from the U.S. District Court for the District Columbia is also misplaced because *Hsia* was a traditional paper case in which the defendant was provided with approximately 600,000 hard-copy documents. *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998).  The method of disclosure in *Hsia* was logistically distinguishable from the searchable electronic discovery provided to the Defendants in this case.  Finally, the decision in *U.S. v. Cutting* in the U.S. District Court for the Northern District of California is distinguishable because there is no evidence that the Government's production of discovery in this case has had any issues that would impede the Defendants' ability to search the documents provided in discovery. *United States v. Cutting*, 2017 WL 132403, at *10 (N.D. Cal. Jan. 12, 2017).  Accordingly, the Court does not find the *Salyer*, *Hsia*, or *Cutting* precedents controlling or persuasive in this case.

Because the Government is under no general obligation to identify *Brady* or *Giglio* material within voluminous discovery disclosure and Padilla has failed to persuade the Court that an exception to this general rule is warranted here, the Motion is denied.  However, the Court notes that at the October 5th hearing the Government stipulated that it

will turn over any *Brady/Giglio* material that it comes across in the future to the Defendants within 10 days.  The Court implores the Government to abide by this stipulation, without an order from the Court.

Accordingly,

**IT IS ORDERED**:

That Defendant's Motion for Itemization of *Brady/Giglio* Material (Doc. 273) is denied.

Dated this 15th day of October, 2018.


Honorable Steven P. Logan
United States District Judge

6