**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Michael Lacey, et al.,<br><br>　　　　　Defendants. | No. CR-18-00422-001-PHX-SPL<br><br>**ORDER** |

On June 14, 2018, the Government filed a motion (the "Motion") to resolve certain attorney-client privilege issues. (Doc. 195)  In response, Defendants Michael Lacey ("Lacey") and James Larkin ("Larkin") filed a cross-motion (the "Cross-Motion") to prohibit the relief sought in the Motion and seek discovery. (Doc. 235)  The Motion was fully briefed on August 17, 2018, and the Cross-Motion was fully briefed on September 27, 2018.  The Court heard oral argument on the Motion and Cross-Motion at a hearing on October 5, 2018.  For the reasons set forth below, the Motion is denied, and the Cross-Motion is granted in part and denied in part.

**I.    Background**

On March 28, 2018, a federal grand jury returned a ninety-three count indictment against several Defendants, including Lacey and Larkin, alleging that the Defendants engaged in various crimes related to the operation of the website Backpage.com, including conspiracy, facilitating prostitution, and money laundering. (Doc. 3)  The indictment also

includes forfeiture allegations.[1] *Id.* On April 5, 2018, Carl Ferrer ("Ferrer"), the CEO of Backpage.com ("Backpage"), pleaded guilty to conspiracy to facilitate prostitution and money laundering. (Doc. 235 at 14; CR 18-464-SPL, Doc. 7) The charges against Ferrer were based on his work at Backpage. *Id.*

During the Government's investigation, it obtained search warrants for the email accounts of several Defendants and Backpage personnel. (Doc. 195 at 1) A filter team was put in place to identify any email communication that appeared to be privileged. (Doc. 195 at 2) The filter team conducted an initial review of the material seized by the search warrants, and it removed any items that it deemed privileged attorney-client communication from the discovery that was eventually turned over to the investigation team. *Id.*

The Government filed the Motion seeking an order stating that (i) Backpage's attorney-client privilege has been waived with respect to certain email communication obtained under the aforementioned search warrants, and (ii) the Government may have access to the communication that was classified as privileged by the filter team. (Doc. 195 at 13) In response to the Motion, the Defendants filed the Cross-Motion for an order (i) preventing the Government's review of any privileged communication, and (ii) requesting discovery of the Government's communication with Ferrer regarding the joint defense agreement and the attorney-client relationships of the Defendants. (Doc. 235 at 25, 28) In addition, several Defendants filed joinders to the Cross-Motion.[2] On October 5, 2018, the Court heard argument on the pleadings, and the arguments made by each party were taken under advisement.

**II.    Motion to Resolve Attorney-Client Privilege Issues**

The Government moves for an order from the Court allowing access to the privileged communication because (i) Ferrer, as CEO and 100% owner of Backpage,

---

[1] On July 25, 2018, the grand jury returned a 100-count superseding indictment against the Defendants. (Doc. 230)

[2] Defendants Scott Spears ("Spears") and John "Jed" Brunst ("Brunst") filed joinders to Lacey's response to the Motion. (Docs. 256, 252)

executed a written waiver of the company's attorney-client privilege; (ii) Judge David Campbell of the District of Arizona recently decided that Backpage had waived attorney-client privilege for several documents that were the subject of the warrants because the documents had been previously shared with third-party public relations firms and investment banks; and (iii) a Washington state court previously found that Backpage waived attorney client privilege on several similar communications when it proffered its in-house counsel, Elizabeth McDougall, as a Rule 30(b) witness for a deposition. (Doc. 195 4–9)  Each of these arguments will be addressed in turn.

### A. Standard of Review

The Court recognizes that there is little to no precedent that is directly applicable to the facts presented in this case, and many of the issues presented by the Motion and Cross-Motion require an exercise of the Court's discretion.  As a general matter, a party is not entitled to discovery of information protected by the attorney-client privilege. *Wharton v. Calderon*, 127 F.3d 1201, 1205 (9th Cir. 1997).  It is also well settled that the intentional public disclosure of privileged communication results in waiver of the attorney-client privilege and the work product immunity "as to all other communications on the same subject." *United States v. Kerr*, 2012 WL 2919450, at 1 (D. Ariz. July 17, 2012) (*citing Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir.2010)).  However, this waiver extends only "to communications about the matter actually disclosed." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992).  And, the Ninth Circuit has cautioned against finding a complete waiver of the attorney-client privilege by noting that "[t]he breadth of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling." *Hernandez,* 604 F.3d at 1101.

### B. Ferrer Waiver

The Government argues that it should have access to the privileged information at issue because Ferrer executed a written waiver of Backpage's attorney-client privilege as part of his cooperation with the Government. (Doc. 195 at 5)  In response, the Defendants argue that the terms of the joint defense agreement (the "JDA") between Lacey, Larkin and

Ferrer prevent Ferrer from waiving Backpage's attorney-client privilege. (Doc. 235 at 23) The Defendants also argue that the terms of the JDA prevent Ferrer from disclosing privileged information because the terms of the agreement state that privileged information cannot be disclosed by a party withdrawing from the JDA unless all parties to the agreement consent to the disclosure of the privileged information.[3] (Doc. 235 at 13)

The Court has already recognized the validity of the JDA in its earlier Order. (Doc. 338)  Ferrer is bound by the terms of the JDA, which he executed during his tenure with Backpage.  Based on the Court's *in camera* review of the JDA, the Court finds that the plain text of the JDA states that the materials shared between the parties to the JDA are to be protected from disclosure unless the disclosing party first obtains the written consent of all parties who may be entitled to a claim of privilege over the materials.  It is undisputed that Ferrer did not obtain the written consent of the listed parties to the JDA before executing his written waiver of attorney-client privilege.  On this basis, the Government's argument for access to the privileged communication fails.  The Government argues that there is a distinction between joint-defense privileges and attorney-client privileges, and that the communication at issue is not covered under the JDA. (Doc. 269 at 9)  However, the terms of the JDA demonstrate that the emails themselves are protected from disclosure. Ferrer's participation in the JDA not only established joint-defense privileges, but also set forth other protections for information and communication exchanged between parties to the agreement.  Therefore, for the limited purpose of addressing the Government's access to the privileged emails at issue, the Court finds that the Government cannot use Ferrer's written waiver of attorney-client privilege to circumvent the terms of the JDA.[4]

---

[3] Ferrer was party to a Common Interest and Litigation Management Agreement (the "JRA"), or joint representation agreement, the JDA. (Doc. 235 at 22)  The JRA was executed by Ferrer on behalf of several corporate entities including Backpage, and the JDA was executed by Ferrer, among other parties.  Neither party disputes the validity of the agreements. (Doc. 269 at 9)  Both the JRA and JDA were provided to the Court for *in camera* review.

[4] At this time, the Court declines to address the issue of whether Ferrer had the authority to waive Backpage's corporate attorney-client privilege based on the Defendants' argument that the attorney-client privilege was owned and later shared with Village Voice Media Holdings, LLC. (Doc. 235 at 21)

**C. Judge Campbell Order**

The Government argues that an order issued by Judge David Campbell of this District (the "Campbell Order") provides an independent basis to allow the Government to access the privileged emails because the terms of the Campbell Order found that Backpage waived the privileged status of certain emails through their disclosure to third parties. (Doc. 195-8) The Government argues that the email communication disclosed pursuant to the Campbell Order provides a subject-matter waiver for the remaining privileged communication at issue, which addresses the topics of ad moderation and acknowledgement of prostitution ads on the Backpage website. (Doc. 269 at 3) The Defendants argue that Judge Campbell's ruling only applied to certain email communication that had been shared with third parties, and that the Campbell Order should not be stretched to allow the broad subject-matter waiver of privilege requested by the Government. (Doc. 235 at 23–24)

The Court declines to construe the terms of the Campbell Order to allow a broad subject-matter privilege waiver of the contents of the remaining emails. It is clear to the Court that the terms of the Campbell Order were limited to determining whether Backpage waived attorney-client privilege in emails shared with specified third-party entities. The Government does not provide sufficient case law or argument to demonstrate how the email communication disclosed as a result of the Campbell Order requires the Court to allow the disclosure of the remaining privileged communication. The Government only vaguely mentions that the disclosed email communication contained "subjects" and then concludes that the privileged communication discusses the same subjects. This is insufficient for the Court to justify waiving attorney-client privilege for the remaining email communication.

Furthermore, the Court finds that the *Weil* and *Hernandez* cases cited by the Government are unavailing. (Doc. 195 at 12) In *Weil*, the party seeking to assert its attorney-client privilege unintentionally disclosed certain privileged information in discovery proceedings. *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 23 (9th Cir. 1981) In that same matter, opposing counsel then sought to construe the

inadvertently disclosed information as an implied privilege waiver of other communication discussing the same subjects. *Id.* The *Weil* Court reiterated that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Id.* at 24. In *Hernandez*, a defendant argued that it was entitled to disclosure of the files of a plaintiff's former attorney because the plaintiff included some of the former attorney's hand-written notes as evidence in support of his response to a motion for summary judgment. *Hernandez*, 604 F.3d at 1098. While the Ninth Circuit reiterated that voluntary disclosure of privileged communication constitutes a waiver of attorney-client privilege as to communication on the same subject, the Ninth Circuit ultimately held that a blanket waiver of attorney-client privilege was inappropriate because the plaintiff had only waived his privilege as to the certain subject addressed in the hand-written notes. *Hernandez,* 604 F. 3d at 1100–1101.

The Court finds that this case is distinguishable from the *Weil* and *Hernandez* cases for several reasons. First, the *Weil* and *Hernandez* cases were civil cases in which attorney-client privilege was inadvertently waived through direct disclosure to opposing counsel. The Government has not directed the Court to any precedent in which the order of a separate court in a separate case can be used to impose a waiver of other privileged communication in a criminal case.[5] Second, the *Weil* case addresses a subject-matter waiver in the context of inadvertent, voluntary disclosure, and not the differing context of disclosure pursuant to a court order. Without supporting precedent, the Court prefers to err on the side of protecting the privileged email communication. It is clear to the Court that the privileged emails at issue were separate from the emails released to the Government through the Campbell Order; thus, some privilege remains. The Court acknowledges the Government's argument that the Campbell Order found that the Defendants had "voluntarily" shared hundreds of emails with third parties. However, at this time, the Court

---

[5] The *Hernandez* case cites *U.S. v. Nobles* for the proposition that disclosing a privileged communication results in a waiver of privilege as to all other communication on the same subject. *United States v. Nobles*, 422 U.S. 225, 239 (1975). However, the Court finds that *Nobles* is also distinguishable because the subject-matter waiver at issue was the direct result of the defendant calling an agent of his attorney as a witness, thus waiving the defendant's attorney work-product privilege. *Nobles,* 422 U.S. at 239–40.

finds that the privilege waiver found in the Campbell Order is insufficient to persuade the Court that a subject-matter waiver of all related communication is appropriate in this case.

### D. Washington Order

Finally, the Government argues that a prior order from the Washington state superior court (the "Washington Order") weighs in favor of the Court granting the Motion. In the Washington matter, a court found that Backpage had waived its attorney-client privilege on several subjects when it proffered the testimony of its in-house counsel for a deposition. (Doc. 195 at 9)  However, the parties to the Washington case reached a settlement before any privileged communication was exchanged. (Doc. 235 at 19–20) The Defendants argue that the Washington Order does not support the Government's Motion because the settlement of that case eliminated the waiver found by the Washington state court and preserved the confidentiality of the privileged communication at issue. (Doc. 235 at 25)

The Court is not inclined to find that the Washington Order is sufficient to warrant disclosure of privileged communication in this case.  It is undisputed that no actual privileged information was disclosed pursuant to the Washington Order prior to settlement of the Washington case, and the Government does not provide any persuasive response to the Defendants' argument that no privileged information was actually disclosed pursuant to the Washington Order. (Doc. 269 at 16, stating that there is no case law on the issue) Accordingly, the Court finds that the Government's argument fails, and the Motion shall be denied.

### III.   Cross-Motion to Obtain Discovery and Address Privilege Issues

For the reasons stated above denying the Government's Motion, the Defendants' Cross-Motion will be granted in part to prohibit the Government from accessing the privileged email communication at issue. Next, the Court turns to the Defendants' discovery request in the Cross-Motion.

The Defendants seek discovery on the Government's communication with Ferrer about his dealings with counsel, which the Defendants assert are still protected under the

JDA. (Doc. 235 at 29)  The Defendants argue that discovery is necessary to see if the Defendants were prejudiced by any communication between Ferrer and the Government regarding the JDA. (Doc. 324 at 6–8)  In response, the Government argues it previously addressed the Defendants' arguments about disclosing its communication with Ferrer in a separate pleading, and additional disclosure is unnecessary. (Doc. 269 at 16)  In reply, the Defendants argue that there is evidence that Ferrer breached the JDA, and that the Government may have assisted him in doing so. (Doc. 324 at 6)  The Defendants also argue that the facts as set forth by the Government demonstrate that the Government is not effectively preserving privileged communication, and discovery is necessary to see what invasions of privilege rights have occurred. (Doc. 324 at 11)

At this time, the Court does not find that the requested discovery is necessary or helpful in this case. *Liew v. Breen*, 640 F.2d 1046, 1049 (9th Cir. 1981) (stating determinations of relevance in discovery matters are left to the trial court's discretion).  The Defendants argue that discovery is necessary to see if the Government has acted fairly and to see if there have been possible privilege violations. (Doc. 235 at 29)  The Court finds that the Defendants' concerns about fairness are unfounded at this point, and any order of discovery would unnecessarily distract from the trial process and cause an unscrupulous waste of resources. Accordingly,

**IT IS ORDERED**:

That Government's Motion to Resolve Attorney-Client Privilege Issues (Doc. 195) is denied; and

That Defendants' Cross-Motion to Obtain Discovery and Address Privilege Issues is granted in part to prohibit the relief sought in the Government's Motion and denied in part as to the requested discovery.

Dated this 18th day of October, 2018.

Honorable Steven P. Logan
United States District Judge