# EXHIBIT A

Case 2:18-mj-02875-DUTY *SEALED*   Document 2-1 *SEALED*   Filed 10/31/18   Page 1 of 3
Page ID #:422

# United States District Court

| CENTRAL | DISTRICT OF | CALIFORNIA |
|---------|-------------|------------|

**In the Matter of the Seizure of**
(Address or Brief description of property or premises to be seized)

**AMENDED
SEIZURE WARRANT**

JP MORGAN CHASE BANK FUNDS: UP TO AND
INCLUDING $10,000 HELD IN ACCOUNT
#211909285; UP TO AND INCLUDING $100,000 HELD
IN ACCOUNT #851844381; UP TO AND INCLUDING
$250,000 HELD IN ACCOUNT #100079698; AND UP
TO AND INCLUDING $100,000 HELD IN ACCOUNT
#616275397

**CASE NUMBER:**  2:18-MJ-2875

TO:    United States Postal Service   (USPIS) and any Authorized Officer of the United States, Affidavit(s) having been made before
me by   POSTAL INSPECTOR LYNDON A. VERSOZA    who has reason to believe that in the Central District of California there is
now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

Up To And Including $10,000 in Bank Funds Held in JP Morgan Chase Account #211909285; Up To And
Including $100,000 in Bank Funds Held in JP Morgan Chase Account #851844381; Up To And Including
$250,000 in Bank Funds Held in JP Morgan Chase Account #100079698; And Up To And Including $100,000
in Bank Funds Held in JP Morgan Chase Account #616275397
**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under  18 U.S.C. § 981 (a)(1)(A) and (C)

**concerning a violation of Title   18    United States Code, Sections  1952, 1956, and 1957.**

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the property so described is subject
to seizure and that grounds exist for the issuance of this seizure warrant.

   JP Morgan Chase   is ordered to deliver said funds immediately and forthwith upon presentation of this warrant to the law enforcement
agent serving the warrant, in the form of a cashier's check made payable to the United States Postal Service.

YOU ARE HEREBY COMMANDED to seize within 14 days the property specified, serving this warrant and making the seizure in the
daytime - 6:00 A.M. to 10:00 P.M., leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory
of the property seized and promptly return this warrant to the undersigned judicial officer as required by law.

| | |
|---|---|
| 10-31-18 @ 1:56 pm | Los Angeles, California |
| **Date and Time Issued** | **City and State** |
| **Hon. ROZELLA A. OLIVER, U.S. Magistrate Judge** | |
| **Name and Title of Judicial Officer** | **Signature of Judicial Officer** |

**JOHN J. KUCERA/smb**

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
| INVENTORY MADE IN THE PRESENCE OF | | |

INVENTORY OF PROPERTY SEIZED PURSUANT TO THE WARRANT

## CERTIFICATION

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and will be returned through a filing with the Clerk's Office.*

*Date:* _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

# EXHIBIT B

Case 2:18-mj-02876-DUTY *SEALED*   Document 2-1 *SEALED*   Filed 10/31/18   Page 1 of 2
Page ID #:421

# United States District Court

_____CENTRAL_____   DISTRICT OF _____CALIFORNIA_____

**In the Matter of the Seizure of**
(Address or Brief description of property or premises to be seized)

UP TO AND INCLUDING $740,000.00 IN
BANK FUNDS HELD IN GRAND POINT
BANK ACCOUNT #2503985

**AMENDED**
**SEIZURE WARRANT**

**CASE NUMBER:**  2:18-MJ-2876

TO: ___United States Postal Service  (USPIS)__ and any Authorized Officer of the United States, Affidavit(s) having been made before me by __POSTAL INSPECTOR LYNDON A. VERSOZA__  who has reason to believe that in the District of Arizona there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

Up To and Including $740,000.00 in Bank Funds Held in Grand Point Bank Account #2503985

**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under  18 U.S.C. § 981 (a)(1)(A) and (C)

**concerning a violation of Title __18__  United States Code, Sections _1952, 1956, and 1957_.**

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant.

__Grand Point Bank__  is ordered to deliver said funds immediately and forthwith upon presentation of this warrant to the law enforcement agent serving the warrant, in the form of a cashier's check made payable to the United States Marshals Service.

YOU ARE HEREBY COMMANDED to seize within 14 days the property specified, serving this warrant and making the seizure in the daytime - 6:00 A.M. to 10:00 P.M., leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to the undersigned judicial officer as required by law.

__10-31-18 @ 1:56pm__
**Date and Time Issued**

__Los Angeles, California__
**City and State**

__Hon. ROZELLA A. OLIVER, U.S. Magistrate Judge__
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

**JOHN J. KUCERA/smb**

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PROPERTY SEIZED PURSUANT TO THE WARRANT

## CERTIFICATION

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and will be returned through a filing with the Clerk's Office.*

Date: _____          _____

*Executing Officer's Signature*

_____

*Printed Name and Title*

# EXHIBIT C

**Barbara Polowetz**

| | |
|---|---|
| **Subject:** | FW: Wiring Information |
| **Attachments:** | 36B GrandPoint.pdf; 36A 37 38 40 JPMC.PDF |

**From:** Reid, Patrick (CRM) <Patrick.Reid@usdoj.gov>
**Sent:** Wednesday, November 07, 2018 3:21 PM
**To:** Michael Piccarreta <mlp@pd-law.com>
**Subject:** Wiring Information

Michael,

Thank you for taking the time to speak with me earlier. Please see attached the warrant we discussed. As you can see, it would normally be served on the designated banks, Grand Point and Chase Banks, to execute. However, we would like to minimize the impact of this to your firm's operation, so we would prefer to do a wire-in-lieu of execution, where your office would transfer the funds to the United States. The warrant pertaining to Piccarreta Davis Keenan Fidel authorizes the seizure of up to $10,000.00 from the firm's IOLTA account at JP Morgan Chase Bank, account number ending in -9285. A separate warrant authorizes the seizure of up to $740,000.00 from the firm's IOLTA account at Grand Point Bank, account number ending in -3985. As I mentioned, if you have earned fees that have not yet been moved from the IOLTA account to an operating account, please send me bills that reflect those earned fees (redacted of any attorney-client privileged information), so that we can do our due diligence to confirm that those funds should be excluded from seizure.

The wire instructions are below:

## Wire Transfer Information

Below is the banking information to have funds wired to USPS. Prior to the wire transfer, provide the following information (1) expected amount; (2) date the wire is to occur; and (3) the name of the bank wiring the funds to the USPIS, Asset Forfeiture Unit. This information will be provided to USPS Corporate Treasury to identify and record the wire transfer.

1. Name of the Account: ████████████
2. Account Number: ████████████
3. Name of the Bank: ████████████
4. ABA number: ████████████
5. Point of contact at the bank: ████████████
6. SWIFT Code: ████████ – For International

You can send me the information requested in the instructions above and I will pass those on to USPIS. Any amounts not **received** by wire-in-lieu of execution or deducted based on received and approved billing statements by November 13th at 4pm EST will be seized pursuant to the warrant. If something comes up and you are unable to provide billing information and/or a wire, we will of course make efforts to return untainted

funds after execution, but will not extend the deadline. Again, we hope to avoid this potential disruption to your firm's operation.

Please do not hesitate to call me with any questions. Since Amanda Wick will be largely out of the office up to the time of execution, I have taken over as point of contact. We appreciate your time and assistance in this matter.

Sincerely,
Patrick

Patrick D. Reid
Trial Attorney, Money Laundering and Forfeiture Unit
Money Laundering and Asset Recovery Section (MLARS)
U.S. Department of Justice
1400 New York Avenue NW, 10 th Floor
Washington, D.C.  20005
(202) 307-1390
(202) 616-2547 (fax)

**CONFIDENTIALITY NOTICE**:  This communication with its contents and attachments, if any, may contain confidential, law enforcement sensitive, privileged attorney/client communications or work products, and is not subject to disclosure.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use, or disclosure is prohibited.  If you believe that you have received this communication in error, please notify the sender immediately and permanently delete the email, any attachments, and all copies from your computer.

U.S. Dept. of Justice, Washington, D.C. 20004
(202) 514-2842
(202) 597-0435 (cell)
(202) 514-5522 (fax)

*CONFIDENTIALITY NOTICE*:  This communication with its contents and attachments, if any, may contain confidential, law enforcement sensitive, privileged attorney/client communications or work products, and is not subject to disclosure.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use, or disclosure is prohibited.  If you believe that you have received this communication in error, please notify the sender immediately and permanently delete the email, any attachments, and all copies from your computer.

**From:** Barbara Polowetz <bpolowetz@pd-law.com>
**Sent:** Wednesday, November 7, 2018 3:51 PM
**To:** Rapp, Kevin (USAAZ) <KRapp@usa.doj.gov>
**Cc:** Michael Piccarreta <mlp@pd-law.com>
**Subject:** Andrew Padilla: seizure warrants issued for IOLTA funds to defend Mr. Padilla / request for seizure affidavit

Kevin:

I just was advised by Patrick Reed of DOJ  that they've issued a seizure warrant for the IOLTA funds that can be used to defend Mr. Padilla in this criminal case. They are forwarding me the warrant. They indicated that at DOJ, the supervisors have strongly urged the Arizona prosecutors to disclose the seizure affidavit as soon as possible. I am requesting that the seizure affidavit be provided immediately so that I may review it in conjunction with the seizure warrant to determine what legal remedies in the forfeiture and/or the criminal case are appropriate.

Mike Piccarreta

Barbara Polowetz, Legal Assistant
PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Ste 1000, Tucson, AZ 85701
t 520.622.6900, ext. 137 | f 520-622-0521 | www.pd-law.com

## Barbara Polowetz

| | |
|---|---|
| **From:** | Barbara Polowetz |
| **Sent:** | Thursday, November 8, 2018 9:36 AM |
| **To:** | 'Amanda.Wick@usdoj.gov' |
| **Cc:** | Michael Piccarreta |
| **Subject:** | Padilla: seizure warrants issued for IOLTA funds to defend Mr. Padilla / request for seizure affidavit - response to Amanda from MLP |
| **Attachments:** | 36A 37 38 40 JPMC.PDF; 36B GrandPoint.pdf |

Amanda:

Thank you for your prompt response to my request for the search warrant affidavits. However, I am a little perplexed. When I reviewed the seizure warrant and matched them up the PDKF firm accounts, the $10,000 seizure warrant is from my operating account which contains nothing but earned fees from all of the law firm's cases. The second account named for $740,000 from the Grand Point bank account was closed approximately one year ago. The other named accounts do not belong to our law firm. We do have an IOLTA trust account which only contains unearned funds relating to Mr. Padilla. That account was segregated from our other trust account.

I, too, am not sure who "they" is. However, you may check with Patrick Reid as he is the source of that information and that information was not only provided to myself and Mr. Keenan who was present, but also to Steve Weiss who represents Ms. Vaught. However, as long as we receive the affidavit promptly, it is not important now who recommended it and who did not, only that we receive it. As you indicated, you anticipate having an answer today that should resolve that portion of the problem.

I am willing to stipulate to a deadline extension for the execution of the warrants since they have been served upon me. We do appreciate that you provided the warrants to us rather than serve the banks as it would cause disruption not only to our law firm but numerous clients. However, in the absence of a brief extension, we will need to address this issue with the court immediately due to the impact on Mr. Padilla's and Ms. Vaught's First, Fifth and Sixth Amendment rights.

We understand that the government is not attempting to seize earned fees that have been moved from the IOLTA prior to the receipt of the warrant. The law firm normally issues billings on the first business day of the month for work performed the previous month so regardless of the seizure warrant, no funds would be, nor now will they be, removed from the IOLTA account. In light of this recent development, I do not intend, without court or government approval, to transfer any funds from the Padilla IOLTA account until this issue is resolved.

Finally, I think the government should be aware by now that Mr. Padilla and Ms. Vaught do not have sufficient assets or income to defend themselves and thus if the government is successful in its seizure, they will be denied their counsel of choice and forced to undertake indigent representation. That will undoubtedly have an impact on the pending criminal proceedings.

After you review this email, please get back to me with your thoughts. In the interim, we will continue preparing our pleadings. Best wishes.

Mike Piccarreta

**From:** Wick, Amanda (CRM) <Amanda.Wick@usdoj.gov>
**Sent:** Wednesday, November 07, 2018 6:17 PM
**To:** Michael Piccarreta <mlp@pd-law.com>
**Cc:** Reid, Patrick (CRM) <Patrick.Reid@usdoj.gov>
**Subject:** RE: Andrew Padilla: seizure warrants issued for IOLTA funds to defend Mr. Padilla / request for seizure affidavit

Mike,

Kevin forwarded me your email so that I could address your concerns. First, it might help for me to clarify a few things as some of the information in your email isn't quite accurate. We actually obtained two seizure warrants for funds contained within two different IOLTA accounts, both held in the name of Piccarreta Davis Keenan Fidel PC. One (attached hereto as "36A 37 38 40 JPMC") is for $10,000 from a JP Morgan Chase bank account ending in -9285. The second (attached hereto as "36B Grand Point") is for $740,000 from a Grand Point bank account ending in -3985.

I'm not sure who the "they" is that you reference in your email below, but my supervisor at DOJ has told any counsel that inquired that this case is being prosecuted out of the District of Arizona and MLARS is assisting on asset recovery issues only. As a result, we would have to consult with the prosecutors in Arizona to confirm what the status of the criminal case was, whether discovery had been provided, whether the warrant was under seal and, if not, whether we could provide it upon request. Given that the warrant affidavit would likely be produced at some point during discovery, we didn't think the prosecutors in Arizona would object, but we needed to check with them before sending out the warrant affidavit. I anticipate having an answer on that tomorrow.

Finally, the warrant needs to be executed within 14 days, the deadline for which is Wednesday, November 14th. We give law firms the opportunity to wire funds to the United States, in lieu of serving the warrants on the banks, because we are trying to minimize any disruption the warrant could have on your IOLTA accounts. I'm sure Patrick told you that, often when we serve a seizure warrant on a bank to seize funds from an IOLTA account, the bank freezes the accounts entirely and sometimes more accounts than the ones listed in the warrant. Because of the adverse effects that can cause, we work very hard to coordinate with law firms to effectuate the turnover of the funds with as little impact on the firms as possible. However, some firms do decline to wire funds in lieu, and in that situation, we serve the warrants on the bank, as authorized by the court, prior to the 14th day.

To the extent a law firm has earned fees that have not been moved from the IOLTA to an operating account, we request that substantiating bills (redacted for attorney-client privilege) be submitted to us for due diligence review, and once reviewed, we subtract that amount from the seizure amount, as we are not seeking to seize earned fees.

Should you wish to make a Monsanto claim, we offer every defendant the opportunity to show that they are financially unable to pay for their defense without the funds we are seizing. Because of the timeliness of the warrant, we will be seizing the funds before the 14th, but if you can make a showing that your client has no other funds with which to pay for his defense, we are happy to review those materials and consider releasing some amount back to pay legal fees.

I hope that answers your questions, but if not, please do not hesitate to call me at my direct line below. Thank you for your time and assistance with this matter.

Sincerely,

**Amanda Schlager Wick**
Trial Attorney, Asset Forfeiture & Money Laundering Unit
Money Laundering & Asset Recovery Section (MLARS)
1400 New York Ave. NW, 10th Floor

# EXHIBIT D

Case 2:18-mj-02878-DUTY *SEALED*   Document 2-1 *SEALED*    Filed 10/31/18   Page 1 of 2
Page ID #:421

# United States District Court

_____CENTRAL_____   **DISTRICT OF** _____CALIFORNIA_____

**In the Matter of the Seizure of**
(Address or Brief description of property or premises to be seized)

UP TO AND INCLUDING $250,000.00 IN
BANK FUNDS HELD IN WESTERN
ALLIANCE ACCOUNT #8011386979

**AMENDED
SEIZURE WARRANT**

**CASE NUMBER:**   2:18-MJ-2878

TO:   _United States Postal Service   (USPIS)_  and any Authorized Officer of the United States, Affidavit(s) having been made before me by _POSTAL INSPECTOR LYNDON A. VERSOZA_  who has reason to believe that in the District of Arizona there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

Up To and Including $250,000.00 in Bank Funds Held in Western Alliance Account #8011386979

**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under  18 U.S.C. § 981 (a)(1)(A) and (C)

**concerning a violation of Title** _18_  **United States Code, Sections** _1952, 1956, and 1957_.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant.

_Western Alliance_  is ordered to deliver said funds immediately and forthwith upon presentation of this warrant to the law enforcement agent serving the warrant, in the form of a cashier's check made payable to the United States Postal Service.

YOU ARE HEREBY COMMANDED to seize within 14 days the property specified, serving this warrant and making the seizure in the daytime - 6:00 A.M. to 10:00 P.M., leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to the undersigned judicial officer as required by law.

_10-31-18 @ 1:56pm_
**Date and Time Issued**

_Los Angeles, California_
**City and State**

**Hon. ROZELLA A. OLIVER, U.S. Magistrate Judge**
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

**JOHN J. KUCERA/smb**

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PROPERTY SEIZED PURSUANT TO THE WARRANT

## CERTIFICATION

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and will be returned through a filing with the Clerk's Office.*

*Date:* _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

**Barbara Polowetz**

| | |
|---|---|
| **Subject:** | FW: Wiring Information |
| **Attachments:** | 42 Western Alliance.pdf |

**From:** Reid, Patrick (CRM) [mailto:Patrick.Reid@usdoj.gov]
**Sent:** Wednesday, November 07, 2018 2:09 PM
**To:** Steve Weiss <sweiss@karpweiss.com>
**Subject:** Wiring Information

Steve,

Thank you for taking the time to speak with me earlier. Please see attached the warrant we discussed. As you can see, it would normally be served on Western Alliance Bank to execute. However, we would like to minimize the impact of this to your firm's operation, so we would prefer to do a wire-in-lieu of execution, where your office would transfer the funds to the United States. As I mentioned, if you have earned fees that have not yet been moved from the IOLTA account to an operating account, please send me bills that reflect those earned fees (redacted of any attorney-client privileged information), so that we can do our due diligence to confirm that those funds should be excluded from seizure.

The wire instructions are the following:

## Wire Transfer Information

Below is the banking information to have funds wired to USPS.  Prior to the wire transfer, provide the following information (1) expected amount; (2) date the wire is to occur; and (3) the name of the bank wiring the funds to the USPIS, Asset Forfeiture Unit. This information will be provided to USPS Corporate Treasury to identify and record the wire transfer.

1. Name of the Account: ███████████████
2. Account Number: ████████
3. Name of the Bank: ████████████
4. ABA number: ███████
5. Point of contact at the bank: ████████████████████
6. SWIFT Code: ███████ – For International

You can send me the information requested in the instructions above and I will pass those on to USPIS. Any amounts not provided by wire-in-lieu of execution or deducted based on received and approved billing statements by November 13th at 4pm EST will be seized pursuant to the warrant. If something comes up and you are unable to provide billing information and/or a wire, we will of course make efforts to return untainted funds after execution, but will not extend the deadline. Again, we hope to avoid this potential disruption to your firm's operation.

Please do not hesitate to call me with any questions. We appreciate your time and assistance in this matter.

Sincerely,
Patrick

Patrick D. Reid
Trial Attorney, Money Laundering and Forfeiture Unit
Money Laundering and Asset Recovery Section (MLARS)
U.S. Department of Justice
1400 New York Avenue NW, 10th Floor
Washington, D.C.  20005
(202) 307-1390
(202) 616-2547 (fax)

*CONFIDENTIALITY NOTICE*:  This communication with its contents and attachments, if any, may contain confidential, law enforcement sensitive, privileged attorney/client communications or work products, and is not subject to disclosure.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use, or disclosure is prohibited.  If you believe that you have received this communication in error, please notify the sender immediately and permanently delete the email, any attachments, and all copies from your computer.

# EXHIBIT E



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:  (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:  (602) 514-7693 |
| Phoenix, AZ  85004-4408 | Direct Fax:  (602) 514-7450 |

May 18, 2018

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ  85701

<u>VIA EMAIL</u>

    Re: *Your Letter of May 7, 2018*

Dear Mike:

   During our meeting on May 4, I raised the government's concern that the funds Backpage.com, LLC ("Backpage") previously wired into your law firm's IOLTA account, apparently to pay for the future criminal defense of Andrew Padilla (the estimated amount of funds is $750,000), may be tainted and subject to forfeiture under federal law.  Due to the potential sensitivity of this issue, and in the hope of gaining an understanding of all of the relevant facts before pursuing any action, I asked if there were any indemnification agreements in place between Backpage and Mr. Padilla.  In response, on May 7, you provided a copy of Backpage's Amended and Restated Limited Liability Company Agreement ("Agreement").

   I have now had a chance to review the Agreement.  Unfortunately, it does not address all of my concerns.  As an initial matter, it is not clear to me that Mr. Padilla is even covered by the Agreement's indemnify provisions.  Section 9.1(a) of the Agreement requires Backpage to "defend and indemnify any Covered Person or Related Party" in certain lawsuits.  This language raises the question whether Mr. Padilla qualifies as a "Covered Person" or "Related Party."

   As for the term "Covered Person," section 1.1 of the Agreement states that it "means any of the following Persons: (i) any former, current or future Member, (ii) the Manager, or (iii) any former, current or future officer."  It doesn't appear to me that Mr. Padilla would fall into any of these three subcategories.  *First*, the term "Member" is defined by section 1.1 of the Agreement as "IC Holdings, LLC, a Delaware limited liability company."  Mr. Padilla is obviously not the same thing as IC Holdings LLC, so that definition doesn't fit.  *Second*, the term "Manager" is defined by section 1.1 of the Agreement as having "the meaning attributed to it in the Preamble," and the Preamble identifies the manager as "Carl Ferrer."  Mr. Padilla

May 18, 2018
Page 2 of 3

is not Carl Ferrer, so this definition doesn't fit, either. *Third*, and finally, the term "officer" is defined in section 3.6 of the Agreement as being limited to the subset of individuals who are formally "designated" by the Manager (*i.e.,* Carl Ferrer) to serve as officers. Here, although Mr. Padilla may have held certain supervisory responsibilities within Backpage, we don't believe he was ever formally designated as an officer of the company. If you have any documentation suggesting otherwise, we would appreciate a chance to review it.

Because Mr. Padilla does not, in our view, qualify as a "Covered Person," his remaining avenue for indemnification would be to qualify as a "Related Party." In our view, he doesn't seem to fall within this definition, either. Section 1.1 of the Agreement defines the term "Related Party" as "with respect to a Covered Person, any shareholder, officer, director, employee, member, manager or partner of a Covered Person or any Person for which the Covered Person serves in any of such capacities, as the case may be." Although it might seem, at first blush, that the inclusion of the term "employee" would be sufficient to cover Mr. Padilla, the analysis is more complicated than that. The only "employees" covered by this language are individuals employed by a "Covered Person." And as noted in the prior paragraph, the universe of individuals and entities who might qualify as "Covered Persons" under the Agreement are (1) IC Holdings LLC, (2) Carl Ferrer, and (3) any individuals who were formally designated by Mr. Ferrer to serve as officers of Backpage. It's my understanding that Mr. Padilla wasn't employed by any of these individuals and entities— instead, he was employed by Backpage.

This analysis of the coverage language of the Agreement also obscures a broader issue. The money that Backpage wired into your IOLTA account was, in our view, tainted and subject to forfeiture before it ever arrived. As you know, the Backpage entity has entered a guilty plea to the crime of conspiracy to commit money laundering (*see* CR 18-465-PHX-DJH). Additionally, the judge in the Central District of California who issued the seizure warrants in this case has previously agreed with the government's view that Backpage's account at 216887188—which is the account that was used to wire the funds into your IOLTA account—is tainted and that funds passing through that account are subject to forfeiture. It has been the law for many decades that a criminal defendant does not have a Sixth Amendment right to use tainted funds to pay for his defense. *See, e.g., Kaley v. United States*, 134 S.Ct. 1090, 1096-97 (2014) ("Even prior to conviction (or trial)—when the presumption of innocence still applies—the Government [may] constitutionally . . . freeze assets of an indicted defendant 'based on a finding of probable cause to believe that the property will ultimately be proved forfeitable.'") (citation omitted); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989) ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. . . . [T]he Government does not violate the Sixth Amendment if it seizes [criminal] proceeds and refuses to permit the defendant to use them to pay for his defense."); *id.* at 631 ("[T]here is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense."); *United States v. Monsanto*, 491 U.S. 600, 616 (1989) ("[I]f the Government may,

May 18, 2018
Page 3 of 3

post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial."). *See also Luis v. United States*, 136 S.Ct. 1083, 1090 (2016) (recognizing there are Sixth Amendment limitations on the pretrial seizure of untainted assets but reaffirming that "[t]he Government may well be able to freeze, perhaps to seize, assets of the . . . 'tainted' kind before trial").

These principles suggest to us that, regardless of the existence or applicability of any indemnification contract between Backpage and Mr. Padilla, the funds in your IOLTA account are tainted and subject to forfeiture. If you are aware of any case law suggesting that the presence of an indemnification contract alters this analysis, we would be very eager to review it—we have not found any.

After you have had a chance to consider, I would welcome the opportunity to discuss these matters further with you.

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney

KMR/zs

# EXHIBIT F

## PICCARRETA DAVIS KEENAN FIDEL PC
### LAWYERS

MICHAEL L. PICCARRETA
JEFFERSON KEENAN
LOUIS S. FIDEL

BARRY M. DAVIS
(1948-2016)

2 EAST CONGRESS STREET, SUITE 1000
TUCSON, ARIZONA 85701
(520) 622-6900
FAX (520) 622-0521
WWW.PD-LAW.COM

June 13, 2018

VIA EMAIL: Kevin.Rapp@usdoj.gov

Kevin Rapp, Esq.
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Ste. 1200
Phoenix, AZ 85004-4408

Re:     United States v. Lacey, et al.: Letter dated May 18, 2018

Dear Kevin:

I am writing in response to your letter of May 18, 2018, in which you express your "concerns" about funds wired to my law firm to pay defense costs for Andrew Padilla. As with many matters in this case, we see things differently, and I have a few concerns of my own. My firm has represented Andrew Padilla since early February 2017. We have invested considerable time and effort on the case, we have developed a strong relationship with Mr. Padilla, and we have obtained quite a bit of knowledge about the case and its deficiencies during this time. Mr. Padilla is presumed innocent and is entitled to his Fifth and Sixth Amendment rights to his day in court with counsel of his choice. The government's conduct, even in these discussions, is seriously impacting these rights. Kevin, I do not expect you to agree with my analysis. However, I am glad we can have a professional, civil relationship to discuss all of the potential issues from differing perspectives.

To begin with, Mr. Padilla and I do not believe that one penny of the assets of Backpage.com, LLC ("Backpage") is tainted[1]. Rather, we agree with the numerous courts that have found, time and time again, that there is no crime here. United States District Court Judge Richard A. Jones was correct five years ago when he noted "the novel vicarious liability theory the Government espouses" and "[t]he court is aware of no entity that has ever faced criminal liability in a case like this one." Order, January 17, 2013. In noting the difficulty of finding "a

---

[1] The discussion set forth here is by no means a complete or comprehensive analysis of the law and the facts in this case. It is just a partial view of these matters supporting our firm belief that the funds wired to my law firm are not subject to seizure or forfeiture.

PICCARRETA DAVIS KEENAN FIDEL PC

viable criminal case," *id.* at 17, Judge Jones made it clear that "[t]he Government's insistence that solicitation for prostitution and other unlawful acts do not merit First Amendment protection ignores the lawful solicitations that Backpage users make, even within the 'adult' category....Whatever unlawful services might be for sale on Backpage.com, the Government does the grand jury no favors by ignoring the lawful 'adult' ads on the site." *Id.* at 19-20.[2]

Of course, the Seventh Circuit Court of Appeals has also specifically recognized Backpage.com as "an avenue of expression of ideas and opinions" protected by the First Amendment, including its "classified ads for 'adult' services." *Backpage.com LLC v. Dart*, 807 F.3d 229, 230-31 (7th Cir. 2015). The court held that the county sheriff was "using the power of his office to threaten legal sanctions against the credit-card companies for facilitating future speech, and by doing so he is violating the First Amendment unless there is *no* constitutionally protected speech in the ads on Backpage's website -- and no one is claiming that." *Id.* at 231. In recognizing the First Amendment's protection for Backpage.com's adult section, the court used as an example the similar protections for print publications featuring such ads. "Even entities that know the information's content do not become liable for the sponsors' deeds. Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity?" *Id.* at 234 [quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)]. *Backpage.com v. Dart* cannot be dismissed as being decided on 47 U.S.C. § 230 grounds, a statute that you believe does not apply to a federal criminal prosecution. The opinion only mentions 47 U.S.C. § 230 briefly twice in passing and was decided on straight-forward First Amendment grounds. I am sure that the government is aware of the numerous other cases reaching the same or similar conclusions. These courts have reached these conclusions despite being fully aware of the authorities you have mentioned, holding that there's no First Amendment protection for "speech integral to criminal conduct." *See, e.g., United States v. Stevens*, 559 U.S. 460, 468 (2010) and *Pittsburgh Press Co. v.*

---

[2] It appears that, rather than confront this issue, the government simply moved the grand jury investigation and continued on in a different district which would involve a different United States District Court Judge.

2

PICCARRETA DAVIS KEENAN FIDEL PC

*Human Relations Commission*, 413 U.S. 376, 388 (1973).[3] These courts were also no doubt well aware of the Travel Act[4] and money laundering statutes.

I am mentioning the weight of this authority here not to change your mind, but to show exactly why Mr. Padilla and I do not believe that the funds wired to my law firm are tainted in any manner or subject to pretrial seizure or forfeiture. Based on the weight of this authority, Mr. Padilla and I believe that Backpage's revenues were legitimate. Nothing we have seen or heard in the reverse proffer, the Senate Permanent Subcommittee on Investigations Report,[5] or the 61-page speaking indictment has caused us to question those beliefs. Mr. Padilla and I both believe that he was engaged in lawful activity at a lawful business. Backpage had been involved in this activity for over a decade, withstanding all of these challenges to the legality of its operations. Backpage was, in fact, a spin off from the same sort of print ads that ran in the back of the Village Voice *for decades*. I have been unable to discover any state or federal criminal prosecution of a publisher of this type of "adult themed" print ads. There do not appear to be any such cases in which criminal charges were pursued in the state of Arizona. There is one decision discussing "an adult-oriented weekly publication" described as a "tabloid-style newspaper contain[ing] news, editorials, and photographs, but primarily consist[ing] of sexually oriented advertisements for adult bookstores, numerous 'escort' and 'model' services, and the like. Dozens of these ads contain photographs of partially nude and completely nude women posing in a variety of positions" and also contain "'strictly personal' classified ads for persons seeking various sexual encounters with others." *State v. Evenson*, 201 Ariz. 209, 211 (App. 2001). Despite noting that these ads were used by police in prostitution investigations, *id.* at n. 1, there was not even the slightest hint that the publisher could be criminally liable for anything, and there was no question that the publication was constitutionally protected by the First Amendment and Article 2, § 6 of the Arizona

---

[3] The government has also referred to: (a) two federal cases in which defendants (on vastly different facts) accepted guilty pleas and therefore, by definition, did not challenge the government's theory of prosecution meaning that there was no ruling in the government's favor on this issue by those courts; (b) a state supreme court ruling on an issue of federal law that has already been denounced as incorrect as a matter of federal law by a federal court of appeals; and (c) a partial denial of a motion for summary judgment in which one plaintiff was deemed to raise an issue of material fact by incorrectly describing Backpage's conduct. *United States v. Omuro*, N. D. Cal. No. 3:14-cr-336; *United States v. Hurant*, E. D. N. Y. No. 16-cr-45; *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 n. 5 (1st Cir. 2016) [rejecting the analysis set forth in *J.S. v. Village Voice Media Holdings, LLC*, 359 P.3d 714, 718-24 (Wash. 2015)]; *Jane Doe No. 1 v. Backpage.com, LLC*, 2018 WL 1542056 (D. Mass. 2018). Thus, the clear weight of authority regarding the legality of Backpage's activities still favors Backpage's position.

[4] *Dart v. Craigslist, Inc.*, 665 F.Supp.2d 961, 963 (N. D. Ill. 2009) [dismissing lawsuit claiming that "Craigslist makes it easier for prostitutes, pimps, and patrons to conduct business" in violation of state laws and the Travel Act].

[5] A key flaw (among many) in the PSI is the fact that it is a political document, not a legal analysis. It is the direct result of political involvement by Congress using snippets of emails, conversations, and unrelated events, while ignoring any exculpatory information. In the end, it is simply an exercise in confirmation bias.

3

PICCARRETA DAVIS KEENAN FIDEL PC

Constitution. Backpage was simply a spin-off of the type of lawful advertising that had been repeatedly recognized as constitutionally protected for decades.

A consenting adult has the constitutional right to advertise that he or she wants to have sex (including very specific types of sex) with other consenting adults. He or she cannot advertise that he or she wants to do so for money. Conversely, 'models' and 'escorts' have the constitutional right to advertise the services for which they charge money, but they cannot advertise that their services include sex. As with many other constitutionally protected First Amendment activities, protected and unprotected activities are "often separated...only by a dim and uncertain line." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66 (1963). Mr. Padilla always firmly believed that Backpage was on the protected side of that line. Because of the dangers of encroaching on constitutionally protected activity, it is the government that must steer clear of that line and "freedoms of expression must be ringed about with adequate bulwarks." *Id.* These protections explain why there have been no prior criminal prosecutions of publishers of these types of ads.

Through his employment as a salaried employee working in what he firmly believed to be lawful activities at a lawful business, Mr. Padilla earned the right to be indemnified against actions such as the present criminal prosecution. *See United States v. Stein*, 541 F.3d 130, 155 (2d Cir. 2008) [recognizing the Sixth Amendment right to counsel of choice for "an employee who reasonably expects to receive attorneys' fees as a benefit or perquisite of employment, whether or not the expectation arises from a legal entitlement"]. The funds that were wired to my law firm were not a gift. Backpage and its affiliates are obligated to indemnify Mr. Padilla, and Mr. Padilla is entitled to those funds in connection with his employment with Backpage (and, later, its ultimate parent, Amstel River Holdings, LLC[6]), in accordance with applicable state law, *e.g.*, 6 Del. C. § 18-108. Regardless of the existence of written agreements, everyone understood that employees and others associated with Backpage would be indemnified against legal claims arising from their employment with Backpage. Because Mr. Padilla earned the right to receive indemnification through his employment, and because he does not believe that any of the conduct was unlawful or any of the assets tainted, he is, in essence, a bona fide purchaser for value of the funds for these services. *See Luis v. United States*, 136 S.Ct. 1083,

---

[6] When the United States seized Backpage.com, Mr. Padilla was employed by Amstel River Holdings, LLC. Mr. Padilla's title was Chief Operating Officer (COO) on the business' organizational chart. Under its Limited Liability Company Agreement, Amstel is obligated to indemnify Mr. Padilla as a "Company officer[]." Amended and Restated Limited Liability Company Agreement, Article XI, sec. 11.01(a). Moreover, various subsidiaries of Amstel are obligated to indemnify Mr. Padilla, as Amstel is an affiliate of the members of the subsidiaries and Mr. Padilla is an employee of Amstel. *See, e.g.*, Dartmoor Holdings, LLC Third Amended and Restated Limited Liability Company Agreement, Article 8, sec. 8.2: "The Company shall indemnify, defend and hold harmless each Member [*i.e.*, Atlantische],...the affiliates of each Member [*i.e.*, Amstel], and their respective managers, members, directors, officers, employees, or agents [*i.e.*, Mr. Padilla]...to the fullest extent permitted by law...."

4

PICCARRETA DAVIS KEENAN FIDEL PC

1091 (2016). I certainly do not believe that the funds I received (before there was an indictment in this matter) are the proceeds of any unlawful activity or are tainted in any manner.

The fact that the government was successful in pressuring Mr. Ferrer to cooperate with the government in exchange for favorable treatment does nothing to change our beliefs that Backpage's conduct was lawful. Mr. Padilla is well aware that Mr. Ferrer is now contradicting most everything he has said and done regarding Backpage for more than a decade, and nothing Mr. Ferrer is saying now has changed Mr. Padilla's view that Mr. Padilla and Backpage were, at all times, engaged in lawful activity. I am well aware of the pressure the government can place upon any individual and the decision to provide inconsistent statements to support the government's position for a wide variety of reasons.

Nor does the fact that a federal judge in California approved a government seizure warrant targeting the account used to transfer funds to our trust account change our beliefs that the funds are legitimate. I have strong reasons to question the validity of the *ex parte* proceeding that produced that seizure warrant. In that *ex parte* proceeding, the federal prosecutor had the duty to make sure the judge was fully apprised of "all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." LRCiv 83.3(e); Rule 42, ER 3.3(d), Rules of the Arizona Supreme Court.

We have reason to believe that the judge was not advised that numerous courts have specifically rejected the government's theory of prosecution, that high-ranking Department of Justice officials have informed Congress that similar activities by the website Craigslist could not be prosecuted under federal criminal law,[7] or that key legislators very recently admitted that "current federal criminal law...lacks proper prosecutorial tools to combat these websites,"[8] all facts of which Mr. Padilla and Backpage were aware. Thus, in addition to the judiciary, the executive and legislative branches (which are also presumably well aware of the Travel Act and money laundering statutes) have also acknowledged that Backpage's activities could not

---

[7] "I am not aware of any laws that would make them [criminally] liable [for third-party postings], unless there was evidence that Craigslist was a participant...conspiring with those who were misusing their site, that is, knowingly conspiring to violate laws....I am not aware of anything that shows us that Craigslist might be criminally liable...." Testimony of DOJ's National Coordinator for Child Exploitation, Prevention, and Interdiction, Francie Hakes, Domestic Minor Sex Trafficking: Hearing Before Subcommittee on Crime, Terrorism, & Homeland Security of the House Committee on the Judiciary, 111th Cong. 215-16 (2010).
[8] House of Representatives Report 115-572 Part 1, p. 5, February 20, 2018.

PICCARRETA DAVIS KEENAN FIDEL PC

be prosecuted under then current federal law.[9] Mr. Padilla and others associated with Backpage took these courts, prosecutors, and legislators at their words. In sum, Mr. Padilla and others at Backpage have confirmation from all three branches of the United States Government that their conduct was lawful and constitutionally protected. When it comes to specific intent crimes like Travel Act violations and money laundering,[10] evidence negating the required *mens rea* cannot get any stronger than this. The search warrant affidavit failed to present any of this information to the judge -- evidence that would have been necessary for the judge to make "an informed decision, whether or not the facts are adverse." There has never been a determination after an adversarial hearing that any of these funds are tainted. I am pretty sure that, in an adversarial proceeding, the government would not receive a determination that they are, especially so pretrial.

In addition, the seizure warrant is also invalid due to the nature of the information that was (and more significantly was not) presented to the judge. The affidavit for the seizure warrant never mentions the litigation history in which Backpage has been successful in refuting the theories upon which the seizure warrant is based. The affidavit is premised, in part, on violations of California's prostitution laws, but the affidavit does not mention that Mr. Lacey and Mr. Larkin were criminally charged with violating those laws and the California courts dismissed those charges as unfounded. The affidavit prepared by Postal Inspector Versoza quotes several emails, but omits critical text, omits email chains, and omits critical

---

[9] Again, this does not purport to be a complete analysis of these matters. These are just examples of the type of supporting authority of which Mr. Padilla and Backpage were aware. Additional examples are cases analyzing Backpage's conduct and finding that it does not constitute facilitation or aiding and abetting of criminal acts of prostitution or sex trafficking by third-party users of the website. *Dart v. Craigslist*, 665 F.Supp.2d at 963; *M.A. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 1054 (E. D. Mo. 2011) [recognizing that *Dart* "held that Craigslist could not be liable for facilitating prostitution and child exploitation under an 'aiding and abetting' theory based on the misuse of its services by customers" and "allegations of Backpage aiding and abetting (defendant convicted of violating the Travel Act) do not describe the specific intent required for aiding and abetting" under 18 U.S.C. § 2]. Other authorities have specifically held that Backpage's treatment of ads posted by third parties such as "rules about which terms are permitted or not permitted in a posting" and "the website's reaction after a forbidden term is entered into an advertisement" are features "which reflect choices about what content can appear on the website and in what form, [and] are editorial choices that fall within the purview of traditional publisher functions." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 20-21 (1st Cir. 2016). There are, of course, additional problems with the government premising a Travel Act prosecution on violations of underlying state criminal laws when 47 U.S.C. § 230 provides a complete defense to those state law violations. *See, e.g., Gourlay v. Barrett*, 2017 WL 1329434, *4 (E. D. Mich. 2017) ["Congress intended that no liability may be imposed under a state criminal law that is inconsistent with § 230"].
[10] *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974); *United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003).

PICCARRETA DAVIS KEENAN FIDEL PC

context to the emails, resulting in a highly inaccurate and highly misleading depiction of what the emails actually say.[11] For example, paragraph 30(d) of his affidavit states:

> On October 16, 2010, the same Backpage manager [Mr. Padilla] sent this separate internal email explaining, "I'd like to still avoid Deleting ads when possible," that "we're still allowing phrases with nuance," and that "[i]n the case of lesser violations, editing should be sufficient."

The actual text of this email was:

> I'd like to still avoid Deleting ads when possible *but if an ad makes a clear reference to sex for money or an image displays a sex act, don't hesitate deleting it. These are not the types of ads we want on our site at all.*
>
> In the case of lesser violations, editing should be sufficient. We're still allowing phrases with nuance, but if something strikes you as crude or obvious, remove the phrase.

[Emphasis added]. Inspector Versoza's selective editing of the email dramatically changed the message it actually conveyed, keeping critical evidence from the judge. Again, this is not meant to be a comprehensive analysis of the deficiencies in the affidavit, it is just an example of the kind of misleading selective editing and numerous other insufficiencies in the affidavit which, of course, will be brought to the court's attention. To the extent that the indictment was based on the presentation of the same sort of incomplete, inaccurate, and misleading information to the grand jury, it is, of course, also subject to challenge.

Obviously related to these concerns is the fact that the seizure warrant is invalid because Backpage's publishing proceeds cannot be seized until the government proves, at an adversarial pretrial hearing, that the proceeds are from activity that is *not* protected by the First Amendment. *See, e.g., Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989) ["while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause..., it is otherwise when materials presumptively protected by the First Amendment are involved"]. Under these circumstances, none of Backpage's assets can properly be determined to be tainted and subject to forfeiture until *all* matters relating to Backpage's activities have been fully litigated in the adversarial process. In fact, *Luis v. United States*, 136 S.Ct. 1083, 1093 (2016), makes it clear that the fact that funds may *at some point* be determined to be forfeitable to the government does not outweigh a criminal defendant's present constitutional right to use assets to which he is entitled to fund his counsel of choice.

---

[11] In this regard, it should be noted that Mr. Padilla offered, pre-indictment, to answer all questions truthfully about these emails and the operations of Backpage (if he were immunized) to clear up any misconceptions about these actions and events. That offer was declined.

PICCARRETA DAVIS KEENAN FIDEL PC

I have additional concerns about whether the government is pursuing legitimate financial interests in seeking to forfeit these funds in light of the fact that the government will likely have to expend the same amount, or more, if Mr. Padilla is deprived of the funds for my services and panel counsel is appointed to represent him. In fact, *Luis* specifically noted that, under these circumstances, "[t]hese defendants, rendered indigent, would fall back upon publicly paid counsel, including overworked and underpaid public defenders....The upshot is a substantial risk that accepting the Government's views would -- by increasing the government-paid-defender workload -- render less effective the basic right the Sixth Amendment seeks to protect." 136 S.Ct. at 1095. The government's position here seems to be at odds with the fact that "it is in the government's interest that every defendant receives the best possible representation he or she can obtain." *United States v. Stein*, 541 F.3d 130, 157 (2d Cir. 2008). Under these circumstances, it appears that the government has no real financial interest and is, instead, expressing its preference on who will represent Andrew Padilla.

Apart from these concerns, I am concerned with the fact that the government is contemplating a tactic -- pretrial seizure of attorneys' fees -- that I have not previously observed in this district (except in some drug cases where there is no real dispute as to the unlawful origin of the funds). Your theory of forfeiture of fees could be applied to any typical financial case in which the proceeds of a challenged financial transaction were placed into an account with other funds (which is exactly what people do when they are operating a business). The government's theory could render indigent virtually any defendant in any financial case simply on an *ex parte* allegation of an illegal financial transaction. However, I have not seen the government go after attorneys' fees in this manner previously. I have certainly never seen this when the government is pursuing a novel theory of criminal liability and certainly not in a case with First Amendment implications. The government is the party that is attempting to plow new ground here. The government is the party that is defying courts, prosecutors, and legislators that have repeatedly asserted that then existing federal criminal laws simply did not address Backpage's activities. That is the very reason FOSTA/SESTA was passed, after several failed attempts by the government to pass such laws directed at websites like Backpage, and it remains to be seen whether that law, itself, will be found constitutional. Given the fact that the government does not typically go after attorneys' fees, pretrial, in even ordinary financial cases, it is especially unusual in my experience for the government to go after attorneys' fees on a previously untested theory, especially prior to obtaining a conviction.

Finally, I am concerned that my office appears to be the only one targeted in this manner, although I suspect this may change now that I have raised these issues. Government counsel advised previous counsel for Mr. Larkin and current counsel for Mr. Hyer that they were not seeking to forfeit or seize attorneys' fees. Is it a coincidence that I am being targeted while I am the one who has been a bit more assertive raising issues relative to Mr. Padilla's legal and constitutional rights?

PICCARRETA DAVIS KEENAN FIDEL PC

The fact that counsel for Mr. Ferrer, Nanci Clarence, is permitted to keep funds from the same source that you claim is tainted[12] also naturally raises questions about why I am being singled out for special treatment by the government. There appears to be a different standard for counsel for defendants who plead guilty and cooperate with the government as opposed to those who are presumed innocent and stand on their constitutional rights. This, again, appears to be an attack on Mr. Padilla's Sixth Amendment right to counsel of his choice.[13]

I am also detecting what may be an emerging pattern of government overreaching in this case that includes ignoring applicable case law, overaggressive seizures, attempts to remove defendants' counsel of choice from the case, and attempts to deny defendants assets necessary to fund counsel of choice.[14] All of these actions obviously will gain the government tactical advantage. It is my belief that, if Mr. Padilla is properly represented, there will be no conviction based upon the government's theories and the facts as they currently stand. Under these circumstances, "the government's interference in the [] [d]efendants' ability to mount a defense 'creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general.'" *United States v. Stein*, 435 F.Supp.2d 330, 372 (S.D.N.Y. 2006) [quoting *Young v. United States ex rel Vuitton et Fils S.A.*, 481 U.S. 787, 811 (1987)]. The government's efforts in these areas appear to be raising huge issues with serious constitutional implications that are completely collateral to the defendants' guilt or innocence of the charges in the indictment. It does not seem wise to me for the government to be going down these roads.

In sum, Mr. Padilla is a gentleman with no significant criminal history who worked very hard as a salaried, tax-paying employee for a company that operated without any judicial

---

[12] *See* Preliminary Order of Forfeiture, No. CR-18-00464-001-PHX-DJH (Doc. 23), pp. 12-13, filed May 16, 2018.

[13] I understand that "[a]greements may be entered into to exempt from forfeiture an asset transferred to an attorney as fees for legal services, but...only if: (1) there are reasonable grounds to believe that the particular asset is not subject to forfeiture; and (2) the asset is transferred in payment of legitimate fees for legal services actually rendered or to be rendered." *United States Attorneys' Manual* § 9-120.116. If the government has "reasonable grounds to believe that the particular asset is not subject to forfeiture" and therefore can be used to pay Ms. Clarence's legal fees, then why not mine? In fact, I am willing to accept the same arrangement the government has made with Ms. Clarence and give to the government any unused funds in my account that remain at the end of the case if the case ends with a conviction.

[14] There are other issues that we will need to discuss in the future that also raise concerns, such as over-aggressive behavior in execution of search warrants (including removing one defendant's 77-year-old mother-in-law naked from the shower at gunpoint), service of early morning arrest warrants after receiving offers to voluntary surrender, needlessly restrictive release conditions despite pretrial services' recommendations, interference with access to funds for ordinary living expenses, possible collusion with civil plaintiffs' counsel to impact defendants, issuing a speaking indictment as opposed to a traditional indictment, and the document dump of the initial disclosure (which we will discuss at a later date). I want to make clear that I am not accusing you (or anyone else) of any misconduct here, I am just listing our concerns.

PICCARRETA DAVIS KEENAN FIDEL PC

determinations of criminal activity for many, many years. The company operated in various lawful structures with all the obvious earmarks of a lawful business. There were numerous statements from the executive, judicial, and legislative branches as to the legality of the business. This individual is also entitled to indemnification for attorneys' fees and the payment of attorneys' fees to represent him in this very matter. He vigorously asserts his innocence and is presumed innocent and has asserted his right to be represented by counsel familiar with the case. The government made representations that it was not seeking to forfeit attorneys' fees and, indeed, has entered into an agreement with one defendant not to forfeit any attorneys' fees and permit company funds to be used to fund his representation throughout the proceedings. All of this in a case that raises many defensible legal, constitutional, and factual issues that are a long way from being resolved in the government's favor, if ever. It would seem to me that to strip Mr. Padilla of counsel by denying him the funds for representation and rendering him indigent would deny him his Fifth and Sixth Amendment rights and also raise issues about the fundamental fairness of this prosecution and the appropriate remedy for these violations.

Sincerely,

Michael L. Piccarreta

MLP:bp

10