PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Suite 1000
Tucson, AZ 85701
(520) 622-6900
Michael L. Piccarreta
State Bar No. 003962
Email: mlp@pd-law.com
Attorney for Defendant Andrew Padilla

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-06-PHX-SPL |
| Plaintiff, | |
| vs. | JOINT REPLY TO RESPONSE (DOC. 371) TO EMERGENCY MOTION TO STAY SEIZURE OF ATTORNEYS' FEES AND REQUEST FOR IMMEDIATE HEARING (DOC. 360) |
| 6. Andrew Padilla, (Counts 1-51) | |
| 7. Joye Vaught, (Counts 1-51) | |
| Defendants. | |

Defendants Andrew Padilla and Joye Vaught hereby reply to the government's response (Doc. 371) to their Emergency Motion to Stay Seizure of Attorneys' Fees and Request for Immediate Hearing (Doc. 360). The defendants respectfully request this Court to extend the stay of seizures of attorneys' fees, set a briefing schedule, and hold an evidentiary hearing to resolve the serious constitutional issues raised by the government's actions.

## I. INTRODUCTION

The instant Emergency Motions seek a stay of the government's efforts to seize attorney retainers intended for defense of charges and claims against defendants,[1] to allow a fair opportunity to address fundamental constitutional flaws of the government's seizures. The government's *ex parte* actions to seize attorney retainers are the latest round of its seizures of millions of dollars of defendants' assets on the premise that every ad payment and every dollar of revenue earned by Backpage.com ("Backpage") for 14 years are criminal proceeds. And the government goes still further to assert that virtually every dollar of assets held by defendants or others on their behalf (such as lawyers holding retainers for legal defense) are tainted criminal proceeds even where moneys had nothing to do with Backpage. The government's theory and its seizures are wholly unprecedented, and, more importantly, they directly contravene the First, Fifth and Sixth Amendments.

The government has persistently attempted to lead this Court down the path to a hearing pursuant to *United States v. Monsanto*, 491 U.S. 600 (1989), as the only available remedy for the defendants concerning the government's pretrial restraint of their assets. Indeed, the government has taken every step possible to avoid ever having

---

[1] Defendants Andrew Padilla and Joye Vaught file this reply in accordance with the Court's order of November 8, 2018 (Doc. 361). Defendants James Larkin, Michael Lacey, John Brunst, and Scott Spear join in this reply, pursuant to the Court's order of November 13, 2018 (Doc. 375), and these defendants have also separately filed a stay motion paralleling the motion of Padilla and Vaught, and to correct issues the Court noted in its order (Doc. 376).

2

to address the fact that this is a First Amendment case and, as a result, special rules govern the pretrial restraint of the defendants' assets, which are the proceeds of their participation in First Amendment activities. The government urges this Court to start its analysis on step two, when this Court must begin its analysis on step one, which is the propriety of the government's seizures under the First Amendment.

In *Monsanto*, the case upon which the government has so heavily relied, the Court began its analysis with a finding that the government had *legally* restrained the defendant's assets prior to conviction. *See Monsanto*, 491 U.S. at 606-14. Indeed, there is nothing in the opinion to suggest that the defendant challenged the propriety of the government's pretrial restraint of his assets other than to the extent that the restraint impacted his ability to fund his defense. *See id*. at 602-16. After making a preliminary finding on the legality of the restraint, the Court focused the opinion on whether any portion of those *legally* restrained assets could be used to fund the defense as a matter of Sixth Amendment precedent. *See id*. at 614-16. *Monsanto* makes it clear that you do not get to the Sixth Amendment analysis until there has first been a determination on the legality of the seizure.

Here, the government has not satisfied step one—demonstrating that their pretrial restraint of defendants' assets was legal—because the seizure procedures used did not comply with constitutional standards governing for pretrial restraint of assets derived from participation in First Amendment activities *See, e.g., Backpage.com, LLC v. Dart*, 807 F.3d 229, 230-31 (7th Cir. 2015) (recognizing Backpage as "an avenue of expression and ideas and opinions" protected by the First Amendment, including its

3

"classified ads for 'adult' services").

## II. BACKGROUND

Through their employment as salaried employees working in what they firmly believed to be lawful activities at a lawful business, defendants Padilla and Vaught earned the right to indemnification and advancement of funds for legal fees in legal actions arising out of the performance of their duties such as the present criminal prosecution. *See United States v. Stein*, 541 F.3d 130, 155 (2d Cir. 2008) (recognizing the Sixth Amendment right to counsel of choice for "an employee who reasonably expects to receive attorneys' fees as a benefit or perquisite of employment, whether or not the expectation arises from a legal entitlement"). Under Delaware law, Backpage and its affiliates are obligated to advance defense costs and expenses to Padilla and Vaught, in accordance with the terms of certain LLC Agreements and/or under their agreements with Padilla and Vaught. Likewise, Backpage and its affiliates also are obligated to advance defense costs and expenses to Larkin, Lacey, Brunst, and Spear, in accordance with the terms of certain LLC Agreements and under the terms of various written agreements.[2] Because the defendants earned the right to receive indemnification and

---

[2] For example, when the United States seized Backpage.com, Mr. Padilla was employed by Amstel River Holdings, LLC. Mr. Padilla's title was Chief Operating Officer (COO) on the business' organizational chart. Under its Limited Liability Company Agreement, Amstel is obligated to indemnify Mr. Padilla as a "Company officer[]." Amended and Restated Limited Liability Company Agreement, Article XI, sec. 11.01(a). Moreover, various subsidiaries of Amstel are obligated to indemnify Mr. Padilla, as Amstel is an affiliate of the members of the subsidiaries and Mr. Padilla is an employee of Amstel. *See, e.g.,* Dartmoor Holdings, LLC Third Amended and Restated Limited Liability Company Agreement, Article 8, sec. 8.2: "The Company shall indemnify, defend and

advancement of funds through their employment, and because they do not believe that any of the conduct was unlawful or any of the assets tainted, they are, in essence, bona fide purchasers for value of the funds for these services. *See Luis v. United States*, 578 U.S. __, __, 136 S.Ct. 1083, 1091 (2016).

The government's seizure of attorneys' fees is just its latest maneuver in its attempts to interfere with the defendants' Fifth and Sixth Amendment right to due process and right to counsel of choice. The government previously seized tens of millions of dollars that belong to defendants through *ex parte* civil seizure warrants obtained in the Central District of California (CDCA), including:

- On March 28, 2018, the government obtained at least 12 separate civil seizure warrants from Magistrate Judge Walsh and seized millions of dollars of assets from defendants.

- On April 4, 2018, the government obtained another civil seizure warrant from Magistrate Judge Walsh and again seized millions of dollars of assets.

- On April 9, 2018, the government obtained another civil seizure warrant from the Magistrate Judge Walsh and seized millions of dollars of assets.

- On April 26, 2018, the government obtained another five civil seizure warrants from Magistrate Judge McDermott and seized millions of dollars of assets.

- On June 4, 2018, the government obtained three more civil seizure warrants from Magistrate Judge Rosenbluth and again seized millions of dollars of assets.

The government has continued to seize tens of millions of dollars of assets with

---

old harmless each Member [*i.e.,* Atlanticsche],…the affiliates of each Member [*i.e.,* Mr. Padilla]…to the fullest extent permitted by law…"

5

*ex parte* civil seizure warrants emanating from the CDCA.[3]

In answer to the present Emergency Motion, the government argues that statutory forfeiture procedures permit pretrial asset seizures and preclude all challenges until after prosecution concludes. But, perhaps obviously, statutory procedures do not trump constitutional requirements. The government also asserts that the Emergency Motion was filed in the "wrong jurisdiction" and asks this Court "to deny the motions without prejudice and transfer them to the CDCA Court." Opp. at 2 & n.1.

The government's claim that defendants filed the Emergency Motion in the "wrong court" and is engaged in "forum shopping" is shocking in its mendacity. Opp. at 5-6. As the government well knows, some defendants (but not Padilla or Vaught) did file a Motion in the CDCA Court challenging the initial asset seizures on First, Fourth, Fifth, and Sixth Amendment grounds, (Motion to Vacate, Dkt. 6, CDCA No. 18-CV-6742), and the government immediately sought to have this Court assert jurisdiction and to have all matters involving the seizures decided by this Court. (*See* Dkt. 282, DAZ No. 18-CR-422).[4] When this Court denied the government's application and indicated it would await Judge Klausner's ruling, the government immediately filed civil complaints covering the seizures and filed an *ex parte*

---

[3] The government has not even produced the underlying affidavits for the June or July seizures.

[4] The government sought this procedure without informing this Court of the pending motion challenging the seizures in the CDCA and without disclosing that Judge Klausner had scheduled a hearing to consider the motion. [*See* Dkt. 282 DAZ No. 18-422]

application for stay. (*See* Dkt. 79, CDCA No. 18-CV-6742 and "related cases" cited therein). The government's stay application once again argued that matters involving the seizures should be addressed *by this Court*. (*Id.* at 4 (Defendants' "concerns could be more properly" addressed in "the Arizona criminal matter"). Judge Klausner granted the government's stay request (and the stay order currently is on appeal to the Ninth Circuit). (*See In re Any and All Funds Held in Republic Bank of Arizona Accounts*, Ninth Cir. Case No. 18-56455). The new seizure warrants targeting attorney trust accounts prompting these Emergency Motions rely on the same purported showing of probable cause, and, if challenged in CDCA, would be met with the same government evasions.

The one constant in this background is that the government has never once addressed defendants' argument that a showing of probable cause is constitutionally inadequate to support a pre-conviction seizure of publishing assets and proceeds. In pleadings filed in CDCA and in this Court, the government has never even mentioned the law that controls in this specific circumstance. The government has not cited a single First Amendment case on the issue of seizures, and instead has relied exclusively on cases where a showing of probable cause *is* sufficient to support an asset seizure.[5]

---

[5] *E.g.*, *Kaley v. United States*, 571 U.S. 320, 324 (2014) (holding that an indicted defendant does not have a right to contest a grand jury's probable cause finding). However, neither *Kaley*, nor any other of the cases the government cites on the issue of seizures has anything to say about a case like this one, where probable cause *is not* enough to support a seizure. *See infra* (discussing forfeiture cases).

The government's recent actions must also be considered in context. At the outset of the case, the government assured counsel for two defendants that it would not be seizing attorneys' fees. The government has not seized attorneys' fees for the two defendants who are cooperating and pled guilty. The government then raised "concerns" about attorneys' fees in May of 2018 and undersigned counsel responded in detail in June. (Doc. 360, Exhibits E and F). The case then progressed for months with no mention of seizing attorneys' fees, multiple motions were filed, and this Court held a lengthy hearing on October 4, 2018. The Court subsequently issued rulings in mid-October, some of which were adverse to the government's positions, including its attempts to disqualify able and experienced counsel.[6] Shortly on the heels of these rulings, on October 31, 2018, the government obtained its seizure warrants for attorneys' fees. The government's timing should raise serious concerns with this Court.

### III. ARGUMENT

**A.    The Government's Seizures Of The Defendants' Assets Were Unlawful In Violation Of The First, Fourth, And Fifth Amendments To The United States Constitution.**

The government's central argument boils down to this:  that this case is no different "from any other federal case that involves the seizure of proceeds and funds involved in money laundering, as the CDCA Court determined in its probable cause

---

[6] On October 24 and October 26, 2018, counsel made detailed requests for *Brady/Giglio* material, citing this Court's order noting that the government agreed to provide such information within ten days of discovering it. See Exhibits A and B hereto).

finding." (Doc. 371, p. 13). This is false, and the government knows it. Where the assets involved were derived from publishing activities that are presumptively protected by the First Amendment, the government cannot effect a seizure in advance of an adversary proceeding that establishes the material at issue is unprotected.[7] Thus, the government's claim that this is no different from any other case involving pretrial seizures is wrong for at least five reasons:

*First*, it has been established law for decades that the First Amendment bars the government from seizing or encumbering the assets or financial proceeds of publishing prior to conviction.[8] In *Fort Wayne Books*, the Supreme Court invalidated a section of the Indiana RICO law that authorized the pretrial seizure of assets "subject to forfeiture" upon a showing of probable cause, which included all "property, real and personal, that 'was used in the course of, intended for use in the course of, derived from, or realized

---

[7] The government's refrain in various pleadings (except those relating to the seizures, where it has avoided the issue) is that advertisements for illegal transactions are unprotected by the First Amendment. This, however, is the very point the government must prove, and it cannot justify pre-trial seizures by assuming conclusions leaden with constitutional burdens. Otherwise, there would never be a bar to pre-trial seizure of publishing material alleged to violate the law. *See*, *e.g.*, *A Quantity of Books v. Kansas*, 378 U.S. 205, 211-12 (1964) ("It is no answer to say that obscene books are contraband, and that consequently the standards governing searches and seizures of allegedly obscene books should not differ from those applied with respect to narcotics, gambling paraphernalia and other contraband.").

[8] *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989); *Adult Video Ass'n. v. Reno*, 41 F.3d 503 (9th Cir. 1994); *Center for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 649-650, 657 (E.D. Pa. 2004) (even for materials that may be "completely banned," *Fort Wayne Books* requires that a court "make a final determination that the material is [unprotected by the First Amendment] after an adversary hearing").

through' . . . racketeering activity." 489 U.S. at 51.  The Court held the forfeiture order was unconstitutional even though the defendants in that case had 39 prior convictions for violating the state's obscenity laws as predicate offenses and even assuming the materials subject to seizure were themselves obscene.  Despite the fact the materials at issue could be forfeitable *upon conviction*, the Court held "the seizure at issue here is unconstitutional." *Id*. at 65.  *See Adult Video Ass'n. v. Barr*, 960 F.2d 781, 788 (9th Cir. 1992) ("the reasoning of *Fort Wayne Books* is equally applicable to the federal RICO statute" and its authorization of pretrial forfeitures of constitutionally-protected materials "is unconstitutional on its face"), *aff'd*, *Reno*, 41 F.3d at 504-05.

***Second***, the government cannot preemptively seize the profits or proceeds of publishing before conviction any more than it can seize other assets or the publications themselves.  The Supreme Court has stressed that laws suppressing speech "may operate at different points in the speech process," including by "imposing a burden by impounding proceeds on receipts or royalties." *Citizens United v. FEC*, 558 U.S. 310, 336-337 (2010).  This follows from the well-established rule that depriving writers and publishers of compensation for their work violates the First Amendment. *U.S. v. Nat'l Treasury Empl's Union*, 513 U.S. 454, 468-69 (1995); *U.S. v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000).  The Court applied these principles to hold the First Amendment prohibits government action to seize proceeds derived from publishing activities under a forfeiture regime in *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) (law authorizing forfeiture of

proceeds is "presumptively inconsistent with the First Amendment").[9] There, the Court found that the government cannot "freeze" profits from the sale of a book under a statutory scheme that generally authorizes forfeiture of proceeds of crime and prejudgment attachment procedures to ensure that wrongdoers "do not dissipate their assets." *Id*. at 111.

***Third***, whenever the law authorizes the seizure of materials (or proceeds therefrom) that are even arguably protected by the First Amendment,[10] the Supreme Court has long held that more rigorous procedural protections must be used.  In circumstances such as these, the government must use "procedural safeguards designed to obviate the dangers of a censorship system." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559-560 (1975).  Such safeguards include placing "the burden of instituting judicial proceedings, and of proving that the material is unprotected . . . on the censor, limiting any restraint to "a specified brief period" to preserve the status quo, and ensuring "a prompt final judicial determination." Id. at 560.  For seizures of publishing assets, the burden of initiating judicial review and of proving that the

---

[9] *American Library Ass'n. v. Thornburgh*, 713 F. Supp. 469, 484 n.19 (D.D.C. 1989) ("pre-trial seizure of non-expressive material [including 'printing presses, bank accounts, etc.'] *ex parte* from a business engaged in expressive material also is unconstitutional"), *rev'd on standing grounds sub nom. American Library Ass'n. v. Barr*, 956 F.2d 1178, 1194-96 (D.C. Cir. 1992)

[10] *Backpage.com, LLC v. Cooper*, 939 F. Supp. 805, 816, 833-34 (D. Tenn. 2013) (ads on Backpage.com are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *9-11 (D.N.J. 2013) (rejecting argument that escort ads on Backpage.com are unprotected speech).

material is unprotected expression is on the government, and requires final judicial determination on the merits. *Blount v. Rizzi*, 400 U.S. 410, 420-22 (1971).

**Fourth**, a showing of probable cause is *never* sufficient to justify such a seizure. *Fort Wayne Books*, 489 U.S. at 66 ("mere probable cause to believe a legal violation has transpired is not adequate to remove books or films from circulation"); *Adult Video Ass'n.*, 960 F.2d at 788 (it is not enough for the government to show probable cause to support a forfeiture order); *Pappert*, 337 F. Supp. 2d at 658 (E.D. Pa. 2004) ("Although evidence of probable cause is sufficient to make an arrest, *Fort Wayne* holds that a finding of probable cause is not sufficient to completely remove a publication from circulation."). *See Backpage.com LLC v. Dart,* 807 F.3d 229, 230-31 (7th Cir. 2015) (enjoining Sheriff's actions to "suffocate" website financially based on allegations of illegality). As the Supreme Court stressed in *Blount v. Rizzi*, only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, and a mere showing of probable cause cannot be sufficient to justify a seizure. 400 U.S. at 418-20. *See U.S. v. Treatman*, 408 F.Supp. 944, 954-56 (C.D. Cal. 1976) (applying *Blount* to invalidate postal law authorizing injunctions barring the mailing of sexually-oriented advertising because the provision "contains none of the required procedural safeguards"); *U.S. v. Thirty-Seven Photographs*, 402 U.S. 363, 373-74 (1971).

**Fifth**, where a website publishes millions of advertisements, the government cannot justify a wholesale seizure of assets based on allegations that the website's former owners had some general level of awareness that third-parties posted ads for

12

prostitution. Under the applicable and widely-recognized legal standard, the government has the burden to prove that defendants had both the requisite knowledge and the requisite intent *with respect to the particular advertisements for which the government claims authority to forfeit proceeds*. The Supreme Court has long held that under the First Amendment the government cannot impose liability for distributing expressive materials without proof of scienter. *Smith v. California*, 361 U.S. at 153-54. *See Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) ("[W]rongdoing must be conscious to be criminal."). Here, neither the affidavits in support of the seizure warrants nor the superseding indictment allege that defendants had the requisite knowledge and the requisite intent with respect to *any* specific advertisement, much less as to *all* of the millions of advertisements posted to Backpage.com.

Contrary to the government's position, Movants have no avenue for relief via a "*Monsanto* Motion" under Rule 41(g) in the Arizona criminal case.[11] *Monsanto* speaks to a much different (and narrower) issue—whether asset seizures may be excessive and deprive a criminal defendant of effective counsel. The defendant must make a threshold showing that seized assets are needed to pay for his counsel of choice, after which the court must conduct a post-seizure, adversary "*Monsanto* Hearing." Here, by contrast, the first issue is the government's right to hold *any* of their assets as a matter of First

---

[11] Rule 41(g) (formerly Rule 41(e)) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). Any claim for the return of property based on *United States v. Monsanto,* 491 U.S. 600 (1989), involves Fifth and Sixth Amendment rights.

Amendment law, and it is the *government's* burden to prove that the assets are subject to forfeiture. *Fort Wayne Books,* 489 U.S. at 63; *Simon & Schuster, Inc.*, 502 U.S. at 115. Unlike the process provided in a *Monsanto* hearing, for seizures of publishing assets, the burden of initiating judicial review and of proving that the material is unprotected expression is on the government, and a final judicial determination on the merits is required. *Blount v. Rizzi*, 400 U.S. 410, 420-22 (1971). Accordingly, *United States v. Unimex,* 991 F.2d 546 (9th Cir. 1993) is inapposite.

**B.     The Erroneous Deprivation Of Counsel Of Choice Based On The Government's Untested Theories Constitutes Automatic Reversible Error.**

Erroneous denial of the right to counsel of choice is structural error and requires automatic reversal even in the absence of any showing of prejudice. The "Sixth Amendment right to counsel of choice…commands, not that a trial be fair, but that a particular guarantee of fairness be provided -- to wit, that the accused be defended by the counsel he believes to be best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006). "The right to select counsel of one's choice…has been regarded as the root meaning of the constitutional guarantee." *Id*. at 147-48. "Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id*. at 148. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id*.

The seizure of attorneys' fees is just the government's latest maneuver in its onslaught on defendants' right to counsel of choice. Indeed, after its failed effort to disqualify the most

able, experienced and qualified attorneys in the country, the government is now trying to reach the same result by different means, resulting in *huge* tactical advantages to the government and causing immeasurable damage to the defendants and their rights.

As noted above, obviously related to these concerns is the fact that the seizure warrant is invalid because Backpage's publishing proceeds cannot be seized until the government proves, at an adversarial pretrial hearing, that the proceeds are from activity that is *not* protected by the First Amendment. *See, e.g., Fort Wayne Books,* 489 U.S. at 63 ("while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause…, it is otherwise when materials presumptively protected by the First Amendment are involved").

In fact, *Luis v. United States*, 578 U.S. __, __, 136 S. Ct. 1083, 1093 (2016), narrowly defines the type of "contraband" that can be seized pretrial, i.e. "a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing or concealing of a crime." *Id*. at __, 136 S. Ct. at 1090. In addition, *Luis* makes it clear that the fact that funds may *at some point* be determined to be forfeitable to the government does not outweigh a criminal defendant's present constitutional right to use assets to which he is entitled to fund his counsel of choice. *Id.* at __, 136 S. Ct. at 1093.

Indeed, the government has not cited a single case where the third party challenging the forfeiture of assets has itself been charged in a criminal case and the assets at issue are funds in attorney trust accounts that the claimants need for the defense of an ongoing criminal case. In circumstances where the assets at issue are attorney retainer accounts needed for the claimant's defense in a pending criminal case, it would

be grossly unfair to postpone the hearing for years, until after the conclusion of the criminal trial.

There are additional concerns about whether the government is pursuing legitimate financial interests in seeking to forfeit these funds in light of the fact that the government will likely have to expend the same amount of funds (or much, much more) if the defendants are deprived of funds for their current counsel and panel counsel are appointed to represent them. In fact, *Luis* specifically noted that, under these circumstances, "[t]hese defendants, rendered indigent, would fall back upon publicly paid counsel, including overworked and underpaid public defenders….The upshot is a substantial risk that accepting the Government's views would -- by increasing the government-paid-defender workload -- render less effective the basic right the Sixth Amendment seeks to protect." 578 U.S. at __, 136 S.Ct. at 1095. The government's position here seems to be at odds with the fact that "it is in the government's interest that every defendant receives the best possible representation he or she can obtain." *United States v. Stein,* 541 F.3d 130, 157 (2d Cir. 2008). Under these circumstances, it appears that the government has no real financial interest and is, instead, expressing its preference on who will represent these defendants.

There has also been a pattern of government overreaching in this case that now includes ignoring applicable case law, overaggressive seizures, attempts to remove defendants' counsel of choice from the case, and attempts to deny defendants assets

necessary to fund counsel of choice.[12] All of these actions obviously will gain the government tactical advantage. If the defendants are properly represented, there will be no conviction based upon the government's theories and the facts as they currently stand. Under these circumstances, "the government's interference in the [] [d]efendants' ability to mount a defense 'creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general.'" *United States v. Stein,* 435 F.Supp.2d 330, 372 (S.D.N.Y. 2006) (quoting *Young v. United States ex rel Vuitton et Fils S.A.*, 481 U.S. 787, 811 (1987)). The government's efforts in these areas appear to be raising huge issues with serious constitutional implications.

Contrary to the government's urgings, this Court is not powerless to act in the face of tactics that this Court has presumably never seen before. The government's conduct not only violates the defendants' First and Fourth Amendment rights, as set forth above, but also their Fifth and Sixth Amendment rights to due process and counsel of choice.[13] As in *Stein*, the government has intentionally interfered with funds earmarked for employees' criminal defense fees. That violation of the right to counsel of choice constituted structural error that

---

[12] There are other issues that raise additional serious concerns, such as over-aggressive behavior in execution of search warrants (including removing one defendant's 77-year-old mother-in-law naked from the shower at gunpoint), service of early morning arrest warrants after receiving offers to voluntary surrender, needlessly restrictive release conditions despite pretrial services' recommendations, interference with access to funds for ordinary living expenses, possible collusion with civil plaintiffs' counsel to impact defendants, issuing a speaking indictment as opposed to a traditional indictment, and the document dump of the initial disclosure, all of which evinces governmental overreaching and improper interference with the defendants' constitutional rights.

[13] The seizure and forfeiture of millions of dollars based on underlying state misdemeanor offenses also violates the Eighth Amendment.

could only be remedied by dismissal of the indictment. 541 F.3d at 157 (citing *Gonzalez-Lopez*).[14] It is well settled that federal district courts have the "inherent authority to remedy constitutional violations within their jurisdiction." *Ruiz v. Scott*, 1996 WL 9320104, *8 (S.D. Tex. 1996); *see also United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). In addition, "[a]ll federal courts are invested with inherent powers enabling them to manage their cases and courtroom effectively." *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011).

In the present case, the government's belated effort to seize attorneys' fees some seven and one-half months after the original indictment severely adversely impacts this Court's ability to manage its own cases. Permitting the seizure of attorneys' fees at this point will seriously impact the present case including, among other things, a new scheduling order and trial date, withdrawal of counsel and appointment of indigent services counsel and other indigent services requests, ongoing motions practice, discovery issues, and other matters related to the case.[15] The defendants have been

---

[14] The Second Circuit affirmed the district court's ruling dismissing the indictment on Sixth Amendment grounds and did not address the district court's separate finding that the government's interference with assets to fund attorneys' fees for counsel of choice also violated the defendant's substantive due process rights. *United States v. Stein*, 495 F.Supp.2d 390, 412 (S.D. N.Y. 2006); *see also United States v. Stein*, 435 F.Supp.2d 330, 365 (S.D. N.Y. 2006).

[15] For just one example, the Court will need to re-visit its denial of the motion for itemization of *Brady/Giglio* material. (Doc. 339). In opposing the motion, the government noted the number of defense counsel and their familiarity with the case (Doc. 294, p. 11), and this Court's order mentioned the defendants' "seemingly unlimited access to legal resources." (Doc. 339, p. 5). If the attorneys' fees are seized, obviously all of that will change.

severely prejudiced by the government's dilatory tactics in waiting all of these months to now take this action. It is well-settled that such prejudicial delays should not be countenanced by the courts.[16] In the present case, the government has not even attempted to defend its lack of diligence in this matter.

## CONCLUSION

For the foregoing reasons, defendants respectfully request this Court to extend the stay of seizures of attorneys' fees, set a briefing schedule, and hold an evidentiary hearing to resolve the serious constitutional issues raised by the government's actions.

RESPECTFULLY SUBMITTED this 15th day of November, 2018.

PICCARRETA DAVIS KEENAN FIDEL PC

By: /s/    Michael L. Piccarreta
Michael L. Piccarreta
Attorney for Andrew Padilla

KARP & WEISS, P.C.

By: /s/    Stephen M. Weiss
Stephen M. Weiss
Attorney for Joye Vaught

---

[16] *See In re Native Energy Farms, LLC,* 2018 WL 5805985, *3 (9th Cir. 2018). (The defense of laches requires proof of lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense)

19

| | |
|---|---|
| 1 | On November 15, 2018, a PDF version |
| 2 | of this document was filed with the Clerk of Court using the CM/ECF |
| 3 | System for filing and for Transmittal |
| 4 | of a Notice of Electronic Filing to the following CM/ECF registrants: |
| 5 | |
| 6 | Reginald Jones, reginald.jones4@usdoj.gov<br>Peter Kozinets, peter.kozinets@usdoj.gov |
| 7 | John Kucera, john.kucera@usdoj.gov<br>Margaret Perlmeter, margaret.perlmeter@usdoj.gov |
| 8 | Kevin Rapp, kevin.rapp@usdoj.gov |
| 9 | Patrick Reid, Patrick.Reid@usdoj.gov><br>Andrew Stone, andrew.stone@usdoj.gov |
| 10 | Amanda Wick, Amanda.Wick@usdoj.gov<br>Paul Cambria, pcambria@lglaw.com |
| 11 | Tom Bienert, tbienert@bmkattorneys.com |
| 12 | Bruce Feder, bf@federlawpa.com<br>Michael Kimerer, mdk@kimerer.com |
| 13 | Stephen Weiss, sweiss@karpweiss.com |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |