# EXHIBIT A

PICCARRETA DAVIS KEENAN FIDEL PC
LAWYERS

MICHAEL L. PICCARRETA
JEFFERSON KEENAN
LOUIS S. FIDEL

BARRY M. DAVIS
(1948-2016)

2 EAST CONGRESS STREET, SUITE 1000
TUCSON, ARIZONA 85701
(520) 622-6900
FAX (520) 622-0521
WWW.PD-LAW.COM

October 23, 2018

**VIA EMAIL: reginald.jones4@usdoj.gov**
**AND U.S. FIRST CLASS MAIL**

Reginald E. Jones, Esq.
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530

      Re:    *United States v. Lacey, et al.*, No. CR-18-00422-PHX-SPL

Dear Reggie:

      At the hearing on our request for itemization of *Brady/Giglio* material on October 5, 2018, the government assured the Court that the government would turn over any *Brady/Giglio* material to the defendants immediately after learning of it (Reporter's Transcript, October 5, 2018, p. 104), and Judge Logan's order specifically "notes that at the October 5th hearing the Government stipulated that it will turn over any *Brady/Giglio* material that it comes across in the future to the Defendants within 10 days. The court implores the Government to abide by this stipulation, without an order from the court." Doc. 339, pp. 5-6.

      Despite the government's assurances (and the Court's order), the government has not produced any *Brady/Giglio* material even though more than 10 days have passed since the date of the hearing. I am requesting that the government begin

PICCARRETA DAVIS KEENAN FIDEL PC

complying with its assurances to Judge Logan and his order and produce the *Brady* and *Giglio* material that is in its possession starting with the claw back documents.[1]

We know *Brady/Giglio* material exists because the government already disclosed it in the material it is now trying to claw back based on the claim these documents were inadvertently produced. However, the government cannot legitimately "claw back" *Brady* material that it was legally, ethically, and constitutionally required to disclose in the first place.

Although counsel for the defendants ceased their review of the purportedly inadvertently disclosed documents when the government made its claw-back request, counsel for the defendants had been in possession of these documents for weeks and had already reviewed the clearly exculpatory material. From memory, two internal government memoranda[2] contained *Brady/Giglio* material contradicting, legally and factually, the government's theory of the case, including statements made by the government at the hearing regarding the level of knowledge required for criminal prosecution. These *Brady/Giglio* memoranda also contain witness statements favorable to the defense, contain information contradicting representations made to federal magistrates, and contain material relevant to defendants' challenges to the grand jury proceedings and to the searches and seizures in this prosecution, the filing of additional pretrial motions, the cross-examination of government witnesses, and other purposes relating to the present criminal proceedings. The documents undoubtedly will be exhibits at multiple pretrial hearings and will be exhibits at trial.

The government has re-disclosed other purportedly inadvertently disclosed documents, and the litigation regarding the government's claw-back request has been significantly narrowed. I believe that the two government memoranda referred to above present another opportunity to significantly narrow the government's motion. Because the government has the obligation to disclose these *Brady/Giglio* materials to the defendants in any event, these materials should be removed from the government's motion to compel destruction of the purportedly inadvertently

---

[1] To assist the government to comply with its assurances and Judge Logan's strong request, I will provide you additional *Brady* and *Giglio* areas that should be produced as the government learns of its existence. This initial letter is specifically addressed to the claw back documents.

[2] *See* Declaration of Reginald E. Jones in support of United States' Motion to Compel Destruction of Inadvertently Produced Documents, p. 6 ¶ 20, and Privilege Log attached as Exhibit I.

2

PICCARRETA DAVIS KEENAN FIDEL PC

disclosed documents. Please let me know your thoughts so that we can include the government's views in our pleadings on these matters.

In addition, other claw back documents possessed by the government may also contain similar *Brady/Giglio* material. To avoid future issues, I am requesting that the government review this information and make the appropriate disclosures in accordance with its *Brady/Giglio* obligations, its representations to the court, and the court's order. To assist the government in complying with its *Brady/Giglio* obligations, we will be providing an additional itemization of specific categories of *Brady/Giglio* materials in the very near future.

Sincerely,

Michael L. Piccarreta

JK:mh
cc:   Kevin Rapp, kevin.rapp@usdoj.gov
      Paul Cambria, pcambria@lglaw.com
      Tom Bienert, tbienert@bmkattorneys.com
      Bruce Feder, bf@federlawpa.com
      Michael Kimerer, mdk@kimerer.com
      Stephen Weiss, sweiss@karpweiss.com
      James Grant, jimgrant@dwt.com
      Robert Corn-Revere, bobcornrevere@dwt.com
      Ariel Neuman, aneuman@birdmarella.com

3

# EXHIBIT B

PICCARRETA DAVIS KEENAN FIDEL PC
LAWYERS

MICHAEL L. PICCARRETA
JEFFERSON KEENAN
LOUIS S. FIDEL

BARRY M. DAVIS
(1948-2016)

2 EAST CONGRESS STREET, SUITE 1000
TUCSON, ARIZONA 85701
(520) 622-6900
FAX (520) 622-0521
WWW.PD-LAW.COM

October 26, 2018

**VIA EMAIL: kevin.rapp@usdoj.gov**
**AND U.S. FIRST CLASS MAIL**

Kevin Rapp, Esq.
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Ste. 1200
Phoenix, AZ 85004-4408

Re:  United States v. Lacey, *et al.*, No. CR-18-00422-PHX-SPL (BSB)

Dear Kevin:

I am writing to request that the government comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and to provide you with an enumerated list of documents we believe fall within this mandate.[1] As acknowledged in Judge Logan's order on our request for itemization of *Brady/Giglio* material: "*Brady* places an affirmative duty on the prosecutor to seek out information in the government's possession that is favorable to the defendant; here, the Government has the duty to affirmatively review its discovery materials in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching materials." Doc. 339, p. 3.

This part of Judge Logan's order is, of course, based on well-settled case law. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *United States v. Price*, 566 F.3d 900, 908-09 (9th Cir. 2009); *United States v. W. R. Grace*, 401 F.Supp.2d 1069, 1075-76 (D. Mont. 2005), *id.*, as well as the Justice Manual which requires federal prosecutors to conduct a

---

[1] My October 23, 2018, letter to Reginald Jones specifically addressed the *Brady* and *Giglio* issues relating to the government's request to claw back "inadvertently" disclosed *Brady/Giglio* materials in specific government memoranda. This letter supplements that separate request.

PICCARRETA DAVIS KEENAN FIDEL PC

"review process" of investigative agency files, witness files, evidence and information gathered during the investigation, substantive case-related communications, potential *Giglio* information relating to witnesses, and information obtained in witness interviews. Justice Manual, § 9-5.002(B). The Justice Manual also states that "[h]aving gathered the information described above, prosecutors must ensure that the material is reviewed to identify discoverable information." *Id.*[2] Importantly, for the purposes of the *Brady/Giglio* material in this case, "[a] prosecutor must disclose information that is *inconsistent with any element of any crime charged* against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime." *Id.*, § 9-5.001(C)(1) (emphasis added). "[T]his policy encourages prosecutors to err on the side of disclosure in close questions of materiality and identify standards that favor greater disclosure in advance of trial through the production of exculpatory information that is *inconsistent with any element of any charged crime* and impeachment information that casts a substantial doubt upon either the accuracy of any evidence the government intends to rely on to prove an element of any charged crime or that might have a significant bearing on the admissibility of prosecution evidence." *Id.*, § 9-5.001(F) (emphasis added). As the defendants have previously noted, the Travel Act and money laundering offenses charged against the defendants are both specific intent crimes.[3] Therefore, any information in the government's possession that would tend to negate this *mens rea* is *Brady* material that must be disclosed to the defendants.

There appears to be no fundamental disagreement regarding your constitutional obligations. At the hearing on the motion for itemization of the *Brady/Giglio* materials, the government assured the court that the government understood and would comply with its *Brady/Giglio* obligations:

> THE COURT: If you do have exculpatory information, I'm sure it's your position that you'll turn that over immediately.
>
> MR. STONE: 100 percent. The exculpatory material is absolutely going over to the extent there is anything exculpatory. And we are doing our review as required under *Brady*,

---

[2] Internal Department of Justice memoranda also "command an *actual review* of the materials acquired during investigation of a criminal case for the purpose of disclosing *Brady/Giglio* materials." *United States v. Salyer*, 2010 WL 3036444, *3 (E. D. Cal. 2010) (citing *Memorandum for Department Prosecutors*, dated January 4, 2010).

[3] *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974); *United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003).

2

PICCARRETA DAVIS KEENAN FIDEL PC

> *Giglio*, and Rule 16 to determine what we might have in our investigative files, and that's going over.

Reporter's Transcript, October 5, 2018, p. 104.

However, after providing those assurances to the court, the government also stated that the agents working on this case have not pulled out anything that they consider exculpatory. *Id.* at 114 ("[W]e have not identified or segregated a document or subset of documents that would be identified as *Brady*"). The government added: "If we come across documents that fall into *Brady* or exculpatory, just to identify those to the defendants, we could do that, Your Honor." *Id.* As noted above, the government assured the court that the government would turn over any *Brady/Giglio* material that it comes across in the future to the defendants immediately. As a consequence, Judge Logan's order specifically "notes that at the October 5th hearing the Government stipulated that it will turn over any *Brady/Giglio* material that it comes across in the future to the Defendants within 10 days. The court implores the Government to abide by this stipulation, without an order from the court." Doc. 339, pp. 5-6.

Despite this pledge to adhere to legal obligations, the government made repeated statements to the court that the government is purportedly "unclear" or "unsure" about what exculpatory *Brady/Giglio* material "would look like." The government stated that, with respect to each specific defendant:

> here are the documents that relate to your defendant, why we think the allegations and the facts support the charges in the superseding indictment.
>
> What they have asked for is the converse of that, which is give us all the documents that help our clients that would be *Brady* material or possibly *Giglio*. And that's where the government's having difficulty identifying those documents, because we're not sure what those particular documents would look like.

*Id.* at 103. *See also id.* at 101 ("it's a little unclear what the exculpatory material would look like"), and 102 ("with respect to *Brady* or exculpatory, we're unsure what that would look like, Your Honor").

These statements are puzzling to the defendants because there is abundant information in the government's possession and/or generated by the government that is favorable and exculpatory to the defendants. Accordingly, by this letter, the defendants specifically advise the government as to areas that are *Brady/Giglio* materials and that

3

PICCARRETA DAVIS KEENAN FIDEL PC

we believe are subject to your office's pledge (and the Court's order) to be turned over immediately.

First, it is imperative that you produce some of the documents the government is attempting to claw back, identified as the initial category of *Brady/Giglio* materials, which the previous prosecutors readily identified as areas of exculpatory evidence. The memoranda coupled with the underlying documents and any other documents that the government locates relative to those issues should assist the government as a beginning point as to identifying additional *Brady/Giglio* material.

1. My October 23 letter to Mr. Jones explained that the government has already disclosed exculpatory materials that it now claims were inadvertently produced and seeks to claw back. It is the defendants' position that the government "inadvertently" disclosed *Brady* material that it was legally, ethically, and constitutionally required to disclose in the first place.[4] Although counsel for the defendants ceased their review of the purportedly inadvertently disclosed documents when the government made its claw-back request, counsel for the defendants had been in possession of these documents for weeks and had already reviewed the clearly exculpatory material. From memory, two internal government memoranda[5] contained *Brady/Giglio* material contradicting, legally and factually, the government's theory of the case, including statements made by the government at the hearing regarding the level of knowledge required for criminal prosecution. These *Brady/Giglio* memoranda also contain witness statements favorable to the defense, contain information contradicting representations made to federal magistrates, and contain material relevant to defendants' challenges to the grand jury proceedings and to the searches and seizures in this prosecution, the filing of additional pretrial motions, the cross-examination of government witnesses, and other purposes relating to the present criminal proceedings. The documents undoubtedly will be exhibits at multiple pretrial hearings and will be exhibits at trial.

---

[4] Indeed, it appears the primary reason the government seeks to claw back these materials is that they *are* very favorable to the defendants, and therefore, by definition, constitute *Brady* material. This is demonstrated quite clearly by the fact that the government previously disclosed (without any claim of work product privilege) an internal memorandum on the viability of prosecuting the defendants under 18 U.S.C. § 1591 containing conclusions unfavorable to the defense, but now seeks to withhold memoranda that are clearly favorable to the defense.

[5] *See* Declaration of Reginald E. Jones in support of United States' Motion to Compel Destruction of Inadvertently Produced Documents, p. 6 ¶ 20, and Privilege Log attached as Exhibit I.

4

PICCARRETA DAVIS KEENAN FIDEL PC

> *Brady/Giglio* materials would also include documentation backing up these government memoranda, *i.e.* interviews, documents, investigative memoranda, and other documents and materials referred to, or contributing to, the memoranda.

In addition to these specific documents, I list below some general areas that implicate the government's obligations under *Brady* and *Giglio*, followed by additional enumerated areas.

2. High-ranking Department of Justice officials have informed Congress that similar activities involving the posting of third-party advertisements by the website Craigslist could not be prosecuted under federal criminal law. The DOJ's National Coordinator for Child Exploitation, Prevention, and Interdiction, Francie Hakes, testified that "I am not aware of any laws that would make them [criminally] liable [for third-party postings], unless there was evidence that Craigslist was a participant…conspiring with those who were misusing their site, that is, knowingly conspiring to violate laws….I am not aware of anything that shows us that Craigslist might be criminally liable…." Domestic Minor Sex Trafficking: Hearing Before Subcommittee on Crime, Terrorism, & Homeland Security of the House Committee on the Judiciary, 111th Cong. 215-16 (2010). Any similar materials in the government's possession also constitute *Brady* material and must be disclosed immediately.

3. Key legislators very recently admitted (a little over a month before the government obtained its initial indictment in this matter) that "current federal criminal law…lacks proper prosecutorial tools to combat these websites" and "*general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim.*" House of Representatives Report 115-572 Part 1, p. 5, February 20, 2018 (emphasis added). Any similar information also constitutes *Brady* material that must be disclosed immediately.

In light of these examples, it is simply difficult for the defendants to fathom the government's claim that it would not know what *Brady/Giglio* materials "would look like." It is clear that *any* factual or legal matters that contradict the prosecution's theory of the case are, by definition, *Brady* materials that must be disclosed to the defendants. *See, e.g., Bies v. Sheldon*, 775 F.3d 386, 398-403 (6th Cir. 2014) (upholding the district court's finding of a *Brady* violation due to the state's suppression of "Evidence Undermining the State's Theory of the Case"); *Wolfe v. Clarke*, 819 F.Supp.2d 538, 558

5

PICCARRETA DAVIS KEENAN FIDEL PC

(E. D. Va. 2011) (vacating capital defendant's conviction after finding that the prosecution violated Brady by withholding investigation reports and interviews "undermining its theory of the case"). *See also United States v. Avellino*, 1995 WL 228352, *1 (E. D. N. Y. 1995) ("The government agreed to submit to the Court for determination any evidence which may contradict its theory of the case and about which it questions whether the evidence properly falls within the scope of *Brady* and/or *Giglio* and their progeny").

The defendants believe that these and similar materials are clearly *Brady/Giglio* materials that the government is legally, ethically, and constitutionally obligated to turn over to the defendants within 10 days, in accordance with the government's assurances to Judge Logan and the terms of his order. To be clear: we are not requesting that the government has to conduct searches or investigation other than what they have already done or will do in regards to prosecution of this matter. We do request, however, while conducting its normal investigation and pretrial preparation in accordance with its obligations under *Brady/Giglio* and the Justice Manual, that if this information is located, that it then be segregated and provided. None of us want this case to turn into another Ted Stevens fiasco.

Accordingly, and pursuant to the above authority, Mr. Padilla additionally requests the government to disclose the following additional information:[6]

   4. All communications to and from any federal, state, or local elected officials relating to the possible criminal prosecution of Backpage and its employees and officers. *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (due process prohibits prosecution based on improper influence exerted on the prosecutor to seek the indictments).

   5. All communications to and from any civil plaintiff's lawyers or advocates for alleged sex trafficking victims and local, state, and federal law enforcement agents, officers, investigators, prosecutors, and other officials involved in any manner with the investigation or prosecution of the website Backpage.com ("Backpage"). *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (due process prohibits prosecution based upon improper outside influences).

---

[6] Although "the duty to disclose such evidence is applicable even though there has been no request by the accused," *Strickler v. Greene*, 527 U.S. 263, 280 (1999), "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States v. Bagley*, 473 U.S. 667, 681 (1985).

PICCARRETA DAVIS KEENAN FIDEL PC

6. All documents and commendations from law enforcement to Backpage relating to Backpage's cooperation in any criminal investigations.[7]

7. All communications to and from local, state, and federal law enforcement agents, officers, investigators, prosecutors, and other officials involved in any matter with the investigation or prosecution relating to Backpage.

8. All communications to and from Nanci Clarence, or any lawyers representing Mr. Ferrer or Backpage, that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Ferrer that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

9. All communications to and from K.C. Maxwell or any lawyers representing Mr. Hyer or Backpage that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Hyer that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

10. All documents to and from Backpage and the National Center for Missing and Exploited Children (NCMEC) relating to possible unlawful activity involving underage individuals.

11. All documents sent by Backpage to law enforcement relating to cooperation with law enforcement efforts.

12. All Department of Justice memoranda relating to the department's understanding of the applicable law governing Backpage during the relevant time periods.

I am also requesting specific *Brady/Giglio* material relating to government witnesses, including cooperating individuals and co-defendants:

13. Any plea bargain, immunity agreement, explicit or implied agreement, or any other promises any witness has received or will receive from any federal, state or local authority in exchange for his or her testimony or cooperation in this case or in any other case.

---

[7] For reference, documents and communications include both tangible and electronic.

PICCARRETA DAVIS KEENAN FIDEL PC

14. Any information suggesting any bias, prejudice or motive that the witness may have for testifying falsely against the defendant. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *United States v. Abel*, 469 U.S. 45 (1984).

15. All promises, agreements, benefits, monies or anything of value whatsoever made to or provided to the witness, his/her family or friends by federal, state or local authorities in this matter or any other matter. *See United States v. Uramoto*, 638 F.2d 84, 86 (9th Cir. 1980); *United States v. Leja*, 568 F.2d 493 (6th Cir. 1977).

16. Any monies paid, or any other benefit provided, to any of the government's witnesses by the United States government or any other governmental agency that was in any way contingent upon the outcome of this or any other investigation as a result of information provided by any such witnesses. *United States v. Bagley*, 473 U.S. 667, 683 (1985).

17. All documents between the witness, or his/her representative and the government relating to the negotiations of the plea bargain agreement or where the witness has offered or proposed testimony. *Brown v. Dugger*, 831 F.2d 1547 (11th Cir. 1987) (evidence that witness sought plea bargain is to be disclosed even if no deal struck); *Haber v. Wainwright*, 756 F.2d 1520, 1524 (11th Cir. 1985).

18. Proffers and statements made by an accomplice witness in negotiating a cooperation agreement with the government, along with information revealing the negotiation process, including but not limited to any and all variations in the accomplice witness' statements. *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999).

19. All documents, including the government's reports which indicate instances of illegal behavior of the witness or specific instances of misconduct which relate in any manner whatsoever to the witness' credibility. *See* Rule 608(b), Federal Rules of Evidence. This request includes any law enforcement reports relating to these instances. *See United States v. Ray*, 731 F.2d 1361 (9th Cir. 1984).

20. Any prior contrary statements made by the government witness. *Giles v. Maryland*, 386 U.S. 66 (1967); *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547 (4th Cir. 1999).

21. The existence of any witnesses or witness statements favorable to the defendant. *United States v. Wilkins*, 326 F.2d 135 (2d Cir. 1964); *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968).

PICCARRETA DAVIS KEENAN FIDEL PC

22. Negative exculpatory statements, such as statements by informed witnesses that fail to implicate the defendants in any criminal activity. *See, e.g., United States v. Torres*, 719 F.2d 549, 555-56 (2d. Cir. 1983); *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978); *Clemmons v. Delo*, 124 F.3d 944, 952 (8th Cir. 1997); *White v. Helling*, 194 F.3d 937, 944 (8th Cir. 1999).

23. Any threats, express or implied, direct or indirect, or other coercion made or directed against the witnesses, including but not limited to, criminal prosecutions, investigations, other incidents which are pending or could be brought against the witnesses.

24. The existence and notification of each occasion upon which the witnesses testified before a Court, grand jury, or other tribunal or made other statements so defendant can order transcripts for use in cross-examination or investigation. *See* Rules 801(d)(1) and 806, Federal Rules of Evidence. *See also Davis v. Heyd*, 479 F.2d 446 (5th Cir. 1973).

25. Any grand jury statements of any witnesses which are favorable to the defendant. *United States v. Sink*, 56 F.R.D. 365 (E. D. Pa. 1972).

26. The identity of any witnesses who testified before the grand jury and who will be unavailable to testify at trial. Arizona State Bar Ethics Opinion No. 94-07 (March 1994). *See* LRCiv 83.2(e), Rules of Practice of the United States District Court for the District of Arizona.

27. Names and addresses of any witnesses to offenses charged in the indictment whom the government does not intend to call at trial. *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984) (it is appropriate "to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense").

28. In regard to law enforcement agents in this case, counsel requests to know whether there have been any prior instances of untruthful statements by the agents or any complaints filed with their governmental employer at any time relating to any incidents which relate in any manner whatsoever to the agent's credibility. *See* Rule 608(b), Federal Rules of Evidence; *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013).

29. It is further requested that the prosecutor further personally review the personnel files for *Brady* material.

PICCARRETA DAVIS KEENAN FIDEL PC

30. Any reports prepared by prosecution experts relating to the legality of the procedure used by government agents in the course of their investigation. *United States v. Gerena*, 116 F.R.D. 596 (D. Conn. 1987).

31. Evidence that is inconsistent with the witness' testimony. *United States v. Fisher*, 106 F.3d 622, 634-35 (5th Cir. 1997); *Ballinger v. Kerby*, 3 F.3d 1371, 1375-76 (10th Cir. 1993); *Derden v. McNeel*, 938 F.2d 605, 617 (5th Cir. 1991).

I would request that a copy of this letter be sent to your case agent or agents so that each agency is aware of this request.

Sincerely,

Michael L. Piccarreta

JK:mh
cc:  Brian Benczkowski, brian.benczkowski@usdoj.gov
     Peter Kozinets, peter.kozinets@usdoj.gov
     John Kucera, John.Kucera@usdoj.gov
     Reginald Jones, reginald.jones4@usdoj.gov
     Margaret Perlmeter, margaret.perlmeter@usdoj.gov
     Andrew Stone, andrew.stone@usdoj.gov
     Tom Bienert, tbienert@bmkattorneys.com
     Paul Cambria, pcambria@lglaw.com
     Robert Corn-Revere, bobcornrevere@dwt.com
     Bruce Feder, bf@federlawpa.com
     James Grant, jimgrant@dwt.com
     Michael Kimerer, mdk@kimerer.com
     Stephen Weiss, sweiss@karpweiss.com