Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com

Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
emccampbell@lglaw.com

*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br>vs.<br><br>Michael Lacey, *et al*.,<br><br>                    Defendants. | NO. CR-18-00422-PHX-SPL (BSB)<br><br>DEFENDANT LACEY'S<br>REPLY IN FURTHER SUPPORT OF<br>MOTION FOR RELEASE OF FUNDS<br>UNRELATED TO BACKPAGE AND<br>REQUEST FOR EXPEDITED RELIEF<br><br>(Oral argument requested) |

Defendant Michael Lacey, by and through his undersigned attorney, hereby submits the instant reply in further support of his Motion for Release of Funds Unrelated to Backpage and Request for Expedited Relief ("Motion"), which was filed on November 16, 2018 (Doc. 385). The government filed an untimely opposition to the Motion ("Opposition") (Doc. 412); which Mr. Lacey moved to strike on the basis that it was not timely submitted and the government offered no explanation for its failure to timely submit the Opposition or request an extension.

415.) To the extent this Court considers the untimely Opposition, this Court should, nonetheless, grant the Motion.  The government has seized assets that are not traceable to Backpage, has refused to consider the evidence Mr. Lacey submitted which demonstrates that assets unrelated to Backpage were accidentally mixed with Backpage-derived funds by an administrative assistant without Mr. Lacey's knowledge.  Indeed, Mr. Lacey can demonstrate that the funds were segregated and only an act of a third party resulted in any Backpage-related funds being deposited into his Republic Bank account ending in 2485.  At this time, Mr. Lacey has no other avenue for relief than this Court's equitable separation of the assets unrelated to Backpage.

## BACKGROUND

Recently, this Court entertained various challenges to seizure warrants directed at attorney IOLTA accounts.  (*See* Emergency Motion to Stay Seizure of Attorneys' Fees and Immediate Hearing ("First Motion to Stay"), Doc. 360; Emergency Motion to Stay Seizure ("Second Motion to Stay"), Doc. 365; Joinder in First Motion to Stay ("Joinder"), Doc. 366; Emergency Motion to Stay ("Third Motion to Stay"), Doc. 376.)  In addition to these motions, Mr. Larkin filed a Supplemental Brief in Support of Defendants' Emergency Motion to Stay ("Supplemental Motion to Stay").  (Doc. 377.)  In the Supplemental Motion to Stay, Mr. Larkin asserted that, in a recent communication with the government, the government claimed that two bank accounts that Mr. Larkin had understood to contain funds unrelated to Backpage had been traced to Backpage, and that use of those funds would constitute criminal conduct.  (*See id*.)  Mr. Larkin indicated that the government was unwilling to reveal its basis for claiming that the funds were traceable to Backpage and requested an immediate evidentiary hearing.  (*See id.*)

Then, on November 16, 2018, Mr. Lacey filed his Motion for Release of Funds Unrelated to Backpage and Request for Expedited Relief ("Motion").  (Doc. 385.)  In the Motion, Mr. Lacey requested that this Court issue an order directing the government to release funds held in three bank accounts (Republic Bank accounts ending in 2485, 1897, and 3126) because the government seized those funds on the basis that Mr. Lacey had comingled funds related to Backpage with funds unrelated to Backpage thereby rendering all of the funds held in those

accounts subject to pretrial restraint under the government's theory of the case against Backpage. (*See id*.)  Mr. Lacey demonstrated to this Court, as he had to the government many months earlier through email communications and at a meeting, that he had no knowledge of or involvement with the single, accidental deposit of funds related to Backpage into those three accounts, which did not otherwise contain funds related to Backpage.  Instead, an administrative assistant made the erroneous transfer, immediately rectified it (nearly a year before inception of this case), and offered to speak with the government about the error.  Mr. Lacey turned over this evidence to the government in a good faith effort to resolve this issue without judicial intervention, but the government refused to acknowledge its error or investigate.  For these reasons, Mr. Lacey came to this Court to seek the equitable release of the funds that were unrelated to Backpage for use for his defense and for protection of his constitutional rights.

On November 16, 2018, this Court held a hearing on the motions that had been briefed by the time of the hearing which included the First, Second, and Third Motions to Stay, the Supplemental Motion to Stay, and related submissions.  (*See* 11/16/18 Transcript, a true and correct copy of which is attached hereto as Ex. A (referring to Docs. 360, 363, 365, 366, 370, 371, 376, 377, 379, 382).)  During the hearing, there was no discussion or mention of Mr. Lacey's Motion (Doc. 385).  (*See id*.)  At the conclusion of the hearing, this Court announced an oral decision and order on the argued motions ("Order").  (*See id*. at 55-60.)  The Order indicated that it resolved the First, Second, and Third Motions for Stay (Doc. 360, 365, 376) and the Supplemental Motion for Stay (Doc. 377) and Court ruled that those motions were denied because there were no "persuasive reasons as to why the Court should interfere with the Central District of California's *issuance* of the seizure warrants."  (*Id*. at 57 (emphasis added).).

The Order did not mention or rule on Mr. Lacey's Motion.  (*See id*. (no discussion of Doc. 385.)  The Motion is pending before this Court with an untimely Opposition (Doc. 412).[1]

---

[1]     Because  Mr. Lacey's  Motion  remained  active  after  issuance  of  the  Order,  the government's opposition was due on November 30, 2018.  However, that date passed and the government did not file an opposition or a request an extension of its deadline.  On December 3,

**ARGUMENT**

**I.    This Court should strike the Government's Opposition as untimely and grant the Motion as unopposed.**

This reply hereby incorporates by reference the grounds for striking the Opposition as untimely and granting the Motion as unopposed as detailed in Mr. Lacey's Motion to Strike (Doc. 415). Mr. Lacey renews his request that this Court strike the Opposition as untimely and grant the Motion as unopposed.

**II.   This Court should grant the Motion because resolution of this Motion is not precluded by the Order.**

This Court should grant the Motion. The government contends that this Court should not entertain the merits of the Motion because it is akin to the Supplemental Motion which was denied in the Order and the Motion should be denied for the same reasons under the doctrine of the law of the case. The government is wrong. The law-of-the-case doctrine, which is a discretionary practice, is no barrier to consideration of this distinct Motion on its merits because the Order did not address the issues raised in the Motion.

The Supreme Court has explained that the "law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 716 (2016) (quotations omitted). However, the law-of-the-case doctrine "acts as a bar only when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Further, the doctrine "clearly does not extend

---

2018, Mr. Lacey filed a Notice of the Government's Non-Opposition to his Motion. (Doc. 403.) More than one week later, on December 11, 2018, the government filed its Response in Opposition to the Motion ("Opposition"). (Doc. 412.) The Opposition does not provide any excuse for why the government was unable to file an opposition or a request for an extension by November 30, 2018. (*See id.*) On December 12, 2018, Mr. Lacey moved to strike the government's Opposition as untimely and to grant the Motion as unopposed (Doc. 415), which the government opposed (Doc. 423).

1   to issues . . . [a] court did not address." *Id.* at 181 (quoting *Luckey v. Miller*, 929 F.2d 618, 621

2   (11th Cir. 1991)).  For these reasons, the Ninth Circuit has recognized several exceptions to the

3   doctrine: "(1) the first decision was clearly erroneous; (2) an intervening change in the law

4   has occurred; (3) the evidence on remand is substantially different; (4) other changed

5   circumstances exist; (5) a manifest injustice would otherwise result." *Thomas v. Bible*, 983

6   F.2d 152, 155 (9th Cir. 1993).

7          Separate from articulation of the contours of the doctrine and its exceptions, the Supreme

8   Court has made it clear that the doctrine is not a jurisdictional barrier.  *See Christianson v. Colt*

9   *Indus. Oper. Corp.*, 486 U.S. 800, 817 (1988) (recognizing that the doctrine "merely expresses

10  the practice of courts generally to refuse to reopen what has been decided, not a limit to their

11  power"); *Musacchio*, 136 S. Ct. at 716 (describing the doctrine as a "practice" that "does not

12  limit courts' power" (quotations omitted)); *see also Milgard Tempering, Inc. v. Selas Corp. of*

13  *Am.*, 902 F.2d 703, 715 (9th Cir. 1990) ("Application of the doctrine is discretionary.").  Indeed,

14  the Court has explained that, as a matter of jurisdiction, "[a] court has the power to revisit prior

15  decisions of its own . . . in *any* circumstance," even though a court should not do so absent

16  "extraordinary circumstances."  *Christianson*, 486 U.S. at 817 (emphasis added).

17         In this case, the doctrine is no barrier to this Court's resolution of this Motion.  First, this

18  Motion involves consideration of substantially different facts and relief sought.  For example,

19  these substantial factual differences preclude application of the doctrine to the Motion:  (1) Mr.

20  Lacey's Motion asserts that the government seized funds through *execution* of a *specific* search

21  warrant (Doc. 385 at 8), whereas the Supplemental Motion asserts that the government

22  *threatened new criminal charges* for use or access of funds but is unclear as to whether a seizure

23  warrant was at issue (Doc. 377 at 1); (2) Mr. Lacey's Motion indicates that he made an

24  evidentiary presentation to the government to demonstrate that the funds were unrelated to

25  Backpage (Doc. 385 at 10-11), whereas the Supplemental Motion does not indicate that such a

26  presentation was made to the government (Doc. 377 at 2); (3) Mr. Lacey's Motion demonstrated

27  that he had no knowledge or involvement with the single, accidental deposit of funds that

28

purportedly tainted his accounts which undermined the government's basis for restraint (Doc. 385 at 10-11), whereas the Supplemental Motion indicates that, at the time of filing, counsel was not yet aware of the government's basis for restraint because the government had not revealed it (Doc. 377 at 2); and (4) Mr. Lacey's Motion indicates that the government refused to review or investigate Mr. Lacey's evidence (Doc. 385 at 11), whereas the Supplemental Motion does not indicate that the government refused to consider evidence (Doc. 377 at 2).

More importantly, the Motion and Supplemental Motion seek entirely different relief from this Court.  In the Motion, Mr. Lacey sought the equitable separation of assets accidentally combined to use those assets to fund his defense.  (Doc. 385 at 16.)  In contrast, the Supplemental Motion sought an expedited briefing schedule and an evidentiary hearing on the propriety of the government's threat to bring new criminal charges.  (Doc. 377 at 2.)

These distinctions make a difference.  The Motion does not ask this Court to interfere with another court's authorization of enforcement of a seizure warrant like the Stay Motions (Docs. 360, 365, 366, 376).  This Motion does not ask this Court to hold a hearing on the threat of new criminal charges in connection with a defendant's use of funds like the Supplemental Motion (Doc. 377).  The seizure warrant at issue in this case was executed months ago and this Motion does not challenge the government's application for that seizure warrant or the authorization of it by the Central District of California.  For that reason, this Motion is not a collateral attack on an order of another court of coordinate jurisdiction as contemplated by the Ninth Circuit in *Delson Gr., Inc. v. GSM Ass'n*, 570 F. App'x 690 (9th Cir. 2014); *Ord v. United States*, 8 F. App'x 852 (9th Cir. 2001); and *Treadway v. Academy of Motion Pictures Arts & Sciences*, 783 F.2d 1418 (1986) and cited in the Order.  (*See* Ex. C at 55.)  Instead, this Motion challenges the continued retention of the funds held in three bank accounts in light of the fact that Mr. Lacey had no knowledge or involvement with the accidental transfer of Backpage-related funds by an administrative assistant into the Republic Bank account ending in 2485 and asks this Court to craft an equitable remedy to a problem that the government created by refusing to separate non-Backpage funds combined solely as the result of a clerical error.

In light of these substantially different facts and relief sought, this Court should decline to deny the Motion under application of the doctrine of the rule of the case and resolve this distinct Motion on its merits. *See Cote*, 51 F.3d at 181 (declining application of the "law of the case doctrine" because the prior decision "does not indicate the court considered and decided the issue presented" that was now before the court). Declining to apply the doctrine to foreclose consideration of the Motion is the correct result even though both the Motion and the Supplemental Motion address, in a general sense, the government's seizure of assets, because once that very general similarity is set aside, the Motion and Supplemental Motion raise distinct issues by different parties who seek different relief. The Ninth Circuit's opinion in *Milgard Tempering, Inc.* is instructive. In that case, the district court interpreted a contract provision as allowing a furnace manufacturer to obtain attorneys' fees if the manufacturer prevailed on a specific contractual defense. *See Milgard Tempering, Inc.*, 902 F.2d at 706, 715-16. On remand, the manufacturer lost on the merits of the dispute, and the furnace purchaser sought attorneys' fees under the same provision of the contract, asserting that the doctrine of the law of the case foreclosed denial of attorneys' fees. *See id.* at 715-16. The Ninth Circuit explained that the district court's prior interpretation of that provision as applying to the manufacturer on a specific defense was a separate issue from whether *any* party under the contract could seek attorneys' fees for prevailing on *any* dispute under the contract. *See id.* For that reason, the doctrine of the law of the case was inapplicable. *See id.*

Second, a denial of the Motion under the doctrine of the law of the case would result in manifest injustice. In the Order, this Court explained that the other motions were denied because this Court did not want to undertake any actions that could be said to "interfere" with the orders of a court of coordinate jurisdiction. (Ex. C at 55.) Notably, the government advocated for this result at the November 16, 2018 hearing, indicating that defendants could litigate their challenges to seizure warrants in the Central District of California. In particular, the government informed this Court that any challenge to the pretrial restraint of defendants' assets other than a *Monsanto* hearing, including a challenge brought under *Franks v. Delaware*, 438 U.S. 154 (1978), should

be brought in the Central District of California.[2]  (*See* Ex. C at 7.)  To the extent that the government's statement about the availability of other venues for litigation of the pretrial restraint of defendants' assets impacted the Court's analysis in the Order, the government's conduct since the hearing demonstrates that this Court should entertain this Motion on its merits because the government will seek to avoid judicial review of its actions outside this District.

Critically, days after the government's averments at the November 16, 2018 hearing, defendants pursued their challenge to the seizure warrants that the government obtained to seize the attorney IOLTA accounts at issue in this Court's Order in the Central District of California by filing an Application and Motion to (1) Stay Execution of Seizure Warrants; and (2) Provide Notice to the Court of First Amendment and *Franks* Violations under the eight sealed dockets (18-MJ-02872, 18-MJ-02873, 18-MJ-02874, 18-MJ-02875, 18-MJ-02876, 18-MJ-02878, 18-MJ-02880, and 18-MJ-02883).  Defendants did exactly what the government told this Court they should do.  Unsurprisingly, the government's opposition to the Application and Motion sought to evade judicial review of the seizure warrants by asking the court to deny the motion as moot because the seizure warrants had expired by the time the Application and Motion was filed (even though the government was silent as to whether it would seek or had sought new seizure warrants not yet disclosed to the parties or the courts).  Given this history, the only available venue for this Motion is this Court.  While the parties continue to litigate the Application and Motion in

---

[2]     Defendants found this statement to be surprising in light of the history of the parties' litigation of the government's pretrial restraint of defendants' assets in the Central District of California.  On August 1, 2018, Defendants filed a Motion to Vacate or Modify Seizure Warrants, which challenged the seizure warrants on a variety of grounds, including violations of *Franks* under the docket 18-CV-06742.  The government responded by telling the Central District of California that the defendants' challenges should not be heard in that District, but instead should be heard in the District of Arizona.  Shortly thereafter, the government sought an *ex parte* stay of all litigation in the Central District of California, which was granted and which is on appeal to the Ninth Circuit.  There is nothing about the way the government litigated the pretrial restraint of defendants' assets that suggests that the government is receptive to judicial review of the merits of its actions in the Central District of California or anywhere.

the Central District of California, the government's handling of that litigation demonstrates that this Motion should not face the same fate as the motions resolved in the Order because the government will make sure that there will be no opportunity to litigate this Motion in the Central District of California.

**III.    This Court should grant the equitable relief sought in the Motion—the separation of assets unrelated to Backpage—because there is no other avenue for Mr. Lacey to regain access to his innocent funds.**

This Court should grant the Motion.  The government contends that the Motion should be denied because it is a motion for release under Rule 41(g) of the Federal Rules of Criminal Procedure ("Rule 41(g)") and such motions must be denied when there is a remedy at law which the government claims exists for this dispute.  (*See* Opp'n at 5-6.)  The government's misclassification of this Motion does not support denial of the Motion and this Court has the inherent and equitable jurisdiction to entertain it and to grant the relief sought.

Mr. Lacey did not invoke Rule 41(g) because this Motion is not for the return of specific property under Rule 41(g).  Quite differently, this Motion seeks the equitable separation of funds unrelated to Backpage from funds related to Backpage as a matter of this Court's inherent and equitable jurisdiction.  There is no remedy at law because in this Motion Mr. Lacey is not challenging the method by which the government seized his bank accounts (such as the veracity of the seizure warrant and warrant application).  Instead, he is challenging the government's continued retention of such funds and the government's refusal to acknowledge and release funds that were accidentally combined through no act of Mr. Lacey.  Similarly, the Motion does not seek relief under *United States v. Monsanto*, 491 U.S. 600 (1989).  Although Mr. Lacey may, in the future pursue a *Monsanto*-related motion, he has not sought such relief in this Motion and this Court should reject the government's attempt to shoehorn this Motion into that format.

Instead, this Court has the inherent and equitable jurisdiction to fashion a remedy to resolve this Motion.  *See Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable

powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (recognizing that, in the absence of specific statutory authority, courts still have equitable "power" which is "resident in the District Court"); *United States v. Coca-Cola Bottling Co.*, 575 F.2d 222, 228 (9th Cir. 1978) ("The equity jurisdiction of the federal courts traditionally has permitted the fashioning of broad and flexible decrees molded to the necessities of the individual case."); *see also United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) (recognizing that courts have inherent "supervisory powers" to "remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct").

It is equally important to this Court's resolution of the Motion that the government ***did not dispute a single fact*** set forth in the Motion.  Consequently, this Court should consider the following undisputed facts in reaching an equitable resolution of the Motion:  (1) the Republic Bank account ending in 2485 held funds unrelated to Backpage; (2) an administrative assistant accidentally transferred funds related to Backpage into that account without authorization to make that transfer; (3) the administrative assistant rectified that error; (4) Mr. Lacey had no knowledge about or involvement with the accidental transfer and only learned about it after his accounts were restrained; (5) Mr. Lacey investigated the transfer and presented bank records and a declaration from the administrative assistant to the government to demonstrate that he lacked the intent to consciously comingle funds; and (6) the government refused to review the evidence or to investigate the validity of its continued retention of funds unrelated to Backpage held in three separate bank accounts (Republic Bank accounts ending in 2485, 1897, and 3126).  (*See* Doc. 385 at 8-11.)  The absence of knowing and conscious comingling by Mr. Lacey deprives the government of its reliance on the taint doctrine.  (*See* Doc. 385 at 13-15.)

Because this Court has the authority to fashion a remedy for this Motion and because the government does not dispute the facts presented, Mr. Lacey respectfully requests that this Court grant the Motion.  This Court has the inherent and equitable authority to grant the relief requested

and to fashion a remedy for the government's unfair conduct as akin to the equitable remedies of a mandatory injunction, an accounting, a constructive trust, an equitable rescission, and a partition.  Mr. Lacey is not asking for anything more than the separation of his funds unrelated to Backpage for his defense to the instant action.  Because the government has seized nearly all of his assets, his financial position is tenuous and he is unable to fulfill his financial obligations, including funding his defense and protecting his constitutional rights.  (*See* Doc. 385 at 12.)  Mr. Lacey has not asked this Court to weigh in on the propriety of the seizure warrants for these accounts or for any other accounts.  He solely request that this Court enter an order separating funds that are indisputably untraceable to Backpage for use for his defense to this prosecution.

## CONCLUSION

For all these reasons, Mr. Lacey respectfully requests an order directing the government to release the funds held in Republic Bank accounts ending in 2485, 1897, and 3126.  These funds, of approximately $1.1 million, are wholly unrelated to Backpage, and are vital to Mr. Lacey's ability to defend the instant action, protect his constitutional rights, and survive pending trial.

RESPECTFULLY SUBMITTED this 18th day of December, 2018,

/s/     *Paul J. Cambria, Jr.*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

11

On December 18, 2018, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov