ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Michael Lacey, et al.,<br><br>　　　　　　Defendants. | CR-18-422-PHX-SPL (BSB)<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION FOR ACCESS TO THE JOINT REPRESENTATION AND JOINT DEFENSE AGREEMENTS PREVIOUSLY SUBMITTED BY DEFENDANTS MICHAEL LACEY AND JAMES LARKIN FOR *IN CAMERA* REVIEW (CR 354)** |

Preliminary Statement

The United States' Motion for Access seeks copies of the Joint Engagement Letter dated December 12, 2016 (Engagement Letter), the Common Interest/Litigation Management Agreement dated December 31, 2016 (Joint Representation Agreement or JRA), and the Joint Defense Agreement dated June 2017 (JDA). (CR 180 at 6-8 (Exhibits

A-C, respectively, to the *in camera* Grant Declaration).) Despite recognizing "it may be difficult for the Government to understand what it cannot see," the Court based its Disqualification Order on "express [conflict of interest waivers in] the JRA and JDA." (CR 338 at 7, 9.) Moreover, the Court based its Privilege Order on JDA terms that purportedly prevent Backpage.com's CEO and 100% owner, Carl Ferrer, from waiving Backpage.com's corporate attorney-client privilege. (CR 345 at 4.) While the Court stated that the government had not challenged the agreements' "validity" (CR 338 at 7 n.5; CR 345 at 4 n.3), the government presented a 45-paragraph declaration from Ferrer that vigorously disputed the validity and scope of any conflict of interest waivers in the agreements. (CR 193 at 6-9; CR 193-9, Ex. I (Ferrer Decl.).) Ferrer averred in detail that the waivers were *not* knowing, intelligent and voluntary—and did not validly waive the conflicts highlighted in the government's disqualification motion. (Ferrer Decl. ¶¶ 23-44; *see* CR 118.) *Cf. United States v. Caramadre*, 892 F. Supp. 2d 397, 405-07 (D.R.I. 2012) (applying conflict waiver where the government's main cooperating witness *confirmed* in open court that he had knowingly, intelligently and voluntarily waived the conflict).

Given the sharp divide between the Ferrer Declaration and the Court's Disqualification Order, the government sought access to the agreements so that it could meaningfully evaluate and understand the basis of the Court's rulings. As the Motion for Access demonstrates, Defendants Michael Lacey and Jim Larkin (Defendants) never met their burden of establishing that the agreements reveal confidential legal communications between a client and lawyer—or that any other basis for asserting privilege exists. (CR 354 at 2-4.) In their Response, Defendants still have not met that burden – rather, they merely assert that some unidentified basis for privilege obtains. (CR 408 at 12.) Nor do Defendants contest that the agreements are highly relevant and material to understanding the Disqualification and Privilege Orders. Rather, the main theme of Defendants' Response is that it's too late to seek access to the agreements. As explained below, Defendants' assertions miss the mark, and the Motion for Access should be granted.

<u>Argument</u>

**I.     DEFENDANTS' PRELIMINARY ARGUMENTS LACK MERIT.**

Defendants' timeliness and waiver arguments should be rejected. (Doc. 408 at 6-9.) If anything, the Court's Orders underscore why disclosure is warranted now more than ever. The agreements' conflict and privilege waivers formed the basis of the Disqualification and Privilege Orders. (CR 338 at 7, 9; CR 345 at 4.) The Court indicated the government cannot meaningfully understand and assess the Orders without access to these materials. (*See* CR 338 at 9.) In other contexts, courts recognize that materials that form the basis of critical judicial decisions should be disclosed. *See, e.g.*, *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465-66 (9th Cir. 1990) (plea agreements); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (dispositive motions and attachments); *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002) (agreements reflecting a federal judge's input). The agreements are not privileged, *see* Parts II-III, *infra*—and the Court's reliance on them in deciding issues of acute importance justifies their disclosure.

*United States v. Caramadre*, cited on page 13 of the Response, further demonstrates why the government's Motion should be granted now. The court conducted an extensive inquiry into whether the government's cooperating witness, Maggiacomo, had entered into a conflict waiver sufficient to defeat the government's motion to disqualify his former attorney from representing the charged defendant. The court reviewed the cooperator's written waiver *in camera*, and then confirmed—through questioning in open court—that the waiver was valid. *Caramadre*, 892 F. Supp. 2d at 400-01, 405-06. The court inquired of Maggiacomo "to ensure [he] understood the potential consequences of [his] waivers," and he testified he was "making [a] knowing, intelligent, and voluntary waiver[ ] of the conflict." *Id*. at 408. Significantly, the court noted the government had failed to provide "any evidence that Maggiacomo's consent was involuntary or uninformed." *Id*. at 406.

Here, in contrast, the government presented extensive evidence—from Ferrer—that the waivers at issue were *not* knowing, intelligent or voluntary. Ferrer averred it was his

understanding, after signing the Engagement Letter, "that if any of the individual defendants became adverse to one another, that DWT [Davis Wright Tremaine] would immediately cease representing all the previously represented individual defendants. I never agreed to waive all conflicts regarding such joint representation…." (Ferrer Decl. ¶ 26.) He "did not consult with any independent lawyer before signing…and no DWT attorney ever recommended that I do so," and he did not recall "ever discussing the nature of potential conflicts that may arise…before signing." (Ferrer Decl. ¶ 27.)

Ferrer similarly did not provide informed consent regarding the JRA, which was sent to him with other documents as part of a larger re-negotiation of the debt he owed to Lacey and Larkin. (Ferrer Decl. ¶¶ 30-34.) He was given only 48 hours to review and sign, and felt he had "no choice but to sign" to avoid "financial ruin." (Ferrer Decl. ¶¶ 30-34.) He did not intend to waive future conflicts, especially those that could arise in criminal proceedings. (Ferrer Decl. ¶ 35.) Rather, "[t]he possibility of future conflicts of interest among the parties was never discussed before I signed," and Larkin's lawyer, Don Moon, discouraged Ferrer from discussing the JRA with his own personal lawyers "because he said that doing so would be a 'waste of time.'" (Ferrer Decl. ¶¶ 36-37.) *Cf*. ER 1.0(e); ER 1.7, comment 21 (requirements for informed consent to future conflicts); *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement and Power Dist.*, 810 F. Supp. 2d. 929, 950-57 (D. Ariz. 2011) (waiver must address scenario that results in conflict).

Ferrer also contested whether the JDA contained an advance conflict waiver regarding his personal attorneys (including DWT). He stated it was his understanding that the JDA "was formed to allow the lawyers for the individual targets and subjects to share materials and access a shared database of Backpage.com documents." (Ferrer Decl. ¶ 40.) It was not his understanding that he "would be waiving any future conflicts of interest involving my own personal attorneys." (Ferrer Decl. ¶ 41.) As far as he knew, DWT was not a party to the JDA. (Ferrer Decl. ¶¶ 42-43.)

Where—as here—significant rulings are based on waivers that the signatory declares were invalid, the Court should at a minimum allow the government access to the

pertinent provisions of the agreements so that it can meaningfully understand and assess the basis for the Court's rulings. Without access, the government cannot evaluate whether, *inter alia*: (1) the agreements described the present conflicts sufficiently to allow Ferrer to have provided informed consent; (2) the agreements show Ferrer was afforded meaningful opportunity to obtain independent advice; (3) the conflict waivers apply to DWT representations predating this case and/or Ferrer's execution of the agreements; and (4) the agreements restrict Ferrer, as Backpage.com's CEO and 100% owner, from waiving Backpage.com's corporate attorney-client privilege for communications generated at any time since the company's founding in 2004.

This case is nothing like *United States v. Murguia-Rodriguez*, 815 F.3d 566, 573 (9th Cir. 2016) (CR 408 at 7-9), which recognized the established rule that the government waives harmless error in an appellate brief when it makes no harmlessness argument, or merely "mentions" harmlessness without providing any supporting argument. In its disqualification briefing, the government expressly requested access to the JRA, argued the agreement was not privileged, and provided a declaration demonstrating why the agreement is not privileged and should be disclosed. (CR 193 at 7; Ferrer Decl. ¶¶ 28-38.) The government also quoted the Engagement Letter, which stated that "[i]f an incurable conflict were to arise among the three of you [Ferrer and Defendants Lacey and Larkin]…DWT will withdraw from representing each and all of you individually…." (CR 118 at 2, n.1; CR 193 at 6-7.) More generally, the government vigorously contested the validity and applicability of any conflict waivers in the agreements (*see* CR 193 at 3, 6-9; Ferrer Decl. ¶¶ 27-37, 42).[1]

Nor is this case anything like *United States v. Hoffman*, 2015 WL 5604419 (E.D.

---

[1] The government also repeatedly cited *United States v. Stepney*, 246 F. Supp. 2d 1069 (N.D. Cal. 2003) (CR 192 at 5, 10; CR 193 at 7; CR 194 at 3), which recognizes that JDAs generally are *not* privileged. 246 F. Supp. 2d at 1078 (quoting *United States v. Hsia*, 81 F. Supp. 2d 7, 11 n.3 (D.D.C. 2000) ("expressing doubt that 'either the existence or the terms of a [joint defense agreement] are privileged'")). While *Stepney* ordered *in camera* submission (so the court could review the agreements to ensure they protected the co-defendants' rights), the court was not presented with a request by the government for access. *Id.* at 1072-73.

- 5 -

Cal. Sept. 23, 2015) (CR 408 at 6-9). In *Hoffman*, the court had given the government three months to file its oppositions to the defendants' dismissal motions, but the deadline came and went with no opposition briefs filed. 2015 WL 5604419 at *1. By the time of the motion hearing, the government had failed to file anything—not even an extension request. *Id*. Based on such "demonstrated apathy" for the court's deadlines, the court declined to consider the government's late-filed arguments. *Id*. at *3. In contrast, the government here filed its disqualification motion at the earliest possible stage – within a month of Defendants' indictments. (CR 118.) The government timely filed detailed replies (CRs 192, 193, 194) that conscientiously addressed a waterfront of arguments presented in four responses. (CRs 174, 176, 177, 180.) The government promptly filed its Motion for Access within two weeks of the Disqualification Order. *Hoffman* is inapposite.

Alternatively, even if waiver applies, the Court retains discretion to consider the government's access arguments. *Hoffman*, 2015 WL 5604419, at *2. The Court should consider those arguments because the government diligently briefed and argued the disqualification and privilege motions, promptly filed the Motion for Access after receiving the Disqualification and Privilege Orders, and demonstrated why the agreements are not privileged and should be disclosed. (*See generally* CR 345.) Moreover, as explained *supra*, given the contrast between the Ferrer Declaration (which is not discussed in the Disqualification or Privilege Orders) and the waivers that formed the basis of the Court's rulings, the government has an abiding interest in reviewing the *in camera* submissions so that it may make fully informed decisions about subsequent litigation (if any) regarding these issues.

Defendants' assertion that any related motions or appeals would force them "to bear extra costs" is misplaced. (CR 408 at 10.) As explained *infra*, the law is clear that these materials generally are not privileged. Rather than consent to disclosure or offer redacted copies, Defendants filed a lengthy Response that does nothing to meet their burden of

showing that the agreements are privileged.[2]  Moreover, Defendants cannot insist on representation by "an attorney who has a previous…relationship with an opposing party, even when the opposing party is the Government," *Wheat v. United States*, 486 U.S. 153, 159 (1988), and courts have chastised the government for not raising at the earliest possible stages precisely the types of conflicts of interest posed by DWT's (and HCM's) representation of Defendants in view of their extensive prior representations of Ferrer.  (*See* CR 118 at 13-14, citing *United States v. Iorizzo*, 786 F.2d 52 (2d Cir. 1986) (reversing and ordering new trial).)  The costs of a new trial—for Defendants, the government, the Court and the public—would far exceed any costs associated with limited additional motion practice involving the agreements underlying the Disqualification and Privilege Orders.  Simply put, the government wants to get this right—and trusts Defendants share that goal.

## II.    THE AGREEMENTS ARE NOT PRIVILEGED.

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  The privilege is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies. *Vasudevan Software, Inc. v. IBM Corp.*, 2011 WL 1599646, at *1 (N.D. Cal. Apr. 27, 2011).  *See also Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("The burden of establishing that the attorney-client privilege applies to the documents in question rests with the party asserting the privilege," and "blanket assertions of the privilege are 'extremely disfavored'"; upholding district court's requirement that privilege proponent justify "each requested redaction"); *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir. 1982) (party asserting privilege should submit documents "*in camera*

---

[2] Defendants Lacey and Larkin also assert that they their litigation budget has been affected by "extensive seizures of defendants' assets and attorney retainers."  (CR 408 at 10.) However, the government has repeatedly offered that Defendants could request a hearing pursuant to *United States v. Monsanto*, 491 U.S. 600 (1989), or submit financial statements *in camera* to the Court, if they believed that they are having any difficulties with defense costs.  Defendants have not availed themselves of this invitation.

for the court's inspection, *providing an explanation of how the information fits within the privilege*") (emphasis added); *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992) (same).

"The Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine." *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 599–600 (S.D. Cal. 2014); *see also* CR 354 at 3 (citing cases). Similarly, joint defense agreements generally are not considered privileged. *See, e.g., Stepney*, 246 F. Supp. 2d at 1078 ("To the extent that joint defense agreements simply set forth the existence of attorney-client relationships—implied or otherwise—between various attorneys and defendants, the contents of such agreements do not fall within the attorney-client privilege."); *see also* CR 354 at 4 (citing cases).

Defendants assert—without support and in entirely circular fashion—that the agreements are privileged "because they contain the types of information the Ninth Circuit has recognized as privileged…." (CR 408 at 12.) Defendants claim these "types of information" include:

> (1) any document reflecting "the client's ultimate motive for litigation or for retention of an attorney"; (2) "[c]onfidential communications between attorney and client made in order to obtain legal assistance"; (3) "correspondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy"; and (4) documents that "reveal the nature of services provided."

(CR 408 at 12, quoting *In re Grand Jury Witness (Salas)*, 695 F.2d at 362.) Yet Defendants have made no showing that the agreements contain any of these categories of information. For instance, Defendants have not demonstrated that any of the agreements reveal confidential communications between a client and a lawyer transmitting legal advice. The JRA consists of a 10-page, single-spaced contract between Lacey, Larkin, Ferrer, and entities they respectively controlled; it is *not* a communication between a client and a lawyer. (Ferrer Decl. ¶¶ 28-29.) The JDA memorializes the terms of the parties' information-sharing arrangements. (*See* CR 345 at 4.) Defendants have not shown that the documents disclose the contents of confidential legal advice transmitted between lawyer and client, specific litigation strategies or theories, or descriptions of legal services

performed. Accordingly, the agreements are not privileged and should be disclosed.

The cases Defendants cite provide instructive counter-examples showing why the government's request is reasonable. (*See* CR 408 at 12-13.) Unlike *In re Horn*, 976 F.2d at 1319, which involved a grand jury subpoena "seek[ing] the widest possible range of privileged information…by and between a large number of entities…over 6½ years," or *In re Grand Jury Witness (Salas)*, 695 F.2d at 361, which concerned subpoenas for attorney time records describing services performed and retainer contracts spanning a 6-year period, the government here seeks only three specific documents. (CR 345 at 1.) As explained above, none of the documents sought are privileged. (*See also* CR 345 at 3-4.)

Moreover, unlike *Hunydee v. United States*, 355 F.2d 183, 184 (9th Cir. 1965), which involved communications between co-defendants and their attorneys concerning a defendant's intent to plead guilty to "clear" the other defendant (his wife), or *Eisenberg v. Gagnon*, 766 F.2d 770, 787-88 (3d Cir. 1985), which concerned the disclosure of correspondence between a co-defendant and an attorney regarding a case-related fact and a proposed trial strategy to deal with that fact, the United States does *not* seek the disclosure of any similar co-defendant communications.

The United States does not contend that *in camera* procedures are unavailable when a party seeks to submit materials it contends are privileged. (*Cf.* CR 408 at 13-14.) Nor does the government seek to intrude on Defendants' attorney-client privilege or gain "any hint" of defense strategies. Rather, the United States seeks the disclosure of the contractual provisions (conflict and privilege waivers, and any related terms) that informed the Disqualification and Privilege Orders. Defendants have not shown, and cannot show, that these materials are privileged and protected from disclosure.

**III.   ANY PRIVILEGE HAS BEEN WAIVED.**

The government incorporates by this reference its argument that Defendants impliedly waived any privileges or protections applicable to the agreements. (*See* CR 354 at 8-10.) The Response does not meaningfully contest this argument. Instead, Defendants point to the unremarkable fact that *in camera* submissions are permitted in disputes

involving allegedly privileged materials. (CR 408 at 13-14.) Defendants cite no cases in which a signatory to the conflict waivers at issue testifies that the waivers were *not* knowing, intelligent and voluntary.

For all the reasons discussed above, the Court should order disclosure of the three agreements at issue. Alternatively, if the Court concludes that the agreements contain any privileged categories of information, the government respectfully requests that the Court order Defendants to redact the agreements and disclose the following:

(1) the conflict of interest waiver provisions in the Engagement Letter, JRA and JDA, along with any supporting provisions that may indicate if (a) Ferrer was afforded the opportunity to obtain independent legal advice, (b) likely future conflict scenarios were explained to Ferrer before he signed, (c) notice was provided Ferrer of the parties, lawyers and/or law firms covered by the waivers, and (d) the waivers applied to DWT representations predating this case and/or Ferrer's execution of the agreements; and

(2) the provisions of the JDA on which the Court relied in finding that "the plain text of the JDA" prevented Ferrer from waiving Backpage.com's corporate attorney-client privilege without "first obtain[ing] the written consent of all parties who may be entitled to a claim of privilege over the materials," and JDA provisions that "set forth other protections for information and communications exchanged between [the] parties" (CR 345 at 4) and/or indicate that the JDA includes all Backpage.com privileged communications generated since the company's founding in 2004.

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court: (1) order Defendants Lacey and Larkin to provide the government copies of the agreements attached as Exhibits A-C to the Grant Declaration (*see* CR 180 at 6-8); and (2) continue the deadline for seeking reconsideration of the Disqualification and Privilege Orders to 14 days after service of the agreements. (CR 354-1.)

Respectfully submitted this 4th day of January, 2019.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/ Peter S. Kozinets*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA
Assistant U.S. Attorneys

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, January 4, 2019, I transmitted the foregoing under-seal document for filing to the Clerk of the United States District Court and sent a copy via electronic mail to: Paul J. Cambria Jr. Esq. and Erin e. McCambpell, Esq., Lipsitz Green Scime Cambria, LLC, 42 Deleware Ave, Suite 120, Buffalo, NY 14202, **pcambria@lglaw.com** and **emccampbell@lglaw.com**, Thomas H. Bienert, Jr., Esq., Anthony R. Bisconti, Esq., Kenneth M. Miller, Esq., and Whitney Bernstein, Esq., Bienart, Miller & Katzman, PLC, 903 Calle Amanecer, Suite 350, San Clemente, CA 92673, **tbienert@bmkattorneys.com, tbisconti@bmkattorneys.com, kmiller@bmkattorneys.com, wbernstein@bmkattorneys.com**; Mike Piccarreta, Esq., Piccarreta Davis Keenan Fidel, PC, 2 East Congress Street, Suite 1000, Tucson, AZ 85701, **mlp@pdlaw.com**; Jim Grant Esq., Davis Wright Termaine, LLP, 1201 Third Avenue, Suite 2200, Seattle, WA 98101, **jimgrant@dwt.com**; Michael D. Kimerer, Esq. and Rhonda Elaine Neff, Esq., 1313 E. Osborn Road, Suite 100, Phoenix, AZ 85014, **MDK@kimerer.com** and **rneff@kimerer.com**; Steve Weiss Esq., Karp & Weiss, PC, 3060 North Swan Rd., Tucson, AZ 85712, **sweiss@karpweiss.com;** Robert Corn-Revere Esq., Davis Wright Termaine, LLP, 1919 Pennsylvania Avenue N.W., Suite 800, Washington, D.C., 20006, **bobcornrevere@dwt.com**; Bruce Feder, Esq., 2930 East Camelback Road, Suite 160, Phoenix, AZ 85016, **bf@federlawpa.com**; Gary Linenberg, Esq., Ariel Neuman, Esq., Gopi K. Panchapakesan, Esq., Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C., 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067, **glincenberg@birdmarella.com, aan@birdmarella.com, gkp@birdmarella.com.**

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office