# EXHIBIT 2



**U.S. Department of Justice**

United States Attorney
District of Arizona

---

| | |
|---|---|
| Two Renaissance Square<br>40 N. Central Ave., Suite 1800<br>Phoenix, AZ 85004-4408 | Main: (602) 514-7500<br>Main Fax: (602) 514-7693<br>Direct Fax: (602) 514-7450 |

May 18, 2018

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ 85701

<u>VIA EMAIL</u>

      Re:   *Your Letter of May 7, 2018*

Dear Mike:

      During our meeting on May 4, I raised the government's concern that the funds Backpage.com, LLC ("Backpage") previously wired into your law firm's IOLTA account, apparently to pay for the future criminal defense of Andrew Padilla (the estimated amount of funds is $750,000), may be tainted and subject to forfeiture under federal law. Due to the potential sensitivity of this issue, and in the hope of gaining an understanding of all of the relevant facts before pursuing any action, I asked if there were any indemnification agreements in place between Backpage and Mr. Padilla. In response, on May 7, you provided a copy of Backpage's Amended and Restated Limited Liability Company Agreement ("Agreement").

      I have now had a chance to review the Agreement. Unfortunately, it does not address all of my concerns. As an initial matter, it is not clear to me that Mr. Padilla is even covered by the Agreement's indemnify provisions. Section 9.1(a) of the Agreement requires Backpage to "defend and indemnify any Covered Person or Related Party" in certain lawsuits. This language raises the question whether Mr. Padilla qualifies as a "Covered Person" or "Related Party."

      As for the term "Covered Person," section 1.1 of the Agreement states that it "means any of the following Persons: (i) any former, current or future Member, (ii) the Manager, or (iii) any former, current or future officer." It doesn't appear to me that Mr. Padilla would fall into any of these three subcategories. *First*, the term "Member" is defined by section 1.1 of the Agreement as "IC Holdings, LLC, a Delaware limited liability company." Mr. Padilla is obviously not the same thing as IC Holdings LLC, so that definition doesn't fit. *Second*, the term "Manager" is defined by section 1.1 of the Agreement as having "the meaning attributed to it in the Preamble," and the Preamble identifies the manager as "Carl Ferrer." Mr. Padilla

is not Carl Ferrer, so this definition doesn't fit, either. *Third*, and finally, the term "officer" is defined in section 3.6 of the Agreement as being limited to the subset of individuals who are formally "designated" by the Manager (*i.e.,* Carl Ferrer) to serve as officers. Here, although Mr. Padilla may have held certain supervisory responsibilities within Backpage, we don't believe he was ever formally designated as an officer of the company. If you have any documentation suggesting otherwise, we would appreciate a chance to review it.

Because Mr. Padilla does not, in our view, qualify as a "Covered Person," his remaining avenue for indemnification would be to qualify as a "Related Party." In our view, he doesn't seem to fall within this definition, either. Section 1.1 of the Agreement defines the term "Related Party" as "with respect to a Covered Person, any shareholder, officer, director, employee, member, manager or partner of a Covered Person or any Person for which the Covered Person serves in any of such capacities, as the case may be." Although it might seem, at first blush, that the inclusion of the term "employee" would be sufficient to cover Mr. Padilla, the analysis is more complicated than that. The only "employees" covered by this language are individuals employed by a "Covered Person." And as noted in the prior paragraph, the universe of individuals and entities who might qualify as "Covered Persons" under the Agreement are (1) IC Holdings LLC, (2) Carl Ferrer, and (3) any individuals who were formally designated by Mr. Ferrer to serve as officers of Backpage. It's my understanding that Mr. Padilla wasn't employed by any of these individuals and entities— instead, he was employed by Backpage.

This analysis of the coverage language of the Agreement also obscures a broader issue. The money that Backpage wired into your IOLTA account was, in our view, tainted and subject to forfeiture before it ever arrived. As you know, the Backpage entity has entered a guilty plea to the crime of conspiracy to commit money laundering (*see* CR 18-465-PHX-DJH). Additionally, the judge in the Central District of California who issued the seizure warrants in this case has previously agreed with the government's view that Backpage's account at 216887188—which is the account that was used to wire the funds into your IOLTA account—is tainted and that funds passing through that account are subject to forfeiture. It has been the law for many decades that a criminal defendant does not have a Sixth Amendment right to use tainted funds to pay for his defense. *See, e.g., Kaley v. United States*, 134 S.Ct. 1090, 1096-97 (2014) ("Even prior to conviction (or trial)—when the presumption of innocence still applies—the Government [may] constitutionally . . . freeze assets of an indicted defendant 'based on a finding of probable cause to believe that the property will ultimately be proved forfeitable.'") (citation omitted); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989) ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. . . . [T]he Government does not violate the Sixth Amendment if it seizes [criminal] proceeds and refuses to permit the defendant to use them to pay for his defense."); *id.* at 631 ("[T]here is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense."); *United States v. Monsanto*, 491 U.S. 600, 616 (1989) ("[I]f the Government may,

May 18, 2018
Page 3 of 3

post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial."). *See also Luis v. United States*, 136 S.Ct. 1083, 1090 (2016) (recognizing there are Sixth Amendment limitations on the pretrial seizure of untainted assets but reaffirming that "[t]he Government may well be able to freeze, perhaps to seize, assets of the . . . 'tainted' kind before trial").

These principles suggest to us that, regardless of the existence or applicability of any indemnification contract between Backpage and Mr. Padilla, the funds in your IOLTA account are tainted and subject to forfeiture. If you are aware of any case law suggesting that the presence of an indemnification contract alters this analysis, we would be very eager to review it—we have not found any.

After you have had a chance to consider, I would welcome the opportunity to discuss these matters further with you.

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney

KMR/zs