# EXHIBIT 2

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

───────────────────────────

No. 18-56455

───────────────────────────

In re: ANY AND ALL FUNDS HELD IN REPUBLIC BANK OF ARIZONA
ACCOUNTS XXXX1889, XXXX2592, XXXX1938, XXXX2912, AND
XXXX2500,

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JAMES LARKIN, Real Party in Interest Defendant; JOHN BRUNST, Real Party
in Interest Defendant; MICHAEL LACEY, Real Party in Interest Defendant;
SCOTT SPEAR; Real Party in Interest Defendant,
*Movants-Appellants*.

───────────────────────────

On Appeal from United States District Court for the Central District of California
The Honorable R. Gary Klausner, United States District Judge

───────────────────────────

## OPENING BRIEF OF APPELLANTS JAMES LARKIN,
## JOHN BRUNST, MICHAEL LACEY AND SCOTT SPEAR

───────────────────────────

James C. Grant
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: jamesgrant@dwt.com

Robert Corn-Revere
Ronald G. London
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
　　　　ronaldlondon@dwt.com

*Additional Counsel Listed on Next Page*

*List of Additional Counsel*

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT, MILLER &
  KATZMAN, PLC
903 Calle Amanecer
Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
Email: tbienert@bmkattorneys.com
      wbernstein@bmkattorneys.com

Bruce Feder
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road
Suite 160
Phoenix, AZ 85016
Direct: (602) 257-0135
Email: bf@federlawpa.com

Paul John Cambria, Jr.
Erin McCampbell Paris
LIPSITZ GREEN SCIME
  CAMBRIA LLP
42 Delaware Avenue
Suite 300
Buffalo, NY 14202-3857
Telephone: (716) 849-1333
Email: pcambria@lglaw.com
      emccampbell@lglaw.com

Gary S. Lincenberg
Ariel A. Neuman
BIRD, MARELLA, BOXER,
  WOLPERT, NESSIM, DROOKS,
  LINCENBERG & RHOW P.C.
Suite 2300
1875 Century Park East
23rd Floor
Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
Email: glincenberg@birdmarella.com
     aneuman@birdmarella.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION.........................................................3

STATUTORY PROVISIONS ................................................................4

STATEMENT OF THE ISSUES.............................................................4

STATEMENT OF THE CASE................................................................5

    A.    History of Backpage.com. ....................................................5

    B.    Backpage.com's Litigation History. ....................................7

    C.    Criminal Prosecution in Arizona.........................................9

    D.    *Ex Parte* Civil Seizures and Forfeiture Actions in California. ...........11

        1.    U.S. Postal Inspector Lyndon A. Versoza's Affidavits. ...........12

        2.    Motion to Vacate or Modify the Seizure Warrants. .................14

    E.    Additional, Continued Seizures.........................................16

STANDARD OF REVIEW ..................................................................19

SUMMARY OF THE ARGUMENT .......................................................19

ARGUMENT ..................................................................................23

I.    This Court Has Appellate Jurisdiction to Review the District Court's Stay Order. ...................................................................................23

    A.    The Seizures and Stay Are Appealable Injunctions Under Section 1292(a)(1). .......................................................23

    B.    The Stay Order is Immediately Appealable as a Final Order or as an Appealable Collateral Order Because it Effectively Forecloses Review on the Merits of Defendants' Constitutional Claims.............................................................................24

II.    Seizures of Publishing Assets Arising from Operation of
       Backpage.com and from Prior Newspaper Operations Violate the First
       and Fourth Amendments. ..................................................................28

       A.    Special Rules Apply When Asset Seizures Implicate First and
             Fourth Amendment Rights. ....................................................28

       B.    The First and Fourth Amendments Prohibit Pre-Conviction
             Seizures of Publishing Assets or Proceeds. ...........................33

             1.    Pretrial Seizure of Publishing Assets is a Prior Restraint. ........33

             2.    Seizure of Publishing Proceeds Penalizes Speech in
                   Violation of the First and Fourth Amendments. .......................37

       C.    Seizures of Appellants' Assets Were Defective Because They
             Relied on a Deficient Affidavit, Violated Due Process, and
             Were Grossly Overbroad. ......................................................40

             1.    Appellants Were Improperly Denied a Prompt Hearing to
                   Challenge the Defective Probable Cause Showing. .................41

             2.    Any Hearing Should Have Required a Heightened
                   Showing by the Government. ...................................................44

             3.    The Seizures Were Grossly Overbroad. ..................................45

III.   The District Court's Stay Order Was Based on a Mistaken Premise
       That Ignored the Constitutional Bases Underlying the Challenge to
       Pretrial Seizures of Publishing Assets. ...........................................46

       A.    The Potential Preclusive Effect That Concerned the District
             Court Does Not Apply in the Context of Appellants' First and
             Fourth Amendment Challenges to the Government's Seizures. .........48

       B.    The District Court Erroneously Concluded that Appellants
             Could Seek Effective Relief in the Criminal Proceeding. .................50

       C.    The Government's Gamesmanship Alone is Reason to Deny a
             Stay. ...................................................................................52

CONCLUSION ....................................................................................54

STATEMENT OF RELATED CASES…………………………………………..56

CERTIFICATE OF COMPLIANCE…………………………………………...57

ADDENDUM OF CONSTITUTIONAL AND STATUTORY PROVISIONS….58

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018)........................................................23

*Adult Video Ass'n v. Barr*,
    960 F.2d 781 (9th Cir. 1992), *aff'd in relevant part in*
    *Adult Video Ass'n v. Reno*, 41 F.3d 503 (9th Cir. 1994) .................20, 34, 38, 49

*Adult Video Ass'n v. Reno*,
    41 F.3d 503 (9th Cir. 1994) ...........................................21, 34, 36, 49

*Agcaoili v. Gustafson*,
    870 F.2d 462 (9th Cir. 1989) ...........................................................23

*American Library Ass'n v. Thornburgh*,
    713 F. Supp. 469 (D.D.C. 1989), *rev'd on standing grounds*
    *sub nom. American Library Ass'n v. Barr*, 956 F.2d 1178
    (D.C. Cir. 1992) ....................................................................37

*Ashcroft v. ACLU*,
    535 U.S. 564 (2002)..............................................................29

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002).............................................................30

*Backpage.com, LLC v. Cooper*,
    939 F. Supp. 2d 805 (M.D. Tenn. 2013) .................................8, 30, 32

*Backpage.com, LLC v. Dart*,
    807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016) ......8, 30, 39, 54

*Backpage.com, LLC v. Hoffman*,
    2013 WL 4502097 (D.N.J. Aug. 26, 2013) ...................................8, 30

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012) ...........................6, 7, 8, 30

*Bd. of Trs. v. State Univ. of N.J. v. Fox*,
   492 U.S. 469 (1989)...................................................................30

*Berger v. City of Seattle*,
   569 F.3d 1029 (9th Cir. 2009) ............................................19

*Blue Cross & Blue Shield of Ala. v. Unity*
   *Outpatient Surgery Ctr., Inc.*,
   490 F.3d 718 (9th Cir. 2007) ..............................................25

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)...................................................................29

*Bruton v. United States*,
   391 U.S. 123 (1968)...................................................................35

*Center for Democracy & Tech. v. Pappert*,
   337 F. Supp. 2d 606 (E.D. Pa. 2004).........................36, 45

*Citizens United v. FEC*,
   558 U.S. 310 (2010)...................................................................38

*City of Erie v. Pap's A.M.*,
   529 U.S. 277 (2000)...................................................................37

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949).........................................................4, 26, 27

*Curran v. Price*,
   638 A.2d 93 (Md. 1994) ..........................................................39

*Dart v. Craigslist, Inc.*,
   665 F. Supp. 2d 961 (N.D. Ill. 2009)...............................7, 30

*Davis v. Walker*,
   745 F.3d 1303 (9th Cir. 2014) .........................3, 24, 25, 26

*Doe v. Backpage.com, LLC*,
   104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12
   (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017) ...............8, 30

*Elonis v. United States*,
   135 S. Ct. 2001 (2015).............................................................32

*Fort Wayne Books, Inc. v. Indiana*,
    489 U.S. 63 (1989) ....................................................................................*passim*

*Franks v. Delaware*,
    438 U.S. 154 (1978) ..................................................................................*passim*

*Goldberg v. Carey*,
    601 F.2d 653 (2d Cir. 1979) ............................................................................23

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995) ........................................................................................19

*Keenan v. Superior Court*,
    40 P.3d 718 (Cal. 2002) ..................................................................................39

*Lee Art Theatre, Inc. v. Virginia*,
    392 U.S. 636 (1968) ........................................................................................45

*Lee v. Illinois*,
    476 U.S. 530 (1986) ........................................................................................35

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ........................................................................28

*Luis v. United States*,
    136 S. Ct. 1083 (2016) ....................................................................................46

*M.A. v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011) .......................................................8, 30

*Marchetti v. Bitterolf*,
    968 F.2d 963 (9th Cir. 1992) ..........................................................................28

*Marcus v. Search Warrant*,
    367 U.S. 717 (1961) ..................................................................................28, 45

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) ....................................................................................38

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) ..................................................................................26, 51

*Miller v. California*,
413 U.S. 15 (1973) .................................................................................29

*Minneapolis Star & Trib. Co. v. Minnesota Comm'r of Revenue*,
460 U.S. 575 (1983) ...............................................................................38

*Mishkin v. New York*,
383 U.S. 502 (1966) ...............................................................................32

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..............................................................................24, 25

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ...............................................................................29

*State ex rel. Napolitano v. Gravano*,
60 P.3d 246 (Ariz. App. Ct. 2002) .........................................................39

*National Socialist Party of Am. v. Village of Skokie*,
432 U.S. 43 (1977) .................................................................25, 26, 27, 51

*Near v. Minnesota*,
283 U.S. 697 (1931) ...............................................................................37

*Omidi v. United States*,
851 F.3d 859 (9th Cir. 2017) .................................................................50

*In re Opinion of Justices to the Senate*,
764 N.E.2d 343 (Mass. 2002) ................................................................39

*People v. Ferrer*,
2016 WL 7237305 (Cal. Super. Ct. Dec. 16, 2016) ...............................8

*People v. Ferrer*,
No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017) ..................................8

*Philip Morris USA, Inc. v. King Mountain Tobacco Co.*,
569 F.3d 932 (9th Cir. 2017) .................................................................23

*Privitera v. Cal. Bd. of Md. Quality Assurance*,
926 F.2d 890 (9th Cir. 1991) .................................................................23

*In re Seizure of Account(s) xxxx1889, xxxx2592,*
    *xxxx1938, xxxx2912, and xxxx2500,*
    No. 18-CV-06742-RGK-PJW, ECF Nos. 32 & 40 (C.D. Cal. 2018)................14

*Seres v. Lerner,*
    102 P.3d 91 (Nev. 2004)....................................................................................39

*Simon & Schuster, Inc. v. Members of New York*
    *State Crime Victims Board,*
    502 U.S. 105 (1991).................................................................................*passim*

*Smith v. California,*
    361 U.S. 147 (1959)..................................................................................31, 44

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546 (1975)..........................................................................................44

*Spokane Arcades, Inc. v. Brockett,*
    631 F.2d 135 (9th Cir. 1980), *aff'd mem.*, 454 U.S. 1022 (1981) .....................36

*Stanford v. Texas,*
    379 U.S. 476 (1965)..................................................................................28, 45

*United States v. $186,416.00 U.S. Currency,*
    590 F.3d 942 (9th Cir. 2010) ...........................................................................36

*United States v. $405,089.23 U.S. Currency,*
    122 F.3d 1285 (9th Cir. 1997) .........................................................................36

*United States v. $52,100 in U.S. Currency,*
    2018 WL 1782934 (S.D. Cal. Apr. 13, 2018) ..................................................41

*United States v. Backpage.com,*
    No. 18-CR-00465-PHX-SPL, ECF No. 8 (D. Ariz. Apr. 5, 2018)..............10, 17

*United States v. Christakis,*
    238 F.3d 1164 (9th Cir. 2001) .........................................................................42

*United States v. Crozier,*
    777 F.2d 1376 (9th Cir. 1985) ...................................................................41, 54

*United States v. DeLeon,*
    979 F.2d 761 (9th Cir. 1992) ...........................................................................42

*United States v. Ferrer*,
No. 18-CR-00464-PHX-SPL, ECF No. 7 (D. Ariz. Apr. 5, 2018)...............10, 16

*United States v. Hall*,
113 F.3d 157 (9th Cir. 1997) ...............................................................41

*United States v. Liquidators of European Fed. Credit Bank*,
630 F.3d 1139 (9th Cir. 2011) .......................................................*passim*

*United States v. National Treasury Emps. Union*,
513 U.S. 454 (1995)............................................................................38

*United States v. One 1978 Piper Cherokee Aircraft*,
91 F.3d 1204 (9th Cir. 1996) .............................................................36

*United States v. One 1987 Mercedes Benz*,
1992 WL 198441 (N.D. Ill. Aug. 11, 1992) ......................................41

*United States v. P.H.E., Inc.*,
965 F.2d 848 (10th Cir. 1992) ...............................................26, 27, 51

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803 (2000)......................................................................30, 38

*United States v. Real Prop. Located at 1407 N. Collins*,
901 F.3d 268 (5th Cir. 2018) ..............................................................24

*United States v. Ripinsky*,
20 F.3d 359 (9th Cir. 1994) ................................................................24

*United States v. Roth*,
912 F.2d 1131 (9th Cir. 1990) ............................................................24

*United States v. Sineneng-Smith*,
910 F.3d 461 (9th Cir. 2018) ..............................................................29

*United States v. Spilotro*,
680 F.2d 612 (9th Cir. 1982) ..............................................................24

*United States v. U.S. Currency $83,310.78*,
851 F.2d 1231 (9th Cir. 1988) ............................................................50

*United States v. Unimex*,
991 F.2d 546 (9th Cir. 1993) ............................................................................50

*United States v. Vera*,
893 F.3d 689 (9th Cir. 2018) ............................................................................35

*United States v. X-Citement Video, Inc.*,
513 U.S. 64 (1994) ............................................................................................32

*Vance v. Universal Amusement Co.*,
445 U.S. 308 (1980) ..........................................................................................36

*Video Software Dealers Ass'n v. Webster*,
968 F.2d 684 (8th Cir. 1992) ............................................................................32

*Virginia v. Black*,
538 U.S. 343 (2003) ..........................................................................................31

*Woodhull Freedom Found. v. United States*,
334 F. Supp. 3d 185 (D.D.C. 2018),
*appeal filed*, No. 18-5298 (D.C. Cir. Oct. 12, 2018) ................................44, 45

## Constitutional Provisions

U.S. Const.
amend. I................................................................................................*passim*
amend. IV.............................................................................................*passim*
amend. V..............................................................................................*passim*
amend. VI.............................................................................................*passim*

## Statutes

18 U.S.C.
§ 371.......................................................................................................9
§ 981(g)................................................................................................46
§ 981(g)(1) ...........................................................................................46
§ 981(g)(2) ...........................................................................................46
§ 1952.....................................................................................................9
§ 1956.....................................................................................................9
§ 1957.....................................................................................................9
§ 1963(d)..............................................................................................38
§ 2255.....................................................................................................8

28 U.S.C.
  § 1291 ....................................................................................*passim*
  § 1291(a)(1) ...........................................................................24
  § 1292(a)(1) ...........................................................................*passim*
  § 1292(b)(1) ...........................................................................24

**Other Authorities**

16 C. Wright *et al.*, Federal Practice and Procedure § 3922.3
  (3d ed. 2018) .........................................................................24

Circuit Rule 28-2.7 ......................................................................4

Fed. R. Crim. P.
  41(e) ......................................................................................50
  41(g) ......................................................................................15, 50

# INTRODUCTION

This case involves the Government's abuse of civil forfeiture authority, in disregard of rights under the First, Fourth, Fifth, and Sixth Amendments, to deprive defendants in a criminal prosecution of assets to fund their defense, and subsequent efforts to block defendants from constitutionally challenging the Government's overreaching.  At issue is the Government's use of *ex parte* procedures to seize many millions of dollars of publishing assets and proceeds from publishing, shuttering the second largest online classified advertising platform in the process, and its relentless efforts to prevent the targets of those seizures from challenging their legality.  The egregiousness of the Government's strategy is heightened by its continuing efforts to seize additional assets as this matter is litigated, most recently including millions of dollars held in attorney trust accounts needed to fund defense of the unprecedented criminal charges.

The Government has taken advantage of federal law that provides broad authority to use criminal and civil processes to seize before trial assets alleged to be traceable to criminal conduct, but has done so without informing the courts issuing the seizure warrants of the special rules applicable to seizing assets relating to activities protected by the First Amendment.  Although the Government claims the publishing ventures it targeted are not constitutionally protected, that is the very point it must prove at trial, as well as before it may seize assets on the theory

1

that *all* of the third-party content published supposedly pertained to unlawful conduct. Not only did the Government conduct multiple rounds of seizures without notice or hearing, it did so based on affidavits containing knowingly false representations and material omissions, and it seized publishing assets even beyond those linked to the business it is prosecuting.

After Appellants challenged the seizures' legality, the Government's single-minded focus has been to prevent any court from reviewing the constitutional challenges on the merits, and it has yet to respond to their substance. When Appellants filed motions challenging the seizures in the United States District Court for the Central District of California (the "CDCA") (where the seizure warrants were issued), the Government argued the challenges should be addressed by the United States District Court for the District of Arizona (where the criminal cases are pending). Yet when Appellants challenged subsequent seizures in the Arizona court, the Government insisted the challenges should be resolved by the California court. Thereafter, the Government filed civil forfeiture complaints in California corresponding to many of the seizure warrants. It then immediately filed a motion *ex parte* to stay proceedings, including the challenges to the seizures, and the CDCA granted the stay motion. That stay order—which is the subject of this appeal—is the key to the Government's effort to escape constitutional oversight.

From the beginning of the cases that led to this appeal, two things have been consistently true: first, the Government has maneuvered to evade any form of judicial review (including by this Court) regarding the legal merits of its pretrial seizure of millions of dollars of publishing assets and proceeds; and second, Appellants have suffered an ongoing deprivation of rights that only this Court can correct. The Court should reverse the order granting the stay and instruct the District Court to immediately vacate the seizures based on established constitutional rules under the First, Fourth, Fifth, and Sixth Amendments.

## STATEMENT OF JURISDICTION

James Larkin, John Brunst, Michael Lacey, and Scott Spear (collectively "Appellants") appeal an order issued in the CDCA staying their constitutional challenge to the Government's *ex parte* pretrial seizures of publishing assets, and proceeds from publishing activities (the "Stay Order"), which froze the seizures in place and continued an injunction barring access to those assets. ER 1-2. This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1), which confers appellate jurisdiction over orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). This Court also has jurisdiction to hear this appeal under 28 U.S.C. § 1291 because the Stay Order effectively denied Appellants' constitutional objections and leaves them "out of court." *Davis v. Walker*, 745 F.3d 1303, 1308-10

(9th Cir. 2014). Finally, this Court has jurisdiction under the Collateral Order Doctrine recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). The Court's jurisdiction over this appeal is discussed in further detail below.

## STATUTORY PROVISIONS

Pursuant to Circuit Rule 28-2.7, copies of pertinent constitutional provisions, statutes, and regulations appear in the addendum to this brief.

## STATEMENT OF THE ISSUES

1.      Whether this Court has jurisdiction to review the District Court's order staying this case that has the effect of continuing the injunction against Appellants' access to seized funds, and leaves them no avenue to challenge pre-emptive, *ex parte* seizures of publishing assets and proceeds protected by the First Amendment.

2.      Whether the First and Fourth Amendments bar the Government from effecting pretrial *ex parte* seizures of publishing assets and proceeds of publishing activities based on nothing more than a showing of probable cause that the assets are linked to criminal activity.

3.      Whether *ex parte* seizures of publishing assets and proceeds of publishing activities should be vacated where the affidavits supporting seizure

warrants are tainted by material omissions and factual misrepresentations in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).

4.      Whether *ex parte* seizures of publishing assets and proceeds of publishing activities should be vacated where the Government failed to initiate a prompt hearing on the validity of seizures in which the Government must meet a heightened burden of proof.

5.      Whether *ex parte* seizures of publishing assets and proceeds of publishing activities should be vacated where a substantial portion of the assets seized were derived from earlier publishing ventures not traceable to activities alleged to constitute criminal activity.

6.      Whether the District Court erred in staying the proceedings below, including Appellants' challenge to asset seizures, where the failure to promptly consider Appellants' challenge to the seizures deprives Appellants of a remedy for violations of their First, Fourth, Fifth, and Sixth Amendment rights.

## STATEMENT OF THE CASE

### A.      History of Backpage.com.

Appellants are former owners of a newspaper conglomerate that, at one time, published and distributed 17 weekly newspapers across the country, including the Phoenix New Times, SF Weekly, and New York's Village Voice.  Appellants own Medalist Holdings, Inc. ("Medalist"), formerly known as New Times, Inc.; Larkin

and Lacey own controlling interests, and Brunst and Spear own minority interests. Medalist is the parent company of Village Voice Media Holdings, LLC ("VVM"), which owned the newspapers.[1]  The newspapers featured articles on political and cultural issues not typically covered by mainstream media sources, and received numerous awards for excellence in journalism, including a Pulitzer Prize.  Like other alternative weekly publications, the newspapers were free to readers, so they depended on advertising revenues, including from classified ads.  By the early 2000s, however, online classified advertising websites, such as Craigslist.org, had undermined the economic viability of newspaper classified advertising.

In response to this trend, VVM formed a subsidiary in 2004, Backpage.com, LLC, which launched a website ("Backpage.com") that published third-party classified ads.  Categories of advertisements spanned the full spectrum, including rentals, automotive, real estate, jobs, dating, and "adult services" ads (including escort ads), as had been published in newspapers, yellow pages, and other media for decades.  *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1282 (W.D. Wash. 2012) (noting "numerous states license, tax and otherwise regulate escort services as legitimate businesses").  Over time, Backpage.com grew to become the second largest online classified advertising site in the United States (after Craigslist.org), with third-party users posting millions of classified ads each

---

[1]  VVM is now known as Camarillo Holdings, LLC.

6

month.  *See id.* at 1266.  VVM sold its interests in the newspapers in 2013 and its interests in Backpage.com, LLC in 2015, both in leveraged buyouts.[2]

## B.      Backpage.com's Litigation History.

As websites like Backpage.com and Craigslist.org gained a greater Internet presence, various governmental and non-governmental entities pressured them to remove their "adult" advertisements.  *E.g.*, *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009).  Backpage.com was unwilling to succumb to censorship, and litigation ensued.  The Government first investigated prosecuting Backpage.com through grand jury proceedings in the United States District Court for the Western District of Washington, but its novel prosecution theory of vicarious liability collapsed after an order by Judge Richard Jones quashed its subpoenas as overbroad and excessively burdensome.

Numerous courts have held Backpage.com's activities were protected under the First Amendment, that government authorities may not presume otherwise, and that the website and its operators and owners could not be liable under civil or criminal laws if some (or even many) individual users utilized the website in

---

[2]  Backpage.com, LLC's then-Chief Executive Officer, Carl Ferrer, purchased Backpage.com, through entities he controlled, in April 2015.  Medalist, through its subsidiaries, holds promissory notes for the balance of the purchase price from Ferrer's entities, and the notes (and other obligations) are secured with liens on essentially all assets relating to Backpage.com.  The Government's seizures have blocked exercise of those lien rights.

connection with criminal acts.[3]   These cases included unsuccessful efforts to prosecute the former owners of Backpage.com for purportedly promoting prostitution through operation of the website.  *People v. Ferrer*, 2016 WL 7237305 (Cal. Super. Ct. Dec. 16, 2016), ER 295-309; *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017), ER 311-329 (dismissing as to Appellants Lacey and Larkin all charges founded on premise that ad revenues from Backpage.com represented proceeds of pimping or prostitution).  As the Seventh Circuit observed, Backpage.com is "an avenue of expression of ideas and opinions" protected by the First Amendment, including its "classified ads for 'adult' services."  *Dart*, 807 F.3d at 230-31.

---

[3]   *See M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) (dismissing plaintiff's claims against Backpage.com and finding the website could not be found liable under 18 U.S.C. § 2255 for aiding and abetting child prostitution); *McKenna*, 881 F. Supp. 2d 1262 (invalidating Washington law seeking to impose criminal liability on Backpage.com and recognizing escort advertisements as constitutionally protected speech); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013) (same for Tennessee law targeting Backpage.com); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 26, 2013) (same for similar New Jersey law); *Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016) (dismissing plaintiffs' civil claims and holding practices of website to publish, screen, and edit third-party ads did not constitute participation in an illegal venture), *cert. denied*, 137 S. Ct. 622 (2017); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (sheriff's threats to credit card companies to cause them to cut off services to Backpage.com constituted unlawful informal prior restraint under First Amendment), *cert. denied*, 137 S. Ct. 46 (2016).

## C.     Criminal Prosecution in Arizona.

Undeterred by numerous rulings recognizing publication of "adult" adver-

tisements as protected expression under the First Amendment, and emboldened by

a Senate Permanent Subcommittee on Investigations report vilifying Back-

page.com, the Government commenced a prosecution in the District of Arizona

against various individuals for their involvement with the publisher.  On March 28,

2018, prosecutors obtained a 93-count indictment charging Appellants with

violations of the Travel Act (18 U.S.C. § 1952), money laundering (18 U.S.C.

§§ 1956, 1957), and conspiracy (18 U.S.C. § 371), based on their prior involve-

ment with Backpage.com.  ER 117-77, 582-642.  The Government's novel theory

is that website operators may be held criminally liable for content of classified

advertisements by third parties, even if the operators are responsible neither for the

content of the ads nor the third parties' conduct.  The Government also charged

Backpage.com's current owners (Ferrer, Backpage.com, LLC, and several

affiliates) in separate, but related, indictments in the District of Arizona.  Ferrer

and his companies pled guilty and Ferrer is cooperating with the government.

On April 6, 2018, the indictment was unsealed, and the Government arrested

Appellants and searched Lacey's and Larkin's homes, seizing computers, jewelry,

artwork, and other assets (using warrants authorizing the seizure of, among other

things, any "evidence of wealth").  ER 22, 487.  At the same time, the Government

seized the Backpage.com website, and affiliated websites and domain names, in the related prosecution of Backpage.com, LLC.[4]

On July 25, 2018, the Government filed a superseding indictment to add seven additional counts to the original indictment.[5] The superseding indictment contains allegations seeking forfeiture of 26 real properties (some purchased before Backpage.com ever existed), 89 bank accounts, and 268 domain names. ER 190-220, 655-85.[6] Most of the real properties and many of the bank accounts belong to Appellants; the balance of assets belongs primarily to Backpage.com, LLC, its affiliates, or Ferrer.

---

[4] *See* U.S. Department of Justice Press Release, Apr. 9, 2018, https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom -internet-s-leading-forum-prostitution-ads. In connection with the seizures, Ferrer, the website's former CEO and owner, pled guilty to one count of conspiracy, Minute Entry of Change of Plea Hearing, *United States v. Ferrer*, No. 18-CR-00464-PHX-SPL, ECF No. 7 (D. Ariz. Apr. 5, 2018), as did Backpage.com, LLC and certain affiliates to one count of money laundering. Minute Entry of Change of Plea Hearing, *United States v. Backpage.com*, No. 18-CR-00465-PHX-SPL, ECF No. 8 (D. Ariz. Apr. 5, 2018).

[5] At the same time, Appellants Larkin and Lacey are forced to defend against a criminal prosecution brought by the State of California (which has claimed to have been engaged in a "joint law enforcement effort" with the Government), other state criminal investigations, and civil litigation in numerous states.

[6] The assets named in the forfeiture allegations were already seized or otherwise encumbered in the civil actions described below.

**D.** *Ex Parte* **Civil Seizures and Forfeiture Actions in California.**

On a separate but parallel track in the CDCA, the Government effected multiple pretrial seizures of Appellants' assets. On March 28, 2018, it obtained *ex parte* civil seizure warrants authorizing it to seize millions of dollars of assets belonging to Appellants and their family members, as well as funds held in a bank account of Cereus Properties, LLC ("Cereus"), an entity owned by Appellants.[7]

The Government continued with several additional waves of seizures, including by obtaining additional *ex parte* seizure warrants in the CDCA on April 4, 9, and 26, June 4, and July 27, 2018, authorizing it to seize additional financial accounts of Appellants, their families, and Cereus. All told, the Government obtained at least 24 civil seizure warrants, through which it seized many millions of dollars from Appellants Lacey, Larkin, Brunst, and Spear, and millions more from Cereus. The Government also obtained *lis pendens* on all real properties in which Appellants hold interests. *See* ER 19-20, 484-85.

Nearly all of the seized assets were derived from Appellants' publishing activities, including assets earned from decades of operation of the newspapers, long before the creation of Backpage.com. ER 24, 489. In particular, Lacey and Larkin earned millions of dollars from operation of the newspapers. *Id*. These

---

[7] Cereus is a subsidiary of Medalist. Among other things, Cereus has managed real property it controlled and collected payments on promissory notes from the sale of VVM's newspapers and from the sale of Backpage.com.

assets were seized without any prior notice, adversary hearing, or opportunity to be heard.

### 1.    U.S. Postal Inspector Lyndon A. Versoza's Affidavits.

Each of the *ex parte* applications for seizure warrants for Appellants' assets included an affidavit from U.S. Postal Inspector Lyndon A. Versoza.  ER 61-116, 526-81.  The affidavits, which are essentially identical, state that Inspector Versoza sought pretrial restraint of Appellants' assets under the typical probable-cause standard, and made no attempt to satisfy the heightened burdens associated with seizures of assets derived from participation in activities protected by the First Amendment, such as publishing.

In substance, the Versoza affidavits base their assertions of probable cause on:  (1) accusations by Government officials and politicians that Backpage.com hosted third-party content relating to unlawful activities; (2) his opinion that most ads posted by third parties to Backpage.com related to prostitution or sex trafficking, based on prosecution of a small number of third parties who posted on the website; (3) mischaracterizations of email exchanged internally at Back-page.com by, among other things, omitting text that dramatically altered the email's meaning; and (4) his personal observations in which he claimed that general "training and experience" enabled him to determine that words or phrases in advertisements that did not on their face propose unlawful transactions were

nonetheless "consistent with sex trafficking." ER 83-96, 548-61; *see also* ER 32-40, 497-505.

The Versoza affidavits were silent on three pieces of information critical to whether the Government had a basis for its claims: (1) courts had uniformly recognized that operation of Backpage.com, a website that allowed third parties to post content, was lawful because classified advertisements, even "adult" ads, constituted protected expression; (2) mere presence of third-party ads related to unlawful conduct on Backpage.com was inadequate to establish *mens rea* for Appellants as publishers—that would require evidence that Appellants were aware of the content of specific ads, knew the content of those specific ads related to unlawful activities, and published those specific ads with the intent to facilitate those specific unlawful activities; and (3) Backpage.com had extensively cooperated with law enforcement, resulting in numerous commendations from federal and state law enforcement, including from the Department of Justice.[8] Versoza's factually and legally incomplete, and misleading, affidavits led to *ex parte* authorization of the Government's seizure of nearly all of Appellants' assets. No hearing was ever held to allow Appellants to challenge Versoza's allegations.

---

[8] Versoza not only failed to inform the Magistrate Judges of Backpage.com's extensive cooperation with law enforcement, but premised his allegation that Backpage.com knew of and intended to facilitate unlawful conduct by third parties posting ads on its cooperation with law enforcement investigations and prosecutions.

## 2. Motion to Vacate or Modify the Seizure Warrants.

After obtaining the seizure warrant applications, Appellants filed a Motion to Vacate or Modify the Seizure Warrants ("Motion to Vacate") on August 1, 2018 asserting that the warrants violated the First, Fourth, Fifth, and Sixth Amendments. ER 3-56, 469-521.  Appellants explained that:  (1) the warrants should be vacated and the seized assets returned because the First and Fourth Amendments bar pre-conviction seizures of publishing assets or proceeds; (2) Appellants in any event should have been accorded a right to a prompt adversarial hearing at which the Government must meet a heightened standard of proof beyond probable cause; (3) the warrants violated the Fourth Amendment and should be vacated because they were obtained through knowing or recklessly false statements and material omissions, in violation of *Franks v. Delaware*; and (4) even without regard to the First and Fourth Amendments, the seizures were markedly over-inclusive in violation of Appellants' Fifth and Sixth Amendment rights.  ER 23-53, 488-518.

The Government never responded to the merits of Appellants' Motion to Vacate.  Instead, after twice seeking and receiving extensions of time from the CDCA,[9] the Government filed an "application" in the criminal prosecution pending in the District of Arizona seeking an order from that court "directing that

---

[9]  *In re Seizure of Account(s) xxxx1889, xxxx2592, xxxx1938, xxxx2912, and xxxx2500*, No. 18-CV-06742-RGK-PJW, ECF Nos. 32 & 40 (C.D. Cal. 2018).

the United States may maintain custody of the seized assets." Appellants' Motion for Judicial Notice (hereinafter cited as "RJN") at Exhibit A, RJN 9. The "application" did not inform the District of Arizona judge about the Motion to Vacate pending in the CDCA. RJN 2-9. Once informed of the Motion to Vacate, the District of Arizona judge declined to rule on the Government's requested relief. RJN 11-16, 18-19.

Back in the CDCA, the Government again sought leave to extend the deadline to respond to the Motion to Vacate, but eventually filed an "Opposition" in which it argued the Motion to Vacate should have been filed in the District of Arizona as a motion for return of property under Fed. R. Crim. P. Rule 41(g). ER 385-94. This nominal response did not address Appellants' constitutional grounds for vacating the seizures.

While the Motion to Vacate was pending, the Government filed civil forfeiture complaints in the CDCA for assets previously seized under the challenged seizure warrants, as well as other property. All of these forfeiture complaint cases were later related to the case in which Appellants' filed the Motion to Vacate. *See* ER 456.

The Government then filed an *ex parte* application to stay all proceedings in the cases, contending (among other things) that Appellants would not be prejudiced because they "may pursue a similar remedy in the Arizona criminal matter."

ER 432-37 (asserting that Appellants' concerns are "more properly" addressed in "the Arizona criminal matter"). On October 23, 2018, Judge Klausner of the CDCA stayed the proceedings below, including Appellants' challenge to the seizures. ER 1-2. In so doing, Judge Klausner stated that "the Court sees no reason why Movants' pending motions could not be brought in the criminal action." *Id*. at 2. This appeal followed. ER 449-455.

### E. Additional, Continued Seizures.

The Government's unchecked, aggressive and infirm seizures have continued. One week after the Motion to Vacate (premised heavily on the First Amendment), the Government seized trust funds held by Appellants' First Amendment counsel, Davis Wright Tremaine.[10] Approximately three months later, and one week after issuance of the Stay Order, the Government sought and obtained at least twelve new *ex parte* seizure warrants authorizing it to seize funds held in bank accounts of 18 other law firms,[11] plus those in four trusts for the

---

[10] Court documents pertaining to these seizures are sealed but can be provided to the Court in a sealed submission upon request.

[11] The Government took this step despite previous assurances made to certain Appellants' counsel that it would not seek to seize funds held in attorney trust accounts for the representation of defendants in criminal cases and related matters. Notably, however, the Government's plea agreements with Ferrer and Backpage.com, LLC allow their counsel to keep and use retainer funds they hold. *See* Prelim. Order of Forfeiture at 12-13, *United States v. Ferrer*, No. 18-CR-00464 PHX-SPL, ECF No. 23 (D. Ariz. Apr. 9, 2018); Prelim. Order of Forfeiture

benefit of Larkin's children. *See* Appellants' Motion to Submit Sealed Documents for Judicial Notice (hereinafter cited as "RJN") at Exhibit L, RJN 101-25, 175-82.[12]

The Government's warrant applications included affidavits from Inspector Versoza identical in all material respects to his prior affidavits used to support the first round of seizures. RJN 167-234. They neither mention the Motion to Vacate, nor acknowledge or correct the numerous factual and legal shortcomings identified in the Motion to Vacate. *Id.*[13]

After obtaining seizure warrants for attorney trust funds *ex parte*, the Government contacted law firms holding funds subject to the warrants to offer the "option" of turning over trust account funds "in lieu of" execution of warrants on the firms' respective banks. RJN 116-18. When Appellants learned of this, they sought emergency stays of execution of the warrants in the District of Arizona,

---

at 17-18, 23, *United States v. Backpage.com*, No. 18-CR-00465-PHX-SPL, ECF No. 22 (D. Ariz. Apr. 9, 2018).

[12] The Government obtained *ex parte* seizure warrants in the CDCA in twelve cases, and Appellants filed Applications to Stay Execution of Seizure Warrants in eight of these cases: 18-MJ-2782, 18-MJ-2783, 18-MJ-2784, 18-MJ-2785, 18-MJ-2786, 18-MJ-2788, 18-MJ-2880, and 18-MJ-2883 (C.D. Cal. 2018). The ensuing litigation and pleadings in all eight cases are substantively identical. Thus, only pleadings from 18-MJ-2785 are included in the RJN and cited herein. *See* RJN 101-266.

[13] The more recent Versoza affidavits are materially identical to prior affidavits. *Compare* ER 62-116, *with* ER 527-81.

challenging the seizure warrants on First, Fourth, Fifth, and Sixth Amendment grounds.  RJN 21-28, 33-67, 69-71, 88-93.  The Arizona federal court granted temporary stays and held a hearing on November 16, 2018.  *See, e.g.*, RJN 30-31, 95-96.  In this litigation, much like that on the Motion to Vacate in the CDCA, the Government did not respond substantively to Appellants' constitutional challenges.  Instead, it claimed there was no reason for the District of Arizona to address the merits of those challenges because Appellants should have pursued them in the CDCA.  RJN 76 ("To the extent that Movants have any basis to contest the Seizure Warrants, such motions should have been filed in the Central District of California, where the warrants [] issued.").  In a ruling announced at the November 16, 2018 hearing, the Arizona District Court was persuaded by the Government and declined to entertain Appellants' constitutional challenges on the basis that they should be heard by the issuing Magistrate in the CDCA.  RJN 98-99.

Appellants then filed applications in the CDCA before the issuing Magistrate similarly seeking to stay execution of the seizure warrants based on their constitutional infirmities, including violations of the First, Fourth, Fifth, and Sixth Amendments.  RJN 101-25.  Yet again, the Government did not engage with the merits, but instead offered in its response only procedural reasons for denying relief.  ER 236-41.  The matters raised in those motions are now fully submitted, and remain pending (but the additional seizures are not at issue here, *see infra* note

31, though the Court can consider this subsequent Government conduct in assessing the seizure warrants at issue here).

## STANDARD OF REVIEW

This Court reviews *de novo* all questions of law, statutory interpretations, interpretations of the Federal Rules of Criminal Procedure, and questions of *res judicata*. *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1144 (9th Cir. 2011). Also, in appeals concerning First Amendment issues, this Court "conduct[s] an independent review of the facts." *Berger v. City of Seattle*, 569 F.3d 1029, 1035, 1041 (9th Cir. 2009); *see also Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 567 (1995) (court has "constitutional duty to conduct an independent examination of the record as a whole, without deference to the trial court … because the reaches of the First Amendment are ultimately defined by the facts").

## SUMMARY OF THE ARGUMENT

The Government tries to treat this case as a routine matter, where it can use civil forfeiture procedures to seize and hold assets subject to criminal forfeiture pending conclusion of a related criminal trial. *See generally* Government's Reply to Movants' Resp. to Order to Show Cause, ECF No. 10-1 (9th Cir. filed Nov. 30, 2018). But this is not a routine case. The Government's seizures of assets that were the subject of Appellants' motion below were derived from Appellants'

activities as publishers. They include assets earned from decades in the newspaper publishing business before Backpage.com was created, as well as assets derived from operation of Backpage.com that are presumptively protected by the First Amendment. For that reason, the seizures cannot be treated like those for assets derived from crimes that have nothing to do with expression, such as drugs, arson, or murder. *Adult Video Ass'n v. Barr*, 960 F.2d 781, 792 (9th Cir. 1992), *aff'd in relevant part in Adult Video Ass'n v. Reno*, 41 F.3d 503 (9th Cir. 1994).

The District Court's stay has the effect of continuing orders that seize or restrain assets that are appealable as injunctions under 28 U.SC. § 1292(a)(1), which confers appellate jurisdiction. Even if that were not the case, this Court has recognized the ability to immediately appeal under Section 1291 where the grant of a stay leaves a party "effectively out of court," as would result if the constitutionality of pre-trial seizures of presumptively First Amendment-protected assets based solely on probable cause must await conclusion of the criminal case. Additionally, this Court has jurisdiction under the Collateral Order Doctrine.

Special rules govern seizures of publishing assets and proceeds of First Amendment-related activity, which the Government seeks to avoid by assuming they do not apply here, on the theory that all postings on Backpage.com were unprotected by the First Amendment. This position has numerous flaws, beginning with how the First and Fourth Amendments place the burden firmly on the Govern-

ment to *prove* speech is unprotected, as well as to establish the requisite *mens rea*, *before* it may effect such a seizure. The Government thus has it backwards—claiming the seizures present no constitutional problem because of its assumptions about the unprotected nature of the speech at issue. These constitutional presumptions apply both to expressive assets and the proceeds of publishing, and the Government cannot overcome them by assuming what it has the burden to prove *before* effecting the seizures.

The affidavits purporting to establish probable cause that postings on Backpage.com were linked to illegal transactions fall far short of the required showing. As established in such cases as *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 63 (1989), *Reno*, 41 F.3d at 503, and *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*, 502 U.S. 105 (1991), mere probable cause is insufficient to justify pretrial seizures of publishing assets or proceeds. Yet, even if probable cause were the correct standard, the showing here is woefully deficient, as it relies on averments that the Government was fully aware contained material misrepresentations and omissions, in violation of *Franks v. Delaware*. Appellants should have been accorded an immediate hearing in which the Government had the burden of proof under a heightened standard. Because those procedural and substantive rights were denied, the seizures should be vacated and Appellants' assets returned. In addition, the Government seized substantial publishing assets

that were unrelated to the operation of Backpage.com, and the seizures, therefore, were grossly overbroad. These seizures should be immediately vacated as well.

The District Court's decision staying proceedings below is incorrect as a matter of law and has the effect of depriving Appellants a remedy for the serious constitutional violations at issue. The District Court erroneously held it should stay proceedings based on the incorrect assumption that a ruling on the legality of *pretrial* seizures of publishing assets would be *res judicata* for *post-conviction* forfeitures. As *Fort Wayne Books* and *Simon & Schuster* make clear, however, pre- and post-trial seizures of publishing assets present different constitutional issues; a ruling on pre-trial civil seizures does not preclude post-conviction criminal forfeiture, if properly pursued and proven.

More importantly, the stay was erroneous because it denies Appellants any possible constitutional remedy for the Government's pretrial seizure of publishing assets. Where the constitutional violation arises from seizing prior to trial assets and proceeds that are presumptively protected, the District Court's assumption that Appellants' rights may be vindicated *after* trial is patently illogical. It plays into the Government's shell game of seizing assets without justification, then using procedural dodges to avoid ever having to provide a substantive defense of its actions. This Court has held such tactics are illegitimate and constitute grounds for

vacating a seizure. *Liquidators of European Fed. Credit Bank*, 630 F.3d at 1147-53.

## ARGUMENT

### I. This Court Has Appellate Jurisdiction to Review the District Court's Stay Order.

#### A. The Seizures and Stay Are Appealable Injunctions Under Section 1292(a)(1).

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1), which confers appellate jurisdiction over orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). In deciding if an order is an appealable injunction under Section 1292(a)(1), courts look to the "practical effect" of the order, not whether the district court labeled it an "injunction." *Abbott v. Perez*, 138 S. Ct. 2305, 2318 (2018). In this case, the district court's Order staying this action has the effect of continuing the injunction restraining Appellants' assets in place, and is thus appealable under the plain language of Section 1292(a)(1).

Numerous Ninth Circuit cases hold that denial of injunctive relief followed by a stay is appealable under Section 1292(a)(1). *See*, *e.g.*, *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932 (9th Cir. 2017); *Privitera v. Cal. Bd. of Md. Quality Assurance*, 926 F.2d 890 (9th Cir. 1991); *Agcaoili v. Gustafson*, 870 F.2d 462 (9th Cir. 1989). Other circuits are in accord. *See*, *e.g.*, *Goldberg v. Carey*, 601 F.2d 653 (2d Cir. 1979). This Court also has held that orders

23

restraining assets are appealable as injunctions under Section 1292(a)(1). *See United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir. 1994); *United States v. Roth*, 912 F.2d 1131, 1133 (9th Cir. 1990); s*ee also United States v. Spilotro*, 680 F.2d 612, 615 (9th Cir. 1982) (finding jurisdiction over order restraining assets pending resolution of related criminal charges because "denial of interlocutory review might cause [] defendants' rights to be irreparably lost or impaired").[14] The stay order below freezes the asset seizure orders in place and is thus immediately appealable under 28 U.S.C. § 1291(a)(1).

### B. The Stay Order is Immediately Appealable as a Final Order or as an Appealable Collateral Order Because it Effectively Forecloses Review on the Merits of Defendants' Constitutional Claims.

Even if the Stay Order were not immediately appealable as an interlocutory order under Section 1292(b)(1), it is an appealable final order under Section 1291 because it effectively decides the substance of this case and leaves Appellants "effectively out of court." *Davis*, 745 F.3d at 1308-10.

The Supreme Court established this principle in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 7 (1983), where a contractor

---

[14] Other circuits agree. *See, e.g.*, *United States v. Real Prop. Located at 1407 N. Collins*, 901 F.3d 268, 272 (5th Cir. 2018). *See also* 16 C. Wright *et al.*, Federal Practice and Procedure § 3922.3, at 135-36 (3d ed. 2018) ("Orders controlling the use of property involved in forfeiture proceedings have been held [immediately] appealable, no doubt in part because of the drastic consequence threatened by modern uses of forfeiture.").

sued in federal court to compel arbitration in response to a hospital's state claim seeking a declaration that the parties' contract granted no right to arbitration. The district court stayed the federal case pending resolution of the arbitration question in state court, but the Supreme Court concluded that the district court's stay order was immediately appealable under Section 1291 because it effectively amounted to a final order for purposes of jurisdiction. *Id.* at 9. Because the state court proceedings would have mooted the federal case and left plaintiff "effectively out of court," the stay order was immediately appealable. *Id.*

This Court, following a majority of other circuits, extended the *Moses H. Cone* Doctrine to allow immediate appeal of a stay order that "impose[s] lengthy or indefinite delays." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 723 (9th Cir. 2007) (discovery in civil case implicated defendants' Fifth Amendment rights, and delay left them effectively out of court). This is particularly a problem when protection of civil liberties is at stake. *Davis*, 745 F.3d at 1309 (stay order was immediately appealable to allow state prisoner's claims to go forward regarding involuntary medication and abuse, because lengthy and indefinite delays would leave plaintiff "effectively out of court"). Where First Amendment rights are implicated, as they are here, courts have held repeatedly that immediate appeal of stay orders is required to prevent ongoing burdens to constitutional protections for free expression. *E.g.*, *National Socialist Party of Am. v.*

*Village of Skokie*, 432 U.S. 43 (1977) (*per curiam*); *United States v. P.H.E., Inc.*, 965 F.2d 848, 857 (10th Cir. 1992). *See Fort Wayne Books*, 489 U.S. at 56 ("it would be intolerable to leave unanswered, under these circumstances, an important question of freedom of the press under the First Amendment"). *See also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 246-47 & n.6 (1974) (same).

That is precisely Appellants' situation. Their Motion to Vacate in the CDCA has been stayed, and the District Court in Arizona refused to assert jurisdiction over their constitutional challenge to the pretrial seizures. [Tr. of Record at 55:1-60:3, Nov. 16, 2018 Hearing, D. Ariz. 18-CR-00422]. Therefore, the challenge will not be heard until *after* the criminal trial, at which point the primary claims (that First Amendment proceeds cannot be seized before trial and Appellants have a Fifth Amendment right to a prompt hearing) will be moot.

Even if the Stay Order is not deemed a "final order" for purposes of 28 U.S.C. § 1291, it is appealable as a "collateral order" under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). The Collateral Order Doctrine recognizes "that § 1291's reference to 'final decisions' includes certain interlocutory orders that 'finally determine claims of right separable from, and collateral to, rights asserted in the action[.]" *Davis*, 745 F.3d at 1308 (citing *Cohen*, 337 U.S. at 546).

The Collateral Order Doctrine often has been cited as a reason to allow immediate appeals in cases involving First Amendment rights.  In *Village of Skokie*, for example, the Supreme Court found refusal to stay an injunction immediately appealable under *Cohen* because denial of First Amendment rights was "separable from, and collateral to" the merits, and failure to take jurisdiction would ignore the "strict procedural safeguards" required in free speech matters, "including immediate appellate review."  432 U.S. at 44.  Similarly, the Tenth Circuit in *P.H.E., Inc.* held the Collateral Order Doctrine applied where it found the district court's order implicated "important right[s] which would be lost, probably irreparably, if review had to await final judgment."  *P.H.E.*, 965 F.2d at 855, 856 (citation and internal quotation marks omitted).

The Stay Order here is appealable under the same reasoning.  First, it con-clusively determines disputed questions in the forfeiture proceeding in the District Court including (1) the constitutionality of seizing publishing proceeds before trial and (2) Appellants' right to a prompt hearing.  The stay renders those constitu-tional violations a *fait accompli*.  Second, the order stayed the CDCA proceedings because of supposed *res judicata* effects on the Arizona criminal case, even though later criminal forfeiture is a separate issue from the Government's present uncon-stitutional civil forfeitures.  Third, the Stay Order will be unreviewable if not appealed immediately.  Again, the case below is premised on the unconstitu-

tionality of *pretrial* seizures of publishing proceeds and violation of Appellants' rights to a *prompt* hearing. Appeal of those issues *after trial*, years in the future, would be pointless. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1104 (9th Cir. 2005) (citing *Marchetti v. Bitterolf*, 968 F.2d 963, 966 (9th Cir. 1992) (unreviewability factor met where it was likely that case would be mooted)).

## II. Seizures of Publishing Assets Arising from Operation of Backpage.com and from Prior Newspaper Operations Violate the First and Fourth Amendments.

### A. Special Rules Apply When Asset Seizures Implicate First and Fourth Amendment Rights.

Any pretrial seizure of expressive materials and related assets requires "special protection." *Fort Wayne Books*, 489 U.S. at 63. *See Stanford v. Texas*, 379 U.S. 476, 486 (1965) ("The point is that it was not any contraband of that kind which was ordered to be seized, but literary material."). This requirement is due to the fact that development of Fourth Amendment protections against unreasonable searches and seizures "is largely a history of conflict between the Crown and the press." *Id*. at 482. The Supreme Court has long recognized that the government used "the power of search and seizure as an adjunct to a system for the suppression of objectionable publications." *Marcus v. Search Warrant*, 367 U.S. 717, 724 (1961). Consequently, the Government's authority to effect a seizure of assets tied to publishing is limited by both the First and Fourth Amendments. *Id*. at 730-32.

The Government's claim that this case raises no First Amendment issues, based on allegations that Backpage.com hosted *only* speech relating to unlawful activities, is wrong for multiple reasons, not least of which is that it assumes what the Government has the burden to prove—that all proceeds from Backpage.com constitute profits from unprotected speech, that Appellants had specific knowledge and intent regarding its unprotected status, and that all of the assets seized came only from that source. Each of these errors is addressed in turn below, but the threshold problem is the Government's refusal to understand that it must prove the speech (and proceeds derived therefrom) is unprotected by the First Amendment, as well as the requisite *mens rea*, *before* it may take action against the speech.

No doubt, certain narrowly framed and specifically defined categories of speech are considered outside the First Amendment's protection. *United States v. Sineneng-Smith*, 910 F.3d 461, 470 (9th Cir. 2018). But speech is presumed protected, *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002), and before it may be relegated to one of these unprotected categories, the Constitution erects high barriers and imposes the burden of proof on the Government.[15] These limits are

---

[15] *E.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (public officials must prove falsity of speech and actual malice to recover damages for defamation); *Miller v. California*, 413 U.S. 15, 23-25 (1973) (government must show that work, taken as a whole, meets three-part test to be considered obscene); *Brandenburg v. Ohio*, 395 U.S. 444, 447-49 (1969) (government must prove that speaker intended to provoke commission of crime and that speech was likely to produce imminent crime to be considered incitement).

strictly enforced. "The government may not suppress lawful speech as a means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).[16]

More specifically, the First Amendment prohibits the Government from declaring online classified ads for adult services or escorts are unprotected simply because a Government investigator believes that they "look like" ads for illegal prostitution. *Dart*, 807 F.3d at 234 ("[N]ot all advertisements for sex are advertisements for illegal sex."). Yet that is the mistaken premise upon which the asset seizure warrants were issued in this case, despite the fact that every court to address this question has held the Government cannot presume adult-oriented ads are unprotected.[17]

---

[16] *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, [it] bears the burden of proving the constitutionality of its actions."); *id.* at 818 ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion … must rest with the Government, not with the citizen."); *Bd. of Trs. v. State Univ. of N.J. v. Fox*, 492 U.S. 469, 480 (1989) ("the State bears the burden of justifying its restrictions").

[17] *See, e.g., Doe v. Backpage.com LLC*, 104 F. Supp. 3d at 156-57 ("The existence of an escorts section in a classified ad service, whatever its social merits, is not illegal."), *aff'd*, 817 F.3d 12; *McKenna*, 881 F. Supp. at 1282 (discussing permissibility of escort ads and state licensure of escort services); *Cooper*, 939 F. Supp. 2d at 816, 833-34 (ads on Backpage.com are protected speech under the First Amendment); *Hoffman*, 2013 WL 4502097, at *9-11 (rejecting argument that escort ads on website are unprotected speech); *M.A.*, 809 F. Supp. 2d at 1049-50. *See also Dart v. Craigslist*, 665 F. Supp. 2d at 968 ("We disagree … that the 'adult

The Government faces an even higher hurdle in this case. The allegations in the criminal case underlying the civil seizures here are *not* that Appellants authored advertisements proposing illegal transactions, or even that they were aware of the content of specific ads (much less that they knew the content of those specific ads related to unlawful activities, and published those specific ads with the intent to facilitate the specific unlawful activities). Rather, the Government alleges Appellants once owned (or worked for) a company that published a website that hosted third-party speech, and thereby "facilitated" illegal transactions by unrelated third parties. In this circumstance, the First Amendment prohibits the Government from presuming the requisite knowledge or intent. *E.g.*, *Virginia v. Black*, 538 U.S. 343, 364-65 (2003).

The Supreme Court has long held the Government cannot impose liability for distributing expressive materials without sufficient proof of scienter. In *Smith v. California*, 361 U.S. 147 (1959), it struck down a Los Angeles ordinance making it a crime for booksellers to possess obscene books. Even though the First Amendment does not protect obscene speech, the Court held a bookseller could not be held liable without proof of knowledge concerning the contents of a given book. *Id.* at 153-54 ("It would be altogether unreasonable to demand so near an approach

_____

services' section is a special case. The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content.").

to omniscience. And the bookseller's burden would become the public's burden."). *See Mishkin v. New York*, 383 U.S. 502, 511 (1966) ("The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material …."). [18] The First Amendment burden imposed by self-censorship is magnified online, because "websites … will bear an impossible burden to review all of their millions of postings or, more likely, shut down their adult services entirely." *Cooper*, 939 F. Supp. 2d at 830. Thus, in the context of a publisher of a website hosting third-party classified ads, the Government must prove scienter as to each ad that it claims relates to unlawful conduct.

In this case, the asset seizures were based on no more than allegations of generalized knowledge about the overall "nature" of the website and that advertisements had led to unlawful conduct (which authorities investigated with Backpage.com's help and support). [19] These conclusions were based on the obser-

---

[18] *See also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) ("a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts"); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) ("Statutes that impose criminal responsibility for dissemination of unprotected speech must contain a knowledge requirement."); *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) ("[W]rongdoing must be conscious to be criminal.").

[19] For example, Inspector Versoza based his conclusions on his estimate that 90 percent of Backpage.com's revenues "are generated from 'adult' and 'escort' ads," ER 65, 530, but failed to disclose that numerous courts have rejected arguments equating ads in these categories with ads for illegal prostitution. *See supra* 7-8 & n.3, 30 & n.17.

vations of a single postal inspector. None of the "special protections" governing seizures affecting First Amendment interests were observed. It was the Government's burden to justify the seizures in light of the First and Fourth Amendment concerns that Appellants raised. Failure to meet that burden means the decision below is erroneous and the seizures must be vacated.

## B. The First and Fourth Amendments Prohibit Pre-Conviction Seizures of Publishing Assets or Proceeds.

The general First and Fourth Amendment rules that limit Government power have long been applied to restrict the ability to seize publishing assets and proceeds. The District Court did not address the merits of Appellants' Motion to Vacate on this point, and thus far the Government has used various procedural dodges to avoid engaging on this issue. The applicable law is clear, however.

### 1. Pretrial Seizure of Publishing Assets is a Prior Restraint.

The essential rationale underlying the seizure warrants that the Government obtained is constitutionally infirm. In *Fort Wayne Books*, 489 U.S. at 51, the Supreme Court invalidated a section of the Indiana RICO law that authorized pretrial seizures of assets "subject to forfeiture" on a showing of probable cause.[20] The State had obtained a forfeiture order under the law, and the sheriff had seized

---

[20] Assets "subject to forfeiture" under the Indiana law included all "property, real and personal, that 'was used in the course of, intended for use in the course of, derived from, or realized through' … racketeering activity." *Fort Wayne Books*, 489 U.S. at 51.

defendants' real estate, publications, and other personal property, padlocking three adult bookstores and hauling away their contents. *Id*. at 52. The Court held these seizures violated the First Amendment, because "[t]he remedy of forfeiture is not intended to restrain the future distribution of presumptively protected speech." *Id*. at 75 n.13. Despite the fact that the materials at issue could be forfeitable *upon conviction*, the Court held that "the seizure at issue here is unconstitutional." *Id*. at 65.[21]

This Court applied *Fort Wayne Books* to invalidate federal RICO pretrial forfeiture provisions in *Reno*, 41 F.3d 503 (re-adopting holding invalidating pretrial forfeitures as set forth in *Barr*, 960 F.2d 781). It found "the reasoning of *Fort Wayne Books* is equally applicable to the federal RICO statute," whose authorization of pretrial forfeitures of constitutionally protected materials "is unconstitutional on its face." *Barr*, 960 F.2d at 788. The Court explained "[t]he First Amendment will not tolerate such seizures until the government's reasons for seizure weather the crucible of an adversary hearing." *Id*. It reiterated that probable cause is not a sufficient showing to support a forfeiture order. *Id*.; *see also Fort Wayne Books*, 489 U.S. at 66 ("mere probable cause to believe a legal

---

[21]   The Supreme Court held the forfeiture order unconstitutional even though defendants in that case had 39 prior convictions for violating the state's obscenity laws as predicate offenses, and even assuming the materials subject to seizure were, in fact, obscene. *Fort Wayne Books*, 489 U.S. at 51, 65.

violation has transpired is not adequate to remove books or films from circulation").

The Government has assumed the seizures are supported by the post-seizure guilty pleas of Carl Ferrer and Backpage.com, but this glosses over the fact that Appellants also are challenging seizures of assets derived from publishing and other ventures that predate and are entirely separate from their former interest in Backpage.com. *See* ER 48-52, 513-17. Even as to assets derived from Back-page.com, the Government's argument assumes that the pleas establish as a matter of law that all proceeds derived from the website are unprotected by the First Amendment, a proposition that has been rejected uniformly by the courts. *See supra* notes 3, 17. But the pleas cannot be used to support this assumption.[22] Even if the pleas of other parties could be accepted as evidence regarding the general characteristics of the website, they do nothing to affect *Appellants'* First Amendment defenses where *mens rea* is a central issue, as it is here. *See supra* 30-32.[23]

---

[22] The Government's position ignores this Court's warning that "plea agreement[s] may adopt facts the government wants to hear in exchange for some benefit." *United States v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018). *See also Lee v. Illinois*, 476 U.S. 530, 541 (1986) (accomplices' confessions and arrest statements are "presumptively unreliable," "presumptively suspect," and "less credible than ordinary hearsay"). *Cf. Bruton v. United States*, 391 U.S. 123 (1968) (admission of co-defendant's confession inculpating defendant constitutes reversible error, despite limiting jury instruction).

[23] Further, the "probable cause … prerequisite for the institution of civil forfei-ture proceedings … [may] not rely on evidence obtained after the institution of

In this case, the Government contravened *Fort Wayne Books* and *Reno* by using seizure authority to close down the second largest classified advertising website on the Internet. *See*, *e.g.*, *Center for Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 658 (E.D. Pa. 2004); c*f. Vance v. Universal Amusement Co.*, 445 U.S. 308, 315-16 (1980) (invalidating nuisance abatement law authorizing business closure prior to final adjudication); *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 138-39 (9th Cir. 1980) (same), *aff'd mem.*, 454 U.S. 1022 (1981). It is immaterial whether the Government actually executed a seizure warrant to close down Backpage.com (as claimed in its public announcements), or Ferrer succumbed to pressure to close it down at the Government's direction, in antici-pation of his plea agreement. What is at issue here is the validity of the seizure orders, and all seizures of website assets, domains, and financial proceeds were predicated on the same (defective) showing of probable cause.[24] Any order that

---

forfeiture proceedings." *United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1291 (9th Cir. 1997). *See also*, *e.g.*, *id.* at 1289; *United States v. $186,416.00 U.S. Currency*, 590 F.3d 942, 949, 954 (9th Cir. 2010); *United States v. One 1978 Piper Cherokee Aircraft*, 91 F.3d 1204, 1208 n.7 (9th Cir. 1996) (Circuit's *de novo* review of basis for forfeiture proceeding will "consider only evidence that the record discloses was developed prior to the initiation of th[e] action").

[24] Regardless of the pleas of Ferrer and Backpage.com, disposition of the website and related assets remains a live issue because Appellants' corporate entities hold a lien on all of the assets of Backpage.com and its affiliates, with the lien securing, among other things, payment of a sizeable balance of the purchase

authorizes shuttering a publishing enterprise prior to trial and conviction plainly is unconstitutional.

### 2. Seizure of Publishing Proceeds Penalizes Speech in Violation of the First and Fourth Amendments.

The Court in *Fort Wayne Books* limited its specific holding to the State's seizure of expressive materials, 489 U.S. at 930 n.12, but the same principles govern pretrial seizures of publishing proceeds. *See American Library Ass'n v. Thornburgh*, 713 F. Supp. 469, 484 n.19 (D.D.C. 1989) ("pre-trial seizure of non-expressive material [including printing presses, bank accounts, etc.] *ex parte* from a business engaged in expressive material also is unconstitutional"), *rev'd on standing grounds sub nom. American Library Ass'n v. Barr*, 956 F.2d 1178, 1194-96 (D.C. Cir. 1992).

Since the very beginnings of constitutional doctrine governing freedom of the press, the Supreme Court has evaluated government actions by their "operation and effect," not the form they take. In particular, the Court has made clear that the First Amendment means more than simply freedom from prior restraint. *Near v. Minnesota*, 283 U.S. 697, 708-09, 714-17 (1931). As First Amendment jurisprudence developed, the Court has held that laws restricting or suppressing speech "may operate at different points in the speech process," including

---

price. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (First Amendment issue is not moot where resumption of closed business is possible).

(1) "restrictions requiring a permit from the outset," (2) "*imposing a burden by impounding proceeds on receipts or royalties*," (3) "seeking to exact a cost after the speech occurs," or (4) "subjecting the speaker to criminal penalties." *Citizens United v. FEC*, 558 U.S. 310, 336-37 (2010) (citations omitted) (emphasis added). This follows from the well-established rule that depriving writers and publishers of compensation for their work violates the First Amendment.[25]

The Court applied these principles to hold that the First Amendment prohibits Government action to seize proceeds derived from publishing activities in *Simon & Schuster*, 502 U.S. at 105. In that case, the Court held that the Government cannot "freeze" profits from the sale of a book under a statutory scheme that authorized forfeitures of proceeds of crime and prejudgment attachment procedures to ensure that wrongdoers "do not dissipate their assets."[26] The Court assumed, without deciding, that income derived from expressive activity escrowed by the

---

[25] *See United States v. National Treasury Emps. Union*, 513 U.S. 454, 468-469 (1995); *Playboy Entm't Grp.*, 529 U.S. at 812 (reducing profitability of a business can infringe the First Amendment because "[t]he distinction between laws burdening and laws banning speech is but a matter of degree"); *Matal v. Tam*, 137 S. Ct. 1744 (2017) (denial of benefits of trademark registration violates the First Amendment); *cf. Minneapolis Star & Trib. Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 583-84 (1983) (special taxes on the press act as "a form of prior restraint on speech").

[26] *Simon & Schuster*, 502 U.S. at 111. In this regard, the purpose of the infirm statute was identical to the RICO forfeiture provisions struck down in *Barr*, 960 F.2d at 788 (enjoining 18 U.S.C. § 1963(d) authorizing government action "to preserve the availability of property … for forfeiture").

law "represent[ed] the fruits of crime" but, nevertheless, held the law was "pre-sumptively inconsistent with the First Amendment" to the extent it "imposes a financial burden on speakers because of the content of their speech." *Id*. at 115. Various similar state laws likewise have been invalidated as unconstitutional.[27]

The First Amendment thus precludes the Government's pretrial seizure of Appellants' bank accounts and other financial assets based on allegations that they represent illegal profits derived from Backpage.com. As a matter of basic constitutional law, the Government cannot impose restrictions in advance of trial based entirely on allegations that a website hosts content related to unlawful conduct. *See Dart*, 807 F.3d at 230-31 (enjoining Sheriff's actions to "suffocate" website financially based on allegations of illegality). Again, such a theory would permit the Government to penalize speech by assuming the very point it must

---

[27] *See Seres v. Lerner*, 102 P.3d 91, 97-98 (Nev. 2004) (invalidating Nevada law creating special cause of action allowing victims to sue to recover "all proceeds, regardless of the extent to which the work relates to the crime against the victim"); *Keenan v. Superior Court*, 40 P.3d 718, 726 (Cal. 2002) (invalidating California law that confiscates "all income from expressive materials, whatever their general themes or subjects"); *In re Opinion of Justices to the Senate*, 764 N.E.2d 343, 350-351 (Mass. 2002) (finding Massachusetts' proposed "Son of Sam" law violated the First Amendment); *Curran v. Price*, 638 A.2d 93 (Md. 1994) (invalidating Maryland law because of financial restrictions it placed on crime-related expression); *see also State ex rel. Napolitano v. Gravano*, 60 P.3d 246, 255 (Ariz. App. Ct. 2002) (upholding Arizona law to the extent forfeiture is restricted to specific proceeds of racketeering and defendant is accorded full due process *before* seizure, including an adversary proceeding where state has burden of proof).

prove at trial. Likewise, the Government's theory in this case, that there are no First Amendment ramifications to seizing all of Appellants' "non-expressive assets," would merely give it a way to achieve indirectly what it cannot do directly. Seizing all assets of a website publisher can curtail or penalize speech every bit as effectively as seizing the website itself. *See supra* 37-39.

Because the challenged seizure warrants were predicated on nothing more than an assertion of probable cause that Backpage.com hosted advertisements relating to unlawful conduct, the District Court should have considered Appellants' motion on its merits and vacated all of the seizure warrants.

### C. Seizures of Appellants' Assets Were Defective Because They Relied on a Deficient Affidavit, Violated Due Process, and Were Grossly Overbroad.

While no pre-conviction seizure of assets or proceeds of publishing activities should have been permitted under the principles of *Fort Wayne Books*, Appellants were afforded no opportunity to challenge the seizures because the Government accomplished its objectives using *ex parte* procedures. Appellants' Motion to Vacate identified numerous deficiencies in the seizure warrants (in addition to the illegality of pre-conviction seizures generally), and the Government has yet to provide a substantive response. Appellants also argued the procedures the Government employed were constitutionally defective, that a heightened burden of proof is required, that the seizure warrants were defective under *Franks*, 438 U.S.

154, and that the Government improperly seized assets unrelated to the alleged crimes. ER 30-53, 495-518. Each of these issues independently supports an order vacating the seizures, and, as explained below, the District Court's decision to stay proceedings and thereby avoid ruling was error.

### 1. Appellants Were Improperly Denied a Prompt Hearing to Challenge the Defective Probable Cause Showing.

Appellants were entitled to a prompt hearing to challenge the sufficiency of warrants authorizing the seizures. *United States v. Crozier*, 777 F.2d 1376, 1383 (9th Cir. 1985); *United States v. $52,100 in U.S. Currency*, 2018 WL 1782934, at *2 (S.D. Cal. Apr. 13, 2018). Where warrants were obtained with an intentionally or recklessly false affidavit (as in this case), they "must be voided and the fruits of the search excluded to the same extent as if probable cause were lacking." *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997) (quoting *Franks,* 438 U.S. at 156).[28] In the Motion to Vacate, Appellants showed that Inspector Versoza's affidavits cherry-picked out-of-context phrases in emails to support the Government's allegations, while omitting adjacent statements that directly contradicted its theories. ER 37-41, 502-06 (providing detailed

---

[28] *See also United States v. One 1987 Mercedes Benz*, 1992 WL 198441, at *5-6 (N.D. Ill. Aug. 11, 1992) (finding of probable cause vacated where the court affidavit in support of a civil seizure warrant contained false statements that misled the judge signing the warrant).

examples).[29]  Once Appellants showed that statements in the affidavit were false, the District Court should have considered whether there was probable cause for the warrant notwithstanding the false statements.[30]

Appellants showed how the seizure warrants contained all of these deficiencies, yet no *Franks* hearing was conducted.  ER 32-41, 497-506.  The District Court nevertheless stayed proceedings without considering the merits of the motion.  This had the effect of affirming the seizure warrants, without any

---

[29]  For example, Versoza claimed internal Backpage emails showed it edited ads "to make the advertising of sex trafficking less overt."  ER 89-90, 554-55; *see generally* ER 61-116, 526-81.  As an example, he quoted an email he claimed said: "I'd like to still avoid Deleting ads when possible," that "we're still allowing phrases with nuance," and that "[i]n the case of lesser violations, editing should be sufficient."  *Id.*  But contrary to Versoza's allegation, the email did not mention sex trafficking and its only reference to prostitution was the following:  "I'd still like to avoid Deleting ads when possible, but ***if an ad makes a clear reference to sex for money or an image displays a sex act, don't hesitate deleting it.  Those are not the types of ads we want on our site at all.***  In the case of lesser violations, editing should be sufficient."  ER 290, 755 (emphasis added).  By omitting language not fitting his narrative, Versoza presented the email as saying the ***opposite*** of what it actually said.  Similarly, Versoza claimed Backpage.com's CEO "wrote an email explaining that … he was unwilling to delete prostitution ads because doing so 'would put us in a very uncompetitive position with craig[slist].'"  ER 88, 553; *see generally* ER 61-116, 526-81.  The email, however, said nothing about prostitution ads, but discussed whether ads containing certain terms (none of which reference prostitution or sex for money) should be deleted from an ad or whether an entire ad should be deleted.  ER 284-85, 749-50.

[30]  *United States v. Christakis*, 238 F.3d 1164, 1167 n.1 (9th Cir. 2001). *Franks* also requires invalidation when a search warrant was obtained with an affidavit that intentionally or recklessly omits material facts.  *See Franks*, 438 U.S. at 156; *United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

review, despite failure of the affidavits even under the lesser (albeit improper) standard of probable cause. The Motion to Vacate cited specific material omissions and misstatements in the seizure affidavits. The Versoza affidavits failed to mention any of the cases finding that the First Amendment protects online classified advertising websites generally, and Backpage.com in particular. ER 34-37, 499-502. They also contained numerous false and misleading factual statements regarding Appellants' level of knowledge and involvement with illegal third-party ads on Backpage.com. ER 37-41, 502-06. In particular, Inspector Versoza's claim that internal Backpage.com communications proved the website adopted policies "designed to maintain its promotion of sex trafficking and prostitution," was materially false, and the internal communications proved just the opposite. ER 38-40, 503-505.

This showing should have prompted the District Court to hold an immediate hearing under *Franks*. But it had no such effect. And when the District Court withheld action, the Government used the same defective affidavits to obtain additional, separate seizure warrants, despite having full and detailed knowledge of their many false statements and other deficiencies.[31] RJN 166-234. Appellants

---

[31] Although the additional warrants and forfeiture complaints are not directly at issue here, this Court can consider the subsequent conduct in assessing whether the Government acted intentionally or recklessly when seeking the seizure warrants that are at issue here.

asked the District Court to "order an evidentiary hearing and require the government to justify any seizures with sufficiently reliable evidence." ER 53, 518. The court's failure to do so was erroneous.

### 2. Any Hearing Should Have Required a Heightened Showing by the Government.

Appellants also argued that if the District Court declined the request to vacate the seizures entirely and instead held a hearing, it would be subject to rigorous procedural requirements and a heightened standard of proof beyond probable cause. ER 30-32, 41-48, 495-97, 506-13. This is required because, when free speech issues are implicated, reviewing courts must use "procedural safe-guards designed to obviate the dangers of [] censorship." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559-60 (1975). To justify the seizures here, the Government must be required to prove that the *specific* advertisements for which it seized proceeds related to unlawful conduct, that Appellants knew those *specific* advertisements related to unlawful conduct, and that Appellants had the required *mens rea* with respect to those specific advertisements. *Smith*, 361 U.S. at 153-54.[32]

---

[32] Tellingly, the Government agrees that such a specific showing of *mens rea* is required. *E.g.*, *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 199-201 (D.D.C. 2018) (agreeing with DOJ that newly adopted law, like the Travel Act, requires the government to prove "not simply that the defendant was aware of a potential result of the criminal offense, but instead that the defendant intended to 'explicitly further[]' a specified unlawful act"), *appeal filed*, No. 18-5298 ( D.C.

In this regard, the Versoza affidavit upon which the seizure warrants were based was woefully inadequate. The Supreme Court has described "leaving the protection of [First and Fourth Amendment] freedoms to the whim of the officers charged with executing the warrant" as a "constitutional impossibility." *Stanford*, 379 U.S. at 485. *See Marcus*, 367 U.S. at 724-29; *Pappert*, 337 F. Supp. 2d at 658. Such seizures cannot be justified based on "the conclusory assertions of the police officer," as they were here. *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637 (1968). Accordingly, the District Court was wrong to stay the proceedings below. This Court should reverse with instructions to vacate the illegal seizures.

### 3. The Seizures Were Grossly Overbroad.

Appellants also argued that significant assets were seized that could not be justified under *any* standard because the Government failed to show they were connected to criminal activity in any way. These assets included millions of dollars derived from publication of newspapers dating to the 1970s, as well as publishing proceeds from Backpage.com's overseas operations, classified ads on Backpage.com other than adult ads, and adult ads that had nothing to do with prostitution. ER 48-52, 513-17. The Government not only failed to satisfy the legal standard for a seizure, but its seizure of these unrelated assets is invalid on its

---

Cir. Oct. 12, 2018). *See id.* at 200 (law "is plainly calculated to ensnare only specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution").

face and violates Appellants' Sixth Amendment rights. *Luis v. United States*, 136 S. Ct. 1083, 1088, 1093 (2016) ("[I]nsofar as innocent (*i.e.*, untainted) funds are needed to obtain counsel of choice, we believe that the Sixth Amendment prohibits the court order that the Government seeks.").

The Government has refused to respond to these obvious deficiencies in the seizures, and instead maneuvered to avoid ever having to respond. The decision of the District Court to stay civil proceedings ratifies and perpetuates this injustice.

## III. The District Court's Stay Order Was Based on a Mistaken Premise That Ignored the Constitutional Bases Underlying the Challenge to Pretrial Seizures of Publishing Assets.

The District Court erred in staying proceedings below, including Appellants' Motion to Vacate, based on its conclusion that continuing the civil forfeiture cases would impede any subsequent criminal forfeiture if the Government's civil claims should fail. ER 1-2.[33] The decision below mistakenly assumes that a ruling on the

---

[33] The Government sought a stay, and the District Court granted it, solely on the basis of 18 U.S.C. § 981(g). ER 433-37, 1-2. But Section 981(g) authorizes stays in only two circumstances—on a motion by the government under Section 981(g)(1) where discovery in a civil forfeiture proceeding will adversely affect related criminal proceedings, *cf.* ER 433-37, or on motions by claimants to protect their rights against self-incrimination in a related criminal case under Section 981(g)(2). Neither of these are the basis for the District Court's order staying the challenge to the forfeitures. Instead, it relied exclusively on the potential for its orders on Appellants' motion having a preclusive effect in the Arizona criminal proceeding. ER 433-37, 1-2. *See infra* §§ III.A-B. In pursuing the constitutional issues on this appeal, Appellants do not waive any argument that the District Court misapplied Section 981(g).

legality of a *pretrial* seizure of publishing assets in the civil proceeding necessarily would have a *res judicata* effect on *post-conviction* forfeitures in the criminal matter. It also assumes incorrectly that Appellants' post-conviction remedies would adequately address the constitutional injury. *Id*. Contrary to the District Court's reasoning, Appellants would be denied any possible remedy for their First and Fourth Amendment claims if redress must await the outcome of the criminal proceeding.

The one case upon which the District Court decision rests does not support its conclusion. In *Liquidators of European Federal Credit Bank*, 630 F.3d at 1139, this Court held that criminal forfeiture proceedings were barred by *res judicata* after the Government's separate claim for civil forfeiture was dismissed under the statute of limitations, and it instructed the district court on remand to return the illegally seized assets. *Id*. at 1142, 1148. Based on that holding, the District Court in this case reasoned that ruling on Appellants' pending motions "could ultimately have preclusive effect on the criminal matter," and stayed all civil matters pending conclusion of the related criminal matter. ER 2. That conclusion does not follow from *Liquidators of European Federal Credit Bank*. Rather, that decision suggests the District Court should have been more skeptical of the Government's "sleight of hand" and "contradictory positions." 630 F.3d at 1148-49. Had it done so, it

47

would have found that none of the asserted grounds for staying Appellants' motion challenging the asset seizures has merit.

### A. The Potential Preclusive Effect That Concerned the District Court Does Not Apply in the Context of Appellants' First and Fourth Amendment Challenges to the Government's Seizures.

In *Liquidators of European Federal Credit Bank*, this Court held that a final order dismissing a civil forfeiture complaint as barred by the statute of limitations had a *res judicata* effect on a subsequent criminal proceeding. *Id*. at 1151-52. Here, however, Appellants were not seeking a final order to dismiss the civil forfeiture proceedings, but instead were seeking a ruling on the constitutionality of pretrial seizures.

Contrary to the District Court's assumption, granting Appellants' motion based on First and Fourth Amendment limits to the Government's power to seize publishing assets *before* trial would not preclude the Government from seeking to enforce criminal forfeitures *after* trial, if it ultimately proves its case and proper grounds for forfeiture.[34]  As Appellants showed—so far to no response from the Government or analysis by the District Court—the First and Fourth Amendments prohibit pretrial seizures of publishing assets and proceeds.  ER 25-32, 490-97.  It

---

[34]  Of course, First and Fourth Amendment issues will be relevant to the criminal proceedings and will affect such issues as the required burden of proof. But that fact is no reason to stay Appellants' challenge to unconstitutional pretrial seizures.

does not matter whether the Government seeks to effect such an unconstitutional seizure using criminal or civil process—the result is the same. Put another way, the Government clearly cannot impose such a forfeiture in a criminal proceeding before conviction, and it also cannot use civil forfeiture provisions as an end run in an attempt legitimize such an unconstitutional seizure.

Accordingly, the District Court was wrong in its conclusion that ruling on Appellants' challenge to pretrial seizures would have a preclusive effect on the Government's bid for post-conviction forfeitures. That was the entire point of both *Fort Wayne Books*, 489 U.S. at 61-64, and *Reno*, 41 F.3d at 505, which held that different constitutional standards govern pretrial seizures and post-trial forfeitures of publishing assets. *See also Barr*, 960 F.2d at 788-89; *Reno*, 41 F.3d at 504-05.[35]

---

[35] This Court's analysis in *Liquidators of European Federal Credit Bank* discusses how federal criminal and civil forfeiture provisions work in tandem to cover the same assets. A criminal forfeiture proceeding is an *in personam* action against the defendant, is part of the punishment, and "the government first must prove, beyond a reasonable doubt, that the defendant is guilty of the crime." 630 F.3d at 1149. Civil forfeiture, on the other hand, is an *in rem* action where "the government generally must prove, by a preponderance of the evidence, the culpability of the owner and a nexus between the property and the illegal activity." *Id*. If the criminal prosecution fails, the Government may still seek civil forfeiture because it requires a lower burden of proof. *Id*. at 1150. But if the civil forfeiture is brought first and is dismissed in a final order, criminal forfeiture of the same assets is precluded as *res judicata*. This Court reasoned that where the Government fails to justify a forfeiture under the more lenient civil burden of proof, it certainly could not justify a forfeiture under the higher criminal standard. *Id*. at 1152 & n.8. But nothing in *Liquidators* suggests pretrial seizure of publishing proceeds would be acceptable under either civil or criminal procedures.

**B.    The District Court Erroneously Concluded that Appellants Could Seek Effective Relief in the Criminal Proceeding.**

The second ground for the stay order—that the District Court perceived "no reason why Movants' pending motions could not be brought in the criminal action" —is likewise erroneous because it ignores the First Amendment context in which this case arose.  To the extent the District Court was suggesting Appellants could obtain relief under Rule 41(g) in the Arizona criminal case, that is an inapt option in the present context of First Amendment violations relating to pretrial civil forfeitures.  ER 2.[36]

Rule 41(g) is not available as a criminal motion once civil forfeiture complaints are filed, as they were here.  *United States v. U.S. Currency $83,310.78,* 851 F.2d 1231, 1232-33 (9th Cir. 1988); *Omidi v. United States*, 851 F.3d 859, 862 (9th Cir. 2017) (Rule 41(g) motions are not available after civil forfeiture proceedings are initiated).[37]  In any event, the District of Arizona already held it will not assert jurisdiction over seizures based on warrants issued in the CDCA.  *See* RJN 99.

---

[36]  Rule 41(g) (formerly Rule 41(e)) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Fed. R. Crim. P. 41(g).

[37]  By its plain terms, Rule 41(g) requires motions to be filed "in the district where the property was seized," so it is unclear how the District Court in Arizona could exercise jurisdiction over assets seized pursuant to warrants issued in the CDCA under Rule 41(g).  *See United States v. Unimex*, 991 F.2d 546, 550-51 (9th Cir. 1993).

Finally, to the extent any remedy must await the outcome of the criminal proceeding, it is not responsive to say a *post*-trial remedy is available when the constitutional problem to be addressed involves *pretrial* seizures. Where the First Amendment question to be decided is whether the Government can seize such proceeds prior to conviction (or at least prior to an adversary hearing), a stay deferring review to the end of the criminal case effectively decides the issue and leaves Appellants without a remedy. The importance of immediate review in these circumstances is why the Supreme Court accepted a petition for interlocutory review in *Fort Wayne Books*, which, like this case, involved the constitutionality of seizing publishers' assets prior to conviction. The Court took jurisdiction, finding "it would be intolerable to leave unanswered, under these circumstances, an important question of freedom of the press under the First Amendment." 489 U.S. at 56. *See also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 246-47 & n.6 (1974) (same).[38]

---

[38]  Courts frequently review a case's merits where further delay would exacerbate First Amendment harms. Thus, in *Village of Skokie*, the Supreme Court treated a stay order of the Illinois Supreme Court as a final order and reversed. The Court held that delay in considering an immediate (and expedited) appeal would be an ongoing burden on rights protected by the First Amendment. 432 U.S. at 43-44. *See also P.H.E., Inc.*, 965 F.2d at 857 ("[F]ederal courts have asserted jurisdiction in a number of contexts involving non-final orders, in which the proceedings complained of infringed on First Amendment rights.").

The same conclusion is warranted here. The District Court should have ruled and vacated the seizures, rather than granting a stay. This Court should reverse the decision below with instructions to vacate the seizures.

## C.     The Government's Gamesmanship Alone is Reason to Deny a Stay.

The Government's tactics and repeated efforts to evade review provide ample reason to reverse the District Court's grant of a stay. The Government seized publishing assets and proceeds via *ex parte* procedures and a knowingly false affidavit that failed to meet even the attenuated standard of probable cause. It continued to obtain seizure warrants and seize additional assets after being placed on notice of the affidavit's fatal deficiencies, going so far as to seize funds in attorneys' trust accounts as part of an effort to undermine Appellants' ability to mount a defense. It has endeavored at every turn to prevent Appellants from presenting their constitutional objections to these overbearing tactics, and has repeatedly looked for ways to preclude courts from reaching the merits of Appellants' constitutional objections. If this gambit is successful, the Government will have found an end run around *Fort Wayne Books*, *Simon & Schuster*, and the other authorities cited above, without ever having to make a constitutional argument. Obtaining a stay from the District Court was integral to this malign strategy.

The Government has never filed a substantive response to Appellants' arguments for vacating the seizures. Its strategy has been to avoid addressing the

merits by arguing in each jurisdiction that objections should have been lodged elsewhere, and eventually staying all civil proceedings until the conclusion of the criminal trial. In this way, the Government is attempting to avoid being held accountable at any point.

This Court rejected similar tactics in *Liquidators of European Federal Credit Bank*, where it held the Government had misused its forfeiture authority and attempted to evade review by taking inconsistent positions. 630 F.3d at 1148-49. As in this case, the Government had pursued criminal and civil forfeitures simultaneously, and opposed claimants' due process challenges by arguing they could raise their concerns in a soon-to-be commenced ancillary proceeding. However, once that proceeding was commenced, the Government argued the relevant statutes and rules barred the challenge. *Id.* at 1143-44. Appellants in that case argued the Government had perpetrated a "shell game" in which it claimed they could raise their arguments later, but subsequently stated they could not raise their arguments at all. The Court found appellants' "concern turned out to be justified," and "under the circumstances, judicial estoppel bars the Government from effecting its sleight of hand." *Id.* at 1148.

This Court employed the doctrines of judicial estoppel and *res judicata* in *Liquidators of European Federal Credit Bank* to void seizures where the Government had seized assets to which it had no legal right and then manipulated

the process to foreclose any ability to bring a challenge. Citing *Crozier*, the Liquidators argued Congress could not have intended the allegedly absurd result that the Government is permitted to seize and keep property while precluding its owners from mounting a challenge. *Id*. at 1147-48 & n.4. This Court agreed, but found it unnecessary to resolve the due process issue where it could simply bar the Government's gamesmanship as judicially estopped, and hold the forfeitures invalid under *res judicata* as outside the statute of limitations. *Id*. Here, the Court should likewise hold the Government is estopped from taking inconsistent positions designed to cut off review (thus reversing the stay order), and should then hold, on the merits, that the seizures are invalid for the reasons Appellants have set forth here and below.

## CONCLUSION

For the foregoing reasons, Appellants respectfully urge that this Court should find it has jurisdiction to hear this appeal under 28 U.S.C. §§ 1291 and 1292(a)(1), and vacate the stay below and order the District Court to vacate the seizures. Alternatively, because this case presents purely legal issues and is subject to *de novo* review, the Court should issue an order vacating the seizures to prevent further deprivation of Appellants' constitutional rights. *Dart*, 807 F.3d at 239.

RESPECTFULLY SUBMITTED this 6th day of February, 2019.

James C. Grant
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue
Suite 3300
Seattle, WA 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: jamesgrant@dwt.com

Robert Corn-Revere
Ronald G. London
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
　　　　ronaldlondon@dwt.com

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT, MILLER &
　KATZMAN, PLC
903 Calle Amanecer
Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
Email: tbienert@bmkattorneys.com
　　　　wbernstein@bmkattorneys.com

Paul John Cambria, Jr.
Erin McCampbell Paris
LIPSITZ GREEN SCIME
　CAMBRIA LLP
42 Delaware Avenue
Suite 300
Buffalo, NY 14202-3857
Telephone: (716) 849-1333
Email: pcambria@lglaw.com
　　　　emccampbell@lglaw.com

Bruce Feder
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road
Suite 160
Phoenix, AZ 85016
Direct: 602-257-0135
Email: bf@federlawpa.com

Gary S. Lincenberg
Ariel A. Neuman
BIRD, MARELLA, BOXER,
　WOLPERT, NESSIM, DROOKS,
　LINCENBERG & RHOW P.C.
Suite 2300
1875 Century Park East
23rd Floor
Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
Email: glincenberg@birdmarella.com
　　　　aneuman@birdmarella.com

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel for James Larkin, John Brunst, Michael Lacey, and Scott Spear represent that they are not aware of any other related cases pending in this Court.

BIENERT, MILLER & KATZMAN, PLC


By s/ *Thomas H. Bienert, Jr.*
Thomas H. Bienert, Jr.
903 Calle Amanecer, Suite 350
San Clemente, CA 92672
Tel: (949) 369-3700
Fax: (949) 369-3701
Email: tbienert@bmkattorneys.com

Attorneys for Appellants

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Cir. Rule 32, because it is proportionately spaced in Times New Roman 14-point type, and according to the word processing system used to prepare it, and in accordance with Circuit Rule 32(a)(7)(B), the word count of the brief is 13,411.

DATED this 6th day of February, 2019.

BIENERT, MILLER & KATZMAN, PLC


By s/  *Thomas H. Bienert, Jr.*
      Thomas H. Bienert, Jr.
      903 Calle Amanecer, Suite 350
      San Clemente, CA  92672
      Tel:  (949) 369-3700
      Fax:  (949) 369-3701
      Email:  tbienert@bmkattorneys.com

      Attorneys for Appellants

## ADDENDUM OF CONSTITUTIONAL AND STATUTORY PROVISIONS

United States Constitution, First Amendment:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

United States Constitution, Fourth Amendment:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

United States Constitution, Fifth Amendment:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or

limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

United States Constitution, Sixth Amendment:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

18 U.S.C. § 981

* * * *

(g)(1) Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a

related criminal investigation or the prosecution of a related criminal case.

(2) Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that--

> (A) the claimant is the subject of a related criminal investigation or case;

> (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and

> (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

(3) With respect to the impact of civil discovery described in paragraphs (1) and (2), the court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case. In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so.

(4) In this subsection, the terms "related criminal case" and "related criminal investigation" mean an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made. In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

(5) In requesting a stay under paragraph (1), the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.

(6) Whenever a civil forfeiture proceeding is stayed pursuant to this subsection, the court shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect.

(7) A determination by the court that the claimant has standing to request a stay pursuant to paragraph (2) shall apply only to this sub-

section and shall not preclude the Government from objecting to the

standing of the claimant by dispositive motion or at the time of trial.

| 9th Circuit Case Number(s) | 18-56455 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 

| Feb 6, 2019 |
|---|

.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

| s/Toni Thomas |
|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)