1   MICHAEL BAILEY
    United States Attorney
2   District of Arizona

3   KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
    MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
4   PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
    ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
5   JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
    Assistant U.S. Attorneys
6   40 N. Central Avenue, Suite 1800
    Phoenix, Arizona 85004-4408
7   Telephone (602) 514-7500

8   BRIAN BENCZKOWSKI
    Assistant Attorney General
9   Criminal Division, U.S. Department of Justice

10  REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
    Senior Trial Attorney, U.S. Department of Justice
11  Child Exploitation and Obscenity Section
    950 Pennsylvania Ave N.W., Room 2116
12  Washington, D.C. 20530
    Telephone (202) 616-2807
13  Attorneys for Plaintiff

14              IN THE UNITED STATES DISTRICT COURT

15                 FOR THE DISTRICT OF ARIZONA

16

17  United States of America,              CR-18-422-PHX-SMB

18                    Plaintiff,      **UNITED STATES' RESPONSE TO
                                      MOTION TO CONTINUE TRIAL
19        v.                          AND DATES FOR COMPLIANCE
                                      PER SCHEDULING ORDER (Doc.
20  6. Andrew Padilla,                628)**

21                    Defendant.

22

23              **INTRODUCTION AND SUMMARY OF ARGUMENT**

24         Defendant Andrew Padilla's motion to continue trial and dates for compliance per

25  scheduling order is unavailing and should be denied for several reasons.  *First*, defense

26  counsel's recitation of the amount of discovery that he is required to review in preparation

27  for a January 2020 trial date is not fully accurate.  A considerable amount of discovery

28  relevant to Padilla has been available since January 2017 and is detailed in the United States

Senate Report[1] and the superseding indictment, which clearly identifies the United States' theory in this case and some of the most important pieces of the government's evidence. (*See* CR 230.)  In addition, a large volume (5.9 million pages) of the discovery (primarily the discovery known as the "Co-Star" material) has little relevance to Padilla as the documents involve Backpage's international markets.  Moreover, the United disclosed to Padilla nearly a year ago the approximately 100 pages of Co-Star related material it might utilize at trial.

*Second*, newly appointed counsel has eight months to prepare for trial, is an experienced criminal defense attorney, and has the assistance and resources (financial and otherwise) of the attorneys representing the co-defendants.  As the Court is aware, Padilla's previous counsel and counsel representing the other defendants have already filed numerous notices, motions, responses and replies that arguably support Padilla.

*Third*, Padilla's role in the offense was limited to his position as the head of Backpage's moderation department.  In other words, he was not present during the frequent management meetings where business practices (*e.g*., The Erotic Review, Rubmaps and other reciprocal link relationships, etc.) were discussed, he was not endorsed on numerous emails that involved public relation strategies, did not attend meetings with various organizations (*i.e.* NCMEC, Auburn Theological Seminary, Polaris, etc.) and law enforcement agencies (Washington State Attorney General's Office, Cook County Sheriff's Office, etc.), and did not have a percentage ownership in the company.  These factors, among others, clearly distinguish him from the four primary defendants. Additionally and importantly, Padilla is not charged with money laundering (Counts 52-100).  Simply stated, the evidence (and corresponding discovery) that applies to Padilla is not as expansive as the relevant discovery that applies to Defendants Lacey, Larkin, Spear and Brunst.

---

[1]
https://www.hsgac.senate.gov/imo/media/doc/Backpage%20Report%202017.01.10%20FINAL.pdf

1       *Fourth*, the United States has spent considerable time reviewing the evidence with

2    his previous attorney.  For example, Padilla's previous counsel was provided (four months

3    *prior* to indictment) "hot" documents that implicate Padilla in the charges related to

4    violations of the Travel Act.  Moreover, last month, the United States provided Padilla's

5    defense counsel with hot documents – documents specifically related to the allegations

6    contained in the superseding indictment to all defendants.   Additionally, in the

7    government's May 20, 2019 letter to counsel Eisenberg, the United States labeled each

8    "hot doc" that supports the allegations contained in the superseding indictment to Padilla

9    to allow counsel to cross-reference these "hot docs" with the information contained in the

10   corresponding paragraphs of the superseding indictment.  (*See* Exhibit A.)

11      *Fifth and last*, the victims have a right conferred by statute to proceedings free from

12   unreasonable delay and oppose a continuance.

13                                  **ARGUMENT**

14      Defendant's argument that the relevant discovery in this case amounts to over 10

15   million pages is not entirely accurate. (Mot. at 2.)  As noted in previous status memoranda

16   filed by the United States, the server data involved in this case contains millions of postings

17   of blatant or thinly-veiled solicitations for prostitution services in the United States market

18   (involving nearly 394 cities in the United States) and in 94 countries worldwide. Of the

19   approximately 10 million pages of documents produced to date by the United States to the

20   defense, more than 2.1 million pages consist of documents Backpage had previously

21   provided the U.S. Senate Permanent Subcommittee on Investigations ("PSI") in the fall of

22   2016, and documents Backpage had previously produced to the United States in September

23   2017 as a result of the district court's April 7, 2018 order and the Ninth Circuit's mandate

24   compelling Backpage to comply with Grand Jury Subpoena No. 16-04-108. (*See* CR 444.)

25   Simply put, many of the documents are Backpage documents that the United States is

26   simply reproducing back to Defendants pursuant to its discovery obligations.

27      In addition, the 2.1 million documents provided to the PSI were distilled into a

28   comprehensive 50-page Senate Report (publicly available since January 2017) that

1    references Padilla nearly sixty times, and that was accompanied by an 840-page appendix

2    containing dozens of relevant emails. Padilla should already be very familiar with these

3    emails as he either authored or was endorsed on them. In sum, the Senate Report provides

4    an in-depth analysis of Padilla's role as the head of Backpage's moderation department.

5         Lastly, Padilla is also familiar with various victims referenced in the indictment

6    because he was subpoenaed for depositions in certain victims' civil cases prior to the

7    instant federal prosecution. In addition, the 100-page superseding indictment references

8    many of the PSI and grand jury documents pertaining to Padilla.  In sum, the superseding

9    indictment and PSI provide a detailed explanation of Padilla's role and outline evidence

10   the United States will rely upon at trial.

11        Moreover, a large volume of discovery is not even relevant to Padilla. More than

12   5.9 million pages of documents disclosed to Padilla originated from a source entitled "Co-

13   Star materials."  The vast majority of that data involves postings in foreign markets (where

14   no moderation was implemented) and is of marginal or no relevance to the crimes

15   committed by Padilla in the United States.

16        Furthermore, for an array of reasons, Padilla is at a substantial advantage in being

17   prepared for a January 2020 trial.  *First*, the United States' pulled the discovery pertinent

18   to Padilla into a single, comprehensive, well-organized, and easy-to-understand package

19   that it shared with his former counsel in late 2017, months before indictment.  *Second*, the

20   superseding indictment is comprehensive and identifies numerous emails Padilla authored

21   or received; in addition, the Senate Report provides a detailed explanation of Padilla's role

22   as the head of Backpage's moderation department. *Third*, Padilla's counsel has been

23   provided both a preliminary witness and exhibit list *ten* months before trial. Typically, in

24   this District, the practice is to provide these lists just weeks before trial.  *Fourth*, Padilla

25   not only had the witnesses identified well in advance of trial but the United States has

26   voluntarily disclosed any available Jencks Act statements for those witnesses. As the Court

27   is aware, the United States is not required to disclose these statements until *after* a witness

28   testifies. 18 U.S.C. § 3500.  It is the general practice that the United States provide these

1    statements sometime shortly prior to trial (in most cases weeks or days). *Fifth*, the United

2    States also intends to identify and segregate each and every trial exhibit intended for use in

3    its case-in-chief and provide those exhibits to the defense in advance of trial in digital

4    format. Finally, Padilla is out of custody and is able to effectively assist his counsel in

5    reviewing discovery unencumbered by the restrictions of pretrial detention.

6         There is more. As noted in previous pleadings, the prosecution team met with

7    Padilla's prior counsel (Michael Piccarreta) four months *prior* to indictment to review

8    "hot" documents and a road map of the prosecution theory of Padilla's role in the criminal

9    enterprise. (*See* CR 444 at 4.) The United States is willing to meet with Padilla's new

10   counsel and provide the same detailed overview of government's case against his client.

11   The United States has also requested counsel contact it with any questions regarding the

12   case.

13        Padilla also benefits from the substantial motion practice that ensued before new

14   counsel was appointed. Counsel representing the other defendants (Lacey, Larkin, and

15   Brunst have several attorneys) have filed motions for discovery (*e.g.*, motion for *Brady*

16   material), a motion to dismiss the indictment based on possible pretrial defenses, and other

17   motions. (*See*, *i.e.*, CR 399, 456, 474, 477, 507, 539, 544, 561.) And, the defense has

18   collectively noticed experts and even supplemented that notice. (*See* CR 500, 538.)

19   Notably, Padilla's counsel does not suggest other motions he would file on behalf of Padilla

20   that have not already been filed by his previous counsel or co-defendants. Lastly, Padilla's

21   counsel joined the Backpage defendants' 55-page motion to dismiss indictment (*See* CR

22   615.)

23        *Fifth*, Padilla's argument that his appointment less than ten months prior to trial

24   would deny Padilla effective assistant of trial to which he is entitled is misplaced. (Mot. at

25   4.) In *United States v. Cronic*, 466 U.S. 648, 659, (1984) , the Supreme Court reversed the

26   lower court and found that 25 days was a sufficient amount of time for preparation for a

27   complex case, where the attorney was young, inexperienced in criminal law (he was a real

28   estate attorney), and it was his first trial. The Court further found that neither the period of

1    time that the United States spent investigating the case, nor the number of documents that

2    its agents reviewed during that investigation, were necessarily relevant to the question

3    whether a competent lawyer could prepare to defend the case in 25 days. *Id.*

4            Here, unlike *Cronic*, counsel has far more than 25 days to prepare for trial.  Again,

5    in addition to the advantages of earlier disclosure of evidence, witness and exhibit lists,

6    and early disclosure of Jencks Act statements, etc., Padilla's counsel has eight months from

7    the date he was appointed to prepare for trial.

8            Padilla's new counsel has been practicing law for nearly forty years.

9    (http://davideisenberglaw.com/attorney/.)  He is a former federal prosecutor in Phoenix,

10   New York and Washington D.C.  (*Id.*)  By his own admission he has "a unique expertise

11   in the investigation of defenses and the trial of [like the instant case] complex white collar

12   cases." (*Id.*)  In sum, Padilla's new attorney is a highly regarded attorney with a background

13   relevant to defending this complex case.  In addition, Padilla had the advantage of a couple

14   of years of representation by another highly-experienced attorney (Mr. Piccarreta

15   represented him at least since March 2017) before the case was assigned to current

16   counsel.[2]

17           In short, Padilla has an experienced attorney with expertise in complex cases, who

18   will not need to litigate the case by himself.  Indeed, Padilla's new attorney will have the

19   benefit of numerous other attorneys urging defenses that would apply to Padilla.  Further

20   discovery relevant to Padilla has been in his possession for many months.

21           Padilla's requested continuance should be denied for a further reason: The public

22   and the victims have a right conferred by statute to "proceedings free from unreasonable

23   delay." 18 U.S.C. § 3771(a)(7) (the "Crime Victims' Rights Act"); *see also* 18 U.S.C. §

24   3161(h)(7)(A).  The Superseding Indictment contains 17 select victim summaries. (CR

25   230, ¶¶ 160-176.) Of these victims, at least five were juveniles when they were trafficked

26   on Backpage. (CR 230, ¶¶ 163, 164, 167, 169, 172.) Four of the victims were murdered or

27   _____

28   [2] https://pd-law.com/

1  killed as a result of being trafficked on Backpage, and their surviving family members or

2  lawful representatives stand in their shoes for purposes of the Crime Victims' Rights Act.

3  18 U.S.C. § 3771(e)(2)(B); (CR 230, ¶¶ 165, 173, 174, 175.)  The victims' and public's

4  statutory right to a speedy trial—and their need for an expeditious resolution of this

5  prosecution—strongly militates against further delay.

6                                    **CONCLUSION**

7        For these reasons, the United States opposes Padilla's motion for a continuance.

8        Respectfully submitted this 17th day of June, 2019.

9                                              MICHAEL BAILEY
                                               United States Attorney
10                                             District of Arizona

11                                             *s/ Kevin M. Rapp*
                                               KEVIN M. RAPP
12                                             MARGARET PERLMETER
                                               PETER S. KOZINETS
13                                             ANDREW C. STONE
                                               JOHN J. KUCERA
14                                             Assistant U.S. Attorneys

15                                             BRIAN BENCZKOWSKI
                                               Assistant Attorney General
16                                             Criminal Division, U.S. Department of Justice

17                                             REGINALD E. JONES
                                               Senior Trial Attorney
18                                             U.S. Department of Justice, Criminal Division
                                               Child Exploitation and Obscenity Section
19

20

21

22

23                                **Certificate of Service**

24  I hereby certify that on this date, June 17, 2019, I transmitted the foregoing document for
    filing to the Clerk of the United States District Court and sent a copy via electronic mail
25  to: David Eisenberg, Esq.

26

    *s/ Angela Schuetta*_____
27  Angela Schuetta
    U.S. Attorney's Office
28