# Exhibit L

**APPENDIX OF REQUESTS**

| No. | Request | Justification for Request |
|---|---|---|
| | **Data Regarding Backpage Website Generally** | |
| 1. | Full read-only access to the Backpage.com I.T. systems, servers, and databases, as they existed and functioned on the date of the government's seizures, with accompanying software and interconnections to enable queries, searches, collection, and analyses of data. | Defendants must have the ability to access and conduct searches on Backpage's servers as they existed and functioned on the date of the government's seizures.  As noted below, Defendants believe that these servers contain critical information regarding the government's allegations, including regarding (1) the Backpage website generally; (2) the alleged moderation of advertisements; (3) the alleged aggregation of advertisements; (4) alleged reciprocal link programs; and (5) the advertisements that form the predicates for the government's charges. |
| 2. | Data reflecting, by month, the numbers of ads run on Backpage.com within each category of the website (*e.g.*, "buy/sell/trade," "jobs," "rentals," "adult," etc.) and for each subcategory within the "adult" category (*e.g.*, "escorts," "massage," "dating," etc.). | Defendants seek this data to show that Backpage.com was a general purpose classified ad website, only a fraction of ads were posted in the adult categories, and the site earned many millions of dollars from non-adult ads. |
| 3. | Data reflecting total revenues, by month, for ads within each category and subcategory of the Backpage.com website. | *Id.* |
| 4. | All ads Backpage.com reported to the National Center for Missing and Exploited Children (NCMEC) or other law enforcement (along with all administrative data and information regarding such ads) and data reflecting the numbers of ads reported, by month. | The government has alleged that Backpage.com's referrals to NCMEC were "artificially limit[ed]" and not made in good faith.  *See* Dkt. 230 (Superseding Indictment, or "SI") at ¶ 14.  Defendants need to obtain all such referrals to demonstrate how extensive Backpage.com's efforts were. Defendants also believe the government is aware that NCMEC complained that Backpage.com was making too many referrals, and data of the numbers of referrals by month will |

1

APPENDIX A

| No. | Request | Justification for Request |
|-----|---------|---------------------------|
|  |  | show Backpage.com's response to NCMEC's request to limit referrals. |
| 5. | All documents and data reflecting Backpage.com's cooperation with law enforcement authorities in investigations or prosecutions, including (a) responses to subpoenas, warrants, and/or other government requests about ads or users; (b) communications relating to such responses; and (c) testimony or other evidence provided by Backpage.com personnel in criminal proceedings or trials. | Defendants believe the government is aware that law enforcement authorities repeatedly commended Backpage.com for its cooperation and assistance in investigations and prosecutions and for blocking (or not blocking) ads and users at the request of authorities (including, *e.g.*, a May 2011 commendation by FBI Director Robert S. Mueller, and scores of other communications from DOJ thanking Backpage.com or its personnel for their support and assistance). Defendants seek this information, as well, to respond to the government's accusations that testimony of Backpage.com personnel supporting law enforcement allegedly reflected knowing participation in prostitution activities of users.  *See* SI ¶¶ 71, 92. |
| 6. | All documents quoted or mentioned in the Indictment, identifying the paragraphs in the Indictment where each document is quoted or mentioned, and providing all other communications relating to each such document (*e.g.*, all emails in a chain). | The government has provided Bates ranges for over 2,200 pages of materials without any indication of which paragraphs of the Superseding Indictment refer to which documents.  Searching through thousands of pages of documents to attempt to line them up to the allegations in the Superseding Indictment is an arduous, burdensome, and time-consuming task that Defendants should not have to do, because it is information known to the government, which could be readily disclosed. |
| **Data Regarding Moderation of Advertisements** | | |
| 7. | Data reflecting the numbers of ads, by category and month, that Backpage.com blocked or prevented from running (whether before or after the ads went live on the website) and the reasons the ads were blocked or prevented from running. | Defendants must have the ability to demonstrate Backpage.com's actual moderation practices to respond to and rebut mischaracterizations (*i.e.*, to show that Backpage actually blocked and removed tens of millions of ads; did not edit ads to promote any illegal conduct; |

2

APPENDIX A

| No. | Request | Justification for Request |
|-----|---------|---------------------------|
|     |         | enforced the website's terms of use; and undertook screening and removal practices customary among websites). |
|     |         | The government has alleged that Backpage.com routinely edited ads to remove terms so as to facilitate prostitution.  *See* SI ¶¶ 11, 68.  Defendants believe the data regarding Backpage.com's actual practices will reflect that this is patently false. |
|     |         | For example, Defendants believe the data concerning Backpage.com's actual practices will reflect that the website blocked and removed approximately 1,000,000 ads per month in all categories for a variety of different reasons (*e.g.*, violations of the site's terms of use, offensive content, possible malware, spam, scams, etc.).  Defendants also believe the government is aware that, to the extent ads on Backpage.com were "edited" to remove text, this occurred only for a brief period, ending many years before the indictment.  Defendants also believe the data will show that such editing occurred almost entirely through use of automated filters—which are commonly used by websites—and, after automated filtering, Backpage had additional layers of review by human moderators to determine if ads should be blocked or removed altogether. |
| 8. | Data reflecting the numbers of ads, by category and month, for which Backpage.com revised or edited any text in an ad, identifying the numbers of ads revised/edited by (a) automated filters and (b) human moderators. | *Id.* |
| 9. | Data reflecting the numbers of ads, by category and month, that Backpage.com edited to remove images, identifying the number of ads with images removed by | *Id.* |

3

| No. | Request | Justification for Request |
|---|---|---|
| | (a) automated filters and (b) human moderators. | |
| 10. | Data reflecting the numbers of ads, by category and month, that Backpage.com edited in a manner other than as set forth in categories 7 and 8 above (*e.g.*, to remove links to potential malware or spam), identifying the number of ads edited by (a) automated filters and (b) human moderators. | *Id.* |
| 11. | All ads the government alleges Backpage.com revised to "remov[e] particular terms that were indicative of prostitution," SI at ¶ 68, including all administrative data and information regarding such ads, and identifying (a) the ads as they were submitted by users; (b) the ads as they ran on the website; (c) the specific edits made to the ads; (d) how and/or by whom each ad was edited; (e) all data about whether each ad was blocked or removed; and (f) the dates of the ads. | Defendants believe the government is aware that Backpage.com's policies and instructions to moderators—at all times— were to block and remove any ads that offered sex for money.  It is unclear what the government may believe are terms "indicative of prostitution," as alleged in the Indictment.  To be able to respond to the government's claim that Backpage.com allegedly edited ads to promote or facilitate specific instances of advertised prostitution,  Defendants need to see all ads the government contends are evidence of such instances.  In addition, Defendants seek evidence reflecting that Backpage.com's screening searched for more than 26,000 terms, phrases,  URLs, and addresses and blocked over 1,000,000 user submissions per month as a result. *See Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 814 (M.D. Tenn. 2013). |
| 12. | All iterations of lists of prohibited terms or phrases for ads on Backpage.com in a complete and searchable format (*i.e.*, spreadsheets as they existed on the systems and not merely images of spreadsheets) including the dates each list was in effect and how the list was applied to different categories on the website (*e.g.*, the differences in standards for ads posted by users in the dating | *Id.* |

4

| No. | Request | Justification for Request |
|---|---|---|
| | subcategory as opposed to the escort subcategory). | |
| 13. | All ads the government alleges Backpage.com edited to remove terms such as "Lolita," "New In Town," "young," "amber alert," "teen," "fresh," "tight," "high school," "rape," "teenage," "little girl," "innocent," or "school girl," including all administrative data and information regarding such ads, and identifying (a) the ads as they were submitted by users; (b) the ads as they ran on the website; (c) the specific edits made to the ads; (d) how and/or by whom each ad was edited; (e) all data about whether each ad was blocked or removed; and (f) the dates of the ads. | The government has alleged that Backpage.com omitted these terms from user-submitted ads to promote known instances of sex trafficking. *See, e.g.*, SI ¶¶ 13, 85, 95, 104, 116 see also Dkt. 577 at 65 (AUSA Rapp stating, "They don't respond to our arguments about the moderation practices where they removed terms indicative of child sex trafficking, like Lolita, Amber Alert, Sweet Young Thing, New in Town, and then continue to post the ads.  They don't respond to that.").<br><br>Defendants are not aware of any instances when this occurred, and therefore need to obtain all ads the government contends were so edited, as well as all other information about such ads (*e.g.*, the context of the terms as used in given ads, whether the ads were blocked or removed entirely by human moderators, and whether the ads were reported to NCMEC or law enforcement authorities). |
| | **Data Regarding Alleged Aggregation of Advertisements** | |
| 14. | All ads that the government alleges concerned prostitution and were posted on Backpage.com through the process of "aggregation," see SI at ¶¶ 35-44, including all administrative data and information regarding such ads, identifying (a) the websites on which the ads previously appeared; (b) the ads as they appeared on the other websites and on Backpage.com, respectively; (c) the categories/subcategories in which the ads ran on Backpage.com; and (d) the dates of the ads. | Defendants believe the government is aware that Backpage.com employed "aggregation" efforts (*i.e.*, contacting individuals who had posted ads on other websites such as Craigslist.org to ask if they wanted to run the same ads on Backpage.com) in the adult categories in the United States only for a short time early in the website's history and ceased this marketing effort for the adult categories on its U.S. website many years ago.  *See*, *e.g.*, SI ¶¶ 37-42 (alluding to emails about aggregation only in 2007-2008). Defendants further believe the ads |

| No. | Request | Justification for Request |
|---|---|---|
|  |  | posted to Backpage.com through these efforts were primarily located via Google searches. |
| 15. | Data reflecting the numbers of ads, by category and month, that Backpage.com posted through the process of "aggregation." | Defendants believe the government is aware that Backpage.com personnel solicited ads of many types, including for jobs, therapeutic massage, sporting goods, local places, and pet sales, as well as (for a period of time many years ago) escort ads. These efforts were similar to marketing done for newspaper classified advertising sales for many years.  Defendants also believe the government is aware that Backpage.com's policies for these marketing efforts forbade soliciting any ads that appeared to be for illegal or improper services and that the actual ads posted will reflect that this policy was followed. |
| 16. | All data and documents reflecting that, in such aggregation efforts, "Backpage employees … identif[ied] prostitutes advertising," SI at ¶ 36, and each ad posted on Backpage.com through "aggregation" that the government alleges was, on its face, an ad for prostitution. | *Id.* |
| **Data Regarding Alleged Reciprocal Link and Affiliate Programs** | | |
| 17. | All banner ads or other ads run by Backpage.com on theeroticreview.com, and documents and data reflecting the dates of each such ad. | The government alleges Backpage.com entered into a "business arrangement with [theeroticreview.com to] post reciprocal ads on each other's websites,"  SI ¶ 45, but has not identified or provided any documents reflecting what the supposed agreed arrangement was, or what ads actually appeared on the respective websites. Defendants also believe the government is aware—and data from the website will reflect—that such arrangements for banner ads were discontinued many years ago. *See,* |

| No. | Request | Justification for Request |
|-----|---------|---------------------------|
|  |  | *e.g.*, SI ¶¶ 48-52 (reflecting that alleged arrangements were in place in 2007-2008). The government also has not provided any data or information for the period when the banner ads appeared reflecting that any Defendant had any knowledge that theeroticreview.com supposedly was a known "prostitution website." |
| 18. | All banner ads or other ads run by theeroticreview.com on Backpage.com, and documents and data reflecting the dates of each such ad. | *Id.* |
| 19. | All contracts or agreements between Backpage.com and theeroticreview.com (whether directly or through affiliated entities) referring or relating to "a reciprocal link program" or a "business arrangement."  *See* SI at ¶¶ 45, 46. | *Id.* |
| 20. | All documents reflecting that any Defendant had knowledge that theeroticreview.com was a notorious "prostitution website."  *Id.* at ¶ 54. | *Id.* |
| 21. | All data and documents reflecting Backpage.com policies and practices to preclude or block references to theeroticreview.com in user-submitted ads, including all ads Backpage.com blocked or removed on this basis. | The Indictment alludes generally to banner ads run by theeroticreview.com and Backpage.com in 2007-2008, but does not mention Backpage.com's policies and practices disallowing references to theeroticreview.com in user-submitted ads, which Defendants believe were imposed and in effect from 2011 onward. |
| 22. | All ads posted on Backpage.com that contained references to theeroticreview.com and that the government contends related to unlawful prostitution, including all administrative data and information regarding such ads and identifying (a) the categories/subcategories in | *Id.* |

APPENDIX A

| No. | Request | Justification for Request |
|-----|---------|---------------------------|
|     | which the ads ran on Backpage.com; (b) the content on theeroticreview.com to which the ads referred; and (c) the dates of the ads. | |
| 23. | All documents reflecting that the individual "known as 'Dollar Bill'" was "known to be involved in the prostitution industry," SI ¶ 59, and (a) who affiliated with Backpage.com the government alleges knew of this (and when); (b) who had dealings with "Dollar Bill" (and when); and (c) whether any Defendant ever had any dealings or involvement with "Dollar Bill." | The Indictment alludes to "Dollar Bill," but offers no basis for asserting that he was "known to be involved in the prostitution industry," much less any showing that any Defendant had any knowledge or awareness of this. *See* SI ¶¶ 59-67 (alleging that Ferrer had all contacts and dealings with "Dollar Bill").<br><br>In terms of fact allegations, the indictment only mentions that Backpage.com blocked or removed ads posted by "Dollar Bill," see SI ¶¶ 61, 64, 66, 67, not that Backpage.com knew of, promoted, or allowed any improper content. Defendants believe that data and documents concerning actual practices will reflect that "Dollar Bill" posted ads for massage businesses, and that Backpage.com enforced its terms of use and policies regarding ads posted by "Dollar Bill" as it did for other users. |
| 24. | All ads posted on Backpage.com by "Dollar Bill," including all administrative data and information regarding such ads, and identifying (a) the categories/subcategories in which the ads ran on Backpage.com; and (b) the dates of the ads. | *Id.* |
| 25. | All ads posted on Backpage.com by "Dollar Bill" that Backpage.com blocked or removed, including all administrative data and information regarding such ads, and identifying (a) when and why the ads were blocked or removed; (b) whether and when they were restored or reposted; (c) who was | *Id.* |

| No. | Request | Justification for Request |
|---|---|---|
| | responsible or involved in blocking, removing, restoring, or reposting the ads; and (d) whether each Defendant had any knowledge or awareness of or involvement with the ads. | |
| **Data Regarding the Predicate Advertisements** | | |
| 26. | All ads from Backpage.com's systems and databases that are or relate to the alleged "victims" identified in the Indictment, see SI ¶¶ 160-176, 201, including all ads submitted by, on behalf of, or for the individuals referenced in the ads (collectively, the "alleged victim ads"). | The government has asserted that it has produced the alleged victim ads from Backpage.com's databases and systems. *See* Dkt. 577 at 23 ("we have also extracted, you know, all of the ads that were on Backpage.com and given them to the defendants"); *id.* at 24 (we [have] given them the ads that were referenced in our superseding indictment").<br><br>However, the ads produced by the government apparently come from the Internet Archive Wayback Machine (https://archive.org), *see, e.g.*, DOJ-BP-0004719487, or are merely captures of the text from ads (but not the ads as they appeared on the website), *see, e.g.*, DOJ-BP-0004719353, or appear to be image copies of subpoena responses provided by Backpage.com, *see, e.g.*, DOJ-BP-0004719354-69.<br><br>On March 15, 2019, the government provided a disk purportedly containing "sample ads," but which actually consisted of spreadsheets with some information about given ads (but not the text of the ads), and a separate collection of images from ads. This information is grossly incomplete and provided in a format that is all but useless. To be clear, Defendants seek the alleged victim ads and related ads as they appeared in Backpage.com's systems and databases when they were operational, along with all administrative |

| No. | Request | Justification for Request |
|-----|---------|---------------------------|
| | | data and information about the ads. |
| 27. | All ads posted using the same (a) email addresses; (b) IP addresses; (c) telephone numbers; (d) credit card numbers; (e) images; or (f) other identifying cross-references associated with the alleged victim ads (referred to here as "related ads"). | As Defendants believe the government is aware, Backpage.com routinely identified these categories of information from its systems and databases in response to law enforcement subpoenas (ordinarily responding in less than 24 hours), and used the information to block and remove ads as requested by law enforcement authorities (or to maintain ads on the website when requested by law enforcement).  Defendants need to obtain this information about the alleged victim ads and related ads to address the government's accusations about the ads (*e.g.*, to show that the ads were not facially unlawful) and to show how Backpage.com actually dealt with the ads. |
| 28. | All administrative data and information regarding the alleged victim ads and related ads, including (a) credit card and/or other payment information; (b) editing or revision of ads by users; (c) editing or revision of ads by Backpage.com automated filters or moderators (and whether such revisions ever happened); (d) whether such ads were posted on Backpage.com through "aggregation" efforts; (e) all persons who reviewed, moderated, approved, revised or blocked such ads; (f) blocking or removal of any such ad by Backpage.com; (g) reporting of any such ad to NCMEC or law enforcement authorities; and (h) all cooperation of and information provided by Backpage.com to law enforcement or other authorities related to such ads and the individuals involved with the ads. | This too is information available in Backpage.com's systems and databases, which Backpage.com often collected and provided in response to requests from law enforcement authorities.  To be clear, Defendants seek all data and information in Backpage.com's systems and databases including in the "object editor," "adref," and "cardref" portions of the systems (*i.e.*, reflecting all actions taken with regard to ads, payment information, and all other backend data collected and retained by Backpage.com about ads). <br><br> Defendants strongly suspect that none of the alleged victim ads were edited by Backpage.com and none were posted through "aggregation" efforts.  Defendants further believe Backpage.com cooperated with law enforcement with respect to some or many of the alleged victim ads and/or blocked or removed the ads or users.  Defendants also seek information about review and moderation of the alleged |

| No. | Request | Justification for Request |
|---|---|---|
|  |  | victim ads and related ads to show that Defendants had no involvement. |
| 29. | For each ad on Backpage.com that the government alleges provides a basis for criminal charges against any Defendant, provide (a) all data and information regarding all persons who reviewed or moderated such ads, and any data or information reflecting whether any Defendant (b) saw the ad before publication; (c) approved the ad for publication; (c) edited or revised the ad before publication; or (d) saw the ad or had any knowledge of it before the government disclosed the original indictment on or about April 6, 2019. | Defendants believe the government is aware that Defendants had no knowledge or awareness of or involvement with any of any of the third-party ads on Backpage.com that the Indictment alleges as the bases for charges against Defendants. Administrative data about the ads from Backpage.com's systems and databases will reflect this. |

11