# Exhibit C



U.S. Department of Justice

United States Attorney
District of Arizona

Two Renaissance Square          Main:     (602) 514-7500
40 N. Central Ave., Suite 1800  Main Fax: (602) 514-7693
Phoenix, AZ  85004-4408

May 10, 2019

Via E-Mail
Whitney Z. Bernstein
Bienart, Miller & Katzman PLC
EMail:wbernstein@bmkattorneys.com
(attorney for Defendant James Larkin)

Re:   Your letter of April 25, 2019

Dear Ms. Bernstein:

We write in response to your April 25, 2019 letter. To start, on July 19, 2018, the government disclosed more than 1,070 pages of documents it believes support the allegations contained in the indictment. *See* government letter to defense with accompanying index entitled *Backpage "Hot Docs"* – Bates Stamped Records DOJ-BP-0004601039-DOJ-BP-0004602110. Moreover, on September 24, 2018, the government disclosed an additional more than 340 pages of documents it believes support the allegations contained in the superseding indictment. *See* government letter to defense with accompanying index entitled *Backpage Superseding Indictment "Hot Docs"* – Bates Stamped Records DOJ-BP-0004602508-DOJ-BP-0004602851. Also, on November 30, 2018, we disclosed to you an additional 70 pages of documents we believes support the allegations contained in the superseding indictment. *See* government letter to defense with accompanying index entitled *Additional Superseding "Hot Docs"* – Bates Stamped Records DOJ-BP-0004685806-DOJ-BP-0004685877. Enclosed with the November 30, 2018, *hot docs* disclosure we also provided you with victim ads referenced in the superseding indictment. *See* government letter to defense with accompanying index entitled *Additional Victim Records* – Bates Stamped Records DOJ-BP-0004719328-DOJ-BP-0004719709.

These comprehensive disclosures included, to our knowledge, emails, ads, and other internal Backpage documents that are referenced in the superseding indictment.  It is therefore surprising to hear you contend that "we are not aware of where the government has identified the indictment referenced documents, i.e., providing Bates numbers or copies of each document quoted or mentioned in the Indictment."

In regard to your second request for Bates numbers of "documents identified in the government's exhibit list," – the government will provide Bates numbers for documents identified on the preliminary exhibit list it provided Defendants on April 1, 2019, as soon as practicable.

Concerning your third request, your assertion that "you [I] reiterated in court that the government has asked Defendants to identify particular areas of disclosure requested so the government may prioritize discovery" is incorrect.  What the government has repeatedly asked Defendants in both verbal and written communications (*see* my April 10, 2019, email to you) is to provide it specific server data – other than the marketplace of ad, image, and email data we imaged and made available to you on March 7, 2019 (and payment processing data we will make available to you when we receive it via the MLAT process) – that you believe is material to your defense.  You have not identified any such additional data.

Regarding your fourth request "for the government's position on the Jencks Act materials" – the government has complied with the Scheduling Order and produced all Jencks Act material in its possession (except Carl Ferrer's Jencks statements) to Defendants.[1]  In accordance with the Scheduling Order, if we obtain additional Jencks Act material, we will disclose those materials to you as soon as practicable.  *See* CR 121; p.2, footnote 3. ("If the government obtains any additional written Jencks material after this date [02/25/19], this Jencks material shall be produced promptly to the defense as soon as practicable.")

Also, we will provide Daniel Hyer's cooperation addendum to you next week, and we will provide Carl Ferrer's cooperation addendum to you on or before June 25, 2019.

Additionally, see below responses concerning your fifth request for an update as to the items you requested in your April 17, 2019 letter to me:

---

[1] As per the Court's April 22, 2019, Order (CR 535), the government will disclose any Jencks Act statements of Carl Ferrer on or before June 25, 2019.  As you know, the Jencks Act requires the government produce statements that have been adopted by a witness *after* the witness testifies. 18 USC §3500(e)(1); *See also United States v. Jackson,* 978 F.2d 903, 913 (5th Cir.1992)("To adopt a statement under the Jencks Act. . . a witness must read the entire statement and formally approve the statement.") *United States v. Newman,* 849 F.2d 156, 160 (5th Cir.1988) (Witness did not adopt a DEA report when he told the DEA agent that he did not disagree with anything in the report.).

1) Request: "We need imaged copies of the remaining nine servers located in Pocatello."[2]

    Response: As previously requested, could you please identify what server data that the government has not made available to you (other than the payment processing data) that you believe is material to your defense. [3] *See* Federal Rules of Criminal Procedure Rule 16(a)(1)(E). Backpage operated as a classified advertising website for nearly a decade and a half so we are certain that Defendants—as owners and executives of the company—are aware of the data hosted on the website. Also, we are currently working to provide you with additional information regarding the servers currently in the government's possession as well as the outstanding servers we await receipt of from Amsterdam via the MLAT process to further assist you in this process. We should have this information to you within the next few weeks.

2) Request: Provide "pictures of the servers located in Pocatello."

    Response: *See* pictures of the servers located in Pocatello attached.

3) Request: Provide "pictures of all servers in their native state, the way they were set up when they were running in their racks at the facilities."

    Response: To the government's knowledge, there were no pictures taken of the servers as they were running at the Dallas or Amsterdam facilities. You should receive pictures of the servers from Tucson via FedEx next week.

4) Request: Provide "a copy of the one page form from the Dutch police."

    Response: Requested form and accompanying FBI report of interview attached.

In regard to your sixth request, as articulated above, as well as in our March 7, 2019, letter to you, our April 10, 2019 email to you, and in our status memorandum filed on April 16, 2019, the government will notify you when the remaining servers from Amsterdam are in its possession and available for inspection. Moreover, as it pertains to my April 10, 2019, email to you, I cite to Rule 16 of the Federal Rules of Criminal Procedure in stating that Backpage server data would be available to inspect and copy because Rule 16(a)(1)(E) makes clear that, "on a defendant's request, the government must permit the defendant to inspect … data … tangible objects … or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and "the item is material to preparing the defense." I emphasized inspect and copy to highlight to you an inaccurate statement you

---

[2] On April 25, 2019, you requested the government also provide you with imaged copies of the servers and hard drives located in Phoenix. Our response incorporates both your April 17, 2019, and April 25, 2019, requests.

[3] As previously noted, we will provide you with the payment processing server data as soon as it is received from Amsterdam.

asserted in your April 8, 2019, email to me. Specifically, you contended that I indicated to you that "no court order is needed to be able to inspect, view, turn on, manipulate, copy, etc. the servers–just that the forensic FBI people would need to supervise the process; and that regarding imaging of any servers, we can coordinate that process once we identify the servers we'll need imaged copies of." I do not recall making any such statement and hope that you did not understand any of our verbal communications to imply that the government would allow data manipulation (i.e., adding, deleting, and/or updating data in a database) of the servers.

In any event, if you could show the government what additional server data located in Pocatello and Phoenix is material to your case, in accordance with Rule 16(a)(1)(E), we would provide you with imaged copies of that data. As you are aware, a showing of materiality requires, among other things, that the disclosure of the information sought would enable you to significantly alter the quantum of proof in your favor.

Please reach out with additional questions. We will continue to work with you over the course of the next months leading up to trial to answer them and facilitate your review of relevant material in the case.

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

*s/Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

MICHAEL BAILY
United States Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN KUCERA
Assistant United States Attorneys