# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| United States of America, | ) | |
|  | ) | CR-18-0422-PHX-SMB |
| Plaintiff, | ) | |
|  | ) | |
| vs. | ) | Phoenix, Arizona |
|  | ) | September 13, 2019 |
| Michael Lacey, | ) | 11:02 a.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| Defendants. | ) | |

**BEFORE:** THE HONORABLE SUSAN M. BRNOVICH, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTIONS HEARING

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1  them.  There is a few issues with that.

2          One, I haven't done a careful review, but I don't
3  believe that the Bates numbers of the missing documents are
4  sequential, meaning that they're -- and I haven't checked this,
5  but I think that's right -- that, presumably, there is a whole
6  host of other documents with in between Bates numbers that they
7  haven't produced to us, so I think we need clarification on
8  that, first.

9          Second, there is a big issue, and that is, again, the
10 government missing a deadline that the Court imposed.  And
11 without explanation, suddenly we're told, oh, thanks for
12 telling us we missed this, even though they've designated it.
13 I think the Court should inquire as to what happened here, and,
14 again, determine whether sanctions are appropriate.  So those
15 are the two issues that I see with the first -- with the first
16 matter I raised in my first paragraph, given Mr. Jones'
17 response today.

18         Second, I appreciate that he has said that they agree
19 to the second item, that, basically, our request is that the
20 protective order only cover the Carl Ferrer interview
21 memoranda.  And I just want to be clear that that is the
22 request since the e-mail is not in the record.  I want to be
23 clear that that was the request.  And it appears he agrees,
24 other than the civil discovery documents that are subject to a
25 protective order.

1  It's interesting, those, apparently, were produced to
2  us without the -- without the Court's -- this Court's
3  protective order, without any designation that they're subject
4  to some other protective order, yet this is the first time
5  we're being told.  So there is just an issue, we didn't even
6  know that until, literally, today, as far as I know, but I'm
7  glad he agreed on that.
8  On the third issue, I, quite frankly, take issue with
9  what Mr. Jones said.  I think he skated over a number of issues
10 here.  First of all, I am troubled that only -- certain
11 documents are only being produced to one of my colleagues here.
12 Just because they get it, doesn't mean the rest of us get it.
13 Number two, if they did produce the plea agreement,
14 there is, as I understand the practice, a cooperation addendum,
15 which we don't have, a transcript, which we don't have, and all
16 of the proffer letters that are referenced in the -- in the
17 Carl Ferrer interview memoranda, that we don't have.  So there
18 is a number of things that Mr. Jones, apparently, thinks that
19 they've produced, which I can represent to the Court I don't
20 have.  Maybe somebody else does, we don't have them, and I'd
21 ask that they be produced forthwith.
22 Third, on the last issue, I think it's important for
23 the Court to understand what we're talking about when we refer
24 to documents that are referenced in the Carl Ferrer interview
25 memoranda.  These are the recently produced documents that the

1  it via e-mail with them before we come to the Court, but it
2  seems like there is a discovery problem here with the most
3  basic documents, which are their interview memoranda.  So I
4  would ask that each of these issues we need to address, because
5  there is, apparently, missing Bates out there, missing
6  discovery out there, and a number of things related to
7  Mr. Ferrer's statements, which I can tell the Court after
8  reviewing them, I am thankful that the Court ordered them
9  disclosed when it did, because there is a lot of issues in
10 there that we'll raise in subsequent pleadings.
11          THE COURT:  Okay.
12          MR. NEUMAN:  Thank you.
13          THE COURT:  So with respect to these issues, with the
14 first issue, obviously, when you get your FedEx packages, if
15 something is missing, you should discuss it with the
16 government.
17          With respect to the second issue, the Court's order
18 with respect to limitations on Jencks Act material is clarified
19 that that order is limited to the government's interview
20 memoranda of Carl Ferrer, all civil discovery material that
21 remains under a protective order, but that only relates to the
22 Carl Ferrer, because there is other Jencks material, correct?
23          MR. JONES:  That's correct, Your Honor.  For Daniel
24 Hyer as well, Your Honor.  The government, just to reiterate,
25 you know, anything that's publically available, as Mr. Neuman

1   and where we have limits and where we don't have limits.
2       THE COURT: Okay. Well, I'm not willing to remove
3   from that order anything other than to say publically available
4   information. So if you think there are -- I haven't seen the
5   list that you're talking about -- so if you think there is
6   something else that should be removed from the protective
7   order, then I guess you need to file something specific with
8   their designation so that I can make that determination.
9       MR. NEUMAN: It would be helpful, Your Honor, if the
10  Court could order the government to tell us what do they think
11  is publically available so that they're designating what they
12  think falls under the protective order.
13      THE COURT: They gave you a list, from what I'm
14  understanding. They already gave you the list of what they
15  think is Jencks material.
16          Is that accurate, Mr. Jones?
17      MR. JONES: Yes, Your Honor. What we will do is we'll
18  review the list we gave them. If there are additional
19  documents, we will make defendants aware that, you know, by
20  Monday, end of -- close of business Monday of next week just so
21  we're clear, but we believe all the documents on the list were
22  the documents that we believe should be subject to the
23  protective order. But there are also some victim statements
24  that may not be a part of that list that we want to -- we would
25  like to clarify, and we'll do that by the close of business

1  stated, we don't object to those documents not being a part of
2  the protective order. But if they aren't publically available,
3  you know, the government believes that, you know, those
4  documents should fall under your current order.
5        THE COURT: Yeah. I think I should rephrase it the
6  other way.
7        MR. NEUMAN: The only issue, Your Honor, is if it's
8  Mr. Ferrer's interview memoranda and Mr. Hyer's interview
9  memoranda, that's clear. If it's some sort of vague whatever
10 is not publically available, this becomes much more
11 problematic, because, just as an example, among the documents
12 they've designated are e-mails. Those e-mails may well have
13 been available to third parties, so any controls that the Court
14 puts in place on them limit us to say they are out there in the
15 ether somewhere, somebody comes back and says we violated the
16 court order, so that's number one.
17       Number two, they may have been filed in other cases, I
18 don't know. I've been involved only in this criminal case.
19 And so to the extent that the government is saying only
20 publically available, I think we need a specific designation.
21 And I think they agreed earlier to what we requested, which was
22 Carl Ferrer's interview memoranda. They want to add
23 Mr. Hyer's, I understand that, and it needs to be specific.
24 And that's been the issue here is they've given us this big
25 list, and it's very difficult to know what we're talking about

1  next Monday with them.
2      MR. NEUMAN: This is the problem, Your Honor. He's
3  not actually agreeing to what -- he's saying, basically,
4  they're going to designate Jencks material. What we need --
5  and what he's just said includes -- I'll just tell the Court --
6  a Netflix documentary transcript. So it can't be that
7  everything on their list falls within the protective order.
8  The Court just somewhat clarified by saying not publically
9  available documents. It would be very helpful -- the
10 government is in the best position to tell us what do they
11 think needs to be under the protective order. If we need to
12 fight about it, we'll fight about it; if we don't, we don't.
13 But they're creating this list of what they think is Jencks.
14 They're the ones who know who is going to testify. They know
15 what -- they think they know what qualifies as Jencks. They
16 should tell us what needs to be protected.
17     THE COURT: They just did. You disagree with it.
18     MR. NEUMAN: But so does the Court.
19     THE COURT: That's their position.
20     MR. NEUMAN: But the Court just ruled against --
21 sorry.
22     THE COURT: I haven't seen the list. So they said
23 this is what they want protected. You're telling me there is
24 things that shouldn't be protected. So what I just said is
25 this e-mail is not sufficient for me to rule on, if you want

1  next Monday with them.
2          MR. NEUMAN: This is the problem, Your Honor. He's
3  not actually agreeing to what -- he's saying, basically,
4  they're going to designate Jencks material. What we need --
5  and what he's just said includes -- I'll just tell the Court --
6  a Netflix documentary transcript. So it can't be that
7  everything on their list falls within the protective order.
8  The Court just somewhat clarified by saying not publically
9  available documents. It would be very helpful -- the
10 government is in the best position to tell us what do they
11 think needs to be under the protective order. If we need to
12 fight about it, we'll fight about it; if we don't, we don't.
13 But they're creating this list of what they think is Jencks.
14 They're the ones who know who is going to testify. They know
15 what -- they think they know what qualifies as Jencks. They
16 should tell us what needs to be protected.
17         THE COURT: They just did. You disagree with it.
18         MR. NEUMAN: But so does the Court.
19         THE COURT: That's their position.
20         MR. NEUMAN: But the Court just ruled against --
21 sorry.
22         THE COURT: I haven't seen the list. So they said
23 this is what they want protected. You're telling me there is
24 things that shouldn't be protected. So what I just said is
25 this e-mail is not sufficient for me to rule on, if you want

```
 1   anything more specific than things that are public are not
 2   protected.  So all you need to do is send me the list with your
 3   motion saying this is what I don't think should be protected
 4   and here's why.
 5            MR. NEUMAN:  Just so the Court knows, it is attached
 6   to the e-mails, but if the Court -- I know the Court only got
 7   it yesterday, so, understood, and we can do that.  We can
 8   provide the specifics to the Court after we confer with the
 9   government further.
10            It would be their -- their spreadsheet was attached.
11            THE COURT:  Oh, okay.  I do see an attachment, but
12   that's not going to tell me which specific things, unless you
13   think they're just -- unless you think your e-mail paragraph is
14   specific enough.
15            MR. NEUMAN:  It, essentially, covers everything on
16   their list, Your Honor, so.  Your Honor, if the Court prefers,
17   we can file something.  That's easy enough.
18            THE COURT:  Okay.
19            MR. NEUMAN:  Because there is declarations, there is
20   trial testimony, there is, as I said, a Netflix documentary
21   transcript.  If the government is going to stand on the
22   position that that's all subject to the protective order, we'll
23   have to deal with it specifically, I guess.  We'll confer with
24   Mr. Jones and see if he changes his position.
25            THE COURT:  With respect to the third issue which
```