Gary S. Lincenberg *(admitted pro hac vice)*
 glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
 aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
 gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　Defendants. | CASE NO. 2:18-cr-00422-004-PHX-SMB<br><br>**REPLY IN SUPPORT OF DEFENDANT JOHN BRUNST'S MOTION TO COMPEL GOVERNMENT COMPLIANCE WITH COURT'S ORDER FOR SPECIFIC IDENTIFICATION OF DOCUMENTS SUBJECT TO PROTECTIVE ORDER (DKT. 740)**<br><br>Assigned to Hon. Susan M. Brnovich, Courtroom 506 |

3609892.3

REPLY IN SUPPORT OF JOHN BRUNST'S MOTION TO COMPEL GOVERNMENT COMPLIANCE

1   The defense is making a good faith effort to comply with the Court's protective order, and the government responds with sarcasm and feigned ignorance as to what the defense needs in order to comply.  The government offers no rationale for its refusal to specifically identify the documents it believes are subject to the Protective Order.  The Protective Order is onerous—so much so that it prevents the defense from even copying material that is subject to it.  Accordingly, the material subject to the Protective Order should be carefully, narrowly, and specifically defined.

The government responds by improperly shifting its burden to the defense, asserting that, "if Defendants have questions about whether particular documents are public, Defendants should confer with the government before designating the document for the Court's ultimate determination of whether it is subject to the Protective Order."  Dkt. 767 at 5.  Defendants, however, cannot meaningfully analyze whether the government's designations under the Protective Order are proper without first knowing precisely what those designations are—that is a burden that the government bears in the first instance. *See* Dkt. 731 at ¶ 4 (August 26, 2019 Order requiring the government to "include enough identifying information so defense counsel can locate and separate the materials" subject to the protective order.).

Indeed, the normal and appropriate practice is for the party asserting the propriety of a protective order to specifically identify the individual documents it wants protected by the Court.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, *for each particular document* it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.") (emphasis added); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Grp., Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988) ("After receiving documents, the opposing party has the right to contest those documents which it believes not to be confidential. . . . . [But,] the burden of proving confidentiality never shifts from the party asserting that claim.").  As it stands, the defense is left to guess as to which documents the government actually considers to be subject to the Protective Order.

Mr. Brunst's request is simple and consistent with the Court's August 26, 2019 Order: the government should identify, by specific description and Bates number (where available), the documents it contends must be subject to the Protective Order. This identification would (1) ensure these purportedly sensitive documents are protected, (2) enable the defense to comply with the Court's order, and (3) allow the defense to seek leave of the Court if it objects to the classification of a specific document. The government has produced nearly 11 million Bates-stamped pages of discovery, and untold numbers of additional documents that are not Bates-stamped across various discs in the past 18 months. Its designation of Jencks Act material is broad, and includes a large number of documents which have never been identified with any specificity in this process. Even now, as narrowed by the Court to "non-public" documents, there is no specificity as to which documents are covered. It is this category of "non-public" documents which needs further elucidation and which the government could easily identify if it would stop its obfuscation. The defense should not be left to guess, or be forced to consult the government before copying a document, showing it to a potential witness, or otherwise doing something that could result in an unwitting violation of the Protective Order. *See Big Baboon, Inc. v. Dell Inc.*, No. CV 09-01198 SVW SSX, 2009 WL 3735812, at *1 (C.D. Cal. Nov. 6, 2009) (rejecting request for protective order where proposed material to be designated included an "overbroad" designation of "other non-public information of similar competitive and business sensitivity.").

The government's answer that Mr. Brunst need only "Control-F" the dockets of certain civil cases, "and voilà!" the answer will be clear, sidesteps the issue. Dkt. 767 at 5. Searching the dockets will not reveal whether any other documents—beyond those filed in those cases—are "non-public."[1] Indeed, there is no "Control F" function for documents not filed in those other civil cases but which the government nonetheless considers "non-

---

[1] Nor will it reveal if a document publicly listed as "Exhibit 1" for instance, on the civil case docket, is one of the documents potentially subject to the Protective Order.

public" (but refuses to identify as such for the defense). As it stands, there is a very large set of documents that falls into this category but which remain unidentified by the government. The defense is left to guess as to which documents fall into this category (and thus are subject to the onerous Protective Order requirements), and which are actually public.[2]

As discussed in the Motion, the government has repeatedly acknowledged that documents it listed as ostensibly subject to the Protective Order are in fact public, but has only does so when asked by defense counsel. Rather than continue to force defense counsel to go to the government with one-by-one questions of whether a document is public, the government should be required – consistent with case law – to first specifically identify the documents it contends fall into what is currently an amorphous and shifting category.

Critically, the Protective Order here is not the typical blanket protective order often employed in the civil context and entered at the outset of a case, before discovery is produced. Nor is this the type of Protective Order where the relevant discovery has been produced with a "Confidential" or other similar designation. Instead, the government sought a protective order almost a year into the case and after—at least according to the government—the majority of its discovery had been produced. Therefore, the discrete and specific universe of documents to which the Protective Order (ostensibly) applies is readily known to the government. It has, for whatever reason, simply chosen not to clue the

---

[2] Indeed, the government in its response identifies "numerous other cases across the country" with respect to which it has obtained Jencks Act material, including "police reports, recorded statements of interviews, depositions, copies of posted ads, etc." Dkt. 767 at 5. This material is presumably subject to protective orders in those cases. Mr. Brunst is not a party to all of those cases, undersigned counsel does not represent him in the civil cases that have been filed against him by alleged victims, nor are the dockets for those cases—many of which are state cases—readily searchable. In short, undersigned counsel cannot meaningfully determine whether and to what extent documents produced in those unrelated civil cases are subject to the Protective Order in this case. *See, e.g.*, Exhs. A and B (publicly available dockets from two such cases).

defense into what the specific universe of documents is.

Nor should Mr. Brunst be required to rely on counsel other than his own. The government's repeated efforts to brush off Mr. Brunst as an individual with his own rights and obligations (including to comply with the Protective Order) should not be countenanced. It is Mr. Brunst and his counsel who are responsible for his and their compliance with the Protective Order, and no one else. Nothing about the government's allegations[3] in this case or its continued erroneous assertions about a joint defense agreement[4] obviate the need for the government to specifically identity the documents it contends are "non-public" and thus subject to the Protective Order.[5]

The government's refusal to specifically identify the documents it believes should be subject to the Protective Order makes little sense if it truly is concerned about the dissemination of those documents. In the normal course, a party specifically designates documents it believes are subject to a protective order—usually with a special Bates stamp

---

[3] The government's baseless allegation that Mr. Brunst was the "architect of the concealment money laundering scheme" (a far cry from the indictment's allegation that Mr. Brunst merely "discussed" certain payment processing "strategies" with Ferrer and the other defendants) is a non-sequitur. Dkt. 767 at 5; Dkt. 230 at ¶ 179. That is an allegation the government must prove at trial, not a basis for it to refuse to comply with the essential terms of a Protective Order that it sought.

[4] The government continues to misunderstand the nature of a joint defense arrangement. DWT is not "co-counsel" for Mr. Brunst. They represent separate defendants. A joint defense arrangement by no means excuses the government of any of its statutory or constitutional obligations. Such arrangements *allow* for the sharing of certain information, but do not *obligate* the sharing of information, and do not relieve individual defense counsel of all of the ethical obligations involved in representing a person charged with a federal criminal offense. Moreover, they do not alleviate the government's burden of providing each defendant with due process – here, sufficient notice of documents subject to the Protective Order so that Mr. Brunst can comply.

[5] Moreover, Mr. Brunst was not a party to any of Backpage's prior litigation, and has not been an owner of any entity in the Backpage ownership structure since 2015. Even at that time, he was the CFO of a media holding company that owned Backpage. He has never had any familiarity with the specifics of the referenced litigation, and the government's efforts to impute such knowledge to him are unavailing and irrelevant.

1  –so that there is no confusion, so that the documents are protected, and so that any
2  violations can be easily addressed by the Court.  Here, instead, the government wants
3  Mr. Brunst to guess at what documents he believes fall within the Protective Order.  But
4  how can he take the precautions ordered by the Court if he does not know to which
5  specific documents they apply?
6      The government could resolve this easily.  It chooses instead to force the parties and
7  the Court to divert time and resources into a lengthy and repetitive discussion, obfuscating
8  what should be a simple list for it to create.  Mr. Brunst cannot reasonably comply with the
9  Court's Protective Order unless he knows specifically to which documents it applies.
10  Notably, the government has not offered a single justification for its gamesmanship.  The
11  government asked for the Protective Order and has the burden of at least specifically
12  identifying, preferably by Bates number, the material that should be covered by it.

DATED:  October 15, 2019

Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:    */s/ Ariel A. Neuman*
        Ariel A. Neuman
   Attorneys for Defendant John Brunst

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

           By: */s/ Ariel A. Neuman*
              Ariel A. Neuman
            Attorneys for John Brunst