Paul J. Cambria, Jr. (NY 1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL** |
| vs. | |
| Michael Lacey, *et al*., | (Oral argument requested) |
| Defendants. | |

Defendants James Larkin, Michael Lacey, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught, by and through their undersigned attorneys, hereby move for an order compelling production of *Brady* material in a manner that will enable counsel to effectively use such material in preparation for trial. This Motion is based on the attached Memorandum of Points and Authorities, the Court's file, and any evidence or argument presented at the hearing on this matter. This is the Defendants' first such motion.

Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based thereon.

DATED: October 18, 2019

Paul J. Cambria, Jr.
Erin E. McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP

By: /s/ Paul J. Cambria, Jr.
Paul J. Cambria, Jr.
Attorneys for Michael Lacey

DATED: October 18, 2019

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN, PLC

By: /s/ Whitney Z. Bernstein
Whitney Z. Bernstein
Attorneys for James Larkin

DATED: October 18, 2019

Bruce Feder
FEDER LAW OFFICE, P.A.

By: /s/ Bruce Feder
Bruce Feder
Attorneys for Scott Spear

DATED: October 18, 2019

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By: /s/ Ariel A. Neuman
Ariel A. Neuman
Attorneys for John Brunst

DATED: October 18, 2019  David Eisenberg
DAVID EISENBERG, P.L.C.

By:   /s/ David Eisenberg
      David Eisenberg
      Attorneys for Andrew Padilla

DATED: October 18, 2019  Joy Bertrand
JOY BERTRAND, ESQ.

By:   /s/ Joy Bertrand
      Joy Bertrand
      Attorneys for Joye Vaught

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants James Larkin, Michael Lacey, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught ("Defendants") move for an order compelling prompt production of *Brady* material in a manner that will enable counsel to effectively use such material in preparation for trial.

**I.      The government must make broad disclosures under *Brady*.**

Under *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), and *Kyles v. Whitley*, 514 U.S. 419 (1995), the government must promptly disclose all exculpatory and/or impeaching material in the prosecution's possession, custody or control or which is otherwise known to the prosecution. This broad disclosure obligation includes, but is not limited to, disclosure of:

    a.    Any written or recorded statements, admissions or confessions made by any witness, and the name and address of any such individual, which may be exculpatory, non-incriminatory, or otherwise favorable to the Defendants, or any summaries, synopsis, notes, memoranda, or resumes thereof, regardless of whether such statements are reduced to writing and regardless of whether the prosecution intends to use such statements at the trial herein;

    b.    The name and address of any other witness who might have favorable evidence as to the Defendants, which are known, or which by the exercise of due diligence shall or should become known to the Government;

    c.    Any notes, memoranda, summaries, reports, or statements of any kind prepared in connection with the investigation of this case which are in any way favorable to the defense including notes prepared by the Government or any of its agents in connection with either the review of documents or the interview or other conversations with witnesses or other individuals contacted in connection with this case;

    d.    Any and all prior criminal records of any witnesses intended to be used in any fashion by the prosecution, or any other such information demonstrating the commission on their part, or participation therein, of any so-called "bad acts" or other instances of immoral or criminal conduct, or conduct indicating a lack of veracity;

4

   e. Any and all statements, memoranda or other similar notations or information which would in any way reflect inconsistent statements made by any witness contacted by the Government, or any such individual engaged in lying or other conduct calculated to conceal the truth or improperly reflect facts;

   f. Any information tending to indicate that information supplied by a particular document or witness contradicts or is contradicted by a different document or witness; and;

   g. Any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witness.

The list set forth above is not exclusive because the defense cannot anticipate all areas which may lead to a *Brady* disclosure; however, the government's disclosure obligation is broad and includes any information which in any way leads to favorable or impeaching material, even if the disclosed material is not directly admissible in a court proceeding. Due process requires that the government not suppress evidence favorable to a defendant or discrediting to its own case, and, upon request, that it disclose to the defense all such information. *See Brady*, 373 U.S. at 87; *Agurs*, 427 U.S. at 105-06; *Pyle v. State of Kansas*, 317 U.S. 213, 216 (1942). The requirement of disclosure extends to candor by the government witnesses as well as matters which relate more directly to guilt or innocence. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 265 (1959); *see also Williams v. Dutton*, 400 F.2d 797, 799 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105 (1969).

The *Brady* rule grew out of a realization by the Supreme Court that a defendant's ability for acquiring evidence is disproportionate to that of the government. Most defendants have neither the manpower nor the access and contacts available to the government in its investigation. Thus, the prosecution is obliged to share the proceeds of its discovery with the defense when that evidence is favorable to the defendant's case.

Indeed, the importance of *Brady* has been so strongly enforced that the Supreme Court, in *United States v. Bagley*, 473 U.S. 667, 676 (1985), unequivocally extended the duty of disclosure to information which may be used by the accused for impeachment at trial.

Further, the government must promptly disclose such material so it can be used for effective trial preparation. Indeed, effective preparation for trial is the cornerstone of effective representation of criminal defendants and disclosure of information which, in any of a variety of ways, impeaches a witness's credibility is required before trial to enable *effective* preparation. As the D.C. Circuit has recognized:

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material *effectively in the preparation* and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure.

*United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976) (emphasis added) (citations omitted).

The need for pre-trial disclosure of *Brady* material has been highlighted in several cases. In *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993), irreconcilable discrepancies between the informer's actual record and government's representation about the prior record indicated the informer had misled his government handlers. The Court vacated the defendant's conviction and remanded for an evidentiary hearing "to restore the parties" to their "pre-trial" position and to ascertain whether the informer had lied to the government. *Id.* at 336-337; *see also United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir. 1990), *cert. denied*, 498 U.S. 921 (1990) (concluding that a government file which contained impeachment material regarding a prosecution witness should have been produced prior to the witness's testimony); *Gorham v. Wainwright*, 588 F.2d 178, 180 (5th Cir. 1979) (recognizing that, under certain circumstances, delayed revelation of discoverable evidence may deny a defendant an effective defense); *United States v. Opager*, 589 F.2d 799, 805 (5th Cir. 1979) (harm was done by the pre-trial failure of the

government to disclose the whereabouts of the informant; crucial importance was given to pretrial opportunity to interview and/or investigate potential witness); *Grant v. Alldredge,* 498 F.2d 376, 381-382, n.5 (2d Cir. 1974) (failure of government to disclose before trial that bank teller picked out photograph of another individual was error); *United States v. Baxter*, 492 F.2d 150, 174 (9th Cir. 1973), *cert. denied*, 416 U.S. 940 (1974) (delay in turning over requested favorable evidence is unconstitutional when delay in disclosure substantially prejudiced the preparation of the defense); *Clay v. Black*, 479 F.2d 319, 320 (6th Cir. 1973) (per curiam) (pre-trial disclosure of an FBI scientific report would have permitted defense to establish necessary claim of custody to introduce certain blood stains); *United States v. Polisi*, 416 F.2d 573, 577 (2d Cir. 1969) (the importance of *Brady* is to measure the effects of the suppression upon the defendant's preparation for trial); and *Hamric v. Bailey*, 386 F.2d 390, 393 (4th Cir. 1967) (to be effective, disclosure must be made at a time when disclosure would be of value to the accused).

Numerous district courts have ordered pretrial disclosure of such material well before the start of trial to enable defense counsel to effectively prepare the defense. *See United States v. Thevis,* 84 F.R.D. 47, 54 (N.D. Ga. 1979) (delaying disclosure of *Brady* materials useful for impeachment until the night preceding the testimony is insufficient); *United States v. Five Persons*, 472 F. Supp. 64, 69 (D.N.J. 1979) (by adoption of a standard order, district judges declared that the rights to due process and a fair trial require availability of *Brady* material within *10 days after arraignment*) (emphasis added); *United States v. Goldman*, 439 F. Supp. 337, 349 (S.D.N.Y. 1977) (if exculpatory evidence is produced for the first time at trial, defendant may not have an adequate opportunity to effectively utilize the material; all *Brady* material to be provided "immediately"); *United States v. Dillard*, 419 F. Supp. 1000, 1002 (N.D. Ill. 1976) (in light of complex decisions of strategy and preparation, it is better practice to require disclosure in advance of trial); *United States v. Quinn*, 364 F. Supp. 432, 441 (N.D. Ga. 1973), *aff'd on other grounds*,

7

514 F.2d 1250 (5th Cir. 1975), *cert. denied*, 424 U.S. 955 (1976) (*Jencks* Act timetable cannot control release of information to which defendant is constitutionally entitled).

Recognizing the importance of the immediate disclosure of such material to the effective preparation of the defense, Judge Logan noted that the government stipulated to disclose *Brady* and *Giglio* materials to the defense within ten days of discovery and "implored" the government to "abide by its stipulation" without making the Court order it to do so. (*See* Doc. 339 at 5-6.) The government has failed to do what it told Judge Logan it would do.

## II.     The government has withheld categories of *Brady* material.

Defendants move for an order requiring immediate disclosure of all such evidence, to the extent that it has not yet been disclosed. Defendants believe that there are large categories of *Brady* material that the government has withheld. For example, Backpage undertook significant efforts to rid its site of child-sex trafficking, including working with various non-governmental organizations, law enforcement, and elected officials, as well as hiring an internet safety expert to advise Backpage on measures to prevent underage users from posting ads. Backpage promptly responded to requests from law enforcement and blocked users associated with law enforcement requests. This evidence stands in stark contrast with the government's repeated claim that Defendants intentionally facilitated child sex trafficking, but has not been disclosed to Defendants.

Further, Backpage users regularly created and posted ads for lawful adult services, such as ads for dating, body rubs, strippers and strip clubs, phone and websites, adult jobs, domination and fetishes, and escorts. The posting of those ads was lawful because advertisement for those services is lawful and protected under the First Amendment. *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("[N]ot all advertisements for sex are advertisements for illegal sex.").[1] Consequently, each and every such ad is *Brady*

---

[1]     *Accord Doe v. Backpage.com LLC*, 104 F Supp. 3d 149, 156-57 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016) ("The existence of an escorts section in a classified ad

8

material because such ads contradict the government's claim that the "vast majority" of ads posted to Backpage were ads for illegal prostitution. Again, the government has not provided this material.

Based on the foregoing, Defendants respectfully request that this Court order the government to immediately disclose any and all witnesses, documents, and information indicating that:

- Backpage reported ads involving potential underage users to the National Center for Missing and Exploited Children (NCMEC) or law enforcement.

- Employees of Backpage and its affiliates said they took affirmative steps to keep off the website any ads they knew related to sex trafficking or prostitution and had no knowledge of the website knowingly running any such ads.

- Users posted or attempted to post ads to Backpage for lawful adult activities in the adult categories (including, but not limited to, dating, body rubs, strippers and strip clubs, phone and websites, adult jobs, domination and fetishes, and escorts.

Finally, nearly a year ago, Defendants wrote to the government seeking the disclosure of dozens of categories of *Brady* evidence, including the authority for requesting

---

service, whatever its social merits, is not illegal."); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 1262, 1282 (W.D. Wash. 2012) (escort ads have long been permitted and escort services are licensed and regulated in many states); *Backpage. com, LLC v. Cooper*, 939 F. Supp. 805, 816, 833-34 (D. Tenn. 2013) (ads on Backpage.com are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman,* 2013 WL 4502097, at *9-11 (D.N.J. 2013) (rejecting argument that escort ads on the website are unprotected speech); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011); *see also Dart v. Craigslist,* Inc., 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("We disagree . . . that the 'adult services' section is a special case. The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content."); *Cohen v. Bd. of Supervisors*, 707 P.2d 840, 852 (Cal. 1985) ("An escort service may very well involve lawful activities relating to sex." (internal quotations omitted)).

such evidence. (A true and correct copy of the Oct. 26, 2018 Letter from M. Piccarreta to K. Rapp is attached hereto as Ex. A.) The government has not, yet, disclosed this evidence or affirmatively stated that it has searched for such evidence but was unable to locate evidence subject to the requests. Consequently, it is unclear whether this evidence exists, but the government must search for it and either disclose it or indicate to Defendants that it does not exist. Defendants respectfully request that this Court order the government to immediately disclose any and all witnesses, documents, and information relating to the following:

- High-ranking Department of Justice officials have informed Congress that websites publishing advertisements posted by third parties could not be prosecuted under federal criminal law absent specific knowledge about specific ads and an intent to facilitate crimes related to those specific ads. For example, in response to the question "what laws apply to Internet providers like craigslist that would make them criminally liable for the postings," the DOJ's National Coordinator for Child Exploitation, Prevention, and Interdiction, Francie Hakes, testified "I am not aware of any laws that would make them liable, unless there was evidence that Craigslist was a participant ... conspiring with those who were misusing their site, that is, knowingly conspiring to violate the laws. . . . I am not aware of anything that shows us that craigslist might be criminally liable."Domestic Minor Sex Trafficking: Hearing Before Subcommittee on Crime, Terrorism, & Homeland Security of the House Committee on the Judiciary, 111th Cong., p. 215 (Sept. 15, 2010). Any similar materials in the government's possession also constitute *Brady* material and must be disclosed immediately.

- Legislators recently admitted (a month before the government obtained its initial indictment in this matter) that "current federal criminal law . . . presently lacks proper prosecutorial tools to combat [Backpage]" and "*general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim.*" Allow States And Victims To Fight Online Sex Trafficking Act of 2017, House of Representatives Rept. 115-572 Part 1, p. 5, Feb. 20, 2018 (emphasis added). Any similar materials in the government's possessionni also constitute *Brady* materials and must be produced.

10

- All communications to and from any federal, state, or local elected officials relating to the possible criminal prosecution of Backpage or its directors, officers, or employees. *Fitzgerald v. Peek,* 636 F.2d 943, 945 (5th Cir. 1981) (due process prohibits prosecution based on improper influence exerted on the prosecutor to seek the indictments).

- All communications to and from any local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials involved in any manner with the investigation or prosecution of Backpage or its directors, officers, or employees. *Fitzgerald v. Peek,* 636 F.2d 943, 945 (5th Cir. 1981) (due process prohibits prosecution based upon improper outside influences).

- All communications to and from m NCMEC relating to the possible criminal prosecution of Backpage or its directors, officers, or employees.

- All communications to and from any civil plaintiff's lawyers representing alleged sex trafficking victims, or advocacy organizations involved with sex trafficking, relating to the possible criminal prosecution of Backpage or its directors, officers, or employees.

- All communications to and from local, state, and federal law enforcement agents, officers, investigators, prosecutors, and other officials involved with the investigation or prosecution of Backpage or its directors, officers, or employees.

- All documents from NCMEC relating to Backpage, the posting of advertisements for unlawful purposes (including sex trafficking) on Backpage, and the inability of a website operator such as Backpage to determine whether adult-oriented postings relate to lawful activities or unlawful activities or to determine whether adult-oriented postings relate to adults or minors.

- All communications between Backpage and NCMEC relating to reports by Backpage of possible unlawful activity involving minors.

- All documents evidencing, and all commendations from law enforcement relating to, Backpage's cooperation in any criminal investigations.

- All communications to and from Nanci Clarence, or any lawyers representing Mr. Ferrer or Backpage, that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Ferrer

that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

- All communications to and from K.C. Maxwell or any lawyers representing Mr. Hyer that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Hyer that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

- All documents sent by Backpage to law enforcement (or *vice versa*) relating to Backpage cooperating with law enforcement efforts.

- All Department of Justice memoranda relating to the department's understanding of the applicable law governing Backpage during the relevant time periods.

- Any plea bargain, immunity agreement, explicit or implied agreement, or any other promises any witness has received or will receive from any federal, state or local authority in exchange for his or her testimony or cooperation in this case or in any other case—including, but not limited to, any express or impled agreements not to seek to seize or forfeit assets that would be forfeitable under the theories the government is asserting to seize and seek to forfeit the Defendants' assets.

- Any information suggesting any bias, prejudice or motive that a witness may have for testifying falsely against the Defendants. *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987); *United States v. Strifler,* 851 F.2d 1197 (9th Cir. 1988); *United States v. Abel,* 469 U.S. 45 (1984).

- All promises, agreements, benefits, monies or anything of value whatsoever made to or provided to a witness, his/her family or friends by federal, state or local authorities in this matter or any other matter—including, but not limited to, any express or impled agreements not to seek to seize or forfeit assets that would be forfeitable under the theories the government is asserting to seize and seek to forfeit the Defendants' assets. *See United States v. Uramoto,* 638 F.2d 84, 86 (9th Cir. 1980); *United States v. Leja,* 568 F.2d 493 (6th Cir. 1977).

- Any monies paid, or any other benefit provided, to any of the government's witnesses by the United States government or any other governmental agency that was in any way contingent upon the outcome of this or any other investigation as a result of information provided by

any such witnesses. *United States v. Bagley,* 473 U.S. 667, 683 (1985).

- All documents between a witness, or his/her representative, and the government relating to the negotiations of the plea bargain agreement or where the witness has offered or proposed testimony. *Brown v. Dugger,* 831 F.2d 1547 (11th Cir. 1987) (evidence that witness sought plea bargain is to be disclosed even if no deal struck); *Haber v. Wainwright,* 756 F.2d 1520, 1524 (11th Cir. 1985).

- Proffers and statements made by an accomplice witness in negotiating a cooperation agreement with the government, along with information revealing the negotiation process, including but not limited to any and all variations in the accomplice witness' statements. *United States v. Sudikoff,* 36 F.Supp.2d 1196 (C.D. Cal. 1999).

- All documents, including the government's reports which indicate instances of illegal behavior of a witness or specific instances of misconduct which relate in any manner whatsoever to the witness' credibility. *See* Rule 608(b), Federal Rules of Evidence. This request includes any law enforcement reports relating to these instances. *See United States v. Ray,* 731 F.2d 1361 (9th Cir. 1984).

- Any prior contrary statements made by the government witness. *Giles v. Maryland,* 386 U.S. 66 (1967); *Spicer v. Roxbury Correctional Institute,* 194 F.3d 547 (4th Cir. 1999).

- The existence of any witnesses or witness statements favorable to the Defendants. *United States v. Wilkins,* 326 F.2d 135 (2d Cir. 1964); *Jackson v. Wainwright,* 390 F.2d 288 (5th Cir. 1968).

- Negative exculpatory statements, such as statements by informed witnesses that fail to implicate the Defendants in any criminal activity. *See, e.g., United States v. Torres,* 719 F.2d 549, 555-56 (2d. Cir. 1983); *Jones v. Jago,* 575 F.2d 1164, 1168 (6th Cir. 1978); *Clemmons v. Delo,* 124 F.3d 944, 952 (8th Cir. 1997); *White v. Helling,* 194 F.3d 937, 944 (8th Cir. 1999).

- Any threats, express or implied, direct or indirect, or other coercion made or directed against the witnesses, including but not limited to, criminal prosecutions, investigations, other incidents which are pending or could be brought against the witnesses.

- The existence and notification of each occasion upon which the witnesses testified before a Court, grand jury, or other tribunal or made other

statements so defendant can order transcripts for use in cross-examination or investigation. *See* Rules 801(d)(l) and 806, Federal Rules of Evidence. *See also Davis v. Heyd,* 479 F.2d 446 (5th Cir. 1973).

- Any grand jury statements of any witnesses which are favorable to the Defendants. *United States v. Sink,* 56 F.R.D. 365 (E. D. Pa. 1972).

- The identity of any witnesses who testified before the grand jury and who will be unavailable to testify at trial. Arizona State Bar Ethics Opinion No. 94-07 (March 1994). *See* LRCiv 83.2(e), Rules of Practice of the United States District Court for the District of Arizona.

- The names and addresses of any witnesses to offenses charged in the indictment whom the government does not intend to call at trial. *United States v. Cadet,* 727 F.2d 1453, 1469 (9th Cir. 1984) (it is appropriate "to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense").

In regard to law enforcement agents in this case, whether there have been any prior instances of untruthful statements by the agents or any complaints filed with their governmental employer at any time relating to any incidents which relate in any manner whatsoever to the agent's credibility. *See* Rule 608(b), Federal Rules of Evidence; *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991); *Milke v. Ryan,* 711 F.3d 998 (9th Cir. 2013). It is further requested that the prosecutor further personally review the personnel files for *Brady* material.

- Any reports prepared by prosecution experts relating to the legality of the procedure used by government agents in the course of their investigation. *United States v. Gerena,* 116 F.R.D. 596 (D. Conn. 1987).

- Evidence that is inconsistent with a witness' testimony. *United States v. Fisher,* 106 F.3d 622, 634-35 (5th Cir. 1997); *Ballinger v. Kerby,* 3 F.3d 1371, 1375-76 (10th Cir. 1993); *Derden v. McNeel,* 938 F.2d 605,617 (5th Cir. 1991).

### III. The government must seek and disclose materials in possession of organizations that function as an arm of the government.

In this case, the government's obligations under *Brady* include procuring and disclosing any *Brady* material in the possession of organizations that function as an arm of

14

the government. It is well settled that under *Brady*, the prosecutor is "deemed to have knowledge of and access to anything in the custody of any federal agency participating in the same investigation of the defendant." *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995) (citing *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)). Furthermore, knowledge is imputed to the prosecutor where the "evidence is known to other members of the prosecution team . . . includ[ing] information in the hands of the police or *other investigative agencies* involved in the prosecution." *Odle v. Calderon*, 65 F. Supp. 2d 1065, 1071 (N.D. Cal. 1999) (emphasis added); *see also Avila v. Quartermain*, 560 F.3d 299, 307 (5th Cir. 2009) ("It is well settled that if a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors.").

In this case, the government must seek and disclose any *Brady* material in the possession of the National Center for Missing and Exploited Children ("NCMEC"). It is well-settled that NCMEC is an agent of the government. *See United States v. Ackerman*, 831 F.3d 1292, 1308 (10th Cir. 2016); *United States v. Cameron*, 699 F.3d 621, 645 (1st Cir. 2012); *United States v. Keith*, 980 F. Supp. 2d 33, 41 (D. Mass. 2013); *United States v. Coyne*, 2018 WL 8667649 at *9 (D. Vt. Apr. 10, 2018). First, NCMEC alone is statutorily obliged to maintain an electronic tip line for internet service providers ("ISPs") to report potential internet child exploitation violations. *See Ackerman*, 831 F.3d at 1296. Second, ISPs must report any such violations only to NCMEC, and no other governmental agencies; ISP's who fail to comply with this obligation face federal criminal penalties. *See id*. Third, when NCMEC confirms receipt of a report from an ISP, that ISP must treat such confirmation as a request to preserve evidence as if it was issued by the government itself. *See id*. at 1297. Fourth, in furtherance of its tip line functions, NCMEC is statutorily authorized to receive contraband (child pornography) knowingly and to review its contents intentionally. *See id*. Finally, NCMEC receives direct aid from the government in the form of monetary and personnel contributions. Law enforcement agents participate in NCMEC's daily operations and government officials occupy seats on NCMEC's board.

*See id*. at 1298.  And as much as seventy-five percent of NCMEC's budget comes from the federal government.  *See id.*

In effect, NCMEC performs a traditional police function by collecting crime tips, reviewing those tips, and forwarding them to law enforcement agencies.  *See Coyne*, 2018 WL 8667649 at *8.  NCMEC undertakes its clearinghouse role "in partnership with the government," and is required to conduct and report its searches through various statutory provisions.  *Keith*, 980 F. Supp. 2d at 41.  The agency exists for no private purpose other than to assist law enforcement.  *See id*.

In *United States v. Rosenschein*, 2019 WL 2298810 (D.N.M May 30, 2019), the court examined the more narrow issue of whether NCMEC was part of the "prosecution team" for purposes of discovery.  *See id*. at *1.  Through the use of "PhotoDNA," a program which identifies potential child exploitation images, an ISP identified two images distributed by defendant.  *See id*.  The ISP submitted these images to NCMEC, which identified the location of the defendant and alerted the appropriate geographical law enforcement agency.  *See id*.  Defendant moved to compel disclosure of various documentation from NCMEC, including discovery pursuant to *Brady*.  *See id*. at *2.  The court held that NCMEC was part of the prosecution team for discovery purposes, noting that "NCMEC did conduct, as it is charged to do by statute, a limited investigation into the facts of this case.  This included an investigation to identify the location of the suspected internet user." *Id*. at *7.  Based upon this finding, the court granted defendant's motion to compel.  *See id*. at *10.

Here, NCMEC is clearly an agent of the government and has acted as a member of the "prosecution team" for *Brady* purposes.  NCMEC's former President, Ernie Allen, met and communicated with representatives of the Department of Justice ("DOJ") on numerous occasions, urging the DOJ to prosecute the Defendants for their former interest in the

company that operated Backpage.[2] (True and correct copies of documents confirming Mr. Allen's meetings with the DOJ and a subsequent meeting among the DOJ and others at NCMEC relating to the prosecution of Backpage are attached hereto as Exs. B, C.) Further, NCMEC voluntarily provided information to the prosecution team in this case as NCMEC produced documents in response to a letter from the DOJ, rather than a grand jury subpoena. (A true and correct copy of a Letter from Linda Engstrom to Yiota Souras dated May 16 , 2017 is attached hereto as Ex. D). Finally, the prosecution has identified four current or former NCMEC employees or board members as witnesses against the Defendants on the government's Witness List. Indeed, because NCMEC's day-to-day operations coordinate with the DOJ, and NCMEC officials have functioned as an arm of the DOJ in this particular case, the government must obtain any information subject to disclosure under *Brady* and *Bagley* from NCMEC and promptly disclose that information to the Defendants.

Further, the government must seek and disclose any *Brady* evidence in the possession of the Offices of the Attorney Generals for the States of California and Texas. Critically, the government has stated that it "partner[ed]" with those Offices and that DOJ's investigation and seizure of Backpage was based on "significant support" from those Offices. *See* April 9, 2018 DOJ Press Release, available at https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads (last visited on Oct. 16, 2019). Based on this admission of a partnership with those Offices, the government must seek and promptly disclose any *Brady* material in their possession, custody or control.

## CONCLUSION

For all these reasons, Defendants respectfully request that this Court order the government to seek and promptly disclose all *Brady* material, including all material that is

---

[2] Mr. Allen had similar meetings and communications with state law enforcement officials.

in the possession, custody or control of the DOJ that has not yet been disclosed, as well as all material in possession, custody or control of organizations that function as an arm of the DOJ, including, but not limited to NCMEC, and the Offices for the Attorney Generals for the States of California and Texas.

Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such materials shall become known to counsel for the Defendants, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

RESPECTFULLY SUBMITTED this 18th day of October, 2019,

/s/    Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

On October 18, 2019, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov