Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' MOTION TO SUPPRESS** |
| vs. | |
| Michael Lacey, *et al.*, | (Oral argument requested) |
| Defendants. | |

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught, by and through their undersigned attorneys, move to suppress evidence obtained from search warrants served on email providers because those warrants were facially invalid under the Fourth Amendment. This Motion is based on the attached Memorandum of Points and Authorities, the Court's file, and any evidence or argument presented at the hearing on this matter.

Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based on this Motion.

DATED: October 18, 2019        Paul J. Cambria, Jr.
                               Erin E. McCampbell
                               LIPSITZ GREEN SCIME CAMBRIA LLP

                               By:    /s/ Paul J. Cambria, Jr.
                                      Paul J. Cambria, Jr.
                                      Attorneys for Michael Lacey


DATED: October 18, 2019        Thomas H. Bienert, Jr.
                               Whitney Z. Bernstein
                               BIENERT KATZMAN, PLC

                               By:    /s/ Whitney Z. Bernstein
                                      Whitney Z. Bernstein
                                      Attorneys for James Larkin


DATED: October 18, 2019        Bruce Feder
                               FEDER LAW OFFICE, P.A.

                               By:    /s/ Bruce Feder
                                      Bruce Feder
                                      Attorneys for Scott Spear


DATED: October 18, 2019        Gary S. Lincenberg
                               Ariel A. Neuman
                               Gopi K. Panchapakesan
                               BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                               DROOKS, LINCENBERG & RHOW, P.C.

                               By:    /s/ Ariel A. Neuman
                                      Ariel A. Neuman
                                      Attorneys for John Brunst

| | | |
|---|---|---|
| DATED: October 18, 2019 | David Eisenberg | |
| | DAVID EISENBERG, P.L.C. | |
| | By: | /s/ David Eisenberg |
| | | David Eisenberg |
| | | Attorneys for Andrew Padilla |
| | | |
| DATED: October 18, 2019 | Joy Bertrand | |
| | JOY BERTRAND, ESQ. | |
| | By: | /s/ Joy Bertrand |
| | | Joy Bertrand |
| | | Attorneys for Joye Vaught |

## MEMORANDUM OF POINTS AND AUTHORITIES

Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught move for an order suppressing evidence obtained from execution of warrants that authorized the government to seize and search certain email accounts. The warrants at issue were facially invalid for several reasons as set forth below.

## BACKGROUND

The government has sought and obtained several warrants authorizing the government to seize and search information associated with email addresses, including email addresses for the Defendants, various former Backpage employees, and Carl Ferrer, the former Chief Executive Officer of Backpage. Defendants had an expectation of privacy in their email, regardless of whether their email was the target of the warrant or seized due to the Defendants' communication with an email account that was the target of a warrant.

### I.   Ferrer-Google Warrant

On July 14, 2016, the government obtained a search warrant authorizing it to obtain all information associated with the email address carl.ferrer@backpage.com from the internet service provider ("ISP") Google, Inc. ("Ferrer-Google Warrant").[1] (A true and correct copy of the Ferrer-Google Email Warrant is attached hereto as Ex. A.) The Ferrer-Google Warrant ordered Google to disclose the contents of all email associated with the account, information regarding the identification of the account, records stored by the user such as address books, contact and buddy lists, calendar data, pictures, and files, and records related to communications between Google and any person concerning the account. (*Id*. Attachment B.) Once the government received the data from Google, the Ferrer-Google Warrant authorized the government to seize all information that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1952 and 1956 involving Backpage, from October 2010 through the present, including any information related to Backpage matters, communications to, from, or

---

[1] The Ferrer-Google Warrant was issued under Arizona Docket No. 16-305 MB.

concerning Backpage, and records concerning the creation and use of the email account. (*Id*.) The Ferrer-Google Warrant authorized Google to search and image the content, records, files, and communications associated with the email account and then once imaged, law enforcement searched for the data subject to seizure, copied it, and provided it to the prosecution team. (*Id*.) The prosecution team was prohibited from reviewing email to/from attorney Elizabeth McDougall (but not emails to/from the numerous other attorneys the government knew to represent Defendants, their entities, Ferrer, or Backpage). (*Id*.)

The government's application for the Ferrer-Google Warrant included an affidavit from F.B.I. Special Agent Amy L. Fryberger. (A true and correct copy of the Fryberger Affidavit for the Ferrer-Google Warrant is attached hereto as Ex. B.) Fryberger stated that she had probable cause to believe that Backpage violated 18 U.S.C. §§ 1952 and 1956. (*Id*. ¶ 3.) She claimed that "most" of "the paid advertisements" were for prostitution, "most" of "the individuals advertising those services have no other legitimate source of income," and that "most" of "the money used to pay for those advertisements" was derived from illegal prostitution in violation of the Travel Act.[2] (*Id*. ¶ 10.) Further, she stated that there was probable cause to believe that "the ownership, management and other employees of Backpage know that much, if not most, of the money Backpage receives for such paid advertisements represents proceeds from illegal activities" in violation of the Money Laundering Statute. (*Id*. ¶ 11.)

To establish Backpage's purported intent to violate 18 U.S.C. §§ 1952 and 1956, Fryberger referenced various proceedings, including:

---

[2]   The Fryberger Affidavit provided no information to allow the magistrate to assess whether Fryberger had any factual basis for the sweeping allegations she made about millions of ads posted to Backpage.com, the users who posted those ads, the activities engaged in by those users, or the financial circumstances of those uers. Moreover, even if Fryberger had a factual basis to make those sweeping allegations, the Fryberger Affidavit makes no allegations that Defendants knew what Fryberger claims to have known about the millions of ads, the users who posted them, and the like.

- noting that it was "largely publicized" that law enforcement had successfully prosecuted pimps and others in connection with adult and child sex trafficking based on ads that had been posted to Backpage (*Id*. ¶¶ 32-36; 118-122);

- indicating that the Attorney General's Office for the State of California conducted an undercover investigation which involved posting ads to Backpage, and the investigator contacted Ferrer and Backpage's General Counsel about the ad that he had created for the site, which the investigator claimed was for prostitution (*Id*. ¶¶ 37-58);

- discussing the findings of the investigation and report of the United States Senate, Permanent Subcommittee on Investigations on Backpage ("PSI") (*Id*. ¶¶ 59-71); and

- discussing the allegations raised in civil lawsuits filed against Backpage (*Id*. ¶¶ 72-87).

To further her effort to establish Backpage's alleged intent to violate 18 U.S.C. §§ 1952 and 1956, Fryberger referenced three ads which she claimed "appear[ed] to be criminal on their face." (*Id*. ¶¶ 88-98.) Additionally, she pointed to Backpage's moderation process as evidence of intent to violate the law. (*Id*. ¶¶ 99-117.)

## II.     Warrant for CA AG's Data

On April 18, 2017, the government obtained a search warrant to search and seize information associated with various email accounts, including accounts for Defendants Michael Lacey, James Larkin, Joye Vaught, and Andrew Padilla, that was stored at the California Attorney General's Office ("Warrant for CA AG's Data"). (A true and correct copy of the Warrant for CA AG's Data is attached hereto as Ex. C.)[3] Once the government received the data from the California Attorney General's Office, the Warrant for CA AG's Data authorized the government to seize all information that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1952 and 1956 involving Backpage, from October 2010 through the present, including any information related to Backpage matters, communications to, from, or concerning Backpage, and records concerning the creation and use of the email account. (*Id*. Attachment B.) Once the government received the evidence, the Warrant for CA AG's Data authorized a Filter Team to review the documents and to disseminate only non-privileged and non-protected documents to the Investigation Team, which then would determine which

---

[3]     The Warrant for CA AG's Data was issued under Eastern District of California docket 17-SW-0275 AC.

documents constituted evidence of unlawful activity. (*Id.*) The Filter Team was authorized to review email to and from Backpage attorneys to determine whether or not a document was privileged or protected. (*Id.*)

The government's application for the Warrant for CA AG's Data included an affidavit from Fryberger. (A true and correct copy of the Fryberger Affidavit for the Warrant for CA AG's Data is attached hereto as Ex. D.) Fryberger stated that she had probable cause to believe that Backpage violated 18 U.S.C. §§ 1952 and 1956. (*Id.* ¶ 3.) She claimed that "most" of "the paid advertisements," were for prostitution, "most" of "the individuals advertising those services have no other legitimate source of income," and that "most" of "the money used to pay for those advertisements" was derived from illegal prostitution in violation of the Travel Act. (*Id.* ¶ 10.)

She stated that "there is probable cause that James Larkin and Michael Lacey are the true beneficial owners of Backpage," notwithstanding the sale of Backpage to its creator and long-time Chief Executive Officer, Ferrer. (*Id.* ¶ 11.) She stated that classified ad websites like Backpage "facilitate the commercial sex trade by providing an easily accessible forum that matches buyers of sex with the individuals providing sex acts for a fee." (*Id.* ¶ 14.) She noted that Backpage's adult entertainment section included sub-categories such as "adult jobs," "body rubs," "domination & fetish," "escorts," "male escorts," "phone & websites," "strippers/strip clubs," and "transsexual escorts." (*Id.* ¶ 19.)

With respect to establishing Backpage's purported intent to violate 18 U.S.C. §§ 1952 and 1956, this affidavit largely tracked the affidavit that Fryberger submitted in connection with the Ferrer-Google Warrant. She cited to prior prosecutions (*id.* ¶¶ 23-27), the California Attorney General's undercover investigation (*id.* ¶¶ 28-50), the allegations raised in civil lawsuits against Backpage (*id.* ¶¶ 51-66); the three isolated ads that appeared to be "criminal on their face" (*id.* ¶¶ 67-77); and the PSI (*id.* ¶¶ 78-105).

### III. Arizona Email Warrant

As referenced on an FD-302 Form, on an unknown date, the government obtained a search warrant in this District to seize and search email addresses associated with Defendants Vaught and Padilla, as well as former Backpage employees. (A true and correct copy of the FD-302 is attached hereto as Ex. E.) Defendants have been unable to locate this warrant (and related application) within the discovery. As a result, Defendants requested that the government provide a copy of the warrant (and related application) or the Bates Numbers of those documents, if they had been disclosed. (A true and correct copy of Defendants' request is attached hereto as Ex. F.) The government has not yet responded.

Because Defendants have been unable to review the Arizona Email Warrant (and related application), Defendants respectfully reserve the right to bring challenges to that warrant upon receipt and review of it.

## ARGUMENT

The Fourth Amendment mandates that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To be valid, a reviewing court must find that the warrant meets four separate requirements: (1) it must be based on probable cause; (2) supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the persons or things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A failure to satisfy even one of these requirements renders a warrant facially invalid. *See id*. In addition to these requirements, in *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court recognized that a search conducted pursuant to a warrant is invalid if the supporting affidavit contains material misstatements of fact or omissions.

Under these standards, the Ferrer-Google Warrant and Warrant for CA AG's Data are facially invalid. First, the warrants fail the probable-cause requirement because the underlying affidavits contain no factual information that would enable the issuing magistrate to make a neutral and detached probable-cause determination. Second, Defendants are entitled to a *Franks*

8

hearing because the Ferrer-Google Warrant and Warrant for CA AG's Data contain material omissions and misrepresentations.

**I.    The Ferrer-Google Warrant and Warrant for CA AG's Data violate the probable cause requirement.**

    **A.    The Fourth Amendment requires that an issuing judge independently assess facts before finding probable cause to search.**

For a search warrant to be valid, it must describe the place to be searched and things to be seized with sufficient particularity and "be no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). A search warrant is supported by probable cause if the issuing judge finds that "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A search is invalid where "the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quotations and alterations omitted). When an affiant's statements are "unsupported by underlying facts," a warrant lacks probable cause. *Id.*; *accord Gates*, 462 U.S. at 239 (noting that "wholly conclusory" statements of officers are insufficient to establish probable cause); *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) (recognizing that a "conclusory allegation, without any foundational facts . . . [is] entitled to little weight"). If an affidavit fails to provide foundational facts, an issuing judge cannot fulfill his or her duty to complete an independent review of the warrant *See United States v. Leon*, 468 U.S. 897, 914 (1984) (explaining that the lack of neutral and detached review makes a reviewing judge "merely a rubber stamp for the police."); *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965) (recognizing that magistrate must be provided foundational facts "to perform his detached function and not serve merely as a rubber stamp for the police").

The basis for probable cause must be contained within the application without reference to outside information. *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1984)

("The facts upon which the magistrate bases his probable cause determination must appear within the four corners of the warrant affidavit; the warrant cannot be supported by outside information."). The "Fourth Amendment requires that warrants may issue only upon a determination of probable cause by *a neutral and detached magistrate*." *Id*. at 794-95. Thus, the purported factual findings of a law enforcement agency, legislature, or civil litigant cannot serve as a proxy for a probable cause determination by a magistrate issuing a warrant. *See Gates*, 462 U.S. at 238; *see also Rubio*, 727 F.2d at 795 ("[W]arrant affidavit's mere recitation of the indictment is precisely that—the conclusion of another body, and a body whose function differs substantially from the magistrate's constitutional duty to assess probable cause."). If the government contends that the magistrate should consider evidence presented during an unrelated proceeding or investigation, the government must present that evidence in its warrant application. *Cf. Rubio*, 727 F.2d at 795

### B. The Ferrer-Google Warrant and Warrant for CA AG's Data were not supported by probable cause so the magistrate erred in approving them.

The magistrate lacked a substantial basis to find probable cause because the affidavits underlying the warrants provided no facts supporting the crimes allegedly committed by the Defendants. Rather than outlining facts known to the affiant as is required, the affidavits summarize findings from "largely publicized" prosecutions, the findings of an investigation conducted by another law enforcement office, the investigation and purported findings of a legislative body, and even the pre-trial allegations of civil litigants. *See Rubio*, 727 F.2d at 795 (reversing convictions because search warrant affidavit that referred to the indictment "furnished no basis whatsoever for believing the defendants" had engaged in a pattern of racketeering); *United States v. Bailey*, 327 F. Supp. 802, 806 (N.D. Ill. 1979) (denying order to compel defendants to provide government with handwriting exemplars because government failed to establish probable cause and recognizing that "the finding of probable cause for arrest of an individual that accrues from his being indicted does not . . . become the

equivalent of a finding of probable cause for a warrant to search that person's home, his car, or his business office").

Additionally, the search warrant applications do not include any facts establishing that the owners, managers, or employees of Backpage had the heightened scienter required to establish probable cause that they engaged in any Travel Act (or money laundering) violations. (*See* Defs.' Mot. to Dismiss, Doc. 561 at 37-48 and Brunst's Mot. To Dismiss, Doc. 746 at 9-11 (incorporated herein by reference and explaining why the indictment is facially insufficient because it fails to provide any allegations on the requisite scienter for the charged crimes).) Because the warrant applications contain conclusory statements about generalized intent rather than *facts* establishing specific knowledge and intent to engage in unlawful activity, the search warrants are facially invalid. *See United States v. Weber*, 923 F.2d 1338, 1345-46 (9th Cir. 1990) (reversing conviction and ruling that suppression was warranted where affidavit in support contained only generalized conclusions about the behavior of child pornographers rather than particular evidence suggesting that the defendant was a child pornographer); *Underwood*, 725 F.3d at 1082-84 (affirming suppression where affidavit contained only expert opinion and conclusory statements that defendant trafficked ecstasy); *Cervantes*, 703 F.3d at 1139-40 (reversing denial of suppression due to affiant's failure to offer facts establishing probable cause to believe that defendant's home was a "narcotics stash location").

Finally, the affidavits are void of any facts that establish probable cause to believe that Defendants knowingly and intentionally promoted/facilitated a "business enterprise" involving prostitution. (*See* John Brunst's Motion to Dismiss Indictment Based on Failure to Allege Necessary Elements of the Travel Act, Doc. 746 (incorporated herein by reference).) Critically, the government must provide facts to the issuing magistrate indicating that the targets of the warrants knowingly and intentionally engaged in "unlawful activity." 18 U.S.C. § 1952(a)(3). The plain text of the Travel Act defines "unlawful activity" as "any business enterprise involving . . . prostitution offenses." 18 U.S.C. § 1952(b). The affidavits contain

11

no facts concerning a specific criminal "business enterprise" or that the targets of the warrants knowingly and specifically intended to facilitate or promote a particular "business enterprise." As a result, the issuing magistrate erred in authorizing the warrants.

### III. Defendants are entitled to a *Franks* hearing because the Ferrer-Google Warrant and Warrant for CA AG's Data contain material misstatements and omissions.

Because the affidavits omitted significant information material to the issuing magistrate's probable-cause determination, Defendants are entitled to a hearing on the validity of the affidavits under *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks v. Delaware*, the Supreme Court held that a defendant is entitled to an evidentiary hearing where there is evidence that a search conducted pursuant to a warrant was based on a supporting affidavit that contains intentional or reckless material misstatements of fact or omissions. *See Franks*, 438 U.S. at 171-72.

Since *Franks*, the Ninth Circuit held that a defendant is entitled to an evidentiary hearing to challenge the veracity of an affidavit when the defendant preliminarily demonstrates that an affidavit contains "intentionally or recklessly false statements" and that without those falsities the government cannot support a probable cause finding sufficient to issue a search warrant. *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985) (quotations omitted). Clear proof of deliberate or reckless falsity is not required. *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005). Instead, to trigger a hearing, a defendant must offer evidence supporting "a finding of intent or recklessness". *Id*. Once a defendant makes that preliminary showing, the district court "must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause." *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988).

Half-truths like those in the affidavits offered in support of the Ferrer-Google Warrant and Warrant for CA AG's Data improperly allow a search warrant affiant to "manipulate the inferences a magistrate will draw." *Stanert*, 762 F.2d at 781; *see also Chism v. Washington*

*State*, 661 F.3d 380, 388 (9th Cir. 2011) (recognizing that an officer acts recklessly when the affidavit does not report important factual information that was within the officer's knowledge at the time the affidavit was prepared). When an omission is essential to the finding of probable cause, recklessness may be inferred from the omission itself. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1994). A defendant is entitled to a *Franks* hearing even if the misstatements or omissions are not the affiant's fault. *See United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992); *accord Johns*, 851 F.2d at 1134 n.1.

If a defendant prevails on a *Franks* challenge, the evidence seized must be suppressed without application of the "good faith" rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *accord United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

Here, Defendants are entitled to a *Franks* hearing challenging the veracity of the affidavits underlying both the Ferrer-Google Warrant and Warrant for CA AG's Data because they contain material misrepresentations and omissions. The most serious omission is that the affidavits ignore cases holding that the First Amendment protects online classified advertising sites generally, and Backpage in particular. This omission is critical because ***all*** allegations of unlawful conduct hinge on claims that advertisements posted to Backpage violated state prostitution laws. If publishing third-party advertisements for purported illegal activities is not unlawful (without more), there is no predicate for the affiant's claims that publishing third-party adult ads violated the Travel Act or that resulting financial transactions violated federal money laundering laws.

At the time the affidavit for the Warrant for the CA AG's Data was written, the government knew that courts in California had rejected the specific theory on which all of the allegations in the affidavits are based; that is, that publishing classified ads for adult services violates state law prohibiting prostitution.[4] *See People v. Ferrer*, 2016 WL 7237305, at *3

---

[4] Indeed, the government has stated that it "partner[ed]" with the California Attorney General's Office in their efforts to shut down Backpage. *See* April 9, 2018 DOJ Press

13

(Sup. Ct. Sacramento Cnty. Dec. 9, 2016) ("*Ferrer I*") (recognizing that "the relevant question in this case is whether, and to what extent, Defendants' activities entitle them to protection *of their First Amendment rights* through the immunity provision of the CDA" (emphasis added)).

The affidavits disingenuously claim that Defendants' mere publishing of the ads establish probable cause that Backpage facilitated prostitution in violation of state law. (*See* Ex. B; D.)  However, the government knows that publishing and editing third-party ads is protected under the First Amendment.  Indeed, moderation falls under "traditional editorial functions," and constitutes protected speech, even when terms or images are deleted and the remaining portion of an advertisement is published.  *See Ferrer I*, 2016 WL 7237305, at *3.

The search warrant affidavits also intentionally fail to disclose that numerous courts have rejected claims that adult advertisements are synonymous with prostitution or trafficking.  *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("[N]ot all advertisements for sex are advertisements for illegal sex.").[5]  The government's suppression

---

Release, available at https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads (last visited on Oct. 9, 2019).

[5]   *Accord Doe v. Backpage.com LLC*, 104 F Supp. 3d 149, 156-57 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016) ("The existence of an escorts section in a classified ad service, whatever its social merits, is not illegal."); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 1262, 1282 (W.D. Wash. 2012) (escort ads have long been permitted and escort services are licensed and regulated in many states); *Backpage. com, LLC v.Cooper*, 939 F. Supp. 805, 816, 833-34 (D. Tenn. 2013) (ads on Backpage.com are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman,* 2013 WL 4502097, at *9-11 (D.N.J. 2013) (rejecting argument that escort ads on the website are unprotected speech); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011); *see also Dart v. Craigslist,* Inc., 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("We disagree . . . that the 'adult services' section is a special case.  The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content."); *Cohen v. Bd. of Supervisors*, 707 P.2d 840, 852 (Cal. 1985) ("An escort service may very well involve lawful activities relating to sex." (internal quotations omitted)).

of this information, which should have been weighed by the judge considering probable cause for the warrants, renders the warrants materially misleading. Indeed, the government knew and should have advised the issuing magistrate that, when the government seeks to hold a party accountable for third-party speech, the First Amendment constrains the government and imposes heightened scienter requirements separate from those in any applicable statutes.

Similarly, the affidavits allege that Defendants, Ferrer, and former Backpage employees knowingly facilitated prostitution. (*See* Ex. B; E.) This assertion ignores the long line of cases requiring a heightened proof of scienter when the government seeks to hold a publisher liable for publishing the speech of a third party as well as cases indicating that a heightened proof of scienter is required for Travel Act violations. (*See* Defs.' Mot. to Dismiss, Doc. 561; Brunst's Mot. To Dismiss, Doc. 746 at 9-11.) These omissions, too, are materially misleading.

Due to the government's material misstatements and omissions in materials supporting its request for the search warrants, Defendants are entitled to a *Franks* hearing. This hearing will establish the veracity of the affidavits underlying the Ferrer-Google Warrant and the Warrant for the CA AG's Data and show that the government's material omissions would have undermined the magistrate's probable-cause finding. *See United States v. Perkins*, 583 F. App'x 796, 797 (9th Cir. 2014) (vacating conviction and remanding for *Franks* hearing where affidavit to search home for child pornography omitted information that Canadian officials had indicated that the images "had no obvious sexual purpose" and failed to provide that magistrate with the images).

## CONCLUSION

For all these reasons, this Court should: (1) suppress the evidence obtained from execution of the Ferrer-Google Warrant and Warrant for the CA AG's Data and any evidence derived from them; and, to the extent required, (2) hold a *Franks* hearing for Defendants to

demonstrate that the Ferrer-Google Warrant and Warrant for the CA AG's Data contain material misstatements and omissions in violation of the Fourth Amendment.

RESPECTFULLY SUBMITTED this 18th day of October, 2019,

/s/   *Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin E. McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

On October 18, 2019, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal Of a Notice of Electronic Filing to the Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov