Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al*.,<br><br>　　　　　Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' NOTICE OF JOINDER IN JOYE VAUGHT'S MOTION TO STRIKE SURPLUSAGE FROM INDICTMENT (Doc. 785)**<br><br>(Oral argument requested) |

　　　　Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, and Andrew Padilla, by and through their undersigned attorneys, join in Joye Vaught's Motion to Strike Surplusage (Doc. 785). Defendants' are similarly situated to Ms. Vaught and join in this motion to the extent

that the Court intends to send or read the indictment to the jury.[1] Defendants provide the instant Memorandum of Points and Authorities in further support of the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Superseding Indictment (Doc. 230 (the "Indictment")), full of irrelevant and unduly prejudicial allegations, appears to have been drafted for a far broader purpose than simply providing the Defendants with notice of the charges against them.  The Indictment is laden with hearsay and recycles the purported "findings" of various elected officials and non-profit organizations, which have nothing to do with the findings of the grand jury.  It also contains allegations which suggest additional criminal conduct of which Defendants are not accused and that will be inadmissible at trial.  Such surplusage should be stripped from the Indictment if it is ever to be presented in any form to the jury.[2]

Nonetheless, to the extent that this Court addresses the motion at this time, the Indictment's inflammatory and unduly prejudicial allegations that do not go to any element of the charged crimes should be struck, in addition to those identified in the motion.

## BACKGROUND

On July 25, 2018, a grand jury sitting in this District issued the Indictment, which charges Defendants under Conspiracy (18 U.S.C. § 371), the Travel Act (18 U.S.C. § 1952), and the Money Laundering Statutes (18 U.S.C. §§ 1956, 1957).  The Indictment is laden with hearsay. (*See* Indict. ¶¶ 1, 11, 12, 13, 16, 21, 24, 25, 31, 35-73, 75-96, 98-108, 110, 112-126, 128-130,

---

[1] To the extent that the Court does not intend to give or read the indictment to the jury, and the government so agrees, Defendants submit that the issues raised in the motion can be addressed closer to trial through motions *in limine* regarding evidence to be presented at trial, and a joint statement of the case prepared by the parties.

[2] Far more appropriate than providing the Indictment – which is not evidence - to the jury, is to follow the normal practice in this District of providing the jury with a joint statement of the case which summarizes the charges in a neutral fashion.  Such Statements are prepared close to the date of trial, once all substantive and most *in limine* motions are decided.

132-133, 135-139, 142-143, 145, 147-150, 155-176, 178-185, 187-188, 194, 201.) It is larded up with the claims of elected officeholders, political bodies, non-governmental organizations, academics, and media organizations, none of which are the actual findings of the grand jury. (*See id*. at ¶¶ 74, 86, 97, 109, 111, 127, 131, 134, 140, 141, 144, 146, 151.) The Indictment selectively quotes from various email and documents in a manner that is patently misleading. (*See* Defs.' Joint Mot. to Dism. Indict. for Grand Jury Abuse, Doc. 780 (filed under seal and incorporated herein by reference) at 8-11.)

In addition to these problems, the Indictment contains classic surplusage. For example, the Indictment contains no Child Sex Trafficking (18 U.S.C. § 1591) charges. However, the Indictment is heavily padded with allegations related to child sex trafficking. (*See* Indict. at ¶¶ 13, 14, 74, 85, 86, 95, 100, 101, 104, 106, 109, 111, 113, 114, 115, 116, 120, 121, 123, 124, 125, 127, 130, 131, 133, 134, 135, 140, 144, 146, 151, 160, 161, 163, 164, 165, 167, 168, 169, 170, 172, 174.) Critically, the government knows that it cannot establish these highly inflammatory allegations which renders their inclusion in the Indictment even more problematic. (*See* Doc. 780 at 4-7.)

The Indictment includes information concerning a variety of unrelated and irrelevant crimes committed against individuals who allegedly advertised on Backpage (*see* Indict. at ¶¶ 150, 162, 168, 170, 173, 174, 175); however, those crimes are irrelevant to the charges actually found in the Indictment because the Indictment only charges a conspiracy to promote or facilitate prostitution (*see id*. ¶¶ 195-99.) Under the plain language of the charge, the only crime relevant to the conspiracy was prostitution. Yet, the Indictment mentions murders, kidnappings, and other serious, but uncharged, conduct committed by unrelated parties.

The Indictment contains an entire subsection on Backpage's purported "International Operations," (*id*. at ¶¶ 153-59), even though the government has stated that discovery materials related to foreign matters are not relevant to the instant charges (*see* Gov't's Opp'n to Padilla's Mot. to Continue Trial, Doc. 635, at 1 & 4 (explaining that the "vast majority" of a 5.9 million page disclosure concerned "postings in foreign markets . . . and is of marginal or no relevance

to the crimes" charged in the indictment)). Indeed, prostitution is legal in many other countries; it does not appear that the government intends to prove otherwise, *see* Countries Where Prostitution is Legal, available at: http://worldpopulationreview.com/countries/countries-where-prostitution-is-legal/ (last visited Jul. 1, 2019).

Finally, the Indictment contains other inflammatory and irrelevant allegations and words that should be struck. For example, the Indictment discusses a 1987 Travel Act conviction of an individual who managed a prostitution business that "masqueraded as a massage parlor" with no connection to the instant prosecution or any named Defendants or Backpage or the charged crimes. (*Id*. ¶ 19.) Further, the Indictment describes Defendants as "fooling" financial institutions or "conceal[ing]" information from them about the origins of their funds. (*Id*. at ¶¶ 178, 179, 181.) These conclusions (not factual allegations) have no place in an indictment, particularly when, as here, those conclusions are unduly prejudicial.

## ARGUMENT

**I.     The Indictment should not be sent or read to the jury.**

The Indictment should not be sent or read to the jury. First, the Indictment contains hearsay and recycles the purported claims of various elected officials, political bodies, non-profit organizations, and others, which have nothing to do with the grand jury's actual findings. It is well-recognized that "[p]rosecutors have been known to insert unnecessary allegations for 'color' or 'background' hoping that these will stimulate the interest of juries," 1 Wright, *Federal Practice and Procedure* § 128 (4th ed.) (footnotes omitted), which was done here and is highly inflammatory to the Defendants. Second, the Indictment selectively quotes from documents in a manner that is patently misleading and unduly prejudicial to the Defendants. (*See* Doc. 780 at 8-11.) Finally, it is the practice of the judges of this District to provide the jury with a brief summary of the indictment during *voir dire*, rather than send the indictment to the jury. Indeed, the original scheduling order in this case requires the parties to prepare a joint statement of the case, which voids the need for reading or sending the Indictment to the jury. (*See* Doc. 131.)

**II.    This Court should strike the irrelevant and unduly prejudicial surplusage from the Indictment.**

To the extent that this Court resolves the motion on its merits, this Court should strike the irrelevant and unduly prejudicial surplusage from the Indictment. Under Rule 7(d) of the Federal Rules of Criminal Procedure, this Court has the authority to strike surplusage from the Indictment upon motion by the Defendants. Rule 7(d) was promulgated for the purpose of "protecting the defendant against immaterial or irrelevant allegations in an indictment" which "may . . . be prejudicial." 1966 Advisory Comm. Notes to Fed. R. Crim. P. 7(d); *see also United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979) ("The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." (citations omitted)). Surplusage has been defined as "[a]ny allegation without which the pleading would remain adequate in law." *Brady v. United States*, 24 F.2d 397, 399 (1928).

This Court should strike every reference to uncharged child sex trafficking. (*See* Indict. at ¶¶ 13, 14, 74, 85, 86, 95, 100, 101, 104, 106, 109, 111, 113, 114, 115, 116, 120, 121, 123, 124, 125, 127, 130, 131, 133, 134, 135, 140, 144, 146, 151, 160, 161, 163, 164, 165, 167, 168, 169, 170, 172, 174.) There is no allegation that is more "emotionally charged" and unduly prejudicial than an allegation of child sex abuse. *See United States v. Poandl*, 612 F. App'x 356, 366 (6th Cir. 2015) (recognizing "the emotionally charged nature of sexual abuse charges" involving minors); *see also* Boyd, Fort Worth Star-Telegram, *Child abuse trials: 'There are no higher stakes'* (Jun. 2, 2017) (available at https://www.star-telegram.com/news/special-reports/article153578794.html (last visited on October 22, 2019) (discussing the stigma attached to child sex abuse charges and quoting a former prosecutor as saying that "[y]ou can easily ask the jury would you rather be accused of murder or would you rather be accused of sexual abuse of a child and they all say they'd rather be accused of murder" which "shows how abhorrent the charges are"). Such allegations should be struck from the Indictment because there are no child sex trafficking charges against the

5

Defendants. Moreover, the government knows that there is no basis whatsoever for its allegations that Defendants engaged in child sex trafficking. (*See* Doc. 780 at 4-7.)

Similarly, this Court should strike every reference to alleged misconduct of third parties, such as murders, kidnappings, etc. (*See* Indict. at ¶¶ 150, 162, 168, 170, 173, 174, 175.) None of the charges against Defendants relate to this conduct as the only alleged objects of the purported conspiracy are to make money through the facilitation of prostitution. (*See id*. ¶¶ 195-99.) The inclusion of this irrelevant information about crimes committed by unrelated parties is unduly prejudicial to Defendants.

Further, this Court should strike the entire section on "International Operations" (*see* Indict. ¶¶ 153-59) as irrelevant and unduly prejudicial. As a preliminary matter, prostitution is either fully legal or has been decriminalized in dozens of foreign countries and ads generated from those countries could not support any of the charged crimes. *See* Countries Where Prostitution is Legal, available at: http://worldpopulationreview.com/countries/countries-where-prostitution-is-legal/ (last visited Jul. 1, 2019). Consequently, even under what the Defendants' maintain is the government's novel and flawed theory of the case, Backpage's operations could not have facilitated the crime of prostitution in those countries. More importantly, the government, itself, has stated that international material is not relevant to the charged crimes. (*See* Gov't's Opp'n to Padilla's Mot. to Continue Trial, Doc. 635, at 1 & 4 (explaining that the "vast majority" of a 5.9 million page disclosure concerned "postings in foreign markets . . . and is of *marginal or no relevance to the crimes*" charged in the indictment (emphasis added)). These allegations, which the government has conceded are irrelevant to the instant charges, are also unduly prejudicial and should be struck from the Indictment.

This Court also should strike Paragraph 19 from the Indictment because it has nothing to do with the pending charges, makes no attempt to link Defendants to the allegation, and is unduly prejudicial. In particular, the 1987 Travel Act conviction of an individual with no connection to this case or these Defendants is not relevant to the instant charges. Prior convictions (of Defendants or others) are not an element of any of the charged crimes. *See*

18 U.S.C. §§ 371, 1952, 1956, 1957.  Courts routinely strike references to a defendant's prior conviction from an indictment when the prior conviction is not one of the elements of a charged crime because such information is irrelevant to the charges and unduly prejudicial to the defendant.  *See United States v. Cohen*, 2018 WL 3822466, at *1-3 (D. Nev. Aug. 10, 2018) (granting motion to strike reference to defendant's prior conviction because that conviction did not go to an element of the charges against the defendant and its inclusion was unduly prejudicial); *United States v. Chase*, 2006 WL 3780007, at *2 (D. Nev. Dec. 14, 2006) (striking reference to prior conviction from indictment because the "indictment is adequate in the law without reference to the prejudicial and inflammatory allegations that [defendant] was previously convicted of a lewd act upon a minor").  Here, we are several steps removed from the inclusion of a defendant's prior conviction.  Instead, the Indictment includes the prior conviction of an individual who is not named as a defendant in this prosecution, and, more importantly, who has *nothing* to do with *these Defendants*, the operation of Backpage, or the crimes charged.  Consequently, Paragraph 19 should be struck.

Finally, this Court should strike references to the Defendants purportedly engaging in "fooling" financial institutions or "conceal[ing]" information from them about the origins of their funds.  (*See* Indict. ¶¶ 15, 16, 32, 178, 179, 181.)  These terms are conclusory, rather than factual in nature, and should not be included because they suggest to the jury that the government has already established certain crimes charged.  *See United States v. Capener*, 2006 WL 8429828, at *9 (D. Nev. Sept. 22, 2006) (striking the phrase "it was shown that" from the indictment because that conclusory phrase implied that the government had established facts against the defendant).  Further, these irrelevant words are unduly prejudicial.  *See United States v. Harder*, 2014 WL 12783296, at *1-2 (D. Or. Mar. 17, 2014); *United States v. Poindexter*, 725 F. Supp. 13, 36 (D.C.D.C. 1989) (striking "cover up" from indictment as "inflammatory").

# CONCLUSION

For all these reasons, Defendants join in Joye Vaught's Motion to Strike Surplusage to the extent that the Court intends to send or read the indictment to the jury.  If the indictment will not be given or read to the jury, there is no need to resolve the motion at this time, because the issues raised in the motion can be resolved closer to trial through motions *in limine* and the preparation of the joint statement of the case.  Nonetheless, should this Court resolve the motion at this time, Defendants move for an order striking the irrelevant and highly prejudicial surplusage identified in the marked Indictment attached hereto as Exhibit A.

Moreover, because Defendants still have not yet received all discovery, Defendants may, upon review of the still undisclosed discovery, identify additional portions of the Indictment that should be struck.  Accordingly, Defendants seek leave to move to strike additional areas of the Indictment through motions *in limine*.

RESPECTFULLY SUBMITTED,

DATED: October 25, 2019       Paul J. Cambria, Jr.
                              Erin E. McCampbell
                              LIPSITZ GREEN SCIME CAMBRIA LLP

                              By:   /s/ Paul J. Cambria, Jr.
                                    Paul J. Cambria, Jr.
                                    Attorneys for Michael Lacey

DATED: October 25, 2019       Thomas H. Bienert, Jr.
                              Whitney Z. Bernstein
                              BIENERT KATZMAN, PLC

                              By:   /s/ Whitney Z. Bernstein
                                    Whitney Z. Bernstein
                                    Attorneys for James Larkin

| | | |
|---|---|---|
| DATED: October 25, 2019 | | Bruce Feder<br>FEDER LAW OFFICE, P.A. |
| | By: | /s/ Bruce Feder<br>Bruce Feder<br>Attorneys for Scott Spear |
| DATED: October 25, 2019 | | Gary S. Lincenberg<br>Ariel A. Neuman<br>Gopi K. Panchapakesan<br>BIRD, MARELLA, BOXER, WOLPERT, NESSIM,<br>DROOKS, LINCENBERG & RHOW, P.C. |
| | By: | /s/ Ariel A. Neuman<br>Ariel A. Neuman<br>Attorneys for John Brunst |
| DATED: October 25, 2019 | | David Eisenberg<br>DAVID EISENBERG, P.L.C. |
| | By: | /s/ David Eisenberg<br>David Eisenberg<br>Attorneys for Andrew Padilla |

On October 25, 2019, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal Of a Notice of Electronic Filing to the Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov