Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br>vs.<br><br>Michael Lacey, *et al*.,<br><br>                    Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' MOTION TO SUPPRESS**<br><br>(Oral argument requested) |

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught, by and through their undersigned attorneys, move to suppress evidence obtained from execution of a search warrant at Datto, Inc., an email provider, because the warrant is facially invalid under the Fourth Amendment. This Motion is based on the attached Memorandum of Points and Authorities, the Court's file, and any evidence or argument presented at the hearing on this matter.

Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based on this Motion.

RESPECTFULLY SUBMITTED this 23rd day of December, 2019,

DATED: December 23, 2019        Paul J. Cambria, Jr.
                                Erin E. McCampbell
                                LIPSITZ GREEN SCIME CAMBRIA LLP

                                By:   /s/ Paul J. Cambria, Jr.
                                      Paul J. Cambria, Jr.
                                      Attorneys for Michael Lacey

DATED: December 23, 2019        Thomas H. Bienert, Jr.
                                Whitney Z. Bernstein
                                BIENERT KATZMAN, PLC

                                By:   /s/ Whitney Z. Bernstein
                                      Whitney Z. Bernstein
                                      Attorneys for James Larkin

DATED: December 23, 2019        Bruce Feder
                                FEDER LAW OFFICE, P.A.

                                By:   /s/ Bruce Feder
                                      Bruce Feder
                                      Attorneys for Scott Spear

DATED: December 23, 2019        Joy Bertrand
                                JOY BERTRAND, ESQ.

                                By:   /s/ Joy Bertrand
                                      Joy Bertrand
                                      Attorneys for Joye Vaught

2

| | | |
|---|---|---|
| DATED: December 23, 2019 | David Eisenberg | |
| | DAVID EISENBERG, P.L.C. | |
| | By: | /s/ David Eisenberg |
| | | David Eisenberg |
| | | Attorneys for Andrew Padilla |

## MEMORANDUM OF POINTS AND AUTHORITIES

Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught move for an order suppressing evidence obtained from execution of a warrant authorizing the government to seize and search certain email accounts stored at a facility owned and operated by from Datto, Inc. ("Datto"), an email provider ("Datto Warrant"). The Datto Warrant is facially invalid for several reasons as set forth below.

## BACKGROUND

**I.      The government obtains and executes the Datto Warrant.**

On August 31, 2018, the government obtained the Datto Warrant, which authorized it to obtain all information associated with twenty-six Backpage-related email addresses stored at the facility owned and operated by Datto. (A true and correct copy of the Datto Warrant is attached hereto as Ex. A.)[1] The Datto Warrant ordered Datto to disclose the contents of all email associated with the accounts for the period 2004-2018. The government was then authorized to seize all information that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 371, 1952, 1956, and 1957 for the period 2004-2018, including, among other things:

- Correspondence and files regarding "Backpage.com, related companies and websites (including partner sites), their control, finances, and operations" (*id*. ¶ II.1.a);
- Correspondence and files regarding the "sale of Backpage.com and related entities" (*id*. ¶ II.1.b); and
- Bank and financial information concerning "Backpage.com or related business entities, including holding companies" (*id*. ¶ II.2.).

Once the government received the evidence, the Datto Warrant authorized a filter team to review the documents and to disseminate only non-privileged and non-protected documents to the investigation team, which then would determine which documents constituted evidence of unlawful activity. (*Id*.)

---

[1]      The Datto Warrant was issued under Arizona Docket No. 18-8364 MB.

4

The government's application for the Datto Warrant was supported by an affidavit from I.R.S. Special Agent-Computer Information Specialist Richard Robinson ("Robinson Affidavit"). (A true and correct copy of the Robinson Affidavit is attached hereto as Ex. B.) The superseding indictment, which was the operative indictment at that time (and now), was attached and incorporated by reference. Robinson noted that the superseding indictment charged Defendants with violations of 18 U.S.C. §§ 371 (Conspiracy), 1952 (Travel Act), 1956 (Money Laundering), and 1957 (International Money Laundering).

With respect to probable cause, Robinson alleged that Defendants "were knowingly involved in the facilitation of prostitution and were engaged in money laundering activities." (Ex. B ¶ IV.1.) The Robinson Affidavit quotes from cooperator Carl Ferrer and Daniel Hyer's plea agreements where they claim that the "great majority" or "majority" of advertisements posted to Backpage were for prostitution services. (*Id.* at ¶¶ IV.2, 4.) Robinson discusses aggregation, affiliation, and reciprocal link programs, but does not state how those programs tie to criminality. (*Id.* at ¶ 5.) For example, he indicates that aggregation involved Backpage employees contacting and providing free advertisements to individuals who posted ads on other websites under "erotic or adult services" categories, but does not connect that conduct to criminality.[2] (*Id.* at ¶ IV.5.a.) Robinson indicates that Backpage paid referral fees to affiliates, but does not tie this allegation to any criminality. (*Id.* at ¶ IV.5.b.) Without providing any factual information tying these otherwise lawful marketing techniques to criminality, Robinson concludes that these "strategies were specifically intended to promote and facilitate prostitution." (*Id.* at IV.¶ 5.c.)

Robinson indicated that "the top 20 or so accounts" generated the majority of the stored email volume, which is why those accounts were targeted by the Datto Warrant, but there is no factual information as to why any of those accounts were believed to be involved in criminality. (*Id.* at ¶ V.) Robinson identified a handful of companies as subsidiaries of Backpage, and one

---

[2] Advertisements for adult services or exotic services are not unlawful, but instead are protected expression. *See infra* 14-15 & n.4.

as a parent, but does not state that this list is exhaustive or that it is the complete list of Backpage "related companies" referenced in the Datto Warrant. (*Id*. at ¶ IV.3.)

Defendants had an expectation of privacy in their email, regardless of whether their email was the target of the Datto Warrant or seized due to the Defendants' communication with an email account that was the target of the Datto Warrant.

**II.     The government's disclosure of the Datto Warrant.**

The government disclosed the Datto Warrant and application to defense counsel as part of a larger disclosure on September 23, 2019, nearly thirteen months after execution of the warrant, more than six months after the discovery cut-off deadline, and less than one month before the deadline for substantive motions. Although Defendants knew that the Datto Warrant existed, they had not located it. Because defense counsel had not located it, and the substantive motion deadline was approaching, on October 11, 2019, defense counsel emailed counsel for the government, indicating that defense counsel could not locate the Datto Warrant, and asking the government to identify it by Bates Numbers or to disclose it if it had not yet been disclosed. (*See* Doc. 801-2.) Defense counsel heard nothing from the government prior to the substantive motion deadline, and as a result, requested leave to file a motion upon receipt and review of the Datto Warrant, if necessary. (*See* Doc. 778 at 8.)

In its opposition, the government indicated that it had responded to defense counsel by email on October 11, 2019, disclosing the Datto Warrant and asked this Court to find that Defendants had waived the right to challenge the Datto Warrant. (*See* Doc. 811 at 4-5.) Although the government has indicated that it emailed defense counsel, none of defense counsel received the government's email. For example, as set forth in the Affidavit of Michael Sanscrainte, Network Administrator for the undersigned's law firm, there is no record that this email was received by our email server and, therefore, it was not distributed to any inboxes (attached hereto as Ex. C). This means that the email was either rejected by the email server security service or quarantined for containing a potential threat and quarantined email are only stored for four weeks. (*See id*.) Under either scenario, the email is not delivered to the inbox of

6

the recipient. (*See id.*)  Consequently, defense counsel did not have any indication that the government had responded to their email before the substantive motion deadline.  (*See id.*)  Defendants moved for suppression of other warrants, but expressly reserved the right to move for suppression of the Datto Warrant "upon receipt and review of it." (Doc. 778 at 8.)

## ARGUMENT

**I.  Defendants did not waive the right to bring this motion.**

In their prior Motion to Suppress, Defendants expressly reserved the right to challenge the Datto Warrant "upon receipt and review of it." (Doc. 778 at 8.)  At the time Defendants filed that motion, they had been unable to locate the Datto Warrant, and had not received a response from the government to their request to identify it by Bates Numbers or to disclose it.  Although it is unfortunate that the government's email was not delivered to defense counsel, defense counsel did not ignore the government's email (because they never saw it), or intentionally fail to review the Datto Warrant.  Defendants timely challenged every warrant that they had reviewed and determined to be infirm.  Defendants would have timely filed a challenge to the Datto Warrant if they had located and reviewed it prior to the substantive motions deadline.  For all these reasons, Defendants did not waive the right to bring the instant motion and Defendants respectfully request that this Court consider this motion on its merits.

**II.  The Datto Warrant violates the probable-cause standard.**

The Fourth Amendment mandates that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  To be valid, a reviewing court must find that the warrant meets four separate requirements:  (1) it must be based on probable cause; (2) supported by a sworn affidavit; (3) particularly describe the place to be searched; and (4) particularly describe the persons or things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  A failure to satisfy even one of these requirements renders a warrant facially invalid. *See id.*  In addition to these requirements, in *Franks v. Delaware*, 438 U.S. 154 (1978), the

Supreme Court recognized that a search conducted pursuant to a warrant is invalid if the supporting affidavit contains material misstatements of fact or omissions.

Under these standards, the Datto Warrant is facially invalid. First, the Datto Warrant fails the probable-cause requirement because the Robinson Affidavit contains no factual information that would enable the issuing magistrate to make a neutral and detached probable-cause determination. Second, the Datto Warrant is insufficiently particular and overbroad. Third, Defendants are entitled to a *Franks* hearing because the Datto Warrant contains material omissions and misrepresentations.

### A. The Fourth Amendment requires that an issuing judge independently assess facts before finding probable cause to search.

For a search warrant to be valid, it must describe the place to be searched and things to be seized with sufficient particularity and "be no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990). A search warrant is supported by probable cause if the issuing judge finds that "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A search is invalid where "the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quotations and alterations omitted). When an affiant's statements are "unsupported by underlying facts," a warrant lacks probable cause. *Id.*; *accord Gates*, 462 U.S. at 239 (noting that "wholly conclusory" statements of officers are insufficient to establish probable cause); *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) (recognizing that a "conclusory allegation, without any foundational facts . . . [is] entitled to little weight"). If an affidavit fails to provide foundational facts, an issuing judge cannot fulfill his or her duty to complete an independent review of the warrant *See United States v. Leon*, 468 U.S. 897, 914 (1984) (explaining that the lack of neutral and detached review makes a reviewing judge "merely a rubber stamp for the police."); *United States v. Ventresca*, 380 U.S. 102, 108-09 (1965) (recognizing that

magistrate must be provided foundational facts "to perform his detached function and not serve merely as a rubber stamp for the police").

The basis for probable cause must be contained within the application without reference to outside information. *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1984). A grand jury's probable cause finding cannot serve as a proxy for a probable cause determination by a magistrate issuing a warrant. *See id.* at 794-95 ("Fourth Amendment requires that warrants may issue only upon a determination of probable cause by a neutral and detached magistrate.").

Although the Ninth Circuit allows a magistrate to consider an indictment, it cannot be a substitute for facts in a warrant affidavit. *Id.* at 795. That is, a magistrate's probable-cause finding must be independent and cannot simply ratify an affiant's conclusions. *See Gates*, 462 U.S. at 238; *see also Rubio*, 727 F.2d at 795 ("[W]arrant affidavit's mere recitation of the indictment is precisely that—the conclusion of another body, and a body whose function differs substantially from the magistrate's constitutional duty to assess probable cause."). If the government contends that the magistrate should consider evidence presented to the grand jury in assessing probable cause, the government must present that evidence in its warrant application. *Cf. Rubio*, 727 F.2d at 795 ("The facts upon which the magistrate bases his probable cause determination must appear within the four corners of the warrant affidavit; the warrant cannot be supported by outside information.").

**B.     The Datto Warrant was not supported by probable cause so the magistrate erred in approving them.**

The magistrate lacked a substantial basis to find probable cause because the Robinson Affidavit provided no facts supporting the crimes allegedly committed by the Defendants. Rather than outlining facts known to the affiant as is required, the affidavit summarizes and incorporates the indictment. *See Rubio*, 727 F.2d at 795 (reversing convictions because search warrant affidavit that referred to the indictment "furnished no basis whatsoever for

believing the defendants" had engaged in a pattern of racketeering); *United States v. Bailey*, 327 F. Supp. 802, 806 (N.D. Ill. 1979) (denying order to compel defendants to provide government with handwriting exemplars because government failed to establish probable cause and recognizing that "the finding of probable cause for arrest of an individual that accrues from his being indicted does not . . . become the equivalent of a finding of probable cause for a warrant to search that person's home, his car, or his business office").

In addition to improperly relying on the indictment, the Robinson Affidavit does not include any facts establishing that Defendants had the heightened scienter required to establish probable cause that they engaged in any Travel Act (or money laundering) violations. (*See* Defs.' Mot. to Dismiss, Doc. 561 at 37-48 (incorporated herein by reference and explaining why the indictment is facially insufficient because it fails to provide any allegations on the requisite scienter for the charged crimes); John Brunst's Motion to Dismiss Indictment Based on Failure to Allege Necessary Elements of the Travel Act, Doc. 746 (incorporated herein by reference and explaining why the indictment was insufficient for alleging necessary elements of the Travel Act, including specific intent)). Because the warrant application contains conclusory statements about generalized intent rather than facts establishing Defendants' knowledge and intent to engage in unlawful activity, the Datto Warrant is facially invalid. *See United States v. Weber*, 923 F.2d 1338, 1345-46 (9th Cir. 1990) (reversing conviction and ruling that suppression was warranted where affidavit in support contained only generalized conclusions about the behavior of child pornographers rather than particular evidence suggesting that the defendant was a child pornographer); *Underwood*, 725 F.3d at 1082-84 (affirming suppression where affidavit contained only expert opinion and conclusory statements that defendant trafficked ecstasy); *Cervantes*, 703 F.3d at 1139-40 (reversing denial of suppression due to affiant's failure to offer facts establishing probable cause to believe that defendant's home was a "narcotics stash location").

Moreover, Robinson's "allegations" concerning aggregation and affiliation recite *lawful* conduct. Robinson states that Backpage used two marketing techniques, aggregation and affiliation, and briefly discusses Backpage's purported efforts at those techniques. (*See* Ex. B at ¶¶ IV.5.a, b.) However, Robinson does not provide any *factual information* tying those techniques to criminality. (*See id.* at ¶ IV.5.c.) Because Robinson does not set forth any facts tying these marketing efforts to criminality or criminal intent of any kind, the court's probable cause finding was in error.

The Robinson Affidavit fails to establish probable cause to believe that the email addresses subject to the Datto Warrant contain evidence of criminality. Robinson does not provide factual information indicating that these particular email addresses were associated with individuals who engaged in criminality. Nor did he provide factual information indicating that those individuals used the email addresses to facilitate their criminal conduct. Instead, it appears that the government sought the contents of these email addresses solely because they were "the top 20 or so accounts" that generated the data stored at Datto. (*Id.* at ¶ V.) There is nothing unlawful about being associated with a high-volume email address.

Finally, the affidavits are void of any facts that establish probable cause to believe that Defendants knowingly and intentionally promoted/facilitated a "business enterprise" involving prostitution. (*See* Brunst's Mot. To Dismiss, Doc. 746 at 9-11.) Critically, the government must provide facts to the issuing magistrate indicating that the targets of the warrants knowingly and intentionally engaged in (or facilitated, promoted, etc.) "unlawful activity." 18 U.S.C. § 1952(a)(3). The plain text of the Travel Act defines "unlawful activity" as "any business enterprise involving . . . prostitution offenses." 18 U.S.C. § 1952(b). The affidavits contain no facts concerning a specific criminal "business enterprise" or that the targets of the warrants knowingly and specifically intended to facilitate or promote a particular "business enterprise." As a result, the issuing magistrate erred in authorizing the warrants.

**III.  The Datto Warrant is insufficiently particular.**

In addition to establishing probable cause, a warrant must be sufficiently particular. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). To be particular, a "warrant must clearly state what is sought." *Id*. Further, a warrant that is broader in scope than the probable cause upon which it is based is defective. *Id*. The particularity and breadth requirements protect a citizen's Fourth Amendment's privacy rights by preventing the government from conducting "general, exploratory rummaging in a person's belongings." *Weber*, 923 F.2d at 1342. The Datto Warrant violates the particularity requirement because it does not sufficiently specify the items sought and is overbroad.

The description of the items to be seized "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986); *see also United States v. Bridges*, 344 F.3d 1010, 1017 (9th Cir. 2003) ("The executing officer must be able to identify from the face of the warrant, as well as any attached or expressly incorporated documents, what it is that they are being asked to search for and seize from the targeted property."). The following search terms, limited to the period 2004-2018, fail to provide adequate specificity:

- Correspondence and files regarding "Backpage.com, *related companies and websites (including partner sites)*, their control, finances, and operations";

- Correspondence and files regarding the "sale of Backpage.com and *related entities*"; and

- Bank and financial information concerning "Backpage.com or *related business entities, including holding companies*."

(Ex. A (emphasis added).)

These descriptions gave the searching agents unfettered discretion to decide what to seize and examine in violation of the Fourth Amendment. The Datto Warrant does not define the terms Backpage "related companies," "websites," "partner sites," "related business entities," or "holding companies." Without a list of Backpage's subsidiaries, affiliates,

websites, partner sites, and related business entities, the searching agents had no information from the warrant setting forth what items should be seized under these search terms. Although the Robinson Affidavit identified a handful of companies, these search terms were not limited to those companies by either the Robinson Affidavit or the Datto Warrant.

**IV.  Defendants are entitled to a *Franks* hearing because the Robinson Affidavit underlying the Datto Warrant contains material misstatements and omissions.**

Because the Robinson Affidavit omitted significant information material to the issuing magistrate's probable-cause determination, Defendants are entitled to a hearing on the validity of the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks v. Delaware*, the Supreme Court held that a defendant is entitled to an evidentiary hearing where there is evidence that a search conducted pursuant to a warrant was based on a supporting affidavit that contains intentional or reckless material misstatements of fact or omissions. *See Franks*, 438 U.S. at 171-72.

Since *Franks*, the Ninth Circuit held that a defendant is entitled to an evidentiary hearing to challenge the veracity of an affidavit when the defendant preliminarily demonstrates that an affidavit contains "intentionally or recklessly false statements" and that without those falsities the government cannot support a probable cause finding sufficient to issue a search warrant. *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985) (quotations omitted). Clear proof of deliberate or reckless falsity is not required. *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005). Instead, to trigger a hearing, a defendant must offer evidence supporting "a finding of intent or recklessness". *Id.* Once a defendant makes that preliminary showing, the district court "must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause." *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988).

Half-truths like those in the affidavits offered in support of the Datto Warrant improperly allow a search warrant affiant to "manipulate the inferences a magistrate will draw." *Stanert*, 762 F.2d at 781; *see also Chism v. Washington State*, 661 F.3d 380, 388 (9th Cir. 2011) (recognizing that an officer acts recklessly when the affidavit does not report important factual information that was within the officer's knowledge at the time the affidavit was prepared). When an omission is essential to the finding of probable cause, recklessness may be inferred from the omission itself. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1994). A defendant is entitled to a *Franks* hearing even if the misstatements or omissions are not the affiant's fault. *See United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992); *accord Johns*, 851 F.2d at 1134 n.1.

If a defendant prevails on a *Franks* challenge, the evidence seized must be suppressed without application of the "good faith" rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *accord United States v. DeLeon*, 979 F.2d 761, 763 (9th Cir. 1992).

Here, Defendants are entitled to a *Franks* hearing challenging the veracity of the Robinson Affidavit that underlies the Datto Warrant because the affidavit contains material misrepresentations and omissions. The most serious omission is that the affidavit ignores cases holding that the First Amendment protects online classified advertising sites generally, and Backpage in particular. This omission is critical because **all** allegations of unlawful conduct hinge on claims that advertisements posted to Backpage violated state prostitution laws. If publishing third-party advertisements for purported illegal activities is not unlawful (without more), there is no predicate for the affiant's claims that publishing third-party adult ads violated the Travel Act or that resulting financial transactions violated federal money laundering laws.

At the time the Robinson Affidavit was written, the government knew that courts in California had rejected the specific theory on which all of the allegations in the affidavit is based; that is, that publishing classified ads for adult services violates state law prohibiting

prostitution.[3]  *See People v. Ferrer*, 2016 WL 7237305, at *3 (Sup. Ct. Sacramento Cnty. Dec. 9, 2016) ("*Ferrer I*") (recognizing that "the relevant question in this case is whether, and to what extent, Defendants' activities entitle them to protection *of their First Amendment rights* through the immunity provision of the CDA" (emphasis added)).

The affidavit disingenuously claim that Defendants' mere publishing of the ads establish probable cause that Backpage facilitated prostitution in violation of state law. (*See* Ex. B.)  However, the government knows that publishing and editing third-party ads is protected under the First Amendment.  Indeed, moderation falls under "traditional editorial functions," and constitutes protected speech, even when terms or images are deleted and the remaining portion of an advertisement is published.  *See Ferrer I*, 2016 WL 7237305, at *3.

The search warrant affidavits also intentionally fail to disclose that numerous courts have rejected claims that adult advertisements are synonymous with prostitution or trafficking.  *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015) ("[N]ot all advertisements for sex are advertisements for illegal sex.").[4]  The government concealed this

---

[3]    Indeed, the government has stated that it "partner[ed]" with the California Attorney General's Office in their efforts to shut down Backpage.  *See* April 9, 2018 DOJ Press Release, available at https://www.justice.gov/opa/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution-ads (last visited on Oct. 9, 2019).

[4]    *Accord Doe v. Backpage.com LLC*, 104 F Supp. 3d 149, 156-57 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016) ("The existence of an escorts section in a classified ad service, whatever its social merits, is not illegal."); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 1262, 1282 (W.D. Wash. 2012) (escort ads have long been permitted and escort services are licensed and regulated in many states); *Backpage. com, LLC v.Cooper*, 939 F. Supp. 805, 816, 833-34 (D. Tenn. 2013) (ads on Backpage.com are protected speech under the First Amendment); *Backpage.com, LLC v. Hoffman,* 2013 WL 4502097, at *9-11 (D.N.J. 2013) (rejecting argument that escort ads on the website are unprotected speech); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011); *see also Dart v. Craigslist,* Inc., 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) ("We disagree . . . that the 'adult services' section is a special case.  The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content."); *Cohen v. Bd. of Supervisors*, 707 P.2d 840, 852 (Cal. 1985) ("An escort service may very well involve lawful activities relating to sex." (internal quotations omitted)).

case law, rather than disclose it to the issuing magistrate, and, at the same time, improperly equated the terms "erotic" and "adult services" with prostitution. (*See* Ex. B at ¶ IV.5.a.) The concealed cases should have been weighed by the judge considering probable cause for the Datto Warrant, and the omission of them renders the Datto Warrant materially misleading. Indeed, the government knew and should have advised the issuing magistrate that, when the government seeks to hold a party accountable for third-party speech, the First Amendment constrains the government and imposes heightened scienter requirements separate from those in any applicable statutes.

Similarly, the Robinson Affidavit alleges that Defendants, Ferrer, and former Backpage employees knowingly facilitated prostitution. (*See* Ex. B.) This assertion ignores the long line of cases requiring a heightened proof of scienter when the government seeks to hold a publisher liable for publishing the speech of a third party as well as cases indicating that a heightened proof of scienter is required for Travel Act violations. (*See* Defs.' Mot. to Dismiss, Doc. 561; Brunst's Mot. To Dismiss, Doc. 746 at 9-11.) These omissions, too, are materially misleading.

Due to the government's material misstatements and omissions in materials supporting its request for the Datto Warrant, Defendants are entitled to a *Franks* hearing. This hearing will establish the veracity of the affidavit underlying the Datto Warrant and show that the government's material omissions would have undermined the magistrate's probable-cause finding. *See United States v. Perkins*, 583 F. App'x 796, 797 (9th Cir. 2014) (vacating conviction and remanding for *Franks* hearing where affidavit to search home for child pornography omitted information that Canadian officials had indicated that the images "had no obvious sexual purpose" and failed to provide that magistrate with the images).

/

/

16

## CONCLUSION

For all these reasons, this Court should: (1) suppress the evidence obtained from execution of the Datto Warrant and any evidence derived from them; and, to the extent required, (2) hold a *Franks* hearing for Defendants to demonstrate that the Robinson Affidavit in support of the Datto Warrant contains material misstatements and omissions in violation of the Fourth Amendment.

RESPECTFULLY SUBMITTED this 23rd day of December, 2019,

/s/   *Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin E. McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

On December 23, 2019, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal Of a Notice of Electronic Filing to the Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov