# EXHIBIT C

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

Present: The Honorable    R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) Order re: Claimants' Motion to Vacate or Modify Seizure Warrants [DE 6]**

## I. INTRODUCTION

On August 1, 2018, Claimants James Larkin, Michael Lacey, Scott Spear, and John Brunst (collectively, "Claimants," or "Defendants") filed the instant action challenging the Government's warrants for civil forfeiture of numerous assets in connection with the ongoing criminal matter *United States of America v. Michael Lacey, et al.*, No. 18-CR-00422-PHX-SPL (D. Ariz.) ("the Arizona Proceeding"). The indictment in that case includes charges for money laundering and facilitation of prostitution arising from Claimants' relationship to the third-party advertising website backpage.com ("Backpage"). The seized assets in this case are proceeds of the allegedly illegal activities associated with Backpage and other funds commingled with those proceeds.

On October 23, 2018, this Court ordered a stay of civil forfeiture proceedings pending resolution of the criminal case in the Arizona District Court (ECF No. 85). On September 23, 2019, the Ninth Circuit vacated this Court's Stay Order and remanded for further proceedings (ECF No. 99). On October 4, 2019, this Court ordered the case reopened and directed Claimants to provide additional briefing to explain the legal basis for relief under which they brought their Motion, as well as the appropriate legal standard for the Court to apply in deciding it (ECF No. 101 and 102.) On October 11, 2019, Claimants filed the requested additional briefing (ECF No. 106), and on October 28, the Government filed its response (ECF No. 114).

Presently before the Court is Claimants' Motion to Vacate or Modify Seizure Warrants (ECF No. 6.) For the following reasons, the Court **DENIES** Claimant's Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | | Date | December 20, 2019 |
|---|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | | |

## II. FACTUAL BACKGROUND

On March 28, 2018, a grand jury in the District of Arizona returned an indictment charging Lacey and the other Defendants in the Arizona proceeding with conspiring to facilitate prostitution through their operation of the third-party advertising website Backpage.com. Thereafter, four Magistrate Judges in the Central District of California issued seizure warrants for civil forfeiture of certain assets related to that indictment. The magistrates' findings of probable cause for these warrants were based in part on affidavits[1] from Postal Inspector Lyndon Versoza ("Versoza").

On July 25, 2018, a grand jury returned a superseding indictment ("SI"), which charged Claimants with conspiracy to facilitate prostitution, facilitation of prostitution, conspiracy to commit money laundering, concealment of money laundering, international promotional money laundering, and transactional money laundering. The SI also included criminal forfeiture allegations that largely mirror the civil forfeiture actions in this case, under which the Government seeks forfeiture of specific assets derived from or commingled with proceeds from Backpage in which the Claimants hold interest.

## III. JUDICIAL STANDARD

Under Federal Rule of Criminal Procedure ("Rule") 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." To prevail on a motion for return of property, the moving party must "demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the Government's need for the property as evidence has ended." *United States v. Crow*, 651 Fed. Appx. 686, 688–89 (9th Cir. 2016) (citing *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987)).

Claimants assert that several different Constitutional violations have occurred or are occurring. Where applicable, the Court addresses each one according to the relevant legal standard.

## IV. DISCUSSION

Claimants make five principal arguments challenging the validity of the Government's warrants: (1) the seizures are void because the First and Fourth Amendments bar pre-conviction seizures of publishing assets, (2) in the alternative, if such seizures are allowed, the First and Fourth Amendments require a hearing in which the Government must meet a higher standard of proof than probable cause,

---

[1] This case involves numerous distinct but highly similar affidavits. For simplicity, all references to the "Versoza Affidavit" are to the affidavit attached as Exhibit 1 to Defendant's Motion (ECF No. 6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | | Date | December 20, 2019 |
|---|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | | |

(3) even apart from any First Amendment concerns, the warrants are invalid because they were obtained through knowing or recklessly false statements and material omissions, (5) Claimants are being denied their Sixth Amendment right to counsel due to lack of funds, and (6) the seizures are over-inclusive because the Government failed to trace seized assets to specific instances of alleged criminal activity.

The Court addresses Claimants' arguments in order.

### A. The Seized Property Is Not Protected Under the First Amendment

Claimants argue that "the First Amendment prohibits pretrial *ex parte* seizures of publishing assets and proceeds based on nothing more than a showing of probable cause that the assets are linked to criminal activity." (Claimant's Legal Authority in Support of Opposition, "Claimant's Auth." 2:13–15.) They further assert that "the Government always has the burden to prove speech is unprotected by the First Amedment *before* it may impose burdens, even financial ones." *Id.* at 15–17. As the Court finds that the assets in question do not merit special protection under the First Amendment, the Court disagrees.

As a threshold issue, commercial speech related to illegal activity is not protected under the First Amendment. "The First Amendment's concern for commercial speech is based on the informational function of advertising. Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563–64 (1980) (internal citations omitted). However, as Claimants point out, "[n]umerous courts have established that at least some of Backpage's adult content is legal in the United States." (Motion to Vacate or Modify Seizure Warrants, "Mtn. to Vacate," 40:7–10, ECF No. 6); *Backpage.com LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015). As some of Backpage's seized funds may have originated from legitimate activity, the Court will address whether those funds are entitled to heightened protection under the First Amendment.

Claimants base their argument on a line of cases that have prohibited the pre-trial seizure of expressive content and publishing assets as an impermissible form of prior restraint. As described below, Claimants attempt to stretch these cases too far.

Claimants first cite to the Supreme Court's ruling in the obscenity case *Fort Wayne Books, Inc. v. Indiana,* in which the Court held that "[w]hile a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing." *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989). The Court further explained that "[i]t is the risk of prior restraint which is the underlying basis for the special Fourth Amendment

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

protections accorded searches for and seizures of First Amendment materials that motivates this rule." *Id.* (internal citation omitted). The *Fort Wayne* Court intended this heightened standard to apply to a seizure which "interrupt[ed] the flow of expressive materials." *Id.* at 67.

Claimants seek to extend the above principle of heightened protection from expressive content to publishing proceeds via *American Library Association v. Thornburgh*, in which the District Court for the District of Columbia applied *Fort Wayne Books* to prohibit the *ex parte* seizure of the non-expressive material required to maintain the operation of a publishing business. *Am. Library Ass'n v. Thornburgh*, 713 F. Supp. 469, 484 (D.D.C. 1989), *vacated sub nom. Am. Library Ass'n v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992). As in *Fort Wayne Books*, however, the Court's principal concern in *American Library* remained avoiding the suppression of expressive content:

> Because the Court in the instant case concludes that the seizure of non-expressive assets—such as printing presses, bank accounts, etc.—of a business engaged in distributing expressive material may determine whether the business is able to continue functioning or not, the Court concludes that pre-trial seizure of non-expressive material *ex parte* from a business engaged in distributing expressive material also is unconstitutional.

*Id* at n. 19. As the two cases above make clear, the fundamental concern when determining whether First Amendment considerations prohibit an *ex parte* seizure based on probable cause is whether the flow of expressive materials will be interrupted, or, put another way, whether arguably protected speech will in fact be stifled.

Here, Defendants make no argument that the Government's seizure will "interrupt the flow of expressive materials." Backpage had already ceased operation at the time these seizures took place. The funds in question were not themselves expressive material and could not have been used to continue the dissemination thereof. Furthermore, the large majority of the seizure warrants targeted funds that were no longer related to the operation of Backpage in any way, including some invested in real property. The Court rejects Claimants' theory that any profits extracted from a publishing business acquire a heightened status under the First Amendment regardless of where or how they are subsequently used.

Claimants' citation to *Simon & Schuster v. Members of the N.Y. State Crime Board* is likewise inapposite here. In *Simon* the Supreme Court invalidated New York's "Son of Sam" law, which required any "person convicted of a crime" to place any income derived from works he authored "on any subject, provided that they contained the author's thoughts and recollections about his crime, however tangentially or incidentally" into an escrow account overseen by the New York State Crime Victims Board. The proceeds were then used to compensate victims who submitted claims. *Simon & Schuster,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

502 U.S. 105, 121 (1991). The Supreme Court invalidated the statute on the ground that it was substantially overbroad, particularly in light of the fact that "person convicted of a crime" was defined to include "any person who has voluntarily and intelligently admitted the commission of a crime for which such person is not prosecuted." *Id.* at 105. The Court also held, however, that the statute was an impermissible content-based regulation under the long-established principle that "[a] statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech." *Id.* at 115.

That is unlike this case. The "Son of Sam" law was invalidated because it specifically extended the mechanism of civil forfeiture to target legal and undeniably protected First Amendment activity, such as publishing a memoir, on the basis that the content of the work *discussed* a crime. There was never a suggestion that the work or its publication was itself a criminal act.

Here, the law seized proceeds that were allegedly directly implicated in criminal activity. As the Government points out, these funds have been seized under the ordinary legal mechanism for civil forfeiture, which the Supreme Court expressly left unchanged in *Simon & Schuster*, not under a statutory scheme that targets speech due to its content. Furthermore, the funds in this case, which were seized upon the issuance of a warrant, are not being placed into an escrow account to pay victims of human trafficking. They are frozen while the Claimants have the full opportunity to dispute their seizure. The exercise of the ordinary law of civil forfeiture in this case places no burden on any party's right to protected First Amendment expression.

As the Court finds that none of Claimants' arguments support a heightened protection for the seized funds under the First Amendment, the Court denies the Motion insofar as it rests on this theory.

### B. First Amendment Concerns Do Not Require a Hearing

Claimants next argue that if the Court does not invalidate the seizure warrants outright, then it should hold a hearing to determine the validity of the seizures under a heightened standard required by the First and Fourth Amendments. Claimants cite to *Southeastern Promotions, Ltd. v. Conrad* for the proposition that "[w]here materials or proceeds are even arguably protected by the First Amendment, the Government is required to employ procedural safeguard designed to obviate the dangers of a censorship system." (Claimants' Legal Authority 5:26–6:2) *citing Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975) (internal quotations omitted). As the Court finds that the funds at issue do not merit any special First Amendment protection, it disagrees that a hearing on the issue is warranted.

As above, Claimants' seek to support their argument with citations to cases directed toward avoiding the dangers of prior-restraint. *Southeastern Promotions* is a case in which members of a local

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

municipal board denied a concert promoter permission to use a civic auditorium to perform the musical *Hair*. *Stanford v. Texas*, which describes the "constitutional impossibility" of leaving the protection of First Amendment freedoms to the "whim of the officers charged with executing the warrant," is a case about the "scrupulous exactitude" with which warrants must describe the things to be seized "when the things to be seized are books, and the basis for their seizure is the ideas they contain." *Stanford v. State of Tex.*, 379 U.S. 476, 485 (1965).

Plaintiffs fail to draw any link between the funds at issue and potential expressive activity, and they make no argument that the Government's seizure of these funds could chill such activity. As such, they are not entitled to special protection under the First Amendment.

### C. **Defendants Have Not Made the Substantial Preliminary Showing Necessary to Justify a *Franks* Hearing**

Claimants contend that even apart from any First Amendment issues, the seizure warrants were defective and should be vacated as a result. Specifically, Claimants argue that (1) the Versoza affidavits failed to include controlling caselaw, and (2) they misrepresented the contents of internal Backpage communications. On those two bases, Claimants assert that they have made the "substantial preliminary showing" of Government misconduct to require an evidentiary hearing under the rule in *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

"A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). As the Court finds that the Versoza affidavits do not contain false statements or misleading omissions that would impact a probable cause determination, the Court finds that no hearing is required.

As a preliminary matter, the Court notes that the Grand Jury in the Arizona Proceeding has issued a superseding indictment that includes criminal forfeiture allegations closely corresponding to the civil forfeiture allegations in this case. *See U.S. v. Lacey,* No. 18-CR-00422-PHX-SPL (D. Ariz.) (ECF No. 230 at pp. 63–92.) The charges in the superseding indictment are a strong indication that probable cause supports the seizures at issue here: "[a]n indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged." *Kaley v. United States*, 571 U.S. 320, 328 (2014). However, as this is a separate civil proceeding based on its own warrants, the Court will address Claimants' arguments for a *Franks* hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

1. <u>Caselaw</u>

Claimants argue that Versoza's "most serious omission was his failure to mention any of the cases finding the First Amendment protects online classified advertising sites generally, and Backpage.com in particular." (Mtn. to Vacate 22:2–5.) Claimants cite to an extensive list of cases in which Backpage and similar services avoided liability, but they are incorrect that these prior decisions contradict the legal basis for the affidavits at issue.

A number of Claimant's cases were decided in whole or in part on the basis of the Communications Decency Act ("CDA"), 47 U.S. Code § 230(c)(1), which provides immunity from civil liability for providers and users of an "interactive computer service" who publish information provided by third-parties. Claimants cited cases include: *People v. Ferrer ("Ferrer I")*, No. 16FE019224 (Cal. Super. Ct. Dec. 9, 2016); *People v. Ferrer ("Ferrer II")*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011); *Backpage.com LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009); and *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016).

The Government dismisses these cases as inapposite because, as the Arizona District Court noted in the corresponding criminal case, "the CDA does not apply to federal criminal prosecutions." 47 USC 230(e)(1); (Gov. Combined Response at 10:14–17 *citing Lacey*, No. 18-CR-00422-PHX-SPL (D. Ariz.)). However, the Government provides no legal authority for its conclusion that civil forfeiture actions are likewise outside of the CDA's grant of immunity simply because they are related to an ongoing federal prosecution. The fact that a civil enforcement action is "related" to a criminal statute does not necessarily place it beyond the scope of the CDA's application. *See Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016); *Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019). Moreover, courts have consistently held in other contexts that civil forfeiture actions are not criminal in nature. *See United States v. Ursery*, 518 U.S. 267, 292 (1996) (finding civil forfeitures under 18 U.S.C. § 981(a)(1)(A) to be "neither punishment nor criminal for purposes of the Double Jeopardy Clause") (internal quotations omitted).

The Court need not undertake that determination here, however, as the conduct Versoza describes in the affidavits would fall outside the scope of the CDA's immunity even if such immunity applied, and Claimant's cited cases are therefore distinguishable.

The CDA does not provide immunity for participation in illegal activity. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008); *see also United States v. Ulbricht*, 31 F. Supp. 3d 540, 568 (S.D.N.Y. 2014). In *Roommates.com*, the Ninth Circuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | | Date | December 20, 2019 |
|---|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | | |

articulated a threshold for when the operator of an interactive computer service performing editorial functions, such as Backpage, crosses the line into performing the dual role of a non-immune "information content provider:"

> A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality. **However, a website operator who edits in a manner that contributes to the alleged illegality. . . is directly involved in the alleged illegality and thus not immune.**

*Roommates*, 521 F.3d at 1169 (emphasis added). This is what the affidavits claim took place. The affidavits do not suggest that Backpage merely allowed third-parties to post ads for prostitution while it stood back and collected the profits, or even that it actively structured its website in a way that incentivized such posts. Nor do they assert that Backpage deleted only some ads for prostitution while failing to delete others. They also do not claim that Backpage operated an automated filter which excluded certain terms but could be easily circumvented. These theories of liability might be blocked by the CDA's blanket of immunity. *See, e.g, Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016).

The affidavit asserts, rather, that Backpage employees, with Claimants' knowledge and as a matter of policy, actively worked to facilitate prostitution by concealing it from law enforcement through Backpage's "moderation" policy. As an example, the affidavit asserts that Ferrer received an email from law enforcement expressing concern about ads containing the term "amber alert." (Versoza Aff. ¶ 30(g)). Ferrer acknowledged that the term might be "some kind of bizarre new code word for an under aged person." *Id*. He then instructed Backpage employees to remove the term "amber alert" from subsequent ads, but he did not instruct them to block the ads themselves or to report them. *Id*. In so doing, Backpage is alleged to have willfully assisted in concealing child prostitution from law enforcement. Had Backpage done nothing, law enforcement could have monitored its site for ads using the term "amber alert." Had it deleted ads containing the term, it would have denied sex traffickers a forum for their operations. What it is accused of doing instead, however, is editing the ads with the purpose of concealing the illegal activity. This activity is illegal in itself, and therefore it is outside the CDA's grant of immunity. Claimants, through their control of Backpage, are accused of being "directly involved in the alleged illegality, and thus is not immune." *Roommates*, 521 F.3d at 1169.

The affidavit likewise asserts that this was done not in isolated instances, but as a matter of policy. (Versoza Aff. at ¶ 30(f)) ("On October 27, 2010, a . . . Backpage manager sent an internal email stating that Backpage was "editing 70 to 80%" of the ads it received from customers."); (*Id*. at ¶ 30(h)) ("On August 31, 2011, Backpage managers exchanged emails in which they discussed a list of 100 'solid sex

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

for money terms.'"). Versoza describes the end result as follows: "Based on my review of several thousand Backpage ads and internal Backpage documents and correspondence, I believe that Backpage's policy of 'moderation' only caused ads explicitly promoting sex trafficking to become more coded and implicit in the ads' purpose." (*Id.* at ¶ 31.)

The question here is not whether the Government will ultimately prevail in its civil forfeiture actions. The issue is only whether the Versoza affidavit contained knowing or recklessly false or misleading omissions because it did not cite to Claimant's specified case law. The Government correctly notes that Claimants have presented no cases in which a warrant was invalidated for this reason. (Gov. Resp. 11:1-7.) Furthermore, the affidavits in this case are based on a different theory from those in Claimant's cited cases, which is in turn premised on evidence that was unavailable when those cases were decided. Claimant's cases may be relevant as legal background, but failure to include additional background in a warrant affidavit is not recklessly misleading.

   2. *Emails*

As a secondary source of misconduct, Claimants argue that Versoza supported the assertions in his affidavit "by cherry-picking isolated phrases from certain emails, while omitting adjacent text that changed the import of the quoted material, sometimes entirely reversing their meaning." (Mtn. to Vacate 26:16–18.) The Court disagrees. Claimants identify quotations in four of the eight internal Backpage emails cited in paragraph 30 of the affidavit that they assert were taken out of context in a way that misrepresented their meaning. The Court will not analyze each of the four emails here for the simple reason that even if they were found to be wholly misleading (which they are not), the other emails (not to mention the other evidence in the affidavit) would still contain adequate evidence to support a finding of probable cause without them. Furthermore, while Claimants are not incorrect that the Versoza affidavits include only the excerpts from certain emails that best supported its theory, the Court does not find any instance where the inclusion of the additional content would have directly contradicted the message of what was excerpted.

For instance, paragraph 30(d) of the Versoza affidavit contains only the bold text from the below email:

> **I'd still like to avoid Deleting ads when possible**, but if an ad makes a clear reference to sex for money or an image displays a sex act,, [sic] don't hesitate deleting it. These are not the types of ads we want on our site at all.
>
> **In the case of lesser violations, editing should be sufficient**. We're still allowing **phrases with nuance** but if something strikes you as crude or obvious, remove the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

phrase. We're still allowing HBO type nudity but if an image makes you think twice, remove the image. There is zero tolerance for closeups of exposed genitalia.

Claimants are correct in that the Versoza affidavit included the text about what Backpage wanted to retain while leaving out the text about what it did not. However, the text that was omitted remains consistent with the affidavit's overall assertion: that Backpage wanted to get rid of "clear reference[s]" to "sex for money" and "closeups of exposed genetalia," but it wanted to edit rather than delete the ads where possible, and to retain prostitution advertisements that were "nuanced." Notably, the non-included text states that "if something strikes you as crude or obvious, remove the *phrase*." (emphasis added). This supports the Government's assertion that Backpage sought to edit even posts that were "obvious" ads for prostitution where possible to the point that they no longer were so, while knowingly retaining the ad.

For the above reasons, the Court finds that defendants have failed to make the "substantial preliminary showing" that the affidavit contains intentional or recklessly false statements, and that it would not support a finding of probable cause without those statements. The Court therefore declines to order a *Franks* hearing.

### D. **Defendants Have Not Made a Prima Facie Showing that Their Sixth Amendment Right to Counsel is Threatened by Lack of Funds**

Defendants next argue that the pre-trial restraint of their assets is depriving them of their right to counsel of their choice as guaranteed under the Supreme Court's holding in *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016). As Defendants have made no showing in this motion that they lack other funds to pay counsel, the Court disagrees.

"The Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016). The Supreme Court has held that the pre-trial seizure of untainted assets can violate a defendant's Sixth Amendment right to counsel if lack of funds prevents the defendant from hiring the attorney of their choice. *Id.* at 1090. If a Defendant makes a prima facie showing that their Sixth Amendment rights are implicated, the Court must hold a hearing to determine whether release of funds is necessary. *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993). Such a hearing is not automatic, however, and will be held only upon a properly supported motion by a Defendant. "Due process does not automatically require a hearing and a defendant may not simply ask for one." *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

The Court must hold a hearing on whether release of funds is necessary to pay for counsel if "the moving papers filed, including affidavits, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Unimex*, 991 F.2d at 551. Although the Ninth Circuit has not spoken directly to the issue, numerous other circuits have required at least some showing that the Defendant lacks other funds to pay counsel. *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("[a]s a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel[.]"); *United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013) ("a defendant seeking a . . . hearing must demonstrate, beyond the bare recitation of the claim, that he or she has insufficient alternative assets to fund counsel of choice.")

Here, Claimants have made no attempt at such a showing. Their motion makes no reference to their present availability of funds, and the Court cannot find anything in the hundreds of pages of exhibits that they have submitted from which it can draw any inference on the subject. As such, the Court finds that Defendants have failed to make the necessary prima facie showing to justify a hearing on release of funds to pay for counsel.

### E. Claimants' Motion for Return of Property Under Rule 41(g) Is Foreclosed by the Present Forfeiture Action

Finally, Claimants argue that "if the Court does not vacate the seizures in their entirety . . . it should nonetheless vacate them to the extent the Government has failed to trace the proceeds it seized to specific alleged criminal acts." (Claimants' Auth. 9:18–20). Specifically, Claimants argue that the Government has not adequately connected the seizures with specific illegal acts, and they oppose the Government's decision to seize the entire balances of accounts in which Backpage funds had been commingled with non-Backpage funds on the theory that the "untainted funds were purportedly used to 'facilitate' the laundering of Backpage-related funds." *Id.* at 10:3–5. Claimants therefore request a hearing in which the Government will bear the burden of tracing the seized funds to illegal activity. *Id.* at 18–23. As the Court finds that such a hearing is foreclosed by the ongoing civil forfeiture proceedings, Claimants' request for an additional preliminary tracing hearing is denied.

Despite the opportunity for additional briefing, Claimants have not identified what the legal mechanism for this requested relief is, nor have they suggested what legal standard the Court should apply. The Court therefore treats this aspect of the present Motion as a motion for the return of property under Rule 41(g).

General challenges to the seizure warrants are foreclosed by the ongoing civil forfeiture action, which provides Claimants the appropriate avenue through which to pursue the return of their property.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:18-cv-06742-RGK-PJW | Date | December 20, 2019 |
|---|---|---|---|
| Title | *In the Matter of Seizure of: Any and all funds held in Republic Bank of Arizona Accounts* | | |

*See United States v. Fitzen*, 80 F.3d 387, 389 (9th Cir. 1996) ("[T]he federal Government may defeat a Rule 41(e)[2] motion by demonstrating that the property is subject to federal forfeiture."); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir.1991) ("[A] Rule 41(g) motion is properly denied if . . . the property is contraband or subject to forfeiture[.]").

The Court agrees that further proceedings are necessary, but they are available through continuation of this case. In this action, Claimants will have the opportunity to present evidence, identify with specificity the funds which they assert are improperly seized, and make a full argument for their return. The Court will not at this point, however, simply "vacate" the seizure warrants to the extent that Claimants argue they are unjustified. The Court therefore denies Claimant's Motion insofar as it requests relief that would be properly brought under Rule 41(g).

The Court notes that its holding in this order does not extend to Claimant Lacey's separate Motion for Return of Untainted Funds (ECF No. 22), which it will address separately.

### V.   CONCLUSION

For the foregoing reasons, Claimants' Motion is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer _____

---

[2] A previous version of Rule 41 included "Motion to Return Property" under subsection 41(e).