Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909 *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166 *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey et al.,<br><br>　　　　　Defendants. | Case No. 2:18-cr-00422-SMB<br><br>**REPLY IN FURTHER SUPPORT OF MOTION TO CONTINUE TRIAL (Doc. 862)** |

Gary S. Lincenberg (CA Bar No. 123058 *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594 *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856 *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

Defendants submit the instant reply in further support of their Motion to Continue ("Motion") (Doc. 862). In the Motion, Defendants sought to continue the trial date from May 5, 2020 to October 1 or 6, 2020 based on the government's untimely, continuous, and voluminous discovery productions, including a production of 355,000 pages of new material on December 13 and 17, 2019, Defendants' inability to access and search the server data, and the government's recent overhaul to its witness list. This continuance is needed as a matter of fundamental fairness and to enable defense counsel to effectively prepare for trial. Nothing in the government's Opposition (Doc. 880) refutes the Defendants' showing that a relatively modest continuance is needed to ensure that Defendants are able to effectively prepare for trial and that the trial is fair, as mandated by the Fifth and Sixth Amendments. Moreover, **after Defendants filed their Motion, the government served Defendants with two new disclosures consisting of almost 10,000 pages of new and critical discovery,** and dramatically altered its previous exhibit list. Additionally, the unexpected, short-term unavailability of one of the defense counsel independently justifies a continuance.

## BACKGROUND

**I.     The government's disclosures are ongoing and voluminous.**

In this complex and novel case, the government told the Court and defense counsel that most of its disclosures would be completed in the summer of 2018 and its disclosures would conclude by December 2, 2018, thirteen months before the original trial date set by the Court. (*See* Doc. 131.) The early disclosures were meant to enable defense counsel to review the government's voluminous discovery and effectively prepare a defense. Although the original trial date was continued to May 5, 2020 after the appointment of new counsel (the only previous continuance), the government's discovery cut-off date was not altered. (*See* Doc. 664.) The government did not, however, conclude its disclosures by December 2, 2018; rather its disclosures have continued apace, with no end in sight. The government's untimely disclosures – including recent disclosures of more than 355,000 pages and, even after the Motion was filed, another almost 10,000 pages –not only violate the discovery cut-off, but also send defense counsel scrambling to review the voluminous new material. The current trial

date is less than three months away, and the government has recently dumped more discovery on the defense than is produced in total in many complex cases.

For example, on **December 13, 2019**, the government disclosed **355,000 pages** of new discovery.[1]  As explained in the Motion, conducting the first level review of this data at the industry standard pace will involve significant time, and that does not even allow for substantive analysis and related investigations.  Defendants' review of this data is ongoing and nowhere near completion.  Then, after the Motion was filed, on **January 29, 2020**, the government disclosed approximately **1,606 pages** of new material related to the government's witnesses and FBI reports of investigation – crucial discovery for Defendants to substantively review and investigate.  Then, again, on **February 10, 2020**, the government served its fourteenth disclosure on Defendants—and seven of the fourteen were made after the discovery deadline.  Defendants have had no time to assess the substance of this disclosure prior to the filing of this reply, other than to note that it contains **7,566 new pages related to banking issues**.  Counsel needs sufficient time to effectively review and analyze this critical discovery and to conduct the necessary, corresponding investigations.  These last-minute disclosures, alone, provide sufficient Fifth and Sixth Amendment bases to continue the trial date, and there is no reason to believe that these are the government's final disclosures.  Moreover, it is certain that counsel will be unable to review, analyze, and conduct the necessary corresponding investigation of this data in time to effectively meet the February 28, 2020 deadline for motions in limine, to effectively prepare Defendants' final witness and exhibit lists, or to meet other deadlines set by the Court.

**II.    Defendants remain unable to access the server data.**

More fundamentally, the prosecution of Defendants for their involvement with the

---

[1] The government claims the 355,000 pages were a response to Mr. Feder's request for privileged documents withheld by the government "taint team" (Doc. 880, Ex. B).  The government does not fairly characterize Mr. Feder's request; the 355,000 pages are not "privileged documents not disclosed to the prosecution team" (Opp'n at 6); and the production did not respond to Mr. Feder's requests.  The vast majority of the documents plainly are unprivileged, intermixed with a few privileged.

Backpage website is scheduled to begin in less than three months and Defendants, through no fault of their own, still do not have the ability to search, review, or analyze data from the website's servers. Although the government had possession of the Backpage servers in the summer of 2018, the government *commenced* its production of hard drives containing forensic images of, or data from, the servers in March 2019—*three months after the discovery cut-off*.[2] Defendants and their counsel (including counsel's IT staff) were unable to access the data and engaged a forensic expert to assist them. As this Court knows, the expert Defendants retained and relied upon was unable to access the data, the parties were unable to reach an agreement on how to access the data, and Defendants filed their Motion to Compel. Over several months, the Court conducted hearings. On January 7, 2020, this Court issued an order finding, among other things, that, if Defendants retained an expert skilled in SQL and ZFS, they would be able to access the data. (*See* Doc. 839.) Defendants promptly undertook efforts to engage such an expert and have transmitted the key disks produced by the government to that expert. However, even with the benefit of the information the Defendants learned about accessing the data for the first time during the hearings, Defendants' new expert has not yet been able to effectively access the ad data and ad images and, at this time, defense counsel do not have an estimate of when they will be able to commence searching the database for information needed to defend the case. Defense counsel may have been in possession of hard disks or server images, but, with less than three months to the start of the trial, they do not yet have the ability to search the data, severely impairing their ability to prepare the defense.[3]

---

[2] The government produced other server images months later, in the summer of 2019, and has yet to produce data from other servers, claiming they are not relevant, such as data evidencing Backpage's extensive, voluntary cooperation with law enforcement (cooperation going far beyond any obligations imposed by law), which unquestionably are relevant.

[3] Separately, three hard drives the government provided were defective. Despite acknowledging the disks were defective on November 19, 2019, the government did not provide replacements until January 27, 2020—over three months later. The government claims its delay in providing replacements should be ignored, because the data could be found on other drives (*see* Opp'n at 5), but it did not say that at the time and, in any event, Defendants have the right to review and assess that evidence, especially given the government's previous representations that it was *not* producing redundant data. At this point, it is unclear what the

In sum, the trial is scheduled to begin in less than three months, and Defendants will not be able to access, review, and analyze the government's recent disclosures in time to effectively prepare for the defense, identify exhibits, and investigate witnesses. Separately, Defendants are working towards obtaining the ability to search the database, but they cannot yet access, search, review, or analyze the ad data or ad images on the servers. For many of the charged ads, they don't have copies of the ads originating from Backpage itself—but only purported copies from the Internet Archive or cell phone screen shots, with more than ten purported ads being from unknown origins. For many of the charged ads, they have no information about who posted the ads or the persons to whom the ads related. Defendants believe the database will contain significant exculpatory evidence, vital to the defense, but they will not have access to that information before the February 28, 2020 deadlines for motions in limine and Defendants' final witness and exhibit lists, and other deadlines set by the Court.

### III.  The government's revisions to its witness and exhibit lists are extensive.

As the government continues to organize its case, it extensively modified its witness and exhibit lists, and modified the latter such that defense counsel have not yet determined whether the 1,000+ exhibits on the list are the same as on the prior list or are different.

First, and as discussed in the Motion, on January 27, 2020, the government added *twenty-one* new witnesses to its list. That is more witnesses than are called at most criminal trials. Now counsel must – in the midst of all other trial preparations – review all discovery related to these new witnesses, conduct relevant investigations, and modify/adjust the defense presentation accordingly. Defendants certainly will be unable to undertake these efforts prior to the February 28, 2020 deadlines for motions in limine and the Defendants' final exhibit and witness lists, and it is unlikely that Defendants will be able to effectively prepare for trial if the trial date is not continued.

Second, after the Motion was filed, on January 30, 2020, the government served its revised exhibit list. Counsel had been preparing for the trial using the exhibit numbers and

---

government has produced, or whether the new material is redundant or critical, and counsel would be ineffective if they just accepted the government's most recent claims.

titles included in the government's previous exhibit list. Rather than simply adding new exhibits or deleting old ones, the January 30 exhibit list (1) dramatically changed the government's descriptions of the exhibits, (2) changed the position and numbering of its (now) 1,080 exhibits within the list, and (3) changed the Bates numbering associated with many exhibits, such that it is not possible to simply compare one list to the other. Rather, counsel are required to locate and organize each of the 1,080 exhibits from scratch, re-doing much of the work that previously had been done based on the prior exhibit list. All of the prior work locating and organizing the exhibits on the government's first list simply was not relevant to the January 30 exhibit list. Once defense counsel identify and organize the 1,000+ exhibits on the new list, only then can they start to assess the differences between the two lists. The January 30 exhibit list simply bears no resemblance to the government's previous exhibit list, around which the Defendants had organized the defense presentation.

These changes to the witness and exhibit lists are not minor, and require wholesale reworking of witness examinations and jury presentations. Notably, in their decades of practice, none of the defense counsel have ever had a case where the government engaged in such a wholesale revision of an exhibit list effectively on the eve of trial. Again, it is impossible for Defendants to undertake the work necessary to properly analyze the government's modified exhibit list prior to the February 28, 2020 deadlines for motions in limine and Defendants' final witness and exhibit lists, as well as other deadlines set by the Court. Moreover, this last-minute change further underscores the need for a continuance.

**IV.    The Unexpected Unavailability of Defense Counsel Justifies a Continuance.**

The reasons for seeking a limited adjournment of the deadline for motions in limine, as set forth in the sealed filing (Doc. 866), remain at issue and provide an additional basis for granting this Motion as set forth in a separate, sealed filing attached hereto as Exhibit A (sealed). Indeed, due to this unexpected and serious matter, Defendants will lose institutional knowledge of this case, which will further undermine the effective preparation of the defense.

**ARGUMENT**

The Ninth Circuit reviews the denial of a continuance under the abuse-of-discretion

standard of review, *see United States v. Nguyen*, 262 F.3d 998, 1002 (9th Cir. 2001); reversing a conviction when the district court's denial was "arbitrary or unreasonable" under the circumstances of the case, *see United States v. Pope*, 841 F.2d 954, 956 (9th Cir. 1988). In *United States v. Flynt*, 756 F.2d 1352 (9th Cir. 1985), the Ninth Circuit identified four factors, commonly referred to as the "*Flynt* factors," which are relevant to resolution of a motion to continue: (1) "the extent of appellant's diligence in his efforts to ready his defense prior to the date set for hearing," (2) "how likely it is that the need for a continuance could have been met if the continuance had been granted," (3) "the extent to which granting the continuance would have inconvenienced the court and the opposing party, including its witnesses," and (4) the extent to which the appellant might have suffered harm as a result of the district court's denial." *Id.* at 1359. This determination is a case-by-case inquiry and courts are not bound by any particular mechanical test. *See id.* at 1362. Each of the *Flynt* factors support a continuance.

**I.    Defendants have diligently prepared for trial.**

Defendants have diligently prepared for trial and the government does not argue otherwise. Since this case was filed, counsel have been diligently reviewing the discovery, analyzing defenses, and conducting appropriate investigations, including interviewing potential witnesses and gathering potential defense exhibits in addition to those already disclosed. Defendants have submitted numerous substantive motions, have prepared and submitted a proposed jury questionnaire, and are preparing motions in limine. Defendants also have identified experts and made other disclosures regarding their trial presentations.

However, the government's voluminous, last-minute discovery productions, Defendants' continued inability to search the databases,[4] and the modifications to the

---

[4] The government tries to downplay the difficulty of manually searching the data in a complex database, but its own challenges searching the data speak volumes. The government extracted the ad data from the database servers in the summer of 2018 (Doc. 800, pp. 275-76), yet on December 10, 2018, the government wrote to defense counsel justifying its delinquent production of the server data by saying it still was "working on a solution to review these database files and correlate the images posed (sic) to the image server to the posts from the database files." (Doc 444, Ex. A). And, when the government finally produced the data three months later in March 2019, the "solution" was to tell Defendants they could manually search

government's witness and exhibit lists are not minor problems with theoretical consequences. These developments have hobbled the defense. Instead of allocating all efforts to preparation of the defense, counsel are sidetracked at this late stage in the case by the need to review voluminous, newly-disclosed data, to review, analyze, and investigate more than twenty new witnesses, and to analyze what is effectively a virtually brand new exhibit list of over 1,000 exhibits. The government blithely contends that none of this matters—but is wrong.

For example, the government suggests that this Court should ignore the Defendants' complaints about the government's ongoing and untimely disclosures because the Defendants have had "90% of the government's case-related electronically stored information (ESI) for two years." (Opp'n at 2.) The government's suggestion misses the mark. First, the government ignores its admission that most (5.9 million pages) of its early disclosures (which commenced well under two years ago) were "of marginal or no relevance to the crimes" charged. (Doc. 635, p. 4.) Second, regardless of the volume of disclosure made during the summer of 2018, the government said it would provide all its discovery by December 2, 2018, it failed to do so, and it produced voluminous discovery after that date and its voluminous disclosures have continued to this day.[5] Further, 90% of the ESI does not equate to 90% of the total case-related discovery because the ESI loaded into Relativity does not include the server data, which dwarfs the government's ESI productions. Moreover, just like the millions of pages of useless data the government previously disclosed to Defendants, these recent disclosures, too, contain extraneous data intermixed with data vital to the defense.[6]

---

the data and manually correlate the images to ads, just as the government would have been able to do nine months earlier during the previous summer.

[5] *C.f. U.S. v. Graham*, 2008 WL 2098044 (S.D. Ohio May 16, 2008) (dismissing case; "In this case, the problem, as the parties well know, is and has been discovery. The discovery itself breaks down into three separate problems. One, the volume of discovery in this case quite simply has been unmanageable for defense counsel. Two, like a restless volcano, the government periodically spews forth new discovery, which adds to defense counsels' already monumental due diligence responsibilities. Three, the discovery itself has often been tainted or incomplete.").

[6] In addition to millions of pages relating only to conduct overseas, the government has produced thousands of pages of indiscriminate bank records, enormous PDFs sometimes over a thousand pages, thousands of random JPEG pictures with no obvious connection to counts

Defendants have been reviewing, and continue to review, the data disclosed in December 2019 as diligently and efficiently as possible, but Defendants are nowhere close to finished reviewing the portions of that disclosure that Defendants believe are critical to the defense, and have not yet begun reviewing the January 29 and February 10 disclosures.

The government claims that its late disclosures are no problem for the defense because the defense only needs to conduct searches and review the search results, rather than conduct a page-by-page review. (*See* Opp'n at 6.) It is not the government's place to advise a defendant how to prepare for trial, and it is many a case that is won by a defense counsel finding the proverbial "needle in a haystack" through diligent and time-consuming review of discovery. Moreover, even with targeted searched and review, it will take defense counsel weeks to continue conducting the initial review of the newly-produced material. After that first level of review, the data will be analyzed, and necessary investigations will occur. Thus, even under the government's view of how the defense should proceed, defense counsel will be unable to use that data to effectively prepare for trial if the trial date remains unchanged.

Separately, the government contends, without basis, that its revised witness list (with twenty-one new witnesses) and its overhaul of its exhibit list create no problem for the defense. This is not true. Defense counsel are spinning their wheels as they recreate, from scratch, once again, the government's exhibit list because the recently disclosed list bears no resemblance to the prior list. Indeed, there were so many changes between the new list and last list that it was not possible to scan the lists and redline them electronically to serve as a guide. Instead, defense counsel began relocating and organizing the exhibits from scratch. And the investigation of twenty-one new trial witnesses is not a minor task.

## II. A continuance serves the essential purpose of allowing the Defendants to fully and effectively prepare for trial.

The second factor courts must consider is the likelihood that a continuance would serve a useful purpose. *See Flynt*, 756 F.2d at 1360. Here, a continuance, if granted, would

---

in the Indictment or relevancy to charges, excessive duplicates of the same documents with different Bates stamps, and large numbers extraneous native spreadsheets.

serve an essential purpose, not just a useful purpose: it will enable defense counsel to fully and effectively prepare for trial by (1) reviewing, analyzing, and investigating the government's untimely, voluminous disclosures; (2) accessing, searching, reviewing, and analyzing the server data; (3) ensuring that all members of the defense team (and their institutional knowledge of this case) are able to participate in preparation for trial; (4) investigating the government's twenty-one newly disclosed witnesses; and (5) relocating, reviewing, and analyzing the government's overhauled exhibit list of over 1,000 exhibits.

### III. A continuance would not unduly inconvenience the Court, parties, or witnesses.

There is no reason to believe the modest continuance Defendants seek will result in any undue inconvenience to the Court, the parties, or witnesses. Defendants did not bring this Motion on the eve of trial. Instead, once Defendants received the government's December 2019 disclosures (355,000 pages), Defendants began assessing it and the impact it would have on their ability to effectively prepare a defense. Additionally, as soon as the Court issued its decision on the Motion to Compel, Defendants undertook immediate efforts to find a suitable expert to help them access the data in the databases. Defendants brought this Motion as soon as they realized they were not in the position to effectively prepare for trial based on these developments. Because this Motion was filed more than three months before the start of trial, the inconvenience, if any, to the Court, the parties, or witnesses is minimal.

Recognizing this, the government asks this Court to deny the Motion on the basis that the purported victims are entitled to proceedings free from unreasonable delay and timely restitution under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771. (See Opp'n at 10-11.) This contention, too, provides no basis for denial of the Motion because, even if there are individuals who qualify to be designated as "victims" under the CVRA–a contention defendants dispute and that will be the subject of a forthcoming motion in limine, a victim's right to a proceeding free from unreasonable delay cannot impact a defendant's due process rights as the government advocates here. As one court has recognized: "The Senate sponsors of the CVRA were explicit in their view that the statutory right to proceedings free from unreasonable delay neither 'curtail[s] the Government's need for reasonable time to organize

and prosecute its case' nor 'infringe[s] on the defendant's due process right to prepare a defense.'" *United States v. Turner*, 367 F. Supp. 2d 319, 334 (E.D.N.Y. 2005) (quoting Senate Debate at S4268-69 (statement of Sen. Kyl)).

**IV.   Without a continuance, Defendants will be prejudiced.**

The fourth, and most important factor to be considered, is the prejudice to the Defendants. *See Flynt*, 756 F.2d at 1359. Here, the government's three most recent disclosures (355,000 pages in December 2019; 1,606 pages in January 2020; and 7,566 pages in February 2020) are voluminous. Given this, it is likely that documents critical or useful for the defense will be overlooked if the defense is forced to go to trial as scheduled. The same is true of the evidence stored in the Backpage databases, which Defendants have not yet begun to search, review, and analyze, as they did not previously have the tools or expert to do so. Defense counsel needs the continuance to use the recently disclosed evidence and the server data to effectively prepare for trial, and effectively prepare Defendants' motions in limine and final witness and exhibit lists. Defendants will be prejudiced if the continuance is denied. *See United States v. McClintock*, 748 F.2d 1278, 1286 (9th Cir. 1984) (noting that the defendant was not prejudiced by the government's disclosure of a "filing cabinet" of documents three weeks before trial because the court granted a continuance).

The government points to two cases involving voluminous discovery and claims that, because continuances were not granted in those cases, one should not be granted here. Critically, the government misstates the ruling on its first case, *United States v. Gross*, 2019 WL 7421961 (C.D. Cal. Dec. 20, 2019). In that case, involving voluminous discovery, the court balanced the four *Flynt* factors and found that none of them weighed in favor of a continuance, but **nonetheless granted a three-and-a-half month continuance** (rather than the seven month continuance requested). *See id.* at *5-6 ("[A] weighing of the *Flynt* factors do not warrant a trial continuance. . . . Nevertheless, the Court finds reason to grant a shorter continuance."). Thus, that case actually supports the modest continuance sought here.

The government's second case, *United States v. Budovsky*, 2016 WL 386133 (S.D.N.Y. Jan. 28, 2016), involves voluminous data, but the litigation history of that case bears no

resemblance whatsoever to the instant case, such that its holding provides no basis to deny the instant motion. In that case, the defendant was indicted on May 20, 2013 on a three-count indictment. The government's disclosures included data from 32 hard drives. In light of the complexity of the data, the district court appointed two CJA counsel to represent the defendant. *See id.* at *3. The court appointed a forensic expert to assist counsel with search and review of the data. Further, the court approved $875,000 for an e-discovery vendor to house the data and to assist counsel with accessing, configuring, and searching the data. *See id.* at 3-4. Ultimately, the defendant had six attorneys and other personnel such as investigators working to prepare his defense. *See id.* at 4. During the pretrial litigation, the court continued the case twice, to February 1, 2016, among other reasons, to enable the defendant to retain an expert to assist his defense counsel with navigation of the hard drive data. *See id.* at 12. The court only declined a third request to continue the case to May 1, 2016, which would have been more than three years after the date the defendant was indicted. As the foregoing indicates, the litigation of that case has no relevance to resolution of the instant Motion. That defendant had multiple counsel, forensic experts, and investigators culling through the hard drive data, and did not raise concerns about the accessibility of the data until the eve of trial.

## CONCLUSION

This is an extraordinary case, with complex legal issues and more discovery than most defense counsel have ever encountered on one case. By filing this Motion, Defendants have not asked this Court to enforce the government's original commitment to provide all discovery thirteen months prior to the trial start date (which, without any further productions, would be a request to commence trial on February 28, 2021). Instead, Defendants have asked for a modest continuance of at least five months to have sufficient time to effectively prepare a defense in light of, among other things, the government's ongoing, voluminous, and delinquent disclosures, the Defendants' inability to access critical discovery from the servers, the government's extensive modifications to its witness and exhibit lists, and the temporary unavailability of a key member of the defense team. Defense counsel should not be faulted for seeking the ability to effectively prepare the defense.

RESPECTFULLY SUBMITTED this 13th day of February 2020,

BIENERT | KATZMAN PC
*s/ Thomas H. Bienert, Jr.*
Thomas H. Bienert, Jr.
Whitney Z. Bernstein
Attorneys for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW
*s/ Ariel A. Neuman*
Ariel A. Neuman
Gary S. Lincenberg
Gopi K. Panchapakesan
Attorneys for John Brunst

FEDER LAW OFFICE, P.A.
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas