**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-001-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Continue Trial. (Doc. 862, "Mot.") The Government responded, (Doc. 880, "Resp."), and Defendants replied, (Doc. 882, "Reply"). Neither party requests oral argument. Accordingly, the Court considers the pleadings, relevant case law, and the record and grants the motion as discussed below.

## I. BACKGROUND

This complex criminal case involves a 100-count Superseding Indictment charging seven defendants with, among other things, conspiracy to promote and facilitate state prostitution offenses in violation of the Travel Act, 18 U.S.C. § 1952. The scheme alleged in the Superseding Indictment, (Doc. 230, "SI"), Defendants' alleged role in it, and the charges against the Defendants, well-known to the Court and the parties, are summarized in the Court's Order Denying Defendants' Motion to Dismiss. (Doc. 793).

At its peak in 2014, Backpage.com realized an annual profit of over $134 million built primarily on revenue from countless advertisements for illegal prostitution. (SI ¶¶ 28, 34.)  As officers and executives of Backpage.com, Defendants knowingly pursued the

business of pimps, prostitutes and human traffickers and helped them create ads to expand their prostitution business and then helped sanitize those ads to disguise the ads' true nature. (Doc. 793 at 2-7.) This allowed Defendants a veneer of plausible deniability while their ad business boomed throughout the world. (SI ¶ 13.)

The expansive scope of the criminal conduct the Superseding Indictment alleges is matched by the scale and complexity of discovery. Recognizing this, the Court granted an early government motion to designate the case as complex, (Doc. 107), and ordered the parties submit a case management schedule. The parties then agreed to a scheduling order, issued May 1, 2018. (Doc. 131.) Largely following the scheduling order, the Government disclosures include data from every Backpage.com ad active at the time of seizure and over 7.8 million documents including a subset of "hot documents" that specifically relate the Superseding Indictment's allegations. Importantly, nearly eighty percent of the Government's document production are documents Defendants have previously produced to the Government, or a category of materials whereby the Government has provided Defendants with documents that might be utilized at trial. (Doc. 524 at 5.) The early disclosures included witness list disclosures on a rolling basis. (Resp. at 7.)

The Court granted two prior continuances in this case—first moving trial from October 2019 to January 2020 and finally continuing to May 5, 2020. (Doc. 664.) Defendant now moves to continue trial to October 2020 at the earliest. (Mot. at 5.)

## II.     LEGAL STANDARD

Trial courts are accorded wide latitude in scheduling trials. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). In exercising its "broad discretion", *United States v. Flynt*, 756 F.2d 1352, 1358-59 (9th Cir.), *amended*, 764 F.2d 675 (9th Cir. 1985), to grant or deny a continuance, courts conduct a "case-by-case inquiry . . . bound by no particular mechanical test." *Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir. 1985). That said, four factors help guide this Court's consideration of whether to grant Defendants' motion: (1) the defendants' diligence in his efforts to ready a defense prior to the trial date; (2) the usefulness of the continuance; (3) the extent to which granting the continuance

inconveniences the court, the government, and its witnesses; and (4) prejudice to the defendant as a result of the failure to grant a continuance. *Flynt*, 756 F.2d at 1358-62. The weight attributed to any one fact may vary.[1] *Id.* (citation omitted). "[T]he focus of [the] prejudice inquiry is the 'extent to which the aggrieved party's right to present his defense [may be] affected.'" *United States v. Kloehn*, 620 F.3d 1122, 1128 (9th Cir. 2010) (internal quotation marks and citation omitted).

## III.   DISCUSSION

Defendants point to four reasons to justify granting a continuance here: (1) the failure to meet various discovery deadlines; (2) difficulties and delay inherent in the complex nature of voluminous data disclosure from the Backpage IT system; (3) the scale of continued document production; and (4) prejudice from the Government's latest witness list disclosure. (*See generally* Mot.) The Court additionally recognizes the possibility of prejudice resultant from the recent unexpected unavailability of defense counsel. (Reply, Exh. A.) Considering the above, the Court weighs each *Flynt* factor.

### a.  Diligence

The first *Flynt* factor weighs slightly in Defendants favor. On the one hand, Defendants have consistently engaged the Court in discovery disputes and regularly filed detailed discovery motions on their clients' behalf.[2] On the other, Defendants actions, on numerous occasions, do not show diligence. (*See e.g.,* Doc. 839 at 13-14, Resp. at 2, n. 2 ("As of the day of this response, defense counsel had previously contacted the government

---

[1] While the *Flynt* factors are employed primarily in appellate review, the Court finds them useful in guiding the inquiry here.

[2] (*See e.g.,* Doc. 200, "Motion for Discovery of Carl Ferrer's Waiver of Privilege as Material to Disqualification; Doc. 531, "Motion for Immediate Discovery Regarding Government's Abuse of Grand Jury and Trial Subpoenas to Obtain Defense Lawyer Bank Accounts and for Potential Sanctions"; Doc. 643, "Motion to Compel Discovery"; Doc. 662, "Motion to Compel Government Compliance with Court's April 22, 2019 Order to Produce Jencks Act Material for Witness Carl Ferrer"; Doc. 665, "Motion to Compel Compliance and Order to Show Cause Regarding the Government's Violation of the Court's Scheduling Order on behalf of Mr. Larkin and Mr. Lacey"; Doc. 740, "Motion to Compel Compliance with the Courts Order for Specific Identification of Documents Subject To Protective Order"; Doc. 777, "Motion to Compel Production of Brady Material"; Doc. 781, "Motion for Bill of Particulars"; Doc. 782, "Motion to Dismiss Indictment for Grand Jury Abuse or, in the Alternative, for Disclosure of Grand Jury Transcripts.)

to attempt to resolve a technical difficulty with its ESI production *only once* since receiving over 90% of ESI more than 20 months ago.") The Court made such concerns explicit in its recent denial of Defendants Motion to Compel Discovery. In their motion Defendants pleaded ignorance to knowing anything about the disclosed data and made a blanket conclusion that the disclosed hard drives were entirely unusable. The record directly contradicted those claims. The Government told Defendants how the data was stored and what file systems and programs Backpage used nearly two years pervious. Defendants' also continued to retain an expert they knew had zero experience with the ZFS file system and ZPool configuration used by Backpage servers. (Doc. 839 at 13-14.) Further, as the Government correctly notes, the vast majority of discovery was produced to Defendants more than two years ago, (*see* Doc. 444-1), and the Government disclosed Backpage server data to Defendants nearly a year ago. (Doc. 459.) Much of defense counsels' efforts have been aimed at dismissal and inevitably caused some of the delay, their level of activity and engagement in discovery matters weighs, however slightly, in favor of granting a continuance here.

### b.  Usefulness

The second *Flynt* factor asks whether the continuance would serve its stated purpose. *Flynt*, 756 F.2d at 1359. This factor also slightly weighs in Defendants favor. Two primary considerations surface here—the aforementioned scale of discovery productions and the early nature of the disclosures. The considerations are, admittedly, somewhat at odds. The Government's disclosures in this complex case are voluminous and plagued by technical issues. Partially to alleviate such difficulties, the Government has largely complied with the stipulated scheduling order. Defendants point to technical difficulty accessing Backpage server data and instances where the Government failed to meet scheduling order deadlines or did so but with inadequate disclosures. (Mot. at 3-4; Reply at 5.) The Government responds by emphasizing that Defendants long ago agreed to this approach. Defendants present no novel issues and cannot argue surprise. The arguments between the parties notwithstanding, the additional time to prepare a defense accorded by

granting a continuance here is undoubtedly useful to Defendants. Given the expansiveness of discovery and considering the possible effect of aforementioned unavailability of defense counsel, additional time in the latter stages of preparation is likely useful to Defendants.

### c. Inconvenience

The third *Flynt* factor considers the extent to which granting a continuance inconveniences the Court and opposing party, including its witnesses. *Flynt*, 756 F.2d at 1359. This factor weighs against continuing the trial. Defendants can offer little argument on this point. As the Government notes, a third continuance clearly inconveniences the Government's witnesses.[3] More persuasive is the rights of victims implicated by Defendants' alleged conduct. Both victims and the public have a right to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7) (the "Crime Victims' Rights Act" or "CVRA"). The Superseding Indictment includes seventeen select victim summaries. (SI ¶¶ 160-176.) Four of the five juvenile victims of sex trafficking facilitated by Backpage.com were murdered or killed as a result.[4] (SI ¶¶ 165, 173, 174, 175.) The Court takes seriously the rights of victims, the representatives of surviving victims, and their family members. all but one victim (or representatives) oppose a continuance. (Resp. at 11.) For these innocents, a continuance may represent far more than mere inconvenience. The Court finds this factor weighs against Defendants' motion.

### d. Prejudice

The fourth *Flynt* factor asks the court to consider the extent to which Defendants might suffer harm if the Court denies their motion. *Flynt*, 756 F.2d at 1359. This factor also slightly favors granting Defendants motion. At the outset, the Court finds Defendants' arguments regarding the volume of discovery relatively unpersuasive. (*See* Mot. at 4.)

---

[3] Granting Defendants motion also inconveniences the Court, which set trial for other cases in the upcoming months considering the current trial date. Nonetheless, the Court does not give significant weight to this factor such that, if other factors warrant, inconvenience to the Court's calendar would prevent a continuance.

[4] When a crime victim is a minor, her legal representatives "may assume [her] rights under [the CVRA]." 18 U.S.C. § 3771(e)(2)(B).

Regarding the Government's latest[5] disclosures—primarily 355,000 pages of discovery the Government characterizes as responsive to defense counsel request for privileged documents withheld by the government's "taint team"—the Court notes the incongruity of the parties' responses. (*Compare* Resp. at 6 *with* Reply at 4.) While Defendants early access to a vast majority of discovery is unquestioned, the Government's recent disclosures,  the allegedly ongoing technical issues with previously disclosed server data, and the unavailability of co-counsel caution the Court of the possibility of prejudice.

## IV.    CONCLUSION

Weighing the aforementioned considerations, the Court believes granting a short continuance militates against any potential prejudice and respects victims' rights to a speedy trial.

Accordingly,

**IT IS ORDERED**, GRANTING Defendants' Motion to Continue Trial, (Doc. 862). Trial is continued from May 5, 2020 to August 17, 2020.

**IT IS FURTHER ORDERED** moving the Final Pre-Trial Conference from March 6, 2020 to June 19, 2020 from 10:00 a.m. to 12:00 p.m. MST.

**IT IS FURTHER ORDERED** moving the Motion in Limine deadline from February 28, 2020 to April 17, 2020.

The Court finds excludable delay under 18 U.S.C. § 3161(h)(7)(A) and (B) from May 5, 2020 to August 17, 2020.

Dated this 21st day of February, 2020.

Honorable Susan M. Brnovich
United States District Judge

---

[5] The duration of proceedings and defense counsels long-standing familiarity with the facts, legal arguments, and possible witnesses significantly diminish possible prejudice from the Government's recent witness list update. (*Contra* Reply at 6-7.) The Government's preliminary witness list disclosure over a year ago further supports that determination. (Resp. at 7.)