MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-PHX-SMB |
| Plaintiff, | |
| v. | **UNITED STATES' MOTION IN LIMINE RE DAVIS WRIGHT TREMAINE** |
| Michael Lacey, et al., | |
| Defendants. | |

The government moves in limine to ensure that—consistent with this Court's previous Order—the Davis Wright Tremaine law firm does not serve as trial counsel or engage in any trial preparation.  Defendants argued in opposition to a government's motion to disqualify that Davis Wright Tremaine's services were needed for a limited purpose, *i.e.*,

- 1 -

1  to file and argue a motion to dismiss all criminal charges based on the First Amendment.

2  That's happened.  This Court denied the motion.  The Davis Wright Tremaine attorneys'

3  services are no longer necessary and those attorneys should be removed as counsel of

4  record in accordance with the Court's October 12, 2018 Order.  (Doc. 338.)

5  **MEMORANDUM OF POINTS AND AUTHORITIES**

6  **I.    Procedural and Factual Background**

7      **A.    Government Moves to Disqualify DWT**

8          On April 25, 2018, less than three weeks after Defendants were arrested, the

9  government moved to disqualify the law firm of Davis Wright Tremaine ("DWT") based

10  on its previous representation of Carl Ferrer.[1]  (Doc. 118.)  The government did so due to

11  concerns about DWT representing clients (Lacey and Larkin) in a criminal trial when a

12  former client (Ferrer)—who had not consented to the representation—would be called as

13  a cooperating prosecution witness.  (*Id.* at 2.)  In its motion, the government listed an array

14  of matters where DWT had previously represented Ferrer in his personal capacity (*id.* at 3-

15  5), and discussed the Arizona ethical rules and applicable case law and why both supported

16  DWT's disqualification.  (*Id.* at 8-15.)

17          Defendants Lacey and Larkin filed a response in opposition to the government's

18  motion to disqualify DWT.  (Doc. 180.)  In their opposition, Defendants made clear that

19  "DWT's role will be (as it has been) to address issues concerning the First Amendment,

20  free speech and protections for Internet providers and users, and *not* as trial counsel."  (*Id.*

21  at 9) (emphasis in original.)  Defendants explained DWT's involvement in greater detail:

22  
23      DWT's role is not and never has been to act as criminal trial counsel for
   Larkin or Lacey. . . . Rather, DWT has addressed legal issues under the First
24      Amendment, federal statutes, and as regards the Internet.  DWT can continue
   its longstanding role, while undersigned counsel will have responsibility for
25      and act as trial counsel in defending Larkin and Lacey in this case.

26  (*Id.* at 28.)

27  _____
   [1] The government also moved to disqualify the law firm of Henze Cook Murphy
28  ("HCM"), but does not have the same concerns about HCM participating at the upcoming
   trial or engaging in trial preparation, so this motion is only directed at DWT.

Defendant Padilla filed a separate opposition to the government's motion to disqualify. (Doc. 177.) In Padilla's opposition, he stated:

> It must be noted that Mr. Grant and Mr. Corn-Revere do *not* devote their practices to defending the criminally accused. Mr. Ferrer, Mr. Lacey, Mr. Larkin, Mr. Padilla, and the others listed in the indictment, have all retained separate experienced criminal defense counsel to represent them individually in these criminal proceedings. It is the intent of the joint defense agreement that the DWT lawyers would continue their role in addressing issues concerning the First Amendment, internet free speech and privacy, and other related and relevant legal and constitutional issues. . . . [I]t was the purpose of the agreement that the DWT lawyers would continue to address these for all defendants . . . including filing legal motions to dismiss, other motions, and related appeals.

(*Id.* at 3.)

Padilla argued that DWT's services were needed because "the DWT lawyers have been very effective in combatting efforts such as the present criminal prosecution in which the First Amendment rights of websites that publish ads are the core protection against the government's novel attempt to vicariously impose criminal liability on the publishers for the acts of others." (*Id.* at 4-5.) Finally, Padilla argued that DWT's attorneys were the most knowledgeable to represent him, and his co-defendants, on the "pivotal" issues in the case, *i.e.*, the First Amendment and § 230. "The point is: the First Amendment and § 230 issues are critical to Mr. Padilla's defense and he cannot be deprived of the assistance of the most able attorneys to represent him." (*Id.* at 14.)

On October 5, 2018, the Court held oral argument on the government's motion to disqualify. At the hearing, counsel for Larkin emphasized two main points: first, he (Mr. Bienert) and Ms. Bernstein would serve as trial counsel for Larkin, and, second, that Defendants' primary defense was premised on the First Amendment and his client needed DWT to represent him on that issue. (RT 10/05/18 25; Doc. 347 at 25.) Mr. Bienert stated:

> Ms. Bernstein and I, we are criminal counsel. We will be trial counsel. We will try this case. But we are not First Amendment lawyers. This is a First Amendment case.

1   The primary issue that is just kicking along with the indictment is – it's a
2   First Amendment case, the defense is – largely rides on First Amendment
    issues.

3   . . . .

4   But plain and simple, that is our position.  Our clients are not guilty, because
5   what is alleged here against our client is not a crime as it relates to them.
    Why?  Because of the First Amendment.

6   . . . .

7   So we need First Amendment counsel.

8   (RT 10/05/18 25-26; Doc. 347 at 25-26.)

9       DWT attorneys also argued directly to the Court that their role in this matter would

10  be limited.  Specifically, Mr. Grant stated, "what we have said throughout is that we have

11  been counsel on First Amendment issues, we've been counsel on Internet issues, and

12  related issues that have to do with Internet publishers. . . . [T]hat's the limited role that I

13  think is appropriate under these circumstances."  (RT 10/05/18 34-35; Doc. 347 at 34-35.)

14  Counsel for HCM similarly made clear that any role for that law firm would also be limited.

15  "[T]hey are not trial counsel, they won't be preparing cross examination, they won't be

16  sitting at counsel table."[2]  (RT 10/05/18 45; Doc. 347 at 45.)

17      Defendant Padilla's attorney also argued in opposition to the government's motion

18  to disqualify.  He informed the Court that DWT "has been the leading counsel on First

19  Amendment issues, the leading counsel on Section 230 issues, issues that are going to be

20  presented to the Court, and we need [DWT] to present them."  (RT 10/05/18 49; Doc. 347

21  at 49.)   "There will be motions before you to dismiss this entire prosecution on First

22  Amendment grounds, and those will be the motions that are the responsibility of Davis

23  Wright Tremaine and will not require any cross-examination of Mr. Ferrer."  (RT 10/05/18

24  _____

25  [2] HCM's counsel distinguished cases cited by the government by arguing that HCM
26  would have no role at trial.  "And I guess I would also add, Your Honor, that the cases that
    the government cites are really distinguishable, and that's because those are cases involving
    trial counsel.  Lawyers who want to be at the table, asking questions.  And they say, well,
27  you can't really be at the table and not help your co-counsel with cross-examination and
    that kind of stuff.  That's not the case here."  (RT 10/05/18 46; Doc. 347 at 46.)  Further
28  adding, "Every one of [the government's] cases is a trial counsel case.  This is not trial
    counsel.  I mean, that distinction is important."  (RT 10/05/18 47; Doc. 347 at 47.)

52; Doc. 347 at 52.)  He also confirmed that each individual defendant had separate trial counsel who would handle "the actual courtroom."  (RT 10/05/18 51; Doc. 347 at 51.)

In the final exchange between the Court and Defendants on this issue, Padilla's attorney articulated Defendants' position about DWT's expected absence at trial:

> THE COURT:  I was looking at some of the information that was placed on the record, and the attorney for Padilla, you indicated that DWT needs to present the evidence related to the First Amendment issues.  My question is do you expect DWT to be involved in examining witnesses or presenting evidence on First Amendment or privacy related issues at trial?
>
> MR. PICCARRETA:  I don't expect that.  We will present the evidence at trial.  The criminal trial lawyers will present the criminal evidence at trial, but they will be involved in the motion hearings and legal arguments related to it.  At least that's my understanding.

(RT 10/05/18 65; Doc. 348 at 5.)

**B.      Court Denies Government's Motion to Disqualify**

On October 12, 2018, the Court denied the government's motion to disqualify. (Doc. 338.)  In distinguishing case law relied upon by the government, the Court drew the distinction, that unlike the attorneys in the cited opinion, here "it has been made clear that neither HCM nor DWT will participate as trial counsel in this matter, and both firms have stated that neither firm will participate in cross-examining Ferrer."  (Doc. 338 at 9-10 (citing Doc. 180 at 28).)  In denying the government's motion, the Court ordered that the attorneys from DWT not engage in trial preparation or as trial counsel, and only participate consistent with the limited capacity provided for in the pleadings.  The Court concluded its Order by stating:

> Moving forward, the Court will rely on the representations of HCM, DWT, and their respective counsel that the firms will continue to preserve the confidences of Ferrer as a former client, create ethical walls where necessary, refrain from engaging in trial preparation or participating as trial counsel, and only participate in the limited capacity set forth in the pleadings, without an order from the Court.

(Doc. 338 at 10.)

### C. DWT Unsuccessfully Moves to Dismiss Based on the First Amendment

On April 22, 2019, DWT filed a 55-page motion to dismiss on behalf of Defendants Lacey, Larkin, Brunst, and Spear.  (Doc. 561.)  Defendants' primary argument in their motion was that the government impermissibly "attack[ed] First Amendment-protected conduct among websites." (*Id.* at 26-37.)  The motion's secondary argument was that the government had not sufficiently alleged Defendants' *mens rea* to support the charged crimes.  (*Id.* at 37-48.)  Finally, Defendants argued that the Travel Act was unconstitutional as applied, because it conflicted with the First Amendment.  (*Id.* at 48-53.)  This motion involved extensive briefing by the parties.  (*See* Docs. 615, 617, 649, 697, 700.)  The Court also heard oral argument on DWT's motion.  (Doc. 728.)  An attorney from DWT handled the bulk of the argument for Defendants.  (RT 8/19/19 51-67; Doc. 732 at 51-67.)

On October 24, 2019, the Court issued an order denying Defendants' motion to dismiss.  (Doc. 793.)  The Court rejected all three of Defendants' arguments.  (*Id.* at 9.)  The Court found the First Amendment didn't apply, in part because "[p]rostitution ads are ads for illegal transactions" and the "First Amendment does not protect 'offers to engage in illegal transactions.'"  (*Id.* at 14) (citation omitted.)  In its conclusion, the Court held: "Defendants' arguments that the First Amendment demands a scienter requirement beyond specific intent to promote prostitution are unavailing, as the *mens rea* standard of specific intent to promote prostitution does not criminalize lawful activity."  (*Id.* at 23.)

## II. Argument

The government files this motion to ensure that the parties comply with previous Court Orders.  The Court ordered that DWT would not "engag[e] in trial preparation" or "participate as trial counsel."  (Doc. 338 at 10.)  DWT's "limited capacity" for serving as counsel for Defendants Lacey and Larkin has concluded.  The DWT attorneys should be removed as counsel of record.

### A. DWT Has Served Its Limited Role

Defendants conceded that DWT would serve a limited role in the law firm's representation of Lacey and Larkin; specifically, DWT would present and argue a motion

1     to dismiss based on the First Amendment.  (*See supra* 2-5.)  All counsel heard on this
2     matter agreed.  (*Id.*)  The Court took the same view.  (Doc. 338.)  DWT filed and argued
3     the motion.  (Doc. 561.)  The Court ruled on it.  (Doc. 793.)  That issue is no longer before
4     this Court.  The parties are now preparing for trial.  DWT's services are no longer necessary
5     and they should no longer be counsel of record.

6         Removing DWT as counsel of record would protect against future appellate issues.
7     As the government argued previously, the Second Circuit ruled that the government must
8     raise conflict of interest issues before trial to help ensure the fairness of the proceedings.
9     (Doc. 118 (citing *United States v. Iorizzo*, 786 F.2d 52 (2d Cir. 1986).)  In that matter, the
10    government's key witness was Tietz, a supervisor in the accounting department of
11    defendant's company, and defendant's trial counsel had previously represented Tietz in a
12    state investigation into the same conduct.  *Iorizzo*, 786 F.2d at 54.  The government brought
13    this conflict of interest to the trial court's attention but did not move for disqualification,
14    which permitted Iorizzo's counsel to remain as counsel of record.  *Id.* at 54-55.  Iorizzo's
15    counsel then refused to ask certain questions to Tietz on cross-examination, because of
16    ethical concerns.  *Id.* at 57-58.  As a result, the Second Circuit reversed Iorizzo's
17    conviction, holding that "Iorizzo . . . was entitled to a counsel unburdened by the ethical
18    constraints resulting from prior representation of the government's key witness." *Id.* at 58.
19    The Second Circuit concluded: "The prosecutors here were aware of defense counsel's
20    conflict of interest at an early stage and were invited by the district judge to make a
21    disqualification motion in writing. We trust that this decision will ensure that a pretrial
22    disposition of such issues will occur in the future." *Id.* at 59.

23         Defendants distinguished *Iorizzo*—and the other cases cited by the government in
24    its motion to disqualify—by arguing that DWT would not serve as trial counsel or cross-
25    examine Carl Ferrer.  (*See, e.g.,* RT 10/05/18 25; Doc. 347 at 25 ("Ms. Bernstein and I, we
26    are criminal counsel.  We will be trial counsel.  We will try this case."); *id.* at 51 (separate
27    trial counsel to handle the "courtroom"); *id.* at 34-35 (DWT arguing for a "limited role" as
28    counsel in this matter).)  Each attorney also emphasized DWT's expertise in First

Amendment issues.  (*See, e.g.,* RT 10/05/18 49; Doc. 347 at 49 (discussing the inability for trial counsel to reach DWT's level of expertise about First Amendment issues); *id.* at 27 (detrimental to Defendants to lose the expertise of DWT in, among other things, First Amendment issues); *id.* at 34 (DWT arguing that it has expertise on First Amendment and Internet issues).)

Defendants prevailed in opposing the government's motion to disqualify.  As a result, they were represented by their preferred attorneys to litigate the First Amendment issues in this matter.  Those issues has now been resolved and, accordingly, DWT's role in this litigation has concluded.

### B.    Risk of DWT Attorneys Becoming Fact Witnesses at Trial

DWT's involvement in this matter should terminate for an independent reason—there's a possibility that the law firm's attorneys could be called as fact witnesses at trial. The government first raised this issue in its reply in support of motion to disqualify.  (*See* Doc. 193 at 5.)  In its filing, the government discussed this possibility:

> The DWT firm has now made clear that its strategy in this case, as well as other cases, will be to attempt to impeach Ferrer by pointing to declarations and deposition testimony from earlier cases in which he denied any wrongdoing at Backpage.  About two weeks ago, the DWT firm filed a pleading in *Backpage v. Dart* stating that it intends to use Ferrer's prior statements to impeach his guilty plea.  *See* [193-4] at 13 ("Mr. Ferrer's statements in connection with his negotiated plea agreements are inconsistent with his prior sworn testimony in certain respects, and he will have to answer for the contradictions on his own.")  Similarly, the DWT firm announced during a recent hearing in *R.O* that "Ferrer may be subject to cross-examination or discovery about his prior inconsistent statements."  [Doc. 193-1] at 53-54.

(*Id.* at 5.)

Defendants raised this argument again only months ago.  In its opening brief in the latest Ninth Circuit Appeal, which DWT prepared and filed, Defendants argued: "Ferrer's plea statements are disputed, and directly contradict his many sworn statements over a half-decade explaining that Backpage.com made efforts to screen, block, and remove improper third-party ads and to cooperate with law enforcement."  *United States v. James Larkin et*

*al.,* Case No. 19-56510, Opening Brief filed Jan. 21, 2020, at 9 n.4.

The problem with Defendants, and especially DWT, raising this argument at trial, is that DWT's attorneys were the authors of these declarations.  Ferrer made these facts known in his previously filed Declaration.  (Doc. 193-9.)  Specifically, Ferrer stated:

- "In the course of representing me in civil litigation, Mr. Grant and his colleagues at DWT drafted declarations for me to sign."  (193-9 at ¶ 17.)

- "When they sent me draft declarations, neither Mr. Grant nor his colleagues at DWT advised me to discuss the declarations with separate counsel.  Rather, Mr. Grant's practice was to direct me to sign the declarations DWT had drafted."  (193-9 at ¶ 18.)

- "More often than not, DWT only gave me a few hours between when they sent the draft declarations and when they needed me to return them signed."  (*Id.*)

As the government previously noted, "[a]voiding such a spectacle—where defense counsel could become a fact witness midway through trial—is one of the reasons the United States sought to raise the ethical issues posed by this case well before trial."  (Doc. 193 at 6.)  To help avoid this spectacle, the Court should ensure that Defendants adhere to the Court's Order, and remove DWT's attorneys from this case.

### C.    Backpage's Previous Legal Cases Are Not Relevant

In a similar vein, and consistent with another Court Order, Defendants should be precluded from discussing or relying on any previous case in which Backpage was involved.  The Court recognized in its Order denying Defendants' motion to dismiss indictment based on Section 230 of the CDA (Doc. 840) that the cases relied by Defendants are not applicable.  (*Id.* at 11-12 ("Defendants' remaining cases all involve allegations of direct violations of state criminal statutes, not federal criminal laws like the Travel Act here."  *See Backpage.com v. McKenna*, 881 F. Supp. 2d 1262, 1273 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 823 (M.D. Tenn. 2013); *Backpage.com LLC v. Hoffman*, No. 12-cv-03952, 2013 WL 4502097, at *7 (D.N.J. Aug. 20, 2013)).)  Similarly, any other case that involved Defendants or Backpage didn't involve allegations charging them with federal crimes.  For that reason, among others, these cases

1  are not relevant to the question before the jury and should not be part of the upcoming trial.

2  **III.**   **Conclusion**

3        Defendants and their counsel (including DWT) argued that DWT should not be

4  disqualified because they would only serve a limited role in this litigation.  That role has

5  been fulfilled.  DWT's attorneys should now be removed as counsel of record Defendants

6  Larkin and Lacey.  This result should obtain based on the following three reasons: (a) the

7  Court's previous Order, (b) to help protect against any future appellate issues, and (c) to

8  avoid the spectacle of counsel of record being called as fact witness at trial.

9        Respectfully submitted this 17th day of April, 2020.

10          MICHAEL BAILEY
        United States Attorney
11          District of Arizona

12          *s/ Andrew C. Stone*
        KEVIN M. RAPP
13          MARGARET PERLMETER
        PETER S. KOZINETS
14          ANDREW C. STONE
        Assistant U.S. Attorneys
15

16          JOHN J. KUCERA
        Special Assistant U.S. Attorney

17          BRIAN BENCZKOWSKI
18          Assistant Attorney General
        U.S. Department of Justice
19          Criminal Division, U.S. Department of Justice

20          REGINALD E. JONES
        Senior Trial Attorney
21          U.S. Department of Justice, Criminal Division
        Child Exploitation and Obscenity Section

22

23  **CERTIFICATE OF SERVICE**

24        I hereby certify that on this same dateApril 17, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and
25  transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

26  *s/ Marjorie Dieckman*
27  Marjorie Dieckman
U.S. Attorney's Office

28