Gary S. Lincenberg *(admitted pro hac vice)*
  glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
  aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
  gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

Thomas H. Bienert, Jr. *(admitted pro hac vice)*
  tbienert@bmkattorneys.com
Whitney Z. Bernstein *(admitted pro hac vice)*
  wbernstein@bmkattorneys.com
BIENERT KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

Attorneys for Defendant James Larkin

*[Additional counsel listed on next page]*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>     vs.<br><br>Michael Lacey, *et al.*,<br><br>          Defendants. | CASE NO. 2:18-cr-00422-004-PHX-SMB<br><br>**DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE CERTAIN EXPERT TESTIMONY OF QUOC THAI**<br><br>Assigned to Hon. Susan M. Brnovich, Courtroom 506<br><br>(Oral Argument Requested) |

**PUBLIC – REDACTED**

3645617.1

DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EXPERT TESTIMONY

Paul J. Cambria, Jr. *(admitted pro hac vice)*
    pcambria@lglaw.com
Erin McCampbell *(admitted pro hac vice)*
    emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580

Attorneys for Defendant Michael Lacey

Bruce Feder (AZ Bar No. 004832)
    bf@federlawpa.com
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135

Attorney for Defendant Scott Spear

David Eisenberg (AZ Bar No. 017218)
    david@deisenbergplc.com
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273

Attorney for Defendant Andrew Padilla

Joy Malby Bertrand (AZ Bar No. 024181)
    joy.bertrand@gmail.com
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694

Attorney for Defendant Joye Vaught

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT.......................................................................................................... 3

    A. Legal Standard........................................................................................... 3

    B. Thai Should Not Be Permitted to Provide Opinion Testimony Regarding Backpage-Related Transactions....................................................... 3

    C. The Government Should Not Be Permitted to Put on Expert Testimony Regarding Virtual Currency. .......................................................... 5

        1. Testimony Regarding Virtual Currency Would Not Assist the Trier of Fact............................................................................................. 6

        2. Expert Testimony Regarding Virtual Currency Would Impermissibly Compel the Inference that Defendants Engaged in Illegal Conduct. ................................................................................. 8

    D. Expert Testimony Regarding Virtual Currency Should Be Precluded Under Rule 403...................................................................................... 9

III. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States*
    483 U.S. 171 (1987) ........................................................................................................... 3

*Daubert v. MerrellDow Pharm., Inc.*
    509 U.S. 579 (1993) ..................................................................................................... 3, 10

*General Elec. Co. v. Joiner*
    522 U.S. 136 (1997) ........................................................................................................... 3

*Hangarter v. Provident Life & Acc. Ins. Co.*
    373 F.3d 998 (9th Cir. 2004) ............................................................................................. 8

*Nichols v. Am. Nat. Ins. Co.*,
    154 F.3d 875 (8th Cir. 1998) ............................................................................................. 3

*United States v. Dukagjini*
    326 F.3d 45 (2d Cir. 2003) ................................................................................................ 4

*United States v. Frantz*
    No. CR 02-01267(A)-MMM, 2004 WL 5642909 (C.D. Cal. Apr. 23, 2004) ..................................................................................................................... 5

*United States v. Hitt*
    981 F.2d 422 (9th Cir. 1992) ............................................................................................. 9

*United States v. Mejia*
    545 F.3d 179 (2d Cir. 2008) .............................................................................................. 4

*United States v. Mohney*
    949 F.2d 1397 (6th Cir. 1991) ........................................................................................... 5

*United States v. Morales*
    108 F.3d 1031 (9th Cir. 1997) ........................................................................................... 8

*United States v. Robinson*
    255 F. Supp. 3d 199 (D.D.C. 2017) .................................................................................. 5

*United States v. Ulbricht*
    858 F.3d 71 (2d Cir. 2017) ................................................................................................ 9

*United States v. Wiggan*
    700 F.3d 1204 (9th Cir. 2012) .................................................................................... 10

**Other Authorities**

Fed. R. Evid.
    403 ........................................................................................................................ 9, 10
    702(a) ...................................................................................................................... 3, 6
    704(b) ...................................................................................................................... 4, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government designated Quoc Thai, an IRS Special Agent, to testify about the flow of funds amongst certain entities, including "(1) the financial structure of Backpage and its various corporate entities and (2) Backpage's use of various payment systems to include virtual currency." Exh. A (Government's Initial Expert Disclosures) at 2-3. With respect to virtual currency, Thai intends to testify to a number of topics, specifically:

> (1) centralized and decentralized virtual currencies (i.e., bitcoin, bitcoin cash); (2) the sale or exchange of virtual currencies; (3) the use of virtual currencies to pay for goods or services: (4) the anonymity the use of virtual currency provides; (5) the mechanics of transferring virtual currency from wallet to wallet or person to person; (6) the identification of origination and destination addresses through analysis of the blockchain code; (7) the price fluctuation over time of virtual currency, and the conversion and exchange of virtual currency to a "fiat money system" or "fiat currency system" or simply put, regular currency.

*Id.* at 2-3. Thai also intends to testify to "Backpage's use of third party payment processors, who processed and received customer payments originating from virtual currency payments, credit card payments, check & money order payments, and gift card payments." *Id.* at 3.

None of these so-called expert opinions are admissible. First, while Thai may serve as a summary witness with respect to financial transactions underlying the indictment's money laundering counts, he should not be permitted to opine on the purpose of these transactions. Nor should he be permitted to testify to the reasons behind Backpage's use of payment processors. That is, any testimony purporting to explain the motivation for a financial transaction, or opining that the transactions are "consistent" with money laundering or other criminal conduct, would impermissibly impinge on the jury's function to determine whether Defendants had the requisite state of mind under the indictment's charges.

Thai's proposed expert testimony is particularly problematic in light of the fact that he also served as a case agent in this matter and was present at the interviews of two of the

government's main witnesses, Carl Ferrer (the former CEO of Backpage and a government cooperator) and Daniel Hyer (a former defendant turned cooperating witness). Thai's purported independent information is inextricably intertwined with information he learned from Ferrer and Hyer, among others, without the application of any specialized knowledge or reliable methods on his part. The effect of such testimony would be to improperly bolster the percipient testimony of cooperating and other government witnesses and circumvent the rules against hearsay.

Second, neither Thai nor anyone else should be permitted to offer expert testimony regarding virtual currency.[1] Such testimony would not assist the jury in assessing the indictment's charges. Critically, the indictment's money laundering charges are not based on an allegation that Backpage or Defendants used virtual currency (or any other method of payment) as a means to obscure the nature of the ads on Backpage.com, but rather, that the ads themselves allegedly contained illegal content. Indeed, *none* of the indictment's money laundering counts involve the transacting of virtual currency; each of the alleged transfers was made in U.S. dollars.

Further, there is no allegation that any of the Defendants (1) personally received or held virtual currency, (2) owned any of the digital wallets that were seized by the government, or (3) used virtual currency to purchase any of the assets that were seized by the government. Despite the government's apparent attempt to recast its allegations, this is not a case about virtual currency. The only possible purpose for such testimony would be to distinguish virtual currency from other forms of payment, so as to create the impermissible inference in the minds of the jurors that its use is associated with criminality. Nothing could be farther from the truth. Indeed, a number of credit card companies, publicly-traded corporations, and law firms, among other businesses, support

---

[1] In a March 27, 2020 letter, the government stated that it was removing Donald Ellsworth from its witness list. The government had previously disclosed Ellsworth as an expert whose testimony would cover topics related to virtual currency.

3645617.1

2

DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EXPERT TESTIMONY

and accept virtual currency as a form of payment, while government agencies regulate it.

Thai's anticipated testimony would only serve to mislead the jury and unfairly prejudice the defense, and should therefore be precluded.[2]

## II.     ARGUMENT

### A.     Legal Standard

Under Federal Rule of Evidence 702(a), expert testimony is appropriate where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Further, expert testimony "is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury." *Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998).

The trial court also must find that proposed expert testimony is both relevant and reliable prior to admitting it into evidence. *Daubert v. MerrellDow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The party that proffers expert testimony bears the burden of showing that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 172-73 (1987). A district court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

### B.     Thai Should Not Be Permitted to Provide Opinion Testimony Regarding Backpage-Related Transactions.

Thai may serve as a summary witness with respect to the alleged flow of funds between various Backpage-related entities. Thai should not, however, be permitted to opine as to the purpose of any such transactions. Testimony that, for example, a given transaction was designed to "conceal" or "anonymize" the source of funds, or that it was "unusual" or "consistent" with money laundering strategies, would necessarily compel the

---

[2] Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based on this Motion.

3645617.1

3

DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EXPERT TESTIMONY

1  inference that Defendants intended to engage in some form of criminal conduct.  *See* Fed.
2  R. Evid. 704(b) (precluding experts in criminal cases from stating "an opinion about
3  whether the defendant did or did not have a mental state or condition that constitutes an
4  element of the crime charged or of a defense," as such "matters are for the trier of fact
5  alone.").

6        Likewise, Thai should not be permitted to opine as to the motivations behind
7  Backpage's use of third-party payment processors.  Testimony that, for example, Backpage
8  used certain payment processors in order to "fool" credit card companies or other financial
9  institutions would also violate Rule 704(b) (indeed, no business can accept credit cards for
10 payment without having a third party process those payments – to suggest the existence of
11 criminality by virtue of the use of payment processors would mislead the jury and unduly
12 prejudice the defense).  Any testimony regarding the alleged purpose of the transactions at
13 issue must come from the percipient witnesses who have firsthand knowledge regarding
14 those transactions.

15       The only basis Thai would have to offer testimony as to the purpose of any
16 transaction would be what he learned from witnesses, including government cooperators,
17 through his work as a case agent in this matter.  Courts have recognized that using a case
18 agent as an expert heightens the risk that the jury will hear inadmissible opinion testimony.
19 *See United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003) ("[T]he use of the case
20 agent as an expert increases the likelihood that inadmissible and prejudicial testimony will
21 be proffered.").  Thai should not be permitted to parrot what witnesses, including
22 government cooperators, told him was the purpose of any of the transactions he intends to
23 testify about, as such testimony would merely be an improper attempt to circumvent the
24 rules against hearsay and bolster the testimony of other witnesses.  *See United States v.*
25 *Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (quoting *United States v. Dukagjini*, 326 F.3d 45,
26 58-59 (2d Cir. 2003)) ("[T]he expert must form his own opinions by 'applying his
27 extensive experience and a reliable methodology' to the inadmissible materials.
28 Otherwise, the expert is simply 'repeating hearsay evidence without applying any expertise

whatsoever'") (vacating conviction due to the trial court's admission of impermissible expert testimony where some of the expert's testimony "involved merely repeating information he had read or heard.").

Further, nothing in Thai's background suggests he would be qualified to determine the purpose of any of the relevant transactions. *See* Exh. A at 21-22 (attaching Thai's CV). The cases in which IRS agents have traditionally provided true expert testimony involve the tax implications of a given transaction, like, for example, the understatement of income or computation of the amount of tax owed. *See, e.g., United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991); *United States v. Frantz*, No. CR 02-01267(A)-MMM, 2004 WL 5642909, at *15 (C.D. Cal. Apr. 23, 2004) (collecting cases). This is not such a case, and it is within the exclusive province of the jury to determine whether and to what extent Defendants engaged in criminal conduct. *See United States v. Robinson*, 255 F. Supp. 3d 199, 206 (D.D.C. 2017) (precluding expert testimony that the defendant's conduct was "criminal" or "illegal," or that he violated the statutes at issue).

### C. The Government Should Not Be Permitted to Put on Expert Testimony Regarding Virtual Currency.

Virtual currency is legal currency. No federal law bars its use. Indeed, major credit card companies like Visa and MasterCard, support virtual currency transactions.[3] Prominent businesses, including publicly-traded companies, currently accept or intend to accept payment through virtual currency. These companies include, for example, Microsoft, Starbucks, Subway, Overstock, Expedia, Shopify, and PayPal.[4] Major law

---

[3] *See* https://usa.visa.com/about-visa/newsroom/press-releases.releaseId.16606.html; https://www.forbes.com/sites/michaeldelcastillo/2020/02/19/visa-grants-coinbase-power-to-issue-bitcoin-debit-cards/#2307f4b42e83 (Visa); https://www.fool.com/investing/2019/09/25/crypto-news-mastercards-new-blockchain-payment-sys.aspx; https://newsroom.mastercard.com/press-releases/mastercard-opens-access-blockchain-api-partner-banks-merchants/ (MasterCard).

[4] *See* https://www.nasdaq.com/articles/7-major-companies-accept-cryptocurrency-2018-01-31; https://www.independent.co.uk/life-style/gadgets-and-tech/news/bitcoin-stores-

firms (including Quinn Emanuel, Perkins Coie, Steptoe & Johnson, and Frost Brown Todd) also accept bitcoin as a form of payment for their legal fees.[5]

Despite the ubiquitous and perfectly legal use of virtual currency, part of the government's trial strategy is to convince the jury that Defendants engaged in criminal conduct merely because Backpage.com accepted bitcoin and other virtual currencies as a means of payment and some Backpage.com ads were paid for with bitcoin and other virtual currencies. The Court should not allow the government to take this tack under the guise of expert testimony for several reasons. First, the testimony would not assist the jury as the trier of fact. Second, the testimony would necessarily compel the inference that Defendants engaged in illegal conduct. Third, Rule 403 prohibits the testimony.

### 1. Testimony Regarding Virtual Currency Would Not Assist the Trier of Fact.

Thai's proposed testimony regarding virtual currency is not necessary to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Court need look no further than the government's own admissions in determining that the proposed testimony is not relevant.

First, the indictment does not allege a scheme in which Defendants converted fiat money into virtual currency (or vice-versa) in order to conceal the true source of funds. *None* of the transactions that form the basis for the indictment's money laundering counts involved virtual currency. *See* Dkt. 230 at 56-62 (Counts 53-100). Each of those alleged transfers, according to the indictment, were made in U.S. dollars. *Id.* The narrative section of the indictment merely alleges that Backpage accepted virtual currency as a method of payment for ads on its site, just as any number of legitimate businesses do in today's world of e-commerce. What makes the transactions at issue alleged money

---

spend-where-starbucks-whole-foods-crypto-a8913366.html.

[5] *See* https://www.law.com/americanlawyer/2019/11/05/quinn-emanuel-says-clients-can-pay-in-bitcoin/.

laundering transactions, according to the indictment, is that they involved proceeds from alleged illegal ads for prostitution, *not* that some of those ads may have been paid for with virtual currency, a critical distinction that obviates the need for the proposed expert testimony. That virtual currency may have been used to pay for some portion of ads is of no consequence in proving whether the transactions at issue in the charges constituted money laundering; the funds transferred either were or were not the proceeds of prostitution business enterprises, which Defendants either did or did not intend to facilitate or promote.

Second, the indictment makes no allegation that any of the Defendants (1) personally received or held virtual currency, (2) owned any of the digital wallets that were seized by the government, or (3) used virtual currency to purchase any of the assets that were seized by the government. *See also* Exh. B [REDACTED] at ¶ 169 [REDACTED]; Exh. C [REDACTED] at ¶ 49 [REDACTED].

Third, the indictment alleges that Backpage also accepted other methods of payment for ads on its site, including credit cards, prepaid gift cards, checks, and money orders. Just as the jury would not benefit from extensive expert testimony regarding, for example, the various micro-transactions that are required to process a payment via one of these methods, it likewise would not benefit from expert testimony regarding virtual currency.[6] Expert testimony only on virtual currency transactions, when in fact every single type of payment method available was used to purchase ads on Backpage.com, only serves to erroneously suggest that there is something inherently illegal about the use of virtual

---

[6] It does not appear that the government intends to offer expert testimony regarding other forms of payment, like credit cards or money orders. The government's expert disclosure in this respect appears to be limited to the topic of Backpage's use of payment processors, which is problematic for the reasons described in Section II(B) above. Defendants reserve the right to bring additional motions *in limine* to the extent the government further clarifies the scope of its expert designations.

currencies.

## 2. Expert Testimony Regarding Virtual Currency Would Impermissibly Compel the Inference that Defendants Engaged in Illegal Conduct.

The only possible purpose for expert testimony regarding virtual currency in this case is to create the inference in the minds of the jurors that its use is an indicia of criminal behavior. Any testimony that, for example, the use of virtual currency has been found to be associated with money laundering, that there is a degree of anonymity associated with its use, that certain "DarkNet" websites engaged in its use, or an inappropriate and unsubstantiated opinion that no legitimate enterprise would accept its use, would violate both Rule 704(b) and the prohibition against experts providing legal opinions. *See United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997) ("A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea.*"); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.") (internal quotation marks and citations omitted; emphasis in original).

Nor would such testimony have any factual basis. Virtual currency is not anonymous.[7] Indeed, virtual currency is less anonymous than cash or gift cards. *See* Exh. C REDACTED at ¶ 47(c) REDACTED. Additionally, there is no allegation that Backpage, unlike Silk Road for example, was a "DarkNet" website, designed to evade law enforcement.[8] The use of virtual currency is no more indicative of criminal activity than

---

[7] *See* https://bitcoinmagazine.com/guides/bitcoin-anonymous.

[8] This is a far cry from the Silk Road case. There, the government seized over $150 million in bitcoin from the operator of the site and *all* of the transactions on the site were

any other sort of payment method. Allowing a case agent to offer "expert" testimony to the contrary would be baseless, without probative value, and unduly prejudicial.

### D. Expert Testimony Regarding Virtual Currency Should Be Precluded Under Rule 403.

Thai's anticipated testimony regarding virtual currency should also be precluded under Rule 403. The government's money laundering charges do not directly implicate the use of virtual currency. Virtual currency was just one of many forms of payment Backpage accepted (and never the primary source of payment). Therefore, expert testimony on this topic has little to no probative value. The prejudice that Defendants would suffer if such testimony were admitted, however, would be substantial, as its effect would be to mislead the jury into thinking that the use of virtual currency is associated with criminality. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."). One can easily imagine a situation in which a juror who has never heard of or used virtual currency wrongly concludes, based solely on the testimony of a government expert, that the use of virtual currency is an indicia of illegal conduct.

The government has not indicated that it will offer expert testimony on credit card transactions or any other sort of payment (beyond summary testimony regarding the alleged flow of funds). Therefore, the only purpose of offering expert testimony on virtual currencies is to unfairly and inappropriately taint payments involving such currencies with the imprimatur of a government agent implying they are obviously criminal. That type of prejudice is precisely what Rule 403 was designed to prevent.[9]

---

conducted using bitcoin. *United States v. Ulbricht*, 858 F.3d 71, 82 (2d Cir. 2017). As the government would admit, at no point was bitcoin the sole method of payment on Backpage.com, nor has the government alleged the existence of or seized any bitcoin wallets owned by any of the Defendants.

[9] To be clear, Defendants are not suggesting that percipient witnesses be precluded from

## III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court preclude Quoc Thai from providing expert testimony regarding:  (1) the purpose of the transactions that allegedly form the basis for the indictment's money laundering counts (including the motivations underlying Backpage's use of third-party payment processors) and (2) virtual currency.[10]

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (January 2020) § II (C) (3), Ariel A. Neuman herby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

DATED:  April 17, 2020                 Respectfully submitted,

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:      */s/ Ariel A. Neuman*
                Ariel A. Neuman
       Attorneys for Defendant John Brunst

---

testifying to Backpage's alleged acceptance of virtual currency as a form of payment.  But there is no need for expert testimony on the topic, when such testimony is very likely to unduly prejudice the defense.  *See United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) ("[A] decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question.").

[10]  To the extent the Court is inclined to allow expert testimony any of these topics, Defendants request that the Court conduct a *Daubert* hearing to determine whether Thai is qualified to provide such testimony.  Defendants also reserve their right to designate a rebuttal witness on the issue of virtual currency depending on the outcome of this motion.

| | | |
|---|---|---|
| DATED: April 17, 2020 | | Thomas H. Bienert Jr.<br>Whitney Z. Bernstein<br>Bienert | Katzman PC |
| | By: | */s/ Thomas H. Bienert, Jr.*<br>Thomas H. Bienert Jr.<br>Attorneys for Defendant James Larkin |
| DATED: April 17, 2020 | | Paul J. Cambria<br>Erin McCampbell<br>Lipsitz Green Scime Cambria LLP |
| | By: | */s/ Paul J. Cambria*<br>Paul J. Cambria<br>Attorneys for Defendant Michael Lacey |
| DATED: April 17, 2020 | | Feder Law Office, P.A. |
| | By: | */s/ Bruce S. Feder*<br>Bruce S. Feder<br>Attorney for Defendant Scott Spear |
| DATED: April 17, 2020 | | The Law Office of David Eisenberg, PLC |
| | By: | */s/ David Eisenberg*<br>David Eisenberg<br>Attorney for Defendant Andrew Padilla |
| DATED: April 17, 2020 | | Joy Bertrand Esq. LLC |
| | By: | */s/ Joy Malby Bertrand*<br>Joy Malby Bertrand<br>Attorney for Defendant Joye Vaught |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2020, I served the attached document by email on the following, who are registered participants of the CM/ECF System:

| | |
|---|---|
| Andrew C. Stone | andrew.stone@usdoj.gov |
| Anthony Ray Bisconti | tbisconti@bmkattorneys.com |
| Bruce S. Feder | bf@federlawpa.com |
| David S. Eisenberg | david@deisenbergplc.com |
| Erin E. McCampbell | emccampbell@lglaw.com |
| James C. Grant | jimgrant@dwt.com |
| John Jacob Kucera | john.kucera@usdoj.gov |
| John Lewis Littrell | jlittrell@bmkattorneys.com |
| Joy Malby Bertrand | joyous@mailbag.com |
| Kevin M. Rapp | kevin.rapp@usdoj.gov |
| Margaret Wu Perlmeter | margaret.perlmeter@usdoj.gov |
| Michael D. Kimerer | mdk@kimerer.com |
| Paul John Cambria, Jr. | pcambria@lglaw.com |
| Peter Shawn Kozinets | peter.kozinets@usdoj.gov |
| Reginald E. Jones | reginald.jones4@usdoj.gov |
| Rhonda Elaine Neff | rneff@kimerer.com |
| Robert Corn-Revere | bobcornrevere@dwt.com |
| Ronald Gary London | ronnielondon@dwt.com |
| Seetha Ramachandran | sramachandran@proskauer.com |
| Thomas Henry Bienert, Jr. | tbienert@bienertkatzman.com |
| Whitney Z. Bernstein | wbernstein@bienertkatzman.com |

　　　　　　　　　　　　　　　　　　*/s/ Ariel A. Neuman*
　　　　　　　　　　　　　　　　　　Ariel A. Neuman