Bruce Feder (AZ Bar #004832)
**Feder Law Office, PA**
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Phone: 602-257-0135
Fax: 602-954-8737
bf@federlawpa.com
fl@federlawpa.com
*Attorney for Scott Spear*

Paul J. Cambria, Jr. (NY Bar #1430909/Admitted *Pro Hac Vice*)
Erin McCampbell (NY Bar #4480166/Admitted *Pro Hac Vice*)
**Lipsitz Green Scime Cambria, LLP**
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Phone: 716- 849-1333
Fax: 716-855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

*Additional counsel on following page.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR18-00422 PHX SMB-003 |
| Plaintiff, | |
| vs. | **DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY** |
| Scott Spear, | |
| Defendant. | |

. . .

. . .

i.

Thomas H. Bienert, Jr. (CA Bar #135311/Admitted *Pro Hac Vice*)
Whitney Z. Bernstein (CA Bar #304917/Admitted *Pro Hac Vice*)
**Bienert | Katzman, PC**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Phone: 949- 369-3700
Fax: 949369-3701
rtienert@bienertkatzman.com
webernstein@bienertkatzman.com
*Attorneys for James Larkin*

Gary S. Lincenberg (CA Bar #123058/Admitted *Pro Hac Vice*)
Ariel A. Neuman (CA Bar #241594/Admitted *Pro Hac Vice*)
Gopi K. Panchapakesan (CA Bar #279856/Admitted *Pro Hac Vice*)
**Bird Marella Boxer Wolpert Nessim**
**Drooks Lincenberg & Rhow, PC**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067
Phone: 310-201-2100
Fax: 310-201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

David Eisenberg (AZ Bar #017218)
**David Eisenberg, PC**
3550 N. Central Avenue, Suite 1155
Phoenix, Arizona 85012
Phone: 602-237-5076
Fax: 602-314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar #024181)
**Joy Bertrand Esq, LLC**
P.O. Box 2734
Scottsdale, Arizona 85252
Phone: 602-374-5321
Fax: 480-361-4694
Joy.bertrand@gmail.com
*Attorney for Joye Vaught*

.   .   .

.   .   .

ii.

1                                       **MOTION**

2       Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew

3 Padilla, and Joye Vaught ("Defendants"), by and through their undersigned attorneys, and

4 pursuant to the Sixth Amendment to the United States Constitution, and Rules 702 and

5 401 – 404 of the Federal Rules of Evidence, move this Court to preclude testimony from

6 the ten purported experts on "trafficking" the government has disclosed, for the reasons

7 that:

8       1)     The opinions the government seeks to elicit from the purported experts are

9 not relevant given the offenses charged;

10       2)     The proposed expert testimony will not assist the trier of fact; rather, the

11 government seeks to elicit this testimony to circumvent the rules against hearsay to

12 overcome deficiencies in its proof; and

13       3)     The "opinions" the government seeks to elicit from the purported experts

14 would be prejudicial and the prejudice would outweigh any alleged relevance.

15       Alternatively, if the Court determines that some expert testimony on "trafficking"

16 is appropriate, the Court should restrict the government to one expert on the topic to

17 avoid cumulative testimony.

18       This motion is based on the below Memorandum of Points and Authorities, the file

19 in this matter, and such arguments and evidence as may be presented.   Excludable delay

20 under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or from an order based

21 on this Motion.

22             **MEMORANDUM OF POINTS AND AUTHORITIES**

23 **I.**     **SUMMARY**

24       The key issue in this case is whether Defendants' involvement with the ownership

25 or operation of a classified advertising website facilitated business enterprises involved in

26

1   state law prostitution offenses in violation of the Travel Act, 18 U.S.C. § 1952.   The

2   prosecution says it needs 12 weeks of trial to present its case-in-chief (exclusive of time

3   for cross-examination), which apparently will not focus on Defendants' purported

4   facilitation of certain business enterprises involved in prostitution or whether Defendants

5   had the requisite specific intent.   Rather, the prosecution primarily seeks to present

6   general evidence relating to sex trafficking, especially child sex trafficking.   Defendants,

7   however, are not charged with those crimes and the "opinions" the government seeks to

8   elicit from **ten** purported experts relate almost exclusively to these alleged uncharged

9   activities.   The Court should exclude or, alternatively, severely curtail the government's

10   proposed expert testimony.

11   **II.**     <u>**BACKGROUND**</u>

12       Backpage.com ("Backpage") was an online classified advertising service through

13   which users could post ads in a variety of categories, including local places,

14   buy/sell/trade, automotive, rentals, real estate, jobs, dating, and services.   *See*

15   *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013).   Users of

16   Backpage posted millions of ads on the website every month, making Backpage.com the

17   second-largest online classified ad service in the country, after Craigslist.

18   *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1266 (W.D. Wash. 2012).   Four

19   of Defendants owned Backpage, through various entities, from its inception in 2004, until

20   they sold it in April 2015.

21       For a number of years, Backpage also had a category for "adult" services, with sub-

22   categories such as strippers and strip clubs, body rubs, and escort services.   Following

23   years of pressure from government actors, including a campaign the Seventh Circuit

24   described as an unconstitutional effort to "crush Backpage," Backpage shuttered its adult

25

26

1  services section in January 2017.[1]   *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th

2  Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016).

3       Users provided all the content for ads they posted on the website, using an

4  automated interface; Backpage did not require any content.   *Cooper*, 939 F. Supp. 2d at

5  813 ("The website works by allowing users to post their own advertisements in a range of

6  categories.").   Like virtually all websites hosting user-generated content, Backpage

7  imposed rules for the content users posted on its site (ads) and all users were required to

8  affirmatively accept the posting rules.   *Cooper*, 939 F. Supp. 2d at 813-14.   Before

9  Backpage would accept an ad, the user was required to agree to the site's Terms of Use

10  and, for ads in the adult services or dating sections, also confirm that he or she was 18 or

11  older.   *Cooper*, 939 F. Supp. 2d at 813-14.   Backpage's Terms of Use prohibited ads for

12  illegal acts and nude or lewd photos.   They also specifically forbade:   "[p]osting any

13  solicitation directly or in 'coded' fashion for any illegal service exchanging sexual favors

14  for money or other valuable consideration;" "[p]osting any material on the Site that

15  exploits minors in any way;" "[p]osting any material on the Site that in any way

16  constitutes or assists in human trafficking;" and posting any ad for products or services,

17  use or sale of which is prohibited by any law or regulation."

18       Backpage also took additional measures to police the millions of ads posted each

19  month, including "monitor[ing] … ads through automated and manual reviews."

20  *Cooper*, 939 F. Supp. 2d at 814.   Through this screening, Backpage blocked and

21  removed large numbers of ads and referred ads that may have involved child exploitation

22  to the National Center for Missing and Exploited Children.   *See McKenna*, 881

23  F. Supp. 2d at 1266-67; *Cooper*, 939 F. Supp. 2d at 814.   "Backpage.com also regularly

24  _____

25      [1] *See Backpage.com Succumbing to Government Is Blow to Free Speech Online*, Jan.
10, 2017, Ctr. for Democracy & Technology, https://cdt.org/press/backpage-com-

26  succumbing-to-government-is-blow-to-free-speech-online/.

1   work[ed] with local, state, and federal law enforcement officials by responding to

2   subpoena requests, providing officials with Internet search tools, and removing posts and

3   blocking users at the request of officials."  *Cooper*, 939 F. Supp. 2d at 814.  Backpage's

4   extensive cooperation with law enforcement led to numerous commendations from law

5   enforcement, including a commendation signed by FBI Director Robert S. Mueller III for

6   "outstanding cooperation and assistance" "in connection with an investigation of great

7   importance."

8        The government claims the tens of millions of ads posted on the site each year for

9   apartments, jobs, furniture, cars, and the like, the millions of dollars Backpage spent each

10   year reviewing ads and enforcing its posting rules, and Backpage's unparalleled

11   cooperation with law enforcement (responding to most subpoenas within 24 hours and

12   providing witnesses to testify around the country against criminals who misused the site,

13   at Backpage's expense) were just an elaborate ruse to provide cover for the fact that

14   Backpage was a "notorious for being the internet's leading source of prostitution

15   advertisements" and a "hub for the sex trade."  [Superseding Indictment, Dkt. 230, ¶¶ 1

16   and 127.]

17        The government asserts the existence of many adult-oriented ads purportedly

18   relating to unlawful conduct on Backpage, coupled with Backpage's refusal to stop

19   accepting adult-oriented ads, evidences an intent to facilitate the alleged criminal conduct

20   of those who posted content related to unlawful activities.  Obviously, these same

21   aspersions could be cast at many websites hosting user-generated content.  *The Internet*

22   *is Overrun With Images of Child Sexual Abuse. What Went Wrong?* New York Times,

23   Sept. 29, 2019.

24   **III.**    **THE GOVERNMENT'S CHARGES**

25        The indictment charges Defendants with substantive and conspiracy offenses under

26

1  the Travel Act and various money laundering statutes.   The Travel Act makes it a crime

2  to "use the mail or any facility in interstate or foreign commerce, with intent to . . .

3  promote, manage, establish, carry on, or facilitate the promotion, management,

4  establishment or carrying on, of any unlawful activity."   18 U.S.C. § 1952(a)(3).

5  Unlawful activity is defined to include "any business enterprise involving . . . prostitution

6  offenses in violation of the laws of the State in which they are committed."   *Id.* at (b).

7  In particular, the Indictment alleges the Defendants:   "used the mail and any facility in

8  interstate and foreign commerce with intent to otherwise promote, manage, establish,

9  carry on, and facilitate the promotion, management, establishment, and carrying on of an

10  unlawful activity, to wit: prostitution offenses in violation of the laws of the State in

11  which they are committed and of the United States, including but not limited to Title 13,

12  Arizona Revised Statutes, Section 13-3214."   [Dkt. 230, ¶ 201.].   The Travel Act

13  requires "proof of specific intent to promote 'unlawful activity,' defined for relevant

14  purposes, as any illegal business enterprise involving [prostitution offenses]." *United*

15  *States v. Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986).

16       The indictment's money laundering counts are predicated on the intentional or

17  knowing transacting of proceeds involved in specified unlawful activity, here, the alleged

18  Travel Act violations.   *See* 18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 1956(a)(1)(B)(i);

19  18 U.S.C. § 1956(a)(2)(A); 18 U.S.C. § 1956(a)(2)(B)(i); 18 U.S.C. § 1957(a).

20  **IV.     THE GOVERNMENT'S PROPOSED EXPERT TESTIMONY**

21       The following list identifies the proposed witnesses whose testimony the Court

22  should reject, their purported areas of expertise, and the substance of their objectionable

23  testimony (quoting directly from the government's expert disclosures) (*see* Dkts. 422 &

24  638):

25       **1.     Christina Decouflé**
              **(Human Trafficking)**

26

5

- "how human trafficking, with a focus on sex trafficking occurs, and how it occurs through online media, such as social networking websites, applications, and the internet in general"
- "how sex trafficking and prosecution (sic) industries have changed with the advent of the internet, including websites such as www.craigslist.com, www.backpage.com, and others"
- "how law enforcement conducts human trafficking investigations; with a focus on how investigations shifted from craigslist.com to backpage.com."
- "her knowledge of The Erotic Review (TER), it's (sic) owner David Elms, and TER's connection to websites such as craigslist.com and backpage.com"
- "how she posted advertisements on online websites like craigslist.com and backpage.com advertising herself (undercover) as seller (sic) of commercial sex"
- "compare and contrast how different prostitution websites (including craigslist and backpage) operated and how they responded to law enforcement"
- "descriptors and definitions of terms often used in sex trafficking and the prostitution industry, such as 'trick,' 'John,' 'pimp,' 'the game,' 'dates,' 'choosing up,' as examples"
- "how law enforcement conducts human trafficking investigations"
- "the relationship between sex traffickers and pimps and their victims"
- "the methods and process traffickers and pimps utilize to entice, coerce, or control their victims"

**2.    Dominique E. Roe-Sepowitz, M.S.W., Ph.D.[2]
   (Sex Trafficking)**

---

[2]   The United States said Dr Roe-Sepowitz is expected to testify as a fact witness, but then proceeded to say that she "can testify about her research in the area of human sex trafficking" and set out the four potential topics for expert testimony listed above.   [Dkt. 422, p. 6.]. As a fact witness, the government said that Dr. Roe-Sepowitz will testify "regarding her interactions with Backpage, the National Center of Missing and Exploited Children (NCMEC), human sex trafficking prevention and outreach groups in relation to Backpage related prostitution advertising, as well as Backpage related interactions with state and federal law enforcement."   *Id.* at 5.   Notably absent are any interactions with any *Defendants* or any information about how her interactions with persons or entities other than Defendants would be pertinent.

- "a six year analysis of sex trafficking of minors: exploring characteristics and sex trafficking patterns"
- "a Las Vegas based study on how violence is often tied to teen sex trafficking"
- "a Hawaii based study exploring online sex buyers in Hawaii"
- "the impact the Super Bowl had on sex trafficking"

### 3.  Sharon W. Cooper, M.D.
   (Sex Trafficking)

- "how a victim can fall into the world of sex trafficking, through the grooming process, force, or abduction, etc. and why certain victims may be targeted"
- "the harmful, lasting impact sex trafficking can have on its victims, primarily child victims"
- "the relationship and loyalty a child sex trafficking victim may have and show towards her trafficker"
- "common ways a sex trafficker can use force, fraud, and coercion to maintain control over his victims"
- "reasons why child sex trafficking is cited as the most underreported form of child abuse"
- "the role Backpage played in the victimization of her patients and clients"

### 4.  James E. Hardie
   (Human Trafficking)

- "terminology commonly used in the sex trafficking, such as pimp, 'bottom bitch,' MOB (money over bitches), 'date,', 'roses' (money), 'the game,' etc."
- "common dynamics between sex traffickers and their victims and how a trafficker may use drugs, force, fraud, and coercion to maintain control over their victims"
- "how human trafficking takes place in our communities from a law enforcement prospective"
- "the role the internet and Backpage played in his knowledge and understanding of human trafficking and how Backpage became part of the law enforcement investigations for human trafficking over the years"

. . .

7

5. **Derek Stigerts**
   **(Human Trafficking)**
   - "how sex trafficking occurs"
   - "common terminology used by individuals involved in sex trafficking"
   - "the role of the internet and technology in human trafficking"
   - "methods of recruitment, manipulation, and control by a trafficker with his victims"
   - "the role the internet and Backpage has (sic) played in human trafficking"

6. **Shannon Wolf, Ph.D., LPC-S**
   **(Human Trafficking)**
   - "the connection between trauma bonds and personal identity in victims of sex trafficking and how to understand them, including ways to interact with child sex trafficking victims to avoid secondary trauma"
   - "the role Backpage has played in causing trauma to victims trafficked through its website"

7. **Staca Shehan[3]**
   **(Human Trafficking, Sex Trafficking, and Child Exploitation)**
   - "the creation of a dedicated Child Sex Trafficking Team at NCMEC to respond to the increased need for technical assistance and analysis in cases involving child sex trafficking," with the Team's resources including "analysis of potential suspect names or aliases, unique tattoos, link analysis about child sex trafficking victims/potential victims, telephone numbers, addresses and/or link analysis about child sex trafficking victims/potential victims, telephone numbers, addresses and/or online postings"

8. **Donna Gavin[4]**
   **(Prostitution/Human Trafficking/Child Sex Trafficking)**

---

[3]  The government said Ms. Shehan will be a fact witness, but then described her expected testimony as set forth above—which has no connection to the factual issues in this case.  [Dkt. 422, p. 9.]

[4]  The government said Det. Gavin will be a fact witness, but then described her expected testimony as set forth above—principally opinions.  [Dkt. 638, p. 3.]   The government's disclosure said Det. Gavin's "opinions are based on her training and experience in the areas of human trafficking, crimes against children and sexual assault."   *Id.*

- "in her professional experience as a law enforcement officer for over 30 years, the 'adult' section of Backpage not only contained ads for illegal activity, including prostitution, solicitation and trafficking, but it was also the primary source for such ads and was well known for that purpose in the sex trafficking industry in Boston, Massachusetts, until the site was shut down in 2018"
- "Backpage 'adult' section provided a vehicle and anonymity for its users who exploited and trafficked young women and girls, that it provided no legitimate service and that nearly all the cases the Boston Police Department's Human Trafficking Unit found associated with Backpage involved pimp-controlled prostitution"

9. **Thomas Adam Umporowicz, Jr.**
   **(Prostitution/Human Trafficking/Child Sex Trafficking)**
   - "Backpage.com not only contains ads for illegal activity, including prostitution, solicitation and trafficking, but it is a primary source for such ads and is well known for that purpose in the sex trafficking industry in the city of Seattle and State of Washington"
   - "removing the adult section of Backpage.com would greatly assist to disrupt these sex traffickers' easy means of communication and connection for these illegal activities and therefore would reduce demand for, and access to, the sex trafficking industry within the city of Seattle and the State of Washington"
   - "the adult section of Backpage.com seems to serve no legal purpose"
   - "the evolution of prostitution and human trafficking in the Seattle area from the pre-internet era through the rise of Backpage to the post-Backpage era"
   - "how the ease-of-use, convenience and relative anonymity of using Backpage (both as a "john" and as a prostitute or pimp) increased the demand for prostitution services and the supply of persons who were advertised as prostitutes"
   - "Backpage established a near-monopoly on online prostitution advertising in the Seattle area"
   - "following Backpage's shutdown, the sex trade has partly reverted to street level prostitution (in hotel lobbies, casinos and on the streets)"
   - "Backpage was continually put on notice by law enforcement of its facilitation of prostitution through the issuance of search warrants and subpoenas across the country"

. . .

9

10. **Robert Spectre**
    **(Online Sex Trafficking and Prostitution)**
   - "the immediate online disruption following April 2018 when Backpage was seized and the Stop Enabling Sex Traffickers Act (SESTA) and Fight Online Sex Trafficking Act (FOSTA) were signed into law"
   - "since the events in April 2018 (including Backpage's shut down), the demand for purchasing sex online has been reduced drastically"

## V.   ARGUMENT

### A.   The Applicable Legal Standard.

Federal Rule of Evidence 702 provides:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Under Rule 702, expert testimony must be both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). "Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role'" to ensure the testimony is both relevant and reliable."[5] *Ruvalcaba-*

---

[5]  This motion does not address whether any testimony the government proposes satisfies the requirements of Fed. R. Evid. 702 (b), (c), or (d), and for good reason.   The government's brief synopses of the testimony it seeks to elicit from its proposed expert witnesses provides insufficient information to even begin to assess those factors. Defendants therefore reserve their right to challenge the anticipated testimony on these

*Garcia*, 923 F.3d at 1188.

"The Supreme Court recognized that the 'fit' requirement requires the proposed testimony to assist the jury to determine an issue in the case.  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*").  That is because "expert testimony carries special dangers to the fact-finding process because it 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *Id.* at n.4 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993)).  As such, when assessing "relevancy or 'fit,'" the expert's "specialized knowledge ***must be connected to the question at issue***."  *Guerrero v. United States*, No. CV-12-00370-TUC-JAS, 2015 WL 569875, at *2 (U.S.D.C. Ariz. Feb. 11, 2015) (emphasis added).

> "The trial court "must ensure that the proposed expert testimony is relevant to the task at hand, ... *i.e.,* that it logically advances a material aspect of the proposing party's case."  *Daubert II*, 43 F.3d at 1315.  "[T]he standard for fit is higher than bare relevance."  *In re Paoli*, 35 F.3d at 745.  Federal judges must exclude proffered expert evidence under Rule 702 ***unless they are convinced that it speaks clearly and directly to an issue in dispute in the case***, and that it will not mislead the jury.  *See Daubert II*, 43 F.3d at 1321.

*Id*. (emphasis added).

### B.   The Court Should Exclude the Government's Proposed Expert Testimony Because It Is Not Relevant.

The government's proposed expert testimony fails to meet the most basic requirement of Rules 702.   First, the proposed testimony is not relevant.   Again, Defendants are not charged with human trafficking, sex trafficking, or child sex

---

bases at or before trial.   Defendants are dubious, however, whether much of the testimony the government proposes can satisfy the rigors of *Kumho*, 526 U.S. at 137, and *Daubert*, 509 U.S. at 579, or is "based on sufficient facts or data" or "the product of reliable principles and methods."   Fed. R. Evid. 702(b)-(c).

1    trafficking.    To assess the elements of the charged Travel Act offenses, the jury **will not**

2    **need to understand**:   the culture of sex trafficking; how traffickers recruit, manipulate,

3    or control their victims; the connection between trauma bonds and personal identity in

4    victims of sex trafficking; the tools the Child Sex Trafficking Team at the National

5    Center for Missing and Exploited Children has at its disposal; whether the demand for

6    purchasing sex online has decreased after Congress adopted the Stop Enabling Sex

7    Traffickers Act (SESTA) and Fight Online Sex Trafficking Act (FOSTA), after Backpage

8    was shut down and Defendants were indicted; or any of the other things the government

9    wishes to elicit from its disclosed expert witnesses.   Testimony of that sort will shed no

10   light on whether Defendants allowed ads to run on Backpage, knowing they were for

11   unlawful prostitution, and with the specific intent to facilitate one or more business

12   enterprises they knew were engaged in unlawful prostitution.

13          The government likely will try to justify its proposed expert testimony by arguing

14   it will provide "background" for the jury about the world of sex trafficking, but the lurid

15   testimony the government seeks to present has no business in this Travel Act case.

16   Indeed, courts have excluded such testimony even from cases in which the defendants

17   were directly charged *with sex trafficking*.   *United States v. D'Ambrosio*, No. 1:15-CR-

18   003, 2016 WL 1385281, at *1 (M.D. Pa. Apr. 7, 2016), *aff'd and remanded sub nom*;

19   *United States v. Delgado*, 677 F. App'x 84 (3d Cir. 2017).   In *D'Ambrosio*, the

20   government sought to have Dr. Sharon Cooper (one of the government's ten trafficking

21   experts) provide "background testimony about "the culture of pimping, the nature of

22   enterprises associated with sex trafficking, victim vulnerabilities, the health care

23   problems of victims which are directly related to the actions of the traffickers, the barriers

24   to exiting what is referred to as 'the life' of 'the game,' and multiple aspects of offender

25   dynamics."   *Id*.   The government sought to justify the testimony by saying it wished to

26

12

1    "de-mystify this subculture" and to provide "'education and context' for the jury," while

2    acknowledging the testimony did not go to any element of the charged offenses.   *United*

3    *States v. Delgado*, 677 Fed. Appx. 84 (3rd Cir. 2017).

4           There, the defendants argued that Dr. Cooper's testimony about the "societal and

5    criminal justice implications of prostitution [are] not probative of whether [Defendants]

6    engaged in a criminal conspiracy to traffic women or commit other sex trafficking

7    offenses" and that her testimony was irrelevant   *D'Ambrosio*, 2016 WL 1385281, at *1.

8    The district court agreed, finding Dr. Cooper's testimony was "irrelevant to the

9    Government's case in chief" because it did "not relate to the elements of the prostitution-

10   related offenses with which Defendants are charged."   *Id.* at *2.   In reaching this

11   conclusion, the court said:

12
          ***We see no way in which Dr. Cooper's general testimony*** about the 'culture
13        of pimping, the nature of enterprises associated with sex trafficking, victim
          vulnerabilities, the health care problems of victims, the barriers to exiting,
14        and multiple aspects of offender dynamics' ***has any tendency to make it***
          ***more or less probable*** that Defendants themselves transported minors in
15        interstate commerce for the purpose of a commercial sex act.

16

17   *Id.* (emphasis added).   The Third Circuit affirmed, holding that, to satisfy the "fit"

18   requirement under Rule 702, expert testimony must be "sufficiently tied to the facts of

19   the case that it will aid the jury in resolving a factual dispute" and that the "proffered

20   testimony would not help the trier of fact in determining the defendants' guilt as to the

21   offenses charged."   *Delgado*, 677 Fed. Appx. at 86.[6]

22   _____

23   6      Although Ms. Decoufle's expert testimony was admitted in *United States v.*
     *Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010) (at the time, she went by her maiden name,
24   Hein), the government's allegations and the nature of her testimony in that case illustrates
     why such testimony would be inappropriate here.   *Brooks* involved the prosecution of
25   two pimps charged with child sex trafficking offenses.   Decoufle's testimony
26   accordingly concerned "the relationship between prostitutes and pimps," like for

                                              13

1    Here, where Defendants are charged with Travel Act violations for allegedly

2    facilitating a business enterprise involved in prostitution, the proposed expert testimony is

3    not connected to the question at issue, the testimony will decidedly not speak directly to

4    any issues in dispute in this case, and the testimony does not relate to the elements of the

5    Travel Act offenses with which Defendants are charged.   Moreover, the testimony would

6    mislead the jury, which would be overwhelmed with testimony about child sex

7    trafficking, by suggesting a verdict based on an improper basis.   *See United States v.*

8    *Ellis*, 147 F.3d 1131, 1135-36 (9th Cir. 1998) (explaining that evidence offered to show

9    intent and potential victim impact is not relevant when "neither intent nor potential victim

10    impact were elements of the charge" (quotations omitted)).

11

12    **C.**     **The Court Should Exclude the Government's Proposed Expert**
          **Testimony Because It Will Not Help the Jury to Understand the**
13          **Evidence or Determine Facts in Issue.**

14    Even if the proposed expert testimony was relevant (it clearly is not), the jury will

15    not need the proposed expert testimony to understand the pertinent evidence or to

16    determine any facts in issue.   Although this case involves the alleged facilitation of

17    business enterprises involved in prostitution, there is no need for testimony regarding, for

18    example, the complex interpersonal dynamics that might lead someone into prostitution

19    or to be unable to leave it.   The Travel Act charges instead require an intent to promote a

20    business enterprise engaged in prostitution offenses in violation of state law.   The key

21    evidence will include classified ads that ran on the website and were available to the

22    public.   The ads at issue were published on a general-purpose classified advertising

23    website—for consumption by the general public.   The jury can look at the ads and read

24    _____

25    example, "the role of the 'bottom girl' . . . who often trains new prostitutes and collects
     their earnings."   *Id.* at 1196.   Contrary to her proposed testimony here, in *Brooks*, her

26    testimony "closely fit the facts of" that case.   *Id.*

14

1   them.   It will not need expert testimony to explain the ads to them—nor to explain what

2   prostitution is.

3          Moreover, the government does not seek to present expert testimony to help the

4   jury understand the evidence, but instead seeks to present hearsay evidence laundered

5   through experts.   And not just any hearsay, but hearsay evidence of the worst kind:

6   anonymous hearsay.   Testimony that relies on supposed interviews of the experts'

7   clients, patients, interview subjects, anonymous callers responding to fake Backpage ads,

8   or even arrested traffickers is not just irrelevant, it is pure hearsay.   The government does

9   not propose to put those clients, patients, interview subjects, anonymous callers, or

10  traffickers on the stand to be cross-examined, nor have any of them been disclosed to or

11  questioned, under oath, by defense counsel.   *See United States v. Mejia*, 545 F.3d 179

12  (2nd Cir. 2008) (vacating conviction due to the trial court's admission of impermissible

13  expert testimony where some of the expert's testimony "involved merely repeating

14  information he had read or heard.").

15
16
17          "Under Rule 703, experts can testify to opinions based on inadmissible
            evidence, including hearsay, if experts in the field reasonably rely on such
            evidence in forming their opinions. . . . The expert may not, however,
            simply transmit that hearsay to the jury. . . . Instead, the expert must form
18          his own opinions by applying his extensive experience and a reliable
            methodology' to the inadmissible materials.   Otherwise, the expert is
19          simply 'repeating hearsay evidence without applying any expertise
            whatsoever, a practice that allows the Government to circumvent the rules
20          prohibiting hearsay.'"
21

22  *Id.* at 197 (internal citations and quotation marks omitted).   Allowing hearsay evidence

23  also violates Defendants' constitutional rights under the Confrontation Clause.   *Id.* at

24  198.

25

26  .   .   .

15

**D.** **The Opinions the Government Seeks to Elicit from the Expert Witnesses Would Be Prejudicial And The Prejudice Would Outweigh Any Alleged Relevance.**

Even if the Court finds any of the proposed expert testimony relevant, even relevant evidence may still, and should be, excluded if its probative value is outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The topics for the proposed expert witness testimony make clear that the government anticipates eliciting substantial "other bad act" evidence, related not to Defendants, but to others unconnected to this prosecution, from the proposed experts, under the guise of expert testimony. Worse, the government seeks to couple that evidence with other expert testimony that those bad acts of the third parties would not have occurred, or would have occurred with lesser frequency, were it not for Defendants. Since Defendants are not accused of committing the "bad acts" of trafficking and pimping, etc., Fed. R. Evid. 404 prohibits such testimony *completely*.

Even where propensity evidence might be relevant, it poses a serious threat of "unfair prejudice" under Rule 403. It creates the possibility that the jury will be lured into finding guilt on an improper basis and that the defendant is the likely "perpetrator of the current crime." *Old Chief v. United States*, 519 U.S. 172 (1997). "[U]nfair prejudice . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* at 179. "Its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Id.* at 181.

The government has listed at least ***ten*** different "experts" to testify to essentially the same subject matter, *i.e.* child and human trafficking, including many "other bad acts" not committed by (or alleged to have been committed by) Defendants. In effect, the

16

1   government is seeking to side-step its obligation to prove its charges, with admissible

2   evidence, against each individual Defendant.   This approach runs afoul of basic notions

3   of due process as well as of Fed. R. Evid. 403.   Such testimony would be highly

4   prejudicial to the defense and would waste precious court time and resources and should

5   therefore be precluded.

6        **E.    If the Court Determines Any Expert Testimony on "Trafficking" is**

7        **Appropriate, the Court should Restrict the Government to One Expert**

8        **on that Topic.**

9        Should the Court determine that the government's proposed testimony on

10  "trafficking" survives constitutional and statutory challenges, the Court should restrict the

11  government to one expert on this topic.   There is no need to present ten witnesses

12  offering identical or similar testimony.   Such needlessly cumulative testimony should be

13  barred under Federal Rule of Evidence 403.   *See United States v. Socony-Vacuum Oil*

14  *Co.*, 310 U.S. 150, 230 (1940) (finding testimony to be cumulative and while "not wholly

15  irrelevant to the issues, it was clearly collateral" and that the trial court has a "wide range

16  for discretion in the exclusion of such evidence"); *Campbell Industries v. M/V Gemini*.

17  619 F.2d 24, 28 (9th Cir. 1980) (affirming district court's decision to preclude two

18  experts from offering testimony bearing on defendant's financial condition that was

19  cumulative of other evidence introduced at trial).   This Court should preclude the

20  proposed experts for the aforementioned reasons, but in no event should more than one of

21  the ten experts on "trafficking" be permitted.

22  **VI.    CONCLUSION.**

23       For all these reasons, this Court should enter an order precluding testimony from the

24  ten purported experts on "trafficking" the government has disclosed, or, alternatively, if the

25  Court determines that some expert testimony on "trafficking" is appropriate, the Court should

26

17

1  restrict the government to one expert on the topic to avoid cumulative testimony.

2

3          RESPECTFULLY SUBMITTED this 17th day of April, 2020.

4
                          Bruce Feder
5                         **FEDER LAW OFFICE, P.A.**

6                         /s/ Bruce Feder
7                         Bruce Feder
8                         *Attorney for Defendant, Scott Spear*

9   *Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures*
10  *Manual (January 2020) § II (C) (3), Bruce Feder herby attests that all other signatories*
    *listed, and on whose behalf this filing is submitted, concur in the filing's content and have*
11  *authorized its filing.*

12

13                        Paul J. Cambria, Jr.
                          Erin McCampbell
14                        **LIPSITZ GREEN SCIME CAMBRIA, LLP**
15                        /s/ Paul Cambria, Jr.
16                        Paul Cambria, Jr.
                          *Attorneys for Michael Lacey*
17

18                        Thomas H. Bienert, Jr.
                          Whitney Z. Bernstein
19                        **BIENERT | KATZMAN, P.C.**
20                        /s/ Whitney Z. Bernstein
                          Whitney Z. Bernstein
21                        *Attorneys for James Larkin*

22

23

24

25  .   .   .
    .   .   .
26
                                    18

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
**BIRD    MARELLA    BOXER    WOLPERT**
**NESSIM DROOKS LINCENBERG & RHOW,**
**P.C.**
/s/ Ariel A. Neuman
Ariel A. Neuman
*Attorneys for John Brunst*

David Eisenberg
**DAVID EISENBERG, P.C.**
/s/ David Eisenberg
David Eisenberg
*Attorney for Andrew Padilla*

Joy Malby Bertrand
**JOY BERTRAND ESQ., L.L.C.**
/s/ Joy Malby Bertrand
Joy Malby Bertrand
*Attorney for Joye Vaught*

19

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on the 17th day of April, 2020, I electronically transmitted the foregoing to the Clerk of the Court via the CM/ECF system for filing and

3  transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5  **Kevin Rapp:**    Kevin.Rapp@usdoj.gov
   **Andrew Stone:**    Andrew.Stone@usdoj.gov

6  **Margaret Perlmeter:**    Margaret.Perlmeter@usdoj.gov
   **John Kucera:**    John.Kucera@usdoj.gov

7  **Reginald Jones:**    Reginald.Jones@usdoj.gov

8  **Peter S. Kozinets:**    Peter.Kozinets@usdoj.gov
   *Attorneys for the United States*

9

10  **Anne Michelle Chapman,** anne@mscclaw.com
    **Erin E. McCampbell,** emccampbell@lglaw.com

11  **Anthony R. Bisconti,** tbisconti@bienertkatzman.com

12  **Ariel A. Neuman,** aan@birdmarella.com

13  **James C. Grant,** jimgrant@dwt.com

14  **Lee David Stein,** lee@mscclaw.com
    **Paul J. Cambria,** pcambria@lglaw.com

15  **Robert Corn-Revere,** bobcornever@dwt.com

16  **Ronald Gary London,** ronnielondon@dwt.com

17  **Janey Henze Cook,** janey@henzecookmurphy.com
    **John Lewis Littrell,** jlittrell@bmkattorneys.com

18  **Seetha Ramachandran,** Seetha.Ramachandran@srz.com

19  **Thomas H. Bienert,** Jr. tbienert@bienertkatzman.com

20  **Whitney Z. Bernstein,** wbernstein@bienertkatzman.com
    **Gary S. Lincenberg,** glincenberg@birdmarella.com

21  **Gopi K. Panchapakesan,** gpanchapakesan@birdmarella.com

22  **Michael D. Kimerer,** mdk@kimerer.com

23  **Rhonda Elaine Neff,** rneff@kimerer.com
    **David S. Eisenberg,** david@deisenbergplc.com

24  **Joy Malby Bertrand, Joy.Bertrand@gmail.com**

25

26  *By: /s/   A. Jones*

20