MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

LISSETH BAYONA
Law Student, Extern
USC Gould School of Law

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-18-00422-PHX-SMB |
|---|---|
| Plaintiff, | |
| v. | **MOTION IN LIMINE TO ADMIT EVIDENCE AS NON-HEARSAY STATEMENTS** |
| Michael Lacey, et al., | |
| Defendants. | |

## SUMMARY OF ARGUMENT

The United States moves *in limine* to admit three categories of evidence that are not

hearsay: (1) statements made by attorneys Elizabeth McDougall and Don Bennett Moon;

(2) statements made in emails, correspondence, and PowerPoint reports by a brand analysis firm, various public relation firms and attorneys acting in a public relations capacity; and (3) statements made by co-conspirators Dollar Bill and David Elms.  *See* Fed. R. Evid. 801(d).

Elizabeth McDougall (McDougall) and Don Bennett Moon (Moon) served as attorneys for Backpage and Moon also had a personal attorney-client relationship with Defendants Lacey and Larkin.  Backpage attorneys have also identified Moon as "outside counsel."  Thus, statements made by McDougall and Moon publicly, and in emails and meetings with various parties are statements made by a person whom the party (Defendants) authorized to make a statement on the subject and were made by the party's agent on a matter within the scope of that relationship while it existed under Rules 801(d)(2)(C) and (D).  The statements are also not hearsay because Defendants manifested their belief in the truth of the statements under Rule 801(d)(2)(B).

Next, the government seeks to admit statements made in emails, correspondence, PowerPoints reports by a brand analysis firm, various public relation firms and attorneys acting in a public relations capacity.  The statements are not hearsay because the firms were authorized to make the statements on the subject under Rule 801(d)(2)(C). Additionally, the statements are imputed agent statements under subsection (d)(2)(D).  Because the statements were made by an agent within the scope of their agency and, they are also categorically not hearsay under subsection (d)(2)(D).

Finally, the government seeks to admit the statements of co-conspirators Dollar Bill and David Elms under Rule 801(d)(2)(E) as statements of co-conspirators made during the course of and in furtherance of the conspiracy. The government's evidence at trial will establish that (1) there was a conspiracy (2) the defendants and declarants were participants in the conspiracy, and (3) statements were made by declarants during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **Statements Made by Elizabeth McDougall and Don Bennett Moon are Admissible as Non-Hearsay Statements**

A.   **Elizabeth McDougall**

Under Rule 801(d)(2)(C), a statement is not hearsay if it is offered against an opposing party and "was made by a person whom the party authorized to make a statement on the subject." "[S]peaking authority may exist because of the nature of the relationship and the task the speaker is to perform, as in the case of attorneys . . . ." *United States v. Bonds*, No. CR 07-00732 SI, 2009 WL 416445, at *4 (N.D. Cal. Feb 19, 2009). Thus, "a statement made by an attorney is generally admissible against the client." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Under Rule 801(d)(2)(D), a statement is not hearsay if it is offered against a party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." In particular, statements made by an attorney concerning a matter within his employment and on behalf of his client fall within this rule. *United States v. Flores*, 679 F.2d 173, 177-78 (9th Cir. 1982) (holding no error in admitting, under Fed. R. Evid. 801(d)(2)(C) or (D), a letter by defendant's attorney which admitted defendant's possession of firearms); *United States v. Freeman,* 519 F.2d 67, 70 (9th Cir. 1975) ("[U]nequivocal admissions by an attorney, clearly acting within the scope of his authority, may indeed be binding on his client."); *United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir. 1969) (finding statements by defendant's attorney in a meeting with IRS agents were properly received as admissions even though defendant was not at the meeting). The rationale is that "an agent or servant who speaks on any matter within the scope of his agency or employment during the existence of that relationship, is unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny v. Painter*, 653 F.2d 1164, 1172 (7th Cir. 1981).

Statements McDougall made in emails, correspondence, and publicly as a Backpage spokesperson on CNN, Dateline, and in a videotaped New York City Council

meeting (and other media appearances) are admissible as hearsay exclusions under Rule 801(d)(2)(C) & (D). They fall under Rule 801(d)(2)(C) because McDougall was authorized to make statements about the subjects discussed. Defendants hired McDougall as general counsel in February 2012 to represent Backpage's position in public appearances, a role she held until Backpage was seized in April 2018. Similarly, the statements are admissible under Rule 801(d)(2)(D) because she was speaking on matters within the scope of her relationship with Backpage while it existed.

Finally, McDougall's statements are also admissible non-hearsay because they were effectively adopted by Defendants as their own. Under Rule 801(d)(2)(B), a statement of a third party is admissible as an admission of a party-opponent where the party has manifested his belief in the truth of the statement. Notably, such an "adoption" can be manifested by silence: "The general rule concerning admissions by silence or acquiescence is well established. When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him." Fed. R. Evid. 801(d)(2)(B); *see also United States v. Moore*, 522 F.2d 1068, 1075 (9th Cir. 1975).

McDougall's statements to the public and media undoubtedly fall within this exception. First, the evidence will show that McDougall often explicitly informed Defendants or their agents about her statements prior to public appearances. Second, given the personal significance to Defendants' public opinion and the importance of Backpage's official representation in the media and to the public, Defendants had the opportunity to disavow or correct any inaccurate statements made by McDougall and would have done so if any of those statements were incorrect. Third, the evidence demonstrates that Defendants never disavowed or corrected any of McDougall's statements concerning Backpage. Therefore, under Rule 801(d)(2)(B), Defendants are deemed to have adopted those statements as their own.

### B.    Don Bennett Moon

Statements made by Moon are admissible under Rule 801(d)(2)(C) because he was

authorized to make statements about all business matters related to Backpage. "Authority in the context of 801(d)(2)(C) means 'authority to speak' on a particular subject of someone else." *Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 619 (4th Cir. 1991). The proponent must show the agent's authority by a preponderance of the evidence.  Beginning at least in 2011, Moon took an active role in managing Backpage's corporate strategy with respect to public relations and handling the media backlash related to the company's publishing of prostitution advertisements. Although it is unclear what his official title was within Backpage, Moon acknowledged an attorney client relationship with Defendant Larkin in a California Superior Court proceeding. (*See* Ex. A.)  Additionally, Moon was Backpage's spokesperson at meetings with various anti-trafficking organizations and law enforcement agencies (*e.g.*, NCMEC, the Seattle Attorney General's Office).  In light of Moon's authority to speak on Backpage's corporate strategy, Moon's statements qualify as authorized admissions by a speaking agent under Rule 801(d)(2)(C).

Alternatively, statements made by Moon are also admissible under Rule 801(d)(2)(D) because Moon was Backpage's agent and the statements were within the scope of that relationship and were made while the relationship existed.   The evidence shows that since at least 2011, Moon has served as Backpage's spokesperson and advisor and was heavily involved in the public relations and legal strategy of the company. *Tisa v. Beasley FM Acquisition Corp.*, 343 F.App'x 793, 798 (3d Cir. 2009) (finding long-time consultant who had a heavy hand in business operations as an agent).  Moon made the relevant admissions and statements in emails and during meetings on behalf of Defendants in his capacity as Backpage's agent.

## II.   Statements Made by Brand Anaysis Firms, Public Relation Firms and Attorneys are Admissible Non-Hearsay Statements

Statements by a brand analysis firms, such as reports and emails from representatives of Greenberg Quinlan Rosner Research ("GQR") and public relation firms (e.g., Goddard Global, Culloton Strategies, Sitrick, and Barabara Roesner) or attorneys

(Ed McNally, Steve Suskind, Samuel Fifer, and Hemanshu Nigam) all acting in a public relations capacity constitute statements "made by a person whom the party authorized to make a statement on the subject."  Fed. R. Evid. 801(d)(2)(C); *see also Reid Bros. Logging Co. v. Ketchikan Pulp Co*., 699 F.2d 1292, 1306 (9th Cir. 1983) (outside report authorized by party was non-hearsay admission).

*Reid Brothers* supports the conclusion that a brand analysis firm and public relation firms' reports, emails, power points, correspondence, and statements to the press are admissible under Rule 801(d)(2)(C).  *Id.*  In *Reid Brothers*, the defendants challenged the admission of a report prepared by their parent-company detailing the company's logging operations, which was created to promote better business practices.  *Id.*   Similarly, here, Defendants authorized brand analysis firms and public relation firms to produce reports and/or prepare strategies to further Defendants' knowledge of how to best modify Backpage's brand position.  Further, where in *Reid Brothers* the employee's statements regarding the price structure of log purchases were necessary to make the report accurate, so too here, the brand analysis firms' and public relation firms statements regarding Backpage's brand position were necessary to make their reports accurate.     In *Reid Brothers*, it was not necessary for the plaintiffs, who offered into evidence the employee's statements, to show defendants specifically authorized statements regarding the price structure of log purchases; it was sufficient that defendants authorized a survey of its own log operations from which said price information came.  *Id.*

Here, Defendants authorized a review of Backpage's brand position, and the brand analysis firms' statements in furtherance of accurately assessing its brand position were thereby impliedly authorized. Likewise, they also retained public relation firms and attorneys to represent them in various public relation situations and their statements on behalf of Backpage are admissible under Fed. R. Evid. 801(d)(2)(C).

Moreover, all statements by brand analysis and public relation firms constitute statements of a party's agent under Rule 801(d)(2)(D) and are therefore admissible against each Defendant as if it were his own statement. *See* Fed. R. Evid. 801(d)(2)(D) (excluding

- 6 -

1    from the definition of hearsay any "statement by the party's agent or servant concerning a

2    matter within the scope of the agency or employment, made during the existence of the

3    relationship").

4         Both elements that are required to invoke Rule 801(d)(2)(D) are easily satisfied

5    here.  First, each brand analysis firm, public relations firm or attorneys acting in a public

6    relations capacity qualifies as an "agent" because Backpage retained each firm or attorney

7    to research brand positioning issues and/or formulate public relations strategy to provide

8    defendants with reports detailing those issues, proposing corrective actions or preparing a

9    power point detailing media strategy. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,*

10   *Ltd.*, 454 F. Supp. 2d 966, 973-74 (C.D. Cal. 2006) (holding independent contractor was

11   agent of defendant regardless of precise contractual relationship between agent and party

12   against whom evidence was being offered).  Indeed, some of the emails between the

13   various firms' employees and Defendants are contractual agreements, thereby establishing

14   agency. Second, the reports and emails concern matters falling within the firms'

15   responsibilities with Backpage.

16   **III.    Co-Conspirator Statements Made By Dollar Bill and David Elms are**
          **Admissible Non-Hearsay Statements**

17

18        **A.    Dollar Bill**

19        Statements "made by [a] party's co-conspirator during and in furtherance of the

20   conspiracy" may be offered against an opposing party because such statements are not

21   hearsay.  Fed. R. Evid. 801(d)(2)(E).  Co-conspirator statements are admissible under Rule

22   801(d)(2)(E) if "there [is] evidence that (1) there was a conspiracy, (2) involving the

23   declarant and the nonoffering party, and (3) that statement was made 'during the course

24   and in furtherance of the conspiracy.'"  *Bourjaily v. United States*, 483 U.S. 171, 176

25   (1987) (citing Fed. R. Evid. 801(d)(2)(E)). These preliminary questions concerning the

26   admissibility of evidence are resolved by the court by a preponderance of the evidence.  *Id.*

27   at 175.

28

1    It is within trial court's discretion to admit co-conspirator statements before the
2    conspiracy and the defendant's connection to it are established, *United States v. Loya,* 807
3    F.2d 1483, 1490 (9th Cir. 1987), subject to the condition that the statements will be stricken
4    if the government fails to provide sufficient proof that the defendant was connected to the
5    conspiracy. *United States v. Spawr Optical Research Inc.*, 685 F.2d 1076, 1083 (9th Cir.
6    1982).   The United States need not prove the existence of a formal agreement to establish
7    conspiracy.   *See United States v. Abushi*, 682 F.2d 1289, 1293 (9th Cir. 1982) ("An
8    unlawful conspiracy may be proven by circumstantial evidence; no formal agreement is
9    necessary.").   Nor does the co-conspirator need to be formally charged.   "An individual
10   need not be indicted to be considered a co-conspirator for purposes of" this exception to
11   the hearsay rule. *United States v. Williams*, 989 F.2d 1061, 1067 (9th Cir. 1993).  Instead,
12   an agreement constituting a conspiracy can be inferred from the acts of the parties and other
13   circumstantial evidence. *United States v. Becker*, 720 F.2d 1033, 1035 (9th Cir. 1983);
14   *Abushi*, 682 F.2d at 1293.

15   Here, the evidence will establish by a preponderance of the evidence all of the facts
16   necessary for admission of the co-conspirator statements.  Specifically, the first two parts
17   of Rule 801(d)(2)(E) are satisfied because the evidence will show Backpage and Dollar
18   Bill had a business relationship; Backpage paid Dollar Bill a fee in exchange for his
19   promotion of the website by arranging for pimps and prostitutes to post ads on Backpage.
20   (See Doc. 230, ¶¶ 59-67).   Defendants advised Dollar Bill how to wordsmith ads so they
21   would not be rejected by Backpage's moderators.  (*Id.*)  As a result, Dollar Bill was one of
22   Backpage's largest adult accounts and was instrumental in assisting Backpage in building
23   its client base.

24   The third part of Rule 801(d)(2)(E) requires proof that the statement was made in
25   the course of and in furtherance of the conspiracy.  *See United States v. Yarbrough,* 852
26   F.2d 1522, 1535 (9th Cir. 1988) (to be made in furtherance of the conspiracy, a statement
27   "must further the common objectives of the conspiracy or set in motion transactions that
28   are an integral part of the conspiracy").   Courts have interpreted the "in furtherance of"

requirement broadly. *See id*. at 1535-36.   Here, there is no question Dollar Bill's statements facilitated the ongoing operation of the conspiracy. (*See* Ex. B; example of an email exchange between Dollar Bill and Backpage.) For example, Dollar Bill informed Defendants that his ads had been deleted from Backpage so that Defendants could restore the ads; and, it was those ads that set in motion transactions between pimps, prostitutes, and Johns. (*Id*.)

Finally, the Supreme Court expressly held in *Crawford v. Washington*, 541 U.S. 36, 56 (2004), that statements made in furtherance of a conspiracy were not "testimonial," and as such, their admission does not violate the Confrontation Clause.  Here, the statements the government seeks to introduce are non-testimonial because they were discussions among and between the co-conspirators at the time of the conspiracy, and therefore, negating any Confrontation Clause issue.

### B.    David Elms

Similar to Dollar Bill, David Elms of the Erotic Review ("TER") was also a co-conspirator and his statements are admissible as co-conspirator statements, particularly the statements he made to Ferrer.  There is sufficient proof that the conspiracy exists and of Elms' connection to the conspiracy. (See Doc. 230, ¶¶ 45-58).   Several internal communications indicate that Defendants and Elms acted in concert to achieve a common purpose. (See Ex. C; example of an email exchange with Backpage.)  As discussed in the Superseding Indictment, Backpage had a deal with TER for reciprocal links, which created brand awareness and increased page views from TER daily.  Thus, TER played a crucial role in driving traffic to the Backpage website.  TER was the number one outside source of referrals and was responsible for hundreds of thousands of monthly reviews.

Moreover, Elms's statements were made in the course of and in furtherance of the conspiracy because his statements furthered the common objectives of the conspiracy, as well as set in motion transactions that were an integral part of the conspiracy – to increase the posting of prostitution ads on backpage.com.  Elms's statements to Ferrer facilitated the reciprocal link program between Backpage and TER.  The reciprocal links agreement

between Elms and Ferrer furthered a common objective of the conspiracy because it increased traffic to Backpage and expanded its business in targeted cities. Likewise, it set in motion transactions between prostitutes, pimps, and Johns.

**IV.    Conclusion**

For all the foregoing reasons, the government respectfully requests that the Court grant the government's request to admit the above discussed evidence at trial.

Respectfully submitted this 17th day of April, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/Marjorie Dieckman*
Marjorie Dieckman
U.S. Attorney's Office