**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Michael Lacey, et al.,<br><br>        Defendants. | No. CR-18-00422-001-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant John Brunst's Motion to Dismiss Indictment on Failure to Allege the Necessary Elements of the Travel Act, (Doc. 746, "Mot."). Defendants Lacey, Larkin, Padilla, Spear, and Vaught joined the Motion. (Docs. 751, 754, 755, 757, 787.) The Government filed a Response, (Doc. 776, "Resp."), and Defendant filed a Reply, (Doc. 798, "Reply"). The Court has considered the pleadings, the superseding indictment, (Doc. 230, "SI"), relevant law, and oral argument, (Docs. 850, 852, 857, 863), and enters the following Order.

**I.    BACKGROUND**

This complex criminal case concerns seven individuals who were indicted for their conduct while operating Backpage.com, a classified ad website specializing in "adult services" that was largely used as a forum for soliciting prostitution. (*See generally* SI ¶¶ 1-194.) Of the 100 counts, "[t]he charges include conspiracy, violations of the Travel Act, and money laundering." *United States v. Lacey*, 423 F. Supp. 3d 748, 752 (D. Ariz. 2019). More specifically, and as the Court previously recounted:

> The first count in the SI is conspiracy, 18 U.S.C. § 371, to commit a violation of the Travel Act, 18 U.S.C. § 1952(a)(3)(A), against all defendants. (SI ¶¶ 195–99). Counts 2–51 are violations of the Travel Act, 18 U.S.C. § 1952(a)(3)(A), against all defendants. (SI ¶¶ 200–01). Count 52 is conspiracy to commit money laundering, 18 U.S.C. § 1956(h), against Lacey, Larkin, Spear, Brunst, and Hyer. (SI ¶¶ 202–03). Counts 53–62 are charges for concealment money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), against Lacey, Larkin, Spear, Brunst, and Hyer. (SI ¶¶ 204–05). Counts 63–68 are charges of international money laundering, 18 U.S.C. § 1956(a)(2)(A), against Lacey, Larkin, Spear, Brunst, and Hyer. (SI ¶¶ 206–07). Counts 69–99 are charges of transactional money laundering, 18 U.S.C. § 1957(a). (SI ¶¶ 208–09). Finally, Count 100 is a charge of international concealment money laundering, 19 U.S.C. § 1956(a)(2)(B)(i), against Lacey. (SI ¶¶ 210–11).

*Lacey*, 423 F. Supp. 3d at 753 (footnote omitted).

With these counts in mind, all of which are challenged here, the Court turns to the underlying factual allegations. At the motion to dismiss stage, courts must "accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged," *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002), and "should not consider evidence not appearing on the face of the indictment," *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (quoting *United States v. Marra*, 481 F.2d 1196, 1200 (6th Cir. 1973)). Challenging an indictment "sufficient on its face, on the ground that the allegations are not supported by adequate evidence," *Jensen*, 93 F.3d at 669 (citation omitted), is improper at this stage.

### A. Factual Allegations

"The SI contains a lengthy summary of the alleged facts." *Lacey*, 423 F. Supp. 3d at 753. Within its 92 pages, it alleges Defendants "were aware that the overwhelming majority of the website's 'adult' and 'escort' ads were actually ads for prostitution and took a variety of steps to intentionally facilitate that illegal activity." (SI ¶ 34; *see also id.* ¶¶ 9-11.) It also alleges Defendants strategized to increase the number of prostitution ads on Backpage.com and evade detection by moderating the website and sanitizing the postings. (*Id.* ¶¶ 10-11, 13, 35-70, 72-73, 75, 77-96, 98-104, 108, 110, 112, 116-26, 128-30, 132-34,

136, 139, 143, 145, 148.) It further alleges these strategies were created to "conceal the true nature of the ads on the website," (*id.* ¶ 11), identify prostitutes currently advertising on rival websites and offer them free ads on Backpage.com in an attempt to secure future business (*id.* ¶¶ 35-44), engage with The Erotic Review to create reciprocal links, and enter into formal business arrangements with known prostitutes for repeat business (*id.* ¶¶ 45-67).

The SI also lays out facts explaining how Defendants intentionally facilitated various people engaged in the business of prostitution. (*See, e.g. id.* ¶¶ 9, 11, 36, 59-62, 132.) As alleged, Defendants knew their illegal efforts to facilitate individuals involved in the business of prostitution were successful too. (*Id.* ¶¶ 1, 10-11, 23-26, 28, 43, 71, 74, 76, 78, 92, 97, 109, 111, 140, 144, 147, 182, 187.) In particular, a vast majority of Backpage.com's revenue was allegedly derived from Defendants' allegedly illicit efforts to promote and facilitate these extremely lucrative prostitution businesses. (*Id.*)

As it concerns count 1, the SI alleges, *inter alia*, Defendants "knowingly and intentionally agreed, confederated, and conspired with each other, and with others known and unknown to the grand jury" to violate the Travel Act to obtain money through their operation of Backpage.com. (*See generally* SI ¶¶ 1-199.) Counts 2-51 are the substantive Travel Act violations. For those, the SI incorporates all preceding allegations, (*id.* ¶ 200), and alleges Defendants:

> 201. On or about the dates set forth below, each instance constituting a separate count of this Superseding Indictment, in the District of Arizona and elsewhere, defendants LACEY, LARKIN, SPEAR, BRUNST, HYER, PADILLA, and VAUGHT, and others known and unknown to the grand jury, used the mail and any facility in interstate and foreign commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States, including but not limited to Title 13, Arizona Revised Statutes, Section 13-3214, and thereafter performed and attempted to perform, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the unlawful activity, as follows: [alleging fifty instances that Defendants

published ads to facilitate unlawful prostitution businesses][.] In violation of 18 U.S.C. § 1952(a)(3)(A).

(*Id.* ¶ 201.) Defendants' publishing of the specified ads occurred between September 10, 2013 and February 6, 2018. (*Id.*) This publishing, the means for facilitating the underlying "unlawful activity" for each Travel Act count, allegedly facilitated prostitution-related business activities and transactions on fifty distinct occasions. (*Id.*) Some ads marketed the repeated sale of particular victims, (SI ¶ 201, Counts 2, 4-5, 12-17, 19-24), whose services were sold in multiple ads, (SI ¶¶ 160-176), while others offered individuals for sex by using coded terms commonly used for prostitution services,[1] (SI ¶¶ 148-49, 201, Counts 27-51). The remaining ads describe offers proposed by "P.R." that include the repeated sale of individuals for sex under a "per-session" pricing scheme. (SI ¶¶ 132, 201, Counts 3, 6-11, 18, 25-26.) Counts 52-100 concern how certain Defendants laundered or conspired to launder money illicitly obtained from unlawful conduct on specific dates.[2] (*Id.* ¶¶ 202-211.)

## II.   LEGAL STANDARD

An indictment must set forth the essential facts supporting each element of the charged offenses. Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."). An indictment is sufficient when it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). As the Supreme Court explained long ago:

> The rigor of old common-law rules of criminal pleading has yielded, in

---

[1] For example, some ads offered the sale of individuals for a "GFE" or "Girl Friend Experience," which is a "coded sex act for money." (*See* SI ¶¶ 148-49, 201, Counts 27-51.)
[2] Although the Court only highlights select portions of the SI, it is more fully discussed in the Court's prior Order, which is adopted and incorporated here. *See Lacey*, 423 F. Supp. 3d at 753-757.

- 4 -

> modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

*Hagner v. United States*, 285 U.S. 427, 431 (1932) (citations omitted); *see also United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988) (noting how the indictment must be sufficiently detailed "(1) to enable the defendant to prepare for his defense; (2) to ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." (citation omitted)).

In determining whether Rule 7(c)(1) is satisfied, "an indictment should be: (1) read as whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982). Often times, indictments "require little more than that the indictment give the defendants sufficient notice of the crime" to fulfill their constitutional function. *Id.* at 899 n.5. Thus, "[a]n indictment that tracks the words of the statute [that] is violated is generally sufficient [when] implied, necessary elements, not present in the statutory language [are] included in [the] indictment." *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995). But an indictment is not insufficient merely because it fails to recite the precise statutory language. *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991). Rather, the question is whether it omits any reference to an element of the charged crime. *See United States v. Shafi*, 252 F. Supp. 3d 787, 792 (N.D. Cal. 2017) (noting that, if definitional, "the relevant facts do not need to be pleaded in the indictment unless they are necessary to 'fairly inform [] a defendant of the charge against him which he must defend; and enable[] him to plead an acquittal or conviction in bar of future prosecutions of the same offense.'" (quoting *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009))).

Again, the test is "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." *Buckley*, 689 F.2d at 897 (citation omitted); *id.* at 900 ("The indictment stage of the proceedings is not the appropriate time to require the Government to present its proof."). Although referring to the statute in the indictment is "not alone a sufficient substitute for the recitation of an essential element," *United States v. Gama-Bastidas*, 222 F.3d 779, 787 (10th Cir. 2000), such reference is relevant in assessing the sufficiency of the indictment. *See United States v. Dashney*, 117 F.3d 1197, 1206 (10th Cir. 1997) (holding that the omission of "willful," was not fatal to an indictment that cited the statute and "charg[ed] the defendant with knowingly, intentionally, and unlawfully structuring . . . [,] words of similar import sufficient to adequately inform [the defendant] of the charge against him"); *see also United States v. Bolton*, 68 F.3d 396, 400 (10th Cir. 1995) (upholding indictment in part because it specifically cited the statute at issue), *cert. denied*, 516 U.S. 1137 (1996). However, dismissal is appropriate if an indictment "fails to recite an essential element of the charged offense." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). In such a case, this missing element "is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Id.*

### III. DISCUSSION[3]

Defendants ask the Court to dismiss the SI in its entirety. (Mot. at 5.) They argue dismissal is appropriate "because it does not adequately allege a conspiracy to violate the Travel Act, or violations of the Travel Act." (*Id.*; *see also id.* at 10-13.) In particular, they claim it fails to allege (1) a "specific business enterprise" or (2) "that [they] knowingly and willfully sought to promote or facilitate the unlawful aims of that specific business enterprise." (*Id.* at 5.) Defendants argue dismissal is appropriate because these are essential

---

[3] As a preliminary matter, the Court rejects the Government's request to summarily deny the Motion as an unauthorized sur-reply. (*See* Resp. at 2.) The Court disagrees with such a characterization. Although Defendants previously moved to dismiss the SI because it, *inter alia*, conflicts with their First Amendment rights, (Doc. 561 at 38-42), which the Court rejected, (Doc. 793), they now challenge whether it alleges the necessary elements of their charges. Because the arguments presented now are somewhat distinct, the Court will consider the Motion.

elements of the Travel Act, thus the failure to plead them is fatal. (*Id.* at 6.) They relatedly argue that the money laundering counts must be dismissed because they are based on the Travel Act violations. (*Id.*) The Court begins with the Travel Act counts. (SI ¶¶ 1-201.)

### A. The Travel Act Counts

Congress passed the Travel Act, 18 U.S.C. § 1952, as part of Attorney General Robert F. Kennedy's expansive legislative agenda directed at combatting "organized crime." *Perrin v. United States*, 444 U.S. 37, 41-42 (1979); *see also Rewis v. United States*, 401 U.S. 808, 811 n.6 (1971). Although it is specifically aimed at addressing organized crime, the Travel Act is expansively interpreted. *See Erlenbaugh v. United States*, 409 U.S. 239, 245-48 (1972) (emphasizing the Travel Act's expansive scope being limited primarily by its application "to those who act with an intent to further unlawful activity"); *see also United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019) (examining the breadth of "unlawful activity" in 1952(b)(i)(2)); *Perrin*, 444 U.S. at 45-46, 49.

Because "a statute is to be read as a whole," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), the Court considers the Travel Act's text in full. Having done so, the Court finds it provides in relevant part[4] that:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>
> > (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any *unlawful activity*, and thereafter performs or attempts to perform—
> >
> > > (A) an act described in paragraph . . . (3) shall be fined under this title, imprisoned not more than 5 years, or both;

18 U.S.C. § 1952(a)(3)(A) (emphasis added).

The Travel Act explicitly defines a "broad spectrum" of qualifying "unlawful activity" under this section. *See Erlengbaugh*, 409 U.S. at 246. "Unlawful activity" means:

> (1) any business enterprise involving [(A)] gambling, liquor on which the

---

[4] Neither party contends section 1952(a)(1) or (2) applies here.

- 7 -

> Federal excise tax has not been paid, [(B)] narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or [(C)] prostitution offenses in violation of the laws of the State in which they are committed or of the United States,[5]
>
> (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or
>
> (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title[.]

18 U.S.C. § 1952(b)(i)(1)-(3) (alterations added). Under the first "unlawful activity" definition, the one implicated here, the term includes "any business enterprise involving . . . prostitution offenses in violation of the laws of the State in which they are committed or of the United States." *Id.* § 1952(b)(i)(1).

The Travel Act's text clearly outlines the requisite elements. *See United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981). Whether facts support these elements is another question. *See Blakely v. Washington*, 542 U.S. 296, 302 (2004) (emphasizing the "longstanding tenets of common-law criminal jurisprudence," one of which is "that the truth of every accusation against a defendant should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors." (internal quotation marks and citation omitted)). At any rate, "[a]n indictment under the Travel Act requires allegations of each of the three elements of the crime: (1) interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *Tavelman*, 650 F.2d at 1138.

Defendants' primary argument is that the SI does not allege any specific "unlawful activity" or "business enterprise(s) involving prostitution offenses." (Mot. at 10-13.) They also argue that this deficiency means they cannot have an "intent to promote an unlawful activity" because they do not know what or who the business enterprise involving

---

[5] "Prostitution offenses" clearly modifies "business enterprise." *See* H.R.Rep No. 966, 87th Cong., 1st Sess. 3 (1961); U.S. Code Cong. & Admin News 1961, p. 2665 ("This bill will assist local law enforcement by denying interstate facilities to individuals engaged in illegal gambling, liquor, narcotics or *prostitution business enterprises*." (emphasis added)).

prostitution offenses for each violation is. (*Id.* at 13-15.) In brief, and as explained below, the Court disagrees with Defendants' selective interpretation of the allegations against them.

### 1. Specific Instances of "Unlawful Activity" Are Alleged.

"In the Ninth Circuit, a specific 'unlawful activity' is an element of a Travel Act offense." *Myers v. Sessions*, 904 F.3d 1101, 1108 (9th Cir. 2018). Indeed, it would be absurd if the Government could indict under the Travel Act without identifying the underlying "unlawful activity." *See id.* (declining to find "it would be sufficient to conclude that the defendant committed one or more of the crimes listed in § 1952(b) without specifying or reaching agreement on which crime"). But just because indicting under the Travel Act requires alleging facts supporting an inference of "unlawful activity" or a "business enterprise involving prostitution" does not mean the words "business enterprise" must be used to describe the age-old business of prostitution. *Cf. id.* In fact, even in situations where the underlying "unlawful activity" is prostitution, the words "business enterprise" are not always used to describe the prostitution venture. *See United States v. Nader*, 542 F.3d 713, 715-16 (9th Cir. 2008) (describing unlawful activity as "unlawful prostitution business"); *see also United States v. Baker*, 611 F.2d 961, 962 (4th Cir. 1979) (similarly describing unlawful activity as "the business of prostitution"); *United States v. Maselli,* 534 F.2d 1197, 1200 (6th Cir. 1976) (indictment alleged that "defendant caused Janice Phillips to travel interstate 'with the intent' to promote, etc. the unlawful activity of prostitution and 'thereafter . . . did perform . . . acts to promote . . .'" the unlawful activity"). The goal of this requirement is for the indicted individual to understand which "unlawful activity" under the Travel Act forms the basis for the charges. Based on the allegations here, Defendants are not charged with anything related to gambling, narcotics, bribery, extortion or arson. Rather, they are clearly charged with intending to facilitate and thereafter facilitating or attempting to facilitate businesses involved in prostitution. *See* 18 U.S.C. § 1952(b)(i)(1).

Even further, not labeling "publishing prostitution ads" as "an act facilitating

business enterprises involving prostitution" when indicting under the Travel Act is far from the central inquiry in considering an indictment. *See* Fed. R. Crim. P. 7(c)(1); *see also Hamling*, 418 U.S. at 117. Presumably because "it is likely a rare case when the nature of the unlawful activity is at all in doubt," *Myers*, 904 F.3d at 1111, whether the underlying "unlawful activity" being facilitated is explicitly labeled as a "business enterprise involving prostitution" is not damning to an indictment's sufficiency either. *See United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995) *cert. denied*, 516 U.S. 1098 (1996) (finding sufficient an indictment charging "unlawful activity, to wit: the distribution of and possession with intent to distribute cocaine and cocaine base"). One can easily imagine an indictment omitting language classifying the underlying prostitution venture as a "business enterprise," but nevertheless illustrating one through supporting factual allegations. In other words, for example, just adding the words "business enterprise" in front of a gambling, liquor, narcotics or controlled substances, or prostitution offense is not what satisfies the "unlawful activity" requirement under section 1952(b)(i).

Instead of alleging formal labels, what must be alleged for the "unlawful activity" element under section 1952(b)(i) are allegations showing "a continuous course of criminal conduct." *United States v. Kaiser*, 660 F.2d. 724, 731 (9th Cir. 1981) ("The words 'business enterprise' refer to a continuous course of criminal conduct rather than the sporadic or casual involvement in a proscribed activity." (citation omitted)); *United States v. Donaway*, 447 F.2d 940, 94 (1971) ("The words 'business enterprise' as used in § 1952 refer to a continuous course of criminal conduct rather than sporadic casual involvement in a proscribed activity." (citation omitted)); *United States v. Iennaco*, 893 F.2d 394, 398 (D.C. Cir. 1990) ("The existence of a business enterprise, a continuous course of illegal conduct, is a necessary element of the Travel Act offense involving narcotics."); *see also United States v. Corbin*, 662 F.2d 1066, 1072 (4th Cir. 1981). In alleging a continuous course of criminal conduct, "[n]either [allegations] of large-scale operations nor long-term duration is required[.] . . . Instead, what must be [alleged] is evidence of a continuous enterprise."

*Tavelman*, 650 F.2d at 1140 (internal citation omitted).[6]

Here, the Court finds that the SI alleges "unlawful activity" for each Travel Act Count with adequate specificity to inform Defendants of their charges. *Hagner*, 285 U.S. at 431. More particularly, the SI alleges fifty instances where Defendants posted ads on Backpage.com to facilitate specific individual prostitutes or pimps involved in the business of prostitution. (SI ¶¶ 200-201.) It also almost identically mirrors the Travel Act's text:

> 201. On or about the dates set forth below, each instance constituting a separate count of this Superseding Indictment, in the District of Arizona and elsewhere, [Defendants], and others known and unknown to the grand jury, use the mail and any facility in interstate and foreign commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States, including but not limited to Title 13, Arizona Revised Statutes, Section 13-3214, and thereafter performed and attempted to perform an act that did promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the unlawful activity, as follows: [describing instances that Defendants published prostitution ads in support of specific individuals, businesses, and other groups involved in prostitution]. In violation of 18 U.S.C. § 1952(a)(3)(A).

(SI ¶ 201.) Additionally, and as noted, the "to wit: prostitution offenses" language directs Defendants to which "unlawful activity" is charged under each Travel Act count. (*Id.*) The extensive factual allegations supporting these individual prostitutes or pimps who were repeatedly involved in the business of prostitution are alleged in even more detail earlier in the SI. (*See generally id.* ¶¶ 1-199.)

Instead of considering the totality of the allegations, Defendants focus on the fact that the words "business enterprise" are not used. (Mot. at 11-13.) In doing so, they ignore

---

[6] Alleging a "continuous course of conduct" by a person or group to fit within the Travel Act's definition of a "business enterprise" is not necessarily a high bar either. *See United States v. Monu*, 782 F.2d 1209, 1211 (4th Cir. 1986) (reasoning that a "triple beam balance scale" was sufficient to "indicate[] that [the defendant's] receipt of the heroin was part of an ongoing enterprise, rather than an isolated instance of criminal conduct"); *Tavelman*, 650 F.2d at 1140 ("Considering the quantity of cocaine involved in the prior transaction proved at trial, the jury could reasonably find a continuous course of criminal activity.").

how the previous 199 paragraphs describe the continuous courses of conduct of business enterprises facilitated by the specific ads identified in the charges. Even further, the SI directly cites the relevant statute in multiple locations. Again, such reference is not, by itself, an adequate replacement for alleging an essential element, but it is certainly relevant. *Dashney*, 117 F.3d at 1206; *see also United States v. James*, 980 F.2d 1314, 1318 (9th Cir. 1992).

In claiming "unlawful activity" is adequately alleged for each Travel Act violation, the Government states that the "SI describes numerous prostitutes, pimps and traffickers who engaged in continuous criminal activity." (Resp. at 9.) In particular, it highlights how one individual, "P.R.," is alleged to have offered prostitution services via Backpage.com for over five years. (*Id.* (citing SI ¶¶ 132, 201, Counts 3, 6-11, 18, 25-26)). It also highlights that the SI identifies victims who were repeatedly sold through Backpage.com ads for months or years. (Resp. at 9 (citing SI ¶¶ 160-76, 201, Counts 2, 4-5, 12-17, 19-24)). It further highlights how the SI alleges instances of ads offering "per session" pricing schemes, which indicate non-isolated, repeated prostitution offerings. (Resp. at 9 (citing SI ¶¶ 148-49, 201, Counts 27-51)). These allegations, the Government claims, adequately explain the specific "unlawful activity" required for each Travel Act count. In brief, the Court agrees.

After thoroughly considering the parties' arguments presented at oral argument and in their pleadings alongside Rule 7(c)(1), the Travel Act, and the above case law, the Court finds the requisite Travel Act elements adequately alleged to provide Defendants with notice of the charges against them. *See Buckley*, 689 F.2d at 897, 900; *see also Bernhardt*, 840 F.2d at 1445. As an initial matter, omitting the words "business enterprise" in describing each prostitution business being facilitated by Defendants' ad publishing is not fatal. *Cf. Nader*, 542 F.3d at 715. Defendants' concern that each ad is not in fact connected to a business enterprise involving prostitution is premature at this stage.[7] When considering

---

[7] Indeed, to the contrary, each ad identified carries an indicia of a commercial or business enterprise because each one invites multiple commercial transactions by soliciting the public to engage in prostitution. *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012) (noting that advertisements "propose a commercial transaction" (citation

the totality of the allegations, the Court finds that publishing an online ad in support of individuals seeking to repeatedly market themselves or others for sex could constitute a violation under the Act for facilitating a "business enterprise involving prostitution." But whether these allegations in fact constitute a violation is not the question before the Court. Rather, the question right now is whether the Travel Act elements are sufficiently alleged to fairly inform Defendants of their charges, not whether the Government has proven its case. *Buckley*, 689 F.2d at 897. The other question of whether facts support a finding of a "business enterprise involving prostitution" is reserved for the fact-finder, and jumping to pre-trial evidentiary conclusions concerning whether specific conduct in fact qualifies as "unlawful activity" is improper. *Jensen*, 93 F.3d at 669. Here, the Court merely concludes that the SI adequately alleges the necessary Travel Act elements and cannot be dismissed.

This conclusion is more than adequately supported by the extensive factual allegations concerning the underlying unlawful activity that Defendants supposedly intended to facilitate and thereafter facilitated or attempted to facilitate. The 92 detailed pages of allegations directly bearing on Defendants' Travel Act violations surely place them on notice of their association with individuals and groups engaged in the business of prostitution. Defendants' suggestion that the SI improperly indicts a "boundless conspiracy to facilitate prostitution in general," (Reply at 4), however, mischaracterizes the charges against them. Such a claim is simply untrue. They were not indicted for facilitating the amorphous notion of "prostitution." They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution. (SI ¶ 201.) Many of the factual allegations place Defendants' roles at Backpage.com in context and further illustrate this. To be sure, the allegations certainly describe a course of conduct where Defendants facilitated "unlawful activity," including numerous pimps, prostitutes and traffickers in violation of the Travel Act. They also certainly describe how these various groups continuously engaged in prostitution, which plausibly fits within the definition of a

---

omitted)).

"business enterprise."

When read in its entirety and accordingly to common sense, the SI adequately alleges the underlying unlawful businesses involved in prostitution that Defendants intended to facilitate and thereafter facilitated or attempted to facilitate by publishing ads on Backpage.com. This is true even though the SI does not label each supported prostitution venture as a "business enterprise involving prostitution," but instead alleges a continuous course of criminal conduct being supported on fifty distinct occasions. *See* Fed. R. Crim. P. 7(c)(1).

### 2. Intent is Adequately Alleged for Each Travel Act Count.

"To establish Defendants' violation of the Travel Act, the Government must prove, among other things, that Defendants acted with a culpable state of mind." *United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003). "In other words, the Travel Act requires a defendant act not only with knowledge of what he is doing, but also with the objective of promoting some unlawful activity." *Id.* As a result, there must be allegations that each Defendant had a "specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities." *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (citing *United States v. Gebhard*, 441 F.2d 1261 (6th Cir. 1971)); *see also United States v. Polizzi*, 500 F.2d 856, 876–77 (9th Cir. 1974) (describing this element as a "specific intent to facilitate an activity which the accused knew to be unlawful").

As the Supreme Court has noted, "[w]here intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." *Morissette v. United States*, 342 U.S. 246, 274 (1952). As it concerns the Travel Act too, whether a defendant "intended to facilitate or carry on an unlawful activity . . . [is] a question of fact." *United States v. Graham*, 581 F.2d 789, 790 (9th Cir. 1978). And "unless the court can say affirmatively that no circumstances were [alleged] which might justify a finding of specific intent, the question was one of fact to be resolved by the jury." *Takahashi v. United States*, 143 F.2d 118, 122 (9th Cir. 1944). "Absent *proof* of an intent to influence conduct, Defendants' use of interstate and international channels of commerce

would not promote the designated 'unlawful activity' as required by 18 U.S.C. § 1952(a)." *Welch*, 327 F.3d at 1097 (emphasis added). But whether adequate proof supports a finding of intent "is premature because at this stage we accept the indictment's allegations as true." *Id.*

Defendants claim their intent to facilitate unlawful activity is not alleged. (Mot. at 14; Reply at 10.) Their main concern is summed up in a question they pose to the Court: "how could one specifically intend to promote/facilitate a business enterprise one does not know to exist?" (Mot. at 14 (footnote omitted)). Their other concern is that even if they knew of a business enterprise involving prostitution, they could not have specifically intended to promote such unlawful activity by publishing an ad without knowledge of it or having some role in publishing it. (*Id.* at 15.) The Government refocuses the discussion by highlighting the SI. It argues that Defendants are alleged to have had the requisite intent to influence the unlawful activity. (Resp. at 10.) It further argues that whether Defendants *in fact* had the requisite intent is a jury question.[8] (*Id.* at 11.) Not only does the Court find Defendants' arguments premature at the dismissal stage, but it also finds the Government's arguments supported at law and by the allegations in the SI. *Cf. Lacey*, 423 F. Supp. 3d at 761-764 (finding previously that the SI alleged each Defendant had the requisite specific intent to promote an unlawful activity in violation of the Travel Act on fifty occasions).

First, the SI alleges Defendants "used the mail and any facility in interstate and foreign commerce *with intent* to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses . . . ." (SI ¶ 201 (emphasis added)). It also alleges "Defendants were aware that the vast majority of the 'adult' and 'escort' ads appearing on Backpage were actually ads for prostitution and took steps to intentionally facilitate that illegal activity." (*Id.* ¶ 9; *see also id.* ¶¶ 10-11.) Only by ignoring these allegations can it seriously be argued that Defendants' intent to facilitate unlawful activity is not alleged. To answer Defendants' question posed to the Court: one cannot intend to promote/facilitate a

---

[8] Defendants concede this is true. (Reply at 9.)

business enterprise one does not know exists. But this factual hypothetical has no bearing on whether Defendants are *alleged* to have intended to promote unlawful activity by illicit prostitution businesses, which is clearly alleged here.

Second, Defendants' argument that intent to promote unlawful activity is not alleged because no business enterprises exist presumes an unresolved factual inquiry. That is, not only does this argument ignore the plethora of allegations concerning the various prostitution business enterprises discussed above, but it is also a thinly veiled attempt to usurp the province of the fact-finder by arguing these alleged business enterprises involving prostitution do not in fact qualify. The Court will not venture beyond the SI to find that intent *cannot* be proven at trial. *Boren*, 278 F.3d at 914. Defendants' other related challenge to whether intent is alleged by claiming they did not know about the ad or have some role in publishing it also directly contravenes the SI's allegations. The SI plainly alleges Defendants specifically intended to facilitate prostitution businesses by publishing the ads. (*Id.*) It also alleges they received notice by various third parties that a majority of their "adult services" ads were being used to support these prostitution ventures. (SI ¶¶ 74, 97, 109, 111, 127, 134, 140, 144, 151.) Whether they in fact intended to facilitate prostitution by publishing the ads is a matter for the fact-finder, not the Court right now.

Accordingly, the Court finds that the SI alleges each Defendant used interstate and foreign facilities *with an intent* to promote individuals, businesses, and other related groups in furtherance of unlawful prostitution businesses and thereafter performed or attempted to perform an act in furtherance of the various unlawful prostitution businesses on fifty specific occasions.[9] 18 U.S.C. 1952(a)(3)(A).

### B. Money Laundering Counts

Defendants last argue the money laundering counts must be dismissed because they "are premised on the underlying charges of Travel Act violations." (Mot. at 15; *see also* Reply at 10.) That is, they argue the money laundering counts must be dismissed because the Travel Act violations are "deficiently pled." (*Id.*) Since the Court finds the Travel Act

---

[9] For the same reasons outlined above, the SI adequately alleges each Defendant also conspired to violate the Travel Act. (SI ¶¶ 1-199.)

violations adequately alleged, Defendants' argument quickly loses its footing.

But even assuming the Travel Act violations were inadequately plead, which they are not, "when bringing charges of money laundering, the government need not allege all the elements of the 'specified unlawful activity,' i.e., the underlying offense."[10] *Lazarenko*, 564 F.3d at 1033; *see also United States v. Golb*, 69 F.3d 1417, 1429 (9th Cir. 1995) (same). For instance, the first money laundering statute that Defendants are indicted under does not require the Government to allege or prove the underlying offenses. *See* 18 U.S.C. § 1956(c)(1) ("the term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, *though not necessarily which form*, of activity that constitutes a felony." (emphasis added)). The same thing goes for the other money laundering statute. *See* 18 U.S.C. § 1957(c) ("In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.").

If the Government is not required to prove the specific underlying offenses under either money laundering statute, then even *if* the Travel Act violations were inadequately plead, which they are not, and were the only foundation for the money laundering charges, the money laundering counts would still survive.[11] But this is not even the case because the Travel Act counts are adequately plead. Accordingly, the Court cannot dismiss the money laundering counts.

## IV.     CONCLUSION

Fundamentally, the SI fulfills its Constitutional purpose of informing Defendants of

---

[10] Defendants concede this is true. (Reply at 10.)
[11] After conceding that "a defendant may be convicted of a money laundering offense even if he did not commit the underlying offense," Defendants then confusingly argue that "the money laundering charges [must be dismissed because they] are premised on Travel Act counts that do not allege a crime." (*See* Reply at 10.) Again, if the Government need not even allege the underlying offense, let alone prove it, the Court is perplexed at how failing to allege Travel Act violations would be fatal to the money laundering counts. This argument appears to be a disguised challenge to whether Defendants knew the money was in fact derived from "specified unlawful activities," which the Court finds premature.

their charges. Not only does it allege essential facts supporting the individual counts against each Defendant, but it also sufficiently constrains the charges to specific instances in which they intended to facilitate and thereafter facilitated or attempted to facilitate unlawful activity. These targeted instances enable each Defendant to plead an acquittal or conviction in future similar prosecutions and prepare to defend themselves at trial. *Hamling*, 418 U.S. at 117; *Hagner*, 285 U.S. at 431; *Bernhardt*, 840 F.2d at 1445. For these reasons, and after considering all of the SI's detailed allegations according to common sense and refusing to question the Government's evidence supporting them, the Court is convinced Defendants have been indicted according to the Constitution. *Cf. Buckley*, 689 F.2d at 899.

Accordingly,

**IT IS ORDERED DENYING** Defendant John Brunst's Motion to Dismiss Indictment on Failure to Allege the Necessary Elements of the Travel Act, (Doc. 746).

Dated this 4th day of May, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge