MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Michael Lacey, et al.,<br><br>    Defendants. | No. CR-18-00422-PHX-SMB<br><br>**RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PRESENTATION OF CERTAIN EVIDENCE [DOC. 907]** |

Defendants' motion *in limine* to preclude presentation of certain evidence related to other classified websites, morality of adult classified ads, and third-party opinions on legal

- 1 -

issues (Doc. 907) should be denied.  The evidence, which Defendants mischaracterize, is relevant to criminal charges alleged against Defendants and any danger of unfair prejudice does not substantially outweigh the evidence's probative value.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants premise their entire motion around the mistaken notion that the government believes its case-in-chief will last 12 weeks.  (Doc. 907 at 3, 5.)  Defendants misrepresent the government's estimation.  On August 19, 2019, the Court asked the government, "how long should I block on the calendar?"  (RT 08/19/19 94; Doc. 732 at 94.)  In response, the government stated, "I think this is probably a six to eight-week trial."  (*Id.*)  Counsel for Defendant Larkin then suggested, "I've got to think we're at least a couple of weeks of a defense."  (*Id.*)  The government incorporated Defendants' estimated trial length in a subsequent filing, when it wrote, "the government's witnesses . . . have cleared their schedules to be available for a trial that is estimated to take up to twelve weeks."  (Doc. 880 at 10.)  Contrary to Defendants' representations, the government has not "estimate[ed] a *twelve week* case-in-chief" or "12 weeks of trial to present its case-in-chief (exclusive of time for cross-examination)."  (Doc. 907 at 3 (emphasis in original); Doc. 928 at 2.)  Defendants seemingly have inflated the government's trial estimate in an effort to buttress their arguments that much of the government's evidence should be excluded.

The government is focused on streamlining its presentation of evidence at trial to ensure efficiency and not waste the jury's time.  That said, the Superseding Indictment charges Defendants with two criminal conspiracies that each span 14 years (2004-2018). (Doc. 230 at ¶ 196.)  The government is entitled to present evidence in an attempt to prove its case.  "The rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011).  The fact that the trial will be lengthy (though not as lengthy as Defendants suggest) is not a valid reason to preclude the government from presenting evidence that does not violate the

applicable rules. The three categories of evidence at issue in Defendants' motion do not contravene those rules, and Defendants' motion should be denied.

## I. Rule 403 Is An Extraordinary Remedy Used Sparingly

Defendants move to limit the government's presentation of three categories of evidence based strictly on Rules 401 and 403. They give Rule 401 short shrift, likely because the bar for relevance is so low. *See, e.g., United States v. Whittemore*, 944 F. Supp. 2d 1003, 1006 (D. Nev. 2013) (low bar for evidence to be considered relevant under Fed. R. Evid. 401). Instead, they spend most of their motion arguing that certain evidence should be excluded under Rule 403. Under Rule 403, however, the exclusion of evidence in a criminal prosecution is "an extraordinary remedy to be used sparingly." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation and internal quotation marks omitted). "[T]he danger of [unfair] prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *Id.* (emphasis in original). "[A]pplication of Rule 403 must be cautious and sparing" because the Rule's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).

### A. Craigslist's Decision To Stop Accepting Ads For "Erotic Services" Is Relevant And Should Not Be Precluded

Defendants first argue that any evidence related to Craigslist.org ("Craigslist") is not relevant to the issues at trial. (Doc. 907 at 5.) Defendants only offer three sentences in support of this proposition. This argument fails, because evidence related to Craigslist is highly relevant. *See* Fed. R. Evid. 401, Advisory Committee Notes (evidence is relevant if it tends to prove the point for which it is offered and if that point matters to the case).

The Superseding Indictment provides allegations that demonstrate the relevance of Craigslist. (Doc. 230 at ¶ 20 ("By 2000, the rise of the internet—and, in particular, [Craigslist], which offered free classified ads—began to significantly disrupt VVMH's business model, which depended on classified advertising for revenue.").) The decision to

create Backpage was described in an internal document as follows: "In 2004, in response to the Craigslist threat that was decimating daily newspapers, VVM launched its own online classified site, Backpage.com, named after the back page of VVM's print publications." (*Id.* at ¶ 21.) This is clearly relevant background information. Fed. R. Evid. 401, Advisory Committee Notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding. . . . A rule limiting admissibility to evidence directed to a controversial point would invite the exclusion of this helpful evidence.").

Evidence related to Craigslist is more than helpful background information; it also goes directly to the heart of the government's case—that Defendants "were aware that the vast majority of the 'adult' and 'escort' ads appearing on Backpage were actually ads for prostitution and took steps to intentionally facilitate that illegal activity." (Doc. 230 at ¶ 9.) After Craigslist shut down its "adult" section, Defendant Larkin commented: "Craigslist has folded. . . . It is possible that this will mean a deluge of adult content ads for backpage.com. . . . We have with the Village Voice probably the longest run of adult content advertising in the US and it is, like it or not, in our DNA." (*Id.* at ¶ 24.) The evidence will show that Backpage successfully capitalized on Craigslist's absence, and experienced explosive growth in subsequent years. (*Id.* at ¶ 25.)

Other issues involving Craigslist will arise at trial. Defendants discussed how Craigslist dealt with backlash to its "adult" ads, and this informed how Backpage responded to many of the same complaints. (*See, e.g.,* Doc. 920-10, email exchange between Lacey and Larkin; *see also* Doc. 230 at ¶ 146 ("Why hasn't Backpage closed down the adult escort ads portion of its site like Craigslist when it's known that underage girls are being exploited via Backpage.").) Further, many of the individual Defendants were influenced by the inability of Craigslist's owner, Craig Newmark, to respond to a question about illicit ads posted on his website. Defendants discussed this event and worked to avoid a similar scenario. Craigslist also informed Backpage's business strategy. (Doc. 230 at ¶ 68 (C.F. unwilling to delete prostitutions ads because doing so "would put us in a very

uncompetitive position with craig[slist]").)

Evidence related to Craigslist is highly relevant to the issue of Defendants' knowledge about whether the vast majority of ads on Backpage were actually for prostitution. Defendants' argument that this evidence would waste the jury's time is mistaken. This evidence will not create a "trial within a trial." The questions Defendants claim would need to be resolved are irrelevant. Why Craigslist stopped accepting erotic ads, what it knew in the years before, what it knew when it happened, and what Defendants knew about Craigslist's decision are immaterial. (Doc. 907 at 5-6.) Craigslist isn't on trial. That Craigslist stopped accepting ads; the huge revenue boost to Backpage as a result; and how Defendants studied Craigslist's response to critics in order to inform Backpage's response are separate issues from those raised by Defendants.

The issues surrounding Craigslist are but one category of evidence the government will present to the jury in an effort to prove that "Defendants . . . continued to accept [erotic] ads to facilitate illegal conduct." (*See* Doc. 907 at 6.) The government agrees that the evidence could be viewed as prejudicial, in that it tends to prove the prosecution's case. *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) ("All evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case."). That, however, isn't the standard for preclusion. *Id.* (Rule 403 excludes evidence without any relevance or if the potential for prejudice "far outweighs what little relevance it might have"). Evidence related to Craigslist should be admitted at trial.

### B. Defendants' Second Category Of Evidence Is Admissible

Defendants' second argument appears to mischaracterize the government's evidence. (Doc. 907 at 6-7.) Defendants argue that evidence classifying Backpage ads as immoral or unethical should be precluded. Defendants provide two examples. First, Defendants identify a January 5, 2011 letter from the Auburn Seminary President to, among others, Lacey, Larkin, and Ferrer. (Doc. 907-1.) In the seven-page letter, the president writes:

- 5 -

> As has been publicly reported, you have heard concerns regarding the operation of Backpage.com from 51 of the nation's 56 attorneys general, mayors across the country and over 50 leading anti-trafficking experts and organizations, among others and have received the same request from all – to shut down the adult section of the site.

(Doc. 907-1 at 2.) The letter goes on to suggest that "[f]or us, fighting child sex trafficking is a moral imperative." And, "[c]hild sex trafficking is not just an 'issue' for us, but a matter of basic justice." (*Id.*)

The government agrees with Defendants—the issue is not whether the ads posted on Backpage were "immoral" or "unethical," but whether the ads were for prostitution (many of which included ads for children under 18 years old). This letter is relevant and highly probative of Defendants' knowledge about whether the vast majority of Backpage's ads were for prostitution. The fact that the message came from "moral and religious leaders who have a calling and responsibility to protect our children" matters not. (Doc. 907-1 at 2.)

Defendants identify a second example, which involves an email exchange between Backpage users and employees. The crux of the email exchange involves complaints by customers about an inability to use a credit card to purchase ads on Backpage. (907-2 at 3 ("I tried to post an ad and it would not accept my mastercard. . . . Why is this? My card is valid and good.").) While there are multiple emails from customers complaining about this issue, along with a response from Carl Ferrer, Defendants argue that the entire exchange should be excluded because one customer writes: "Have you resolved the issue of Chase Bank not honoring payment to you for ethical reasons?" (*Id.* at 4.) Rule 403 does not operate that way. This exchange is highly relevant and one word in a four page email does not even rise to prejudice, much less "unfair prejudice" that "substantially outweighs" the evidence's probative value. *Mende*, 43 F.3d at 1302.

**C. Evidence Related To Defendants' Knowledge About Backpage Publishing Prostitution Ads Is Highly Relevant And Not Precluded By Rule 403**

Defendants again mischaracterize the government's evidence. The government will present evidence demonstrating Defendants' knowledge about the nature of Backpage. This evidence is relevant because it tends to prove that Defendants had the requisite mental state to violate the Travel Act, *i.e.,* specific intent. Defendants argue that evidence probative of their mental state should be precluded.

Defendants identify and attach five exhibits they believe to be examples of irrelevant and unduly prejudicial evidence. (Doc. 907 at 7.) The first is titled, "Notes to File," which appears to capture notes of a telephone conversation that Defendants Larkin and Spear participated in, among others.[1] (Doc. 907-3 at 2.) In the document, the author states that Defendant Larkin sought guidance in "eradicating the trafficking of children on their site." (*Id.*) In response, the author wrote he told Larkin and Spear that "the ads posted in their escort section. . . . are blatant prostitution ads, and that prostitution is illegal in every state, whether the person in the ad is 16 or 26." (*Id.*) That this document states that "prostitution is illegal" is hardly prejudicial. It's a fact. This document, if admitted into evidence, would help demonstrate notice. Especially when the statement attributed to Carl Ferrer in the document is considered: "Ferrer also asked for keyword lists and other tools we can provide so that [Backpage] can more effectively search their site and identify illegal activity." (*Id*. at 4.)

The fact that third parties told Defendants that prostitution is illegal does not somehow unduly prejudice Defendants. Indeed, part of their defense is to argue how quickly they responded to law enforcement subpoenas, which were requests for evidence of illegal activity that occurred on the website. Nevertheless, the fact that Defendants continued to be deluged with such law enforcement subpoenas and correspondence from

---

[1] Exhibits D and E are emails from Ernie Allen that contain largely the same information as Exhibit C. (*Compare* Doc. 907-3 *with* Docs. 907-4 and 907-5.)

third parties highlighting the website's prostitution advertising is further evidence of notice and knowledge—it is clearly relevant information and not unduly prejudicial.

The other two exemplars identified by Defendants also are relevant and not unduly prejudicial. The first is an email from Ferrer to Larkin, Spear, and Brunst. (Doc. 907-6 at 2.) Ferrer's email forwards an apparent complaint from a Backpage customer. The customer writes, "I called Chase and spoke to a representative about my card being declined on BP." (*Id.*) The customer was told, "beginning this month, September, Chase was no longer accepting transactions from Backpage.com, due to their involvement in human trafficking." (*Id.*) Ferrer comments on this email by writing to Larkin, Brunst, and Spear, "I think our problem may get larger on Sunday, Sept 1. We are preparing to give users free ads if they complain while we wait on directing transactions to another processor." (*Id.*) This email is relevant to both the Travel Act and money laundering conspiracies. It demonstrates Defendants' knowledge about the ads on their website and it shows how Defendants worked to find new methods to continue to collect revenue despite this knowledge.

The final exhibit identified by Defendants includes a number of emails between Carl Ferrer and a payment processor. (Doc. 907-7.) The majority of the emails pertain to establishing an account. (*Id.*) After several emails back and forth, the company writes to Ferrer, "Your request has prompted a review of your website, and unfortunately we had to suspend your account. . . . Under our restricted industries, advertising of illegal activities is strictly forbidden." (*Id.* at 3.) In response, Ferrer writes, "We really are just a classified site . . . all advertising. . . . I am certain paying for employment or home improvement ads would not be a problem." (*Id.* at 2.) Again, the email seemingly refers to the "illegal activities" that were advertised on the website; not whether Backpage's publishing of those ads was illegal. This isn't an "ultimate issue" that will be before the jury, though it is highly relevant. This evidence does not tell the jury what the law is, rather it helps to demonstrate Defendants' guilt. The evidence should not be precluded.

## II. Conclusion

For the foregoing reasons, Defendants' motion *in limine* to preclude presentation of certain evidence should be denied.

Respectfully submitted this 8th day of May, 2020.

    MICHAEL BAILEY
    United States Attorney
    District of Arizona

    *s/ Andrew C. Stone*
    KEVIN M. RAPP
    MARGARET PERLMETER
    PETER S. KOZINETS
    ANDREW C. STONE
    Assistant U.S. Attorneys

    JOHN J. KUCERA
    Special Assistant U.S. Attorney

    BRIAN BENCZKOWSKI
    Assistant Attorney General
    U.S. Department of Justice
    Criminal Division, U.S. Department of Justice

    REGINALD E. JONES
    Senior Trial Attorney
    U.S. Department of Justice, Criminal Division
    Child Exploitation and Obscenity Section

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Marjorie Dieckman*
Marjorie Dieckman
U.S. Attorney's Office