MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  v.<br><br>Michael Lacey, et al.,<br><br>  Defendants. | No. CR-18-00422-PHX-SMB<br><br>**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING BACKPAGE.COM'S ALLEGED REPUTATION AS A LEADING SOURCE OF ILLEGAL SEXUAL SERVICES ADVERTISEMENTS**<br>[*CR 927*] |

**INTRODUCTION**

Defendants claim that because Backpage is not a Defendant in this case, the government should be precluded from introducing any Rule 404(b) character evidence at

trial regarding Backpage's notoriety as the Internet's leading place to shop for illegal prostitution services. However, Backpage's notoriety is not Rule 404(b) character evidence---rather, it is an integral part of the charged conduct. Defendants ran Backpage as a prostitution-advertising website and intended to profit from the website's "adult" ads—which they knew were predominantly ads for prostitution, and from which they derived the lion's share of their revenues. That Backpage became notorious as the Internet's leading source of prostitution ads was part of Defendants' business plan, and is also proof of the success of that plan—they did such a great job aggregating prostitution ads, enlisting affiliates to get them more prostitution ads, getting huge numbers of referrals from known prostitution review sites like The Erotic Review, and assisting pimps and prostitutes in advertising prostitution services, that "Backpage" became synonymous in the eyes of the consuming public with "prostitution." That's not character evidence; rather, it is proof of the wildly-successful, extraordinarily-lucrative strategies that these Defendants (BP's owners and operators) intentionally pursued. Defendants' motion ignores the facts and evidence in this case. Defendants' motion should be denied.

## I. Evidence Regarding Backpage's Notoriety as the Internet's Leading Place to Shop for Prostitution is Relevant to the Charged Counts

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. "The prosecution is not restricted to proving [the charged offense] in a vacuum." *United States v. Daly,* 974 F.2d 1215, 1217 (9th Cir. 1992). "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Id.* (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)); *see also United States v. Kilbride*, No. CR 05-870-PHX-DGC, 2007 WL 1589561, *6 (D. Ariz. June 1, 2007).

Counts 1-51 of the superseding indictment charge Defendants with conspiracy and violations of the Travel Act. (*CR* 793 at 2.) To obtain a conviction under the Travel Act, the government must show Defendants had specific intent to promote, manage, establish,

carry on or facilitate an unlawful activity. (*CR* 793 at 15.[1])  Despite this settled law, Defendants assert that "even if Backpage had many ads relating to the unlawful conduct [prostitution]. . .such evidence [evidence relating to Backpage's notoriety as the Internet's leading place to shop for prostitution ads] does not address whether Defendants knew this information or. . .whether they intended to facilitate the unlawful conduct of those who used the site for unlawful purposes." (Mot. at 2.)  Not so.  The government must prove Defendants' specific intent to promote or facilitate prostitution beyond a reasonable doubt at trial and evidence related to notice provided by regulators, the national news media, anti-trafficking organizations, among others, who informed Defendants that the vast majority of Backpage's "adult" ads were for prostitution and that Backpage was the Internet's leading place to shop for this illegal service is critical.[2]  Without hearing this evidence, a jury will only receive part of the story about Backpage.  The evidence is clearly relevant.

## II. Evidence Regarding Backpage's Notoriety as the Internet's Leading Place to Shop for Prostitution is Admissible under Fed. R. Evid. 803(3)

Defendants' assertion that evidence regarding Backpage's notoriety as the Internet's leading place to shop for prostitution is "inadmissible collective hearsay," and ha[s] no place in a trial. . ." completely ignores Rule 803(3) state of mind exception to the rule against hearsay. (Mot. at 2.)  As highlighted in the government's motion *in limine* to admit evidence (*CR* 931 at 13, 16), many of the intra-Backpage emails and other correspondence the government intends to introduce at trial are admissible to prove Defendants were repeatedly notified of Backpage's brand reputation as the Internet's leading place to shop for illegal services.  For example, on August 30, 2013, Ferrer forwarded an email he and Hyer received notifying them that "Chase [Bank] was no longer accepting transactions

---

[1] This Court has already noted ("required intent under the Travel Act is specific intent to facilitate an activity which the accused knew to be unlawful under state law.") (*Id.*)

[2] This Court has previously found that the SI is "replete with specific facts that support finding that the coconspirators knew the ads [posted in the "adult" and "escort" sections of Backpage] were prostitution."  (*CR* 793 at 9.)

- 3 -

from Backpage due to their involvement in human trafficking." (SSI 135; *CR* 931, Exhibit 173). The contents of this email are unimportant. The fact that Defendants received this email is what is being offered by the government to show that Defendants were placed on notice of this event – which is relevant to the issue of whether Defendants intended to facilitate unlawful activity – an essential element of the Travel Act that the government is required to prove at trial.[3]  *United States v. Tamura*, 694 F.2d 591, 598 (9th Cir. 1982) (statements offered to prove defendant's knowledge of bribery scheme constituted admissible non-hearsay); *see United States v. Cantu*, 876 F.2d 1134 (5th Cir. 1989) (statements not hearsay where they were "not offered as an assertion of a fact but, rather, as the fact of an assertion"); *see also Anderson v. Sutton*, 2016 WL 1258585, at *4 (N.D. Ohio Mar. 31, 2016), clarified on other grounds, 2016 WL 7492501 (N.D. Ohio Dec. 30, 2016) (prisoner's inmate grievance forms complaining about jail officer's actions deemed admissible non-hearsay where offered to prove that the grievances placed county officials on notice concerning officer's alleged lack of training).

Similarly, on December 28, 2010, a representative from a public relations firm Defendants had hired to assist in handling complaints received about sex trafficking activities on Backpage (*CR* 931 at 9) received an email from a reporter at CNN requesting "an on-camera interview with Village Voice Media CEO Jim Larkin regarding minors being sold for sex under the escort section of Backpage.com." (*CR* 931; exhibit 80.) The email was forwarded to Defendants Lacey, Larkin, and Spear later that day. This email is also admissible under Fed. R. Evid. 803(3), because it is offered for the fact that Defendants received this notification – not the contents. (*See also* December 2, 2011 letter, Defendant Larkin and Village Voice Board of Directors (which included Defendant Lacey) received from more than 50 "experts in the anti-human trafficking field," notifying Defendants "we agree with the Attorneys General that your efforts fall short of what is needed to eliminate the use of your website by others to exploit women and children," and noted, "the

---

[3] *See CR* 931 Sections I(b)(v) and II(d) for additional examples of evidence admissible under 803(3).

reality…is that adults are still able to traffic women and girls on the website [Backpage].") (*CR* 931; exhibit 131)

Defendants also received notifications from Google (*i.e.*, google alerts[4]) that show their knowledge of then-current events regarding Backpage's notoriety as a hub for prostitution and the sex trafficking of women and children.  (*CR* 931; exhibits 231-259); *MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 898 (N.D. Cal. 2015) (documents not hearsay where offered to prove "that Ford had knowledge of the events, not that the events were true");  *Sears v. Southern Pac. Co.*, 313 F.2d 498 (9th Cir. 1963) (holding it a reversible error to exclude as hearsay a letter sent to defendant railroad before the accident complaining of a hazardous condition that needed correction as the letter showed the defendant's prior knowledge of the condition that caused plaintiff's injuries).

In sum, email and letter correspondence Defendants received regarding Backpage's notoriety as the Internet's leading place to shop for prostitution ads are admissible non-hearsay to prove that Defendants had knowledge (*i.e.*, placed on notice) of these allegations.

**III.  Evidence Regarding Backpage's Notoriety as the Internet's Leading Place to Shop for Prostitution is Directly Related to the Charged Counts**

Defendants' argument that evidence regarding Backpage's notoriety as the Internet's leading place to shop for illegal services (*i.e*, prostitution) should be excluded as "impermissible character evidence" under Fed. R. Evid. 404 also misses the mark because Rule 404 does not apply here. (Mot. at 3.)  Rule 404 is inapplicable where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment. *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011)

---

[4] A Google Alert is a notification service offered by Google that sends emails to users when it finds new results – such as webpages, newspaper articles, or blogs – that match the users search terms.

(citing *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003)). Before the Court reaches the Rule 404(b) analysis, it must consider whether the evidence is "intrinsic" rather than "extrinsic." Evidence should not be treated as "other crimes" evidence when "the evidence concerning the ['other'] act and the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir.1979). *See also* 22 C. Wright & K. Graham, Federal Practice and Procedure § 5239 at 441 (1978).

Additionally, it is well-established that the government in a conspiracy case may submit proof on the full scope of the conspiracy. *Rizk,* 660 F.3d at 1131; *see also United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("An act that is alleged to have been done in furtherance of the alleged conspiracy…is not an 'other act' within the meaning of Rule 404(b); rather, it is part of the very act charged."). Likewise, in order to be direct evidence or inextricably intertwined with a conspiracy count, the un-charged conduct must fall within the temporal scope of the conspiracy. *See Rizk*, 660 F.3d at 1132 (evidence was "inextricably intertwined" with the conspiracy because each occurred within the "temporal scope of the conspiracy and comprised the conspiracy.").

Here, evidence regarding Backpage's notoriety as the Internet's leading place to shop for prostitution is directly related to the overt acts the government alleges Defendants committed in furtherance of the conspiracy. (SI¶¶ 1-194.) Moreoever, the jury would not receive the complete story about Backpage without understanding this evidence. (*See, e.g., CR* 931; Exhibit 187 – July 19, 2015 "Thank You Letter" from the Sex Workers Outreach Project to Defendants Lacey and Larkin lauding Backpage's contribution to the prostitution industry "BP has made quite a difference for many of us…" and thanking Backpage for continuing to permit sex workers "to advertise in the 'Adult' area."; *CR* 931; Exhibit 196 – December 9, 2015 email to Backpage from a reporter stating that "[o]f the 359 sex trafficking incidents Toronto Police have been involved in since 2013, every single girl that was rescued was advertised on Backpage." *CR* 931; Exhibit 254 – April 16, 2012 Google Alert to Defendant Spear entitled "How to end Sex Trafficking on Backpage."; *CR*

931; Exhibit 256 –April 28, 2012 Google Alert to Defendant Larkin entitled "Musicians Call on Backpage to Shut Down Sex Ads.").

Similarly, the superseding indictment contains allegations of 17 adult and minor victims who were sex trafficked on Backpage. (SI¶¶ 160-173.) So, although "the government does not charge Defendants with any sex trafficking offenses" (Mot. at 4), evidence that Defendants had knowledge of the allegations that ads trafficking women and children for sex were rampant on Backpage, and that they were constantly urged to shut-down the website because of the prevalence of this illegal service, is not only intrinsically intertwined with the charge of conspiracy to facilitate and promote prostitution, but also the substantive counts of facilitation of prostitution. (SI Counts 2, 4-5, 12-17, and 19-24.) Relatedly, it is anticipated that victims identified in the superseding indictment will testify that Backpage was a well-known place to shop for prostitution services, and, because of this, ads trafficking them for sex were frequently posted on Backpage. Certainly the jury is entitled to hear from these victims concerning the time, place, and circumstances by which their ads were posted on Backpage. This evidence, too, is necessary for the government to offer a coherent and comprehensible story regarding the commission of these crimes. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (The Ninth Circuit has "recognized two categories of evidence that may be considered inextricably intertwined with a charged offense," including "when it is necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.").

**IV. Lay Witness Testimony Regarding Backpage's Notoriety as the Internet's Leading Place to Shop for Prostitution is Admissible under Fed. R. Evid. 701.**

Under Federal Rule of Evidence 701, lay witnesses may testify "in the form of an opinion" if it is (a) rationally based on the perception of the witness (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. "Rule

701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). Rule 701's requirement that the opinion be "rationally based on the perception of the witness" demands more than that the witness have perceived something firsthand; rather, it requires that the witness's perception provide a truly rational basis for his or her opinion. *Asplundh Mfg. Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F.3d 1190, 1201 (3d Cir. 1995).

Similarly, the second requirement—that the opinion be "helpful to a clear understanding of the witness's testimony or determination of a fact in issue"—demands more than that the opinion have a bearing on the issues in the case; in order to be "helpful," an opinion must be reasonably reliable. *Id.* In other words, Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in *experience or specialized knowledge* for arriving at the opinion that he or she expresses. *Id.*; *see United States v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989) ("Individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge."); *see also Teen–Ed, Inc. v. Kimball Intern., Inc.* 620 F.2d at 403–04 (3d Cir. 1980); *Farner v. Paccar, Inc.,* 562 F.2d 518, 529 (8th Cir. 1977); *United States v. Walker,* 495 F. Supp. 230, 232–33 (W.D. Penn.1980); *Soden v. Freightliner Corp.,* 714 F.2d 498, 511 (5th Cir. 1983). Such lay opinion testimony is admissible not because of experience, training, or specialized knowledge within the realm of an expert, but because of the "particularized knowledge that the witness has by virtue of his or her position in the business." *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993); *Hynix Semiconductor, Inc.*, v. *Rambus, Inc.*, 2008 WL 504098, at *4 (N.D. Cal. 2008); *see also United States v. Munoz-Franco*, 487 F.3d 25, 35 (1st Cir. 2007) (allowing a bank employee to testify about banking practices due to his knowledge and participation in the day-to-day affairs of [the] business.").

Here, certain government lay witness opinion testimonies regarding Backpage's notoriety as the Internet's leading place to shop for prostitutes is undoubtedly admissible under Fed. R. Evid. 701. For example, in or around 2013, the California Department of

Justice (CalDOJ) initiated an investigation into Backpage. As part of its investigation, CalDOJ Special Agent Brian Fitchner conducted an undercover operation on Backpage to learn more about the user experience. This undercover operation involved reviewing the Sacramento, California, section of Backpage and comparing posting an ad in Backpage's fee-based "adult" section versus Backpage's free non-adult section. The United States intends to call Special Agent Fitchner to testify regarding the undercover operation and his subsequent conversation with a Backpage representative where he communicated to the representative "many of the ads I observed on www.Backpage.com appeared to be blatant prostitution ads." Agent Fitchner's lay opinion testimony regarding Backpage's notoriety as the Internet's leading place to shop for prostitution (to include his opinion that many of the ads posted on Backpage appeared to be blatant prostitution) should be admissible under Rule 701. (*See CR* 931 at 22-23.)

To start, Agent Fitchner's opinion is rationally based on knowledge he acquired through his investigation into Backpage. *See United States v. Rollins*, 544 F.3d 820, 832-33 (7th Cir. 2008) (holding that a law enforcement agent's testimony was admissible under 701(c), even though the agent had "years of experience as a law enforcement officer," because his understanding of the [ ] conversations came only as a result of the particular things he perceived from monitoring intercepted calls" and his testimony was based on his "perceptions derived from [that] particular case"). Moreover, Agent Fitchner's opinion is without doubt helpful to a clear understanding of his testimony and to determine a critical fact at issue – whether Defendants had knowledge that the ads in the "adult" and "escort" sections of Backpage were offering prostitution services. Hence, Defendants' assertion that "such testimony…would be improper opinion testimony…based on speculation, collective hearsay, and rumors" is wrong. (Mot at 4.)

Similarly, lay opinion testimony from certain individuals at anti-trafficking organizations regarding Backpage's notoriety as the Internet's leading place to shop for prostitution, is also admissible under Rule 701. The government anticipates that these individuals will testify that they spent years urging Defendants (publicly and privately) to

shutter the "adult" section of Backpage because of the women and children who were being trafficked for sex on the website. Consequently, their opinions are based on personal experience and first-hand investigations of Backpage.

Likewise, lay opinion testimony from Defendants' coconspirators Carl Ferrer and Dan Hyer regarding Backpage's notoriety as the Internet's leading place to shop for prostitution is admissible under Rule 701. This testimony is admissible not because of Ferrer's and Hyer's experience, training, or specialized knowledge as an expert—but because of the knowledge they acquired about Backpage through their participation in the day-to-day affairs of the website for nearly 14 years. *See United States v. Offil*, 666 F.3d 168, 178 (4th Cir. 2011) (Lay opinions of coconspirator lawyer about a "conspiracy's fraudulent nature and illegality" admissible because they were based on the lawyer's personal experience in the conspiracy.).

## V. Evidence Regarding Backpage's Notoriety as the Internet's Leading Place to Shop for Prostitution Is Not Unfairly Prejudicial

Defendants' contention that evidence concerning Backpage's notoriety as the Internet's leading source of prostitution ads should be precluded because it would be "highly prejudicial as it would cause the jury to assume that it and its operators were bad actors…" is deficient. (Mot. at 6.) Rule 403 requires that the probative value of the evidence be compared to the articulated reasons for exclusion, and permits exclusion only if one or more of those reasons substantially outweigh the probative value. *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (citations and internal quotation marks omitted). Rule 403, however, is "'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'" *United States v. Patterson*, 819 F. 2d 1495, 1505 (9th Cir. 1987) (quoting *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985).

"[T]he danger of [unfair] prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *Id.* (emphasis in original). "[A]pplication of Rule 403 must be cautious and sparing" because the Rule's "major function is limited

- 10 -

to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)). "The court is not required to scrub the trial clean of all evidence that may have an emotional impact." *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008); *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008); *see also United States v. Evans*, 802 F.3d 942, 946 (8th Cir. 2015) (recognizing that "[i]mages and videos depicting child pornography are by their very nature disturbing, and viewing such depictions is highly likely to generate an emotional response, but that alone cannot be the reason to exclude the evidence").

Evidence regarding Backpage's notoriety as the Internet's leading place to shop for illegal prostitution services is highly probative of a critical fact at issue in this case – whether Defendants were placed on notice (*i.e.*, knew) that the vast majority of the ads posted in the "adult" section of Backpage were for prostitution. Furthermore, Defendants will have the opportunity to cross-examine the government's witnesses at trial. This interrogation, along with cautionary jury instructions as needed, will appropriately mitigate the risk of unfair prejudice. *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (limiting instruction minimized prejudice, and juries are presumed to follow limiting instructions).

Defendants' reliance on *United States v. Preston,* 873 F.3d 829, 841 (9th Cir. 2017), is unavailing. (Mot. at 6.) *Preston* involved "other act" evidence under Rule 404(b) that was dissimilar to the crime charged and that occurred some five years after the events charged in the indictment. *Id.* at 840. Here, the government is not seeking to introduce evidence regarding Backpage's notoriety as the Internet's leading place to shop for prostitution under Rule 404(b). This evidence is directly related to, or inextricably intertwined with the charged conduct. (*See* Section III, *supra*.)

Additionally, unlike in *Preston* where the court ruled that dissimilar evidence that occurred five years after the events charged in the indictment should have been excluded

under Rule 403, here, Defendants are charged with conspiracy to facilitate or promote prostitution through their ownership and operation of Backpage during the entirety of the website's existence (2004-2018). Accordingly, events concerning Backpage's notoriety as the Internet's leading place to shop for prostitution undoubtedly occurred within the time period of the charged crime.

### VI. Conclusion

For the foregoing reasons, Defendants' request to preclude evidence regarding Backpage's notoriety as the Internet's leading place to shop for prostitution should be denied.

Respectfully submitted this 8th day of May, 2020.

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

*s/Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Marjorie Dieckman*
U.S. Attorney's Office