Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO CONTINUE TRIAL** |
| vs. | |
| Michael Lacey, *et al.*, | (Oral argument requested) |
| Defendants. | |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught ("Defendants"), by and through their undersigned attorneys, file the instant reply in further support of their Motion to Continue ("Motion") (Doc. 990.) Defendants moved for a continuance of the August 17, 2020 start date of this trial due to the health and safety concerns presented by the highly contagious novel coronavirus and the severe illness that it causes, Covid-19, as well the constitutional violations that would occur if the case is tried as scheduled. Defendants do not seek an indefinite continuance, but one that will enable the case to be tried safely, efficiently, and fairly.

Even though we are in the midst of an unprecedented, once-in-a-century public health crisis, the government opposes the Motion ("Opposition"). (*See* Opp'n, Doc. 1018.) The government acknowledges the risks posed by the virus, but asks this Court to maintain the August trial date with the implementation of extensive protocols the government claims could decrease the risk of the spread of the coronavirus among trial participants, their families, and the Arizona community at large. (*See* Summ. of Gov't's Suggested Protocols, attached hereto as Ex. A.) The suggested protocols create onerous logistics considerations, without any assurance of success. Alternatively, the government asks this Court to deny Defendant's request "to delay indefinitely," a request Defendants did not make, and to set a new date certain for trial.

Notwithstanding the government's objections and suggested protocol, this Court should grant the Motion because this Court has an obligation to ensure the health and safety of all trial participants, their families, and the Arizona community at large, as well as a trial that respects the Defendants' constitutional rights. Neither duty will be met with a trial in August.

## **ARGUMENT**

**I.     This Court's obligation to ensure the health and safety of trial participants cannot be met during the newly accelerated spread of the coronavirus in Arizona.**

As a matter of Due Process, governmental actors must "protect or care for citizens when the [government] affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (*en banc*); *see also Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989). A government actor violates an individual's right to due process

when it "affirmatively place[s] [the] individual in danger," or acts "with deliberate indifference to [a] known or obvious danger." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

Proceeding to trial in August, under the current circumstances, will risk danger to all trial participants that they would have otherwise avoided. At the time the Defendants filed the Motion, nearly 1.7 million Americans had contracted the virus, more than 100,000 Americans had lost their lives, and Arizona had more than 17,000 people who were infected. (Mot. at 1.) Since then, the numbers have increased, exponentially so for Arizona. At this time, more than 2.1 million Americans have contracted the virus and more than 117,000 Americans have died.[1] More importantly, Arizona has experienced a **sharp uptick in new cases and hospitalizations** in the past three weeks. Arizona has had several record setting days since the Motion was filed, reporting the **highest number of new cases per day** – 3,246 – on June 19, 2020. The total number of cases is now at more than 46,000, with deaths at more than 1,300.[2] Arizona is on a steep upward trajectory, as documented in the Arizona Department of Health Service's chart on the Confirmed Covid-19 Cases By Day, attached hereto as Exhibit B. In light of Arizona's upward trajectory, hospitals have expressed alarm about whether they will have sufficient staff, supplies, and capacity in the coming weeks.[3]

Maintaining the start date of August 17, 2020 in the face of Arizona's upward trajectory of coronavirus infections presents hardships on the defense (and all trial participants). We are now less than two months from the scheduled start of the trial. With respect to the defense, substantial logistical concerns have come into play: out-of-state counsel must make short-term housing arrangements, witnesses must be served with subpoenas and have travel arranged, and all other matters, personal and professional, must be put on the back burner to accommodate the preparation of the defense to this complex and novel prosecution. Yet, the parties have no certainty that this trial

---

[1]   *See* CDC, Cases in the U.S., available at https://www.cdc.gov/covid-data-tracker/ (last visited June 19, 2020).
[2]   *See* Arizona Department of Health Services Data Dashboard, available at: https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php (last June 19, 2020).
[3]   *See* Stephanie Innes, Arizona Republic, *'I am taken aback': Here's why Arizona's COVID-19 trajectory is concerning* (June 16, 2020), available at: https://www.azcentral.com/story/news/local/arizona-health/2020/06/16/doctors-data-raise-concerns-arizonas-covid-19-situation/193042001/ (last visited on June 17, 2020).

will be able to proceed in August. It is possible that new stay-home orders or travel restrictions could be imposed, particularly as Arizona has become a new hot bed for transmission of this deadly pathogen. Just this week, Governor Ducey announced new policies aimed at curbing what he called a "trend [] heading in the wrong direction."[4] Also this week, Chief Judge G. Murray Snow continued all grand jury proceedings *indefinitely*, noting that "after notice to grand jury members [] no quorum could reasonably convene [] due to concerns related to the pandemic." (Gen. Order 20-27.) The inability to convene a grand jury does not bode well for starting this trial in August.

      The government's wait-and-see approach fails to account for the fact that even if the trial is able to begin in August, there is a high likelihood it will not be able to reach a verdict. Under this District's operative order, "no person who has a fever, cough, sore throat, shortness of breath, unusual muscle pain, recent loss of taste or smell, nasal congestion or a runny nose (unless due to known allergies) is authorized to enter the courthouse." (Gen. Order 20-26 at 4.) In addition to the coronavirus, these symptoms are also consistent with the common cold, influenza, and numerous other seasonal illnesses that will be circulating among the general population during this trial. It only takes one of the fifty-plus daily trial participants or one hundred plus witnesses in this case to experience an unexplained runny nose to stop this trial from progressing. Then, each time such a pause occurs, all trial participants would be required to quarantine until the participant tests negative for the coronavirus. Indeed, a simpler, single-defendant case was derailed by concerns about the transmission of the virus when the defendant appeared at trial with a fever. (*See* Mot. at 4.) Ultimately, that defendant tested negative for coronavirus, but his presence in the courtroom with a fever derailed the first attempt at his trial. Moreover, to the extent that an ill trial participant tests positive for the virus, the trial could be put on hold indefinitely for the duration of the participant's recovery, with all other trial participants on quarantine for at least fourteen days to prevent further spread of the virus.

---

[4]    *See* Joshua Bowling, *et al.*, Arizona Republic, *Scottsdale confirms it will require face masks in public. Here's what other leaders say* (June 17, 2020), available at: https://www.azcentral.com/story/news/local/arizona-health/2020/06/17/gov-doug-ducey-gives-cities-authority-mandate-face-masks-public/3210588001/ (last visited June 19, 2020).

If this case were a short, single-defendant trial, it would be less concerning if the Court decided to roll the dice to see if a safe trial could actually reach a verdict (although such a trial would still violate the defendant's constitutional rights as discussed below).  But the safety and logistical analysis is very different when it comes to this complex and novel six-Defendant trial, which the government contends will be twelve weeks long and involve no less than one hundred witnesses from across the country.  Even if the Court were to implement the numerous and complicated protocols that the government claims might reduce the risk of spread of the virus among trial participants, the frequent pauses in the case, required each time a trial participant experiences "a fever, cough, sore throat, shortness of breath, unusual muscle pain, recent loss of taste or smell, nasal congestion or a runny nose," will prevent the trial from reaching a verdict.  Thus, while some judges might determine that shorter, single-defendant trials should proceed, this Court should continue this case.

Moreover, at this time, Governor's Ducey's Executive Order indicates that "the elderly, and individuals with underlying health conditions" are advised to continue limiting their time away from their homes.[5]  Indeed, the CDC advises that individuals who are sixty-five or older, pregnant people, and anyone with pre-existing conditions such as diabetes, obesity, heart disease, lung disease, chronic and severe kidney problems, autoimmune conditions, and cancer should "**[s]tay home**."[6]  Thus, it is recommended that numerous defense counsel, Defendants, potential jurors, and witnesses should not leave their homes, travel to the Courthouse for trial, or appear in public for any period of time, let alone at trial in a confined, indoor environment, for no less than eight hours per day over the course of an estimated twelve weeks.  In their decades of practice, defense counsel have never been put in the position of risking their health and safety for the expediency of a trial, and are deeply concerned about doing so now.

---

[5]   *See* Executive Order 2020-36 (May 12, 2020) available at: https://azgovernor.gov/executive-orders (last visited on June 17, 2020).
[6]   *See* CDC, People Who Need Extra Precautions – What You Can Do, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html (last visited June 16, 2020) (emphasis in original).

Tellingly, the government does not state that it would be safe to try the case in August amid the pandemic, and does not address the effect that Arizona's surge in new cases could have on the health and safety of the trial participants, their families, or the Arizona community. Further, its suggested protocols do not ensure a decreased risk of transmission and certainly do not guarantee the safety of the trial participants. For example, the suggestion that this Court order witnesses to testify without masks disregards the health and safety of the witnesses. Testifying without a mask will place the lives of high risk witnesses, or any high risk individuals who live with witnesses, in peril. Defense counsel has already identified witnesses for whom such a court appearance could be lethal, and at least one witness has indicated that he will refuse to appear in the courtroom if *anyone* in the Courthouse, including himself, is unmasked. Further, proceeding to trial in the Special Proceedings Courtroom ("SPC"), although it may allow for better social distancing and would minimize use of elevators, presents its own dangers: in August, the air will flow and be circulated by the SPC's air conditioning system, and epidemiologists have concluded that "droplet transmission" occurs "by air-conditioned ventilation."[7] The risk of indoor transmission from an air conditioner also undermines the use of plexiglass screens or transparent face shields, because, unless those barriers create an air-tight seal (and they do not), a trial participant is still at risk for infection from airflow and circulation from an air conditioner. Thus, even a trial with strict compliance to these protocols nonetheless presents numerous avenues for widespread transmission of a deadly pathogen.[8]

But, it is fantasy to assume that strict compliance with the government's suggested protocols would actually occur. The wearing of masks is highly controversial, with many people refusing to wear them under any circumstance. For example, masks are mandated on all flights by federal law, but because some passengers remove them once in the air and no longer at risk for being removed

---

[7]   *See* CDC, COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020, available at https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article (last visited June 17, 2020).

[8]   Further, additional logistical issues caution against trying this case in the SPC. There are not enough tables for defense counsel in the SPC at this time, and there will need to be a table not just for each defense team, but for each member of each defense team to accommodate social distancing concerns. Similarly, with more distance, and more tables, there will need to be more microphones, electrical connections for laptops, etc.

from their flight for non-compliance, airlines are considering the extraordinary measure of banning such individuals from future flights.[9] Further, it can be anticipated that some trial participants may flout the Courthouse's social distancing protocols. Indeed, scenes of packed Phoenix bars demonstrate that some potential jurors may refuse or struggle to comply with social distancing, particularly when outside the Courtroom and beyond the watch of this Court. Thus, whether non-compliance is purposeful or accidental, we cannot assume that compliance will be a sufficient measure to protect trial participants from infection.

## II. This Court should continue the trial because this Court has an obligation to ensure that Defendants' constitutional rights are protected.

This Court has the obligation to exercise its supervisory power in a manner that ensures "the fair and effective administration of the criminal justice system." *United States v. W.R. Grace*, 526 F.3d 499, 512 (9th Cir. 2008). Further, this Court "has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness" including the protection of the Defendants' constitutional rights. *See United States v. Ritcher*, 488 F.2d 170, 173 (9th Cir. 1973) (quoting *United States v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969)).

Commencing this trial in August, with or without the government's suggested protocols, will deprive the Defendants of their rights to effective assistance of counsel, to trial before a fair cross-section of the community, to meaningful confrontation, to compulsory process, to present evidence, to testify, to be judged without the effect of a prejudicial face covering, to be tried by an impartial jury and to be free of a coercive verdict, and to be free of coercive pressure to plead guilty. A continuance is needed to ensure not only safety but also fundamental fairness.

### A. The Defendants' right to counsel will be violated.

Proceeding to trial in August will deprive the Defendants of the right to effective assistance of counsel based on both government interference with the duties of counsel and the constructive denial of counsel. (*See* Mot. at 8-9.) The government failed to attempt to address most of the

---

[9] *See* Lauren Zumbach, Chicago Tribune, *Major Airlines, including United, say face mask scofflaws can't fly. But enforcement might be tricky* (June 16, 2020), available at: https://www.chicagotribune.com/coronavirus/ct-coronavirus-airlines-enforce-mask-policies-20200616-pax6gygjkzdshnlshy2dzgwkti-story.html (last visited June 18, 2020).

Defendants' concerns. For example, Defendants asserted that a trial setting that places an attorney's own physical wellbeing in peril amounts to the constructive denial of counsel. (*See id.* at 8.) Defendants established that certain defense counsel are high risk for severe Covid-19 complications, including death, based on age and health considerations. (*See id.* at 3; Sealed Ex. B.) All defense counsel, but particularly the counsel at high risk, including lead counsel for four of the Defendants, will understandably be distracted by imminent health concerns each time a participant coughs or sneezes, gets closer than six feet, or removes a mask, rather than being focused on the tasks of trial counsel. The government has not acknowledged this Sixth Amendment violation.

Further, Defendants asserted that their counsel will be unable to perform basic functions such as gauging the reactions and demeanor of jurors, witnesses, and the court, if masked, as well as the inability to hear trial participants when they speak. (*See id.* at 8-9.) The government did not address this Sixth Amendment violation either.

Other concerns of the Defendants were met with or insufficient or unpractical solutions. For example, Defendants asserted that they would be deprived of their unqualified right to consult with counsel at trial if they were spaced six feet apart. (*See id.* at 9.) The government's citations in answer to this point are inapposite. (*See* Opp'n at 14 (citing *United States v. Levenite*, 277 F.3d 454 (4th Cir. 2002); *United States v. Balsam*, 203 F.3d 72 (1st Cir. 2000); and *United States v. Jones*, 766 F.2d 994 (6th Cir. 1985)).) In each of those cases, the courts' holdings were premised on the fact that the defendants were able to freely approach counsel's table, freely caucus with counsel elsewhere in the courtroom, or freely pass notes to counsel. *See Levenite*, 277 F.3d at 465-66; *Balsam*, 203 F.3d at 81-82; *Jones*, 766 F.2d at 1004. None of those methods of communication are possible at this trial because all trial participants (indeed, all individuals who enter the Courthouse) must maintain a distance of six feet at all times. (*See* Gen. Order 20-26 at 4.)

However, even if such spacing were constitutionally permissible, it is impracticable. Consultations with counsel will be critical at this trial because cross-examination of witnesses testifying about complex technologies and financial transactions may be informed by regular, contemporaneous consultation with the Defendants. It will be impossible for Defendants and counsel to communicate in real time in a manner that is not overheard by other trial participants and

not distracting to the jurors, if spaced six feet apart. Further, certain counsel suffer from hearing impairments, and may be unable to consult with their clients at that distance.

The government's response regarding Defendants' impaired trial preparation (Opp'n at 4) misses the mark. The government's lead point – the availability of online review platforms – has nothing to do with the points raised in the Motion. And while the government suggests that video-conferencing platforms can be used in place of in-person meetings with witnesses and clients, the defense should not be forced to prepare its witnesses and its case in a manner that deprives defense counsel of the meaningful ability to assess the witnesses. (Opp'n at 4.) This is true especially with respect to the preparation of any Defendants who may elect to testify. The decision to testify is not made after one or even a series of phone calls. In their decades of practice, defense counsel have never prepared a client to testify in any manner other than face-to-face meetings spanning several days, depending upon the complexity of the case. Further, even if defense counsel wanted to undertake initial witness preparation via video-conferencing, defense counsel are prohibited from displaying the extensive Jencks Act materials via a video-conferencing web application under the terms of the Protective Order, an impediment that the government created and failed to address.

Finally, the government's filing does not account for the implications that working from home has for the lawyers in this case. The government's dismissal of this concern fails to account that working from home, during a lockdown with all members of defense counsel's families also on lock-down, is not nearly as productive a work environment as an office. Indeed, during the lock-down, several counsel took on new obligations, such as watching and schooling young children, which impacted the amount of time available to prepare for this trial.

**B.    The Defendants' confrontation right will be violated.**

Defendants noted that proceeding to trial in August will deprive them of their confrontation right because the wearing of masks by witnesses – a precaution recommended by the CDC and required under General Order 20-26 – would impair the jury's capacity to judge the witnesses' facial expressions, demeanor, and credibility while "standing face to face" and "looking at" the witnesses. (Mot. at 11-12.) The government concedes as much, requesting that this Court exercise its discretion to order the witnesses to appear without masks "to avoid constitutional issues." (Opp'n at 12.) A

witness should not be forced to risk his or her safety during this global pandemic, especially in Arizona which is now a hotbed for transmission, when a continuance could allow for safe, unmasked witnesses.  Further, appearance by video is unacceptable to the defense.

### C. The Defendants' right to trial by a fair cross-section will be violated.

Defendants explained that their right to trial before a fair cross-section of the community will be violated if this case proceeds to trial in August. (Mot. at 10-11.)  To say that the claim has not yet ripened is no answer at all.  Defendants seek a continuance because the constitutional violations that will occur if the trial proceeds in August are foreseeable and preventable by virtue of a continuance.  The Motion was filed with the goal of ensuring that, when the trial commences, all parties can be confident that it will not be derailed due to the coronavirus and the Motion identified several constitutional rights that will be violated *if* the parties proceed to trial in August (in addition to health and safety concerns).

The government's reliance on cases from other Circuits to argue that Defendants cannot establish a fair cross-section claim (*see* Opp'n at 5-6) is misplaced.  It is clear that, if the summonses are issued for the August start date, they will not produce a lawful cross-section of the community because the coronavirus is disproportionately affecting minorities in terms of health and economics. (Mot. at 10-11.)   Instead, the jury selection process will result in a skewed pool with underrepresentation of minorities.  (*Id.*)  In contrast, the devastation caused by Hurricane Katrina equally impacted all who were in her path.  As a result, cases rejecting fair cross-section claims related to that natural disaster have no bearing here.

### D. Other trial rights will be compromised.

Defendants further explained that proceeding to trial in August will undermine their rights to compulsory process, to present evidence, and to testify. (Mot. at 13.)  Defendants explained that, it is uncertain if defense investigators will be able to serve subpoenas on witnesses, and even if they do, it is ever more uncertain whether witnesses will comply. (*See id.*)  Indeed, the government has taken the position that personal service is too dangerous at this time. (*See* Mot. Ex. E.)  The government failed to address these issues other than to state that the government's case comes first, which "allow[s] [the defense] for additional time to assess any COVID-19 concerns."  (Opp'n at 12.)

9

Defendants are entitled to serve subpoenas, and to present a defense, including witness testimony free from the worries of contracting a deadly pathogen, assuming the witnesses actually appear. Defendants are entitled to testify without prejudicial face coverings, yet wearing a covering is the only way to safely appear in public, and is recommended by the CDC and required under General Order 20-26. (Mot. at 14.)

### III. No other trial considerations outweigh this Court's obligation to ensure a safe trial for all participants and fair trial the Defendants.

The government both concedes that a brief continuance to the fall of 2020 may be necessary, and maintains that the trial should proceed in August. (Opp'n at 16.) The government's suggestion that this is an "indefinite" delay (Opp'n at 1) is wrong, as it its response that Defendants are seeking delay for further review of the discovery (Opp'n at 2-3). Defendants were preparing for this trial as scheduled, until the pandemic hit at which time trial preparations were interrupted as described in the Motion. But the sole purpose of this Motion is to ensure a safe and fair trial that reaches a verdict the first and only time the case is tried, without incessant starts and stops for serious medical reasons. That cannot occur now or in August. Defendants do not seek an indefinite continuance, but one that will enable the case to be tried safely, efficiently, and fairly. We may be in a very different position in the fall. As the government concedes, it is possible that there will be a vaccine or cure in a few "months." (Opp'n at 2.) A continuance will keep all trial participants safe, particularly at this time, when the spread of the coronavirus is at dangerous levels in Arizona. Moreover, absent a crystal ball, none of the parties could have anticipated this once-in-a-century global pandemic when negotiating the original scheduling order or seeking previous continuances. It is disingenuous to seek the denial of this Motion on the basis that Defendants sought and obtained prior continuances when this Motion is based on a catastrophic and ongoing event that is outside the control of the Defendants, the Court, and the government. Indeed, the coronavirus took the entire world by surprise.

Moreover, the government's claim of prejudice is overstated. Defendants appreciate that the government and its witnesses are eager for the trial to commence. However, the risk of faded memories is not due to the continuance the Defendants seek. Any faded memories are due to the fact that the government is charging and trying the Defendants based on events that occurred as early

as 2004. Indeed, the government indicted the Defendants in 2018 based on information that had been in its possession since 2012. Any fading of memories occurred long before the government indicted this case. And claims of faded memories will seem insignificant if a witness becomes infected with the coronavirus due to traveling to or appearing at the trial.

Finally, the record in this case belies the government's suggestion that defense counsel have not diligently prepared the defense. There has been extensive substantive motion practice. Defendants' Motion to Dismiss Based on Outrageous Government Misconduct Invading Attorney-Client Privilege (Doc. 940) and Defendants' Motion to Compel Production of Brady Material (Doc. 777) are pending, and additional motion practice is forthcoming (*see* Doc. 1020 at 11). Defendants filed and opposed numerous motions in limine. The parties are prepared to submit their proposed jury questionnaires no later than June 26, 2020. Defense counsel have reviewed discovery, interviewed witnesses (when possible), identified and researched trial issues, conferred about trial strategy, and more. But none of that effort will matter if a single trial participant contracts the coronavirus (or even the common cold) during trial because the trial will be paused until the trial can safely resume. Without a continuance, it is all but guaranteed that health and safety concerns are likely to pause or derail the trial, and impinge the Defendants' constitutional rights.

## CONCLUSION

For all these reasons, this Court should grant the Motion. While Defendants, too, "support[] the Court's efforts in exploring measures that would allow jury trials to proceed safely during this time," and also appreciate the government's efforts to brainstorm some of the safety issues that would need to be addressed to conduct a trial during this pandemic, Defendants believe that a twelve-week, multi-defendant, hundred-plus witness trial is not the right vehicle for the Court to begin experimenting with conducting trials during a pandemic.

/
/
/
/

RESPECTFULLY SUBMITTED this 19th day of June, 2020,

Paul J. Cambria, Jr.
Erin E. McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP

By: /s/ Paul J. Cambria, Jr.
Paul J. Cambria, Jr.
Attorneys for Michael Lacey

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II (C) (3), Erin E. McCampbell hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN, PLC

By: /s/ Whitney Z. Bernstein
Whitney Z. Bernstein
Attorneys for James Larkin

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By: /s/ Ariel A. Neuman
Ariel A. Neuman
Attorneys for John Brunst

Bruce Feder
FEDER LAW OFFICE, P.A.

By: /s/ Bruce Feder
Bruce Feder
Attorneys for Scott Spear

|   |   |   |
|---|---|---|
|   | David Eisenberg | |
|   | DAVID EISENBERG, P.L.C. | |
|   | | |
|   | By: | /s/ David Eisenberg |
|   | | David Eisenberg |
|   | | Attorneys for Andrew Padilla |
|   | | |
|   | Joy Bertrand | |
|   | JOY BERTRAND, ESQ. | |
|   | | |
|   | By: | /s/ Joy Bertrand |
|   | | Joy Bertrand |
|   | | Attorneys for Joye Vaught |

On June 19, 2020, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal Of a Notice of Electronic Filing to the Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov