MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorneys
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Scott Spear, <br><br> Defendant. | No. CR-18-422-003-PHX-SMB <br><br> **UNITED STATES' RESPONSE TO DEFENDANT SCOTT SPEARS' *AMENDED* MOTION FOR ISSUANCE OF 17(c) SUBPOENAS (Doc. 1019)** |

**SUMMARY OF ARGUMENT**

Defendant Scott Spear's amended motion for issuance of 17(c) subpoenas should be denied for several reasons. *First*, Spear has failed to demonstrate the relevance of the information that he seeks—a threshold requirement for issuance of pretrial Rule 17(c)

subpoenas. *Second,* Spear's requests are entirely non-specific; he seeks broad, general categories of information, and Rule 17(c) cannot be used to compel the production of such generalized requests from third parties. *Third,* to the extent Spear's proposed subpoenas seek impeachment evidence, Rule 17(c) is not the appropriate vehicle to obtain such material. *Fourth*, Spear also cannot use his proposed subpoenas to obtain witness statements—Rule 17(h) expressly forecloses such requests.  In sum, Spear's subpoenas constitute nothing more than a broad fishing expedition that courts routinely reject. His motion should denied.

## RELEVANT FACTS

On November 16, 2018, the United States responded to Defendants' request for *Brady* disclosure that demanded the same material that Spear seeks in his latest filing. (*See* Ex. A, Nov. 16, 2018 letter from K. Rapp to M. Piccarreta). The United States asked Defendants to provide authority supporting their request. (*Id.*) Defendants never did so. Nearly a year later, Defendants filed a Motion to Compel Production of *Brady* Material (Doc. 777) that again requested the same information, as follows:

- All communications to and from any local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials involved in any manner with the investigation or prosecution of Backpage or its directors, officers, or employees.

- All communications to and from NCMEC relating to the  possible Criminal prosecution of Backpage or its directors, officers, or employees.

- All communications to and from Nanci Clarence, or any lawyers representing Mr. Ferrer or Backpage, that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Ferrer that relate to the plea negotiations or plea agreement and

all writings subsequent to said plea agreement.

- All communications to and from K.C. Maxwell or any lawyers representing Mr. Hyer that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Hyer that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

(Doc. 777.) The Government responded to the motion. (Doc. 810.) Defendants replied but did not mention their request for communications between the prosecution and attorneys for Ferrer and Hyer. (Doc. 825.) Instead, their reply largely focused on their request for the federal prosecution team's communications with NCMEC and the Texas and California Attorney General's Offices. (*Id.*) The Court has not ruled on that motion.

On April 3, 2020, and again on April 27, 2020, the United States responded to correspondence from Spear requesting the communications that are the subject of his proposed subpoenas.[1] (Ex. B). In response, Spear never articulated the requested information's relevance.

On June 12, 2020, Spear filed a motion for the issuance of three subpoenas, with a compliance date that has since passed (May 30, 2020), seeking essentially the same communications as the previous correspondence and the *Brady* motion.[2]

---

[1] Despite the United States' request, Spear neglected to attach to his motion all pertinent correspondence regarding the categories of information he seeks. It appears that Spear included a May 13, 2018 letter to attorney Michael Piccarreta in error as it only has marginal relevance to his request for the issuance of the subject subpoenas. (Doc. 1019-3.) Spear included the United States' correspondence dated April 3, 2020, but not the May 18, 2020 letter that was also responsive to his request for subpoenas. (Ex. B.)

[2] Despite suggesting that the motion was based on the collective experience of all defense counsel (Mot. at 4), none of the other Defendants has joined Spear's motion.

**LAW AND ARGUMENT**

Federal Rule of Criminal Procedure 17(c) states: "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." To require pretrial production, the requesting party must show:

> (1) that the documents [or other materials] are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon,* 418 U.S. 683, 699-700 (1974); *see also United States v. Reed,* 726 F.2d 570, 577 (9th Cir. 1984) ("[Rule] 17(c) requires a showing of relevancy, admissibility, and specificity to support the issuance of a subpoena duces tecum"). Rule 17's "specificity" requirement is not satisfied if the defendant does not know what the evidence consists of or what it will show. *See United States v. Arditti,* 955 F.2d 331, 346 (5th Cir. 1992) ("[I]t appears that Arditti was attempting to use the subpoena to gain knowledge that he could not obtain under rule 16(a)(1), as much as to obtain evidence, i.e., that he was trying 'to use the subpoena duces tecum as a discovery device, which it is not.'"). A defendant's "mere hope" that the documents will produce favorable evidence will not support the issuance of a subpoena. *United States v. Hang,* 75 F.3d 1275, 1283 (8th Cir. 1996).

In addition, the Supreme Court has explained: "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 (1951). Specifically, Rule 17(c) was not intended to expand the scope of criminal discovery under Rule 16. *See id.* The Ninth Circuit has similarly made clear that seeking documents or other materials solely for purposes of impeachment "is generally insufficient to justify the pretrial production of documents." *United States v. Fields,* 663 F.2d 880, 881 (9th Cir. 1981) (citing *Nixon,* 418

U.S. at 701).

Rule 17(h) contains a further limit on the types of information that may be sought under the rule, stating: "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Rule 26.2 incorporates 18 U.S.C. § 3500, also known as the Jencks Act. The rule allows "witness statements" to be requested only *after* the witness has testified on direct examination. Fed. R. Crim. P. 26.2(a). Rule 26.2 defines a "statement" as: "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a record; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement." Fed. R. Crim. P. 26.2(f).

Defendant's request for issuance of his three proposed subpoenas runs afoul of several of these requirements, and his motion should be denied.

### A. Spear Has Failed to Show that His Proposed Subpoenas Seek Relevant Information.

For over a year, Defendants have repeatedly requested the communications sought in Spear's motion. Yet they've failed to articulate the necessary factors, including relevance and specificity, as required by *Nixon*. 418 U.S. at 699-700. The three proposed subpoenas broadly seek communications between government prosecutors and defense attorneys, NCMEC employees, and Department of Justice officials; however, Spear's motion contains no indication of what those communications might show. In *Hang,* the court explained that a defendant's "mere hope" that the requested documents would produce favorable evidence is insufficient to support issuance of a subpoena. 75 F.3d at 1283; *see also Deitle v. United States*, 302 F.2d 116, 118 (7th Cir. 1962) (denying motion for subpoena of witnesses that failed to "set forth the testimony defendant expects the witnesses to give nor . . . show that such evidence would be material to his case"). For example, here is Spear's broad and speculative demand: "any written or digital notes, commentary, or other statements made by Mr. Ferrer or his attorneys regarding plea

negotiations, *including anything that might* indicate Mr. Ferrer's disagreement with government assertions and accusations, including *his refusal or other objections* to agree to what prosecutors or agents were attempting to have him discuss or allege." (Mot. at 2 (emphasis added)).

In addition, Spear's reliance on *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999), "as well as other applicable case law," for the issuance of 17(c) subpoenas is unavailing. (Mot. at 2.) In *Sudikoff*, the court ordered disclosure of communications between the prosecution and counsel for a cooperating informant who, unlike here, received immunity. *Sudikoff*, 36 F. Supp. 2d at 1206 ("'The need for disclosure is particularly acute where the government presents witnesses who have been granted immunity from prosecution in exchange for their testimony.'") (quoting *Carriger v. Stewart,* 132 F.3d 463, 480 (9th Cir. 1997)). Here, neither Ferrer nor Hyer were provided immunity for their expected testimony. Instead, they entered plea agreements that have been disclosed to Defendants. In addition, both Ferrer and Hyer engaged in numerous interviews that have been memorialized in memoranda of interviews (MOIs), adopted by those witnesses and disclosed pursuant to the Jencks Act and the Court's scheduling orders. And, unlike *Sudijkoff*, there is substantial corroborating evidence for Ferrer's and Hyer's testimony, including hundreds of emails between Ferrer and Hyer and Defendants. *Cf. Carriger*, 132 F.3d at 480-82 (lack of corroborating evidence at trial made impeachment evidence material). Moreover, Ferrer's testimony, in particular, involves numerous meetings and/or email exchanges with law enforcement officials (*e.g.*, the Washington State Attorney General's Office, law enforcement members representing the Dallas Internet Crimes Against Children Conference, numerous state and federal law enforcement representatives seeking information from Backpage) and non-governmental organizations (NCMEC, Polaris, the Auburn Theological Seminary, among others) where participants in those meetings will testify and largely corroborate Ferrer's version of the meetings.

### B. Spear's Requests Are Not Specific and Constitute an Impermissible Attempt to Use Rule 17(c) as a Discovery Tool.

In addition to relevancy, a Rule 17(c) subpoena requires a showing of specificity to support its issuance. *See Reed,* 726 F.2d at 577 ("[Rule] 17(c) requires a showing of relevancy, admissibility, and specificity to support the issuance of a subpoena duces tecum"). The "specificity" requirement is not satisfied if the defendant does not know what the evidence consists of or what it will show. *See Arditti,* 955 F.2d at 346.

Spear's request fails this specificity requirement. The general nature of his request is evidenced by such phrases as "anything that might indicate." (Mot. at 2) The following request illustrates the type of overbroad, generalized language contained in his proposed subpoenas:

> 1) *All communications* between your firm (Clarence, Dyer and Cohen) and/or *any co-counsel* on the one hand, and *any prosecutors and/or members of law enforcement* on the other, *regarding, suggesting or related to Carl Ferrer, Backpage, or any defendant in this captioned matter*, including *but not limited to any communications* reflecting negotiations, facts alleged by the government, attorney proffers, interviews or statements of Carl Ferrer, etc.

(Doc. 1091 (emphasis added).)

This broad, open-ended request, is anything but specific. Spear's remaining proposed subpoenas are deficient for the same reason, and his motion should be denied. *United States v. Johnson*, 2008 WL 62281, at *4 (N.D. Cal. Jan. 4, 2008) (relying on *Nixon's* "specificity" requirement to prevent improper use of Rule 17(c) as a discovery tool; "[T]his is not merely an improper fishing expedition, this a net cast blindly from an ocean troller in the mere hope of dredging some speculative treasure from the bottom of the sea.").

### C. Rule 17(c) Is Not an Appropriate Tool for Seeking the Pretrial Production of Impeachment Material.

The subpoenas also seek impeachment material because, as Spear argues, "the material would be admissible directly as admissions and declarations against interest." (Mot. at 5.) Spear apparently theorizes that defense counsel for Ferrer and Hyer provided an overview of their clients' expected information before meeting with the prosecution team, that this information is materially different from what is documented in the MOIs, and that Spear is entitled to receive any notes or communications memorializing those attorney and witness proffers to determine if there are inconsistencies with the MOIs. Spear fails to explain why the information he seeks is relevant except for impeachment purposes, which the Supreme Court and the Ninth Circuit have held is insufficient. *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *Fields*, 663 F.2d at 881 (seeking documents or other materials solely for purposes of impeachment "is generally insufficient to justify the pretrial production of documents").

### D. It is Unclear if Rule 17(h) Permits Subpoenas for Witness Statements From Third Parties.

A subpoena requested under Rule 17(c) cannot be used to obtain witness statements. Fed. R. Crim. P 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement."). Here, the defective subpoenas request communications (which are statements) between various individuals (*e.g.*, between government prosecutors and attorneys for Ferrer and Hyer, Department of Justice officials and NCMEC). The statements sought by Spear (*e.g.*, communications between the prosecution team and/or representatives of the Attorney General's Offices of Texas and California and attorneys for Ferrer, Hyer, NCMEC) are not statements from a testifying witnesses, nor (if they exist) do they consist of statements that have been adopted by Ferrer and Hyer. *See* 18 U.S.C. § 3500.

More importantly, as the subpoenas are directed to third parties (counsel for Ferrer and Hyer), notes taken by the attorneys raise privilege issues, among other things. In addition, as the attorneys are not witnesses at trial and the notes (if they even exist) are not in the possession of the government, no Rule 26.2 or Jencks Act obligations arise. The Court should deny the request for the issuance of the subject subpoenas to the extent that they seek statements from a witnesses' attorney.

Although no appellate court appears to have considered whether Rule 17(h)'s prohibition against subpoenaing witness statements applies to statements that are not—and may never be—in the United States' possession, several district courts have concluded that Rule 17(h) only applies to witness statements in the possession of a party. *See, e.g.*, *United States v. Chavez*, 2020 WL 109703, at *3-4 (N.D. Cal. Jan. 9, 2020) (discussing split of authority; holding that Rule 17(h) should not be interpreted to prevent subpoenaing witness statements in the possession of a non-party); *United States v. Hussain*, 2018 WL 1091083 at *2 (N.D. Cal. Feb. 28, 2018) (Rule 17(h) applies only to statements in the United States' possession); *United States v. Johnson*, 2014 WL 6068089, at *3, 11 (N.D. Cal. Nov. 13, 2014) (limiting subpoena to documents in possession of subpoenaed non-party but not in possession of the United States); *United States v. Perez*, 2014 WL 12697319, at *2 (C.D. Cal. May 14, 2014) (quashing only unsworn hearsay statements of witness, but permitting subpoena for her statements made during investigation of defendants and information about her role as police informant, where those materials were not in the United States' possession).

However, several other courts have concluded that Rule 17(h) applies to all witness statements from whatever source. *See, e.g.*, *United States v. Benanti*, 2017 WL 78734, at *3 (E.D. Tenn. Jan. 6, 2017) (denying request for subpoena of co-defendant's jail telephone recordings under Rule 17(h)); *United States v. Phoenix*, 2015 WL 6094882, at *3 (N.D. Cal. Oct. 16, 2015) (Rule 17(h) bars use of a subpoena to obtain witness statements from parties or non-parties); *United States v. Yudong Zhu*, 2014 WL 5366107, at *3 n.3 (S.D.N.Y. Oct. 14, 2014) (rejecting defendant's argument that Rule 17(h) applies only to

witness statements already in the United States' possession).

In all events, Spear seeks the statements of Hyer's and Ferrer's *attorneys*. For example, he argues that "Mr. Spear seeks any written or digital notes, commentary, or other statements made by Mr. Ferrer or his attorneys." Aside, from attorney-client privilege considerations, Ferrer's attorneys—who are not testifying witnesses—would be under no obligation under Rule 26.2 or the Jencks Act to provide these statements. The same argument, of course, applies to Hyer.

In addition, Spear has asserted on several occasions that his instant request is similar to the discovery request made in *United States v. Sidoo*, CR 19-10080-NMG (D. Mass). (*See* Ex. D). There the Defendant worked proactively with law enforcement to investigate targets that were suspected of providing bribes for their children to gain entrance into selective universities. The proactive nature of this assistance included wiretaps of phone conversations and in person meetings with targets. (*Id.*) Apparently the cooperator (Rick Singer) took notes during his proactive investigative activities and the court found these notes discoverable. (*Id.*)

The government has advised Spear's counsel that those circumstances do not exist here. (*See* Ex B and 1019-3 at 8) In short, Ferrer did not meet with the prosecution team (both State and Federal) until April 5, 2018. Hyer did not meet with the prosecution until August 2018. This fact is detailed in Ferrer's and Hyer's MOIs, which Spear received well before the government was obligated to provide them. In addition, there is nothing in the million pages of discovery that has been provided to Defendants that contradicts this fact. Nevertheless, Spear persists in his request. This is a classic fishing expedition.

Lastly, regarding the request for communications between NCMEC and DOJ, Spear acknowledges that Defendants have received Jencks Act statements for NCMEC employees testifying at trial. It is unclear what discovery obligation is triggered by the video attached as Exhibit E to his motion, but the request for a subpoena fails based on the *Nixon* considerations detailed above.

## CONCLUSION

Based on the foregoing, Spear's request for the issuance of three subpoenas should be denied.

Respectfully submitted this 26th day of June, 2020.

> MICHAEL BAILEY
> United States Attorney
> District of Arizona
>
> *s/ Kevin Rapp*
> KEVIN M. RAPP
> MARGARET PERLMETER
> PETER S. KOZINETS
> ANDREW C. STONE
> Assistant U.S. Attorneys
>
> JOHN J. KUCERA
> DANIEL BOYLE
> Special Assistant U.S. Attorneys
>
> BRIAN BENCZKOWSKI
> Assistant Attorney General
> Criminal Division, U.S. Department of Justice
>
> REGINALD E. JONES
> Senior Trial Attorney
> U.S. Department of Justice, Criminal Division
> Child Exploitation and Obscenity Section

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Marjorie Dieckman*
Marjorie Dieckman
U.S. Attorney's Office