Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECUSAL** |
| vs. | |
| Michael Lacey, *et al.*, | (Oral Argument Requested) |
| Defendants. | |

1  Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
   Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
2  Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW PC
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
6  Facsimile: (310) 201-2110
   glincenberg@birdmarella.com
7  aneuman@birdmarella.com
   gpanchapakesan@birdmarella.com
8  *Attorneys for John Brunst*
9
   Bruce Feder (AZ Bar No. 004832)
10 FEDER LAW OFFICE PA
   2930 E. Camelback Road, Suite 160
11 Phoenix, Arizona 85016
12 Telephone: (602) 257-0135
   bf@federlawpa.com
13 *Attorney for Scott Spear*
14
   David Eisenberg (AZ Bar No. 017218)
15 DAVID EISENBERG PLC
   3550 N. Central Ave., Suite 1155
16 Phoenix, Arizona 85012
17 Telephone: (602) 237-5076
   Facsimile: (602) 314-6273
18 david@deisenbergplc.com
   *Attorney for Andrew Padilla*
19
20 Joy Malby Bertrand (AZ Bar No. 024181)
   JOY BERTRAND ESQ LLC
21 P.O. Box 2734
22 Scottsdale, Arizona 85252
   Telephone: (602)374-5321
23 Facsimile: (480)361-4694
   joy.bertrand@gmail.com
24 *Attorney for Joye Vaught*

**Table of Contents**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

   A. The Government Does Not Dispute That AG Brnovich Has Made Statements and Taken Actions Targeting Backpage.com and Defendants. ............................................................... 2

   B. The Recusal Motion Was Timely. ............................................................................... 4

   C. AG Brnovich Has Interests Under §§ 455(b)(4) & (5) That May Be Affected By This Litigation. ............................................................................................................................. 7

   D. A Reasonable Person With Knowledge of the Facts Would Question the Court's Impartiality. ........................................................................................................................ 10

III. CONCLUSION ............................................................................................................. 11

**Table of Authorities**

**Page(s)**

**Cases**

*Akins v. Knight*,
  2016 WL 127594 (W.D. Mo. Jan. 11, 2016) ................................................................. 10

*Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*,
  956 F.3d 1228 (10th Cir. 2020) ................................................................................... 10

*Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc.*,
  140 F.3d 898 (11th Cir. 1998) .................................................................................... 6, 7

*Blixseth v. Yellowstone Mountain Club, LLC*,
  742 F.3d 1215 (9th Cir. 2014) ....................................................................................... 1

*Clemens v. U.S. Dist. Court for Cent. Dist. of Cal.*,
  428 F.3d 1175 (9th Cir. 2005) ................................................................................. 1, 10

*Drake v. Birmingham Bd. of Educ.*,
  476 F. Supp. 2d 1341 (N.D. Ala. 2007) ........................................................................ 5

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ....................................................................................... 6

*E. & J. Gallo Winery v. Encana Energy Serv., Inc.*,
  2004 U.S. Dist. LEXIS 29380, *13-15 (E.D. Cal. Feb. 20, 2004) ................................. 9

*Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*,
  525 F.3d 554 (7th Cir. 2008) ..................................................................................... 5, 8

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ..................................................................................................... 11

*In re New Mexico Nat. Gas Antitrust Litig.*,
  620 F.2d 794 (10th Cir. 1980) ....................................................................................... 9

*In re Virginia Elec. & Power Co.*,
  539 F.2d 357 (4th Cir. 1976) ..................................................................................... 8, 9

*Listecki v. Official Committee of Unsecured Creditors*,
  780 F.3d 731 (7th Cir. 2015) ......................................................................................... 5

*Lyman v. City of Albany*,
   597 F. Supp. 2d 301 (N.D.N.Y. 2009) ............................................................................... 7

*Melendres v. Arpaio*,
   2009 WL 2132693 (D. Ariz. July 15, 2009) ................................................................ 9, 11

*Melendres v. Arpaio*,
   2015 WL 13173306 (D. Ariz. July 10, 2015) ............................................................ 6, 8, 9

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ......................................................................................... 10

*National Abortion Fed. v. Ctr. for Med. Progress*,
   257 F. Supp. 3d 1084 (N.D. Cal. 2017) ........................................................................... 10

*Perry v. Schwarzenegger*,
   630 F.3d 909 (9th Cir. 2011) ........................................................................................... 11

*Potashnick v. Port City Const. Co.*,
   609 F.2d 1101 (5th Cir. 1980) ............................................................................... 1, 4, 7, 8

*Preston v. United States*,
   923 F.2d 731 (9th Cir. 1991) ..................................................................................... 4, 5, 6

*SCA Services, Inc. v. Morgan*,
   557 F.2d 110 (7th Cir. 1977) .................................................................................... 7, 8, 9

*Summers v. Singletary*,
   119 F.3d 917 (11th Cir. 1997) ........................................................................................... 7

*Twist v. U.S. Dep't of Justice*,
   344 F. Supp. 2d 137 (D.D.C. 2004) ................................................................................... 2

*United States v. Balistrieri*,
   779 F.2d 1191 (7th Cir. 1985) ........................................................................................... 5

*United States v. Holland*,
   519 F.3d 909 (9th Cir. 2008) ......................................................................................... 1, 3

*United States v. Owens*,
   902 F.2d 1154 (4th Cir. 1990) ........................................................................................... 7

*United States v. Rogers*,

   119 F.3d 1377 (9th Cir. 1997) .................................................................................................. 7

*Wells Fargo Bank NA v. Wyo Tech Investment Group LLC*,

   2019 WL 4736775 (D. Ariz. Sept. 27, 2019) .......................................................................... 7

**Statutes**

28 U.S.C. § 455(a) ............................................................................................................... 2, 7

*28 U.S.C. § 455(b)* ................................................................................................................. 2

28 U.S.C. § 455(b)(1) .............................................................................................................. 5

28 U.S.C. §§ 455(b)(4) and 455(b)(5)(iii) ............................................................................ 2, 7

**Rules**

Fed. R. Civ. P. 71.1 ................................................................................................................ 8

## I. INTRODUCTION

Responding to Defendants' recusal motion, the government posits the recusal motion is premised on the Court's inability to "preside impartially because of her husband's views" and that the recusal motion would require the Court "to recuse in every case involving subjects that the AG's Office or Attorney General Mark Brnovich [] have addressed." Resp. at 1. Neither is correct.

Defendants have *not* moved for recusal on the grounds the Court has been or will be biased.

Nor have Defendants moved for recusal because Judge Brnovich is married to the Arizona Attorney General or because AG Brnovich and the Arizona Attorney General's Office have taken public stances on matters of public policy (white collar crime, prostitution, sex trafficking, etc.) or prosecuted other cases involving those areas of the law. Those facts alone would *not* require recusal.

Instead, Defendants have moved for recusal because AG Brnovich has interests that may be substantially affected by the outcome of this case and based on the *appearance* of a lack of impartiality arising from AG Brnovich's statements and actions that bear *directly on this case and these Defendants*— statements and actions the government does not contest in its response. On either ground, it is irrelevant whether Judge Brnovich subjectively believes she is capable of impartially presiding over the case. If AG Brnovich has an interest and it could be substantially affected, Judge Brnovich must recuse, even if she believes she can be impartial. As to appearances, the standard is objective: whether "a reasonable person with knowledge of the facts would conclude that the judge's impartiality might reasonably be questioned." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014). Section 455 "clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify [herself] in a questionable case" and "any inconvenience which does arise [from recusal] is more than outweighed by the need to protect the dignity and integrity of the judicial process."[1] *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1112 (5th Cir. 1980)*; accord United States v.*

---

[1] The government claims the Court has a "strong duty to sit," but cited a Ninth Circuit decision out of context, when the Court actually held that a judge has "as strong a duty to sit *when there is no legitimate reason to recuse* as [s]he does to recuse when the law and facts require." *Clemens v. U.S. Dist. Court for Cent. Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (emphasis added). The government also claims prejudice from a recusal, but identifies none. Even if the government would be prejudiced, the prejudice would be outweighed by the need to protect the judicial process. The government suggests

*Holland*, 519 F.3d 909, 912 (9th Cir. 2008) ("If it is a close case, the balance tips in favor of recusal.").

The undisputed facts show AG Brnovich (and others acting on his behalf): have railed against the particular business at the core of this case (Backpage.com, LLC); have made public statements that reasonable people would conclude mean AG Brnovich believes Defendants are guilty of the crimes charged in this case; have directed the public to websites making similar claims and containing inflammatory and highly prejudicial statements about Backpage.com and Defendants; and have directly or indirectly vouched for the credibility of many of the government's witnesses in this case. These statements and actions targeting Backpage.com and Defendants make this case unlike any the government cites in its response and provide ample basis for a reasonable person to question Judge Brnovich's impartiality—particularly given the political implications of AG Brnovich's positions relating to Backpage.com and Judge Brnovich's involvement in AG Brnovich's political campaigns.[2] AG Brnovich's statements and actions require the Court to recuse a) under 28 U.S.C. §§ 455(b)(4) and 455(b)(5)(iii) because AG Brnovich has interests that could be substantially affected by the outcome of this proceeding and b) under 28 U.S.C. § 455(a) because AG Brnovich's interests, and public statements and actions, create an appearance of partiality. *See* Declaration of Vaughn R. Walker, Exh. A.

## II.   ARGUMENT

### A.   The Government Does Not Dispute That AG Brnovich Has Made Statements and Taken Actions Targeting Backpage.com and Defendants.

In its response, the government does not dispute the core facts underlying the recusal motion:

---

that recusal is an "extreme measure," but, again, quotes those words out of context. *Twist v. U.S. Dep't of Justice*, 344 F. Supp. 2d 137, 142 (D.D.C. 2004) ("Recusal is an extreme measure that is required *only in circumstances specified in 28 U.S.C. § 455(b).*") (emphasis added).

[2] To this day, AG Brnovich has campaign photos and videos online that prominently feature Judge Brnovich. *See, e.g.*, https://www.mark4az.com/photos-videos/; https://www.youtube.com/watch?v=UhIP3GCB6GI; https://www.youtube.com/watch?v=ALrAoygmcnY. AG Brnovich also has publicly touted Judge Brnovich's elevation to the Federal bench at his campaign events. *See, e.g.*, https://m.youtube.com/watch?v=OJSRn4F6zV8. Defendants do not suggest there is anything untoward with Judge Brnovich having an interest in her spouse's success, political or otherwise, or *vice versa* with respect to AG Brnovich—only that AG Brnovich's statements and actions mean that Judge Brnovich should not preside over this particular case.

- On August 16, 2017, AG Brnovich wrote a letter to Congress "highlighting the potential complicity of online classified-ad company Backpage.com in soliciting sex traffickers' ads" and claiming Backpage.com "constructed [its] business model[] around advertising income gained from participants in the sex trade," "facilitate[ed]—and profit[ed] from—these illegal activities," "profit[ed] from prostitution and crimes against children," and used "the CDA as a shield" to keep it beyond "the reach of law enforcement." Motion for Recusal ("Mot.") (Dkt. 1059), Exh. 9. AG Brnovich issued a press release making similar claims (Mot., Exh. 8) and promoted both via Twitter. Mot., Exh. 10.

- AG Brnovich has published several booklets on human trafficking saying that human trafficking is one of "the most dangerous and growing threats to children in Arizona," one of which decried Backpage.com as "an online classified advertising site used frequently to purchase sex," claiming "over 300 ads are placed each day in Phoenix on Backpage.com for adult services—with an estimated 20% for girls under 18." Mot., Exh. 1. The booklets' claims are supported with citations to the United States Department of Justice and to organizations whose current or former leadership are listed as government witnesses in this case. The booklets also direct readers to the websites of numerous advocacy groups, many of which are associated with the government's trial witnesses in this case, on which readers will find inflammatory and highly prejudicial comments about Backpage.com and some Defendants.[3] *Id.*

- AG Brnovich, via his Twitter account and his website, promoted a webinar, presented under his name, that: claimed there were "so many websites that are dedicated to posting advertisements for sex with underage children;" said "Backpage.com . . . [was] where the vast majority of all advertisements were posted for sex trafficking and sexual exploitation;" identified organizations associated with two of the government's witnesses as "the two very trustworthy sources that we always want to use;" and told viewers they could obtain more information from four organizations whose websites include inflammatory and highly prejudicial material about Backpage.com and Defendants—organizations associated with at least seven of the government's witnesses. Mot. at 3.

- AG Brnovich, via his Twitter account and his website, directed the public to the website of a "partner" organization containing inflammatory and highly prejudicial material relating to Backpage.com and Defendants. That website trumpets the purportedly "infamous story of Backpage.com's exploitation and trafficking of women and children" and claims four Defendants sought to "abscond[] with millions of dollars in illegal profits from their now-shuttered sex business," but were "caught red-handed attempting to steal away their ill-gotten

---

[3] The government did not dispute that it intends to put at issue during the trial of this case many of the claims in AG Brnovich's booklets and on the websites to which AG Brnovich directs the public, nor did it dispute those claims "will be hotly contested at trial." Mot. at fn. 5. The government suggests these references in the booklets and on the websites are of no consequence, because few identify Defendants individually, but the government plainly intends to vilify Backpage.com at trial and, whether through its conspiracy claims or otherwise, claim that Defendants individually are responsible for whatever Backpage.com may have done. The government does not bother to contend otherwise. As such, it is of no consequence whether AG Brnovich, his booklets, or the websites to which he refers the public vilify Backpage.com or Defendants individually.

profits to prevent victims from ever recovering a penny's worth of compensation." *The website expressly references this criminal case.* Mot., Exh. 15.

- AG Brnovich, via his Twitter account and his website, directed the public to the website of an organization claiming "Backpage.com [is] widely viewed as responsible for the explosion of sex trafficking in the United States" and promoting its conferences that regularly featured as presenters one of the lead prosecutors on this case (DOJ Trial Attorney Reginald Jones) (as well as other representatives of the Department of Justice) and law enforcement officers and fact witnesses the government says it will call as witnesses in this case. Mot., Exhs. 17 & 18.

The government dismisses these statements and actions, and AG Brnovich's resulting interests, as "remote," "indirect" and "speculative" (Resp. at 2 and 12-13), but AG Brnovich's statements and actions directly target Backpage.com and Defendants and are part of AG Brnovich's high-profile public stance on trafficking—a high-profile stance that the government acknowledges (Resp. at 8).

### B.     The Recusal Motion Was Timely.

In the Ninth Circuit, "no per se rule exists regarding the time frame in which recusal motions should be filed," but "recusal motions should be filed with reasonable promptness *after the ground for such a motion is ascertained.*" *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991) (emphasis supplied). In *Preston*, the district court denied as untimely a recusal motion filed shortly after the court denied a request to extend the cutoff date for discovery and "approximately eighteen months" after the transfer of the cases to the court. *Id.* The Ninth Circuit reversed, holding that the recusal motion was timely, notwithstanding the government's claim that the movants sat on their knowledge of the grounds for recusal until after the district court denied the discovery motion. *Id.* at 733 and n.3. The Ninth Circuit said "counsel asserts that he did not learn of [the basis for recusal] until ten days before the first recusal motion was filed;" "[t]his allegation is uncontroverted;" and "the government offers us nothing but speculation that the heirs were 'utiliz[ing] a disqualification issue as part of [their] trial strategy.'" *Id.* at 733 and n.3 (citing *Potashnick,* 609 F.2d at 1115).

The timeliness of Defendants' recusal motion cannot be judged by when they knew that AG Brnovich was Arizona's Attorney General or when they knew his political platform included a strong anti-trafficking agenda—as those are not the grounds for their recusal motion. Rather, the recusal motion is based on AG Brnovich's statements and actions that bear *on this case and these Defendants*. The government does not controvert Defendants' assertion that they first learned of AG Brnovich's

booklets on September 10, 2020, less than two weeks before filing their recusal motion, or that Defendants' discovery of the booklets caused them to investigate further and learn the remaining facts on which their recusal motion is based.[4]  As in *Preston*, the government offers only speculation that Defendants must have known these facts—because they were available on the Internet—but that assumes, of course, that Defendants had scavenged the Internet to learn those facts.  They did not do that until after stumbling across AG Brnovich's booklet on September 10, 2020.[5]  *See* Declaration of Counsel, Exh. B.

---

[4]  The government suggests the Court can "make credibility determinations" and "contradict the evidence with facts drawn from [her] own personal knowledge," citing *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), but a) the case is an out-of-circuit decision, b) the case is contrary to *Preston*, 923 F.2d at 733, and c) the holding was limited to 28 U.S.C. § 455(b)(1) (actual bias), which Defendants have not moved under here.

[5]  The government claims Defendants turned a "blind eye" to facts alerting them to grounds for recusal, but cites no facts beyond AG Brnovich being Arizona's Attorney General and having an anti-trafficking agenda—and those facts are not the grounds upon which the Defendants have moved for recusal and those facts neither justify recusal nor put Defendants on notice of AG Brnovich's statements and actions related to Backpage.com and this case.  The government cites no authority holding parties have an affirmative obligation to ferret out recusal grounds, as the law imposes no such obligation. *Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 750 (7th Cir. 2015) ("[A] party does not have an obligation to discover any potentially disqualifying information that is in the public record.  The onus is on the judge to ensure any potentially disqualifying information is brought to the attention of the litigants. . . . It would be unreasonable, unrealistic and detrimental to our judicial system to expect litigants to investigate every potentially disqualifying piece of information about every judge before whom they appear. '[L]itigants (and, of course, their attorneys) should assume the impartiality of the presiding judge, rather than pore through the judge's private affairs and financial matters. . . .'"); *Preston*, 923 F.2d at 732 & 733 n. 3 (recusal motion timely even though the underlying information had been published in the newspaper the prior year, as counsel averred he had not seen it).

  The government's cases are readily distinguished by their facts. *E.g. Drake v. Birmingham Bd. of Educ.*, 476 F. Supp. 2d 1341, 1347 (N.D. Ala. 2007) (defendant school board's disqualification motion based on judge becoming a deacon at a mega-church where the plaintiff also was a deaconess was untimely because a school board member also was a deaconess and knew the plaintiff was a deaconess and also knew the judge was a prospective deacon, providing constructive notice to the school board and presenting the "classic case" of counsel seeking "to use the disqualification issue as part of a trial strategy" by "turning a blind eye to these facts"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554, 558 (7th Cir. 2008) (Fed. Civ. P. "Rule 71.1(h)(2)(C) provides that litigants may examine a proposed commissioner at the outset; a litigant who lets this opportunity pass, then looks up the commissioners in Martindale–Hubbell after the proceedings have concluded, has no one to blame but himself.").

The government argues that a party who "moves for recusal after adverse ruling [sic] is presumed to be filing for manipulative purposes," Resp. at 1-2, but that is not the law and the case the government cited said nothing of the sort. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295-96 (9th Cir. 1992). To the contrary, the court in *Gallo* held "there is no per se rule that recusal motions must be made at a fixed point in order to be timely," but such motions "should be filed with reasonable promptness after the ground for such a motion is ascertained.'" *Gallo*, 967 F.2d at 1295 (citing *Preston*, 923 F.2d at 733). The Ninth Circuit ultimately concluded that "the recusal statute [was] being misused for strategic purposes" in that case, because, after losing at trial, defense counsel repeatedly told the district court he would file a recusal motion but never did so.[6] *Id.* at 1296. And, in any event, the government's suggestion that Defendants "strategically" sat on facts justifying recusal for a year and a half, while the Court denied no fewer than eight substantive motions, is absurd—and wrong.[7] *See* Declaration of Counsel, Exh. B.

The government claims some courts "impose an automatic waiver" if "a party moves for recusal after suffering adverse rulings" (Resp. at 7), but, yet again, the case to which the government cites held nothing of the sort. *Bivens Gardens Office Building, Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 913 (11th Cir. 1998). Instead, the case held, rather unremarkably, that a party cannot sit on knowledge of grounds for removal in a gambit to use recusal for a second bite at the apple: "Plaintiffs' attorneys were aware a full three months before this case went to trial [of the basis for recusal], [y]et they made a strategic decision not to raise the issue until they saw how the trial came out. They . . .

---

[6] The government also cites *Melendres v. Arpaio*, 2015 WL 13173306, at *13 (D. Ariz. July 10, 2015) (*Melendres II*), but the court in *Melendres II* cited only *Gallo* to support the proposition—and *Gallo* not only provides no support, but is contrary. Moreover, later in *Melendres II* the court cited the actual holding of *Gallo*: "The Ninth Circuit has cautioned that a party that unduly delays the filing of a recusal motion is presumed to be filing it for manipulative purposes." *Id.* at *15.

[7] Dkt. 793 (Order Denying Motion to Dismiss on First Amendment Grounds) (Oct. 24, 2019); Dkt. 839 (Order Denying Motion to Compel Discovery Regarding Servers) (Jan. 7, 2020); Dkt. 840 (Order Denying Motion to Dismiss Based on Section 230) (Jan. 8, 2020); Dkt. 844 (Order Denying Motion to Dismiss for Grand Jury Abuse) (Jan. 9, 2020); Dkt. 870 (Order Denying Motion for Bill of Particulars) (Feb. 6, 2020); Dkt. 878 (Order Denying Motion to Sever) (Feb. 10, 2020); Dkt. 946 (Order Denying Motion to Dismiss for Failing to Allege Necessary Elements of Travel Act) (May 4, 2020); Dkt. 1028 (Order Denying Motion to Compel Production of Brady Material) (Jun. 26, 2020).

made a carefully thought out, coldly calculated, eyes open decision not to raise the issue and instead to gamble on winning anyway." *Id.* The facts in *Bivens* are not remotely like the facts here, where Defendants filed their motion within two weeks of discovering facts supporting the motion.[8]

    **C.    AG Brnovich Has Interests Under §§ 455(b)(4) & (5) That May Be Affected By This Litigation.**

The government claims that Section 455(b)(4) applies only to "financial or pecuniary interests of some variety" (Resp. at 9), but that is wrong. First, nothing in the statutory language suggests the term is so limited. Second, although financial interests are, far and away, the most common interests causing recusals, both the Fifth Circuit and the Seventh Circuit have held that an "interest" under Section 455 does not have to be a financial interest. *Potashnick*, 609 F.2d at 1113 ("The language of section 455(b)(5)(iii) referring to 'an interest' does not require that the interest of the judge's lawyer-relative be financial . . . . [T]he congressional drafters recognized that noneconomic interests may affect a judge's bias or prejudice."); *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 115-16 (7th Cir. 1977) ("The language of the amended statute [Section 455], in contrast to its predecessor, does not require that the interest be financial . . . . [T]he Congressional drafters recognized that non-economic interests

---

[8] The government cites other cases holding recusal motions were untimely, but those cases also are inapposite, as their facts differ markedly. *United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997) ("[I]t is clear that Rogers was aware of the asserted grounds for Judge Tevrizian's disqualification as early as March 11, 1994. His failure to make any formal motion until more than one and one-half years after he was aware of the grounds for disqualification—and almost nine months after his resentencing—renders his motion untimely."); *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997) (denying motion to disqualify as untimely where "[b]oth Summers and his counsel were present when the circumstances underlying [Summers'] motion arose," but they "did not raise the issue until after an adverse decision"); *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990) ("Even prior to the time of his plea, Owens already knew all the essential facts on which he based his recusal motion. Yet, he chose to wait to seek Judge Haden's recusal until after he learned what sentence the judge imposed. This is manifestly too late."); *Lyman v. City of Albany*, 597 F. Supp. 2d 301, 307-09 (N.D.N.Y. 2009) ("the Motion for recusal was made, not only more than 20 months after all relevant information was available to the Plaintiff, but shortly after the Court issued an order dismissing parts of Plaintiff's Amended Complaint"); *Wells Fargo Bank NA v. Wyo Tech Investment Group LLC*, 2019 WL 4736775, at *9 (D. Ariz. Sept. 27, 2019) ("This is a textbook case of a litigant being aware of information at the start of a case, saying nothing, and then belatedly seeking recusal after becoming dissatisfied with the judge's rulings . . .").

may affect a judge's bias or prejudice.").[9]  Third, with the exception of the *Melendres* cases, none of the cases the government cites even considered whether noneconomic interests might require recusal or actually held that only financial interests can require recusal under Section 455.

In *In re Virginia Elec. & Power Co.*, 539 F.2d 357 (4th Cir. 1976), the district court recused in a suit brought by Virginia Electric to recover damages from a fabricator of equipment for a nuclear power plant. If Virginia Electric prevailed in the suit, the judge, as a customer of Virginia Electric, stood to benefit, whether directly or indirectly, by an amount estimated to be $70-$100. The Fourth Circuit held that the judge did not have a "financial interest" as defined in the statute (as that required ownership of a legal or equitable interest), but held that the potential financial benefit the judge might receive was an "other interest" under the statute. *Id.* at 367-68. The Fourth Circuit did not say (much less hold) that an "other interest" had to be pecuniary. *Id.*

The Seventh Circuit's decision in *Guardian Pipeline,* 525 F.3d at 557, was similar. The movant sought to disqualify a commissioner appointed under Fed. R. Civ. P. 71.1 in a condemnation action brought by a pipeline company. The movant argued that the commissioner had an interest requiring recusal—"his hope that pipelines will hire him or his law firm in the future if this proceeding ends favorably" (an economic interest). *Id.* The Seventh Circuit held that no court had read the word "interest" that broadly and that "'interest' means an investment or other asset whose value depends on the outcome, or some other concrete financial effect (such as how much property tax a judge pays)." *Id.* The Seventh Circuit's discussion of the type of economic interests that qualify as "interests" under Section 455 cannot be twisted into a holding that noneconomic interests can never be an "interest" under the statute—particularly in the face of Seventh Circuit law expressly holding

---

[9] The government tries to distinguish AG Brnovich's interests, by claiming they have no economic component, while characterizing reputation and goodwill as economic or commercial interests, but the Fifth and Seventh Circuits both held reputation and goodwill are *noneconomic* interests. *Potashnick*, 609 F.2d at 1113 ("The outcome of any proceeding handled by a law firm may affect the partners' financial interests as well as certain noneconomic interests, including the reputation and goodwill of the firm."); *SCA Services*, 557 F.2d at 115 ("It is also arguable that Donald A. Morgan has other non-pecuniary interests in this litigation, for example, his interest in his and his firm's reputation and goodwill."). Regardless, AG Brnovich has economic interests in his reputation and goodwill, as those greatly impact his ability to raise campaign funds and to keep his office and salary.

8                           Case No. 2:18-cr-00422-PHX-SMB
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECUSAL

otherwise. *SCA Services*, 557 F.2d at 115-16. The government's citation of *In re New Mexico Nat. Gas Antitrust Litig.*, 620 F.2d 794, 796 (10th Cir. 1980), is equally off-base, as the Tenth Circuit there held nothing more than "an interest not entailing direct ownership falls under 'other interest,' and requires disqualification only if the litigation could substantially affect it." *Id.* (the judge, as a potential class member in an antitrust suit seeking refunds for residential customers, had an "other interest" under Section 455). The Tenth Circuit said nothing about whether noneconomic interests also might require recusal under Sections 455(b)(4) & 5. *Id.*

The government also cites *Melendres II*, but that decision did not hold that noneconomic interests *cannot* require recusal under Section 455(b). Rather, the court said: "Courts have *generally* limited the kinds of 'interests' for which recusal is mandatory to those that are somehow pecuniary or proprietary in nature." *Melendres II*, 2015 WL 13173306, at *13 (emphasis added). Moreover, when making that statement, the court cited only the three decisions above, none of which held, or even supports, the proposition that noneconomic interests cannot require recusal. Finally, the government cites *Melendres I*, but the respondents there mischaracterized *In re Virginia Elec.,* 539 F.2d at 367-68, just as the government does here:

> "Plaintiffs respond by arguing that courts have narrowly defined "other interests" to include only financial or pecuniary interests of some variety, *see e.g., In re Virginia Elec. & Power Co.*, 539 F.2d 357, 367–68 (4th Cir.1976) . . . The Court [] agrees with Plaintiffs that the term 'any other interests' should be interpreted as being limited to financial or pecuniary interests, whether by ownership or some other means."

*Melendres v. Arpaio*, 2009 WL 2132693, at *9 (D. Ariz. July 15, 2009) (*Melendres I*). For support, the court in *Melendres I* cited the same three decisions cited by *Melendres II* (which do not support the ruling) and one district court decision, *E. & J. Gallo Winery v. Encana Energy Serv., Inc.*, 2004 U.S. Dist. LEXIS 29380, *13-15 (E.D. Cal. Feb. 20, 2004), which likewise mischaracterized *In re Virginia Elec.*

Here, AG Brnovich has staked his own "reputation and goodwill" on this prosecution—particularly when viewed in the context of his high-profile anti-trafficking agenda—through his *ongoing* public castigation of Backpage.com and Defendants (whether directly or by directing his constituents to the websites of his "partners" and others), by his *ongoing* vouching (directly and indirectly) for the credibility of the prosecution and many of its witnesses, and by his public declarations that, in essence, say Defendants are guilty. AG Brnovich's public excoriations of Backpage.com are particularly

troublesome when contrasted with his campaign videos touting the Brnovichs' "Family Values" and saying the Brnovichs "Live [Their] Values, Do the Right Thing"—videos prominently featuring Judge Brnovich and the young children of Judge and AG Brnovich. *See supra* at fn. 2. Rulings by the Court favorable to Defendants not only would be inconsistent with AG Brnovich's public pronouncements about Backpage.com, but also with the "family values" image *both* AG Brnovich and Judge Brnovich have presented in AG Brnovich's political campaign videos. An outcome adverse to the government in this case, whether from a jury or from the Court's rulings, may substantially affect AG Brnovich's interests and image—and to a much greater degree than a *de minimis* financial interest of the sort that would mandate recusal.

### D. A Reasonable Person With Knowledge of the Facts Would Question the Court's Impartiality.

The government argues the "central premise" of the recusal motion is "obsolete" because "[c]ourts now resoundingly reject the notion" that a judge's spouse's views on a subject require recusal. Resp. at 14. Not so. First, "section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Clemens*, 428 F.3d at 1178. As such, that a few courts refused to recuse based on their spouses' actions or opinions is of little relevance. Moreover, the facts in most cases the government cites are not remotely similar and are readily distinguished.[10] The

---

[10] *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1241 (10th Cir. 2020) (judge not required to recuse where his spouse made a charitable contribution to her *alma mater* that was "not specifically tied to activity related to the litigation"); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011) (judge not required to recuse because her husband was one of 50 volunteer attorneys on the Los Angeles Legal Aid Foundation board after a mediator recommended that a portion of unclaimed class action settlement proceeds be distributed to the foundation, where her husband had no role in the mediator's decision); *National Abortion Fed. v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1089 (N.D. Cal. 2017) (judge not required to recuse in a case involving the National Abortion Federation because his wife "liked" Facebook posts by two different pro-abortion organizations and her Facebook profile picture said "I stand with Planned Parenthood"); *Akins v. Knight*, 2016 WL 127594, at *3 (W.D. Mo. Jan. 11, 2016) (judge not required to recuse based on allegations that her lobbyist husband criticized someone who was promoting a petition calling for the U.S. Supreme Court to review another case decided by the court).

Case 2:18-cr-00422-DJH   Document 1071   Filed 10/14/20   Page 17 of 20

exception is *Melendres I*, where the court *recused*. *Melendres I*, 2009 WL 2132693, at *9.

On the surface, Judge Reinhardt's order in *Perry v. Schwarzenegger*, 630 F.3d 909 (9th Cir. 2011), appears similar, but the issues there were matters of constitutional law before an *appellate* court and his spouse had expressed views on broad matters of social concern and law. *Id.* at 916 ("a reasonable person with full knowledge of all the facts would not reasonably believe that I would approach a case in a partial manner due to her independent views *regarding social policy*") (emphasis added).[11] The order makes clear that Judge Reinhardt's order is circumscribed and limited to situations such as a "public interest or advocacy organization that takes positions or supports legislation or litigation or other actions of local, state, or national importance." *Id.* at 911-12; *accord* Declaration of Vaughn R. Walker, Exh. A. There is a dramatic difference between an appellate judge's spouse expressing views on social issues of broad public concern and a trial judge's spouse publicly proclaiming that individual defendants being tried by his spouse on serious criminal charges are guilty and publicly vouching for the prosecution and its witnesses who will testify at the trial, particularly where the spouse is a state's top, elected law enforcement officer. Reading the order in *Perry* in a sweeping manner, as the government suggests, would gut the recusal statute.

## III.  CONCLUSION

Judge Brnovich should recuse herself from this case, with directions that the case be randomly assigned.

---

[11] The government repeatedly cites *Perry*, 630 F.2d at 909, as if it was a decision of the Ninth Circuit, but it merely was the order of one judge explaining his decision not to recuse—not binding Ninth Circuit precedent. Moreover, the U.S. Supreme Court subsequently held that the Ninth Circuit "was without jurisdiction to consider the appeal" and remanded with instructions to dismiss the appeal for lack of jurisdiction. *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). As such, Judge Reinhardt's order would appear to be of no further force or effect.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECUSAL

|   |   |   |
|---|---|---|
| | Respectfully submitted, | |

DATED: October 14, 2020        Thomas H. Bienert, Jr.
                                Whitney Z. Bernstein
                                BIENERT | KATZMAN PC

                                By:  *s/ Thomas H. Bienert, Jr.*
                                     Thomas H. Bienert, Jr.
                                     Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (August 2020) § II (C) (3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

DATED: October 14, 2020        Paul J. Cambria, Jr.
                                Erin McCampbell
                                LIPSITZ GREEN SCIME CAMBRIA LLP

                                By:  *s/ Paul J. Cambria, Jr.*
                                     Paul J. Cambria, Jr.
                                     Attorneys for Michael Lacey

DATED: October 14, 2020        Gary S. Lincenberg
                                Ariel A. Neuman
                                Gopi K. Panchapakesan
                                BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                                DROOKS, LINCENBERG & RHOW, P.C.

                                By:  *s/ Gary S. Lincenberg*
                                     Gary S. Lincenberg
                                     Attorneys for John Brunst

DATED: October 14, 2020        Bruce Feder
                                FEDER LAW OFFICE, P.A.

                                By:  *s/ Bruce Feder*
                                     Bruce Feder
                                     Attorneys for Scott Spear

DATED:  October 14, 2020         David Eisenberg
                                 DAVID EISENBERG, P.L.C.

                                 By:   *s/ David Eisenberg*
                                       David Eisenberg
                                       Attorneys for Andrew Padilla


DATED: October 14, 2020          Joy Bertrand
                                 JOY BERTRAND, ESQ.

                                 By:   *s/ Joy Bertrand*
                                       Joy Bertrand
                                       Attorneys for Joye Vaught

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas