Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　　Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISCLOSE GRAND JURY INSTRUCTIONS ON PROSTITUTION**<br><br>(Oral argument requested) |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught ("Defendants"), by and through their undersigned attorneys, file the instant reply in further support of Defendants' Motion to Disclose Grand Jury Instructions on Prostitution ("Motion"). (*See* Doc. 1171.) The government does nothing to address the likelihood that Defendants were indicted in a constitutionally infirm grand jury proceeding. The government admits it instructed the grand jury on the Travel Act counts (Doc. 1176, at 2), but *never* confirms that those instructions defined prostitution. Moreover, although the government tries to walk back its recent (and blatantly false) statement to the Court that "escort services . . . [are] only legal in a very a small county in Nevada" (Doc. 1171-1 at 15), the government fails to dispute the logical inference that it made the same false assertion to the grand jury that it did to the Court—an assertion that would lead the grand jury to indict Defendants for publishing First Amendment protected ads relating to **lawful** adult activities. The government's brief instead is an exercise in misdirection – it purports to chastise Defendants for seeking to protect their constitutional rights through the Motion, while ignoring the obvious: that the government continues to pursue an indictment at odds with the law. None of its deflection gives this Court any clarity regarding the accuracy of its representations to the grand jury. If the government cannot properly define prostitution more than three years into this case, it is highly likely that the government falsely instructed the grand jury. The grand jury transcripts must be disclosed for review of this issue that was central to the grand jury's ability to properly determine whether or not to charge Defendants.

## ARGUMENT

A failure to properly instruct the grand jury regarding the definition of "prostitution" (including any statements relating to the legality of escort services) would violate Defendants' Fifth Amendment rights to an indictment issued by an independent grand jury.[1] The government's recent

---

[1] The government is wrong to suggest that Defendants have already raised this issue. As noted herein, Defendants were only recently put on notice that the government likely failed to give a definition of "prostitution" and also wrongly thinks escorts services are unlawful and synonymous with prostitution. Defendants have not previously raised this issue.

statements to the Court, its proposed trial jury instructions, and its submissions to defense counsel demonstrate that the government has been operating with a fundamental misunderstanding of the law, *i.e.* that escort services are illegal and synonymous with "prostitution services." Defendants are entitled to know how the government defined prostitution and escort services to the grand jury as that information is not subject to secrecy protections, like witness testimony. But, even if it was, the government's statements establish that Defendants have a "particularized need" for the disclosure.

**I.   The government's on-the-record statements about prostitution and escort services are incorrect, misleading, and prejudicial.**

Defendants became concerned that the government failed to provide the grand jury with an instruction on the definition(s) of prostitution relevant to this case when the government's proposed jury instructions contained no such instruction. (*See* Gov't's Proposed Jury Instructions, attached hereto as Ex. A.) How can any jury (petit or grand) consider the merits of this case without an accurate definition of the conduct at the crux of the case? Moreover, because numerous adult activities that might appear to many people to be prostitution are legal and are not deemed "prostitution," an accurate definition of the term is essential.

Defendants have been concerned, from the outset of this case, that the government's presentation to the grand jury was misleading and prejudicial (*see* Docs. 561, 697, 746, 782, 798, 826, 881). Indeed, in an early motion to dismiss the defense argued that the indictment started with "the erroneous assumption that all ads on the platform are constitutionally unprotected, that government may presume the ads relate to unlawful conduct simply by looking at them." (Doc. 561, at 2.) This concern became a reality during the June 7, 2021 status conference, when the government objected to a juror questionnaire question using the term "escort services" because:

> [Y]ou know, it's really prostitution services. I think escort is sort of a misnomer. So we would – we would ask that it's – because it suggests that **escort services** is somewhat legal. And, as we know, it's **only legal in a very a small county in Nevada**, so it's really prostitution services is really right [sic].

(Doc. 1171-1 at 15 (emphasis added).) If the government even hinted or implied to the grand jury that escort services are unlawful essentially everywhere—a serious misstatement of the applicable

2

law—the government led the jury to believe that publishing escort ads was *per se* unlawful, as if Backpage had a category called "Cocaine for Sale" (the sale of cocaine, of course, being *per se* unlawful). And given that the prosecutor who made this statement was part of the grand jury presentation, it is highly likely that he made that same serious misstatement to the grand jury.

The government's astounding statement to the Court demonstrates that the government's understanding of prostitution squarely contradicts the law. Escort services are a lawful form of adult entertainment and advertisements for escorts and escort services (as well as many other adult services) are First Amendment protected expression.[2] Although this Court recognized there is a "distinction between escort services and prostitution services" (Doc. 1171-1 at 15-16), the Court's recognition of the distinction does nothing to obviate the *government's* misunderstanding of the terms "prostitution" and "escort." And, of course, the grand jurors needed to understand and appreciate the distinctions between such terms in assessing whether or not to authorize the indictment, and what the government told them regarding such terms is critical to that understanding.

The government's June 7, 2021 statements strongly suggest the government misled the jury on the "unlawful activity" at issue here, *i.e.* conflating escort advertising with promoting a business enterprise involving "*prostitution* offenses in violation of the laws of the State in which they were committed and of the United States." (Doc. 230, Superseding Indictment, ¶ 201.) Did the

---

[2]   *See*, e.g., Doc. 1171 at 4 n.1; Ala. Code § 13A-6-184 (escort businesses must register with the state); Ark. Code Ann. § 14-1-302 (escort agencies regulated as adult oriented businesses); Ariz. Rev. Stat. § 13-1422 (escorts and escort agencies are adult oriented businesses whose locations and hours of operation are limited); *People v. Katrinak*, 136 Cal.App.3d 145 (1982) (Los Angeles County Ordinance Section 533 requiring escort bureaus to be licensed "was a licensing scheme for a lawful business enterprise."); Colo. Rev. Stat. §§ 29-11.8-103 & 104 (escort must obtain state license); 24 Del .C. § 1606 & Del. Op. Atty. Gen. 95-IB32, 1995 WL 794501 (escort services do not require licenses from Delaware Commission on Adult Entertainment Establishments); Kan. Stat. Ann. 12-770 (escort agencies are sexually oriented businesses, whose locations may be restricted by cities); Tenn. Code Ann. §§ 7-51-1102(20) & (26), § 7-51-1115; & 7-51-1102(7) (escorts must hold permits from Tennessee adult-oriented establishment board or a county massage registration board); Utah Code Ann. §§ 59-27-102 & 103, 10-8-41.5, & 17-50-331(taxing escort services and cities and counties may require escorts to be licensed).

government provide an instruction on prostitution for just one State, when the Defendants are accused of promoting dozens of business enterprises violating the prostitution laws of dozens of States? Did the government provide an instruction on prostitution for the laws of the United States? Did the government fail to provide any instruction at all? Prostitution definitions widely vary from jurisdiction to jurisdiction. For example, the term "prostitution" is defined narrowly by federal regulation as "engaging in promiscuous sexual intercourse for hire," 22 C.F.R. § 40.24(b), so under that law of the United States activities that many would think of as prostitution are not. Did the government instruct the grand jury that it could indict the Defendants based solely on Backpage having a category for "escort services" on the site, because, as it recently told the Court, escort services are "only legal in a very small county in Nevada"? Or because escort services are prostitution? Faulty instructions would mislead the grand jury into indicting Defendants for providing a platform for First Amendment protected speech about *lawful* adult entertainment, rather than for promoting *unlawful activity*. Tellingly, the government's Opposition is silent on these issues. The government had the opportunity to state that it had properly instructed and did not mislead the grand jury, but said no such thing. Rather, the government chose to discuss how it could engage in "extensive prosecutorial misconduct" before the grand jury, so long as its misconduct was not deemed "flagrant." (Doc. 1176 at 6-7.)

## II.  Defendants are entitled to the legal instructions on prostitution and escort services given to the grand jury without a showing of particularized need.

The grand jury materials at issue in this Motion – the government's instructions to the grand jury about prostitution and escort services – do not implicate grand jury secrecy concerns. "The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not." *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). Although *Alter* dealt with the *court's* charge to the grand jury, the *Alter* decision applies equally to the specific legal instructions given to a grand jury on a case. *See United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) (rejecting the government's argument that *Alter* applied

4

only to the court's charge and not to "the specific legal instructions that were given to the grand jury in [Belton's] case."). Indeed, the court in *Belton* explained:

> The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect. Therefore, Defendant is entitled to disclosure of these instructions **even without a showing of particularized need**.

*Id.* (emphasis added)  *See also United States v. Diaz*, 236 F.R.D. 470, 477-78 (N.D. Cal. 2006).[3]

The law is the law. It is no secret and should not be kept secret. Disclosure of the government's instructions to the grand jury about prostitution and escort services will in no way reveal the nature or scope of the grand jury's investigation, reveal the names or identities of witnesses, nor implicate concerns for witness or juror safety. Indeed, the government made the surprising admission that it only presented two witnesses before the grand jury, both of whom were case agents who the government says it will not call at trial. (*See* Doc. 812 at 15.) There is simply no basis to withhold the instructions regarding these crucial terms.

**III.  Defendants have established "particularized need" for the legal instructions relating to prostitution and escort services, even if that was required.**

Even if the Court determines that legal instructions to the grand jury are subject to grand jury secrecy – and, thus, Defendants must make a showing of particularized need – Defendants readily meet that burden. Under Rule 6(e), courts have the authority to order the disclosure of "a grand-jury matter" when the material would be used "in connection with a judicial proceeding" or "at the request of a defendant who shows that a ground may exist to dismiss the indictment

---

[3] The government cites *United States v. Stepanyan*, 2016 WL 4398281, at *2 (N.D. Cal. Aug. 18, 2016), as contrary authority, but this Court should reject the holding of *Stepanyan*. The court in *Stepanyan* plainly was wrong when it said "not a single court has read *Alter* as does Defendant" (that no showing of "particularized need" was required to obtain the government's legal instructions to a grand jury), as District Judge Jon Tigar of the Northern District of California held exactly that in his decision in *Belton* just the year before. The government suggests the Magistrate Judge's decision in *Stepanyan* overrules or otherwise moots the "pre-*Stepanyan* district court cases," but that too plainly is wrong. A Magistrate Judge's decision cannot moot or overrule the earlier decisions of District Judges on the same court, and upon which Defendants relied to assert that instructions on the law are not subject to secrecy.

5

because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i-ii). To establish the particularized need for such grand jury materials, a defendant must show that: (1) disclosure of the "desired material will avoid a possible injustice; (2) "the need for disclosure is greater than the need for continued secrecy"; and (3) the disclosure seeks "only the relevant parts of the transcripts." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)).

With respect to the need for secrecy, the Supreme Court has identified several factors for consideration: (1) "if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony," (2) "witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements," (3) "the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment," and (4) "persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979). None of these factors are implicated by Defendants' request for the government's *legal* instructions relating to prostitution and escort services. Moreover, even if any of the factors were implicated, the importance of the factors is not static. After the indictment has been issued and the grand jury has finished its proceedings, it is "clear that . . . the considerations justifying secrecy become less relevant," and "a party asserting a need for grand jury transcripts will have a lesser burden in showing justifications." *Douglas Oil Co.*, 441 U.S. 211 at 223.

First, in this case, disclosure of the government's instructions on prostitution (including any instructions on the legality or illegality of escorts or escort services or ads for escorts or escort services) are necessary to avoid an injustice. The Defendants were indicted by the grand jury for conspiring to or committing the crime of using a facility of interstate commerce with the intent to facilitate a "business enterprise involving . . . *prostitution in violation of the laws of the State* in which they [were] committed." 18 U.S.C. § 1952(b)(1) (emphasis added). As Defendants explained in the

6

Motion, the failure to include an instruction on prostitution with respect to a Travel Act charge concerning the facilitation of prostitution in violation of State law **is reversible error**.  (*See* Doc. 1171 at 4-6.)  Yet that is what the government seeks to have this Court do in its proposed jury instructions and in its advocacy at the June 7, 2021 status conference.  (*See* Doc. 1171-1.)

Second, the government recently told the Court that escort services were "only legal in a very a small county in Nevada" and that "escort services" are "really prostitution services."  (*Id.* at 15-16.).  Given the government's erroneous statements to the Court about the law more than three years into this case, the Court has no basis to presume that the government's instructions to the grand jury about that law were accurate three years ago.  If the government failed to give the grand jury legal instructions about prostitution or, worse, told the grand jury that escorts were prostitutes and escort services were unlawful, the grand jury was misled into believing it could indict Defendants based solely on Backpage accepting and publishing escort ads.  The government's own words to the Court show the government likely mislead the grand jury, regardless of whether it intended to do so.[4]

---

[4]   In its opposition, the government tries to walk back what it said to the Court, saying it intends to prove that Ferrer and Hyer admitted that most escort and other adult ads on Backpage were for prostitution and to show that escort and other adult ads on Backpage "looked like" prostitution ads, but this does not undercut what the government told the Court. (Doc. 1176 at 16-17.).  First, as the admissions of Ferrer and Hyer may have been obtained after the government told them escort services were unlawful in all but one county in Nevada—those admissions may be premised on the government's misrepresentations about the law.  Second, there simply is no way to read the government's statements to the Court as expressing the government's views about what it expects to be able to prove at trial (much less that it can prove Defendants *knew* that specific ads for lawful escort services actually related to unlawful prostitution services).  The government plainly said that "escort services" are "only legal in a very a small county in Nevada"—not just an incorrect statement of law, but a rather material misstatement of the law in a prosecution premised on the publication of third-party escort ads. (Jun. 7, 2021 Tr. at 15.).  Finally, the First Amendment flatly bars the government from trying to punish speech because it "looks like" unprotected speech.  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 254–55 (2002) ("Protected speech does not become unprotected merely because it resembles the latter.  The Constitution requires the reverse.  '[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted.'").

7

Misleading the grand jury on an element of a charged crime, whether by failing to provide an instruction on the definition of prostitution, or providing one that is at odds with the law (including by informing the grand jury that escort services are unlawful everywhere other than one county in Nevada), would have deprived the Defendants of their Fifth Amendment right to indictment by a grand jury. Grand jury review serves "as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992); *see also United States v. Calandra*, 414 U.S. 338, 343 (1974) (recognizing that the grand jury is charged with the dual responsibilities of "determin[ing] whether there is probable cause to believe a crime has been committed and protect[ing] citizens against unfounded criminal prosecutions"). A district court may dismiss an indictment for errors made by the government in grand jury proceedings that "prejudice" the defendant. *See United States v. Navarro*, 608 F.3d 529, 538-39 (9th Cir. 2010). "[F]or errors brought to the district court's attention 'prior to the conclusion of the trial,'" a district court should dismiss an indictment "if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.'" *Id.* at 539 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)).

Dismissal of an indictment is appropriate when the government misleads the grand jury on the law. Regardless of whether a prosecutor has the *duty* to instruct on the law, when a prosecutor does provide instruction on the law "the prosecutor's duty to instruct *correctly* is plainly apparent." *United States v. Cerullo*, 2007 WL 2683799, at *3-4 (S.D. Cal. Sept. 7, 2007) (emphasis added); *accord United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) ("[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction."); *see also United States v. Hoey*, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) ("[C]ourts have found error where the government incompletely or erroneously provides legal instruction to the grand jury.").

The government may have given no instruction to the grand jury on the definition of prostitution, in which case the grand jurors were left to speculate about this essential element of the

8

crimes charged. Alternatively, the government may have given the definition used in one jurisdiction at issue, but not all. And regardless of any definition given (or not), the government may have instructed the grand jury, as it told the Court, that escort services are illegal in all but one county in Nevada and that escort services equate to unlawful prostitution services. Under any of these scenarios, the grand jury may have been misled and its independence may have been eviscerated, such that it served as nothing more than a rubber stamp for the government. Such a grand jury proceeding would be a clear violation of a defendant's Fifth Amendment rights—and not a procedural error that could be cured by the ruling of a petit jury. *See Cerullo*, 2007 WL 2683799, at *4 (dismissing indictment because "the grand jury was misled on the law, was unable to correctly adjudge the evidence, and no longer operated as an independent body and buffer between the Government and the Defendant"); *see also Stevens*, 771 F. Supp. 2d at 566-69 (dismissing indictment because the government gave an erroneous instruction to the grand jury on the advice-of-counsel defense).

Indeed, any suggestion by the government to the grand jurors (or the trial jurors) that *legal* escort services and ads for such services are synonymous with *illegal* "prostitution services" would be yet another instance of the government flipping the First Amendment on its head in this case.[5]

---

5  *See Dart v. Craigslist, Inc.*, 665 F.Supp.2d 961, 968 (N.D. Ill.2009) (Sheriff Dart "is simply wrong when he insists that [craigslist's adult services] are all synonyms for illegal sexual services;" as it "is not unlawful in itself nor does it necessarily call for unlawful content"); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016) (rejecting sheriff's presumption that ads on Backpage.com were illegal: Backpage.com was "an avenue of expression of ideas and opinions" protected by the First Amendment, including its "classified ads for 'adult' service." . . . "The district judge remarked 'that the majority of the advertisements [in Backpage's adult section] are for sex'— but a majority is not all, and not all advertisements for sex are advertisements for illegal sex." (internal citations omitted)); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281-82 (W.D. Wash. 2012) (rejecting similar presumption of state AG defending law targeting Backpage and noting the "third-party publication of offers to engage in illegal transactions does not fall within [the] 'well-defined and narrowly limited classes of speech' that fall outside of First Amendment protection" (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 833-34 (M.D. Tenn. 2013) (rejecting state's argument that escort ads on Backpage.com were unprotected speech); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *9-11 (D.N.J. Aug. 20, 2013) (same); *M.A. ex rel. P.K v.*

9

Protected expression concerning legal adult entertainment cannot be used by a grand jury to find that the Defendants facilitated and promoted *unlawful* activity, even if some Backpage users misused the website and Defendants knew about those instances of misuse. *See, e.g.*, *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003). And all of these misleading instructions before the grand jury, raised both in this Motion and prior motions, fall on the heels of high ranking officials from the Department of Justice testifying under oath that the operators of a classified advertising website cannot be prosecuted for violating federal criminal law absent the willing and knowing specific intent to conspire with website users to violate the law. (*See* Sept. 15, 2010 Testimony of Francey Hakes, House of Reps. Comm. on Judiciary, attached hereto as Ex. B.) Further, the government presented just two witnesses—summary case agents—to the grand jury. (*See* Doc. 812 at 15.) Absent a clear and proper instruction on prostitution and escort services, the grand jury was nothing more than a rubber stamp for the government's novel theory of liability for third-party speech.

Second, the need for disclosure outweighs the need for continued secrecy. Many courts in this Circuit have held that instructions on the law are not subject to secrecy considerations. But even if such considerations apply to instructions on the law, none of the reasons for secrecy are applicable here. The Superseding Indictment was issued almost three years ago, at which point the grand jury concluded its proceedings. This Court ordered the government to disclose all Jencks Act material (which included the testimony of the witnesses who appeared before the grand jury) by August 20, 2019. (*See* Doc. 730.) Releasing the instructions on these issues of law will have no impact on the witnesses, particularly because they are law enforcement and because the government was obligated to disclose their testimony nearly two years ago, if it intended on calling them at trial.

---

*Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1049-50 (E.D. Mo. 2011) (rejecting similar presumption in dismissing plaintiff's civil claims based on 18 U.S.C. §§ 2, 1595, and 2255); *People v Ferrer*, 2016 WL 7237305, at *9 (Cal. Super. Ct. Dec. 9, 2016) (dismissing state's pimping charges against Larkin and Lacey; noting that the only "whiff of illegality" in the AG's complaint improperly "require[ed] the presumption that illegal content was contained in the ads," yet the website's actions in posting the ads "would not be illegal").

Likewise, such a disclosure will have no impact on the jurors, cause the accused to flee, or cause the accused reputational harm.

Finally, the materials requested – the instructions on prostitution and escort services – are no broader than what is necessary to establish whether the Defendants' Fifth Amendment rights were violated. Under these circumstances, courts have granted far greater disclosure than what the Defendants request here. *See, e.g.*, *Plummer*, 941 F.2d at 806 (expressing approval for district court's decision to release "everything" in the grand jury transcripts that mentioned or concerned the defendant).

## CONCLUSION

At this time, the Defendants are not asking this Court to dismiss the indictment. Defendants simply seek disclosure of the government's instructions on the law regarding prostitution and escort services given to the grand jury to be able to develop the record and evaluate whether their Fifth Amendment right to an independent and impartial grand jury was violated. This request should give this Court no pause as there is no basis in the law on grand jury secrecy or the facts of this case to continue the secrecy of the government's instructions on the law. This Court should order the government to disclose all the legal instructions it gave to the grand jury on prostitution or escort services (including all statements to the grand jury about the legality or illegality of escorts or escort services or ads for escorts or escort services). At the very least, the Court should inspect the grand jury transcripts to determine, what, if any, instructions were given on the terms "prostitution" and "escort services."

RESPECTFULLY SUBMITTED this 29th day of June, 2021,

        Paul J. Cambria, Jr.
        Erin E. McCampbell
        LIPSITZ GREEN SCIME CAMBRIA LLP

        By:    /s/ Paul J. Cambria, Jr.
                  Paul J. Cambria, Jr.
                  Attorneys for Michael Lacey

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (May 2018) § II (C) (3), Erin E. McCampbell hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN, PLC

By:   /s/ Whitney Z. Bernstein
      Whitney Z. Bernstein
      Attorneys for James Larkin

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By:   /s/ Ariel A. Neuman
      Ariel A. Neuman
      Attorneys for John Brunst

Bruce Feder
FEDER LAW OFFICE, P.A.

By:   /s/ Bruce Feder
      Bruce Feder
      Attorneys for Scott Spear

David Eisenberg
DAVID EISENBERG, P.L.C.

By:   /s/ David Eisenberg
      David Eisenberg
      Attorneys for Andrew Padilla

Joy Bertrand
JOY BERTRAND, ESQ.

By:   /s/ Joy Bertrand
      Joy Bertrand
      Attorneys for Joye Vaught

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | On June 29, 2021, a PDF version of this document was filed with |
| 7 | Clerk of the Court using the CM/ECF |
| 8 | System for filing and for Transmittal Of a Notice of Electronic Filing to the |
| 9 | Following CM/ECF registrants: |
| 10 | |
| 11 | Kevin Rapp, kevin.rapp@usdoj.gov Reginald Jones, reginald.jones4@usdoj.gov |
| 12 | Peter Kozinets, peter.kozinets@usdoj.gov |
| 13 | Margaret Perlmeter, margaret.perlmeter@usdoj.gov Andrew Stone, andrew.stone@usdoj.gov |
| 14 | Daniel Boyle, daniel.boyle2@usdoj.gov |

13