# Exhibit A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>     v.<br><br>Michael Lacey, et al.,<br><br>               Defendants. | No. CR-18-422-PHX-SMB<br><br>**UNITED STATES' PROPOSED STATEMENT OF THE CASE** |

The government submits the following Statement of the Case and respectfully request the following be read to the jury in lieu of the Superseding Indictment:

This is a criminal case brought by the United States government.  On July 25, 2018, a federal grand jury returned a 100-count Superseding Indictment charging six defendants: Michael Lacey, James (Jim) Larkin, John "Jed" Brunst, Scott Spear, Andrew Padilla and Joye Vaught with all or some of the following charges: (1) conspiracy to commit violations of the Travel Act; (2) violations of the Travel Act; (3) conspiracy to commit money laundering; (4) concealment money laundering; (5) international promotional money laundering; (6) transactional money laundering; and (7) international concealment money laundering related to their roles in the creation, ownership, development, or management of the website www.backpage.com.  Each defendant has pleaded not guilty to all charges and is presumed innocent.  The United States has the burden of proving an individual guilty beyond a reasonable doubt.

The Superseding Indictment alleges that Backpage.com was an online classified website that was well known for being the internet's leading source of prostitution advertisements.  Backpage had markets in nearly every major city in the United States where prostitutes, pimps and traffickers could pay to post advertisements on www.backpage.com.  The postings were thinly veiled solicitations for sex for money. Backpage derived the overwhelming majority of its revenue from these ads.  These practices enabled Backpage to earn over $500 million in prostitution-related revenue during its fourteen years of existence.

Backpage was created in 2004 by defendants Michael Lacey (who at times held approximately a 45% ownership interest in Backpage), James Larkin (who at times held approximately a 43% ownership interest in Backpage), and a third individual, Carl Ferrer. Defendant Spear (who at times held approximately a 4% ownership interest in Backpage) served as Executive Vice President of one of Backpage's parent companies.  Defendant Brunst (who at times held approximately a 6% ownership interest in Backpage) served as the Chief Financial Officer of Backpage.  Defendants Padilla and Vaught served as Backpage's Operation Manager and Assistant Operations Manager, respectively.  Between 2004 through 2015, Mr. Lacey and Mr. Larkin oversaw the website's policy and strategic direction.  In or around April 2015, Defendants Lacey, Larkin, Spear, and Brunst claimed to sell their interest in Backpage.  However, they retained a significant financial interest and operational control over the website after the sale.  They also continued to receive millions of dollars from Backpage.

Michael Lacey is charged in the superseding indictment with Count 1, Conspiracy to Violate the Travel Act; Counts 2-51, Violations of the Travel Act by Facilitating Prostitution; Counts 53-62, Concealment Money Laundering; Counts 63-68, International Promotional Money Laundering; Counts 69-70, 81, 83-84, 86, 88-92, and 94-99, Transactional Money Laundering; and Count 100, International Concealment Money Laundering.

James Larkin is charged in the superseding indictment with Count 1, Conspiracy to Violate the Travel Act; Counts 2-51, Violations of the Travel Act by Facilitating Prostitution; Count 52, Conspiracy to Commit Money Laundering; Counts 53-62, Concealment Money Laundering; Counts 63-68, International Promotional Money Laundering; and Counts 80 and 87, Transactional Money Laundering.

Scott Spear is charged in the superseding indictment with Count 1, Conspiracy to Violate the Travel Act; Counts 2-51, Violations of the Travel Act by Facilitating Prostitution; Count 52, Conspiracy to Commit Money Laundering; Counts 53-62, Concealment Money Laundering; Counts 63-68, International Promotional Money Laundering; and Counts 71-78, 85 and 93, Transactional Money Laundering.

John "Jed" Brunst is charged in the superseding indictment with Count 1, Conspiracy to Violate the Travel Act; Counts 2-51, Violations of the Travel Act by Facilitating Prostitution; Count 52, Conspiracy to Commit Money Laundering; Counts 53-62, Concealment Money Laundering; Counts 63-68, International Promotional Money Laundering; and Counts 69-70, 78-84, and 86-93, Transactional Money Laundering.

Andrew Padilla and Joye Vaught are charged in the superseding indictment with Count 1, Conspiracy to Violate the Travel Act; and Counts 2-51, Violations of the Travel Act.

The United States alleges the Defendants were aware that the vast majority of the "adult" and "escort" ads appearing on Backpage were actually prostitution ads and took steps to intentionally promote and facilitate that illegal activity.  During Backpage's early years, the company's employees were trained to identify prostitutes who were posting ads on rival websites and to create free ads on Backpage for them in an attempt to recruit the prostitutes' future business.  These affirmative content-creation efforts were described internally as "content aggregation" or the "Dallas Plan," and was vital to Backpage's early growth and success.

The United States alleges that Backpage employed other business strategies specifically designed to promote and facilitate prostitution.  For example, for several years,

Backpage had a reciprocal link agreement with The Erotic Review ("TER").  TER was a website where customers could post explicit "reviews" of their encounters with prostitutes, including descriptions of prices charged for particular sex acts.  Backpage paid thousands of dollars to TER in return for assistance in getting TER's customer base to start using Backpage.

In addition to creating prostitution-related content, the United States alleges that Backpage utilized a variety of strategies to conceal the true nature of the ads being posted on its website.  At times, Backpage employed computerized filters and human moderators to edit or block ads that explicitly offered sexual services for a fee.  Internal company emails suggest, that despite these editing practices, Defendants were well aware that the overwhelming majority of the website's ads involved prostitution.

As the years passed, Backpage received increased criticism from anti-sex trafficking organizations, child advocacy groups like the National Center for Missing and Exploited Children (NCMEC), and the state attorneys general due to the number of ads featuring child sex trafficking.  Publicly, Backpage sought to create the perception that it was diligently attempting to prevent the publication of such ads while declining – for financial reasons – to take necessary steps to address the problem.

The United States alleges that the vast majority of Backpage's revenue represented the proceeds of illegal activity.  In fact, by 2015, the major credit card companies stopped processing payments for Backpage and some banks closed Backpage's accounts out of concern they were being used for illegal purposes.   In response, the United States alleges Defendants began to pursue an array of money laundering strategies.  For example, Defendants instructed customers to send checks or money orders to a post office box, deposited the payments into bank accounts held in the names of entities with no apparent connection to Backpage, and then gave customers "credits" on Backpage to purchase new ads.  Defendants also wired Backpage's proceeds to bank accounts in foreign countries and redistributed the funds to Defendants as compensation or redeposited the funds in bank accounts held in the United States.

In or around April 2015, Defendants Lacey, Larkin, Spear, and Brunst appeared to sell their ownership interests in Backpage and several related entities for around $600 million to various Dutch entities.   In reality, the Dutch entities were controlled by Backpage's Chief Executive Officer Carl Ferrer, who "borrowed" approximately $600 million from entities controlled by the four Defendants to finance the purchase.  As a result of this financial arrangement, Defendants Lacey, Larkin, Spear, and Brunst retained significant financial interest and operational control of Backpage after the transactions were completed.

In January 2017, after conducting a lengthy investigation, the United States Senate Subcommittee on Permanent Investigations issued a report entitled "Backpage.com's Knowing Facilitating of Online Sex Trafficking."  In response to this report, Backpage claimed to shut down the "adult" section of its website.  However, all that meant was that the prostitution ads migrated to other sections of the website, where they remained until the website was shut down by federal law enforcement authorities in April 2018.

For purposes of the Superseding Indictment, the United States has identified 17 specific victims who posted, or had posted on their behalf, ads offering sexual services for money.  Of the 17 victims, five were children at the time their ads were posted on Backpage.