# EXHIBIT B

The government's lengthy, and erroneous, exposition on the First Amendment in response to Defendants' proposed jury instructions (Dkt. 1216-3 at 159-201) suffers from a fundamental and fatal flaw—the government cherry-picks sentences from cases involving facially unlawful speech (which is ***not*** protected by the First Amendment) and erroneously applies that language to speech that is not facially unlawful (which ***is*** presumptively protected by the First Amendment).  The key takeaway from the Supreme Court and Ninth Circuit's holdings on this issue is that, unless an advertisement expressly solicits prostitution, the advertisement does not lose its protection under the First Amendment just because it ***might relate*** to prostitution.  In effect, the government asks the Court (and the jury) to ***presume*** the illegality of the advertisements at issue without first proving that to be the case.  Further, the government's burden of proof is heightened where, as here, it seeks to hold Defendants responsible for the speech of third parties. Where third-party speech is involved, the government must prove that the publishers specifically intended to facilitate the allegedly unlawful speech.

In short, the government asks this Court to turn the First Amendment on its head and relieve the government of its obligation to prove that the speech at issue in this case is unprotected.  The Court should reject the government's invitation to endorse this fundamental and reversible constitutional error.

**1.**     **All Speech Is Presumed Protected by the First Amendment.**

The government claims its mere ***allegation*** that speech on Backpage was unprotected is sufficient to dispense with the First Amendment, but that position is starkly at odds with the Ninth Circuit's directive in *Bursey v. United States*:

> The Government's argument takes as its premise the conclusion to be proved:  The expressions and associational relationships in issue are not protected by the First Amendment.  This argument implies that there is a presumption of nonprotection applied to the expressions and associations involved in this case and that the witnesses are obliged to overcome it before they can rely on the First Amendment.  The Government has it backwards.  ***All speech, press, and associational relationships are presumptively protected by the First Amendment; the burden rests on the Government to establish that the particular expressions or relationships are outside its reach.***

*Bursey v. United States*, 466 F.2d 1059, 1082 (9th Cir. 1972) (emphasis added).  *See also Bd. of Trs. v. State Univ. of N.J. v. Fox*, 492 U.S. 469, 480 (1989) ("the State bears the burden of justifying its restrictions").[1]

There are very few categories of speech that fall outside the protections of the First Amendment:  obscenity, defamation, fraud, incitement, child pornography, and speech integral to criminal conduct.  *See United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (recognizing "limited" exceptions to the presumption of protection).  Offensive speech is protected by the First Amendment.  *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("speech cannot be restricted simply because it is upsetting or arouses contempt").  Hate speech is protected by the First Amendment.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 396 (1992) (recognizing that "burning a cross in someone's front yard," however

---

[1]  Contrary to the government's claim, the defense does not contend the government must prove that every ad ever posted to Backpage.com was unlawful for some ads to be outside of the protection of the First Amendment.  Rather, the First Amendment compels the Court and the jury to presume that every ad on Backpage.com was and is protected by the First Amendment until the government ***proves*** otherwise, with competent and admissible ***evidence***, on an ad-by-ad basis.

"reprehensible," is presumptive protected expression).  Non-obscene "adult" speech is protected by the First Amendment.  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) ("It is also well established that speech may not be prohibited because it concerns subjects offending our sensibilities . . . .  In evaluating the free speech rights of adults, we have made it perfectly clear that '[s]exual expression which is indecent but not obscene is protected by the First Amendment'") (citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997).

The speech at issue in this case—classified advertisements concerning adult services posted by third-party users of a website—does not fall into one of the "well-defined and narrowly limited classes" of speech outside of the protection of the First Amendment.  *Stevens*, 559 U.S. at 469; *accord Backpage.com, LLC v. Dart*, 807 F.3d 229, 234 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016) (rejecting sheriff's presumption that ads on Backpage.com were illegal:  Backpage.com was "an avenue of expression of ideas and opinions" protected by the First Amendment, including its "classified ads for 'adult' service").  Moreover, and importantly, even if a third-party posting a Backpage ad had no protection from the First Amendment because he or she *knew* the ad involved unlawful conduct, that does *not* mean that Backpage.com's publication of the ad was unprotected by the First Amendment.  *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281 (W.D. Wash. 2012) ("The third-party publication of offers to engage in illegal transactions does not fall within 'well-defined and narrowly limited classes of speech' that fall outside of First Amendment protection.") (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)).

3

2.    *Pittsburgh Press* **Involved Facially Unlawful Speech, and Its Holding Applies**

**Only to Facially Unlawful Speech.**

The government bases its response to Defendants' proposed First Amendment jury

instructions on *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376

(1973).[2]  The City of Pittsburgh prohibited by ordinance the publication of "help wanted"

ads in sex-designated columns, except for jobs where an employer was permitted to hire

on the basis of sex.  *Id*. at 377-78.  The Pittsburgh Commission on Human Relations held

that Pittsburgh Press violated the ordinance by using an advertising system in its daily

newspaper whereby employment opportunities were published under headings

designating job preferences by sex (*e.g.*, "'Male Help Wanted,' 'Female Help Wanted,'

and 'Male-Female Help Wanted').  *Id*. at 379.  Those sex-designated categories were

illegal under the City's ordinance.  *Id*. at 388-89.[3]  As such, the Supreme Court held that

"[a]ny First Amendment interest which might be served by advertising an ordinary

commercial proposal . . . is altogether absent when the commercial activity itself is illegal

---

2    The government also cites the Supreme Court's decision in *Central Hudson,* but that
decision merely cited to and briefly synopsized the holding of Pittsburgh Press—it did
not interpret or extend its holding.  *Central Hudson Gas & Elec. Corp. v. Public Svc.
Comm. of N.Y.*, 447 U.S. 557 (1980) ("The government may ban forms of
communication more likely to deceive the public than to inform it, *Friedman v.
Rogers, supra, at 13, 15–16, 99 S.Ct., at  896, 897; Ohralik v. Ohio State Bar Assn.*,
*supra*, at 464–465,98 S. Ct., at 1923–1925, or commercial speech related to illegal
activity, *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388, 93
S.Ct. 2553, 2560, 37 L.Ed.2d669 (1973)").

3    *Accord IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122–23 (9th Cir. 2020) ("In
*Pittsburgh Press*, the Supreme Court addressed a challenge to a city ordinance that
prohibited discrimination on various bases, including sex. 413 U.S. at 378, 93 S.Ct.
2553.  To support that prohibition, the ordinance forbade the dissemination of
advertisements that 'indicate[d] any discrimination because of sex.'")

and the restriction on advertising is incidental to a valid limitation on economic activity." *Id*. at 389 (emphasis added).[4]

The Supreme Court's holding in *Pittsburgh Press* goes no farther than saying that the First Amendment does not protect the publication of classified ads that are, on their face, *per se* unlawful—a want ad expressing a *per se* unlawful sex preference in employment, a want ad proposing a *per se* unlawful "sale of narcotics," or a want ad "soliciting prostitutes," which would be *per se* unlawful in most of the United States.[5] Notably, the Supreme Court neither held nor suggested that a newspaper could be forbidden from publishing ***facially lawful*** help wanted ads, even if the employers posting those ads refused to hire women who responded to the ads. (*i.e.* the ads "related to" unlawful activity but did not, on their face, propose unlawful activity). Yet that is exactly how the government characterizes the holding of *Pittsburgh Press* (and *Central Hudson*), in seeking to eviscerate the First Amendment protection afforded to facially lawful adult

---

4   The Backpage.com ads at issue in the indictment were dating ads, massage ads, and escort ads.  None of those activities is illegal—and dating ads do not fall within  the less-protected ambit of commercial speech.

5   The Supreme Court's exact words were:  "We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes.  Nor would the result be different if the nature of the transaction were indicated by placement under columns captioned 'Narcotics for Sale' and 'Prostitutes Wanted' rather than stated within the four corners of the advertisement . . . .  We hold only that the Commission's modified order, narrowly drawn to prohibit placement in sex-designated columns of advertisements for nonexempt job opportunities, does not infringe the First Amendment rights of Pittsburgh Press."  *Id*. at 388, 391.  The government's position conflates a newspaper offering a classified ad category for "Prostitutes Wanted" (which would propose *per se* unlawful activity in most places) with a newspaper or website offering classified ad categories for dating, massages, or escorts (which propose unquestionably lawful activities).

ads.  That characterization is flawed and has been rejected repeatedly by the courts—including by the Supreme Court and the Ninth Circuit.

In *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 fn. 7 (9th Cir. 2009), the Ninth Circuit narrowly construed the language, "related to unlawful activity," in *Central Hudson* as meaning "whether the goods or services the party advertises are illegal"—not whether an advertisement for a lawful service was placed by someone who might be engaged in unlawful activity:

> *Central Hudson* asks if the commercial speech is 'related to unlawful activity.' ***Thus, in the context of advertising, one must ask whether the goods or services the party advertises are illegal***.

(emphasis added; internal citations omitted).  Four years later, in *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822 (9th Cir. 2013), the Ninth Circuit construed the holdings of *Pittsburgh Press* and *Central* Hudson in exactly the same manner:

> *Central Hudson's* legality requirement [] has traditionally focused on the content of affected speech—***i.e., whether the speech proposes an illegal transaction***—instead of whether the speech is ***associated with unlawful activity***.

(Emphasis added.)[6]

---

6   Of the millions of adult ads that ran on Backpage.com, the government identified just one that directly proposed an illegal transaction.  The other forty-nine charged ads the government merely claims to be "associated with unlawful activity."

Just last year, the Ninth Circuit made the same point, more

emphatically, directly rejecting the government's proposed interpretation of

*Pittsburgh Press*:

> *Pittsburgh Press* implicates only those instances when the
> state restricts ***speech that itself proposes an illegal
> transaction*** . . . . SAG's interpretation of *Pittsburgh Press*
> would require this court to permit the restriction not only of
> speech that proposes an illegal activity but also facially
> inoffensive speech that a third-party might use to facilitate its
> own illegal conduct.  But as the Supreme Court has noted, 'it
> would be quite remarkable to hold that speech by a law-
> abiding possessor of information can be suppressed in order
> to deter conduct by a non-law-abiding third party.' *Bartnicki
> v. Vopper*, 532 U.S. 514, 529–30, 121 S.Ct. 1753, 149
> L.Ed.2d 787 (2001) . . . Rather than restrict truthful speech,
> the typical 'method of deterring unlawful conduct is to
> impose an appropriate punishment on the person who engages
> in it.' *Bartnicki*, 532 U.S. at 529, 121 S.Ct. 1753.

*IMDB.com Inc. v. Bacerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) (emphasis added).

The Second, Third, and Fifth Circuits and the Southern District of New York all

interpret *Pittsburgh Press* and *Central Hudson* in the same manner as the Ninth Circuit—

as applying only to facially unlawful speech, not to speech that might or might not relate

to unlawful activity.  *Accord Greater Philadelphia Chamber of Com. v. City of

Philadelphia*, 949 F.3d 116, 142 & n.170 (3d Cir. 2020) (rejecting city's argument that

speech "concern[ed] unlawful activity" where the speech ***might*** relate to unlawful

activity because "commercial speech should not lose the protection of the First

Amendment simply because a legislature has prohibited one of many uses of the

regulated speech," unlike restricting "advertising of the sale of cocaine, for example,

[which] would present a speech restriction that ***always*** and ***only*** related to illegal activity

because there are no other legal uses/purposes behind the sale of cocaine") (emphasis in original); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 114 (2d Cir. 2017) (in holding a town ordinance unconstitutional because it "could be applied to prohibit speech proposing no illegal transaction," the Court held: "[T]he First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would ***necessarily*** constitute an illegal act.  However, if, as here, there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.") (emphasis in original) (citing *Valle Del Sol Inc.*, 709 F.3d at 821); *Eimann v. Soldier of Fortune Mag., Inc.*, 880 F.2d 830, 837-38 (5th Cir. 1989) (rejecting position that would require publishers to reject "any suspicious, ambiguous ad that might cause serious harm," because "in the constitutional arena we have noted that the possibility of illegal results does not necessarily strip an ad of its commercial speech protection"); *Pruett v. Harris Cty. Bail Bond Bd.*, 499 F.3d 403, 414 (5th Cir. 2007) (the "threshold inquiry" under *Central Hudson* asks whether "the product or service spoken about is illegal," not whether a commercial solicitation might lead to a violation of the law); *Dunagin v. City of Oxford*, 718 F.2d 738, 743 (5th Cir. 1983) (*en banc*) ("The commercial speech doctrine would disappear if its protection ceased whenever the advertised product might be used illegally."); *Art & Antique Dealers League of Am., Inc. v. Seggos*, 394 F. Supp. 3d 447, 459 (S.D.N.Y. 2019) ("Although the First Amendment does not protect speech proposing a transaction that 'necessarily constitute[s] an illegal act,' if 'there are plausible ways to complete a proposed transaction lawfully, speech

proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.'").

**3.      The Government's Burden Is Particularly High Because This Case Involves the Publication of Third-Party Speech, Not First-Party Speech.**

The government's argument suggests it believes that, by publishing third-party ads, any criminal intent of the persons posting those ads transfers to the publisher of those ads, Backpage.com, and then to Defendants, based on the act of publication.  The Constitution flatly prohibits what the government suggests and, instead, requires proof of specific intent on the part of the publishers, ***independent of the act of publishing***.  *Bursey v. United States*, 466 F.2d 1059, 1087 (9th Cir. 1972) ("Printing, publishing, or distributing the speech [] is not criminal unless the persons who did these acts had the ***specific intent required by the statutes*** which were the basis of the investigation. . . . The act of printing, publishing, or distributing the speech [] supplies no basis for an inference that the act was done with the proscribed intent.") (emphasis added).

In short, not only must the Court and the jury presume that all ads published on Backpage.com were lawful unless and until the government proves otherwise, but, even if the government proves that one or more ads were outside the protection of the First Amendment, the government cannot even ***suggest*** to the jury that the fact that Backpage.com published such an ad is proof of specific intent.  Indeed, while the government argues that the jury can consider purportedly "coded" terms in ads to prove illegality or intent, the District Court in the Western District of Washington flatly rejected the same argument made by the State of Washington when striking down as

9

***unconstitutional under the First Amendment*** (not just under the Communications Decency Act, as the government suggests) a statute that tried to do directly what the government here seeks to accomplish under the Travel Act here. *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1279 (W.D. Wash. 2012) ("[W]here an online service provider publishes advertisements that employ coded language, a reasonable person could believe that facts exist that do not in fact exist: an advertisement for escort services may be just that.… [I]f the offer is implicit, how can a third party ascertain that which is being offered before the transaction is consummated?").