# EXHIBIT B

EXECUTION VERSION

## BORROWER PLEDGE AND SECURITY AGREEMENT

This BORROWER PLEDGE AND SECURITY AGREEMENT, dated as of January 17, 2013 (the "Effective Date") is made by VOICE MEDIA GROUP, INC., a Colorado corporation, (the "Grantor"), in favor of BROADWAY CAPITAL CORP., LLC, a Delaware limited liability company (the "Secured Party") (as amended, supplemented, amended and restated or otherwise modified from time to time, this "Security Agreement").

W I T N E S S E T H :

WHEREAS, pursuant to the Credit Agreement, dated as of January 17, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "Credit Agreement"), between the Grantor, and the Secured Party, Secured Party has extended a Commitment to make Credit Extensions to the Grantor; and

WHEREAS, as a condition precedent to the making of the Credit Extensions under the Credit Agreement, the Grantor is required to execute and deliver this Security Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor agrees, for the benefit of the Secured Party, as follows:

ARTICLE I

DEFINITIONS

SECTION 1.1.  Certain Terms. The following terms (whether or not underscored) when used in this Security Agreement, including its preamble and recitals, shall have the following meanings (such definitions to be equally applicable to the singular and plural forms thereof):

"Collateral" is defined in Section 2.1.

"Collateral Account" is defined in clause (b) of Section 4.3.

"Computer Hardware and Software Collateral" means:

(a)     all computer and other electronic data processing hardware, integrated computer systems, central processing units, memory units, display terminals, printers, computer elements, card readers, tape drives, hard and soft disk drives, interconnect cables, electrical supply hardware, generators, power equalizers, accessories and all peripheral devices and other related computer hardware owned by the Grantor;

(b)     all software programs (including, to the extent the Grantor is entitled to such items, both source code, object code and all related applications and data files), whether now owned, licensed or leased or hereafter acquired by the Grantor, designed for

DEFENSE 017747

use on the computers and electronic data processing hardware described in <u>clause (a)</u> above;

    (c)     all firmware associated with the computers and electronic data processing hardware described in <u>clause (a)</u> above;

    (d)     all documentation to which the Grantor is entitled to use (including flow charts, logic diagrams, manuals, guides and specifications) with respect to such hardware, software and firmware described in the preceding <u>clauses (a)</u> through <u>(c)</u>; and

    (e)     all rights owned by  the Grantor with respect to all of the foregoing, including any and all copyrights, licenses, options, warranties, service contracts, program services, test rights, maintenance rights, support rights, improvement rights, renewal rights and indemnifications and any substitutions, replacements, additions or model conversions of any of the foregoing.

"<u>Copyright Collateral</u>" means all copyrights owned by the Grantor, whether statutory or common law, registered or unregistered and whether published or unpublished, now or hereafter in force throughout the world including all of the Grantor's rights, titles and interests in and to all such copyrights registered in the United States Copyright Office or anywhere else in the world and also including the copyrights referred to in <u>Item A</u> of <u>Schedule V</u> hereto, and registrations and recordings thereof and all applications for registration thereof, whether pending or in preparation, the right to sue for past, present and future infringements of any of the foregoing, all rights corresponding thereto, all extensions and renewals of any thereof, all of the Grantor's copyright licenses, including each copyright license referred to in <u>Item B</u> of <u>Schedule V</u> hereto, and all proceeds of the foregoing, including licenses, royalties, income, payments, claims, damages and proceeds of suit.

"<u>Credit Agreement</u>" is defined in the <u>first recital</u>.

"<u>Distributions</u>" means all non-cash dividends paid on Capital Securities, liquidating dividends paid on Capital Securities, shares of Capital Securities resulting from (or in connection with the exercise of) stock splits, reclassifications, warrants, options, non-cash dividends, mergers, consolidations, and all other distributions (whether similar or dissimilar to the foregoing) on or with respect to any Capital Securities constituting Collateral, but excluding Dividends.

"<u>Dividends</u>" means cash dividends and cash distributions with respect to any Capital Securities constituting Collateral that are not a liquidating dividend.

"<u>Grantor</u>" is defined in the <u>preamble</u>.

"<u>Intellectual Property Collateral</u>" means, collectively, the Computer Hardware and Software Collateral, the Copyright Collateral, the Patent Collateral, the Trademark Collateral and the Trade Secrets Collateral.

"<u>Patent Collateral</u>" means:

DEFENSE 017748

(a)     all letters patent and applications for letters patent throughout the world owned by the Grantor, including all patent applications in preparation for filing and each patent and patent application referred to in Item A of Schedule III hereto;

(b)     all reissues, divisions, continuations, continuations-in-part, extensions, renewals and reexaminations of any of the items described in clause (a);

(c)     all patent licenses, and other agreements providing the Grantor with the right to use any items of the type referred to in clauses (a) and (b) above, including each patent license referred to in Item B of Schedule III hereto; and

(d)     all proceeds of, and rights associated with, the foregoing (including license royalties and proceeds of infringement suits), the right to sue third parties for past, present or future infringements of any patent application, and for breach or enforcement of any patent license.

"Receivables" is defined in clause (c) of Section 2.1.

"Related Contracts" is defined in clause (c) of Section 2.1.

"Securities Act" is defined in clause (a) of Section 6.2.

"Security Agreement" is defined in the preamble.

"Specified Event" means the occurrence and continuance of a Default under clauses (a) through (e) of Section 8.1.10 of the Credit Agreement or any other Event of Default .

"Trademark Collateral" means:

(a)(i) all trademarks, trade names, domain names, corporate names, company names, business names, fictitious business names, trade styles, service marks, certification marks, collective marks, logos and other source or business identifiers owned by the Grantor, now existing or hereafter adopted or acquired including those referred to in Item A of Schedule IV hereto, whether currently in use or not, all registrations and recordings thereof and all applications in connection therewith, whether pending or in preparation for filing, including registrations, recordings and applications in the United States Patent and Trademark Office or in any office or agency of the United States of America or any State thereof or any other country or political subdivision thereof or otherwise, and all common-law rights relating to the foregoing, and (ii) the right to obtain all reissues, extensions or renewals of the foregoing (collectively referred to as the "Trademark");

(b) all Trademark licenses for the grant by or to the Grantor of any right to use any Trademark, including each Trademark license referred to in Item B of Schedule IV hereto; and

(c) all of the goodwill of the business connected with the use of, and symbolized by the items described in, clause (a), and to the extent applicable clause (b);

-3-

DEFENSE 017749

(d)  the right to sue third parties for past, present and future infringements of any Trademark Collateral described in clause (a) and, to the extent applicable, clause (b); and

(e)  all proceeds of, and rights associated with, the foregoing, including any claim by the Grantor against third parties for past, present or future infringement or dilution of any Trademark or Trademark registration, or for any injury to the goodwill associated with the use of any such Trademark or for breach or enforcement of any Trademark license and all rights corresponding thereto throughout the world.

"Trade Secrets Collateral" means all common law and statutory trade secrets owned by and used in the business of the Grantor (all of the foregoing being collectively called a "Trade Secret"), whether or not such Trade Secret has been reduced to a writing or other tangible form, including all documents and things embodying, incorporating or referring in any way to such Trade Secret, all Trade Secret licenses, including each Trade Secret license referred to Schedule VI hereto, and including the right to sue for and to enjoin and to collect damages for the actual or threatened misappropriation of any Trade Secret and for the breach or enforcement of any such Trade Secret license.

SECTION 1.2.  Credit Agreement Definitions.  Unless otherwise defined herein or the context otherwise requires, terms used in this Security Agreement, including its preamble and recitals, have the meanings provided in the Credit Agreement.

SECTION 1.3.  UCC Definitions.  Unless otherwise defined herein or in the Credit Agreement or the context otherwise requires, terms for which meanings are provided in the UCC are used in this Security Agreement (whether or not capitalized herein), including its preamble and recitals, with such meanings.

ARTICLE II
SECURITY INTEREST

SECTION 2.1.  Grant of Security Interest.  The Grantor hereby assigns, pledges, hypothecates, charges, mortgages, delivers and transfers to the Secured Party, and hereby grants to the Secured Party, a continuing security interest in all of the Grantor's following property, whether tangible or intangible, whether now or hereafter existing, owned or acquired by the Grantor, and wherever located (collectively, the "Collateral"):

(a)  (i) all investment property in which the Grantor has an interest (including the Capital Securities of each issuer of such Capital Securities described in Schedule I hereto) and (ii) all other Capital Securities which are interests in limited liability companies or partnerships in which the Grantor has an interest (including the Capital Securities of each issuer of such Capital Securities described in Schedule I hereto), in each case together with Dividends and Distributions payable in respect of the Collateral described in the foregoing clauses (a)(i) and (a)(ii);

(b)  all goods, including all equipment and inventory in all of its forms;

-4-

DEFENSE 017750

(c)      all accounts, contracts, contract rights, chattel paper, documents, instruments, promissory notes and general intangibles (including tax refunds and all payment intangibles), whether or not arising out of or in connection with the sale or lease of goods or the rendering of services, and all rights now or hereafter existing in and to all security agreements, guaranties, leases and other contracts securing or otherwise relating to any such accounts, contracts, contract rights, chattel paper, documents, instruments, promissory notes, general intangibles and payment intangibles (all of the foregoing collectively referred to as the "Receivables", and any and all such security agreements, guaranties, leases and other contracts collectively referred to as the "Related Contracts");

(d)      all Intellectual Property Collateral;

(e)      all deposit accounts;

(f)      all letter of credit rights;

(g)      all commercial tort claims in which the Grantor has rights (including as a plaintiff);

(h)      the Collateral Account, all cash, checks, drafts, notes, bills of exchange, money orders, other like instruments and all investment property held in the Collateral Account (or in any sub-account thereof) and all interest and earnings in respect thereof;

(i)      all books, records, writings, data bases, information and other property relating to, used or useful in connection with, evidencing, embodying, incorporating or referring to, any of the foregoing in this Section;

(j)      all other property and rights of every kind and description and interests therein; and

(k)      all products, offspring, rents, issues, profits, returns, income, supporting obligations and proceeds of and from any and all of the foregoing Collateral (including proceeds which constitute property of the types described in clauses (a) through (j), and, to the extent not otherwise included, all payments under insurance (whether or not the Secured Party is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Collateral).

Notwithstanding the foregoing, "Collateral" shall not include (i) the Grantor's real property leaseholds and (ii) any general intangibles or other rights arising under any contracts, instruments, licenses or other documents as to which the grant of a security interest would (A) constitute a violation of a valid and enforceable restriction in favor of a third party on such grant, unless and until any required consents shall have been obtained, or (B) give any other party to such contract, instrument, license or other document the right to terminate its obligations thereunder, or (iii) investment property consisting of Capital Securities of an issuer that is a Foreign Subsidiary (other than a Foreign Subsidiary that (i) is treated as a partnership under the Code or (ii) is not treated as an entity that is separate from (A) such Grantor; (B) any Person that is treated as a partnership under the Code or (C) any "United States person" (as defined in

DEFENSE 017751

Section 7701(a)(30) of the Code)) of such Grantor, in excess of 65% of the total combined voting power of all Capital Securities of each such Foreign Subsidiary.

SECTION 2.2.   Security for Obligations.  This Security Agreement and the Collateral in which the Secured Parties is granted a security interest hereunder by the Grantor secure the payment of all Obligations now or hereafter existing.

SECTION 2.3.   Grantor Remains Liable.  Anything herein to the contrary notwithstanding

(a)      the Grantor will remain liable under the contracts and agreements included in the Collateral to the extent set forth therein, and will perform all of its duties and obligations under such contracts and agreements to the same extent as if this Security Agreement had not been executed;

(b)      the exercise by the Secured Party of any of its rights hereunder will not release the Grantor from any of its duties or obligations under any such contracts or agreements included in the Collateral; and

(c)      the Secured Party will have no obligation or liability under any contracts or agreements included in the Collateral by reason of this Security Agreement, nor will the Secured Party be obligated to perform any of the obligations or duties of the Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

SECTION 2.4.   Dividends on Pledged Shares.  In the event that any Dividend with respect to any Capital Securities pledged hereunder is permitted to be paid (in accordance with Section 7.2.6 of the Credit Agreement)  such Dividend or payment may be paid directly to the Grantor.  If any Dividend or payment is paid in contravention of Section 7.2.6 of the Credit Agreement, the Grantor shall hold the same segregated and in trust for the Secured Party until paid to the Secured Party in accordance with Section 4.1.5 hereto.

SECTION 2.5.   Security Interest Absolute, etc.  This Security Agreement shall in all respects be a continuing, absolute, unconditional and irrevocable grant of security interest, and shall remain in full force and effect until the Termination Date.  All rights of the Secured Party and the security interests granted to the Secured Party hereunder, and all obligations of the Grantor hereunder, shall, in each case, be absolute, unconditional and irrevocable irrespective of:

(a)      any lack of validity, legality or enforceability of any Loan Document;

(b)      the failure of the Secured Party (i) to assert any claim or demand or to enforce any right or remedy against any Obligor or any other Person (including any other Guarantor) under the provisions of any Loan Document or otherwise, or (ii) to exercise any right or remedy against any other guarantor (including any other Guarantor) of, or collateral securing, any Obligations;

-6-

(c)      any change in the time, manner or place of payment of, or in any other term of, all or any part of the Obligations, or any other extension, compromise or renewal of any Obligation;

(d)      any reduction, limitation, impairment or termination of any Obligations for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to (and the Grantor hereby waives any right to or claim of) any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality, nongenuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, any Obligations or otherwise;

(e)      any amendment to, rescission, waiver, or other modification of, or any consent to or departure from, any of the terms of any Loan Document;

(f)      any addition, exchange or release of any collateral or of any Person that is (or will become) a guarantor (including the Grantor) of the Obligations, or any surrender or non-perfection of any collateral, or any amendment to or waiver or release or addition to, or consent to or departure from, any other guaranty held by the Secured Party securing any of the Obligations; or

(g)      any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, any Obligor, any surety or any guarantor.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

In order to induce the Secured Party to enter into the Credit Agreement and make Credit Extensions thereunder, the Grantor represents and warrants to the Secured Party as set forth below, it being understood that for the purposes of the representations set forth in Sections 3.1, 3.2, 3.3, and 3.6, such representations only relate to the period commencing immediately following the Effective Date.

SECTION 3.1.  As to Capital Securities of the Subsidiaries.  With respect to any Subsidiary of the Grantor that is

(a)      a corporation, business trust, joint stock company or similar Person, all Capital Securities issued by such Subsidiary are duly authorized and validly issued, fully paid and non-assessable, and represented by a certificate; and

(b)      a partnership or limited liability company, no Capital Securities issued by such Subsidiary (i) are dealt in or traded on securities exchanges or in securities markets, (ii) expressly provide that such Capital Securities are a security governed by Article 8 of the UCC or (iii) are held in a securities account.

DEFENSE 017753

The percentage of the issued and outstanding Capital Securities of each Subsidiary pledged by the Grantor hereunder is as set forth on <u>Schedule I</u> hereto.

SECTION 3.2.   <u>Grantor Name, Location, etc</u>.   The jurisdiction in which the Grantor is located for purposes of Sections 9-301 and 9-307 of the UCC is set forth in <u>Item A</u> of <u>Schedule II</u> hereto. Set forth in <u>Item B</u> of <u>Schedule II</u> is each location a secured party would have filed a UCC financing statement within the last five years to perfect or continue perfection of a security interest in equipment, inventory and general intangibles owned by the Grantor.  The Grantor does not have any trade names other than those set forth in <u>Item C</u> of <u>Schedule II</u> hereto.  During the twelve months preceding the date hereof, the Grantor has not been known by any legal name different from the one set forth on the signature page hereto, nor has the Grantor been the subject of any merger or other corporate reorganization, except as set forth in <u>Item D</u> of <u>Schedule II</u> hereto.  The name set forth on the signature page is the true and correct name of the Grantor. The Grantor's federal taxpayer identification number is  set forth in <u>Item E</u> of <u>Schedule II</u> hereto (and, during the twelve months  preceding the date hereof, the Grantor has not had a federal taxpayer identification number different from that).  The Grantor is not a party to any federal, state or local government contract except as set forth in <u>Item F</u> of <u>Schedule II</u> hereto.  The Grantor does not maintain any deposit accounts with any Person except as set forth in <u>Item G</u> of <u>Schedule II</u> hereto.

SECTION 3.3.   <u>Ownership, No Liens, etc.</u>   The Grantor owns its Collateral free and clear of any Lien, except for Liens (a) created by this Security Agreement, and, (b) in the case of Collateral other than the Capital Securities of each Subsidiary pledged hereunder, permitted by Section 7.2.3 of the Credit Agreement.  No effective financing statement or other filing similar in effect covering any Collateral is on file in any recording office, except those filed in favor of the Secured Party relating to this Security Agreement or those filed in connection with Liens permitted by Section 7.2.3 of the Credit Agreement or as to which a duly executed termination statement relating to such financing statement or other instrument has been delivered to the Secured Party on the Effective Date.

SECTION 3.4.   <u>Possession of Inventory, etc.</u>   The Grantor agrees that it will maintain exclusive possession of its goods, instruments, promissory notes and inventory, other than (a) inventory in transit in the ordinary course of business, (b) inventory which is in the possession or control of a warehouseman, bailee agent or other Person (other than a Person controlled by or under common control with the Grantor) that has been notified of the security interest created in favor of the Secured Party pursuant to this Security Agreement, and has agreed to hold such inventory subject to the Secured Party's Lien and waive any Lien held by it against such inventory, and (c) instruments or promissory notes that have been delivered to the Secured Party pursuant to <u>Section 3.5</u>.

SECTION 3.5.   <u>Negotiable Documents, Instruments and Chattel Paper</u>.   The Grantor has delivered to the Secured Party possession of all originals of all negotiable documents, instruments, promissory notes and chattel paper owned or held by the Grantor on the Effective Date.

DEFENSE 017754

SECTION 3.6.  <u>Intellectual Property Collateral</u>.  With respect to any of the Grantor's Intellectual Property Collateral the loss, impairment or infringement of which could reasonably be expected to have a Material Adverse Effect, the Grantor represents that:

(a)     the Grantor is the exclusive owner of the entire (other than Trade Secrets Collateral) and unencumbered right, title and interest in and to such Intellectual Property Collateral and no claim has been made that the use of such Intellectual Property Collateral owned by the Grantor does or may violate the asserted rights of any third party; and

(b)     the Grantor will continue to perform all acts and will to pay all required fees and taxes to maintain each and every such item of Intellectual Property Collateral owned by the Grantor in full force and effect throughout the world, as applicable.

The Grantor owns directly or is entitled to use by license or otherwise, all patents, Trademarks, Trade Secrets, copyrights, licenses, technology, know-how, processes and rights with respect to any of the foregoing used in or necessary for the conduct of the Grantor's business.

SECTION 3.7.  <u>Validity, etc.</u>  This Security Agreement creates a valid security interest in the Collateral securing the payment of the Obligations.  The Grantor has filed or caused to be filed all Filing Statements in the appropriate offices therefor (or has authenticated and delivered to the Secured Party Filing Statements suitable for filing in such offices) and has taken all of the actions necessary to create perfected and (in the case of Collateral other than the Capital Securities of each Subsidiary pledged hereunder, subject to Section 7.2.3 of the Credit Agreement) first-priority security interests in the applicable Collateral other than the Collateral that constitutes unregistered copyrights.

SECTION 3.8.  <u>Authorization, Approval, etc.</u>  Except as have been obtained or made and are in full force and effect, no authorization, approval or other action by, and no notice to or filing with, any Governmental Authority is required either

(a)     for the grant by the Grantor of the security interest granted hereby, the pledge by the Grantor of any Collateral pursuant hereto or for the execution, delivery and performance of this Security Agreement by the Grantor;

(b)     other than the Collateral that constitutes unregistered copyrights, for the perfection of or the exercise by the Secured Party of its rights and remedies hereunder; or

(c)     for the exercise by the Secured Party of the voting or other rights provided for in this Security Agreement, or, except (i) with respect to any securities issued by a Subsidiary of the Grantor, as may be required in connection with a disposition of such securities by laws affecting the offering and sale of securities generally, the remedies in respect of the Collateral pursuant to this Security Agreement and (ii) any "change of control" or similar filings required by state licensing agencies.

DEFENSE 017755

ARTICLE IV
COVENANTS

The Grantor covenants and agrees that, until the Termination Date, the Grantor will perform, comply with and be bound by the obligations set forth below.

SECTION 4.1.   As to Investment Property, etc.

SECTION 4.1.1.   Capital Securities of Subsidiaries.  The Grantor will not allow any of its Subsidiaries

(a)       that is a corporation, business trust, joint stock company or similar Person, to issue uncertificated securities;

(b)       that is a partnership or limited liability company, to (i) issue Capital Securities that are to be dealt in or traded on securities exchanges or in securities markets, (ii) expressly provide in its Organic Documents that its Capital Securities are securities governed by Article 8 of the UCC, or (iii) place such Subsidiaries Capital Securities in a securities account; and

(c)       to be organized under the laws of any jurisdiction other than the United States.

SECTION 4.1.2.   Investment Property (other than Certificated Securities).  With respect to any investment property (other than certificated securities) owned by the Grantor, the Grantor will cause a control agreement relating to such investment property to be executed and delivered by the Grantor and the applicable financial intermediary in favor of the Secured Party.

SECTION 4.1.3.   Stock Powers, etc.  The Grantor agrees that all certificated securities delivered by the Grantor pursuant to this Security Agreement will be accompanied by duly executed undated blank stock powers, or other equivalent instruments of transfer acceptable to the Secured Party.

SECTION 4.1.4.   Continuous Pledge.  The Grantor will (subject to the terms of the Credit Agreement) deliver to the Secured Party and at all times keep pledged to the Secured Party pursuant hereto, on a first-priority, perfected basis all investment property constituting Collateral, all Dividends and Distributions with respect thereto, all payment intangibles to the extent they are evidenced by a document, instrument, promissory note or chattel paper, and all interest and principal with respect to such payment intangibles, and all proceeds and rights from time to time received by or distributable to the Grantor in respect of any of the foregoing Collateral.  The Grantor agrees that it will, promptly following receipt thereof, deliver to the Secured Party possession of all originals of negotiable documents, instruments, promissory notes and chattel paper that it acquires following the Effective Date.

SECTION 4.1.5.   Voting Rights; Dividends, etc.  The Grantor agrees:

(a)       promptly upon receipt of notice of the occurrence and continuance of a Specified Event from the Secured Party and without any request therefore by the Secured

-10-

                                    DEFENSE 017756

Party, so long as such Specified Event shall continue, to deliver (properly endorsed where required hereby or requested by the Secured Party) to the Secured Party all Dividends and Distributions with respect to investment property, all interest, principal, other cash payments on payment intangibles, and all proceeds of the Collateral, in each case thereafter received by the Grantor, all of which shall be held by the Secured Party as additional Collateral; and

(b)     subject to clause (c)(ii) of Section 3.8 and, with respect to Collateral consisting of general partner interests or limited liability company interests, modifications to the respective Organic Documents to admit the Secured Party as a general partner or member, respectively, immediately upon the occurrence and continuance of a Specified Event and so long as the Secured Party has notified the Grantor of the Secured Party's intention to exercise its voting power under this clause,

(i)     that the Secured Party  may exercise (to the exclusion of the Grantor) the voting power and all other incidental rights of ownership with respect to any investment property constituting Collateral and the Grantor hereby grants the Secured Party an irrevocable proxy, exercisable under such circumstances, to vote such investment property; and

(ii)     to promptly deliver to the Secured Party such additional proxies and other documents as may be necessary to allow the Secured Party to exercise such voting power.

All Dividends, Distributions, interest, principal, cash payments, payment intangibles and proceeds which may at any time and from time to time be held by the Grantor but which the Grantor is then obligated to deliver to the Secured Party, shall, until delivery to the Secured Party, be held by the Grantor separate and apart from its other property in trust for the Secured Party.  The Secured Party agrees that unless a Specified Event shall have occurred and be continuing and the Secured Party shall have given the notice referred to in clause (b), the Grantor will have the exclusive voting power with respect to any investment property constituting Collateral and the Secured Party will, upon the written request of the Grantor, promptly deliver such proxies and other documents, if any, as shall be reasonably requested by the Grantor which are necessary to allow the Grantor to exercise that voting power; provided that no vote shall be cast, or consent, waiver, or ratification given, or action taken by the Grantor that would impair any such Collateral, impair the position or interest of the Secured Party in respect of the Collateral, or be inconsistent with or violate any provision of any Loan Document.

SECTION 4.2.  Change of Name, etc. The Grantor will not change its name or place of incorporation or organization or federal taxpayer identification number except upon 30 days' prior written notice to the Secured Party.  If the Grantor is organized outside of the United States, it will not change its "location" as determined in accordance with Section 9-301 and 9-307 of the UCC and as set forth in Item A of Schedule II hereto except upon 30 days' prior written notice to the Secured Party.

SECTION 4.3.  As to Receivables.

DEFENSE 017757

(a)     The Grantor shall have the right to collect all Receivables so long as no Specified Event shall have occurred and be continuing.

(b)     Upon (i) the occurrence and continuance of a Specified Event and (ii) the delivery of written notice by the Secured Party to the Grantor, all proceeds of Collateral received by the Grantor shall be delivered in kind to the Secured Party for deposit to a deposit account (the "Collateral Account") maintained by the Secured Party, on behalf of the Grantor, with a bank or other depository institution selected by the Secured Party in its sole discretion, and the Grantor shall not commingle any such proceeds, and shall hold separate and apart from all other property, all such proceeds in express trust for the benefit of the Secured Party until delivery thereof is made to the Secured Party.

(c)     Following the delivery of notice pursuant to clause (b)(ii) of this Section, the Secured Party shall have the right to apply any amount in the Collateral Account to the payment of any Obligations which are due and payable.

(d)     With respect to the Collateral Account, it is hereby confirmed and agreed that (i) deposits in each Collateral Account are subject to a security interest as contemplated hereby, (ii) each such Collateral Account shall be under the sole dominion and control of the Secured Party and (iii) the Secured Party shall have the sole right of withdrawal over such Collateral Account.

SECTION 4.4.  As to Collateral.

(a)     Subject to clause (b) of this Section, the Grantor (i) may in the ordinary course of its business, at its own expense, sell, lease or furnish under the contracts of service any of the inventory normally held by the Grantor for such purpose, and use and consume, in the ordinary course of its business, any raw materials, work in process or materials normally held by the Grantor for such purpose, (ii) will, at its own expense, endeavor to collect, as and when due, all amounts due with respect to any of the Collateral, including the taking of such action with respect to such collection as the Secured Party may reasonably request following the occurrence of a Specified Event or, in the absence of such request, as the Grantor may deem advisable, and (iii) may grant, in the ordinary course of business, to any party obligated on any of the Collateral, any rebate, refund or allowance to which such party may be lawfully entitled, and may accept, in connection therewith, the return of goods, the sale or lease of which shall have given rise to such Collateral.

(b)     At any time following the occurrence and during the continuance of a Specified Event, whether before or after the maturity of any of the Obligations, the Secured Party may (i) revoke any or all of the rights of the Grantor set forth in clause (a), (ii) notify any parties obligated on any of the Collateral to make payment to the Secured Party of any amounts due or to become due thereunder and (iii) enforce collection of any of the Collateral by suit or otherwise and surrender, release, or exchange all or any part thereof, or compromise or extend or renew for any period (whether or not longer than the original period) any indebtedness thereunder or evidenced thereby.

DEFENSE 017758

(c)     Upon request of the Secured Party following the occurrence and during the continuance of a Specified Event, the Grantor will, at its own expense, notify any parties obligated on any of the Collateral to make payment to the Secured Party of any amounts due or to become due thereunder.

(d)     At any time following the occurrence and during the continuation of a Specified Event, the Secured Party may endorse, in the name of the Grantor, any item, howsoever received by the Secured Party, representing any payment on or other proceeds of any of the Collateral.

SECTION 4.5.  <u>As to Intellectual Property Collateral</u>.  The Grantor covenants and agrees to comply with the following provisions as such provisions relate to any Intellectual Property Collateral material to the operations or business of the Grantor:

(a)     the Grantor will not (i) do or fail to perform any act whereby any of the Patent Collateral may lapse or become abandoned or dedicated to the public or unenforceable, (ii) permit any of its third party licensees to (A) fail to continue to use any of the Trademark Collateral in order to maintain all of the Trademark Collateral in full force free from any claim of abandonment for non-use, (B) fail to maintain as in the past the quality of products and services offered under all of the Trademark Collateral, (C) fail to employ all of the Trademark Collateral registered with any federal or state or foreign authority with an appropriate notice of such registration, (D) adopt or use any other Trademark which is confusingly similar or a colorable imitation of any of the Trademark Collateral, (E) use any of the Trademark Collateral registered with any federal, state or foreign authority except for the uses for which registration or application for registration of all of the Trademark Collateral has been made or (F) do or permit any act or knowingly omit to do any act whereby any of the Trademark Collateral may lapse or become invalid or unenforceable, or (iii) do or permit any act or knowingly omit to do any act whereby any of the Copyright Collateral or any of the Trade Secrets Collateral may lapse or become invalid or unenforceable or placed in the public domain except upon expiration of the end of an unrenewable term of a registration thereof, unless, in the case of any of the foregoing requirements in <u>clauses (i)</u>, <u>(ii)</u> and <u>(iii)</u>, the Grantor shall either (x) reasonably and in good faith determine that any of such Intellectual Property Collateral is of negligible economic value to the Grantor, or (y) have a valid business purpose to do otherwise;

(b)     the Grantor shall promptly notify the Secured Party if it knows, or has reason to know, that any application or registration relating to any material item of the Intellectual Property Collateral owned by the Grantor may become abandoned or dedicated to the public or placed in the public domain or invalid or unenforceable, or of any adverse determination or development (including the institution of, or any such determination or development in, any proceeding in the United States Patent and Trademark Office, the United States Copyright Office or any foreign counterpart thereof or any court) regarding the Grantor's ownership of any of the Intellectual Property Collateral, its right to register the same or to keep and maintain and enforce the same;

-13-

DEFENSE 017759

(c)     the Grantor will take all commercially reasonable steps, including in any proceeding before the United States Patent and Trademark Office, the United States Copyright Office or (subject to the terms of the Credit Agreement) any similar office or agency in any other country or any political subdivision thereof, to maintain and pursue any application (and to obtain the relevant registration) filed with respect to, and to maintain any registration of, the Intellectual Property Collateral owned by the Grantor, including the filing of applications for renewal, affidavits of use, affidavits of incontestability and opposition, interference and cancellation proceedings and the payment of fees and taxes (except to the extent that dedication, abandonment or invalidation is permitted under the foregoing clause (a) or (b)); and

(d)     the Grantor will promptly (but no less than quarterly) execute and deliver to the Secured Party(as applicable) a Patent Security Agreement, Trademark Security Agreement and/or Copyright Security Agreement, as the case may be, in the forms of Exhibit A, Exhibit B and Exhibit C hereto following its obtaining an ownership interest in any such Intellectual Property, and shall execute and deliver to the Secured Party any other document required to acknowledge or register or perfect the Secured Party's interest in any part of such item of Intellectual Property Collateral unless (i) the Intellectual Property Collateral is an unregistered copyright which the Grantor would not normally register, or (ii) the Grantor shall determine in good faith that any Intellectual Property Collateral is of negligible economic value to the Grantor.

SECTION 4.6.  Further Assurances, etc.  The Grantor agrees that, from time to time at its own expense, it will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or that the Secured Party may reasonably request, in order to perfect, preserve and protect any security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral.  Without limiting the generality of the foregoing, the Grantor will

(a)     from time to time upon the request of the Secured Party, promptly deliver to the Secured Party such stock powers, instruments and similar documents, satisfactory in form and substance to the Secured Party, with respect to such Collateral as the Secured Party may reasonably request and will, from time to time upon the request of the Secured Party after the occurrence and during the continuance of any Specified Event promptly transfer any securities constituting Collateral into the name of any nominee designated by the Secured Party; if any Collateral shall be evidenced by an instrument, negotiable document, promissory note or chattel paper, deliver and pledge to the Secured Party hereunder such instrument, negotiable document, promissory note or chattel paper duly endorsed and accompanied by duly executed instruments of transfer or assignment, all in form and substance satisfactory to the Secured Party;

(b)     file (or cause to be filed) such Filing Statements or continuation statements, or amendments thereto, and such other instruments or notices (including any assignment of claim form under or pursuant to the federal assignment of claims statute, 31 U.S.C. § 3726, any successor or amended version thereof or any regulation promulgated under or pursuant to any version thereof), as may be necessary or that the

-14-

DEFENSE 017760

Secured Party may reasonably request in order to perfect and preserve the security interests and other rights granted or purported to be granted to the Secured Party hereby;

(c) deliver to the Secured Party and at all times keep pledged to the Secured Party pursuant hereto, on a first-priority, perfected basis, at the reasonable request of the Secured Party, all investment property constituting Collateral, all Dividends and Distributions with respect thereto, and all interest and principal with respect to promissory notes, and all proceeds and rights from time to time received by or distributable to the Grantor in respect of any of the foregoing Collateral;

(d) not take or omit to take any action the taking or the omission of which would result in any impairment or alteration of any obligation of the maker of any payment intangible or other instrument constituting Collateral;

(e) furnish to the Secured Party, from time to time at the Secured Party's request, statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Secured Party may reasonably request, all in reasonable detail;

(f) do all things reasonably requested by the Secured Party in order to enable the Secured Party to have control (as such term is defined in Article 8 and Article 9 of any applicable Uniform Commercial Code relevant to the creation, perfection or priority of Collateral consisting of deposit accounts, accounts and letter of credit rights) over any Collateral; and

(g) notify the Secured Party if the Grantor reasonably believes it is entitled to recover a commercial tort claim the value of which is in excess of $500,000 and the Grantor take all such action reasonably requested by the Secured Party to grant to the Secured Party a perfect a security interest in such commercial tort claim.

With respect to the foregoing and the grant of the security interest hereunder, the Grantor hereby authorizes the Secured Party to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral. The Grantor agrees that a carbon, photographic or other reproduction of this Security Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

## ARTICLE V
## SECURED PARTY

SECTION 5.1. <u>Secured Party Appointed Attorney-in-Fact</u>. The Grantor hereby irrevocably appoints the Secured Party its attorney-in-fact, with full authority in the place and stead of the Grantor and in the name of the Grantor or otherwise, from time to time in the Secured Party's discretion, following the occurrence and during the continuance of a Specified Event, to take any action and to execute any instrument which the Secured Party may deem necessary or advisable to accomplish the purposes of this Security Agreement, including:

-15-

DEFENSE 017761

(a)      to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b)      to receive, endorse, and collect any drafts or other instruments, documents and chattel paper, in connection with clause (a) above;

(c)      to file any claims or take any action or institute any proceedings which the Secured Party may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of the Secured Party with respect to any of the Collateral; and

(d)      to perform the affirmative obligations of the Grantor hereunder.

The Grantor hereby acknowledges, consents and agrees that the power of attorney granted pursuant to this Section is irrevocable and coupled with an interest.

SECTION 5.2.  Secured Party May Perform.  If the Grantor fails to perform any agreement contained herein, the Secured Party may itself perform, or cause performance of, such agreement, and all expenses (including but not limited to reasonable attorneys' fees  and legal expenses of counsel) of the Secured Party incurred in connection therewith shall be payable by the Grantor.

SECTION 5.3.  Secured Party Has No Duty.  The powers conferred on the Secured Party hereunder are solely to protect its interest in the Collateral and shall not impose any duty on it to exercise any such powers.  Except for reasonable care of any Collateral in its possession and the accounting for moneys actually received by it hereunder, the Secured Party shall have no duty as to any Collateral or responsibility for

(a)      ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any investment property, whether or not the Secured Party has or is deemed to have knowledge of such matters, or

(b)      taking any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.

SECTION 5.4.  Reasonable Care.  The Secured Party is required to exercise reasonable care in the custody and preservation of any of the Collateral in its possession; provided that the Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral, if it takes such action for that purpose as the Grantor reasonably requests in writing at times other than upon the occurrence and during the continuance of any Specified Event, but failure of the Secured Party to comply with any such request at any time shall not in itself be deemed a failure to exercise reasonable care.

DEFENSE 017762

## ARTICLE VI
## REMEDIES

SECTION 6.1.  <u>Certain Remedies</u>.  If any Specified Event shall have occurred and be continuing:

(a)     The Secured Party may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral) and also may

(i)     require the Grantor to, and the Grantor hereby agrees that it will, at its expense and upon request of the Secured Party forthwith, assemble all or part of the Collateral as directed by the Secured Party and make it available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to both parties, and

(ii)     without notice except as specified below, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of the Secured Party's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as the Secured Party may deem commercially reasonable.  The Grantor agrees that, to the extent notice of sale shall be required by law, at least ten days prior notice to the Grantor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification.  The Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given.  The Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(b)     All cash proceeds received by the Secured Party in respect of any sale of, collection from, or other realization upon, all or any part of the Collateral shall be applied by the Secured Party against, all or any part of the Obligations as set forth in Section 4.2 of the Credit Agreement.

(c)     The Secured Party may:

(i)     transfer all or any part of the Collateral into the name of the Secured Party or its nominee, with or without disclosing that such Collateral is subject to the Lien hereunder,

(ii)     notify the parties obligated on any of the Collateral to make payment to the Secured Party of any amount due or to become due thereunder,

(iii)     enforce collection of any of the Collateral by suit or otherwise, and surrender, release or exchange all or any part thereof, or compromise or extend or renew for any period (whether or not longer than the original period) any obligations of any nature of any party with respect thereto,

-17-

DEFENSE 017763

(iv)    endorse any checks, drafts, or other writings in the Grantor's name to allow collection of the Collateral,

(v)    take control of any proceeds of the Collateral, and

(vi)    execute (in the name, place and stead of the Grantor) endorsements, assignments, stock powers and other instruments of conveyance or transfer with respect to all or any of the Collateral.

SECTION 6.2.  Securities Laws.  If the Secured Party shall determine to exercise its right to sell all or any of the Collateral pursuant to Section 6.1, the Grantor agrees that, upon request of the Secured Party the Grantor will, at its own expense:

(a)    execute and deliver, and cause (or, with respect to any issuer which is not a Subsidiary of the Grantor, use its best efforts to cause) each issuer of the Collateral contemplated to be sold and the directors and officers thereof to execute and deliver, all such instruments and documents, and do or cause to be done all such other acts and things, as may be necessary or, in the reasonable opinion of the Secured Party, advisable to register such Collateral under the provisions of the Securities Act of 1933, as from time to time amended (the "Securities Act"), and cause the registration statement relating thereto to become effective and to remain effective for such period as prospectuses are required by law to be furnished, and to make all amendments and supplements thereto and to the related prospectus which, in the reasonable opinion of the Secured Party, are necessary or advisable, all in conformity with the requirements of the Securities Act and the rules and regulations of the SEC applicable thereto;

(b)    use its best efforts to exempt the Collateral under the state securities or "Blue Sky" laws and to obtain all necessary governmental approvals for the sale of the Collateral, as requested by the Secured Party;

(c)    cause (or, with respect to any issuer which is not a Subsidiary of the Grantor, use its best efforts to cause) each such issuer to make available to its security holders, as soon as practicable, an earnings statement that will satisfy the provisions of Section 11(a) of the Securities Act; and

(d)    do or cause to be done all such other acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

The Grantor further acknowledges the impossibility of ascertaining the amount of damages that would be suffered by the Secured Party by reason of the failure by the Grantor to perform any of the covenants contained in this Section and consequently agrees that, if the Grantor shall fail to perform any of such covenants, it shall pay, as liquidated damages and not as a penalty, an amount equal to the value (as determined by the Secured Party) of such Collateral on the date the Secured Party shall demand compliance with this Section.

SECTION 6.3.  Compliance with Restrictions.  The Grantor agrees that in any sale of any of the Collateral whenever a Specified Event shall have occurred and be continuing, the Secured

-18-

DEFENSE 017764

Party is hereby authorized to comply with any limitation or restriction in connection with such sale as it may be advised by counsel is necessary in order to avoid any violation of applicable law (including compliance with such procedures as may restrict the number of prospective bidders and purchasers, require that such prospective bidders and purchasers have certain qualifications, and restrict such prospective bidders and purchasers to Persons who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of such Collateral), or in order to obtain any required approval of the sale or of the purchaser by any Governmental Authority or official, and the Grantor further agrees that such compliance shall not result in such sale being considered or deemed not to have been made in a commercially reasonable manner, nor shall the Secured Party be liable nor accountable to the Grantor for any discount allowed by the reason of the fact that such Collateral is sold in compliance with any such limitation or restriction.

SECTION 6.4.   Protection of Collateral.  The Secured Party may from time to time, at its option, perform any act which the Grantor fails to perform after being requested in writing so to perform (it being understood that no such request need be given after the occurrence and during the continuance of a Specified Event) and the Secured Party may from time to time take any other action which the Secured Party reasonably deems necessary for the maintenance, preservation or protection of any of the Collateral or of its security interest therein.

ARTICLE VII
MISCELLANEOUS PROVISIONS

SECTION 7.1.   Loan Document.  This Security Agreement is a Loan Document executed pursuant to the Credit Agreement and shall (unless otherwise expressly indicated herein) be construed, administered and applied in accordance with the terms and provisions thereof, including Article IX thereof.

SECTION 7.2.   Binding on Successors, Transferees and Assigns; Assignment.  This Security Agreement shall remain in full force and effect until the Termination Date has occurred, shall be binding upon the Grantor and its successors, transferees and assigns and shall inure to the benefit of and be enforceable by the Secured Party and its successors, transferees and assigns; provided that the Grantor may not (unless otherwise permitted under the terms of the Credit Agreement) assign any of its obligations hereunder without the prior written consent of the Lender.

SECTION 7.3.   Amendments, etc.  No amendment to or waiver of any provision of this Security Agreement, nor consent to any departure by the Grantor from its obligations under this Security Agreement, shall in any event be effective unless the same shall be in writing and signed by the Secured Party and the Grantor and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 7.4.   Notices.  All notices and other communications provided for hereunder shall be in writing or by facsimile and addressed, delivered or transmitted to the appropriate party at the address or facsimile number of such party specified in the Credit Agreement or at such other address or facsimile number as may be designated by such party in a notice to the

-19-

DEFENSE 017765

other party.  Any notice or other communication, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any such notice or other communication, if transmitted by facsimile, shall be deemed given when transmitted and electronically confirmed.

SECTION 7.5.  <u>Release of Liens</u>.  Upon (a) the Disposition of Collateral in accordance with the Credit Agreement or (b) the occurrence of the Termination Date, the security interests granted herein shall automatically terminate with respect to (i) such Collateral (in the case of <u>clause (a)</u>) or (ii) all Collateral (in the case of <u>clause (b)</u>).  Upon any such Disposition or termination, the Secured Party will, at the Grantor's sole expense, deliver to the Grantor, without any representations, warranties or recourse of any kind whatsoever, all Collateral held by the Secured Party hereunder, and execute and deliver to the Grantor such documents as the Grantor shall reasonably request to evidence such termination.

SECTION 7.6.  <u>No Waiver; Remedies</u>.  In addition to, and not in limitation of <u>Section 2.4</u>, no failure on the part of the Secured Party to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

SECTION 7.7.  <u>Headings</u>.  The various headings of this Security Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Security Agreement or any provisions thereof.

SECTION 7.8.  <u>Severability</u>.  Any provision of this Security Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Security Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 7.9.  <u>Governing Law, Entire Agreement, etc.</u>  This Security Agreement and the rights and liabilities of the Grantor and the Secured Party shall be interpreted in accordance with the laws of the State of Delaware.  This Security Agreement and the other Loan Documents constitute the entire understanding among the parties hereto with respect to the subject matter hereof and thereof and supersede any prior agreements, written or oral, with respect thereto.

SECTION 7.10.  <u>Counterparts</u>.  This Security Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

DEFENSE 017766

IN WITNESS WHEREOF, each of the parties hereto has caused this Security Agreement to be duly executed and delivered by its Authorized Officer as of the date first above written.

VOICE MEDIA GROUP, INC.

By: _____

Name:    Scott Tobias
Title:    Chief Executive Officer and
         President

BROADWAY CAPITAL CORP., LLC

By: _____

Name:    James A. Larkin
Title:    President

[Signature Page to Borrower Pledge and Security Agreement]

DEFENSE 017767

IN WITNESS WHEREOF, each of the parties hereto has caused this Security Agreement to be duly executed and delivered by its Authorized Officer as of the date first above written.

VOICE MEDIA GROUP, INC.

By: _____
     Name:    Scott Tobias
     Title:    Chief Executive Officer and
              President

BROADWAY CAPITAL CORP., LLC

By: _____
     Name:    James A. Larkin
     Title:    President

[Signature Page to Borrower Pledge and Security Agreement]

DEFENSE 017768

SCHEDULE I
to Borrower Pledge and Security Agreement

| Issuer (Limited Liability Company) | % of Equity Interests Pledged | Type of Interests Pledged |
|---|---|---|
| New Times Media, LLC | 100% | Membership Interest |

SCHEDULE II
to Borrower Pledge and Security Agreement

Item A.        Location of the Grantor:

| 969 Broadway, Denver, CO 80203 |
|---|
|  |

Item B.        Filing locations last five years.

| Colorado |
|---|
|  |

Item C.        Trade names.

| None |
|---|
|  |

-22-

DEFENSE 017769

Item D.          Merger or other corporate reorganization.

| None |
| --- |
|  |

Item E.          Taxpayer ID number.

| 46-1434058 |
| --- |
|  |

Item F.  Government Contracts:

| None |
| --- |
|  |

Item G.  Deposit Accounts:

| Wells Fargo NA   Account Number 400097863 |
| --- |
|  |

9837760v.11

DEFENSE 017770

SCHEDULE III
to Borrower Pledge and Security Agreement

Item A.  <u>Patents</u>

None

Item B.  <u>Patent Licenses</u>

None

-24-

DEFENSE 017771

SCHEDULE IV
to Borrower Pledge and Security Agreement

Item A. Trademarks

Registered Trademarks

| Reg. Number | Word Mark | Class | Country |
|---|---|---|---|
| 3,849,743 | ARTOPIA(media) | 41 | United States |
| 3,293,467 | ARTOPIA(music) | 41 | United States |
| 3,194,211 | ASK A MEXICAN | 41 | United States |
| 3,194,098 | ASK A MEXICAN | 16 | United States |
| 2,893,333 | AUTOBUZZ | 16 | United States |
| 3,156,284 | BEST OF BROWARD /PALM BEACH | 35 | United States |
| 4,183,174 | BEST OF BROWARD PALM BEACH | 16,41 | United States |
| 4,175,661 | BEST OF DALLAS | 16,41 | United States |
| 2,098,988 | BEST OF DALLAS | 35 | United States |
| 2,098,909 | BEST OF DENVER | 35 | United States |
| 4,175,657 | BEST OF DENVER | 16,41 | United States |
| 2,102,832 | BEST OF HOUSTON | 35 | United States |
| 4,175,664 | BEST OF HOUSTON | 16,41 | United States |
| 2,094,511 | BEST OF MIAMI | 35 | United States |
| 4,175,658 | BEST OF MIAMI | 16,41 | United States |
| 3,479,806 | BEST OF NYC | 16,41 | United States |
| 2,652,951 | BEST OF NYC | 16,41 | United States |
| 2,098,989 | BEST OF PHOENIX | 35 | United States |
| 4,175,364 | BEST OF PHOENIX | 16,41 | United States |
| 2,441,835 | BEST OF ST. LOUIS | 35 | United States |
| 4,185,847 | BEST OF ST. LOUIS | 16,41 | United States |
| 2,688,355 | BEST OF THE TWIN CITIES | 16,41 | United States |
| 4,103,137 | BEST OF VOICE PLACES | 41 | United States |
| 3,538,437 | CHOICE EATS | 41 | United States |
| 2,100,968 | CITY PAGES | 16 | United States |
| 2,098,877 | CITY PAGES | 41 | United States |
| 2,263,300 | DALLAS OBSERVER | 16 | United States |
| 2,263,279 | DALLAS OBSERVER | 35,42 | United States |
| 3,431,850 | DE TOUR | 41 | United States |

-25-

DEFENSE 017772

| Reg. Number | Word Mark | Class | Country |
|---|---|---|---|
| 2,142,870 | EDGE | 16 | United States |
| 4,186,922 | GOLD STANDARD | 41 | United States |
| 2,299,837 | HOUSTON PRESS | 16 | United States |
| 2,866,808 | HOUSTONPRESS | 41 | United States |
| 2,142,064 | LA WEEKLY(STYLIZED) | 16 | United States |
| 1,650,744 | LA WEEKLY | 16 | United States |
| 3,379,111 | LA WEEKLY DE TOUR | 41 | United States |
| 4,253,029 | LA WEEKLY GOLD STANDARD | 43 | United States |
| 3,063,457 | MASTERMIND | 41 | United States |
| 2,604,312 | MENU OF MENUS | 16 | United States |
| 4,203,429 | MY VOICE NATION | 42 | United States |
| 2,843,226 | NIGHT & DAY | 16,41 | United States |
| 1,484,231 | NEW TIMES | 16 | United States |
| 1,994,330 | OBIE | 41 | United States |
| 3,720,869 | OC WEEKLY | 16 | United States |
| 2,091,356 | OC WEEKLY (STYLIZED) | 16 | United States |
| 2,616,804 | PAZZ AND JOP | 16 | United States |
| 3,642,675 | REVERB FEST | 41 | United States |
| 2,342,845 | RFT | 16 | United States |
| 2,288,067 | RFT | 35,42 | United States |
| 2,296,097 | RIVERFRONT TIMES | 16 | United States |
| 2,296,094 | RIVERFRONT TIMES | 35,42 | United States |
| 2823190 | SIREN MUSIC FESTIVAL | 41 | United States |
| 2248645 | THE EDGE | 41,42 | United States |
| 2,273,913 | THE VILLAGE VOICE | 42 | United States |
| 0,913,683 | THE VILLAGE VOICE (stylized) | 16 | United States |
| 1,987,845 | THE VILLAGE VOICE OBIES | 41 | United States |
| 3,176,378 | THE VILLAGE VOICE SIREN MUSIC FESTIVAL | 41 | United States |
| 3,085,730 | VILLAGE VOICE MEDIA | 16,42 | United States |
| 1,189,256 | VOICE | 16 | United States |
| 3,863,880 | VOICE MEDIA | 35 | United States |
| 2,549,872 | WESTWORD | 16 | United States |
| 2,188,169 | WESTWORD | 35,42 | United States |
| 2,370,285 | WLS | 16 | United States |

-26-

DEFENSE 017773

<u>Pending Trademark Applications</u>

| App. Number | Word Mark | Class | Country |
|---|---|---|---|
| 85666808 | 4KNOTS | 41 | United States |
| 85710943 | CHOICE STREETS | 41 | United States |
| 85542432 | MENU OF MENUS | 35 | United States |
| 85673791 | VOICE MEDIA GROUP | 16 | United States |
| 85673800 | VOICE MEDIA GROUP | 41 | United States |
| 85659073 | VOICE PLACES | 35 | United States |

Trademark Licenses (to the extent such licenses are able to be assigned):

Trademark License Agreement by and between SXSW, Inc. and Village Voice Media Holdings, LLC, dated as of August 31, 2009, re: license of certain SXSW trademarks.

Clearance Agreement by and between Village Voice Media Holdings, LLC and NBC Studios, LLC, undated, for three cover images of the Village Voice.

Domain Names:

| |
|---|
| 420outlets.com |
| 420shopping.com |
| altweeklyads.com |
| artopia2011.com |
| artopia2012.com |
| askawhitedude.com |
| battleoftheblack.com |
| best-of.com |
| bestofbigcity.com |
| bestofocweekly2012.com |
| bestofparty.com |
| bestofthebigcity.com |
| bestofthebigcity.info |
| bestofvillagevoice.com |
| bigcity.com |
| choice-eats.com |
| chronicledealoftheday.com |

-27-

DEFENSE 017774

| |
|---|
| chronic-ledealoftheday.com |
| cityofate.com |
| daildealscontest.com |
| dailydealscontest.com |
| dailydealsgiveaway.com |
| dailyfork.com |
| dailypulpblog.com |
| dailyweeklyblog.com |
| dobrewfest.com |
| docityofateevent.com |
| dodc9atnightevent.com |
| domixmasterevent.com |
| heartlessdoll.com |
| hpmusicawards.com |
| jesusoftheweek.com |
| jointhebattle.net |
| joystickdivision.com |
| myvoicenation.co.uk |
| myvoicenation.com |
| myvoicenation.net |
| myvoicenation.org |
| nationaladsales.net |
| newtimes.biz |
| newtimes.com |
| newtimes.info |
| newtimesbestof.com |
| newtimesjobs.com |
| newtimesmedia.com |
| newtimesmedia.info |
| newtimesmedia.net |
| newtimesmediallc.com |
| nightbrat.com |
| nudecelebritydeathsuv.com |
| reverbblog.com |
| rollingpaperdealoftheday.com |
| runninscared.com |
| sexyblackbook.com |
| shotinthedarkrsvp.com |
| sportatoriumblog.com |
| studiesincrap.com |
| thebestofphoenix.org |

9837760v.11

DEFENSE 017775

| |
|---|
| thecolumbinereader.com |
| thesmartasset.com |
| tokedailydeals.com |
| tokeofthetown.com |
| toplessrobot.com |
| toplessrobots.com |
| truecrimemag.com |
| truecrimereport.com |
| unbuttoned.com |
| urmomcalled.com |
| vddcontest.com |
| vddgiveaway.com |
| vddsweepstakes.com |
| villagevoicemedia.com |
| villagevoicemedia.net |
| villagevoicemedia.org |
| villagevoicemediagroup.com |
| villagevoicemediagroup.net |
| villagevoicemediaholdings.com |
| villagevoicemediajobs.com |
| voice.xxx |
| voicedailydeal.com |
| voicedailydeals.com |
| voicedailydealswinner.com |
| voicedealoftheday.com |
| voicedealsoftheday.com |
| voicefilm.com |
| voicelocalnetwork.com |
| voicemovies.com |
| voicemovies.net |
| voicemovies.org |
| voiceplaces.com |
| voiceplaces.net |
| voiceplaces.org |
| voiceplaces-insider.com |
| voraciousblog.com |
| vvm-auth.com |
| vvmedia.com |
| vvmedia.net |
| vvmedia.org |
| vvmhllc.com |

9837760v.11

DEFENSE 017776

| |
|---|
| vvmsecure.com |
| walshfiles.com |
| weedoutlets.com |
| wesawyoulastnight.com |

9837760v.11

DEFENSE 017777

SCHEDULE V
to Borrower Pledge and Security Agreement

Item A.  <u>Copyrights/Mask Works</u>

 None


Item B.  <u>Copyright/Mask Work Licenses</u>

None

DEFENSE 017778

SCHEDULE VI
to Borrower Pledge and Security Agreement

Trade Secret or Know-How Licenses

None

9837760v.11

DEFENSE 017779

EXHIBIT A
to Borrower Pledge and Security Agreement

## PATENT SECURITY AGREEMENT

This PATENT SECURITY AGREEMENT, dated as of January ___, 2013 (this "Agreement"), is made by VOICE MEDIA GROUP, INC., (the "Grantor"), in favor of BROADWAY CAPITAL CORP., LLC ( the "Secured Party").

W I T N E S S E T H :

WHEREAS, pursuant to the Credit Agreement, dated as of January __, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "Credit Agreement"), by and between the Grantor and the Secured Party, the Secured Party has extended Commitments to make Credit Extensions to the Grantor;

WHEREAS, in connection with the Credit Agreement, the Grantor has executed and delivered the  Borrower Pledge and Security Agreement, dated as of January __, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "Security Agreement");

WHEREAS, pursuant to the Credit Agreement and pursuant to clause (d) of Section 4.5 of the Security Agreement, the Grantor is required to execute and deliver this Agreement and to grant to the Secured Party a continuing security interest in all of the Patent Collateral (as defined below) to secure all Obligations; and

WHEREAS, the Grantor has duly authorized the execution, delivery and performance of this Agreement; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor agrees, for the benefit of the Secured Party, as follows:

SECTION 1.  Definitions.  Unless otherwise defined herein or the context otherwise requires, terms used in this Agreement, including its preamble and recitals, have the meanings provided in the Security Agreement.

SECTION 2.  Grant of Security Interest.  The Grantor hereby assigns, pledges, hypothecates, charges, mortgages, delivers, and transfers to the Secured Party, for its benefit and hereby grants to the Secured Party, for its benefit, a continuing security interest in all of the following property, whether now or hereafter existing or acquired by the Grantor (the "Patent Collateral"):

(a)  all of its letters patent and applications for letters patent throughout the world, including all patent applications in preparation for filing and each patent and patent application referred to in Item A of Schedule I attached hereto;

DEFENSE 017780

(b)  all reissues, divisions, continuations, continuations-in-part, extensions, renewals and reexaminations of any of the items described in clause (a);

(c)  all of its patent licenses, and other agreements providing the Grantor with the right to use any items of the type referred to in clauses (a) and (b) above, including each patent license referred to in Item B of Schedule I attached hereto; and

(d)  all proceeds of, and rights associated with, the foregoing (including license royalties and proceeds of infringement suits), the right to sue third parties for past, present or future infringements of any such patent or patent application, and for breach or enforcement of any patent license.

SECTION 3.  Security Agreement.  This Agreement has been executed and delivered by the Grantor for the purpose of registering the security interest of the Secured Party in the Patent Collateral with the United States Patent and Trademark Office and corresponding offices in other countries of the world.  The security interest granted hereby has been granted as a supplement to, and not in limitation of, the security interest granted to the Secured Party for its benefit under the Security Agreement.  The Security Agreement (and all rights and remedies of the Secured Party thereunder) shall remain in full force and effect in accordance with its terms.

SECTION 4.  Release of Liens.  Upon (i) the Disposition of Patent Collateral in accordance with the Credit Agreement or (ii) the occurrence of the Termination Date, the security interests granted herein shall automatically terminate with respect to (A) such Patent Collateral (in the case of clause (i)) or (B) all Patent Collateral (in the case of clause (ii)).  Upon any such Disposition or termination, the Secured Party will, at the Grantor's sole expense, deliver to the Grantor, without any representations, warranties or recourse of any kind whatsoever, all Patent Collateral held by the Secured Party hereunder, and execute and deliver to the Grantor such documents as the Grantor shall reasonably request to evidence such termination.

SECTION 5.  Acknowledgment.  The Grantor does hereby further acknowledge and affirm that the rights and remedies of the Secured Party with respect to the security interest in the Patent Collateral granted hereby are more fully set forth in the Security Agreement, the terms and provisions of which (including the remedies provided for therein) are incorporated by reference herein as if fully set forth herein.

SECTION 6.  Loan Document.  This Agreement is a Loan Document executed pursuant to the Credit Agreement and shall (unless otherwise expressly indicated herein) be construed, administered and applied in accordance with the terms and provisions thereof, including Article IX thereof.

SECTION 7.  Counterparts.  This Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

*    *    *    *    *

Exhibit A

-2-

DEFENSE 017781

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be duly executed and delivered by its Authorized Officer as of the date first above written.

VOICE MEDIA GROUP, INC.,

By:_____
      Name:    Scott Tobias
      Title:     Chief Executive Officer
                and President

Exhibit A

-3-

DEFENSE 017782

SCHEDULE I
to Patent Security Agreement

Item A.  <u>Patents</u>

<u>Issued Patents</u>

| <u>Country</u> | <u>Patent No</u>. | <u>Issue Date</u> | <u>Inventor(s)</u> | <u>Title</u> |
|---|---|---|---|---|

<u>Pending Patent Applications</u>

| <u>Country</u> | <u>Serial No.</u> | <u>Filing Date</u> | <u>Inventor(s)</u> | <u>Title</u> |
|---|---|---|---|---|

<u>Patent Applications in Preparation</u>

| <u>Country</u> | <u>Docket No.</u> | Expected<br><u>Filing Date</u> | <u>Inventor(s)</u> | <u>Title</u> |
|---|---|---|---|---|

Item B.  <u>Patent Licenses</u>

| Country or<br><u>Territory</u> | <u>Licensor</u> | <u>Licensee</u> | Effective<br><u>Date</u> | Expiration<br><u>Date</u> | Subject<br><u>Matter</u> |
|---|---|---|---|---|---|

<u>Exhibit A</u>

-4-

DEFENSE 017783

EXHIBIT B
to Borrower Pledge and Security Agreement

## TRADEMARK SECURITY AGREEMENT

This TRADEMARK SECURITY AGREEMENT, dated as of January ___, 2013 (this "Agreement"), is made by VOICE MEDIA GROUP, INC., (the "Grantor"), in favor of BROADWAY CAPITAL CORP., LLC  (the "Secured Party").

### W I T N E S S E T H :

WHEREAS, pursuant to the Credit Agreement, dated as of January ___, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "Credit Agreement"), between the Grantor and the Secured Party, the Secured Party has extended Commitments to make Credit Extensions to the Grantor;

WHEREAS, in connection with the Credit Agreement, the Grantor has executed and delivered the Borrower Pledge and Security Agreement, dated as of January ___, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "Security Agreement");

WHEREAS, pursuant to the Credit Agreement and pursuant to clause (d) of Section 4.5 of the Security Agreement, the Grantor is required to execute and deliver this Agreement and to grant to the Secured Party a continuing security interest in all of the Trademark Collateral (as defined below) to secure all Obligations; and

WHEREAS, the Grantor has duly authorized the execution, delivery and performance of this Agreement; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor agrees, for the benefit of each Secured Party, as follows:

SECTION 1.  Definitions. Unless otherwise defined herein or the context otherwise requires, terms used in this Agreement, including its preamble and recitals, have the meanings provided in the Security Agreement.

SECTION 2.  Grant of Security Interest.  The Grantor hereby assigns, pledges, hypothecates, charges, mortgages, delivers, and transfers to the Secured Party, for its benefit and hereby grants to the Secured Party, for its benefit, a continuing security interest in all of the following property, whether now or hereafter existing or acquired by the Grantor (the "Trademark Collateral"):

(a)  (i) all of its trademarks, trade names, corporate names, company names, business names, fictitious business names, trade styles, service marks, certification marks, collective marks, logos and other source or business identifiers, now existing or hereafter adopted or acquired including those referred to in Item A of Schedule I hereto,

DEFENSE 017784

whether currently in use or not, all registrations and recordings thereof and all applications in connection therewith, whether pending or in preparation for filing, including registrations, recordings and applications in the United States Patent and Trademark Office or in any office or agency of the United States of America or any State thereof or any other country or political subdivision thereof or otherwise, and all common-law rights relating to the foregoing, and (ii) the right to obtain all reissues, extensions or renewals of the foregoing (collectively referred to as the "Trademark");

(b)  all Trademark licenses for the grant by or to the Grantor of any right to use any Trademark, including each Trademark license referred to in Item B of Schedule I hereto;

(c)  all of the goodwill of the business connected with the use of, and symbolized by the items described in, clause (a), and to the extent applicable clause (b);

(d)  the right to sue third parties for past, present and future infringements of any Trademark Collateral described in clause (a) and, to the extent applicable, clause (b); and

(e)  all proceeds of, and rights associated with, the foregoing, including any claim by the Grantor against third parties for past, present or future infringement or dilution of any Trademark, Trademark registration or Trademark license, or for any injury to the goodwill associated with the use of any such Trademark or for breach or enforcement of any Trademark license and all rights corresponding thereto throughout the world.

SECTION 3.  Security Agreement.  This Agreement has been executed and delivered by the Grantor for the purpose of registering the security interest of the Secured Party in the Trademark Collateral with the United States Patent and Trademark Office and corresponding offices in other countries of the world.  The security interest granted hereby has been granted as a supplement to, and not in limitation of, the security interest granted to the Secured Party for its benefit under the Security Agreement.  The Security Agreement and all rights and remedies of the Secured Party thereunder shall remain in full force and effect in accordance with its terms.

SECTION 4.  Release of Liens.  Upon (i) the Disposition of Trademark Collateral in accordance with the Credit Agreement or (ii) the occurrence of the Termination Date, the security interests granted herein shall automatically terminate with respect to (A) such Trademark Collateral (in the case of clause (i)) or (B) all Trademark Collateral (in the case of clause (ii)).  Upon any such Disposition or termination, the Secured Party will, at the Grantor's sole expense, deliver to the Grantor, without any representations, warranties or recourse of any kind whatsoever, all Trademark Collateral held by the Secured Party hereunder, and execute and deliver to the Grantor such documents as the Grantor shall reasonably request to evidence such termination.

SECTION 5.  Acknowledgment.  The Grantor does hereby further acknowledge and affirm that the rights and remedies of the Secured Party with respect to the security interest in the Trademark Collateral granted hereby are more fully set forth in the Security Agreement, the terms and provisions of which (including the remedies provided for therein) are incorporated by reference herein as if fully set forth herein.

Exhibit C
-2-

DEFENSE 017785

SECTION 6.  <u>Loan Document</u>.  This Agreement is a Loan Document executed pursuant to the Credit Agreement and shall (unless otherwise expressly indicated herein) be construed, administered and applied in accordance with the terms and provisions thereof, including Article IX thereof.

SECTION 7.  <u>Counterparts</u>.  This Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

\*     \*     \*     \*     \*

<u>Exhibit C</u>

-3-

DEFENSE 017786

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be duly executed and delivered by Authorized Officer as of the date first above written.

VOICE MEDIA GROUP, INC.,


By:_____
     Name:    Scott Tobias
     Title:     Chief Executive Officer
                 and President

Exhibit C

-4-

DEFENSE 017787

SCHEDULE I
to Trademark Security Agreement

Item A.  <u>Trademarks</u>

<u>Registered Trademarks</u>

<u>Pending Trademark Applications</u>

<u>Exhibit C</u>
-5-

DEFENSE 017788

EXHIBIT C
to Borrower Pledge and Security Agreement

<u>COPYRIGHT SECURITY AGREEMENT</u>

This COPYRIGHT SECURITY AGREEMENT, dated as of January _____, 2013 (this "<u>Agreement</u>"), is made by VOICE MEDIA GROUP, INC.,   (the "<u>Grantor</u>"), in favor of BROADWAY CAPITAL CORP., LLC   (the "<u>Secured Party</u>").

<u>W I T N E S S E T H</u> :

WHEREAS, pursuant to the Credit Agreement, dated as of January___, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "<u>Credit Agreement</u>"), between the Grantor and the Secured Party, the Secured Party has extended Commitments to make Credit Extensions to the Grantor;

WHEREAS, in connection with the Credit Agreement, the Grantor has executed and delivered the Borrower Pledge and Security Agreement, dated as of January _____ 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "<u>Security Agreement</u>");

WHEREAS, pursuant to the Credit Agreement and pursuant to clause (d) of Section 4.5 of the Security Agreement, the Grantor is required to execute and deliver this Agreement and to grant to the Secured Party a continuing security interest in all of the Copyright Collateral (as defined below) to secure all Obligations; and

WHEREAS, the Grantor has duly authorized the execution, delivery and performance of this Agreement; and

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor agrees, for the benefit of the Secured Party, as follows:

SECTION 8.  <u>Definitions</u>. Unless otherwise defined herein or the context otherwise requires, terms used in this Agreement, including its preamble and recitals, have the meanings provided in the Security Agreement.

SECTION 9.  <u>Grant of Security Interest</u>.  The Grantor hereby assigns, pledges, hypothecates, charges, mortgages, delivers, and transfers to the Secured Party, for its benefit , and hereby grants to the Secured Party, for its a continuing security interest in all of the following (the "<u>Copyright Collateral</u>"), whether now or hereafter existing or acquired by the Grantor:  all copyrights of the Grantor, whether statutory or common law, registered or unregistered and whether published or unpublished, now or hereafter in force throughout the world including all of the Grantor's right, title and interest in and to all copyrights registered in the United States Copyright Office or anywhere else in the world and also including the

Exhibit C

-6-

DEFENSE 017789

copyrights referred to in <u>Item A</u> of <u>Schedule I</u> hereto, and registrations and recordings thereof and all applications for registration thereof, whether pending or in preparation, all copyright licenses, including each copyright license referred to in <u>Item B</u> of <u>Schedule I</u> hereto, the right to sue for past, present and future infringements of any of the foregoing, all rights corresponding thereto, all extensions and renewals of any thereof and all proceeds of the foregoing, including licenses, royalties, income, payments, claims, damages and proceeds of suit.

SECTION 10.  <u>Security Agreement</u>.  This Agreement has been executed and delivered by the Grantor for the purpose of registering the security interest of the Secured Party in the Copyright Collateral with the United States Copyright Office and corresponding offices in other countries of the world.  The security interest granted hereby has been granted as a supplement to, and not in limitation of, the security interest granted to the Secured Party for its benefit under the Security Agreement.  The Security Agreement and all rights and remedies of the Secured Party thereunder shall remain in full force and effect in accordance with its terms.

SECTION 11.  <u>Release of Liens</u>.  Upon (i) the Disposition of Copyright Collateral in accordance with the Credit Agreement or (ii) the occurrence of the Termination Date, the security interests granted herein shall automatically terminate with respect to (A) such Copyright Collateral (in the case of <u>clause (i)</u>) or (B) all Copyright Collateral (in the case of <u>clause (ii)</u>).  Upon any such Disposition or termination, the Secured Party will, at the Grantor's sole expense, deliver to the Grantor, without any representations, warranties or recourse of any kind whatsoever, all Copyright Collateral held by the Secured Party hereunder, and execute and deliver to the Grantor such documents as the Grantor shall reasonably request to evidence such termination.

SECTION 12.  <u>Acknowledgment</u>.  The Grantor does hereby further acknowledge and affirm that the rights and remedies of the Secured Party with respect to the security interest in the Copyright Collateral granted hereby are more fully set forth in the Security Agreement, the terms and provisions of which (including the remedies provided for therein) are incorporated by reference herein as if fully set forth herein.

SECTION 13.  <u>Loan Document</u>.  This Agreement is a Loan Document executed pursuant to the Credit Agreement and shall (unless otherwise expressly indicated herein) be construed, administered and applied in accordance with the terms and provisions thereof, including Article IX thereof.

SECTION 14.  <u>Counterparts</u>.  This Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

*   *   *   *   *

<u>Exhibit C</u>
-7-

DEFENSE 017790

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be duly executed and delivered by its Authorized Officer as of the date first above written.

VOICE MEDIA GROUP, LLC

By:_____

    Name:     Scott Tobias
    Title:      Chief Executive Officer
              and President

Exhibit C
-8-

DEFENSE 017791

SCHEDULE I
to Copyright Security Agreement

Item A.  Copyrights/Mask Works

### Registered Copyrights/Mask Works

| Country | Registration No. | Registration Date | Author(s) | Title |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |

### Copyright/Mask Work Pending Registration Applications

| Country | Serial No. | Filing Date | Author(s) | Title |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |

### Copyright/Mask Work Registration Applications in Preparation

| Country | Docket No. | Expected Filing Date | Author(s) | Title |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |

Item B.  Copyright/Mask Work Licenses

| Country or Territory | Licensor | Licensee | Effective Date | Expiration Date |
| --- | --- | --- | --- | --- |
|  |  |  |  |  |

Exhibit C
-9-

DEFENSE 017792