# Exhibit K




October 15, 2021

By E-Mail
CACD Acting USA Tracy Wilkison
CACD Criminal Chief Scott Garringer
CACD Asset Forfeiture Chief Jon Galatzan
CACD AUSA Dan Boyle
AZ Acting USA Glenn McCormick
AZ Criminal Chief Heather Sechrist
AZ AUSAs Kevin Rapp, Andy Stone, Peggy Perlmeter, Peter Kozinets
MLAR Chief Deborah Connor
DOJ Attorney Reggie Jones

Re: Government Seizures in *United States of America v. $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona Account 1889, et al.*, 18-CV-8420-RGK, and with Other Warrants

Dear Government Counsel:

We are writing at the direction of CACD AUSA Dan Boyle. We have previously communicated most of the below to him, and he advised that the government will not release any funds and will not afford us a meeting to escalate the issue. He indicated that we could "appeal" his decision by this letter.

Given the recent mistrial in the Arizona criminal case *United States v. Lacey, et al.*, 18-CR-00422-PHX-SMB, and the multitude of issues the mistrial raises, including the need for additional litigation and a potential re-trial, we request that CACD USAO return at least some of the hundreds of millions of dollars in assets it has seized so that our clients can continue to be represented by their counsel of choice. Retained counsel have exhausted their retainers, and our clients now face the prospect of another trial.

To be clear, we believe our clients are legally entitled to the return of all seized assets, but are now focusing on four categories for purposes of this conversation. These four categories include (1) attorney retainer funds, totaling nearly $16 million, (2) assets owed to Defendants even assuming *arguendo* that CACD USAO's position in 18cv8420 regarding "adult" ads is accurate, (3) print newspaper proceeds entirely disconnected from Backpage.com, and (4) foreign-sourced loan payments, reimbursements, and the like made in connection with the sale of the Backpage business in 2015, as required under the sale documents.






As to the first category (attorney retainer funds), we seek return of:

| CASE NO. | SEIZED FROM | AMOUNT FROM SEIZURE WARRANT[1] |
|---|---|---|
| 18mj02031 | Davis Wright Tremaine | 3,713,121.03 |
| 18mj02872 | Rusing Lopez & Lizardi PLLC | 5,279,173.07 |
| 18mj02874 | Perkins Coie LLP | 2,167,704.86 |
| 18mj02030 | Becker & House PLLC | 2,412,785.47 |
| 18mj02875 | Piccarreta Davis Keenan Fidel PC | 10,000.00 |
| 18mj02876 | Piccarreta Davis Keenan Fidel PC | 740,000.00 |
| 18mj02883 | Mitchell Stein Carey Chapman PC | 100,000.00 |
| 18mj02883 | Mitchell Stein Carey Chapman PC | 100,000.00 |
| 18mj02878 | Karp & Weiss PC | 250,000.00 |
| 18mj02873 | Copeland Franco Screws & Gill | 100,000.00 |
| 18mj02880 | Prince Lobel Tye LLP | 100,000.00 |
| 18mj02874 | Thompson Coburn LLP | 100,000.00 |
| 18mj02875 | Walters Law Group | 100,000.00 |
| 18mj02875 | Wayne B Giampietro LLC | 100,000.00 |

These seizures are an affront to the Sixth Amendment and have severely handicapped our ability to defend the criminal case in the District of Arizona. The government cannot reasonably continue to hold all of these seized attorney funds pretrial given the mistrial and prospect of another three-month trial.

These seizures are also problematic because, although the government has held or controlled these funds for years, the government has not traced most of these attorney funds to demonstrate that the government has the right to hold this money, pretrial, as criminal proceeds indefinitely, while the various criminal and civil cases brought by the government proceed.

At best, the government's execution of these seizures was unseemly. Mitchell Stein Carey Chapman PC, for example, wired funds to the government to comply with this subpoena on November 13, 2018 at 1:34pm PT. The Court in CACD then issued a stay order nine minutes later at 1:43pm PT. When Mitchell Stein Carey Chapman PC then tried to recall the funds at 2:00pm PT that day, CACD USAO refused to permit the recall despite the Court's stay order.

Further, as to most of the attorney funds, the seizures are also impermissible as CACD USAO has never filed a sworn, verified complaint supporting its belief that it can seize these funds in the nearly three years and counting that the government has held these attorney funds. In fact, a large part of the retainers came from overseas operations or overseas loan payments, or were insurance proceeds, and the government cannot proffer a valid basis for their pretrial seizure or restraint. Accordingly, we seek the return of all attorney funds.

---

[1] This table only identifies the amounts sought in the seizure warrants. The amounts actually seized or restrained varied from the amounts in the warrants, and we seek the return of whatever was seized or is being formally or informally restrained by the government.






As to the second category (assets owed to Defendants even assuming *arguendo* that CACD USAO's position in 18cv8420 regarding "adult" ads is accurate), we seek the return of at least $13,633,946.20. CACD USAO has argued that "more than 90 percent of Backpage's revenue" "[b]etween 2004 and April 2018" came from Backpage.com's "adult category," which CACD USAO contends generated criminal proceeds subject to forfeiture. *See* 18cv8420 at Dkt. 108, First Amended Consolidated Master Verified Complaint ("FAC"), at paragraph 107. As an initial matter, we do not believe the government has a basis to seize any of these funds. It appears that the government's position is that all "adult" ads on Backpage.com were for prostitution. But the government has never proven (and cannot prove) that this was the case (or that these funds are otherwise subject to forfeiture). Indeed, California DOJ Agent Brian Fichtner, the government's one witness at trial who testified about the website, admitted: (a) he knows of no arrests based solely on a Backpage ad; (b) he himself could not tell if any of the ads he reviewed were for prostitution, because none of the ads contained sex for money language; and (c) the "sting ad" he posted (which, on its face, did not propose a transaction that would constitute prostitution) was taken down immediately after his request that Backpage do so. Indeed, of the 50 ads charged in the indictment, only one was a sex for money ad on its face (and the fact that the government could find just one sex for money ad among the many millions of adult ads posted to Backpage.com speaks volumes).[2]

All that said, for purposes of this discussion, we are seeking that to which the government has no right to seize even under its own theory. The government has seized at least $136,339,462.65 in liquid assets, and the true value of the total assets seized is likely much higher.[3] Accordingly, we

---

[2] It is clear that the government itself recognizes these significant issues. In the aftermath of the mistrial, there has been widespread reporting about government legal memos generated in connection with a prior investigation of Backpage, memos that the government produced and then clawed back in the Arizona case. As you know, that investigation covered the same time period that much of the indictment here covers, and resulted in a decision not to prosecute Backpage. One news outlet reported that, "[i]n memos published by Reason, two assistant U.S. attorneys for the Western District of Washington wrote that Backpage was 'remarkably responsive to law enforcement requests and often takes proactive steps to assist in investigations,' and FBI Agent Steve Vienneau called the company 'very cooperative at removing these advertisements at law enforcement's request.'" *See* *https://www.vice.com/en/article/5dbvdb/mistrial-backpage-case-lacey-larkin*. Another news outlet reported that, in connection with the W.D.W.A. investigation, the government "reviewed more than 100,000 documents and interviewed more than a dozen witnesses . . . but failed to find a smoking gun," noting that the memos stated, "'[i]t was also anticipated that we would find numerous instances where Backpage learned that a site user was a juvenile prostitute and Backpage callously continued to post advertisements for her. To date, the investigation has revealed neither.'" *See* *https://www.thedailybeast.com/backpagecom-founders-michael-lacey-and-james-larkin-go-on-trial-over-sex-worker-ads*.

[3] That is because (a) this amount does not include the numerous real properties the government has seized, (b) most assets have appreciated since the seizures, and (c) we lack the exact amount seized, as the government has not identified the amount seized in certain instances, alleging only that it has seized "any and all funds in the account;" these seizures are thus unaccounted for in this total.






request the return of the 10% the government admits it has no right to restrain (funds tied to non-adult ads, *i.e.*, classified ads for cars, rentals, jobs, etc.), which conservatively is at least $13,633,946.20.

As to the third category, the $407,686.14 seized in 18mj1863 (*see* FAC at ¶ 99) from Cereus Properties LLC's VMG (Voice Media Group) Depository account at Compass Bank (Account No. '4862) are proceeds of the 2013 seller-financed sale of print newspaper businesses to VMG and have no relation whatsoever to Backpage.com. The proceeds of that sale are in a depository account, proceeds that were maintained separate and apart from any Backpage-related proceeds. We seek the return of this account because these assets are exclusively print newspaper proceeds. CACD USAO previously recognized this fact, when it returned funds from to James Larkin from his Republic Bank of Arizona Account '1938. CACD USAO returned these funds because Mr. Larkin's account contained only disbursements from the Compass Bank Account '4682, and the government acknowledged that the Compass Bank Account '4682 contained exclusively print newspaper proceeds. Under this same theory, we seek the return of at least $407,686.14 seized from Account '4862. The government is incorrect to assert that this account was a "pass-through" account used as part of an alleged money laundering scheme – all of the transactions identified by the government (amounting to $944,729.25) were *loan payments* made by VMG to our clients in connection with the seller-financed sale of the newspapers, rent for an office building sublease, and related items.[4]

Finally, as the government is aware, in connection with the 2015 seller-financed sale of the Backpage business by our clients to Carl Ferrer, (a) the business was sold to two separate entities, which respectively held Backpage's domestic and foreign operations; (b) there were two separate loans made to these entities, and the corresponding note payments to our clients were made separately by each entity; (c) Backpage's foreign operations concerned foreign advertising; and (d) these facts are documented in contemporaneous accounting documents and sale and loan contracts. The loan payments on the note tied to foreign operations and foreign advertisements, representing over 40% of the overall loan payments, are presumptively legal. Neither the seizure affidavits nor the forfeiture complaints acknowledge these key facts. At a minimum, these funds, which can readily be traced and cannot reasonably be characterized as money laundering proceeds, should be released.

We appreciate your prompt consideration of this critical issue, and we would like to meet to discuss a reasonable resolution either in person or via Zoom no later than October 21, 2021.

---

[4] Also under the same theory that print newspaper proceeds disconnected from Backpage.com should be returned, Michael Lacey seeks the release of the rest of the funds at issue in his Motion for Release (*In re Any and All Funds Held in Republic Bank of Arizona Accts. x1889*, 18-cv-6742 Docs. 22-24). The funds in this account are also solely newspaper proceeds and should be released in their entirety. Indeed, as CACD USAO has recognized, assets procured with newspaper money should not be subject to pretrial seizure.





Very truly yours,

BIENERT KATZMAN LITTRELL WILLIAMS LLP
Thomas H. Bienert, Jr.
Whitney Z. Bernstein
Counsel for James Larkin

cc: BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW PC
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Counsel for John Brunst

PROSKAUER ROSE LLP
Seetha Ramachandran
Asset Forfeiture Counsel for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
Paul J. Cambria, Jr.
Erin McCampbell Paris
Counsel for Michael Lacey

FEDER LAW OFFICE PA
Bruce Feder
Counsel for Scott Spear

DANIEL J. QUIGLEY, PLC
Daniel J. Quigley
Counsel for Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC