Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bklwlaw.com
wbernstein@bklwlaw.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' REPLY PURSUANT TO DKT. 1379** |
| vs. | |
| Michael Lacey, *et al.*, | (Oral argument requested) |
| Defendants. | |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

I.   **BACKGROUND**

Defendants Lacey, Larkin, Spear, and Brunst formerly owned and published 17 weekly newspapers across the country, including the *Phoenix New Times,* San Francisco's *SF Weekly*, and New York City's *Village Voice*, under the corporate name Village Voice Media Holdings, LLC ("VVMH"). VVMH, through a subsidiary, also formerly owned Backpage.com. Defendants Padilla and Vaught formerly were employed by Backpage.com.

Backpage.com was an online classified advertising service where users could post classified ads in many categories, including local places, buy/sell/trade, automotive, rentals, real estate, jobs, dating, and services. *See Backpage.com, LLC v. Cooper*, 939 F.Supp. 2d 805, 813 (M.D. Tenn. 2013). Third-party users posted millions of ads every month, making Backpage.com the second-largest online classified ad service after Craigslist. *See Backpage.com, LLC v. McKenna*, 881 F.Supp. 2d 1262, 1266 (W.D. Wash. 2012). Backpage.com included a category for "adult" services, *e.g.*, strippers and escort services, but closed that category in January 2017 following years of pressure from the government, including a campaign the Seventh Circuit called an unconstitutional effort to "crush Backpage." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (Posner, J.). Over the years, Backpage.com hosted hundreds of millions of classified ads, including many *millions* of lawful adult-oriented ads.

Defendants were indicted on March 28, 2018, on charges of facilitating business enterprises involved in prostitution offenses under the Travel Act (18 U.S.C. § 1952), money laundering (18 U.S.C. §§ 1956 and 1957), and conspiracy to commit those offenses (18 U.S.C §§ 371 and 1956). All charges are premised on Backpage.com's publication of adult-oriented classified ads posted to the site by third-party users. At its core, the government seeks to hold Defendants criminally responsible for 50 specific classified ads posted to Backpage.com by third-party users in the dating, massage, or escort categories. Forty-nine of the fifty ads proposed facially lawful transactions. Backpage.com *never* allowed ads proposing sex for money transactions and used both automated tools and human moderators to try to delete all such ads. Through its conspiracy charge, the government seeks to hold Defendants responsible for Backpage.com's publication of the 50 charged ads, even if they knew nothing of the ads and had nothing to do with publishing them.

This case originally was assigned to Judge Logan, who recused unexpectedly on March 1, 2019, nearly a year into the case. The case then was reassigned to Judge Rayes, who recused on March 4, 2019. The case then was reassigned to Judge Brnovich on March 4, 2019. Judge Brnovich said she "reviewed the case for any possible issue for recusal and found none" when it initially was assigned to her (Dkt. 1076, p. 6). Judge Brnovich denied Defendants' subsequent recusal motion (Dkt. 1075),[1] but then, just over a year later and after two weeks of trial, recused unexpectedly after declaring a mistrial based on government misconduct. (Dkts. 1367, 1308.)

## II.   PERTINENT LAW

Our system of law "must satisfy the appearance of justice." *In re Murchison*, 349 U.S. 133, 136 (1955). "Any question of a judge's partiality threatens the purity of the judicial process and its institutions." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980). "An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909 (2016). *See also Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 167 (3d Cir. 1993) ("impartiality and the appearance of impartiality in a judicial officer are the *sine quo non* of the American legal system" (quotations and citations omitted)).

A judge must recuse "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. §455(a). The standard is objective: whether "a reasonable person *with knowledge of the facts* would conclude that the judge's impartiality might reasonably be questioned." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) (emphasis added); *accord Potashnick*, 609 F.2d at 1111. Section 455(a) does not require "the reality of bias or prejudice but its appearance." *Liteky v. U.S.*, 510 U.S. 540, 548 (1994).[2] "Because 28 U.S.C. §455(a) focuses

---

[1] Defendants sought a writ of mandamus from the Ninth Circuit, but that court held that Judge Brnovich's denial of the motion for recusal was not "clear error."

[2] The government mischaracterizes *Liteky*, which did not hold that recusal only is warranted if "the judge's bias or prejudice reflects an obvious inability to fairly preside." (Dkt. 1382, p. 3.) Defendants have not suggested that the Court is biased or prejudiced, nor must a court be either biased or prejudiced to be obligated to recuse under 28 U.S.C. §455(a). Recusal is required if the court's "impartiality might reasonably be questioned," even in the absence of any actual bias or

2

on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how [her] participation in a given case looks to the average person on the street"—assuming that person had the full facts underlying recusal. *Potashnick*, 609 F.2d at 1111.

This objective standard may result in disqualification where a judge is not actually biased, but "the appearance of partiality is as dangerous as the fact of it." *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980). "The very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 865 (1988). "The general standard of section 455(a) was designed to promote the public's confidence in the impartiality and integrity of the judicial process by saying, in effect, that if any reasonable factual basis for doubting the judge's impartiality exists, the judge 'shall' disqualify [herself] and let another judge preside." *Potashnick*, 609 F.2d at 1111.

"The self-executing section 455 is to be instigated sua sponte by the judge when it is determined to be appropriate. . . . The judge is to take into consideration all the circumstances both those in public and hidden view and determine if a reasonable, uninvolved observer would determine that the judge's partiality might be questioned. In making such an assessment, it is clear that the judge is not limited to those facts presented by the challenging party." *Idaho v. Freeman*, 507 F. Supp. 706, 722-23 (D. Idaho 1981). It "requires a judge to exercise [her] discretion in favor of disqualification if [she] has any question about the propriety of [her] sitting in a particular case." *Potashnick*, 609 F.2d at 1111. Section 455 "clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify [herself] in a questionable case"[3] and "any inconvenience which does arise is more than outweighed by the need to protect the dignity and integrity of the judicial process." *Id.* "[A]ny doubts must be resolved in favor of recusal." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014); *accord U.S. v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) ("If it is a close case, the balance tips in favor of recusal.").

---

prejudice. *Liteky v. United States.*, 510 U.S. at 548.

[3] Caution is particularly appropriate in a case where *two* other judges recused unexpectedly, each after presiding for a lengthy time.

## III. ARGUMENT

### A. Defendants did not move for recusal and have no burden.

Defendants object to the Court recasting their Motion for a Status Conference (Dkt. 1378) as a motion for recusal. Defendants did not move for recusal, but instead requested a status conference to address certain facts that might not be apparent to the Court and that might raise the issue of whether the Court's impartiality could reasonably be questioned. Counsel were obligated to bring these facts to the Court's attention, particularly given two prior *sua sponte* recusals by judges who each had presided over the case for lengthy periods. *See In re Bernard*, 31 F.3d 842, 847 (9th Cir. 1994) ("Counsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his client to raise the matter, but an independent responsibility as an officer of the court. Judges are not omniscient and, despite all safeguards, may overlook a conflict of interest. A lawyer who reasonably believes that the judge before whom he is appearing should not sit must raise the issue so it may be confronted and put to rest. Any other course would risk undermining public confidence in our judicial system.").

Under 28 U.S.C. §455(a), the Court is obligated to assess whether a reasonable, uninvolved observer would determine that its partiality might be questioned, considering both the totality of the circumstances in public view, as well as those only known to the Court. *Freeman*, 507 F. Supp. at 722-23. As addressed in more detail below, Defendants believe certain publicly available information about the Court's relationships with Senator and Ambassador McCain and The McCain Institute warrant the Court assessing whether recusal under Section 455(a) is required.

The government argues that Defendants failed to present a factual basis or to make a legal argument justifying recusal. *See, e.g.*, Dkt. 1382 at 3 ("Here, Defendants do not argue that any of the specific grounds for recusal apply."); *id.* at 4 ("As an initial matter, there are no details provided."); *id.* ("Defendants also make a conclusory allegation . . ."). That is true, but it also is irrelevant because Defendants did not move for recusal. Defendants promptly brought to the Court's attention certain facts from the public record that might raise issues regarding the appearance of partiality, as Defendants were obligated to do.

Defendants are not currently in a position to assess whether 28 U.S.C. §455 requires recusal,

as they only know that the Court has had long-standing relationships with certain parties who are inextricably intertwined with this complex case. While some publicly available information suggests that the nature and depth of those relationships was such that recusal may be required, Defendants cannot fairly assess those issues without more information about those relationships. That information is known to the Court, but not to Defendants, which is why Defendants undertook the preliminary step of requesting a status conference. If any of those relationships might require recusal, the Court is obligated to inform the parties. *Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 750 (7th Cir. 2015) ("[A] party does not have an obligation to discover any potentially disqualifying information that is in the public record. The onus is on the judge to ensure any potentially disqualifying information is brought to the attention of the litigants. It would be unreasonable, unrealistic and detrimental to our judicial system to expect litigants to investigate every potentially disqualifying piece of information about every judge before whom they appear. [L]itigants (and, of course, their attorneys) should assume the impartiality of the presiding judge, rather than pore through the judge's private affairs and financial matters." (citations omitted)).

### B. There has been substantial resentment and animosity, if not hatred, among Senator McCain, Ambassador McCain, and The McCain Institute and Defendants Lacey and Larkin.

For more than 40 years, Defendants Lacey and Larkin owned the Phoenix New Times (PNT), which published hundreds of articles, commentaries, and blog posts critical of Senator McCain, starting with his election to the U.S. Congress in 1982 and continuing through his career in the Senate and his runs for President, as well as articles and commentaries critical of Ambassador McCain. That reporting included, for example: a withering 1989 assessment of Senator McCain's involvement in the Keating Five scandal ("McCain: The Most Reprehensible of the Keating Five"[4]); a blistering 1994 account of Ambassador McCain's opiate addiction and her theft of opioids from a medical charity she ran ("Opiate for the Mrs."[5]); and a comprehensive 2000 cover story detailing how Senator McCain's political successes were tied to the fortune of Ambassador

---

[4] https://www.phoenixnewtimes.com/news/mccain-the-most-reprehensible-of-the-keating-five-6431838.
[5] https://www.phoenixnewtimes.com/news/opiate-for-the-mrs-6432986.

McCain's father, Jim Hensley, a convicted felon who obtained his lucrative beer distributorship from infamous organized crime figure Kemper Marley ("Haunted by Spirits"[6]).  Lacey and Larkin sold PNT in 2012, but continue to publish articles and editorials critical of Senator McCain, Ambassador McCain, and The McCain Institute.

In return, Senator McCain, Ambassador McCain, and The McCain Institute have repeatedly accused Defendants Lacey and Larkin and Backpage.com of intentionally facilitating sex trafficking and also funded research targeting Backpage.com and seeking to show it facilitated sex trafficking. For example, in an amicus brief Ambassador McCain filed with the United States Supreme Court in 2016, she accused Backpage.com of intentionally facilitating sex trafficking:

> "Cindy Hensley McCain serves . . . on The McCain Institute's Human Trafficking Advisory Council. She is dedicated to efforts to reduce human trafficking in Arizona and the United States, and works to improve the lives of victims of human trafficking. Through her work with The McCain Institute, she has formed critical partnerships with anti-trafficking organizations to combat online sex trafficking. Mrs. McCain is an outspoken advocate for victims bought and sold on Backpage.com. . . . [T]he First Circuit granted Backpage immunity under Section 230 for ***deliberately facilitating the sex trafficking of the Petitioners when they were children. . . . The fact that websites like Backpage have been permitted to facilitate criminal activity with impunity*** creates a grave risk of harm to the public."

Amici Curiae Brief, *Jane Doe No. 1, et al. v. Backpage.com, LLC, et al.*, Supreme Court of the United States, Case No. 16-276, October 27, 2016, pp. 2, 7, 21 (emphasis added).

In 2017, Senator McCain accused Backpage of facilitating sex trafficking and prostitution:

> "We all know that Backpage.com is the ***market leader in commercial sex advertising***, and the website has been linked to hundreds of human trafficking cases.... ***I would like to thank the parents on our second panel who are here today to discuss the real-life horrors that they experienced when their own daughters fell victim to sex trafficking because of Backpage's illegal facilitation of prostitution and child sex trafficking***. Your bravery, your strength, and your love for your daughters and other victims is essential in fighting this evil. We all thank you. I would also like to thank my wife, Cindy, for her uncompromising and tireless efforts to prevent human trafficking and aid those who have fallen victim to this unimaginable crime."

Statement of Senator McCain, Hearing before the Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, Jan. 10, 2017, p. 8 (emphasis added).[7]  The parents whom Senator McCain thanked for testifying before Congress will be

---

[6] https://www.phoenixnewtimes.com/news/haunted-by-spirits-6438434.
[7] Later in that hearing, Senator Heitkamp said: "No one from the McCain Institute is giving up;

government trial witnesses in this case, as will one of the children (who now is an adult).

In 2017, The McCain Institute and Ambassador McCain accused Backpage of the same:

> "The McCain Institute is pleased to share the report of the Senate Permanent Subcommittee on Investigations entitled: Backpage.com's Knowing Facilitation of Online Sex Trafficking.[8] It is the culmination of almost two years of investigation and highlights the reprehensible practice of advertising and selling children online for sex by backpage.com. Hiding behind the Communications Decency Act, ***backpage.com*** has caused immeasurable harm, ruined lives, and destroyed families, while profiting handsomely. By using "strip terms from ad" filters, they ***knowingly advertised underage victims for sale for sex. Mrs. McCain and the McCain Institute have diligently focused attention on the need to shut down backpage.com's facilitation of sex trafficking*** and are pleased that the attached report and January 10, 2017, Senate hearing have succeeded."

The McCain Institute website, January 10, 2017.[9] The PSI Report referenced in the quotation above underlies the government's prosecution and the government intends to use the PSI Report as an exhibit at trial.[10] In a later post, The McCain Institute also criticized Backpage.com for exercising its First Amendment rights. *See* McCain Institute website, August 12, 2017 (It is incomprehensible that websites like ***Backpage.com hide behind . . . free speech while knowingly facilitating sex trafficking.***" (emphasis added)).[11]

In 2018, Senator McCain lauded the government's seizure of Backpage.com:

> "The seizure of the ***malicious sex marketplace Backpage.com*** marks an important step forward in the fight against human trafficking. This builds on the historic effort in Congress to reform the law that for too long has protected ***websites like Backpage*** from being held liable for ***enabling the sale of young***

---

Cindy is not giving up…. We are not giving up, because there is a way to do this. And as smart as their lawyers think they are, we are pretty smart, too. And we have a whole lot of people behind us who are thinking how we are going to get this done." *Id.* at 29. Senator Heitkamp's reference to "inappropriately important constitutional protections" was a reference to the First Amendment.

[8] This report is referred to as the "PSI Report."

[9] https://www.mccaininstitute.org/resources/in-the-news/backpage-coms-knowing-facilitation-of-online-sex-trafficking/.

[10] Opening Statement of Reginald E. Jones, USDOJ, CR-18-0422-PHX-SMB, Trial Transcript, Day 3 p.m. session, p. 55-56 ("You'll also hear evidence that in January 2017, following a 17-month investigation, the U.S. Senate issued a report on Backpage.").

[11] https://www.google.com/search?q=site%3Amccaininstitute.org+backpage&ei=UPqKYe7J. The original post no longer is live on The McCain Institute's website, but links to this deleted post relating to Backpage (and dozens more) remain indexed in Google's search results. https://www.google.com/search?q=site%3Amccaininstitute.org+backpage&ei=UPqKYe7JHsPP0PEPyjqA8&oq=site%3Amccaininstitute.org+backpage&gs_lcp=Cgdnd3Mtd2l6EANKBAhBGAFQAFgAYKQMaAFwAHgAgAEAiAEAkgEAmAEAwAEB&sclient=gws-wiz&ved=0ahUKEwjusfuProz0AhXDJzQIHX_-CPUQ4dUDCA8&uact=5.

*women and children*. Today's action sends a strong message to Backpage and any other company *facilitating online sex trafficking* that they will be held accountable for these horrific crimes."

Stmt. by Senator John McCain on the Seizure of Backpage.com, April 6, 2018 (emphasis added).[12]

The McCain Institute repeatedly tweeted about Backpage,[13] including a post from January 9, 2020, which called Backpage "one of the internet's worst human trafficking enablers:"



Ambassador McCain also repeatedly disparaged Backpage in tweets over the years,[14] including this after Judge Brnovich declared a mistrial due to government misconduct:



---

[12] https://web.archive.org/web/20180414051322/https://www.mccain.senate.gov/public/index.cfm/2018/4/statement-by-senator-john-mccain-on-the-seizure-of-backpage-com.

[13] https://twitter.com/search?q=backpage%20(from%3AMcCainInstitute)&src=typed_query&f=live.

[14] https://twitter.com/search?q=backpage%20(from%3Acindymccain)&src=typed_query&f=live.

The McCain Institute funded numerous research projects by ASU social work professor Dominique Roe Sepowitz targeting Backpage.com and seeking to show it facilitated sex trafficking. The government lists Prof. Roe Sepowitz as an expert witness in this case; her resume identifies some of her research that was funded by The McCain Institute. (Dkt. 422-6.)

### C. The Court has a long history with the McCains, has given substantial financial support to The McCain Institute, and has other ties to The McCain Institute.

Judge Humetewa has publicly acknowledged the large role Senator McCain played in her life, including him hiring her as an intern in his office during law school, him hiring her for her first legal job in the early 1990s, him nominating her to the United States District Court in 2013, and him speaking at her judicial investiture ceremony in 2014.[15] Defendants do not know the depth and scope of Judge Humetewa's personal relationship with Senator McCain or Ambassador McCain, but her relationship was sufficiently close that Senator McCain asked Judge Humetewa to be a pall bearer at his funeral[16]—an honor typically reserved for family members or close friends. Judge Humetewa also has described those who worked for Senator McCain as "McCain alumni," "a family of sorts" and said she can go "without seeing [McCain] for many, many months and then, if we happen to be at an event or you happen to see him somewhere, it's like you haven't missed a day."[17] Judge Humetewa also has given significant financial support to The McCain Institute[18], which in turn has funded one of the government's expert witnesses and her anti-Backpage research—the admissibility of which will be an issue at trial. And Judge Humetewa has been an invited speaker and guest at The Sedona Forum, "The McCain Institute's by invitation only annual gathering of high-level national and international thought-leaders, decision-makers and activists."[19]

---

[15] https://www.indianz.com/news/2018/08/29/diane-humetewa-john-mccain-was-a-leading.asp.

[16] https://www.fedbar.org/wp-content/uploads/2021/04/JudicialProfile_Humetewa_TFL_MarApr.pdf.

[17] https://www.eastvalleytribune.com/local/excerpts-from-interview-with-u-s-attorney-diane-humetewa/article_83889853-28c1-531a-8f37-313f9680a547.html.

[18] https://www.mccaininstitute.org/ways-to-give/donors/.

[19] https://www.odni.gov/index.php/newsroom/item/1362-global-challenges-addressed-with-top-leaders-at-the-sedona-forum; https://www.thesedonaforum.org/past-forums/view-the-sedona-forum-2016/.

At a minimum, the Court's apparently long and continuous friendship with the McCains and ties to The McCain Institute, coupled with a substantial and long-standing history of vitriol between the McCains, The McCain Institute and Defendants Larkin and Lacey, raises a Section 455(a) appearance that might cause a reasonable person, who knew of the underlying facts, to harbor doubts about the Court's impartiality. *United State. v. Jordan*, 49 F.3d 152 (5th Cir. 1995).  In *Jordan*, the Fifth Circuit considered whether the Judge abused her discretion in failing to recuse. The defendant was charged with wire fraud and money laundering based on her involvement with a company named ICT.  A friend of the Judge and her husband (who also was her husband's former law partner) previously had been appointed as the receiver for ICT, which resulted in tremendous conflict between the Judge's friend and the defendant (which the Fifth Circuit characterized as "no small amount of resentment and animosity, if not blind hatred").  Even though the Judge's friend was not involved in the trial, the Fifth Circuit nonetheless held that the Judge "abused her discretion in failing to recuse herself:"

> [Our] stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." Where [defendant] was involved in an extremely hostile relationship with a person of such a long, close, and multifaceted friendship with [the Judge], a relationship that resulted in extensive negative publicity, and where [defendant's] liberty was at stake before this very Judge, ***we are convinced that a reasonable person would question the impartiality of the district judge. . . . The appearance of impropriety is unmistakable in the facts before us***.

*Id.* at 157-58 (emphasis added).

The facts here parallel those in *Jordan*.  The Court appears to have had a long, close and multifaceted friendship with Senator McCain and perhaps with Senator and Ambassador McCain. Defendants Larkin and Lacey have had a very long and very hostile relationship with the McCains because of the numerous exposes of the McCains they published, causing the McCains significant personal and political damage.  In return, the McCains spent years branding Defendants Larkin and Lacey as intentional facilitators of sex trafficking, with Senator McCain's committee ultimately issuing the PSI Report, which the government now claims explains its case and outlines the evidence upon which it will rely at trial.[20]

---

[20]  Dkt. 635 at 4 ("In sum, the superseding indictment and PSI provide a detailed explanation of

The government is wrong to assert that the McCains have not "played any role whatsoever in this prosecution." (Dkt. 1382 at 5.) They may not be the prosecutors trying this case or the DOJ officials who signed off on this prosecution, but they cast a large shadow over this case through Senator McCain's position on the Senate Permanent Subcommittee on Investigations and Ambassador McCain's position at The McCain Institute. Indeed, even though senior DOJ officials told the National Center for Missing and Exploited Children ("NCMEC") there was no basis to prosecute Backpage.com, John Walsh, one of the founders of NCMEC, later publicly claimed that NCMEC had no success in its efforts to cause Backpage to be prosecuted until Senator McCain made things happen in the Senate.

## IV.   CONCLUSION

Although Defendants did not move for recusal, the Court nonetheless is obligated under §455(a) to consider whether recusal is warranted. If the Court does not recuse *sua sponte*, the Court should disclose any information pertinent to Defendants' analysis of whether to move for recusal. Caution should be the watchword when two judges have already recused well into the case.

RESPECTFULLY SUBMITTED this 10th day of November 2021,

        BIENERT KATZMAN LITTRELL WILLIAMS LLP
        *s/ Whitney Z. Bernstein*
        Thomas H. Bienert, Jr.
        Whitney Z. Bernstein
        Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Oct. 2020) § II(C)(3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

        LIPSITZ GREEN SCIME CAMBRIA LLP
        *s/ Paul J. Cambria, Jr.*
        Paul J. Cambria, Jr.
        Erin McCampbell Paris
        Attorneys for Michael Lacey

---

Padilla's role and outline evidence the United States will rely upon at trial.").

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW PC
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

FEDER LAW OFFICE PA
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas