UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

JUAN C. PADUA,

    Defendant.

20-CR-191-LJV-MJR-1
DECISION & ORDER

---

Granting a mistrial with prejudice is an extraordinary remedy that should be reserved for only the most extraordinary circumstances.  On November 5, 2021, this Court granted that remedy because of such truly extraordinary circumstances.  Docket Item 178.  Although the Court gave reasons on the record for its decision, *see* Docket Item 181, it now writes to address the gravity of the issue and the relief provided.

## **BACKGROUND**

On December 9, 2020, Juan Padua and Michael Vasquez were indicted for conspiring to possess with intent to distribute, and to distribute, at least 500 grams of cocaine and attempting to possess with intent to distribute the same amount of cocaine.  Docket Item 13.  The charges stemmed from the mail delivery of a suspicious package destined for Padua's apartment.  *See* Docket Item 184 at 61; Docket Item 185 at 37.  After postal inspectors obtained a warrant to search the package, they found that it indeed included a kilogram of cocaine.  *See* Docket Item 184 at 63; Docket Item 185 at 159-60.  So they replaced the cocaine with sham and, in cooperation with agents from the United States Drug Enforcement Administration, set up a delivery of the package

equipped with an electronic monitor that would notify them when the package was opened. Docket Item 184 at 77-78, 84-85.

Shortly after the package was delivered, a phone number that belonged to Padua sent Vasquez a text message in Spanish; translated into English, it read "the food is here." Docket Item 184 at 193-94; Docket Item 186 at 20-22, 42-43. A few minutes later, Vasquez arrived at Padua's apartment, and the agents who surveilled the delivery were notified that the package was opened. Docket Item 185 at 68-69, 74-77. Padua and Vasquez both were arrested.

Vasquez eventually pleaded guilty, *see* No. 20-CR-191-LJV-MJR-2, Docket Item 123, but Padua proceeded to trial. In his motions in limine, Padua raised several issues regarding what he claimed were violations of Federal Rule of Criminal Procedure 16 and the government's late disclosure of evidence. *See, e.g.,* Docket Items 83, 96, 133. Most relevant here, Padua asked the Court to preclude the government from introducing evidence recovered from Vasquez's and his cell phones. Padua first asked the Court to preclude the government from presenting evidence recovered from Vasquez's cell phone, including and especially the "food is here" text message sent when the package arrived. *See* Docket Item 83 at 27-32; Docket Item 137 at 35-41. Later, after the government unlocked Padua's cell phone shortly before trial, he asked the Court to preclude any evidence recovered from that phone as well. Docket Item 133.

The Court denied the defendant's motion to preclude evidence recovered from Vasquez's cell phone. The Court acknowledged that it took the government almost a year to bypass the cell phone's security passcode and to access its contents and that two months then elapsed before government's investigating technicians sent the results

2

to the Assistant United States Attorneys who prosecuted the case.  See Docket Item 137 at 81-86.  And the Court agreed with defense counsel that there may have been a technical violation of the government's disclosure obligations.  Id. at 82-84.  But the Court noted that the prosecutors sent defense counsel the evidence immediately after the prosecutors received it and that there was no prejudice to the defense because of the late disclosure.  Id. at 82-86.  So while the Court was troubled by the government's handling of that cell phone evidence, it declined to preclude it.  Id. at 48-49, 85-86.

But the same was not true with respect to the contents of Padua's cell phone.  The government had possession of that phone from the day that Padua was arrested—more than a year before trial.  Id. at 35.  What is more, the government had the means to access the contents of Padua's phone that entire time:  In fact, Padua had given them the passcode on the day he was arrested.  Docket Item 140 at 16, 25-26.  But the government apparently did not even try to use that passcode until about a week before trial.  Id. at 20.  After finally unlocking the phone, the government found evidence that it wanted to use at trial.  See Docket Item 131; Docket Item 133.  The defendant objected to that eleventh-hour disclosure, and the Court agreed; especially because Padua was in custody and an adjournment would have meant more time detained pretrial, the Court ruled that the contents of his cell phone could not be admitted at trial.  Docket Item 140 at 32-33, 36-37.

Unhappy with that ruling, the government asked the Court to reconsider it several times.  See, e.g., Docket Item 161, Docket Item 183 at 48-49.  Indeed, after defense counsel's summation, the government asked the Court to reopen the proof so that it could present the cell phone evidence.  Docket Item 183 at 48-49.  The government

passionately argued that defense counsel was using the Court's ruling as both "a sword and a shield" and, for that reason, that it was unfair to preclude use of the phone's contents. *See id.* at 48-51.

After the Court denied that motion, counsel for the government asked for five minutes to compose himself. *Id.* at 51. He slammed the doors as he left the courtroom and took ten. *Id.*; Docket Item 181 at 6, 40. He then returned to the courtroom and delivered the rebuttal summation that resulted in a mistrial with prejudice. Docket Item 183 at 52-61.

That rebuttal was riddled with misconduct that would make a first-year law student blush. For example, counsel told the jury that testimony presented by the defense about a back stairway to Padua's apartment "flatly[ was] not true" and that no such stairway existed. *Id.* at 53. That statement not only was improper testimony by counsel, but it apparently was false as well. *See* Docket Item 181 at 12-18.

But that misconduct paled in comparison with what would follow. The prosecutor told the jury that defense counsel's summation was the "kitchen sink approach"— the "musings of a . . . team" that was "[d]esperate because they know that their client is guilty." Docket Item 183 at 54. Then, immediately after defense counsel's objection was sustained and the offending statement stricken, the prosecutor said, "I know he's guilty. I know beyond a reasonable doubt he's guilty." *Id.*

After the rebuttal ended and the jury was excused for the day, the Court asked the prosecutor whether he thought "it's appropriate for a [p]rosecutor to tell the jury, I know the [d]efendant is guilty beyond a reasonable doubt*.*" *Id.* at 61. The prosecutor responded*,* "I think a lot of inappropriate . . . things happened in this trial." *Id.* After

4

further questioning about the rebuttal, the prosecutor conceded only that "[the Court] sustained the objection[] . . . so it[ was] not appropriate." *Id.* at 62.

The Court then asked defense counsel whether they had a motion for relief; after some discussion, defense counsel moved for a mistrial with prejudice. *Id.* at 65-66. The Court noted that it was not inclined to grant a mistrial with prejudice because that remedy was so extraordinary but that it would consider all arguments by both sides as to whether a remedy was necessary and, if so, what that remedy should be. *Id*. at 66-68. The Court requested further briefing and set oral argument for the next day, giving both parties time to review the transcript and consider possible remedies. *Id.*

Both sides submitted briefing, and the Court heard argument the following morning. *See* Docket Items 174, 175, 181. Defense counsel renewed their request for a mistrial with prejudice, *see* Docket Item 175; Docket Item 181 at 4, arguing that given the egregiousness of the misconduct, the prosecutor must have "intended to goad the defendant into moving for a mistrial," Docket Item 175 at 3 (internal quotation marks omitted) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982)). The government, with the prosecutor's co-counsel arguing, responded that while the prosecutor's remarks were inappropriate, they were not bad enough to require a mistrial, let alone a mistrial with prejudice. *See* Docket Item 181 at 18. Co-counsel explained that "the [p]rosecution [was] so upset [] because we don't think we had a fair trial in this case." *Id.* at 37. The burden is on the defense to show that the defendant has been "deprive[d] . . . of a fair trial," he argued*. Id.* at 38. "We submit it's the opposite. We think we've been deprived of a fair trial." *Id.*

The government tried to justify its rebuttal arguments by pointing to a number of arguments in the defense summation that it contended were improper.  *See id*. at 19-33.  For example, co-counsel argued that defense counsel's relating stories from her personal life to illustrate arguments she was making constituted commenting on facts not in evidence.  *Id*. at 25-26; 32.  He argued that referring to a government expert as "hired by the [g]overnment" and a "paid gun" was improper.  *Id*. at 33.  He argued that asking the jury to infer that a government witness would have given an answer helpful to the defense to a question that was not asked was improper.[1]  *Id.* at 28-29.  But the main thrust of the government's argument was that the improper comments were justified or should be forgiven because they were in response to its legitimate conclusion that it had been denied a fair trial.  *See id.* at 36-38.

At the conclusion of the arguments, the Court took a recess to consider the cases cited by both sides and to give the matter additional thought.  *See id.* at 59.  The Court then addressed the case law that the parties cited, granted the motion for a mistrial with prejudice, explained its reasoning, and discharged the jury.  *Id.* at 59-67.

## DISCUSSION

Two basic, fundamental, first-year-of-law-school legal principles are at issue in this case.

The first is that cases are to be decided on their merits absent truly extraordinary circumstances.  For that reason, a mistrial based on prosecutorial misconduct should be

---

[1] The government conceded that it did not object to any of these arguments during the defense summation.  Docket Item 181 at 36.

6

granted with prejudice only when that misconduct is intentional. *Kennedy,* 456 U.S. at 679. In the words of the Supreme Court, a mistrial with prejudice may be granted only when the prosecutor or the court "goad[s] the [defendant] into requesting a mistrial." *United States v. Divitz*, 424 U.S. 600, 611 (1976); *see also Kennedy*, 456 U.S. at 673.

The second fundamental principle at issue is that lawyers—and especially prosecutors, whose mission should be not to win at any cost but to do justice—may not prejudice the jury by offering what they know about what the result of a trial should be or vouching for witnesses or the truth of what they say. *See, e.g.*, *United States v. Young*, 470 U.S. 1, 18 (1985) ("[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant . . . ."); *United States v. Miller*, 116 F.3d 641, 683 (2d Cir. 1997) ("It is a given that a prosecutor may not personally vouch for the truth of the government's evidence."); *United States v. Modica*, 663 F.2d 1173, 1179 (2d Cir. 1981) (*per curiam*) (collecting cases) ("This Court has repeatedly warned prosecutors not to vouch for their witnesses' truthfulness . . . ."). Every first-year prosecutor—indeed, every Criminal Law or Criminal Procedure law student—knows that a prosecutor cannot tell the jury that she knows the defendant to be guilty. *See, e.g.*, *Young*, 470 U.S. at 7-8 ("Prosecutors [] breach their duty . . . by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."); *Modica*, 663 F.2d at 1178 ("It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the . . . guilt of the defendant." (quoting ABA Standards for Criminal Justice, Standard 3-5.8(b) (1980)).

7

The intersection between those principles created a dilemma for this Court. At first, even though the violation of the second principle was truly egregious, the Court was inclined to favor the first principle and to grant a mistrial without prejudice. *See* Docket Item 183 at 66-67. But after further reflection—and after hearing the government's explanation of why the misconduct occurred—the Court concluded that the second principle trumped the first under the unique circumstances here. Docket Item 181 at 64-65. The egregious misconduct, coupled with the government's explanation for it on the heels of a persuasive defense summation, makes a mistrial with prejudice the only appropriate sanction.

The defendant's motion for a mistrial after the rebuttal summation was not his first. Early in the trial, after government counsel referenced Vasquez's plea and both government counsel and a government witness referred to Vasquez as a co-conspirator, defense counsel moved for a mistrial but limited it to a mistrial with prejudice; if the Court would grant a mistrial without prejudice, counsel said, the defendant would prefer to continue. *See* Docket Item 184 at 128-30. Later on, after a government witness testified about a previously undisclosed statement by the defendant, the defense again moved for a mistrial—this time regardless of whether it would be with or without prejudice. *See* Docket Item 185 at 128-29, 152-53. So defense counsel was not shy about asking for a mistrial, and the prosecutor knew that.

And the prosecutor must have known that his rebuttal remarks would trigger another mistrial motion. There can be little doubt that he knew that what he said in his rebuttal summation was egregiously improper. Indeed, it is fundamental that a prosecutor cannot tell the jury that he knows that the defendant is guilty—let alone that

8

he knows the defendant is guilty beyond a reasonable doubt.  *See Young*, 470 U.S. at 7-8; *Modica*, 663 F.2d at 1178.  Those statements not only usurp the function of the jury, but they also put the imprimatur of the government on facts that the jury must decide.  *See United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991) ("The principal reason that prosecutors must not make personal observations about the guilt of the defendant is that such an observation can create an inference in the mind of the jury that the prosecutor has knowledge of extra-record evidence proving that the defendant is, in fact, guilty.  A prosecutor's assertion that the defendant is guilty also raises the risk that the jury will simply defer to the government's view of the evidence." (citing *Young*, 470 U.S. at 18-19)); *see also Young*, 470 U.S. at 18-19 ("The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused . . . carries with it the imprimatur of the [g]overnment and may induce the jury to trust the [g]overnment's judgment rather than its own view of the evidence.").  And telling the jury that defense counsel is desperate because they know that their client is guilty may be even more egregious.  *See United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990) (reasoning that such arguments "invite[] [the jury] to conclude that everyone the [g]overnment accuses is guilty, that justice is done only when a conviction is obtained, and that defense counsel are impairing this version of justice by having the temerity to provide a defense and to try to 'get' the guilty 'off.'")

In *United States v. Friedman,* the Second Circuit addressed remarks far less egregious than those here and found them to be "grossly improper."  *Id.*  In that case, as in the case at bar, the prosecutor suggested that defense counsel would make any argument he could "to get that guy off."  *Id.* at 708.  The Second Circuit reversed the

9

defendant's conviction, finding that any less was insufficient given an argument that "risk[ed] a serious distortion of the jury's understanding of the roles of prosecutor and defense counsel." *Id.* at 709.

Here, the prosecutor did that and more. The prosecutor not only said that defense counsel used everything including "the kitchen sink" to get an acquittal but also said that counsel did so "because they know that their client is guilty." Docket Item 183 at 54. Then, after the Court sustained the defendant's objection and struck that comment, the prosecutor went from bad to worse, brazenly telling the jury that he knew that the defendant was guilty—in fact, that he knew that "beyond a reasonable doubt." *Id.*

Without a doubt, a seasoned prosecutor like the Assistant United States Attorney here knew very well that remarks like those would provoke a motion for a mistrial. But if there were any doubt, that doubt was dispelled by the prosecution's attempt to justify— or at least ameliorate—the misconduct. The government argued that it was denied a fair trial by this Court's rulings. Docket Item 181 at 37-38. According to the government, the prosecutors were justifiably upset about this Court's "default position," which was to "acquiesce to the [d]efense." *Id.* And that was the reason for the outrageous statements the prosecutor made, *see id.*, after he was given time to compose himself and to think about the defense summation and the Court's denial of his motion to reopen the proof, *see* Docket Item 183 at 51.

In light of that explanation, this Court can see only two possible motives for the misconduct. First, given what the Court believed was an excellent and persuasive summation by defense counsel, the prosecutor may have been legitimately worried that

10

he was going to lose.  After all, the Court had precluded what he believed to be important evidence because that evidence had been disclosed literally on the eve of trial.  Why not cut the government's losses, get a do-over, and hope that after trial is put off for a while, the Court will admit the late-disclosed evidence because any harm will have been obviated?  And maybe next time defense counsel's summation will not be so effective—especially because it might not include those parts that seized on the lack of cell phone evidence during the first trial.

Or maybe the prosecutor simply wanted to repay the Court for what it believed to be its incorrect rulings.  Perhaps the misconduct was designed simply to spite the Court for the government's perception that the Court's "default position . . . has been to acquiesce to the [d]efense."  Docket Item 181 at 37-38.

Either way, the prosecutor had to know that defense counsel would move for a mistrial as a result of the rebuttal summation.  And either way, that constitutes the sort of intentional misconduct that warrants a mistrial with prejudice.[2]

---

[2] The government cited *United States v. Young* in support of its argument that a mistrial was not warranted.  Docket Item 174 at 6.  But while the prosecutor in *Young* opined that the defendant was guilty, he did so in response to defense counsel's argument that the "[g]overnment did not believe in its own case."  470 U.S. at 4-5.  What is more, defense counsel neither objected to the prosecutor's statement nor asked for any relief because of it.  *Id.* at 6.  Here, on the other hand, the prosecutor's remarks were more egregious, were not invited by defense counsel, and prompted an objection.  And the government's reliance on *Darden v. Wainwright*, 477 U.S. 168 (1986), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), *see* Docket Item 174 at 5-6, was likewise misplaced.  Those cases—brought by petitioners seeking habeas corpus relief—involved the rigorous standard of constitutional due process, not the supervisory power of a trial court.  Indeed, in *DeChristoforo*, the Court drew that very distinction and explicitly noted that "not every trial error or infirmity which might call for [the] application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'"  416 U.S. at 642-43 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)).  Here, in contrast, this Court exercises its supervisory power in granting the relief sought by the defendant.

## **CONCLUSION**

In *United States v. Modica*, the Second Circuit lamented that "[t]his appeal—like far too many reaching this Court—centers on improper statements made by a prosecutor in his summation to a jury." 663 F.2d at 1174. "Such misconduct has gone largely unremedied," the court observed, because "appellate courts are understandably reluctant to reverse convictions merely to discipline prosecutors." *Id*. For that reason, and because the Circuit's "warnings alone have proved insufficient," *id*. at 1182, the court asked district courts to control trials and sanction prosecutors for arguments that cross the line, *id*. at 1184-85.

But by the same token and for the same reasons, district courts may be reluctant to declare mistrials based on arguments that cross the line. Starting over is an unattractive alternative after all the trial work has been done and the jury has heard the entire case. And the alternative of granting a mistrial with prejudice usually is not available when a prosecutor crosses the line.

Here, however, the prosecutor did not merely cross the line, he erased it. If ever prosecutorial misconduct warrants a mistrial with prejudice, this is the case.

Worried that he would lose, or upset with the Court and its rulings, a seasoned prosecutor deliberately made remarks that he had to know were egregiously improper and would result in a defense motion for a mistrial. That is nothing less than intentional—intended to goad the defense into making that motion. And this case

therefore presents the extraordinary—indeed, in this Court's experience, unique—circumstances that warrant the remedy of a mistrial with prejudice.[3]

For all the above reasons, the defendant's motion for a mistrial is GRANTED WITH PREJUDICE. The Clerk of the Court shall enter judgment in favor of the defendant.

SO ORDERED.

Dated: December 9, 2021
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[3] This Court recognizes that the Second Circuit has suggested alternative sanctions: "If the conduct has occurred on prior occasions, the court may wish to give serious consideration to a formal reference to the appropriate local grievance committee" and if "persistent," the court might consider "the appropriateness of a suspension." See Modica, 663 F.2d at 1185. Here, although egregious, the conduct was only during one summation. Nevertheless, this Court still considered those alternatives suggested by the Second Circuit but decided that the sanction of a mistrial with prejudice was more appropriate, and would be more effective, considering the unique circumstances here.