1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  United States of America,                    No. CR-18-00422-001-PHX-DJH

10                    Plaintiff,                 **ORDER**

11  v.

12  Michael Lacey, et al.,

13                    Defendants.

14

15          Before the Court is the Motion to Partially Vacate Seizure Warrants and Release

16  Funds (Doc. 1366) filed by moving Defendants Michael Lacey, James Larkin, Scott Spear,

17  and John Brunst ("Defendants").[1]  The Government has filed a Response (Doc. 1384) and

18  Defendants have filed a Reply (Doc. 1390).[2]   Defendants have requested oral argument,

19  but the Court finds the matter can be resolved on the briefing and denies this request.

20

21  [1] The Court notes that Defendants make many of their substantive arguments in the 23
    footnotes they have included in their Motion.  Future filings that abuse the page limitations
22  in such a manner will be summarily stricken.   Moreover, hereafter, the parties are
    specifically prohibited from using footnotes to cite to authority supporting any statement
23  made in the body of their argument.  These citations and/or explanatory parentheticals must
    be in the main text.

24  [2] The Government seeks permission to file a Surreply, claiming Defendants' Reply raises
25  new arguments not presented in their Motion that they would like to respond to.
    (Doc. 1397).  They also object to Defendants' request to submit sworn declarations *in
26  camera* and under seal—Declarations Defendants claim show "that they have a dire need
    for these funds to pay for their defense, and that they will use these funds for that purpose."
27  (Doc. 1390 at 4).  To the extent new arguments are raised in Defendants' Reply, they will
    not be considered.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district
28  court need not consider arguments raised for the first time in a reply brief.").  The Court
    also denies Defendants' request for an *in camera* review of the Declarations.

LRCiv 7.2(f).

Defendants' Motion seeks the release of four categories of assets that have been seized by the Government in criminal and civil forfeiture proceedings related to this case. Defendants seek to be released from seizure, in whole or in part:

1. $407,686.14 from Compass Bank Account '4862, held by Cereus Properties, LLC ("Cereus")[3] (the "Compass Assets");
2. Funds seized from a series of attorney trust accounts (the "IOLTA Funds");
3. Unspecified funds from non-adult advertising on Backpage (the "Non-Adult Advertising Funds"); and
4. Unspecified funds from revenues accrued outside of the United States (the "International Funds").

(Doc. 1384 at 5).  Defendants claim the continued retention of these funds is unlawful because the Government cannot show the funds are traceable to the alleged crimes.

## I.      Background

Defendants are former owners and operators of Backpage.com, LLC ("Backpage"). Backpage was an internet-based company that allowed its customers to post classified advertisements online, including "adult" ads that offered to sell adults or children for sex. Backpage generated nearly a half-billion dollars selling these adult ads.   The Government alleges that to avoid liability and negative publicity associated with these activities, Defendants engaged in a variety of money laundering strategies aimed, in part, to conceal the source and location of the revenues from its illicit ads.  Criminal charges were brought as a result of these actions.

### A.      *Backpage and its CEO Plead Guilty and Criminal Forfeiture Proceedings are Initiated in the District of Arizona.*

On May 1, 2018, Backpage.com LLC, and related entities Website Technologies LLC, Posting Solutions LLC, Amstel River Holdings LLC, Ad Tech BV, UGC Tech Group

---

[3] In their Response, the Government states that this account is held in the name of Voice Media Group (Doc. 1384 at 5).  Defendants say the account is held by Cereus and that the account exclusively holds the proceeds from the sale of their print newspaper business to Voice Media Group. (Doc. 1366 at 9).  For purposes of this Motion, the discrepancy appears immaterial, as the account has clearly been seized pursuant to a civil arrest warrant in the CDCA *In Rem* Proceeding. (Doc. 1384-1).

CV (collectively, "Backpage") pled guilty to a charge of money laundering conspiracy under 18 U.S.C. § 1956(h) and agreed to the forfeiture of all property involved in that offense pursuant to 18 U.S.C. § 982(a)(1). *United States v. Backpage.com, LLC*, No. CR-18-465-PHX-DJH ("*Backpage* Proceeding") at Docs. 20; 22; 44. Around the same time, Backpage's CEO, Carl Ferrer ("Ferrer"), pled guilty to conspiracy under 18 U.S.C. § 371 and similarly agreed to the forfeiture of property traceable to or involved in his crime. *United States v. Ferrer*, No. CR-18-464-PHX-DJH ("*Ferrer* Proceeding") at Doc. 7-1. Preliminary Orders of Forfeiture ("POF") were issued as to those assets in both cases. *Backpage* Proceeding at Docs. 22, 42, 44; *Ferrer* Proceedings at Doc. 23. The IOLTA Funds are among those assets listed in the POFs. *Backpage* Proceeding at Doc. 22 at 17; *Ferrer* Proceedings at Doc. 23 at 12–13. Backpage and Ferrer have yet to be sentenced.

On June 29, 2018, and July 1, 2018, moving Defendants and other claimants[4] moved for a hearing in the *Backpage* Proceeding seeking a determination of their asserted third-party interests in the property alleged to be subject to forfeiture. *Backpage* Proceeding at Docs. 28–40. Defendants then filed Verified Petitions seeking to determine their interests in the property that was subject to forfeiture. *Id.* at Doc. 61, 62, 64. The request for an ancillary hearing was granted and initially set for November 16, 2018. *Backpage* Proceeding at Doc. 46. Upon the parties' stipulated requests, the hearing has been continued several times. A similar process has played out in the *Ferrer* Proceeding. A Status Conference on the ancillary hearing is currently set for January 11, 2022, in both cases. *Backpage* Proceeding at Doc. 119; *Ferrer* Proceeding at Doc. 110.

### B.   *Civil Forfeiture Proceedings in Central District of California.*

Between March and November of 2018, magistrate judges in the Central District of California ("CDCA") found probable cause to issue warrants to seize various assets involved in or traceable to Backpage illicit operations, including the Compass Assets. (*See* Doc. 1384-1). On September 28, 2018, the Government initiated civil *in rem* forfeiture

---

[4] Other claimants include James Larkin, Joye Vaught, and Andrew Padilla, Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, and Shearwater Investments, LLC.

proceedings related to Backpage assets in the CDCA.  Defendants and Defendant Lacey sought to vacate or modify those seizure warrants under Federal Rule of Criminal Procedure 41(g), in part because they believed the Government was denying their Sixth Amendment right to counsel due to lack of funds.  *In the Matter of Seizure of Any and All Funds Held in Republic Bank of Arizona Accounts*, 2019 WL 8892585 at *8 (C.D. Cal. Dec. 20, 2019).  Their request was denied.  *Id.*  The court found that the claimants' motion "makes no reference to their present availability of funds, and the Court cannot find anything in the hundreds of pages of exhibits that they have submitted from which it can draw any inference on the subject. As such, the Court finds that Defendants have failed to make the necessary prima facie showing to justify a hearing on release of funds to pay for counsel." *Id.*

In the same order, the court also rejected the claimants' request for a "preliminary tracing hearing." *Id.*  Claimants had argued that "the Government ha[d] not adequately connected the seizures with specific illegal acts," and they "oppose[d] the Government's decision to seize the entire balances of accounts in which Backpage funds had been commingled with non-Backpage funds on the theory that the 'untainted funds were purportedly used to 'facilitate' the laundering of Backpage-related funds.'" *Id.* (citing claimants' briefing).  The court held that "[d]espite the opportunity for additional briefing, Claimants have not identified what the legal mechanism for this requested relief is, nor have they suggested what legal standard the Court should apply. The Court therefore treats this aspect of the present Motion as a motion for the return of property under Rule 41(g)." *Id.* at *9. The court agreed that additional proceedings were necessary on these issues but "are available through the continuation of [the civil forfeiture action]." *Id.*  The court specifically noted that "[i]n this action, Claimants will have the opportunity to present evidence, identify with specificity the funds which they assert are improperly seized, and make a full argument for their return. The Court will not at this point, however, simply 'vacate' the seizure warrants to the extent that Claimants argue they are unjustified." *Id.*

Defendants then filed claims to some of the assets at issue in those actions, which

were eventually consolidated into one action. *United States v. $1,546,076.35 in Bank Funds Seized from Republic Bank of Arizona Account 1889*, No. CV-18-08420-RGK-PJW ("CDCA *In Rem* Proceedings") at Doc. 31, 36.  On June 1, 2020, the Government filed a First Amended Consolidated Master Verified Complaint for Forfeiture ("FAC") that asserted three forfeiture claims against the defendant assets arising from violations of 18 U.S.C. § 981(a)(1).  *Id.* at Doc. 108.  On December 1, 2020, the CDCA court granted the Government's motion to strike Defendants' claims to the Compass Assets for lack of standing.  *United States v. $1,546,076.35 in Bank Funds Seized from Republic Bank of Arizona Account 1889*, 2020 WL 8172984, at *4 (Dec. 1, 2020).  The court specifically found that that claimants lacked standing to assert shareholder claims to the $407,686.14 held in the name of Cereus because "a claimant's status as a shareholder does not confer an ownership interest upon the claimant with respect to corporate funds." *Id.*

The parties subsequently requested a stay of those proceedings, pending resolution of this criminal matter, which the court granted.  (*Id.* at Docs. 188, 189).[5]

### C.    Defendants Are Charged and Indicted.

On July 25, 2018, a federal grand jury returned a 100-count superseding indictment ("SI") against moving Defendants and others.  (Doc. 230).  The SI alleged that the Defendants engaged in criminal acts while operating Backpage.com, including conspiracy, facilitating prostitution, and money laundering.  (*Id.*)  The SI includes forfeiture allegations.  (*Id.*)

In November of 2018, Defendants Padilla and Vaught petitioned this Court for an emergency stay of the seizure warrants issued by the CDCA.  (Doc. 360).  The Court denied that request, holding that those Defendants had a sufficient legal remedy for any challenges to the warrants in the CDCA court.  (Doc. 401 at 56–59).  In January of 2019, Defendant Lacey then moved for the release of funds seized by CDCA warrants that he claimed were unrelated to Backpage.  (Doc. 385).  The Court denied the request, again on the grounds that "any legal or equitable relief from the warrants issued by the Central District of

---

[5] The Court notes that claimants' Motion for Relief from the Order granting the Stay is currently under review by that court.  *Id.*  at Doc. 208.

California is properly sought in that district."  (Doc. 447 at 4).  Then in May 2019, Defendants filed a Motion to Dismiss on the grounds that the Government had violated their Fifth and Sixth Amendment rights in the manner it had sought and executed the seizure warrants of the forfeitable assets.  (Doc. 456, 463, 464, 465, 467).  They argued, as they do in the present motion, that the seizures were "unlawful" because the assets the Government had seized are "untainted."  Judge Brnovich rejected Defendants' arguments, noting that magistrate judges had found probable cause to believe that the assets will ultimately prove forfeitable, and that Backpage and Ferrer had pled guilty and stipulated to preliminary orders of forfeiture.  (Doc. 559 at 6–7 (stating "[p]retrial restraints based on probable cause to believe that the assets will be ultimately forfeited does not offend the Fifth or Sixth Amendment") (citing *United States v. Monsanto*, 491 U.S. 600, 615 (1989)and *Kaley v. U.S.*, 571 U.S. 320, 371 (2014) ("So again: With probable cause, a freeze is valid")).  She further noted that the Court had already told Defendants that their disagreement with the CDCA rulings needed to be taken up with that court, and that petitions to determine their interests in the seized assets were pending in the *Backpage* and *Ferrer* criminal proceedings, but had been repeatedly continued at the parties' request.  (*Id.*)  Accordingly, she found no constitutional violations justifying dismissal of the indictments.  (*Id.*)

Trial began in this case on September 2, 2021 but ended in a mistrial after four days of testimony.  (Doc. 1308).  The judge overseeing that trial then recused herself from the case, and the proceedings were assigned to this Court.  A second trial is currently scheduled to begin on February 9, 2022.  (Doc. 1377).

In their Motion before the Court, Defendants argue that because the Government "has failed to show that any of these four categories of assets are traceable to the crimes alleged in the indictment or the civil complaint, the government lacks probable cause to support their forfeiture of these assets."  (Doc. 1366 at 8).  Although Defendants generally claim they need these funds to pay their counsel, they do not seek a hearing so that the Court may make such a determination.  They instead argue that a hearing is not needed

because there is no probable cause for the Government to retain the assets in question.  (*Id.* at 14 ("While a defendant's need for counsel is one factor the Court can consider in deciding whether to vacate a pretrial restraint, it is not an evidentiary burden that a defendant must clear to get judicial review where the assets at issue are legitimate and untainted, as is the case here.").  Defendants spend much of their briefing arguing why the assets at issue are not traceable to the crimes alleged.

The Government responds by pointing out that the previously-assigned district court has already confirmed that the seizures are supported by probable cause that the assets at issue are tainted and therefore their pre-trial restraint is justified.  (Doc. 1384 at 9).  It also points out that because district court has already made this determination, and repeatedly told the parties recourse should be sought in the CDCA proceedings, that the law of the case doctrine should apply.  (*Id.*)  Finally, the Government argues that Defendants have failed to show that the restraint of these assets is depriving them of their right to counsel of their choice because they have not made a showing that they lack other funds to pay counsel.  (*Id.* at 10–11).

In their Reply, Defendants again argue "the law does not allow [the Government] to seize untainted funds and does not put the onus on Defendants to prove that they need the funds for counsel as a precondition to challenging that unlawful seizure."  (Doc. 1390 at 4).  They nevertheless seek to have the Court review *in camera* declarations from defense counsel attesting to Defendants' need for funds for counsel.  (*Id.* at 6).

## III.   Legal Standards

### A.   Criminal Forfeiture

Courts impose criminal forfeiture as punishment following conviction of a substantive criminal offense.  *Libretti v. United States*, 516 U.S. 29, 39 (1995).  Criminal forfeiture operates *in personam* against a defendant to divest him of his title to proceeds from his unlawful activity as a consequence of his criminal conviction. *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005).  Title 18 U.S.C. § 982(a)(1) directs a court to order forfeiture as an additional sanction when sentencing a person convicted of violating

18 U.S.C. § 1956.  *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).

Under Federal Rule of Criminal Procedure 32.2(a), the United States must provide notice of its intent to pursue forfeiture in the indictment or information.  "As soon as practical after a verdict or finding of guilty, or after a plea of guilty [] is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute" and upon such a finding, issue a preliminary order of forfeiture ("POF").  Rule 32.2(b)(1)(A), (2).  Then, at a post-trial or post-plea hearing, "[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Rule 32.2(b)(1)(A).

The Rules are clear that a court must enter a POF "without regard to any third party's interest in the property."  Rule 32.2(b)(2).  The determination of any potential third-party interest in property "must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."  *Id.  Accord* 21 U.S.C. §§ 853(k)(1), (2) (stating that a third party claiming an interest in property subject to forfeiture may not intervene in a trial or appeal of a criminal case involving the forfeiture or commence an action at law or equity against the United States concerning the validity of the alleged interest after the United States files an indictment with a forfeiture allegation).  Those third-party claims are determined by the court after an adversarial hearing at which the third-party claimant "may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses...." 21 U.S.C. § 853(n)(5).  Indeed, "[t]he law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property."  *United States v. Lazarenko*, 476 F.3d 642 649 (9th Cir. 2007).

An exception to this general rule is when a defendant's Sixth Amendment right to the representation of their choice is threatened by the seizure of forfeitable assets.  In that circumstance, if a defendant makes a *prima facie* showing that their Sixth Amendment right to be represented is implicated, the Court must hold a hearing to determine whether release of funds that have been seized in forfeiture proceedings is necessary. *United States*

*v. Unimex*, Inc., 991 F.2d 546, 551 (9th Cir. 1993).  At the hearing, commonly referred to as a *Monsanto* hearing, the Government must demonstrate that there is probable cause that the assets are indeed forfeitable upon conviction.  Generally, probable cause has two components: "(1) that the defendant has committed an offense permitting forfeiture," which is established by a grand jury's indictment, and "(2) that the property at issue has the requisite connection to that crime," in other words, that the property is traceable to the alleged offense.  *Kaley*, 571 U.S. at 323–24, 398 (2014).  A defendant may challenge probable cause only on the second ground during a *Monsanto* hearing.  *Id.* at 398.  If the government cannot meet its burden to demonstrate probable cause that the property is traceable to the crime, the court may modify the POF and/or release of the funds.  *Id.*

### B.    Civil Forfeiture

The government begins a civil forfeiture proceeding by filing an *in rem* complaint against the property that is subject to forfeiture.  18 U.S.C. § 983(a)(3)(A).  Third parties with interests in the property can intervene in these civil proceedings as claimants.  18 U.S.C. § 983(a)(4)(A), (B); Supp. R. G(5).  To intervene, a claimant must have standing.  *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012).  "Claimants in civil forfeiture actions can satisfy this test by showing that they have "a colorable interest in the property. . . which includes an ownership interest or a possessory interest."  *Id.* (citations omitted).

### C.    Law of the Case

Under the doctrine of law of the case, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case," absent a material change in circumstances.  *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).  "The doctrine encourages the conservation of limited judicial resources and promotes consistency by allowing court decisions to govern the same issues in subsequent stages of the same case." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1262 (9th Cir. 2020) (citing *Am. Civil Liberties Union v. F.C.C.*, 523 F.2d 1344, 1346 (9th Cir. 1975)). "For the doctrine to apply, the issue in question must have been

1  decided either expressly or by necessary implication in the previous disposition." *Thomas*,
2  983 at 154 (internal quotations and alterations omitted). If the issue in question has already
3  been decided, then reconsideration of the order is generally only permitted if "the prior
4  decision is 'clearly erroneous' and enforcing it would create 'manifest injustice';
5  intervening, controlling authority encourages reconsideration; or substantially different
6  evidence is produced at a later merits trial." *East Bay Sanctuary Covenant*, 950 F.3d at
7  1262.

8  **III.    Discussion**

9          In light of the procedural history of this case and the applicable legal framework,
10  the conclusion here is straightforward.   As third parties to the ongoing forfeiture
11  proceedings, Defendants have had and continue to have adequate avenues from which to
12  argue for the return of their interests.  They have also not made the requisite showing of
13  need for funds to pay counsel in this case.  Accordingly, the Court will deny Defendants'
14  Motion at this time.

15          **A.    The Statutory Procedures Available to Third-Party Claimants in
16                  Forfeiture Proceedings Adequately Protect Defendants' Alleged
17                  Interests**

          First, as third-party claimants in the related criminal and civil forfeiture proceedings,
18  the Defendants will be able to employ the procedures set out in 21 U.S.C. § 853(n), Rule
19  32.2(c), 18 U.S.C. § 983(a)(4)(A), (B), and Supplemental Rule G(5), all which  govern a
20  third party's ability to challenge the forfeiture of specific property.  Defendants have
21  offered no authority or procedure by which this Court may sidestep these procedures and
22  release the seized funds they contend are untainted.  *See e.g.*, *United States v. Nava*, 404
23  F.3d 1119, 1125 (9th Cir. 2005) (stating that "section 853(n) is the exclusive proceeding in
24  which third parties may claim interests in property subject to criminal forfeiture).  Notably,
25  Defendants have been repeatedly advised by the district court that the CDCA is the place
26  to address concerns with regard to the *in rem* property at issue there.  (*See* Doc. 401 at 56–
27  59 ("this Court finds that the defendants have a sufficient legal remedy for any challenges
28  to the seizure warrants issued by the Central District of California in that district"); Doc.

447 at 4 (stating that "any legal or equitable relief from the warrants issued by the Central District of California is properly sought in that district"); Doc. 559 at ("As this Court previously ruled, any disagreement with the CDCA's rulings should be taken up in that court."). Defendants' objection that they have never challenged these particular assets is meritless: the law of the case doctrine applies with full force to the issue of whether this Court may review the seizures at issue there. *See Thomas*, 983 at 154 ("For the doctrine to apply, the issue in question must have been decided either expressly or by necessary implication in the previous disposition."). Nothing in these prior decisions was clear error. Indeed, Defendants' attempt to again contest those seizures in this Court is somewhat confusing as they are actively involved in protecting their claimed interests there. Defendants have filed verified claims of interest, challenged the seizures, and sought dismissal of the FAC in that action. The CDCA court has informed Defendants that additional proceedings will be needed to assess the veracity of the forfeiture claims and is currently reviewing Defendants' request to lift the stay they requested.

Similarly, Defendants have filed verified petitions to assert their interests in the assets subject to the POFs in the *Backpage* and *Ferrer* proceedings. A status conference on the ancillary hearings in those Proceedings is currently scheduled for January 11, 2022. The eventual ancillary proceedings will offer Defendants the opportunity to establish their superior ownership interests in the contested property and release of their funds.[6] *Lazarenko*, 476 F.3d at 648 ("Section 853(n) provides the process for vindicating a third party's interest in forfeited property."). This Court will not leap over those statutory procedures because Defendants contend these various funds are untainted.

---

[6] Indeed, it is unclear to the Court at this point what ownership rights Defendants have with regard to the four categories of funds identified in their Motion. A defendant has "no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice." *Caplin & Drysdale*, 491 U.S. 617, 626 (1989). If Backpage or Ferrer has superior rights to the seized assets and has stipulated to their forfeiture, then Defendants have no grounds at all to seek their release. Notably, the CDCA court has already determined that as shareholders of the account owner, Moving Defendants do not have standing to raise third-party claims to the Compass Funds. The CDCA court accordingly granted the Government's motion to strike those claims.

1

2

**B.      At This Time, Defendants Have Not Met Their Burden of Showing a**
**         *Mansanto* Hearing Is Warranted**

3

The parties heavily dispute whether Defendants must make a showing that they need

4

funds to pay counsel before they can challenge the underlying lawfulness of the asset

5

seizures in question.  After a thorough review of the relevant case law, the Court concludes

6

that a showing of need is required, and Defendants, who hang their hat on the contention

7

that the funds are untainted, have failed to make it in their moving papers.

8

In 1989, the Supreme Court resolved two cases involving a defendant's overlapping

9

right to due process under the Fifth Amendment and assistance of counsel under the Sixth

10

Amendment.  In *Caplin & Drysdale v. United States,* the Court rejected the claim that a

11

convicted defendant was deprived of his Sixth Amendment right to counsel when the

12

forfeiture of tainted assets had prevented him from paying his attorney of choice.  491 U.S.

13

617 (1989).  In *United States v. Monsanto*, the Court held that a defendant who had yet to

14

be convicted likewise lacked a Sixth Amendment right to use tainted assets that were seized

15

pretrial to pay legal fees.  491 U.S. 600 (1989).  The *Monsanto* Court reasoned that the

16

government could seize assets before trial that a defendant intended to use to pay for an

17

attorney of his or her choice, so long as probable cause existed "to believe that the property

18

will ultimately be proved forfeitable."  *Id.* at 615.  *See also id.* at 607 (pre-trial restraint of

19

assets does not give rise to a Sixth Amendment violation so long as the seizure is "based

20

on a finding of probable cause to believe that the assets are forfeitable").

21

As noted, under federal forfeiture law, probable cause to believe that an asset is

22

forfeitable has two parts: "[t]here must be probable cause to think (1) that the defendant

23

has committed an offense permitting forfeiture, and (2) that the property at issue has the

24

requisite connection to that crime."  *Kaley*, 517 U.S. at 323–24, 326 (citing § 853(a)).

25

Although the *Monsanto* Court "declined to consider 'whether the Due Process Clause

26

requires a hearing' to establish either or both of those aspects of forfeitability," lower courts

27

since then have generally provided a hearing to any indicted defendant seeking to lift an

28

- 12 -

asset restraint to pay for a lawyer," i.e., a *Monsanto* hearing.  *Kaley*, 571 U.S. at 324.[7]

The Due Process Clause does not guarantee that any and every request for a *Monsanto* hearing must be granted, however.  *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("Due process does not automatically require a hearing and a defendant may not simply ask for one.").  The Ninth Circuit has found that in making a request for a *Monsanto* hearing, a court must decide whether "the moving papers filed, including affidavits, are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that a substantial claim is presented."  *Unimex*, 991 F.2d at 551; *United States v. Lindell*, 766 Fed. Appx. 525, 528–29 (9th Cir. 2019) (rejecting defendants' argument that district court erred when it refused to immediately release untainted IRA funds during the criminal proceedings because defendants "failed to clearly demonstrate that those funds were needed to pay for counsel of choice").  *See also Jones*, 160 F.3d at 647 (stating that "a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel[.]"); *United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013) (finding that a court need not hold a hearing unless a defendant "demonstrate[s], beyond the bare recitation of the claim, that he or she has insufficient alternative assets to fund counsel of choice."); *Matter of Seizure of: Any and All Funds Held in Republic Bank of Arizona Accounts*, 2019 WL 8892585 (C.D. Cal. Dec. 20, 2019) ("Such a hearing is not automatic, however, and will be held only upon a properly supported motion by a Defendant.");  *U.S. v. Cobb*, 2015 WL 518548, at *5 (D. Nev. Feb. 9, 2015) (stating that "[e]ven if defendants were entitled to some funds for their legal fees, they failed to make the required threshold showing of what specific, definite funds are needed to pay for their counsel…[and] have also failed to provide any evidence showing they do not have access to unrestrained funds").

---

[7] In *Kaley*, the Court held that an indicted defendant is not constitutionally entitled to a pretrial hearing to contest grand jury's determination of probable cause that defendant committed offense.  *Id.*  (stating that on that issue, "[t]he grand jury gets the final word").  The *Kaley* Court declined, however, to opine on whether a defendant has a constitutional right to a hearing that the property at issue has the requisite connection to that crime, or the second query in the probable cause analysis.  *Kaley*, 571 U.S. at n. 3. As noted, many lower courts have assumed that upon the requisite showing, a defendant is entitled to judicial review of that determination.

1       Defendants argue that the Supreme Court's decision in *Luis*, which prohibited the
2   government from retaining untainted assets needed to pay for counsel, eliminated the
3   requirement that a defendant establish that they need seized assets to pay for counsel before
4   a *Monsanto* hearing.  After *Luis*, Defendants argue all they need to assert is that the funds
5   are not traceable to the crimes in the indictment, i.e., are untainted.  The Court disagrees.

6       In *Luis*, the defendant was charged with crimes related to healthcare fraud. 136 S.
7   Ct. 1083 (2016).  The Government alleged that the defendant had fraudulently obtained
8   nearly $45 million, much of which she had already spent.  *Id.* at 1087.  In an effort to
9   preserve the $2 million that remained, the Government sought, and the trial court issued, a
10  pretrial order freezing those assets under 18 U.S.C § 1345(a)(2) "for payment of restitution
11  and other criminal penalties."  *Id.* at 1088.  Importantly, there was no dispute between the
12  government and the defendant that the freeze order would prevent the defendant from using
13  her *own* funds—funds unconnected to the crime—to hire an attorney to represent her in the
14  criminal case.  *Id.* ("The Government and Luis **agree** that this court order will prevent Luis
15  from using her own untainted funds, i.e., funds not connected with the crime, to hire
16  counsel to defend her in her criminal case.") (emphasis added).   The district court
17  nevertheless stated "that there is no Sixth Amendment right to use untainted, substitute
18  assets to hire counsel." *Id.*  The Supreme Court disagreed.  In its decision, the Court held
19  that the "pretrial restraint of legitimate, *untainted* assets needed to retain counsel of choice
20  violates the Sixth Amendment."  *Id.* (emphasis added).

21      *Luis* is inapplicable here.  Unlike the assets at issue in Defendants' Motion, there
22  was no question that the seized assets in *Luis* were untainted.  As a result, the Court did not
23  even address the issue of what due process rights may be implicated if the defendant were
24  not allowed an opportunity to show that the funds were not traceable to her crimes.   Here,
25  in contrast, pursuant to the plea agreements entered into by Backpage and Ferrer, the
26  stipulated POFs establishing the forfeitability of the assets, and probable cause findings by
27  magistrate judges that the assets are traceable to the crimes alleged, the assets in question
28  are presumably tainted.  *Kaley*, 571 U.S. at 371 ("So again: With probable cause, a freeze

is valid."). Because the assets have been seized pursuant to POFs and/or civil arrest warrants, Defendants' access to them is either as third-party claimants under the applicable forfeiture procedural rules, or by asserting a legitimate need for the funds to pay for counsel in their upcoming criminal trial under *Monsanto*.

In their Reply brief, Defendants cite to a district court case out of the District of Columbia to support their related argument that "courts have reviewed probable cause findings even where no Sixth Amendment right is implicated." (Doc. 1390 at 5 (*citing United States v. Bikundi*, 125 F. Supp. 3d 178, 190–91 (D.D.C. 2015)). Unlike here, the court in *Bikundi* concluded that the procedure afforded in Rule 32.2 did not preclude the defendant from invoking his due process rights before trial to test the sufficiency of probable cause for the forfeitability of seized property. *Bikundi*, 125 F. Supp. 3d at 190. The Court simply disagrees with *Bikundi*'s conclusion on this issue—and is certainly not bound an out-of-circuit district court's contrary conclusion. Notably, however, the *Bikundi* court then applied the factors in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine whether the defendant there was entitled to a post-restraint, pre-trial hearing on the traceability of assets seized pursuant to a probable cause warrant when no Sixth Amendment right to counsel was implicated. *Id.* at 189–91. The court found that where the government's *own* affidavit supporting the seizure warrant for the assets in question "expressly disclaimed that the Disputed Funds are traceable to the charged criminal activity," some procedural safeguard to reduce "the risk of erroneous deprivation" was warranted. *Id.* at 190. The court ultimately concluded that "while the defendant's requested procedure of a 'pretrial evidentiary hearing,' is not warranted, an alternative procedural safeguard of pretrial judicial review of the [affidavit] is." *Id.* The smoking gun evidence present in *Bikundi*—i.e., the government's affidavit acknowledging that the seized funds were not traceable to the alleged crimes—is simply not present here. In sum, the facts and reasoning in *Bikundi* are distinguishable and do not give the Court reason to allow Defendants the opportunity to relitigate the probable cause findings on the traceability of these assets without a showing that their Sixth Amendment rights may be

violated, which may in fact be contrary to Ninth Circuit precedent.

The question then remains as to whether Defendants have made the requisite showing for this Court to grant a hearing on the matter. The Court finds that they have not. As noted by the Government, Defendants' Motion "does not attach any declarations from Defendants explaining how much they need to pay counsel or prepare for trial, what their trial budget might be, what expenses they intend to pay from any released funds, what would become of any unspent or excess funds not ultimately paid to counsel, or even swearing that they will actually use any funds released to pay counsel." (Doc. 1384 at 12). In their Reply, Defendants indicate they have sought *in camera* review of Declarations by defense counsel showing that counsel is "currently owed substantial amounts of earned legal fees for work that has already been done and costs that have already been incurred." (Doc. 1390 at 4). They also say these Declarations "provide an estimate for the cost of a second trial." (*Id.*) The Court rejects Defendants' request to review these documents *in camera*, and notes that declarations from defense counsel attesting to non-payment for services rendered says very little about Defendants' financial resources and ability to afford counsel. Defendants' right to a *Monsanto* hearing must be established with "sufficiently definite, specific, detailed and nonconjectural" averments of Defendants' inability to pay the counsel of their choosing. *Unimex,* 991 F.2d at 551.

Accordingly, the Motion is denied without prejudice. Defendants may move for a *Monsanto* hearing if they can make a *prima facie* showing that their net financial resources and income are insufficient to pay for counsel. To the extent Defendants seek to file any evidence supporting such an assertion under seal, they must clearly articulate the basis for doing so. Generalized assertions that documents contain attorney-client privileged information will not be considered cause to allow the filing of such documents under seal.

**IT IS ORDERED** that Defendants' Motion to Partially Vacate Seizure Warrants and Release Funds (Doc. 1366) is **denied**.

…

…

- 16 -

1       **IT IS FURTHERED ORDERED** that the Government's Motion for Leave to File

2    a Surreply (Doc. 1397) is **denied**.

3       Dated this 10th day of December, 2021.

Honorable Diane J. Humetewa
United States District Judge

- 17 -