GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> James Larkin (2), Scott Spear (3), <br><br> Defendants. | CR-18-422-PHX-DJH-2, 3 <br><br> **UNITED STATES' RESPONSE TO DEFENDANTS LARKIN AND SPEAR'S MOTION TO CONTINUE TRIAL** <br> **[Doc. 1526]** |

**Preliminary Statement**

The time has come to try this case. The grand jury indicted Defendants in March 2018—five years ago. (Doc. 1.) The Court set trial for January 2020, and then continued that date four times—at Defendants' request. (Docs. 862, 990, 1058, 1113.) In October 2022, Defendant James Larkin discharged two lawyers who had spent years preparing for trial—and who actually took the case to trial in September 2021. (Doc. 1488.) After the Court set a new firm trial of June 20, 2023 (Doc. 1494), Larkin hired three new lawyers. (Doc. 1509.) This Court then held a status conference at which it addressed new counsel and expressed "I want to make sure and get on the record your acknowledgment of a number of things." (Ex. A at 4.) The Court reminded new counsel of its obligation to "meet[] with prior counsel to obtain all of the discovery and files." (Ex. A at 4.) Given the age of the case, the Court made new counsel "firmly aware . . . I do not intend to entertain any Motion to Continue absent extraordinary circumstances, and those circumstances may be related to a client's health issue or something to that effect, but I want to make sure that you and your co-counsel are completely aware of your obligations to this Court." (Ex. A at 5.)

Despite that clear warning, Larkin and Defendant Scott Spear (who also has a new lawyer, though he retained his attorney who represented him in the first trial) have filed a motion to continue that fails to show any "extraordinary circumstances." Upending the trial schedule and postponing trial to the cusp of the 2023-24 winter holidays will inconvenience and prejudice the United States, victims, witnesses, the Court, and the public. Several continuances have already been granted, and further delay is not warranted.

Moreover, Larkin's and Spear's lawyers are not starting anew. Larkin's new counsel is stepping into the shoes of a legal team that extensively worked this case up for trial. Spear's new attorney is co-counsel with Bruce Feder—who has worked on this case from the start. And Larkin's and Spear's new lawyers have long had access to the public court filings in this case—including two speaking indictments (Docs. 1 and 230); many

motions—including seven motions to dismiss (*see* Docs. 559, 793, 840, 844, 946, 1168, 1444); and transcripts from the first trial, which include the United States' opening statement and the testimony of four government witnesses. (Docs. 1341-1347.)

Notwithstanding their ready access to a roadmap of the government's case, Larkin and Spear assert that a continuance until the end of 2023 is needed because this case involves "millions of documents, hundreds of witnesses, and novel questions of law." (Mot. at 2.) But their motion does not explain how these bare-bones assertions justify more delay. The production of large amounts of electronically stored information cannot support such relief where, as here, the United States produced that evidence in industry-standard, electronically-searchable format, provided indices to allow the defense to focus their review, highlighted key documents that support the government's case, and assisted with technical questions. (*See* Doc. 273 at 4; Doc. 294 at 2-6; Doc. 880 at 1-2, 6.)[1] Moreover, the parties have not disclosed "hundreds" of trial witnesses, and many issues have been thoroughly litigated. The motion to continue should be denied.

In response to the Court's March 9, 2023 order directing the United States to address whether Defendants' Lacey and Larkin should be severed (Doc. 1527), the Court has rejected a motion to sever, and all six Defendants should be tried in a single trial in this conspiracy case, as discussed below.

---

[1] As the United States explained in 2020:

> [I]t has clearly been evident since the outset of this case (as is the case in high-volume discovery cases) that review of the millions of pages of discovery produced does not require counsel to manually review each page. In fact, immediately after indictment, the prosecution team met and conferred with Defendants to discuss how the ESI in this case would be produced. (*See* Doc. 273-2 at 5.) During this process, everybody agreed that it would be acceptable for the government to produce ESI in an industry-standard format—word-searchable load files that could be reviewed using Relativity, a commonly-used discovery platform. (*See* Doc. 273-2 at 5-6.) During the April 20, 2018 status conference, the government specifically discussed the plan to disclose the ESI in a Relativity-accessible format. (*See* Doc. 137, Tr. 4/30/18 at 5-6.) Defendants agreed to this approach. (*See* Doc. 137, Tr. 4/30/18 at 1-14.)

(Doc. 880 at 6.)

## **Argument**

**I.     The United States Opposes Severance.**

The United States opposes any severance. The parties have not discussed severing Defendants Lacey and Larkin for trial, but the United States doesn't believe that judicial economy would be served by holding multiple trials. The Supreme Court has made clear that judicial economy is better served when defendants who are indicted together are tried in a single case. *Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."). *See also United States v. Marcello*, 731 F.2d 1354, 1360 (9th Cir. 1984) ("Joint participation in a criminal activity generally means joint indictment and a joint trial."); *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980) ("Co-defendants jointly charged are, *prima facie*, to be jointly tried."). Indeed, "[j]oint trials 'play a vital role in the criminal justice system[,]' . . . promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id.* (citing *Robinson v. Marsh*, 481 U.S. 200, 209-10 (1987)). This is especially true when defendants are charged with conspiracy. *United States v. Jenkins*, 633 F.3d 788, 807 (9th Cir. 2011) ("because appellants were charged with conspiracy, a joint trial was particularly appropriate.").

Here, neither the circumstances nor judicial economy dictate that multiple trials should occur. First, Defendant Vaught previously filed a Motion to Sever. (Doc. 784.) After the United States opposed the motion (Doc. 808) and Vaught replied (Doc. 831), the Court denied severance (Doc. 878). The Court ruled that Vaught's "indicted conduct is logically interrelated to her codefendants' actions such that severance is inappropriate." (Doc. 878 at 3 (citing *United States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993).) The Court also reasoned that each Defendant is "being tried for their interrelated involvement at Backpage" and this "foundational factual similarity does not warrant severance, especially considering a liberal policy favoring initial joinder." (Doc. 878 at 4.) That logic holds true today.

Second, forcing the parties to try this case twice would cause further delay and force victim-witnesses to testify multiple times. Severance would create two 12-week trials, which fails to promote judicial economy and is counter to applicable rules. *Zafiro*, 506 U.S. at 540 ("Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid multiplicity of trials. . ."). Causing the victim-witnesses to testify multiple times does them a disservice. The Court should not entertain any severance.

## II.    Defendant Larkin and Spear's Motion to Continue Should Be Denied.

District courts have "a great deal of latitude in scheduling trials." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). This is so because of the inherent logistical difficulty in scheduling trials: "Not the least of [trial courts'] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Id.* at 11. Therefore, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Id.* at 11-12 (citation omitted).

When a defendant claims that their Sixth Amendment right to counsel is implicated, courts must balance several factors to determine whether denying a requested continuance is "fair and reasonable." *United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986). These factors include: "[1] whether the continuance would inconvenience witnesses, the court, counsel, or the parties; [2] whether other continuances have been granted; [3] whether legitimate reasons exist for the delay; [4] whether the delay is the defendant's fault; and [5] whether a denial would prejudice the defendant." *United States v. Thompson*, 587 F.3d 1165, 1174 (9th Cir. 2009) (quoting *Studley*, 783 F.2d at 938).[2] These factors weigh against granting the continuance that movants seek.

---

[2] Defendants cite the four-factor test of *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985), which largely overlaps with the above test. (Mot. at 2.)

1. *Further delay will inconvenience and prejudice the United States, the victims, the witnesses, the Court, and the public.*

"[D]elay is fatal to the vindication of the criminal law." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). This is because "[a]s time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote." *Flanagan v. United States*, 465 U.S. 259, 264 (1984). *See also United States v. Bert*, 814 F.3d 70, 83 (2d Cir. 2016) ("[T]here is a risk [of] loss of important evidence" if a trial is unduly delayed. 'Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'").

This case has been pending for five years and the June 20, 2023 trial date has been set for several months. (Docs. 1, 1494.) The government has expended significant resources with the expectation that trial will begin on June 20, 2023. Although the Government intends to call fewer witnesses than anticipated in the September 2021 trial, many witnesses will be travelling from out of state and have cleared their calendars to be present for trial. Subjecting the attorneys, agents, and witnesses to still further trial delay is not a mere "inconvenience"—it causes real prejudice.

In addition, the victims have a right conferred by statute to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7) ("Crime Victims' Rights Act" or "CVRA"); *see also* 18 U.S.C. § 3161(h)(7)(A). The superseding indictment contains 17 select victim summaries. (Doc. 230, ¶¶ 160-176.) Four victims were murdered or killed as a result of being trafficked on Backpage, and their surviving family members or lawful representatives stand in their shoes for purposes of the CVRA. 18 U.S.C. § 3771(e)(2)(B). (Doc. 230, ¶¶ 165, 173, 174, 175.) The victims are seeking to put this case behind them to heal and focus on their future, and they deserve trial without more delay.

The Court has set aside several months of its calendar for the June 2023 trial, which is anticipated to run about 12 weeks. (Ex. A at 4.) *See United States v. Pemkova*,

731 F. App'x 620, 623-24 (9th Cir. 2018) (inconvenience cuts against a continuance where granting the motion required rescheduling a nine-day trial involving witnesses from around the country, in a case that had been pending for nearly seven years; "[b]y contrast, our cases finding an abuse of discretion [for denying continuances] generally involve only short delays or the rescheduling of very brief proceedings") (collecting cases). Given the anticipated length of trial, the number of witnesses involved (many who require travel), the long pendency of this case, and the prolonged period of the requested continuance, considerations of inconvenience tip sharply against granting movants' requested delay here. Moreover, granting this motion—which seeks a new trial date of December 18, 2023 (Mot. at 5)—could open the door to still further delays to accommodate winter holiday schedules or other circumstances.

The need to hold firm to the June 2023 trial date is also supported by the public's strong interest in prompt trials rooted in the Sixth Amendment. "It is axiomatic that the Sixth Amendment right to a speedy trial belongs both to a criminal defendant and to the public. The 'societal interest in providing a speedy trial . . . exists separate from, and at times in opposition to, the interests of the accused.'" *United States v. Budovsky*, 2016 WL 386133, at *11 (S.D.N.Y. Jan. 28, 2016) (quoting *Barker v. Wingo,* 407 U.S. 514, 519 (1972)).

2. *Several continuances have been already granted*.

Defendants sought and obtained several continuances from the original trial date of January 2020, which was extended pursuant to at least four requests to September 2021. (*See* Docs. 862, 990, 1058, 1113.) This cuts against another continuance.

3. *Insufficient reasons exist for prolonged delay.*

Movants' new counsel are not starting from a blank slate. Larkin's new lawyers are stepping into the shoes of another law firm[3] that worked up the case for several years

---

[3] For more than four years, Larkin was represented by Bienert Katzman Littrell Williams LLP (*compare* Doc. 138 (May 9, 2018 notice of appearance) *with* Doc. 1488 (Oct. 30, 2022 motion to withdraw), which—according to its website—is a "top trial boutique" firm. https://bklwlaw.com/about/ (last visited Mar. 13, 2023).

and took the case to trial. They are not claiming any lack of cooperation or communication with prior counsel. (*Cf.* Doc. 1521.) And Spear remains represented by Bruce Feder, who has been working on this case since April 2018—even though Spear is now also represented by CJA counsel. (Doc. 27.) This Court "cannot overlook the benefit . . . derived from [former counsel's] prior years of work." *United States v. Mikhel*, 889 F.3d 1003, 1035 (9th Cir. 2018) (affirming district court's denial of defendant's motions to continue his capital murder trial to give new co-counsel more time to prepare, where trial was originally scheduled for 2002 but was continued several times to 2006, and new counsel benefitted from predecessor's many years of work).

Further, Defendants Larkin and Spear were placed on notice of the June 2023 trial date several months ago (Doc. 1494), giving them more than sufficient time to organize their resources and efforts in preparation for trial. *See Budovsky*, 2016 WL 386133, at *11 ("There is also an independent virtue in setting a firm trial date and enforcing it. . . . A firm trial date encourages all parties to assess the strengths and weaknesses of their case in a timely manner and permits the parties to organize their resources and efforts to prepare for trial when the defendant elects that course.").

While movants cite the production of "millions of documents" as a reason for delay (Mot. at 1), the scope of discovery is not news. (*See* Ex. A at 5 (The Court: "You're going to find the discovery to be voluminous.").) By January 2019, the United States had produced about 7.8 million documents in discovery. (Doc. 444.) As in many large document cases, "no attorney or team of attorneys could meaningfully review all of it even with years to prepare for trial." *Budovsky*, 2016 WL 386133, at *12. Rather, the United States has done here what the government has done in similar cases—it provided an indictment that identified its theories and discussed some of the most important pieces of evidence; provided the defense with discovery indices and collections of "hot documents": and promptly "responded to the defense's requests for assistance in

navigating the universe of discovery in this case." *Id. See also, e.g., United States v. Gross*, 424 F. Supp. 3d 800, 804, 807 (C.D. Cal. 2019) (denying motion for continuance where the government produced the vast majority of its discovery in searchable electronic format, and provided indices and collections of key documents supporting its case-in-chief). The scope of discovery alone is not a sufficient reason for further delay.[4]

The motion also suggests that if "Counsel" (for Larkin) "spent only five minutes reviewing each [of the 19,000 documents that Larkin claims comprise the United States' "nearly 2,000" trial exhibits], for eight hours a day, it would take approximately 197 days to get through these trial exhibits." (Mot. at 2-3.) Even assuming the accuracy of these calculations, Larkin is now represented by three attorneys; if all three of them reviewed the exhibits, they would require 66 days—a timeframe that does not render the current trial date unreasonable.

The motion further asserts that this case involves "hundreds of witnesses" (Mot. at 1)—yet the United States disclosed 76 trial witnesses (CR 1314), and the government is not aware of other disclosures that would put the number of witnesses into "the hundreds." And the United States is endeavoring to streamline its trial presentation and call fewer witnesses at trial.

The motion also summarily asserts that this case involves "novel questions of law" (Mot. at 1), yet the Court has already resolved scores of defense motions over the last five years—and has made clear that "it will not accept any new motions unless based on new law or facts." (Doc. 1524 at 4.) This, too, is not a reason for more delay.

---

[4] Defendant's assertion that the court in *United States v. Gross*, 424 F. Supp. 3d 800 (C.D. Cal. 2019), granted a four-month continuance due to "voluminous discovery" misapprehends that case. (*See* Mot. at 3.) The court denied the defendant's motion to continue, but granted a shorter continuance based on an anticipated future production from the government and factors the defense disclosed in camera. While the continuance was for four months, the court took pains to point out that it did "not believe a continuance of this length is warranted, but as noted above, [its] current trial calendar does not permit a continuance to an earlier date." *Id.* at 807 n.7.

      4.    *The requested delay is attributable to Larkin's change of counsel.*

A criminal defendant's exercise of the right to hire counsel of choice cannot "unduly hinder the fair, efficient and orderly administration of justice." *United States v. Walters,* 309 F.3d 589, 592 (9th Cir. 2002) (quotation and citation omitted). *Cf. United States v. Brandon Che Lee*, 465 F. App'x 627, 629 (9th Cir. 2012) (affirming denial of motion to substitute counsel where, *inter alia*, "[f]our different attorneys had already represented Lee, and each time Lee substituted new counsel, the new attorney requested a continuance to review the extensive discovery").

Here, after the Court stated on the record that Larkin's new counsel had filed a notice of appearance "after this Court ha[d] set a firm trial date" of June 20, 2022 that it carefully selected after "bearing in mind [the Court's] calendar as well as the age of the case," and after that the Court warned that it did "not intend to entertain any Motion to Continue absent extraordinary circumstances," Larkin moved for a six-month continuance—*because he had hired new counsel*. The Ninth Circuit has repeatedly affirmed the denial of motions to continue filed after clear warnings that such motions would be viewed with disfavor. *See, e.g.*, *United States v. Walter-Eze*, 869 F.3d 891, 908 (9th Cir. 2017) (affirming denial of motion to continue trial to allow substitute counsel more time to prepare, where the district court had "expressly warned" defendant and her new counsel that it would allow substitution only "if they represented that they would be prepared to go to trial on the date it was set," and the request came after four trial continuances involving over nine months of trial delay); *United States v. Steiniger*, 459 F. App'x 624, 626 (9th Cir. 2011) ("[W]hen the Steinigers first requested self-representation, the district court clearly warned them of the firm trial date. Accordingly, the district court's denial of the continuance requests should not have surprised the Steinigers.") (citations omitted).[5]

---

[5] Because Spear's new CJA attorney will be assisted by Spear's longstanding lawyer in this case (Bruce Feder), this factor also weighs against Spear's requested continuance.

- 10 -

5. *The Motion does not establish prejudice to Defendants*.

While the motion includes several summary assertions of prejudice, it contains no specific factual discussion of any particular prejudice movants might face. (*See* Mot. at 4.) For example, movants cite cases in which brief continuances were sought to obtain rebuttal experts, but they point to no specific experts that they believe they might need. *See, e.g., United States v. Barrett*, 703 F.2d 1076, 1081 (9th Cir. 1983) (Mot. at 3) (involving a failure to grant a brief continuance to obtain a rebuttal expert regarding an expert that the United States disclosed eight days before trial; while the Ninth Circuit held that the continuance should have been granted, it found the error harmless). The parties have already exchanged expert disclosures. (Docs. 422, 500, 538, 638.) New counsel do not specify what additional or different experts they believe are necessary. This is not prejudice.

6. *Facts specific to Spear's request*.

Defendant Spear's argument that a continuance is justified, in part, because the United States delayed in sending his second attorney discovery isn't persuasive. As an initial matter, the United States is unclear why Spear's original (and ongoing) co-counsel in this case, Mr. Feder, did not provide Mr. Kessler with access to all the discovery. Defendant Larkin's previous counsel, who are no longer associated with this case, sent all discovery to his new attorneys. (Doc. 1521 at 1; Doc. 1526 at 4.)  Mr. Feder is still counsel of record for Defendant Spear[6], so sharing the discovery materials seems appropriate. In all events, the United States has worked with Mr. Kessler to provide him with discovery as detailed below.

On Sunday, January 22, 2023, Mr. Kessler wrote to counsel requesting the United States re-produce all discovery to him. The next day, on January 23, 2023, the United

---

[6] Mr. Feder is now retained as *Knapp* counsel. *See Knapp v. Hardy*, 523 P.2d 1308 (Ariz. 1974) (permitting indigent defendant to receive services from privately retained attorney who associates with appointed counsel).

States emailed Mr. Kessler's office, which led to a phone call two days later to discuss the most efficient method for producing discovery. On that call, the United States provided a discovery overview, and requested a hard drive from Mr. Kessler so the United States could download all disclosures produced by the United States Attorney's Office in this matter. Later that day, the United States emailed Mr. Kessler's office a discovery index.

The United States received the hard drive from Mr. Kessler's office the week of January 30, 2023, and began downloading the discovery the next week. On February 15, 2023, the United States sent an email informing Mr. Kessler's office that the discovery download to the hard drive was still in process and additional time was needed. The United States also attached a filing that referenced "hot docs" that may be relevant to Mr. Kessler's trial preparation. (*See* Doc. 696-2 at 3; Doc. 696-3 at 2; Doc. 696-4 at 3.) On February 22, 2023, the hard drive download was completed. On February 23, 2023, the United States sent the hard drive to Mr. Kessler's office for delivery the next day. On February 27, 2023, Mr. Kessler's office informed the United States that they were unable to open any files from the drive.[7] The next day, on February 28, 2023, the United States began uploading the discovery to USAfx, a cloud-based file-sharing platform, and finished uploading all discovery materials produced by the United States Attorney's Office on March 9, 2023. The United States worked diligently to transmit discovery to Mr. Kessler's office. These facts do not necessitate a continuance.

## Conclusion

For all these reasons, Defendants Larkin and Spear have not shown that a six-month continuance of trial from June to December 2023 is fair, reasonable or necessary. Their Motion to Continue Trial (Doc. 1526) should be denied, and this matter should proceed to a joint trial of all Defendants commencing on June 20, 2023.

---

[7] Likely this means the hard drive was corrupted, which can sometimes occur during transit.

Respectfully submitted this 14th day of March, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

 *s/Kevin Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER KOZINETS
ANDREW STONE
DANIEL BOYLE
Assistant U.S. Attorneys

AUSTIN BERRY
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Daniel Parke*
Daniel Parke
U.S. Attorney's Office