Timothy J. Eckstein, 018321
Joseph N. Roth, 025725
Sarah P. Lawson, 036436
**OSBORN MALEDON, P.A.**
2929 North Central Avenue, 20th Floor
Phoenix, Arizona  85012-2793
(602) 640-9000
teckstein@omlaw.com
jroth@omlaw.com
slawson@omlaw.com

*Attorneys for James Larkin*

Additional counsel on following page

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 2:18-cr-00422-PHX-DJH |
|---|---|
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS SUPERSEDING INDICTMENT** |
| vs. | |
| Michael Lacey, *et al.*, | (Oral Argument Requested) |
| Defendants. | |

Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333
pcambria@lglaw.com
emccampbell@lglaw.com

*Attorneys for Michael Lacey*

Bruce S. Feder (AZ 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Rd., Suite 160
Phoenix, Arizona  85016
(602) 257-0135
bf@federlawpa.com

Eric Walter Kessler
KESSLER LAW OFFICE
6720 N. Scottsdale Rd., Suite 210
Scottsdale, Arizona  85253
(480) 644-0093
Eric.kesslerlaw@gmail.com

*Attorneys for Defendant Scott Spear*

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW P.C.
1875 Century Park E., Suite 2300
Los Angeles, California 90067
(310) 201-2100
glincenberg@birdmarella.com
gpanchapakesan.@birdmarella.com
aneuman@birdmarella.com

*Attorneys for John Brunst*

David S. Eisenberg
DAVID EISENBERG PLC
3550 N. Central Ave., Ste. 1155
Phoenix, Arizona  85012
(602) 237-5076
david@eisenbergplc.com

*Attorneys for Andrew Padilla*

Joy Malby Bertrand
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona  85252
(480) 656-3919
joyous@mailbag.com

*Attorneys for Defendant Joye Vaught*

The government accuses Backpage of having been the "internet's leading source of prostitution advertisements," and claims that Defendants "employed . . . business strategies that were specifically intended to promote and facilitate prostitution." Doc. 230 ("SI") ¶¶ 1, 10. After years of failed civil suits and criminal enforcement efforts, the government shut down the website and seeks to punish and impoverish its one-time owners and employees. The Superseding Indictment does not charge Defendants with any prostitution offenses, however. Instead, relying on the Travel Act, 18 U.S.C. § 1952, the government says it is enough to prove that Defendants, through Backpage, promoted or facilitated prostitution by hosting ads the Defendants knew, or should have known, might be associated with prostitution.

The government has always taken the position that, under the Travel Act, it "does not have to prove" that a state law was "actually violated." Doc. 1216-3 at 147 (proposed jury instruction). When Defendants suggested that the government must prove that each of them "knowingly did an act which the law forbids, purposely and intending to violate the law," the government responded that "[t]his is a misstatement of the applicable law. To be convicted under the Travel Act, one does not need to violate the underlying state law." *Id*. at 154. "Rather, a defendant must have acted with specific intent to 'facilitate the promotion' of the underlying unlawful activity. And 'facilitate' is given its ordinary meaning: to make easy or less difficult." *Id*.

But on November 2, 2022, in a matter pending before the D.C. Circuit, the government argued the opposite–that a charge of "promoting" or "facilitating" under the Travel Act is an aiding and abetting offense, requiring, among other things, proof that the defendant intended to facilitate the commission of a specific underlying criminal act. *See* Br. of United States in *Woodhull Freedom Found'n v. United States*, Case No. 22-5105, at 28-30 (D.C. Cir., Nov. 2, 2022) (asserting that "[t]he phrase 'promote or facilitate,' as used in the Travel Act, *is equivalent to 'aid or abet*'"

4

1    (emphasis added)).[1]   The government stated that "whatever meaning 'promote' or

2    'facilitate' might have in everyday speech, their meaning as terms of art in criminal

3    statutes, invoking traditional principles of accomplice liability, is established." *Id.* at

4    29.

5            As the government's position in *Woodhull* makes clear, the Travel Act cannot

6    be used to punish the promotion of "prostitution" in the abstract or theoretical assumed

7    prostitution offenses, but only conduct undertaken with the "specific intent to aid or

8    abet a specific crime under traditional principles of accomplice liability." *Id.* at 51.

9    Without proof that a defendant participated in a particular criminal venture with the aim

10   of making it succeed, there can be no aiding and abetting. *See, e.g.*, *Altamirano v.*

11   *Gonzales*, 427 F.3d 586, 594 (9th Cir. 2005) ("It is well-established that in order to aid

12   and abet another to commit a crime it is necessary that a defendant in some sort

13   associate himself with the venture, that he participate in it as in something he wishes to

14   bring about, that he seek *by his action* to make it succeed.") (cleaned up).   Moreover,

15   there can be no aiding and abetting without proof that an underlying offense was

16   committed. Indeed, notwithstanding the government's position on jury instructions in

17   this case, the Ninth Circuit has held that "[t]he existence of a state law violation is an

18   element of the violation of the Travel Act." *United States v. Hiatt*, 527 F.2d 1048, 1051

19   (9th Cir. 1975).

20           In *Woodhull*, the government has pressed its view that the terms "promote or

21   facilitate" as used in the Travel Act are "equivalent to" aiding and abetting because,

22   without that narrowing, a law making it a crime to "promote or facilitate" prostitution

23   would be overbroad and vague in violation of the First and Fifth Amendments. *See*

24   *Woodhull* Brief at 48-51, 57-58. While Defendants welcome the government's recent

25   confirmation in the D.C. Circuit that the scope and applicability of the Travel Act is not

26   boundless, this confirmation casts grave doubt on the indictment in this case.   The

27

28   [1] The government's brief in *Woodhull* is attached as **Exhibit A** (referred to for
     convenience as the "***Woodhull* Brief**").

1   government can no longer dispute that its charges of promotion or facilitation under the

2   Travel Act are aiding and abetting offenses that require proof of the intent to facilitate

3   the commission of a specific underlying prostitution offense.  *Id.* at 28-30.

4           Here, however, the Superseding Indictment fails to allege the elements of aiding

5   and abetting as required.  Rather, it charges 50 separate substantive Travel Act offenses

6   based on Backpage's publication of 50 ads, contending that each ad was likely for

7   prostitution, regardless of whether the text proposes an unlawful transaction.  SI ¶¶ 200-

8   01.  The indictment fails to allege that any ad was linked to a specific prostitution

9   offense, that any Defendant was aware of that specific offense, or that any Defendant

10  "intend[ed] to facilitate *that* offense's commission."  *Rosemond v. United States*, 572

11  U.S. 65, 76 (2014) (emphasis added).  A person (even a known prostitute) could not be

12  prosecuted solely on the allegation that she posted an ad stating, for example:

13  "HOTTEST in town!!!!!- 26," SI ¶ 201, Count 17.  Nor should the ad allow prosecution

14  of Defendants, who were several steps removed as alleged operators and owners of the

15  web platform where the ad was one among millions posted by third parties.  Clumping

16  50 such ads together in a single indictment does not cure the deficiency.  When an

17  indictment does not allege each required element, the government is relieved

18  unconstitutionally of the burden to prove every element of the offense.  *In re Winship*,

19  397 U.S. 358, 364 (1970).

20          The failure to allege the express and implied elements of the charged offenses

21  requires dismissal of the Travel Act charges.  Because the money laundering charges

22  hinge entirely on the purported Travel Act violations, they must also be dismissed.

23  Finally, the indictment should be dismissed if the grand jury was not instructed on the

24  essential elements of an aiding and abetting offense.

25  **I.     Pertinent background and allegations in the Superseding Indictment.**

26          The background facts regarding the parties and many details in the Superseding

27  Indictment have been discussed in past motions and orders and will not be repeated at

28  length here.  *See, e.g.*, Doc. 561 at 3-11; Doc. 793 at 2-7; Doc. 946 at 2-4.  The

1    background pertinent to the arguments raised in this motion is set forth below, accepting

2    the truth of the allegations of the indictment.

3    **A.    The Superseding Indictment's factual allegations.**

4    Backpage.com was an online classified ad site similar to craigslist.com.  SI ¶¶

5    20-21.  It replicated the "back pages" classified sections of weekly newspapers such as

6    the *Phoenix New Times*, which Defendants Lacey and Larkin founded.  SI ¶¶ 18-21.

7    Among other categories of ads (car sales, job postings and the like), Backpage users

8    could post in an "adult" section.  The Superseding Indictment contends that Defendants

9    were aware that "the overwhelming majority of the website's 'adult' and 'escort' ads

10   were actually ads for prostitution."  SI ¶¶ 9, 34.  The indictment includes "victim

11   summaries" of individuals featured in Backpage ads, SI ¶¶ 160-76, although there are

12   no allegations that any Defendant knew of the existence of any of those individuals or

13   the facts described.

14   The indictment further alleges that Backpage used various methods to increase

15   the number of adult ads (all of which the government characterizes as "prostitution"

16   ads).  *See* SI ¶¶ 35-44 (summarizing so-called "aggregation" business practice that

17   encouraged those placing ads on other websites, like Craigslist, to also place their ads

18   on Backpage); SI ¶¶ 45-67 (summarizing so-called "reciprocal link and affiliate

19   programs" business practices to increase adult ads through referrals from other websites

20   and affiliations with those who placed many ads on various websites); SI ¶¶ 11, 68-70,

21   77-96, 99-104 (describing Backpage's "moderation" policies—rules web platforms use

22   to filter and screen third-party content—and implementation efforts allegedly intended

23   to "conceal the true nature of the ads being posted"); *see generally* Doc. 793 at 4-5.

24   **B.    The Superseding Indictment's charges are tied to 50 ads.**

25   Count 1 charges Defendants with conspiracy to commit a violation of the Travel

26   Act, 18 U.S.C. § 1952(a)(3)(A) (Travel Act-Facilitate Prostitution).  SI ¶¶ 196-198.

27   The charge (like the Superseding Indictment as a whole) does not allege Defendants

28   conspired to promote or facilitate any specific prostitution offense, nor does it suggest

that promoting or facilitating a specific offense is an element of the Travel Act charges. Rather, counts 2-51 allege 50 separate Travel Act violations based on 50 ads published on Backpage.  SI ¶ 201 (listing Counts 2-51 and descriptions of the fifty ads).  As to each ad, the Superseding Indictment charges that Defendants:

> used the mail and any facility in interstate and foreign commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States, including but not limited to Title 13, Arizona Revised Statutes, Section 13-3214, and thereafter performed and attempted to perform an act that did promote, manage, establish, carry on, and facilitate the promotion management, establishment and carrying on of the unlawful activity, as follows . . .

SI ¶ 201.  For each count, the indictment alleges that Defendants "publish[ed] ad" on a particular date.  *Id*.  The 50 ads can be divided into three categories: (1) 15 ads the indictment says depicted individuals identified in the "victim summaries" (Counts 2,4-5, 12-17, 19-24); (2) 10 ads involving P.R., whom the government alleges was a prostitute known to a purported co-conspirator (Counts 3, 6-11, 18, 25-26); and (3) 25 ads that contain the term "GFE," which the indictment alleges is a "coded term for prostitution," while providing no further information about those 25 ads or any individuals associated with those ads (Counts 27-51).

The Superseding Indictment alleges that some Backpage-hosted ads led to acts of prostitution, but, critically, does not allege any prostitution offenses connected to *any* of the *charged ads*.  For example, the indictment does not allege that anyone responded to any charged ad, that sexual conduct occurred as a result of any charged ad, or that money was exchanged for sexual conduct as a result of a charged ad causing a prostitution offense under state law.  Moreover, the indictment does not allege that any Defendant knew of the existence of any of the charged ads, the persons associated with any of the charged ads, or the intent of any such persons to engage in prostitution offenses.  There is no allegation that any Defendant had any role whatsoever in Backpage's publication of any charged ad.

Counts 53-100 allege various money laundering offenses.  To support those

1   charges, the Superseding Indictment asserts that essentially all of Backpage's revenue

2   "constituted the proceeds of unlawful activity" because most of the ads on Backpage

3   were, according to the government, really associated with prostitution and published in

4   violation of the Travel Act.  SI ¶ 177.

5          **C.     Prior orders have not decided this issue.**

6          As the Court knows, this case has involved complex and lengthy litigation and

7   the Court has denied more than one motion to dismiss.  *See, e.g.*, Docs. 793, 840, 946.

8   In Doc. 840 (denying a motion to dismiss based on Section 230 and void for vagueness),

9   the Court stated, "the Travel Act does not require the government to allege Defendants

10  committed the underlying violation of state law."  Doc. 840 at 10.

11         Defendants agree that the Travel Act does not require proof that *they*

12  individually committed a prostitution offense in violation of state law.  The Travel Act

13  does, however, require proof that *someone* did, as "[t]he existence of a state law

14  violation is an element of the violation of the Travel Act" and the government must

15  allege and prove that "the underlying state law has been or could have been violated."

16  *Hiatt*, 527 F.2d at 1051.  This Court has not yet ruled on the question prompted by the

17  government's position, as articulated in *Woodhull*, that is implicated here—whether the

18  government's Travel Act charges here are aiding and abetting offenses, requiring the

19  government to prove, with respect to each charged ad, both that *someone* committed a

20  prostitution offense and that Defendants intended to facilitate the commission of *that*

21  specific prostitution offense.

22  **II.     Argument**

23         **A.     Legal standard**

24         The Fifth Amendment requires an indictment to set forth the elements of the

25  charged offenses.  *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988).

26  The indictment must "contain[] the elements of the offense charged" to "fairly inform[]

27  a defendant of the charge against which he must defend."  *Hamling v. United States*,

28  418 U.S. 87, 117 (1974).  In addition, "[t]o be legally sufficient, the indictment must

assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) (citing *Fleisher v. United States*, 302 U.S. 218 (1937)). The "failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005). "[T]he fact that an indictment may have tracked the language of the statute will not render it valid if it fails to allege an essential element of the offense or the minimum facts required to fulfill the purposes of indictments." *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979).

**B.  The Superseding Indictment does not allege two essential elements of the Travel Act charges.**

**1.  The Travel Act charges are aiding and abetting offenses. As such, essential elements of the crime are (a) the commission of an offense and (b) an intent to aid the commission of that offense.**

The Travel Act creates a federal offense for aiding and abetting a business enterprise's commission of state-law prostitution offenses. As with any aiding or abetting offense, to "aid and abet" (or using the Travel Act analogues "promote" and "facilitate") means that: (1) "someone else committed" an offense, (2) the defendant aided at least one element of the offense, and (3) the defendant acted "with the intent to facilitate" the criminal offense. Ninth Circuit Model Criminal Jury Instructions § 4.1 (2022) (aiding and abetting). Although a defendant's acts must only "facilitat[e] one or another element," the "state of mind" must "extend[] to the entire crime." *Rosemond*, 572 U.S. at 75-76. The intent "to facilitate that offense's commission . . . must go to the specific and entire crime charged." *Id*. at 76.

The government contends, however, that the existence of actual violations of state law are unnecessary and that Defendants do not "need[] the intent to violate the state prostitution offense before being found guilty." *See* Doc. 1216-3 at 147 (proposing jury instruction before first trial that "the United States does not have to

1    prove that the referenced states' laws were actually violated"); Doc. 1216-3 at 104

2    (disputing that "Defendants needed the intent to violate the state prostitution offense").

3    The government's statement on the law is wrong for several reasons.

4         ***First***, the government has now affirmatively taken the opposite position,

5    asserting that "[t]he phrase 'promote or facilitate,' as used in the Travel Act, is

6    equivalent to 'aid or abet.'" *Woodhull* Brief. at 28-29.  In *Woodhull*, the D.C. Circuit

7    is considering whether the Allow States and Victims to Fight Online Sex Trafficking

8    Act of 2017, 132 Stat. 1253 (2018) ("FOSTA") is unconstitutionally overbroad and

9    vague.[2]  FOSTA makes it a crime to "own[], manage[], or operate[] an interactive

10   computer service . . . with the intent to promote or facilitate the prostitution of another

11   person."  18 U.S.C. § 2421A.  To defend the law's constitutionality, the government's

12   primary argument is that "promote" and "facilitate" are "terms of art in criminal

13   statutes, invoking traditional principles of accomplice liability," and that "the phrase

14   'promote or facilitate,' as used in the Travel Act, is equivalent to 'aid or abet.'"

15   *Woodhull* Brief. at 28-29.  Consequently, says the government in *Woodhull*, there is no

16   constitutional problem because FOSTA's reach does not extend beyond someone who

17   "intentionally aids and abets the commission of crimes," and the "invocation of aiding-

18   and-abetting liability draws on settled legal concepts to provide adequate notice of what

19   the statute prohibits."  *Id*. at 2.[3]

20        Given this concession, the government cannot credibly contend here that it is

21   irrelevant whether state law was "actually violated," (Doc. 1216-3 at 147) or whether

22   Defendants intended the violation.  The "settled legal concepts" of "aiding and

23   abetting" and the "traditional principles of accomplice liability" definitively require, as

24   elements of the charge, proof of (1) commission of an offense by someone and (2) a

25   state of mind extending "to the specific and entire crime," *Rosemond*, 572 U.S. at 76.

26   Indeed, the government's *Woodhull* Brief cites (at 25) as evidence for its reading of the

27

28   ---
     [2] The court heard argument on January 11, 2023.  The court's decision is pending.
     [3] A transcript of the oral argument before the D.C. Circuit is attached as **Exhibit B**.

Travel Act and FOSTA the "influential LaFave treatise" which states: "The guilt of the principal must be established at the trial of the accomplice as a part of the proof on the charge against the accomplice.  If the acts of the principal [are not criminal,] then the accomplice may not be convicted."  Wayne R. LaFave, 2 *Substantive Criminal Law* § 13.3(c).  And "the accomplice must have a state of mind extending to the entire crime." *Id*. § 13.2(b) (quoting *Rosemond*).

     **Second**, the Travel Act's text confirms the government's position in *Woodhull*: for non-principals who are charged with "promoting" or "facilitating" unlawful activity, the Act is an aiding and abetting offense limited in scope by "traditional principles of accomplice liability."  *Woodhull* Brief at 29.  Indeed, the statutory text maps neatly onto the universal aiding-and-abetting elements reflected in the Ninth Circuit's Model Criminal Jury Instructions:

| Traditional Aiding and Abetting | Travel Act Text |
|---|---|
| Someone else committed an offense. | There is a "business enterprise involving . . . prostitution offenses" that "are committed." 18 U.S.C. § 1952(b)(i). |
| The defendant committed an act to aid at least one element of the offense. | The defendant "performs or attempts to perform an act" to "promote . . . or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3)(A). |
| The defendant acted with intent to facilitate each element of the offense. Ninth Circuit Model Criminal Jury Instructions § 4.1 (2022) | The defendant "travels in interstate" commerce or "uses . . . any facility in interstate . . . commerce with intent to . . . otherwise promote . . . or facilitate . . . any unlawful activity." 18 U.S.C. § 1952(a)(3). |

By adding the interstate commerce requirement, the Travel Act creates a federal offense for aiding and abetting a business enterprise's commission of certain state-law offenses, including prostitution offenses.  As with any aiding and abetting liability, the government must prove the existence of an offense and defendants' criminal intent.

     **Third**, the "existence of a state law violation is an element of the violation of the Travel Act." *Hiatt*, 527 F.2d at 1049, 51 (element satisfied when defendant's conduct

in managing "house of prostitution" would have violated Alaska prostitution laws).  As the Ninth Circuit has explained, this circuit along with "most circuits" "require[s] that the specific elements of the underlying law that constitute the unlawful activity be found as elements of the Travel Act offense."  *Myers v. Sessions*, 904 F.3d 1101, 1110 (9th Cir. 2018).  Even in Travel Act cases charging a principal offender, the Ninth Circuit has held that the government "must prove as part of the Travel Act charge that the defendant has or could have violated the underlying state law, and the defendant may assert any relevant substantive state law defense." *United States v. Bertman*, 686 F.2d 772, 774 (9th Cir. 1982) (principal charged with traveling interstate to bribe state official).  *See also United States v. Jones*, 909 F.2d 533, 538 (D.C. Cir. 1990) (reversing conviction of operators of escort service where jury instruction did not require "intent specified by the state [prostitution] laws with respect to each element of the escort service's allegedly unlawful activity"); *United States v. Goldfarb*, 643 F.2d 422, 426 (6th Cir. 1981) (holding that "as a predicate to a Travel Act conviction . . . the defendants must have engaged in some form of unlawful activity prohibited by the law of the State of Nevada" and noting that the Ninth Circuit is among courts requiring "proof of the commission or attempted commission of a state defined criminal offense" as an "essential element of a Travel Act conviction"); *United States v. Kahn*, 472 F.2d 272, 277 (2d Cir. 1973) (The "initial inquiry in a Travel Act case is whether the underlying activity violates a state law," including the "assertion of a particular state law defense.").

In other words, just like general aiding and abetting liability, the Travel Act requires proof of some violation of state law, and that the defendants intended to commit each element of the underlying offenses.

**Fourth**, if the Travel Act required less—if the government did not need to show the aiding and abetting of an underlying criminal offense—the statute would be unconstitutional as applied here.  Allowing a prosecution to move forward without requiring the government to allege or prove that the Defendants knew about, assisted,

13

and intended to assist in the commission of a specific criminal offense would be unconstitutional. *See, e.g.*, *United States v. Hansen*, 25 F.4th 1103, 1109 (9th Cir. 2022), *cert. granted*, 143 S. Ct. 555 (2022) (holding that statute criminalizing the encouragement of certain violations is unconstitutionally overbroad because, among other reasons, it is not limited to traditional aiding and abetting, which "requires someone to have committed an underlying criminal offense").

> **2.     The Superseding Indictment fails to allege the commission of an offense or an intent to aid the commission of that offense.**

The Superseding Indictment's Travel Act charges (2-51) fail to allege the key elements of aiding and abetting: (1) the commission of a state law violation and (2) a state of mind extending "to the specific and entire crime," *Rosemond*, 572 U.S. at 76. In a previous order, Judge Brnovich characterized the Travel Act charges as alleging "fifty instances where Defendants posted ads on Backpage.com to facilitate specific individual prostitutes or pimps involved in the business of prostitution." Doc. 946 at 8-9. Taking the government's allegations as true that the charged ads were really for illegal prostitution transactions, such allegations do not suffice.

First, no allegation links any of the fifty ads to a specific prostitution offense. For many ads (the "GFE" ads, Counts 27-51) the indictment alleges nothing other than the existence of the ad itself. For some ads (those linked with victim summaries, Counts 2,4-5, 12-17, 19-24, and those involving P.R., Counts 3, 6-11, 18, 25-26), the indictment alleges that the person who placed the ad generally engaged in prostitution. At most, the government alleges that individuals who may have committed *other* prostitution offenses also placed these ads. This does not prove that Backpage's publication of any charged ad was associated with an underlying state law prostitution offense, the "existence" of which is "an element of the violation of the Travel Act." *Hiatt*, 527 F.2d at 1051.

Second, the indictment fails to allege that Defendants' state of mind extended to the entire crime. Taking Arizona's law for example (the state statute cited in Counts 2-

51, SI ¶ 201), the crime of prostitution requires proof that a defendant "knowingly" "engag[ed] in or agree[d] or offer[ed] to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration." A.R.S. §§ 13-3214(A), 13-3211(5). "Sexual conduct" means "fondling" or "manipulating" the "genitals, anus or female breast," "sexual intercourse, oral sexual contact or sadomasochistic abuse." A.R.S. § 13-3211(8), (9). The Superseding Indictment does not allege that any Defendant knew about these charged ads, much less knew of any exchange for "sexual conduct under a fee arrangement" tied to any such ad. *See also Rosemond*, 572 U.S. at 78 (holding that in addition to the requisite knowledge, the accomplice must have had "advance knowledge").

The details matter. By eliding allegations of an actual violation of state law and requisite intent, the indictment makes no distinction between illegal and legal ads. A person (even a known prostitute) can place an ad for lawful services, including lawful sexual services. In Arizona, for example, it is legal to advertise for and pay someone to "privately model lingerie or to privately perform a striptease." A.R.S. § 13-1422(G)(7) (defining "escort", a lawful "adult oriented business"); A.R.S. § 9-500.10 (regulating escort advertising). The essential elements of aiding and abetting liability are necessary to separate non-criminal and criminal conduct, and the Superseding Indictment fails to allege them.

The Sixth Circuit's decision in *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173 (6th Cir. 1992), is highly instructive. Although not a Travel Act case, the indictment there was parallel in structure to the Superseding Indictment, "charging defendants, a garden supply store, its owners and an employee, with conspiracy to aid and abet the manufacture of marijuana," along with "89 overt acts" to further their customers' growing of marijuana. *Id*. at 175. Marijuana cultivation was illegal throughout the country at the time. The allegations linking the defendants' business with those in the cultivation business were significant, defendants: made and sold "equipment and supplies used for the illegal manufacture and cultivation of marijuana;"

"advertise[d] their products in 'High Times' magazine and other marijuana-related publications;" would "sell or give publications concerning the growing of marijuana and other marijuana-related publications to many of their customers;" provided "information and advice on the growing of marijuana" to customers; and would on occasion "accept marijuana or hashish in partial payment for equipment and supplies." *Id*.

Although the indictment alleged those defendants had reason to know that some of their customers might have been marijuana cultivators, the Court held that the indictment was still missing the "essential elements" of the "actual manufacture of marijuana" and defendants' "intent to further" that unlawful act. *Id*. at 178-79. A charge of conspiracy to aid and abet is only "legally and factually viable *when an underlying crime has been committed*." *Id*. at 180. Otherwise, there is only an agreement to "aid and abet a 'possibility,' or a 'criminal wish[,]' which simply isn't a crime." *Id*. at 178.

The Travel Act and conspiracy charges likewise fail here. As was the case in *Superior Growers*, the government merely stacks allegations about how defendants used legal means to target customers (i.e., Backpage publishing adult ads, allowing only facially lawful ads, and encouraging those who placed ads to place more ads) on top of allegations that the Defendants knew that Backpage's customers included "prostitutes" and "pimps." But that does not state an offense. "Charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning what . . . is called a dragnet to draw in all substantive crimes." *Id*. (cleaned up and citation omitted). Whatever innuendo or suspicion is in the indictment, "knowledge of the underlying crime and intent to further it are essential elements of a conspiracy to aid and abet a substantive crime." *Id*. Those elements are missing here.

This conclusion is consistent with the numerous cases addressing Backpage, in which other federal courts previously held that the publication of third-party ads on Backpage.com could not create liability, including under an aiding and abetting theory.

Those cases have been briefed previously and will not be recited again here.  *See, e.g.*, Doc. 561 at 4-8.  As but one example, in *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, the court held that the allegations that Backpage used marketing practices to increase ad placements, knew prostitutes used Backpage, and that "no reasonable person could review the postings in the adult categories and deny prostitution was the object of almost each and every ad" "do not describe the specific intent required for aiding and abetting" of a person's prostitution.  809 F. Supp. 2d 1041, 1050, 1054 (E.D. Mo. 2011).

The government has never cited a case, and we can find no case, involving any prosecution under the Travel Act anything like the theory charged here.  Rather, the reported cases invariably involve proof of a defendant's direct involvement in the business enterprise committing underlying prostitution offenses.  *See, e.g.*, *Hiatt*, 527 F.2d at 1049-50 (defendant had "active role" in management of "massage parlor" and "acknowledge[d] . . . was in fact a house of prostitution," including "maintain[ing] records of the women's earnings" and "monitor[ing] sessions through one-way mirrors . . . to verify the earnings"); *United States v. Monaco*, 700 F.2d 577, 579 (10th Cir. 1983) (defendants "owned and operated" "massage parlors" where employees "would perform sexual acts with customers for money" "as part of their work"); *United States v. Palfrey*, 499 F. Supp. 2d 34 (D.D.C. 2007) (denying motion to dismiss where indictment alleges defendant owned and managed a multistate prostitution business).  The Superseding Indictment does not allege the "essential elements" of aiding and abetting liability present in these other cases.

C.     **The failure to allege essential elements of the Travel Act charges compels dismissal of the Superseding Indictment.**

The failure to allege essential elements of the Travel Act charges requires dismissal.  The failure to allege these essential elements deprives defendants of notice of the charges against them and the ability to prepare a defense.  *Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988).  The failure to allege these elements means that the Fifth

Amendment's requirement of fair notice in an indictment is "not satisfied, since the essential facts set out in [the indictment] do not describe a crime." *Superior Growers*, 982 F.2d at 179 (citing *Hamling*, 418 U.S. at 117-18). The failure to allege the "occurrence of the underlying crime has to be an essential element" of an aiding and abetting offense (or a conspiracy to commit an aiding and abetting offense) and its absence requires dismissal. *Id*. at 178. Moreover, an indictment must "enable [the defendant] to plead double jeopardy." *Bernhardt*, 840 F.2d at 1445. After this case, would double jeopardy prevent the government from simply slotting in fifty more of the millions of Backpage.com ads, also without any allegation of aiding and abetting as to those specific ads and any underlying prostitution offenses?

The money laundering counts must also be dismissed. Judge Brnovich previously ruled the money laundering counts could stand regardless of a dismissal of the Travel Act counts. *See* Doc. 946 at 17 (order denying Def. Brunst's Motion to Dismiss). That ruling is clearly erroneous, as the money laundering counts all hinge on the Travel Act counts. Although "the government need not allege all the elements of the 'specified unlawful activity,' i.e., the underlying offense," Doc. 946 at 17, the proceeds must be derived from a specified unlawful activity. *See* 9th Cir. Model Crim. J. Inst. 18.7 (2022) (requiring the government to prove "the property was, in fact, derived from . . . the specified unlawful activity alleged in the indictment"). The contention of this motion is that the government has not alleged an underlying crime, and Defendants cannot be liable for laundering money that was not "criminally derived." 18 U.S.C. § 1957(a). The money laundering charges premised entirely on those underlying crimes cannot stand once the Travel Act foundation crumbles. *U.S. v. Garrido*, 713 F.3d 985, 989-99 (9th Cir. 2013) (reversing money laundering convictions because the "criminally derived property" was from a defectively alleged

1    underlying crime).[4]

2        **D.    The Court should also dismiss if the grand jury was given incomplete,
         misleading instructions of the elements of the Travel Act.**

3

4        The failure to accurately instruct the grand jury can require dismissal if the

5    erroneous instruction "substantially influenced the grand jury's decision to indict or" if

6    the error creates "grave doubt that the decision to indict was free from the substantial

7    influence" of the error.  *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010)

8    (describing standard for "errors brought to the district court's attention" before the end

9    of trial).  This occurs when the erroneous instructions are "flagrantly misleading" or

10   when the instructions fail to "at least impl[y]" "all the elements."  *United States v.*

11   *Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989) *overruled on other grounds by Midland*

12   *Asphalt Corp. v. United States*, 489 U.S. 794, 799-800 (1989).

13       Here, contrary to its position in *Woodhull*, the government has not alleged that

14   any of the Defendants published the charged ads with the intent to aid or abet specific

15   prostitution offenses (as opposed to "prostitution" in the abstract), and has urged that

16   proof of the existence of actual violations of law are unnecessary and that Defendants

17   do not "need[] the intent to violate the state prostitution offense" for conviction.  *See*

18   Doc. 1216-3 at 104, 147.  Given that, it is fair to assume that the government failed to

19   instruct the grand jury on the essential elements of aiding and abetting, which are

20   essential to the government's Travel Act charges.

21       The Court is in possession of the sealed grand jury instructions on the Travel

22   Act.  *See* Doc. 879 (ordering production for in camera review).  The Court should

23   review those instructions to determine if the grand jury was properly instructed that the

24
     ---
25   [4] The cases the government cites in opposition to an earlier motion to dismiss (Doc. 776
     at 16) stand only for the proposition that a defendant can be convicted of certain money
26   laundering offenses if he or she knows that the funds at issue were illegally derived,
     e.g., where the defendant is acquitted of a substantive drug offense but knew the funds
27   were derived from drug sales.  If the Court were to dismiss the Travel Act charges, then
     there would be no "specified unlawful activity" underlying the money laundering
28   charges.

                                              19

promotion and facilitation charged under the Travel Act required it to find that Defendants had aided and abetted the commission of specific prostitution offenses. If not, the Court should dismiss the indictment because it was procured through "flagrantly misleading" instructions that fail to instruct on "all the elements."

**III.   Conclusion**

The Superseding Indictment fails to allege the essential elements required to prove a crime under the Travel Act. The Superseding Indictment should be dismissed.

DATED this 30th day of March, 2023.

**OSBORN MALEDON, P.A.**

By      s/ Joseph N. Roth
        Timothy J. Eckstein
        Joseph N. Roth
        Sarah P. Lawson
        2929 North Central, 20th Floor
        Phoenix, Arizona  85012-2794

*Attorneys for James Larkin*

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By      s/ Paul J. Cambria, Jr. (w/permission)
        Paul J. Cambria, Jr. (*pro hac vice*)
        Erin E. McCampbell (*pro hac vice*)
        42 Delaware Avenue, Suite 120
        Buffalo, New York 14202

*Attorneys for Michael Lacey*

**FEDER LAW OFFICE PA**

By      s/ Bruce S. Feder (w/permission)
        Bruce S. Feder
        2930 E. Camelback Road, Suite 160
        Phoenix, Arizona  85016

**KESSLER LAW OFFICE**

By      s/ Eric W. Kessler (w/permission)
          Eric W. Kessler
          6720 N. Scottsdale Rd., Suite 210
          Scottsdale, Arizona  85253

*Attorneys for Scott Spear*

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW P.C.**

By      s/ Gary S. Lincenberg (w/permission)
          Gary S. Lincenberg
          Gopi K. Panchapakesan
          Ariel A. Neuman
          1875 Century Park E., Suite 2300
          Los Angeles, California  90067

*Attorneys for John Brunst*

**DAVID EISENBERG PLC**

By      s/ David S. Eisenberg (w/permission)
          David S. Eisenberg
          3550 N. Central Ave., Ste. 1155
          Phoenix, Arizona  85012

*Attorneys for Andrew Padilla*

**JOY BERTRAND LAW**

By      s/ Joy M. Bertrand (w/permission)
          Joy M. Bertrand
          P.O. Box 2734
          Scottsdale, Arizona  85252

*Attorneys for Joye Vaught*