1  Timothy J. Eckstein, 018321
2  Joseph N. Roth, 025725
   Sarah P. Lawson, 036436
3  OSBORN MALEDON, P.A.
   2929 North Central Avenue, 20th Floor
4  Phoenix, Arizona  85012-2793
5  (602) 640-9000
   teckstein@omlaw.com
6  jroth@omlaw.com
   slawson@omlaw.com
7
8  Attorneys for James Larkin

9            IN THE UNITED STATES DISTRICT COURT
10
              FOR THE DISTRICT OF ARIZONA
11

12  United States of America,

13                  Plaintiff,                    Case No. 2:18-cr-00422-PHX-DJH

14  vs.                                           **DEFENDANT JAMES LARKIN'S
                                                  UNOPPOSED MOTION TO AMEND
15  James Larkin (2), et al.,                     CONDITIONS OF RELEASE**

16                  Defendants.
17

18        Defendant James Larkin moves to the Court to amend the order setting his

19  conditions of supervised release (Doc. 93) under 18 U.S.C. § 3142(c)(1)(B) and (3) to

20  order removal of his ankle monitor as it is not the least restrictive condition to reasonably

21  assure both his appearance and the safety of the community.  18 U.S.C.  § 3412(c)(1)(B).

22        Counsel has spoken with U.S. Pretrial Services, which supports the removal of Mr.

23  Larkin's ankle monitor. Counsel has also spoken with the government, which does not

24  oppose this motion.  Excludable delay may occur as a result of this motion.  18 U.S.C. §

25  3161(h)(1).

26  **I.    BACKGROUND**

27        Mr. Larkin is seventy-three years old and has lived virtually his entire life in the

28  Phoenix area.  He has strong ties to the Phoenix community.  During his nearly 40-year

career in Arizona, Mr. Larkin built the *Phoenix New Times* into a national newspaper company and created for himself a reputation as an exceptional journalist, philanthropist, and community leader.[1]  Mr. Larkin has been married to his wife, Margaret Larkin, for over 25 years.  He is the father of six children.  He has two grandchildren.

Before the government filed the indictment in this case, Mr. Larkin offered to self-surrender.  Instead, the government proceeded by arrest warrant, arresting Mr. Larkin at the airport and escorting him off of a plane. (Doc. 183 at 3.)  Mr. Larkin has diligently complied with all conditions of his pretrial release.  For example, on December 22, 2019, Mr. Larkin broke his ankle.  The emergency room doctors removed his electronic monitor to treat his ankle, including a four-hour surgery to repair the fracture several days later.  During that time, Mr. Larkin followed all Court-ordered conditions, including reporting daily to the Pretrial Services Office by phone and filing with the Court periodic updates on his medical condition.  (*See* Docs. 833, 836, 845, 856, 875.)

Mr. Larkin has attended all necessary Court appearances, including the first trial, and has been in constant contact with his attorneys and his assigned pretrial services officers throughout the five-year pendency of this case.  As noted above, Mr. Larkin's Pretrial Services Officer supports the removal of his ankle monitor.

## II.     ARGUMENT

The Court "may at any time amend the order to impose additional or different conditions of release."  18 U.S.C. § 3142(C)(3).  Bail conditions must be the "least restrictive" means to "reasonably assure" the person's appearance and the community's safety.  18 U.S.C. § 3142(c)(1)(B).  The Court may "at any time amend the order to impose additional or different conditions of release."  18 U.S.C. § 3142(c)(3).  In determining appropriate conditions for release, the Court must consider three factors: the

---

[1] Mr. Larkin, along with co-defendant Michael Lacey, received a $3.75 million settlement as a settlement from civil rights violations perpetrated by former Maricopa County Sheriff Joseph Arpaio for their wrongful arrests.  Mr. Larkin and Mr. Lacey donated the funds to nonprofits aiding immigrants and refugees.

1    Defendant's history and characteristics, the potential danger to the community, and the

2    nature of the offense and the weight of the evidence against him.  18 U.S.C. § 3142(g).

3    All three factors weigh in favor of removal of Mr. Larkin's ankle monitor.

4        **A.      Mr. Larkin's history and characteristics support striking the ankle
            monitor condition.**

5

6        Mr. Larkin is 73 years old, owns property in Phoenix, and has strong familial ties

7    in Arizona.  He has no prior criminal convictions and no criminal history, other than a

8    wrongful arrest for publishing criticism of former Maricopa County Sheriff Joseph Arpaio

9    and pending criminal charges in California.  The majority of the California charges were

10   dismissed.    Mr. Larkin was released on a $250,000 bond, permitted to travel

11   internationally, and was not subject to location monitoring in the California case.

12       Mr. Larkin has a legitimate need for the removal of the ankle monitor.  He has

13   been subject to government monitoring for five years.  Wearing the ankle monitor

14   negatively effects his quality of life, making exercise more difficult, drawing stares, and

15   causing embarrassment wherever he goes.

16       Most importantly, Mr. Larkin has continuously proved his desire to fight the

17   charges against him.  He has attended all necessary Court hearings in the past five years

18   and has worked diligently to aid his defense team.

19       **B.      Removal of Mr. Larkin's ankle monitor does not increase the risk of
            danger to the community.**

20

21       Mr. Larkin poses no danger to the community.  According to the government's

22   theory of the case, Mr. Larkin poses a risk only if he continued to operate Backpage.com.

23   The government seized Backpage.com in 2018.  The website has not been operational for

24   five years.

25       **C.      The charges and weight of evidence do not necessitate continued ankle
            monitoring.**

26

27       The weight of the evidence is the least important factor for the Court's

28   consideration.  *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  In March

2018, the Grand Jury indicted Mr. Larkin and others on counts of alleged conspiracy (18 U.S.C. § 371), violations of the Travel Act (18 U.S.C. § 1952), and money laundering (18 U.S.C. §§ 1956, 1957).  In July 2018, the government obtained a superseding indictment to add additional charges under the Travel Act and money laundering statutes.  (*See* Doc. 230.)  In August 2021, Mr. Larkin and his co-defendants proceeded to trial, which ended when the Court granted the Defendants' motion for mistrial.

Multiple motions have addressed the deficiencies in the government's argument and proof.  (*See, e.g.*, Docs. 456, 561, 746, 782, 783, 940, 1355.)  A motion to dismiss is currently pending.  (Doc. 1577.)  The inherent problems with the government's case supports a finding that Mr. Larkin is not a flight risk and his ankle monitor should be removed.

## III.    CONCLUSION

Electronic monitoring is not a necessary condition to ensure Mr. Larkin's presence at trial or public safety.  Accordingly, Mr. Larkin respectfully requests that the Court amend the Order setting his conditions of supervised release (Doc. 93) to strike the condition of an electronic monitoring device.

A proposed Order accompanies this Motion.

DATED this 14th day of April, 2023.

OSBORN MALEDON, P.A.

By      s/ Joseph N. Roth
        Timothy J. Eckstein
        Joseph N. Roth
        Sarah P. Lawson
        2929 North Central, 20th Floor
        Phoenix, Arizona  85012-2794

        Attorneys for James Larkin

4