GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-18-422-PHX-DJH |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS SUPERSEDING INDICTMENT** |
| v. | **[Doc. 1557]** |
| Michael Lacey, et al., | |
| Defendants. | |

**Preliminary Statement**

Recycling arguments from several motions to dismiss that the Court rejected, Defendants now challenge—for the fourth time—whether the July 2018 Superseding Indictment (SI or Doc. 230) states an offense. For several reasons, Defendants' motion should be denied.

First, the motion is barred by law of the case. This is Defendants' *tenth* motion to dismiss. (Docs. 456, 561, 746, 782, 783, 940, 1239, 1250, 1355, 1421, 1557.) Three challenged the SI's sufficiency. (Docs. 561, 746, 783.) In denying those motions, the Court repeatedly determined that the SI properly alleges the essential elements of an indictment for Travel Act offenses. (Docs. 793, 840, 946.) The Court got it right—it correctly applied Ninth Circuit law to the detailed 92-page SI, which amply put Defendants on notice of the charges against them.

Defendants' latest motion is not based on new facts or law, but merely repackages the same arguments that this Court has rejected. It should be denied for this reason alone. (*See* Doc. 1524 at 4 and n.2.) Defendants' cited cases don't hold that the SI must allege any extra elements to survive a motion to dismiss. At most, they concern jury instructions and trial evidence—issues irrelevant to determining the sufficiency of the SI.

Second, Defendants have been recycling the same *Woodhull*-based arguments for the last four years. Those arguments involve a different statute (FOSTA) in a different lawsuit, and this Court has already found them irrelevant here. Moreover, the notion that the SI is deficient for not alleging aiding-and-abetting is a non-starter, because such elements are read into every federal indictment as a matter of law.

Third, even if the SI were required, as Defendants claim, to identify specific state crimes and Defendants' intent to aid their commission, the SI does precisely that. The Court has found the SI alleges that the ads in the SI were for prostitution, and advertising prostitution is illegal throughout the United States. The SI alleges Defendants intended to promote, and did promote, their customers' prostitution ventures by publishing these unlawful ads. Nothing more is required. This tenth motion to dismiss should be denied.

**Factual Background**

The SI's factual allegations must be taken as true at this stage. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The Court has summarized them multiple times. *United States v. Lacey*, 423 F. Supp. 3d 748, 752-57, 763-64; Doc. 840 at 1-3; Doc. 946 at 1-4. In brief, the SI alleges that www.Backpage.com (Backpage) was, until shut down in April 2018, notorious for being the internet's leading source of prostitution ads. (SI¶1.) Defendants Michael Lacey and James Larkin co-founded Backpage in 2004 with Carl Ferrer.[1] (SI¶¶2, 18-21.) Lacey and Larkin oversaw Backpage's policies and strategic direction from 2004-15. (SI¶2.) Defendant Scott Spear served as Executive Vice President of one of Backpage's parent companies. (SI¶3.) Defendant John Brunst served as Backpage's Chief Financial Officer. (SI¶4.) In 2015, they purported to sell Backpage for around $600 million, yet "retained a significant financial interest in" and "significant operational control over Backpage following these transactions." (SI¶¶30-31.) Defendants Andrew Padilla and Joye Vaught served as Backpage's Operations Manager and Assistant Operations Manager, respectively. (SI¶¶6-7.)[2]

The SI—consisting of 92 pages, 100 counts, and 211 paragraphs—alleges Defendants knew the vast majority of the "adult" ads on Backpage were for prostitution, and generated a half-billion dollars in prostitution ad revenue. (*See* SI¶¶ 1-17, 177.) Defendants used several strategies to corner the online market for prostitution ads, including: (1) aggregation, or creating free ads for—and enlisting business from— prostitutes who advertised on other websites (SI¶¶9, 34-44); (2) reciprocal link partnerships, which involved inserting links or allowing references to websites like The Erotic Review that published reviews of the sexual services and prices offered by

---

[1] On April 5, 2018, Backpage.com, LLC and four related entities pleaded guilty to money laundering conspiracy (CR18-00465, Docs. 4-1, 8, 10), and Ferrer—Backpage.com, LLC's CEO—pleaded guilty to conspiracy to violate 18 U.S.C. §§ 1952 (Travel Act) and 1956-1957 (Money Laundering). (CR18-00464, Doc. 4-1 at 1-2, and Doc. 7-1 at 1, 12-14.)

[2] Defendant Dan Hyer served as Backpage's Sales and Marketing Director. (SI¶5.) On August 18, 2018, Hyer pleaded guilty to Count 1 of the SI (18 U.S.C. § 371 Conspiracy to Violate 18 U.S.C. § 1952 (Travel Act). (Doc. 271.)

prostitutes advertising on Backpage (SI¶¶10, 34, 45-58); (3) affiliate relationships, through which Backpage paid fees to secure bulk prostitution advertising (SI¶¶59-67); and (4) moderation, the process of "sanitizing" customers' ads by removing the most overt references to prostitution without blocking the ad itself (SI¶¶11, 34, 68-152).

The SI alleges "Backpage derived the overwhelming majority of its revenue" from prostitution ads (SI¶¶1, 15, 177), while the rest of the website served as a cover. (SI¶112.) As Defendants admitted, Backpage's "adult" section became a hub for prostitution ads. (*See, e.g.* SI¶1, 9, ¶11 (Defendants "admitted—in internal company documents and during private meetings—that, despite [moderation], they knew the overwhelming majority of the website's ads still involved prostitution"); ¶11 (Lacey "bragged about the company's contributions to the prostitution industry").)

The SI contains scores of allegations that law enforcement, news organizations, anti-trafficking groups, the U.S. Senate, and others notified Defendants that the vast majority of Backpage's "adult" ads were for prostitution. (*See* SI¶¶74, 86, 97, 105, 109, 111, 127, 131, 134, 140-41, 144, 146, 151.) These notifications mirrored Backpage's internal admissions. (*See, e.g.*, SI¶¶11, 36, 54, 59, 68-69, 75, 81, 82, 85, 92, 94-96, 98, 107-108, 112, 114, 116, 118-119, 128, 132, 138, 139, 143, 145, 148-149.)

The SI includes 100 substantive counts. (SI¶¶195-211.) Count 1 alleges Lacey, Larkin, Spear, Brunst, Padilla, and Vaught, and others known and unknown, "knowingly and intentionally" entered into a conspiracy with others to commit Travel Act offenses and that "overt acts were committed in furtherance of the conspiracy," including those described in SI paragraphs 1-194. (SI¶¶195-99.) The count sets forth the statutory elements and the time-period when the conspiracy occurred. (SI¶¶195-99.)

Counts 2-51 allege Lacey, Larkin, Spear, Brunst, Padilla, and Vaught, and others known and unknown, "used . . . any facility in interstate . . . commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States,

including but not limited to [Ariz. Rev. Stat.] Section 13-3214, and thereafter performed and attempted to perform an act that did promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the unlawful activity" by publishing the 50 ads identified in Counts 2-51. (SI¶201.)

The 50 ads fall into three categories. First, 15 of the 50 depict specific victims who were repeatedly sold for sex through Backpage ads. (SI Counts 2, 4-5, 12-17, 19-24.) Backpage employees coached pimps or victims about the ads or edited them. (*E.g.*, SI¶¶ 160, 163-64, 166, 170, 172.)

Second, 10 of the 50 ads were posted by P.R., who communicated extensively with Ferrer, a co-conspirator. (SI Counts 3, 6-11, 18, 25-26.) Her ads used coded prostitution terms such as "50 Red Roses Special" to show per-session pricing of $50. (SI¶ 132; *see also* SI¶¶160-61, 201.) She corresponded with Ferrer about Backpage's removal of explicit photos from her ads; he restored her posting privileges and advised her on how to get her ads published on Backpage. (SI¶ 132.) Padilla and Vaught instructed another employee to "dig into" her difficulty posting nude pictures. (SI¶ 132.) P.R. posted over a dozen ads from 2012 to 2015. (SI¶132.) The SI shows Backpage knew since 2010 that P.R. was a prostitute, and affirmatively helped her post ads. (SI¶132.)

Third, the remaining 25 ads contain "GFE" (shorthand for "girlfriend experience"). (SI Counts 27-51.) Defendants, including Spear, Padilla, and Vaught, acknowledged "GFE" is a "coded sex act for money" term and one of several "solid sex for money terms."" (SI¶¶148-149.) Several reference reviews on websites like The Erotic Review or include per session pricing. (SI Counts 29, 31, 32, 35-36, 47.)

By 2015, the credit card companies stopped processing payments for Backpage and some banks closed Backpage's accounts out of concern they were being used for illegal purposes. (SI¶15.) Defendants pursued an array of money laundering strategies in response. (SI¶¶15-16, 177-194.) Counts 52-100 charge money laundering conspiracy, concealment money laundering, and related offenses. (SI¶¶202-211.)

# **Argument**

## I. The SI Sufficiently Alleges the Essential Elements of a Travel Act Offense—as this Court Has Repeatedly Determined.

### A. Notice Pleading Is All that Is Required.

An indictment is sufficient if it meets two constitutional requirements: first, it contains the elements of the offense charged in sufficient detail to fairly inform the defendant of the crime against which he or she must defend; and second, it safeguards the defendant from a subsequent prosecution of the same offense. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). While a "complete failure to recite an essential element of the charged offense" requires dismissal, *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005), an indictment that tracks the language of the charged statute "is often sufficient," *Resendiz-Ponce*, 549 U.S. at 109. If more is required, the indictment need only "contain a few basic factual allegations [to] accord[ ] defendants adequate notice of the charges." *United States v. Cecil*, 608 F.2d 1294, 1296-97 (9th Cir. 1979) (dismissing a "rather barren" indictment that provided almost no factual context). "While detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Resendiz-Ponce*, 549 U.S. at 108.

The indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States. v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010). At this stage, "[t]he Government need not allege its theory of the case or supporting evidence, but only the essential facts necessary to apprise a defendant of the crime charged." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).

As this Court has repeatedly found, the SI sets forth the statutory language *and* provides detailed statements of the facts and circumstances to inform Defendants of the charged offenses. It far surpasses the minimal requirements of notice pleading.

### B. This Court Has Thrice Found that the SI States an Offense, and Those Decisions Are Law of the Case.

The issue presented in Defendants' motion to dismiss is, essentially, this: does the SI properly state an offense under the Travel Act? Relying on their view of arguments made in separate civil case (*Woodhull*) about a different statute (FOSTA), Defendants contend that Travel Act charges here must allege "with respect to each charged ad, both that *someone* committed a prostitution offense and that Defendants intended to facilitate the commission of *that* specific prostitution offense." (Mot. at 9.) Defendants have made these arguments before, and the Court has found them insufficient to require dismissal. Defendants cite no intervening change in the law, and no new facts about this case, to warrant reconsideration. (*See* Doc. 1524 at 4 ("**The Court reminds the parties that it will not accept any new motions unless based on new law or facts**.").)

This Court has denied three motions to dismiss the SI that raised the same arguments. First, in its October 24, 2019 Order denying Defendants' Motion to Dismiss, the Court rejected Defendants' claims that the SI was deficiently pled under the First Amendment and the Travel Act. *United States v. Lacey*, 423 F. Supp. 3d 748 (D. Ariz. 2019); Doc. 793. The Court found that "taking the allegations in the SI as true, as the Court must, the Government has met its burden of showing the fifty ads [in Counts 2-51] are for prostitution." *Lacey*, 423 F. Supp. 3d at 757. The Court then correctly stated that, in the Ninth Circuit, a Travel Act indictment must allege three essential elements: "(1) interstate commerce or use of an interstate facility; (2) with the intent to 'promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity'; and (3) a subsequent overt act in furtherance of that unlawful activity." *Lacey*, 423 F. Supp. 3d at 765 (citing 18 U.S.C. § 1952(a) and *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981)).

The Court found the SI "contains the elements of the offense charged" and "gives Defendants enough facts and circumstances to inform the accused of the charged offenses." *Id.* at 766. Also, "[t]he SI contains sufficient factual allegations to implicate all Defendants. Additionally, when there is a 'continuous conspiracy,' the 'overt act[s] of one partner may

be the act of all without any new agreement specifically directed to that act.'" *Id*. at 763 (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)).

Second, in its January 8, 2020 Order denying Defendants' Motion to Dismiss Based on Section 230 of the Communications Decency Act or, Alternatively, as Void for Vagueness, the Court again recognized that *Tavelman* sets forth the essential elements for a Travel Act offense in an indictment, and found that "[t]he [SI] clears each hurdle. It alleges Defendants, with intent to promote or facilitate state law prostitution offenses, performed overt acts in furtherance of that unlawful activity." (Doc. 840 at 10-11.)

Third, in its May 4, 2020 Order denying Defendants' Motion to Dismiss Indictment on Failure to Allege the Necessary Elements of the Travel Act, the Court recognized, again, that "[t]he Travel Act's text clearly outlines the requisite elements [of stating an offense]." (Doc. 946 at 8.) The Court rejected Defendants' assertions—repeated here (Mot. at 15)— "that the SI does not allege any specific 'unlawful activity' or 'business enterprise(s) involving prostitution offenses," and that Defendants "cannot have an 'intent to promote an unlawful activity' because they do not know what or who the business enterprise involving prostitution offenses for each violation is." (Doc. 946 at 8-9.) The Court found that the SI alleges "unlawful activity" for each Travel Act count "with adequate specificity to inform Defendants of their charges" by alleging "fifty instances where Defendants posted ads on Backpage.com to facilitate specific individual prostitutes or pimps involved in the business of prostitution," and by using language that "almost identically mirrors the Travel Act's text." (Doc. 946 at 12.)

The Court "[found] previously that the SI alleged each Defendant had the requisite specific intent to promote an unlawful activity in violation of the Travel Act on fifty occasions"; whether they "in fact intended to facilitate prostitution by publishing the ads is a matter for the fact-finder, not the Court right now." (Doc. 946 at 15-16.)

**C.   The Court's Rulings Are Correct.**

In the Ninth Circuit, "[a]n indictment under the Travel Act requires allegations of each of the three elements of the crime: (1) interstate commerce or use of an interstate

facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *Tavelman*, 650 F.2d at 1138. The statutory language of § 1952 "embodies all of the essential elements" of that offense. *United States v. Gordon*, 641 F.2d 1281, 1284 (9th Cir. 1981); *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992); *United States v. Stafford*, 831 F.2d 1479, 1482 (9th Cir. 1987).

At least five Circuits share this view. *See United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003); *United States v. Childress*, 58 F.3d 693, 719 (D.C. Cir. 1995); *United States v. Monu*, 782 F.2d 1209, 1211 (4th Cir. 1986); *United States v. Muskovsky*, 863 F.2d 1319, 1326 (7th Cir. 1988); *United States v. Palfrey*, 499 F. Supp. 2d 34, 43 (D.D.C. 2007) (the Fifth, Seventh, Eighth, Ninth, and D.C. Circuits have upheld Travel Act convictions "based on virtually identical indictments").

The SI contains precisely such "statute-tracking language" in SI¶201. *Palfrey*, 499 F. Supp. 2d at 43. If that were not enough, the SI contains pages and pages of allegations describing how Defendants built Backpage into the internet's leading online marketplace for prostitution (SI¶¶1-194), alleges that Defendants conspired together to violate the Travel Act, and alleges that Defendants committed substantive Travel Act violations by publishing each of the enumerated prostitution solicitations in Counts 2-51. (SI¶¶195-201.) Particularly when viewed through notice pleading standards, the SI's allegations are more than enough to inform Defendants of the charges.

Contrary to Defendants' suggestions, whether an underlying state offense is ever accomplished is irrelevant under the Travel Act. *Stafford*, 831 F.2d at 1482 ("[t]he Travel Act does not require the commission of the predicate offense"). Rather, "the gravamen of a charge under 18 U.S.C. § 1952 is the violation of federal law (use of an interstate facility with intent to violate state or federal law)," and "reference to state law is only necessary to identify the type of illegal activity." *Gordon*, 641 F.2d at 1284 and n.6 (cleaned up). The SI need not even cite the particular state or federal statute on which the "unlawful activity" is based. *Id*. at 1284-85 and n.6. *See also Welch*, 327 F.3d at 1092 ("The Travel Act proscribes not the unlawful activity per se, but the use of interstate facilities with the

requisite intent to promote such unlawful activity. An actual violation of [state law] is not an element . . . and need not have occurred[.]"); *United States v. Montague*, 29 F.3d 317, 322 (7th Cir. 1994) ("Section 1952 does not require that the state crime ever be completed."); *Palfrey*, 499 F. Supp. 2d at 43 ("To the extent Defendant is arguing that the Government must prove each element of the predicate state offenses, it is well-settled that the Government bears no such burden. [The Act] requires only that a defendant 'inten[ded] to . . . promote . . . any unlawful activity[.]'").

Defendants' cases do not establish that more is required to survive a motion to dismiss. (Mot. at 12-13.) *United States v. Hiatt*, 527 F.2d 1048 (9th Cir. 1975), did not involve a challenge to the sufficiency of a Travel Act indictment and contains no holding that an actual state law violation must be alleged in a notice pleading to survive a motion to dismiss. And it predated *Tavelman*, *Gordon*, and other Ninth Circuit cases recognizing that § 1952's language states the essential elements of a Travel Act offense.

*Myers v. Sessions*, 904 F.3d 1101 (9th Cir. 2018), addressed a noncitizen's removability under 8 U.S.C. § 1227(a)(2)(B)(i); it likewise contains no discussion of the pleading requirements for Travel Act indictments. *United States v. Bertman*, 686 F.2d 772, 772-75 (9th Cir. 1982), also didn't address an indictment's sufficiency, and it concerned a different subsection of the Travel Act, § 1952(b)(2), not involved here. *United States v. Jones*, 909 F.2d 533, 537-39 (D.C. Cir. 1990), considered jury instructions, but did not address the elements that must be alleged in a Travel Act indictment. *See Palfrey*, 499 F. Supp. 2d at 44 (distinguishing *Jones* on this basis, and finding sufficient a Travel Act indictment that tracked § 1952's statutory language). *United States v. Goldfarb*, 643 F.2d 422, 426-32 (6th Cir. 1981), and *United States v. Kahn*, 472 F.2d 272, 277 (2d Cir. 1973), were jury instruction cases—and *Goldfarb*, 643 F.2d at 426, recognizes that "unlawful activity" need not be accomplished.

Defendants' reference to overbreadth and vagueness fails to mention that this Court previously rejected their as-applied overbreadth and vagueness claims. (*See* Mot. at 13-14.) See *Lacey*, 423 F. Supp. 3d at 765-66; Doc. 840 at 13. If Defendants seek to re-litigate

these issues, they cite no new facts or law. *United States v. Hansen*, 25 F.4th 1103, 1107 (9th Cir. 2022), *cert. granted*, 143 S. Ct. 555 (2022) (Mot. at 14), involves the same immigration law and reasoning of *United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018), *vacated and remanded*, 140 S. Ct. 1575 (2020), which this Court has already found "not relevant here." *Lacey*, 423 F. Supp. 3d at 765-66.

### D.   The SI Alleges State Law Offenses and Defendants' Intent.

Alternatively, even if the SI needed to allege (1) the actual (or attempted) commission of a state law violation and (2) intent to accomplish that violation (Mot. at 14-15), the SI does so—as this Court has already found. (Doc. 946 at 9-14 ("Specific Instances of 'Unlawful Activity' Are Alleged"); Doc. 946 at 14-16 ("Intent is Adequately Alleged for Each Travel Act Count"); *Lacey*, 423 F. Supp. 3d at 761-64.

First, Defendants claim that "no allegation links any of the fifty ads to a specific prostitution offense," but the SI does precisely that. (Mot. at 14.) Defendants allow, as they must at this stage, that "the charged ads were really for illegal prostitution transactions." (Mot. at 14.) Arizona law—and similar state laws that apply to Counts 2-51— generally define prostitution as "engaging in or agreeing *or offering* to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration." A.R.S. § 13-3211(5) (emphasis added); Doc. 1216-3 at 91-100. Under these definitions, there is no requirement that any prohibited sex act ever be completed—rather, each charged ad is unlawful. (Doc. 776 at 12-13); *Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 603-04 (9th Cir. 2010) (advertising the sale of adults for sex is illegal throughout the U.S. except parts of Nevada); *Erotic Serv. Provider Legal Ed. and Research Project v. Gascon*, 880 F.3d 450, 459-60 (9th Cir. 2018) (soliciting is illegal).

Second, Defendants assert that "the SI does not allege that any Defendant knew about these charged ads, much less knew of any exchange for 'sexual conduct under a fee arrangement' tied to any such ad." (Mot. at 15.) In Doc. 746, Defendants similarly asserted the SI fails to allege any Defendant "had any knowledge of any specific ad relating to a business enterprise engaged in prostitution offenses or any role in Backpage.com's

1 publication of any such ad." (Doc. 746 at 10-11.) This Court disagreed, and found the SI's
2 intent allegations sufficient. (Doc. 946 at 14-16.) Counts 2-51 allege that each Defendant
3 violated the Travel Act by publishing the 50 identified ads with the intent to promote, or
4 facilitate the promotion of, unlawful prostitution. (SI¶201.) The SI is replete with
5 allegations that Defendants knew the vast majority of their "adult" ads were for prostitution
6 and took steps to intentionally facilitate that activity. (Doc. 946 at 15); *see also Lacey*, 423
7 F. Supp. 3d at 763-64 ("[t]he SI contains sufficient factual allegations to implicate all
8 Defendants"). And whether a defendant had the requisite criminal intent is a question of
9 fact for the jury. *Morissette v. United States*, 342 U.S. 246, 274 (1952).

10 If any Defendant deliberately ignored the prostitution ads on Backpage's website, knowledge can be inferred from such willful ignorance. 9th Cir. Model Crim. J. Instr. 4.9. And even if any Defendant were not personally aware of each ad or involved in that ad's publication process, publication of the ads was reasonably foreseeable given the policies Defendants implemented as part of the conspiracy charged in Count 1. 9th Cir. Model Crim. J. Instr. 11.6; *Lacey*, 423 F. Supp. 3d at 763-64 (discussing the *Pinkerton* doctrine). But the use of these jury instructions is for trial; at this stage, all that is required is "a minimally adequate description" of the crime charged. *Buckley*, 689 F.2d at 899.

18 Defendants' related assertion that the SI "makes no distinction between illegal and legal ads" is also an argument for trial. (Mot. at 15.) Defendants can argue to the jury that the ads were for legal services like "model[ing] lingerie" or "perform[ing] a striptease." (*Cf.* Mot. at 15.) But the SI sufficiently alleges that the ads are for prostitution. *Lacey*, 423 F. Supp. 3d at 757-58. "[A]t this stage of the proceeding, the Court cannot consider the adequacy of the evidence; that job is reserved for the fact finder." *Id.* at 758.

24 *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173 (6th Cir. 1992), is instructive—but not for the reasons Defendants claim. (*Cf.* Mot. at 15-16.) *Growers* affirmed the dismissal of indictment that charged a garden-supply store with conspiracy to aid and abet the manufacture of marijuana, because critically missing from the indictment was "defendants' knowledge that their customers were manufacturing marijuana or

intended to manufacture marijuana." *Id*. at 175. The SI here could not be more different. It alleges Defendants knowingly published prostitution solicitations that are illegal throughout the United States. (SI¶¶9-11; 33-152, 160-76, 201). Defendants purposefully developed their website into a massive online marketplace for prostitution ads. (*See* SI ¶¶9-11, 34, 177.) Backpage employees assisted prostitutes and pimps in connection with the sale and posting of these unlawful solicitations. (*See, e.g.*, SI¶¶ 59-67, 91, 132, 160, 163, 164, 166, 170, 172.) Defendants received a drumbeat of notice that Backpage's "adult" ads were overwhelmingly for prostitution; this mirrored their internal admissions. (*See generally* SI¶¶1-194.) *Growers* has none of this.

Defendants' reference to cases that they cited in their prior unsuccessful motions to dismiss also misses the mark. (*See* Mot. at 16-17.) Those cases largely involved Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 (CDA). *See, e.g.*, *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1058 (E.D. Mo. 2011) (Mot. at 17) (dismissing civil case against Backpage's then-parent; "Congress has declared such websites to be immune from suits arising from such injuries."). Yet Section 230 has no application to this federal criminal prosecution. *Lacey*, 423 F. Supp. 3d at 760.

Website operators have been prosecuted for promoting or facilitating the sale of other types of illegal goods and services. (*See* Doc. 649, Resp. at 20-21, discussing *United States v. Ulbricht*, 31 F. Supp. 3d 540, 556 (S.D.N.Y. 2014), and the Travel Act prosecutions of the operators of the prostitution advertising websites myRedBook.com and Rentboy.com.) During grand jury proceedings in this case, Judge Campbell recognized that federal law "criminalize[s] the knowing publication of an advertisement for illegal prostitution or other illegal activity." (Doc. 194-1 at 66.) The SI alleges that Defendants did just that.

**II.     Defendants' Motion Is Not Based on Any Intervening Change in the Law or Any New Evidence Concerning this Case.**

Defendants' motion is not based on any intervening change in governing law, or new trial evidence. Instead, Defendants assert the United States' arguments about a

different statute, the Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA), asserted in a pending appeal in a different case, *Woodhull Freedom Found v. United States*, D.C. Cir. Case No. 22-5105, have somehow altered the pleading standards in this case. (*See* Mot. at 4-6, 9, 11-12, 19.) Not so.

First, this isn't the first time that Defendants have asserted this. They made the same argument in their May 2019 motion to dismiss. (Doc. 561 at 41-42 (in *Woodhull*, "DOJ repeated its position that in a prosecution under the Travel Act, the government must allege that the defendant acted to intentionally promote or facilitate a 'specific, unlawful instance of prostitution'").) The Court rejected these arguments, which "concerned [a] different statute[]," "are not binding on this Court, not relevant to this prosecution, and, in any case, not inconsistent with the Government's current theory regarding the Travel Act." *Lacey*, 423 F. Supp. 3d at 763.

Defendants raised similar arguments in their next dismissal motion. As here, Defendants highlighted the United States' arguments in *Woodhull* that likened aspects of FOSTA to the Travel Act (Doc. 746 at 12 n.3), and wrote the United States "effectively conceded that the Travel Act does not criminalize the promotion of prostitution in general, and requires an allegation (and proof) that the defendant knowingly and intentionally promoted or facilitated a specific criminal business enterprise." (Doc. 746 at 14 n.5.) This Court was not persuaded that any of this warranted dismissing the SI. (*See* Doc. 946 at 4-16.) Defendants' current take should be rejected for the same reasons.

Second, Defendants' insistence that the *Woodhull* arguments require the United States to allege the elements of aiding-and-abetting in this case falter for an independent reason. "Aiding and abetting is implied in every federal indictment for a substantive offense"; it need not be separately charged or spelled-out in a federal criminal indictment. *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990). Even if the elements of aiding-and-abetting are required here (they are not), the SI can be read as including them.

Third, Defendants set up a false dichotomy between *Woodhull* and the government's proposed jury instructions here. (*See, e.g.*, Mot. at 4, 10-11, 19 (citing Doc. 1216-1 (jury

instructions)).) Assessing the sufficiency of indictment under notice pleading standards is a different task than settling jury instructions. *See Palfrey*, 499 F. Supp. 2d at 44. This motion isn't the proper vehicle for determining how to instruct the jury on the definitions of "promote," "facilitate," or other Travel Act terms.

Fourth, Defendants suggest that the United States' positions in *Woodhull* and this case are at odds; but a close look at *Woodhull* shows no inconsistency. The *Woodhull* litigation largely involves whether pure speech or advocacy can count as "promot[ing] or facilitat[ing] the prostitution of another person" under 18 U.S.C. § 2421(A)(a). That issue is absent in this case, which involves prostitution solicitations—offers categorically excluded from First Amendment protection. *See Lacey*, 423 F. Supp. 3d at 760 ("Prostitution ads are ads for illegal transactions. . . . The First Amendment does not protect 'offers to engage in illegal transactions.'") (citations omitted).

Moreover, the United States never argued in *Woodhull* that a violation of § 2421(A)(a) requires establishing every element of a traditional claim for aiding-and-abetting prostitution, including proof of a completed act of prostitution. Rather, the United States anchored its arguments in Judge Katsas's concurrence from an earlier appeal in that case, which reversed the district court's dismissal for lack of standing. *Woodhull Freedom Found v. United States*, 948 F.3d 363 (D.C. Cir. 2020).

Addressing the disjunctive terms "promote or facilitate" in 18 U.S.C. § 2421A(a), Judge Katsas wrote that "in the criminal law, to 'promote' prostitution means to pander"—an offense that covers "soliciting prospective customers" and that involves speech widely recognized as falling outside the First Amendment. *Id*. at 375. Judge Katsas then discussed that "[f]acilitate" may be taken as a synonym for terms like aid, abet, and assist, "limited by the background law of aiding and abetting." *Id*. While he wrote that FOSTA's requirement of action with an "intent to promote or facilitate" "track[ed] almost verbatim the canonical formulation for the offense of aiding and abetting," he clarified that "**[t]his is not to suggest that FOSTA requires proof of a specific, completed act of prostitution**, as would the offense of aiding and abetting prostitution." *Id*. (emphasis

added). As Judge Katsas's concurrence reflects, crimes like pandering and solicitation are "inchoate crimes—acts looking toward the commission of another crime." *United States v. Williams*, 553 U.S. 285, 300 (2008). Liability for such inchoate crimes does not rely on the completion of the other crime; rather, those crimes are unlawful whether or not the proposed illegal conduct ever occurs. *Id.*

In arguing that FOSTA does not cover advocacy, education, or other non-transactional assistance to prostitutes, the United States quoted Judge Katsas's concurrence—including the bolded language above—in its most recent *Woodhull* brief. (*See* Mot., Ex. A (Woodhull Ans. Br. at 23-24, 29-30).) The United States also highlighted at oral argument that "[p]romoting prostitution is its own special legal term of art"—i.e., "pandering." (Mot., Ex. B at 36-37, 40.) But the United States did not argue that a FOSTA (or Travel Act) conviction could be supported only by proof of a completed, underlying offense and intent to accomplish every element of that offense.

The D.C. Circuit has yet to issue a merits decision in *Woodhull*. Even if that court holds the terms "promote or facilitate" in FOSTA import all elements of an aiding-and-abetting charge, that's not identical to the issue before this Court—whether all such elements must be alleged to state a Travel Act offense in an indictment. Defendants' *Woodhull* arguments concern a different issue and a different statute, are not binding on this Court, and are not relevant to this prosecution. *Lacey*, 423 F. Supp. 3d at 763.

### III.  Defendants Remaining Arguments Lack Merit.

<u>Double Jeopardy</u>. Defendants also assert "double jeopardy" as a basis for dismissal (Mot. at 18)—attempting to relitigate still another issue. (Doc. 746 at 5.) When they first raised this, the Court found: "After thoroughly considering the parties' arguments presented at oral argument and in their pleadings alongside Rule 7(c)(1), the Travel Act, and the above case law, the Court finds the requisite Travel Act elements adequately alleged to provide Defendants with notice of the charges against them." (Doc. 946 at 12.) Consistent with that ruling, double jeopardy would prevent the United States from "simply slotting in fifty more" Backpage ads into an indictment (Mot. at 18), because Defendants

were "indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution." (Doc. 946 at 13.) Further, the Court found that the Travel Act counts "enable each Defendant to plead an acquittal or conviction in future similar prosecutions and prepare to defend themselves at trial." (Doc. 946 at 18.)

<u>Money Laundering</u>. The Court's order that the money laundering counts would survive regardless of the Travel Act counts is not "clearly erroneous." (Mot. at 18.) Defendants have conceded that "a defendant may be convicted of a money laundering offense even if he did not commit the underlying offense." (Doc. 946 at 17, n.11.) Here, Backpage, its former CEO Carl Ferrer, and its former Sales and Marketing Director Dan Hyer have pleaded guilty to charges concerning Backpage's operations. (*See* nn.1-2, *supra*.) Defendants can therefore be convicted for money laundering without being criminally liable for the activity that generated the laundered money. And as the Court previously ruled, any argument about Defendants' knowledge that the money was in fact derived from "specified unlawful activities" is premature. (Doc. 946 at 17, n.11.)

<u>Grand Jury Instructions</u>. Defendants "assume" the United States "failed to instruct the grand jury on the essential elements of aiding and abetting," which they claim provides sufficient reason to dismiss the SI. (Mot. at 19.) They previously raised, and lost, the same issue. (Docs. 1171, 1176, 1177, 1179.)

In their Motion to Disclose Grand Jury Instruction on Prostitution, they argued that because they believed the United States' proposed jury instructions were deficient, the Court could speculate that the legal instructions provided to the grand jury were equally deficient. (Doc. 1171 at 3.) The Court denied that motion. (Doc. 1179.) Defendants make the same argument here. (Mot. at 19.) As this Court noted when it denied previous Defendants' motion (Doc. 1179), the Court had also already denied an even earlier request for disclosure of grand jury transcripts. (Doc. 844 at 9 ("Defendants have identified no compelling reason with any sort of particularity worthy of breaching the secrecy of the grand jury.").) These rulings are law of the case.

As before, Defendants fail to show (a) a particularized need to obtain the grand jury transcripts and (b) the material sought is necessary to avoid a possible injustice. (Doc. 1179 at 6.) In their previous motion, "Defendants speculate[d] that the government provided insufficient instructions to the grand jury on the Travel Act." (Doc. 1179 at 6.) Here, Defendants "assume that the government failed to instruct the grand jury" properly on the Travel Act charges. (Mot. at 19.) The Court's ruling that "speculation is insufficient to show particularized need" applies with equal force here. (Doc. 1179 at 6.)

Similarly, this Court previously found "under Ninth Circuit caselaw, 'Erroneous jury instructions do not automatically invalidate an otherwise proper grand jury indictment.'" (Doc. 1179 at 7 (internal quotations omitted).) Indeed, "[a]t least one court in this Circuit went as far as to say, 'We are not persuaded that the Constitution imposes the additional requirement that the grand jury receive legal instructions.'" (*Id.* (citing *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981)).) As before, Defendants *again* fail to demonstrate that the disclosure of the grand jury instructions could avoid a possible injustice *and* have failed to show a particularized need. (*See* Doc. 1179 at 5).)

**Conclusion**

Defendants' Motion to Dismiss (Doc. 1557) should be denied.

Respectfully submitted this 28th day of April, 2023.

    GARY M. RESTAINO
    United States Attorney
    District of Arizona

    KENNETH POLITE
    Assistant Attorney General
    Criminal Division, U.S. Department of Justice

    *s/Peter S. Kozinets*
    KEVIN M. RAPP
    MARGARET PERLMETER
    PETER KOZINETS
    ANDREW STONE
    DANIEL BOYLE
    Assistant U.S. Attorneys

    AUSTIN M. BERRY
    Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Brian Wolfe*
Brian Wolfe
Legal Assistant
U.S. Attorney's Office