Timothy J. Eckstein, 018321
Joseph N. Roth, 025725
Sarah P. Lawson, 036436
**OSBORN MALEDON, P.A.**
2929 North Central Avenue, 20th Floor
Phoenix, Arizona  85012-2793
(602) 640-9000
teckstein@omlaw.com
jroth@omlaw.com
slawson@omlaw.com

*Attorneys for James Larkin*

Additional counsel on following page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-00422-PHX-DJH |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SUPERSEDING INDICTMENT** |
| vs. | |
| Michael Lacey, *et al.,* | |
| Defendants. | |

1  Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
   Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
2  LIPSITZ GREEN SCIME CAMBRIA LLP
   42 Delaware Avenue, Suite 120
3  Buffalo, New York 14202
   (716) 849-1333
4  pcambria@lglaw.com
   emccampbell@lglaw.com
5
   *Attorneys for Michael Lacey*
6
   Bruce S. Feder (AZ 004832)
7  FEDER LAW OFFICE PA
   2930 E. Camelback Rd., Suite 160
8  Phoenix, Arizona  85016
   (602) 257-0135
9  bf@federlawpa.com

10 Eric Walter Kessler
   KESSLER LAW OFFICE
11 6720 N. Scottsdale Rd., Suite 210
   Scottsdale, Arizona  85253
12 (480) 644-0093
   Eric.kesslerlaw@gmail.com
13
   *Attorneys for Scott Spear*
14
   Gary S. Lincenberg
15 Ariel A. Neuman
   Gopi K. Panchapakesan
16 BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW P.C.
17 1875 Century Park E., Suite 2300
   Los Angeles, California 90067
18 (310) 201-2100
   glincenberg@birdmarella.com
19 gpanchapakesan.@birdmarella.com
   aneuman@birdmarella.com
20
   *Attorneys for John Brunst*
21
   David S. Eisenberg
22 DAVID EISENBERG PLC
   3550 N. Central Ave., Ste. 1155
23 Phoenix, Arizona  85012
   (602) 237-5076
24 david@eisenbergplc.com

25 *Attorneys for Andrew Padilla*

26

27

28

                    2

Joy Malby Bertrand
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona  85252
(480) 656-3919
joyous@mailbag.com

*Attorneys for Joye Vaught*

In its Response, the government does not contest the key premises of Defendants' Motion: (1) "[t]he phrase 'promote or facilitate,' as used in the Travel Act, is equivalent to 'aid or abet,'" Doc. 1557 at 4, Doc. 1557-1 at 45–46; and (2) aiding and abetting requires both the commission of an offense and that a defendant "intend[ed] to facilitate that offense's commission." *Rosemond v. United States*, 572 U.S. 65, 76 (2014). The Response does not identify any allegation in the Superseding Indictment (Doc. 230, "SI") from which the grand jury could have determined that any Defendant's actions constituted aiding and abetting a prostitution offense associated with any of the 50 charged ads. Because all the allegations in the indictment that purport to show Defendants' knowledge and intent are untethered to the publication of the ads forming the basis of the Travel Act charges, or any associated prostitution offenses, the indictment alleges, at most, that Defendants agreed to facilitate "a 'possibility,' or a criminal wish[,] which simply isn't a crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 178 (6th Cir. 1992).

No prior order has decided the narrow issues presented here. The arguments raised are new and are prompted by the government's recent assertions in the *Woodhull* appeal. Deferring these issues until trial only invites error.

**A.     The government does not dispute that "promote" and "facilitate" as used in the Travel Act equate to aiding and abetting, and cannot evade alleging the elements of aiding and abetting.**

The government does not dispute that, for a non-principal, a charge of "promoting" or "facilitating" under the Travel Act is an aiding and abetting offense. *See* Doc. 1557-1 at 45–46. Nor does the government dispute the elements of aiding and abetting: someone else committed an offense, the defendant acted with intent "to facilitate that offense's commission," and the defendant's intent went "to the specific and entire crime charged." *Rosemond*, 572 U.S. at 75–76; Doc. 1557 at 10. Seeking to salvage its defective indictment, the government contends (at 9) that the elements of aiding and abetting are not "essential elements" required in the indictment and that "whether an underlying state offense is ever accomplished is irrelevant under the Travel Act." These arguments fail.

**First**, the elements of aiding and abetting are "essential elements."  The Superseding Indictment does not charge Defendants with violating the Travel Act as principals, but with "the crime[] of facilitating prostitution."  SI ¶¶ 17; 196a (count 1, conspiracy to violate "18 U.S.C. § 1952(a)(3)(A) (Travel Act – Facilitate Prostitution"); SI ¶ 200 (describing Counts 2-51 as "Travel Act – Facilitate Prostitution").  Regardless of what would be required for a principal, for these charges, the government cannot merely parrot the Travel Act to state an offense because the words "promote" and "facilitate" by themselves do not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished," *Hamling v. United States*, 418 U.S. 113, 117 (1974) (citation omitted).  The government admits as much in *Woodhull*, when it explains that "whatever meaning 'promote' or 'facilitate' might have in everyday speech," they are "terms of art" that "invoke[] traditional principles of accomplice liability" and "denote aiding-and-abetting liability under traditional principles of criminal law," and, as such, "bring[] the old soil with it."  Doc. 1557-1 at 46, 58.

A valid indictment for promoting or facilitating another's violation of state law under the Travel Act must therefore "assert facts which in law constitute" the essential elements of aiding and abetting, *Superior Growers*, 982 F.2d at 177.  *See also United States v. Omer*, 395 F.3d 1087, 1088–89 (9th Cir. 2005) (failure to allege materiality was a "fatal flaw requiring dismissal," as materiality was an essential element because bank fraud statute "incorporates the well-settled common-law meaning of fraud").

None of the cases the government cites here (Doc. 1577 at 9 (collecting cases)) involves defendants alleged only to have "facilitated" the unlawful activity of others.  In *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981), for example, the defendant was charged as a principal drug trafficker, not as a facilitator of another's trafficking offense.

**Second**, contrary to the government's assertion that the commission of a state-law offense is irrelevant, the Ninth Circuit "require[s] that the specific elements of the underlying law that constitute the unlawful activity be found as elements of the Travel Act offense." *Myers v. Sessions*, 904 F.3d 1101, 1110 (9th Cir. 2018).  *See also United States v. Hiatt*, 527 F.2d

1048, 1051 (9th Cir. 1975).  As discussed in the Motion (Doc. 1557 at 13), these cases are consistent with the government's *Woodhull* concession.

The government contends (at 10) that *Hiatt* is distinguishable because it does not hold that a state law violation "must be alleged" to "survive a motion to dismiss," and that *Myers* can be ignored because it does not discuss directly "the pleading requirements for Travel Act indictments."  But in each case, the Ninth Circuit unequivocally states that the Travel Act requires, as an element, an actual state law violation.  That the permissible scope of Travel Act liability was addressed in contexts other than a pre-trial motion to dismiss does not alter their Travel Act holdings or their application to an argument for pre-trial dismissal.

Moreover, the cases the government cites (at 9–10) shed little light on the question at hand, as each involved Travel Act (or related) charges against principal offenders who either committed (or attempted) the underlying state law offenses.[1]  As they concern only principal liability, those cases do not support the argument that a non-principal could be indicted for facilitating "unlawful activity" without alleging aiding and abetting elements.

More fundamentally, the Response fails to explain how the government can square its contention here that state law violation is "irrelevant" with its position in *Woodhull* that "promote" or "facilitate" means aiding and abetting, as aiding and abetting (1) aligns with the text of the Travel Act, and (2) requires as "an essential element . . . the occurrence of the underlying crime."  *Superior Growers*, 982 F.2d at 178.

**B.     The government fails to show that the Superseding Indictment alleges the elements of aiding and abetting.**

The government cannot credibly contend that the indictment alleges the key elements of aiding and abetting as it fails to allege, for any of the Travel Act counts, that someone

---

[1] *See, e.g., United States v. Gordon*, 641 F.2d 1281, 1283–85 (9th Cir. 1981) (defendants used phones to bribe Nevada Gaming Commissioners); *United States v. Stafford*, 831 F.2d 1479, 1480 (9th Cir. 1987) (defendant traveled to bribe a witness to prevent him "from informing the FBI" of federal crimes); *United States v. Welch*, 327 F.3d 1081, 1086 (10th Cir. 2003) (alleging defendants orchestrated scheme to bribe Olympics Committee officials in violation of state law); *United States v. Montague*, 29 F.3d 317, 318 (7th Cir. 1994) (charges against operator of escort businesses engaged in prostitution); *United States v. Palfrey*, 499 F. Supp. 2d 34, 37–38 (D.D.C. 2007) (same).

committed a prostitution offense, that each Defendant acted with intent "to facilitate that offense's commission," or that each Defendant's intent went "to the specific and entire crime charged." *Rosemond*, 572 U.S. at 75–76.  Instead, the Response argues: (1) aiding and abetting is always implied; (2) the indictment alleges the state law offense of "offering" or "soliciting" prostitution; and (3) the indictment alleges intent by asserting "Defendants knew the vast majority of" Backpage's "'adult' ads were for prostitution."  Each of these arguments fails.

1.     **Although aiding and abetting is implied in indictments alleging substantive offenses, a valid indictment must still allege an offense in the first place.**

This motion does not dispute that the elements of aiding and abetting are implied when a defendant is indicted as a principal of a substantive federal offense.  However, where, as here, a defendant is charged as a promoter of someone else's offense, the indictment must "assert facts which in law constitute" the essential elements of aiding and abetting.  *Superior Growers*, 982 F.2d at 177.

2.     **The indictment does not allege any underlying prostitution offenses.**

The government argues (at 11) that it adequately alleges prostitution offenses, if one accepts that each charged ad actually was associated with illegal prostitution.

That is not so.  The mere placement or publication of a facially lawful ad could not violate, for instance, Arizona's statute making it a crime to knowingly "offer[] to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration," A.R.S. § 13-3214(A).

Only one of the 50 charged ads contains anything close to an "offer[] to engage in sexual conduct."  *See* SI ¶ 201 (Count 23) (listing prices for specific sex acts).  "Sexual conduct" does not mean "sexual" activity in general, but rather specific sex acts: "fondling" or "manipulating" the "genitals, anus or female breast," "sexual intercourse, oral sexual contact or sadomasochistic abuse."  A.R.S. § 13-3211(8), (9).  At the same time, advertising for a wide range of sexual services, including for escort/dating services, stripping, live adult shows, or other adult services, is lawful *and* First Amendment protected.  *See* A.R.S. § 13-

1422 (defining lawful "adult oriented businesses"); A.R.S. § 9-500.10 (expressly allowing escort and escort agency ads).  An ad stating "girlfriend experience" or "GFE" (*see* Counts 27-51) is not an "offer" to exchange money for "fondling" or "sexual intercourse."[2]

### 3. The indictment does not allege that Defendants knew about or intended any specific prostitution offense.

Glaringly absent from the Superseding Indictment is any allegation that any Defendant knew of any charged ad, knew of any exchange for "sexual conduct under a fee arrangement" associated with any charged ad, or knowingly acted to facilitate such an act of prostitution.  Instead, the government (Doc. 1577 at 12) falls back on its global allegations that "Defendants knew the vast majority of [Backpage's] 'adult' ads were for prostitution." The indictment does not allege which of these fifty are among the "vast majority," or with respect to any of the charged ads, that any Defendant had a "state of mind" that "extend[s] to the entire crime," or an intent "to facilitate *that* offense's commission," or even knew about an offense's commission.  *Rosemond*, 572 U.S. at 75–76.  The indictment's failure to allege the "essential elements" of "knowledge of the underlying crime and intent to further it" compel dismissal.  *Superior Growers*, 982 F.2d at 179-80.

The government's reliance (Doc. 1577 at 12) the willful ignorance doctrine is utterly misplaced.  The classic application of that doctrine is in a drug smuggling case where a defendant "was aware of a high probability that [*e.g.,* drugs were in the defendant's automobile]" *See* Ninth Circuit Model Criminal Jury Instructions at 4.9; *United States v. Jewell*, 532 F.2d 697, 702 (9th Cir. 1976) (involving drugs sealed in a secret compartment of a

---

2 The government does not cite a single case where a person has been charged, must less convicted, of solicitation based only on an ad (even one proposing a necessarily unlawful act).  Instead, the government cites (at 11) two cases for the proposition that ads for "the sale of adults for sex" and "soliciting" are illegal.  *See Coyote Pub., Inc. v. Miller*, 598 F.3d 592 (9th Cir. 2010) (rejecting legal brothels' challenge to restrictions on prostitution advertising); *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 881 F.3d 792 (9th Cir. 2018) (rejecting constitutional right to solicit and perform "sex for hire").  Those cases concern whether a state may restrict **explicit prostitution ads**, not whether someone could commit "solicitation" with a facially lawful advertisement of sexual, adult-oriented services.

car).  But a Travel Act charge is a specific intent crime that requires more than mere knowledge.  *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974).

Even if the willful ignorance doctrine applied, it would apply **only as to the 50 ads**, as this Court has already ruled that "[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.'  They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."  Doc. 946 at 13.  There is no allegation (implied or otherwise) that Defendants ignored these particular 50 ads.  Rather, the government's theory is that Defendants' knowledge of any particular ad is irrelevant because these are 50 instances among millions, and Defendants knew the "vast majority" were for prostitution—a theory directly contrary to the traditional concepts of accomplice liability.  The doctrine of willful ignorance cannot cure the failure to allege an essential element of the offense and the government does not cite any case to the contrary.

The government's assertion that knowledge can be imputed to all Defendants because Backpage's business practices made "the publication of ads…reasonably foreseeable" likewise cannot save its deficient indictment.  First, whatever benefit *Pinkerton* liability may afford the government with respect to its conspiracy charge, it has absolutely no application to the Travel Act charges nor can it substitute for alleging the essential Travel Act elements.  Second, as to the conspiracy charge, although, under *Pinkerton*, a conspirator may be liable for a co-conspirator's reasonably foreseeable substantive crimes committed in furtherance of the conspiracy, the indictment does not allege that any "co-conspirator" (*i.e.*, any of the six defendants, Carl Ferrer, or Dan Hyer) was the principal here -- the person who posted any of the fifty charged ads.  Thus, whether as to one of the Defendants or a co-conspirator, there is no allegation of "knowledge of all elements of the underlying crime."  *United States v. McDowell*, 498 F.3d 308, 315–16 (5th Cir. 2007) (reversing aiding-and-abetting conviction that relied on "patently insufficient" "inference upon inference").

1

### 4.   The government cannot distinguish *Superior Growers*.

2       At bottom, the Superseding Indictment fails for the same reasons the indictment in

3  *Superior Growers* was dismissed—it "pil[ed] inference upon inference" to fashion "a dragnet

4  to draw in all substantive crimes." 982 F.2d at 179.  *See* Doc. 1557 at 15–16.  The government

5  is simply wrong when it claims (at 12–13) that the cases "could not be more different"

6  because Defendants, unlike those in *Superior Growers*, "purposefully developed their website

7  into a massive online marketplace for prostitution ads," "assisted prostitutes and pimps" in

8  placing ads, and had reason to believe the "adult ads were overwhelmingly for prostitution."

9       The indictments in both cases allege broad aiding-and-abetting conspiracy to use

10  business practices (the sale of ads here; the sale of hydroponic and other growing equipment

11  there) to make money by facilitating others' illegal acts (prostitution here; marijuana growing

12  there).  In *Superior Growers*, the government alleged that defendants advertised in marijuana-

13  related publications, marketed their growing equipment for the cultivation of marijuana,

14  educated customers about marijuana cultivation, sold that equipment to customers who used

15  it to grow marijuana, knew that their customers would use it to grow marijuana, and

16  sometimes took payment in the form of illegal marijuana.  *See* 982 F.2d at 175.  The

17  indictment thus contained numerous allegations that the defendants knew that some (if not

18  the vast majority) of their customers would use their products for illegal purposes, yet the

19  Sixth Circuit affirmed the dismissal of the indictment.  *Id.* at 176–78.

20       Critically, the *Superior Growers* indictment did not allege that defendants knew that their

21  cultivation instructions "were given with defendants' knowledge that a **particular customer**

22  was planning to grow marijuana, and **with defendants' intent to assist that customer** in

23  the endeavor."  *Id.* at 178 (emphasis added).  In other words, the government's allegations

24  that defendants knew the sale of their products would help some (even the "vast majority")

25  of their customers violate the law were insufficient.  The government had to allege both that

26  defendants knew that particular customers intended to violate the law and that defendants

27  intended to assist those customers do so.  Failing that, the indictment alleged only a

28  conspiracy "to aid and abet a 'possibility' or a 'criminal wish[,]' which simply isn't a crime."

*Id.*[3]  *Superior Growers* is the only case identified in which the government asserted a theory like the Travel Act charges in this case, the S.I. has the same failures as in *Superior Growers,* and *Superior Growers* compels dismissal.

Tellingly, the government leans on *United States v. Ulbricht*, 31 F. Supp. 3d 540, 556 (S.D.N.Y. 2014), the prosecution against the creator and operator of the dark-web Silk Road marketplace.   Doc. 1557 at 13.   That case demonstrates exactly what is missing here: defendant's direct involvement in criminal transactions by taking commissions on explicit narcotics sales, and even hiring hitmen to further his control over Silk Road.  *Ulbricht* 31 F. Supp. 3d at 549.   The government also points to guilty pleas for prosecutions against myRedBook.com and RentBoy.com.  Those untested guilty pleas do no more than the guilty plea against Backpage to validate the government's unprecedented Travel Act theory.  *See* Doc. 1099, 12/4/2020 Tr. at 38 ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

**C.**   **The Court should not defer until trial dealing with the issues raised here.**

**1.**   **The issue presently before the Court has not been decided.**

Relying on Docs. 793, 840, and 946, the government (at 7–8) contends that prior orders act as a "law of the case" bar to the pending motion to dismiss, but those orders don't address the pending issue: given the government's recently adopted position that "promote" and "facilitate" under the Travel Act mean "aid" and "abet," whether the indictment sufficiently alleges that Defendants aided and abetted specific state law prostitution offenses.

---

[3] *Cf., e.g.*, *United States v. Sliwo*, 620 F.3d 630, 636–37 (6th Cir. 2010) (reversing conviction when evidence "arguably shows that Defendant was engaged in a scheme with some sort of criminal purpose" but "fails to demonstrate that Defendant knew that this conspiracy" involved the specific crime charged); *United States v. Perez-Melendez*, 599 F.3d 31, 43–44 (1st Cir. 2010) (same).

**2.    The government created a legal issue that this Court must address by taking in *Woodhull* and *Hansen* a position opposite to the one it had taken in this case.**

The government created the need for this motion when it argued in November 2022 that "promote or facilitate" under the Travel Act means "aid and abet."  Doc. 1557-1 at 45. The government reasserted at the January 11, 2023, oral argument before the D.C. Circuit that the terms promote or facilitate "invoke core concepts of aiding and abetting liability, and one of those core concepts, of course, is taking an actus reus that would in fact facilitate or promote the commission of the crime."  Doc. 1557-1 at 147, 150.  The government reconfirmed this framing in a March 2023 oral argument before the Supreme Court in *United States v. Hansen*.[4]  Ex. A, Hansen Transcript, at 7:13-20 (asserting that a statue criminalizing the encouragement of an offense uses words that—like promote or facilitate here—"connote aiding . . . and abetting" which "bring the old soil with them.")[5]

The government's positions in *Woodhull* and *Hansen* are irreconcilable with what it has repeatedly argued here -- that it need not prove "the intent to violate the state prostitution offense before [Defendants are] found guilty."  Doc. 1216-3 at 147; *see also, e.g.*, Doc. 1216-3 at 104 (asserting that there is no need for Defendants to have intended to violate the state prostitution offense).  Indeed, the government still insists (at 12) it is enough that "Defendants knew the vast majority of their 'adult' ads were for prostitution and took steps to intentionally facilitate that activity."  As explained above, § B.3, the government's view of the required intent here does not suffice under the traditional concepts of aiding and abetting.

The government urges (at 15–16) the Court to disregard its statements in *Woodhull* because the statute at issue there (FOSTA) is not identical to the Travel Act, despite its explicit argument that "the phrase 'promote or facilitate,' **as used in the Travel Act**, is equivalent to 'aid or abet,'" and that "FOSTA uses the phrase 'promote or facilitate' **in the same way . . .** to denote aiding-and-abetting liability under traditional principles of criminal law."  Doc. 1577-1 at 45–46 (emphasis added).

---

[4] The Court heard argument on March 27, 2023.  The Court's decision is pending.
[5] A transcript of the oral argument before the Supreme Court is attached as **Exhibit A**.

1    The different procedural postures of this case and *Woodhull* are of no significance.

2  The government has stridently argued in *Woodhull* what "promote" and "facilitate" mean for

3  non-principals under the Travel Act.  Under the Fifth Amendment, that principle -- that a

4  non-principal defendant must have facilitated a particular principal's commission of a

5  particular state law offense -- applies with equal force to an indictment or a facial challenge

6  to a statute like FOSTA.  *See also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting

7  possible consequences for party taking "clearly inconsistent" positions in litigation).

8    Finally, this is the "proper vehicle for determining . . . the definitions of 'promote,'

9  'facilitate,' or other Travel Act terms."  Doc. 1577 at 15.  In *Hansen*, the government argued

10  at trial and before the Ninth Circuit that intent should be broadly defined, *see United States v.*

11  *Hansen*, No., 17-10548, 2022 WL 424827, at *2 (9th Cir. Feb. 10, 2022), only to reverse course

12  before the Supreme Court, conceding that the jury instructions it requested failed to

13  incorporate "the same old soil [that] comes with" a "traditional aiding-and-abetting statute,"

14  causing error requiring remand and retrial.  Ex. A, *Hansen* Transcript, at 10:19-23, 11:6-13.

15  The government invites the Court to make a similar error here.

16    **3.    The Government's Remaining Arguments are Non-Responsive.**

17    <u>Double Jeopardy</u>.  Although the government posits (at 16-17) that it cannot re-indict

18  Defendants using 50 more "distinct occasions," it fails to cite to a single point of law or court

19  order that actually supports this position, effectively conceding that, on the government's

20  theory of the case, Defendants have no protection against being tried for 50 different ads.

21    <u>Money Laundering</u>.  The pleas of Carl Ferrer, Dan Hyer, and Backpage to various

22  conspiracy offenses are of no consequence, as those pleas do not establish that the specific

23  funds the government alleges were laundered were proceeds.  Likewise, even though

24  Defendants could, theoretically, be convicted of money laundering without having

25  committed the offense that generated the subject proceeds (Doc. 1577 at 17), Defendants

26  cannot have laundered money without either engaging in an offense or *knowing* that the

27  subject monies resulted from a criminal offense.

28

1      <u>Grand Jury</u>.  The government seeks (at 18) to obfuscate, arguing about the disclosure

2   of transcripts, but Defendants have not asked for transcripts to be disclosed—only that the

3   Court review the instructions previously produced for in camera review to confirm the

4   deficiencies in the government's instructions to the grand jury.  And, putting aside the dicta

5   the government cites from *United States v. Kenny*, 645, 1323, 1347 (9th Cir. 1981), as to whether

6   it must instruct a grand jury, there is no question that, once instructions are provided, they

7   must correctly state the law.  *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010).

8      DATED this 12th day of May, 2023.

9                                            **OSBORN MALEDON, P.A.**

10

11      By      s/ Joseph N. Roth
                 Timothy J. Eckstein
12               Joseph N. Roth
                 Sarah P. Lawson
13               2929 North Central, 20th Floor
                 Phoenix, Arizona  85012-2794
14

15      *Attorneys for James Larkin*

16                                            **LIPSITZ GREEN SCIME CAMBRIA LLP**

17      By      s/ Paul J. Cambria, Jr. (w/permission)
                 Paul J. Cambria, Jr. (*pro hac vice*)
18               Erin E. McCampbell (*pro hac vice*)
                 42 Delaware Avenue, Suite 120
19               Buffalo, New York 14202
20

21      *Attorneys for Michael Lacey*

22                                            **FEDER LAW OFFICE PA**

23      By      s/ Bruce S. Feder (w/permission)
                 Bruce S. Feder
24               2930 E. Camelback Road, Suite 160
25               Phoenix, Arizona  85016

26

27

28

                                               14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KESSLER LAW OFFICE**

By    <u>s/ Eric W. Kessler (w/permission)</u>
       Eric W. Kessler
       6720 N. Scottsdale Rd., Suite 210
       Scottsdale, Arizona  85253

*Attorneys for Scott Spear*

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW P.C.**

By    <u>s/ Gary S. Lincenberg (w/permission)</u>
       Gary S. Lincenberg
       Gopi K. Panchapakesan
       Ariel A. Neuman
       1875 Century Park E., Suite 2300
       Los Angeles, California  90067

*Attorneys for John Brunst*

**DAVID EISENBERG PLC**

By    <u>s/ David S. Eisenberg (w/permission)</u>
       David S. Eisenberg
       3550 N. Central Ave., Ste. 1155
       Phoenix, Arizona  85012

*Attorneys for Andrew Padilla*

**JOY BERTRAND LAW**

By    <u>s/ Joy M. Bertrand (w/permission)</u>
       Joy M. Bertrand
       P.O. Box 2734
       Scottsdale, Arizona  85252

*Attorneys for Joye Vaught*