Timothy J. Eckstein, 018321
Joseph N. Roth, 025725
Sarah P. Lawson, 036436
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona  85012-2793
(602) 640-9000
teckstein@omlaw.com
jroth@omlaw.com
slawson@omlaw.com

*Attorneys for James Larkin*
Additional counsel on following pages

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-00422-PHX-DJH |
| Plaintiff, | **DEFENDANTS' RESPONSE TO UNITED STATES' TRIAL BRIEF (DOC. 1642)** |
| vs. | |
| Michael Lacey, *et al.,* | |
| Defendants. | |

Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333
pcambria@lglaw.com
emccampbell@lglaw.com

*Attorneys for Michael Lacey*

Bruce S. Feder (AZ 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Rd., Suite 160
Phoenix, Arizona  85016
(602) 257-0135
bf@federlawpa.com

Eric Walter Kessler
KESSLER LAW OFFICE
6720 N. Scottsdale Rd., Suite 210
Scottsdale, Arizona  85253
(480) 644-0093
Eric.kesslerlaw@gmail.com

*Attorneys for Scott Spear*

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW P.C.
1875 Century Park E., Suite 2300
Los Angeles, California 90067
(310) 201-2100
glincenberg@birdmarella.com
gpanchapakesan.@birdmarella.com
aneuman@birdmarella.com

*Attorneys for John Brunst*

David S. Eisenberg
DAVID EISENBERG PLC
3550 N. Central Ave., Ste. 1155
Phoenix, Arizona  85012
(602) 237-5076
david@eisenbergplc.com

*Attorneys for Andrew Padilla*

Joy Malby Bertrand
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona  85252
(480) 656-3919
joyous@mailbag.com

*Attorneys for Joye Vaught*

3

The United States filed a 25-page motion in limine disguised as a "Trial Brief" late Friday, July 21, seeking substantive evidentiary rulings on multiple topics about which the government did not bother to meet and confer with defendants. The deadline for the filing of three-page motions in limine, however, was June 8, 46 days ago. The government has filed an untimely, overlong, omnibus motion in limine in violation of this Court's Order Setting Final Pretrial Conference (Doc. 1524). The government seeks with this last-minute filing an unfair advantage, forcing defendants to review, research and respond substantively to a lengthy brief covering six different factual and legal arguments, all while defendants are preparing for the July 27 final pretrial conference and the August 8 trial.

As the motion runs afoul of the Court's pre-trial order, the Court should summarily deny it. Should the Court address the merits, the government's requests fail as set forth below.

## I.   The "Trial Brief" is an Untimely, Overlong Omnibus Motion in Limine Filed in Violation of this Court's Clear Orders

The Court gave clear requirements for the filing of a motion in limine: they must (i) "include proposed language for the order being sought by the Court," (ii) "state with precision the evidence that is subject to the proposed order and the limitation or exclusion placed on the evidence," (iii) "contain a certification that the movant's counsel met and conferred in good faith with opposing counsel and the parties could not reach agreement" and (iv) "be concise and must not exceed three pages in length." Doc. 1524 at 4. In addition, under the doctrine of the law of the case, the Court reminded "the parties that it will not accept any new motions unless based on new law or facts." *Id.*

The Trial Brief violates the Court's order, both in letter and spirit.

Other than Trial Brief § I (asking to allow the jury to have a photograph of each witness), § II (asking for an order forcing defendants to raise objections to admissibility outside the presence of the jury), and § VII (requesting a *Frye/Cooper* hearing), the Trial Brief seeks pre-trial rulings on the admissibility of evidence which is a motion in limine, no matter how it is styled. Doc. 1642 at 4-24. *See Hammonds v. Yeager*, No. EDCV 15-1036

4

SS, 2017 WL 10560471, at *1 (C.D. Cal. Aug. 9, 2017) (submissions styled as "trial briefs" that "seek preliminary evidentiary rulings" "shall be construed as motions in limine").

The Court should therefore deny the requested relief on that basis alone. *See Arrington v. City of Los Angeles,* No. CV1503759, 2017 WL 10543403, at *4 (C.D. Cal. June 30, 2017) ("[I]t is unclear to the Court what purpose a trial brief serves. It is not a motion, for example, that requires a court ruling.").

## II.    The Government's Requests Lack Merit

### A.    Photographs of Trial Witnesses

The government asks the Court to compel each witness to be photographed so that the jury may have these non-evidentiary photos.  Doc. 1642 at 2.  Defendants previously objected to this as prejudicial to them and potentially intimidating to some witnesses, not all of whom are appearing because they want to assist the government.  Doc. 1432 at 92:12-20, 99:17-101:22.

Defendants renew those objections here.  First, the proposal is unfairly prejudicial. The government seeks to elicit sympathetic testimony from many women who were on the Backpage.com website.   It is prejudicial to provide jurors with photos of these witnesses when their appearance has nothing to do with the jury's deliberations.  Second, the photos are not evidence and should not be used during deliberations. *See United States v. Chadwell*, 798 F.3d 910, 914 (9th Cir. 2015) (While a jury "generally may examine all or part of any exhibit received into evidence and determine the weight to give that evidence during deliberations in the privacy of the jury room," the government cites to no authority allowing a juror to view photographs not admitted into evidence during their deliberation.). Third, the Court should not compel witnesses to have their photographs taken and compiled for the jury, as witnesses are likely to be intimidated by such an imposition, potentially impacting their testimony.

### B.    Notice of Witnesses and Exhibits

At the first trial, the Court ordered the parties to give 48-hours' notice of when a witness was expected to testify.  Doc. 1432 at 20:2-8.  In their discussions regarding the

Joint Pretrial Memorandum, Defendants asked the government to extend that to one week given the large number of witnesses and exhibits and given the coordination required by out-of-state counsel traveling to and from Phoenix on a weekly basis.  Defendants were willing to provide the same one-week notice to the government as to witnesses in their case-in-chief.  The government responded that it would do so only if Defendants agreed that any objections to admissibility be raised solely outside the presence of the jury *and*, if no objections were asserted, the government could freely publish the exhibits to the jury.  Defendants did not agree.  The government asks now for the Court to impose that which it could not get though agreement.

Defendants object to this condition as objections to exhibits often depend on the nature of the testimony laying the foundation, relevance, and other bases for admissibility that cannot be determined in the abstract.  *See Matsuura v. E.I. du Pont DeNemours & Co.*, No. 96-01180 SOM-LEK, 2006 WL 5249743, at *2 (D. Haw. July 10, 2006) ("[R]elevance cannot be determined in a vacuum but is dictated by the issues and circumstances in each particular case."); Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual § 6.01[1] (2006) ("Relevancy, as the Advisory Committee notes, is not an inherent characteristic of any item of evidence but exists only as a relationship between an item of evidence and a matter properly provable in the case.").  Thus, the Court should not require Defendants to resolve objections outside the presence of the jury before a witness testifies. *See* Doc. 1162 at 2 (denying government's motion in limine to admit evidence because it lacked "the specific circumstances and content" necessary to evaluate that evidence).  Rather than streamline the trial, such a rule may result in lengthy mini-trials on multiple categories of exhibits before each witness testifies.

Defendants further object to this proposal, as it unfairly favors the government, which bears the burden of proof.

**C.     Preliminary Instruction that "Trafficking" and "Prostitution" are Synonymous**

As the government notes, the Court previously found that, because, in the abstract, "[s]ex trafficking and child sex trafficking are, by definition, both forms of prostitution [and] a subset of the crime," the government would be allowed to present evidence of those things "to show notice to Defendants that the website was being used for illegal purposes . . . subject to specific objections from Defendants." Doc. 1156 at 4. The Court further ruled that the government could elicit from witnesses involved in prostitution testimony as to "how ads were created, drafted, edited and paid for," but not "[t]estimony concerning the lifestyle and impact that prostitution had on witnesses' lives" "or other details of their time working as prostitutes." *Id.* at 5.

In ordering a mistrial, the Court found that the government "abused [that] leeway." Doc. 1347 at 4:10-11.   Among other things, the Court found that the government overreached during the following instances:

- The government's opening statement;
- The government's questioning of Dr. Cooper "solely on child sex trafficking";
- The government's solicitation from Jessika Svengard of testimony regarding "the abuse by her trafficker";
- The government's emphasis "over, and over, and over again" that Ms. Svengard had been trafficked for 105 days;
- Ms. Svengard's multiple statements that she had been raped; and
- "[o]ther witnesses also [testifying] about the reputation of Backpage untethered from any communications with the defendants." *Id.* at 4-5.

Supposedly seeking to avoid another mistrial, the government proposes "safeguards that would permit introduction of relevant evidence about Backpage's operations and Defendants' knowledge and intent -- without creating a risk of unfair prejudice that

substantially outweighs the evidence's probative value." Doc. 1642 at 6. In fact, these proposed "safeguards" exacerbate the very risk the government purports to avoid.

Observing that many of its exhibits include the words "sex trafficking," "human sex trafficking" or "child sex trafficking," the government argues that each term "signifies a form of prostitution" and that it "will not be able to avoid these terms because they are contained in exhibits created by other people before the indictment and are essential to understanding the exhibit and the witness's testimony about why they were communicating with Backpage representatives" or that "these terms will be integral to evidence and testimony about Defendants' notice, knowledge, or intent regarding prostitution conducted via their website." Doc. 1642 at 6-7. The government then cites to several exhibits in which one or more of those terms is used. *Id.* at 7-10. What the government fails to consider is the most obvious solution: establish notice through exhibits that do not contain the terms "sex trafficking" or "child sex trafficking."

The terms "sex trafficking" and "child sex trafficking" are highly loaded, prejudicial terms that are highly likely to influence jurors who are particularly triggered by such claims. Sex trafficking of children by force, fraud, or coercion is a distinct crime, not one charged here. 18 U.S.C. § 1591. Rather, the government chose more than five years ago to indict Defendants under the Travel Act for the facilitation of business enterprises in violation of state law "prostitution" offenses. Having made this decision, and having forced a mistrial nearly two years ago, the government should have taken every reasonable step to confine its evidence to the crime charged. Instead, on the eve of trial, it throws up its hands, declares such a task impossible, and seeks to put on the Court the responsibility to prevent it from eliciting a second mistrial.

### 1.      Limiting Jury Instruction

The government's first proposed solution is a limiting jury instruction that effectively directs the jury to understand that "child sex trafficking," "sex trafficking" and "prostitution" are synonymous. Doc. 1642 at 10. The Court should reject such an instruction as incorrect and highly prejudicial.

These terms are not synonymous.  Each has a particularized meaning in the law and, more importantly, in the common understanding.  There is wide disagreement among people whether consenting adults should be able to sell sex for money, generally understood to be "prostitution."  There is near unanimous revulsion for a person being forced to engage in sex acts for money, otherwise known as "sex trafficking" and utter and abject hatred for anyone accused of such conduct involving a child.  To suggest, in any way, that these terms functionally mean the same thing is to invite the jurors to substitute "child sex trafficking" every time they hear "prostitution."

The use of these terms should be limited as suggested in Defendants' Motion in Limine to Preclude Irrelevant and Prejudicial Testimony (Doc. 1589).  That is, evidence of a person engaging in prostitution or being trafficked should be precluded "unless (1) the evidence relates to one or more of the fifty charged ads and (2) one or more Defendants *knew* that the person who was the subject of a charged ad was engaged in prostitution or was being trafficked at the time the charged ad was posted or while it was published on the website." *Id*. at 4.  At a minimum, the terms "sex trafficking" and "child sex trafficking" should not be mentioned during the trial.

## 2.   Limiting "Day in the Life" and Child Sex Trafficking Testimony

The government also asserts that it will "avoid[] a detailed discussion about the daily life of a prostitute," but then goes on to list a litany of topics it intends to cover that involve just that. *See* Doc. 1642 at 11.  The government intends to cover with each witness "how she was posted on Backpage," "the details of her ads," "how the ads were created," "the language used," "the number or frequency of their ads," "where the photos were taken," "what they were to be used for," "who told them how to pose or what to wear," "how the ads were paid for," "that the phone would start ringing almost immediately after the ads were posted," "that they engaged in acts of commercial sex," "that they seldom kept the money earned during 'dates,'" that "their pimp or trafficker" would "pay certain expenses," "how long they worked for their pimps or traffickers," and "the number of

9

'dates' they conducted as part of their participation in the prostitution enterprise." Doc. 1642 at 11. The government would be hard-pressed to create a more thorough list of details to elicit to describe the day in the life of a prostitute.

The government's proposed list is largely irrelevant, wildly inflammatory and unfairly prejudicial; will likely result in another mistrial; and is barred by the law of the case. Defendants do not dispute that narrow testimony limited to an advertiser's use of Backpage.com, including how the ad was created, drafted, edited, and paid for, may be relevant. The government's remaining proposed testimony, including about how pimps made individuals take photographs, picked what they had to wear, and what poses to do is not relevant to Defendants' knowledge or intent and is unfairly prejudicial. What the government has described is "day-in-the-life" of a prostitute testimony without reference to anything that any Defendant knew or could have known.

As Defendants explained in their motion in limine on this subject, Defendants are "not indicted for facilitating the amorphous notion of 'prostitution'" but "for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related business, or other groups were involved in the business of prostitution." Doc. 946 at 13. "[T]his case is not about Backpage . . . [t]his case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity." Doc. 1099 at 38. Moreover, "one cannot intend to promote/facilitate a business enterprise one does not know exists." Doc. 946 at 15-16. Accordingly, the government must prove, among other things, that Defendants knew of and intended to facilitate the individual "prostitutes [or] prostitution-related businesses" related to the fifty charged ads. A witness's testimony about a person engaging in prostitution or being trafficked could not make the Defendants' intent related to a charged ad "more or less probable," Fed. R. Evid. 401, unless (1) that person's experience is related to a charged ad and (2) Defendants knew that person was engaged in prostitution at the time that ad was posted or while it was published on the website. Otherwise, the testimony has no bearing on any fact "of consequence in determining the action," *id*. And where the government elicits testimony that is "not

10

tethered to any communication with the defendants," a mistrial will result. Doc. 1347 at 4-5; Doc. 1156 at 5 (holding that "[t]estimony from people involved in prostitution is only relevant as it relates to their use of Backpage.com and notice to defendants that prostitutes were using their website. Testimony concerning the lifestyle and impact that prostitution had on witnesses' lives is irrelevant to the crimes charged").

### D.   The Multiple, Late Motions in Limine Seeking to Admit Various Categories of Exhibits also Fail

Section IV, V and VI of the government's trial brief are merely late, improper motions in limine seeking admission of many of the government's exhibits as non-hearsay. The government's trial brief makes clear that it intends to prove its case through irrelevant, prejudicial evidence that it asserts is "not for the truth" but is instead offered to prove Defendants' alleged criminal intent. But merely articulating a purported non-hearsay use for evidence is not sufficient to justify its admission. *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994) ("[C]ontrary to the government's contention, the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice."). Moreover, such evidence is unnecessarily cumulative. The government intends to call numerous live witnesses to provide the very same "notice" evidence that the government seeks to introduce in its Trial Brief.

### 1.   Admissibility of Non-Testifying Witness Statements

The government's proffered "non-testifying witness statements" are not only barred as hearsay without an exception, but they are irrelevant, cumulative, and wasteful.

First, the government's trial brief ignores the law of the case as stated in Doc. 1156. In that order, the Court determined that certain statements of non-testifying witnesses "*may*" be admitted as non-hearsay, but made no final determination as to the whether the evidence has the requisite foundation or meets other requirements for admission. *Id.* (emphasis added). In fact, the Court has already declined to admit third-party statements before trial because "[t]he Court cannot analyze the admissibility of statements without

looking at the specific circumstances and content surrounding them." Doc. 1162 at 2. That is, the fact that the government can articulate a potential non-hearsay use for certain evidence begins rather than ends the analysis. For instance, to admit a New York Times column (Doc. 1642 at 13-14), the government must lay the proper foundation to show that Defendants were aware of that column and read it during the relevant period. The same is true for the CNN documentary and the Anderson Cooper 360 segment (*id.* at 14-15). Without first proving that Defendants knew about these statements and their content, the government cannot seek their admission.[1]

The government fails to make the requisite evidentiary showing, instead asserting that Defendants must have known about the contents of these publications because they were aware of their existence. (Trial Br., Doc. 1642 at 14-15). That is not the same as showing that Defendants actually read the NYT column or watched the CNN program.

Likewise, as to the statements by PR firms, the government seeks to shortcut its foundational obligations. Once again, the Court cannot determine their admissibility in a vacuum, but must make the determination based on the circumstances of the case. *See Matsuura*, 2006 WL 5249743, at *2.

Moreover, many of these exhibits are replete with information falling under the Court's previous ruling precluding "day-in-the-life" evidence. *See* Part (C)(2), *supra*. The Court has already ordered that "[t]estimony concerning the lifestyle and impact that prostitution had on witnesses' lives is irrelevant to the crimes charged and may unduly

[1] Further, in light of the Court's rulings on the parties' motions in limine (Doc. 1643) that appear to take a narrow view of relevance, i.e., that (1) prior litigation involving Backpage is not relevant because – while those cases concerned similar allegations – they were not Travel Act cases and (2) attorney advice is relevant to the extent it concerns the ads charged in Counts 2-51 or a "similar ad described in the SI," Defendants' are hard-pressed to understand how, for example, a CNN documentary, NYT op-ed, and other so-called "notice" evidence is admissible. That "evidence" has nothing to do with the fifty charged ads or any specific ads – these hearsay statements at best establish a third party's perception of the general content on the Backpage website. While Defendants intend to persuade the Court that its rulings in Doc. 1643 should be modified, if those rulings hold, then the government should be held to the same standard of relevance.

prejudice Defendants." Doc. 1156 at 5. But the government's proffered evidence is replete with such irrelevant, prejudicial evidence. For example, the NYT article says: "In November, a terrified 13-year-old girl pounded on an apartment door in Brooklyn . . . The girl, whom I'll call Baby Face because of her looks . . . said she hurt too much to endure yet another rape by a john. She told prosecutors later that she was bleeding vaginally and that her pimp had recently kicked her down a stairwell for trying to flee." Gov't Ex. 1032A. The government should not be permitted to evade the Court's clear orders by introducing such evidence through hearsay-filled exhibits.

Second, the risk that the jury considers these media pieces regarding the ills of Backpage for their truth—rather than a non-hearsay purpose—is manifest. That is because the government seeks to admit these statements not as hearsay, but to show Defendants "had knowledge or notice of those statements, and not as proof of truth of the matters asserted." Doc. 1642 at 12. The government's proposed evidence could be relevant only to show notice of prostitution offenses if the third-party statements were true. A third-party's accusation does not give the accused notice of anything if the accusation is untrue. The government does not consider the New York Times piece (or the CNN reporting and the like) relevant because Defendants knew the journalist wrote about Backpage.com; rather, the government's theory is that Defendants had notice of *prostitution* offenses because the article asserted that alleged fact. The article's relevance thus turns on whether the assertion true or not, rendering such an out-of-court statement hearsay. *United States v. Hubbard*, 26 F.3d 134, *2 (9th Cir. 1994) (refusing to admit an out-of-court statement because "it was relevant . . . only if offered for its truth"); *accord United States v. Love*, 521 F.3d 1007, 1009 (8th Cir. 2008) (because the limited purpose for which an out-of-court statement was offered assumed the statement was true, it was "being offered for the truth of the matter asserted"); *State v. Hill*, 387 P.3d 112, 116 (Idaho 2016) ("To show that a statement is not offered for the truth of the matter asserted, the party arguing for the admission must show that the statement will be relevant to an issue in the *case without regard for its truthfulness.*") (emphasis added).

13

The government seeks to use these non-witness statements to show Defendants' criminal intent. Doc. 1642 at 14 ("As with the New York Times column, the CNN documentary is offered not for the truth of the allegations, but to show Defendants' intent and actions in maintaining the website."), 19 ("This evidence will help the jury determine each Defendant's intent."). Because these statements "would only have [their] desired effect if in fact the statements were true," the evidence is being offered for the truth of the matter asserted. *United States v. Sadler*, 234 F.3d 368, 372 (8th Cir. 2000) (affirming exclusion of testimony on the basis of hearsay because it was offered for the truth of the matter asserted). The government asserts the statements will be offered to show Defendants "were hearing a steady drumbeat from many public and private sources that their site was engaging in promoting, or facilitating the promotion of, prostitution activities." Doc. 1642 at 18. But this "steady drumbeat" is only relevant to Defendants' criminal intent if the underlying statement is true. Plus, none of these statements have any relation to the fifty charged ads, and pre-date the charged ads by a significant margin. Thus, the government's proffered third-party statements are inadmissible hearsay.

## 2. Recordings of March 2015 User Phone Calls Responding to Undercover Sting Ads

The government's argument at Section V is another untimely and inappropriate motion in limine. *See* Doc. 1642 at 19. Beyond its procedural impropriety, the government's proposed admission of recorded phone calls would violate the Confrontation Clause and the rules against hearsay.

The government asserts (at 20) that the recorded calls will not be offered for the truth of the matter asserted. If that is the case, the recorded calls are plainly irrelevant and highly prejudicial. A caller's statements to California Department of Justice Special Agent Mackey are not relevant to any of the charged advertisements, Defendants' knowledge as to the charged advertisements, or any other fact "of consequence in determining the action." Fed. R. Evid. 401. Moreover, the Court has determined that a statement from a non-percipient witness is only relevant if it relates to "Defendants' notice and knowledge

of ads being used to facilitate any business enterprise involving prostitution." Doc. 1079 at 2. But Defendants had no knowledge of these phone calls and have never heard the recordings, so in no way can the recordings go to Defendants' notice. Ultimately, the recorded calls have no probative value and are hugely prejudicial. Nor are the phone calls even about Defendants. As the Court has held, "this case is not about Backpage . . . [t]his case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity." Doc. 1099 at 38.

The government contends that these out-of-court statements are not hearsay because they "are being introduced to show the effect on the listener, Special Agent Mackey" which caused the California DOJ "to continue forward with its investigation into Backpage." Doc. 1624 at 20. This tired strategy is an invitation to err because of its "breathtaking potential for abuse." Wright & Miller, *Fed. Prac. & Proc. Evid.* § 6720 (2023 ed.); *United States v. Sharp*, 6 F.4th 573, 582 (5th Cir. 2021) ("[C]ourts must be vigilant in ensuring that these attempts to explain the officer's actions with out-of-court statements do not allow the backdoor introduction of highly inculpatory statements that the jury may also consider for their truth.") (internal citation and quotation marks omitted); *United States v. Marchan*, 935 F.3d 540, 546 (7th Cir. 2019) ("[W]e are reluctant to permit course of the investigation rationale for fear of its abuse or misuse.") (quotation marks omitted).

Where, as here, the out of court statements have no probative value and carry a considerable risk of prejudice, their admission "cannot be justified simply to set forth the background of the investigation." *U.S. v. Mancillas*, 580 F.2d 1301, 1310 (7th Cir. 1978). Even the government recognizes the prejudicial nature of the recorded calls, though it argues that by only admitting "four calls out of hundreds of calls and text messages" makes the four it selected "not be unduly prejudicial." Doc. 1642 at 20. "Only in circumstances where there is real import to understanding why the police acted in a certain manner will the out-of-court statement have significant non-hearsay probative value." Wright & Miller, *supra*, § 6720. Defendants do not challenge why Special Agent Mackey acted the way she did, so there is no reason for the statements to be introduced. And even if the Court finds

15

that the recorded calls have some probative value, the government presents no coherent reason as to why the recorded calls are necessary to explain the course of Special Agent Mackey's investigation.  Instead, the Court has a duty to "redact[] or paraphrase[] to . . . protect the defense from damaging hearsay accusations."  Wright & Miller, *supra*, § 6720. Here, the government never explains why the California DOJ pursuing an investigation is relevant to the charges asserted here by the U.S.  Nor do these recorded calls concern any of the fifty charged ads.

Finally, the recorded calls are merely a thinly veiled attempt to violate *Crawford v. Washington*, 541 U.S. 54 (2004) and the 6th Amendment.  *United States v. Maher*, 454 F.3d 13, 22 (1st Cir. 2006) ("The [G]overnment's articulated justification—that any statement by an informant to police that sets context for the police investigation is not offered for the truth of the statement and thus not within *Crawford*—is impossibly overbroad" and has an "added bite" where it is used in an attempt "to circumvent *Crawford's* constitutional rule"); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the [S]ixth [A]mendment and the hearsay rule.").  The statements in the recorded calls are not subject to cross examination, nor have Defendants had a prior opportunity to cross-examine the declarant.  *Crawford*, 541 U.S. at 61.  Admission of the recorded calls would create a grave constitutional error.

### 3.    Ernie Allen's Past Recollection

Section VI is also a late, improper motion in limine.  The government seeks admission of the recorded recollections of Ernie Allen because he "might be unable to recall the details of the meetings that occurred in 2010 and 2011"—*before* he even testifies. Doc. 1642 at 21.  Should Mr. Allen be unable to recall at trial the details of a particular meeting, the government may attempt to refresh his recollection by following the proper procedure under the Rules of Evidence.  The government's fear that he "might be unable to recall" does not justify premature assessment of Mr. Allen's notes under Rule 803(5).

The government's reading of Rule 803(5) would render irrelevant any imperfect on-the-stand recollection. And the way the government seeks to apply Rule 803(5) does not allow Defendants their Sixth Amendment right to cross-examination of the statements. *Crawford*, 541 U.S. at 61. It is impossible for the Court to assess at this juncture whether Mr. Allen's recollection is so poor as to justify application of Rule 803(5). Fed. R. Evid. 803(5)(A) (the exception applies only if the witness cannot "testify fully and accurately"). And even if Rule 805(3) applies, Mr. Allen may only read the parts of his recorded recollection that he could not recall; the document cannot be admitted as evidence by the government under this rule. Fed. R. Evid. 803(5) ("If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.").

**E.    The Government's *Frye/Cooper* Request**

The government's request for a hearing regarding Defendants' rejections of plea offers is improper for several reasons. First, the cited cases (*Frye* and *Cooper*) do not provide for the requested hearing, but rather concern challenges to effective assistance of counsel brought by defendants where a prior plea offer lapsed or was rejected. Second, the requested hearing would interfere with Defendants' attorney-client relationships. Counsel for Defendants have already informed the government that the plea offers have been rejected; there is no basis for further inquiry. Third, the requested hearing would improperly involve the Court in plea negotiations.

**III.   Conclusion**

For the reasons set forth herein, the Court should either disregard the government's brief or deny the requested relief without prejudice. *See Arrington*, 2017 WL 10543403, at *4 ("[I]t is unclear to the Court what purpose a trial brief serves. It is not a motion, for example, that requires a court ruling."); *Hammonds*, 2017 WL 10560471, at *1 (submissions styled as "trial briefs" that "seek preliminary evidentiary rulings" "shall be construed as motions in limine").

DATED this __ day of July, 2023.

17

**OSBORN MALEDON, P.A.**

By     s/ Joseph N. Roth
       Timothy J. Eckstein
       Joseph N. Roth
       Sarah P. Lawson
       2929 North Central, 20th Floor
       Phoenix, Arizona 85012-2794
*Attorneys for James Larkin*

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By     s/ Paul J. Cambria, Jr. (w/permission)
       Paul J. Cambria, Jr. (*pro hac vice*)
       Erin E. McCampbell (*pro hac vice*)
       42 Delaware Avenue, Suite 120
       Buffalo, New York 14202

*Attorneys for Michael Lacey*

**FEDER LAW OFFICE PA**

By     s/ Bruce S. Feder (w/permission)
       Bruce S. Feder
       2930 E. Camelback Road, Suite 160
       Phoenix, Arizona 85016

**KESSLER LAW OFFICE**

By     s/ Eric W. Kessler (w/permission)
       Eric W. Kessler
       6720 N. Scottsdale Rd., Suite 210
       Scottsdale, Arizona 85253

*Attorneys for Scott Spear*

**BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &**

18

**RHOW P.C.**

By      s/ Gary S. Lincenberg (w/permission)
        Gary S. Lincenberg
        Gopi K. Panchapakesan
        Ariel A. Neuman
        1875 Century Park E., Suite 2300
        Los Angeles, California 90067

*Attorneys for John Brunst*

**DAVID EISENBERG PLC**

By      s/ David S. Eisenberg (w/permission)
        David S. Eisenberg
        3550 N. Central Ave., Ste. 1155
        Phoenix, Arizona  85012

*Attorneys for Andrew Padilla*

**JOY BERTRAND LAW**

By      s/ Joy M. Bertrand (w/permission)
        Joy M. Bertrand
        P.O. Box 2734
        Scottsdale, Arizona  85252

*Attorneys for Joye Vaught*