GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-18-422-PHX-DJH |
| Plaintiff, | **UNITED STATES' MOTION FOR CURATIVE INSTRUCTIONS** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

At the July 27, 2023 final pretrial conference, the Court admonished all counsel regarding the first trial's opening statements—and instructed counsel to read *United States v. Blixt*, 548 F.3d 882 (9th Cir. 2008), "so that you understand the boundaries of what you can say." Doc. 1691, 7/27/23 Hr'g Tr. at 29. This motion addresses four parts of Defendants' opening statements that disregarded the Court's directives. The United States requests curative instructions, as in *Blixt*, before opening statements resume. Without such instructions, the United States will continue to be prejudiced by defense counsel's statements, and counsel likely will be emboldened to further overstep the Court's rulings.

## 1.     Good Faith Reliance on Advice of Counsel

This Court has repeatedly ruled that Defendants are not permitted to invoke an advice of counsel defense in opening statements, witness testimony, or closing arguments unless and until they comply with the four-factor test in *United States v. McLennan*, 563 F.2d 943, 946 (9th Cir. 1977). First, granting the United States' motion in limine on this issue, the Court ruled: "Defendants may not suggest in opening statements that they relied on advice of counsel until they make a proffer of specific testimony and/or evidence, relevant to the alleged charges." Doc. 1643 at 13.

Second, when defense counsel tried to relitigate that ruling, the Court stated: "[M]y order is precisely clear with regard to advice of counsel." Doc. 1691, 7/27/23 Hr'g Tr. at 36. Defense counsel persisted, "[I]n terms of *opening statement*, advising the jury of what evidence will come in relating to those factors as they may pertain seems to me it's something that the defense should be able to do. I want to make sure that if the Court is precluding the defense from stating that in openings, that we abide by that if that's the ruling." Doc. 1691, 7/27/23 Hr'g Tr. at 51 (emphasis added). The Court responded that "the order speaks for itself and relies upon Ninth Circuit precedent that requires a particularized showing." Doc. 1691, 7/27/23 Hr'g Tr. at 52-53. Defense counsel tried again, "[C]an defense counsel in opening statements advise the jurors what we anticipate that Carl Ferrer will say in this regard?" Doc. 1691, 7/27/23 Hr'g Tr. at 53. The Court responded: "I think you go down a dangerous path when you start to say: Well, he relied

on this counsel or that counsel. And . . . the government will raise an objection and the Court will then find itself having to admonish counsel because of my order. So I would be very careful about that." Doc. 1691, 7/27/23 Hr'g Tr. at 55-56. The Court declined "to revisit" its ruling. Doc. 1691, 7/27/23 Hr'g Tr. at 58.

Third, just before opening statements, the United States objected to a defense PowerPoint slide that discussed "good faith." The United States stated that "good faith . . . cannot be argued in the sense of advice of counsel defense," and cited Doc. 1643. This Court stated: "In the context of that, I agree." When Defense counsel pressed the issue again, the Court reiterated: "So long as it does not get into the avenues of reliance on attorney advice because, as you even acknowledged at the Final Pretrial Conference, you've waived that, and you've not asserted it."

Undeterred, counsel for Defendant Lacey's opening statement violated the Court's rulings regarding advice of counsel on multiple occasions:

- "Mike Lacey was not involved in the day to day operation of Backpage. He had to rely on what Carl Ferrer told him and others. What did he know? He knew that Carl had hired a bunch of **lawyers to advise** them."

- "And you'll see Carl Ferrer had a **whole cast of attorneys advising** him."

- "Mr. Lacey's **attorney, local attorney**, just dealing with Mr. Lacey and the banks on the accounts that they had, they closed the **attorney's** account down. And nobody's accused him of doing anything wrong."

The latter statement was more circumspect regarding advice of counsel (because this Court had sustained the United States' objection just a few minutes earlier), but it again showed Defendants' eagerness to improperly inject that they sought legal advice and thus should not be found guilty. But they want to smuggle this theory into the minds of the jurors without following the law or this Court's unequivocal rulings on this issue.

In *Blixt*, the district court told the jury that the defense attorney made an incorrect statement about the law in closing argument. 548 F.3d at 885-86. On appeal, the defendant argued that the court "improperly singled out Defense Counsel's argument and invalidated

it to the jury when it advised the jury that it should disregard counsel's statements." *Id.* at 890. The Ninth Circuit held that "the district court, exercising considerable restraint in the face of blatant jury nullification arguments, properly instructed the jury to disregard counsel's statements." *Id.* (citing *United States v. Sturgis*, 578 F.2d 1296, 1300 (9th Cir. 1978) ("Not only should a judge interfere with an attorney's closing argument when it is 'legally wrong,' but he should also limit, for example, attorneys' remarks outside the record or unduly inflammatory.")).

In Doc. 1643, this Court explained that "[t]o permit Defendants to tell the jury that they broadly sought advice on conduct unrelated to the SI's allegations would present irrelevant evidence, could be factually misleading, would result in jury confusion, and would prejudice the Government." Doc. 1643 at 12-13. The United States has now been prejudiced, just as this Court predicted. The jury has now heard on at least three occasions that there were some lawyers advising Defendants and their co-conspirators. Given the Court's rulings and *Blixt* admonition, the Court should give a curative instruction before opening statements resume. The United States proposes the following curative instruction:

> Ladies and gentlemen of the jury, during his opening statement, counsel for Defendant Lacey suggested that lawyers advised one or more of the individuals involved with Backpage.com. It was improper for counsel to suggest that Defendant Lacey may not be guilty because he may have relied on any attorney's advice. As I instructed you previously, what the lawyers say in opening statements is not evidence. I instruct you to disregard any suggestion that Defendant Lacey relied in good faith on any advice of any attorney.

Anything short of such an instruction, such as a mere admonition outside the presence of the jury, would leave the prejudice unaddressed, and would risk emboldening counsel to further disregard the Court's rulings.

## 2.    Legal Arguments Should Not be Made to Jury

Counsel for Defendant Lacey made the *legal argument* in his opening statement that if a person responds to an ad and engages in "sex for money, the platform isn't responsible for that, unless it was clear on the face of the ad that it was definitely a crime." Counsel

repeatedly (and unsuccessfully) pressed this legal argument in prior pleadings and hearings—as summarized in his Objection to the Court's proposed First Amendment jury instruction and the United States' Response. *See* Docs. 1657, 1666.  On August 18, 2023, the Court overruled Defendants' Objection and "admonished [counsel] that they should confine their opening statements to comply with the Court's First Amendment jury instruction, should they intend to raise it at all." Doc. 1710 at 1.

This followed the Court's rulings that Defendants could not suggest that veiled prostitution ads were protected by the First Amendment or the Communications Decency Act. *See* Doc. 1643 at 8-9 ("[T]o the extent that Defendants seek to invoke their First Amendment rights as a defense to the allegations that they conspired to promote and/or facilitate prostitution through veiled ads for prostitution, they are prohibited from doing so."); Doc. 1643 at 10 ("Defendants may not argue that [the CDA] immunizes Defendants from . . . violating the Travel Act."). Notwithstanding these clear rulings, at least one Defendant had an entire slide dedicated to the CDA minutes before the opening statements began, which this Court had to specifically exclude after the United States objected.

When a defendant moves to suppress evidence alleging a Fourth Amendment violation, courts do not permit the defendant to raise the Fourth Amendment as a defense in front of the jury because that is a legal question decided by the Court, not the jury. *See, e.g., United States v. Sanders*, 196 F.3d 910, 914 (8th Cir. 1999) (endorsing district court's jury instruction that it had "ruled as a matter of law" the stop and search of the defendant's vehicle were "lawful"; concluding the court "acted within its discretion in making clear to the jury the extent of its role."); *United States v. Quattlebaum*, 540 F. Supp. 2d 1, 8 (D.D.C. 2008) ("[I]t is the Court's role to decide legal questions, such as the lawfulness of a traffic stop. . . . [I]t would have been improper to permit the jury to consider whether the stop and search in question were lawful during their deliberations."). Likewise, if a defendant files a motion to suppress his confession to police, alleging a Fifth Amendment violation, courts do not permit the defendant to argue *Miranda* or the Fifth Amendment as a defense in front

of the jury.[1] Again, that's because those constitutional questions are for the Court, not the jury.

The same should be true here for the First Amendment. This Court has already ruled that the First Amendment does not protect criminal activity as alleged in the Superseding Indictment, provided the SI's factual allegations are proven as true. *See, e.g.,* Doc. 793 *passim*. Thus, there is no reason for Defendants to be permitted to raise the constitutional issue with the jury. It will mislead and confuse the jury about their role and invite a verdict based on nullification. For the same reason that arguing Fourth and Fifth Amendment legal issues to a jury would be improper, it is equally improper for Defendants to argue the legal issue of whether the First Amendment protects their activity. The First Amendment is not offended by putting to the jury the factual question of whether Defendants promoted, or facilitated the promotion of, business enterprises involving prostitution offenses. If the jury answers in the affirmative (guilty), then Defendants engaged in criminal activity—which the First Amendment does not protect as a matter of law. If the jury answers in the negative (not guilty), then the First Amendment would protect Defendants—again, as a matter of law. Either way, the jury's role does not involve deciding legal issues concerning the First Amendment. *See also* Doc. 1242 at 2-5 (collecting cases).

The United States respectfully requests a curative instruction that reminds the jury that the Court will instruct on the law at the end of the case, and that any legal arguments made by counsel in opening statements should be disregarded by the jury. Furthermore, the United States again re-urges this Court to clearly rule that defense counsel shall make no more references to the First Amendment in front of the jury because doing so prejudices the United States by invoking a nullification argument based upon generalized appeals to the First Amendment or "free speech."

### 3.     Shutdown of Backpage.com

Counsel for Defendant Lacey separately disregarded this Court's ruling to not

---

[1] A defendant may argue voluntariness to the jury, but not the Fifth Amendment or *Miranda* because those are legal arguments.

engage in conscience of the community statements designed to inflame the jury. In one motion in limine, the United States sought to preclude defense counsel from saying "When you have the law and the facts on your side, you go to civil court. When you don't, you take people's money so that they can't defend themselves and you bring a criminal charge." This Court granted the United States' motion at the pretrial conference on July 27, 2023, stating that, "As to that precise statement, it does not tell the jurors what the defense theory of the case is. It's more akin to a statement of personal belief of defense counsel's comment on the legitimacy of a government charge, and it is going to result in confusion to the seated jury…I am not going to permit." Doc. 1691, 7/27/23 Hr'g Tr. at 28. The Court explained: "[T]hat particular statement . . . is akin to a conscience of the community statement made to inflame the jurors at the outset. These jurors that we will have carefully, carefully screened so that they are sitting there without their mind made up, and so it does border on inappropriate conscience of the community statement." *Id*. at 28. The Court then asked all counsel to read *Blixt*, and held, "So I will grant the government's motion to the extent that anyone is considering making a statement similar or akin to this that is here in the motion." Doc. 1691, 7/27/23 Hr'g Tr.at 29.

Notwithstanding the Court's ruling, counsel for Defendant Lacey told the jury: "Every one of those people lost the ability to do that because the government came in with no conviction by a judge, no conviction by a jury, and no conviction by anything or anybody but they shut it down. . . . [M]illions of people who never abused Backpage were silenced." That statement violates the Court's Order because it "does not tell the jurors what the defense theory of the case is," but is "more akin to a statement of personal belief of defense counsel's comment on the legitimacy of a government charge" or action, "and it is going to result in confusion to the seated jury." Doc. 1691, 7/27/23 Hr'g Tr. at 28. It is a "conscience of the community statement made to inflame the jurors at the outset." Doc. 1691, 7/27/23 Hr'g Tr. at 28. Counsel's argument is also incorrect. The person Defendants claim was the lawful owner of the website at the time, Carl Ferrer, pleaded guilty and consented to the shutdown. *See Fla. v. Nixon*, 543 U.S. 175, 187 (2004) (a guilty plea "is

itself a conviction") (internal quotations and citation omitted).

The United States accordingly requests the following curative instruction:

Ladies and Gentlemen of the jury, counsel for Defendant Lacey suggested that the United States illegally shut down Backpage.com. That is incorrect. There has been no finding that the United States did anything illegal or improper regarding Backpage's closure. You are instructed to disregard defense counsel's suggestion otherwise.

### 4.    Reference to Prior Litigation (*Backpage.com v. Dart*)

The Court instructed Defendants pretrial "not to refer to prior court decisions, rulings, opinions or results filed by or against Backpage.com, LLC, unless those prior cases were adjudications of 18 U.S.C. § 1952(a)(3)(A) offenses." Doc. 1643 at 11. The Court ruled: "Defendants are precluded from comparing this case to any prior unrelated civil cases and/or money judgements in their opening and closing arguments." Doc. 1643 at 11.

At the final pretrial conference, defense counsel asked this Court about "reference to prior litigation in which Backpage was involved," and whether it was "the Court's view that none of those issues are potentially relevant to the jury's consideration of the allegation in the superseding indictment?" Doc. 1691, 7/27/23 Hr'g Tr. at 58-59. The Court said, "I'm sticking to what my order says. I don't want counsel to come up here and compare this case to some other case. . . . If the precise types of allegations under Title 18 were not in those previous decisions, don't mention it because it's irrelevant." Doc. 1691, 7/27/23 Hr'g Tr.  at 59. Defense counsel tried again, and the Court replied, "my ruling is what my ruling is and you can make that decision." Doc. 1691, 7/27/23 Hr'g Tr. at 59-60.

Nevertheless, in Defendant Brunst's opening statement, counsel referenced Backpage's litigation against Sheriff Dart in the Seventh Circuit: "What the evidence will show in this case is that all of the issues with Sheriff Dart were resolved in a manner that gave comfort to our clients, that in fact Sheriff Dart was the one who was wrong in threatening to shut them down." This was clearly a reference to *Backpage.com LLC v. Dart*, 807 F.3d 229, 233-34 (7th Cir. 2015), which involved a preliminary injunction that

Backpage sought.

The reference to *Dart* violated this Court's "instruct[ion] not to refer to prior court decisions, rulings, opinions or results filed by or against Backpage.Com, LLC, unless those prior cases were adjudications of 18 U.S.C. § 1952(a)(3)(A) offenses." Doc. 1643 at 11. The United States does not propose a curative instruction for this, but requests that the Court again admonish defense counsel not to refer to other litigation in the remaining openings or at any time in the presence of the jury.

## Conclusion

The United States respectfully requests that this Court take the curative steps described above to ensure that the remaining openings comply with the Court's rulings.


Respectfully submitted this 7th day of September, 2023.


GARY M. RESTAINO
United States Attorney
District of Arizona


NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

 *s/Austin M. Berry*
AUSTIN M. BERRY
Trial Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER KOZINETS
ANDREW STONE
DANIEL BOYLE
Assistant U.S. Attorneys

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on September 7th, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Austin M. Berry*
Austin M. Berry
Trial Attorney