Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

*[Additional counsel listed on next page]*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-DJH |
| Plaintiff, | |
| vs. | **DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTIONS TO ADMISSION OF EVIDENCE** |
| Michael Lacey, *et al.*, | |
| Defendants. | |

3891320.2

Eric Kessler (AZ Bar No. 009158)
KESSLER LAW GROUP
6720 N. Scottsdale Rd., Suite 210
Scottsdale, AZ 85253
Telephone: (480) 644-0093
eric@kesslerlawgroup.com
*Attorney for Scott Spear*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

3891320.2

2

Defendants, by and through their undersigned counsel, respond to the Government's motion (Dkt. 1801), which seeks to preclude defense evidence of good faith that specifically rebuts the Government's evidence and testimony introduced through Carl Ferrer.

## I. It is black letter law that the defense has the right to cross-examine a government witness on the witness's prior statements.

"A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness." *United States v. Bao*, 189 F.3d 860, 865-66 (9th Cir. 1999). Not only is a defendant entitled to cross-examine a government witness on prior inconsistent statements, the Jencks Act mandates that the government disclose such statements to the defense to enable the defense to cross a witness on his or her prior statements. *See, e.g.*, *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1458 (9th Cir. 1992) (reversing conviction on basis that undisclosed prior statement would have been used to impeach the witness and deprived defendants of exculpatory evidence). Simply put, when it comes to prior statements of a witness, there is no exception to the right to cross-examination. It is universally understood that the defense is entitled to cross-examine a defendant on **any** prior statement, particularly, as here, when the prior statements address the very issues put before the jury by the Government on its direct exam. Precluding defense counsel from cross-examining Ferrer on his prior statements, including those made under oath, will deprive Defendants of their right to a fair trial and create reversible error. *See Holley v. Yarborough*, 568 F.3d 1091, 1099-1101 (9th Cir. 2009) (granting writ of habeas corpus to a defendant who was barred from cross-examining a key government witness about her prior statements).

Moreover, the Federal Rules of Evidence extend even further when the prior statement at issue was made under oath as part of a prior court case. Indeed, a "prior inconsistent statement **may be offered to establish the truth of its assertion** if it was given under oath at a trial, hearing, or other proceeding, or in a deposition." *Bao*, 189 F.3d at 866 n.1 (citing Rule 801(d)(1)(A) (emphasis added)). In these prior statements, Ferrer speaks to the very allegations asserted in this case regarding moderation, Backpage's terms of use,

and whether the ads on the site proposed acts of prostitution or were associated with prostitution. There is no limitation under the Rule that the prior trial, hearing, or proceeding concern the same charges as those at issue in the instant case.

On these bases, the defense is entitled, as a matter of law, to cross-examine Ferrer on any of his prior statements, and to seek admission of those that he previously gave under oath under Rule 801(d)(1)(A) and as evidence of Defendants' good faith reliance on the lawfulness of the operation of Backpage.

**II. It is black letter law that the defense is allowed to cross-examine a government witness about any topic on which the government solicited testimony during direct.**

It is black letter law that when a litigant opens the door on a topic, "it is fair advocacy" for the opposing party "to enter." *See United States v. Del Toro Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012).

The government has repeatedly—each day at trial—elicited testimony from Ferrer and has admitted exhibits through Ferrer that opened the door to the existence and results of prior proceedings and litigation, including prior investigations of Backpage, grand jury investigations, the Senate's Permanent Subcommittee on Investigation's hearing and report, and testimony from Ferrer and other Backpage employees during these proceedings. The attached chart (Exhibit A) details the government's door opening through Ferrer. The Defendants' right to a fair trial requires that Defendants be allowed "to enter" each and every door the government opened to elicit evidence of their good faith.

Further, the government has repeatedly elicited testimony regarding subpoenas in "prostitution" cases, Ferrer's testimony in those cases, assistance given to law enforcement, and purported failures to disclose certain aspects of the Backpage business to law enforcement. While the government has stipulated to the admission of many of the law enforcement accolades the defense intends to introduce, it purports to dictate which accolades the defense should be permitted to introduce and which are cumulative before the defense even stands up to cross-examine Ferrer. That law enforcement commended

Backpage regarding their efforts to assist in the prosecution of wrongdoers is a central theme of the defense and directly negates an alleged intent to facilitate business enterprises involved in prostitution. The Court should not preclude evidence the **government concedes is relevant** before the defense even has an opportunity to present the evidence.

Regarding evidence that Backpage notified law enforcement of ads on other sites, this evidence also negates intent, as it shows efforts on the part of Backpage to bring wrongdoers to justice. Backpage's cooperation with law enforcement in this respect is inconsistent with the notion that it intended to facilitate business enterprises involved in prostitution. The government has also elicited through Ferrer that other websites, like Craigslist, had taken actions to eliminate adult content from their site—the implication being that Backpage was a bad actor by comparison. The proffered evidence would also rebut this charge.

**III.   The *Dart* saga is plainly relevant to the Government's claims of "credit card Armageddon."**

As to the *Backpage v. Dart* litigation—which plays a central role in what the government has called "credit card Armageddon"—the basis for the admission of exhibits tied to *Dart* is set forth at Dkt. 1780 (Brunst's opposition to the government's motion for curative instruction). In short, (1) in June 2015, Sheriff Dart of Cook County, Illinois sent threatening letters to MasterCard and Visa (Gov. Exs. 459, 478); (2) within days, those credit card companies terminated their relationships with Backpage (Ex. 6011); (3) Backpage then sued Sheriff Dart in federal court in an attempt to get its credit card relationships back; (4) Mr. Ferrer and Backpage communicated internally and with credit card companies/processors regarding the litigation (Gov Ex. 1127, Ex. 6013, Ex. 6025); and (5) on November 30, 2015, the Seventh Circuit Court of Appeals enjoined Sheriff Dart from making further threats toward financial institutions with whom Backpage had a relationship (Ex. 5104, *cert. denied.* Ex. 5106).

While Mr. Ferrer has artfully attempted to avoid a reference to "Dart" during his trial testimony, he referenced Sheriff Dart during his interviews with the government (as documented in FBI 302s produced to the defense) **nearly 40 times**, using phrases like the

"Dart credit card ban," "Dart incident," and "credit card Armageddon/Dart incident." Ferrer also testified today that he came to learn in July 2015 that Visa and MasterCard bowed to "pressure put on them." That "pressure" was exerted by Dart, a fact which the government's interviews of Ferrer and Ferrer's contemporaneous emails show Ferrer understood. *See* Gov Exh. 1127 (July 1, 2015 e-mail from Ferrer to others at Backpage, stating, "[Mastercard] and Sheriff Dart are now deciding what is legal and illegal speech. [A]re now arbiters of legal speech. We have our legal team on it. We have a good track record on these issues."); Exh. 6025 (July 21, 2015 email from Ferrer to Trent Voight [CEO of JetPay, a credit card processor] stating that, "If we win on Dart, then Visa has cover for protected speech.").

By putting at issue these credit card terminations in its indictment, opening statement, and during Ferrer's testimony, the government has opened the door to cross-examination regarding (1) why the credit card companies terminated their relationships with Backpage; (2) Ferrer's understanding of the basis for those terminations (as reflected in contemporaneous emails, prior statements under oath, and in his statements during interviews to the government); and (3) what Backpage did in response, namely that it sued Dart and ultimately prevailed.

That Backpage prevailed in *Dart* served to counteract any purported "notice" that the credit card terminations were triggered by anything illegal that Backpage or Defendants were doing, as opposed to illegal coercion on the part of a law enforcement official. *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (Posner, J.) ("Visa and MasterCard bowed to pressure from Sheriff Dart and others by refusing to process transactions in which their credit cards are used to purchase *any* ads on Backpage, even those that advertise indisputably legal activities.") (emphasis in original); *id.* ("[W]hile [Dart] has a First Amendment right to express his views about Backpage, a public official who tries to shut down an avenue of expression of ideas and opinions through 'actual or threatened imposition of government power or sanction' is violating the First Amendment.") (quoting *American Family Association, Inc. v. City & County of San Francisco,* 277 F.3d 1114, 1125 (9th Cir. 2002)); *id.* at 232 (Dart "is

intimating that two of the world's largest credit card companies may be criminal accomplices" and that "Visa and MasterCard got the message and cut *all* their ties to Backpage.") (emphasis in original).

Ferrer submitted a declaration and was deposed in *Dart*. (Gov Exhs. 1629, 1687). He also submitted a declaration in another case in which he stated that Dart had "started a campaign against Backpage," attaching the *Dart* opinion. *Chilly Dil v. JetPay*, Case No. 3:14-cv-02749 (N.D. Tex.). Ferrer was plainly aware of and relied on the *Dart* opinion at the time. Ferrer's prior statements are directly relevant to impeach any testimony by Ferrer claiming that Defendants or Ferrer were operating in bad faith at the time.

**IV.  It is reversible error to preclude the defense from admitting evidence of good faith or evidence of state of mind/lack of intent**.

It is well-settled that the Federal Rules of Evidence "reflect the fact that individuals accused of criminal behavior should be permitted to present, within reason, the strongest case they are able to marshal in their defense." *United States v. Thomas*, 32 F.3d 418, 421 (9th Cir. 1994) ("revers[ing] defendant's conviction because the district court impermissibly and prejudicially limited the evidence that this criminal defendant was entitled to present" concerning his subjective intent). "[B]arring a defendant from presenting all evidence in support of a cognizable defense, or from challenging an element of the crime, is structural error." *See United States v. Smith-Baltiher*, 424 F.3d 913, 922 (9th Cir. 2005) (reversing illegal entry conviction because district court barred introduction of defendant's mother's U.S. birth certificate and testimony of a mental health expert, which precluded the defendant from negating an element of the charged crime as well as his defense of good faith belief that he did not need documentation to enter).

**A.  At a minimum, *non-privileged* letters and memoranda written by attorneys are admissible.**

Evidence of **non-privileged** attorney opinions or letters and a defendant's awareness of that evidence is admissible to demonstrate defendants' good faith and negate alleged intent. For example, in *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court

recognized that "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Id.* at 203. In that case, the defendant was charged with tax violations. He presented evidence in support of his defense that he did not willfully violate the law, including evidence that: he attended seminars sponsored by groups that claimed that the tax code was invalid; he attended presentations by attorneys wherein the attorneys expressed their opinion that the tax code was invalid; he possessed a letter written by one of those attorneys for the seminar attendees that expressed the view that taxing a person's salary was incompatible with the Sixteenth Amendment; and that he relied on all of this information in declining to file or pay taxes. *See id.* at 195-96. Rather than suggest that such evidence should be precluded, the Supreme Court not only blessed the admission of this evidence, but indicated that the district court's erroneous instruction on willfulness prejudiced the defendant's presentation of his good faith defense.

**Non-privileged** attorney opinions or letters are **admissible** even if the defendant does not seek or qualify for an advice-of-counsel **jury instruction**. For example, in *United States v. Munoz*, 233 F.3d 1117 (9th Cir. 2000), the Ninth Circuit ruled that the denial of an advice-of-counsel instruction was proper (where a good faith jury instruction was given). However, the Ninth Circuit expressly ruled that the evidence at issue—attorney opinion letters drafted by attorneys with whom the defendant never consulted and based on inaccurate facts—were admissible and adequately covered under a general good faith instruction. *See id.* at 1131-32; *accord United States v. Frame*, 236 F. App'x 15, 18-19 (5th Cir. 2007) (recognizing that evidence of Frame's good faith and advice-of-counsel defenses were presented and those theories were "central" to his closing, even though the court declined his requested instructions); *United States v. Way*, 2018 WL 3062159, at *8 (E.D.C.A. 2018) ("[T]he court concludes that evidence regarding this [attorney opinion] letter and defendant's awareness of its content are admissible on the question of whether defendant acted with a culpable state of mind. Whether defendant is entitled to an advice-of-counsel jury instruction will be resolved at the appropriate time during the court of trial"); *United States v.*

*Brandner*, 2016 WL 354866, at *2-3 (D. Alaska Jan. 28, 2016) (indicating that defendant was allowed to present evidence that he relied on advice of a disbarred attorney to argue good faith, even though he was unable to establish the prerequisites for an advice-of-counsel jury instruction).

Moreover, attorney advice is admissible even when the court understands the defense at issue to be an "implicit or imperfect" advice-of-counsel defense. *See United States v. Napoli*, 2011 WL 1302317, at *6 (N.D.C.A. Apr. 5, 2011); *cf. United States v. Mieill*, 2008 WL 5101313 at *4 (N.D. Iowa Nov. 25, 2008) (denying government motion to preclude admission of evidence of good faith, even if the defendant's evidence is "laughable" because the jury is the entity to decide the weight to be assigned to good faith evidence). Again, *Napoli* demonstrates that attorney opinions and letters are admissible regardless of whether the defense asks for a formal instruction on advice of counsel.

For all these reasons, at a minimum, the **non-privileged** documents drafted by attorneys that were known to the Defendants are admissible, including letters to Backpage staff authored by Steven Suskin; responsive letters to the National Association of Attorneys General and other governmental entities authored by attorneys, memoranda drafted by attorneys for third parties; case pleadings drafted and filed by attorneys on behalf of Backpage, and amicus briefing by civil rights organizations in support of Backpage's right to exist as a First Amendment protected platform for First Amendment protected speech, particularly when the moderation, marketing (in the form of free offers to publish ads on Backpage that were published elsewhere), and alleged "notice" evidence concerning trafficking and prostitution, was in the public docket of these cases.

**B.   Court decisions, statutes, and statements of public officials or entities known to the Defendants are admissible.**

Information conveyed by a public official and a defendant's awareness of that information is not only admissible as to good faith, but exclusion of such evidence is reversible error. *See United States v. Certified Envirnmtl. Servs. Inc*, 753 F.3d 72, 88-91 (2d Cir. 2014). In *Certified Environmental Servs.*, the Second Circuit reversed the convictions because

the district court precluded presentation of three communications between the defendants and the New York Department of Labor: a telephone call, and email, and a Department of Labor Code Rule. *See id.* The Second Circuit rejected the claim that such evidence was inadmissible hearsay, ruling that "the statements were not hearsay since they were offered, not for their truth, but for their effect on defendants' state of mind, which was very much in dispute. *Id.* at 89. The evidence at issue was highly relevant to "the question of the defendants' intent and good faith." *Id.* at 90. Moreover, although these communications did not address the specific conduct that allegedly violated the law, the first communication "concerned the nature of an ongoing regulatory requirement and, according to the defendants, informed the creation of a consistent company policy," much like the CDA informed Backpage's moderation policy. *Id.* The communication that postdated the conspiracy was admissible as "evidence of the content of a longstanding continuous mental process." *Id.* at 90.

Notably, the Sixth Circuit **has reversed Travel Act convictions** when the jury instructions precluded consideration of evidence of the defendant's good faith attempt to comply with law. In *United States v. Stagman*, 446 F.2d 489 (6th Cir. 1971), the defendant sought to operate bingo games at a facility located across state lines in Kentucky. *See id.* at 490. The defendant's "only defense is that he believed in good faith, and had reasonable grounds for doing so, that the Flamingo bingo game was legal under Kentucky law." *Id.* The district court permitted the defendant to testify that "the Sheriff, Deputy Sheriff, and an assistant Commonwealth's Attorney . . . advised him that bingo games were legal, if certain rules were observed," and that "he and others associated with the Flamingo operation complied with these rules." *Id.* On appeal, the Sixth Circuit did not tether its reasoning to whether the prerequisites of an advice-of-counsel defense were met. Instead, the Sixth Circuit reversed the convictions because the district court's jury instructions "precluded any consideration of this defense." *Id.* at 492. On retrial, the district court was instructed to not only allow this evidence, but with instruction that "the defense of good faith attempts at compliance should be submitted to the jury." *Id.* at 493. The Court further elaborated that:

> [W]hen, as here, a defendant introduces evidence of good faith attempts to comply with the law, a court has a **clear obligation** to submit the issue of specific intent with explicit instructions to the jury. **It is then for the jurors to decide** whether this evidence has raised a reasonable doubt of the defendant's guilt. Our system of justice assumes that jurors can make the kinds of judgements required here and can determine whether a defendant's asserted belief in the legality of his conduct is implausible.

*Id.* (emphasis added).

Similarly, evidence that a defendant was aware of and relied on information found in a publicly available government document is admissible as evidence in support of a good faith theory of defense. *See United States v. Caro*, 454 F. App'x 817, 872-74 (11th Cir. 2012) (expressing approval for district court's use of model jury instruction on good faith made on the basis of defendant's presentation of review of a FINCEN advisory opinion regarding reporting requirements).

Case law and statutes that a defendant was aware of and relied upon are admissible and are relevant to a defendant's state of mind in connection with specific intent crimes like the Travel Act. *See United States v. Powell*, 955 F.2d 1206, 1213-14 (9th Cir. 1991) (recognizing that case law and statutes known to and relied upon by a defendant are admissible and relevant to the defendant's state of mind and to the jury's assessment of the sincerity of those views).

For all these reasons, statements from government actors concerning the operation of websites, and Backpage in particular—whether it be testimony, judicial decisions, case pleadings filed on public dockets, or public announcements—and Defendants' awareness of those statements are admissible as evidence of good faith, lack of criminal intent, and state of mind as a matter of law.

## V. Conclusion

For all these reasons, Defendants respectfully request that this Court grant the relief requested herein and deny the government's objections.

RESPECTFULLY SUBMITTED this 21st day of September, 2023,

        Paul J. Cambria, Jr.
        Erin McCampbell Paris
        LIPSITZ GREEN SCIME CAMBRIA LLP

        By:   /s/ Paul J. Cambria, Jr.
              Paul J. Cambria, Jr.
              Attorneys for Michael Lacey

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II (C) (3), Paul J. Cambria hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

        Gary S. Lincenberg
        Gopi K. Panchapakesan
        BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
        DROOKS, LINCENBERG & RHOW, P.C.

        By:   /s/ Gary Lincenberg
              Gary Lincenberg
              Attorneys for John Brunst

        Eric W. Kessler
        KESSLER LAW OFFICE

        By:   /s/ Eric W. Kessler
              Eric W. Kessler
              Attorneys for Scott Spear

        Bruce Feder
        FEDER LAW OFFICE, P.A.

        By:   /s/ Bruce Feder
              Bruce Feder
              Attorneys for Scott Spear

        David Eisenberg
        DAVID EISENBERG, P.L.C.

        By:   /s/ David Eisenberg
              David Eisenberg
              Attorneys for Andrew Padilla

| | |
|---|---|
| 1 | Joy Bertrand |
| 2 | JOY BERTRAND, ESQ. |
| 3 | By:   /s/ Joy Bertrand |
| 4 | Joy Bertrand |
|   | Attorneys for Joye Vaught |

On September 21, 2023, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal of a Notice of Electronic Filing to the to the CM/ECF registrants who have entered their appearance as counsel of record

3891320.2

13