Timothy J. Eckstein, 018321
Joseph N. Roth, 025725
Sarah P. Lawson, 036436
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
teckstein@omlaw.com
jroth@omlaw.com
slawson@omlaw.com

Attorneys for the Estate of James Larkin

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>vs.<br><br>James Larkin (2), et al.,<br><br>           Defendants. | Case No. 2:18-cr-00422-PHX-DJH<br><br>**MOTION TO ENFORCE ABATEMENT OF PROSECUTION** |

When a defendant in a pending criminal case dies, the death "abates [as to that person] . . . all proceedings in the prosecution from its inception," including the government's efforts to obtain assets through criminal forfeiture. *United States v. Oberlin*, 718 F.2d 894, 895 (9th Cir. 1983). Defendant James Larkin died on July 31, 2023, shortly before trial was to commence. Although the Court dismissed the indictment's charges against Mr. Larkin, additional action is required to fully abate the action against him as represented through the interests of his estate.

. . .

Accordingly, the Estate of James Larkin asks the Court to enforce the abatement of the prosecution by: (1) dismissing from the Superseding Indictment (Doc. 230) the criminal forfeiture allegations against property relating only to Mr. Larkin and no other defendant; (2) pursuant to Fed. R. Crim. P. 41(g), ordering the release to Mr. Larkin's Estate his property that is not also alleged to be subject to forfeiture in the consolidated, parallel civil actions in the Central District of California, *United States v. $1,546,076.035 In Bank Funds Seized from Republic Bank of Arizona Acct 1189, et. al*, No. 2:18-cv-08420-RGK, PJW (C.D. Cal.) (Civil Forfeiture Action); and (3) ordering that the government execute and record the documents necessary to uncloud title to property that was used as security for Mr. Larkin's release pending trial.

A proposed order is being filed with this motion.

**I.     Pertinent background.**

James Larkin died on July 31, 2023, eight days before he was set to begin trial in this matter. (*See* Doc. 1655.) On August 4, the Court dismissed the superseding indictment against him. (Doc. 1675.)

In addition to the charges against Mr. Larkin and the other named defendants, the Superseding Indictment alleged that many parcels of real property and accounts would be subject to criminal forfeiture. (*See* SI, Doc. 230 at 63–92 (Forfeiture Allegations One and Two)). Among the property/accounts listed, several relate solely to James Larkin and not to any other defendant. For the following property, the only basis for listing it in the Superseding Indictment is that the property is allegedly traceable to James Larkin:

Real property listed in Forfeiture Allegations One and Two, ¶ 2.a:

¶ 3: 1308 E. 56th Street, 2, Chicago, IL 60637

¶ 4: 14 rue Saint Guillaume, Paris, France 75007

¶ 16: 493 Zinfandel Lane, Saint Helena, CA 94574

¶ 19. 5555 North Casa Blanca Drive, Paradise Valley, AZ 85253

"[F]unds, securities, and/or other assets held in the following bank accounts," listed in Forfeiture Allegations One and Two, ¶ 2.a:

   ¶ 11. Republic Bank of Arizona Account XXXX1889

   ¶ 12. Republic Bank of Arizona Account XXXX2592

   ¶ 13. Republic Bank of Arizona Account XXXX2500

   ¶ 14. Republic Bank of Arizona Account XXXX1938

   ¶ 15. Bank of America account XXXXXXXXXXXX8225

   ¶ 16. Bank of America account XXXXXXXXXXX7054

   ¶ 24. Perkins Coie Brokerage Account XXXXXX7012

   ¶ 25. Perkins Coie Liquid Assets xxxxxxxx0012

   ¶ 37. Republic Bank of Arizona Certificate of Deposit xxxxxx8103

   ¶ 38. Republic Bank of Arizona Certificate of Deposit xxxxxx8162

   ¶ 39. Republic Bank of Arizona Certificate of Deposit xxxxxx8189

   ¶ 62. Acacia Conservation Fund Brokerage Account number x2020 (Ocotillo Family Trust)

  The government has listed all but two of these assets as *in rem* defendants in the Civil Forfeiture Action, identifying them as the "James Larkin Assets."[2] The Estate believes that two assets are listed in the Superseding Indictment only and not in the Civil Forfeiture Action: the property located in Paris, France (Real Property at 63, ¶ 2.a.4) and the Republic Bank of Arizona account X2500 (*Id*. at 64 ¶ 2.a.13). Most of the assets have been seized, including the X2500 account.

  Counsel for the Estate has asked the government to stipulate to the dismissal of these assets from the Superseding Indictment. The government has refused, asserting that it may still pursue these assets in the forfeiture phase of this criminal case, should there be convictions. (Doc. 1713 at 4.)

  Separate from the Superseding Indictment's forfeiture allegations, the real property located at 5555 North Casa Blanca Dr., Paradise Valley, AZ 85253 (the "Paradise Valley Property") was used as security for Mr. Larkin's release pending trial.

---

[2] *See* Exhibit B, Consolidated Master Verified Complaint for Forfeiture in Civil Forfeiture Action at ¶¶ 17-29 & ¶¶ 177-190 (allegations against "James Larkin Assets").

To facilitate its use as security, the property's owner (the Ocotillo Family Trust) recorded two documents: a "Waiver of Homestead Exemption" and an "Agreement to Forfeit Real Property to Obtain a Defendant's Release." *See* Ex. C.  Although the bond securing release has now been exonerated (Doc. 1736), the recorded documents are a potential cloud on the title to the Paradise Valley Property, requiring some action on the part of the government to ensure those documents no longer cloud title.

**II.    Argument**

**A.    The doctrine of abatement applies to forfeiture proceedings and other financial penalties.**

A defendant's death during a prosecution "abates . . . all proceedings in the prosecution from its inception." *Oberlin*, 718 F.2d at 895.  This longstanding principle applies to the entire prosecution, including any fines, and to criminal forfeiture proceedings. *Id*. at 895–96 (holding that criminal forfeiture proceedings are "essentially penal", a "step in the criminal process," and are therefore abated upon death of a defendant).  That a defendant's death may be by suicide does not alter this rule. *Id*. at 896 (rejecting government's argument that a defendant's suicide caused a "waiver" of abatement). *See also United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997) (restitution order abated after defendant's suicide).

This doctrine applies to the entire prosecution, including to fines and criminal forfeiture proceedings, which are "essentially penal", a "step in the criminal process," and are therefore abated upon death of a defendant. *Id*. at 896.  As the government conceded in its recent Trial Brief regarding forfeiture proceedings, "[c]riminal forfeiture is imposed on a convicted defendant as part of sentencing." (Doc. 1713 at 2.)

The same goes for other financial penalties resulting from a conviction, such as fines and restitution. *See United States v. Brooks*, 872 F.3d 78, 89–91 (2d Cir. 2017) (conviction and restitution order are abated due to defendant's death during his direct appeal); *United States v. Est. of Parsons*, 367 F.3d 409 (5th Cir. 2004) (en banc) (even criminal penalties already paid must be abated); *United States v. Christopher*, 273 F.3d

4

294, 297 (3d Cir. 2001);. *See also Nelson v. Colorado*, 581 U.S. 128 (2017) (holding that when a criminal conviction is vacated, due process requires that the state return all costs, fees, and restitution previously paid by the criminal defendant).

### B. To enforce the abatement, the forfeiture allegations must be dismissed.

Given the doctrine of abatement, every potential consequence against James Larkin stemming from this prosecution must be resolved, not merely the dismissal of Mr. Larkin as a named defendant. Indeed, if Mr. Larkin were the only defendant named in the Superseding Indictment, then abatement would require the dismissal of the entire action—that is, an abatement of "the prosecution from its inception." *Oberlin*, 718 F.2d at 895. Accordingly, the Court must also dismiss from the Superseding Indictment the government's forfeiture allegations that list assets in which no defendant other than Mr. Larkin had any interest. Those properties are listed above and in the proposed order.

The government has informed the Estate's counsel that it will not agree to the dismissal of these allegations because the government may still seek criminal forfeiture of the decedent's property. As it explains in its recent Trial Brief, the government posits that its forfeiture allegations should remain unchanged because it is theoretically *possible* that one of the remaining criminal defendants has some unknown interest in Mr. Larkin's assets, meaning that the government could still seek criminal forfeiture following another defendant's conviction. (Doc. 1713 at 4 n.3 (asserting that dismissal of James Larkin "has no bearing on the assets alleged to be subject to forfeiture" because the government "may elect to seek to forfeit any interest that any convicted defendant may have in any property alleged in the SI, including any property owned in part by Larkin or his estate."))

The government's Trial Brief however, does not assert that it **has any basis** other than hypothetical speculation to believe any other defendant has any interest in the assets listed above. No other defendant filed a claim to any of these assets in the related Civil Forfeiture Action, and the government does not contend that any defendant has asserted such an interest. Ex. A, Declaration of Joseph Roth, ¶¶ 4-5. To the contrary, the

5

government has identified these real properties and accounts as "James Larkin Assets" only. Ex. B at ¶¶ 177-190. If James Larkin had never been a defendant, the government's mere speculation could not have provided a good-faith basis to include his assets in the Superseding Indictment to begin with and such speculation cannot justify keeping them in the criminal action now.

Allowing the government to proceed in the criminal case against property and assets belonging to Mr. Larkin's estate would violate well established abatement law and criminal forfeiture law. As the government's Trial Brief states, "[c]riminal forfeiture is an *in personam* remedy, in that it may be imposed after a criminal conviction and **applies only to the property of the convicted defendant**." (Doc. 1713 at 3 (emphasis added)). An order of forfeiture directed to other property in which a defendant does not hold an interest would be invalid. *E.g., United States v. Lucas*, 986 F.3d 224, 229 (3d Cir. 2021) (admonishing the government that it "must turn square corners when it exercises its power to confiscate private property"); *United States v. Nava*, 404 F.3d 1119, 1136–37 (9th Cir. 2005) (ancillary hearing procedure cannot be used to forfeit legal interests of a third party, even if he is not innocent; government must file civil forfeiture case to forfeit third party's interest); *United States v. Totaro*, 345 F.3d 989, 997 (8th Cir. 2003) (if criminal forfeiture reaches beyond the property of the defendant it would be *in rem* rather than *in personam* and would improperly punish the third party owner); *United States v. Grossi*, 482 Fed. Appx. 252, 255, (9th Cir. 2012) (government could forfeit only defendant's interest in the warehouse, not a third party's); *Rivera v. Carter*, No. 2:09-CV-2435-FMC. 2009 WL 8753486, *16-21 (C.D. Cal. July 31, 2009) (granting preliminary injunction enjoining government from seizing property bearing the collective membership mark of motorcycle club because government cannot forfeit mark of non-defendant club, even assuming that named defendant controlled the use of the mark).

In sum, the government cannot maintain its criminal forfeiture efforts against Mr. Larkin's assets based on theoretical claims that *could* be made by *other* defendants in third-party ancillary proceedings. The government has not produced and cannot produce

any evidence showing that any of the remaining criminal defendants hold an interest in any of the James Larkin Assets.

If such hypothetical third-party claims are eventually made against some part of Mr. Larkin's property, those claims can and will be resolved in the pending Civil Forfeiture Action in the Central District of California. Mr. Larkin's assets, however, have no place in this criminal action. Under the doctrine of abatement, the allegations against Mr. Larkin—including the forfeiture allegations relating to him—must be dismissed.

**C.  To enforce the abatement, Rule 41(g) requires the prompt release of assets belonging to James Larkin's Estate that are not named as *in rem* defendants in the Civil Forfeiture Action because the government has no other basis for retaining them.**

As noted above, most but not all of the Larkin-only assets listed in the forfeiture allegations are also *in rem* defendants in the Civil Forfeiture Action. At least two, however, are not: the Paris property and the Republic Bank of Arizona account number XXXX2500. The assets in the Republic Bank account have been seized. The Superseding Indictment is no longer a basis to maintain control over these assets and there is no other legal basis for retaining them. Thus, to fully abate the prosecution, the Court must order the government to promptly release any assets alleged to be subject to forfeiture in 18-cr-00422 but not named in the Civil Forfeiture Action, including the Paris property and the funds seized from the Republic Bank of Arizona account number XXXX2500. The assets should be released and (where seized) returned to the Estate, through its Personal Representative/Executor (Margaret Larkin).

This form of relief is required under Rule 41(g), the typical procedural vehicle for the return of a defendant's property at the conclusion of a criminal case, as is the case for Mr. Larkin. Indeed, in the Ninth Circuit such a motion will lie even if criminal proceedings are still "underway against the aggrieved property owner." *Omidi v. United States*, 851 F.3d 859, 863 (9th Cir. 2017)).

Here, Rule 41(g) requires return of the assets, as the government cannot carry its "burden of demonstrating that it has a legitimate reason to retain the property." *United*

7

*States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987) ("When the property in question is no longer needed for evidentiary purposes . . . the burden of proof changes. The person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property"); *Bailey v. United States*, 508 F.3d 736, 739 (5th Cir. 2007) (same).

The government has not asserted an interest in these properties as part of the Civil Forfeiture Action. The statute of limitations to add new defendants to that action, filed in March 2018, has expired. 19 U.S.C. § 1621 (five-year statute of limitations). And as to the government's suggestion that there may be some so-far-secret assertion of ownership by another defendant, counsel have found no case in which the government has even *argued* that it has a right to retain a deceased defendant's property just in case some later hypothetical interest may be asserted.

**D. Finally, to enforce the abatement, the Court should order the government to record documents necessary to uncloud title to property previously used to secure the release of Mr. Larkin.**

The Court previously exonerated the bond securing the release of Mr. Larkin. (Doc. 1736.) The security underlying the bond was the Paradise Valley Property. As described above, this involved the execution and recording of a "Waiver of Homestead Exemption" and an "Agreement to Forfeit Real Property to Obtain a Defendant's Release." *See* Ex. C. The recorded documents are a potential cloud on the title to the Paradise Valley Property. To fully abate the prosecution to its inception, the government must record a release of any security interest in the Paradise Valley Property.

**III. Conclusion**

For the foregoing reasons, this Court should order the government to dismiss the forfeiture allegations relating to James Larkin (but not to other defendants); to release and return any properties to the Personal Representative of his Estate (Margaret Larkin) that are not named as defendants in Civil Forfeiture Action; and to execute and record documents necessary to uncloud the title to the Paradise Valley Property.

1    DATED this 13th day of October, 2023.

OSBORN MALEDON, P.A.

By    s/ Timothy J. Eckstein
     Timothy J. Eckstein
     Joseph N. Roth
     Sarah P. Lawson
     2929 North Central, 20th Floor
     Phoenix, Arizona  85012-2794

Attorneys for the Estate of James Larkin

10074716.1