Gary S. Lincenberg *(admitted pro hac vice)*
    glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
    aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
    gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

Paul J. Cambria, Jr. *(admitted pro hac vice)*
    pcambria@lglaw.com
Erin McCampbell Paris *(admitted pro hac vice)*
    eparis@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580

Attorneys for Defendant Michael Lacey

*[Additional counsel listed on next page]*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>      vs.<br><br>Michael Lacey, et al.,<br><br>            Defendants. | CASE NO. 2:18-cr-00422-004-PHX-DJH<br><br>**DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO COURT RULINGS DURING FERRER TESTIMONY** |

3895823.2

Eric W. Kessler, 009158
    eric.kesslerlaw@gmail.com
Kessler Law Group
6720 N. Scottsdale Rd., Suite 210
Scottsdale, AZ  85253
Telephone: (480) 644-0093
Facsimile: (480) 644-0095

Bruce S. Feder, 004832
    bf@federlawpa.com
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135

Attorney for Defendant Scott Spear

David Eisenberg, 017218
    david@deisenbergplc.com
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273

Attorney for Defendant Andrew Padilla

Joy Malby Bertrand, 024181
    joy.bertrand@gmail.com
JOY BERTRAND ESQ LLC
PO Box 2734
Scottsdale, Arizona 85252
Telephone: (602) 374-5321
Facsimile: (480) 361-4694

Attorney for Defendant Joye Vaught

I.      **Background**

     A.      **The Impeachment**

After testifying on direct examination that Backpage was deceiving credit card companies, credit card processors, and banks, defense counsel attempted to impeach Ferrer with his prior statements to the contrary:

1.  When you "spend months vetting contracts vetted by the acquiring bank and processor. You are not disguising your transaction." (09/27/23 PM Trial Tr. at 61:11-15) (quoting GL-CF-37, May 18, 2017 comments to First Amended Complaint).
2.  "There was no evidence of fraudulent merchant bank applications." *Id*.
3.  "A money laundering charge is really an attempt to legislate by prosecution" and that "it's done in order to cut off unpopular speech." *Id*. at 61:16-19.
4.  One cannot secure a bank account without meeting Know Your Customer (KYC) policies.

The Court precluded this impeachment.

     B.      **Rule of Completeness**

The Court's pre-trial order states: "During trial, exhibits will be admitted or rejected in their entirety. Thus, if any part of an exhibit is objectionable, it will be excluded in its entirety. Ordinarily, the parties will not be permitted to break offered exhibits into admissible sub-parts if an objection is sustained." Despite this order and, more importantly, despite Federal Rule of Evidence 106, *Crawford* and its progeny, and due process considerations, the Court repeatedly allowed the government to introduce parts of documents that supposedly put defendants on notice of Backpage.com's purported wrongdoing (not for the truth, but only to show notice), while precluding those parts of the documents and interactions that were exculpatory (and would provide notice in the other direction). The prejudice to the defense has been overwhelming, for the reasons set forth at length in prior pleadings and oral argument (and which need not be repeated here).

With respect to the government's Exhibit 616, on October 12, 2023, the Court

suggested that the defense never tried to introduce Exhibit 616 (the unredacted version), but that was incorrect. The defense objected to the introduction of the government's Exhibit 616a (the redacted version) unless it was admitted in its complete form (Exhibit 616) and also objected to the Court keeping out the topics referenced in the redacted Larkin email.[1] Lest there be any doubt in the record, the defense hereby moves for the admission of government Exhibit 616 in its unredacted form.

### (1) Response to AG Letters

The Government's argument does not merit a reply. The record is clear that the Government introduced the AG letters to suggest that Backpage.com was operating illegally, given the AG's repeated demands that Backpage.com stop publishing adult ads. Although that brought into dispute whether Backpage in fact was violating state laws, the Court has precluded the defense from introducing Backpage's meritorious letters responding to the AGs—which laid out why the AGs were dead wrong and why efforts to investigate and prosecute Backpage.com under state laws would have failed because of the First Amendment, the CDA, and an inability to establish elements of alleged offenses. Indeed, this Court has generally shut down the defense when even just the word "lawyer" is mentioned (at least when mentioned by the defense).

### 2. Preclusion of Impeachment of Ferrer with His Prior Statements

The Government filed its response in the middle of trial last Wednesday, claiming the defense should not be permitted to use Ferrer's statements set forth in GL-CF-37. The Court gave defense counsel no opportunity to respond, either orally or in writing, before

---

[1] "MR. RAPP: Move to admit 616a. MR. LINCENBERG: Objection. No objection to 616 but we certainly object to 616a which is an incomplete version of the email correspondence. MR. FEDER: Also same objections. THE COURT: Is 616 the unredacted version, Mr. Rapp? MR. RAPP: It is. THE COURT: And I guess let me inquire if you can answer, is there a reason that you're not introducing 616 as opposed to 616a? MR. RAPP: Because the redacted version is hearsay. THE COURT: Oh. I see. Okay. MR. LINCENBERG: 616a, the redacted version, is admissible because it's not hearsay. It's not offered for the truth. 616a is the response to the initial email. It's out of context without the initial email.) Trial Transcript, September 15, 2023 A.M., p. 12:9-24.

ruling in favor of the Government at 9:00 a.m. on Thursday morning.

The Court essentially adopted the Government's arguments from its response and ruled that the impeachment was improper because (1) the written statements with which the defense sought to impeach Ferrer did not appear to have come from Ferrer; (2) the written statements appeared to have been a "work in progress"; and (3) the written statements appear to have been an attorney-client communication from Ferrer, made in May 2017, but the joint defense agreement was not signed until June 2017. None of those government arguments had merit.[2]

(1) The inconsistent statements were Ferrer's statements. As the record reflects, Mr. Ferrer transmitted the written statements with which the defense sought to impeach Ferrer, in the email that is GL-CF-36, to Mr. Grant and Mr. Quigley. On its face, that email makes plain that the statements were Ferrer's statements. If the Court had any doubt, it should have permitted counsel to question Ferrer to establish that was the case. Moreover, in their filings claiming that the written statements with which the defense sought to impeach Ferrer were his privileged communications with counsel, counsel for Ferrer and the Government each necessarily conceded that the statements were Ferrer's statements. Additionally, in cutting off defense counsel's pursuit of this line of impeachment, the Court precluded defense counsel from getting to Ferrer's similar prior inconsistent statements set forth in his email, GL-CF-36 (May 18, 2017 e-mail from Ferrer to J. Grant and D. Quigley) regarding denial of merchant processing and the "100 reasons" why that might occur.

(2) Whether or not Ferrer's statements were a "work in progress" is speculative and irrelevant. The only person who can say whether the statements were a

---

[2] In setting out the bases for precluding the impeachment, the Court did *not* contest that the statements with which the defense sought to impeach Ferrer clearly were contrary to Ferrer's testimony at trial.

"work in progress" is Ferrer, and he was not allowed to testify about his statements. There is no basis for the Court to conclude this. Nor is it relevant to admissibility. If the government wants to try to minimize the relevance of Ferrer's inconsistent statements by suggesting he might have later changed them, that would be a matter for redirect examination.

(3)  The Joint Defense Agreement permits counsel to use Ferrer's communications to cross-examine him. As an initial matter, Ferrer does not (and cannot) deny that he waived the privilege for communications with Backpage.com's counsel or that Mr. Grant represented Backpage.com.[3] As Mr. Grant made clear in his declaration (lodged with the Court *in camera* in 2018 in connection with Doc. 180), since October 2016, Ferrer had separate counsel representing him in the California criminal case (Nanci Clarence) and Grant represented Backpage and the individuals as to common issues focusing on First Amendment and Internet issues. Grant Decl., ¶ 7. Under the Section of the JDA regarding "Potential Conflicts of Interest," the JDA states: "This specifically permits use of contributed information or material in cross-examining the witness and permits the presentation of their information or material by the defense at any point of the proceedings." Grant Decl., ¶ 22. Paragraph 1 of the JDA, captioned Background and Purpose of the Agreement, made clear that the agreement included ***prior communications*** between counsel that were subject to the joint defense agreement. It also made clear that shared emails were considered "Defense Materials" and that the sharing of those materials was essential to the

---

[3] "Proffer/Interview Agreement," Doc. 940-2, p. 23 ¶ 2 ("Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC as to communications with any attorney or law firm that represented Backpage.com, or any related entity, where such communications concerned or related to Backpage.com or any related entity.").

|   |   |   |
|---|---|---|
| 1 | | preparation of an effective defense.  *Id.*  Paragraph 7 of the JDA also |
| 2 | | provided that "Each party, in the Party's sole discretion, may provide the |
| 3 | | other Party with access to his client for interview for any purpose under the |
| 4 | | Agreement."  As such, Ferrer's communication with Grant, who Ferrer knew |
| 5 | | also was representing Lacey, Larkin, and Backpage, clearly was joint defense |
| 6 | | material subject to the terms of the JDA. |
| 7 | (4) | Even absent the JDA, Mr. Grant had no obligation to keep Ferrer's |
| 8 | | communications secret from Messrs. Lacey and Larkin because Mr. Grant |
| 9 | | jointly represented Lacey, Larkin, Ferrer, and others.  *Rstmt. (Third) of the* |
| 10 | | *Law Governing Lawyers* § 75 (2000) reporter's note cmt. d ("Rules |
| 11 | | governing the co-client privilege are premised on an assumption that co- |
| 12 | | clients usually understand that all information is to be disclosed to all of |
| 13 | | them.  Courts sometimes refer to this as a presumed intent that there should |
| 14 | | be no confidentiality between co-clients.  Fairness and candor between the |
| 15 | | co-clients and with the lawyer generally precludes the lawyer from keeping |
| 16 | | information secret from any one of them, unless they have agreed |
| 17 | | otherwise . . . .").  As Mr. Grant discussed in his declaration, his joint |
| 18 | | representation was consistent with the norm.  Grant Decl., ¶ 11. |
| 19 | (5) | Finally, Ferrer not only emailed his statements to Mr. Grant, but he also |
| 20 | | emailed them to Daniel Quigley, an attorney representing Medalist Holdings, |
| 21 | | Inc. (f/k/a New Times, Inc.) and its subsidiaries—the companies owned by |
| 22 | | Larkin and defendants Lacey, Brunst, and Spear.  *See* GL-CF-36.  During his |
| 23 | | direct examination, Mr. Ferrer described Mr. Quigley as a representative of |
| 24 | | "the sellers," not as his personal lawyer.[4]  Mr. Quigley did ***not*** represent |
| 25 | | Ferrer in the California criminal cases to which Ferrer's comments pertained, |

---

[4] "Q. All right. And when you say you're having regular meetings with the sellers, who from the sellers were you having regular meetings with?  A. Jim Larkin, Don Moon, Dan Quigley, another intermediary."  09/12/23 PM Trial Tr. at 82:16-19.

3895823.2

7

and Quigley had absolutely no obligation to keep Ferrer's comments secret from Messrs. Lacey and Larkin, the directors and principals of his clients. Exhibit A, Declaration of Daniel J. Quigley. Ferrer's claim that Quigley was his personal counsel and obligated to keep Ferrer's email and statements confidential from his clients is baseless.[5]

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (May 2023) § II(C)(3), Gary S. Lincenberg hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content, and have authorized its filing.*

DATED:  October 18, 2023         Respectfully submitted,

                                              Gary S. Lincenberg
                                              Ariel A. Neuman
                                              Gopi K. Panchapakesan
                                              Bird, Marella, Boxer, Wolpert, Nessim,
                                              Drooks, Lincenberg & Rhow, P.C.

                                              By:     */s/ Gary S. Lincenberg*
                                                        Gary S. Lincenberg
                                              Attorneys for Defendant John Brunst

---

[5]  Ferrer correctly notes that Quigley represented the defendants in a civil tort action brought by Sojourner Center in this Court, Case No. 17-CV-00399-PHX-GMS, but Quigley was not Ferrer's personal counsel.  He briefly appeared for all defendants, including Michael Lacey, James Larkin, John Brunst, Scott Spear, Medalist Holdings, Inc., Camarillo Holdings, LLC, and Carl Ferrer and various entities he then owned and controlled.  Quigley Decl., ¶¶ 8-9.  That civil tort action was unrelated to the California criminal case (the topic of Ferrer's email and statements).  *Id.*, ¶ 9.  And, in any event, Mr. Quigley jointly represented all the defendants in the action, so had no obligation to keep any communications from Ferrer relating to the action secret from Messrs. Lacey, Larkin, Brunst, or Spear or their companies.  *Rstmt.* § 75.

| | | |
|---|---|---|
| DATED: October 18, 2023 | | Kessler Law Group |
| | By: | _/s/ Eric W. Kessler_ |
| | | Eric W. Kessler |
| | | Attorney for Defendant Scott Spear |
| | | |
| DATED: October 18, 2023 | | Paul J. Cambria |
| | | Erin McCampbell Paris |
| | | Lipsitz Green Scime Cambria LLP |
| | By: | _/s/ Paul J. Cambria_ |
| | | Paul J. Cambria |
| | | Attorneys for Defendant Michael Lacey |
| | | |
| DATED: October 18, 2023 | | Feder Law Office, P.A. |
| | By: | _/s/ Bruce S. Feder_ |
| | | Bruce S. Feder |
| | | Attorney for Defendant Scott Spear |
| | | |
| DATED: October 18, 2023 | | The Law Office of David Eisenberg, PLC |
| | By: | _/s/ David Eisenberg_ |
| | | David Eisenberg |
| | | Attorney for Defendant Andrew Padilla |
| | | |
| DATED: October 18, 2023 | | Joy Bertrand Esq. LLC |
| | By: | _/s/ Joy Malby Bertrand_ |
| | | Joy Malby Bertrand |
| | | Attorney for Defendant Joye Vaught |