Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| United States of America, | NO. CR-18-00422-PHX-SMB |
|---|---|
| Plaintiff, | **DEFENDANT MICHAEL LACEY'S JOINDER IN DEFENDANT JOHN BRUNST'S MOTION TO SEEK ADMISSION OF EVIDENCE OF GOOD FAITH RE: STATE OF MIND** |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | (Oral argument requested) |

Defendant Michael Lacey, by and through his undersigned attorneys, hereby joins in Defendant John Brunst's Motion to Seek Admission of Brunst's Testimony Re: State of Mind ("Motion") and incorporates all points raised in the Motion as if fully set forth herein.  Although this Court has previously precluded defense counsel from admitting evidence of good faith through cross examination of government witnesses, we do not understand that ruling to be a limitation on factual, non-privileged information to be admitted through defense witnesses, including evidence of

a lack of criminal intent and state of mind of a Defendant. In an abundance of caution, we provide the instant proffer of the testimony Michael Lacey would provide, as well as examples of the exhibits we would seek to admit through him in addition to those identified in the Motion, all of which he considered and relied upon in making his determination that Backpage was a lawful operation.

## I.     Good faith reliance on James Larkin

Lacey had nothing to do with the oversight or operation of Backpage. That fell on the publishing side of the newspaper conglomerate owned and operated by Lacey and Larkin, and Larkin was in charge of publishing. Lacey was the Editor-in-Chief and oversaw employees who created the content of the articles published in the newspapers, including the editors and writers. Because these two business divisions were separated, Lacey relied on Larkin. This division existed for decades before the creation of Backpage. Lacey had no reason to doubt Larkin because Larkin had demonstrated, over decades, that he was a highly ethical and thoughtful Chief Executive Officer.

On many occasions, Larkin advised Lacey that Backpage had retained some of the most prominent attorneys in the country on internet free speech and safety. In the face of public protests, negative media coverage, and communications from organizations like NCMEC, NAAG, Auburn Seminary, and Polaris, Larkin assured Lacey, as well as all other employees, that Backpage was a lawful platform for third-party speech as advised by each of these prominent attorneys. Among others, these attorneys included outside counsel James Grant and Robert Corn-Revere of Davis Wright Tremaine, LLP, Samuel Fifer, then a partner at Dentons, LLP, online safety expert and member of the Board of Directors of NCMEC, Hemanshu Nigam, of SSP Blue, and his colleague, Simrin Hooper, as well as General Counsel for Backpage, Elizabeth McDougall. In addition to the advice of these attorneys, Lacey knew that one of the members of the Board of Directors of Village Voice Media Holdings, Co., the parent company to Backpage, Donald Moon, was a well-regarded Arizona attorney who advised Larkin about Backpage's operations, and on some occasions, advised Lacey as well. The existence of these relationships with counsel, gave Lacey comfort that Larkin's assurances that Backpage was complaint with the law were correct. Because Lacey never doubted Larkin's operation of Backpage as a lawful enterprise, he did not believe he was facilitating a crime

of any kind.  Larkin's assurances were vindicated over and over again with one judicial victory after another, as discussed below.

## II.      Good faith reliance on advice of counsel

It is our understanding that, even assuming the prerequisites to an advice-of-counsel defense were satisfied, the defense would be limited to advice concerning publication of the 50 ads that are the subject of the Travel Act Counts (Counts 2-51) and that Lacey would not be able to testify about any other advice obtained or received.  This joinder seeks confirmation that this Court has limited the defense in that manner.

To be clear, Lacey is not aware of advice ever being sought pertaining to any specific ad. Instead, Backpage sought advice about its operating practices, moderation, the lawfulness of adult speech, Section 230 of the Communication Decency Act, the First Amendment's application to the publication of third-party speech, and other topics.  On some occasions, even though Lacey was not involved with Backpage, he reviewed privileged and non-privileged materials prepared by attorneys, and sought and relied upon advice from Don Moon and other counsel as to the lawfulness of Backpage's operations.  He would seek to admit Exhibits 5518, 5519, 5520, 5521, 5523, 5526, 5530.[1] His reliance on this advice, as well as the advice of courts through judicial opinions he had a good faith belief that he was not facilitating crime of any kind is documented in email he sent.  He would seek to admit Exhibit 5529.

## III.     Good faith reliance on non-privileged attorney-related evidence

Lacey's steadfast belief in Backpage's lawful operation was founded upon non-privileged attorney communications, as discussed in the Motion and incorporated herein by reference, as well as his knowledge of the following additional non-privileged attorney communications:

---

[1]      Critically, he should not be required to waive privilege of any kind because, when denying the Motion to Dismiss for Invasion of Privilege (Dkt. 1168), this Court ruled that legal positions taken in public filings or disclosed to third-parties render any other communications between client and attorney about that legal position non-privileged.  While Lacey disagrees with that ruling, it is the law the case.

- An April 4, 2012 Letter from Elizabeth McDougall (Ex. 1911A), that Lacey forwarded to Kathleen Ferris (admitted Ex. 1911B), indicating that Backpage was a lawful platform for classified ads and that it was committed to keeping illegal content off the website.

- A March 14, 2017 Letter from the First Amendment Lawyers Association to the California Attorney General asserting that the state prosecution of Ferrer, Lacey, and Larkin for crimes arising out of their publication of third-party speech, including conspiracy to pimp, and pimping, violated the First Amendment.  (Ex. 5538.)

- Amicus briefing submitted in support of Backpage during various litigation, including, as discussed here, amicus briefing in support of Backpage in the *Dart* case on appeal to the Seventh Circuit.  For example, in the amicus brief submitted on behalf of the CATO Institute, Reason Foundation, and DKT Liberty Project, Lacey learned that leading civil rights organizations believed that Backpage was a First Amendment protected platform for First Amendment protected speech, including advertisements for adult services, and further, that the First Amendment precluded any party from assuming or inferring from an ad that it relates to illegal conduct.  (Ex. 5068.)  As the Motion makes clear, these parties supported Backpage even though the record included most, if not all, of the allegations at issue in this litigation, including, but not limited to, after-the-fact notice of the misuse of the website for prostitution and child-sex trafficking, affiliate ad links, including The Erotic Review, moderation/editing of ads, and the charging of fees for ads.

## IV.   Good faith reliance on judicial opinions

Lacey's steadfast belief in Backpage's lawful operation was founded upon his knowledge of and understanding that Backpage had prevailed in numerous federal proceedings.  For example, after a grand jury subpoena issued by a grand jury sitting in the Western District of Washington was quashed, and the United States Attorney declined to pursue any further charges, Lacey's belief in the lawful operation of Backpage was reinforced.  (Ex. 5531.)

As discussed in greater detail in the Motion, and incorporated herein by reference, Lacey relied on the recognition that Backpage was a First Amendment protected platform publishing First

Amendment protected speech, including the publication of ads for lawful adults services such as escorting, massage, and dominatrices as discussed in both *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012) and *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015). (Exs. 5902, and others.)

Moreover, the California Attorney General's Office brought two criminal complaints against Lacey, Larkin, and Ferrer alleging, among other things, pimping counts and conspiracy to engage in pimping, with all pimping-related charges dismissed. Although the opinions ultimately relied on Section 230, they also recognized that Backpage had First Amendment rights and that Section 230 was a statute designed to protect First Amendment rights. (Exs. 5025, 5324.) All of this reinforced his belief that Backpage was a lawful enterprise.

The same First Amendment that was discussed as controlling in these opinions is the same First Amendment that Lacey relied upon in making his determination that Backpage was a lawful operation. Indeed, there is only one First Amendment it either applies or it doesn't and Lacey had no reason to believe anything other than that Backpage was a First Amendment protected platform for First Amendment protected third-party speech.

## V.     Good faith reliance on public officials

Lacey's steadfast belief in Backpage's lawful operation was founded upon his knowledge of statements of public officials. Lacey was aware of statements of public officials indicating that website operators, like Backpage, could not be prosecuted with any federal crimes. For example, Lacey was aware of the following statements by public officials:

- Testimony of Francine Hakes, who was, in September 2010, the top DOJ prosecutor on cybercrime, before the House Subcommittee on Crime, Terrorism, and Homeland Security, wherein she testified that a website operator could not be prosecuted under federal law unless the operators "were . . . conspiring with those who were misusing their site, that is, knowingly conspiring to violate the law," and further, that "intentional neglect" of misuse of a website was insufficient as a matter of law. (Ex. 6247.)

- Statements by Ernie Allen, and top DOJ officials informing Ernie Allen, that Backpage and its owners and operators could not be prosecuted for any federal crime because the government could not establish the high level of mens rea necessary to obtain a conviction. Don Moon conveyed this statement to Lacey and Larkin. (Exs. 5519, 5520.)

- Ernie Allen, too, documented these statements from Eric Holder and the other top DOJ officials in several emails: "Two years ago I met with Attorney General Eric Holder on this. The sites [craigslist, Backpage, and others] were blatant. The young women in the ads were nude, there were graphic images of sex acts, and there was advertising and links to the so called "John Boards," like Erotic Review, which provide detailed reviews of the services provided by each young woman. . . . . The Attorney General sent some Criminal Division prosecutors over to meet with me. They concluded that the mens rea standard (the legal standard that requires an act to be knowing and intentional) could not be overcome for a site like Backpage which by that time had eliminated nudity in the ads, eliminated pornographic images, stopped links to the John Boards, and was making a good faith effort to screen, monitor, and report." (Ex. PC-EA-82.)

- In fact, the inability to prosecute Backpage federally was so well understood, that Congress enacted an amendment to Section 230 of the CDA, commonly referred to as SESTA/FOSTA in 2018. In the House Judiciary Report published on February 20, 2018, in advance of enactment of SESTA/FOSTA, the House found, among other things, that "current federal criminal law, which is unaffected by the CDA, presently lacks proper prosecutorial tools to combat these websites." (Ex. 6119 at 5.) This Report, known to Lacey, further strengthened his belief that the operation of Backpage was lawful.

- Moon advised Lacey and Larkin that, in his conversations with NCMEC Officer John Shehan, Shehan told him that there was not any website doing a more professional or better job than Backpage in child safety / site mitigation. (Ex. 5518).

- The Director of the FBI, Robert Mueller, presented a commendation to Ferrer recognizing Backpage's efforts at aiding prosecution of those who misused the website. Lacey's awareness of this praise from such a high level law enforcement officer, again, reinforced his belief that Backpage was not just a lawful operation, but actively providing assistance to law enforcement.

## **CONCLUSION**

For all these reasons, Lacey respectfully requests permission to testify in his own defense on his good faith, as set forth above.


RESPECTFULLY SUBMITTED this 22nd day of October, 2023,


      Paul J. Cambria, Jr.
      Erin McCampbell Paris
      LIPSITZ GREEN SCIME CAMBRIA LLP

      By: /s/ Paul J. Cambria, Jr.
         Paul J. Cambria, Jr.
         Attorneys for Michael Lacey

On October 22, 2023, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
Daniel Boyle, daniel.boyle2@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Austin Maxwell Berry, austin.berry2@usdoj.gov