### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | October 26, 2023 |
| Michael Lacey, et al. | ) | 10:05 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>TRIAL - DAY 25 - A.M. SESSION</u>**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2

For the Government:
3       UNITED STATES ATTORNEY'S OFFICE
        By:  **Mr. Kevin M. Rapp, Esq.**
4            **Mr. Peter S. Kozinets, Esq.**
             **Mr. Andrew C. Stone, Esq.**
5            **Ms. Margaret Wu Perlmeter, Esq.**
        40 North Central Avenue, Suite 1200
6       Phoenix, Arizona 85004
        kevin.rapp@usdoj.gov
7       peter.kozinets@usdoj.gov
        andrew.stone@usdoj.gov
8       margaret.perlmeter@usdoj.gov

9   For the Government:
        UNITED STATES DEPARTMENT OF JUSTICE
10      By:  **Mr. Austin Berry, Esq.**
        1301 New York Avenue, NW, 11th Floor
11      Washington, DC 20005
        austin.berry2@usdoj.gov

12

For the Defendant Michael Lacey:
13      LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
        By:  **Mr. Paul J. Cambria, Jr., Esq.**
14      42 Delaware Avenue, Suite 120
        Buffalo, NY 14202
15      pcambria@lglaw.com

16

For the Defendant Scott Spear:
17      FEDER LAW OFFICE, P.A.
        By:  **Mr. Bruce S. Feder, Esq.**
18      2930 East Camelback Road, Suite 160
        Phoenix, AZ 85016
19      bf@federlawpa.com
        - and -
20      KESSLER LAW OFFICE
        By:  **Mr. Eric Walter Kessler, Esq.**
21      6720 N. Scottsdale Road, Suite 210
        Scottsdale, AZ 85253
22      eric.kesslerlaw@gmail.com

23

24

25

```
 1    For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2        LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq.
 3             Mr. Gary S. Lincenberg, Esq.
          1875 Century Park E, Suite 2300
 4        Los Angeles, CA 90067
          gpanchapakesan@birdmarella.com
 5        glincenberg@birdmarella.com

 6
      For the Defendant Andrew Padilla:
 7        DAVID EISENBERG, P.L.C.
          By:  Mr. David S. Eisenberg, Esq.
 8        3550 North Central Avenue, Suite 1155
          Phoenix, AZ 85012
 9        david@deisenbergplc.com

10
      For the Defendant Joye Vaught:
11        JOY BERTRAND, ESQ., L.L.C.
          By:  Ms. Joy M. Bertrand, Esq.
12        P.O. Box 2734
          Scottsdale, AZ 85252
13        joy@joybertrandlaw.com

14

15

16

17

18

19

20

21

22

23

24

25
```

1                 **P R O C E E D I N G S**

2

3          (Proceedings commence at 10:05 a.m.)

4          THE COURT:  All right.  Please be seated.  All right.

5   Good morning, everyone.  I'm going to go through, I hope you'll          10:05:14

6   be able to follow along, it's essentially what you had been

7   working off of and your strikes and redlines.

8          I've revised two instructions, and they will be handed

9   to you shortly and then hopefully we'll be able to, at the end

10  of this, provide to you copies, hard copies of the revised          10:05:53

11  instructions.

12         I don't think we have to spend a lot of time on the

13  revised, I'm sorry, the stipulated proposed standard

14  instructions, but nevertheless, I want to go through them to

15  make sure that they are in the order that you agreed to.          10:06:11

16         We're going to start out with the 3.9 instruction,

17  "Testimony of Witnesses Involving Special Circumstances," and

18  this is the immunity benefits and accomplice plea, and so this

19  one will just be the two paragraphs, "You have heard testimony

20  from Carl Ferrer and Dan Hyer, witnesses who have pled guilty          10:06:42

21  to a crime arising out of the same events," so on and so forth.

22  I've put -- I've included both of them, Carl Ferrer and Hyer,

23  in that.  Okay.  Thank you.  And so there really is nothing, I

24  don't think, substantive to discuss regarding that 3.9.

25         MR. STONE:  Your Honor, the only -- is it okay if we          10:07:14

1    remain seated?

2          THE COURT:  Yes.  Yes.  Yes.

3          MR. STONE:  The only comment from the United States on

4    this is in the Model instruction there's a number of different

5    options.                                                        10:07:26

6          THE COURT:  Yes, I know, and I didn't think those

7    options really applied.

8          MR. STONE:  And the defense chose, "received benefits"

9    and "favored treatment."  We're okay with "benefits" because it

10   goes with the cooperation agreement, but "favored treatment,"   10:07:41

11   I'm not sure really what that means here.  It's, you know, two

12   defendants who pled guilty.  The other defendants could have

13   had the opportunity to plead guilty.  I don't really think that

14   that "favored treatment" clause applies, you know.  "Received

15   benefits," that's fine, and the second paragraph would be fine  10:08:01

16   too, but that's the only issue from the United States.

17         THE COURT:  And that's precisely why I only included

18   the two paragraphs.  The second being -- well, let me read the

19   entire instruction, "You've heard testimony from Carl Ferrer

20   and Dan Hyer, witnesses who pled to a crime arising out of the  10:08:20

21   same events for which the defendants are on trial.  These

22   guilty pleas are not evidence against the defendants and you

23   may consider Carl Ferrer and Dan Hyer's pleas only in

24   determining their believability.

25         For these reasons, in evaluating the testimony of        10:08:37

UNITED STATES DISTRICT COURT

1   Carl Ferrer and Dan Hyer, you should consider the extent to

2   which or whether their testimony" have -- "may have been

3   influenced by their pleas."  In addition, you should examine

4   the testimony of Carl Ferrer and Dan Hyer with greater caution

5   than that of other witnesses."                                    10:08:55

6        MR. LINCENBERG:  The Court has, sounds like, gone

7   further than even with what the government agrees should be in.

8   So the part you deleted from what we proposed is, "You've heard

9   testimony from Ferrer and Hyer, witnesses who received favored

10  treatment and benefits from the government in connection with    10:09:14

11  this case and pleaded guilty to a crime." And where the parties

12  are in dispute is not whether that should be included.  It's

13  that we would like both "benefits" and "favored treatment"

14  language included, because "favored treatment" I see as being

15  related to, for example, 5K, and "benefits" being, you know,     10:09:36

16  being able to keep the house.

17       The government's view is, and I agree with them that

18  what is "benefits" versus "favored treatment," you know, they

19  could both apply to the same, but the reason why this language

20  is in the draft instruction is because it covers the bases.  We  10:09:55

21  did not include "compensation" because we don't see evidence of

22  compensation, but we think it's important that it be included,

23  both "received benefits" and "favored treatment."

24       THE COURT:  Well, I suppose a juror could view

25  "favored treatment" and "benefits" as keeping his home or        10:10:43

1      something to that effect.  We will re-insert that language.

2              MR. STONE:  Your Honor, I just think we need one or

3      the other.  I'd go with "benefits."

4              MR. LINCENBERG:  That's our dispute.  They want one or

5      the other.  We think it should be both because it seems to me          10:11:08

6      that one covers one thing and the other covers the other thing.

7              THE COURT:  Well, I don't think that that really --

8      there's a distinction unless you then further define what the

9      treatment or the benefits are.

10             MR. LINCENBERG:  Well, that part is for argument.          10:11:22

11             THE COURT:  In any event, I would just say, "received

12     favored treatment" and remove "and benefits."  We will word it

13     that way.

14             3.14, "Opinion Evidence, Expert Witness."  The only

15     one was this expert Kimberly Mehlman-Orozco.  I didn't clarify          10:11:41

16     in the exhibit what her expert opinion was in terms of a sort

17     of a summary.  I think it's best to leave it to the jury.  But

18     if you propose some characterization of her testimony or what

19     she was testifying about, then you should share that with me,

20     but otherwise it simply just says, "You have heard testimony          10:12:18

21     from Kimberly Mehlman-Orozco, who testified about her opinions

22     and the reason for those opinions," and then the standard

23     language.

24             Any objection?

25             MS. BERTRAND:  No objection, Your Honor.          10:12:32

1          MR. LINCENBERG:  And Your Honor, just so I'm following

2     the Court, I'm assuming, maybe I shouldn't assume, when the

3     Court was dealing with the credibility instructions and the

4     Court went over 3.9, there is no objection to 3.8.  I just

5     wanted to make sure that that's in the Court's instructions,          10:12:52

6     the impeachment instruction.

7          THE COURT:  Did you propose that?

8          MR. LINCENBERG:  Yes.  That's at page 16 of the

9     redline that we filed.  What we e-mailed to the Court, the

10    redline of 1896, 3.8, Impeachment Evidence.          10:13:19

11         THE COURT:  I'll come back to that.  Is there an

12    objection to the impeachment?

13         MR. STONE:  No objection.

14         THE COURT:  All right.  "Dual Role Testimony."  I've

15    kept in there 3.15.  Any objection to that?          10:14:06

16         MR. STONE:  Your Honor, I don't think there was any

17    dual role testimony.

18         THE COURT:  Well, I guess the question that I -- that

19    I had when I looked at this proposed instruction was, you had

20    in some instances law enforcement officers who quasi testified          10:14:29

21    about their experience and role of law enforcement officers,

22    and sort of giving a quasi expert opinion, but if you disagree,

23    then tell me now and I can remove this.

24         MR. LINCENBERG:  And Your Honor, from the defense

25    point of view --          10:14:54

1          THE COURT:  Well, let me have government respond

2    first.

3          MR. STONE:  Your Honor, I don't think we need it

4    because I think law enforcement testified to specific -- well,

5    they testified about their experience, all law enforcement          10:15:06

6    officers do, and then specifically about their investigation of

7    prostitution and pimping offense, and what certain code words

8    means, but that's all based on their experience.

9          It's very different, I think, than the dual role

10   testimony that you see in some of the cases where there is a        10:15:28

11   bifurcation for law enforcement who then talks about how drug

12   deals go down and really gets into the nitty gritty on those

13   types of drug offenses, so I think this is different than the

14   dual role testimony you see in some of the Ninth Circuit cases.

15         THE COURT:  All right.  Now --                                 10:15:46

16         MR. LINCENBERG:  Your Honor, this wasn't on any list

17   that we reviewed.  Neither party proposed it.  We didn't review

18   it.  I just don't know if any other counsel are going to have

19   any comments.  I think we would just need some time to review

20   it.  We are not proposing it.                                        10:16:02

21         THE COURT:  Well, if you're not proposing it, then I

22   would be inclined to remove it.  If you have a disagreement

23   with the government, you can let me know.  Any objection to

24   removing "Dual Role" --

25         MR. LINCENBERG:  May I have a moment to ask counsel?           10:16:11

1           THE COURT:  I know.  I was asking them.

2           MR. LINCENBERG:  I was just going to consult.

3           THE COURT:  Sure.

4           MR. LINCENBERG:  Thank you, Your Honor, no objection

5    to remove it.                                              10:16:31

6           THE COURT:  "Charts and Summaries," 3.16, "Not

7    Admitted into Evidence," were there charts and summaries not

8    admitted?

9           MR. LINCENBERG:  Your Honor, our understanding -- were

10   you looking to the government?                             10:16:56

11          THE COURT:  Yes, first.

12          MR. STONE:  Yes, I believe there were some

13   demonstratives that were admitted, or summaries.

14          THE COURT:  Well, I'm asking about the not admitted

15   charts and summaries, 3.16.  There's 3.17 that deals with  10:17:07

16   admitted charts and summaries.

17          MR. STONE:  I believe we used demonstrative exhibits

18   that were not admitted, so that -- so this instruction would

19   apply to those types of exhibits.

20          THE COURT:  Any objection?                          10:17:25

21          MR. PANCHAPAKESAN:  No objection.  My understanding,

22   Your Honor, is with Mr. Thai there were those flowcharts that

23   were admitted only for demonstrative purposes.  They weren't

24   admitted into evidence, so 3.16 would apply to those.

25          MR. STONE:  I can respond to that.  That's incorrect. 10:17:40

1    They were admitted as demonstrative.  They were just admitted

2    into evidence as exhibits, as summary exhibits are permitted to

3    be.

4              THE COURT:  So 3.16 will remain.

5              MR. PANCHAPAKESAN:  We have a disagreement about that.    10:17:57

6    I thought the flowchart, it's 1479, that was for demonstrative

7    purposes.  I think some of these charts like revenue and owner

8    received, that may be an appropriate summary exhibit that's in

9    evidence, but I don't remember the flowchart being admitted.

10             THE COURT:  It was admitted.                             10:18:18

11             MR. PANCHAPAKESAN:  For demonstrative purposes only.

12             THE COURT:  What was the exhibit number?

13             MR. PANCHAPAKESAN:  I think it was 1479.

14             MR. STONE:  It was admitted for substantive purposes,

15   and there's a court order that allows it to be admitted before    10:18:30

16   Your Honor was even on the case back in 2021.

17             THE COURT:  We do have it as admitted.  So both 3.16

18   and 3.17 will be included.

19             Then we move to 6.1, "Duty of Jury to Find Facts and

20   Follow Law."                                                      10:18:54

21             6.2 -- -

22             MR. STONE:  Your Honor, if I may, are we not including

23   4.8, 4.9 and 4.11?  Those are knowingly at --

24             THE COURT:  Let me do it in the order that -- because

25   I have reviewed some of those intent areas, and I will explain    10:19:12

1    to you why.

2              MR. STONE:  Understood.

3              THE COURT:  Let me go through these preliminary

4    instructions first, and then I'm going to go back to your

5    contested instructions.  I want to get through these first.          10:19:27

6              MR. STONE:  Got it.  Okay.

7              THE COURT:  So 6.2, "Charge Against Defendant Not

8    Evidence."

9              6.3, "Defendant's Decision Not to Testify."

10             6.5, "Reasonable Doubt-Defined."                            10:19:43

11             6.6, "What Is Evidence."

12             6.7, "What Is Not Evidence."

13             6.8, "Direct and Circumstantial Evidence."

14             6.9, "Credibility of Witnesses."

15             6.10, Activities Not Charged."                             10:20:10

16             Is there a necessity for an "Activities Not Charged"

17   instruction?  The instruction reads, "You are here only to

18   determine whether the defendants are guilty or not guilty of

19   the charges in the indictment.  The defendants are not on trial

20   for any conduct or offense not charged in the indictment."           10:20:34

21             Any reason to have that in, Mr. Stone?

22             MR. STONE:  We're talking -- we were just talking

23   amongst ourselves that it may go to the fact that they are not

24   charged for sex trafficking, but I know Your Honor is going to

25   give a limiting instruction, so perhaps we don't need this one.      10:21:03

1          THE COURT:  Mr. Lincenberg.

2          MR. LINCENBERG:  We think it should be included

3    because there is lots of evidence of uncharged stuff, including

4    sex trafficking and other examples.

5          THE COURT:  Well, what are the other examples?          10:21:14

6          MR. LINCENBERG:  Well, the other examples could be

7    considered bank fraud, could be considered discussion of

8    whether Mr. Lacey filed his tax returns on that wire.  There is

9    a lot of different references.  I think it's more cautious to

10   give this instruction.          10:21:36

11         THE COURT:  We'll leave the instruction in.

12         6.13 "Separate Consideration of Multiple Counts-

13   Multiple Defendants."

14         6.18, "On or About-Defined."

15         6.19, "Duty to Deliberate."          10:21:51

16         6.20, "Consideration of Evidence" and "Conduct of the

17   Jury."

18         6.21, "Use of Notes."

19         6.22, "Jury Consideration of Punishment."

20         6.23, "Verdict Form," and I think we do have that          10:22:16

21   finalized verdict form.  If it has not been provided to you, it

22   will shortly.

23         6.24, "Communication with Court."

24         Now, let me turn to then the substantive instructions.

25   I want to, let's see, first, the proposed "knowingly"          10:22:41

14

```
1    instruction, I'm going to move that instruction into the

2    substantive counts of conspiracy and the money laundering so

3    that it doesn't just sit out on its own and they don't know how

4    to apply it, and so I'll explain to you how I'm going to go

5    about that when I cover the conspiracy instruction.          10:23:19

6         I am going to go to now what is the United States'

7    Proposed Instruction on Deliberate Ignorance.  This is the

8    proposed 4.9.

9         MR. LINCENBERG:  Your Honor, on the "knowingly,"

10   should we reserve argument until the Court gets to it?         10:23:41

11        THE COURT:  Yes, please, let me take it in the order

12   that I have outlined it in my revised instructions.  I'm not

13   going to cover Conspiracy yet, and I will tell you when I'm

14   going to get there.

15        So let's look at the Deliberate Ignorance instruction   10:23:57

16   proposed by the government.  I'm not inclined to accept the

17   proposed instruction because by my view of the government's

18   theory and evidence, all of the defendants knew that they were

19   posting sex-for-money ads, and so the evidence and testimony --

20   the argument I've heard so far is that all of the defendants    10:24:22

21   knew and scrubbed the ads, and so I don't think the Deliberate

22   Ignorance instruction applies.

23        So if you wish to make a record you may, but I've read

24   the rationale as to why you proposed it, but I'm not inclined

25   to give it.                                                    10:24:48
```

1    MR. STONE:  I think, Your Honor, I understand your

2    position.  I would say a couple things on it.  One, it can be

3    given in specific intent crimes.  There's case law on that.

4    Asefi was the one we cited, 1626-3 at 25.  That's the document.

5    It's an argument that that's an alternative to actual                    10:25:05

6    knowledge, even with specific intent crimes, and so it doesn't

7    risk the lessening the state of mind that a jury must find.

8    There is case law on that as well.

9        And we certainly agree that there is plenty of

10   evidence for the jury to find that these defendants knew and            10:25:19

11   had specific intent to promote or facilitate the promotion of

12   these business enterprises involving prostitution offenses, but

13   that doesn't foreclose the Court from providing this

14   instruction as an alternative as well.

15       So if defendants argue in their close that they                    10:25:35

16   didn't, you know, their clients weren't aware of these ads

17   despite all the evidence that has come out in during trial,

18   then the jury could find that they were deliberately ignorant

19   on that, and there is case law that would support that.

20       THE COURT:  Well, again, by my viewing of the                      10:25:53

21   testimony and the evidence and the arguments, I think it's

22   fairly clear what the government's theory of the case is.

23       And so defense wish to be heard on the objection?

24       MR. PANCHAPAKESAN:  Your Honor, we agree with the

25   Court's view.  I am happy to --                                         10:26:11

 1          THE COURT:  I'm not going to give it.  There will be

 2     no Deliberate Ignorance instruction.

 3          Let me turn to the defendants' proposed instruction on

 4     Advice of Counsel, 4.11, we've gone through this almost every

 5     other day, and so for all of the reasons in the record I'm not          10:26:45

 6     going to give it.

 7          Do you wish to be heard, Mr. Lincenberg,

 8     Mr. Panchapakesan?

 9          MR. LINCENBERG:  Your Honor, we didn't propose it, and

10     so unless a different attorney would like to be heard on it we,          10:26:59

11     submit on that.

12          THE COURT:  Yes, it's a defense proposed instruction,

13     so I wanted to make the record clear we're not giving it.

14          MR. LINCENBERG:  Right.  I was just saying -- right.

15     I was saying we didn't physically propose it.  I was just          10:27:14

16     turning it over.

17          THE COURT:  Anybody else want to be heard?  All right.

18     The defendants' proposed instruction on Mere Presence.  Here

19     too, the Court finds that this is not necessary because the

20     jury will be instructed on all of the elements of the alleged          10:27:33

21     charges, and so I -- the government's objection is well taken.

22          Do you wish to be further heard?

23          MR. LINCENBERG:  Yes, Your Honor.

24          THE COURT:  Yes.

25          MR. LINCENBERG:  We think it's an appropriate          10:27:50

```
 1    instruction.  I think it probably is worded better just to say
 2    "Mere knowledge."  The instruction that reads, "Mere presence
 3    at the scene of the crime or mere knowledge that a crime is
 4    being committed is not sufficient."  I think it should just
 5    read  "Mere knowledge."  But this case does involve, you know,      10:28:06
 6    and particularly speaking on behalf my client, this question
 7    that the jurors may have, if they believe that a crime was
 8    occurring, and the government is trying to acknowledge because
 9    of budget meetings and so forth.
10            But if they don't believe that my client was involved      10:28:28
11    in any promotion or facilitating activity, if they say:  Well,
12    maybe he knew, maybe he didn't know, I think it's important for
13    the jury to hear that mere knowledge that a crime is being
14    committed is not sufficient to establish that the defendant
15    committed it.                                                       10:28:47
16            MR. STONE:  And that's why we have the Specific Intent
17    instruction, which would protect Mr. Lincenberg's client for
18    the exact same argument.
19            THE COURT:  And I would agree with that because you
20    not only have "Specific Intent" in the instructions, and you       10:29:00
21    also have the "knowingly" in other instructions, and so I think
22    we're well covered in terms of that.  So the "Mere presence"
23    instruction will not --
24            MR. FEDER:  Note our objection on behalf of Mr. Spear.
25    We also want the "Mere presence," especially him, because of       10:29:21
```

1    the lack of evidence essentially that after moderation is taken

2    over by Liz McDougall and others, and the aggregation has ended

3    as of 2012 and some other assertions by the government,

4    Mr. Spear is involved very little after that, so in particular

5    it would apply to him.                                          10:29:43

6           THE COURT:  Your objection is noted.

7           MR. CAMBRIA:  May we be deemed to join in all the

8    objections, Your Honor --

9           THE COURT:  Yes.

10           MR. CAMBRIA:  -- so that we don't all have to repeat?    10:29:53

11           MR. EISENBERG:  I agree with that.  David Eisenberg.

12    I agree with that.

13           THE COURT:  Did you hear that, Hilda?

14           THE REPORTER:  Yes.

15           THE COURT:  All right.  Let me go to the proposed        10:30:06

16    Conspiracy instruction.  Your instructions are fairly the same

17    with the exception of the government's continuing argument

18    regarding whether or not the objects should be modified by

19    "illegal."

20           Again, I think we had this argument early on in the      10:30:41

21    case, and I went back and looked at what was argued and it

22    appears to me that under the *Kaplan* case, the additional

23    guidance there is that a conspiracy is defined as a combination

24    of two or more persons to accomplish some unlawful purpose or

25    some lawful purpose by unlawful means.  And so because of that, 10:31:12

1    I think it is not necessary to include "illegal," and you

2    certainly -- the defendants can make a record.  You've posited

3    before not only in a prior earlier session, but as well in the

4    motion for acquittal.

5          So if you wish to make a record, that's fine.          10:31:48

6          MR. PANCHAPAKESAN:  So for the record, I believe the

7    *U.S. vs. Manarite* case, 44 F.3d 1407, states that the object

8    has to constitute a federal offense.

9          Our view, of course, is that the indictment, I believe

10   the object of the conspiracy charge, it's at Docket 230 at     10:32:06

11   paragraph 190 is -- paragraph 197 is to obtain money, which is

12   not a federal offense.

13         The other aspect of this where this sort of pops up is

14   I think in the U.S.'s revisions to the unanimity requirement on

15   the conspiracy count, they revised it to say, quote, "Namely,  10:32:27

16   to make money by promoting or facilitating the promotion of any

17   business enterprise involving prostitution offenses," and I

18   think that is problematic because that, as stated, that's not a

19   federal offense.  It's not an object that would form the basis

20   for a conspiracy, so that's the other part where it pops up.    10:32:50

21         THE COURT:  Mr. Stone, do you wish to be heard?

22         MR. STONE:  We agree with Your Honor.  And you've

23   already given preliminary instructions here where you didn't

24   read it, and we think any modifications to those are confusing

25   and shouldn't be done.  I think any of the instructions given   10:33:10

UNITED STATES DISTRICT COURT

now should conform to what has already being read to the jury.

THE COURT:  Well, I am not necessarily making my ruling based on that.  My sense is they never received the preliminary instructions, and I am sure they have long forgotten them by now, some of them anyway.  By some instructions.  I didn't mean some of the jurors.

In any event, pursuant to *Kaplan*, I am going to remove the "illegal object," adopt the United States' Proposed Instruction 11.1, the Conspiracy Elements.

MR. PANCHAPAKESAN:  Only other aspect to that on 11.1 is tying to the 50 ads.  I don't know if the Court has made its determination on that, but if not, I'd like to be heard.

THE COURT:  Is this your prior argument in the preliminary instructions that you provided?

MR. PANCHAPAKESAN:  It is, and then on Rule 29, of course, and the argument ties to Docket 946 at page 13, the prior court order about the scope of the conspiracy being tide to the 50 ads because, A, that's what we are on notice of is it's a conspiracy to violate the Travel Act in 50 instances; and B --

THE COURT:  Let me shortcut you there because I was reminded when I was going through this, there were two kinds of proposed modifications.  Some of them were, I would say, grammatical, stylistic, others were more substantive legal issues.  And so to the extent, I was reminded I adopted some of

1    the, what I would say stylistic grammatical content.  Which --

2    so for example, in the first paragraph of the defendants'

3    proposed instruction, it says -- let me go to the second

4    paragraph which is the better example.  "First, beginning in or

5    around 2004 and ending on or about April 2018, there was an

6    agreement between two or more persons to commit at least one

7    Travel Act offense as charged in Counts 2-51."

8         And then it goes on further to say, "by promoting or

9    facilitating the promotion of a business enterprise or

10   enterprises involving prostitution."

11        So I adopted those types of stylistic changes because

12   it reminds the jury a little bit more about the focus of this

13   conspiracy charge, and so those types of grammatical or

14   stylistic things I adopted from the defendants, but I am going

15   to remove the reference to "illegal object."  Does that make

16   sense?  Do you follow along?

17        MR. STONE:  Yes, Your Honor.  What about the unanimity

18   requirement?

19        THE COURT:  Let me get there.  I am just covering

20   11.1.

21        MR. STONE:  May I be heard on that issue?

22        THE COURT:  On the grammatical issue?

23        MR. STONE:  Generally about the conspiracy is that one

24   of the disagreements between the United States and the

25   defendants is that they continue to posit that this conspiracy

1    was, you know, tide to these 50 counts, and so the time period

2    was 2013 to 2018, and I think Your Honor has made clear that

3    that's not the case.  This was charged as a 14-year conspiracy

4    from 2004 to 2018, and conduct that occurred before 2013 is

5    clearly relevant, and that's how conspiracies work is they can          10:36:49

6    expand longer than the statute of limitations for substantive

7    crimes.

8           So that's just noting what I think is an issue that

9    has been decided, but within Defendants' Proposed Instructions

10   it keeps coming up.                                                      10:37:05

11          THE COURT:  I guess I'm a little bit confused because

12   we have the "on or about" instruction, and then we have the

13   instruction here, the Conspiracy Elements that says, "First,

14   beginning in or around 2004."

15          MR. STONE:  I'm okay with this instruction.  That was            10:37:37

16   more of a general comment that I am sure will crop up as we get

17   to further instructions here.

18          THE COURT:  Okay.  Just to be clear, the Court adopted

19   the stylistic changes of the defendants' Conspiracy 11.1, but

20   removed the "illegal modifying object."  All right.                     10:37:58

21          The unanimity requirement.  Because I looked at this

22   in conjunction with the defendants' proposed 11.3 "Multiple

23   Conspiracies," I don't think here the defendants have raised

24   multiple conspiracy defenses, at least I haven't heard them,

25   and the government, in looking at the indictment, has not              10:38:26

1    alleged multiple conspiracies in any way.  And so the way that

2    I read the indictment, it's an ongoing conspiracy.  It's one

3    conspiracy.  It's ongoing.  And so that for me, I don't think

4    there's a unanimity requirement instruction that makes sense.

5         MS. BERTRAND:  Your Honor, I'd like to be heard on          10:38:57

6    that, if I may.

7         THE COURT:  Yes.

8         MS. BERTRAND:  In cases such as this where we have a

9    conspiracy allegation with *Pinkerton* liability alleged and then

10   a series of discrete acts, *United States vs. Echeverry*,        10:39:11

11   E-C-H-E-V-E-R-R-Y, 698 F.2d 375, Ninth Circuit, 1983, says it's

12   plain error to deny a requested unanimity instruction in such

13   circumstances.  It's not that the government has charged

14   something one way.  It's how the jury could perceive it.

15        And we have a complex set of allegations here with          10:39:40

16   several moving parts, players coming in and out.  Example,

17   Bill Mercy, the bottom Dollar Bill TER guy, he's in and out of

18   this case, and there is a potential for the jurors to see this

19   as not one string of conduct, but several different series of

20   conduct.  And if that's the case, the unanimity instruction is   10:40:10

21   required.

22        And I would note that with the site that I made to

23   *Echeverry,* this is a little technical, but I just wanted to

24   make clear about citation, that the Ninth Circuit then came

25   back with a supplemental opinion that elaborated further on the  10:40:33

1    need for this specific type of unanimity instruction, and that

2    was at 719 F.2d 974, still in 1983.

3         I think given what the Ninth Circuit has told us about

4    these specific circumstances with a conspiracy charge then

5    linked to a series of discrete ads, under which the government          10:41:04

6    is going to argue with the jury, the other co-conspirators,

7    alleged co-conspirators, could be found liable under *Pinkerton*.

8    The Ninth Circuit requires, and what I would suggest is that at

9    least, at the least, the jurors should be instructed on the

10   dates of any conspiracy or conspiracies in which they found          10:41:27

11   each defendant had participated.  But that -- that is my

12   concern in raising or not giving a unanimity instruction, and

13   the jury instruction mentioned for this is 7.9 by the Ninth

14   Circuit standard instructions, but it's just comment.  There is

15   no specific language offered in the comment.          10:41:56

16        THE COURT:  Well, the -- to that end, I guess I am a

17   little bit confused by the last statement that they should be

18   instructed as to particular dates.  I don't know what you

19   referred -- what you mean when you refer to that.

20        MS. BERTRAND:  I don't think they should be told what          10:42:15

21   the dates are.  I think they need to agree as to when the

22   conspiracy started and ended.

23        THE COURT:  Well --

24        MS. BERTRAND:  They have to be unanimous about that.

25        THE COURT:  Well, the indictment charges on or about          10:42:28

UNITED STATES DISTRICT COURT

1     certain year through a certain year, 2018, 2004 to 2018.

2           MS. BERTRAND:  Right.

3           THE COURT:  They are going to get multiple

4     instructions about the conspiracies, and when they, what time

5     period they are encompassed.  They are also getting, at least          10:42:47

6     in the form of verdict, a description of the ads and the dates

7     that they were posted, so I don't know what more they need.

8           MS. BERTRAND:  Well, Your Honor, there is actually

9     discussion in the case law that says where on or about language

10    is charge in the indictment regarding the time line of a               10:43:02

11    conspiracy, that is not sufficient for a jury to adequately

12    review complex charges such as this.

13          MR. FEDER:  Judge, before you go on, could I add a

14    little something?

15          THE COURT:  Yes.                                                 10:43:23

16          MR. FEDER:  There was certainly an argument that the

17    alleged conspiracy from 2004 to roughly 2012 regarding

18    moderation, TER, et cetera, ended in 2012 when Liz McDougall

19    took over moderation and aggregation was over with, as Mr. Hyer

20    discussed, et cetera, and then, and either the conspiracy ended        10:43:50

21    or it was abandoned by at least Mr. Spear because he was no

22    longer involved in any of those actions that the government has

23    made no such a show of.  So there's certainly -- the jury could

24    certainly find that there are two conspiracies, one ending in

25    roughly 2012 or before, and one going forward after that,              10:44:10

```
1    number one.
2            Number two, a conspiracy, just because you're getting
3    payments essentially for the actions of the conspiracy in a
4    prior time, those are typically not necessarily part of a
5    conspiracy.  So there is a potential statute of limitations        10:44:29
6    issue here regarding the initial conspiracy -- the initial
7    alleged conspiracy of 2004, 2012, before the five-year statute
8    of limitation.
9            THE COURT:  Well, again, and I am happy to hear from
10   the government, but I also note that Echeverry essentially is      10:44:50
11   the case that says because you've only alleged one conspiracy.
12   And I guess to me, I don't know, I don't see evidence of
13   multiple conspiracies, and that's the problem.  I'll let the
14   government finish.
15           MR. STONE:  And Echeverry is the case we cited for our     10:45:20
16   point.  We just pulled it up, and I think it supports our
17   position.  It's only when there is a genuine possibility of
18   jury confusion, or that a conviction may occur as a result of
19   different jurors concluding that the defendant committed
20   different acts and that there was more than one conspiracy        10:45:39
21   would be in support of this multiple conspiracies, which we
22   agree with Your Honor is not necessary, or this unanimity
23   requirement.
24           From the opening statement forward, the government has
25   presented one conspiracy.  We broke it down into two phases,      10:45:55
```

```
1    two stages, of what these defendants are alleged to have done

2    to make their conspiracy work, and that's a conspiracy to

3    violate the Travel Act.  There was actions done from the

4    inception to 2010, and there's clearly been a mountain of

5    evidence about what happened after Craigslist closed down its        10:46:22

6    adult section, and then they took different actions to maintain

7    the business and maintain the conspiracy.

8           So there isn't any confusion for these jurors.  It's

9    been made clear that Dollar Bill and the other super posters

10   were just one aspect of the first phase of this conspiracy.          10:46:38

11          So we agree with Your Honor, there isn't any need to

12   give either the unanimity requirement for 11.1 or the 11.3

13   Multiple Conspiracy instruction.

14          MR. FEDER:  Can I have a short reply, response,

15   whatever it would be?                                                 10:46:56

16          THE COURT:  Last -- last word.

17          MR. FEDER:  So there's a case called *United States vs.*

18   *Dougherty*, 867 F.2d. 47, First Circuit, and then kind of a

19   follow-up, *United States v. Wilber*, 674 F.3d. 1160, Ninth

20   Circuit, that talks about multiple conspiracies, and that           10:47:12

21   essentially is where the conspiracy has been abandoned or has

22   ended, and there is plenty of evidence.

23          Notwithstanding what Mr. Stone just said, they are

24   talking about Craigslist closing the adult section in 2010.  By

25   2012 there has been unequivocal testimony by Ferrer and Hyer        10:47:30
```

1    and others that the alleged actions building up this site, the

2    aggregation, the moderation practices or lack thereof, Dollar

3    Bill, TER, et cetera, all had ended by 2012.  The five-year

4    statute from the date of the indictment is March 28th of 2013,

5    such that whatever conspiracy the government asserts, doesn't          10:47:56

6    matter what they put in their indictment, whatever they have

7    asserted has ended by that date.

8            And I am not sure what they have going forward.

9    Merely getting payments for what you've created in a conspiracy

10   that has ended, in my humble opinion, does not -- is not an --        10:48:15

11   certainly not an ongoing conspiracy and not even a new

12   conspiracy.

13           THE COURT:  All right.  Well, the record has been

14   made.  I am not going to give the unanimity requirements for

15   the reasons I previously stated.                                       10:48:31

16           The -- oh, we got a new instruction.  And so for the

17   same reasons, I am not going to give defendants' proposed 11.3

18   Multiple Conspiracies instruction.  And we've addressed the

19   issue of whether or not -- let's see, the 11.4, which is the

20   defendants' proposed Conspiracy, "Knowledge of and Association       10:49:51

21   With Other Conspirators."  They are, again, the same.  The

22   defendants include the insertion of "illegal objects."  The

23   government removes that.  And so consistent with my prior

24   ruling, I'm going to adopt the government's 11.4.

25           The *Pinkerton* Charge, again, here the proposed            10:50:24

UNITED STATES DISTRICT COURT

1    instructions were fairly the same, but I think the only change

2    that I could see were those sort of grammatical types of

3    changes.  So, for example, and certainly let me know if I'm

4    overlooking something, in the defendants' proposed at the same

5    element, it says, "First, a member of the conspiracy committed

6    a Travel Act offense alleged in one of the counts."

7              The government's reads, "First, a member of the

8    conspiracy committed the Travel Act offense alleged in that

9    count."

10             And so just in terms of that sort of stylistic

11   revision, what is the government's position?

12             MR. STONE:  We are fine with defendants' proposed

13   changes.

14             THE COURT:  All right.  We will adopt the defendants'

15   proposed *Pinkerton* Charge.

16             Again, same thing with regard to the *Pinkerton* Charge

17   as it relates to the money laundering substantive offenses, any

18   objection to adopting the defendants' with their modified

19   changes?

20             MR. STONE:  No, Your Honor.

21             THE COURT:  The same thing with the promotional money

22   laundering charge, the defendants' proposed *Pinkerton* 11.6,

23   again, there too it was just simply clarifying what the

24   particular charge that this conspiracy instruction relates to.

25   Any objection?

1           MR. STONE:  No objection.

2           THE COURT:  The Travel Act charges, let me go there

3    first because there are a couple of questions I have and I will

4    tell you what I'm inclined to do in terms of changing that.

5    When I looked at the defendants' charge, I noted that where          10:53:13

6    there is a description of the state law, you made strikeouts

7    and modifications to what constitutes the state law violation,

8    and I am wondering what that was based on because my

9    recollection is the government proposed the state law

10   description it was adopting from the particular state's law.         10:53:44

11   So I don't know if those changes were grammatical or if they

12   were substantive.  And if they were substantive, I want to know

13   what the statute was that they were drawn from.

14          For example, you have at, when you're describing

15   Counts 2, 4, 27 and so on, "concerns prostitution offenses in        10:54:06

16   violation of the laws of the state of Massachusetts.  A

17   prostitution offense in Massachusetts occurs when, A," and then

18   you have a person, and you strike out, "engaged, agree."  And

19   then you write, "engages, agrees to engage or offers to

20   engage."  And so you've stricken out some of that language, so       10:54:33

21   I want to make sure that I know why, and hear from the

22   government as to whether or not that still tracks the statute,

23   and you've done that.  I want to point out you've done that in

24   multiple states.  Massachusetts -- can't say Massachusetts,

25   Washington, the same thing.  And so --                              10:54:56

1          MR. PANCHAPAKESAN:  My understanding, Your Honor, is

2     the changes substantively track the underlying statutes, and

3     that's why the changes were made.

4          THE COURT:  It's a critical issue.

5          MR. STONE:  Your Honor, I confess that I didn't go          10:55:35

6     back and look at all the statutes after these changes were made

7     earlier this week, but I remember doing it originally and

8     looking at all the state statutes.  And what I provided, I

9     thought, was what the language was.  A lot of these changes

10    don't seem to be hugely substantive.                           10:55:56

11          Like the Massachusetts, the first one, it's moving it

12    from past tense to present tense, I guess.  It's eliminating

13    some of the language in number two, but I don't think it's

14    changing the meaning.

15          The Washington statute it eliminated the definition of    10:56:14

16    "sexual intercourse," and so that seems like an issue, but

17    if -- if their representation to the Court is that they have

18    gone back and looked at these statutes and there's a change, I

19    would be willing to trust them on that.

20          THE COURT:  Well, I guess it's your charge, Mr. Stone.    10:56:44

21    It's your charge.  It's your indictment.

22          MR. PANCHAPAKESAN:  Like for example, Your Honor, in

23    New York, Section 230.00 is prostitution, "A person is guilty

24    of prostitution when such person engages or agrees or offers to

25    engage in sexual conduct with another person in return for a    10:57:02

1    fee."

2          I think that's why we made that change, for example,

3    just to track the statute.

4          MR. STONE:  Your Honor, let me just revisit my

5    comments here.  In talking to a member of the team who has gone    10:57:19

6    back very recently and looked at this and confirmed that our

7    instruction as originally included in, now I am talking

8    specifically about the Washington statute, "sexual intercourse

9    means that the sexual organ of the male entered and penetrated

10   the sexual organ of the female."  The defense changes has its    10:57:41

11   ordinary meaning.  So our position would be that it's part of

12   the Washington state statute for sexual intercourse, and that

13   should be included.

14         I guess I don't feel as strongly for what seems to be

15   sort of line edits from "engaged" and "agree" to "engages" and    10:57:58

16   "agrees."  That's fine.  But for the more substantive ones, our

17   position would be that the government's instructions should

18   remain.

19         THE COURT:  Well, if they are only modifications in

20   terms of grammatical or stylistic, I am not going to adopt    10:58:18

21   those, and so I'll keep with the government's proposed

22   instructions, at least as to the description of the state law

23   violation.  Because from what I heard Mr. Stone say is that a

24   member of the team has scrubbed through those statutes, those

25   state statutes, and then included them in the instruction.    10:58:44

1        So I'm hesitant to modify them so just stylistically

2   for that reason alone.  So then I will adopt the proposed

3   Travel Act instructions.

4        Now, here are the -- here are the changes that I'm

5   going to propose, however.  I'm going to adopt some of the          10:59:06

6   defendants' proposed language.  Here's where the changes begin.

7   In the second paragraph which reads, "First, the defendant used

8   any facility in interstate commerce," I am going to include,

9   "with the specific intent to promote."  I'm going to remove

10  "manage, establish, carry on" and keep "or facilitate the          10:59:34

11  promotion."  Remove "management, establishment or carrying on."

12  Continue on with, "of any business enterprise involving

13  prostitution offenses in violation of the laws of the State in

14  which they were committed (as specified below)."

15       And then, "Second, after doing so the defendant                11:00:04

16  performed," I'm going to take out "or attempted to perform."

17  Go on to say, "an act that did promote."  Remove "manage,

18  establish carrying on, or facilitate."  Remove "the promotion,

19  management, establishment or carrying on" and say, "of any

20  business enterprise involving prostitution offenses,               11:00:39

21  specifically, by publishing on Backpage.com the ads listed in

22  Counts 2-51 of the indictment."

23       So here what I am going to do next is insert,

24  defendants' modified "promote and facilitate" definition.  And

25  let me go to that now.  I looked at both of the proposed          11:01:06

1    definitions, and I think the government's proposed is really

2    not -- it's not complete.  So with the following modifications,

3    I will insert this into that -- into a next paragraph after the

4    paragraph I just read.

5           So the modification to the defendants' "promote and          11:01:46

6    facilitate" instruction will read, "In the context of this

7    Travel Act case, the terms 'to promote' or 'to facilitate the

8    promotion of' means intentionally helping someone else commit a

9    prostitution offense in violation of state laws."  And I think

10   that is consistent with *Hansen* and the other supporting          11:02:25

11   authorities.

12          Did you follow along with that?

13          MR. STONE:  I did, Your Honor, and we would object to

14   one small aspect of it.

15          THE COURT:  And what is the small aspect?                    11:02:45

16          MR. STONE:  The aspect is that the Ninth Circuit is

17   clear that the Travel Act does not require the commission of

18   the predicate offense.  And I believe as Your Honor read that

19   third paragraph, it suggests, and in fact it's somewhat

20   explicit, that state law offenses needed to be committed, and      11:03:02

21   that's just not the law.  That's not the law of this case

22   because the Court has recognized that the Ninth Circuit in

23   *Stafford* and *Tavelman* does not require it.  It's only promoting

24   the unlawful activity with a subsequent overt act in

25   furtherance of that unlawful activity.                             11:03:24

1          So there's a separate jury instruction that the United

2     States proposed, in fact, defense proposed as well, that the

3     state law offense need not be committed.  So I think we need to

4     be clear in this third paragraph that the underlying state law

5     offense does not have to have been committed.                    11:03:42

6          MR. PANCHAPAKESAN:  Your Honor, our position on that

7     is that there's a separate instruction on that.  And I think,

8     as the Court observed, to be consistent with the Supreme

9     Court's decision in *Hansen*, the Court's language ought to be in

10    there about what facilitation means.                            11:04:18

11         THE COURT:  I will go back and take a look at that, my

12    modification to "promote and facilitate" before I make that

13    final decision.  I want to be clear that for my own purposes

14    that it's consistent or there is no inconsistencies with my

15    modification, and I will let you know.  I'll give you a hard    11:04:37

16    copy of it.

17         MR. PANCHAPAKESAN:  The only other thing I will point

18    out for the record, Your Honor, on the Travel Act charges, my

19    understanding based on the Model is that there needs to be a

20    subsequent overt act as the second element, and I think our     11:04:50

21    objection, and this is reflected in our modification, is we

22    don't think that the website just automatically publishing

23    something is a subsequent act by a given defendant.  We think

24    that ought to be something separate.  Maybe it could be an act

25    in connection with the publishing.  It could be another act,    11:05:11

UNITED STATES DISTRICT COURT

1   but the concern is that just because a website publishes

2   something that's somehow imputed to someone as their act, and

3   we think the statute requires an actual act on the part of the

4   defendant separate and apart from something a website might

5   say.                                                          11:05:29

6          THE COURT:  Let me get through the Travel Act

7   modifications that I am making and then we can circle back to

8   that.

9          So where I left off was after the one, two, third

10  paragraph, the insertion of the "promote" and "facilitate"     11:05:42

11  definition will be inserted.  We're going to take out that

12  third substantial step language from the government's proposed

13  because that's only relevant as to the attempt.  I'm going to

14  strike out, "Jurors do not need to agree unanimously."  Well,

15  that's part of the substantial step.                           11:06:10

16         Then I'm going to insert the "specific intent"

17  instruction, the "promote or facilitate" instruction, the

18  "Business enterprise" instruction, and then the "facility in

19  interstate commerce."  Because it all will then just flow

20  naturally from the Travel Act charge.                          11:06:44

21         MR. LINCENBERG:  And Your Honor, when the Court

22  indicates that you're going to then insert the "specific

23  intent" instruction, is the Court agreeing with our --

24         THE COURT:  Well, I am going to get there.  I'm still

25  going through the process because there were different         11:07:07

1    strikeouts.  Let me get to the "specific intent" instruction.

2            I made modifications to the defendants' proposed

3    instruction.  I can read my writing here.  I'm going to begin

4    with the very last -- oh, okay, thank you -- the last very

5    portion of the defendants' proposed specific intent defined          11:07:51

6    instruction.  It's going to be modified as follows, "To prove

7    specific intent, the government must establish that each

8    defendant in some significant manner associated himself or

9    herself with the purpose of promoting for facilitating the

10   promotion of a particular business enterprise involving           11:08:20

11   prostitution offenses that the defendant knew to be unlawful

12   under state law."

13           MR. STONE:  Would you mind reading that again, Your

14   Honor?

15           THE COURT:  Let me point out.  There's an error.         11:08:50

16   Okay.  "To prove specific intent, the government must establish

17   that each defendant in some significant manner associated

18   himself or herself with the purpose of promoting or

19   facilitating the promotion of a particular business enterprise

20   involving prostitution offenses that the defendant knew to be      11:09:13

21   unlawful under state law."

22           MR. STONE:  May I be heard?

23           THE COURT:  Yes.

24           MR. STONE:  I think that's largely fine.  The issue

25   will be, "a particular business enterprise" as opposed to the      11:09:36

1    statutory language of "any business enterprise."  That's our

2    specific intent instruction, which, by the way, was stipulated

3    to in the first trial.  We stipulated to a particular specific

4    that intent instruction.  The Court read that instruction

5    during the preliminary instructions and we think that that one            11:09:57

6    really should be given.  If there are modifications, it should

7    still remain the language as the Court read in the preliminary

8    instructions, which was the last sentence, "specifically

9    promoting or facilitating the promotion of any business

10   enterprise involved in prostitution."  That's how the Court            11:10:17

11   read the preliminary.

12          MR. LINCENBERG:  Well, that can't be the case because

13   these are specific counts.

14          THE COURT:  So the argument you have is replace

15   "particular" with "any"?  I will adopt that.            11:10:34

16          MS. BERTRAND:  Your Honor, the defense objects to the

17   "any."  If I may make a record.  I know my colleagues want to

18   make a record too.  I think here "any" is not appropriate

19   particularly as to the substantive counts of the indictment,

20   but also conspiracy count, Count 1.            11:10:56

21          Judge Brnovich made clear, the law of this case has

22   been that this conspiracy is about these 50 ads and whether or

23   not these 50 ads were, A, for prostitution at all, B, a

24   business enterprise.

25          For the government to be allowed to expand it to be            11:11:17

```
1    any business enterprise, that could be enterprises having

2    nothing to do with these specific ads, that is overbroad.  It

3    also varies their indictment.  But the key here is that the

4    specific intent is as to the ads listed in the indictment, not

5    other ads, not other business enterprises, and that expansion      11:11:41

6    to the word "any" broadens this well beyond what case the

7    government is, well, the government is supposed to try, and the

8    case that is now that we have been defending.  So I think that,

9    while it's a small word, is critical to this case, and my

10   colleagues may want to chime in on this, but I want to make        11:12:09

11   sure that I make a clear record of that, overbroad, improper

12   and improperly expands the indictment.

13            THE COURT:  Anybody else?

14            MR. FEDER:  Yes, it is especially prejudicial because

15   of all the exhibits the government has admitted that have          11:12:25

16   multiple ads that they have accentuated different language in

17   that not only confuses jury, but will broaden the 50 ads in the

18   many, many ads, none of which we have been able to prepare for.

19   So it will be, on behalf of Mr. Spear, I join in those

20   comments.                                                          11:12:48

21            MR. CAMBRIA:  My additional comment, Your Honor, is I

22   specifically remember the language which, as far as I'm

23   concerned, is the law of the case -- try this.  There we go --

24   from Judge Brnovich that said, "through these 50 ads."

25            We have only been given notice in an indictment of        11:13:12
```

these 50 ads as the vehicle to supposedly promote a

prostitution enterprise.  And this now, at this late hour, and

in view of the rulings in the past by Judge Brnovich, is

frankly an amendment to the indictment and inconsistent with

what we have been told since the very beginning that they

supposedly committed this Travel Act offense through these 50

ads.

            THE COURT:  Anybody else?

            MR. LINCENBERG:  I think counsel have made the

argument on that sentence of the specific intent instruction.

            MR. STONE:  May I respond?

            THE COURT:  The way that I view matters now, and

again, I'll remind counsel that those decisions were made

primarily on the motions to dismiss the indictment for

insufficiency.  But here, the way that I thought the evidence

came out was that there were some ads that were related to, I

guess, sex-for-money organizations that were run by, you know,

the individuals that we heard about who were bringing girls in

and out of different states and so on, and there were those

individuals who posted on their own.

            So that's how I interpreted the "any" to mean.  It

could include the circumstance where one of these women had a

pimp or maybe they were independent of a pimp as the evidence

came out, and that's why I thought it was appropriate.  I don't

necessarily think it expands beyond the case.  And so anyway,

11:13:40

11:14:03

11:14:21

11:14:49

11:15:07

1  in any event, I am going to replace that particular with "any."

2         MS. BERTRAND:  Your Honor, the Ninth Circuit requires

3  us, even after the Court has entertained argument, to note an

4  objection.  So I am respectfully noting that objection to

5  preserve this issue on appeal.                          11:15:36

6         THE COURT:  Certainly.  All right.  And then after

7  that Specific Intent --

8         MR. LINCENBERG:  I'm sorry, Your Honor, when the Court

9  was talking about the Specific Intent instruction, I think the

10 Court said, initially I'm going to read the last sentence.  Is  11:16:02

11 the Court moving on from Specific Intent and going to the other

12 part of the Specific Intent instruction?

13        THE COURT:  Yes, moving on.

14        MR. LINCENBERG:  Well, then I do have additional

15 comment.  Excuse me.                                    11:16:15

16        The sentence that we proposed, "A defendant cannot

17 have intended to promote or facilitate a business enterprise

18 that the defendant did not know to exist" is critical.  That is

19 from the ruling of Judge Brnovich at Document 946 beginning at

20 line 26, "To answer defendants' questions posed to the Court,   11:16:41

21 one cannot intend to promote, facilitate a business enterprise

22 one does not know exists."  That's how we have been defending

23 the case.  That should be included in the Specific Intent

24 instruction.

25        MR. CAMBRIA:  No, Your Honor, with respect to that,   11:17:02

```
 1    the only ones we were noticed of are the ones in the
 2    indictment, and that's the reason -- obviously that's one of
 3    the reasons for an indictment, but those are the ads that were
 4    alleged to be the vehicle to commit this offense, so those are
 5    the only ones we had notice of, and obviously we need -- we            11:17:23
 6    thought we could rely on what was alleged in the indictment and
 7    what we've been told.  Even though the decision by Judge
 8    Brnovich was about the sufficiency of allegations alone, she
 9    quite clearly characterized what the charge was, and that's how
10    we have been proceeding with 50 discrete ads listed in the             11:17:47
11    indictment.
12              MR. LINCENBERG:  And then the --
13              THE COURT:  Isn't that the confines of what the jurors
14    are going to be determining?  That's the reasons for these
15    instructions.  They are limiting their decisional process to          11:18:02
16    the allegations as they are set forth.  They are not -- I
17    don't -- I guess I'm just not following.  Do you think they are
18    grasping at other things in the air in terms of what might be
19    occurring elsewhere?  I don't know.
20              MR. CAMBRIA:  No.  What I'm saying is that we have           11:18:22
21    been noticed that this crime allegedly committed through the 50
22    ads noticed in the indictment, and so that's what the
23    government has to prove that it happened through those 50 ads,
24    not things that they bring up for the first time in trial, and
25    that's outside the notice and outside the decision that we had        11:18:46
```

1    in the past.  They have to prove this knowledge through what

2    they noticed us about.

3            THE COURT:  Well, I'll remind counsel that that's a

4    100-page indictment, and the notice also goes to the background

5    of the conspiracy, and that is the evidence that I think the          11:19:08

6    government has tried to put forth.  So I don't -- I guess I'm

7    lost in the argument.  I don't know.  You've made your

8    objections.  Let's move.  Let's move on, okay, unless unless

9    there is something critical under the law that you wish to add.

10           MR. CAMBRIA:  The critical part of is that's the              11:19:30

11   notice we were given, and that's consistent with the decision

12   that was made, which I submit is the law of the case, and that

13   is what we've been defending.  And now to say that the jurors

14   can consider an ad outside of those 50 for that particular

15   issue, I just think is unfair, and the government had to prove        11:19:49

16   this case through those 50 ads.  That's noticed stuff.

17           MR. STONE:  May I be heard?  Defendants constantly

18   bring up this one sentence that's in 946, but the facts are

19   that the law of the case is this, which has been found in

20   multiple orders, including Your Honor's order at Doc 1587, and        11:20:10

21   Judge Brnovich's order at Doc 793, and the Court has

22   continually found that the alleged facts in the indictment

23   taken as true established defendants had specific intent to

24   promote prostitution, in violation of the Travel Act.

25           They conspired together to do so.  The conspiracy was         11:20:29

1   successful and resulted in the 50 ads for prostitution that now

2   make up 50 counts for violating the Travel Act.

3          The government is not suggesting that the jury look at

4   anything beyond the 50 substantive ads when determining guilt

5   or not guilt from Counts 2 through 51.  It's just that                    11:20:49

6   defendants continually attempt to argue that if their clients

7   didn't know about these particular ads, that they can't be

8   found guilty, but the Court has found over and over and over

9   again that that's not the law of the case.

10          So it's the defendants' policies, procedures and          11:21:10

11  implementations of those policies and procedures as the

12  evidence has shown that the jury will consider in determining

13  whether or not there were actions that they can find guilt for

14  those 50 ads.  The indictment is clear and the orders are clear

15  on this issue.                                                            11:21:31

16          MR. LINCENBERG:  Your Honor, briefly, I don't want to

17  distract from the point that I raised.  This is a separate

18  point about the 50 ads; that we really think it's important to

19  put in the sentence from Judge Brnovich's order where she says,

20  "To answer defendants' question, one cannot intend to promote,            11:21:49

21  facilitate a business enterprise one does not know exists."

22          THE COURT:  All right.  Point taken three times.  In

23  any event, my ruling stands and that's how the instruction will

24  read.

25          We'll go to the "Business enterprise" which I think              11:22:08

you agreed on, that will come next after "specific intent.  And

then followed by "facility in interstate commerce."  Those will

be all included in that Travel Act instruction.  And then it

will be followed by the description of the counts using the

state law violations that are described in the defendants'

proposed instruction.

        Now, moving to the money laundering counts, the

defendants propose 18.4 is adopted with its modifications.

Again, these are primarily, in my view, stylistic changes.

They track very closely to what the government has proposed.

        MR. STONE:  Your Honor, I have objection to that

because their 18.4 suggests that the money laundering needs to

be tied to Counts 2 through 51.  That is not the law.

        THE COURT:  Well, I asked you before, and I think I

asked you this two or three days ago.  Because some of these

money laundering counts stand alone, I asked you to propose to

me some other modifying instruction that says as much.  I never

received any.

        MR. STONE:  Because we didn't believe it was necessary

because they just need to find that there were Travel Act

violations, not that these are tied to Counts 2 through 51.  A

jury could find that the defendants are not guilty on 2 through

51 and still find on money laundering.  We bring cases that

just involve money laundering counts.  It is about finding that

the money involved was from the specific unlawful activity.  In

1    this case, it is Travel Act offenses, so it need not be tied to

2    the counts.

3            MR. PANCHAPAKESAN:  Your Honor, may I be heard on

4    that?

5            THE COURT:  Yes.                                        11:24:07

6            MR. PANCHAPAKESAN:  Our position is this:  In the

7    indictment, the specified unlawful activity incorporates

8    essentially what's previously alleged in the indictment.  It

9    can't be the conspiracy because that's not defined as specified

10   unlawful activities under the relevant statutes.  So all we're   11:24:23

11   left with are the 50 substantive counts.  When the government

12   says it could be other Travel Act violations, they haven't put

13   on evidence about the Travel Act violations.  The only Travel

14   Act violations they endeavored to prove are tied through the 50

15   ads from the individuals that testified and the business         11:24:41

16   enterprise that they have alleged.

17           So when the government sort of says that there might

18   be some other Travel Act violations that form the basis for the

19   specified unlawful activity, we're not sure what that is.  We

20   are not on notice of that.  The only proof at trial has been on   11:24:54

21   the 50 ads.  So in fairness, that's what it ought to be.

22           THE COURT:  I guess I am confused then because at the

23   end of the government's proposed instruction on money

24   laundering, it basically says, "I instruct you that violating

25   the Travel Act is a felony," so you're going back to your        11:25:18

1    Travel Act violations in any event.

2         MR. STONE:  Right.  It would be -- let's say we

3    charged this case just as money laundering, there will be zero

4    Travel Act substantive violations, and we would need to prove

5    that the proceeds that were tied to the specific money          11:25:34

6    laundering counts derived from Travel Act violations, so we

7    would need to prove that up that the defendants knew that this

8    money came from the promotion or the facilitation, or

9    facilitating the promotion of business enterprise involved in

10   prostitution offenses, but that would be something that we      11:25:52

11   would need to demonstrate.  It does not need to be tied to any

12   substantive counts.  It --

13        THE COURT:  Let me shortcut you.  So your dispute is

14   basically the reference of, "or violations of travel acts

15   charged in Counts 2 through 51."  That's your dispute.          11:26:09

16        MR. STONE:  Correct.  You got to get rid of the 2

17   through 51.

18        THE COURT:  I would agree with that.  So I'm going to

19   remove after "violations of the Travel Act" in the defendants'

20   proposed referring to Counts 2 through 51.                      11:26:26

21        MR. PANCHAPAKESAN:  For the record, we object to that

22   for the reasons I noted.  I understand Mr. Stone's argument

23   that in other cases there may not be a Travel Act charge, but

24   there is one here, and so that's -- that's what the money

25   laundering ought to relate to.                                  11:26:44

1          THE COURT:  Well, whether you agree or not, when the

2   jury looks at the entirety of the Travel Act instructions, they

3   are count by count.  So I think it's a nonissue really.

4          All right.  So the Court will also adopt the

5   defendants' proposed 18.5 with that charge.                    11:27:16

6          MR. STONE:  You mean eliminating Counts 2 through 51?

7          THE COURT:  Yes.

8          MR. STONE:  We're okay with that, Your Honor.

9          MR. PANCHAPAKESAN:  Your Honor, just for my record,

10  just note objection on that for these instructions.            11:27:33

11         THE COURT:  Yes, it will.  The same with the 18.6, I

12  will adopt the defendants' version with the removal of the

13  reference to Counts 2 through 51.

14         The Court will adopt the defendants' 18.7 "Money

15  Laundering."  I'm going to remove in the first, sorry, in the   11:28:27

16  second paragraph where it says, "First, the defendant knowingly

17  engaged in." After that second sentence I'm going to remove the

18  act is knowingly done, because it's going to be redundant with

19  what I propose was what I am going to do with your "knowingly"

20  instruction.  It's going to be incorporated elsewhere.         11:28:56

21         MR. LINCENBERG:  The Court is leaving in this language

22  on attempt?

23         THE COURT:  Well, I'm looking at your proposed

24  instruction 18.7.

25         MR. LINCENBERG:  It should probably get rid of "or       11:29:13

1    attempted to engage."

2         THE COURT:  So your modification to your instructions

3    should read, "First, the defendant knowingly engaged in a

4    monetary transaction."

5         MR. LINCENBERG:  Yes.                                    11:29:42

6         THE COURT:  Is there an objection?

7         MR. STONE:  That's fine.

8         THE COURT:  I will adopt the defendants' 18.7 a, money

9    laundering conspiracy.

10        MR. STONE:  Your Honor, sorry to interrupt, the fourth   11:30:03

11   element has Counts 2 through 51 again on 18.7.

12        THE COURT:  Yes, we will remove references to those

13   counts.

14        MR. STONE:  And then I think when they are defining

15   the "financial institution," maybe either way they have the   11:30:15

16   counts through 2 through 51 again listed on page 69.

17        THE COURT:  Okay.  Oh, I'm sorry, yes, I got this

18   backwards.  Okay.  So I actually added in the "knowingly"

19   instruction after that second paragraph.  So it will read,

20   "First, the defendant knowingly engaged in a monetary         11:30:58

21   transaction," period.  Then what I inserted was the proffered

22   "knowingly" instruction that reads, "An act is done knowingly

23   if the defendant is aware of the act, and does not act or fail

24   to act through ignorance, mistake, or accident.  You may

25   consider evidence of the defendants' words, acts, or omissions,  11:31:23

1    along with all the other evidence, in deciding whether the

2    defendant act knowingly."

3            So that is the modification to 18.7, the defendants'

4    proposed instruction.  Did you follow along?

5            MR. LINCENBERG:  Yes, we would note the following          11:31:41

6    objection.

7            THE COURT:  To adding that "knowingly" modifier in

8    there or description?

9            MR. LINCENBERG:  Yes.  The objection is that in the

10   comments to the "Money Laundering" provisions it says, "because   11:31:51

11   it is a specific intent crime, it is reversible error to give a

12   'knowing' instruction in a money laundering case in a manner

13   that case the defendant need not know that the money being

14   laundered was proceeds of criminal transactions."

15           THE COURT:  Mr. Stone, do you have a --                    11:32:27

16           MR. STONE:  Well the statute says "knowingly" so I

17   think that should be defined.

18           THE COURT:  Well, I think that's the reason I included

19   it.  So there has to be some instruction for the jury to figure

20   out what "knowingly" means and so I have included it because of   11:32:46

21   that.  So in any event, that's how it will be modified.

22           The proposed defendants' 18.7(a), I have adopted -- I

23   removed, obviously, Mr. Larkin's name.

24           MR. STONE:  What about the unanimity requirement, Your

25   Honor?                                                            11:33:22

1          THE COURT:  I might have missed that.

2          MR. STONE:  That's included in defendants', and we

3    would object to that.

4          THE COURT:  I might be missing where you're at.

5          MR. STONE:  Page 71 of the defenses' proposed                    11:33:44

6    instructions.

7          THE COURT:  That's not helpful to me, page reference.

8    I am looking at 18.7(a), Money Laundering Conspiracy, related

9    to the 1956(h) charge.

10         MR. STONE:  The one I am looking at is from defense        11:34:00

11   includes a unanimity requirement, but if yours doesn't have one

12   and you're not inclined to give one, then I don't have anything

13   more to say.

14         THE COURT:  The proposed instruction says, "Defendant

15   Lacey, Spear and Brunst are charged in Count 52 of the               11:34:12

16   indictment with money laundering, conspiracy, in violation of

17   section 1956(h) of Title 18 of the United States Code."  For

18   defendant -- "For a defendant to be found guilty of that

19   charge, the United States must prove each of the following

20   elements beyond a reasonable doubt with respect to that              11:34:33

21   defendant:

22         First, there was an agreement;

23         Second, the defendant knew the objective;

24         Third, the defendant joined in the agreement with the

25   intent to further its unlawful purpose."                            11:34:45

1          That's what I'm going off of that.

2          MR. STONE:  No objection to that.

3          MR. PANCHAPAKESAN:  Your Honor, in our redline, we

4    prepared after that a unanimity requirement that reads, "For a

5    defendant to be found guilty of Count 52, conspiracy to commit

6    money laundering, you must find beyond a reasonable doubt the

7    defendant joined in a plan to commit at least one of illegal

8    object of the alleged conspiracy, one of the money laundering

9    events as charged in Count 53 to 99 upon which you all agree."

10         The reason we included that is because there is four

11   different sets of money laundering charges.  Many of them my

12   client is not even on.  There's transactional concealment,

13   promotional, et cetera.  It's distinct from the Travel Act in

14   that sense in that these are four different, very different

15   types of charges.

16         And so for there to be a conspiracy, the jury ought to

17   agree on, you know, which count or counts forms the basis for

18   the conspiracy.

19         THE COURT:  I think the reason I removed it, now that

20   I am thinking about it late last night is because of the same

21   reason I removed it originally from the conspiracy because

22   there is only one conspiracy, and so I did not include it.

23         And then so then we already covered the specific

24   intent, and I think this gets to one of the issues that was

25   raised previously, the United States' proposed instruction that

1    the state law need not be violated for them to be found guilty

2    under the Travel Act.  I am inclined to adopt this instruction.

3    Now, to the extent that it's inconsistent with an instruction,

4    can you let me know that?

5              MR. STONE:  Well, I think I raised that before is that    11:36:43

6    I think your -- the Court's definition of "promote" or

7    "facilitate" included a reference to a completed state crime,

8    and I just think that needs to be modified because under

9    controlling Ninth Circuit law the state crime need not have

10   been completed or committed for an individual to be found    11:37:06

11   guilty of the federal Travel Act crime.

12             THE COURT:  All right.  I will modify that because I

13   agree with the government, and I think what I'll do is I'm

14   going to put this instruction after the Travel Act instruction.

15   So that's the order it will be placed.    11:37:26

16             We already discussed your knowledge or intent.

17             Now, let me tell you that I did go through the

18   defendants' good faith proposed instruction.  I have given you

19   what I propose as the good-faith instruction.  I think your

20   instruction incorporates confusing language.  It's in some ways    11:37:48

21   redundant.  But in any event, the instruction that I gave to

22   you to look at is pursuant to some of the cases that I looked

23   at because there is no, of course, there is no Model

24   instruction.

25             MR. LINCENBERG:  And Your Honor, we're okay with that    11:38:20

54

language.  We would propose adding the following sentence,

which essentially combines a theory of defense with the

good-faith instruction.  It would simply be, "Each defendant

contends that he or she performed his or her duties in good

faith." Then that could be combined with this instruction as          11:38:42

part of the theory of defense instruction.

        THE COURT:  But I, you know, I don't know, is there

evidence of each defendant putting forth a contention of good

faith?

        MR. LINCENBERG:  Yeah, throughout their                        11:38:58

cross-examination.

        MR. STONE:  That's an argument, Your Honor.  Certainly

all defense counsel can argue during their closings, but that

should not be included in the instruction.

        MR. LINCENBERG:  Well, I mean, the law favors giving           11:39:11

the defense a theory of defense instruction.  It's really one

sentence that leads into the good-faith instruction.

        MR. STONE:  And I don't believe there is evidence of

it, but certainly they can argue it.

        THE COURT:  Well, I agree.  I am going to give the             11:39:26

instruction as I've provided it to you.

        So then let's go to the First Amendment instruction.

I looked at what Mr. Cambria resubmitted, and so I did make a

couple modifications to what I originally intended to give, and

so have you had an opportunity to look at the Court's newly           11:39:57

1    revised First Amendment instruction?

2          MR. CAMBRIA:  I've been trying to look at it as we've

3    been talking about these other situations.  It -- it still

4    appears to me, Your Honor, that the Court's instruction doesn't

5    distinguish between first-party speech and third-party speech,    11:40:25

6    and will allow a publisher to be prosecuted, for example, for

7    publishing an ad proposing something facially lawful with no

8    actual knowledge that the person posting the ad intends to

9    engage in something unlawful.

10         I think that the instruction on circumstantial           11:40:47

11   evidence would allow the jury to convict based on this

12   so-called extensive not-for-the-truth evidence claiming that

13   all adult advertising on Backpage was connected to unlawful

14   activity are based on the testimony of Ferrar or Hyer that all

15   the millions of ads on Backpage were prostitution ads,           11:41:10

16   something they obviously could not know.

17         It must be illegal on its face.  All the Ninth Circuit

18   cases and other cases say that, and it must necessarily be

19   illegal on its face.

20         THE COURT:  And that's what I modified the               11:41:30

21   instruction.

22         MR. CAMBRIA:  I saw the part of it, and you removed

23   the "related to," which is good.  That's consistent with Ninth

24   Circuit.

25         But what I'm concerned about is the testimony here        11:41:41

1    that's going to make it say, you know, it looks like it's

2    unprotected, is a problem, and that's why I think the

3    instruction that we've proposed, which, for example, it's

4    page 78 of what we had proposed, that, you know, that it's

5    necessarily -- it necessarily would constitute an illegal act,          11:42:10

6    if concluded, that's unprotected.  That's unprotected.  But the

7    language, "if there are plausible ways to complete a proposed

8    transaction lawfully, the speech proposing that transaction

9    concerns lawful activity," then it's protected."  I'm concerned

10   about the reference to circumstantial evidence, especially when         11:42:32

11   you're talking about third-party speech because it, you know,

12   not being the speaker you don't know -- you can't say what the

13   intent is as the speaker.  You're just the publisher.

14          So it has to be illegal on its face, and I think the

15   jury needs to be told the language that we included, that if            11:42:52

16   there are plausible ways to complete it as written, it's

17   protected.  That's the only way to give any life to the

18   presumption of protection.  There is a vast difference between

19   first-party and third-party speech, and that's why publishers

20   have, you know, special rules, and so I think that as we                11:43:15

21   proposed it and we laid out all the authorities, especially

22   from the Ninth Circuit, that support exactly what we've asked

23   for, I think that I would ask the Court to reconsider what

24   we've suggested.

25          As you read through these Ninth Circuit cases, they             11:43:42

really do not conflict with one another that, you know, a

publisher can only be liable if its unlawful on its face.  And

it's, again, not one of these situations where looks like it

might not be unprotected.  It has to on its face necessarily be

unprotected.  And that's, that's critical, I think to the

jurors, because I don't think that they should be confused and

feel that if somebody used a facially lawful ad and then the

individuals who are part of the ad committed the crime in some

way that that's a crime for the publisher, 'cause it's not.

        Third-party speech is so delicate, and you know, like

I say, I think the jury needs to have the right tools and the

tools are necessarily constituting illegal act, and then they

need to be told that there is plausible ways to perfect the act

that's advertised that it's protected.  That's the only way to

give life to the presumption.

        It's interesting because when you read some of these

cases, you know, it's almost like you need graph paper to line

them all up.  But in the end, there is no doubt the Ninth

Circuit makes it as clear as clear can be that there must be a

necessarily illegal proposition.  And you know, this testimony

from Hyer and the others, those are all prostitution ads,

that's the pit we can't fall into under the law because they

necessarily wouldn't know unless they had, you know, patronized

every single one of them.

        And the testimony we have in the case from the police

1    officers and so on saying they couldn't tell on the face of an

2    ad.  Again --

3              THE COURT:  Well, can't you argue that to them?

4              MR. CAMBRIA:  We need to argue it with the right

5    tools, and the jury needs to be told that it must necessarily          11:46:04

6    be illegal on its face, otherwise --

7              THE COURT:  And that's what the instruction says.

8              MR. CAMBRIA:  But what we've asked is that they also

9    be told that if there are other plausible ways to complete the

10   proposed transaction lawfully, the speech proposing the               11:46:27

11   transaction is then protected.

12             THE COURT:  Well, again, I think that's an argument,

13   Mr. Cambria, but I disagree with you that you they shouldn't be

14   told that they can consider direct or circumstantial evidence.

15   That's the -- that's how criminal trials work.  That's the           11:46:49

16   evidence that any jury considers; they are allowed to consider.

17   And you're entitled to say:  Look, you can also consider there

18   are other ways.  You had an expert tell you on the stand that

19   not all prostitution ads equal prostitution ads.  And so that's

20   the argument that you're entitled to make, but I don't               11:47:10

21   necessarily think that -- it's confusing to put that sort of

22   instruction or that sort of language in a jury instruction.

23             MR. CAMBRIA:  All I'm asking --

24             THE COURT:  Because frankly there's not really been a

25   lot of examination that draws that out.                              11:47:30

1        MR. CAMBRIA:  All I'm asking is that the Ninth Circuit

2    language that says "must necessarily be illegal on its face" be

3    followed.

4        The circumstantial evidence rule clashes with that

5    because what that does is consider things other than facially        11:47:45

6    what's in the statement.  That takes you outside of the

7    statement itself on its face.  The First Amendment has always

8    had very unique rules, and that's one of them.  It has to be

9    illegal on its face.  Forget circumstantial evidence.  You have

10   to go back to the face in the language, otherwise the               11:48:09

11   presumption has not been removed.

12       And here the circumstantial evidence language that you

13   use allows them to go away from the face of the ad itself and

14   make a consideration, and that's just not what the law says.

15       THE COURT:  I'll hear from the government unless any           11:48:38

16   defendants' counsel wants to chime in, and then we'll leave it

17   at that.

18       MR. KOZINETS:  Thank you, Your Honor.  May I use the

19   podium?

20       THE COURT:  Yes.                                               11:48:49

21       MR. KOZINETS:  Thank you.  Thank you, Your Honor.  The

22   United States respectfully objects to the proposed revised

23   instruction.  In particular, the sentence, "However, the First

24   Amendment does not protect speech that proposes an illegal

25   transactions on its face," the "on its face" wording,             11:49:37

1    respectfully, we submit, should be removed, for several

2    reasons.

3            Just as a general proposition, as Your Honor knows, a

4    substantial amount of the evidence in this case involves the

5    use of coded language, words like, "Greek" or "anal," codes          11:49:53

6    like "GFE" and "outcall" and so forth.  I think the jury may be

7    confused that in light of that trial evidence, they may be

8    confused about how that relates to this instruction here.

9            Also, as Your Honor pointed out, a large part of the

10   government's theory involves the defendants' use of scrubbed         11:50:15

11   ads, and I think that scrubbed, sanitized, moderated ads where

12   explicit sex-for-money terms were removed, but coded words

13   remained or other indicia of prostitution remains still would

14   not be protected under the First Amendment because as a factual

15   matter the ad still will communicate an unlawful message, an         11:50:38

16   unlawful proposition to engage in unlawful conduct.  It just

17   wouldn't do so in the very explicit, overt way that the current

18   wording of the instruction seems to suggest.

19           And I want to take you back --

20           THE COURT:  Let me ask you this because what I have in       11:51:00

21   my head is, so what your argument really is is that, you know,

22   let's have someone who is not involved in the business of

23   either law enforcement or in the sex work industry, when they

24   look at this ad, they may not see sex for money.

25           MR. KOZINETS:  Precisely, Your Honor.                        11:51:24

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.

2          MR. KOZINETS:  We are dealing with this sort of niche

3    industry.  Well, as Carl Ferrer referred to it in one of the

4    e-mails involving The Erotic Review, trying to appeal to the

5    niche industry of johns, people buying commercial sex and

6    prostitutes and pimps, people selling commercial sex.  So there

7    are three things that support omitting three words here.  One

8    is law of the case, one is trial evidence, and one is the

9    actual case law as it exists.

10          Just real briefly Your Honor, this concept has been

11   with us from the beginning of the case.  So in Doc 793, for

12   example, pages 9 through 12, the Court found that the

13   superseding indictment's allegations, if proven as true, would

14   show that the ads are protected by the First Amendment, and

15   specifically it discussed the use of coded language, so PR, PRs

16   ads, those are about ten of the charged Travel Act charges.

17   Roses as code for money.  She also used nude images, which some

18   of which the moderators removed, that coded language and images

19   don't necessarily reflect speech that on its face proposes an

20   illegal transaction.  So it kind of doesn't really jive well

21   with this new revised instruction.

22          And then as the Court went through and analyzed the

23   other charged ads, there was similar discussion of the use of

24   other coded language like "GFE, "New In Town," "in-call" and

25   "outcall," the use of disclaimers.  So you might have an ad

1    that seems innocuous through its language, but in the female

2    escort section it has these images we have been seeing.  And

3    then it says, "By the way, by responding to this ad, you agree

4    that you are not associated with law enforcement.  You agree

5    that any money that might exchange hands is just a donation."        11:53:23

6    And you know, we submit that the trial evidence shows that

7    under no stretch could that kind of language be associated with

8    really what is a legal transaction proposed on its face.

9           So we have that from Doc 793.  We have more recently,

10   Doc 1643, the Motion in Limine order that addressed several        11:53:49

11   motions in limine before trial.  If you may recall on pages 8

12   to 9 of that order, the Court, after reviewing briefing

13   addressing these issues wrote, this is the bottom page 8,

14   "Accordingly, to the extent that defendants seek to invoke

15   their First Amendment right as a defense to the allegations       11:54:05

16   that they conspired to promote or facilitate prostitution,

17   through veiled ads for prostitution, they are prohibited from

18   doing so."  They are prohibited from making that claim here.

19   So what we're talking about are veiled ads for prostitution,

20   which are not ads that on their face proposed an illegal         11:54:25

21   transaction.

22          We've got that -- we've litigated the underlying case

23   law that Mr. Cambria included with his redlined instructions

24   the other day, that was included in Doc 1657 which we argued to

25   the Court on August 18th this year.  And as you may recall,      11:54:44

UNITED STATES DISTRICT COURT

1    Your Honor, you overruled the objection set forth in that

2    document, that's at Doc 1710, the minute entry from that

3    hearing.  Mr. Cambria reurged the same set of authorities,

4    literally handed you the same brief just this past Friday in

5    connection with the Rule 29 motion, and Your Honor held that          11:55:06

6    this had already been litigated and decided.

7           And of course, when your court drafted prior versions

8    of the First Amendment instruction, you didn't include this on

9    your face type language even though the defense had requested

10   it.  So first prong is law of the case.                               11:55:23

11          Second prong is the trial evidence itself.  And for

12   that I would just briefly summarize, we heard testimony from

13   multiple victims, people who posted these ads, that they

14   essentially copied these code words from other ads.  Breahannah

15   Leary talked about copying the lingo that appeared on other           11:55:44

16   Backpage escort ads.  Again, ads that didn't contain on their

17   face, offers to engage in illegal transactions, but used coded

18   language, images, other indicia to show that they were for an

19   illegal purpose.

20          Anya Beck testified that she copied and pasted her             11:56:01

21   language from other ads in the female escort section.

22          Jessika Svengard used the word "specials" in her ad.

23          Megan Lundstrom talked about using GFE, PSE, FS for

24   full service, BBBJ, New In Town.  Again, all things, code words

25   that to the customers and sellers of commercial sex made clear        11:56:26

UNITED STATES DISTRICT COURT

1     what the purpose of the ads were.

2            We also had testimony from one of the detectives,

3     Detective Eric Murray from Phoenix, who said what is, you know,

4     one of the leading indicia of whether an ad is for prostitution

5     is whether it even appeared in the female escort section of        11:56:43

6     Backpage because the trial evidence shows that due to the

7     defendants' efforts, Backpage had created this market position

8     of being very well-known to buyers and sellers of commercial

9     sex that the female escort section was the place to go to shop

10    for prostitution.                                                  11:57:02

11           So the fact that the mere -- and then we get to one

12    other point, which sort of underscores this, and I will move

13    on.  We had the CNN broadcast, the Amber Lyon story, not

14    offered for the truth, but to show notice to the defendants.

15    She posts an ad that doesn't contain really any coded words.      11:57:20

16    It's just a picture of her in a skimpy bathing suit with some

17    sort of suggestive propositional language, but no specific code

18    word, puts it up in the female escort section, and almost

19    immediately the phone starts bringing with johns seeking

20    commercial sex, so that's the second reason.                      11:57:38

21           The third reason, Your Honor, is established law

22    itself.  If Your Honor would like me to go on, we've talked

23    about the *Pittsburgh Press* case repeatedly, Supreme Court case

24    from --

25           THE COURT:  I think it's been fully briefed.               11:57:56

1          MR. KOZINETS:  That's been fully briefed.  We also

2    think the Ninth Circuit case law that Mr. Cambria keeps

3    returning to doesn't support the propositions for which he's

4    put forth.  Valle Del Sol is a good example, page, so 709 F.3d

5    and 821, it talks about the sort of related two illegal                11:58:19

6    activity exception to First Amendment protection, and it sets

7    forth the standard in a couple different ways.  It sites to

8    another Supreme Court case, *Virginia State Board of Pharmacy,*

9    425 U.S., 72, and quotes it and says, "No First Amendment

10   protection for commercial speech if," quote, "if the proposed         11:58:43

11   transactions are themselves illegal in any way," end quote.

12   And then the Ninth Circuit also addresses the *Central Hudson*

13   formulation of the standard.  This is the Supreme Court case

14   447 U.S. 564.  *Central Hudson* talks more generally about

15   speech, quote, "related to unlawful activity as being excluded        11:59:06

16   from First Amendment protection."

17          So the *IMBd* case, not a commercial speech case,

18   contains no analysis of the use of code words.

19          The *Metro Lights* case, whether or not the speech was

20   protected, wasn't even litigated as shown in footnote 7,             11:59:26

21   parties agree the speech was protected.

22          So there is no Ninth Circuit case that I'm aware of

23   that would compel using this "on its face" language.

24          Real briefly, Your Honor, as to Mr. Cambria's other

25   points about wanting to add additional language to the               11:59:46

1    instruction, we think Your Honor is absolutely correct that

2    it's just practice in --

3        THE COURT:  Someone's alarm is going off.  Sorry.  I

4    keep hearing a buzzing or beeping.  Oh, it's your 12:00 o'clock

5    notice.                                                          12:00:07

6        MR. KOZINETS:  Sorry, I will go fast.  Circumstantial

7    evidence and direct evidence, that's just a fundamental tenet

8    of how criminal cases are decided.  Of course, the jury should

9    be allowed to consider direct and circumstantial evidence.

10        This distinction between first-party and third-party       12:00:24

11    speech I don't think this really applies here.  I think the

12    CDA, you know, was enacted to overcome kind of the common law

13    approach where publishers were held liable to the same extent

14    as speakers and kind of created a sort of distinction here, but

15    the CDA doesn't apply to what we're talking about in this case,  12:00:46

16    and so I don't think we need any additional language there.  I

17    think --

18        THE COURT:  Well, let me ask you this:  What if I,

19    in -- Mr. Cambria is concerned about the last part of this.

20    You're concerned about the "on its face" language.  In         12:01:04

21    listening to the arguments and reflecting on the testimony and

22    evidence here, because of the coded language it was heavy in

23    the case, I tend to agree with the government, but in terms of

24    removing this "You may consider any direct or circumstantial

25    evidence" sentence, I would propose removing that sentence and  12:01:26

1   ending with, "If you find that an ad proposes an illegal

2   transaction, it is not protected by the First Amendment."  I'll

3   read that again, "If you find that an ad proposes an illegal

4   transaction, it is not protected by the First Amendment."

5           MR. KOZINETS:  I think that's fine as long as "on its          12:02:02

6   face" is taken out, and as long as the -- I think the

7   instruction elsewhere will refer to direct and circumstantial

8   evidence.

9           THE COURT:  Yes.

10          MR. KOZINETS:  It's part of the standard instructions.        12:02:14

11          THE COURT:  Yes, it's part of the standard

12   instructions.

13          MR. KOZINETS:  Okay.

14          THE COURT:  In its total it will read, "All speech is

15   presumptively protected by the First Amendment to the United         12:02:23

16   States constitution, however, the First Amendment does not

17   protect speech that proposes an illegal transaction.

18   Prostitution is illegal in 49 states, and most of Nevada.  It

19   is the government's burden to establish that each of the ads

20   alleged in this case is an ad for prostitution and not for          12:02:43

21   another purpose such as an ad for an escort, dating or massage

22   service.  If you find that an ad proposes an illegal

23   transaction, it is not protected by the First Amendment."

24          MR. KOZINETS:  Okay.

25          MR. CAMBRIA:  Can I be heard, please?                         12:03:03

1          THE COURT:  Yes.

2          MR. KOZINETS:  Thank you.

3          MR. CAMBRIA:  Here's the problem.  When we look at

4   what you've said here, the first part talks about it must be

5   illegal on its face, and that's important because we're          12:03:22

6   publishers.  We're not the speaker.  All right.  So now,

7   however, the second sentence says, it is, yeah third sentence,

8   "It is the government's burden to establish that each of the

9   ads alleged in this case is an ad for prostitution."  That

10  means aside from what facially is in the ad.  That would be      12:03:45

11  okay for a first party, for the person who posted the ad.  The

12  person who actually created the ad, the government could show

13  that they actually were committing a crime.  We're talking

14  about a publisher.

15         And so you can't go away from the face of the ad, and     12:04:06

16  this language that you have here, "It is the government's

17  burden to establish that each of the ads," you're talking about

18  establishing it aside from the ad or not on the ad itself.

19  You're talking about away from the ad establishing it.

20         And what I'm saying is for publishers, the rule has to     12:04:30

21  be "on its face."  For the speaker, the person who creates the

22  ad, the government could show what they really intended, but

23  not from a publisher's standpoint.

24         So that sentence that says, "It's the government's

25  burden to establish that each of the ads in the case is an ad    12:04:50

1    for prostitution" is something that you're saying can happen

2    aside from the ad or divorced from the ad itself.  That's the

3    problem.  If it was first-party, that would be okay.

4    Third-party publisher, it's got to be on its face, and the jury

5    has to be told that it has to be on its face, because there is       12:05:13

6    no way publishers can operate except for the facial words, and

7    here what you're saying, well, if the government can show that,

8    forget what the facial words are, but the facts are this,

9    that's what they are asking to do here, and that's what this

10   sentence is allowing them to do.  When you do that, you cancel       12:05:33

11   out the "on its face" because now you've gone away from the

12   face and you're talking about another situation other than what

13   the publisher sees.

14          The publisher can only under the First Amendment deal

15   with what they are faced with, and not with what might happen.       12:05:50

16   So that takes us back --

17          THE COURT:  I guess I am curious because I thought

18   that's what the case was about that the publishers knew,

19   despite the scrubbing and the removing of modification of terms

20   and so on and so forth, that they knew that the ads were for         12:06:11

21   prostitution.  I thought that's what the case was about.

22          MR. CAMBRIA:  No, but the presumption here of

23   constitutionality; that in other words, coded language takes

24   you right out of that because the ad on its face appears to be,

25   you know, doesn't -- let's put it this way, isn't necessarily        12:06:32

1    only illegal, the ad on its face.  Here they are saying, well,

2    we can go outside the ad and talk about, here's what we think

3    this language means and all the rest of it.  That would be okay

4    for the first-party person who created the ad.  That would be

5    all right.  It's not for the publisher.  It still has to be on          12:06:52

6    its face.

7          And this second sentence takes the analysis beyond the

8    face of the ad, and that's where the problem is.  That cancels

9    out the presumption for publishers.

10          THE COURT:  I suspect, and I appreciate the argument,            12:07:09

11   Mr. Cambria, you've been very diligent about making this

12   argument throughout the course of the trial, prior to it, now

13   with your additional briefing and reiterating it, and I think I

14   read somewhere where there's a very flattering photograph of

15   you and described as the First Amendment Defender, and I will          12:07:29

16   say that I appreciate the argument.  At the end of the day,

17   though, I think it's necessary to lay out before the jury that

18   there is a First Amendment protection, but also that the First

19   Amendment doesn't apply to illegal purposes, to statements of

20   illegal purposes, and that's, I think, critical to point out.          12:07:52

21          But it is also the government's burden to show that

22   each of these ads are as purported as they've alleged to be

23   illegal.

24          MR. CAMBRIA:  But that takes away the necessarily

25   illegal language that's required.  They can -- if it's                 12:08:08

1    necessarily illegal, then it's not protected.  If there is

2    another interpretation, it is protected.  And here what you're

3    saying is they can go outside the face of the ad to prove this

4    other interpretation.

5           THE COURT:  No.  I think they are actually arguing,          12:08:30

6    this is the ad, this is what it says.

7           MR. CAMBRIA:  But they didn't create the ad.  They are

8    just the publishers, so they don't lose the presumption unless

9    on its face it necessarily and only can be illegal.  It has to

10   only be on its face.                                                 12:08:50

11          THE COURT:  And again, I appreciate the argument.  I'm

12   going to modify the instruction the way I've indicated.  I

13   suspect some day down the line, maybe I'll be retired by then,

14   three heads are better than one and they will let you know the

15   answer, Mr. Cambria, and me too.                                     12:09:07

16          MR. CAMBRIA:  We'd like to avoid that.

17          THE COURT:  Well, let me --

18          MR. FEDER:  Judge, can I make a record?

19          THE COURT:  Yes.

20          MR. FEDER:  We --                                             12:09:15

21          THE COURT:  We have our jury coming in at 1:00.

22          MR. FEDER:  If the Court would look at Docket 449.

23   That was when the government's memos about what their factual

24   findings were that was suppressed by Judge Logan talked about

25   everything that Mr. Kozinets just said, and they indicated that     12:09:35

1    the government's own investigation showed --

2              MR. KOZINETS:  I think we object to this.  He may be

3    referring to matters that Judge Logan addressed as being wholly

4    unrelated to this case.

5              MR. FEDER:  It was an order.  It was Judge Logan's          12:09:51

6    order that talks about what was suppressed, and I think talks

7    about the very things that Mr. Kozinets was just saying are

8    things that the government found were not the case that we have

9    been deprived of using.  But in relation to this Court's change

10   to this First Amendment instruction, I would ask the Court to        12:10:09

11   consider what's been suppressed.

12             THE COURT:  Consider what was that last statement?

13             MR. FEDER:  What has been suppressed and what the

14   government's assertions were that were in those documents that

15   were suppressed.                                                     12:10:23

16             MR. CAMBRIA:  The memos.

17             THE COURT:  You want me to go back and reopen the file

18   and look at some suppressed memos?

19             MR. FEDER:  If the Court is going to allow this kind

20   of instruction on the First Amendment to go forward, the Court       12:10:32

21   should consider the consequences of what the government found

22   and then they are going to basically argue to the contrary.

23   It's a Brady violation and I think it goes to what the Court is

24   going to put in.

25             THE COURT:  Well, it's a little late now to bring an       12:10:48

1    allegation of a Brady violation.  Let me say this one thing,

2    and I told you you'd have the final word.  Again, we have our

3    jury coming in at 1:00 o'clock, and we are going to proceed to

4    instructing the jury.  I need to have this done by that time.

5    I don't want them waiting around.                                    12:11:05

6           Now, my decision on this jury instruction is based on

7    the totality of the case that was presented in court to this

8    jury, not anything hidden in the docket.  And so that is why

9    I'm proposing this modified First Amendment instruction, and it

10   will be given in the way that I've indicated.                        12:11:33

11          All right.  Now, the last matter I wanted to raise --

12          MR. LINCENBERG:  Is the Court done with jury

13   instructions?

14          THE COURT:  No, I am not.  The last matter, well, one

15   of the last matters, I guess, is the government proposed a        12:11:50

16   "Knowingly Proof of Knowledge or Intent" instruction.  I lifted

17   that second sentence, which begins with, "In determining the

18   issue of what a person knew or what a person intended at a

19   particular time," and I inserted it into the 11.1 Conspiracy

20   Elements instruction after the paragraph that begins, "One       12:12:27

21   becomes a member of a conspiracy," because the second element

22   there is, "Second, the defendant became a member of the

23   conspiracy knowing of at least one of the objects."  And so do

24   you follow that?  So it comes before the final paragraph which

25   reads, "An overt act does not itself have to be unlawful."         12:12:55

1          So just before that there will be a paragraph that

2    begins, "In determining the issue of what a person knew or what

3    a person intended," that full statement or full statement.

4          Does that make sense?

5          MR. LINCENBERG:  Yes.                                    12:13:23

6          THE COURT:  With that, we covered your Good Faith.

7    Was there any other matter that I failed to address?

8          MR. LINCENBERG:  Yes.

9          MR. STONE:  Yes, Your Honor.  Mr. Feder proposed a

10   character --                                                   12:13:46

11         THE COURT:  Yeah, I saw that this morning, and I have

12   already given you -- oh, maybe I didn't.  I didn't cover it.  I

13   gave you the -- no, I thought we did.  Good Faith, and then you

14   gave me a new instruction.  I don't know when this was filed,

15   but did you have an opportunity to look at it?                 12:14:04

16         MR. STONE:  Yes, Your Honor, and we would object.

17   This is an instruction that, as you can see from the supporting

18   authorities, comes from the Fifth Circuit.  If you look up the

19   Ninth Circuit Model Instructions, this is 3.4 of the Ninth

20   Circuit, Character of Defendant.  The comment by the committee  12:14:23

21   is that the committee believes that the trial judge need not

22   give an instruction on the character of the defendant when such

23   evidence is admitted under Federal Rule of Evidence 404(a)(1)

24   because it adds nothing to the general instructions regarding

25   the consideration and waiving of evidence, so we would ask the  12:14:41

```
 1    Court to follow the Ninth Circuit here and not give this

 2    separate Character Evidence instruction.

 3              MR. FEDER:  May I be heard?

 4              THE COURT:  Sure.

 5              MR. FEDER:  "Need not."  Doesn't say "don't."  The          12:14:52

 6    disparity between circuits indicates that at least some

 7    circuits believe this ought to be sketched out of the regular

 8    credibility instruction.  There are four or five different

 9    Federal Rules of Evidence that talk about character evidence,

10    and the comment in the Ninth Circuit doesn't mean that the         12:15:10

11    Court cannot.  In this particular case, why it is necessary is

12    the Court has not allowed the defense to put on a variety of

13    defenses that it would have ordinarily such that character

14    evidence in this case is accentuated -- of accentuated

15    importance to Mr. Spear given the orders of the Court and,         12:15:32

16    again, it's allowed in one circuit, there shouldn't be a

17    disparity between the circuits.

18              THE COURT:  All right.  I am not going to adopt it.  I

19    am going to go along with the guidance of the Ninth Circuit,

20    and I also think the instructions fairly cover the area.           12:15:48

21              Mr. Lincenberg.

22              MR. LINCENBERG:  Yes, Your Honor, I think we need a

23    2.12 instruction, Evidence for Limited Purpose.

24              THE COURT:  What was the limited purpose evidence?

25              MR. LINCENBERG:  There were many instances where there    12:16:03
```

1    were hearsay objections.  The government was introducing them

2    as not for the truth.  I think that if the instruction simply

3    says, "You are about to" -- well, this says, "You are about to

4    hear evidence."  It would be, "You have heard evidence that was

5    offered for a limited purpose and not for the truth.  I                    12:16:23

6    instruct you that this evidence is admitted only for the

7    limited purpose and, therefore, you must consider it only for

8    that limited purpose."

9            We submitted it.  It's at page 15 of what we

10   submitted.                                                                 12:16:41

11           THE COURT:  How would you describe the evidence?

12           MR. LINCENBERG:  How would I -- that it was offered

13   not for the truth.  So "Throughout this case, you have heard

14   evidence that was received for the limited purpose of showing

15   that defendants or other persons were aware of certain claims            12:17:00

16   by third parties."  We had in the proposed instruction:  The

17   evidence includes exhibits, blank, to be filled in.  I propose

18   at this stage the Court is not going to want to go through all

19   of the exhibits.

20           If the Court simply says, "That evidence includes            12:17:15

21   exhibits and testimony that consisted of reading the content of

22   those exhibits or characterizing the witness' view of those

23   contents, I instruct you that the evidence was admitted only

24   for the limited purpose of showing notice of those claims and,

25   therefore, you must consider it only for that limited purpose          12:17:34

1  and not for any other purpose.  In particular, you must not

2  consider that evidence for the truth of the claims asserted in

3  the evidence as those claims may not be true."

4          THE COURT:  That's extraordinarily confusing just

5  listening to it.

6          Mr. Stone.

7          MR. STONE:  I agree that it's confusing.  It's also

8  the last part "as those claims may not be true" should

9  certainly be stricken.  That's not part of any Model

10  instruction.

11          On the whole, because it doesn't reference individual

12  exhibits now, I don't see what the -- what the jury is going to

13  get out of this, but if the Court is inclined to give it, I

14  would suggest just giving the Model instruction language,

15  nothing else.

16          MR. LINCENBERG:  Your Honor, we could flag the

17  particular exhibits.  It's replete throughout the trial now.

18          THE COURT:  No.  It's just too cumbersome.  I am not

19  going to do that.

20          MR. LINCENBERG:  I agree.

21          THE COURT:  Give me your proposed language.  I don't

22  think I am going to give it, though.

23          MR. LINCENBERG:  The Court has our proposed language.

24  It was sent to the Court, and we think it's appropriate.  If

25  the Court just wants to give the Model instruction, the Court

12:17:51

12:18:07

12:18:25

12:18:43

12:18:59

```
1    can give a Model instruction, but I think our language is more
2    complete.
3            THE COURT:  If you just give the Model instruction the
4    way that it's worded, it's confusing as well.  It doesn't tell
5    the jury anything.                                              12:19:12
6            MR. LINCENBERG:  Well, that's why we explained it
7    further.  The jury throughout this case heard -- the Court
8    admitted a lot of exhibits that were not for the truth of the
9    matter but to put our clients on notice, and that's important
10   to instruct the jurors that they should not be considering     12:19:31
11   those exhibits for the truth, and I think it's important
12   because I think that the government is going to be arguing from
13   the various exhibits that they -- that they -- as if it's the
14   truth.
15           Think about, for example --                            12:19:52
16           THE COURT:  Let me find it.  I will have my law clerks
17   find it and I will look at it, but --
18           MR. STONE:  Your Honor, may I add just a little bit?
19           MS. BERTRAND:  May my client step out to use the
20   ladies' room and come right back?                              12:20:12
21           THE COURT:  Yes.
22           MR. STONE:  I think under the --
23           THE COURT:  No, I think actually, this is a limiting
24   instruction and so I'm not going to give it.  All right.
25           MR. LINCENBERG:  All right.                             12:20:25
```

UNITED STATES DISTRICT COURT

1    THE COURT:  We will refine those instructions as we've

2  discussed and I will submit them as copies to you so you can go

3  along with them, take a close look at them, and we will

4  reconvene at 1:00 o'clock.

5    MR. LINCENBERG:  Your Honor, is the Court going -- the      12:20:39

6  Court is going to give a set of instructions to the jurors, I

7  assume without the title of the sections of the instruction?

8    THE COURT:  Yes.

9    MR. LINCENBERG:  Last point, there was some Rule 29

10  things to address.  Technically the parties haven't closed.  We   12:20:54

11  want to address them.  I know the Court wants to -- it's 12:20

12  and the Court wants to keep to a timetable, but there are some

13  important matters.  We can quickly add our point if the

14  government is deemed closed in their case.

15    THE COURT:  I don't know what the question is.  What      12:21:17

16  is your question?

17    MR. LINCENBERG:  If the Court will treat it -- the

18  parties have indicated there is no more witnesses.  It's not on

19  the record before the jury that the cases are closed.  The time

20  for reasserting Rule 29 is after it's closed.  There is one      12:21:30

21  additional argument that we would make.  We just want to make

22  sure that the record was closed.

23    MR. BERRY:  I think what he is trying to do is

24  provisionally close, and United States has no objection to

25  putting on the record right now outside the presence of the      12:21:45

1   jury that we could deem this moment where the defense has

2   rested, the United States has closed, they can make their

3   renewed Rule 29, and we would stand on our previous argument

4   and then we can move forward.

5           MR. LINCENBERG:  And there is one argument then that          12:21:59

6   we need to make.

7           THE COURT:  Well, it's pro forma because yesterday, if

8   you were listening to me yesterday, we will bring the jury in,

9   I will ask you to call your next witness.  Somebody from the

10  defense has to stand up and say, there are no other witnesses,          12:22:14

11  we close our case, or whatever you're going to say.  I am going

12  to turn to the government, ask them for the rebuttal case.

13  They are going to tell me, "I have no rebuttal case."  Then I

14  will close up.  So that's pro forma.  And then I intend to then

15  move towards the jury instructions.                                     12:22:32

16          MR. PANCHAPAKESAN:  Your Honor.

17          THE COURT:  So if you wish to make an argument now,

18  make it.

19          MR. PANCHAPAKESAN:  We renew the Rule 29 argument that

20  was made last week.                                                     12:22:40

21          Two, in the verdict form we discovered an issue, I

22  think Ms. Perlmeter raised with chambers, on two of the counts,

23  Count 69 and 70 of the money laundering counts, on Count 69 the

24  bank number I guess in the indictment was wrong, and then on

25  Count 70 the bank account was wrong.  It should have been BMO           12:23:00

```
1    Harris, but it says Bank of America, so our position is that

2    those ought to be dismissed given the faulty indictment.

3                THE COURT:  I don't have -- I have the Count 70

4    change.  What was the other one?

5                MR. PANCHAPAKESAN:  Count 69, Bank of America Account      12:23:32

6    9463 is what is alleged in the indictment, but it should be

7    1793.

8                MR. STONE:  Your Honor --

9                THE COURT:  So that count, actually, the correct

10   account is transposed I guess at Count 70, so Count 69 should       12:23:50

11   be the count 1793?

12               MR. PANCHAPAKESAN:  Right.  So as to Count 69, the

13   indictment alleges Bank of America Account 9463, it in fact is

14   1793.  Count 70, it's not Bank of America; it's BMO Harris.

15   Our view is that because of that the government hasn't proven       12:24:10

16   their indictment as to those two counts.

17               MR. STONE:  Your Honor, I think we are confused a

18   little bit here.  Count 69 had the wrong account number on the

19   indictment.

20               THE COURT:  I recall that testimony.                    12:24:26

21               MR. STONE:  Mr. Thai's testimony was pretty clear

22   there was four other digits rather than the one in the

23   indictment.  Everything else was the same.  It was still a

24   Michael Lacey, money moved on the same date.  This happens

25   often.  The verdict form can conform to the evidence at trial.     12:24:40
```

1          As I understand, Count 70, and by the way, 9463 is the

2   correct account number.  I think on the indictment somebody has

3   Doc 230 in front of them.  I think it was 1793, so the correct

4   one should be 9463.

5          Count 70 in the indictment I think is correct.  We          12:24:58

6   just had it wrong on the verdict form, so we'll just need to

7   modify the verdict form to conform to the indictment.

8          MR. PANCHAPAKESAN:  The other one is Count 73, which

9   is -- it's not TD Ameritrade; it's UBS, but it's the same

10  argument.                                                         12:25:15

11         MR. STONE:  Again, we screwed up the verdict form and

12  we need to change it on the verdict form to conform to the

13  indictment.

14         THE COURT:  I'm at a loss for words as why we are

15  doing this at this hour with these verdict forms that have been   12:25:28

16  gone through since last week.  I will take that under

17  advisement as well.  Correct the verdict form.

18         Liliana, we're have to tell that jury to come in at

19  1:15.  We're not going to be able to start at 1:00 o'clock.

20         MR. CAMBRIA:  Your Honor, may I ask a question?  The       12:25:57

21  schedule today, are we going to get revised instructions to

22  review?  Are you planning on starting with the government's

23  summation or?

24         THE COURT:  Yes.  As I said yesterday, we are going to

25  go through the process.  Everybody is going to close their case   12:26:16

83

1    and rest.  I'm going to immediately start instructing the jury.

2    Depending on how long that takes, I might take a small break,

3    let the government start its close.  According to Mr. Rapp,

4    that's going to be roughly an hour and a half.  Then depending

5    again if we're close to the 4:00 o'clock hour, 3:30, I'm going    12:26:40

6    to expect someone from the defense counsel to start their

7    closing.

8           MR. CAMBRIA:  That's what I wanted to ask because I

9    don't think that -- let's put it this way, I am asking that we

10   not be in a position where we only start our summation and then   12:27:03

11   we have to stop and wait until Tuesday.

12          THE COURT:  We have tomorrow.

13          MR. CAMBRIA:  Wait until tomorrow to finish it.  If it

14   turns out -- I just don't think it should be stopped and then

15   restarted tomorrow and let it all happen at once, and that's      12:27:23

16   the reason why I'm asking because it will probably be me.

17          THE COURT:  Well, I guess, Mr. Lacey, it really

18   depends how long we go.  We are already on a delayed start.

19          MR. CAMBRIA:  That's why I am saying, it looks

20   unlikely that it would be something I could finish.  I would be   12:27:40

21   starting it, breaking it up.  I would rather --

22          THE COURT:  You might want to be refreshed, don't you

23   think?

24          MR. CAMBRIA:  What I ask, Your Honor, most

25   respectfully --                                                    12:27:52

1          THE COURT:  You want to start tomorrow.

2          MR. CAMBRIA:  Start tomorrow, sure, so I can do it all

3    at one time.

4          THE COURT:  Spit it out there, Mr. Cambria.

5          MR. CAMBRIA:  Trying.                              12:28:00

6          THE COURT:  Any objection?

7          MR. STONE:  No, Your Honor.

8          THE COURT:  All right.  There we have it.

9          MR. CAMBRIA:  Thank you.

10         THE COURT:  Ask the question and you'll get the      12:28:06

11   answer.

12         MS. BERTRAND:  What time would the Court like the

13   lawyers back here?

14         THE COURT:  Assuming you're going to wait around for

15   the delivery of the hard copy of the instructions, if I am  12:28:19

16   asking the jury to come in at 1:15, be here before that,

17   please.

18      (Proceedings concluded at 12:28 p.m.)

19

20

21

22

23

24

25

1

2

3                      **C E R T I F I C A T E**

4

5

6          I, HILDA E. LOPEZ, do hereby certify that I am duly

7   appointed and qualified to act as Official Court Reporter for

8   the United States District Court for the District of Arizona.

9          I FURTHER CERTIFY that the foregoing pages constitute

10  a full, true, and accurate transcript of all of that portion of

11  the proceedings contained herein, had in the above-entitled

12  cause on the date specified therein, and that said transcript

13  was prepared under my direction and control.

14         DATED at Phoenix, Arizona, this 27th day of October,

15  2023.

16

17

18                              s/Hilda E. Lopez_____

19                              HILDA E. LOPEZ, RMR, FCRR

20

21

22

23

24

25