1

**UNITED STATES DISTRICT COURT**


**FOR THE DISTRICT OF ARIZONA**


_____


| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 2, 2023 |
| Michael Lacey, et al. | ) | 10:03 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |



**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 29 - AM SESSION**

**(IN-COURT HEARING)**


Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

<pre>
 1                    **A P P E A R A N C E S**

 2

    For the Government:
 3      UNITED STATES ATTORNEY'S OFFICE
        By:  **Mr. Kevin M. Rapp, Esq.**
 4           **Mr. Peter S. Kozinets, Esq.**
             **Mr. Andrew C. Stone, Esq.**
 5           **Ms. Margaret Wu Perlmeter, Esq.**
             **Mr. Daniel G. Boyle, Esq.**  (Los Angeles, CA)
 6      40 North Central Avenue, Suite 1200
        Phoenix, Arizona 85004
 7      kevin.rapp@usdoj.gov
        peter.kozinets@usdoj.gov
 8      andrew.stone@usdoj.gov
        margaret.perlmeter@usdoj.gov
 9      daniel.boyle2@usdoj.gov

10   For the Government:
        UNITED STATES DEPARTMENT OF JUSTICE
11      By:  **Mr. Austin Berry, Esq.**
        1301 New York Avenue, NW, 11th Floor
12      Washington, DC 20005
        austin.berry2@usdoj.gov
13
     For the Defendant Michael Lacey:
14      LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
        By:  **Mr. Paul J. Cambria, Jr., Esq.**
15      42 Delaware Avenue, Suite 120
        Buffalo, NY 14202
16      pcambria@lglaw.com

17   For the Defendant Scott Spear:
        FEDER LAW OFFICE, P.A.
18      By:  **Mr. Bruce S. Feder, Esq.**
        2930 East Camelback Road, Suite 160
19      Phoenix, AZ 85016
        bf@federlawpa.com
20      - and -
        KESSLER LAW OFFICE
21      By:  **Mr. Eric Walter Kessler, Esq.**
        6720 N. Scottsdale Road, Suite 210
22      Scottsdale, AZ 85253
        eric.kesslerlaw@gmail.com

23

24

25
</pre>

```
 1    For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2        LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq. (Appears by Zoom)
 3             Mr. Gary S. Lincenberg, Esq.
          1875 Century Park E, Suite 2300
 4        Los Angeles, CA 90067
          gpanchapakesan@birdmarella.com
 5        glincenberg@birdmarella.com

 6
      For the Defendant Andrew Padilla:
 7        DAVID EISENBERG, P.L.C.
          By:  Mr. David S. Eisenberg, Esq.
 8        3550 North Central Avenue, Suite 1155
          Phoenix, AZ 85012
 9        david@deisenbergplc.com

10
      Also Present:
11
      John Brunst and Scott Spear appear by telephone
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          **P R O C E E D I N G S**

2

3              (Proceedings commence at 10:03 a.m.)

4         THE COURT:  All right.  Please be seated.  All right.

5    Before -- before we turn to the forfeiture proceeding, and I          10:04:08

6    note the -- we don't have Mr. Eisenberg or Ms. Bertrand, and

7    I'll make inquiry about that in a few minutes.  We don't have

8    Mr. Spear either or Mr. Brunst, but I understand they are

9    present by telephone.

10        I wanted to go back to the motion that Mr., or the             10:04:41

11   objection, I should say, that Mr. Kessler raised at the end of

12   the government's rebuttal, and it was in relation to

13   Mr. Berry's statements about why not call other witnesses.  And

14   I looked at the transcript, and the particular statement that

15   Mr. Berry made was, "First of all, why not call a couple of        10:05:20

16   employees that maybe you didn't throw $5,000 out?  And two, why

17   not call employees that know something about you and your

18   company?  He didn't," meaning Mr. Lacey.  I'll take that issue

19   first, and that was what prompted Mr. Kessler's objection.

20        In looking at that statement, and I tried to find             10:05:55

21   other similar statements like that, and I did not find any, but

22   I'm guided by the Ninth Circuit case, *U.S. vs. Cabrera*, 201

23   F.3d 1243, and in that case it sets forward that a prosecutor's

24   comment on a defendant's failure to call a witness does not

25   shift the burden of proof and is, therefore, permissible, and     10:06:28

1  so long as the prosecutor does not violate the defendant's

2  Fifth Amendment right by commenting on the defendant's failure

3  to testify.  So in that regard, I do not find that Mr. Berry

4  crossed the line.

5          There was another statement that Mr. Kessler raised in          10:06:54

6  objection to, and it related to balancing the witnesses, and

7  Mr. Berry did indeed say, "Let's balance the defense witnesses

8  against the prosecution witnesses."  And then he then goes

9  forward to describe Mr. Ferrer, Mr. Hyer, Mr. Adams, and the

10  quality, as he puts it, of their testimony and versus the          10:07:24

11  quality of the defense witnesses' testimony, including the

12  expert.  And so in that regard there wasn't a burden shifting

13  in the Court's view, so I don't find that error occurred there.

14          And so I think I covered the crux of Mr. Kessler's

15  objection.          10:08:00

16          MR. FEDER:  Judge, we just got the transcript, got the

17  transcript last night, and there's --

18          THE COURT:  As did I.

19          MR. FEDER:  -- another issue, which I think Mr. Berry

20  contends, and that is his commentary about the 50 ads that the          10:08:14

21  defendants do not have to basically be proven to have seen the

22  ads or known about the ads, which, I think is afoul on not only

23  on the instructions, but undermine all motions of knowledge,

24  knowledge and therefore intent.  Give me a moment.  Maybe

25  Mr. Kessler can find the page for you to look at, 'cause he was          10:08:38

going in and out about the conspiracy charge, but he seemed to

indicate that as to the 50 distinct ads charged, I think that

the defendants didn't have to -- what page is this?

MR. STONE:  I can short-circuit this, if you want.

MR. FEDER:  It starts at page 59, 5-9.  We're trying

to look at this on a cell phone, so...

MR. STONE:  I would just stipulate that that is what

Mr. Berry said, and that has been our position the entire five

years of this case is that defendants do not need to have

direct knowledge of the 50 ads that are listed in the

indictment.

And the Court agrees in Doc 793, the order on the

Motion to Dismiss, Judge Brnovich went through the allegations

in the superseding indictment that never state that these

defendants saw or knew about these particular ads.  Rather, it

was the policies and the implementation of those policies and

the management of the business that led to these 50 ads, these

sampling of ads that were chosen to be published.  And Judge

Brnovich ruled, as did Your Honor in subsequent orders, that

the facts in the superseding indictment, if proven to be true,

allege that these defendants violated the Travel Act.

Defendants have now for five years continued to posit

that their clients needed to have knowledge of these ads,

otherwise they could not be found guilty, and that just isn't

the law of the case.  This case is not about whether or not

1    these defendants knew of these particular ads.  It's about

2    everything that we've presented, which is these prostitution

3    marketing strategies in the first phase of the company, and it

4    is their maintenance of the website in the second phase, and it

5    will be up to the jury, based on these jury instructions, which    10:11:08

6    do not state that these defendants needed to have personal

7    knowledge of these ads, to determine whether the evidence at

8    trial proves that these individuals are guilty or not guilty.

9         And I have more to say, but I don't think I need to,

10   Your Honor, unless you have questions.    10:11:27

11        THE COURT:  Well, again, here it's rather unfair for

12   me to make a ruling before I've seen the actual transcript

13   language that Mr. Berry used and the objections about them.

14   Though all defense counsel have had this ongoing agreement that

15   one objection made is an objection for all, I do not have the    10:11:54

16   presence of two defendants or two defense lawyers, and so to

17   the extent that they wish to make a similar or adjacent

18   objection, I think we should permit them to do so.

19        But at this juncture, what I will say is the jury has

20   been instructed on how to apply the evidence and testimony to    10:12:18

21   the particular ads in question, direct and circumstantial

22   evidence, and so the jury has been so instructed.

23        And so beyond that, that's all I'll say because I do

24   want to see if Mr. Eisenberg, Ms. Bertrand wish to join in or

25   make an additional argument, and then we'll proceed further.    10:12:50

1          Let me turn now to the issue of forfeiture.  I thought

2     frankly this was going to be a cut and dry issue.  I only asked

3     you to brief the question about whether or not you thought the

4     defendants were entitled to a jury determination of the

5     forfeiture allegations, but I want to put a couple of things          10:13:17

6     before you because I don't think this is a cut and dry issue,

7     and I understand Mr. Panchapakesan is taking the bulk of this

8     issue for the defendants.

9          So the superseding indictment alleges a forfeiture

10    allegation, a forfeiture Allegation 1 under 18 U.S.C.                  10:13:37

11    981(a)(1)(C) and 28 U.S.C. 2461(c).  Now, 981 is a civil

12    forfeiture provision, and it essentially refers to any

13    property, real or personal, derived from proceeds traceable to

14    a violation.  Now, 2461(c) basically states that if a person is

15    charged in a criminal case for which the civil or criminal        10:14:24

16    forfeiture of property is authorized, the government may

17    include notice of the forfeiture in the indictment or

18    information pursuant to the Federal Rules of Criminal

19    Procedure.  And if the defendants are convicted of the offense

20    giving rise to the forfeiture, the Court shall order the          10:14:44

21    forfeiture of the property as part of the sentence in the

22    criminal case.

23          There's a distinction, though, in the superseding

24    indictment because Allegation 1 is to Counts 2 through 51, and

25    Allegation 2 only is filed under 981(C), excuse me,                10:15:06

1    981(a)(1)(C), which is the civil forfeiture proceeding.  And

2    then when you look at the rule on criminal forfeiture, it

3    basically states that as soon as practical after a verdict of

4    finding of guilty on any count in which a forfeiture is sought,

5    the Court must determine what property is subject to                 10:15:37

6    forfeiture, and nowhere in the rule does it say that it is a

7    jury determination.

8          It also goes on to say that the Court must determine

9    the nexus between the property and the offense, and the amount

10   of money the defendants must pay.                                    10:15:59

11         Now, here it is true that the government submitted a

12   jury instruction, and I have those instructions on, I believe

13   it was August the 18th.  I have, by the way, never seen an

14   opposing motion by the defendants or a separately filed

15   defendants' list of instructions.  I don't know if silence         10:16:25

16   means you agree with what was proposed by the government, and I

17   will hear that in a moment.

18         So it was only last week toward the end of the week

19   that I was informed by the government that the defendants

20   wished to have the jury determine forfeiture.  As we sit here       10:16:47

21   today there is no special verdict form.  And indeed, the jury

22   instructions that the government has proffered are incomplete.

23   They are not perfected.

24         And I go back to the conflicting law, which really

25   begins in Phillips, and it seems to indicate the treatment, the    10:17:16

1    different treatment of property versus financial assets.  It

2    seems clear to me that the case law at least governs that the

3    property determination of whether or not that's forfeitable is

4    the jury determination, whereas I believe it gives the Court

5    the ability to determine the financial assets.                    10:17:48

6         So I have a couple of questions I want to ask.  Let me

7    start with the government.  So why the two distinctions in the

8    two forfeiture allegations?  And I note, property, substantial

9    property and assets are listed under both, so why the

10   distinction?                                                       10:18:16

11        MR. BOYLE:  Yes, Your Honor.  The distinction is

12   because under the money laundering statute we alleged

13   forfeiture under 982(a)(1) for money laundering property.

14   Under for the Travel Act property, we've alleged forfeiture

15   under 981, and the functional reason for that is it's a broader 10:18:32

16   forfeiture statute, Your Honor, and 981(a)(1)(C) includes any

17   proceeds of a violation of the Travel Act or a conspiracy to

18   commit the same.

19        And as the Court noted, under 2461 where civil

20   forfeiture would be appropriate or permissible, that forfeiture 10:18:52

21   under such a statute can be included in a criminal indictment.

22   I'd also note for the Court, we did file Supplemental Jury

23   Instructions and a Forfeiture Special Verdict Form last night.

24   I apologize for filing them late last night, Your Honor, and I

25   concede --                                                         10:19:11

11

1        THE COURT:  Let me just say, it's astonishing to me

2   the type of delay that has gone on in this case.  You've had it

3   for, what, since 2018, and you're only now telling me last

4   night you filed these new instructions and the special verdict

5   form?                                                            10:19:40

6        MR. BOYLE:  As the Court noted, Your Honor, we filed

7   instructions some months ago.  Last night we filed updated

8   instructions.  And I concede, Your Honor, we would have to

9   conform them again because we have written them as if all

10  defendants are convicted on all counts, and we simply don't     10:19:55

11  know if any defendants will be convicted, if there will be

12  partial convictions.  They would have to be conformed after any

13  verdict.  What we've attempted to do is provide the best

14  versions we can now, which we can then conform once we know

15  what the jury's verdict look like.  I can concede, they can't    10:20:10

16  be complete until after a verdict comes back, Your Honor.

17        THE COURT:  Did you share those with the defense

18  counsel last night too?

19        MR. BOYLE:  Yes, we did, Your Honor.  Defense counsel

20  has had our earlier version from when we filed it, and we       10:20:22

21  shared the versions that we filed last night with defense

22  counsel, Your Honor.

23        I understand the Court's frustration, Your Honor.  The

24  government --

25        THE COURT:  No, you really don't.  You truly don't.       10:20:45

UNITED STATES DISTRICT COURT

1           MR. BOYLE:  My apologies, Your Honor.

2           THE COURT:  It's poor practice on all levels.  Notice

3   to the opposing counsel, their clients, to the Court, it's

4   beyond me.  I don't know what causes this, but when you have

5   these types of mistakes, they create extra work for people when          10:21:14

6   we have all of these moving parts.  It's just -- it's beyond

7   me.  I don't -- I frankly am at a loss for words.

8           MR. BOYLE:  Your Honor, I don't know that -- well, the

9   government is not seeking to retain the jury.  We only found

10  out from the defense they were seeking to retain the jury last          10:21:40

11  week --

12          THE COURT:  Let me make my inquiry.

13          MR. BOYLE:  Understood, Your Honor.

14          THE COURT:  Mr. Stone last week indicated that there

15  were two witnesses that the government intended to call in the          10:22:00

16  forfeiture case.  Were those two witnesses on the original

17  witness list that was vetted to this jury?

18          MR. BOYLE:  Yes, Your Honor, and they have already

19  testified once.  That would be Mr. Ferrer and former Agent Quoc

20  Thai.  I expect their testimony would go no more than          10:22:21

21  90 minutes combined, most likely less, and we have --

22          THE COURT:  For the government.

23          MR. BOYLE:  I can't speak to any cross-examination.

24  We have disclosed those two witnesses to the defense.

25          THE COURT:  Well, and here too, I will throw this out          10:22:41

1    to you, the jury was screened not as Ms. Bertrand thought

2    yesterday, but they are only screened for their ability through

3    the 9th, and so what happens when we get toward that date and

4    they maybe have arrived at some sort of verdict, or maybe not,

5    what do we do in that circumstance?                              10:23:10

6            MR. BOYLE:  As to guilt, I would defer to Mr. Stone,

7    but if the question is asked of holding them for forfeiture,

8    the government's position is that the defendants do have a

9    statutory right to retain the jury.  If the jury loses a

10   quorum, there is case law saying the Court could request or     10:23:27

11   empanel a new jury, and we would have to present evidence to

12   that new jury.  That's obviously not our preference and that's

13   why we will attempt to move as expeditiously as possible if the

14   defendants continue to retain the jury.

15           THE COURT:  All right.  Let me hear from                 10:23:46

16   Mr. Panchapakesan.

17           MR. PANCHAPAKESAN:  Good morning, Your Honor,

18   Gopi Panchapakesan for the --

19           THE COURT:  I frankly don't know where to look.  I am

20   looking at -- okay.  Let me make sure that I'm looking at you.   10:23:57

21           MR. PANCHAPAKESAN:  So my understanding, a few points,

22   one is under Rule 32.2(B)(5)(A), the timing on making the

23   election, as I understand it for a jury in connection with a

24   forfeiture, would have to be done prior to jury deliberating as

25   opposed to some earlier point.                                   10:24:23

1          THE REPORTER:  Not hearing through my earpiece.

2          THE COURT:  We're trying to accommodate our court

3    reporter.  So standby one second.  Test.  Say "test,"

4    Mr. Panchapakesan.

5          MR. PANCHAPAKESAN:  Testing.                          10:25:16

6          THE REPORTER:  It's still not coming out really clear.

7          COURTROOM DEPUTY:  Can you speak again,

8    Mr. Panchapakesan?

9          MR. PANCHAPAKESAN:  Testing.  Yes.  Thank you.

10          THE COURT:  We're good.                               10:25:54

11          MR. PANCHAPAKESAN:  Okay.  All right.  So Your Honor,

12    I will sort of take the Court's question one by one.  First, in

13    connection with the election of a jury on the forfeiture phase,

14    in my opinion is under Rule 32.2(B)(5)(A), that election is

15    typically made towards right before the jury deliberates.  And   10:26:12

16    so I think it was Mr. Stone or Mr. Berry had asked us, I think

17    this was last week or the week before, and that's when we made

18    the election, the government, the Court, that we intended to

19    proceed by jury as to the forfeiture phase.

20          Second is, you know, as to this issue of jury              10:26:35

21    instruction and verdict form, we spoke to Mr. Boyle about this

22    earlier in the week.  The government indicated that they intend

23    to resubmit a revised instructions and a verdict form, which

24    they did last night.  We asked for a word count, which the

25    government provided to us, so we intend to submit some            10:26:56

UNITED STATES DISTRICT COURT

1   objection and redline the instructions, and we can do that, you

2   know, as soon as the Court wants that to be done.

3          And in terms of the witnesses and exhibits, my

4   understanding is the government has two witnesses.  I think

5   they have an additional sort of tracing exhibits, or the charts          10:27:16

6   that Mr. Thai used during his testimony, but these are a

7   different set, I think, that tie some of the counts the

8   government is seeking to forfeit.  We received that, I think

9   yesterday, and I am not aware of any other exhibits the

10  government intends to use.  That's what we believe and          10:27:35

11  provided.

12         In terms of the jury and them being time qualified,

13  there is a couple of potential options.  I think one is, you

14  know, the Court can make an inquiry as to whether and to what

15  extent any of the jurors have the ability to stay longer.  I          10:27:55

16  think, you know, we need to be cautious about how and when and

17  how we make that inquiry.  I don't know that we -- at least as

18  far as the defense is concerned, we wouldn't want to signal

19  that there is potential forfeiture because I think that might

20  imply guilt, and it may potentially incentivize them to rush          10:28:17

21  deliberations, but I would defer to the Court in terms of

22  how -- if we make an inquiry, how we do so.

23         The other potential option if less than a quorum of

24  the jurors are available, then I think the defense would have

25  to come to a decision as to whether we're willing to stipulate          10:28:35

1   to a smaller jury.  I haven't asked my colleagues about that,

2   but that would be another option in terms of keeping the jury.

3          THE COURT:  Have either of you contemplated

4   bifurcating the property from the assets?  Because it seems to

5   me that at least in the first instance the property question is          10:29:03

6   a jury question.  Ultimately my understanding of the law is

7   that this court, assuming that there are properties to be

8   forfeited, has to then make the determination relative to any

9   third-party interests that may arise, but it seems very clear

10  with regard to the statute that the, at least the assets, the          10:29:37

11  financial proceeds, should be a court determination, and it

12  might be a little bit more manageable in terms of the jury's

13  time and their ability to deliberate on what are at least 26

14  listed separate properties.

15         MR. BOYLE:  So we are, and I apologize for the recent          10:30:12

16  filing of our Proposed Special Verdict Form.  We've only

17  identified about 40 items of what we call specific property.

18  That's a combination of, I think, three or maybe five or six

19  real properties, and the rest are financial accounts.  However,

20  our read of Rule 32.2, Your Honor, is that while the Court does          10:30:30

21  have the decision as to a money judgment, the seizure of a

22  specific asset as in the contents of an account would fall

23  within the provision for specific property where the defendant

24  does have a right to request to retain the jury solely to

25  determine that limited question of nexus.                              10:30:50

1          Ultimately, the question of forfeiture would be a

2     question for the Court because as the Court correctly notes,

3     the Court has to conduct an inquiry to determine if there are

4     third-party interests, but that initial nexus question would be

5     a question for the jury, Your Honor, if the defendants so          10:31:05

6     request.

7          THE COURT:  So what I hear you saying, and you can

8     correct me if I'm wrong, rather than the 26 properties and the

9     268 assets, you only have 40 total.

10         MR. BOYLE:  Correct, Your Honor, and a number of those       10:31:32

11    are related to each other, so they are similar to one asset in

12    terms of the time it would take to present them.

13         THE COURT:  Is that your understanding,

14    Mr. Panchapakesan?

15         MR. PANCHAPAKESAN:  That's my understanding based on,        10:31:43

16    you know, I believe the government submitted a proposed verdict

17    form last night, and so I take it that the assets they are

18    seeking to forfeit, those are the ones that are listed on the

19    verdict form.  You know, the one place where I think I have a

20    slight disagreement, maybe with Mr. Boyle, and this is           10:32:01

21    something we can brief, we just received the verdict form last

22    night, is I think as to financial accounts, for example,

23    because the rules require tracing, for example, 18 U.S.C. 981

24    concerns proceeds derived from a violation of the Travel Act or

25    a conspiracy to violate the Travel Act, is we think the jury     10:32:25

```
 1    also ought to determine the extent to which are the amounts
 2    that ought to be forfeited.  Because I think, I think the risk
 3    we run is, look, our view is that this case concerns 50
 4    advertisements.  That's what the prior Court said.  The Court's
 5    jury instructions concerning the conspiracy counts are tied to
 6    Counts 2 through 51, so we run the risk of forfeiting an entire
 7    bank account with several million dollars when let's say there
 8    is only a conviction on the Travel Act count, not traceable,
 9    with minimal.  So I think we want to avoid a situation where by
10    virtue of some jury finding the entire account is forfeited
11    when there is no showing of tracing.
12              I am aware of prior cases where, you know, a verdict
13    form in a situation like this is included not just where
14    there's nexus, but what is the amount to be forfeited.
15              MR. BOYLE:  With respect to the number of assets, Your
16    Honor, I can explain.  The reason we have a much smaller subset
17    here, once the defendants elected to retain the jury, we made a
18    decision, a tactical decision, instead of trying to put all 400
19    of those assets and frankly using too much of the jury's time,
20    a lot of those assets were also in the civil forfeiture case or
21    they have already been surrendered by Backpage in that case.
22    So for all those assets where we can resolve them in the civil
23    case or the ancillary petitions, we've left those assets there.
24    So we've tried to limit it down to a fairly manageable number
25    for the sake of the jury's time, Your Honor.
```

10:32:46

10:33:10

10:33:28

10:33:43

10:34:01

1          THE COURT:  Well, I have yet -- I have just been

2    handed your filing, so I have yet to look at it.  The

3    defendants are entitled to make their objections known.

4          I frankly think that it is a substantial ask for this

5    Court to have this jury make this determination.  I don't know          10:34:44

6    how many of you pay attention to this jury; I do.  They

7    appeared very overwhelmed by the jury instructions as they are,

8    and so they are taking their obligation seriously.  That's what

9    that tells me.  They have a heavy lift in front of them.  And

10   then to have them deliberate on the matter, try to come to some          10:35:19

11   agreement and then to -- if they end up convicting on one or

12   more counts, to have them then be told, "Well, you have to go

13   back and you have to do more work," is really in many ways

14   unfair.

15         And so I ask you to be prepared for the potential that          10:35:44

16   if we lose this jury, that you be ready to proceed with a Plan

17   B, whether that be calling in a new jury or agreeing, if we can

18   voir dire the existing jury to see whether or not some of them

19   can continue service for this purpose, whether you agree to

20   that.  If there's no agreement to that, then the Plan B is          10:36:13

21   going to be empanelment immediately of a new jury.

22         And what that means is that you're going to have to

23   determine, because of the issues involved in the case and the

24   people that are involved in the case, we're going to have a

25   situation where undoubtedly the public who gets called in for          10:36:33

```
 1   service are going to be aware of the case.
 2             MR. BOYLE:  Absolutely, Your Honor.
 3             THE COURT:  And so there is all kinds of issues that
 4   you to confront in that scenario.
 5             MR. BOYLE:  Absolutely, Your Honor.  Very briefly, we     10:36:49
 6   fully agree this is a big ask of the jury.  If the defendants
 7   do not elect to retain the jury, we are fully prepared to go
 8   forward on the papers.  However, at this point we are going to
 9   be as expeditious as possible.
10             But to the Court's point about having a Plan B, we        10:37:00
11   absolutely do.  There is case law showing that where a jury
12   hangs on forfeiture, the Court can empanel a new jury.  There
13   is also case law saying that with respect to the Court's
14   concern about voir dire, it is not an issue that a juror in a
15   forfeiture phase is aware of a conviction because in a          10:37:16
16   forfeiture phase the jurors are always going to be aware that
17   the defendant was convicted.
18             So we are prepared for that Plan B, whether that's a
19   new jury or proceeding in some other fashion, and will be ready
20   for that if this jury loses a quorum and cannot continue their    10:37:31
21   service, Your Honor.
22             THE COURT:  Well, I am talking about public awareness
23   of what is out there in the media.  I am not talking about the
24   people coming in and being told that there was a prior
25   conviction.  That's the distinction.                             10:37:45
```

1          MR. BOYLE:  Yes, Your Honor.  And of course, on voir

2     dire we would have to ensure that they could deliberate fairly

3     on that question.

4          THE COURT:  So what I'm going to permit

5     Mr. Panchapakesan to do is by Monday morning you will have          10:37:58

6     given me whatever your redline is with regard to whatever the

7     government has provided.  And you will then meet and confer and

8     come up with a procedure in the alternative if we lose the

9     jury, and do what you can to come to some agreement with regard

10    to that.                                                            10:38:29

11          You can provide that to me by Tuesday, close of

12    business.  That second part, I should say.

13          MR. BOYLE:  Absolutely, Your Honor.

14          MR. PANCHAPAKESAN:  Understood, Your Honor.

15          THE COURT:  Is there anything more that any defense          10:38:49

16    counsel wishes to raise?

17          Mr. Cambria?

18          MR. CAMBRIA:  No, Your Honor.

19          THE COURT:  Mr. Feder?

20          MR. CAMBRIA:  No, Your Honor.                                10:38:59

21          MR. FEDER:  No, thanks.

22          THE COURT:  Anything further from you,

23    Mr. Panchapakesan?

24          MR. PANCHAPAKESAN:  No, Your Honor.

25          THE COURT:  All right.  I'll look forward to receiving       10:39:08

1    that, and I will look at your submissions.

2         And is there anything further?

3         MR. BOYLE:  Nothing from the government, Your Honor.

4         THE COURT:  I'll ask defense counsel who are present,

5    make an inquiry of Mr. Eisenberg and Ms. Bertrand if they wish          10:39:26

6    to join in on any objection that was raised here relating to

7    the jury charge regarding Travel Act, and if not, have them

8    just prepare to say so on the record on Tuesday.

9         MR. CAMBRIA:  Yes.  I believe everyone here joined in,

10   Your Honor, at this point.                                              10:39:56

11        THE COURT:  All right.  If there's nothing further,

12   then we are adjourned.

13     (Proceedings concluded at 10:40 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                   **C E R T I F I C A T E**

4

5          I, HILDA E. LOPEZ, do hereby certify that I am duly

6   appointed and qualified to act as Official Court Reporter for

7   the United States District Court for the District of Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9   a full, true, and accurate transcript of all of that portion of

10  the proceedings contained herein, had in the above-entitled

11  cause on the date specified therein, and that said transcript

12  was prepared under my direction and control.

13         DATED at Phoenix, Arizona, this 2nd day of November,

14  2023.

15

16

17                             s/Hilda E. Lopez_____

18                             HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT