1

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 7, 2023 |
| Michael Lacey, et al. | ) | 9:11 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TRIAL - DAY 29 - A.M. SESSION

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                      **A P P E A R A N C E S**

2

   For the Government:
3      UNITED STATES ATTORNEY'S OFFICE
       By:  **Mr. Kevin M. Rapp, Esq.**
4           **Mr. Peter S. Kozinets, Esq.**
            **Mr. Andrew C. Stone, Esq.**
5           **Ms. Margaret Wu Perlmeter, Esq.**
            **Mr. Daniel G. Boyle, Esq.** - Appears by Zoom
6      40 North Central Avenue, Suite 1200
       Phoenix, Arizona 85004
7      kevin.rapp@usdoj.gov
       peter.kozinets@usdoj.gov
8      andrew.stone@usdoj.gov
       margaret.perlmeter@usdoj.gov
9
   For the Government:
10     UNITED STATES DEPARTMENT OF JUSTICE
       By:  **Mr. Austin Berry, Esq.**
11     1301 New York Avenue, NW, 11th Floor
       Washington, DC 20005
12     austin.berry2@usdoj.gov

13     For the Defendant Michael Lacey:
       LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
14     By:  **Mr. Paul J. Cambria, Jr., Esq.**
       42 Delaware Avenue, Suite 120
15     Buffalo, NY 14202
       pcambria@lglaw.com
16
   For the Defendant Scott Spear:
17     FEDER LAW OFFICE, P.A.
       By:  **Mr. Bruce S. Feder, Esq.**
18     2930 East Camelback Road, Suite 160
       Phoenix, AZ 85016
19     bf@federlawpa.com
       - and -
20     KESSLER LAW OFFICE
       By:  **Mr. Eric Walter Kessler, Esq.**
21     6720 N. Scottsdale Road, Suite 210
       Scottsdale, AZ 85253
22     eric.kesslerlaw@gmail.com

23

24

25

```
 1  For the Defendant John Brunst:
        BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2      LINCENBERG & RHOW, P.C.
        By:  Mr. Gopi K. Panchapakesan, Esq.
 3           Mr. Gary S. Lincenberg, Esq. - Appears by telephone
        1875 Century Park E, Suite 2300
 4      Los Angeles, CA 90067
        gpanchapakesan@birdmarella.com
 5      glincenberg@birdmarella.com

 6  For the Defendant Andrew Padilla:
        DAVID EISENBERG, P.L.C.
 7      By:  Mr. David S. Eisenberg, Esq.
        3550 North Central Avenue, Suite 1155
 8      Phoenix, AZ 85012
        david@deisenbergplc.com
 9
    For the Defendant Joye Vaught:
10      JOY BERTRAND, ESQ., L.L.C.
        By:  Ms. Joy M. Bertrand, Esq. - Appears by Zoom
11      P.O. Box 2734
        Scottsdale, AZ 85252
12      joy@joybertrandlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

**P R O C E E D I N G S**

THE COURT:  All right.  Please be seated.

(Proceedings commence at 9:11 a.m.)

THE COURT:  I was told that Mr. Kessler wanted to    09:11:17
speak with me about something.

MR. KESSLER:  Good morning, Your Honor.  If you can
bear with me for a moment.  Yesterday during our call
Mr. Cambria raised an issue having to do with Mr. Berry's
closing argument, and I wanted to address that in more detail    09:11:46
this morning, about five minutes, if that's okay.

THE COURT:  What is the form and fashion?  Is this a
motion?  Is this an objection?  What is the procedural posture
that we are in?

MR. KESSLER:  This is an oral --    09:12:08

THE COURT:  We've had numerous opportunities.  I've
given the parties numerous opportunities after the closing
arguments to make argument or objection, so I want to know
procedurally how is it that you're raising this now?

MR. KESSLER:  Well, this is an oral motion to    09:12:24
reinstruct the jury on a couple points at a minimum.

THE COURT:  You may make your record, but at this
juncture, the jury having been instructed, the parties having
relied on all of the instructions, including the First
Amendment, I'm not going to change any of the jury instructions    09:12:49

UNITED STATES DISTRICT COURT

1    unless you can present me with some sufficient case law that

2    tells me otherwise.

3              MR. KESSLER:  I'm --

4              THE COURT:  You may make your record, Mr. Kessler.

5              MR. KESSLER:  One of the offending statements in

6    Mr. Berry's closing rebuttal is found at page 50 on the

7    November 1st transcript, Day 28, where he states, "Next, the

8    defendants argue, well, they had new" -- and I think the

9    reporter meant to put "no" -- "knowledge of these specific 50

10   ads.  Ladies and gentlemen, these ads are just a sample.  We're

11   not going to charge them with a million counts based upon the

12   millions of ads.  That's why there's a conspiracy charge

13   covering the statute, covering the 14-year life of the

14   conspiracy.  What I am not -- what I'm not going to show

15   you" --

16             THE COURT:  One second, Mr. Kessler.  My Livenote has

17   timed out.

18             (A break was taken to address technical difficulties)

19             THE COURT:  Okay.  All right.  Mr. Kessler, you may

20   continue.                                                09:22:35

21             MR. KESSLER:  Thank you.  Picking up pretty much where

22   I left off, which is in the middle of that paragraph, Mr. Berry

23   said, "What I am not -- what I am not going to show you is a

24   jury instruction that says we must prove that any defendant has

25   specific knowledge of these particular ads because it isn't in  09:22:59

1    there.  We don't have to do that.  You won't see that

2    instruction."

3            The problem with that, Judge, is that it conflicts

4    with other instructions you've given this jury and does nothing

5    but misstate the law and confuse the jury.                    09:23:20

6            For example, the Court's Travel Act instruction, which

7    I think is on page 30 of the jury instructions, is expressly

8    tied to the 50 charged acts.  It says:  Second, after doing so,

9    the defendant performed an act that did promote or -- or

10   facilitate the promotion of any business enterprise involving   09:23:50

11   prostitution offenses specifically by publishing on

12   Backpage.com the ads listed in Counts 2 through 51 of the

13   indictment.

14           That same instruction goes on to say:  To prove

15   specific intent, the government must establish that each        09:24:15

16   defendant in some significant manner associated himself or

17   herself with the purpose of promoting or facilitating the

18   promotion of any business enterprise involving prostitution

19   offenses that the defendant knew to be unlawful under the

20   state -- under the state law, which then begs the question, if  09:24:40

21   Mr. Berry was correct in his argument, if not to any business

22   enterprise involving prostitution offenses in the 50 ads, with

23   whom are defendants significantly associating themselves?

24           The Court also instructed the jury on the Travel Act

25   conspiracy charge that says:  First, beginning on or around     09:25:17

1   2004 and ending on or about April 2018, there was an agreement

2   between two or more persons to commit at least one Travel Act

3   offense as charged in Counts 2 through 51 of the indictment.

4         So even the conspiracy instruction that the Court has

5   provided to the jury ties this case to the 50 charged ads, not     09:25:49

6   to the millions that came before it.  Some time ago when Judge

7   Brnovich had this case, this issue was raised, and I am

8   referring to Document 946.

9         THE COURT:  Yes, I read that.

10        MR. KESSLER:  The important part of that is Judge            09:26:14

11   Brnovich said there, meaning the defendants, "main concern is

12   summed up in a question they pose to the Court:  'How could one

13   specifically intend to promote/facilitate a business enterprise

14   one does not know to exist?'"  To answer defendants' question

15   posed to the Court, one cannot intend to promote or facilitate    09:26:40

16   a business enterprise one does not know exists.

17        What Mr. Berry's argument suggests is that the

18   defendants can be convicted absent any knowledge of the 50 ads

19   or any knowledge of the persons posting those ads, or what they

20   were doing simply is -- is inconsistent with the Court's ruling   09:27:05

21   in Document 946, as I just quoted, and the Court's jury

22   instructions that I have just quoted.  I think it's fair to

23   characterize Mr. Berry's argument to mean that the government

24   believes that the defendants can be convicted based on general

25   intent as opposed to specific intent, and I believe it's fair     09:27:34

1  or reasonable to say that this is the prosecution's call for

2  jury nullification; in other words, an invitation to convict

3  where there is no basis to do so.

4          So what, on behalf of Mr. Spear, I am asking this

5  Court to do this morning, not to change any of your                    09:28:02

6  instructions, but to address the Court and inform the Court

7  that Mr. Berry's statement that they don't need to prove

8  knowledge by these defendants of the 50 charged ads is legally

9  erroneous, and the jury should refer to this Court's

10 instructions both with respect to the Travel Act and with              09:28:32

11 respect to the Travel Act conspiracy charge.

12         THE COURT:  Well, I guess I don't -- I don't recall

13 specifically, but I don't know whether or not at the time that

14 Mr. Berry made that statement there was an objection.  And if

15 there was not, then you've missed the opportunity.  But in any         09:28:53

16 event, what I have consistently told this jury at this juncture

17 in the closing argument is that simply that, summation is

18 summation, it's not evidence, and that they are to follow the

19 instructions that the Court gave them.

20         And in my view, that's sufficient cure for that sort           09:29:15

21 of statement.  And so you've made your record, Mr. Kessler, and

22 so I'll hear from the government.

23         MR. KESSLER:  Your Honor, I need to address one point

24 regarding your comments.  I did make the objection.  I showed

25 Mr. Berry the courtesy of allowing him to complete his                 09:29:35

rebuttal, his closing rebuttal.  I immediately came to the
podium afterwards and lodged this objection and indicated that
it would be addressed in more detail at a later time.  I made
the objection to preserve my ability to make this oral request
at this time.                                              09:30:03

          I don't agree -- I can't imagine how telling the jury,
well, you know, read the instructions, disregard what they say
if you think they don't -- what the prosecutor says, if you
think it doesn't apply, or whatever --

          THE COURT:  Mr. Kessler, it happens all the time in   09:30:24
almost every trial that I've had.

          MR. KESSLER:  But this is such -- this is a statement
by the prosecution on the law that is a 180 degrees different
than not only what the law is, but the law of this case and the
other instructions that you have given this jury.  How does a   09:30:45
jury reconcile that?

          THE COURT:  Well, they do it as I've instructed, to
read the instructions and apply the instructions to the facts.

          MR. KESSLER:  Well, my request is that the jury be
informed that Mr. Berry's statement of the law in that respect   09:31:06
was erroneous and simply refer the jury back to the early
instructions.  It's such a big issue.  I can't see a jury
working through this.

          THE COURT:  Well, the jury doesn't have a transcript.
The jury doesn't have a transcript of anyone's summation         09:31:29

1  argument, and I think we've given enough information to this

2  jury that my sense is that not all of them are going to

3  remember your summations, whether or not you agree with that or

4  not.  My goodness sake, that happened almost a week ago.

5          So in any event, I'll hear from the government and          09:31:52

6  then we'll bring the jury in.

7          MR. KESSLER:  Thank you, Your Honor.

8          MR. STONE:  Your Honor, respectfully, Mr. Kessler is

9  wrong with that argument.  This is an issue that has been

10  litigated in this case time and time again.          09:32:10

11          I cited to the Court, Judge Brnovich's order 793 where

12  she went through all of the allegations in the superseding

13  indictment.  Those allegations laid out what the evidence, the

14  evidence that's now been presented to this jury, which is

15  strategies that these defendants had to build their website and          09:32:37

16  strategies they had to maintain their website.

17          The same argument about this general intent versus

18  specific intent was made before and is now law of the case.

19  This Court has ruled in 793, 946, and in Your Honor's order on

20  the motions in limine 1643, that this case involves the          09:33:02

21  policies and the implementation of those policies by these

22  defendants which created this marketplace for promoting

23  business enterprises that were involved in prostitution

24  offenses.

25          There was no misstatement by Mr. Berry in his          09:33:22

1    summation.  We agree with Your Honor that, as you've told the

2    jury now probably a half dozen times, summation is just that,

3    and they need to analyze the evidence and the instructions, and

4    so we agree with that.

5           Similarly, we think that there were misstatements of          09:33:45

6    the law made by the defense, and Your Honor has rectified that

7    with the admonition to the jury.  But this issue about the

8    defendants needing to know specifically about these 50 ads has

9    been asked and answered.

10          Doc 793 where Judge Brnovich says:  Based on the             09:34:04

11   allegations, if those are proven true, then the defendants

12   could be found guilty of promoting prostitution business

13   enterprises.

14          So this is not a new issue.  This is an issue that the

15   defense continually raises, and it's been put to bed, Your          09:34:21

16   Honor.

17          THE COURT:  All right.  Let's go ahead and have the

18   jury in.  She is going to double-check.  We had one that was

19   tardy, so anticipated being here at 9:30.

20          MS. BERTRAND:  Your Honor, is the Court going to --          09:34:47

21   hi, this is Joy Bertrand.  Good morning.  Is the Court going to

22   tell the jury why I am appearing by Zoom?

23          THE COURT:  I had --

24          MS. BERTRAND:  Pressing on my --

25          THE COURT:  Did you hear me?  I had intended to.  Are        09:35:04

 1   you on mute?  Okay.

 2          MS. BERTRAND:  No.

 3          THE COURT:  We are still waiting for the arrival of

 4   one of our jurors, and as soon as that juror comes in we will

 5   proceed.                                                    09:35:22

 6          COURTROOM DEPUTY:  All rise.

 7          (Recess was taken at 9:37 a.m.)

 8      (Proceedings reconvened at 9:42 a.m.)

 9          THE COURT:  Please be seated.  It appears all of our

10   jurors are now present, and so we will have them come in.    09:42:27

11                    (Jury is present)

12          THE COURT:  All right.  Please be seated.  And the

13   record will reflect the presence of the jury, the presence of

14   government counsel, defense counsel.

15          Members of the jury, as you can see, we are joined by  09:43:58

16   Ms. Bertrand through Zoom.  She too fell prey to illness during

17   the weekend, and so in an abundance of caution she is

18   isolating, but she is here this morning and will participate,

19   although her client is also present in the courtroom.

20          Now, members of the jury, when we last met the parties  09:44:22

21   had given you their closing arguments and so it has been some

22   time since you have been instructed.  And as I mentioned

23   previously, you will have copies of the final jury instructions

24   in the jury deliberation room to guide you in your

25   deliberations.                                              09:44:47

1        I do want to just remind you of two instructions.  And

2   so if you will bear with me, I think this will help you get

3   started in your deliberations.  I am going to read you an

4   instruction on your deliberations.

5        Now, members of the jury, "When you begin your

6   deliberations, elect one member of the jury as your foreperson

7   who will preside over the deliberations and speak for you here

8   in court.

9        You will then discuss the case with your fellow jurors

10  to reach agreement if you can do so.  Your verdict, whether

11  guilty or not guilty, must be unanimous.

12       Each of you must decide the case for yourself, but you

13  should do so only after you have considered all of the

14  evidence, discussed it fully with the other jurors, and

15  listened to the views of your fellow jurors.

16       Do not be afraid to change your opinion if the

17  discussion persuades you that you should.  But do not come to a

18  decision simply because other jurors think it is right.

19       It is important that you attempt to reach a unanimous

20  verdict but, of course, only if each of you can do so after

21  having made your own conscientious decision.  Do not change an

22  honest belief about the weight and effect of the evidence

23  simply to reach a verdict.

24       Perform these duties fairly and impartially.  You

25  should also not be influenced by any person's race, color,

religious beliefs, national ancestry, sexual orientation,

gender identity, gender, or economic circumstances.  Also, do

not allow yourself to be influenced by personal likes or

dislikes, sympathy, prejudice, fear, public opinion, or biases,

including unconscious biases.  Unconscious biases are

stereotypes, attitudes, or preferences that people may

conscientiously reject, but may be expressed without conscious

awareness, control or intention.

It is your duty as jurors to consult with one another

and to deliberate with one another with a view towards reaching

an agreement if you can do so.  During your deliberations, you

should not hesitate to" reconsider "your own views and change

your opinion if you become persuaded that it is wrong.

If it becomes necessary during your deliberations to

communicate with me, you may send a note through the Courtroom

Deputy signed by any one or more of you.  No member of the jury

should ever attempt to communicate with me except by a signed

writing, and I will respond to the jury concerning the case

only in writing or here in open court.  If you send out a

question, I will consult with the lawyers before answering it,

which may take some time.  You may continue your deliberations

while waiting for the answer to any question.  Remember that

you are not to tell anyone -- including me -- how the jury

stands, numerically or otherwise, on any question submitted to

you, including the question of the guilt of the defendant,

1   until after you have reached a unanimous verdict or have been

2   discharged."

3           Now, I want to raise one final matter with you,

4   members of the jury, as you know and as you will recall, we

5   have had to postpone trial September 5th through the 8th for          09:48:15

6   illness, then again essentially two days last week for those

7   same reasons.  So though you were informed that your service

8   was to have ended on Thursday, November the 9th, and remember

9   that Friday November the 10th is a federal holiday, so the

10  building will be closed, I have determined to extending your          09:48:36

11  service Tuesday, November 14th through next Friday,

12  November 17th.  That in no way suggests that your deliberations

13  are subject to any time limit.  It is only meant to give you

14  the time needed to carefully consider the matters that are

15  before you.                                                          09:49:00

16          So at this time I would like to hear from any of you

17  who may have a reason that you feel might prevent you, if

18  necessary, from deliberating, excuse me, from Tuesday

19  November 14th through November 17th, if necessary.  Is there

20  any one of you who has a conflict?                                    09:49:21

21          And I will also remind you that it is generally

22  important that you adhere to the trial schedule; in other

23  words, when you deliberate, you should begin deliberations when

24  you are all present, and you should aim to be present at

25  9:00 a.m. and work through to at least 4:30.  Of course, giving      09:49:42

1 yourself breaks throughout the day and a lunch break, and we

2 will have lunch brought in for you.

3      I will issue then, having not heard of any, anything

4 that will prevent any of you, I will issue an order so that you

5 may, if you need to provide that to whomever may need to know   09:50:04

6 about your service.

7      Now, at this time I am going to select two of you as

8 alternate jurors.  The law requires only 12 to deliberate and

9 to return a unanimous verdict.  But as you have seen, a jury

10 trial with this length of time also comes with additional   09:50:28

11 issues that individuals confront, emergency situations at home,

12 illness or the like, and so it is necessary that we select two

13 alternates.

14      The two alternates who are going to be randomly

15 selected will not participate in the jury deliberations,   09:50:46

16 however, you will remain on standby if you are selected as an

17 alternate, and you are going to continue to adhere, all of you,

18 to the admonition not to discuss the case with anyone, not to

19 conduct any research.

20      There may come a time, for example, if a deliberating   09:51:05

21 juror gets called away, we will have to call one of you back

22 who is the named alternate by random selection, and then you

23 will begin deliberations with the jurors that have been

24 deliberating.

25      If you are selected as an alternate, please leave your   09:51:22

1    notebooks on your chairs.  We're going to gather those and keep

2    them in a safe place in the event that you get called back.

3           So at this time I'll have the Courtroom Deputy

4    randomly draw the two alternate jurors.

5           COURTROOM DEPUTY:  Juror No. 12, Juror No. 2.                    09:51:43

6           THE COURT:  Juror No. 12 and Juror No. 2, you are

7    selected as the alternate jurors.  And again, I remind you not

8    to discuss the case, not to do any research about the case,

9    turn away if you hear something on the news, anything of the

10   sort, because again, there may come a time when you get called  09:52:17

11   back to join in the deliberations and we want to make sure that

12   you adhere to the admonition.

13          And at this time, if I could have my Career Law Clerk

14   and my Courtroom Deputy come forward.  Please raise your right

15   hand.                                                                   09:52:43

16          (Career Law Clerk and Courtroom Deputy are sworn in.)

17          THE COURT:  All right.  With that, we will excuse the

18   alternates and we will excuse the jurors to begin your

19   deliberations.  Liliana will bring in lunch order forms for

20   you, and so you may get yourselves organized.  Again, take          09:53:20

21   breaks as needed, lunch break as needed.

22          All rise for the jury.

23                    (Jury is not present.)

24          THE COURT:  All right.  Please be seated.  Now, I want

25   to make sure that everyone has provided to Liliana their             09:54:12

UNITED STATES DISTRICT COURT

1   contact information so that she may readily reach you -- she

2   may readily reach you if the jury does have a question.

3          Well, the twists and turns continue.  Juror No. 16 has

4   indicated illness, and she is inquiring as to whether or not

5   she could be designated as an alternate.  Having had the random   09:55:15

6   draw, I've never been in these waters before.  My sense is

7   that, well, she's the individual at the very end who has the

8   mask on, and she's been here everyday diligently, but I'm

9   assuming that if she's reporting illness to the Court, that she

10  feels it necessary that she take care of herself and not         09:55:49

11  participate in deliberations.

12         We have Jurors 12 and 2 who are the alternates.

13         MS. PERLMETER:  Your Honor, if Juror 16 is now ill, we

14  have no objection to her becoming an alternate, and then

15  between the recently or the just designated alternates who are   09:57:08

16  Jurors No. 2 and 12, we suggest the Court flip a coin.

17         THE COURT:  Mr. Eisenberg.

18         MR. EISENBERG:  Your Honor, I'll speak for the

19  defendants.  We also have no objection to the release of 16.

20  As far as reselecting an alternate, rather than flip a coin, I   09:57:28

21  should think that the two -- two certificates or whatever they

22  are -- the coins, just be reselected at random.

23         THE COURT:  We will insert 12 and 2 back into the hat

24  and we will select the alternate along with Juror No. 16.

25         MR. EISENBERG:  Your Honor, I'm suggesting that one of   09:58:00

1    the two alternates be put back in as a juror by random

2    selection.

3              THE COURT:  Yes.

4              MR. EISENBERG:  Oh, okay.

5              MR. FEDER:  Judge, I don't want to throw a kink in it.    09:58:13

6              THE COURT:  Why not, Mr. Feder?

7              MR. FEDER:  I do have a coin just in case.  I thought

8    yesterday we had -- you were going to designate 7, the woman

9    who is sick, as an alternate.

10             THE COURT:  No.  The government asked that.  I did not    09:58:26

11   say that I would do that.

12             MR. FEDER:  Okay.  All right.

13             COURTROOM DEPUTY:  2.

14             THE COURT:  Juror No. 2 will replace Juror No. 16.

15             COURTROOM DEPUTY:  Bring them back out?    09:58:52

16             THE COURT:  No.  I don't think so.

17             Well, all right, I wanted to address an issue related

18   to the forfeiture proceeding, and I do understand that

19   Mr. Boyle is going to join us through the technology.  We'll

20   have to wait for Liliana to come back in order for that to    09:59:38

21   occur, so we can stand in recess while we wait for that.

22             (Recess was taken at 9:59 a.m.)

23          (Proceedings reconvened at 10:25 a.m.)

24             THE COURT:  All right.  Let's move to -- I know I had

25   indicated -- please.  I'm sorry.  I indicated that I wanted to    10:25:59

1    address the recent filings by the defendants regarding the

2    forfeiture jury instructions and the form of verdict.  I have

3    two, well, I have a couple of questions, but I think further

4    briefing is going to be necessary because there's a particular

5    issue that I'm not familiar with with respect to the two types          10:26:24

6    of forfeiture that are potentially at issue, the property and

7    the money.

8         As I read the law, with regard to the property issues,

9    there remains this issue of ancillary proceedings related to

10   any third-party interests.  My understanding of the procedure          10:26:50

11   is that, and Mr. Boyle, you can correct me if I'm wrong,

12   Mr. Panchapakesan, is that at a later time if the jury returns

13   a verdict that permits them to go back and look at the

14   forfeiture proceeding, that with regard to the property then

15   the Court later determines the ancillary interests.                    10:27:23

16        The question that I have that relates to,

17   Mr. Panchapakesan, your proposed form of verdict is the request

18   that the jury parse out specific amounts related to the money,

19   and I am not entirely clear that with regard to the money that

20   the procedure isn't the same for property; in other words,            10:28:01

21   wouldn't it be helpful then to have an ancillary proceeding to

22   determine what the interests in that money is?

23        The way that I read the statute, it assumes that the

24   money alleged in the forfeiture proceeding is to be forfeited,

25   and so that really is the question that I have.                        10:28:29

1           And this second part has to do with the procedural

2    posture of any forfeiture trial.  Because it is a quasi-civil

3    matter, my inclination is, I understand the government is only

4    producing two witnesses, and my inclination is to limit the

5    time in which you can examine that witness on direct much like      10:29:05

6    I do in any civil trial, limit your examination, for example,

7    to two hours, and a rebuttal exam to half an hour.  I won't

8    limit cross-examination.

9           The same would be true of the defendants who, by the

10   way, Mr. Panchapakesan, did you file your, or did you provide      10:29:29

11   the Court with your anticipated witness?

12           MR. PANCHAPAKESAN:  No, but I can do so now.

13           THE COURT:  And again, here's the question that I pose

14   to you.  We'll have to have that witness' name before the jury,

15   and was that a person that was listed on your original witness      10:29:46

16   list?

17           MR. PANCHAPAKESAN:  Neither of them were.  I can

18   provide the name.

19           THE COURT:  I can't hear you.

20           MR. PANCHAPAKESAN:  Neither of them were on the            10:29:56

21   original witness list, but I can provide those names now.

22           THE COURT:  All right.  Give me -- give Liliana the

23   witnesses.  I'm assuming you gave those over to the government.

24           MR. PANCHAPAKESAN:  I haven't yet, but I can do that

25   now.                                                                10:30:12

```
 1            THE COURT:  And so there's two questions, and if you

 2   need time to further brief the first, I understand that.  I too

 3   want to look at some matters.  And it would be helpful if you

 4   cite to Ninth Circuit case law, and so one having to do with

 5   the ancillary nature of I think what you're requesting in the        10:30:38

 6   verdict form, and the second being the Court's ability to limit

 7   your presentment in terms of time for your respective case in

 8   chief.

 9            Mr. Boyle, do you have any immediate thoughts with

10   regard to any of that?                                               10:31:01

11            MR. BOYLE:  With respect to the second issue raised,

12   Your Honor --

13            THE REPORTER:  I can't hear.

14            THE COURT:  You're very mute.  I don't know if it's

15   our audio or if it's yours.                                          10:31:15

16            MR. BOYLE:  Better, Your Honor?

17            Just wait one second.

18            MR. BOYLE:  Yes, Your Honor.

19            COURTROOM DEPUTY:  Speaking again.

20            MR. BOYLE:  Yes, Your Honor, hopefully this is better.      10:31:45

21            THE COURT:  Yes, it is.

22            MR. BOYLE:  Thank you, Your Honor.  With respect to

23   the second issue you raised as to timing, we would have no

24   objection to the time limits you suggested.  I suspect those

25   would be entirely reasonable for what we intend to present.          10:31:59
```

1          THE COURT:  All right.  So let me ask

2    Mr. Panchapakesan with respect to that.

3          MR. PANCHAPAKESAN:  We have no objection to the Court

4    setting time lines.

5          THE COURT:  All right.  So in your direct examination          10:32:14

6    to our limit, no limit for cross-examine, 30 minutes for any

7    redirect.

8          And then with regard to the, I guess what I'll refer

9    to as an ancillary proceeding, with regard to the money

10   forfeiture allegations, do you have any immediate thoughts,          10:32:40

11   Mr. Boyle?

12         MR. BOYLE:  I think Your Honor has accurately

13   described the procedure in that the question for the jury is

14   whether there's a connection between the asset and the offense.

15   Your Honor is correct, whether there are third-party interests,     10:32:58

16   that will be determined by the Court at a later date.  I am

17   aware of some case law saying the jury can assess how much of a

18   connection there is, but I agree that is a complicated

19   question.

20         And in particular with respect to something like real         10:33:14

21   property, I don't think it's appropriate to have the jury try

22   to parse out the equity in that.

23         THE COURT:  And I think, as I have read the case law,

24   that with respect to property, that's the procedure.  I'm more

25   focused on the money assets and whether or not those are to be      10:33:34

1    treated the same in terms of a later ancillary proceeding.

2         MR. BOYLE:  I believe there would be a later ancillary

3    proceeding, Your Honor, to the extent a third party -- well, if

4    I might back up briefly.  To the extent this issue goes before

5    the jury, the jury would render a verdict.  The government, if          10:33:59

6    that verdict said there was a nexus, the government would then

7    file a preliminary application of forfeiture with Your Honor

8    and that would trigger the ancillary proceeding for any third

9    party that claims they have an interest to show up.

10        So that would be the procedure, Your Honor, jury                    10:34:15

11   verdict, application that Your Honor, the Court, would

12   consider, and then an ancillary proceeding.

13        THE COURT:  All right.  Let me hear from

14   Mr. Panchapakesan.

15        MR. PANCHAPAKESAN:  So my understanding, Your Honor,               10:34:26

16   with respect to the ancillary proceeding, is that it's a

17   proceeding to determine whether some third party not present in

18   the courtroom has an interest in one of the bank accounts or

19   pieces of real property that's forfeited, which I think is

20   distinct from the interests that is forfeited as to a                   10:34:43

21   defendant; right?

22        So for example, if you have, let's say, a million

23   dollars in a bank account, and the government is seeking to

24   forfeit that, let's assume nobody else is in interest except

25   for, say my client, then what we're asking is a jury to                 10:34:59

1    determine what amount of assets be forfeited.

2        And I think the ancillary proceedings deals with a

3    second question, which is a bank account with a million dollars

4    and there is two other owners of it, then the ancillary

5    proceeding will determine to what extent do those third parties    10:35:16

6    have an interest, should they be able to retain those

7    interests, which I think is distinct from the defendant who is

8    on trial and they own bank account and are the only ones who

9    own it, and what portion or percentage of that should be

10   forfeited.                                                         10:35:33

11       THE COURT:  All right.  Well, I'll give you 24 hours.

12   If you want to give me something in terms of a briefing, I'll

13   look at what I can to determine how these matters have

14   proceeded with regard to any sort of money forfeiture and a

15   defendants' specific interest in the percentage.                   10:36:06

16       I frankly think that it's a very difficult question to

17   put before the jury in terms of the individual accounts.  There

18   are, I think I recall something in the neighborhood of 41 total

19   pieces of property and bank accounts.

20       And so I'll give you until tomorrow, I would say close      10:36:37

21   of business, to provide me any sort of additional briefing or

22   guidance that you may have on it.

23       In the meantime, I'll look through your proposed jury

24   instructions and let you know if I have any questions or issues

25   with regard to that.                                               10:37:04

1          Is there anything further to be taken up by the

2    government?

3          MR. RAPP:  No, Your Honor.

4          MR. BOYLE:  From the government, Your Honor.  My

5    apologies, Your Honor, the Court directed the government and          10:37:15

6    defendants to meet and confer and to think about what we would

7    do if the jury can't be retained.  My understanding from

8    speaking to co-counsel is it sounds like the jury is available

9    next week, but we're still prepared to make a filing this

10   afternoon if the Court wishes that.                                   10:37:32

11         THE COURT:  Yes, I think you should.  You know, we've

12   lost another juror yet to illness, so you don't know what's

13   going to happen.  I certainly can't predict what's going to

14   happen, and so I think you should do that, in any event.

15         And one of the things that I hope you thought about,          10:37:51

16   because I thought about this, because, again, this is a

17   quasi-civil proceeding, that I don't know that it's necessary

18   to retain all 12.  I think we can certainly have 11 jurors

19   deliberate on something like this, and possibly even six, but

20   hopefully we won't have to make that determination, but I'll        10:38:16

21   appreciate any guidance you could provide me.

22         All right.  Anything further from defense?

23   Mr. Cambria?

24         MR. CAMBRIA:  No, Your Honor.  No, Your Honor.

25         THE COURT:  I assume, Ms. Vaught -- sorry,                    10:38:30

1    Ms. Bertrand.  I am looking at Ms. Vaught and I am calling

2    her -- looking at Ms. Bertrand and calling her Ms. Vaught.

3            MS. BERTRAND:  Nothing from me.  Thank you.

4            THE COURT:  I hope you're feeling better.

5            MS. BERTRAND:  Thank you.  I'm working on it.          10:38:45

6            THE COURT:  Mr. Panchapakesan?

7            MR. PANCHAPAKESAN:  No, Your Honor.

8            THE COURT:  Mr. Kessler?

9            MR. KESSLER:  No.

10           THE COURT:  Mr. Eisenberg?                             10:38:50

11           MR. EISENBERG:  No, Your Honor.

12           THE COURT:  We will stand in adjournment.  As I

13   mentioned, please do give Liliana your contact information and

14   don't leave town.  All right.  Thank you.  We will stand in

15   adjournment.                                                  10:39:03

16           (Recess was taken at 10:39 a.m.)

17

18

19

20

21

22

23

24

25

1

2                        **C E R T I F I C A T E**

3

4              I, HILDA E. LOPEZ, do hereby certify that I am duly

5     appointed and qualified to act as Official Court Reporter for

6     the United States District Court for the District of Arizona.

7              I FURTHER CERTIFY that the foregoing pages constitute

8     a full, true, and accurate transcript of all of that portion of

9     the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control.

12             DATED at Phoenix, Arizona, this 8th day of November,

13    2023.

14

15

16                               s/Hilda E. Lopez_____

17                               HILDA E. LOPEZ, RMR, FCRR

18

19

20

21

22

23

24

25