Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: 602.257.0135
bf@federlawpa.com
*Knapp Counsel for Scott Spear*

Eric W. Kessler, Esq. (AZ Bar No. 009158)
KESSLER LAW GROUP
9237 E. Via De Ventura
Suite 230
Scottsdale, AZ 85258
Telephone: 480.644.0093
Eric@kesslerlawgroup.net
*Attorneys for Scott Spear*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Scott Spear, *et al*.,<br><br>　　　　Defendants. | Case No. CR18-00422-PHX-DJH-003<br><br>**DEFENDANT SPEAR'S RESPONSE TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER (DKT. 1948)**<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>*(Assigned to the Hon. Diane J. Humetewa)* |

The Court should deny the government's motion for a protective order because: 1) the government has failed to provide an evidentiary basis to support any of substantive requirements to bar public access to documents from a criminal proceeding; 2) the government's post-trial request to seal exhibits that were displayed to all in the courtroom during the trial is untimely; and 3) the protective order the

1

government seeks is not narrowly tailored to protect any legitimate privacy interests and there are far less restrictive alternatives that would adequately protect any compelling interest the government could possibly demonstrate.

## I. This Country Has a Historic Tradition of Open Trials.

From the very founding of this country, trials have been free and open, to promote both the fairness of the proceedings and confidence in the system:

> The open trial thus plays as important a role in the administration of justice today as it did for centuries before our separation from England. The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enterprise Co. v. Sup. Ct. of Calif.*, 464 U.S. 501, 508 (1984) ("*Press-Ent. I*"). Despite the historic tradition, not until its decision in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), did the Supreme Court "firmly establish[] for the first time that the press and general public have a *constitutional right of access* to criminal trials." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) (emphasis added).

That constitutional right of access is grounded in part in the First Amendment. In *Globe Newspaper*, the Supreme Court said:

> Two features of the criminal justice system, emphasized in the various opinions in *Richmond Newspapers*, together serve to explain why a right of access to criminal trials in particular is properly afforded protection by the First Amendment. First, the criminal trial historically has been open to the press and general public. … Second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards

2

>  the integrity of the factfinding process, with benefits to both the defendant and to society as a whole.

*Globe Newspaper*, 457 U.S. at 604.

The constitutional right of access also is grounded in part in the Sixth Amendment, which provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…" *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7 (1986) ("*Press-Ent. II*") ("[T]he explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. When the defendant objects to the closure of a suppression hearing, therefore, the hearing must be open unless the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced.") (internal citation and quotation marks omitted).

The constitutional right of access extends not only to access to proceedings, but also to exhibits introduced at trial. *In re Bard IVC Filters Products Liability Litigation*, No. MDL 15-02641-PHX DGC, 2019 U.S. Dist. LEXIS 6124 at *267-68, 273-74 (D. Ariz. Jan. 11, 2019) (denying post-trial motion to seal trial exhibits, holding: "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.' … Case law clearly recognizes that transcripts of court proceedings and exhibits presented in open court constitute judicial records for purposes of the public right of access. …").[1]

---

[1] *Accord Littlejohn v. BIC Corp*., 851 F.2d 673, 678-679 (3rd Cir. 1988) ("[T]he public's common law right of access to judicial proceedings and records … 'is beyond dispute.' Access means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records. The right, which antedates the Constitution based upon both 'historical experience and societal utility.' The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court. As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud.") (internal citations omitted).

**II.     The Presumption of Openness Can Be Overcome Only Based on a Compelling Governmental Interest and Only With Narrowly Tailored Restrictions.**

Closed court proceedings "must be rare and only for cause shown that outweighs the value of openness." *Press-Ent. I* at 509. "Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents." *Oregonian Publ. Co. v. United States Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990).

To overcome the presumption of openness, a party seeking to restrict access must prove an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Ent. I*, at 509. General claims of harm will not suffice; the movant must articulate the harm with specificity and the court must make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* In *Globe Newspaper,* the Supreme Court held:

> "[T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where … the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."

*Globe Newspaper*, 457 U.S. at 606-07.

Procedurally, before a court may close a criminal proceeding, it must first provide those excluded a reasonable opportunity to state their objections and the reasons supporting closure must be articulated in findings. *Oregonian Publ.*, 920 F.2d at 1466. Substantively, the "Supreme Court has made clear that criminal proceedings and documents may be closed to the public without violating the first amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest

4

would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Id*. A court cannot "base its decision on conclusory assertions alone, but must make specific factual findings." *Id*. "The party seeking access is entitled to a presumption of entitlement to disclosure," while the party seeking to block access has the burden "to present facts supporting closure and to demonstrate that available alternatives will not protect his rights." *Id*. at 1467.

In *Oregonian Publishing*, the district court granted a motion to seal a plea agreement on drug trafficking charges, over the objection of the newspaper, after concluding that disclosure of the plea agreement and related documents would place the defendant and his family at a risk of harm, because the defendant was cooperating with the government. The newspaper petitioned the Ninth Circuit for a writ of mandamus to compel access to the plea agreement. The Ninth Circuit granted the writ, holding that the district court "clearly erred as a matter of law in making its closure orders" because there "was no evidentiary support for" the district court's conclusion, which "was not supported by any factual finding." *Id*. at 1467-68.

The federal statutory bases the government cites to justify the relief it seeks do not allow the government to evade its burdens under the First and Sixth Amendments. *See Globe Newspaper*, 457 U.S. at 610-11 (striking down as violative of the First Amendment the Massachusetts statute allowing courts to exclude the press and general public from the courtroom during the testimony of a victim under the age of 18 of specified sexual offenses).

**III. The Government Has Failed to Provide an Evidentiary Basis to Support Any of Substantive Requirements to Close Public Access to Documents from a Criminal Proceeding.**

The government's motion for a protective order makes various allegations of interests requiring protection and of the need to protect privacy and to prevent "trauma and repeated harm to the victims," but the government's allegations all are conclusory and are unsupported by any competent evidence. In the absence of evidentiary support

5

for the government's claims, the Court would have no basis on which to make factual findings to support any of the three findings it would have to make to restrict access to trial exhibits: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest. *Oregonian Publ.*, 920 F.2d at 1466.

First, with respect to most of the ads the government seeks to seal, the government presented absolutely no evidence at trial that the subjects of the ads were engaged in criminal conduct or were the victims of crimes.

Second, although the Court might reasonably assume from the motion that the government is acting the behest of the advertisers whose ads it seeks to seal, that assumption would be unwarranted. The defense believes government did not even contact many of the advertisers associated with the ads it seeks to seal, as some of them were shocked when they were contacted by the defense and learned that their ads were the basis of the criminal charges in this action. Perhaps the government has standing to assert the rights of witnesses who testified at trial and asked the government to do so, but the government cannot anoint itself as protector of the rights of anyone who ever placed an ad on Backpage.com.

Third, while the government now identifies each advertiser as a "victim," during the trial the government was characterizing some of those whom it now calls victims as criminals with whom Carl Ferrer was conspiring—such as "P.R." who was communicating by email with the carl@backpage.com email address.

Fourth, the government's motion seems to presume that the ads it seeks to seal all contain personally identifying information, including names, social security numbers, addresses, telephone numbers, and images of individuals, but the government failed to identify with any particularity any specific information it contends should be protected (*i.e.* the specific information in each ad for which there might be a compelling interest to preclude access). The testimony at trial established that most advertisers did not use

their actual names in their ads.  The government's motion did not identify a single ad that had the actual name of the person to whom the ad pertained, nor did it provide evidence that a fake name used in any ad would be identifying as to a person who might qualify as a crime victim.  Although the trial testimony of several advertisers established that their photos were used in their ads, the trial testimony also established that the photos in ads often were not of the person to whom the ad pertained.  Redacting a photo that did not depict the advertiser would do nothing to protect the identity of the advertiser.  Most ads contained telephone numbers, but the government provided no evidence that the phone numbers in any of the ads it seeks to seal remain valid or that those numbers would be identifying as to anyone who might qualify as a crime victim.  The same is true for email addresses.

Fifth, the government cannot establish that sealing the numerous trial exhibits it obtained from the Internet Archive's "Wayback Machine" would serve a compelling interest, as those ads would remain freely available for anyone to download from the Wayback Machine.

Sixth, the motion presumes that each advertiser desires privacy and needs protection, but some former advertisers on Backpage.com have actively sought public attention, such as by appearing in a widely distributed movie, agreeing to be the subject of a feature article in a national magazine, and by appearing as a paid speaker at conferences (with the conferences touting her as having testified "testified in the Backpage trial").  The Court cannot simply assume that each advertiser desires privacy or that a protective order would be justified for each advertiser.

Seventh, the government's motion provided no evidence that any advertiser seeks privacy, that any advertiser would be harmed in the absence of a protective order, or that the proposed protective order would be the least restrictive means to protect any compelling interest the government might show to exist.  The fact that each advertiser who testified at trial did so in open court, using her actual name, suggests an order protecting the names of those advertisers is not needed (or, alternatively, that an order

targeting names in ads would be either unnecessary or ineffective, or both).

Finally, it bears noting that the government repeatedly introduced into evidence very graphic nude images that never appeared on the Backpage.com website, with no apparent concern for the persons depicted in those images. Now the government seeks to seal ads with no nudity (*e.g.*, Exs. 212, 212a, 504-509, 511, and 1718-1720) or with "Playboy standard" nudity (*e.g.*, Exs. 510, 512, 513), expressing concern for the persons depicted in those images. The exhibits with very graphic nude images have marginal, if any, relevance to the merits of the government's charges; the exhibits with no nudity or with "Playboy standard" nudity are central to the public's ability to assess the validity of the government's charges, including its claims that the ads on Backpage.com were obvious prostitution ads and that those ads proposed illegal transactions. The striking dissonance certainly begs the question of whether the government's real concern is protecting the people in the images or protecting its prosecution from the scrutiny of the press and the public.

**IV.  The Government's Post-Trial Motion is Untimely and the Government Waived Its Right to Seek Relief.**

If the government had wished to restrict public access to certain testimony or exhibits that would be presented at trial, the time to do that would have been before trial—or at least before the presentation of the evidence to which it sought to restrict access. *In re Bard IVC Filters Products Liability Litigation*, No. MDL 15-02641-PHX DGC, 2019 U.S. Dist. LEXIS 6124 at *267-68, 273-74 (D. Ariz. Jan. 11, 2019) (denying post-trial motion to seal trial exhibits, holding: "[B]y permitting the exhibits to become public judicial records through their admission into evidence at trial, Defendants waived their right to have the exhibits sealed now"); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, CV-09-1531-PHX-JAT, 2012 U.S. Dist. LEXIS 58227 at *21-22 (D. Ariz. Apr. 25, 2012) (denying post-trial motions to seal hearing transcripts, holding: "In sum, the Court will deny the parties' backdoor attempts to seal the courtroom ….[N]either party made any request prior to the proceeding to restrict public access to the proceeding.

8

Nor did the parties take any steps to limit or object to the public disclosure of this information at the proceeding.  Thus, the parties have already voluntarily 'let the cat out of the bag,' and this Court is unwilling, let alone able, to undo what is already done.  The information disclosed at oral argument on January 30, 2012 became public when the parties placed it on the record in open court, and it will remain public.") (cleaned up; internal citation omitted).[2]

The government provides absolutely no explanation for its untimely request to

---

[2] *Accord Littlejohn*, 851 F.2d at 680 ("It is well established that the release of information in open court 'is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.' … [W]e hold that BIC's failure to object to the admission into evidence of the documents, absent a sealing of the record, constituted a waiver of whatever confidentiality interests might have been preserved under the PO."); *Warner Chilcott Co., LLC v. Mylan Inc.*, Civil Action No. 11-6844 (JAP)(DEA), 2014 U.S. Dist. LEXIS 181576, at *2 (D.N.J. Dec. 10, 2014) (denying post-trial motion to seal portions of trial transcript, noting that "[c]ourts have generally denied requests seeking after-the-fact sealing of a transcript of a proceeding that was held in open court"); *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 09-290, 2013 U.S. Dist. LEXIS 45050 at *16-17, 19-20 (W.D. Pa. Mar. 29, 2013) (denying post-trial motion to seal trial exhibits, saying: "Previous public disclosure of information in open court, and even outside of court, operates to waive any right to seal judicial records containing such information. Indeed, with respect to materials used at trial, 'it is well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.' Once the information has been used at trial, the private interest in secrecy is not to be weighed heavily by the Court in its determination of disclosure…. Members of the press, attorneys from both parties, witnesses, jury consultants, shadow jurors, and numerous interested bystanders, including judges, law clerks, and business lawyers, as well as local patent practitioners, attended all or part of this trial, were free to see these slides, listen to the relevant testimony, and record any and all information contained therein.") (internal citations omitted); *Fleming v. Escort, Inc.*, No. CV 09-105-S-BLW, 2013 U.S. Dist. LEXIS 45102 at *10-11 (denying Escort's post-trial motion to seal portions of the trial transcript, holding that 'judicial records are public documents almost by definition, and the public is entitled to access by default" and that 'Escort purposely introduced the financial information as part of its trial strategy' and the 'matters were discussed on the record during the public trial, and no attempt was made by Escort at that time to seal the proceedings or otherwise protect the information from disclosure').

restrict access to evidence presented at trial. Reporter David Morgan's request to obtain copies of presumptively public records, after they were admitted into evidence and after the government "let the cat out of the bag," hardly justifies the government's "backdoor attempt to seal the courtroom." *TriQuint Semiconductor*, 2012 U.S. Dist. LEXIS at 58227.

## V. The Protective Order the Government Seeks is Not Narrowly Tailored to Protect Legitimate Privacy Interests.

If the government sought narrowly tailored relief, such as a) redacting some letters or digits from a still active email address or telephone number or b) blurring a face, but only in those ads where that information would be identifying and where the evidence at trial established the person to be a victim, the government's motion still would be untimely but would present a more plausible case for relief. The government's motion, however, seeks a judicial broadaxe where, at most, a scalpel might be appropriate.

If the Court is inclined to grant the government any relief, it not only should narrow the relief to those exhibits where the government proved the advertiser was a crime victim, but the relief should be narrowly tailored to remove *only* personally identifying information (*e.g.*, minor redactions of phone numbers or email addresses, if personally identifying, or blurring of images, if personally identifying) and that personally identifying information should be specified for each document. With respect to the defense or defendants, any relief also should be expressly limited to a) specific documents the defense obtained from the government in discovery and b) the trial exhibits, such that the relief would not apply to any other documents the defense or defendants have from other sources (*and there are many such documents*). With respect to specific documents obtained from the government in discovery, any relief also should be limited to a set list of documents that the government has identified by Bates number, particularly since many of the documents the government produced in this action are not searchable, such that endeavoring to comply with the sweeping order the government has proposed could require the manual review of thousands or millions of documents.

Moreover, as the Court may know, there are pending civil forfeiture actions in the Central District of California, there is a pending criminal action in the California Superior Court, and there are numerous pending civil actions involving some of or all the defendants—including civil actions brought by some of the government's trial witnesses or persons it identified as witnesses but later dropped from its witness list. Not only do the constitutional constraints discussed above compel narrowly tailored relief, but, if any relief is to be granted, the Court also should narrowly tailor any relief to avoid interference with other pending litigation.

**Conclusion**

The Court should deny the government's motion because it has failed to meet its burden to obtain the relief and because its request for relief is untimely. If the Court is inclined to grant any relief, that relief should be narrowly tailored, as discussed above, not the sweeping relief requested by the government.

RESPECTFULLY SUBMITTED this 19th day of November, 2023.

**FEDER LAW OFFICE, P.A.**

*s/ Bruce Feder*
Bruce Feder
*Attorneys for Scott Spear*

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

Clerk of the Court
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Phoenix, AZ 85003
Efiling: https://ecf.azd.uscourts.gov/cgi-bin/login.pl

THE HONORABLE DIANE J. HUMETEWA
United States District Court
Email: Humetewa_chambers@azd.uscourts.gov

Kevin Rapp Kevin.Rapp@usdoj.gov
Andrew Stone Andrew.Stone@usdoj.gov
Margaret Perlmeter Margaret.Perlmeter@usdoj.gov
Austin Berry berry2.austin@usdoj.gov
Peter Kozinets Peter.Kozinets@usdoj.gov
Daniel Boyle Daniel.Boyle2@usdoj.gov
*Attorneys for United States of America*

Gary Lincenberg glincenbrg@birdmarella.com
Gopi Panchapakesan gpanchapakesan@birdmarella.com
Paul Cambria pcambria@lglaw.com
Erin MCCampbell Paris emccampbell@lglaw.com
Joy Malby Bertrand joy.bertrand@gmail.com
David Eisenberg david@deisenbergplc.com
*Attorneys for Defendants*

By: */s/ M. Evans*