**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 9, 2023 |
| Michael Lacey, et al. | ) | 10:00 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 31 - A.M. SESSION**

**IN-COURT HEARING**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2

For the Government:
     UNITED STATES ATTORNEY'S OFFICE
3    By:  **Mr. Kevin M. Rapp, Esq.**
          **Mr. Peter S. Kozinets, Esq.**
4         **Mr. Andrew C. Stone, Esq.**
          **Ms. Margaret Wu Perlmeter, Esq.**
5         **Mr. Daniel Boyle, Esq.** - Appears by Zoom
          **Mr. Joseph Bozdech, Esq.**
6    40 North Central Avenue, Suite 1200
     Phoenix, Arizona 85004
7    kevin.rapp@usdoj.gov
     peter.kozinets@usdoj.gov
8    andrew.stone@usdoj.gov
     margaret.perlmeter@usdoj.gov
9

10   For the Government:
     UNITED STATES DEPARTMENT OF JUSTICE
11   By:  **Mr. Austin Berry, Esq.**
     1301 New York Avenue, NW, 11th Floor
12   Washington, DC 20005
     austin.berry2@usdoj.gov
13

For the Defendant Michael Lacey:
14   LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
     By:  **Mr. Paul J. Cambria, Jr., Esq.**
15   42 Delaware Avenue, Suite 120
     Buffalo, NY 14202
16   pcambria@lglaw.com

17   For the Defendant Scott Spear:
     FEDER LAW OFFICE, P.A.
18   By:  **Mr. Bruce S. Feder, Esq.**
     2930 East Camelback Road, Suite 160
19   Phoenix, AZ 85016
     bf@federlawpa.com
20   - and -
     KESSLER LAW OFFICE
21   By:  **Mr. Eric Walter Kessler, Esq.**
     6720 N. Scottsdale Road, Suite 210
22   Scottsdale, AZ 85253
     eric.kesslerlaw@gmail.com

23

24

25

```
1    For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
2         LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq. - Appears by Zoo
3              Mr. Gary S. Lincenberg, Esq.
          1875 Century Park E, Suite 2300
4         Los Angeles, CA 90067
          gpanchapakesan@birdmarella.com
5         glincenberg@birdmarella.com

6    For the Defendant Joye Vaught:
          JOY BERTRAND, ESQ., L.L.C.
7         By:  Ms. Joy M. Bertrand, Esq.
          P.O. Box 2734
8         Scottsdale, AZ 85252
          joy@joybertrandlaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED  STATES  DISTRICT  COURT

**P R O C E E D I N G S**

(Proceedings commence at 10:00 a.m.)

THE COURT:  Please be seated.  All right.  It appears we have some clients, but not all.  Is there any waiver of client presence?

MS. BERTRAND:  Your Honor, I waive my client's presence.  If the Court needs her, she's in our workroom.

THE COURT:  All right.  Who else?  Mr. Eisenberg is not present.  Neither is his client.  I'm assuming that's because the allegations aren't impacting him.

I see Mr. Feder.  The screen is blocking you, so I know that you're here.

I'm going to try to make you do all of the talking so I can preserve my voice.

First, let me ask, why do we have Notice of Appearance today, a change?

MR. BOZDECH:  Your Honor, AUSA Joseph Bozdech for the United States.  I entered an appearance in the eventuality that Mr. Boyle would not be able to appear.  I am the forfeiture attorney here in the Phoenix office.

MR. FEDER:  I'm sorry.  I can't hear the gentleman.

MR. BOZDECH:  I am the forfeiture AUSA here in the Phoenix office.  I entered an appearance just in case Mr. Boyle was unable to appear this morning, in an abundance of caution,

10:00:29

10:00:50

10:01:14

10:01:31

10:01:48

1    but I see we have Mr. Boyle by Zoom.

2            THE COURT:  And who is the lead trial counsel on the

3    matter?

4            MR. BOYLE:  That would be me, Your Honor, Mr. Boyle.

5    My apologies.  I'm on the east coast for a family matter.                10:02:05

6    Mr. Bozdech volunteered and entered an appearance in case there

7    was a forfeiture matter I was not able to appear for.  My

8    apologies, Your Honor.  I will be back in court on Tuesday.

9            THE COURT:  I want to first turn to the briefing that

10   I received last evening from Mr. Panchapakesan, as well as the           10:02:34

11   government, related to the issue of third-party interests.  And

12   I did have a chance to look at the Ninth Circuit case that you

13   cited in your briefing, the *Thompson* case, and I don't find it

14   to be helpful or instructive on the procedural posture of how

15   the forfeiture proceeding should go because it doesn't tell me          10:03:15

16   that the jury was made to make the distribution determination

17   of the assets.  It simply refers to the District Court having

18   made the finding.

19           And so I'm not persuaded by the District Court

20   decisions that you previously provided me in the Eastern                 10:03:43

21   District of Louisiana, that was the *Mefford* case, because my

22   reading of the statute is that the determination for the jury

23   is a nexus determination.  The rule clearly states that the

24   jury is to determine the nexus between the specific property

25   and the offense of conviction.                                           10:04:22

1          In reading the statute in its totality, all parts

2     together, the eventual distribution or parsing out of

3     third-party interests or commingling of assets is in the

4     ancillary proceeding, and that would be the Court's

5     determination.  So that's the way that I intend to proceed.  So          10:04:51

6     the jury will only make the nexus determination as to any

7     counts that they come back on in terms of the forfeiture

8     allegation, and then we will set that aside and have the

9     ancillary proceeding to determine whether or not there are

10    other interests, including percentage interests of assets that          10:05:20

11    may be commingled by any of the defendants, and that's how we

12    will proceed.

13         There really is, we hunted high and low, really no

14    particularized guidance in the circuit, but again, my plain

15    reading of the statute is my guidepost, and so that's how we          10:05:50

16    will proceed.

17         Now --

18         MR. PANCHAPAKESAN:  Your Honor, may I ask a clarifying

19    question on the process?  So I understand the Court's ruling to

20    be that, for example, if there's a bank account worth a million          10:06:11

21    dollars in it and the government proves a nexus to like a

22    Travel Act conviction, for example, that the Court in the

23    ancillary proceeding would hear evidence as to the extent to

24    which there's a connection.

25         So for example, for example, the defendants would be          10:06:37

1   permitted in that proceeding to make the argument that, well,

2   let's say hypothetically $10,000 of the account are proceeds

3   traceable to a crime of conviction, as I understand it, the

4   Court's view is that that determination that would be made at

5   that stage as opposed to the jury making it?                    10:06:58

6           THE COURT:  Yes.

7           MR. PANCHAPAKESAN:  Okay.  And just to make a record

8   on this, I know we filed briefing on this, and I understand the

9   Court's ruling, our position, Your Honor, is that this comes

10  down to what the word "nexus" means.  And you know, that's not  10:07:18

11  defined in the statute, but there is, of course, case law, for

12  example, the *Tyson Foods* case we cite, which I think makes for

13  a common sense finding that if a jury is deciding nexus, that

14  we necessarily have to decide before finding a nexus that there

15  is some -- some quantum of connection, and so that's why we     10:07:48

16  think the jury ought to decide that issue.

17          There's a case, for example, we didn't cite this, it's

18  the District of Nevada case.  It's a Ninth Circuit case, 2023

19  Westlaw, 426, 0922, U.S. vs. Hurdace, H-U-R-D-A-C-E.  It's a

20  money judgement case and, of course, the money judgment, that's 10:08:12

21  something that will go to the Court, but it's a case where

22  Court notes that the government seeks criminal forfeiture of a

23  certain amount.  And then the Court says, well, because the

24  government is only showing nexus on a lesser amount, that the

25  money judgement is for that lesser amount.                      10:08:31

1           And so my concern is here that where we're going with

2   the jury instead of a money judgment that would go to a judge,

3   I mean, it's logical that the jury would make that

4   determination of, has the government proved the full extent of

5   the nexus essentially that they are seeking to forfeit?          10:08:49

6           And then last note, Your Honor, is just appears that

7   the government in the first instance did not object to our

8   proposal.  In the verdict form, for example, in some instances

9   in the jury instructions we included language like, "and if so,

10  to what extent should be forfeited," and the government had no   10:09:08

11  objection to that language.  And so we assessed the bank

12  accounts where there is, I think, sort of a cleaner argument

13  about what proceeds are traceable, at a minimum the bank

14  accounts we think the jury is capable of making that

15  determination.                                                    10:09:28

16          So that's our position, Your Honor.

17          THE COURT:  Well, my recollection is I thought

18  Mr. Boyle did make an oral objection to it, the verdict form.

19  But in any event, you've made the record.  And so I'll look at

20  that case, but I at this point am not persuaded that that is --   10:09:45

21  well, I'm persuaded that my procedure meets the contours of the

22  entire statute, and so that's how we will proceed.

23          Let me go through the proposed instructions, and I

24  think I sent you back, I may have sent you back the sort of

25  track change version, but I'm going to look at and use as my     10:10:17

1   guidepost the government's 1935 filing because I, that's where

2   I made my notes, and you'll hopefully be able to follow along.

3          The first instruction is, of course, I removed

4   reference to the superseding indictment and Bill of

5   Particulars.  There were none of those here.  I removed the    10:10:55

6   last paragraph, "A copy of the forfeiture allegation," so on

7   and so forth, "will be given to you."  And of course, in the

8   first paragraph we will have to potentially modify if there are

9   different verdicts that come out with regard to any of the

10  forfeiture allegations, the count references, in other words.   10:11:41

11  So we'll reserve that.

12          Is there any issue with regard to that?

13          MR. BOYLE:  No, Your Honor.

14          MR. PANCHAPAKESAN:  No, Your Honor, and obviously we

15  propose the redlines, which I know the Court will get to, but    10:11:59

16  we have no issues with respect to that.

17          THE COURT:  We are keeping what is the government's

18  Proposed Instruction 2.

19          Any objection, Mr. Boyle?

20          MR. BOYLE:  No, Your Honor.                              10:12:39

21          MR. PANCHAPAKESAN:  Your Honor, on 2, I think in our

22  redline we add a redline that says, "separate consideration to

23  defendant," and I don't think there was an objection to that

24  from the government.

25          THE COURT:  I actually think the reason I did not       10:12:57

```
1    adopt that is because it's referenced elsewhere.

2         MR. PANCHAPAKESAN:  Okay.  The only thing I would add,

3    Your Honor, on Instruction 1, is we included a reference to the

4    scope of Count 1, I believe that's a quote from the prior jury

5    instructions, and that's our request in that respect, and I          10:13:19

6    think that's my redline.

7         THE COURT:  The only concern I had about that is it

8    references the scope of Count 1 but it doesn't for the other

9    counts.  So my sense is if you're going to do that with one

10   count, it should also -- there should also be similar phrasing      10:13:40

11   for the other counts, and so that's why I took it out.

12        MR. PANCHAPAKESAN:  And this may depend obviously to

13   what extent there are convictions.  My understanding from

14   Mr. Boyle is that their forfeiture will proceed as to the -- as

15   to Count 1 so far as Travel Act is concerned.  In other words,     10:14:04

16   if they are not getting a conspiracy conviction but were to get

17   on conviction on Counts 2 through 51, I think that might change

18   their approach.  Mr. Boyle can speak to that.

19        For example, if the Court looks at sort of the

20   preamble of the first instruction, the only Travel Act count is    10:14:22

21   Count 1, and then 52, of course, is the money laundering

22   conspiracy, and then there are substantive money laundering

23   counts that I think apply to Mr. Lacey in property, so I think

24   that's how they parsed it out.

25        THE COURT:  Well, again, here --                              10:14:42
```

1        MR. BOYLE:  That's correct, Your Honor, and that's

2   reflected in the verdict form as well.  It's largely the

3   conspiracies and then select subset of the substantive

4   transactional money laundering counts.  So if there were not

5   convictions on the conspiracies, I think there would be                  10:14:57

6   substantial modifications.

7        THE COURT:  And I will leave you to do that.  But

8   again, in these instructions it tells them to refer back to the

9   prior instructions, so they'll have those instructions as well.

10  So I don't want to encumber them with redundant instructions.           10:15:13

11  And so to the extent you think a preamble is necessary for a

12  description of Count 1, make it very brief, or for the other

13  substantive forfeiture counts.

14       MR. PANCHAPAKESAN:  And as I understand Your Honor's

15  ruling, there will be no issue with us referring back to the            10:15:36

16  prior instructions then in dealing with the phase of the trial,

17  you know, in summation, for example, that there will be no

18  issue of referring back to --

19       THE COURT:  Right.  That's correct.

20       MR. PANCHAPAKESAN:  -- what was instructed on.                      10:15:58

21       THE COURT:  All right.  Now, with regard to the scope

22  here, consistent with my ruling, and then throughout I'm going

23  to remove references related to "and if so how much of that

24  property should be forfeited," and so --

25       MR. BOYLE:  No objection, Your Honor.                              10:16:28

1          THE COURT:  Yes.  I'm going to adopt the Scope of

2     Jury's Determination as proposed by the government.

3          MR. PANCHAPAKESAN:  Your Honor, and I would just note

4     objection on that, which I think I made already.

5          THE COURT:  Yes.  The Standard of Proof Instruction          10:16:49

6     Proposed 4, yours were the same, so I'm adopting that.

7          MR. PANCHAPAKESAN:  Again, for the record, I would

8     note my objection again to the question.

9          THE COURT:  Yes.  Your reference to the amount of

10    property is removed, but otherwise the Standard of Proof is the   10:17:13

11    same as the government's.

12         The Preponderance of the Evidence I'm going to keep as

13    separate, and that is the government's proposed at

14    Document 1935, page 9.

15         MR. PANCHAPAKESAN:  On this, Your Honor, the only          10:17:44

16    reason we included a new instruction is I think the Ninth

17    Circuit instruction is more generic preponderance instruction.

18    We pulled this out in certain instruction, which is specific to

19    forfeiture, sort of a follow-up on forfeiture trials.  We

20    thought it was a little more accurate in our respect.          10:17:59

21         THE COURT:  The Instruction 6 is the same, so I'll

22    adopt that.  Reliance on Evidence Presented During Guilt Phase.

23         With regard to the proposed, government's Proposed

24    Instruction No. 7, again, removing references to the

25    superseding indictment, and so I'm going to adopt the          10:18:44

1    defendants' at page 13.

2         MR. BOYLE:  No objection, Your Honor.

3         THE COURT:  Instruction No. 8, Multiple Bases, I'm

4    keeping that instruction.  As I review it, it is the same as

5    defendants' Proposed No. 10.                                    10:19:30

6         MR. PANCHAPAKESAN:  I think that's right, Your Honor,

7    then in our redline there were two instructions we proposed

8    before that.  One was Separate Consideration and one was

9    Multiple Defendants, and I think the government had objection

10   to those.                                                       10:19:53

11        MR. BOYLE:  I think counsel is correct.  We didn't

12   object, although I think the Court has already noted that the

13   defendants' issue is resolved in other instructions, but

14   neither of those instructions were objectionable by themselves.

15        THE COURT:  All right.  The proposed, government's       10:20:09

16   Proposed Instruction No. 9 at page 13, I feel like this is the

17   preamble that should perhaps go into that first instruction.

18        MR. BOYLE:  We have no objection moving it, Your

19   Honor.  We simply feel it's helpful to have an instruction that

20   gives them a basic instruction of what is forfeitable, but it   10:20:53

21   could be an instruction here or in the preamble, Your Honor.

22   Both would be perfectly acceptable.

23        MR. PANCHAPAKESAN:  Our view on this, Your Honor, some

24   of these, some language I take issue with what is "shall

25   forfeit."  I don't know that that's exactly right.  I think it  10:21:09

1    should say something like "may be required to forfeit."  Like

2    the "shall" implies that, you know, a nexus, however, might be

3    requires forfeiture of the entire asset.  And then this also, I

4    think, lacks the traceability language that's contained in the

5    relevant forfeiture statute.                                    10:21:32

6         THE COURT:  Well, I'll get to that.  So you would

7    prefer that it read, "may forfeit," or just "forfeit"?

8         MR. PANCHAPAKESAN:  "May be required to forfeit to the

9    government."

10        THE COURT:  Is there objection, Mr. Boyle?              10:21:51

11        MR. BOYLE:  Your Honor, forfeiture is mandatory,

12   however, the nexus determination is the jury's question.  So I

13   believe counsel's proposal of "may be required to forfeit" is

14   probably more accurate.

15        THE COURT:  We will adopt that language.                10:22:11

16        And then as to defendants' No. 10, the Proceeds

17   Defined.  So I removed all after the first sentence.  And it

18   seems to be fairly cumbersome, and I think the rest of the

19   instructions cover that, and I don't know why those two

20   paragraphs are necessary.                                      10:23:44

21        Mr. Boyle.

22        MR. BOYLE:  Your Honor, with respect to the last

23   paragraph, we do think it is necessary because the question of

24   an Eighth Amendment issue, whether something is the value of

25   property is greater than the -- than the excessive fines,      10:24:01

1    that's explicitly a question for the Court.  So we are trying

2    to make clear to the jury with this instruction.  The question

3    for that is nexus.  It's not a question of comparing the value

4    of a property to, say, what nexus they see.  That's the sole

5    reason to avoid asking the jury to make a determination that is          10:24:20

6    squarely within the Court's jurisdiction.

7              THE COURT:  Okay.  Let me see if I understood what you

8    said.  So you suggest keeping the last paragraph?

9              MR. BOYLE:  Yes, Your Honor, the paragraph regarding

10   the present value.  Because comparing the value to the amount,          10:24:39

11   I suggest goes towards an Eighth Amendment question for the

12   Court.

13             THE COURT:  All right.  We will keep the last

14   paragraph and remove the paragraph that begins, "Proceeds

15   remain proceeds."                                                       10:24:57

16             Mr. Panchapakesan.

17             MR. PANCHAPAKESAN:  Just so I understand, how does the

18   instruction read now?

19             THE COURT:  So it will read, "Property subject to

20   forfeiture as proceeds of a Travel Act conspiracy means                10:25:10

21   property of any kind obtained directly or indirectly, as the

22   result of the commission of the offense giving rise to

23   forfeiture, and any property traceable thereto, and is not

24   limited to the net gain or profit realized from the offense.

25             The question of the present value of any property that       10:25:37

constitutes proceeds, or was obtained with proceeds, is not

before you.  If the property has the required connection to an

offense, it is subject to forfeiture whether or not its value

has changed."

MR. PANCHAPAKESAN:  I think it would be, Your Honor,          10:25:56

you know, appears the government's support for this instruction

is like Seventh Circuit cases, Eighth Circuit cases.  The

instruction we propose is actually the Seventh Circuit Model on

what "proceeds" means.  It's not limited to the Travel Act or

any particular offense.  "Proceeds" has sort of a wide          10:26:13

applicability.  We think it's a simpler instruction as to what

proceeds are.  And again, the amendment question I don't see as

a significant issue.  I find it confusing.

THE COURT:  So what I understand that you propose is

just taking out "of a Travel Act conspiracy" because then it    10:26:35

will read, "property subject to forfeiture means property of

any kind."

MR. PANCHAPAKESAN:  Right.  I think that's right,

because there may be multiple offenses.  I mean, of course, it

depends if there's conviction, what it's on.  If we are just    10:27:02

talking about Travel Act conspiracy, then it may make sense to

use that language, but if there's money laundering --

THE COURT:  Well, I don't think there's a distinction

in either of the counts anyway, so I'm going to go ahead and

remove "of a Travel Act conspiracy."                            10:27:20

1      MR. PANCHAPAKESAN:  Your Honor, I think we had a prior

2  instruction definition of "traceable to."  It was our 11.  I

3  think comes before this one.

4      THE COURT:  Yes.  I will talk to you about that in a

5  little bit.  And I think I actually, well, I moved it in          10:27:35

6  placement.  That's why I am not getting to it yet.  But what I

7  did with regard to your Forfeiture based on Travel Act

8  Conspiracy, the proposed, government's Proposed Instruction 11,

9  is, and the defendants' is their Proposed Instruction 13, what

10  I did was -- it's not this one -- I thought I did that.  Let's   10:28:10

11  see.  I moved -- after the listing of property, it then

12  instructs the jury beginning to find any of the property

13  subject to forfeiture.  What I did was I moved that to the

14  beginning in terms of the elements, the two elements that were

15  outlined by the defendants, and then I inserted the listing of  10:29:25

16  the property beginning with:  As to Mr. Lacey.  And so I think

17  it just reads better, gives them the instruction, tells them

18  the property to consider.

19      Is there an objection to that?

20      MR. BOYLE:  No objection, Your Honor.                        10:29:52

21      THE COURT:  And I will note that the defendants'

22  redlines "seized from or restrained in," and there is no

23  objection to that?  Mr. Boyle.

24      MR. BOYLE:  My apologies, Your Honor, I didn't quite

25  understand.  Is the Court's question, do we object to the       10:30:14

1    removal of the "seized from or restrained in" language?  We

2    won't object to that no objection, Your Honor.

3              THE COURT:  So we have adopted those strikeouts as

4    well.

5              So your preamble, again, government's 12, Property          10:30:48

6    Subject to Forfeiture for Money Laundering Convictions, I mean,

7    I think you can do it one of two ways.  You can have the

8    conspiracy on the Travel Act description proceed this

9    substantive property listing, and I think that probably would

10   be the better way, and then this money laundering paragraph         10:31:19

11   could proceed the substantive listing of the properties.

12             Does that make sense?

13             MR. BOYLE:  Yes, Your Honor, I think that does make

14   sense and works, Your Honor.

15             THE COURT:  And there was a scope, The Scope of           10:31:55

16   18 U.S.C. 982(a)(1) proposed by the government, was there

17   something similar to that by the defense, Mr. Panchapakesan?

18             MR. PANCHAPAKESAN:  No, Your Honor.  We objected to

19   this instruction in its entirety, and there were some

20   objections that we filed and included in the redline as well.       10:32:18

21   I mean, the short version of it is we think the "facilitation"

22   language is problematic because the statute does not use the

23   term "facilitate."  It uses the term "involved in," and I'm not

24   familiar with the Ninth Circuit case that really defines

25   "involvement" in that manner.                                       10:32:41

1          We cited a case, the *Bital* case, B-I-T-A-L, 76 F.

2     Supp. 2d 1063, which I think is a C.D. Cal case, it calls into

3     question the facilitation theory the government is pursuing.

4     My understanding of "involved in" would be an account that is

5     involved in the money laundering offense that has been charged.          10:33:02

6     And as to my client, for example, investment accounts he holds

7     or bank account he holds, those are not accounts that the

8     government included in the money laundering offenses as being

9     involved in the offense.

10         There's also some language about fees or commissions          10:33:20

11    paid to a money launderer.  That's kind of confusing.  I don't

12    know what that refers to.  I don't think there's been evidence

13    of that, and so our view is this is just unnecessary and

14    confusing.

15         MR. BOYLE:  From the government, Your Honor, the          10:33:36

16    statutory language says "property involved in such an offense

17    is forfeitable," and we believe the jury needs that term

18    "involved in" defined for them.  This is our proposed

19    definition of "involved in," and the defendants haven't

20    proposed a competing definition.  So I don't know how we can          10:33:51

21    give the jury no instruction as to what it means that property

22    is involved in a money laundering offense.  It may have -- they

23    could have proposed edits to this or a competing instruction,

24    but they did not, so the jury is going to be, I submit, quite

25    confused as to what "involved in" means.          10:34:09

1          MR. PANCHAPAKESAN:  Your Honor, the first then is

2    "Money laundering property that was the subject to the

3    financial transaction that constituted the money laundering

4    violation," I don't think we have an objection to that.  I

5    think that's essentially what "involved in" means.  That's the          10:34:25

6    first line of their instruction.

7          MR. BOYLE:  And Your Honor, I think we strongly

8    disagree with that.  But again, there has to be a definition

9    for the jury as to what "involved in" means.  Courts have held

10   that "involved in" is broader than "proceeds."  So we submitted          10:34:42

11   briefing on this I think as well, but there is only one

12   instruction for the Court right now.

13         THE COURT:  Is there evidence of "fees or commissions

14   paid," or are you going to present that?

15         MR. BOYLE:  I don't believe so, Your Honor.  This is          10:34:57

16   just a definition drawn from -- I believe this comes from

17   Mr. Cassella's treatise on the topic.  If the Court is

18   concerned about that specific language "fees or commissions," I

19   wouldn't object to removing that language, Your Honor.

20         THE COURT:  I don't think it's necessary to keep that          10:35:41

21   last paragraph in because there is going to be a separate

22   "traceable" definition, and this sort of characterized what

23   "traceable" means in a different way.

24         MR. BOYLE:  Understood, Your Honor.  We did not

25   originally include a "traceable to" definition.  We included it          10:36:06

1    in instructions like this.  So if the Court is inclined to

2    include a separate "tracing" definition, I think the Court

3    could reasonably remove this paragraph.  That's just not how we

4    laid out our instructions.  So long as the jury is instructed

5    on "tracing," we wouldn't object to that.                    10:36:22

6         THE COURT:  And what about the last paragraph?  It

7    seems redundant to another instruction.

8         MR. BOYLE:  I think that's correct, Your Honor.  It is

9    reflected in other instructions.

10        THE COURT:  All right.  So I will remove No. 3.  I      10:36:39

11   will remove "the property that's traceable," and all after

12   that.

13        MR. BOYLE:  No objection, Your Honor.

14        MR. PANCHAPAKESAN:  I think I noted my objection with

15   the "facilitation" language.                                 10:37:05

16        THE COURT:  The last instruction, the Forfeiture based

17   on Money Laundering Offenses, 982(a)(1), I'm going to do the

18   same thing that I did with the previous Travel Act forfeiture

19   instructions; that is, I'm going to move the paragraph at

20   Defendants' Proposed in Document 1940, page 27, at line 7, "In  10:38:02

21   order for you to find," and put that at the top followed by the

22   listing of the property and assets.  So it will match the

23   previous one.

24        Is there an objection?

25        MR. BOYLE:  If I may ask a question, Your Honor,        10:38:26

'cause I am trying to follow along, I believe the defendants'
modified instructions specifically refer to a nexus.  Is the
Court intending to include the specific "nexus" term?  To be
clear, we don't object to moving the instruction.  The nature
of my objection is simply because, as we noted in briefing, the
defendants drew their Model instructions from the Seventh
Circuit all instructions; however, they left out the Seventh
Circuit Model Instruction defining a nexus.  So if we are going
to use the term "nexus" for the jury, we should include that
definition, because otherwise I think the jury is left without
instruction as to what a nexus is.

        The government's instruction simply called it a
connection with, which I think is somewhat self-evident, but I
would object to giving them the term "nexus" without defining
it, Your Honor.

        MR. PANCHAPAKESAN:  Your Honor, I don't think we have
an objection to using the term "connection."

        THE COURT:  I'm not following where you're at.

        MR. BOYLE:  My apologies, Your Honor.  I'm trying to
follow along.

        THE COURT:  In terms of, sorry, counsel.  Let me -- so
I'm looking at your Proposed Instruction No. 14, beginning at
page 23, and I'm looking at page 26 and you say, "The
government contends that the property described above was
involved in, or traceable to, the money laundering violations

1    for which one or more defendants were found guilty, and it is

2    therefore subject to forfeiture."

3         Then you are go on to say, "If you conclude that the

4    government has proved by a preponderance of the evidence that

5    the property listed above was involved in such offense, or          10:40:38

6    traceable to the violations, you must find that the property is

7    forfeitable."

8         I don't know in the Defendants' Proposed 1940 what

9    you're referring to in terms of their "nexus" reference.  I

10   don't see it, unless I'm not reading from the same thing you       10:41:01

11   are.

12        MR. BOYLE:  My apologies, Your Honor, it's possible I

13   got the wrong spot on the redline.  Then I withdraw that

14   objection, Your Honor.

15        THE COURT:  And so let me just be clear, you don't           10:41:14

16   object to the insertion of the language, "If you find from your

17   consideration," or, I'm sorry, it would start at line 7 of the

18   Defendants' Proposed Document 1940 at page 27, "In order for

19   you to find that the property is subject to forfeiture."  I'll

20   say, "the following property," and then all after that, then      10:42:02

21   list the property.

22        Mr. Boyle.

23        MR. BOYLE:  No objection, Your Honor.  I just looked

24   at the language.

25        THE COURT:  And the Special Verdict Form I'll keep.          10:42:24

1    The "traceable" definition, I know I saw it in here, and I

2    intend to include it.  I just -- I might have just moved it in

3    the redline, but I do intend to include the "traceable"

4    definition.  I just can't find it off the bat, and it's a

5    fairly short definition.                                          10:42:59

6          MR. BOYLE:  No objection, Your Honor.  We are fine

7    with that instruction.

8          THE COURT:  Oh, okay.  So it would just state, "The

9    term 'traceable to' means that the acquisition of the property

10   is attributable to the offenses charged in," and we would have  10:43:26

11   to delineate the counts, as opposed to sources other than these

12   offenses.

13         MR. BOYLE:  Yes, Your Honor.  My only suggestion, I

14   believe this should probably go after the "proceeds"

15   definition, and it should refer only to Count 1 because         10:43:50

16   "traceable to," that language is used in the "proceeds"

17   definition.  With respect to the money laundering counts, they

18   use the "involved in" language, which is different.  So I

19   wouldn't want to confuse the jury as to which is "proceeds"

20   versus "involved in," but the language in the instruction is    10:44:07

21   not objectionable.

22         THE COURT:  Do you agree with that, Mr. Panchapakesan?

23         MR. PANCHAPAKESAN:  I think it should apply to both.

24   For example, 18 U.S.C. 982(a)(1), which is the forfeiture

25   statute tied to money laundering, says, "The Court, in imposing  10:44:21

1    sentence on a person convicted of an offense in violation of

2    section 1956, 1957 or 1960 of this title, shall order that the

3    person forfeit to the United States any property, real or

4    personal, involved in such offense, or any property traceable

5    to such property."                                          10:44:45

6         And so there is traceability language in the

7    applicable money laundering forfeiture statute, so I think it

8    applies to both.

9         MR. BOYLE:  That's a fair point, Your Honor.  I agree

10   with counsel.  That makes sense.                            10:44:59

11        THE COURT:  So why don't I do this:  I'll include in

12   that in the money laundering instruction, "The real or personal

13   property was involved in or traceable to."

14        All right.  That's all I have on the instructions.

15   Was there anything I missed?                                10:45:34

16        MR. PANCHAPAKESAN:  Your Honor, we proposed a First

17   Amendment instruction at the end, and the basis for that

18   instruction is it appears that the government's theory here on

19   forfeiture is that every adult ad on Backpage was in fact an

20   act for prostitution, and it's, therefore, all the proceeds are 10:45:49

21   tied to an offense, and we argue there is a First Amendment

22   presumption in that respect, and that the government has a

23   burden on overcome it, and that -- so we are trying to do so is

24   to discern the ads as opposed to the millions with respect to

25   which they are seeking forfeiture, and so we think that there's  10:46:13

```
 1    value in having that instruction here in the context of

 2    forfeiture.

 3             THE COURT:  Mr. Boyle.

 4             MR. BOYLE:  Your Honor, we my apologies, Your Honor,

 5    we object to that instruction.  I think that was Document 1943      10:46:28

 6    at page 9, but our summary is the jury has already been

 7    instructed on the First Amendment, and there's no need for any

 8    further instructions here.  We also cited some case law that

 9    their instruction, the case law underlying their instruction

10    was not applicable, and I -- we have a fairly lengthy response.    10:46:50

11    I refer the Court to that.  Again, that's 1943 at 9, 10, 11,

12    but we don't believe this instruction is necessary.

13             To the extent the jury has already found the

14    defendants guilty of the relevant charges, the First Amendment

15    would not apply here.                                              10:47:11

16             THE COURT:  And that's the way that I view it; that

17    they are looking at the particular counts, and they already

18    have a jury instruction on the First Amendment.  And if there

19    is a conviction on any of those Travel Act counts, then they

20    have found that the First Amendment does not apply.  And so to     10:47:27

21    insert a First Amendment instruction as to the totality of the

22    forfeiture, I think it would just confuse things, so I'm not

23    going to give it.

24             All right.  Anything other that I missed with regard

25    to those jury instructions?                                        10:47:47
```

```
 1              MR. PANCHAPAKESAN:  On my end, no, Your Honor.

 2              THE COURT:  Mr. Boyle.

 3              MR. BOYLE:  Nothing from the government.  No, Your

 4    Honor.  Thank you.

 5              THE COURT:  All right.  We will endeavor to perfect       10:47:56

 6    those instructions and send the modified final draft to you.

 7    We'll leave the spaces open where the respective potential

 8    counts would be returned and that way we can insert those

 9    immediately, and I think that's all I have with regard to it.

10              Oh, I did get the names of the two individuals you        10:48:24

11    intend to call, Mr. Panchapakesan.  And I'm sorry if this is a

12    repeat question, those individuals were not on your original

13    witness list; correct?

14              MR. PANCHAPAKESAN:  They were not, Your Honor, no.

15              THE COURT:  Well, I'll have to then question the jury     10:48:45

16    at least as to those proposed witnesses in order to just get a

17    record whether or not anybody is familiar with them.  Are they

18    local?

19              MR. PANCHAPAKESAN:  They are both local, yes, Your

20    Honor.                                                             10:49:00

21              THE COURT:  All right.

22              MR. STONE:  And --

23              MR. LINCENBERG:  I had another point.

24              MR. BOYLE:  Your Honor --

25              THE COURT:  Wait.  Mr. Boyle, go ahead.                  10:49:11
```

1       MR. BOYLE:  Your Honor, those, as you noted, were not

2   disclosed.  One of those witnesses has been in court for

3   virtually the entire trial, that will be Mr. Quigley.  So we've

4   notified the defense that we may be raising an objection under

5   Rule 615 to having a witness testify whose watched the entire        10:49:28

6   case.  We've notified them of that objection, and I think will

7   raise it if we do proceed to a forfeiture phase, Your Honor.

8           THE COURT:  Is Mr. Quigley present?

9       MR. LINCENBERG:  No.  He has COVID.

10          THE COURT:  All right.  All right.  Yes, well, raise        10:49:45

11   the objection sooner rather than later so I don't have to delay

12   proceedings.

13          MR. BOYLE:  Will do so immediately, Your Honor.

14          THE COURT:  All right.  Mr. Stone.

15          MR. STONE:  No, just that I think we're raising it.  I      10:50:02

16   don't know if we need to do anything else.  This is a witness

17   who has been here for the whole trial.  The defense invoked

18   Rule 615, the rule of exclusion.  It doesn't seem right that he

19   now should be testifying in trial.

20          MR. LINCENBERG:  Well, if we call him, he is going to       10:50:18

21   be in the nature of a summary witness somewhat like government

22   agents, but the Court can address it at the time.  We may not

23   need to call him, so we can deal with it.

24          THE COURT:  Well, since the rule was invoked, I would

25   agree that it's improper to call somebody whose been sitting       10:50:32

```
1    through the duration of the trial.  And in particular, I notice

2    a number of people have been not only just attending the trial,

3    but also the arguments and rulings on the law, and so on and so

4    forth, and so I think it's entirely improper, and so that's my

5    preliminary ruling unless you give me some compelling reason.        10:50:54

6    But so as far as I can see, Mr. Quigley should not appear.

7            MR. LINCENBERG:  I don't think we'll argue it right

8    now, Your Honor.  If we feel the need to, then we'll argue it

9    later.  We had a different issue we wanted to raise.

10           THE COURT:  And what is that?                                 10:51:14

11           MR. LINCENBERG:  Your Honor, we received last night

12   Jencks material from involving witness Quoc Thai.  We had a

13   copy printed out.  Perhaps I can provide it to the clerk and

14   maybe we can mark it for the record next in order so the Court

15   has a copy while I discuss it.                                       10:51:35

16           Do you have an exhibit number we can --

17           THE COURT:  Do we have an alphabet particular exhibit

18   like A?

19           COURTROOM DEPUTY:  Oh, the next number?

20           THE COURT:  We can just temporarily assign it --             10:53:25

21           MR. LINCENBERG:  We can even --

22           THE COURT:  -- Exhibit A.

23           MR. LINCENBERG:  So Your Honor, with regard to Exhibit

24   A, Exhibit A first consists of an e-mail from Mr. Stone

25   providing this to us yesterday at 5:30 p.m.  The e-mail behind      10:53:42
```

1    it is an e-mail from Quoc Thai discussing -- forwarding a copy

2    of this, and then there's a 91-page report which he and

3    apparently a Mr. Verzosa prepared, which is an asset tracing

4    document.  This is clearly Jencks material that related to

5    Mr. Thai's testimony that was never provided, in violation of          10:54:16

6    Jencks, in violation of the Court's order at Docket 730 about

7    dates for disclosures and so forth.

8           And just to give the Court a brief overview of the

9    document, the document discusses several issues with respect to

10   creation of foreign entities with respect to purposes for the          10:54:46

11   foreign entities.  There are statements by Mr. Ferrer to

12   Mr. Thai that are in there.  This is a document that we would

13   have used in cross-examination both of Mr. Thai as well as of

14   Mr. Ferrer.

15          Just a couple of quick examples; for example, right            10:55:08

16   from the beginning Mr. Thai discusses this company, Posting

17   Solutions, and Mr. Ferrer's discussion of Posting Solutions

18   being a company that was created in, I think it was 2017.  And

19   just as an example, if the Court recalls, a large part of the

20   government's argument was to talk about Mr. Brunst having this         10:55:35

21   big role in creating various entities, and being the officer,

22   the president of various entities and the like, part of our

23   response was talking about how his role -- that there were CFOs

24   at Backpage involved.  Mr. Gage, for example, in the post-2015

25   period, and I think the Court recalls some of the arguments we         10:56:01

1    gave in that regard.

2         The document from paragraph one talks about how

3    Posting Solutions, Michael Gage was the president, was involved

4    in the creation, was the sole signatory on the account.  It's a

5    document we would have used probably with both witnesses to          10:56:20

6    explore that.  There's other detail on Posting Solutions that's

7    discussed in both -- I went back and looked at the transcript

8    of Mr. Ferrer's testimony as well as this document, I won't go

9    through all the detail with the Court right now, but it's

10   relevant.                                                            10:56:36

11        There is other issues, for example, there is

12   discussion about the credit card issues and the company

13   shutting them out because of bad press, and Mr. Ferrer's view

14   about this.  This background testimony document would have been

15   relevant in our cross-examinations of these witnesses right on       10:56:58

16   point, and frankly also contradictory to some of the

17   statements --

18        THE COURT:  Well, let me ask you, in your review of

19   that with regard to his view on the credit card issue, what was

20   it that he said that you thought is substantially different          10:57:15

21   than what he testified to?

22        MR. LINCENBERG:  Well, some of it is not substantially

23   different from what he testified to.  You know, you have to --

24   it has to be parsed out.  But for example, Mr. Ferrer, it

25   contradicts some of the testimony he gave on cross.  It would        10:57:36

1    have allowed me to better establish that.

2         Also, when the Court precluded me from --

3         THE COURT:  Like what?  I just want an example.

4         MR. LINCENBERG:  Okay.  Let me give you an example I

5    was going to use.  It happens to be popping into my mind.  When          10:57:48

6    I was attempting to impeach Mr. Ferrer on document GLCF37, and

7    that document, if the Court may recall, was when the government

8    objected to as privileged, and we said this is material that

9    under the joint defense agreement was permissible for us to

10   use.  The Court made -- the Court precluded me from getting            10:58:11

11   into that document.  One of the bases is the Court said not

12   impeachment.  Some of what is in this document is directly

13   contradictory to what Mr. Ferrer said in that.

14        There is testimony that this document has discussions

15   in it about Mr. Ferrer being the UBO, the ultimate beneficial          10:58:31

16   owner, of foreign entities, like Ad Tech BV, in connection with

17   Bank Frick, you know.  The government tried to convey the

18   flavor that this was all a creation of the owners and so forth.

19   Certainly, you know, part of my cross-examination of Ferrer was

20   talking about how there were other reasons, reasons for these          10:58:55

21   foreign entities such as that were beneficial to him, such as

22   tax benefits, and the fact that you needed foreign entities in

23   order to get foreign bank accounts and the like.

24        It all relates to this:  You know, we can do some

25   follow-up briefing on this if the Court is inclined to receive        10:59:17

1    it.  We got this last night in the middle of when we were going

2    through other things, but it certainly -- you know, Jencks is

3    not -- the issue of whether there's a Jencks violation seems to

4    me it's crystal clear with regard to Quoc Thai.

5            The issue as to whether this is also material that          10:59:37

6    should have been turned over because it was relevant

7    impeachment material, Ferrer, and potentially prior statements

8    required to be produced by Ferrer, might require further

9    evidentiary hearing.  If the government comes back and says:

10   Well, you know, it's not technically required under 3500          10:59:55

11   because there is no reference to him adopting them.  It's clear

12   from this document that Mr. Ferrer was working closely with

13   government agents in putting together tracing analyses, working

14   with them on their money laundering forfeiture analyses.

15           And very, very little that I can recall, barely          11:00:16

16   anything from the interviews we received from Mr. Ferrer, got

17   into any of this stuff, and yet it's clear that there is

18   lengthy documents of statements from Mr. Ferrer that are

19   relevant there.

20           So I can go on with other examples in here.  I think          11:00:36

21   that obviously we're presenting to the Court a 91-page document

22   that the Court obviously hasn't had a chance to look at yet

23   that is a clear Jencks violation, and we believe there's other

24   discovery violations and some of which to flesh out.  We might

25   need an evidentiary hearing.          11:01:02

1        So as a remedy for this, Your Honor, first and

2   foremost we ask for a dismissal of the case.  This is an

3   important discovery violation, and we believe that remedy is

4   appropriate.  If and only if the Court doesn't give that

5   remedy, it should at a minimum completely strike the testimony       11:01:19

6   of Quoc Thai and any testimony that Ferrer gave relating to

7   wire transfers and money flow and the like.

8        And obviously the result of striking Quoc Thai's

9   testimony would clearly mean a dismissal of all of the money

10   laundering and forfeiture counts.  There was zero evidence of       11:01:44

11   money flow or particular wire transfers other than the summary

12   documents that were introduced through Mr. Thai.

13        So that's what we would present to the Court and ask

14   for that relief.

15        MR. STONE:  Your Honor, we disclosed this because          11:02:03

16   Quoc Thai is a potential witness and this was an e-mail that he

17   sent October 18th after he testified at trial.

18        With respect to the attachment, this was primarily

19   authored by Special Agent Lyndon Versoza.  It is -- there's --

20   Mr. Thai contributed to it.  That's stated in the e-mail, but       11:02:34

21   the primary author was Special Agent Versoza.  It's listed as a

22   draft.  It is analyzing primarily the bank docs, all of which

23   have been disclosed, and most of these 91 pages just trace bank

24   transactions that are from the underlying bank records that the

25   defendants have had for years.                                     11:02:57

1  It really looks -- they basically are draft summary

2 exhibits.  It's in similar format to the summary exhibits that

3 were used by Mr. Thai and that were produced that relate to

4 money laundering counts which, again, have been produced for

5 years.                    11:03:19

6  These transactions relate more to forfeiture, relate

7 more to the seizure of the assets, and that's why, because it

8 was shared by Mr. Thai, it would fall under Jencks because it

9 might relate to his testimony related to forfeiture and all of

10 the tracing that relates to the seizure of these assets, but 11:03:37

11 because it was -- with respect to Mr. Ferrer, there's nothing

12 that would make this a statement adopted by Mr. Ferrer, so

13 that's not the case whatsoever.

14  In addition, much of the information that's here has

15 been included in seizure warrants and other warrants that have 11:04:04

16 been produced.  So this is information that has been produced

17 previously within this case and within the litigation which

18 would include the civil forfeiture in CDC A.

19  So there's nothing new here.  It's information related

20 to underlying bank records that defendants have had.  It 11:04:26

21 primarily just traces those transactions.  It was authored

22 primarily by a nonwitness, and it relates primarily to the

23 forfeiture aspect, which is why, because Mr. Thai sent the

24 e-mail because it relates to his potential testimony which

25 could come in the next week or so.  That's why it was produced, 11:04:48

1    Your Honor.

2          THE COURT:  Very brief reply, please.

3          MR. LINCENBERG:  Your Honor, first, counsel is looking

4    to downplay Mr. Thai's role in this.  I mean, Mr. Thai's e-mail

5    says -- talks about this being a document that Lyndon, I          11:05:09

6    believe Lyndon is this guy, Versoza, Lyndon and I put together

7    years ago.  The idea whether somebody was the main author or

8    not, this is Mr. Stone's representation, the two of them put it

9    together.  It's Quoc Thai's document.  He's their tracing guy.

10   This is a document from him.                                      11:05:30

11         You know, the fact that they have a draft stamp on it

12   doesn't make it any less a statement.  They can keep a draft on

13   whatever they want.  This is a document that was -- this is the

14   updated version of 11-4-2021.  If there's a later version, we

15   should get that as well.  This is a document.  This is prior      11:05:51

16   statement from Mr. Thai.

17         And the last thing I would say is that this clearly

18   does contain Ferrer's statement.  I will give the Court one

19   more example.  This is at page 47 of the report where Ferrer is

20   talking about credit cards, cutting out because of the bad        11:06:11

21   press and so forth.  He says that the entities, and he's

22   referring to entities that were created I think at the time of

23   the sale in 2015, said the entities existed for the sole

24   purpose of funneling to Backpage accounts otherwise prohibited

25   credit card payments for Backpage ads.  I think he's also         11:06:36

referring to Posting Solutions and Website Technologies, so not just entities that were created then.

These are statements that Ferrer is making that were the subject of a lot of cross-examination and testimony, and this is their main witness.  You have direct Jencks on Quoc Thai.  I believe it's Jencks with regard to Ferrer, and clearly it's impeachment material.  It's a discovery violation and it's a very important one.  And so we submit to the Court that it's important for the Court to make such a finding.  And then if the Court needs further evidentiary hearing, we can do that, but there should be a remedy with some teeth here.

THE COURT:  Well, I am going to ask for further briefing because it's a 91-page document, and the briefing is going to do two things:  Number one, the government is going to point out what is it that was previously disclosed that is referenced in here?  As you say, if it was in warrants or other documents that have been previously disclosed, then I want to know that.  That's related to the Jencks allegation.

Number two, if as you say there are statements that contradict or could have been used as impeachment material, I want you to point that out.  I want you to bring to me whatever the witness testimony was, whether it be Quoc Thai or Mr. Ferrer, and I want you to then go through this 91-page document and tell me how it is that it is impeachment and how it would have made any potential outcome any different, and

1    then I'll take a look at it and determine whether or not I need

2    an evidentiary hearing.

3            I think in terms of producing, I'm reminded that both

4    sides have late produced material throughout the course of the

5    proceedings.  I have witnesses that appeared that weren't even          11:08:53

6    on our witness list from the defense.  I mean, it really is one

7    of the most frustrating aspects of this entire case.  No one

8    seems to adhere to deadlines, the rule as it's stated in the

9    federal rules, or my orders.  So this really doesn't come as a

10   surprise, although it should be.  Counsel of your caliber              11:09:24

11   should not be handing me documents late.  There should be no

12   surprises.  That's what disclosure is all about.

13           So your briefing will provide all of that, and --

14           MR. LINCENBERG:  Your Honor, can I ask that the third

15   point be discovered in the briefing, which is that counsel            11:09:45

16   produce all e-mails between Quoc Thai and Ferrer or his counsel

17   and government counsel, as well as notes or e-mails summarizing

18   statements made to him by Ferrer?

19           THE COURT:  On what basis?

20           MR. LINCENBERG:  On the basis that it's relevant to           11:10:07

21   this Jencks material that was withheld.

22           THE COURT:  Well, we don't know that.  I don't know

23   it.

24           MR. LINCENBERG:  Well, that's --

25           THE COURT:  Unless you parse through it and looked at         11:10:19

UNITED STATES DISTRICT COURT

1     the record.

2          MR. LINCENBERG:  That's why I asked that it be

3     produced in discovery.  We know from the document that Ferrer

4     is talking to these agents about these issues --

5          THE COURT:  I am not going to do that.  I am not going     11:10:30

6     to do that at this juncture.  If in your briefing I see some

7     reason for that to happen -- and I am not going to ask them to

8     duplicate what they've already produced to you.  What I'm

9     asking for them to do is list out where it was it was produced,

10    what was relevant to whatever is in here, what they produced     11:10:47

11    that you already have notice of, and but I'm not going to do

12    that.

13         So what I would ask is no more than 20 pages each, and

14    you'll get that to me -- I would hope to have it by Monday,

15    Monday at noon, and I will look at it and see what happens       11:11:13

16    next.  And that's all I'll take right now.  All right.  We are

17    adjourned.

18         I will note for the record that since Mr. Eisenberg is

19    the only counsel not present, that I will essentially make a

20    note that he's joining in on everything that we've discussed.    11:11:44

21    Unless there is an objection that he wishes to raise separate,

22    I will give him the ability to do that.

23              (Recess was taken at 11:11 a.m.)

24

25

1

2

3                          **C E R T I F I C A T E**

4

5          I, HILDA E. LOPEZ, do hereby certify that I am duly

6   appointed and qualified to act as Official Court Reporter for

7   the United States District Court for the District of Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9   a full, true, and accurate transcript of all of that portion of

10  the proceedings contained herein, had in the above-entitled

11  cause on the date specified therein, and that said transcript

12  was prepared under my direction and control.

13          DATED at Phoenix, Arizona, this 10th day of November,

14  2023.

15

16

17                              s/Hilda E. Lopez_____

18                              HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT