# Exhibit 8



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000283711 | **Location:** | US Postal Inspection Office |
| **Investigation Name:** | Carl Allen Ferrer | | 251 W Lancaster Avenue |
| **Date:** | February 5, 2019 | | Fort Worth, TX 76102 |
| **Time:** | About 10:30 a.m.-4:30 p.m. | | |
| **Participant(s):** | Carl Ferrer, Owner, Backpage, et al | | |
| | Nanci Clarence, Counsel to Ferrer | | |
| | Jonathan Baum, Counsel to Ferrer | | |
| | Kevin Rapp, Asst U.S. Attorney | | |
| | Reggie Jones, Sr Trial Atty, DOJ-CEOS | | |
| | Andrew Stone, Asst U.S. Attorney | | |
| | Lyndon Versoza, U.S. Postal Inspector | | |
| | Richard Robinson, Special Agent, IRS-CI | | |

On the above date, all of the above listed parties met at the US Postal inspection office at the above address.

Prior to the interview, Counsel for Ferrer and counsel for the US met to discuss parameters of the discussion. At the beginning of the meeting they discussed as in other interviews keeping the discussion away from JDA-related [Joint Defense Agreement-related] material.[1]

During the meeting, Carl Ferrer (FERRER) went through memoranda of interviews (MOI's) that had been prepared from earlier interviews. FERRER had previously reviewed these MOI's with his counsel and had unmarked copies of the MOI's in front of him during the interview. The MOI's covered in this interview were from the interviews on April 5, 2018, April 17-18, 2018, and May 10, 2018 as well as a phone conversation on July 23, 2018.

FERRER provided the following information:

*[Paragraph numbers included in this memorandum refer to paragraphs in the prior MOI's. FERRER provided correction and clarification on several of these items and provided additions or context on others.*

---

[1] Jonathan Baum, Ferrer's counsel, had previously defined JDA material as any material subject to the Joint Defense/Common Interest agreement signed in June 2017 or other agreements binding on Mr. Ferrer or his counsel. This includes information shared with them by counsel for other parties, including factual materials, analysis, investigative materials, reports, memos, interview notes, legal research, correspondence, or other documents.

DOJ-BP0004900352

121. Payment Solutions or Ad Tech BV would have been the entity set up in Amsterdam by BRUNST, FERRER and MOON, rather than Posting Solutions. [Replace "Posting Solutions" with "Payment Solutions BV or Ad Tech BV."]

Paragraph 147

122. FERRER met David Elms at least twice. [Add "at least" before "twice."]

Paragraph 149(a)

123. FERRER, LARKIN and SPEAR would all have said no to suggestions to remove ads with TER links. [Add ", LARKIN and SPEAR," after "FERRER."]

Paragraph 153

124. FERRER spoke with detectives in Dallas, but not Los Angeles. [Remove "and Los Angeles."]

125. McDougall, VAUGHT and PADILLA went to San Francisco for a meeting with detectives.

Paragraph 158

126. FERRER told this to MOON for shock value rather than MOON saying this to FERRER. It's impossible to run the business with constant bad news. [Replace "MOON told FERRER" with "FERRER told MOON."]

127. MOON readily agreed with FERRER'S comment and repeated it to others. FERRER heard MOON do this when FERRER was on the phone and MOON was talking with LARKIN in and other attorneys in person. [Replace ¶158(a) with "MOON readily agreed with FERRER. FERRER heard MOON relay these comments to LARKIN and other attorneys."]

Paragraph 174

128. MOON told FERRER that there would be more meetings and strategy with the "Bankers" after FERRER left.

Paragraph 177

129. After the arrest, FERRER was not instructed to not send out agendas, but was told to use more secure e-mail. [Replace "was instructed not to send out meeting agendas" with "was told to use more secure e-mail."]

130. FERRER began using ProtonMail after that.

Paragraph 188

131. HYER marketed adult ads and gun ads as well as ads for pets, employment and truck driving. [Add "adult" and "gun" so that the sentence reads, "HYER mostly marketed adult, pet, employment, truck driving and gun ads."]

Paragraphs 190 & 191

132. It was LARKIN'S suggestion to track stories and maintain a list of friendly reporters. [Change "McDougall" to "LARKIN" in ¶190.]

133. They didn't find any friendly reporters. [Add to the beginning of ¶191(b),