**KESSLER LAW GROUP**
Eric W. Kessler, SBN 009158
9237 E. Via de Ventura, Ste. 230
Scottsdale, AZ 85258
(480) 644-0093 phone
(480) 644-0095 fax
Eric.KesslerLaw@gmail.com

**FEDER LAW OFFICE PA**
Bruce S. Feder, 004832
2930 E. Camelback Rod., Ste. 160
Phoenix, Arizona 85016
(602) 257-0135 phone
bf@federlawpa.com
*Knapp Counsel*

*Attorneys for Defendant Scott Spear*

*(Co-Counsel listed on following page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. 2:18-cr-00422-DJH |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS' REPLY TO** |
| v. | ) | **UNITED STATES' RESPONSE** |
| | ) | **TO FIRST SUPPLEMENT TO** |
| | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DISMISS OR TO STRIKE** |
| | ) | **TESTIMONY AND REQUEST** |
| | ) | **FOR A HEARING DUE TO THE** |
| | ) | **GOVERNMENT'S JENCKS AND** |
| | ) | **BRADY/GIGLIO VIOLATIONS** |
| Scott Spear, | ) | |
| | ) | (The Hon. Diane J. Humetewa) |
| Defendant. | ) | |

1

Gary Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD MARELLA BOXER WOLPERT,
NESSIM DROOKS LINCENBERG RHOW, PC
1875 Century Park East, 23rd Floor Los
Angeles, California 90067-2561
Telephone: (310) 201-2100
Fax: (310) 201-2110
glincenbrg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Paul J. Cambria (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell Paris (NY Bar No. 4480166, *admitted pro hac vice*)
LIPSITZ GREENE SCHIME CAMBRIA LLP
42 Delaware Avenue, Suite 120 Buffalo,
New York 14202 Telephone: (716) 849-1333
Fax: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

2

Defendants, through counsel, reply in opposition to the Government's above-entitled Response (Doc. 1990). Defendants' First Supplement is Doc. 1972 and filed November 15, 2023.

In setting a due date for the Government's Response, the court instructed the Government to explain "…why the late disclosure, and do be very specific in terms of your answer." (R.T. 11/17/2023, 12:9-11)

The Government alleged and argued many things in its Response, but one thing the Government did not do was explain why the disclosure was so late. The Government says nothing about how it managed not to produce the 18 Ferrer emails earlier—just that Mr. Versoza saved the emails to his disk to preserve them for later disclosure, and to avoid the automatic delete function that the Government describes. Why did Mr. Versoza not produce them to the prosecutors when Mr. Rapp sent his email regarding the Jencks deadline on January 8, 2019? (Doc. 1990, p. 4 and Exhibit 3 to Response) The response says nothing about this. The Government instead focuses on how quickly it produced them <u>after the close of evidence</u> once the Government realized the emails were not produced—which is just handwaving and a distraction.

The prosecutors explained Mr. Versoza saved these emails to his disk because the USPIS email system automatically deletes old emails. This begs the question: what additional emails of Mr. Ferrer were NOT saved and were automatically deleted?

Did Mr. Rapp, or any other member of the prosecution team, ask Mr. Versoza for the Ferrer emails prior to trial? If not, why not? How could the Government determine

3

whether the emails constituted *Jencks/Brady/Giglio* material without seeing the emails? Conversely, if the prosecutors asked Mr. Versoza for the emails, did Mr. Versoza produce them?  If not, why not?  If so, why were they not disclosed until after evidence was closed?

Regarding Mr. Rapp's January 8, 2019, email to "the prosecution team," the Government's Response does not indicate whether Mr. Versoza replied to that email.  Nor does the Response confirm that Mr. Versoza received Mr. Rapp's email.

Mr. Rapp's January 8, 2019, email also alerted all recipients that "1/14" (presumable 2019) was the date the prosecutors would review the witness list "to determine if all statements have been forwarded to Relativity."  (Doc. 1990, p. 4)  Mr. Ferrer was on the witness list.  The Response claims Mr. Versoza understood that emails with trial witnesses should be disclosed to the prosecutors, "even when the subject of the emails do (sic) not apply to the witness's trial testimony." (Doc. 1990. P.4)  Finally, the Government claims that Mr. Versoza reviewed a sub-folder containing the Ferrer emails on November 9, 2023, and determined that "the emails were saved in a manner indicating to Inspector Versoza they had been previously produced."  (Doc 1990, p. 2)  The Government does not explain how the "manner" in which the emails were saved led Mr. Versoza to believe the emails had been produced, nor on what basis Mr. Versoza could rely on the manner of saving the emails to be confident that the emails had been disclosed.

The Government's explanation does not explain (1) whether Mr. Versoza received the January 8, 2019, email; (2) whether Mr. Versoza responded to anyone regarding Mr.

Rapp's email; (3) what the prosecution team did on January 14, 2019 to determine if all statements have been forwarded to Relativity; (4) and why Mr. Versoza thought, on November 9, 2023, the sub-folder containing Mr. Ferrer's emails had been disclosed. (Doc. 1990, p. 3)

Absent from the Government's Response is any Declaration from Mr. Versoza, or anyone else, regarding his part in suppressing this evidence.

The Government's claims (1) "The United States promptly disclosed the Ferrer Forfeiture emails upon learning they had not been produced," and (2) "While the Ferrer Forfeiture Emails did not relate to Ferrer's trial testimony; the lack of prior disclosure was entirely inadvertent," are not legally recognized excuses to a *Jencks/Brady/Giglio* violation.

In *Brady v. Maryland*, 373 U.S., at 87, 83 S.Ct., at 1197, held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution." In *Giglio v. U.S.*, 405 U.S. 150, 154 (1972), "whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government."

The Government cites *United States v. Dupuy*, 760 F.2d 1492 (9th Cir. 1985) to suggest the Government's inadvertence is a viable excuse for nondisclosure of *Jencks/Brady/Giglio* material. *Dupay* is distinguished from the instant case, as it concerned the Government's failure to produce an edited version of the original witness statement, yet the Government had produced the original, unedited version. As such, the

defense already had the entirety of the witness' statement.  The Court did not excuse the Government's failure to produce the edited version because it found the Government acted in good faith or was simply inadvertent.  Instead, the Court found the edited, undisclosed statement to lack materiality.

Blaming Mr. Versoza is of no benefit to the Government, as Mr. Versoza is part of the investigation team for the Government.  In *U.S. v. Wood*, 57 F.3d 733 (1995), the Ninth Circuit explained that, for *Brady* purposes, the investigators and the prosecutor were the same.  "The government cannot with its right hand say it has nothing while its left hand holds what is of value. *United States v. Endicott,* 869 F.2d 452, 455 (9th Cir.1989); *cf. Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). The government in the form of the prosecutor cannot tell the court that there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant."

Having failed to address what the Court specifically asked it to address, the Government focuses on a different argument; namely, the emails were not *Jencks/Brady Giglio* material, so it does not matter when the emails were disclosed.  This argument lacks merit and is a red-herring designed to distract this Court from what interested the Court the most – the "very specific" reasons the emails were not disclosed.

Mr. Ferrer's plea agreement required his cooperation in all facets of the investigation, including assisting Mr. Versoza and others with identifying assets subject to foreclosure.  According to the Response, Mr. Ferrer sought the information about

Backpage.com's funds in numerous attorneys' IOLTA trust accounts from Stephanie Parks. Upon receipt of that information, Mr. Ferrer attached the spreadsheet to his own email and forwarded it on to Mr. Versoza. (Doc. 1990, p. 9-10)

*Jencks* material includes statements made or adopted by the witness. Consistent with his obligations to the Government under the plea agreement, Mr. Ferrer located, assembled and transmitted the IOLTA trust account information to the Government. If Mr. Ferrer did not believe that the IOLTA spreadsheet accurately informed the Government about those Backpage.com assets, Mr. Ferrer could hardly be fulfilling his obligations to the Government. Mr. Ferrer believed the information in the attached spreadsheets to be accurate and "adopted" that information for purposes of *Jencks* into his own emails.

The Government claims that the emails are not Jencks material because they referenced attachments to the emails. The Government cited cases where Courts determined that attachments to witnesses' emails were not *Jencks* material. For example, in *U.S. v. Reed*, 575 F.3d 900 (9th Cir. 2009), the defense sought the production under *Jencks* of notes taken by an investigator during an interview, which were later destroyed when the report was typed up. The report was not the statement of a witness, nor was the report adopted by that witness. In *United States v. Bettencourt,* 614 F.2d 214, 215-16 (9th Cir. 1980), an investigator testified about what was in another officer's report. The statement was not that of the witness. In *United States v. Blas*, 947 F.2d 1320, 1327 and n.6 (7th Cir. 1991), an investigator testified to what he read in another state police

officer's report.  Again, this other report was not the investigator's statement.  None of these cases are factually similar to the instant case.

The Government next argues that Ferrer's emails cover previously disclosed subjects.  This is irrelevant in the context of Defendant's First Supplement. The purpose of *Jencks* is to allow the defense to know what the witness has said previously.  The defense can determine whether there may be impeachment (*Giglio*), or exculpatory (*Brady*) information contained therein.  Such is the case at hand, regardless of whether the subject matter of the withheld evidence was "covered" by other documents.  "Other documents" do not include Mr. Ferrer's prior statements, which can be used for impeachment.

The Government repeatedly refers to the undisclosed Ferrer emails as "forfeiture emails."  Saying so repeatedly does not change the impeachment value of the emails during trial.

The Government tries to diminish the materiality of what was valuable impeachment material by arguing that Mr. Ferrer was only cross examined on what was left in his attorney's IOLTA account, as opposed to just how much of Backpage.com's assets were made available to Mr. Ferrer to conduct his defense.  (Doc. 1990, p. 6-8)  The Government quoted a portion of a cross examination from the September 26, 2023, a.m. transcript at page 8, purportedly about how much Mr. Ferrer's lawyers had been paid so far.  A review of that transcript and page does not show any such testimony.

Regardless of the apparent scrivener's error by the prosecution, the Court should focus on the October 10, 2023, a.m. transcript at page 100:

8

Q. When you provided that accounting, <u>what's your understanding of what the amount was that had been placed in the attorney trust account?</u>
A. I don't recall.

MR. RAPP: I'm going to object. This has been asked and answered.
THE COURT: Well, no, it has not. But he answered he doesn't remember.

THE WITNESS: I don't recall.


BY MS. BERTRAND:
Q. Do you have an estimate?
A. I do not.
Q. Is it more than a hundred thousand dollars?
A. Yes.
Q. More than $500,000?
A. Now I just don't recall. I don't have that number in front of me.

(R.T. October 10, 2023, p. 100)(Emphasis Added.)

The Government devoted three pages of its Response trying to convince this Court of a falsehood; namely, that the defense never asked Mr. Ferrer how much money was placed in his attorney's trust account.  Not only did the prosecutors cite an irrelevant page in the trial transcript, but the argument was disingenuous.

Had Ms. Bertrand, or any other defense attorney that crossed Mr. Ferrer, known about the email with the attached spreadsheet showing it was Mr. Ferrer who told the Government that the amount was $4,000,000, they could have impeached Mr. Ferrer with his prior statement

From the standpoint of impeaching Mr. Ferrer, being able to establish that the

actual amount was $4,000,000, when he claimed he could not remember whether it even was more than $500,000, would have been rather important—particularly given Mr. Ferrer's ability to remember minutiae from inconsequential emails in 2007 and 2008—compared to his claimed inability to recall that he'd given his lawyer $4,000,000 in 2017 and 2018. Nobody on this jury would have believed that just slipped Mr. Ferrer's mind.

In *U.S. v. Bernal-Obese, 989 F.2d 331 (1993)*, the Government prosecuted an individual based upon the testimony of a confidential informant.  That Court stated: "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom. As Justice Jackson said forty years ago, 'The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility.'"  *Id.* at 333.

The *Bernal* Court cited with approval *Lee v. United States*, 343 U.S. 747, 757 (1952), where our Supreme Court recognized that "A prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system.

In *Bernal, supra*, the Court said "Because the government decides whether and when to use such witnesses, and what, if anything, to give them for their service, the government stands uniquely positioned to guard against perfidy. Accordingly, we expect prosecutors and investigators to take all reasonable measures to safeguard the system

against treachery. This responsibility includes the duty as required by *Giglio* to turn over to the defense in discovery all material information casting a shadow on a government witness's credibility." Id at 333-334.

Finally, the *Bernal* Court stated that "Because we have made this choice, it is essential that relevant evidence bearing on the credibility of an informant-witness be timely revealed (1) to defense counsel as required by *Giglio*, and (2) to the ultimate trier of fact…" *Id.* at 335.

The defense also raised the issue of nondisclosure of Mr. Ferrer's emails that showed Mr. Ferrer commonly used Proton Mail, even when communicating with the government pursuant to his obligations under the plea agreement.

In his closing argument, Mr. Austin stated the following: "Maybe we should just stop regular emails and start using proton mail because they know what they're doing is wrong, and they are trying to reduce the ability to see the evidence of that. I submit to you that that is evidence of a lack of good faith." (*See*, trial transcripts 9/21/23 P.M. Session, pgs. 83-84; 9/22/23 A.M. Session, pgs. 50, 56-58 and 11/1/23 A.M. Session, pg. 58).

Yet Mr. Ferrer's emails, which were not disclosed, show consistent use of Proton Mail when emailing the government investigators. That information could have been used to impeach Mr. Ferrer, as there were numerous questions on direct examination about Mr. Ferrer's use of Proton Mail. Mr. Austin's argument that use of Proton Mail by Defendants was evidence of a lack of good faith. Good faith was a substantial defense raised by all Defendants, makes this nondisclosure <u>material</u> *Jencks, Brady and Giglio* evidence.

Lastly, the Government suggests that the Jencks Act text does not authorize dismissal.  (Doc. 1990, p.16)  It then cites *Reed, supra*, as support for dismissal when there is a due process violation.  (Doc. 1990, p. 16)

*Brady* and *Giglio* violations <u>are</u> due process violations.  In *Brady*, the Court stated: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Further to this point, the Court in *Bagely, supra,* held that there is no distinction between impeachment and exculpatory evidence.  *Id*. at 677.  That Court further held: "The constitutional error, if any, in this case was the Government's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination.  As discussed above, such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. Consistent with 'our overriding concern with the justice of the finding of guilt,' *United States v. Agurs*, 427 U.S., at 112, 96 S.Ct., at 2401, a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."  Id. at 678.

Since the Government suppressed the *Jencks/Brady/Giglio* evidence until after the case went to the jury, the requested relief of striking Mr. Ferrer's testimony is unavailable.

///

///

12

The Court may, however, if it deems the due process violation substantial, dismiss the case.  In the alternative, the Court may grant a new trial.

RESPECTFULLY SUBMITTED this December 4, 2023.


 *s/ Eric W. Kessler*
Eric W. Kessler, Esq.
Bruce Feder, Esq.
*Attorneys for Defendant Spear*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

 *s/ Eric W. Kessler*
Eric W. Kessler, Esq.
*Attorney for Defendant Spear*

14