

**SNR DENTON**

SNR Denton US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6306 USA

Samuel Fifer
Partner
samuel.fifer@snrdenton.com
D +1 312 876 3114
T +1 312 876 8000
F +1 312 876 7934
snrdenton.com

September 23, 2011

**BY U.S. MAIL AND E-MAIL**

Mrs. Hedda Litwin
National Association of Attorneys General
2030 M Street, NW
Washington, DC  20036

Re:  Response of Backpage.com to NAAG Letter of August 31, 2011

Dear Mrs. Litwin:

    On behalf of our client, Backpage.com, we acknowledge receipt of an August 31, 2011 letter from the National Association of Attorneys General (NAAG). We appreciate the additional time you accorded us to reply.

    Permit us to respond to your request for information and suggest a meeting at your earliest convenience to help chart a meaningful course, congruent with the law and with the critical importance of the 2011-2012 Presidential Initiative, to protect children from the terrible tragedy that is child trafficking. Toward this end, Backpage.com has requested that Jeff Modisett of this firm and Don Bennett Moon, an Independent Director on the Village Voice Media board, represent the company in its interaction with NAAG. Mr. Modisett is a former member of NAAG with wide experience in Internet-related issues. Mr. Moon has headed our client's site safety and mitigation efforts with the National Center for Missing and Exploited Children (NCMEC) since last March, and both Mr. Modisett and Mr. Moon are former elected prosecutors with strong backgrounds in child protection issues.

    Backpage.com understands and shares the concerns expressed by the Attorneys General. There is no gap between our mutual goal of eradicating the scourge of child trafficking as quickly and effectively as possible. We are pledged to work cooperatively with law enforcement to protect children and we have already taken bold measures to remove postings on our site that could in any way involve child trafficking.

    Today, Backpage.com continues to take effective measures to track and eliminate illegal activity by third parties using the adult services sections of its website and

SNR DENTON

Mrs. Hedda Litwin
September 23, 2011
Page 2

continues to closely cooperate with law enforcement, including NAAG's Attorneys General Working Group, in order to better understand the law enforcement community's needs and more effectively prevent criminal activity on its website. Mr. Matt Dameron, the Chief of Staff to Missouri Attorney General Christopher Koster, one of the leaders of the Working Group, can confirm Backpage.com's involvement with the Working Group's efforts, the progress that has been made, and the openness and professionalism of our continuing dialogue.

In addition to its cooperation with the Working Group, Backpage.com has developed a strong cooperative relationship with front-line state and federal law enforcers around the country—assisting with sting operations, promptly responding to subpoenas, and otherwise aiding in the prosecution of those who misuse the site.[1]

Backpage.com continues to use the twin tools of aggressive content moderation and programmatic content filtration to limit the nature and extent of objectionable material in the adult services section of its site and we look forward to the opportunity to set out these measures for you in detail. Similarly, the company has worked closely with NCMEC to develop logarithmic "screens" that detect and filter terms that are believed to be improper or that propose an illegal transaction and we look forward to the opportunity to share this technology with you.

The effectiveness of these and other measures has extended beyond the moderation of the adult services sections of the site. We look forward to sharing with you the security measures that have succeeded in rooting out and eliminating other types of illegal and harmful material, including scammers, "phishers", would-be perpetrators of economic frauds and others, including those engaged in prostitution. Not every instance of such activity can be quickly and successfully interdicted, as anyone involved in law enforcement knows. But there can be no question that Backpage.com does its best to provide a safe and legal environment for its customers and to be a responsible corporate citizen. The company's successful partnership with law enforcement is vivid testament to that. As a member of a Law Enforcement agency recently wrote, in an August 29, 2011 message to Backpage.com's Carl Ferrer:

---

[1] This active cooperation is exemplified by a recent (February 2011) case in which a user created a message to alert others to the existence of an FBI sting operation in the Chicago area. Backpage.com took the offending post down within an hour. The company learned of this posting when the FBI quickly communicated via email with support@backpage.com.

SNR DENTON

> **[We] can't thank you and your staff enough for being so responsive and supportive of [our] and other law enforcement efforts concerning these cases. Your company's level of cooperation is not the norm and makes a huge difference in our ability to target and ultimately arrest the offender.**

While we fully embrace the opportunity and look forward to working with the Attorneys General on our own behalf, Backpage.com's conduct stands in stark contrast to others in the industry and compares favorably with (1) telephone directory listings for "Escort Services"; (2) newspaper personal ad sections; (3) give-away "adult services" papers and magazines widely distributed in urban areas and found in "honor" boxes in heavily trafficked areas and (4) escort sites, such as those found on major search engines, and large escort domain hosting companies.

The following responds generally to your queries as regards information that is not proprietary in nature or inappropriate for public viewing. We routinely share proprietary and sensitive law enforcement-related information with NCMEC, and with law enforcement generally, and have no objection to providing the same to NAAG under some reasonable agreed-upon confidentiality protocol. The company has compiled detailed responses to your query in those areas that involve proprietary or law enforcement-sensitive answers.

As to prohibited terms for which Backpage.com is screening, our newly upgraded and automated filters have already banned several thousand terms from ads, many of them code words or intentionally misspelled words designed to circumvent standard filters. Here, again, we will submit to you under separate cover a sample of banned terms and phrases and the processes under which terms, URLs, IP addresses, and other proprietary information are blocked.

As to the individualized or hand-review process undertaken by Backpage.com, including the number of personnel assigned to conduct such review, we will gladly supply you with this proprietary information under separate cover. We believe that our level of resources dedicated to these processes compares favorably with any other web or social media site and we are given to believe by NCMEC staff that no industry site does more in this area than Backpage.com. For example, recently, ads were posted by local law enforcement personnel on Backpage.com as part of a sting operation. Our moderators, who had no knowledge of the sting, removed their postings, blocked their credit card and reported the ad to NCMEC. Shortly thereafter, the law enforcement agency sent the email below:

SNR DENTON

Mrs. Hedda Litwin
September 23, 2011
Page 4

> From: [Name omitted for privacy purposes]
> Date: August 29, 2011
> To: Carl Ferrer<carl.ferrer@backpage.com>
> Subject: Re: Special Request
>
> **Certainly Carl, your staff did a great job! We appreciate Backpage's vigilance to help protect kids. On our team over the weekend were the Secret Service, Department of Homeland Security, the United States Attorney's Office and several local law enforcement agencies and all commented on how effective Backpage was on getting the ads removed quickly and blocking future ads from the same posters. I'll give you a call shortly. Thanks.**

As to Backpage.com's ad review processes, including the number of adult advertisements submitted since September 1, 2010, those subjected to individualized or hand review, those rejected prior to publication, and criteria used to determine whether a published advertisement should be removed due to actual or suspected criminal activity, we have compiled this proprietary information and will submit it under separate cover.

As to law enforcement agencies and safety advocates/experts with whom Backpage.com has partnered, we have a well-documented history of working proactively and effectively with law enforcement to prevent underage prostitution and other exploitation and to assist in the identification and arrest of perpetrators who are intent on breaking the law.

Examples of Backpage.com's actions in partnership with law enforcement include:

- Regularly providing live testimony at trial to authenticate the evidence of criminals who have wrongfully used Backpage.com's web site. For example, in federal court alone, Backpage.com recently provided testimony in five prosecutions—all resulting in convictions or indictments in Atlanta, Jacksonville, Miami, Minneapolis and New York City.
- Posting free and highly targeted Public Service Announcements for law enforcement seeking witnesses to crimes.
- Distributing law enforcement guides with FAQs to further expedite investigations.
- Working by phone and email with law enforcement in connection with special investigations involving multivariate search requests.

CONFIDENTIAL

BP-AZGJ00121649

BP-PSI-121662

DOJ-BP-0004440809

SNR DENTON

- Removing postings when requested by law enforcement. On numerous occasions Backpage.com has been asked to quickly remove postings interfering with law enforcement investigations, i.e. where the post is alerting users to a sting.
- Blocking future postings from users when law enforcement has advised Backpage.com that the user is engaged in illegal activity.
- Prompt and complete subpoena response. Many other websites or cellular providers take weeks to provide records. Backpage.com responds to about 100 subpoenas from law enforcement each month, often turning around responses to those subpoenas the same day. With respect to any child exploitation investigation, it has often provided records within an hour.
- Even without a subpoena, in exigent circumstances such as a child rescue situation Backpage.com will provide the maximum information and assistance permitted under the law.
- Investigators quickly receive records requested, including IP addresses with time, date and time zone stamps, email address, full credit card data and all images as four-color electronic documents.
- Backpage.com has added further information to each NCMEC report, at law enforcement's urging, including the user name of the Backpage.com staff member reporting the post in order for law enforcement to contact them directly for further information.

On August 9, 2011 Backpage.com held two well-attended workshops for law enforcement agencies at the Crimes Against Children Conference in Dallas. At those workshops, Backpage.com distributed Law Enforcement Guides, described the data it can secure for law enforcement, and fielded questions regarding how it handles sting postings and future tools requested by law enforcement.

The Agencies with whom Backpage.com has partnered include:

- **Federal (Department of Homeland Security and Federal Bureau of Investigation)**: Backpage.com has initiated contact with the FBI about possible illegal activity from stolen credit card use, employment scams, and possible child endangerment. Backpage.com has worked with dozens of federal agents, quickly providing records in response to federal subpoenas, and assisting with unique investigations often requiring multivariate search requirements.

SNR DENTON

Mrs. Hedda Litwin
September 23, 2011
Page 6

- **State and Local Law Enforcement**: Backpage.com's Cyber Tip Line reports are sent to both state and local law enforcement. Backpage.com works with hundreds of state attorney general investigators, sheriff's departments, and vice/high risk victims unit detectives across the country; as well as with Internet Crimes Against Children (IPAC) Task Forces, establishing communication channels, presenting tools for law enforcement's use, and discussing improvements to the web site.

- **Non-Governmental Organizations:**

    **NCMEC**. The company has regular monthly meetings with NCMEC staff. We have received invaluable suggestions from NCMEC as to available online tools and resources for deterring, reporting and removing objectionable postings.

    **SSP Blue**. We have worked with the nationally known internet security expert Hemanshu Nigam of SSP Blue to further develop and refine Backpage.com's protection strategy, and implement his recommendations on moderation, reporting mechanisms and content policy standards.

Any user report of suspected exploitation of minors and/or human trafficking automatically subjects the ad to further internal review. As to your request for the number of advertisements Backpage.com has reported to law enforcement and NCMEC since September 1, 2010 because of suspected illegal activity, and the number of these reports that were user-generated, the company has compiled this information for your review and will submit it under separate cover.

With regard to Backpage.com's "understanding" or what does and does not constitute "illegal activity" on its website, the company acknowledges and appreciates NAAG's request that we set out our view of the law. The following is the text of the page displayed when an advertiser first enters the site wishing to place an adult services ad:

> **You agree to the following when posting in this category:**
>
> - **I will not post obscene or lewd and lascivious graphics or photographs which depict genitalia or actual or simulated sexual acts;**

CONFIDENTIAL

BP-AZGJ00121651

BP-PSI-121664

DOJ-BP-0004440811

SNR DENTON

Mrs. Hedda Litwin
September 23, 2011
Page 7

- I will not post any solicitation directly or in "coded" fashion for any illegal service exchanging sexual favors for money or other valuable consideration;
- I will not post any material on the Site that exploits minors in any way;
- I will not post any material on the Site that in any way constitutes or assists in human trafficking;
- I am at least 18 years of age or older and not considered to be a minor in my state of residence.

Any post exploiting a minor in any way will be subject to criminal prosecution and will be reported to the Cyber Tip Line and law enforcement.

Any post with terms or misspelled versions of terms implying an illegal service will be rejected. *[We are happy to provide examples of these terms under separate confidential cover].*

**Postings violating these rules and our Terms of Use are subject to removal without refund.**

What follows is the text appearing on the next screen, where the potential advertiser has the opportunity to post the actual text of an ad:

NOTICE:
- **Do not post naked images, e.g. uncovered genitalia, bare butts, nipple or nipple area, sex acts, etc.**
- **Do not post images using transparent clothing, graphic box or pixelization to cover bare breasts or genitalia**
- **Pricing for legal adult services must be for a minimum of one hour[2]**

---

[2] Your letter indicates Backpage.com "requires" adult service advertisements to "include hourly rates." It does not.

- **Example: 15 minute services are not allowed, no blank pricing, etc.**
- **Ads can be a maximum of 500 characters**
- **Do not use code words such as [omitted in this copy; will be submitted under separate confidential cover][3].**
- **Do not suggest an exchange of sex acts for money**
- **Do not post content which advertises an illegal service**

**Postings not complying with the terms of use are subject to removal.**

In addition to the foregoing, users are empowered and encouraged to report abuse by other users to Backpage.com involving inappropriate or illegal content, spam, ads posted in an incorrect category, etc. Any such abuse that involves a threat to children is afforded special treatment: **"If this involves a threat to a child or an image of child exploitation, please email abuse@backpage.com the URL of the posting."**

You have asked for our understanding of what constitutes "illegal activity" for classified advertising content on Backpage.com.

Our view is informed by the clearly stated purpose and language of the Communications Decency Act of 1996 (CDA) that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *47 U.S.C. § 230 (c) (1)*. The Act "plainly immunizes computer service providers...from liability for information that originates with third parties". *Zeran v. America Online, Inc.*, 129 F.3d 327, 328 (4th Cir. 1997); see also *47 U.S.C. § 230 (e) (3)* ("[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section").

Our view is also informed by federal case authority that is unencumbered by ambiguity as to the scope of the CDA's immunity and pre-emption provisions for Internet

---

[3] Your letter states that, based on a visit to the "Seattle Escorts" section of Backpage.com, the company's guideline requiring adult services advertisers not to "post any solicitation directly or in 'coded' fashion for any illegal service" is "not enforced." We found no violations of the posting rules in a September 2 visit to the Seattle Escorts site.

Service Providers like Backpage.com who publish third-party generated content, including as to claims of any kind asserted by state and local law enforcement.[4]

Last month, in the *M.A.* case, the court emphatically rejected the notion that Backpage.com had somehow forfeited its statutory immunity because it is a for-profit enterprise: "the fact that a website elicits online content for profit is immaterial…[T]o find Backpage to be not immune from suit [because of] how it structured its website in order to increase its profits would be to create a for-profit exception to Section 230's broad grant of immunity. This the Court may not do". 2011 WL 3607660 at *7-8. Nor did Backpage.com's alleged notice of "prior cases of minors being sexually trafficked on its website" affect its Section 230 immunity. Relying on the *Dart* case, the court held that "neither notice or profit make Backpage liable for the content and consequences of the [offending] ads…" Id. at *8-9 and n. 8 (noting that letter to Backpage.com from 21 Attorneys General "asking that the adult sections portion of its website be taken down" was "irrelevant for purposes of Section 230 immunity").[5]

---

[4] See, e.g. *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009) (Craigslist's "Erotic Services" section did not "direct" people to prostitutes in violation of Illinois law, where Craigslist itself did not "create[] the offending ads," and "given section 230 (c) (1), we cannot treat Craigslist as if it did create those ads"; "Intermediaries are not culpable for 'aiding and abetting' their customers who misuse their services to commit unlawful acts"; dismissing Cook County Sheriff's claims; See also, *Voicenet Comm., Inc. v. Corbett*, 2006 WL 2506318, at *4 (E.D. Pa., August 30, 2006) ("the plain language of the CDA provides internet service providers immunity from state criminal laws");*M.A. ex rel P.K. v. Village Voice Media Holdings*, 2011 WL 3607660 (E.D. Mo., August 15, 2011) (holding Backpage.com website is an interactive computer service and dismissing civil claims based on purported violation of federal criminal statutes).

[5] Your letter references a meeting between Village Voice Media board member Don Moon and officials of the Washington State Attorney General's office and certain comments arising out of that meeting. Mr. Moon's comments were in response to an assertion that "anyone can see that Backpage.com carries prostitution ads". Mr. Moon simply pointed out that an investigation of Backpage.com advertisements, like an investigation of Fed Ex, U.P.S. or the U.S. Postal Service for illicit drugs, would produce third-party users who are misusing a lawful enterprise and others who are not and that federal cases, such as *Dart*, had specifically rejected this "anyone can see" argument in the adult classifieds context. Cf. *Chicago Lawyers' Comm. for Civil Rights Under Law v. Craigslist, Inc.*, 519 F. 3d 666, 671-672, wherein the plaintiff unsuccessfully sought to hold Craigslist responsible for "illegal" online classified ads: "Online services are in some respects like the classified pages of newspapers, but in others they operate like common carriers such as telephone services"; "[i]f Craigslist 'causes' [the offending posts] then so

SNR DENTON

Finally, it is our view that any prosecution or threatened prosecution of Backpage.com would infringe free speech rights under the First Amendment since a governmental attempt to shut down all or part of a perfectly lawful website would silence vast amounts of constitutionally protected speech.[6] We believe this infringed-upon right was both clearly established on and before August 31, 2011 and that the application of extra-legal governmental pressure short of arrest or indictment would chill or silence a person of ordinary firmness from the exercise of future First Amendment activities.

While we appreciate the opportunity to respond to your request as to our view of the law, and would welcome your views if they conflict with ours, such legal precedent and protections do not diminish our absolute commitment to work with law enforcement to keep individuals from misusing our site. Mr. Modisett will be in touch immediately to schedule a meeting and will be in a position to produce proprietary or law enforcement-sensitive data compiled by Backpage.com in response to your letter of August 31, 2011.

Very truly yours,

SNR DENTON US LLP

By: *[signature]*
Samuel Fifer

cc: Mr. Derek Sarshad
Paula Selis, Esq.
Jeff Modisett, Esq.
Don Bennett Moon, Esq.

30384095

---

do phone companies and courier services." Mr. Moon did not state an admission. He stated a judicially sanctioned legal truism with which no one in the meeting expressed disagreement.

[6] See, e.g., *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 252-55 (2002); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963). See also 42 U.S.C. § 1983.

CONFIDENTIAL

BP-PSI-121668

BP-AZGJ00121655

DOJ-BP-0004440815